UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: Libor-Based Financial Instruments Antitrust Litigation<br><br>THIS RELATES TO ALL CLASS ACTION CASES | No. 1:11-md-02262-NRB |

**MAJORITY PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL ANDCONSOLIDATION OF ALL RELATED CASES**

## INTRODUCTION

Majority Plaintiffs' Proposed Interim Class Counsel[1] best satisfy the mandatory and discretionary criteria of Fed. R. Civ. P. 23(g)(1)(A) and (B) for interim appointment as class counsel for a putative class of investors in Libor-based financial products.  Proposed Interim Class Counsel have diligently advanced this case through work with experts and investigators both before and after they filed the first case five months ago.Proposed Interim Class Counsel have already coordinated significant work, including by filing the motion before the JPML that brought the various cases to this Court. They all have the requisite experience and have handled complex commodities and antitrust cases including trials.  Their combined and individual expertise in commodities and antitrust law exceeds that of the counsel in the sole opposition motion.  Their proposed four firm co-lead structure possesses the appropriate resources and assures the appropriate representation of the putative class.

Proposed Interim Class Counsel have also privately organized the cases and are supported by Majority Plaintiffs, who consist of ten institutional investors and six individuals. All counsel who have taken a position on leadership support this structure with the sole exception of counsel for one lately-filed case brought by the Mayor and City Council of Baltimore ("Baltimore").  Finally, Proposed Interim Class Counsel have acted as fiduciaries to the putative class, and have taken all necessary steps to ensure that all available claims will be vigorously pursued.

---

[1]  All capitalized words have the same definition as in Majority Pls. Mem. of Law in Supp. of Mot. for Appointment of Interim Class Counsel and Consolidation, Sept. 1, 2011, ECF No. 10 ("Majority Pls. Mem."). "Baltimore Mem." means Mem. of Law in Supp. of Mot. of Pl. Mayor and City Council of Baltimore for Appointment of Interim Class Counsel, Sept. 1, 2011, ECF No. 8. "Indirect Mem." means Mem. in Supp. of Mot. of Shapiro Haber & Urmy LLP and Shepherd, Finkelman, Miller & Shah for Appointment as Co-Lead Counsel for *Indirect* Purchaser Class, Sept 1, 2011, ECF No. 5.

In contrast, based on the mandatory and discretionary criteria, counsel for Baltimore ("Baltimore Counsel") fail to satisfy Rule 23(g) because they have done nothing to advance the case. Rather, Baltimore Counsel's contribution to date has been to file a copycat complaint four months after the case began. Baltimore Counsel have little experience prosecuting commodities cases. To mask this weakness, they make arguments in their motion to disparage and disadvantage those putative class members that have commodities, as well as antitrust, claims. By their own conduct, therefore, Baltimore Counsel have rendered themselves not the "most adequate" counsel under subsections 23(g)(1)(B) and 23(g)(4) and, indeed, are unable to fairly and adequately represent the interests of the plaintiffs and putative class.

Baltimore Counsel's self-serving denigration of the class members who transacted on a commodity exchange is especially unwise in view of recent reports that the criminal investigation of the Libor misreporting is being "led by the U.S. Commodity Futures Trading Commission and the Department of Justice" who are reportedly "modeling their investigation on an earlier prosecution" that led to false reporting prosecutions (as well as successful claims in this District for commodity futures manipulation).[2]

Not satisfied with denigrating substantial portions of the class, Baltimore Counsel also denigrate the opinions of all other Plaintiffs' counsel by criticizing their private ordering. But Baltimore Counsel have in fact recently proposed in this Courthouse and in other courts that private ordering should be followed. As Baltimore Counsel have repeatedly argued, in cases of

---

[2] *Compare* Brooke Masters and Kara Scannell, "Libor Inquiry Looks at Criminal Angle," Financial Times, Sept. 7, 2011, with *In re Natural Gas Commodity Litig.*, No. 03-cv-06186 (S.D.N.Y.)("*In re Natural Gas*").Like here, *In re Natural Gas* involved manipulation by more than 20 large energy companies of the price of natural gas by making false reports of the price and volume of their trades to publishers of natural gas price indices across the United States. Recognizing the complexities inherent in commodity manipulation cases, and especially those with multiple defendants and multiple futures contracts at issue (as here), Judge Marrero approved a four co-lead counsel structure. Pretrial Order at ¶ V(12), *Id.* (S.D.N.Y. Dec. 5, 2003) (appointing Lovell Stewart and Lowey Dannenberg among four co-lead counsel). *See* the Decl. of Surya Palaniappan in Further Supp. of Majority Pls. Mot. for Appointment of Class Counsel and Consolidation ("Palaniappan Decl."), filed herewith at. Ex. 1.

this magnitude, in which there exists such overwhelming outright consensus, private ordering should be an important determinant of interim class counsel.

Last, law firms representing a recently filed individual investor seek to represent a putative class of indirect purchasers. Proposed Interim Class Counsel reserve objection to their application until it is clear that this case does not seek to represent a putative class with claims arising under the Sherman Act or Commodity Exchange Act, 7 U.S.C. §§ 1, *et seq.* (the "CEA").

## ARGUMENT

### I. THE RECORD DEMONSTRATES THAT PROPOSED INTERIM CLASS COUNSEL WILL MOST ADEQUATELY REPRESENT THE CLASS

#### A. THE CRITERIA UNDER 23(G), NOT THE PSLRA, GOVERN HERE AND STRONGLY FAVOR MAJORITY PLAINTIFFS' PROPOSED INTERIM CLASS COUNSEL

The record now demonstrates that Proposed Interim Class Counsel satisfy the Rule 23(g)(1)(A)(i) criterion to be appointed class counsel. They filed the first case, filed cases enhancing the allegations of the first case, prosecuted the JPML, and have otherwise further investigated and identified the claims here. Among other things, Proposed Interim Class Counsel have also (1) retained experts to evaluate market behavior and damages; (2) hired investigators and sought other pre-complaint discovery; (3) analyzed available causes of action; (4) approached the leniency applicant, defendant UBS AG, to seek its cooperation under ACPERA;[3] and (5) privately organized all cases except Baltimore's. *See* Majority Pls. Mem. at 7-10.

Proposed Interim Class Counsel also satisfy Rule 23(g)(1)(A)(ii)-(iv) criteria. Their firm resumés[4] demonstrate that they have long experience with antitrust and complex financial claims, including both commodities and antitrust claims in the exchange or over-the-counter

---

[3] Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No. 108-237, tit. II, §§ 201-221, 118 Stat. 661, 665-669 (as amended). UBS AG has sought leniency from international governmental authorities including the U.S. Department of Justice in exchange for cooperation in their investigation of alleged collusion and misreporting of Libor. *See* Palaniappan Decl. Ex. 2 (relevant portions of UBS AG's 6-K filed July 26, 2011, at 86).

[4] *See* Decl. of John D. Radice in Supp. of Majority Pls. Mem., Sept 1, 2011, ECF No. 11, Exs. A-D.

3

market context here. They have extensive knowledge of the law applicable to complex financial wrongs, and have deep experience handling complex class actions.  Also, they have substantial experience in trying antitrust cases of this type in this District. Proposed Interim Class Counsel have significant international experience, and have undertaken extensive international discovery against foreign defendants, including from their London offices. *See* Palaniappan Decl. Ex. 3.

### B. THE MAJORITY PLAINTIFFS' PROPOSED CLASS COUNSEL STRUCTURE IS APPROPRIATE AND COMMENSURATE WITH THE CASE'S SIZE AND COMPLEXITY

Majority Plaintiffs' proposed class counsel structure is very well tailored to this case's scope, magnitude and the variety of the alleged victims of the alleged violations.  A four-firm co-leadership structure with separate counsel serving as fiduciaries for specific groups of plaintiffs is not uncommon even in less complex cases of this sort.  *See* Majority Pls. Mem. at n.7.  This structure is further appropriate because, *inter alia*, the case will likely involve approximately seventeen reporting bank defendants (not including subsidiaries), each of whom has, or will have, hired sophisticated firms in their defense, and intricate underlying issues, involving various financial instruments.  This structure is the choice of counsel in all active cases save one.

Baltimore Counsel implicitly concede that a larger organizational structure is appropriate, and in fact necessary, by suggesting that their two firms appoint a steering committee to assist them in the "significant efforts and substantial coordination [required] to bring these claims to trial." Baltimore Mem. at 22-23.[5]  Baltimore Counsel's suggestion should be no surprise because even in cases of lesser scope and complexity than the case at bar, Baltimore Counsel have recognized the need for such multi-firm structures.[6]  Baltimore Counsel's argument that a

---

[5] Baltimore Counsel's failure to advance the case is even apparent in this statement, since they clearly have yet to fill, or even decide upon the roles of, their inchoate steering committee members.

[6] *See* Palaniappan Ex. 4 (chart listing Baltimore Counsel's participation in large leadership structures).

4

structure larger than their two firms would be unwieldy is self-serving and is impeached by their steering committee proposal and their positions taken in other complex cases.

### C. THE MAJORITY PLAINTIFFS REPRESENT THE ARRAY OF FINANCIAL INTERESTS IN CONTROVERSY

This case involves several types of financial instruments, and Majority Plaintiffs are purchasers comprising a representative range of financial products impacted by Libor. Majority Plaintiffs consist of <u>ten</u> institutional investors and <u>six</u> individuals.[7] The products Majority Plaintiffs invested in include corporate bonds, exchange traded products such as swaps and Eurodollar futures and over-the-counter swaps.[8] Majority Plaintiffs share claims under the Sherman Act and some also have claims arising under the CEA. CEA claims are available here to persons who transacted in exchange-traded futures, options and swap contracts settled to Libor (e.g., CME Eurodollar contracts). *See id.* at Section 22. For this reason, Majority Plaintiffs' organizational structure provides for the possibility that these groups will have separate representation as may be needed.[9]

Baltimore Counsel make the self-serving argument that an analysis under the Private Securities Litigation Reform Act of 1995 ("PSLRA") militates in favor of their appointment as class counsel. In fact, the PSLRA lead plaintiff analysis, which is appropriate in certain cases

---

[7]   *See* Palaniappan Decl., Ex. 5 (chart listing Majority Plaintiffs).

[8]   Majority Plaintiffs include several institutional investors and some individual investors who traded in Eurodollar futures and other Libor-based on exchange products. Eurodollar futures are the largest traded futures contract in the world. *See* CME Group Brochure at 5, *http://www.cmegroup.com/company/files/CME_cap_brochure_printer_finals.pdf,* accessed Sept. 7, 2011. Baltimore Counsel suggest that the Eurodollar traders in the Majority Plaintiffs' group are largely individuals. This is not so. The institutional investors that traded Eurodollars include FTC Capital GmbH, Ravan Investments LLC, 3030 Trading LLC, Independence Trading, Inc., and Atlantic Trading USA LLC. Some of these institutions also invested in over-the-counter Libor-based derivatives. That Libor investors often trade both on exchanges and over the counter highlights why differentiating between the two types of investments is economically artificial.

[9]   *See* Majority Pls. Mem. at 19-25 (designating Lowey Dannenberg Cohen & Hart, P.C., Cohen Milstein Sellers & Toll PLLC and Berger & Montague PC as fiduciaries for these plaintiffs (*see* Firm Resumes D.E. 11, Exs. E-G)).

5

under securities law, has no bearing on this sort of case.[10] The substantive, procedural and evidentiary standards of the PSLRA are the virtual opposites of the Rule 23(g) standards. Substantively, Rule 23(g) requires a court to select the "most adequate" counsel based on the work in the case, prior experience in similar cases, and resources.

By contrast, the PSLRA requires a public notice process which is designed as a safeguard so that all interested parties may come forth. 15 U.S.C. § 78u-4(a)(3)(A). As an evidentiary safeguard, the PSLRA requires each party to submit a sworn certification detailing all transactions in the subject securities. 15 U.S.C. § 78u-4(a)(2)(A)(iv). Substantively, the PSLRA requires the Court to determine from the evidence which Plaintiff has the greatest financial interest. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Under the PSLRA, once the Court has determined the lead plaintiff, the Court must, absent limited circumstances relating to threshold "adequacy," accept the lead counsel selected by the lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(v). Rule 23(g) does not require any of the aforementioned submissions or procedures.

Without following the notice process or even the evidentiary safeguards of submitting verified losses required by the PSLRA, Baltimore attempts to avoid the mandatory criteria which this Court must follow under Rule 23(g) and substitute the PSLRA approach. This is wholly improper from a substantive, procedural and evidentiary standpoint.[11]

---

[10]   *C.f. Masters v Wilhemina Model Agency*, 473 F.3d 423, 437 (2d. Cir. 2007) ("But the PSLRA is not applicable to antitrust actions such as the one before us.") (settlement fee context).

[11]   Further, the largest financial interest may well belong to one of, or to a group of, the Majority Plaintiffs. Majority Plaintiffs are institutional investors and individuals that represent the entire class. Despite Baltimore Counsel's speculations to the contrary, Majority Plaintiffs consist of ten institutional-scale investors with significant interests in the matter. *See* Palaniappan Decl., Ex. 5. Their losses from the alleged Libor suppression, both individually and collectively, are substantial, and, collectively, Majority Plaintiffs almost certainly have the greatest interest in the litigation, requiring even under a PSLRA analysis that their choice of counsel be given deference. *See Reimer v. Ambac Fin. Group, Inc.*, No. 08 Civ. 411 (NRB), 2008 WL 2073931, at *2 (S.D.N.Y. May 9, 2008) (Buchwald, J.) (disallowing investors to aggregate and serve as lead plaintiff is "now the minority view...[and] we agree that a group may be designated as the lead plaintiffs.")

### D. PRIVATE ORDERING IS APPROPRIATE IN ACTIONS OF THIS MAGNITUDE

Courts generally respect plaintiffs' counsel's private ordering, which is the most common method of selecting class counsel. *See Manual for Complex Litigation (Fourth)* (2011) § 21.272. Here, all but one interested plaintiff supports the structure.  In a case of this magnitude, in which there is so much unanimity among plaintiffs' counsel, the court should adhere to the private ordering achieved after many months of work. To upend this coordination by appointing counsel in a much later filed, copy-cat, case would create disincentives among counsel to cooperate in complex matters.  Baltimore Counsel has made this very point.  Private ordering should be respected by courts so as not "to reward the few who rejected a proposal of a fair and inclusive leadership structure [and] penalize the dozens of talented firms who support the Proposed Leadership Group."[12] And in papers filed a few weeks ago in this same Courthouse, Baltimore Counsel argued that the Court should rely on private ordering where a significantly smaller majority of plaintiffs than the majority here supported their class counsel application.[13] In this case, Baltimore Counsel's contrary arguments are wrong and not credible.

---

[12] Brief for Majority Pls. at 9-10, *In re Chocolate Confectionary Antitrust Litig.,* No. 08-MDL-1935, (M.D. Pa. June 17, 2008), ECF No. 314 (argument made by firms, including Baltimore Counsel Hausfeld LLP's predecessor). *See* Palaniappan Decl., Ex. 6.

[13] *See id.* at 2-5; *see also* Brief for Majority Pls. at 23-24, *In re Crude Oil Commodity Futures Litig.*, 11-CV-3600 (WHP) (S.D.N.Y. Aug. 11, 2011), ECF No. 24 (arguing that the Court should give weight to private ordering and adopt the proposed leadership structure because it was supported by more than two-thirds of the related actions). Palaniappan Decl. Ex 7.  Indeed Baltimore Counsel have*expressly* and repeatedly recognized that in complex antitrust class actions like this one, private ordering is the most common and effective method of selecting class counsel. *See, e.g.,* Brief for Movant at 3, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, No.07-mc-00489 (D.D.C. Feb. 19, 2008), ECF No. 50, attached as Ex. 8 to the Palaniappan Decl. ("The most common means of selecting class counsel is the 'private ordering' approach…Efforts of plaintiffs' counsel to coordinate their activities among themselves are to be encouraged."); Brief for Pls. at 3-6, *In re Mun. Derivatives Antitrust Litig.*, No. 08-cv-02516 (VM)(JCF) (S.D.N.Y. July 18, 2008), ECF No. 166, attached as Ex. 9 to the Palaniappan Decl. (same).

## II. BALTIMORE COUNSEL IS CLEARLY NOT THE MOST ADEQUATE

### A. BALTIMORE COUNSEL DO NOT MEET RULE 23(G) CRITERIA BECAUSE THEY HAVE NOT ADVANCED THE CASE AND HAVE LESS COMMODITIES EXPERIENCE

Analyzed under the mandatory criteria of Rule 23(g), Baltimore Counsel should not be appointed class counsel.  FTC Capital GmbHfiled the first case in this matter on April 15, 2011, nearly four months before Baltimore's filing on August 5, 2011.  Other Majority Plaintiffs soon followed with enhanced substantive allegations of Libor misreporting and collusion based on independent investigative work. Defendant UBS AG, in its 6-K filed on July 26, 2011 announced that it was cooperating with investigatory authorities,[14] just days before the hearing on the motion to the JPML to transfer and consolidate the cases and months after Proposed Interim Class Counsel began advancing the litigation.  Baltimore had not even filed at this time.[15]

In addition to failing to advance the case, Baltimore Counsel have vastly less experience with CEA claims and with antitrust claims in the exchange or over-the-counter market context than do Proposed Interim Class Counsel.  The record shows that Proposed Interim Class Counsel, who have tried CEA class cases in this District, have obtained the three largest antitrust class action settlements in the exchange or over-the-counter market context and the three largest class action settlements in the history of the CEA. They also include the former Deputy General Counsel of the CFTC, former commodities traders, and other attorneys with extensive experience in CEA and antitrust claims of the type here. Baltimore Counsel simply do not have this relevant

---

[14]   *See* Palaniappan Decl. Ex. 2, relevant portions of UBS AG's 6-K filed July 26, 2011, at 86.

[15]   Even though Baltimore waited months to file its case, its "extensive investigation and analysis of the conspiracy," Baltimore Mem. at 7, resulted in nothing original beyond the substance of the complaints filed by Proposed Interim Class Counsel.  Indeed, Baltimore has almost no substantive allegations that are not contained in Proposed Interim Class Counsel's complaints, and fails to allege other important facts demonstrating Defendants' manipulation of Libor—facts that are included in Interim Class Counsel's complaints. *See* Palaniappan Decl. Ex. 10.

8

experience.[16] This shortcoming may explain Baltimore Counsel's argument that the claims of investors who purchased on exchanges are not viable, as further discussed below.

### B. BALTIMORE COUNSEL ARE INADEQUATE BECAUSE THEY DISPARAGE CLAIMS OF PLAINTIFFS THEY SEEK TO REPRESENT

Baltimore Counsel disparage the claims of investors like Majority Plaintiffs on two grounds. They first suggest that investors who traded on exchanges might not have standing to bring Sherman Act claims. Baltimore Mem. at 20. Baltimore Counsel then speculate that plaintiffs who used swaps as "investment vehicle[s]", not as "debt management tool[s]" do not have the "greatest interest in the litigation." *Id.* at 21 (citation and quotation marks omitted). These attacks are unsound, inappropriate by plaintiffs' counsel in this early stage of a putative class action, and show that Baltimore Counsel are inadequate to represent all plaintiffs' interests.

Baltimore Counsel incorrectly argues that exchange-based investors might not have Sherman Act standing because (1) the claims are remote and (2) the claims are based on indirect purchases.[17] This legal argument is contradicted by a wealth of case law.[18] It also potentially curtails the rights and remedies of a significant subset of the parties harmed by the alleged Libor manipulation. Such an argument should be left to defendants, not to counsel seeking to represent the interests of claimants. The making of these claims, however unmeritorious, exposes Baltimore Counsel's inadequacies to represent any portion of the plaintiff investor population.

It is notable that Baltimore's complaint does not even allege a CEA claim. But because Baltimore does not individually have such a claim, it does not follow that Baltimore Counsel, in

---

[16] *Compare* Exs. B, D, E, F of the Decl. of John D. Radice in Supp. of Majority Pls. Mem., Sept. 1, 2011, ECF. 11, with Ex. B of the Decl. of Michael D. Hausfeld in Supp. of Baltimore Mem., Sept. 1, 2011, ECF No. 13.

[17] Baltimore Mem. at 20 citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 542 (1983) and *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 724 (1977).

[18] *See, e.g., Strobl v. New York Mercantile Exchange*, 768 F.2d 22, 28 (2d Cir. 1985) ("price manipulation is an evil that is always forbidden under every circumstance by both the [CEA] and the antitrust laws."). *See also Loeb Indus..Inc. v Sumimoto Corp.*, 306 F.3d 469, 481 (7th Cir. 2002).

9

seeking to lead this overall litigation, should be entitled to so readily discard it. To the contrary, as a fiduciary of a putative class, Baltimore Counsel should not denigrate the claims of putative class members, some of whom may be able to recover under both statutes. Baltimore Counsel shows an inappropriate willingness, arising from this conflict, to subordinate investor interests to their leadership ambitions and to a higher allegiance to their immediate client.

### III.   INDIRECT PURCHASER CLASS COUNSEL'S APPLICATION

A plaintiff in a recently filed case has filed a motion requesting that its two law firms be appointed class counsel for a putative class of indirect purchasers. *See* Indirect Mem. at 1. These firms have not precisely defined what the contours of the suggested indirect purchaser class would be, although these indirect purchaser claims would be brought under state laws.[19]

Majority Plaintiffs reserve their objections to this application insofar as the firms seek to be class counsel of an as yet undefined indirect purchaser class. Majority Plaintiffs respectfully request that Proposed Interim Class Counsel be appointed to pursue for plaintiffs and putative class members claims arising under the Sherman Act and the CEA. To the extent that this indirect purchaser class may be defined to in some way interfere with such a Proposed Interim Class Counsel's mandate, Majority Plaintiffs would object to their appointment.

### CONCLUSION

For the foregoing reasons, the Majority Plaintiffs respectfully request that this Court appoint Proposed Interim Class Counsel under Rule 23(g) to pursue the Sherman Act and CEA claims and consolidate all Related Actions.

Dated:  September 8, 2011                    Respectfully submitted,

---

[19]   *See generally Illinois Brick Co.*, 431 U.S. 720.

   /s/ David E. Kovel
David E. Kovel
Roger W. Kirby
Daniel Hume
Surya Palaniappan
KIRBY McINERNEY LLP
825 Third Avenue
New York, NY 10022
Tel: 212-317-2300

*Counsel for Plaintiff FTC Capital GmbH and Proposed Interim Class Counsel*

Stuart M. Grant
Jay W. Eisenhofer
Linda P. Nussbaum
John D. Radice
GRANT & EISENHOFER, P.A.
485 Lexington Avenue
New York, NY 10017
Tel: (646) 722-8504

*Counsel for Plaintiff Ravan Investments, LLC and Proposed Interim Class Counsel*

   /s/ Samuel H. Rudman
Samuel H. Rudman
ROBBINS GELLER RUDMAN & DOWD LLP
58 South Service Road, Suite 200
Melville, NY 11747
Tel: 631-367-7100

David W. Mitchell
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway
San Diego, CA 92101
Tel: 619-231-1058

*Counsel for Plaintiffs Carpenters Pension Fund of West Virginia and City of Dania Beach Police & Firefighters' Retirement System and Proposed Interim Class Counsel*

Christopher Lovell
LOVELL STEWART HALEBIAN JACOBSON LLP
61 Broadway, Suite 501
New York, NY10006
Tel:  (212) 608-1900

*Counsel for Plaintiff Roberto E. Calle Gracey and Proposed Interim Class Counsel*

Vincent Briganti
LOWEY DANNENBERG COHEN & HART, P.C.
One North Broadway
White Plains, New York10601
Tel: 914-997-0500

*Counsel for Plaintiffs Richard Hershey and Jeffrey Laydon*

Jeffrey B. Gittleman
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA19103
Tel: 215-963-0600

*Counsel for Plaintiff Insulators and Asbestos Workers Local #14*

W. Joseph Bruckner
LOCKRIDGE GRINDAL & NAUEN PLLP
100 Washington Avenue South, Suite 2200
Minneapolis, MN55401
Tel: 612-339-6900

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622

Charles S. Zimmerman
ZIMMERMAN REED, PLLP
1100 IDS Center
80 South 8th Street

Minneapolis, MN 55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844

Dianne M. Nast
RODANAST, P.C.
801 Estelle Drive
Lancaster, PA 17601
Telephone: (717) 892-3000
Facsimile: (717) 892-1200

Kenneth A. Wexler
Edward A. Wallace
WEXLER WALLACE LLP
55 West Monroe St.
Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Michael L. Roberts
ROBERTS LAW FIRM
20 Rahling Circle
Little Rock, AR 72223
Telephone: (501) 821-5575
Facsimile: (501) 821-4474

*Counsel for Plaintiff AVP Properties, LLC*

H. Laddie Montague
Merrill G. Davidoff
BERGER & MONTAGUE PC
1622 Locust Street
Philadelphia, PA19103
Tel: 215-875-3000

*Counsel for Plaintiff 303030 Trading, LLC*

Lionel Z. Glancy
Elizabeth M. Gonsiorowski
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA90067
Tel: 310-201-9150

*Counsel for Plaintiff Courmont&Wapner Associates, L.P.*

Jeffrey S. Abraham
ABRAHAM, FRUCHTER & TWERSKY, LLP
One PennPlaza, Suite 2805
New York, NY10119
Tel: 212-279-5050

*Counsel for Plaintiff Todd Augenbaum*

Solomon B. Cera
Thomas Bright
GOLD BENNETT CERA & SIDENER LLP
595 Market Street, Suite 2300
San Francisco, CA94105
Tel: 415-777-2230

*Counsel for Plaintiff Nathaniel Haynes*

Joseph C. Kohn
William E. Hoese
KOHN SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA19107

*Counsel to Plaintiff Independence Trading, Inc.*