UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262 |
| THIS DOCUMENT RELATES TO: | |
| MAYOR AND CITY COUNCIL OF BALTIMORE, ET AL., <br> Plaintiffs, <br> v. <br> CREDIT SUISSE GROUP AG, ET AL., <br> Defendants. | Master File No. 1:11-md-2262-NRB <br><br> ECF Case |
| METZLER INVESTMENT GMBH, ET AL., <br> Plaintiffs, <br> v. <br> CREDIT SUISSE GROUP AG, ET AL., <br> Defendants. | |
| GELBOIM, ET AL., <br> Plaintiffs, <br> v. <br> CREDIT SUISSE GROUP AG, ET AL., <br> Defendants. | |
| CHARLES SCHWAB BANK, N.A., ET AL., <br> Plaintiffs, <br> v. <br> BANK OF AMERICA CORPORATION, ET AL. <br> Defendants. | |
| SCHWAB MONEY MARKET FUND, ET AL., <br> Plaintiffs, <br> v. <br> BANK OF AMERICA CORPORATION, ET AL., <br> Defendants. | |
| SCHWAB SHORT-TERM BOND MARKET FUND, ET AL., <br> Plaintiffs, <br> v. <br> BANK OF AMERICA CORPORATION, ET AL., <br> Defendants. | |

**THE NORINCHUKIN BANK'S SUPPLEMENTAL
MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS**

The Norinchukin Bank ("Norinchukin") respectfully submits this supplemental memorandum of law in support of the motions to dismiss all of Plaintiffs' claims asserted in the amended and consolidated class action complaints and amended complaints[1] filed in the above-captioned actions.[2]

## ARGUMENT

### NONE OF THE AMENDED COMPLAINTS SETS FORTH ANY ALLEGATION CONCERNING NORINCHUKIN THAT COULD SUPPORT PLAINTIFFS' CLAIMS

The Amended Complaints acknowledge that Norinchukin is a cooperative bank headquartered in Japan whose shares are not publicly traded on any exchange.[3] In fact, Norinchukin was established, and is governed, by Japanese statute with the mission to contribute to the development of the agricultural, forestry and fishery industries in Japan as their central bank.[4] As such, Norinchukin has access to a stable source of funding provided by its cooperative members and customers, even in a time of global financial crisis. Despite recognizing the

---

[1] Three amended consolidated class-action complaints were filed in this action: Consolidated Amended Complaint, *Mayor and City Council of Baltimore v. Credit Suisse Group AG*, Apr. 30, 2012 ("OTC Compl."); Amended Consolidated Class-Action Complaint, *Metzler Inv. GMBH v. Credit Suisse Group AG*, Apr. 30, 2012 ("Exch. Compl."); and First Amended Class-Action Complaint, *Gelboim v. Credit Suisse Group AG*, Apr. 30, 2012 ("Gelboim Compl."). Three amended complaints also were filed in the *Schwab* actions: Amended Complaint, *Charles Schwab Bank, N.A. v. Bank of America Corp.*, Apr. 30, 2012 ("Schwab Compl."); Amended Complaint, *Schwab Money Market Fund v. Bank of America Corp.*, Apr. 30, 2012 ("Schwab Money Market Compl."); Amended Complaint, *Schwab Short-Term Bond Market Fund v. Bank of America Corp.*, Apr. 30, 2012 ("Schwab Short-Term Bond Compl."). The amended consolidated class-action complaints and the *Schwab* complaints are collectively referenced in this memorandum as the "Amended Complaints."

[2] Norinchukin also joins in all of the arguments set forth in the: (1) Memorandum in Support of Defendants' Motion to Dismiss Plaintiffs' Antitrust Claims; (2) Memorandum of Law in Support of Defendants' Motion to Dismiss the Exchange-Based Plaintiffs' Claims; and (3) Memorandum of Law in Support of Defendants' Motion to Dismiss the Schwab Plaintiffs' Amended Complaints (collectively, the "Joint Memoranda").

[3] OTC Compl. ¶¶25, 57, n. 24; Exch. Compl. ¶¶41, 73, n. 27; Gelboim Compl. ¶¶28, 58, n. 23; Schwab Compl. ¶¶31, 41, n. 13; Schwab Money Market Compl. ¶¶35, 45, n. 13; Schwab Short-Term Bond Compl. ¶¶31, 41, n. 13.

[4] Norin Chuō Kinko Hō [The Norinchukin Bank Law], Law No. 93 of 2001, ch. 1, art. 1 ("The objectives of The Norinchukin Bank . . . shall be to contribute to the development of the agricultural, forestry and fisheries industries and thus promote the development of the national economy by facilitating the smooth financing for agricultural cooperatives, forestry cooperatives, fishery cooperatives and other cooperative organizations of the agricultural, forestry and fisheries industries as a financial institution funded by said cooperatives.") (translation of Japanese text performed by Sidley Austin LLP). Japanese text of The Norinchukin Bank Law is available at the following site operated by the Ministry of Internal Affairs and Communications of Japan: http://law.e-gov.go.jp/htmldata/H13/H13HO093.html.

uniqueness of Norinchukin's business model, the Amended Complaints proceed simply to lump Norinchukin in with all the other Defendants, alleging no other facts at all regarding Norinchukin and making no effort to justify why a plausible inference may be drawn that Norinchukin would be motivated to act in the same way as other banks that are quite differently situated.  As discussed below,  the lack of any factual allegations concerning Norinchukin's unique circumstances is fatal to all of the claims asserted by Plaintiffs, and each such claim against Norinchukin should therefore be dismissed.

The Amended Complaints all fail to provide *any* allegations concerning Norinchukin in connection with the alleged causes of action.  Indeed, the Amended Complaints mention Norinchukin only twice:  (i) in identifying Norinchukin as a Japanese cooperative bank and a member of the British Bankers Association U.S. Dollar Libor Panel (the "BBA Panel") and (ii) including Norinchukin as a line item in various charts and figures listing the BBA Panel banks' submissions.[5]  Notably, with respect to the latter, there is not even an attempt to allege any basis for concluding that Norinchukin's submissions were not an accurate statement of its "belief" regarding the rate at which it could borrow in the London inter-bank market.  In short, the Amended Complaints say *almost nothing* about Norinchukin; Plaintiffs have named Norinchukin as a defendant in these cases *entirely on the basis* of Norinchukin being a member of the BBA Panel.[6]  This is insufficient under any pleading standard, and the Court should dismiss all of Plaintiffs' claims relating to Norinchukin.

---

[5] Plaintiffs rely upon nine studies.  Only two of those studies use data from Norinchukin's BBA Panel submissions or even mention Norinchukin.  Plaintiffs expressly acknowledge that Norinchukin and two other BBA Panel banks were excluded from analysis in one of the relied-upon studies.  (*See* OTC Compl. ¶57, n. 24; Exch. Compl. ¶73, n. 27; Gelboim Compl. ¶58, n. 23; Schwab Compl. ¶41, n. 13; Schwab Money Market Compl. ¶45, n. 13; Schwab Short-Term Bond Compl. ¶41, n. 13.)

[6] The Amended Complaints' scant allegations relating to Norinchukin reflect that many of the original, pre-consolidation complaints in this action did not identify Norinchukin as a Defendant.  For example, the original versions of the OTC Complaint, all three *Schwab* complaints, and several of the complaints initiating actions now consolidated into the Exchange-Based Plaintiff action did not include Norinchukin as a Defendant.

None of the Amended Complaints, all of which attempt to bring claims under § 1 of the Sherman Act, sets forth a single allegation of conduct by Norinchukin that could support an inference that it agreed to coordinate Libor submissions with any other BBA Panel bank.  In *Bell Atlantic Corp v. Twombly*, the Supreme Court specifically considered "what a plaintiff must plead in order to state a claim under § 1 of the Sherman Act" and held that "stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made."  550 U.S. 544, 554-55, 556 (2007).  Moreover, federal district courts applying *Twombly* have held that, even though antitrust conspiracies need not be detailed defendant-by-defendant, at minimum, "the plaintiff must allege that each individual defendant joined the conspiracy and played some role in it."  *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 932 (N.D. Ill. 2009).  Here, Plaintiffs have failed to allege a single fact supporting a conclusion that Norinchukin joined or played any role in the alleged conspiracy.  The Amended Complaints barely mention Norinchukin at all, and those minimal allegations are insufficient to state a claim against Norinchukin under § 1 of the Sherman Act.

Similarly, the Exchange-Based Plaintiff Amended and Consolidated Complaint, which seeks to assert claims under the CEA, does not include a single allegation of a manipulative act by Norinchukin, much less how Norinchukin could have impacted the market for any commodity.  As this Court has observed, a plaintiff alleging market manipulation claims pursuant to § 9(a) of the CEA must comply with the heightened Rule 9(b) pleading requirements when those claims "sound in fraud."  *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677, 2007 WL 1946553, at *5 (S.D.N.Y.  Jun. 28, 2007) (Buchwald, J.).  As the Court noted, "[t]o meet the requirements of Rule 9(b) in the context of a market manipulation claim, the plaintiff must specify 'what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue.'"

3

*Id.* at *6 (quoting *In re Natural Gas Commodity Litig.*, 358 F. Supp. 2d 336, 344 (S.D.N.Y. 2005)). The Exchange-Based Plaintiffs' Amended and Consolidated Complaint offers only the same token allegations relating to Norinchukin that appear in the other complaints. These do not come close to satisfying the applicable, heightened Rule 9(b) standard. Without offering even one particularized allegation identifying how or when Norinchukin allegedly manipulated the price of a commodity, the Plaintiffs have failed to state a viable CEA market manipulation claim against Norinchukin, and these claims should be dismissed.

Finally, none of the *Schwab* Complaints includes a single allegation that Norinchukin participated in any racketeering activity. As the Second Circuit regularly has observed, a RICO plaintiff must allege facts showing that a defendant committed at least two acts of "racketeering" as defined in the RICO statute, 18 U.S.C. § 1961(1). *See, e.g.*, *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17-18 (2d Cir. 1983) (identifying and discussing elements of RICO claim). Moreover, if the alleged racketeering acts sound in fraud, the plaintiff must make allegations satisfying the heightened Rule 9(b) pleading standard. *See, e.g.*, *Farberware, Inc. v. Groben*, 764 F. Supp. 296, 301 (S.D.N.Y. 1991) ("Where a RICO claim includes allegations of fraudulent conduct, the Second Circuit has required that the pleading of fraud meet the requirements of Rule 9(b).") The Second Circuit has clarified that "fraud allegations ought to specify the time, place, speaker, and content of the alleged misrepresentations" and when multiple defendants are named, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Inds., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). Like all of the Amended Complaints, the *Schwab* Complaints contain no particularized allegations concerning Norinchukin – including any allegation identifying the time or place of any misrepresentation made by Norinchukin. As the *Schwab* Complaints fail to satisfy the heightened Rule 9(b) standard for pleading claims sounding in fraud – an essential element of the *Schwab* Plaintiffs'

RICO claims – the Court should dismiss the *Schwab* Plaintiffs' RICO claims as they relate to Norinchukin.

## CONCLUSION

For the forgoing reasons, and all of the reasons detailed in the Defendants' Joint Memoranda, all of Plaintiffs' claims relating to The Norinchukin Bank should be dismissed.

Dated: June 29, 2012                    SIDLEY AUSTIN LLP

                                                  /s/ Andrew W. Stern
Alan M. Unger
Andrew W. Stern
Nicholas P. Crowell
787 Seventh Avenue
New York, NY 10019
aunger@sidley.com
astern@sidley.com
ncrowell@sidley.com
T: (212) 839-5300
F: (212) 839-5599

*Attorneys for The Norinchukin Bank*