IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL PRODUCTS ANTITRUST LITIGATION | MDL NO. 2262<br>CASE NO. 1:11-MD-02262-NRB |
| THIS DOCUMENT RELATES TO: | ECF CASE |
| MAYOR AND CITY COUNCIL OF BALTIMORE, ET AL.,<br>                              Plaintiffs,<br>          v.<br>CREDIT SUISSE GROUP AG, ET AL.,<br>                              Defendants. | |
| METZLER INVESTMENT GMBH, ET AL.,<br>                              Plaintiffs,<br>          v.<br>CREDIT SUISSE GROUP AG, ET AL.,<br>                              Defendants. | |
| GELBOIM, ET AL.,<br>                              Plaintiffs,<br>          v.<br>CREDIT SUISSE GROUP AG, ET AL.,<br>                              Defendants. | |
| CHARLES SCHWAB BANK, N.A., ET AL.,<br>                              Plaintiffs,<br>          v.<br>BANK OF AMERICA CORP., ET AL.,<br>                              Defendants. | |
| SCHWAB MONEY MARKET FUND, ET AL.,<br>                              Plaintiffs,<br>          v.<br>BANK OF AMERICA CORP., ET AL.,<br>                              Defendants. | |
| SCHWAB SHORT-TERM BOND MARKET FUND, ET AL.,<br>                              Plaintiffs,<br>          v.<br>BANK OF AMERICA CORP., ET AL.,<br>                              Defendants. | |

## THE BANK OF TOKYO-MITSUBISHI UFJ, LTD.'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson* v. *Davis Polk & Wardwell LLP*,
    No. 10-cv-9338, 2012 WL 734120 (S.D.N.Y. Mar. 6, 2012)................................................3, 5

*Austin* v. *Ford Models, Inc.*,
    149 F.3d 148 (2d Cir. 1998)...............................................................................................3

*BanxCorp* v. *Apax Partners, L.P.*,
    No. 10-cv-4769, 2011 WL 1253892 (D.N.J. Mar. 28, 2011) ...........................................2

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007)...........................................................................................................2

*Chambers* v. *Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)...............................................................................................3

*Hinds Cnty.* v. *Wachovia Bank N.A.*,
    620 F. Supp. 2d 499 (S.D.N.Y. 2009)...............................................................................2

*In re Crude Oil Commodity Litig.*,
    No. 06-cv-6677, 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ........................................5

*In re Elevator Antitrust Litig.*,
    502 F.3d 47 (2d Cir. 2007).................................................................................................2

*Metzler Inv. GmbH* v. *Credit Suisse Grp. AG*,
    No. 11-cv-7376 (S.D.N.Y. Oct. 20, 2011) .......................................................................3

OTHER AUTHORITIES

Fed. R. Civ. P. 8(a) ...................................................................................................................5

Fed. R. Civ. P. 9(b) ...................................................................................................................5

Fed. R. Civ. P. 12(b)(6).............................................................................................................1

Pursuant to Fed. R. Civ. P. 12(b)(6), defendant The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU") respectfully submits this memorandum in support of its motion to dismiss the amended complaints for failure to state a claim upon which relief can be granted.[1]

PRELIMINARY STATEMENT

Plaintiffs allege that all 16 banks involved in setting Dollar Libor engaged in a multi-year conspiracy to suppress Dollar Libor and thus violated the Sherman Act and the CEA, among other claims.  All of Plaintiffs' claims should be dismissed as to all defendants for the myriad reasons set forth in defendants' joint memoranda.  BTMU adopts all of the arguments set forth in those memoranda and submits this memorandum solely to underscore the Complaints' manifest deficiencies as to BTMU; not only have Plaintiffs failed to make *any* factual allegations implicating BTMU in any allegedly unlawful behavior, but they have affirmatively made allegations that BTMU *properly* set Dollar Libor.  Indeed, one of the named plaintiffs admitted in its pre-consolidated complaint that BTMU's Dollar Libor settings "***did not exhibit signs of manipulation***" (emphasis added).  BTMU was not a defendant in that action, or in 22 of the 24 other pre-consolidation actions.  Now, at the same time Plaintiffs use BTMU as the benchmark for alleging that other defendants may have set Dollar Libor too low, they name BTMU as a defendant based solely on conclusory group pleading about all "Defendants."  Plaintiffs cannot have it both ways.

ARGUMENT

**I.      PLAINTIFFS DO NOT ALLEGE A SHERMAN ACT VIOLATION BY BTMU.**

To withstand a motion to dismiss under Rule 12(b)(6), a complaint alleging a Sherman Act Section 1 claim must contain an "independent allegation of actual agreement

---

1       BTMU refers to the nearly identical amended complaints collectively as the "Complaints," and to the named class and the individual Schwab plaintiffs as "Plaintiffs."  BTMU cites only the OTC Complaint.

among" defendants or "enough factual matter (taken as true) to suggest that an agreement was made." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 556, 564 (2007).  The Complaints do not contain a single allegation of a communication or meeting between BTMU and any other defendant about the setting of Dollar Libor.  Instead, Plaintiffs offer conclusory allegations that "Defendants" engaged in a "global conspiracy" (OTC Compl. ¶¶ 4, 6), but such "global term[s]" fall far short of the "specific allegations that would tie each particular defendant to the conspiracy," as required by *Twombly*.  *BanxCorp* v. *Apax Partners, L.P.*, No. 10-cv-4769, 2011 WL 1253892, at *4 (D.N.J. Mar. 28, 2011).  Even where certain defendants are discussed (*see, e.g.*, OTC Compl. ¶¶ 94-6, 103, 104-07), BTMU is conspicuously absent, and such allegations against other defendants do not state a claim against BTMU.  *Hinds Cnty.* v. *Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 514 (S.D.N.Y. 2009) (suggestive allegations against one defendant "are too general to make an antitrust claim plausible as to any specific" other defendant).

Lacking direct allegations of an agreement, Plaintiffs rely on economic studies and general allegations of motive, which individually or collectively fail to allege "enough facts to 'nudge [Plaintiffs'] claims [against BTMU] across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).  To the contrary, some of these allegations can only be read to affirmatively support dismissal.

A.     **Plaintiffs Rely on Economic Analyses that Suggest that BTMU's Dollar Libor Settings Did Not Exhibit Signs of Manipulation.**

In the absence of factual allegations of concerted conduct, Plaintiffs rely on an academic study to allege that, in the absence of concerted suppression, a bank's Libor settings should be higher than and positively correlated with the spreads on credit default swaps ("CDS") on the bank's debt, which they assert reflect the market's view of the bank's odds of default. (*See* OTC Compl. ¶¶ 101-03 (quoting Connan Snider & Thomas Youle, Does the LIBOR Reflect

Banks' Borrowing Costs? (Apr. 2, 2010) (Viapiano Decl. Ex. 1[2])).)[3]  For the reasons set forth in

the joint memoranda, this study does not satisfy Plaintiffs' pleading burden as to any defendant,

but if it is credited at all, it is exculpatory as to BTMU.  The Complaints include a chart from the

same study that demonstrates that BTMU's Dollar Libor settings satisfied both criteria:  they

were higher than and generally positively correlated with its CDS spreads.  (OTC Compl. ¶ 102.)

Thus, in relying on Snider and Youle, Plaintiffs actually use BTMU's Dollar

Libor settings as the baseline from which to attempt to allege that *another bank* set Dollar Libor

too low.  (*Id*.)  In doing so, Plaintiffs necessarily concede that, under Snider and Youle's theory

relied on in the Complaints, BTMU properly set Dollar Libor.  These allegations warrant

dismissal of the Sherman Act claims as to BTMU.  *Anderson* v. *Davis Polk & Wardwell LLP*,

No. 10-cv-9338, 2012 WL 734120, at *11 (S.D.N.Y. Mar. 6, 2012) (the court "need not feel

constrained to accept as truth conflicting pleadings" that are "contradicted either by statements in

the complaint itself or by documents upon which its pleadings rely" (internal citation omitted)).

In fact, in its pre-consolidated complaint, named plaintiff Metzler Investment

GmbH ("Metzler") alleged that the same Snider and Youle study was based on "a comparison

between [another bank] and a panel member that *did not exhibit signs of manipulation*."  (Compl.

¶ 66, *Metzler Inv. GmbH* v. *Credit Suisse Grp. AG*, No. 11-cv-7376 (S.D.N.Y. Oct. 20, 2011)

(emphasis added) (Viapiano Decl. Ex. 2).)  That "panel member" was BTMU.  (*Id*.)  Even

though Metzler's admission was excised from the Complaints, Plaintiffs cannot "'erase[]'" it.

*Austin* v. *Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998) (amended complaint does not

"'erase[]' the admissions in" a previous complaint).  The current Complaints all name BTMU as

---

[2]     Citations to "Viapiano Decl." are to the Declaration of Christopher M. Viapiano, filed herewith.

[3]     Because Plaintiffs rely on articles in the Complaints, BTMU may rely on them in this motion, even if they are not attached to the Complaints.  *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

Case 1:11-md-02262-NRB   Document 173   Filed 06/29/12   Page 6 of 7

a defendant even though Plaintiffs continue to rely on the same study, explicitly identify BTMU as the comparison bank in the study, insert the graph from the study showing that BTMU properly set Dollar Libor and fail to add any factual allegations of wrongdoing against BTMU.

Plaintiffs also use BTMU as a point of comparison for the allegation about "cross-currency rank reversals." (OTC Compl. ¶ 104.) Relying on the same study, they allege that "some Defendants reported lower rates on USD-LIBOR than did other panel members but, for other currencies, provided higher rates than did those same fellow banks." (*Id*.) Ignoring the obvious differences in banks' access to particular currencies, as noted in the very study on which they rely, Plaintiffs allege as evidence of suppression that one bank set a lower Dollar Libor and a higher Yen Libor than BTMU. (*Id.*; Viapiano Decl. Ex. 1 at 6 (citing "bank-currency specific liquidity risks" as a potential explanation for rank reversals).) Leaving aside the fact that rank reversals fail to support allegations of suppression or concerted conduct, Plaintiffs' use of BTMU (again) as the basis for attempting to allege that another bank suppressed Dollar Libor inevitably leads to the conclusion that Plaintiffs' allegations do not state a claim against BTMU.

### B.    The Complaints' Core Motive Allegation Does Not Implicate BTMU.

Plaintiffs' one-size-fits-all allegations of "Defendants'" core motive for allegedly suppressing Dollar Libor is not only inadequate, but as to BTMU are contradicted by their own allegations. Plaintiffs allege that defendants did not want to reveal their actual borrowing costs (because higher costs may have signaled that a bank was in distress). (OTC Compl. ¶ 52.) But such a motive presumes that a bank's borrowing costs would have signaled distress. There are *no* allegations in the Complaints that BTMU was in distress or that its borrowing costs would have signaled distress. Not only do Plaintiffs exclude BTMU from the banks that allegedly faced "dire financial circumstances" during 2008 and 2009, but they include the graph from the Snider and Youle study demonstrating that the CDS spreads on BTMU's debt remained relatively

constant during this same period.  (*Id.* ¶¶ 128-38, 102.)  Plaintiffs' allegations establish that this

is an indication that the market perceived BTMU's odds of default (and thus its financial health)

as relatively constant.  (*Id*. ¶¶ 101-03.)  Thus, Plaintiffs' own, specific allegations contradict any

general conclusory allegations suggesting BTMU had a motive to understate its borrowing costs

to avoid questions about its financial health.  *See Anderson*, 2012 WL 734120, at *11.

## II.      PLAINTIFFS DO NOT ALLEGE A CEA VIOLATION BY BTMU.

To satisfy the heightened pleading requirements of Rule 9(b), Plaintiffs must

"specify what manipulative acts were performed [and] which defendants performed them."  *In re*

*Crude Oil Commodity Litig.*, No. 06-cv-6677, 2007 WL 1946553, at *6 (S.D.N.Y. June 28,

2007) (internal quotation omitted).  For the reasons set forth in the joint memorandum, Plaintiffs

fail to do so as to any defendant.  Indeed, their utter failure to allege specific manipulative acts

by BTMU, or facts giving rise to a strong inference of scienter, requires dismissal of the CEA

claims as to BTMU even under Rule 8(a).  After all, the Complaints rely on little more than

analyses that demonstrate, as one plaintiff has acknowledged, that BTMU's Dollar Libor settings

"did not exhibit signs of manipulation."  (Viapiano Decl. Ex. 2 ¶ 66.)

### CONCLUSION

For all of the foregoing reasons, and those urged in defendants' joint memoranda,

the Court should dismiss with prejudice and without leave to amend all claims against BTMU.

Dated:  June 29, 2012                                    Respectfully submitted,

s/ Daryl A. Libow
Daryl A. Libow (libowd@sullcrom.com)
Christopher M. Viapiano (viapianoc@sullcrom.com)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel:  (202) 956-7500; Fax:  (202) 956-6973

*Attorneys for The Bank of Tokyo-Mitsubishi UFJ, Ltd.*