MEMO ENDORSEMENT

*Application is denied for the reasons stated on the record on August 8, 2012. See transcript. So Ordered.*

*Naomi Reice Buchwald, USDJ*
*August 9, 2012*

**HAUSFELD**LLP

RECEIVED IN CHAMBERS
OF NAOMI REICE BUCHWALD

AUG - 1 2012

UNITED STATES COURT JUDGE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/10/2012

202.540.7200 phone
202.540.7201 fax
1700 K Street, NW
Suite 650
Washington, DC 20006

Michael Hausfeld
mhausfeld@hausfeldllp.com

RECEIVED IN CHAMBERS
OF NAOMI REICE BUCHWALD

AUG - 2 2012

UNITED STATES COURT JUDGE

August 1, 2012

**VIA FACSIMILE: (212) 805-7927**

The Honorable Naomi Reice Buchwald
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

    RE:    *In re LIBOR-Based Financial Instruments Antitrust Litigation,*
             Master File No. 11-MD-2262 (NRB)

Dear Judge Buchwald:

    In accordance with provision 2.A. of Your Honor's Individual Practices, we write on behalf of the Exchange-Based Plaintiffs, the Over-the-Counter Plaintiffs, the Bondholder Plaintiffs, and the Schwab Plaintiffs (collectively, "Plaintiffs")[1] in these multidistrict proceedings to request that the Court hold a pre-motion conference to address Plaintiffs' intention to move for leave to amend their complaints in light of material new facts regarding Defendants' alleged manipulation of the London InterBank Offered Rate ("LIBOR")—principally relating to U.S.-Dollar LIBOR—that have surfaced throughout the past month and continue to emerge. In connection with their anticipated motion(s) for leave to amend, Plaintiffs will also request that the Court vacate the existing briefing schedule for Defendants' motions to dismiss filed on June 29, 2012, to which Plaintiffs currently must respond by August 28, 2012. As detailed below, granting Plaintiffs' requests would promote the mutual interest of the Court and all parties to efficiently manage this litigation.

    The series of recent and still unfolding disclosures—including internal e-mails and other documents from the British Bankers' Association ("BBA"), the Bank of England, the Federal Reserve Bank of New York ("New York Fed"), and Barclays, as well as testimony before the British Parliament and the U.S. House of Representatives—began on June 27, 2012, only two days before Defendants submitted their motions to dismiss in these proceedings. That day, the U.S. Department of Justice ("DOJ"), the U.S. Commodity Futures Trading Commission ("CFTC"), and Britain's Financial Services Authority ("FSA") announced agreements with Defendant Barclays Bank PLC that collectively obligate Barclays to pay more than $450 million primarily due to making false submissions to the BBA principally in connection with the BBA's setting of U.S.-Dollar LIBOR, as well as the EuroInterbank OfferedRate("EURIBOR"). The agencies' factual findings that accompanied those settlements— including the DOJ's "Statement of Facts," which Barclays expressly admitted—detail misconduct involving Barclays and other members of the panel whose daily LIBOR submissions, or quotes, to the BBA determine LIBOR (collectively, the "LIBOR Panel Banks"). As the Court is aware, U.S.-Dollar LIBOR Panel Banks are Defendants in this litigation.

---

[1] Specifically, the cases are *Metzler Investment GmbH, et al. v. Credit Suisse Group AG, et al.*, No. 11-cv-2613 (asserting claims by the Exchange-Based Plaintiffs); *Mayor and City Council of Baltimore, et al. v. Bank of America Corp., et al.*, No. 11-cv-5450 (asserting claims by the Over-the-Counter Plaintiffs); *Gelboim, et al. v. Credit Suisse Group AG, et al.*, No. 12-cv-1025 (asserting claims by the Bondholder Plaintiffs); *Schwab Short-Term Bond Market Fund, et al. v. Bank of America Corp., et al.*, No. 11-cv-6409; *Charles Schwab Bank, N.A., et al. v. Bank of America Corp., et al.*, No. 11-cv-6411; and *Schwab Money Market Fund, et al. v. Bank of America Corp., et al.*, No. 11-cv-6412.

1049642.2

The Honorable Naomi Reice Buchwald
August 1, 2012
Page 2

    The agencies' findings, as well as emerging evidentiary materials recently released into the public domain, have revealed two types of misconduct. <u>First</u>, from about 2005 through 2007, and perhaps continuing into 2009, Barclays personnel submitted false LIBOR and EURIBOR quotes to the BBA at the behest of traders of interest-rate derivatives at Barclays who stood to benefit if LIBOR or EURIBOR were set at particular levels, and who on numerous occasions conspired with traders at other banks about setting those rates. *See, e.g.*, DOJ Statement of Facts ¶ 24 ("The likelihood that the LIBOR or EURIBOR fix would be affected increased when other Contributor Panel banks also manipulated their submissions as part of a coordinated effort."). <u>Second</u>, during the "financial crisis period" beginning around August 2007 and continuing through at least early 2009, Barclays submitted artificially low U.S.-Dollar LIBOR quotes to keep its submissions in line with the artificially suppressed U.S.-Dollar LIBOR quotes of its fellow banks so the market would not regard Barclays as financially worse off than its peers. In doing so, recently released evidentiary materials indicate, Barclays personnel communicated with other U.S.-Dollar LIBOR Panel Banks and brokers and knew in advance what quotes other Panel Banks would submit on a given day. *See, e.g.*, FSA Final Notice ¶ 117 (quoting a November 28, 2007 e-mail from a Barclays rate submitter stating, in part, "LIBORs are not reflecting the true cost of money. I am going to set 2 and 3 months, 5.13 and 5.12 probably at the top of the range of rates set by libor contributors, *although brokers tell me that* [Panel Bank 7] *is going to set at 5.15 for both* (up 8.5 and 10 from yesterday). The true cost of money is anything from 5-15 basis points higher.") (alteration in original) (emphasis added); FSA Final Notice ¶ 118 (referencing internal Barclays call where it was discussed in advance of submission that submitting a rate of 5.5 "would have been 20 basis points above the next highest submission" and would "cause a shit storm"); CFTC Order at 20 (directive from "Senior Barclays Treasury managers" that submissions "should be within ten basis points of the submissions by other U.S. Dollar panel banks"). Additionally, during a call with a BBA representative in or around April 2008, a senior Barclays Treasury manager stated that while Barclays had not been submitting accurate quotes, it "was not the worst offender of the panel bank members." CFTC Order at 23.

    Additional information indicating misconduct by LIBOR Panel Banks has streamed out over the past month and continues to flow. Those revelations include:

- Admissions to the British Parliament by Barclays' former CEO Robert Diamond that Barclays staff members consistently reported artificially low U.S.-Dollar LIBOR quotes to the BBA beginning in September 2007 and continuing for months;

- Documents released by the New York Fed indicating possible U.S.-Dollar LIBOR suppression during the financial crisis period; and

- Numerous media accounts detailing possible additional governmental action against other banks besides Barclays, including The Royal Bank of Scotland ("RBS"):

  -- On July 24, 2012, for example, *The Wall Street Journal* reported on "continuing criminal and civil scrutiny" that includes "more than a dozen traders *from at least nine banks*, often allegedly working together in small groups to target different interest rates on separate continents," according to people familiar with the probe. (Emphasis added). The *Journal* further reported, "The emerging details about traders suggest to investigators a widespread conspiracy that continued for several years and cascaded around the world." Moreover, upon recounting the details of the Barclays settlements, the *Journal* noted that, according to its sources, "U.S. and U.K. regulators aim to reach another settlement with a bank this fall." The *Journal* reported the following week that RBS "is negotiating a settlement with authorities" in connection with the LIBOR scandal, and "a deal, including fines, could be announced in the next few months, according to people familiar with the matter."

The Honorable Naomi Reice Buchwald
August 1, 2012
Page 3

— On July 26, 2012, *Bloomberg* reported that prosecutors in the U.S. "are preparing to file charges this fall against traders from several banks involved in a bid-rigging scheme to manipulate Libor rates, not just Barclays Plc, according to a person with knowledge of the investigation." The article added that the charges against those individuals, "which would probably be filed by October according to the person," focus on "alleged rate-fixing activity that goes beyond the conduct described in last month's settlement between Barclays and regulators in the U.S. and U.K."

In short, material facts that further support Plaintiffs' claims have come to light and, Plaintiffs expect, will continue to emerge over the coming months. And while Plaintiffs believe their current allegations satisfy the governing pleading standards, Plaintiffs cannot, of course, predict how the Court will rule on Defendants' motions seeking dismissal of the existing complaints in their entirety. Moreover, Plaintiffs believe that in addition to bolstering the claims they already assert, the emerging facts likely give rise to additional claims (and possibly defendants) and warrant expanding the current Class (or Relevant) Period. Given those potential modifications to the complaints, Plaintiffs wish to save the Court, as well as the parties, from spending valuable time addressing pleadings that do not fully reflect the expanding factual landscape of the LIBOR scandal—which, if the Court were to deem Plaintiffs' allegations partially or wholly deficient as currently pled, Plaintiffs would seek to amend.

We recently informed defense counsel of Plaintiffs' intention to approach the Court, and counsel responded yesterday that Defendants oppose further amendment of the complaints. Accordingly, and given the approaching deadline to oppose Defendants' existing motions to dismiss, Plaintiffs ask that Your Honor schedule a conference to address their requests that the Court (i) grant them leave to amend their complaints by November 1, 2012, (ii) vacate the existing motion-to-dismiss briefing schedule, and (iii) establish a new schedule for Defendants' answers or responsive motions with respect to the complaints to be filed.

We appreciate Your Honor's consideration of Plaintiffs' requests, and we are available to discuss these issues at the Court's convenience.

Respectfully,

Michael D. Hausfeld
HAUSFELD LLP
William C. Carmody
SUSMAN GODFREY L.L.P.
*Interim Co-Lead Counsel for the Over-the-Counter Plaintiffs*

David Kovel
KIRBY MCINERNEY LLP
Christopher Lovell
LOVELL STEWART HALEBIAN JACOBSON LLP
*Interim Co-Lead Counsel for the Exchange-Based Plaintiffs*

David H. Weinstein
WEINSTEIN KITCHENOFF & ASHER LLC
Karen L. Morris
MORRIS AND MORRIS LLC
COUNSELORS AT LAW
*Counsel for the Bondholder Plaintiffs*

Steven E. Fineman
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
*Counsel for the Schwab Plaintiffs*

cc:   All Counsel of Record (by e-mail)

1049642.2