**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION

MDL No. 2262
Master File No. 1:11-md-2262-NRB
ECF Case

THIS DOCUMENT RELATES TO:

CHARLES SCHWAB BANK, N.A., ET AL.,

Plaintiffs,

v.

BANK OF AMERICA CORPORATION, ET AL.

Defendants.

SCHWAB MONEY MARKET FUND, ET AL.,

Plaintiffs,

v.

BANK OF AMERICA CORPORATION, ET AL.,

Defendants.

SCHWAB SHORT-TERM BOND MARKET FUND, ET AL.,

Plaintiffs,

v.

BANK OF AMERICA CORPORATION, ET AL.,

Defendants.

**ORAL ARGUMENT REQUESTED**

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SCHWAB PLAINTIFFS' AMENDED COMPLAINTS**

## Table of Contents

**Page**

I. PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED ... 1

A. Plaintiffs' RICO Claims Are Barred By Section 107 Of The PSLRA ... 1

B. Plaintiffs Do Not Allege A Domestic Violation Of RICO ... 3

C. Plaintiffs Have Not Sufficiently Alleged Predicate Racketeering Acts Or A Pattern Of Racketeering ... 5

D. Plaintiffs Have Failed To Adequately Allege A RICO Conspiracy Claim ... 7

II. THE CALIFORNIA STATE LAW CLAIMS SHOULD ALSO BE DISMISSED ... 8

A. Plaintiffs Have Failed To State A Claim For Intentional Interference With Prospective Economic Advantage ... 8

B. Plaintiffs Have Failed To State A Claim For Breach Of An Implied Covenant ... 9

C. Plaintiffs Fail To State An Unjust Enrichment Claim ... 10

CONCLUSION ... 10

## Table of Authorities

### Cases

*ATSI Communications Investments v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d. Cir. 2007) ............. 6, 7

*Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F. 3d 321 (3d Cir. 1999) .......................... 2

*Baron v. Chehab*, No. 05 Civ. 3240(JES), 2006 WL 156828 (C.D. Ill. Jan. 20, 2006) ................. 2

*BioResource, Inc. v. U.S. PharmaCo Distrib., Ltd.*, No. C 10-1053 SI, 2010 WL 3853025 (N.D. Cal. Sept. 29, 2010)......................................................................................................... 8

*CGC Holding Co., LLC v. Hutchens*, No. 11 Civ. 01012, 2011 WL 5320988 (D. Colo. Nov. 1, 2011)................................................................................................................... 4

*Eagletech Comm'ns Inc. v. Citigroup, Inc.*, No. 07 Civ. 60668(ASG), 2008 WL 3166533 (S.D. Fla. June 27, 2008)........................................................................................................ 2

*Eldorado Stone, LLC v. Renaissance Stone, Inc.*, No. 04cv2562 JM (LSP), 2005 WL 5517731 (S.D. Cal. Aug. 10, 2005).......................................................................................... 9

*Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297 (S.D.N.Y. 2010) ......................................... 8

*European Cmty. v. RJR Nabisco, Inc.*, No. 02 Civ. 5771, 2011 WL 843957 (E.D.N.Y. Mar. 8, 2011).............................................................................................................. 3, 4

*FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362 (E.D.N.Y. 2002).................. 8

*Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914 (Cal. 2005) ....................................................... 9

*Gilmore v. Gilmore,* No. 09 Civ. 6230(WHP), 2011 WL 3874880 (S.D.N.Y. Sept. 1, 2011)........................................................................................................................... 2

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989)........................................................................ 7

*Hemi Grp., LLC v. City of New York*, 130 S.Ct. 983 (2010) ......................................................... 2

*In re Complete Mgmt. Inc. Secs. Litig.*, 153 F. Supp. 2d 314 (S.D.N.Y. 2001) ............................ 9

*Int'l Union of Operating Eng'rs, Stationary Eng'rs Local 39 Pension Trust Fund v. Bank of N.Y. Mellon Corp.*, No. C 11-03620 WHA, 2012 WL 476526 (N.D. Cal. Feb. 14, 2012)........................................................................................................................... 9

*Jerome M. Sobel v. Fleck*, No. 03 Civ. 1041RMB GWB, 2003 WL 22839799 (S.D.N.Y. Dec. 1, 2003) ................................................................................................................... 7

*Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937 (Cal. 2003) ........................................ 8

*Ling v. Deutsche Bank, AG*, No. 04 Civ. 4566(HB), 2005 WL 1244689 (S.D.N.Y. May 16, 2005)....... 2

*Love v. The Mail on Sunday*, No. CV057798ABCPJWX, 2006 WL 4046180 (C.D. Cal. Aug. 15, 2006)....... 10

*Malfatti v. Mortgage Elec. Registration Sys., Inc.*, No. C 11-03142 WHA, 2011 WL 5975055 (N.D. Cal. Nov. 29, 2011)....... 10

*Manantan v. Nat'l City Mortgage*, No. C-11-00216 CW, 2011 WL 3267706 (N.D. Cal. July 28, 2011)....... 10

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993)....... 7

*Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, No. 11-2861, 2012 WL 1657108 (N.D. Cal. May 10, 2012)....... 4

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268 (2d Cir. 2011)....... 1, 3

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 631 F.3d 29 (2d Cir. 2010)....... 3

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282 (S.D.N.Y. 2000)....... 6, 7

*Openwave Sys. Inc. v. Fuld*, No. C 08-5683 SI, 2009 WL 1622164 (N.D. Cal. June 6, 2009)....... 9

*Procapui-Productores de Camaroes de Icapui Ltda. v. Leyani*, 07-CV-6627(BSJ), 2010 WL 2720584 (S.D.N.Y. June 22, 2010)....... 7

*SEC v. Zandford*, 535 U.S. 813 (2002)....... 2

*Sony Music Entm't Inc. v. Robinson*, No. 01 Civ. 6415 (LMM), 2002 WL 272406 (S.D.N.Y. Feb. 26, 2002)....... 7

*Thomas H. Lee Equity Fund V LP v. Mayer Brown Rowe & Maw LLP*, 612 F. Supp. 2d 267 (S.D.N.Y. 2009)....... 1

*United States v. O'Hagan*, 521 U.S. 642 (1997)....... 2

**Other Authorities**

Cal. Civ. Proc. Code § 339....... 9

Defendants submit this reply memorandum of law in further support of their motion to dismiss the Schwab Plaintiffs' ("Plaintiffs") Amended Complaints with prejudice.

## I. PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED

### A. Plaintiffs' RICO Claims Are Barred By Section 107 Of The PSLRA

Plaintiffs argue that Section 107 of the PSLRA does not bar their RICO claims because Plaintiffs have not alleged that they relied on Defendants' conduct or that Defendants' conduct was undertaken "in connection with" the purchase or sale of securities. Plaintiffs also argue that Section 107 does not bar any of their RICO claims that are not based on instruments that constitute "securities." None of these arguments has any merit.

*First*, whether or not *Plaintiffs* themselves could assert a securities fraud claim by alleging reliance – and they attempted to do so in their original complaints – Section 107 bars Plaintiffs' RICO claims if *anyone* could assert such a claim.[1] *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 277-80 (2d Cir. 2011). Here, Plaintiffs have not shown that the SEC could not seek to bring a securities fraud claim based on Defendants' alleged conduct given that the SEC, unlike private litigants, need not prove reliance, loss causation, or damages. Accordingly, Section 107 bars Plaintiffs' RICO claims irrespective of whether Plaintiffs have or could have asserted a securities fraud claim. *See, e.g., Thomas H. Lee Equity Fund V LP v. Mayer Brown Rowe & Maw LLP*, 612 F. Supp. 2d 267, 282-83 (S.D.N.Y. 2009).

*Second*, Plaintiffs' assertion that Defendants' alleged fraudulent conduct was not undertaken "in connection with" the purchase or sale of securities fares no better. The Supreme Court has held that the phrase "in connection with" should be "construed 'not technically and restrictively, but flexibly to effectuate [the statute's] remedial purposes.'" *SEC v. Zandford*, 535

[1] Defendants do not concede that Plaintiffs' allegations state a securities fraud claim against them that could be brought by a private plaintiff.

U.S. 813, 819 (2002) (internal citation omitted). Consequently, a plaintiff need not establish that alleged misrepresentations were directed at buyers of specific securities to satisfy the "in connection with" requirement. *See United States v. O'Hagan*, 521 U.S. 642 (1997). Rather, a plaintiff can establish that conduct was "in connection with" the purchase or sale of securities when misrepresentations were disseminated to the public through a medium of communication upon which a reasonable investor would rely, or simply by alleging that the "scheme to defraud and the sale of securities coincide[d]." *Zandford*, 535 U.S. at 822.

Here, Plaintiffs have expressly linked Defendants' purported scheme to defraud to the purchase or sale of securities. For example, Plaintiffs allege that Defendants committed mail, wire, and bank fraud by selling LIBOR-based instruments in furtherance of an alleged scheme to defraud and with the intent to defraud investors. (Bond Compl. ¶¶ 5, 11, 38). Indeed, Plaintiffs emphasize the close connection between Defendants' alleged fraudulent scheme and their purchase of LIBOR-based instruments in an attempt to establish their standing under RICO.[2]

*Third*, even though Plaintiffs allege that most of the conduct involves "securities," Plaintiffs argue that two discrete categories of the financial instruments at issue arguably are not "securities." But Section 107 bars all RICO claims so long as at least some of the alleged predicate acts are actionable as securities fraud.[3]

[2] For the same reasons that Plaintiffs lack standing to assert their antitrust claims (*see* Antitrust Mem. 25-33 and Antitrust Reply 10-15), Plaintiffs also lack standing to assert their RICO claims. *See Hemi Grp., LLC v. City of New York*, 130 S.Ct. 983, 991 (2010) ("[I]n the RICO context, the focus is on the directness of the relationship between the conduct and the harm."); *see also id.* at 989-91.

[3] *See, e.g.*, *Gilmore v. Gilmore,* No. 09 Civ. 6230(WHP), 2011 WL 3874880, at *6 (S.D.N.Y. Sept. 1, 2011) ("[T]he securities aspects of the fraud must be aggregated with the non-securities aspects."); *Ling v. Deutsche Bank, AG*, No. 04 Civ. 4566(HB), 2005 WL 1244689, at *4 (S.D.N.Y. May 16, 2005) ("Essentially, the Court must . . . not parse out various steps. If one predicate act alleges breaches of duty coincident with securities transactions, the whole scheme is subject to the PSLRA bar."); *see also Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F. 3d 321, 329-30 (3d Cir. 1999); *Eagletech Comm'ns Inc. v. Citigroup, Inc.*, No. 07 Civ. 60668(ASG), 2008 WL 3166533, at *9 (S.D. Fla. June 27, 2008); *Baron v. Chehab*, No. 05 Civ. 3240(JES), 2006 WL 156828, at *8 (C.D. Ill. Jan. 20, 2006). Here, Plaintiffs allege that Defendants suppressed LIBOR in order to increase their profits through trades of various LIBOR-based instruments, most of which Plaintiffs acknowledge *were* securities. (Schwab Opp. 7; Bond Compl. ¶¶ 196-99).

Moreover, Section 107 would apply even if Plaintiffs had purchased no "securities," because, as discussed above, the conduct underlying the alleged RICO violations could form the basis of a securities fraud claim brought by *someone*. *MLSMK*, 651 F.3d at 277. Indeed, Plaintiffs maintain that Defendants' alleged conduct affected some "securities" (Schwab Opp. 7-10) and thus both the SEC and the purchasers of those securities could seek to bring a securities fraud claim. Consequently, it is irrelevant that some of the instruments at issue here may not be "securities."

**B. Plaintiffs Do Not Allege A Domestic Violation Of RICO**

Plaintiffs concede that the Second Circuit has "forbidden" the extraterritorial application of RICO (Schwab Opp. 11), but argue that they have sufficiently alleged a domestic RICO violation. Courts determine whether an alleged RICO violation is domestic by looking to (i) the location of the alleged enterprise or (ii) the place where the alleged predicate acts of racketeering occurred. Plaintiffs' attempts to satisfy either of these tests fail for several reasons.

*First*, Plaintiffs argue that this Court can infer that the alleged enterprise was located in the U.S. merely because three of the 16 USD LIBOR panel banks are headquartered here. But that does not support a reasonable inference that such banks made decisions regarding their USD LIBOR submissions in the U.S. In any event, the relevant question is the location of the alleged RICO enterprise – the BBA panel in London, England – not the three individual banks. Courts have held that the location of an enterprise cannot be based solely on the geographic location of its constituent parts.[4] Nor is an enterprise domestic merely because some of its members may have engaged in some conduct in the U.S. *See Norex*, 631 F.3d at 33. Rather, an enterprise's

[4] *See, e.g.*, *Norex Petroleum Ltd. v. Access Indus., Inc.*, 631 F.3d 29, 33 (2d Cir. 2010) (dismissing RICO claim even though alleged enterprise involved U.S. defendants), *cert. denied*, 180 L. Ed. 2d 913 (2011); *European Cmty. v. RJR Nabisco, Inc.*, No. 02 Civ. 5771, 2011 WL 843957, at *7 (E.D.N.Y. Mar. 8, 2011) (same), *app. pending*, No. 11-2475 (2d Cir. filed June 10, 2011).

location turns on where its overall policy "originates or the nerve center from which . . . its officers direct, control and coordinate all activities without regard to locale," in furtherance of its objectives. *European Cmty.*, 2011 WL 843957, at *6.

Plaintiffs argue that the alleged enterprise here was "decentralized" and that there was no single "nerve center." (Schwab Opp. 13). Even if an enterprise could have more than one "nerve center,"[5] this Court cannot infer that the U.S. was one of them absent facts suggesting that some critical part of the alleged scheme was "direct[ed]," "control[led]," or "coordinate[d]" from here. *European Cmty.*, 2011 WL 843957, at *6. Plaintiffs allege no such facts.[6]

*Second*, Plaintiffs note their allegations that Defendants, "including prominent U.S.-based banks," committed wire fraud by submitting "false LIBOR quotes electronically to the BBA" in London. (Schwab Opp. 15). But Plaintiffs have not alleged that any Defendant, even one headquartered in the U.S., sent its LIBOR submission from the U.S., rather than from a London office.[7] Nor do Plaintiffs allege any other domestic racketeering activity.

The only U.S. conduct described in the Barclays settlements consists of some instances in

---

[5] Some courts have viewed the "nerve center" test as focusing on the determination of a single location. *See, e.g.*, *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, No. 11-2861, 2012 WL 1657108, at *8 (N.D. Cal. May 10, 2012) ("nerve center" test "takes a sprawling network of decision makers and actors and reduces it, for legal purposes, to a single, simplified location").

[6] *Mitsui* – the only case Plaintiffs cite in support of their claim that a domestic enterprise may be inferred based entirely on the alleged participation of some U.S. defendants – actually demonstrates the weakness of Plaintiffs' argument. In *Mitsui*, the court explicitly held that the "domestic legal status" *of all three of the defendants* in that case was "not by itself dispositive" on the question of where the alleged enterprise was located. 2012 WL 1657108, at *7. Rather, the court found that the plaintiff had sufficiently alleged a domestic enterprise because the shipments of cargo into the U.S. that were at the heart of the alleged scheme were "arranged in substantial part within the [U.S.]" *Id.* The Amended Complaints lack any comparable allegations.

[7] The alleged racketeering activity in this case contrasts with the conduct alleged in *CGC Holding Co., LLC v. Hutchens*, No. 11 Civ. 01012, 2011 WL 5320988 (D. Colo. Nov. 1, 2011). In *CGC*, the defendants were alleged to have effected a phony loan scheme by, among other things, promoting the loan scheme in the U.S., sending loan documents directly to potential borrowers in the U.S., collecting advance fees from the U.S. borrowers, and sending an agent into the U.S. to inspect collateral. *Id.* at *4-11, 14. In contrast, Plaintiffs have alleged no domestic racketeering activity. Moreover, it would be implausible to infer any domestic racketeering activity given the facts that the BBA selects banks for inclusion on LIBOR panels "on the basis of [their] activity in the London market," that the U.S.-based panel members have London offices and that LIBOR submissions are made at 11 a.m. London time (6 a.m. New York time). *See* http://www.bbalibor.com/technical-aspects/setting-bbalibor (last visited Sept. 27, 2012).

which New York traders at Barclays allegedly made requests to Barclays submitters in London to influence the LIBOR submissions, downwards or *upwards*, for the purpose of benefitting the traders' own positions. *See* DOJ SOF ¶¶ 11-12, 15-16. This reported conduct is entirely inconsistent with Plaintiffs' RICO allegations—that Defendants conspired to *suppress* USD LIBOR submissions systematically—and does not plausibly suggest any wrongdoing by any other Defendants in the U.S., much less the existence of a domestic enterprise involving all Defendants.[8]

### C. Plaintiffs Have Not Sufficiently Alleged Predicate Racketeering Acts Or A Pattern Of Racketeering

As Defendants' opening submission shows (pp. 14-18), the allegations of predicate racketeering acts and a pattern of racketeering fail to satisfy Rule 9(b)'s heightened pleading standard because Plaintiffs (i) impermissibly lump all Defendants together, (ii) fail to allege specific facts sufficient to show mail, wire, or bank fraud, and (iii) fail to adequately allege specific facts that demonstrate a pattern of racketeering activity. Although Plaintiffs argue that their RICO claims are exempt from Rule 9(b) because facts relating to Defendants' purported fraudulent scheme are supposedly "almost exclusively within [Defendants'] knowledge," (Schwab Opp. 2), neither of the two cases they cite supports that proposition.

In *ATSI Communications Investments v. Shaar Fund, Ltd.*, despite noting that plaintiffs in a market manipulation case "need not plead manipulation to the same degree of specificity as a plain misrepresentation claim" because those claims could involve facts solely within the defendant's knowledge, the Second Circuit held that plaintiffs must set forth, with particularity,

---

[8] Nor is there any basis for Plaintiffs' claim that the mere existence of ongoing U.S. government investigations suggests that Defendants' alleged "misconduct had a significant U.S. connection." (Schwab Opp. 12). Allegations of pending government investigations are irrelevant as a matter of law. Moreover, Britain's FSA is conducting a LIBOR investigation, which, under Plaintiffs' theory, suggests that the FSA believes that any possible misconduct has a significant connection to Britain rather than the U.S.

"what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue." 493 F.3d 87, 102 (2d Cir. 2007) (internal citations and quotation marks omitted).[9]

Similarly, in *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, despite noting that certain RICO claims need not be specific as to each allegation of mail or wire fraud, this Court held that plaintiffs must allege with specificity "the contents of the communications, who was involved, where and when they took place, and . . . why they were fraudulent." 85 F. Supp. 2d 282, 301 (S.D.N.Y. 2000) (Buchwald, J.). This Court further noted that, "when fraud is alleged against multiple defendants, a plaintiff must plead with particularity *by setting forth separately* the acts or omissions complained of *by each defendant*." *Id*. at 293 (emphasis added). Consequently, this Court rejected as insufficient allegations involving specific transactions that the plaintiff claimed were representative of the defendants' manipulative practices and specific examples of omissions of material information because the plaintiff failed to "distinguish[ ] which of the [defendants] was specifically responsible for the failure to disclose, [or] distinguish[] how [the alleged] 'facts' relate to each party." *Id.* at 294.

Here, Plaintiffs do not come close to satisfying the pleading standards that are described in the very cases they cite because they do not separately set forth each Defendant's alleged conduct, they fail to make *any* allegations about a specific use of the mail or wires where the content is summarized and explained to be fraudulent, and they do not allege *who* used the mail

[9] In an effort to satisfy Rule 9(b), the plaintiffs in *ATSI* alleged market manipulation based on "(1) high-volume selling of ATSI's stock with coinciding drops in the stock price, (2) trading patterns around conversion time, (3) the stock's negative reaction to positive news, and (4) the volume of trades in excess of settlement during a 10-day period in 2003." 493 F.3d at 102. The Second Circuit rejected these allegations as too general, stating that "the inference [the plaintiff] asks us to draw is too speculative even on a motion to dismiss," and pointing out that "[n]owhere does [the plaintiff] *particularly* allege *what* the defendants did — beyond simply mentioning common types of manipulative activity — or state how this activity affected the market in [the plaintiff's] stock." *Id.* at 104 (emphasis added).

or wires, *when* they were used, *what* the communication said, or *why* it was fraudulent. Instead, Plaintiffs rely on the speculation of academics and describe actions taken by members of the USD LIBOR panel as part of their ordinary submission responsibilities, attempting to present this ordinary conduct as sufficient to satisfy the "who," "what," "where," and "when" elements of their alleged predicate acts. (Schwab Opp. 19-20). Like the allegations of irregularities in stock prices and trading patterns that were found insufficient in *ATSI*, Plaintiffs' claims lack the required specificity and instead "rel[y], at best, on speculative inferences." 493 F.3d at 103.[10]

The Barclays settlements do not cure Plaintiffs' pleading deficiencies. Plaintiffs continue to impermissibly lump all 16 Defendants together with vague references to communications between Barclays and individuals at unspecified "other LIBOR Panel Banks (almost all of whom are Defendants here) . . . ."[11] (Schwab Opp. 20). Such vague references are insufficient to provide the particularity required under Plaintiffs' own cases. *See ATSI,* 493 F.3d at 102; *Odyssey*, 85 F. Supp. 2d at 293.[12]

Finally, because Plaintiffs have not adequately alleged even a single predicate racketeering act, it necessarily follows that they cannot allege a pattern of racketeering activity. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989).

**D. Plaintiffs Have Failed To Adequately Allege A RICO Conspiracy Claim**

Plaintiffs' reliance on the Barclays settlements to allege a conspiracy fails because nothing in the Barclays settlements satisfies Plaintiffs' obligation to "set forth specific facts

---

[10] Plaintiffs' reliance on *Jerome M. Sobel v. Fleck* is also misplaced because in that case, unlike here, the complaint alleged "in detail" the fraudulent acts performed by the defendants for each year of the period at issue. No. 03 Civ. 1041RMB GWB, 2003 WL 22839799, at *3-7, 13 (S.D.N.Y. Dec. 1, 2003).

[11] Plaintiffs offer no citation to support their assertion that there were communications between Barclays and unspecified Defendants. Indeed, this assertion is contradicted by the Barclays settlement documents on which Plaintiffs rely. *See* FSA Final Notice ¶ 82 (noting that requests to influence Barclays' USD LIBOR submissions came from traders at "banks [that] did not contribute US dollar LIBOR submissions").

[12] *See also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *Procapui-Productores de Camaroes de Icapui Ltda. v. Leyani*, No. 07-CV-6627(BSJ), 2010 WL 2720584, at *3 (S.D.N.Y. June 22, 2010); *Sony Music Entm't Inc. v. Robinson*, No. 01 Civ. 6415 (LMM), 2002 WL 272406, at *5 (S.D.N.Y. Feb. 26, 2002).

tending to show that each of the defendants [consciously] entered into an agreement" to commit a RICO violation, *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 313 (S.D.N.Y. 2010), and "'state with specificity what . . . actions were taken [by each defendant] in furtherance of [the agreement].'" *FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 373 (E.D.N.Y. 2002) (citation omitted). The Barclays settlements do not even reference any of the Defendants, let alone plausibly suggest that any of them consciously conspired to suppress USD LIBOR or took any actions in furtherance of such a conspiracy. The Barclays settlements also fail to support Plaintiffs' RICO conspiracy claims for the additional reasons fully set forth in Defendants' Antitrust Reply (pp. 1-6).

## II. THE CALIFORNIA STATE LAW CLAIMS SHOULD ALSO BE DISMISSED

### A. Plaintiffs Have Failed To State A Claim For Intentional Interference With Prospective Economic Advantage

Plaintiffs' opposition fails to address the pleading failures of their intentional interference with prospective economic advantage claims, which must satisfy Rule 9(b).[13] *First*, Plaintiffs' conclusory assertion that they have sufficiently pled "independently wrongful" acts on the part of Defendants, specifically mail and wire fraud, in support of their claims fails for the reasons set forth in Section I.C.[14] *Second*, Plaintiffs fail to allege any facts showing that Defendants knew of Plaintiffs' alleged economic relationships with third-parties and, instead, claim that the Court should infer that Defendants knew of these alleged relationships. The authority cited by Plaintiffs provides no basis for this Court to draw such an unsupported inference.[15] *Third*,

---

[13] Plaintiffs' Cartwright Act claims, which are derivative of their federal antitrust claims, should be dismissed for the same reasons as their Sherman Act claims. *See* Schwab Mem. 24-25; *see also* Antitrust Mem. and Antitrust Reply.

[14] Plaintiffs must "plead and prove" wrongful acts apart from the alleged interference itself. *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003). Moreover, because Defendants' allegedly "independently wrongful" acts sound in fraud, Plaintiffs must satisfy Rule 9(b). *See BioResource, Inc. v. U.S. PharmaCo Distrib., Ltd.*, No. C 10-1053 SI, 2010 WL 3853025, at *3 (N.D. Cal. Sept. 29, 2010).

[15] For instance, in *Eldorado Stone, LLC v. Renaissance Stone, Inc.*, counterclaimant Renaissance made *specific* allegations about Eldorado's communications with a prospective employee of Renaissance – including disparaging

Plaintiffs fail to allege how each Defendant was involved in the alleged fraud that disrupted Plaintiffs' supposed relationships with third-parties.[16] *Finally*, Plaintiffs' intentional interference with prospective economic advantage claims should be dismissed for the independent reason that they are untimely.[17]

### B. Plaintiffs Have Failed To State A Claim For Breach Of An Implied Covenant

Plaintiffs argue that they have adequately pled claims for breach of an implied covenant of good faith because they have alleged that some of the Plaintiffs "contracted to purchase LIBOR-based financial instruments from Defendants" and that Defendants breached an implicit obligation in those contracts not to manipulate USD LIBOR. (Schwab Opp. 32-33). Plaintiffs fail to explain, however, how any Plaintiff that did not purchase a financial instrument from, and thus had no contractual relationship with, Defendants could assert a breach of the implied covenant claim.[18] Nor do Plaintiffs respond to Defendants' argument showing that the breach of the implied covenant claims must be dismissed as to any Plaintiff that purchased fixed-rate instruments from Defendants given that the only alleged bad faith necessarily occurred before

---

comments about Renaissance made to the prospective employee – which the court found gave "rise to an inference" that Eldorado knew of the relationship at issue between Renaissance and the prospective employee. No. 04cv2562 JM (LSP), 2005 WL 5517731, at *4 (S.D. Cal. Aug. 10, 2005). In contrast, Plaintiffs have failed to plead any specific facts about Defendants' knowledge of Plaintiffs' alleged relationships with third-parties.

[16] Rule 9(b) requires that Plaintiffs "'at a minimum, identify the role of each defendant in the alleged fraudulent scheme.'" *Openwave Sys. Inc. v. Fuld*, No. C 08-5683 SI, 2009 WL 1622164, at *5 (N.D. Cal. June 6, 2009) (citation omitted).

[17] Under California law, claims for intentional interference with economic advantage must be brought within two years. *See* Cal. Civ. Proc. Code § 339. California recognizes a discovery rule that delays accrual of an action until the plaintiff is or should be on inquiry notice of the action. *Fox v. Ethicon Endo-Surgery, Inc*., 110 P.3d 914, 920 (Cal. 2005). For the reasons set forth in the CEA Mem. (pp. 6-10) and CEA Reply (pp. 1-3), Plaintiffs were on inquiry notice more than two years prior to commencing their instant actions. Moreover, the cases Plaintiffs cite do not support their argument that inquiry notice was not triggered despite numerous reports raising potential issues with USD LIBOR. *See, e.g.*, *Int'l Union of Operating Eng'rs, Stationary Eng'rs Local 39 Pension Trust Fund v. Bank of N.Y. Mellon Corp*., No. C 11-03620 WHA, 2012 WL 476526, at *7 (N.D. Cal. Feb. 14, 2012) (inquiry notice not triggered where plaintiff had no indication that foreign exchange rates reported by defendants were false); *In re Complete Mgmt. Inc. Secs. Litig.*, 153 F. Supp. 2d 314, 337-38 (S.D.N.Y. 2001) (inquiry notice not triggered when earlier disclosures by defendants in offering documents did not "put a reasonable investor on notice that a fraud might be perpetrated").

[18] The Amended Complaints allege that Plaintiffs purchased financial instruments not only from Defendants, but also from other "issuers" or "third parties." (Bank Compl. ¶¶ 12, 192, 194).

those Plaintiffs entered into any contract. Finally, even as to those Plaintiffs that purchased floating-rate instruments from Defendants, the breach of the implied covenant claims still should be dismissed because Plaintiffs' failure to plead any of the express terms of the alleged contracts makes it impossible to determine whether those terms could give rise to the implied duties that were supposedly breached. *See, e.g.*, *Love v. The Mail on Sunday*, No. CV057798ABCPJWX, 2006 WL 4046180, at *7 (C.D. Cal. Aug. 15, 2006).

### C. Plaintiffs Fail To State An Unjust Enrichment Claim

To the extent that California courts even recognize an independent claim for unjust enrichment,[19] Defendants established in their opening submission that Plaintiffs' unjust enrichment claims must be dismissed as time-barred and as inadequately pled under Rule 9(b). Since an unjust enrichment claim is a quasi-contractual claim, the claims also must be dismissed as to any Plaintiff that is alleged to have a valid contract with any of the Defendants (*i.e.,* any Plaintiff that purchased a financial instrument from Defendants). Finally, as to any Plaintiffs that did not purchase a financial instrument from Defendants, the unjust enrichment claims must also be dismissed because Defendants could not have paid "unduly low interest rates" to those Plaintiffs and, thus, did not receive any alleged benefit at their expense.[20]

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' opening submission, Plaintiffs' Amended Complaints should be dismissed with prejudice.

Dated: New York, New York
September 27, 2012

---

[19] *But see Manantan v. Nat'l City Mortgage*, No. C-11-00216 CW, 2011 WL 3267706, at *6 (N.D. Cal. July 28, 2011).

[20] The only case cited by Plaintiffs in support of their unjust enrichment claim, *Malfatti v. Mortgage Elec. Registration Sys., Inc.*, No. C 11-03142 WHA, 2011 WL 5975055, at *3 (N.D. Cal. Nov. 29, 2011), involved claims that the defendant received a financial benefit directly from the plaintiff. No such direct benefit is alleged here with respect to those Plaintiffs that did not purchase financial instruments from Defendants.

RESPECTFULLY SUBMITTED,

/s/ Robert F. Wise, Jr.
Robert F. Wise, Jr.
Arthur J. Burke
Paul S. Mishkin
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
robert.wise@davispolk.com
arthur.burke@davispolk.com
paul.mishkin@davispolk.com
Telephone: (212) 450-4000
Fax: (212) 450-4800

*Attorneys for Defendants Bank of America Corporation and Bank of America, N.A.*

/s/ Daryl A. Libow
Daryl A. Libow
Christopher M. Viapiano
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
libowd@sullcrom.com
viapianoc@sullcrom.com
Telephone: (202) 956-7500
Fax: (202) 956-7056

*Attorneys for Defendant The Bank of Tokyo-Mitsubishi UFJ, Ltd.*

/s/ Andrew A. Ruffino
Andrew A. Ruffino
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
aruffino@cov.com
Tel: 212.841.1000

Alan M. Wiseman
Thomas A. Isaacson
1201 Pennsylvania Avenue N.W.
Washington, D.C. 20004
awiseman@cov.com
tisaacson@cov.com
Tel: 202.662.6000

Michael R. Lazerwitz
Joon H. Kim
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
mlazerwitz@cgsh.com
jkim@cgsh.com
Tel: 212.225.2000

*Attorneys for Defendants Citibank, N.A. and Citigroup, Inc.*

/s/ David R. Gelfand
David R. Gelfand
Sean M. Murphy
MILBANK TWEED HADLEY & McCLOY LLP
One Chase Manhattan Plaza
New York, New York 10005
dgelfand@milbank.com
smurphy@milbank.com
Telephone: (212) 530-5000

*Attorneys for Defendant Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.*

/s/ Herbert S. Washer
Herbert S. Washer
Elai Katz
Joel Kurtzberg
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, NY 10005
(212) 701-3000
hwasher@cahill.com
ekatz@cahill.com
jkurtzberg@cahill.com

Richard Schwed
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
(212) 848-4000
richard.schwed@shearman.com

*Attorneys for Defendant Credit Suisse Group AG*

/s/ Moses Silverman
Moses Silverman
Andrew C. Finch
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
msilverman@paulweiss.com
afinch@paulweiss.com
Telephone: (212) 373-3355

*Attorneys for Defendant Deutsche Bank AG*

/s/ Ed DeYoung
Ed DeYoung
Roger B. Cowie
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
Telephone: (214) 740-8614
Fax: (214) 740-8800
edeyoung@lockelord.com
rcowie@lockelord.com

Gregory T. Casamento
LOCKE LORD LLP
3 World Financial Center
New York, NY 10281
Telephone: (212) 812-8325
Fax: (212) 812-8385
gcasamento@lockelord.com

*Attorneys for Defendant HSBC Holdings plc and HSBC Bank plc*

/s/ Thomas C. Rice
Thomas C. Rice
Juan A. Arteaga
Joan E. Flaherty
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Fax: (212) 455-2502
trice@stblaw.com
jarteaga@stblaw.com
jflaherty@stblaw.com

*Attorneys for Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.*

/s/ Richard Williamson
Richard Williamson
Megan P. Davis
FLEMMING ZULACK WILLIAMSON ZAUDERER LLP
One Liberty Plaza
New York, New York 10006-1404
rwilliamson@fzwz.com
mdavis@fzwz.com
Telephone: (212) 412-9571
Fax: (212) 964-9200

*Attorneys for Defendant Lloyds Banking Group plc in 11-cv-6409, 11-cv-6411, and 11-cv-6412 only*

/s/ Richard Williamson
Richard Williamson
Megan P. Davis
FLEMMING ZULACK WILLIAMSON ZAUDERER LLP
One Liberty Plaza
New York, New York 10006-1404
rwilliamson@fzwz.com
mdavis@fzwz.com
Telephone: (212) 412-9571
Fax: (212) 964-9200

*Attorneys for Defendant HBOS plc in 11-cv-6409, 11-cv-6411, and 11-cv-6412 only*

/s/ Andrew W. Stern
Andrew W. Stern
Alan M. Unger
Nicholas P. Crowell
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
astern@sidley.com
aunger@sidley.com
ncrowell@sidley.com
Telephone: (212) 839-5300
Fax: (212) 839-5599

*Attorneys for Defendant The Norinchukin Bank*

/s/ Arthur W. Hahn
Arthur W. Hahn
Christian T. Kemnitz
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661
arthur.hahn@kattenlaw.com
christian.kemnitz@kattenlaw.com
Telephone: (312) 902-5200

*Attorneys for Defendant Royal Bank of Canada*

/s/ Robert G. Houck
Robert G. Houck
Alejandra de Urioste
James D. Miller
CLIFFORD CHANCE US LLP
31 West 52nd St.
New York, NY 10019
robert.houck@cliffordchance.com
alejandra.deurioste@cliffordchance.com
jim.miller@cliffordchance.com
Telephone: 212-878-8000

*Attorneys for Defendant The Royal Bank of Scotland Group plc*

/s/ Ethan E. Litwin
Ethan E. Litwin
Morgan J. Feder
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
litwin@hugheshubbard.com
feder@hugheshubbard.com
Telephone: (212) 837-6000

*Attorneys for Defendant Portigon AG (formerly known as WestLB AG)*