UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In RE:<br><br>LIBOR-Based Financial Instrument Antitrust Litigation<br><br>This Document Applies to:  All Cases | 11 MD 2262 (NRB) |
| LOS ANGELES COUNTY EMPLOYEES RETIREMENT ASSOCIATION,<br><br>            Plaintiff,<br><br>   v.<br><br>BANK OF AMERICA CORPORATION; BANK OF AMERICA, N.A.; BARCLAYS BANK PLC; CITIGROUP, INC.; CITIBANK, N.A.; COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A.; CREDIT SUISSE GROUP AG; DEUTSCHE BANK AG; HSBC HOLDINGS PLC; JPMORGAN CHASE & CO.; LLOYDS BANKING GROUP PLC; ROYAL BANK OF CANADA; ROYAL BANK OF SCOTLAND GROUP PLC; UBS AG; WESTLB AG; and WESTDEUTSCHE IMMOBILIENBANK AG,<br><br>            Defendants. | Case No. 13-cv-00398 (NRB) |

**LOS ANGELES COUNTY EMPLOYEES RETIREMENT ASSOCIATION'S APPLICATION FOR INCLUSION AS A PUTATUVE CLASS ACTION IN THE MDL <u>PURSUANT TO JUNE 14, 2012 ORDER</u>**

I.      **INTRODUCTION**

On January 17, 2013, the action captioned *Los Angeles County Employees Retirement Association v. Bank of America Corp., et al.*, Civ. No. 12-10903-CAS (AJW) (C.D. Cal.) was transferred and consolidated for pretrial purposes with this multi-district litigation ("MDL").[1] Pursuant to this Court's Order dated June 14, 2012 [ECF No. 152], Plaintiff Los Angeles County Employees Retirement Association ("LACERA"), on behalf of itself and all other California persons and entities that held, purchased or otherwise acquired from issuers or market participants other than the Defendants any financial instrument for which the rate of return was based upon the U.S. Dollar-denominated LIBOR ("USD LIBOR") at any time between January 1, 2005, and December 31, 2010 (the "California Indirect Purchaser Class"), by its undersigned attorneys, hereby submits its application detailing why the existing classes of plaintiffs in this MDL do not protect the California Indirect Purchaser Class and why the Court should appoint LACERA and its undersigned counsel as interim Lead Plaintiff and interim Lead Counsel, respectively, for a putative California Indirect Purchaser Class in the MDL.

II.     **THE CALIFORNIA INDIRECT PURCHASER CLASS IS NOT ADEQUATELY PROTECTED BY ANY EXISTING CLASS IN THE MDL**

A.      **The California Indirect Purchaser Class**

LACERA brings its action on behalf of itself and all other California persons and entities that held, purchased or otherwise acquired from issuers or market participants other than the Defendants any financial instrument for which the rate of return was based upon USD LIBOR at any time between January 1, 2005, and December 31, 2010 (the "Class Period"), and who were harmed by Defendants' manipulation of USD LIBOR. LACERA's Class Action Complaint

---

[1] *See Los Angeles County Employees Retirement Association v. Bank of America Corp., et al.*, Civ. No. 13-cv-00398-NRB (S.D.N.Y.).

("Complaint"), filed on December 21, 2012, asserts claims under California's unique antitrust statute, the Cartwright Act, which unlike the federal antitrust laws provides an explicit remedy for parties like LACERA and the California Indirect Purchaser Class who engaged in LIBOR-based investments and transactions with market participants other than the Defendants but were nonetheless harmed by Defendants' manipulation of USD LIBOR, which caused them to receive lower interest and other returns on their investments tied to USD LIBOR. LACERA's Complaint also asserts claims under the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"), and claims for unjust enrichment under common law.

### B. The Current Class Structure In The MDL Does Not Adequately Protect The Claims Of LACERA And The California Indirect Purchaser Class

Thus far, the Court has recognized four putative classes in this MDL: (i) the "Over-the-Counter Class"; (ii) the "Exchange-Based Class"; (iii) the "Bondholder Class"; and (iv) the "Community Bank Class." As explained below none of these putative classes adequately protects the claims and interests of LACERA and the California Indirect Purchaser Class.

#### 1. LACERA And The California Indirect Purchaser Class Are Uniquely Situated And Have Distinct Claims From The Existing Classes

Among the factors the Court will ultimately have to address in certifying any class (including subclasses) in this MDL is the definition of the class(es), and the class claims, issues or defenses for each. *See* Fed. R. Civ. P. 23(c)(1)(B). Here, the distinct claims, issues and defenses raised in LACERA's Complaint weigh heavily in favor of establishing a separate California Indirect Purchaser Class in the MDL.

As noted above, LACERA – a prominent California public pension fund – brings its action on behalf of itself and all other California persons and entities that held, purchased or otherwise acquired from issuers or market participants other than the Defendants any financial

instrument for which the rate of return was based upon the USD LIBOR at any time during the Class Period.  LACERA's Complaint asserts claims under California's antitrust statute, the Cartwright Act, as well as claims for unjust enrichment and violations of RICO.  As explained below, because of the unique identity and claims of LACERA and the California Indirect Purchaser Class, none of the existing classes in the MDL adequately protect their interests.

Most significantly, there is a strong California state interest that is not adequately protected by any of the existing classes.  LACERA is a California public pension fund that invests the pension and retirement savings of current and former employees of the County of Los Angeles, and the California Indirect Purchaser Class is comprised of California persons and entities.  The state of California has demonstrated an abiding commitment to protecting its residents and regulating the commercial activities occurring within the state's borders.  Indeed, California enacted its antitrust law, the Cartwright Act, in 1907 and has amended and updated the statute many times over the past century.  The California Supreme Court has emphasized the important goals of antitrust enforcement within the state:

> Antitrust laws are designed primarily to aid the consumer.  The rest 'on the premise that the unrestrained interaction of competitive forces will yield the best allocation of our economic resources, the lowest prices, the highest quality and the greatest material progress, while at the same time providing an environment conducive to the preservation of our democratic political and social institutions.'

*Marin Cnty. Bd. of Realtors, Inc. v. Palsson*, 16 Cal. 3d 920, 935 (1976) (quoting *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 4-5, 78 S. Ct. 514 (1958)).  The Federal Trade Commission has called California's Cartwright Act "a very strict antitrust law."[2]

---

[2] Federal Trade Commission, Report of the Federal Trade Commission on the Pacific Coast Petroleum Industry, Part II: Prices and Competitive Conditions, at p. 105 (1922).

California's Cartwright Act is "broader in range and deeper in reach" than the federal antitrust laws. *Cellular Plus, Inc. v. Super. Ct.*, 14 Cal. App. 4th 1224, 1242 (1993). Indeed, in 1978, the California legislature amended the Cartwright Act to confer standing on "any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter, . . . ***regardless of whether such injured person dealt directly or indirectly with the defendant***." Cal. Bus. & Prof. Code § 16750(a) (emphasis added). By contrast, the Supreme Court has held that "indirect purchasers" – purchasers downstream from the defendants in the chain of distribution – lack standing to assert claims under the Sherman and Clayton Acts. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 748, 97 S. Ct. 2061 (1977) ("*Illinois Brick*"). Similarly, California state and federal courts have held that the Cartwright Act encompasses a more expansive scope of antitrust injury than the federal statutory counterparts to include threats to competition in their incipiency. Accordingly, "the more restrictive definition of 'antitrust injury' under federal law does not apply to the Cartwright Act."[3]

Here, the Defendants in the MDL have already raised standing arguments in their motion to dismiss plaintiffs' antitrust claims, relying on the Supreme Court's decision in *Illinois Brick*, as well as arguments that plaintiffs fail to adequately allege an antitrust injury. *See* Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Antitrust Claims [ECF No. 166], at 25-34. These same arguments are inapplicable to the California Indirect Purchaser Class action because it asserts claims under California's Cartwright Act, which provides an explicit remedy for indirect purchasers and a more expansive definition of antitrust injury. Notably, ***none*** of the existing classes in the MDL asserts claims under California's

---

[3] *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F. 3d 979, 991 (9th Cir. 2000) (quoting *Celluar Plus*, 14 Cal. App. 4th at 1234).

Cartwright Act with its broader antitrust standing and injury provisions, or represents the unique interests of the California Indirect Purchaser Class in recovering for the harms caused in California by Defendants' misconduct. Accordingly, none of the existing classes in the MDL adequately protects the interests of LACERA and the California Indirect Purchaser Class.

    **2. The Over-The-Counter Class Does Not Protect The California Indirect Purchaser Class**

The "Over-the-Counter Class" is defined to include: "all persons or entities (other than Defendants and their employees, affiliates, parents, and subsidiaries) that purchased in the United States, ***directly from a Defendant***, a financial instrument that paid interest indexed to LIBOR ("LIBOR-Based Instrument") any time during the period August 2007 through May 2010." *See* Consolidated Amended Complaint [ECF No. 130], at ¶34 (emphasis added). The Over-The-Counter action is aimed at over-the-counter swaps and other non-exchange traded derivatives that track USD LIBOR, and brings claims primarily under federal antitrust laws. The Over-the-Counter action – unlike the California Indirect Purchaser action – does ***not*** assert any Cartwright Act claims. Most importantly, unlike the California Indirect Purchaser Class action, the Over-the-Counter action addresses transactions ***directly*** with a defendant and is not focused on California persons or entities. The Over-The-Counter Class does not seek to protect the interests of the California Indirect Purchaser Class, and has no substantive overlap with the subject matter of the California Indirect Purchaser Action.

    **3. The Exchange-Based Class Does Not Adequately Protect The California Indirect Purchaser Class**

The "Exchange-Based Class" includes "all persons, corporations and other legal entities (other than Defendants and their employees, affiliates, parents, subsidiaries and co-conspirators) that transacted in Eurodollar futures and options on Eurodollar futures on exchanges such as the CME [Chicago Mercantile Exchange] between August 2007 and May 2010 . . . and were harmed

by Defendants' manipulation of LIBOR." *See* Amended Consolidated Amended Complaint, 2012 WL 1522305, ¶221 (S.D.N.Y. Apr. 30, 2012). The Exchange-Based Class asserts claims under the Commodity Exchange Act, the Sherman Act, and certain common law claims; however, the Exchanged-Based Class action does ***not*** assert any Cartwright Act claims. By comparison, the California Indirect Purchaser Class action concerns financial instruments for which the rate of return was based upon USD LIBOR at any time between January 1, 2005 and December 31, 2010, and not solely transactions "in Eurodollar futures and options" on the Chicago Mercantile Exchange or any other futures exchange. Thus, while there may be some discreet potential transactions that overlap between the two actions, the disparate claims and unique defenses implicated – as well as the temporal and subject matter distinctions – between the two putative classes mitigates in favor of establishing a California Indirect Purchaser Class.

### 4. The Bondholder Class Does Not Adequately Protect The California Indirect Purchaser Class

The "Bondholder Class" includes owners of "any U.S. dollar denominated debt security (a) that was assigned a unique identification number by the [Committee on Uniform Securities Identification Procedure] CUSIP system; (b) on which interest was payable any time between August 2007 and May 2010 . . . ; and (c) where that interest was payable at a rate expressly linked to the U.S. Dollar Libor rate." *See* First Amended Complaint [ECF No. 131], at ¶1. The Bondholder Class action asserts claims exclusively under the Sherman Act and does ***not*** assert any Cartwright Act claims. As with the Exchange-Based Class, while there may be some possible overlapping transactions among the two actions, the disparate claims and unique defenses implicated by the federal antitrust claims versus the more expansive Cartwright Act claims asserted by LACERA weighs in favor of establishing a California Indirect Purchaser Class.

### 5. The Community Bank Class Does Not Protect The California Indirect Purchaser Class

The "Community Bank Class" includes community banks with under $1 billion of total assets "who issued loans in which the interest rates were tied to the USD LIBOR rate during the Relevant Period [between August 2006 and May 2010], and who suffered losses as a result." Community Bank & Trust Class Action Complaint, ¶¶1, 3, 7, 101; [12-cv-0402-NRB, ECF No. 1]. The Community Bank action also includes a sub-class of all such banks located within the State of Wisconsin. The Community Banks case asserts exclusively anti-racketeering claims and does not allege any antitrust claims, including any Cartwright Act claims. Although both actions assert RICO claims, the California Indirect Purchaser Class is not limited to Community Banks or loans in which interest rates were tied to USD LIBOR. Thus, there is no or no substantive overlap between the two cases.

### III. THE COURT SHOULD APPOINT LACERA AND ITS COUNSEL AS INTERIM LEAD PLAINTIFF AND INTERIM LEAD COUNSEL FOR THE CALIFORNIA INDIRECT PURCHASER CLASS

Having established above that the California Indirect Purchaser Class should be included as a separate class in this MDL, LACERA further submits that the Court should appoint LACERA as interim Lead Plaintiff and appoint its chosen counsel, Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz"), as interim Lead Counsel.

LACERA is an ideal representative to serve as Lead Plaintiff for the California Indirect Purchaser Class. LACERA is an experienced fiduciary with strong interests in protecting California residents and consumers. As set forth in its Complaint, LACERA is the largest county retirement system in the United States, providing retirement, disability, death and other benefits for more than 150,000 active and retired employees of Los Angeles County. LACERA Complaint, ¶28. LACERA's Board of Investments manages more than $38 billion in assets for

the benefit of its members. *Id*. During the proposed Class Period, January 1, 2005, through December 31, 2010, LACERA acquired or held millions of dollars of USD LIBOR-based financial instruments from issuers and market participants other than the Defendants and was damaged by Defendants' misconduct. *Id*.

LACERA's counsel in this action, Bernstein Litowitz, is also well qualified to serve as interim Lead Counsel for the California Indirect Purchaser Class. Bernstein Litowitz is among the most prominent and successful firms in the nation, with thirty years of experience representing plaintiffs in complex class actions. *See* Bernstein Litowitz's Firm Biography, attached as Exhibit A. Bernstein Litowitz has recovered billions of dollars for investors in complex class actions in courts across the country and maintains offices in New York, California, Chicago, and New Orleans. Accordingly, the Court should find that Bernstein Litowitz is qualified to serve as interim Lead Counsel for the California Indirect Purchaser Class.

### IV.   CONCLUSION

For all of these reasons, LACERA should be appointed as interim Lead Plaintiff and its counsel, Bernstein Litowitz Berger & Grossmann LLP should be appointed as interim Lead Counsel for the California Indirect Purchaser Class.

Dated: January 25, 2013                            Respectfully submitted,

                                                   BERNSTEIN LITOWITZ BERGER
                                                      & GROSSMANN LLP


                                                     */s/ Blair A. Nicholas*
                                                   ───────────────────────
                                                   BLAIR A. NICHOLAS
                                                   (blairn@blbglaw.com)
                                                   BENJAMIN GALDSTON
                                                   (beng@blbglaw.com)

12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:   (858) 793-0070
Fax:   (858) 793-0323

*Counsel for Plaintiff Los Angeles County Employees Retirement Association and the California Indirect Purchaser Class*

-9-