IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL PRODUCTS ANTITRUST LITIGATION | MDL NO. 2262<br>NO. 1:11-MD-02262-NRB |
| THIS DOCUMENT RELATES TO:<br>FTC CAPITAL GMBH, ET AL.,<br>　　　　　　　Plaintiffs,<br>　　　　v.<br>CREDIT SUISSE GROUP AG, ET AL.,<br>　　　　　　　Defendants. | ECF CASE<br><br>NO. 1:11-CV-2613-NRB<br><br>[EXCHANGE-BASED PLAINTIFF ACTION] |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR RECONSIDERATION OR REARGUMENT**

## **TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

*Banxcorp.* v. *Apax Partners, L.P.*,
  No. 10-4769, 2011 WL 1253892 (D.N.J. Mar. 28, 2011) ........................................................5

*CFTC* v. *Amaranth Advisors, L.L.C.*,
  554 F. Supp. 2d 523 (S.D.N.Y. 2008) ...................................................................................4

*CFTC* v. *Enron Corp.*,
  No. 03-909, 2004 WL 594752 (S.D. Tex. Mar. 10, 2004) ......................................................5

*CFTC* v. *Parnon Energy Inc.*,
  875 F. Supp. 2d 233 (S.D.N.Y. 2012) ...................................................................................4

*Hinds Cnty.* v. *Wachovia Bank N.A.*,
  620 F. Supp. 2d 499 (S.D.N.Y. 2009) ...................................................................................2

*In re Amaranth Natural Gas Commodities Litig.*,
  612 F. Supp. 2d 376 (S.D.N.Y. 2009) ..........................................................................2, 3, 4

*In re Commodity Exchange, Inc., Silver Futures & Options Trading Litig.*,
  No. 11-md-2213, 2012 WL 6700236 (S.D.N.Y. Dec. 21, 2012) ..........................................3, 4

*In re Crude Oil Commodity Litig.*,
  No. 06-6677, 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ..................................................4

*In re DDAVP Direct Purchaser Antitrust Litig.*,
  585 F.3d 677 (2d Cir. 2012) ...............................................................................................2, 5

*Kalnit* v. *Eichler*,
  264 F.3d 131 (2d Cir. 2001) .................................................................................................3

*Pension Comm. of Univ. of Montreal Pension Plan* v. *Banc of Am. Secs., LLC*,
  446 F. Supp. 2d 163 (S.D.N.Y. 2006) ...................................................................................5

*Prime Mover Capital Partners, L.P.* v. *Elixir Gaming Techs., Inc.*,
  793 F. Supp. 2d 651 (S.D.N.Y. 2011) ...................................................................................2

*SEC* v. *Lee*,
  720 F. Supp. 2d 305 (S.D.N.Y. 2010) ...............................................................................2, 5

*Shrader* v. *CSX Transp., Inc.*,
  70 F.3d 255 (2d Cir. 1995) ...................................................................................................1

*Small* v. *Nobel Biocare USA, LLC*,
  No. 05-3225, 2012 WL 952396 (S.D.N.Y. Mar. 21, 2012) .................................................. 1, 2

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a) .................................................................................................................. 3, 4

Fed. R. Civ. P. 9(b) .................................................................................................................. 1, 2

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 1

L.R. 6.3 ........................................................................................................................................ 1

Pursuant to Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, defendants The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU"), Credit Suisse Group AG ("Credit Suisse") and The Norinchukin Bank ("Norinchukin") (collectively, "Movants") respectfully submit this memorandum of law in support of their Motion for Reconsideration or Reargument of that portion of the Court's March 29, 2013 Memorandum and Order denying defendants' motion to dismiss the exchange-based plaintiffs' Commodity Exchange Act ("CEA") claims.

## PRELIMINARY STATEMENT

Movants appreciate that a motion for reconsideration should not be used to re-litigate issues that have already been decided by the Court, *Shrader* v. *CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), and seek reconsideration only of the Court's determination that plaintiffs adequately plead scienter for purposes of their CEA claims. Reconsideration is warranted because the Court did not apply well-settled law requiring plaintiffs to allege particularized facts that give rise to a strong inference of scienter for each defendant.[1] Because plaintiffs' complaint is devoid of such facts about Movants, the Court should dismiss the CEA claims as to Movants.

## STANDARD OF REVIEW

A motion for reconsideration is appropriate when a party "can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.*; *accord Small* v. *Nobel Biocare USA,*

---

[1] Defendants argued that plaintiffs' CEA claim should be dismissed for failure adequately to plead scienter in their joint opening and reply memoranda (Dkt. No. 168 at 24-27 ("Jt. Mem."); Dkt. No. 227 at 14-15) and in the supplemental memorandum filed by BTMU (Dkt. No. 173 at 5) ("BTMU Mem.").

*LLC*, No. 05-3225, 2012 WL 952396, at *1 (S.D.N.Y. Mar. 21, 2012). Simply put, "[t]he purpose of a motion for reconsideration . . . is to draw a court's attention to its prior missteps, whatever they may have been." *Small*, 2012 WL 952396, at *2 n.5 (granting in part motion for reconsideration based on "all relevant precedent").

## ARGUMENT

"Scienter, in relation to commodities fraud, is the intent to deceive, manipulate or defraud." *In re Amaranth Natural Gas Commodities Litig.* ("*Amaranth II*"), 612 F. Supp. 2d 376, 383 (S.D.N.Y. 2009) (internal quotation marks omitted). As the Court properly held, Rule 9(b) applies to plaintiffs' CEA claim (Mem. at 96) and "imposes a significant burden on allegations of scienter," *Amaranth II*, 612 F. Supp. 2d at 383. The facts alleged in the complaint must give rise to a "strong inference" of scienter. *Id.* at 384 (internal quotation marks omitted). "When the defendant is a corporate entity . . . the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite *scienter*." *Prime Mover Capital Partners, L.P.* v. *Elixir Gaming Techs., Inc.*, 793 F. Supp. 2d 651, 678 (S.D.N.Y. 2011) (internal quotation marks omitted).

"In a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible." *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2012); *accord SEC* v. *Lee*, 720 F. Supp. 2d 305, 321 (S.D.N.Y. 2010) (same) (cited in Jt. Mem. at 27 n.26); *see also Hinds Cnty.* v. *Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 514 (S.D.N.Y. 2009) (allegations against one defendant, "though suggestive, are too general to make . . . a claim plausible as to any specific" co-defendant and, thus, the court "cannot conclude that [the allegations] give 'reasonably founded hope that the [discovery] process will reveal relevant evidence to support a .

. . . claim' against the Joint Defendants *about whom the [complaint] makes no specific allegations*") (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 559 (2007)) (emphasis added)).

Facts demonstrating that defendants "had the motive and opportunity to commit the fraud" are sufficient to allege scienter only if they "entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *Amaranth II*, 612 F. Supp. 2d at 383 (internal quotation marks omitted).  "[M]otives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud." *Id*. (internal quotation marks omitted); *see also Kalnit* v. *Eichler*, 264 F.3d 131, 139-40 (2d Cir. 2001) (allegations of motive to conceal communications to protect compensation, avoid liability and create profit insufficient to allege scienter).

In allowing parts of plaintiffs' CEA claims to proceed as to all defendants, the Court concluded that "plaintiffs have adequately pleaded motive by alleging that defendants stood to gain concrete benefits from manipulating the price of Eurodollar futures contracts." (Mem. at 101; *see also id*. at 99 ("plaintiffs[] plausibly allege that defendants specifically intended to manipulate the price of Eurodollar futures contracts")).  But plaintiffs do not allege any facts to suggest that each (or any) Movant "took specific actions which exhibited an actual intent" to manipulate the price of Eurodollar futures contracts or made "specific communications . . . about any specific plan to cause artificial prices" in that market.  *In re Commodity Exchange, Inc., Silver Futures & Options Trading Litig.* ("*Silver Futures*"), No. 11-md-2213, 2012 WL 6700236, at *10-11 (S.D.N.Y. Dec. 21, 2012).  Critically, plaintiffs do not allege whether each Movant was long or short—a fact that is essential to showing that each Movant would have gained "concrete benefits" from the alleged manipulation of the price of those contracts.  Indeed,

plaintiffs' allegations are far less developed than those in *Silver Futures*, where plaintiffs' CEA claims were dismissed *for failure even to satisfy the more permissive pleading standard of Rule 8(a)*. *Id*. at *10-11 (declining to decide whether Rule 9(b) applied because allegations that defendants (i) were large holders of silver futures contracts, short puts and options, (ii) "bragged" about large trades that moved silver prices and (iii) made "unusual" physical deliveries of silver were insufficient to allege scienter even under Rule 8(a)).

The only *fact* that plaintiffs allege about Eurodollar futures contracts – and the only fact the Court cited in support of its conclusion that plaintiffs adequately alleged scienter – is that affiliates of *some* defendants traded Eurodollar futures contracts. (Am. Compl. ¶¶ 43, 218; Mem. at 100 (citing Am. Compl. ¶ 43).) The desire to profit from trading such contracts is precisely the kind of general motive possessed by most corporate defendants that is insufficient to adequately allege scienter. *Amaranth II*, 612 F. Supp. 2d at 383. In *In re Crude Oil Commodity Litigation*, this Court held that allegations that defendants (i) had a large presence in the oil market, (ii) had a large presence in the oil options market and (iii) traded OTC contracts in oil and thus stood to gain from the manipulation of the price of oil were insufficient to allege scienter because "[s]uch a generalized motive, one which could be imputed to any corporation with a large market presence in any commodity market, is insufficient to show intent." No. 06-6677, 2007 WL 1946553, at *8 (S.D.N.Y. June 28, 2007). Here, plaintiffs allege even less— they do not allege that each Movant traded Eurodollar futures contracts, that any Movant that did trade such contracts had a large presence in the market or that any Movant traded in such a way so as to profit from the alleged manipulation of the price of Eurodollar futures contracts.[2]

---

[2] Plaintiffs' allegations are also readily distinguishable from those made in cases where CEA claims have survived motions to dismiss. *See, e.g., CFTC* v. *Amaranth Advisors, L.L.C.*, 554 F. Supp. 2d 523, 532 (S.D.N.Y. 2008) (allegations of specific instant messages in which defendants revealed that they needed certain contracts to "get smashed" "could plausibly be interpreted to reflect . . . an intent" to manipulate); *CFTC* v. *Parnon Energy Inc.*,

Finally, while allegations of trading in the relevant market alone are insufficient to allege scienter, for seven of the 16 panel banks – including Movants BTMU and Norinchukin – plaintiffs do not even allege that these banks or their affiliates traded Eurodollar futures contracts. (*See* Am. Compl. ¶ 43.) Rather, the complaint "simply substitutes [Movants] with the general term[] 'defendants'" and implies (but does not allege) that these Movants or their unnamed affiliates also traded Eurodollar futures contracts. *Banxcorp.* v. *Apax Partners, L.P.*, No. 10-4769, 2011 WL 1253892, at *4 (D.N.J. Mar. 28, 2011). Such group pleading is clearly insufficient where pleading with particularity is required. *See Pension Comm. of Univ. of Montreal Pension Plan* v. *Banc of Am. Secs., LLC*, 446 F. Supp. 2d 163, 187 n.167 (S.D.N.Y. 2006) ("[P]laintiffs may not use collective references to a group of defendants as a pleading technique to blur important distinctions among defendants and evade the requirement that fraud be pled with particularity."). Plaintiffs' allegations simply do not show how each (or any) Movant possessed the specific intent to profit from the alleged manipulative acts.[3] Plaintiffs thus fail to satisfy their burden to plead specific intent as to each defendant under *DDAVP* and *Lee*.[4]

---

875 F. Supp. 2d 233, 250 (S.D.N.Y. 2012) (allegations of "multiple communications" about the manipulative strategy and its "'desired effect'" on the market sufficient to allege scienter); *CFTC* v. *Enron Corp.*, No. 03-909, 2004 WL 594752, at *7 (S.D. Tex. Mar. 10, 2004) (allegations traders purchased an "extraordinarily large natural gas position" and conveyed a desire to "'bid up'" the market sufficient to allege scienter).

[3] In their supplemental memoranda – which the Court did not explicitly address in its Memorandum – Movants noted the complaint's lack of specific factual allegations about them and, in the case of BTMU, specifically argued that plaintiffs fail to allege facts giving rise to a strong inference of scienter. (BTMU Mem. at 2, 5.) Norinchukin pointed out that it is *mentioned* only twice in the complaint: as a member of the BBA panel, and as a line item in various charts that merely list submitted rates without commentary. (Dkt. No. 171 at 2.) Credit Suisse argued that plaintiffs allege no specific facts sufficient to show that Credit Suisse had any motive to suppress Libor – which is part of the Court's basis for finding scienter here. (Dkt. No. 175 at 2-5.)

[4] Plaintiffs' allegations that certain defendants were motivated to suppress Dollar Libor to understate their borrowing costs or to lower the interest rates they paid on Libor-based financial instruments (Am. Compl. ¶¶ 46-47) are irrelevant to their CEA claims in light of the Court's holding that "plaintiffs do not even have standing to bring suit for commodities manipulation when framed as defendants' manipulation of LIBOR as the commodity underlying Eurodollar futures contracts" (Mem. at 111 & n.18). Even if plaintiffs' allegations were relevant, they are not specifically made as to Movants. (*See, e.g.*, Am. Compl. ¶ 47.)

**CONCLUSION**

For all of the foregoing reasons, the Court should grant Movants' Motion for Reconsideration or Reargument and dismiss with prejudice plaintiffs' CEA claims as to BTMU, Credit Suisse and Norinchukin.

Dated: April 12, 2013                    Respectfully submitted,

                                                s/ Daryl A. Libow
                                                Daryl A. Libow (libowd@sullcrom.com)
                                                Christopher M. Viapiano
                                                (viapianoc@sullcrom.com)
                                                SULLIVAN & CROMWELL LLP
                                                1701 Pennsylvania Avenue, N.W.
                                                Washington, D.C. 20006
                                                Tel: (202) 956-7500; Fax: (202) 956-6973

*Attorneys for The Bank of Tokyo-Mitsubishi UFJ, Ltd.*

s/ Herbert S. Washer
Herbert S. Washer (hwasher@cahill.com)
Elai Katz (ekatz@cahill.com)
Joel Kurtzberg (jkurtzberg@cahill.com)
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
Tel: (212) 701-3000; Fax: (212) 269-5420

*Attorneys for Credit Suisse Group AG*

s/ Andrew W. Stern
Andrew W. Stern (astern@sidley.com)
Alan M. Unger (aunger@sidley.com)
Nicholas P. Crowell (ncrowell@sidley.com)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5300; Fax: (212) 839-5599

*Attorneys for The Norinchukin Bank*