# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANICAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262 No. 1:11-MD-02262-NRB |
| THIS DOCUMENT RELATES TO: EXCHANGE-BASED PLAINTIFF ACTION | ECF CASE |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OR REARGUMENT

# TABLE OF CONTENTS

I.   ARGUMENT .................................................................................................... 1

    A.    **Plaintiffs Have Competently Alleged That Each Movant Committed Hundreds Of Manipulative Acts and Knew Of Thousands Of Simultaneous Manipulative Acts By Other Defendants** ................................... 2

    B.    **These Circumstances Go Far Beyond Those In The Cases On Which Defendants Rely And Permit A Reasonable Inference Of Each Movant's Manipulative Intent Under *DiPlacido* And Substantial Additional Authority** ................................................................................................... 3

        1.    ***DiPlacido*, Rule 9(b), And Other Authority** ............................................ 4

        2.    **Contrary To The Thrust Of Movants' Arguments, This Court Afforded The Movants The Benefit Of A More Strict Pleading Standard Than That Under *DiPlacido*** .................................................. 6

    C.    **Defendants Fail To Identify An Argument That They Made And The Court Overlooked** ................................................................................................... 7

II.  CONCLUSION ............................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Bishop v. Commodity Exch., Inc.*,
   564 F. Supp. 1557 (S.D.N.Y. 1983)................................................................. 5

*CFTC v. Amaranth Advisors, L.L.C.*,
   554 F. Supp. 2d 523 (S.D.N.Y. 2008)............................................................. 6

*CFTC v. Parnon Energy Inc.*,
   875 F. Supp. 2d 233 (S.D.N.Y. 2012)............................................................. 5

*Davey v. Dolan*,
   496 F. Supp. 2d 387 (S.D.N.Y. 2007)............................................................. 7

*DGM Invs., Inc. v. New York Futures Exch., Inc.*,
   265 F. Supp. 2d 254 (S.D.N.Y. 2003)........................................................... 10

*DiPlacido v. CFTC*,
   364 F. App'x 657 (2d Cir. 2009) ............................................................... 4, 5

*In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.*,
   No. 08 MD 1963, 2009 WL 2168767 (S.D.N.Y. July 16, 2009)................................ 7

*In re Commodity Exch., Inc., Silver Futures & Options Trading Litig.*,
   No. 11 MD 2213, 2012 WL 6700236 (S.D.N.Y. Dec. 21, 2012) ........................... 3, 4

*In re Crude Oil Commodity Litig.*,
   No. 06 Civ. 6677 (NRB), 2007 WL 1946553 (S.D.N.Y. June 28, 2007).................... 3

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11 MD 2262 (NRB), 2013 WL 1285338 (S.D.N.Y. Mar. 29, 2013)........................ *passim*

*In re Natural Gas Commodity Litig.*,
   358 F. Supp. 2d 336 (S.D.N.Y. 2005)............................................................. 5

*In re Sumitomo Copper Litig.*,
   182 F.R.D. 85 (S.D.N.Y. 1998) ................................................................... 9

*In the Matter of Global Minerals & Metals Corp.*,
   CFTC No. 99-11, 1999 WL 1023586 (CFTC Nov. 12, 1999)................................... 5

*In the Matter of: Anthony J. DiPlacido*,
   CFTC No. 01-23, 2008 WL 4831204 (CFTC Nov. 5, 2008)................................... 5

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
   244 F.R.D. 469 (N.D. Ill. 2007), *aff'd*, 571 F.3d 672 (7th Cir. 2009) ....................... 5

*Leist v. Simplot*,
   638 F.2d 283 (2d Cir. 1980), *aff'd sub. nom. Merrill Lynch Pierce, Fenner & Smith v. Curran*,
   456 U.S. 353 (1982)................................................................................. 9

*Lions Gate Entm't Corp. v. Icahn*,
   No. 10 Civ. 08169, 2011 WL 2462234 (S.D.N.Y. June 20, 2011)........................... 1

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,*
    322 F.3d 147 (2d Cir. 2003)........................................................................................ 1

*SEC v. Lee,*
    720 F. Supp. 2d 305 (S.D.N.Y. 2010)....................................................................... 9

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,*
    956 F.2d 1245 (2d Cir. 1992)..................................................................................... 1

*WestLB AG v. BAC Florida Bank,*
    No. 11 Civ. 5398, 2012 WL 4747146 (S.D.N.Y. Oct. 4, 2012) ................................ 1

**Rules and Statutes**

Commodity Exchange Act, 7 U.S.C. § 1 *et seq.* ......................................................... 1

Fed. R. Civ. P. Rule 9(b)........................................................................................ 4, 5, 9

Local Civil Rule 6.3................................................................................................... 7

# I.    ARGUMENT

The Exchange-Based Plaintiffs ("Plaintiffs") respectfully submit this memorandum in order to demonstrate that Defendants Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU"), Credit Suisse Group AG ("Credit Suisse") and Norinchukin Bank ("Norinchukin") (collectively, "Movants") have not satisfied their "heavy burden"[1] to show "overlooked" arguments and "exceptional circumstances"[2] warranting their requested reconsideration of this Court's holding that Plaintiffs have adequately alleged each Movant's intent to manipulate prices in violation of the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.* ("CEA").  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262 (NRB), 2013 WL 1285338, at *37-40 (S.D.N.Y. Mar. 29, 2013) ("Order") (upholding Plaintiffs' allegations of manipulative intent).

On the contrary, Movants fail to specify arguments that the Defendants raised but were overlooked in the Order. Defendants' Memorandum of Law In Support of Their Motion for Reconsideration or Reargument (Dkt. No. 297) ("Movants' Br.") *passim*.  This Court did not overlook any such argument.  *See* section I.C., *infra*.

Moreover, the only "exceptional circumstances" raised by this motion are the extremely extensive (perhaps unprecedented number of) manipulative acts committed by each of the Movants, the extremely close connection between LIBOR and Eurodollar futures contracts, and the Movants' conspicuous failure to mention the foregoing facts in their moving papers.

---

[1] A movant bears a "heavy burden," *WestLB AG v. BAC Florida Bank*, No. 11 Civ. 5398, 2012 WL 4747146, at *8 (S.D.N.Y. Oct. 4, 2012), and a court should not reconsider a prior ruling unless there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice."  *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)) (internal quotation marks omitted).

[2] A motion for reconsideration is "'properly granted only upon a showing of exceptional circumstances.'" *Lions Gate Entm't Corp. v. Icahn*, No. 10 Civ. 08169, 2011 WL 2462234, at *1 (S.D.N.Y. June 20, 2011) (citation omitted).

A.      **Plaintiffs Have Competently Alleged That Each Movant Committed Hundreds Of Manipulative Acts and Knew Of Thousands Of Simultaneous Manipulative Acts By Other Defendants**

Specifically, Plaintiffs alleged as follows:

1.   Defendant Norinchukin submitted to the British Bankers Association ("BBA") hundreds of specifically identified false reports regarding Norinchukin's LIBOR borrowing rate. Exchange-Based Plaintiffs' Consolidated Class Action Amended Complaint (Dkt. No. 134) ("Amended Complaint" or "AC") Figure 18 at 40.

2.   Defendant BTMU submitted to the BBA hundreds of specifically identified false reports regarding BTMU's LIBOR borrowing rate. *Id.*, Figure 12 at 34.

3.   Defendant Credit Suisse submitted to the BBA hundreds of specifically identified false reports regarding Credit Suisse's LIBOR borrowing rate. *Id.*, Figure 14 at 36.

4.   Each Movant further knew that other Defendants were making thousands of false LIBOR submissions. *Compare* AC ¶¶ 53-54, 184, 218-20, 230, *with* Order at *46 ("each defendant was aware that other defendants' LIBOR quotes did not reflect the rate at which those banks actually expected to borrow").[3]

5.   By manipulating LIBOR, Defendants manipulated Eurodollar futures contract prices. *Compare* AC ¶¶ 218-20, 230, *with* Order at **21, 46 ("by manipulating LIBOR, defendants allegedly manipulated the price of Eurodollar futures contracts, which is directly based on LIBOR").

---

[3] More completely, this Court found and held:

> [I]t is plausible that each defendant was aware that other defendants' LIBOR quotes did not reflect the rate at which those banks actually expected to borrow. Moreover, in light of the fact that Eurodollar futures contracts 'are the largest and most actively traded futures contracts,' . . . each bank likely knew that other banks had an interest in manipulating the price of Eurodollar contracts.

Order at *46 (internal citation omitted).

2

From the foregoing allegations and foregoing rulings by the Court, which Movants have conspicuously avoided mentioning in Movants' Br., the circumstances from which manipulative intent was to be inferred here were not that one lone Movant, by itself, merely made a few false LIBOR reports that could perhaps have been caused by mistakes in the reported numbers.  Nor did the circumstances from which manipulative intent was to be inferred involve a situation in which Eurodollar futures contract prices were substantially or even significantly different from LIBOR.

Rather, as alleged Movants and other Defendants knew that the others were simultaneously submitting false LIBOR reports over a long period with full knowledge that the connection between LIBOR and Eurodollar futures contracts was so complete that, as Defendants themselves stated during oral argument, a transaction in a Eurodollar futures contract was only a "bet[] . . . with respect to where LIBOR is going, up or down."  Tr. Oral Arg. at 26.

### B.    These Circumstances Go Far Beyond Those In The Cases On Which Defendants Rely And Permit A Reasonable Inference Of Each Movant's Manipulative Intent Under *DiPlacido* And Substantial Additional Authority

Thus, contrary to Movants' repeated assertions, there are far more particulars alleged against Movants in this case than were alleged against the defendants in the cases on which the Movants repeatedly rely[4] (or, perhaps, that have been alleged against defendants in any prior CEA manipulation case).  Indeed, in both *Silver* and *Crude Oil*, the courts relied on the facts that *no* administrative proceeding had been brought, and that plaintiffs had failed to allege even one specific manipulative act.  *Silver*, 2012 WL 6700236 at *21; *Crude Oil*, 2007 WL 1946553 at *6.

---

[4] *In re Commodity Exch., Inc., Silver Futures & Options Trading Litig.*, No. 11 MD 2213, 2012 WL 6700236 (S.D.N.Y. Dec. 21, 2012) ("*Silver*"); *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677 (NRB), 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ("*Crude Oil*").

In stark contrast, here, Plaintiffs have alleged with particularity hundreds of manipulative acts by each Movant as well as each Movant's knowledge of thousands of simultaneous additional manipulative acts by other Defendants.  *See, e.g.*, AC, Figures 1-19 at pp. 19-41; *see also id.* at ¶¶ 53-54.  Also, unlike in *Silver* and *Crude Oil*, agency proceedings have begun to be brought.[5]  These proceedings are very serious ones that have resulted in the resignation of top executives and hundreds of millions of dollars in civil monetary penalties.

Moreover, *Silver* found that the allegations of aiding and abetting manipulation were insufficient whereas even Movants have not contested the Order's upholding of the sufficiency of the allegations here of aiding and abetting manipulation.  *Compare Silver*, 2012 WL 6700236 at *19, *with* Order at *46 *and* Movants' Br. *passim* (failing to mention aiding and abetting but repeatedly mentioning manipulation, citing to manipulation cases, and exclusively phrasing the argument in terms of manipulation).

### 1.    *DiPlacido*, Rule 9(b), And Other Authority

The Second Circuit has set forth four elements of a CEA manipulation claim.  *See* Order, *36 (quoting *DiPlacido v. CFTC*, 364 F. App'x 657, 661 (2d Cir. 2009) ("*DiPlacido*")).  With regard to intent to manipulate prices, neither *DiPlacido*, nor any other Second Circuit or CFTC decision, nor Federal Rule of Civil Procedure 9(b), has imported the "strong inference of scienter" vocabulary and requirement from the federal securities fraud and the Private Securities Litigation Reform Act ("PSLRA") context into the CEA manipulation claim.  *E.g.*, *DiPlacido passim*; Fed. R. Civ. P. Rule 9(b) ("intent . . .  may be alleged generally").

---

[5] *E.g.*, DOJ Statement of Facts (Dkt. No. 209-3); CFTC June 27, 2012 Order (Dkt. No. 209-4); FSA Final Notice (Dkt. No. 209-5).

Instead, CEA manipulation is more in the nature of a restraint of trade.[6] Thus, *DiPlacido* affirmed the CFTC analysis inferring manipulative intent from circumstances. *Compare DiPlacido*, *with In the Matter of: Anthony J. DiPlacido*, CFTC No. 01-23, 2008 WL 4831204, at *27 (CFTC Nov. 5, 2008). The CFTC's reasoning in *DiPlacido* is consistent with numerous CFTC decisions which have held that intent to manipulate is to be reasonably inferred from circumstances. They have ***not*** been based upon "strong" or other elevated inference standards.

In addition, other decisions have purposely analyzed this issue solely as whether manipulative intent could be inferred from the circumstances. *See In re Natural Gas Commodity Litig.*, 358 F. Supp. 2d 336, 342-44 (S.D.N.Y. 2005) (applying Fed. R. Civ. P. 9(b) to false reporting manipulation under the CEA but limiting the requirement to the who, what and when of the manipulative acts, and conspicuously omitting any "strong inference of scienter" requirement); *see also Bishop v. Commodity Exch., Inc.*, 564 F. Supp. 1557, 1562 n.6 (S.D.N.Y. 1983) (not employing the "strong inference of scienter" vocabulary in finding that, if Rule 9(b) controlled, then plaintiff satisfied 9(b) as well); *Parnon*, 875 F. Supp. 2d at 249 ("Because 'proof of intent will most often be circumstantial in nature, manipulative intent must normally be shown inferentially from the conduct of the accused.'") (citations omitted); *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 244 F.R.D. 469, 482 (N.D. Ill. 2007) ("Intent is a subjective inquiry and 'must of necessity be inferred from the objective facts and may, or course, be inferred by a person's actions and the totality of the circumstances.") (citations omitted), *aff'd*, 571 F.3d 672 (7th Cir 2009); *CFTC v. Amaranth Advisors, L.L.C.*, 554 F. Supp. 2d 523, 532-3 (S.D.N.Y. 2008) (same).

---

[6] *CFTC v. Parnon Energy Inc.*, 875 F. Supp. 2d 233, 246 (S.D.N.Y. 2012) ("'Market manipulation in its various manifestations is implicitly an artificial stimulus applied to (or at times a brake on) market prices, a force which distorts those prices, a factor which prevents the determination of those prices by free competition alone.'") (citation omitted); *see also In the Matter of Global Minerals & Metals Corp.*, CFTC No. 99-11, 1999 WL 1023586, at *4 n.51 (CFTC Nov. 12, 1999) ("After all, manipulation is an example of an illegal restraint on trade.").

Applying the manipulative intent vocabulary and reasoning of *DiPlacido* and almost all other decisions on CEA manipulation, this Court could well have rested upon the foregoing facts. It could have found and held that the allegations of hundreds of manipulative acts by each Movant, accompanied by competent allegations of that Movant's knowledge of thousands of manipulative acts by other Defendants (*see, e.g.*, AC at ¶¶ 53-54) and the circumstance that Eurodollar futures prices were the inverse of LIBOR (*see id.* at ¶¶ 204, 206-07), sufficed to give rise to a reasonable inference of manipulative intent.

> **2.      Contrary To The Thrust Of Movants' Arguments, This Court Afforded The Movants The Benefit Of A More Strict Pleading Standard Than That Under *DiPlacido***

But this Court went further and, contrary to the apparent thrust of Movants' arguments, actually allowed Movants the benefit of a more strict pleading standard.  This Court ruled that Plaintiffs' allegations actually satisfied the PSLRA's standard of a strong inference of scienter for which Defendants argued.  Order at *37.  In addition to the specific allegations in the Amended Complaint, which was filed prior to the numerous government settlements with the Defendant Barclays PLC, and its affiliates Barclays Bank PLC and Barclays Capital Inc., ("Barclays"), this Court held and the parties knew that the record on the motion to dismiss included all the Barclays settlements.  *See, e.g.*, note 5, *supra*.

In such context, this Court properly relied upon the record from the Barclays settlements to supplement the allegations in the Complaint.  Order at *38.  Based on the combination of the Barclays' orders ***and*** the Amended Complaint, this Court held:

> [P]laintiffs[] plausibly allege that defendants specifically intended to manipulate the price of Eurodollar futures contracts.  Plaintiffs' amended complaint alleges concrete benefits that defendants stood to gain from manipulating Eurodollar futures contract prices. Specifically, plaintiffs allege that "subsidiaries or other affiliates of Defendants traded LIBOR-based financial instruments such as **Eurodollar** futures contracts at manipulated prices not reflecting fundamental supply and demand, to the direct benefit of Defendants."  [AC] ¶ 43; *see also id.* ¶

218 ("Defendants, through their broker-dealer affiliates[,] actively traded **Eurodollar** futures and options on those futures during the Class Period.").

Moreover, the Barclays settlement documents suggest that Barclays had a concrete economic interest in manipulating the price of **Eurodollar** contracts and, indeed, may have manipulated LIBOR for the express purpose of profiting on **Eurodollar** contracts.

* * *

As discussed above, scienter may be established by showing that defendants had both motive and opportunity. *See Crude Oil,* No. 06 Civ. 6677(NRB), 2007 WL 1946553, at *8 (S.D.N.Y. June 28, 2007). Here, plaintiffs have adequately pleaded motive by alleging that defendants stood to gain concrete benefits from manipulating the price of Eurodollar futures contracts. *See Amaranth II,* 612 F. Supp. 2d 376, 383 (S.D.N.Y. 2009). Additionally, defendants undeniably had the opportunity to manipulate Eurodollar contract prices by submitting artificial LIBOR quotes. Therefore, plaintiffs' allegations give rise to a strong inference of scienter.

Order at *38 (emphasis added).

### C. Defendants Fail To Identify An Argument That They Made And The Court Overlooked

"A motion for reconsideration is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved." *In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.*, No. 08 MD 1963, 2009 WL 2168767, at *1 (S.D.N.Y. July 16, 2009) (quoting *Davey v. Dolan*, 496 F. Supp. 2d 387, 389 (S.D.N.Y. 2007)) (internal quotation marks omitted).[7] In seeking reconsideration here, Movants have not identified any argument that Defendants previously made and the Court overlooked. [8]

---

[7] Although Movants request either reconsideration or "reargument", Local Civil Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rule 6.3") makes clear that argument is not typical on a motion for reconsideration, and Movants have not provided any explanation as to why the issue they raise cannot be resolved on the papers.

[8] Movants urge the Court to follow this Court's previous holding in *Crude Oil*. All Defendants, including Movants, heavily briefed and relied upon *Crude Oil* in their motion to dismiss and improperly repeat these arguments here to request reconsideration. But the Court already distinguished *Crude Oil*, in which plaintiffs attempted to plead manipulation through "wholly speculative" actions, unidentified market players, and unattributed non-specific false statements, from Plaintiffs' allegations here that identify the exact market players on the BBA panel, the specific means by which they manipulated LIBOR and resulting concrete benefits to Defendants. *See* Order at **38, 46.

First, referring to allegations made prior to the Barclays settlement, Movants argue that Plaintiffs alleged that only seven Defendants intended to manipulate Eurodollar futures contract prices. Movants' Br. at 5. But neither Movants nor other Defendants made an argument that Plaintiffs alleged that only seven Defendants intended to manipulate Eurodollar futures contracts. *See, e.g.*, BTMU Supp. Mem. at 1 ("Plaintiffs allege that all 16 banks involved in setting Dollar Libor engaged in a multi-year conspiracy to suppress Dollar LIBOR and thus violated the Sherman Act and the CEA, among other claims.") (Dkt. No. 173).[9]

Moreover, even pre-Barclays settlement, Plaintiffs expressly alleged: "Defendants, through their broker-dealer affiliates[,] actively traded Eurodollar futures and options on those futures during the Class Period." AC at ¶ 218. Thus, especially post-Barclays, the reasonable inference was, as this Court correctly found, that Movants had related concrete motive and benefit. Order at *37-39.

Second, Movants argue that this Court erred "critically" because it supposedly overlooked Defendants' prior argument that Plaintiffs did not allege whether each Defendant was long or short Eurodollar futures contracts. Movants' Br. at 3. However, once again, Defendants did not previously argue that Plaintiffs failed to allege whether Defendants were long or short Eurodollar futures contracts. *See* note 9, *supra*. Further, practically speaking, Movants may receive "concrete benefits" from being short **or** long a futures contract depending upon the relative timing of the entry or the exit of the position. Thus, Movants' new argument depends upon a false dichotomy.[10] This Court overlooked nothing here.[11]

---

[9] *See also* Norinchukin Supp. Mem. (Dkt. No. 171); Credit Suisse Supp. Mem. (Dkt. No. 175); Credit Suisse and BTMU Supp. Reply Mem. (Dkt. No. 229); Joint Defs' Mem. and Reply Mem. (Dkt. Nos. 168, 227).

[10] When a price is impacted by a factor that is not legitimate – such as understated LIBOR – "'the resulting price is necessarily artificial.'" *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 91 (S.D.N.Y.

Third, Defendants rely upon *SEC v. Lee* and other cases in order to argue that the Court supposedly overlooked the general proposition that, in a case involving multiple defendants, Plaintiffs must plead under Fed. R. Civ. P. 9(b) circumstances providing a factual basis for each defendant's scienter (*i.e.*, the who, when, how and why each defendant should have known of the fraud).[12]  However, this Court overlooked no such thing.  Instead, this Court correctly found and held that, as to each Defendant (including Movants), Fed. R. Civ. P. 9(b) was satisfied.  Order at **38-39 ("plaintiffs have satisfied Rule 9(b). They have alleged "what manipulative acts were performed" – submitting artificial LIBOR quotes to the BBA – and "'which defendants performed them' – each defendant.").  *Id.* at *39.[13]

The Court expressly held that Plaintiffs are not required, and cannot be expected, at this stage of the litigation to identify "precisely how" each Defendant's LIBOR quote on each day of the Class Period was artificial or inaccurate.  Order at *39. (noting that it is defendants, if anyone, that possess this information and thus Rule 9(b)'s requirements are relaxed). "Dismissal

---

1998) (citation omitted).  The focus is not on the ultimate price, but on the nature of the factors causing it. Price manipulation turns on the existence of "artificial prices;" it does not matter whether those prices were artificially high or artificially low.  In *Leist v. Simplot*, for example, the Court sustained plaintiffs' claims that the market was simultaneously manipulated upwards by longs and downward by shorts.  *Leist v. Simplot*, 638 F.2d 283, 290-91 (2d Cir. 1980), *aff'd sub. nom. Merrill Lynch Pierce, Fenner & Smith v. Curran*, 456 U.S. 353 (1982)

[11]  In addition, it would be an impossible standard if Plaintiffs were required to plead Movants' precise trading positions – information solely within their possession.  *See* Order at *37 (applying a relaxed Rule 9(b) to "facts solely within defendant's knowledge")(citation omitted).

[12]  In *SEC v. Lee*, the court denied defendants' motion to dismiss the complaint, holding that plaintiff had sufficiently established misstatement and intent prongs of fraud for each defendant by providing "specific examples of how the alleged fraudulent scheme was carried out" when defendants sent out "market quotes" that "were not what they purported to be."  *SEC v. Lee*, 720 F. Supp. 2d 305, 327 (S.D.N.Y. 2010).  The holding in *Lee* is similar to this Court's holding in the instant action.

[13]  In addition, the Court found that Plaintiffs alleged with sufficient particularity "what effect the scheme had on the market" by alleging that "LIBOR is directly incorporated into the settlement price of Eurodollar futures contracts" and consequently "strongly affects the trading price of Eurodollar contracts prior to settlement."  Order at *39.  Based on the information depicted in graphs in Plaintiffs' Amended Complaint showing how LIBOR, as well as individual Movants' LIBOR quotes, suspiciously diverged from certain benchmarks, the Court further found that Plaintiffs had sufficiently alleged which LIBOR quotes were artificial and by approximately how much during the Class Period.  *Id.* at *40.

on the ground that facts within Defendants' knowledge have not yet been proven in the pleading

stage is 'particularly inappropriate.'" *DGM Invs., Inc. v. New York Futures Exch., Inc.*, 265 F.

Supp. 2d 254, 264 (S.D.N.Y. 2003) (citation omitted).

## II.    CONCLUSION

For the foregoing reasons, Movants' Motion for Reconsideration or Reargument of the

Court's March 29, 2013 Order should be denied.

Dated:  April 29, 2013
New York, New York

By:        */s/ David Kovel*
           David Kovel
           **KIRBY McINERNEY LLP**
           825 Third Avenue, 16th floor
           New York, New York 10022
           Telephone: (212) 371-6600
           Email: dkovel@kmllp.com


By:        */s/ Christopher Lovell*
           Christopher Lovell
           **LOVELL STEWART HALEBIAN
           JACOBSON LLP**
           61 Broadway, Suite 501
           New York, New York 10006
           Telephone: (212) 608-1900
           Email: clovell@lshllp.com

*Interim Co-Lead Counsel for Exchange-Based Plaintiffs
and the Class*