**MORRIS and MORRIS LLC**
**COUNSELORS AT LAW**
4001 Kennett Pike, Suite 300
Wilmington, DE 19807
(302) 426-0400

**WEINSTEIN, KITCHENOFF**
**& ASHER LLC**
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
(215) 545-7200

April 30, 2013

**BY FAX**
Honorable Naomi Reice Buchwald
United States District Judge
500 Pearl Street
New York, NY 10007-1312



RECEIVED
OF NAOMI REICE BUCHWALD

APR 30 2013

UNITED STATES COURT JUDGE

   Re: *In re LIBOR-Based Financial Instruments Antitrust Litigation,*
     11-MD-2262 (NRB)

Dear Judge Buchwald:

   This letter is respectfully submitted on behalf of the Bondholder Plaintiffs in response to Mr. Wise's letter of April 24, 2013. In his letter, Mr. Wise argues on behalf of the Defendants that the Court should deny the request of the OTC and Bondholder Plaintiffs for leave to file motions for leave to amend their complaints, contending that such motions would be improper and that such amended pleadings would be futile. The Bondholder Plaintiffs respectfully submit that their proposed motion is not improper, and that the appropriate context for Defendants' arguments regarding futility of the proposed amended pleadings would be in briefing in opposition to the proposed motions.

   The Court's March 29 Memorandum and Order (the "Order") explicitly suggested factual allegations that would cure the deficiencies found. The Order dismissed Plaintiffs' antitrust claims based on the Court's finding that "plaintiffs' allegations do not make out a plausible argument that they suffered an antitrust injury." (Order at 47). In so ruling, the Court stated that "Although there might have been antitrust injury if defendants had restrained competition in the market for LIBOR-based financial instruments . . ., plaintiffs have not alleged any such restraint on competition," (Order at 31-32) and that "plaintiffs have not alleged that defendants' alleged fixing of LIBOR caused any harm to competition between sellers of those instruments or between buyers of those instruments." (Order at 32). Furthermore, the Court's ruling omits reference to the market for floating rate bond funding, in which US Dollar LIBOR is the primary determinant of prices paid by issuers to bondholders for the use of their funds over the term of the bond. These aspects of the Court's Order suggest that the Court's rulings concerning the deficiency of the Bondholder Plaintiffs' antitrust injury pleadings can be cured in an amended pleading.

   Second Circuit authority holds that, following dismissal for failure to state a claim, a curative amendment should normally be allowed: "Where the possibility exists that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course." *Oliver Schools, Inc. v. Foley,* 930 F.2d 248, 253 (2d Cir. 1991*); see also Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991) ("[I]t is

Judge Naomi Reice Buchwald
April 30, 2013
Page 2

rare that such leave should be denied." (citation omitted)). This permissive rule is consistent
with the Second Circuit's "strong preference for resolving disputes on the merits," *Williams v.
Citigroup Inc.,* 659 F.3d 208, 212-213 (2d Cir. 2011), and with the Supreme Court's holding in
*Foman v. Davis,* 371 U.S. 178, 182 (1962) (leave to amend should be "freely given," unless the
Court finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure
to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party
by virtue of allowance of the amendment, [or] futility of amendment."). Given the Order's
explicit statements concerning deficiencies of Plaintiffs' allegations and the applicable
authorities regarding leave to cure such deficiencies, the Bondholder Plaintiffs respectfully
submit that their proposed Rule 15 motion is by no means improper.

Defendants' futility argument is premature. Futility is a basis to deny a motion for leave
to amend, but no such motion has yet been filed. Only after such a motion is filed, with a
proposed amended complaint attached, would the necessary record be made upon which the
issue of futility could be properly resolved. Defendants' attempt to convert Your Honor's pre-
motion letter and conference practice into a forum for foreclosing, on a truncated record, the
Bondholder Plaintiffs' proposed motion under Rule 15 is inappropriate and inconsistent with
Rule 83. *See Fruit of the Loom, Inc. v. American Marketing Enterprises, Inc.,* 192 F.3d 73, 76
(2d Cir. 1999) (individual practice rules may not be applied in a manner inconsistent with the
Rules of Civil Procedure).

Even if Defendants' futility argument were appropriate at this time, the Bondholder
Plaintiffs' proposed motion for leave to amend will be accompanied by a Proposed Second
Amended Complaint containing allegations that satisfy the antitrust injury requirement. The
Proposed Second Amended Complaint would include, *inter alia,* detailed allegations of fact
addressing the following matters:

(1) Defendants' collusion reduced competition in the market for LIBOR-based financial
instruments, and, particularly, in the market for USD LIBOR-based floating rate debt
funding, in which they competed as purchaser/borrowers;

(2) Defendants subverted the BBA LIBOR setting process to achieve an anticompetitive
effect:

(a) the BBA (including the USD LIBOR panel) constitutes a trade association consisting
of horizontal competitor banks;

(b) the BBA LIBOR setting process, as a standard setting process of a trade association
consisting of horizontal competitors setting a financial industry standard affecting
price in multiple markets, raised threats to competition;

(c) those threats to competition were mitigated, arguably, only to the extent there was
actual compliance with the BBA LIBOR panel rules, which were designed to assure
that LIBOR was set and moved from day to day based on competition;

Judge Naomi Reice Buchwald
April 30, 2013
Page 3

> (d) as the members of the USD LIBOR panel acting in concert, Defendants had the power
> to control LIBOR, which was the primary determinant of prices paid by issuers to
> USD LIBOR-based bondholders for the use of the bondholders' money over the term
> of the bond; and
>
> (e) any arguably pro-competitive benefit of the LIBOR setting process was lost when
> Defendants colluded to subvert the USD LIBOR setting process by continuing it,
> albeit with the BBA LIBOR panels rules revoked or suspended, in order to suppress
> USD LIBOR during the Class Period;
>
> (3) no individual Defendant could have sustained falsely suppressed USD LIBOR
> submissions in violation of the BBA LIBOR panel rules, for the duration and to the
> degree alleged by Plaintiffs, absent the agreement of the other Defendants;
>
> (4) by agreeing to continue the USD LIBOR setting process with the LIBOR panel rules
> effectively revoked or suspended, the Defendants agreed not to compete in the signaling
> of their relative creditworthiness through the LIBOR setting process;
>
> (5) Defendants' suppression of prices in the market for USD LIBOR-based debt funding was
> anticompetitive and posed economic social welfare harms for the same reasons that any
> collusive buyer-side price suppression is anticompetitive, economically harmful, and
> therefore illegal under Section 1 of the Sherman Act; and,
>
> (6) the Bondholder Plaintiffs' injury—receiving collusively suppressed prices for the use of
> their money over the term of their bonds—is exactly the type of injury the antitrust laws
> are intended to prevent.

The allegations that will be presented in the Proposed Second Amended Complaint, including the
allegations summarized herein, amply allege the antitrust injury element of the Bondholder
Plaintiffs' claims, when read in light of applicable antitrust injury authorities, and in light of the
Second Circuit's holding in *Indian Head, Inc. v. Allied Tube & Conduit Corp.*, 817 F.2d 938,
943 (2d Cir. 1987), as affirmed by the Supreme Court in *Allied Tube & Conduit Corp. v. Indian
Head, Inc.*, 486 U.S. 492 (1988), that horizontal competitor defendants' collusive subversion of a
trade association standard setting process to achieve an anticompetitive effect constitutes a
restraint of trade and supports a jury verdict awarding treble damages to private plaintiffs.

Respectfully,

/s/ Karen L. Morris                    /s/ David H. Weinstein
Morris and Morris LLC              Weinstein, Kitchenoff
Counselors At Law                    & Asher LLC

*Interim Co-Lead Counsel for the Bondholder Plaintiffs and the Class*

Cc: All counsel (by email)