# KIRBY McINERNEY LLP

825 Third Avenue
New York, NY 10022
212.371.6600
Fax. 212.751.2540
WWW.KMLLP.COM

Of counsel
Roger W. Kirby
Alice McInerney

**BY HAND DELIVERY**

April 22, 2013

Honorable Naomi Reice Buchwald
United States District Judge
United States District Court
500 Pearl St.
New York, New York 10007-1312



RECEIVED IN CHAM.
OF NAOMI REICE BUCH...
APR 23 2013
UNITED STATES COURT JUDGE

Re: *In re LIBOR-Based Financial Instruments Antitrust Litigation*,
MDL No. 2262, 11 Civ. 2613, Master File No. 1:11-md-2262-NRB

Dear Judge Buchwald:

In accordance with Rule 2.A of Your Honor's Individual Practices, the Exchange-Based Plaintiffs respectfully request leave to file a motion for certification of this Court's March 29, 2013 Order **[Dkt. No. 286]** for interlocutory appeal pursuant 28 U.S.C. § 1292(b). Such interlocutory appeal would seek review of this controlling legal question: Whether LIBOR is the "commodity underlying" the Eurodollar futures contract within the meaning of Section 22(a)(1)(D) of the Commodity Exchange Act ("CEA").

In 1982, Congress enacted Section 22(a) of the CEA, 7 U.S.C. §25(a).[1] This created an express right of action for private parties recover damages for violations of the CEA that constitute **manipulation** of either the price of a commodity futures contract or, also, manipulation of the price of the "commodity underlying" such futures contract. *Id.*, 7 U.S.C. §25(a)(1)(D).

During the thirty-one years since the enactment of Section 22(a), neither the Second Circuit Court of Appeals nor almost any other court has determined what is meant by Congress' expansion of Section 22(a) standing through the "commodity underlying" the futures contract language. In the foregoing precedential vacuum, this Court was confronted on the motion to dismiss by a legal question of first impression applied to a Eurodollar futures contract which has two very different terms.

**On the one hand**, the contract specifies that all Eurodollar futures contracts settle at the end of trading to LIBOR, *e.g.*: "LIBOR was directly incorporated into the *price* of Eurodollar futures contracts, and by allegedly manipulating LIBOR, defendants manipulated the price of

---

[1] Now section 25(a) under the 2010 amendments to the CEA.

KIRBY McINERNEY LLP

Hon. Naomi Reice Buchwald
April 22, 2013
Page 2

those contracts." *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262 (NRB), 2013 WL 1285338, *21 (S.D.N.Y. Mar. 29, 2013) ("Order") (rejecting Defendants' extra-territoriality argument) (emphasis in original). Based on this term of the contract, the Defendants themselves argued that purchases or sales of Eurodollar futures contracts were "bets on LIBOR".[2] As Defendants' assertion demonstrates, under this term of the Eurodollar futures contracts, LIBOR is what is being traded and manipulating the LIBOR commodity is the best (and in all likelihood the **only**) practical way to manipulate the prices of Eurodollar futures contracts.

Plaintiffs argued that this term of the Eurodollar futures contract made LIBOR the "commodity underlying" the Eurodollar futures contract. Obviously, such reading furthered the overarching manipulation-deterrence and remedial purposes of the CEA, and the "critical" purpose of Section 22(a) to redress and prevent price manipulation [and fraud]. *Leist v. Simplot*, 638 F.2d 283, 315 (2d Cir. 1980) (*"Leist"*), *aff'd sub nom. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353 (1982) (*"Curran"*) (preventing manipulation is the overarching purpose of the CEA) *with Cange v. Stotler & Co.*, 826 F.2d 581, 594-595 (7th Cir. Ill. 1987) (Congress viewed private lawsuits as **"critical"** to protecting the public and fundamental to maintaining the credibility of the futures market); and *U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc.*, 11 CIV. 3543 (WHP), 2012 WL 1450443, at *8 (S.D.N.Y. Apr. 26, 2012) (CEA is remedial legislation).

But such a reading also furthers Congress' purpose of expanding Section 22(a) standing to provide private parties with the additional ability to recover damages for manipulation of "the commodity underlying" the futures contract on which the damages occurred. Congress thereby provided standing to sue for manipulation of the commodity most likely to manipulate the futures contract, *i.e.*, the "commodity underlying" the futures contract. Practically speaking, and because Defendants themselves said that Eurodollar futures trades are "bets on LIBOR", it is hard to conceive how manipulating the amount of U.S. dollar deposits outside the United States could, indirectly or otherwise, manipulate the price of Eurodollar futures contracts. Though nominally a term of the contract, the amount or fact of (phantom) dollar deposits that are never delivered, has no vitality or significance for purposes of manipulation of Eurodollar futures contracts.

---

[2] The Exchange Based Plaintiffs believe that all but two Defendants failed until oral argument to raise any meaning of "commodity underlying" the futures contract other than LIBOR. Although their position was partially reversed at oral argument, even there, Defendants stated:

> [people trading Eurodollar futures contracts are] taking a position with respect to where LIBOR is going, up or down. It's a futures contract, settleable sometime in the future....The way that market works is, anyone who wants to take one side of that position, if you will, saying, I think LIBOR is going to go up, they can come in and they can take one side of the futures contract. People who think that LIBOR is going to go down can come in and they can take the other side of that contract.

Tr. of Oral Argument pp.25-26.

KIRBY McINERNEY LLP

Hon. Naomi Reice Buchwald
April 22, 2013
Page 3

Because the Eurodollar futures contract price is directly affected by changes in LIBOR (and **not** by changes to U.S. dollar deposits outside the United States), the most likely way to manipulate Eurodollar futures prices, is to manipulate LIBOR. Accordingly, in order to accomplish Congress' purpose of adding the "commodity underlying" language to Section 22(a) so as to expand the prevention of price manipulation and the protection of the integrity of Eurodollar futures contract prices, among others, LIBOR is the only commodity that could effectively serve as the "commodity underlying" such futures contract.

**On the other hand**, a different term of the Eurodollar futures contracts is that, while the settlement is to, and the trading is 100% concerned with, LIBOR, the size of the contract amount that is multiplied by LIBOR is phrased in terms of a specified amount of (phantom) dollar deposits outside the U.S. that are never to be delivered and have no vitality other than as an unvarying unit of multiplication times LIBOR (or 100 minus LIBOR). Order, 2013 WL 1285338 at *43. Based on this term, this Court reasoned as follows:

> The only plausible way to characterize the components of a Eurodollar [futures] contract is that the underlying commodity is a USD 1,000,000 deposit in a foreign commercial bank with a three[-]month maturity, and the price of the contract is settled or traded at a value based on LIBOR. In other words, Eurodollar contracts use LIBOR to represent the price of U.S. dollars deposited in commercial banks abroad.

*Id.* Accordingly, the controlling legal question is what "commodity underlying", as used in Section 22(a)(1)(D), means.

The Court's answer to this question "might", the Court observed, impact the inquiry into intent and whether Plaintiffs must prove that Defendants specifically intended to manipulate the price of Eurodollar futures contracts. *Id.* n.18. Plaintiffs do not believe that this inquiry will be a significant hurdle because, for one example, Plaintiffs will contend that by specifically intending to manipulate LIBOR, Defendants specifically intended to manipulate the price of the Eurodollar futures contract. As this Court already found, "by allegedly manipulating LIBOR, Defendants manipulated the price of those [Eurodollar futures] contracts". Order, 2013 WL 1285338 at *21.

However, if, contrary to Plaintiffs' reading of the Order, this contention is not accepted by the Court, then the need for and merit of §1292(b) certification are even greater. Under the reasoning of the memorandum and motion that Plaintiffs are prepared to file today, certification of this pure legal question of first impression will or "might" materially affect the outcome of Plaintiffs' claims. Accordingly, such certification is appropriate under 28 U.S.C. §1292(b).

KIRBY McINERNEY LLP

                                                    Respectfully submitted,

*/s/ Christopher Lovell*                          */s/ David E. Kovel*

Christopher Lovell, Esq.                 David E. Kovel, Esq.
LOVELL STEWART HALEBIAN    KIRBY McINERNEY LLP
JACOBSON LLP                            825 Third Avenue
61 Broadway, Suite 501                  New York, NY 10022
New York, NY 10006

***Interim Co-Lead Counsel for***
***Exchange-Based Plaintiffs***

cc:    All counsel of record (by email)