SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
15TH FLOOR
560 LEXINGTON AVENUE
NEW YORK, NEW YORK 10022-6828
(212) 336-8330
FAX (212) 336-8340
www.susmangodfrey.com

| SUITE 5100 | SUITE 5100 | SUITE 950 | SUITE 3800 |
|---|---|---|---|
| 1000 LOUISIANA STREET | 901 MAIN STREET | 1901 AVENUE OF THE STARS | 1201 THIRD AVENUE |
| HOUSTON, TEXAS 77002-5096 | DALLAS, TEXAS 75202-3775 | LOS ANGELES, CALIFORNIA 90067-6029 | SEATTLE, WASHINGTON 98101-3000 |
| (713) 651-9366 | (214) 754-1900 | (310) 789-3100 | (206) 516-3880 |

WILLIAM CHRISTOPHER CARMODY
DIRECT DIAL (212) 336-8334
E-MAIL BCARMODY@SUSMANGODFREY.COM

April 30, 2013



BY FAX

Honorable Naomi Reice Buchwald
United States District Judge
500 Pearl Street
New York, NY 10007-1312

Re:   *In re LIBOR-Based Financial Instruments Antitrust Litig.*, 11-MD-2262 (NRB)

Dear Judge Buchwald:

     We write on behalf of the OTC plaintiffs in response to defendants' letter dated April 24, 2013. Defendants' opposition to our request for a pre-motion conference is meritless for three reasons:

(1)   Although defendants downplay the significance of the federal criminal case against defendant RBS, the criminal information charged RBS with participating in a conspiracy to fix the price of LIBOR-based instruments in "unreasonable restraint of . . . commerce," in violation of Section 1 of the Sherman Act. RBS admitted the misconduct and the violation;

(2)   The proposed amendment will address several ways in which defendants' conspiracy, as a factual matter, harmed competition and caused plaintiffs an antitrust injury in ways unaddressed by the Court's order; and

(3)   The contract claim is not barred by res judicata, as plaintiffs did not previously assert it, it has different elements than plaintiffs' existing claims, and the unjust enrichment claim was not dismissed on the merits.

     First, the post-complaint government investigations confirm that defendant RBS engaged in misconduct that the antitrust laws were designed to prohibit—*i.e.*, conspiring to fix prices in restraint of trade. The Court's reasoning that any collusive LIBOR suppression did not affect competition is irreconcilably in conflict with the U.S. Department of Justice criminal information

April 30, 2013
Page 2

in the RBS criminal case, in which the government charged that RBS engaged in a "combination and conspiracy in unreasonable restraint of . . . commerce . . . the substantial terms of which were to fix the price of Yen LIBOR-based derivative products by fixing Yen LIBOR, a key component of the price thereof." RBS admitted these factual allegations,[1] and this is precisely the type of conduct plaintiffs allege in this case: a conspiracy in restraint of trade to fix the price of LIBOR-based products by fixing the component of price represented by LIBOR. An essential predicate of the government's charge is that RBS's collusive submission of false LIBOR bids was a conspiracy in restraint of trade, a predicate contrary to the Court's conclusion that any collusive LIBOR suppression did not impact competition. *See, e.g.*, Order at 30 ("Defendants' Alleged Conduct Was Not Anticompetitive."). If collusive submission of false LIBOR bids does not constitute price-fixing in violation of Section 1 of the Sherman Act, then the government's case against RBS could not exist.[2]

Second, defendants incorrectly assert that amendment would be "futile" and that the Court already "rejected" the proposed allegations. The Court's holding on antitrust injury rested on several factual findings that plaintiffs dispute and will address in greater detail in the proposed amended complaint. If there is a plausible factual dispute on these issues, then a proposed amendment would not be futile.

To give some examples, the Court found that competition "in the market for LIBOR-based financial instruments proceeded unimpaired." Order at 41. Plaintiffs contest this finding and will demonstrate through an amended complaint and discovery that plaintiffs paid supra-competitive prices for their products as a result of the conspiracy, a well-recognized antitrust injury. *See e.g., In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 688 (2d Cir. 2009). The Court stated that the ultimate prices of products were not affected because "the price of LIBOR-based financial instruments can be set at any level above or below LIBOR." *Id.* at 46. But that is a factual determination that depends on information about financial instrument pricing. The proposed amendment will allege—and plaintiffs will ultimately prove—that defendants' conspiracy resulted in plaintiffs paying supra-competitive prices.

The Court also stated that "the alleged collusion occurred in an arena in which defendants never did and never were intended to compete." Order at 33. Plaintiffs also dispute this finding.

---

[1] In its Deferred Prosecution Agreement, RBS admitted that "the allegations described in the Information . . . are true and accurate." DPA, p. 2.

[2] Contrary to defendants' suggestion, it is irrelevant that RBS's conspiracy involved Yen LIBOR rather than USD LIBOR. The Court's analysis of antitrust injury applies equally to both benchmarks. A conspiracy to fix any LIBOR currency restrains commerce in the same way: by causing plaintiffs to pay supra-competitive prices for price-fixed LIBOR-based instruments. Defendants do not even try to distinguish the two situations: they make no attempt to explain how the Yen LIBOR conspiracy could be anticompetitive (as the criminal information charged and RBS admitted) but a USD LIBOR conspiracy would have no anticompetitive effect. There is no basis for such a distinction.

April 30, 2013
Page 3

In a competitive market, defendants would have competed vigorously as to the benchmark used to calculate the floating component of their financial products. However, instead of competing for the best measure of interest rates for their products, defendants used a rate they colluded to set at artificial levels, which tended to preserve the centrality of LIBOR (as opposed to some other index) as the dominant benchmark.[3]

The Court further stated that "because the process of setting LIBOR is not competitive, collusion among defendants would not have allowed them to do anything that they could not have done otherwise." Order at 37. But that is another disputed fact. LIBOR submissions represent a bank's creditworthiness, and defendants should have competed with each other for the best reported creditworthiness, or rather, the lowest truthful LIBOR submissions. Instead, defendants conspired to submit LIBORs at an agreed level such that all banks—weak and strong—appeared similarly creditworthy. Without that restraint on competition, the suppression would not have occurred and plaintiffs would not have suffered the injuries they suffered.

Third, the proposed breach of contract claim is not barred by res judicata. Plaintiffs did not previously assert the claim, it has different elements than the antitrust and unjust enrichment claims that plaintiffs asserted, and the OTC plaintiffs' unjust enrichment claim was not dismissed on the merits.

Plaintiffs respectfully submit that their proposed amended complaint will not be futile and that granting leave to amend is consistent with the "permissive standard" for amendment under Fed. R. Civ. P. 15(a)(2).[4]

Plaintiffs would be pleased to respond to any questions the Court may have about the foregoing and their request to file an amended complaint. We thank the Court for its continued attention to this matter.

Respectfully,

/s/ William Christopher Carmody

William Christopher Carmody

---

[3] Plaintiffs' counsel made this point at oral argument. See Tr. 30:11-14 ("You're harming competition because these banks that are not motivated to compete with one another in that market to bring in new benchmarks, to think of additional pricing formulas, to think of things that would be more beneficial to competition.").

[4] Defendants also argue that the amendment should be denied because the Court intended to dismiss the antitrust claim with prejudice, even though it did not so indicate. If the Court so intended, plaintiffs may seek reconsideration of that portion of the holding.

2013-Apr-30 10:42 AM Susman Godfrey L.L.P. 212-336-8340    4/5

April 30, 2013
Page 4


/s/ Michael D. Hausfeld

Michael D. Hausfeld

Interim Co-Lead Counsel for Over-the-Counter Plaintiffs and the Class

Cc:   All counsel (by email)