# DAVIS POLK & WARDWELL LLP

450 LEXINGTON AVENUE
NEW YORK, NY 10017
212 450 4000
FAX 212 701 5800

MENLO PARK
WASHINGTON, D.C.
SÃO PAULO
LONDON
PARIS
MADRID
TOKYO
BEIJING
HONG KONG

ROBERT F. WISE, JR.
212 450 4512
ROBERT.WISE@DAVISPOLK.COM

RECEIVED IN CHAMBERS
OF NAOMI REICE BUCHWALD

MAY - 2 2013

UNITED STATES COURT JUDGE

May 1, 2013

**BY HAND DELIVERY**

Re:     *In re LIBOR-Based Financial Instruments Antitrust Litigation*,
        MDL No. 2262, 11 Civ. 2613, Master File No. 1:11-md-2262-NRB

Honorable Naomi Reice Buchwald
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Dear Judge Buchwald:

As liaison counsel for Defendants, we write in response to the Exchange-Based
Plaintiffs' letter to the Court dated April 22, 2013 ("Pls.' Letter"), seeking a pre-motion
conference to consider their request to file a motion for certification of this Court's March 29,
2013 Order, *In re LIBOR-Based Fin. Instruments Antitrust Lit.*, No. 11 MD 2262 (NRB), 2013
WL 1285338 (the "Order"), for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Plaintiffs
ask this Court to certify what they characterize as a "controlling legal question" (Pls.' Letter at
1): *i.e.,* whether USD LIBOR (as they contend) or a Eurodollar time deposit having a principal
value of $1,000,000 with a three-month maturity (as the Court found, *see* Order at *43), is the
"commodity underlying" the Eurodollar futures contract for purposes of Section 22(a)(1)(D)(ii)
of the Commodity Exchange Act (the "CEA"), 7 U.S.C. § 25(a)(1)(D)(ii). As explained below,
Plaintiffs cannot meet the stringent standards for § 1292(b) certification and their request for a
pre-motion conference should therefore be denied.

Certification is "a rare exception to the final judgment rule that generally prohibits
piecemeal appeals." *Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). To
this end, § 1292(b) authorizes certification of a non-final order for immediate appellate review
only where the District Court finds *both* that the "order involves a controlling question of law as
to which there is a substantial ground for difference of opinion" *and* that "an immediate appeal

Hon. Naomi Reice Buchwald                    2                         May 1, 2013

from the order may materially advance the ultimate termination of the litigation." That standard cannot be met here, for several reasons.

*First*, the question identified by Plaintiffs for appeal – whether LIBOR or the Eurodollar time deposit identified in the contract specifications of the Chicago Mercantile Exchange (the "CME") is the "commodity underlying" the Eurodollar futures contract – is not a "controlling question of law" that merits § 1292(b) certification. A question is "controlling" if reversal of the District Court's order on that point would terminate the action, *see Klinghoffer v. SNC Achille Lauro Ed Altri-Gestione Motonave Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990), or "materially affect the litigation's outcome." *In re Pall Corp.*, No. 07-CV-3359 (JS)(ARL), 2009 WL 4282081, at *2 (S.D.N.Y. Nov. 24, 2009). Plaintiffs do not even contend that a different determination of the "commodity underlying" the Eurodollar futures contract would terminate or materially affect this litigation's outcome. At most, they argue, the Court's decision on this issue "'might' materially affect the outcome of Plaintiffs' claims" because it is relevant to the "inquiry into intent" – an inquiry that Plaintiffs "do not believe . . . will be a significant hurdle," because they propose to argue that intent to manipulate LIBOR is equivalent to intent to manipulate a Eurodollar futures contract. (Pls.' Letter at 3.) Where, as here, even Plaintiffs themselves do not consider resolution of an issue to be centrally important to the outcome of the litigation, it cannot be a "controlling question of law."

*Second*, the issue raised by Plaintiffs is a question of contract interpretation, rather than (as they claim) "a pure legal question of first impression." *Id.* Plaintiffs "argue[] that [a] term of the Eurodollar futures contract made LIBOR the 'commodity underlying' the Eurodollar futures contract" *Id.* at 2. The Court, relying on the CME's actual contract specifications, concluded otherwise. Order at *43 ("a Eurodollar futures contract is a futures contract whose 'underlying instrument' is a 'Eurodollar Time Deposit having a principal value of USD $1,000,000 with a three-month maturity"). Such a "question of contract interpretation typically is not a 'controlling question' of law that serves as a basis for interlocutory appeal." *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Am.*, 426 F. Supp. 2d 125, 128 (S.D.N.Y. 2005); *see also Catskill Dev., LLC v. Park Place Entm't Corp.*, 206 F.R.D. 78, 94 (S.D.N.Y. 2002) ("Differences over contract construction are not the sort of 'controlling question of law' that normally give rise to interlocutory certification."). As Plaintiffs admit in their letter, the issue depends on the "term[s] of the Eurodollar futures contract." (Pls.' Letter at 2.) A question of contract interpretation does not meet the standards for certification.

*Third*, Plaintiffs cannot show that there is a "substantial ground for difference of opinion" regarding the question for which they seek immediate appellate review. Plaintiffs claim to discern a "precedential vacuum" regarding what is "the "commodity underlying" a futures contract within the meaning of Section 22(a) of the CEA. (Pls.' Letter at 1.) However, the Order is consistent with Judge Carter's holding that "the phrase 'the commodity underlying such futures contract' in [CEA] §22(a)(1)(D) refers to the commodity specified within the particular futures contract," *Three Crown Ltd. P'ship v. Caxton Corp.*, 817 F. Supp. 1033, 1043 (S.D.N.Y. 1993), and with the opinions in *Hershey v. Energy Transfer Partners LP*, 610 F.3d 239, 241 (5th Cir. 2010) ("[T]he 'underlying commodity' of a futures contract is a specific good, governed by the terms of the futures contract."), and *Leist v. Simplot*, 638 F.2d 283, 286 (2d Cir. 1980) ("the contract involved in this case, the May 1976 Maine potato futures contract, is for 50,000 pounds

Hon. Naomi Reice Buchwald                3                            May 1, 2013

of Maine grown potatoes of a specified quality to be delivered at specified points in cars of the
Bangor & Aroostook Railroad, between May 7 and May 25, 1976"). Neither in their letter nor in
their submissions opposing Defendants' motions to dismiss have Plaintiffs cited a single case
answering the question differently. Moreover, in their Complaint, Plaintiffs pleaded that "[e]ach
Eurodollar futures contract *is for a Eurodollar Interbank Time Deposit.*" Exchange-Based
Plaintiffs' Amended Consolidated Class Action Complaint ¶ 203 (emphasis added).

      *Fourth,* immediate appeal on the issue raised by Plaintiffs will not "materially advance
the ultimate termination of the litigation," as § 1292(b) requires. To meet this standard, a
"certified question 'must substantially reduce the amount of litigation left in the case."
*Frederick v. New York City,* No. 11 Civ. 469 (JPO), 2013 WL 310441, at *6 (S.D.N.Y. Jan. 24,
2013). If Plaintiffs' contention that LIBOR is the "commodity underlying" the Eurodollar
futures contract were to prevail, that would not reduce the scope of the remaining litigation; it
would neither terminate the case nor narrow the issues to be litigated. Instead, the result might
well be to *broaden* the issues, as plaintiffs could seek to simultaneously pursue claims for
manipulation of *both* the Eurodollar futures contracts *and* the "commodity underlying" those
contracts.

      *Finally,* and equally importantly, reversal of this Court's determination of this issue
would be futile. As this Court held, the CEA's prohibition of manipulation has no extraterritorial
effect, and a domestic application of a claim for manipulation of an underlying commodity must
involve a commodity in *interstate* commerce. Order at *20. LIBOR, however, is not a
commodity in interstate commerce. Rather, it is a London-based and London-created reference
rate. *Cf.* Order at *56-*58 (holding that plaintiffs' RICO claims in this litigation were
impermissibly extraterritorial because the alleged RICO "enterprise" – an association in fact of
LIBOR-submitting BBA member banks – was located in England). Therefore, even if this
Court's decision were reversed on the point raised by Plaintiffs and LIBOR was found to be the
underlying commodity, it would be a *foreign* commodity, and any claim for its manipulation
would be impermissibly extraterritorial. Resolution in Plaintiffs' favor of the question their letter
raises therefore would not "advance" the litigation, but would instead merely send it on a
pointless detour.

      For all of these reasons, the Exchange-Based Plaintiffs' request for leave to file a motion
for certification should be denied.

                             Respectfully yours,

                             Robert F. Wise

cc:     All counsel (by e-mail)