IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL PRODUCTS ANTITRUST LITIGATION | MDL NO. 2262<br>NO. 1:11-MD-02262-NRB |
| THIS DOCUMENT RELATES TO:<br>FTC CAPITAL GMBH, ET AL.,<br>                      Plaintiffs,<br>                v.<br>CREDIT SUISSE GROUP AG, ET AL.,<br>                      Defendants. | ECF CASE<br><br>NO. 1:11-CV-2613-NRB<br><br>[EXCHANGE-BASED PLAINTIFF ACTION] |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR MOTION FOR RECONSIDERATION OR REARGUMENT**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bell Atlantic Corp.* v. *Twombly*,
  550 U.S. 544 (2007) .................................................................................................... 1, 2

*DiPlacido* v. *CFTC*,
  364 F. App'x. 657 (2d Cir. 2009) ....................................................................................5

*Hershey* v. *Energy Transfer Partners, L.P.*,
  610 F.3d 239 (5th Cir. 2010) ..........................................................................................2

*Hinds Cnty.* v. *Wachovia Bank N.A.*,
  620 F. Supp. 2d 499 (S.D.N.Y. 2009) .............................................................................4

*In re Amaranth Natural Gas Commodities Litig.*,
  612 F. Supp. 2d 376 (S.D.N.Y. 2009) .............................................................................3

*In re Commodity Exchange, Inc., Silver Futures & Options Trading Litig.*
  No. 11-md-2213, 2012 WL 6700236 (S.D.N.Y. Dec. 21, 2012) ............................. 3, 4, 5

*In re Crude Oil Commodity Litig.*,
  No. 06-6677, 2007 WL 1946553 (S.D.N.Y. June 28, 2007) .................................. 3, 4, 5

*In re Rough Rice Commodity Litig.*,
  No. 11-618, 2012 WL 473091 (N.D. Ill. Feb. 9, 2012) ..................................................2

*Shrader* v. *CSX Transp., Inc.*,
  70 F.3d 255 (2d Cir. 1995) ..............................................................................................5

**STATUTES, RULES AND REGULATIONS**

Fed. R. Civ. P. 8(a) ................................................................................................................3

Fed. R. Civ. P. 9(b) ................................................................................................................3

Movants BTMU, Credit Suisse and Norinchukin respectfully submit this reply memorandum of law in further support of their Motion for Reconsideration or Reargument.[1]

## PRELIMINARY STATEMENT

Plaintiffs' repeated references in their opposition to allegations of "hundreds of manipulative acts" and "hundreds of specifically identified false reports regarding [Movants'] LIBOR borrowing rate" (Opp. at 2-4) – even if true – do not save from dismissal their CEA claims against BTMU, Credit Suisse and Norinchukin. This Court held that in order to plead a CEA claim, plaintiffs must show that *each* defendant "specifically intended to manipulate the price of Eurodollar futures contracts, not merely LIBOR itself." (Mem. at 111 & n.18; *see also id.* at 99-101.) Accordingly, conclusory allegations of incorrect *Libor* submissions – based on nothing more than a handful of statistical analyses[2] – do nothing to show that each Movant had the requisite specific intent to manipulate the price of *Eurodollar futures contracts*, and plaintiffs do not – because they cannot – point to a single factual allegation in their complaint that otherwise would support a finding of such intent on the part of each Movant.

Plaintiffs' failure to plead "enough facts to state a claim to relief" as to each Movant mandates dismissal at the pleading stage. *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process." *Id*. at 559. Modern discovery is

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in Movant's opening memorandum ("Movants' Mem.") (Dkt. No. 297).

[2] Plaintiffs' "specifically identified false reports" (Opp. at 2) are nothing more than charts plotting the difference between each Movant's Libor submissions before and during the putative class period and other measures of the cost of borrowing Dollars in the London market during that time. (*See, e.g.*, Am. Compl. ¶¶ 52, 67.) Assuming *arguendo* that these charts show that each Movant's Libor submissions during the putative class period were "false" – which for myriad reasons they do not – there are no factual allegations pled in the complaint that suggest even that each Movant made these submissions with the intent to *manipulate Libor*, let alone the intent to manipulate the price of Eurodollar futures contracts.

simply too burdensome and too expensive, particularly in cases of this magnitude.  *See id*. at 558-59.  While deferring consideration of an issue until summary judgment is, of course, appropriate when "factual issues are involved" (May 3, 2013 Order at 5 (Dkt. No. 309)), here there are none—plaintiffs simply fail to *plead* the intent the Court held is required to state a CEA claim for the manipulation of Eurodollar futures contracts.

## ARGUMENT

*First*, plaintiffs contend that the Court "could" have held that Movants' alleged manipulative acts, their alleged knowledge of others' manipulative acts "and the circumstance that Eurodollar futures prices were the inverse of LIBOR" give rise to an inference of scienter. (Opp. at 6.)  But the Court did not do so, as plaintiffs readily acknowledge in their Section 1292(b) letter.  (Letter from Exchange-Based Plaintiffs' Counsel to the Court, at 3 (Apr. 22, 2013) ("Plaintiffs *will contend* that by specifically intending to manipulate Libor, Defendants specifically intended to manipulate the price of the Eurodollar futures contract.") (emphasis added).)  To the contrary, the Court held that "plaintiffs do not have standing to bring suit against defendants based on the manipulation of LIBOR as a commodity," (Mem. at 116) and rested its scienter holding on defendants' alleged motive to manipulate the price of Eurodollar futures contracts (*id*. at 99-101).  Even if plaintiffs adequately plead that each Movant intentionally manipulated Libor – which they do not – there are no factual allegations in the complaint that show that each Movant did so with the intent to manipulate the price of Eurodollar futures contracts.  Indeed, plaintiffs do not even allege that BTMU or Norinchukin traded such contracts.  (*See* Am. Compl. ¶¶ 43, 218.)  Moreover, "mere knowledge" of an "extremely close connection" between Libor and Eurodollar futures contracts (*see* Opp. at 1-2, 4) is not enough to allege scienter.  *Hershey* v. *Energy Transfer Partners, L.P.*, 610 F.3d 239, 249 (5th Cir. 2010); *see also In re Rough Rice Commodity Litig.*, No. 11-618, 2012 WL 473091,

at *7 (N.D. Ill. Feb. 9, 2012) ("Mere knowledge that certain actions might have an impact on the futures market is not sufficient to state a private claim under the CEA.").[3]

*Second*, plaintiffs are still unable to identify *any* factual allegations sufficient to plead scienter as to each Movant. Instead, they merely refer (again) to the Barclays settlement documents and quote the very portion of the Court's ruling challenged by Movants (Opp. at 6-7)—that the Court incorrectly held that general allegations that some defendants had a desire to profit from trading Eurodollar futures contracts is sufficient to plead scienter as to all defendants. Plaintiffs do not even attempt to respond to Movants' argument that under well-settled law such general profit motives are insufficient to plead scienter. (Movants' Mem. at 3-4.) Tellingly, plaintiffs do not – and cannot – identify any factual allegations in their complaint that show that each Movant "took specific actions which exhibited an actual intent" to manipulate the price of Eurodollar futures contracts, *In re Commodity Exchange, Inc., Silver Futures & Options Trading Litig.* ("*Silver Futures*"), No. 11-md-2213, 2012 WL 6700236, at *10 (S.D.N.Y. Dec. 21, 2012),[4] or even suggest how they could amend their complaint to add such allegations.[5]

---

[3] Plaintiffs' arguments about the application of the "strong inference" of scienter standard to CEA claims (Opp. at 4-5) are irrelevant. First, this Court, following *Amaranth II*, held that to be the appropriate standard for manipulation claims under Rule 9(b) (Mem. at 97), and plaintiffs have not sought reconsideration of that ruling. Second, even where pleading requirements are relaxed because defendants possess the relevant facts (*see* Mem. at 96), plaintiffs cannot "relieve themselves of the heightened standards of 9(b)." *In re Crude Oil Commodity Litig.*, No. 06-6677, 2007 WL 1946553, at *7 (S.D.N.Y. June 28, 2007). Third, as Movants pointed out in their opening memorandum, plaintiffs do not plead scienter even under the more permissive standard of Rule 8(a), much less under Rule 9(b). (Movants' Mem. at 3-4.)

[4] Plaintiffs accuse Movants of setting forth a "false dichotomy" for pointing out that plaintiffs fail to allege whether Movants were long or short Eurodollar futures contracts. (Opp. at 8.) Movants did no such thing. Rather, they highlighted this point to emphasize the utter lack of factual allegations about each Movant's trading of such contracts, including any allegations that show "concrete benefits that could be realized by one or more of the [alleged] false statements." *In re Amaranth Natural Gas Commodities Litig.*, 612 F. Supp. 2d 376, 383 (S.D.N.Y. 2009).

[5] At the Court's direction (May 3, 2013 Mem. at 5), on May 9, 2013, plaintiffs' and Movants' counsel met and conferred. Plaintiffs' counsel were unable to identify additional factual allegations regarding Movants that obviates the need for Movants' Motion, but counsel agreed to meet and confer again after plaintiffs' counsel have had additional time to consider the issues raised by the Court's May 3 Memorandum.

*Third*, plaintiffs' attempts to distinguish *Silver Futures* and this Court's ruling in *Crude Oil* are simply unavailing.  Plaintiffs assert that, in finding that plaintiffs in those actions failed adequately to plead scienter, "the courts relied on the facts that ***no*** administrative proceeding had been brought, and that plaintiffs had failed to allege even one specific manipulative act."  (Opp. at 3 (emphasis in original).)  That, however, is demonstrably false.

In *Silver Futures*, the court noted the absence of an administrative proceeding against defendants *only* in the section of its opinion addressing plaintiffs' motion to compel limited discovery.  2012 WL 6700236, at *21.  The absence of such a proceeding does not appear to have factored into the court's decision regarding scienter at all.  *See id*. at *10-12 (addressing scienter).  And in *Crude Oil*, this Court observed that no administrative proceeding had been brought against defendants in the commodity market at issue.  2007 WL 1946553, at *8.  *So, too, here*—no administrative proceeding has been brought against any Movant.  That Barclays, a non-Movant, has settled Libor-related claims (Opp. at 3-4) is no distinction at all.  To the extent that plaintiffs are relying on the existence of purported industry-wide *investigations*, that is plainly insufficient to plead scienter.  *Crude Oil*, 2007 WL 1946553, at *8 (government investigations "are an insufficient substitute for factual allegations"); *see also Hinds Cnty.* v. *Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 510, 514 (S.D.N.Y. 2009) (holding that existence of a government investigation is "too general to make [a] claim plausible as to any specific Defendant" and dismissing antitrust claim as to defendants against whom no specific allegations were pled despite existence of IRS and DOJ investigations, FBI raids, one bank's participation in DOJ Antitrust Division leniency program, and IRS comments about "existence of bid-rigging in the municipal derivatives industry generally").  With respect to manipulative acts, plaintiffs once again attempt to confuse the issue and rely on the alleged manipulation of Libor, not Eurodollar

futures.  While scienter can, as plaintiffs point out (Opp. at 5), be "reasonably inferred from circumstances," *DiPlacido* v. *CFTC*, 364 F. App'x. 657, 661 (2d Cir. 2009), the circumstances alleged here as to each Movant are far less specific than those that have been rejected as inadequate in *Silver Futures*, *Crude Oil* and many other CEA cases.  (*See* Movants' Mem. at 3-4 & n.2 (describing allegations in *Silver Futures* and *Crude Oil* and in cases where complaints survived motions to dismiss).)

*Finally*, plaintiffs desperately try to keep Movants in this case by arguing that they allege that Movants aided and abetted other defendants' manipulation of Eurodollar future contracts and that Movants failed to seek reconsideration of the Court's ruling on this claim.  (Opp. at 2.)  But Movants explicitly sought dismissal of plaintiffs' "CEA claims" (Movants' Mem. at 1, 3, 6) and, because "the scienter element plaintiffs would need to satisfy for aiding and abetting would be the same as the scienter element for their primary CEA violation" (Mem. at 121-22), plaintiffs' aiding and abetting claims fail for the same reasons as their primary manipulation claims.[6]

---

[6] Plaintiffs' attempt to argue that Movants failed to identify an argument that the Court overlooked is a non-starter.  First, a motion for reconsideration is appropriate if the Court overlooked controlling precedent. (Movants' Mem. at 1 (citing *Shrader* v. *CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).)  Second, in their supplemental memoranda in support of defendants' motion to dismiss, BTMU explicitly argued that plaintiffs fail to plead facts that give rise to a strong inference of scienter as to it (Dkt. No. 173 at 5), and Credit Suisse and Norinchukin emphasized the dearth of particularized factual allegations as to them (Dkt. No. 171 at 2; Dkt. No. 175 at 2-5).  The Court did not address these arguments set forth in the supplemental memoranda in its thorough, 161-page opinion.

## CONCLUSION

For all of the foregoing reasons, Movants have satisfied their "heavy burden" (Opp. at 1 n.1) of demonstrating that the Court overlooked controlling precedent in holding that plaintiffs adequately plead scienter as to each of them. The Court should grant Movants' Motion for Reconsideration or Reargument and dismiss with prejudice plaintiffs' CEA claims as to BTMU, Credit Suisse and Norinchukin.

Dated: May 9, 2013

Respectfully submitted,

s/ Daryl A. Libow
Daryl A. Libow (libowd@sullcrom.com)
Christopher M. Viapiano (viapianoc@sullcrom.com)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel: (202) 956-7500; Fax: (202) 956-6973

*Attorneys for The Bank of Tokyo-Mitsubishi UFJ, Ltd.*

s/ Herbert S. Washer
Herbert S. Washer (hwasher@cahill.com)
Elai Katz (ekatz@cahill.com)
Joel Kurtzberg (jkurtzberg@cahill.com)
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
Tel: (212) 701-3000; Fax: (212) 269-5420

*Attorneys for Credit Suisse Group AG*

s/ Andrew W. Stern
Andrew W. Stern (astern@sidley.com)
Alan M. Unger (aunger@sidley.com)
Nicholas P. Crowell (ncrowell@sidley.com)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5300; Fax: (212) 839-5599

*Attorneys for The Norinchukin Bank*