UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANICAL<br>INSTRUMENTS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>EXCHANGE-BASED PLAINTIFF ACTION | MDL No. 2262<br>No. 1:11-MD-02262-NRB<br><br>ECF CASE<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO CERTIFY THE MARCH 29, 2013 ORDER FOR
INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. §1292(b)**

**TABLE OF CONTENTS**

Page

ARGUMENT ...................................................................................................................................1

I.   THE THREE CRITERIA OF 28 U.S.C. §1292(b) HAVE BEEN MET .............................1

     A.   Legal Standard ........................................................................................................1

     B.   Certification May Be "More Freely Granted" In This Large,
          Complex Case ..........................................................................................................1

     C.   The Order Involves a Controlling Legal Question Of Statutory Interpretation.......2

     D.   There Is Substantial Ground for Difference of Opinion On This Difficult Legal
          Issue Of First Impression ........................................................................................4

          1.   The Second Circuit Court of Appeals Has Not Spoken on The Legal
               Question Presented .......................................................................................4

          2.   The Difficult Legal Issue Decided In The Order Conflicts with Other
               Authority ......................................................................................................4

               a.   As The CEA's Definitions Provide And As The CFTC Has
                    Found, LIBOR Is A Commodity .....................................................5

               b.   LIBOR Is The "Commodity Underlying" The Eurodollar Futures
                    Contract........................................................................................... 6

               c.   LIBOR Is The Only Commodity Underlying The Eurodollar
                    Futures Contract That Furthers The Purpose Of Section 22(a) To
                    Prevent Manipulation And Protect The Integrity Of The Market....7

     E.   An Immediate Appeal from the Order May Materially Advance the Ultimate
          Termination of the Litigation...................................................................................8

CONCLUSION................................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Bradburn Parent Teacher Store, Inc. v. 3M*, 2005 WL 1819969 (E.D. Pa. Aug. 2, 2005) ...... 9, 10

*Brodt v. Bache & Co., Inc.,* 595 F.2d 459 (9th Cir. 1978) .................................................................. 2

*Cange v. Stotler & Co.*, 826 F.2d 581 (7th Cir. 1987) ...................................................................... 7

*CFTC v. Parnon Energy Inc.*, 875 F. Supp. 2d 233 (S.D.N.Y. 2012) ............................................. 7

*Compare Leist v. Simplot*, 638 F.2d 283 (2d Cir. 1980), *aff'd sub nom. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353 (1982) .................................................................. 7

*Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305 (S.D.N.Y. 2007) ............................................................................................................ 4, 9

*Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, (S.D.N.Y. 2007), *aff'd*, 543 F.3d 104 (2d Cir. 2008) .................................................................. 4

*Damato v. Hermanson*, 153 F.3d 464 (7th Cir. 1998) ...................................................................... 6

*Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 945 F. Supp. 84 (S.D.N.Y. 1996) .................................................................................................................. 4

*Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 945 F. Supp. 84(S.D.N.Y. 1996), 135 F.3d 837 (2d Cir. 1998) .................................................................................................... 4

*German v. Fed. Home Loan Mortg. Corp.*, 2000 WL 1006521 (S.D.N.Y. July 19, 2000) ............ 3

*Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239 (5th Cir. 2010) .................................... 6

*In re LIBOR-Based Fin. Instruments Antitrust Lit.*, No. 11 MD 2262 (NRB), 2013 WL 1285338 (S.D.N.Y. Mar. 29, 2013) ................................................................ 1, 3, 6, 8

*In re Lloyd's Am. Trust Fund Litig.*, 1997 WL 458739 (S.D.N.Y. Aug. 12, 1997) ...................... 1

*In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 741 (D. Md. 2003) .............................. 3, 9

*In re Nat'l Gas Distributors, LLC*, 556 F.3d 247 (4th Cir. 2009) .................................................. 2

*In re Natural Gas Commodity Litigation*, 337 F.Supp.2d 498 (S.D.N.Y. 2004) ........................... 7

*In re Sumitomo Copper Litigation* 182 F.R.D. 85 (S.D.N.Y.1998) ................................................ 7

*In the Matter of: Barclays PLC, Barclays Bank PLC and Barclays Capital Inc.*, CFTC No. 12-25, 2012 WL 2500330 (CFTC June 27, 2012) .......................................................................... 6

*Leist v. Simplot*, 638 F.2d 283 (2d Cir. 1980) ................................................................................ 7

*Lewis v. Elliott*, 628 F. Supp. 512 (D.D.C. 1986) .......................................................................... 3

*Movie Lab, Inc. v. Berkey Photo, Inc.* 452 F.2d 662 (2d Cir. 1971) ............................................... 2

*New York by Abrams v. Anheuser-Busch, Inc.*, No. 86 Civ. 2345, 1988 WL 1955 (E.D.N.Y. Jan. 5, 1988) ............................................................................................................ 3

*New York v. Gutierrez*, 623 F. Supp. 2d 301 (E.D.N.Y. 2009) ...................................................... 2

*Pollack v. Laidlaw Holdings, Inc.*, 90 CIV. 5788 (PKL), 1993 WL 254932 (S.D.N.Y. June 25, 1993) ............................................................................................................ 2

*Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535 (7th Cir. 2012) .................................. 9, 10

*U.S. Commodity Futures Trading Commission v. Joesph F. Welsh III*, 12-cv-01873, Docket No. 1 at ¶¶1, 48, 52 ........................................................................................................ 9

**Statutes**

28 U.S.C. §1292(b) ................................................................................................................ *passim*

7 U.S.C. § 1a(9) ............................................................................................................................. 5

7 U.S.C. § 25(a)(1)(D) ............................................................................................................... 1, 4

7 U.S.C. §25(a) ....................................................................................................................... *passim*

**Other Authorities**

Scott Frush, Commodities DeMystified: A Self-Teaching Guide (McGraw-Hill 2008) ................ 6

The Exchange-Based Plaintiffs ("Plaintiffs") respectfully submit this reply memorandum[1] (1) in further support of their April 22, 2013 letter motion ("Pltfs. Ltr.") [Docket No. 316] to certify the Court's March 29, 2013 Memorandum and Order, *In re LIBOR-Based Fin. Instruments Antitrust Lit.*, No. 11 MD 2262 (NRB), 2013 WL 1285338 (S.D.N.Y. Mar. 29, 2013) (the "Order") for interlocutory appeal pursuant to 28 U.S.C. §1292(b); and (2) in response to Defendants' opposition letter dated May 1, 2013.  *See* Docket No. 319.

Specifically, Plaintiffs seek certification of the Order for interlocutory appeal on the following controlling legal question:  whether LIBOR is the "commodity underlying" the Eurodollar futures contract within the meaning of Section 22(a)(1)(D) of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 25(a)(1)(D).

## ARGUMENT

### I. THE THREE CRITERIA OF 28 U.S.C. §1292(b) HAVE BEEN MET

#### A. Legal Standard

A district court may, in its discretion, certify an order for interlocutory appeal when (1) the "order involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion and," (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ."  28 U.S.C. §1292(b).

#### B. Certification May Be "More Freely Granted" In This Large, Complex Case

The institutional efficiency of the court system is one of the central concerns underlying 28 U.S.C. §1292 and "[b]ecause the district court's efficiency concerns are greatest in large, complex cases, certification may be more freely granted in so-called 'big' cases." *In re Lloyd's Am. Trust Fund Litig.*, 1997 WL 458739, at *4 (S.D.N.Y. Aug. 12, 1997).  Accordingly,

---

[1] The Court's Memorandum dated May 3, 2013 deemed Plaintiffs' April 22, 2013 letter a "letter motion for section 1292(b) certification" and allowed Plaintiffs to submit a reply.  Docket No. 309 pp. 5-6.

1

certification of the Order for interlocutory appeal in this large, complex case "may be more freely granted."

### C. The Order Involves a Controlling Legal Question Of Statutory Interpretation

A controlling question of law exists when "reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action." *New York v. Gutierrez*, 623 F. Supp. 2d 301, 316 (E.D.N.Y. 2009) (quoting *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001)) (internal quotation marks omitted), *rev'd on other grounds sub nom. New York v. Atl. States Marine Fisheries Comm'n*, 609 F.3d 524 (2d Cir. 2010).

Section 22(a) of the CEA, 7 U.S.C. §25(a) created an express right of action for private parties to sue for violations of the CEA that constitute manipulation of either or both the price of a commodity futures contract and "the price of the commodity underlying" such futures contract. Thus, contrary to Defendants' argument [Docket 319 at p. 2], whether LIBOR is the "commodity underlying" the Eurodollar futures contract within the meaning of Section 22(a) of the CEA is not a simple matter of contract interpretation but rather a legal question of statutory interpretation under the CEA. Courts have routinely granted certification under §1292(b) in circumstances involving similar legal matters of statutory interpretation.[2]

---

[2] *See e.g.*, *In re Nat'l Gas Distributors, LLC*, 556 F.3d 247, 252 (4th Cir. 2009) (interlocutory review under 1292(b) granted in case relating to definition of term "commodity forward agreements" under 11 U.S.C. § 101(53B)(A)(i)(VII) where such term was not specifically defined by the Bankruptcy Code); *Brodt v. Bache & Co., Inc.,* 595 F.2d 459 (9th Cir. 1978) (issue of whether a discretionary commodities trading account is an "investment contract" and therefore a security within the meaning of and subject to the registration requirements of the Securities Act of 1933, was a controlling question of law for certification under 1292(b)); *Movie Lab, Inc. v. Berkey Photo, Inc.* 452 F.2d 662 (2d Cir. 1971) (interlocutory appeal granted involving question of whether particular transaction was made "in connection with the purchase or sale" of a security under Securities Exchange Act of 1934); *Pollack v. Laidlaw Holdings, Inc.*, 90 CIV. 5788 (PKL), 1993 WL 254932 (S.D.N.Y. June 25, 1993) (granting

2

Defendants argue that the legal question presented for appeal here is supposedly not "controlling." Docket No. 319 p. 2. However, Defendants conspicuously ignore the Court's **express statement** in the Order that its ruling on such legal question "might have significant repercussions for the relief that plaintiffs are ultimately able to recover." Order, 2013 WL 1285338 at *43 n.18. These potentially significant repercussions justify interlocutory appeal, as reversal may change the nature of what Plaintiffs must prove. *German v. Fed. Home Loan Mortg. Corp.*, 2000 WL 1006521, at *1 (S.D.N.Y. July 19, 2000) (question that would "significantly affect . . . the conduct of the present action" presents a controlling question); *see also* Pltfs. Ltr. p. 3.

Under the existing ruling, Plaintiffs believe they must seek discovery on and prove that a specific intent to manipulate LIBOR is tantamount to manipulation of, or reflects a specific intent to manipulate, the price of Eurodollar futures contracts. *Compare* Order, 2013 WL 1285338 at *43 n.18 *with* Pltfs. Ltr. p. 3. In contrast, in the event of reversal, Plaintiffs would not have to make any such showing. This distinction will significantly affect the discovery and other conduct of this action such that it warrants interlocutory appeal.[3]

Moreover, if, contrary to Plaintiffs' reading of the Order, the Order precludes Plaintiffs' contention that by specifically intending to manipulate LIBOR Defendants specifically intended to manipulate Eurodollar futures prices, then the change in the conduct (and perhaps the outcome) of the action would obviously be even greater. *See* Pltfs. Ltr. p.3. And the need for or

---

plaintiffs' motion to certify interlocutory appeal of question not previously ruled on by appellate court as to whether mortgage participations at issue were "securities" actionable under federal securities laws).
[3] *In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 741, 743 (D. Md. 2003) (ruling that controlled scope of discovery and evidence presented controlling question of law); *cf. New York by Abrams v. Anheuser-Busch, Inc.*, No. 86 Civ. 2345, 1988 WL 1955, at *1 (E.D.N.Y. Jan. 5, 1988) (elements of proof in Sherman Act present controlling question of law); *Lewis v. Elliott*, 628 F. Supp. 512, 525 (D.D.C. 1986) (in defamation action, "questions of whether an absolute privilege or a qualified privilege applies, and whether if a qualified privilege applies the actual malice standard and burden of proof should apply" constituted controlling questions of law).

merit of §1292(b) certification would be even greater.  Thus, Defendants' contention that "Plaintiffs themselves do not consider resolution of an issue centrally important to the outcome of the litigation" is a mischaracterization.  Docket No. 319 p. 2.

> **D.     There Is Substantial Ground for Difference of Opinion On This Difficult Legal Issue Of First Impression**
>
> > **1.     The Second Circuit Court of Appeals Has Not Spoken on The Legal Question Presented**

During the thirty-one years since the enactment of Section 22(a) of the CEA, the Second Circuit Court of Appeals has not considered what is meant by Congress' expansion of Section 22(a) standing through the "commodity underlying" the futures contract language.  And no Court has before considered whether LIBOR is the commodity underlying the Eurodollar futures contract within the meaning of Section 22(a)(1)(D) of the CEA.  *Three Crown Ltd. P'ship v. Caxton Corp.*, 817 F.Supp. 1033, 1043 (S.D.N.Y. 1993) (the court quoted the parties' contentions regarding the commodity underlying Eurodollar futures contracts but did not make any holding on that issue).  Accordingly, "the requirement that 'there be substantial ground for difference of opinion' is satisfied since the Second Circuit has not spoken on the question presented."  *Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 945 F. Supp. 84, 87 (S.D.N.Y. 1996), *rev'd on other grounds*, 135 F.3d 837 (2d Cir. 1998).

> > **2.     The Difficult Legal Issue Decided In The Order Conflicts with Other Authority**

There also exists substantial grounds for difference of opinion when "(1) there is conflicting authority on the issue, **or** (2) the issue is particularly difficult and of first impression for the Second Circuit."  *Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007) (emphasis supplied) ("*Consub*"), *aff'd*, 543 F.3d 104 (2d Cir. 2008).

4

When there is no delivery of a physical commodity under a futures contract and the trading is based on a commodity other than that which is the name of the futures contract, the legal question of what the statutory language "commodity underlying" the futures contract means, is particularly difficult.[4]

In the absence of Second Circuit precedent, the Order's reconciliation of Defendants' manipulation of LIBOR with the CEA's private right of action conflicts with other authority, including that set forth in "a" – "c" below.  In fact, the Order appears in conflict with certain of Defendants' own legal authority.  *See e.g.*, Defendants' Reply Memorandum of Law In Further Support of Defendants' Motion to Dismiss the Exchange-Based Plaintiffs' Claims [Dkt. No. 227] at 7 ("[u]nder *Morrison*, what matters is that USD LIBOR, the underlying 'commodity' whose price Plaintiffs alleged was manipulated…."); *see also* Pltfs. Ltr. p. 2.

### a.  As The CEA's Definitions Provide And As The CFTC Has Found, LIBOR Is A Commodity

The definitions of commodity under the CEA show that LIBOR is a "[c]ommodity."  For one example, LIBOR is a commodity because it is a "service[]", right[] [or] interest[] . . . in which contracts for future delivery [*i.e.*, Eurodollar futures contracts] are presently or in the future dealt in."  CEA Section 1a(9), 7 U.S.C. § 1a(9).[5]  Thus, the Commodity Futures Trading Commission ("CFTC") has exercised its expertise to find that LIBOR is "a commodity in interstate commerce."  *In the Matter of: Barclays PLC, Barclays Bank PLC and Barclays*

---

[4] A Eurodollar futures contract is within the class of futures contracts known as "interest rate futures" or "financial futures," whose market price varies directly and inversely with the value of an underlying, benchmark interest rate.  Eurodollar futures commonly are referred to as LIBOR futures, with the terms Eurodollar and LIBOR used interchangeably.  CME Eurodollar futures prices are determined by the market's forecast of the 3-month USD LIBOR interest rate expected to prevail on the settlement date. Plaintiffs have adequately pled the artificial effect that the Defendants' deliberate manipulative conduct had on the market prices for LIBOR-based interest rate futures (*i.e.*, Eurodollar futures).  *See, e.g.,* Amended Complaint ¶¶ 206, 215.

[5] The Dodd-Frank Wall Street Reform and Consumer Protection Act "Dodd Frank" Amendments to the CEA renumbered the definitions under Section 1a of the CEA.  "Commodity" previously was defined under 1a(4).

5

*Capital Inc.*, CFTC No. 12-25, 2012 WL 2500330, at *4 (CFTC June 27, 2012).[6] Moreover, the CFTC also found that LIBOR is "the basis for settlement of . . . the three-month and one-month Eurodollar contracts on the Chicago Mercantile Exchange." *Id.*

### b. LIBOR Is The "Commodity Underlying" The Eurodollar Futures Contract

Although almost no courts have interpreted the "commodity underlying" language used in Section 22(a), the Fifth Circuit has held that the commodity underlying a particular futures contract is the specific commodity "delivered" at expiration of the futures contract. *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 247 (5th Cir. 2010) (noting a "NYMEX natural gas futures contract is specifically tied to, and standardized against, the spot price at the Henry Hub" and that underlying commodity is thus "the specific natural gas delivered at the Henry Hub" not natural gas at some "abstract level").

Eurodollar deposits are not "delivered" and, thus, do not satisfy the holding or reasoning of *Hershey*. To that extent, there is a conflict between the Order and *Hershey* and the other cases cited by Defendants concerning physical deliveries of underlying commodities.[7]

Rather than Eurodollar deposits, LIBOR is the commodity that settles (*i.e.*, is needed to satisfy delivery) at the expiration of the Eurodollar futures contract. Thus, the LIBOR commodity is effectively "delivered" on or is the closest commodity to a "delivery" on a Eurodollar futures contract.[8] *Id*. *See also* Order, 2013 WL 1285338 at *21 ("LIBOR was

---

[6] Courts give "considerable weight" to the views of the CFTC as the agency charged with administration of the CEA. *See, e.g., Damato v. Hermanson*, 153 F.3d 464, 472 (7th Cir. 1998).
[7] The reaming two cases on which Defendants rely for the third point in their May 1, 2013 letter involved the physical delivery of commodities and thus are silent on the question of the cash settlement of financial futures, like the Eurodollar futures contract at issue here. Docket No. 319 at p. 2.
[8] *See, e.g.*, Scott Frush, Commodities DeMystified: A Self-Teaching Guide (McGraw-Hill 2008). The Guide explains that, generally speaking, a "commodity" is defined by the following three characteristics: standardization, tradability, and deliverability. But this description is qualified: "The only exception to the rules that commodities must be raw materials and must have deliverability is the commodity class

6

directly incorporated into the *price* of Eurodollar futures contracts, and by allegedly manipulating LIBOR, defendants manipulated the price of those contracts.") (emphasis in original). Thus, under the logic of *Hershey*, LIBOR is the commodity underlying the Eurodollar futures contract. Clearly, commodities such as LIBOR constitute the basis for pricing and settlement of financial futures contracts and may, therefore, be the "commodity underlying" the interest rate futures contracts with the meaning of Section 22(a) of the CEA.[9]

### c. LIBOR Is The Only Commodity Underlying The Eurodollar Futures Contract That Furthers The Purpose Of Section 22(a) To Prevent Manipulation And Protect The Integrity Of The Market

LIBOR is the only "commodity underlying" the Eurodollar futures contract that furthers the overarching manipulation-deterrence and remedial purposes of the CEA, and the "critical" purpose of Section 22(a) to redress and prevent price manipulation [and fraud]. *Compare Leist v. Simplot*, 638 F.2d 283, 315 (2d Cir. 1980) (preventing manipulation is the overarching purpose of the CEA), *aff'd sub nom. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353 (1982) *with Cange v. Stotler & Co.*, 826 F.2d 581, 594-95 (7th Cir. 1987) (Congress viewed private lawsuits as "**critical**" to protecting the public and fundamental to maintaining the

---

called financials. For the most part, financials are considered commodities even though they are intangible. Financials include currencies, indexes, rates, and emissions allowance credits." *Id.* at 18. It also states: "Rates, otherwise known as interest rates, are one of the most widely traded commodities. Rates are interest rate futures in which the underlying security is a debt instrument, for example, long-term instruments such as T-bond and T-notes and short term instruments such as Fed funds and Eurodollars." *Id.* at 126. One of the interest rate futures contracts listed in the guide as being traded on the CME is LIBOR. *Id.* at 27.

[9] The *Natural Gas I* case involved the false reporting of spot market gas transactions at numerous delivery hubs across the country, and therefore influenced the entire pricing structure that underlies natural gas futures contracts, just as LIBOR is a universally-recognized index rate, that underlies the entire pricing structure of Eurodollar futures contracts. *See In re Natural Gas Commodity Litigation*, 337 F.Supp.2d 498, 507 (S.D.N.Y. 2004); *see also In re Sumitomo Copper Litigation* 182 F.R.D. 85, 85–94 (S.D.N.Y.1998) (allowing a class to proceed based on allegations that commercial copper dealers held long positions on the London Metal Exchange and hoarded copper in exchange warehouses such that the price of copper on the U.S.-based COMEX became artificial).

credibility of the futures market); *and CFTC v. Parnon Energy Inc.*, 875 F. Supp. 2d 233, 243 (S.D.N.Y. 2012) (CEA is remedial legislation).

The purpose of the addition of the "the price of the commodity underlying" language into Section 22(a) of the CEA is obviously to expand such redress and deterrence to include manipulation of the futures contract price from the next most likely source *i.e.,* the commodity underlying the futures contract. Here, the manipulation of LIBOR is the next most likely source of danger (or the most likely source of danger) of manipulation of Eurodollar futures prices. Indeed, the danger of manipulating Eurodollar futures prices by manipulating LIBOR is mathematically much more automatic, direct and greater than the danger to the manipulation of corn futures prices by the manipulation of the cash market corn prices. *Compare* Order, 2013 WL 1285338 at *43 (discussing corn futures).

In contrast, practically speaking, it is hard to conceive how manipulating Eurodollar deposits could, indirectly or otherwise, manipulate Eurodollar futures contracts. The amounts of phantom dollar deposits that are never delivered have no significance whatsoever for purposes of manipulation of Eurodollar futures prices (except as to supply a multiplication unit by which to measure the degree of loss from such manipulation of LIBOR).

In order to accomplish the Section 22(a) "price of the commodity underlying" language's purpose of expanding the prevention of manipulation and the protection of the integrity of futures contract prices, LIBOR is the only commodity that could effectively serve as the "commodity underlying" the Eurodollar futures contract.

E. **An Immediate Appeal from the Order May Materially Advance the Ultimate Termination of the Litigation**

As to the third prong of § 1292(b), all that is required "is that an immediate appeal *may* materially advance the ultimate termination of the litigation," which occurs when "the

8

completion of the litigation will take longer" absent the appeal.  *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) (emphasis in original).  "Courts place particular emphasis on the importance of this . . . factor."  *Consub*, 476 F. Supp. 2d at 310.

    Contrary to Defendants' arguments that an interlocutory appeal will somehow serve to broaden the issues in the proceedings [Docket No. 319 p. 3], interlocutory appeal will help define the issues and advance the termination of the action.[10]  Because the Order guides what Plaintiffs must prove with respect to the "specific intent to manipulate the price" element of their CEA claims, its "ruling is foundational to the structure within which this MDL litigation will be conducted . . . ." *Microsoft*, 274 F. Supp. 2d at 743.  Thus, the Order controls the scope, the degree, and the object of the evidence at trial, summary judgment, and otherwise.

    These complex proceedings are likely to be lengthy as it is, and "the taking of an appeal with respect to the [Order] after discovery, trial, and final decision by this Court could result in the need for additional discovery and a new trial." *Bradburn Parent Teacher Store, Inc. v. 3M*, 2005 WL 1819969, at *4 (E.D. Pa. Aug. 2, 2005).  In the event of a retrial, there would have been a "senseless waste of private and public resources and an unconscionable delay in the final resolution of these proceedings" if the Second Circuit were not given the chance to review the Order on an interlocutory appeal and at some later date concluded this Court erred. *Microsoft*, 274 F. Supp. 2d at 743.  Furthermore, "uncertainty" about the nature of proof required for the

---

[10] Defendants argue that reversal of this Court's determination on the commodity underling Eurodollar futures contracts would be "futile" because LIBOR is supposedly not a "commodity in interstate commerce."  Docket No. 319 p. 3.  However, Defendants' argument is contrary to the CFTC's finding that LIBOR is "a commodity in interstate commerce."  *See* "D.2.a" above.  Moreover, the fact that a commodity is imported into the United States does not make it exclusively a foreign commodity.  For example, the CFTC recently alleged that platinum and palladium, metals mined largely overseas and brought into the United States, are commodities in interstate commerce.  *See e.g.*, *U.S. Commodity Futures Trading Commission v. Joesph F. Welsh III*, 12-cv-01873, Docket No. 1 at ¶¶1, 48, 52 (alleging that defendant attempted to manipulate the prices of platinum and palladium futures contracts and that platinum and palladium are commodities in interstate commerce).

CEA claim "may delay settlement . . . and by doing so further protract the litigation." *Sterk*, 672 F.3d at 536.

Finally, an interlocutory appeal would not create any significant delay in these proceedings. This action is in its early stages. Discovery and all other pretrial matters unrelated to the appeal may proceed concurrent with the appeal. *See Bradburn*, 2005 WL 1819969 at *4. By the time of consideration of summary judgment, the Second Circuit should have spoken.

## CONCLUSION

Accordingly, Plaintiffs respectfully request that the Court use its discretion to certify the Order for interlocutory appeal.

Dated: May 17, 2013
       New York, New York

Respectfully submitted,

| | |
|---|---|
| ___/s/ David Kovel___ | ___/s/ Christopher Lovell___ |
| David Kovel | Christopher Lovell |
| **KIRBY McINERNEY LLP** | **LOVELL STEWART HALEBIAN** |
| 825 Third Avenue, 16th floor | **JACOBSON LLP** |
| New York, New York 10022 | 61 Broadway, Suite 501 |
| Telephone: (212) 371-6600 | New York, New York 10006 |
| Email:dkovel@kmllp.com | Telephone: (212) 608-1900 |
| | Email: clovell@lshllp.com |

*Interim Co-Lead Counsel for Exchange-Based Plaintiffs and the Class*