**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262 |
| | Master File No. 1:11-md-2262-NRB |
| THIS DOCUMENT RELATES TO: | ECF Case |
| | **ORAL ARGUMENT REQUESTED** |
| MAYOR AND CITY COUNCIL OF BALTIMORE, ET AL., | |
| Plaintiffs, | No. 11-cv-5450 |
| v. | |
| BANK OF AMERICA CORPORATION, ET AL., Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO OTC**
**PLAINTIFFS' REQUEST FOR LEAVE TO AMEND STATE LAW CLAIMS**

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

ARGUMENT ....................................................................................................................1

I.  CAFA Confers Federal Jurisdiction Over the OTC Plaintiffs' State Law Claims .............1

II.  The Court Should Deny the OTC Plaintiffs' Request for Leave to Amend Their
State Law Claims ........................................................................................................2

    A.  Unjust Enrichment ........................................................................................2

    B.  Breach of Contract ........................................................................................7

        1.  The Court Should Exercise Its Discretion to Deny Leave to Plead
Any Previously Unasserted Legal Theory ..................................................7

        2.  Granting The OTC Plaintiffs Leave To Plead Their New Breach of
Contract Claim Would Be Futile ..............................................................8

CONCLUSION...............................................................................................................13

# TABLE OF AUTHORITIES

### CASES

PAGE

*AdiPar Ltd. v. PLD Int'l Corp.*,
   No. 01 Civ. 0765 (MBM), 2002 WL 31740622 (S.D.N.Y. Dec. 6, 2002) ............................... 4

*A.I.A. Holdings, S.A. v. Lehman Bros.*,
   No. 97 Civ. 4978 (LMM), 1998 WL 159059 (S.D.N.Y. Apr. 1, 1998).................................. 6

*Apfel v. Prudential-Bache Sec.*,
   *Inc.*, 81 N.Y.2d 470 (1993) ................................................................................................. 4

*Bellikoff v. Eaton Vance Corp.*,
   481 F.3d 110 (2d Cir. 2007)................................................................................................. 8

*Carvel Corp. v. Diversified Mgmt. Grp. Inc.*,
   930 F.2d 228 (2d Cir. 1991)............................................................................................... 10

*City of New York v. Coastal Oil N.Y., Inc.*,
   No. 96 Civ. 8667 (RPP), 1999 WL 493355 (S.D.N.Y. July 12, 1999) ............................... 11

*Cox v. NAP Constr. Co.*,
   10 N.Y.3d 592 (2008) .......................................................................................................... 2

*DeBlasio v. Merrill Lynch & Co.*,
   No. 07 Civ. 318 (RJS), 2009 WL 2242605 (S.D.N.Y. July 27, 2009) ............................ 4, 10

*Estate of Pew v. Cardarelli*,
   527 F.3d 25 (2d Cir. 2008)................................................................................................... 2

*Farricker v. Penson Dev., Inc.*,
   2013 WL 765067 (2d Cir. Mar. 1, 2013) ............................................................................. 8

*Fesseha v. TD Waterhouse Investor Servs., Inc.*,
   305 A.D.2d 268 (N.Y. 1st Dep't 2003) ................................................................................ 9

*Georgia Malone & Co. v. Rieder*,
   19 N.Y. 3d 511 (2012) ........................................................................................................ 5

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
   12 N.Y.3d 132 (2009) .......................................................................................................... 2

*In re Hyperion Sec. Litig.*,
   1995 WL 422480 (S.D.N.Y. Jul. 14, 1995), *aff'd*, 98 F.3d 2 (2d Cir. 1996).......................... 8

*Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Exp. (USA), Inc.*,
  No. 08 Civ. 761C, 2011 WL 815209 (W.D.N.Y. Mar. 2, 2011) ........................................... 11

*Joseph Sternberg, Inc. v. Walber 36th St. Assocs.*,
  187 A.D.2d 225 (N.Y. 1st Dep't 1993)......................................................................... 4

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) ............................................................................... 12

*Land Man Realty, Inc. v. Weichert, Inc.*,
  94 A.D.3d 1221 (3d Dep't 2012) ............................................................................... 6

*Md. Cas. Co. v. W.R. Grace & Co.*,
  218 F.3d 204 (2d Cir. 2000) ................................................................................... 6

*Mills v. Polar Molecular Corp.*,
  12 F.3d 1170 (2d Cir. 1993) ................................................................................... 5

*Pappas v. Tzolis*,
  20 N.Y.3d 228 (2012) ........................................................................................ 2, 3

*Paul v. Bank of Am. Corp.*,
  No. 09 Civ. 1932 (ENV) (JMA), 2011 WL 684083 (E.D.N.Y. Feb. 16, 2011) ................... 10

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)................................................................................... 4

*State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*,
  921 F.2d 409 (2d Cir. 1990) ................................................................................... 8

*Sunoco, Inc. v. Honeywell Int'l, Inc.*,
  No. 05 Civ. 7984 (DLC), 2006 WL 709202 (S.D.N.Y. Mar. 21, 2006) ........................... 11

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg. Inc.*,
  487 F.3d 89 (2d Cir. 2007)................................................................................... 10

*Unisys Corp. v. Hercules Inc.*,
  224 A.D.2d 365 (N.Y. 1st Dep't 1996)....................................................................... 4

*Warner Theatre Assoc. Ltd. P'ship v. Metro. Life Ins. Co.*,
  No. 97 Civ. 4914, 1997 WL 685334 (S.D.N.Y. Nov. 4, 1997),
  *aff'd,* 149 F.3d 134 (2d Cir. 1998) ......................................................................... 9

*Wolff v. Rare Medium, Inc.*,
  210 F. Supp. 2d 490 (S.D.N.Y. 2002), *aff'd*, 65 F. App'x 736 (2d Cir. 2003)...................... 9

<u>STATUTES & RULES</u>

28 U.S.C. § 1332(d) ................................................................................................ 1, 2

Fed. R. Civ. P. 9(b) ........................................................................................ 4, 5, 6, 10

Fed. R. Civ. P. 23(b)(3)................................................................................................ 12

The undersigned Defendants respectfully submit this Memorandum in opposition to the OTC Plaintiffs' motion for leave to amend and assert state law claims based on jurisdiction under the Class Action Fairness Act ("CAFA"), as argued in Section II.C. of the OTC Plaintiffs' Memorandum of Law in Support of their Motion for Leave to File Proposed Consolidated Second Amended Complaint.  (Dkt. No. 334 at 14-18.)[1]

## ARGUMENT

## I.    CAFA CONFERS FEDERAL JURISDICTION OVER THE OTC PLAINTIFFS' STATE LAW CLAIMS

Defendants do not dispute that CAFA confers federal jurisdiction over the OTC Plaintiffs' purported class claims based on state law, as argued in Point II.C of their Memorandum (Dkt. No. 334, 14-15).[2]  The proposed amended complaint includes state law claims asserted on behalf of a putative class that appears to contain more than 100 members, and at least one member of the putative class is diverse from at least one Defendant.  The amount in controversy is plausibly alleged to be in excess of $5 million.  The allegations therefore satisfy the statutory requirements to invoke CAFA jurisdiction.  28 U.S.C. § 1332(d)(2), (5)(b), (6).[3]

---

[1] This opposition is submitted in response to the Court's request communicated on July 26, 2013, for briefing confined to the OTC Plaintiffs' state law claims.  The Court has not requested that Defendants submit any responsive briefing with respect to Plaintiffs' requests to amend their antitrust allegations, and Defendants have not done so, consistent with the Court's May 3 ruling.  (Dkt. No. 309 at 4.)

[2] Defendants understood this Court's request to be limited to the question of jurisdiction under CAFA.  Defendants note, however, that there are other bases for the exercise of federal jurisdiction over LIBOR-related state law claims that have not been raised by the OTC Plaintiffs and that do not depend on the existence of class-based allegations.  As discussed in the briefing on the two remand motions currently pending before the Court, the Edge Act and Foreign Sovereign Immunities Act independently confer federal jurisdiction over LIBOR-related state law claims. (*See Salix Capital US Inc. v. Banc of Am. Sec. LLC*, No. 13 Civ. 4018 (NRB), Dkt. Nos. 1, 52-53; *Maragos v. Bank of Am. Corp.*, No. 13 Civ. 2297 (NRB), Dkt. Nos. 1, 63-64.)

[3] Defendants have analyzed the potential exceptions to CAFA and have concluded that they do not apply.  The OTC Plaintiffs have not identified a sub-group of "primary defendants," and the defendant group as a whole does not consist entirely of "governmental entities" or "citizens of the state where the action was originally filed," rendering the exceptions under 28 U.S.C. § 1332(d)(3), (4)(B) and (5)(A) inapplicable.  Putative class actions have been filed asserting similar factual allegations against the Defendants in the three years preceding the filing of the OTC Plaintiffs' suit, rendering the exception under 28 U.S.C. §1332(4)(A) inapplicable.  Although the OTC Plaintiffs' claims relate to securities purchases, they include non-"covered securities" under 15 U.S.C. § 78bb(f)(5)(E) (e.g.,

## II.   THE COURT SHOULD DENY THE OTC PLAINTIFFS' REQUEST FOR LEAVE TO AMEND THEIR STATE LAW CLAIMS

The OTC Plaintiffs seek to re-plead their previously dismissed unjust enrichment claim and to plead a new claim for breach of contract.  Notwithstanding the existence of subject matter jurisdiction, the OTC Plaintiffs' request for leave to amend with respect to the LIBOR-related state law claims should be denied as futile.

### A.   Unjust Enrichment

Defendants previously briefed the insufficiency of the unjust enrichment claims asserted by the various plaintiff groups.  (Defs.' Mem. Exchange-Based Claims, at 29-31; Defs.' Mem. Schwab Claims, at 30-31; Defs.' Mem. OTC Claims, at 1 n.4; Defs.' Reply Mem. Exchange-Based Claims, at 15; Defs.' Reply Mem. Schwab Claims, at 10.)  As Defendants argued then, and as further set forth below with respect to the OTC Plaintiffs' Proposed Second Consolidated Amended Complaint ("OTC Prop. SAC"), there is no viable claim for unjust enrichment based on the facts alleged.

Under New York law, an unjust enrichment claim can exist only "*in the absence of an actual agreement between the parties concerned.*"  *Pappas v. Tzolis*, 20 N.Y.3d 228, 234 (2012) (emphasis in original) (quoting *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009)).  Accordingly, "[a] party may not recover in . . . unjust enrichment where the parties have entered into a contract that governs the subject matter."  *Id.* (quoting *Cox v. NAP Constr. Co.*, 10 N.Y.3d 592, 607 (2008)).[4]  According to their own class definition, the OTC Plaintiffs

interest rate swaps), and do not seek merely to "enforce the terms of instruments that create and define securities," rendering the exceptions under 28 U.S.C. § 1332(d)(9)(A) and (C) inapplicable.  *See Estate of Pew v. Cardarelli*, 527 F.3d 25, 33 (2d Cir. 2008) (finding that fraud-based claim did not implicate CAFA's exception under § 1332(d)(9)(C) for securities-related claims, and construing this exception narrowly).

[4] While some instruments falling within the class definition may be governed by the law of jurisdictions other than New York, the OTC Plaintiffs have not alleged that any other jurisdiction's law is applicable, and the Defendants therefore address the OTC Plaintiffs' unjust enrichment and breach of contract claims under New York law only.

are persons or entities who "entered into binding and enforceable contracts with Defendants in connection with each of their purchases of LIBOR-based instruments." (OTC Prop. SAC ¶¶ 382, 389.) Thus, whatever rights or remedies they may have are governed by their written agreements with Defendants relating to those purchases. As a matter of law, there can be no unjust enrichment claim to the extent they base their claims on those contractual instruments.

The OTC Plaintiffs concede that "there are circumstances where the existence of a contract may bar a quasi-contract claim such as unjust enrichment," but nonetheless contend that this rule is inapplicable because of a dispute with Defendants regarding the rights and remedies afforded by the relevant agreements. (OTC Pls.' Mem. at 17-18 (arguing that "defendants may disagree" that the relevant agreements "entitle[] [OTC Plaintiffs] to receive accurate LIBOR, rather than artificially suppressed LIBOR").) While this argument goes to the deficiency in the OTC Plaintiffs' belatedly pleaded contract claim, it is not a basis for permitting the OTC Plaintiffs to re-plead their unjust enrichment claim. As discussed below, Defendants do "disagree" that the relevant agreements contain the obligation the OTC Plaintiffs seek to read into them – *i.e.*, a representation or guarantee regarding the manner in which LIBOR is set, or a promise that LIBOR would be "accurate" in any sense other than the amount paid under the instrument would be based on the published LIBOR rate (which the OTC Plaintiffs do not contend Defendants failed to do). (*See* infra at 9.)

For purposes of the OTC Plaintiffs' present motion, however, the controlling question is whether the relevant transaction is governed by a contract in the first place, not whether the contract affords the particular protection or remedy urged by the plaintiff. *See Pappas*, 20 N.Y.3d at 234 (dismissing unjust enrichment claim based on allegations of misrepresentation relating to a sale of interests in an LLC because "the sale of interests in the LLC was controlled

3

by contracts"); *Apfel v. Prudential-Bache Sec., Inc.*, 81 N.Y.2d 470, 479 (1993) (dismissing plaintiffs' unjust enrichment claim because "[t]he transaction is controlled by the express agreement of the parties and their rights and liability are to be determined solely on theories of breach of contract").[5] Here, the OTC Plaintiffs affirmatively allege the existence of binding contracts, which contracts govern the consideration for the financial instruments they purchased, and thus their claim for unjust enrichment fails as a matter of law.

Moreover, even if the existence of the relevant agreements did not bar their unjust enrichment claim, the OTC Plaintiffs have not pleaded the claim adequately. Because the unjust enrichment claim is based on alleged fraudulent conduct (*see, e.g.*, OTC Prop. SAC ¶¶ 7, 8, 42, 76, 307, 309 (alleging purported "affirmative[] misrepresentation[s]," "manipulation," and "artificial[] suppressi[on]"), the OTC Plaintiffs must plead it – including the alleged fraud on which it is premised – with the heightened particularity mandated by Rule 9(b). *See, e.g.*, *DeBlasio v. Merrill Lynch & Co.*, No. 07 Civ. 318 (RJS), 2009 WL 2242605, at *11-12 (S.D.N.Y. July 27, 2009) (holding that unjust enrichment claims premised on alleged fraudulent conduct must satisfy Rule 9(b)); *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (explaining that Rule 9(b) "is cast in terms of the conduct alleged, and is not limited to

---

[5] *Joseph Sternberg, Inc. v. Walber 36th St. Assocs.*, 187 A.D.2d 225, 228 (N.Y. 1st Dep't 1993), cited by the OTC Plaintiffs, is thus inapposite. As the First Department itself has explained, that case "present[ed] a question with respect to not only the terms but also the existence of a contractual obligation" between the parties. *Unisys Corp. v. Hercules Inc.*, 224 A.D.2d 365, 369-70 (N.Y. 1st Dep't 1996). By contrast, here, as in *Unisys*, the relevant rights and obligations are governed by an alleged contractual relationship, and the disagreement regarding the contract's applicability arises only because the plaintiff seeks relief beyond that expressly provided by the contract. *See id.*; *see also AdiPar Ltd. v. PLD Int'l Corp.*, No. 01 Civ. 0765 (MBM), 2002 WL 31740622, at *12 (S.D.N.Y. Dec. 6, 2002) (distinguishing *Joseph Sternberg* and dismissing unjust enrichment claim where "crux of the dispute" was not whether there existed a contractual relationship governing the parties' rights and responsibilities but rather "what those rights and responsibilities were").

allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action").[6]

The OTC Plaintiffs have not, and cannot, satisfy Rule 9(b)'s heightened pleading requirements with respect to their unjust enrichment claim.  They have not pleaded at all, let alone with particularity, how Defendants were allegedly "unjustly enriched" at the expense of the OTC Plaintiffs.  They certainly have not done so with respect to Defendants that were not parties to a particular Plaintiff's over-the-counter LIBOR-based transactions.  As this Court has already found with respect to the Exchange-Based Plaintiffs, Defendants that were not parties to a particular Plaintiff's transaction are too attenuated from that Plaintiff's alleged injury to support an unjust enrichment claim.  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, __ F. Supp. 2d __, 2013 WL 1285338, at *61 (S.D.N.Y. Mar. 29, 2013); *see also Georgia Malone & Co. v. Rieder*, 19 N.Y. 3d 511, 517-18 (2012) (holding that the relationship between plaintiff and defendant is too attenuated to support an unjust enrichment claim when "they simply had no dealings with each other").

Nor have the OTC Plaintiffs pleaded how the Defendants were unjustly enriched with respect to direct counterparties.  To the extent the OTC Plaintiffs rely on allegations of LIBOR suppression, they have not adequately or plausibly alleged that any Defendant, let alone all Defendants, would have experienced a net financial gain as a result of suppressed LIBOR rates (given the myriad LIBOR-based positions that Defendants would have held at any given time), or that every OTC Plaintiff would have lost money as a result of the alleged suppression (given the OTC Plaintiffs' failure to limit their class to purchasers who stood to benefit only from

---

[6] In order to satisfy Rule 9(b)'s heightened pleading standard, the OTC Plaintiffs' proposed complaint must "(1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Rombach*, 355 F.3d at 170 (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

higher LIBOR rates (*see* OTC Prop. SAC ¶ 35)).[7]  *See Md. Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 212-13 (2d Cir. 2000) (analyzing relative economic impact in full context of relevant dealings and dismissing unjust enrichment claim based on lack of net gain by defendants or corresponding net loss to plaintiffs); *Land Man Realty, Inc. v. Weichert, Inc.*, 94 A.D.3d 1221, 1222-23 (N.Y. 3d Dep't 2012) (explaining that necessary predicates to any unjust enrichment claim are that the "defendants were enriched" by the allegedly unjust conduct and that "the enrichment came at the plaintiff's expense").  To the extent the OTC Plaintiffs rely on allegations of episodic trader manipulation of LIBOR rates at unspecified times and in unspecified directions (*i.e.*, up or down), the inference of the required "enrichment" and corresponding loss for any given Defendant and OTC Plaintiff is, if anything, even more speculative and less plausibly alleged.  (*See* Defs.' Opp. Exchange-Based Mot. for Leave to Amend, Dkt. No. 362, at 20-21.)  The OTC Plaintiffs, for example, do not identify a single putative class member that transacted with any trader alleged to have manipulated LIBOR-based trading positions, much less that such manipulation harmed the relevant Plaintiff or enriched the relevant Defendant.[8]

For these reasons, and those asserted in Defendants' prior briefing, the Court should decline to reinstate the OTC Plaintiffs' unjust enrichment claim, notwithstanding the existence of jurisdiction to consider it.

---

[7] Indeed, some class members – such as lead plaintiff, City of Baltimore – were *neutral* to LIBOR movements and thus would not have been injured by increases *or* decreases in LIBOR rates.  *See* Defs.' Mem. Antitrust Claims, at 32-33.

[8] More generally, the OTC Plaintiffs have not adequately alleged underlying LIBOR manipulation of any kind, regardless of whether it resulted in the required "enrichment" and corresponding loss, because the OTC Plaintiffs have not alleged the "who," "what," "when," "why," and "where" of the alleged fraudulent conduct.  Generalized allegations that diversely situated plaintiffs were defrauded by a group of defendants in undifferentiated fashion are insufficient to satisfy Rule 9(b)'s heightened pleading requirements.  *See, e.g., A.I.A. Holdings, S.A. v. Lehman Bros.*, No. 97 Civ. 4978 (LMM), 1998 WL 159059, at *7 (S.D.N.Y. Apr. 1, 1998) ("[T]he complaint describes a generic fraud, as if each plaintiff's case is identical to every other case, and relies on broad, sweeping generalizations.  Such pleading is inadequate under Rule 9(b).").

### B.     Breach of Contract

The Court should also deny the OTC Plaintiffs' request to assert a new breach of contract

claim.

#### 1.     The Court Should Exercise Its Discretion to Deny Leave to Plead Any Previously Unasserted Legal Theory

The Court should exercise its discretion to deny leave to assert *any* new theory of liability

at this stage of the case.  As the Court observed in its May 3, 2013 order:

> In their recent letters, plaintiffs also suggest *wholly new theories of liability* to avoid the dismissal of their antitrust claims (which was with prejudice), as well as *contract claims that were asserted neither in their original complaints, nor in their amended complaints.  Plaintiffs' letters, of course, come two years after the case was filed.*

(Dkt. No. 309 at 3 n.1 (emphasis added).)  A review of the record confirms the Court's

observations and underscores that leave to assert a breach of contract claim should be denied.[9]

The OTC Plaintiffs have offered no justification for this delay, and none exists.  Indeed, multiple

independent factors weigh against granting the requested leave, any one of which is a sufficient

basis for denial.  Among others:

---

[9] The original complaint filed by lead OTC Plaintiffs Mayor and City Council of Baltimore, dated August 5, 2011, asserted two claims:  violations of the Sherman Act and unjust enrichment.  (*See* Compl., *Mayor and City Council of Baltimore v. Bank of Am. Corp.*, No. 11 Civ. 5450 (Aug. 5, 2011).)  Lead OTC Plaintiff New Britain Firefighters' and Police Benefit Fund filed its original LIBOR complaint on October 28, 2011, also confined to alleged Sherman Act violations and unjust enrichment.  (*See* Compl., *City of New Britain Firefighters' and Police Benefit Fund v. Bank of Am. Corp.*, No. 11 Civ. 7715 (Oct. 28, 2011).)  On March 1, 2012, having already had more than half a year to consider potential amendments, Plaintiffs were granted an additional 60 days to prepare consolidated amended complaints and to supplement or modify their claims in any way they saw fit.  (3/1/2012 Hr'g Tr. at 9-11.)  In their consolidated and amended complaint dated April 30, 2012, the OTC Plaintiffs opted to confine their complaint to the same Sherman Act and unjust enrichment claims that they initially asserted.  (*See* Consol. Am. Compl., *Mayor and City Council of Baltimore v. Credit Suisse Grp. AG* (Apr. 30, 2012).)  In August 2012, Plaintiffs were effectively permitted to amend their complaints for a second time based on Defendants' concession that Plaintiffs could reference the Barclays settlement documents and surrounding facts in their opposition to Defendants' motion to dismiss, as if those facts had been incorporated into their complaints.  (8/8/2012 Hr'g Tr. at 6.)  In seeking to amend their complaints to reflect the Barclays settlements and other developments, Plaintiffs once again did not seek leave to add any new claims or legal theories.  It was only after another eight months and the issuance of this Court's decision on the motion to dismiss that the OTC Plaintiffs for the first time sought to amend their complaint to add a breach of contract claim.  (4/12/2013 Letter from OTC and Bondholder Plaintiffs' to the Court at 2-3.)

7

- The OTC Plaintiffs have already been afforded repeated opportunities to amend. *See In re Hyperion Sec. Litig.,* 1995 WL 422480, at *8 (S.D.N.Y. Jul. 14, 1995) (denying leave to amend where plaintiffs had been given "more than two bites at an apple they have not been able to get their teeth into"), *aff'd*, 98 F.3d 2 (2d Cir. 1996).

- A delay of nearly two years in asserting the breach of contract claim is excessive and explained only by an apparent tactical decision to refrain from asserting the claim earlier. *Farricker v. Penson Dev., Inc.*, 2013 WL 765067, at *2 (2d Cir. Mar. 1, 2013) (affirming denial of motion for leave to amend that was unjustifiably delayed for at least nine months); *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) (leave to amend properly denied where decision to postpone assertion of particular claim appears to have been "tactical").

- The OTC Plaintiffs waited until *after* receiving the Court's motion to dismiss decision before seeking to add a breach of contract claim, further militating against the requested leave. *See, e.g.*, *State Trading*, 921 F.2d at 418 ("When the moving party has had an opportunity to assert the amendment earlier, but has waited until after judgment before requesting leave, a court may exercise its discretion more exactingly."); *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (plaintiffs are "not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies").

Given these circumstances and the absence of any asserted (let alone established) justification for the delay, Defendants respectfully submit that the OTC Plaintiffs should not be permitted to assert a new contract-based theory of liability.

### 2. Granting The OTC Plaintiffs Leave To Plead Their New Breach of Contract Claim Would Be Futile

Even if the Court were to overlook the OTC Plaintiffs' unjustified delay in asserting a breach of contract claim, it should nonetheless deny leave to assert this new claim on the basis that it would be futile.

*First*, the OTC Plaintiffs have failed to identify any provision of any relevant contract that any Defendant allegedly breached. Indeed, the OTC Plaintiffs have not identified any contractual provisions at all – not in *any* agreement, let alone in agreements covering the wide spectrum of "LIBOR-based instruments" transactions implicated by the OTC Plaintiffs'

allegations.[10]  Instead, the OTC Plaintiffs assert in conclusory fashion that all relevant agreements not only promised delivery of a financial instrument based on actual published LIBOR rates (performance of which is not disputed), but also incorporated some kind of guarantee regarding the inherent "accuracy" of LIBOR and/or the process by which LIBOR was set, which Defendants purportedly violated.  (OTC Prop. SAC ¶¶ 383-87; OTC Pls.' Mem. at 15-16.)  The OTC Plaintiffs cannot simply declare that the relevant agreements afford the protections they assert, but rather must identify the specific portions of those agreements supposedly conferring those protections and imposing the asserted obligations.  *See, e.g.*, *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002) ("When pleading . . . [a breach of contract claim], a plaintiff must identify the specific provision of the contract that was breached as a result of the acts at issue."), *aff'd*, 65 F. App'x 736 (2d Cir. 2003).  Their inability to do so requires dismissal of their breach of contract claim and therefore renders this claim futile.

*Second*, the OTC Plaintiffs cannot invoke the implied covenant of good faith and fair dealing as a substitute for a contractual right or obligation not actually contained in the relevant agreements.  *See, e.g.*, *Fesseha v. TD Waterhouse Investor Servs., Inc.*, 305 A.D.2d 268, 268 (N.Y. 1st Dep't 2003) (implied covenant does not "create independent contractual rights"); *Warner Theatre Assoc. Ltd. P'ship v. Metro. Life Ins. Co.*, No. 97 Civ. 4914, 1997 WL 685334, *6 (S.D.N.Y. Nov. 4, 1997) ("The duty of good faith cannot add to, detract from, or alter the terms of the contract itself."), *aff'd*, 149 F.3d 134 (2d Cir. 1998).  Rather, the implied covenant of good faith is a narrow doctrine prohibiting intentional or reckless conduct motivated by a desire to harm a counterparty, typically by depriving it of a specific benefit or protection that it is

---

[10] The only specific agreements referenced in the OTC Plaintiffs' Proposed Second Consolidated Amended Complaint are certain "ISDA Master Agreements" purportedly related to swap transactions entered into by the lead OTC Plaintiffs with certain Defendants.  (OTC Prop. SAC ¶¶ 376, 378, 380.)  No specific provisions of these agreements are cited or discussed.

entitled to receive based on an express contractual provision.  *See Paul v. Bank of Am. Corp.*, No. 09 Civ. 1932, 2011 WL 684083, at *6 (E.D.N.Y. Feb. 16, 2011) ("[T]he implied covenant of good faith will not be breached without some showing of intent to harm the other contracting party or a reckless disregard of it.") (citing *Carvel Corp. v. Diversified Mgmt. Grp. Inc.,* 930 F.2d 228, 230 (2d Cir. 1991)); *Tractebel Energy Mktg., Inc. v. AEP Power Mktg. Inc.,* 487 F.3d 89, 100 n.8 (2d Cir. 2007) (breach of implied covenant of good faith is "an issue entirely tied to motive").  Moreover, where as here the alleged breach of the implied covenant is based on alleged fraud, a plaintiff must meet the heightened pleading requirements of Rule 9(b).  *See DeBlasio*, 2009 WL 2242605, at *11-12.

The OTC Plaintiffs fail to allege either deprivation of an express contractual benefit or the required motive on the part of any Defendant to cause any such deprivation.  As noted, the OTC Plaintiffs have not identified any contractual provision guaranteeing LIBOR's inherent "accuracy," nor have they plausibly or specifically alleged how members of the OTC Plaintiffs would have been injured by the alleged manipulation given their different exposures to LIBOR, including LIBOR neutrality.  (*See supra* at 5-6 & n.7.)  Nor do they allege that any Defendant was motivated by a desire to deprive any OTC Plaintiff of a bargained-for benefit or to injure them in any way.  With respect to the Defendants that have entered into settlements with government regulators, there is no evidence from these settlements that alleged LIBOR manipulation was motivated by a desire to harm any – much less all – members of the OTC Plaintiff class.  At most, the settlements suggest episodic efforts by lower level traders to adjust upward or downward USD LIBOR submissions to benefit particular trading positions (*see, e.g.*, Barclays FSA Final Notice ¶ 88), and independent efforts to submit low USD LIBOR quotes to avoid "inaccurate, negative attention about [their] financial health" (Barclays DOJ SOF ¶ 40).

These findings do not support an inference that these Defendants were attempting to deprive the OTC Plaintiffs of the benefit of their LIBOR-based transactions. And certainly the settlement documents provide no relevant support with respect to the non-settling Defendants. Without any basis for alleging either deprivation of a bargained-for benefit or the required motive to cause any such deprivation, the OTC Plaintiffs cannot rely on the implied covenant of good faith and fair dealing.[11]

*Third*, the OTC Plaintiffs' contract claim is fundamentally unsuited to class treatment, rendering it effectively futile in the context of a purported class action. Although class certification would normally be addressed at a later stage of the proceedings, the implausibility of certification weighs heavily against permitting the belated addition of a breach of contract claim to the OTC Plaintiffs' class complaint. Contractual interpretation is grounded in the particulars of a given contract, rendering class treatment of contract claims unworkable except in cases of standard form contracts received in identical or nearly identical form by all plaintiffs. *See, e.g., Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Exp. (USA), Inc.*, No. 08 Civ. 761C, 2011 WL 815209, *4 (W.D.N.Y. Mar. 2, 2011) ("The commonality requirement is thus not satisfied as the plaintiff cannot advance a collective breach of contract action on the basis of multiple contracts.") (internal quotation marks omitted). Here, there are myriad distinct contracts, encompassing every conceivable "LIBOR-Based Instrument" purchased by an indeterminate number of persons and entities from more than 16 Defendants over a period of years. The circumstances of each contractual relationship and each counterparty plaintiff class member are

---

[11] The cases cited by the OTC Plaintiffs are inapposite. In *City of New York v. Coastal Oil N.Y., Inc.*, the court found that the defendant acted "directly to impair the value of [its] contract" with the plaintiff and to deprive the plaintiff of rights conferred by specific, explicit provisions of the contract. *See* No. 96 Civ. 8667 (RPP), 1999 WL 493355, at *3, *7 (S.D.N.Y. July 12, 1999). *Sunoco, Inc. v. Honeywell Int'l, Inc.*, No. 05 Civ. 7984 (DLC), 2006 WL 709202 (S.D.N.Y. Mar. 21, 2006), is even further afield. In addition to citing evidence of intent to harm a counterparty, *id.* at *2, it only involved review of an arbitrator's decision applying Pennsylvania law.

individual issues relevant to both contract liability and damages and will inevitably preclude a finding that class issues predominate for purposes of Rule 23(b)(3).  Indeed, the inappropriateness of class treatment of individual breach of contract claims likely explains the OTC Plaintiffs' failure to assert such a claim before now.  Class certification of the contract claim must be deemed highly remote.  *See, e.g.*, *Klay v. Humana, Inc.*, 382 F.3d 1241, 1263 (11th Cir. 2004) (denying class certification for a breach of contract claim where the case involved the "actions of many defendants over a significant period of time and that each defendant throughout this period utilized many different form contracts" rather than a "situation in which all plaintiffs signed the same form contract").  Addition of a contract claim by the OTC Plaintiff class would be effectively futile, further militating against permitting its addition at this late date.

## CONCLUSION

For the foregoing reasons, the Court should deny the OTC Plaintiffs' request to re-plead their previously dismissed unjust enrichment claim and to plead a new claim for breach of contract.

Dated:   New York, New York
         August 2, 2013

Respectfully Submitted,

/s/ Robert F. Wise, Jr.                          /s/ Daryl A. Libow
Robert F. Wise, Jr.                              Daryl A. Libow
Arthur J. Burke                                  Christopher M. Viapiano
Paul S. Mishkin                                  SULLIVAN & CROMWELL LLP
DAVIS POLK & WARDWELL LLP                        1701 Pennsylvania Avenue, N.W.
450 Lexington Avenue                             Washington, D.C. 20006
New York, NY 10017                               libowd@sullcrom.com
robert.wise@davispolk.com                        viapianoc@sullcrom.com
arthur.burke@davispolk.com                       Telephone: (202) 956-7500
paul.mishkin@davispolk.com                       Fax: (202) 956-7056
Telephone: (212) 450-4000
Fax: (212) 450-4800                              *Attorneys for Defendant The Bank of Tokyo-*
                                                 *Mitsubishi UFJ, Ltd.*

*Attorneys for Defendants Bank of America*
*Corporation and Bank of America, N.A.*

13

/s/ Andrew A. Ruffino
Andrew A. Ruffino
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
aruffino@cov.com
Tel: 212.841.1000

Alan M. Wiseman
Thomas A. Isaacson
Jonathan Gimblett
1201 Pennsylvania Avenue N.W.
Washington, D.C. 20004
awiseman@cov.com
tisaacson@cov.com
jgimblett@cov.com
Tel: 202.662.6000

Michael R. Lazerwitz
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, NY 10006
mlazerwitz@cgsh.com
Tel: 212.225.2000

*Attorneys for Defendants Citibank, N.A. and Citigroup Inc.*

/s/ David R. Gelfand
David R. Gelfand
Sean M. Murphy
MILBANK TWEED HADLEY & McCLOY
LLP
One Chase Manhattan Plaza
New York, New York 10005
dgelfand@milbank.com
smurphy@milbank.com
Telephone: (212) 530-5000

*Attorneys for Defendant Coöperatieve
Centrale Raiffeisen-Boerenleenbank B.A.*

14

/s/ Herbert S. Washer
Herbert S. Washer
Elai Katz
Joel Kurtzberg
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, NY 10005
(212) 701-3000
hwasher@cahill.com
ekatz@cahill.com
jkurtzberg@cahill.com

*Attorneys for Defendant Credit Suisse Group AG*

/s/ Moses Silverman
Moses Silverman
Andrew C. Finch
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
msilverman@paulweiss.com
afinch@paulweiss.com
Telephone: (212) 373-3355

*Attorneys for Defendant Deutsche Bank AG*

/s/ Ed DeYoung
Ed DeYoung
Roger B. Cowie
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
Telephone: (214) 740-8614
Fax: (214) 740-8800
edeyoung@lockelord.com
rcowie@lockelord.com

Gregory T. Casamento
LOCKE LORD LLP
3 World Financial Center
New York, NY 10281
Telephone: (212) 812-8325
Fax: (212) 812-8385
gcasamento@lockelord.com

*Attorneys for Defendant HSBC Holdings plc
and HSBC Bank plc*

/s/ Marc J. Gottridge
Marc J. Gottridge
Lisa J. Fried
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
marc.gottridge@hoganlovells.com
lisa.fried@hoganlovells.com
Telephone: (212) 918-3000

*Attorneys for Defendants HBOS plc and Lloyds
Banking Group*

/s/ Thomas C. Rice
Thomas C. Rice
Juan A. Arteaga
Joan E. Flaherty
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Fax: (212) 455-2502
trice@stblaw.com
jarteaga@stblaw.com
jflaherty@stblaw.com

*Attorneys for Defendants JPMorgan Chase &
Co. and JPMorgan Chase Bank, N.A.*

16

/s/ Andrew W. Stern

Andrew W. Stern
Alan M. Unger
Nicholas P. Crowell
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
astern@sidley.com
aunger@sidley.com
ncrowell@sidley.com
Telephone: (212) 839-5300
Fax: (212) 839-5599

*Attorneys for Defendant The Norinchukin Bank*

/s/ Arthur W. Hahn

Arthur W. Hahn
Christian T. Kemnitz
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661
arthur.hahn@kattenlaw.com
christian.kemnitz@kattenlaw.com
Telephone: (312) 902-5200

*Attorneys for Defendant Royal Bank of Canada*

/s/ Fraser L. Hunter, Jr.
Fraser L. Hunter, Jr.
David S. Lesser
Alan E. Schoenfeld
WILMER CUTLER PICKERING
HALE AND DORR LLP
250 Greenwich Street,
New York, New York 10007
Telephone: (212) 230-8800
Fax: (212) 230-8888
fraser.hunter@wilmerhale.com
david.lesser@wilmerhale.com
alan.schoenfeld@wilmerhale.com


/s/ Robert G. Houck
Robert G. Houck
Alejandra de Urioste
James D. Miller
CLIFFORD CHANCE US LLP
31 West 52nd St.
New York, NY 10019
robert.houck@cliffordchance.com
alejandra.deurioste@cliffordchance.com
jim.miller@cliffordchance.com
Telephone: (212) 878-8000

*Attorneys for Defendant The Royal Bank of Scotland Group plc*

/s/ Ethan E. Litwin
Ethan E. Litwin
Christopher M. Paparella
Marc Weinstein
Morgan J. Feder
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
litwin@hugheshubbard.com
paparella@hugheshubbard.com
weinstei@hugheshubbard.com
feder@hugheshubbard.com
Telephone: (212) 837-6000

*Attorneys for Defendant Portigon AG (formerly known as WestLB AG)*

/s/ Jeffrey T. Scott
David H. Braff
Yvonne S. Quinn
Jeffrey T. Scott
Matthew S. Fitzwater
Matthew J. Porpora
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
braffd@sullcrom.com
scottj@sullcrom.com
fitzwaterm@sullcrom.com
porporam@sullcrom.com


/s/ Jonathan D. Schiller
Jonathan D. Schiller
Leigh M. Nathanson
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-2300
jschiller@bsfllp.com
lnathanson@bsfllp.com

Michael Brille
5301 Wisconsin Avenue NW
Washington, D.C. 20015
Telephone: (202) 237-2727
mbrille@bsfllp.com

*Attorneys for Defendant Barclays PLC*

/s/ Peter Sullivan
Peter Sullivan
Lawrence J. Zweifach
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
psullivan@gibsondunn.com
lzweifach@gibsondunn.com

D. Jarrett Arp (*admitted pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
jarp@gibsondunn.com
thungar@gibsondunn.com

*Attorneys for Defendant UBS AG*