UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262<br>1:11-md-02262 (NRB)<br><br>**ECF CASE** |
| THIS DOCUMENT RELATES TO:<br><br>MAYOR AND CITY COUNCIL OF BALTIMORE and CITY OF NEW BRITAIN FIREFIGHTERS' AND POLICE BENEFIT FUND, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CREDIT SUISSE GROUP AG, BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., JP MORGAN CHASE & CO., JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, HSBC HOLDINGS PLC, HSBC BANK PLC, BARCLAYS BANK PLC LLOYDS BANKING GROUP PLC, WESTLB AG, WESTDEUTSCHE IMMOBILIENBANK AG, UBS AG, THE ROYAL BANK OF SCOTLAND GROUP PLC, DEUTSCHE BANK AG, CITIBANK NA, CITIGROUP INC., COÖPERATIEVE CENTRALE RAIFFEISEN BOERENLEENBANK B.A., THE NORINCHUKIN BANK, THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., HBOS PLC, and ROYAL BANK OF CANADA,<br><br>Defendants. | Lead Case No. 11 Civ. 5450 (NRB)<br><br>**ECF CASE**<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR LEAVE TO FILE PROPOSED CONSOLIDATED SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT .................................................................................................1

ARGUMENTS & AUTHORITIES ..........................................................................................2

    I.     Plaintiffs Have Properly Pleaded a Claim for Unjust Enrichment ..........................2

    II.    Plaintiffs Have Properly Pleaded a Claim for Breach of Contract .........................6

          A.    Discovery Has Not Commenced, and Defendants Claim No Prejudice ....................................................................................................6

          B.    Plaintiffs' Breach of Contract Claim is Not Futile ......................................8

# TABLE OF AUTHORITIES

**Page No(s).**

## Cases

*AdiPar Ltd. v. PLD Int'l Corp.*,
  No. 01 Civ. 0765, 2002 WL 31740622, at *12 (S.D.N.Y. Dec. 6, 2002) .................................. 3

*Apfel v. Prudential-Bache Sec., Inc.*,
  81 N.Y.2d 470 (1993) ............................................................................................................. 3

*Arista Records, LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) .................................................................................................. 5

*Bellikoff v. Eaton Vance Corp.*,
  481 F.3d 110 (2d Cir. 2007), ................................................................................................. 8

*Block v. First Blood Assocs.*,
  988 F.2d 344 (2d Cir. 1993) .................................................................................................. 6

*Chase Manhattan Bank, N.A. v. Keystone Distribs., Inc.*,
  873 F. Supp. 808 (S.D.N.Y. 1994) ........................................................................................ 9

*City of Farmington Hills Employees Ret. System v. Wells Fargo Bank, N.A.*,
  281 F.R.D. 347 (D. Minn. 2012) ......................................................................................... 10

*City of New York v. Coastal Oil New York, Inc.*
  No. 96 Civ. 8667, 1999 WL 493355, at **5–8 (S.D.N.Y. July 12, 1999) ........................... 1, 9

*Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*,
  516 N.E. 2d 190 (N.Y. 1987) ................................................................................................ 2

*DeBlasio v. Merrill Lynch & Co.*, Inc.,
  No. 07 Civ. 318, 2009 WL 2242605, at *11-*12 (S.D.N.Y. July 27, 2009) ........................... 3

*Eastman Kodak Co. v. Camarata*,
  No. 05-CV-6384L, 2006 WL 3538944, at *15 (W.D.N.Y. Dec. 6, 2006) .............................. 5

*Farricker v. Penson Dev., Inc.*,
  No. 12-204-CV, 2013 WL 765067, at *2 (2d Cir. Mar. 1, 2013) ............................................ 7

*Frankini v. Landmark Constr. of Yonkers, Inc.*,
  937 N.Y.S.2d 80 (N.Y. App. Div. 2012) ............................................................................... 9

*In re Amaranth Natural Gas Comm. Lit.*,
  587 F. Supp. 2d 513, n.229 (S.D.N.Y. 2008) ........................................................................ 5

*In re Hyperion Securities Litigation*,
  No. 93 CIV. 7179, 1995 WL 422480, at *8 (S.D.N.Y. July 14, 1995) ................................... 7

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  11-MD-2262, 2013 WL 1285338, at *60 (S.D.N.Y. May 29, 2013) ....................... 3

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  No. 04-6054, 2007 WL 1051642, *10 (D. Mass. Apr. 2, 2007) ................................ 3

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
  505 F. Supp. 2d 609 (N.D. Cal. 2007) ................................................................... 10

*India.com. Inc. v. Dalal*,
  324 F. App'x 59, 61-62 (2d Cir.2009) (unpublished). ........................................... 10

*Joseph Sternberg, Inc. v. Walber 36th St. Assocs.*,
  187 A.D.2d 225 (N.Y. App. Div. 1993) .............................................................. 2, 3

*Maryland Casualty Co. v. W.R. Grace & Co.*,
  218 F.3d 204 (2d Cir. 2000) ..................................................................................... 5

*Pappas v. Tzolis*,
  20 N.Y.3d 228 (N. Y. 2012) ..................................................................................... 3

*Parker v. Time Warner Ent'mt Co., L.P.*,
  331 F.3d 13, (2d Cir. 2003) .................................................................................... 10

*Rabin v. Mony Life Ins. Co.*,
  No. 06 Civ. 775, 2007 WL 737474, at *1 (S.D.N.Y. Mar. 8, 2007) ......................... 2

*Ramapo Land Co., Inc. v. Consol. Rail Corp.*,
  918 F. Supp. 123 (S.D.N.Y. 1996) ........................................................................... 4

*Republic Nat'l Bank of Miami v. Chase Manhattan Bank, N.A.*,
  5 Fed. R. Serv. 3d 1359 (S.D.N.Y. 1986) ................................................................ 7

*Richardson Greenshields Secs., Inc. v. Lau*,
  825 F.2d 647 n.6 (2d Cir. 1987) ............................................................................... 6

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) ..................................................................................... 3

*Ruotolo v. City of N.Y.*,
  514 F.3d 184 (2d Cir. 2008) ..................................................................................... 6

*State Teachers Ret. Bd. v. Fluor Corp.*,
  654 F.2d 843 (2d Cir. 1981) ..................................................................................... 6

*State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*,
  921 F.2d 409 (2d Cir. 1990) ..................................................................................... 7

*Telefonix, Inc. v. Response Eng'g, Inc.*,
   No. 12-cv-4362, 2012 WL 5499437, at *4 (N.D. Ill. Nov. 13, 2012) ........................................ 3

*Teletronics Proprietary Ltd. v. Medtronic, Inc.*,
   No. 83 CIV. 8568, 1984 WL 1250, at *1-*2 (S.D.N.Y. Nov. 20, 1984) .................................... 7

*Thyroff v. Nationwide Mut. Ins. Co.*,
   460 F.3d 400 (2d Cir. 2006) ............................................................................................... 1, 8

*Union Bank, N.A. v. CBS Corp.*,
   No. 08 Civ. 08362, 2009 WL 1675087, at *7 (S.D.N.Y. June 10, 2009) .......................... 1, 2, 3

*Waterbury Hosp. v. U.S. Foodservice Inc.*
   *(In re U.S. Foodservice Inc. Pricing Litig.)*, No. 3:06-cv-1657,
   2011 U.S. Dist. LEXIS 138238, at *49-59 (D. Conn. Nov. 29, 2011); .................................. 10

*WorldHomeCenter.com Inc. v. Franke Consumer Prods., Inc.*,
   No. 10 Civ. 3205, 2011 WL 2565284, at *5-*6 (S.D.N.Y. June 22, 2011) .............................. 8

*Wu v. Pearson Educ., Inc.*,
   277 F.R.D. 255 (S.D.N.Y. 2011) .......................................................................................... 10

## Statutes

Fed. R. Civ. P. 9(b) ........................................................................................................................ 3

## SUMMARY OF ARGUMENT

Defendants agree with plaintiffs on the only issue as to which this Court requested expedited briefing: whether CAFA confers federal jurisdiction over plaintiffs' state law claims. *See* Def. Br. in Opp. Mot. to Amend ("Def. Br."), at 1. Defendants' additional arguments about the timeliness and legal sufficiency of plaintiffs' common-law claims for unjust enrichment and breach of contract are outside the scope of the Court's order; they are also wrong on the merits.

First, the unjust enrichment claim is legally sufficient. Plaintiffs have alleged that defendants' LIBOR suppression enabled them to retain hundreds of millions, if not billions, of dollars that would have gone to plaintiffs and class members if LIBOR had been set accurately. Contrary to defendants' principal argument on this point, courts applying New York law have permitted unjust enrichment claims to proceed at the pleading stage, even where an express contract governs the relationship, where there is a disagreement (as here) about whether the contract "clearly covers the dispute between the parties." *Union Bank, N.A. v. CBS Corp.*, No. 08 Civ. 08362, 2009 WL 1675087, at *7 (S.D.N.Y. June 10, 2009) (quotation marks omitted).

Second, the contract claim is straightforward: plaintiffs' contracts with defendants entitled them to receive accurate LIBOR rather than manipulated LIBOR. Defendants take the extreme position that the contracts permitted them to manipulate LIBOR with impunity, but such conduct obviously "destroy[s] or injur[es] the right of the other party to receive the fruits of the contract," (*Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006)), which the covenant of good faith and fair dealing prohibits. Defendants ignore, except for a footnote, *City of New York v. Coastal Oil New York, Inc.*, No. 96 Civ. 8667, 1999 WL 493355, at *5–8 (S.D.N.Y. July 12, 1999), the leading authority cited in plaintiffs' opening brief, where the court sustained an implied covenant claim very similar to the one here.

1

Third, plaintiffs' proposed addition of a breach of contract claim should not be denied on grounds of undue delay. Discovery has not yet started, defendants claim no prejudice, and the breach of contract claim arises from the same facts as the previously-pleaded unjust enrichment and Sherman Act claims.

**ARGUMENTS & AUTHORITIES**

I.   Plaintiffs Have Properly Pleaded a Claim for Unjust Enrichment

Defendants argue that an unjust enrichment claim only lies in the absence of an actual contract. Def. Br. at 2. However, the mere existence of a contract does not preclude an unjust enrichment claim; the question is whether that contract "clearly covers the dispute between the parties." *Union Bank* , 2009 WL 1675087, at *7. Defendants ignore *Union Bank*, cited in plaintiffs' opening brief, where the court permitted Union Bank's unjust enrichment claim against CBS to proceed even though Union Bank and CBS had entered into two commercial contracts governing CBS's investments with Union Bank. *Id.* at *8. *Union Bank* examined the governing case law and held that a contract does not bar an unjust enrichment claim unless it is clear that the contract's terms clearly resolve the dispute. *Id*. (citing authorities).[1] Here, however, defendants themselves take the position that the parties' contracts ***do not*** address the issue of LIBOR manipulation at all (let alone "clearly" cover it): they contend that the parties' contracts contain ***no*** "representation or guarantee regarding the manner in which LIBOR is set." Def. Br. at 3. Defendants cannot argue that the parties' contracts do not address the issue in

---

[1] *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E. 2d 190 (N.Y. 1987) (contract bars unjust enrichment claim only where its scope "clearly covers the dispute between the parties"); *Joseph Sternberg, Inc. v. Walber 36th St. Assocs.,* 187 A.D.2d 225, 227-228 (N.Y. App. Div. 1993) (quasi-contract claim could not be dismissed where contract between parties was silent on particular issue before court,); *Rabin v. Mony Life Ins. Co.*, No. 06 Civ. 775, 2007 WL 737474, at *5 (S.D.N.Y. Mar. 8, 2007) (declining to dismiss plaintiff's unjust enrichment claim on motion to dismiss where resolution of issue under insurance policies at issue was unclear).

2

question while at the same time contending that they bar the pleading of an unjust enrichment claim. At the very least, there is a factual dispute among the parties as to the scope and interpretation of the parties' agreements, which makes dismissal at this stage inappropriate.[2]

Defendants next argue that because plaintiffs' complaint includes allegations of intentional actions to manipulate and suppress LIBOR, plaintiffs' unjust enrichment claim sounds in "fraud" and is automatically subject to heightened pleading under Fed. R. Civ. P. 9(b). Def. Br. at 4. However, as this Court itself noted in its opinion, plaintiffs' unjust enrichment claim is a quasi-contract claim (*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 11-MD-2262, 2013 WL 1285338, at *60 (S.D.N.Y. Mar. 29, 2013)) and is not predicated on fraud, and thus Rule 9(b) does not apply.[3] In any event, defendants do not explain how the CSAC's voluminous allegations of conspiracy do not satisfy even Rule 9(b)'s standard.

---

[2] *See, e.g., Union Bank*, 2009 WL 1675087, at *8 (noting "it is not appropriate for this Court to rule—at the inception of this case and as a matter of law—that the parties' agreements govern the instant dispute"). Defendants cite three cases in their brief where an unjust enrichment claim was dismissed, but in each of these cases, the court held—on the facts at issue—that the parties' contracts covered the precise issue in dispute. *See Pappas v. Tzolis*, 20 N.Y.3d 228, 234 (N.Y. 2012) (concluding that the parties' contracts "controlled" the sale of LLC interests); *Apfel v. Prudential-Bache Sec., Inc.*, 81 N.Y.2d 470, 479 (1993) (without addressing substance of unjust enrichment claim, observing that "[t]he transaction is controlled by the express agreement of the parties"); *AdiPar Ltd. v. PLD Int'l Corp.*, No. 01 Civ. 0765, 2002 WL 31740622, at *12 (S.D.N.Y. Dec. 6, 2002) (distinguishing *Sternberg* because in that case the "applicable contract did not cover the situation that arose," but in *AdiPar* "the contract at issue . . . spells out the terms of the supply relationship between [the parties]"). *Union Bank* specifically characterized *AdiPar* as one of many cases where courts "dismissed quasi-contract claims after determining that the contracts before them unambiguously addressed the precise issue in dispute." 2009 WL 1675087, at *8 n. 8.

[3] *See also, e.g. In re Pharm. Indus. Average Wholesale Price Litig.*, No. 04-6054, 2007 WL 1051642, at *10 (D. Mass. Apr. 2, 2007) (noting that while unjust enrichment claims "premised entirely on fraudulent conduct" may be subject to Rule 9(b), plaintiffs could state claims "based in quasi-contract or a tort other than fraud," and therefore "the unjust enrichment claims are not necessarily subject to Rule 9(b)"); *Telefonix, Inc. v. Response Eng'g, Inc.*, No. 12-cv-4362, 2012 WL 5499437, at *4 (N.D. Ill. Nov. 13, 2012) ("Because Defendants ground their unjust enrichment claims on a breach of a promise, not fraud, Rule 9(b) does not apply."). Defendants cite *DeBlasio v. Merrill Lynch & Co., Inc.*, No. 07 Civ. 318, 2009 WL 2242605, at *11-*12 (S.D.N.Y. July 27, 2009), and *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004), but those cases involved unjust enrichment claims that were "predicated" and "premised" on fraud against the plaintiffs. *See DeBlasio*, 2009 WL 2242605, at *12 (noting that Rule 9(b) applicable only "[t]o the extent any of Plaintiffs' claims are premised on fraudulent conduct" (quotation mark omitted)); *Rombach*, 355 F.3d at 171 (Rule 9(b) applicable "insofar as the claims are premised on allegations of fraud"); s*ee also, e.g.*, *Ramapo Land Co., Inc.*

Defendants also appear to suggest that plaintiffs' unjust enrichment claim is not pleaded with sufficient detail under Rule 8(a)'s notice-pleading standard and that the complaint does not adequately plead that defendants were "unjustly enriched" at the expense of plaintiffs. Def. Br. at 5. However, as this Court has observed, to plead a claim for unjust enrichment, a plaintiff need only allege that "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." Pl. Mot. at 17 (quoting Court's order, 2013 WL 1285338, at *60). Those elements are clearly pleaded in plaintiffs' amended complaint, which alleges that defendants' collusive LIBOR suppression enabled them to retain hundreds of millions, if not billions, of dollars of payments on LIBOR-based financial instruments that they would have paid to plaintiffs and class members if defendants had set LIBOR accurately.[4] Defendants complain that the complaint does not delve into disputed factual issues of whether defendants experienced a "net financial gain" across millions of transactions. Def. Br. at 5-6. But plaintiffs have clearly pleaded that defendants did in fact gain on their transactions with plaintiffs and OTC class members by paying artificially suppressed LIBOR instead of accurate LIBOR; defendants cite no authority that a complaint is required to plead evidence of other, unrelated myriad transactions and the

---

*v. Consol. Rail Corp.*, 918 F. Supp. 123, 128 (S.D.N.Y. 1996) (applying Rule 9(b) to unjust enrichment claim where "only alleged basis for the claim" was fraudulent inducement). Plaintiffs' unjust enrichment claim is not predicated on fraud, but rather on a contract that should be implied in equity if the Court or jury finds that the parties' contracts do not clearly cover this dispute.

[4] *See, e.g.,* CSAC ¶ 5 (defendants caused LIBOR to be calculated or suppressed artificially low, reaping hundreds of millions, if not billions, in ill-gotten gains); *id.* ¶ 8 (defendants' manipulation of LIBOR allowed them to pay unduly low interest rates to investors, including plaintiffs, on LIBOR-based financial instruments during the Class Period); *id.* ¶¶ 12-13 (describing plaintiffs' instruments and noting that they were injured by defendants' conduct because they received rates of return tied to LIBOR); *id.* ¶¶ 334-40 (alleging in detail how defendants benefitted and plaintiffs suffered on their financial instruments as a result of the alleged conspiracy); *id.* ¶¶ 347-48 (Department of Justice has distributed victim notices stating that counterparties to LIBOR-based transactions with RBS "may have been harmed").

"net" financial gain obtained by defendants.[5] To the contrary, the Second Circuit has rejected the "contention that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts beyond what is needed to make [a] claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010). Defendants, with no support, also suggest that some plaintiffs or class members may not have "lost money from the alleged suppression." Def. Br. at 5. This factual argument cannot be resolved at the pleading stage—and, in any event, plaintiffs' class is restricted to entities that purchased instruments "that paid interest indexed to LIBOR," CSAC ¶ 35; anyone who received payments tied to LIBOR would suffer by definition if defendants caused LIBOR to be lower than it otherwise would have been.

Defendants also contend that those who were not parties to a "particular" plaintiff's transaction are too "attenuated" from the alleged injury to support an unjust enrichment claim against them on that transaction. Def. Br. at 5. But courts have sustained unjust enrichment claims even where a defendant who did not directly deal with a plaintiff engaged in a common scheme with a party that did.[6] In any event, defendants' argument says nothing about a defendant's liability for the transactions that they ***did*** engage in directly with members of the class, and defendants do not dispute that they all had such transactions.

Finally, defendants argue that the complaint's allegations concerning LIBOR manipulation to benefit trading positions somehow makes the complaint's allegation of

---

[5] Defendants cite *Maryland Casualty Co. v. W.R. Grace & Co.*, 218 F.3d 204, 212-13 (2d Cir. 2000), but that case resolved claims of unjust enrichment after summary judgment.

[6] *See, e.g.*, *Eastman Kodak Co. v. Camarata*, No. 05-CV-6384L, 2006 WL 3538944, at *15 (W.D.N.Y. Dec. 6, 2006) (parties' relationship not too "attenuated" for unjust enrichment claim where plaintiffs had no direct dealing with defendant but "plaintiffs allege that [defendant] knowingly furthered the scheme to defraud by means of money laundering, and that in so doing [defendant] was enriched through her receipt of substantial sums of money"); *cf. In re Amaranth Natural Gas Comm. Lit.*, 587 F. Supp. 2d 513, 547 n.229 (S.D.N.Y. 2008) (leaving open the question of whether a class consisting of those who made direct purchases with Amaranth Advisors would have a sufficient relationship to sustain an unjust enrichment claim against all other defendants who helped Amaranth Advisors manipulate the market).

"enrichment" "even more speculative and less plausibly alleged." Def. Br. at 6. That argument is without merit. Evidence demonstrating that defendants' employees conspired to manipulate LIBOR to benefit the bank's trading positions only <u>supports</u> the inference that defendants and their agents indeed manipulated LIBOR where it benefited their bottom line, which is what plaintiffs have alleged here.[7]

## II. Plaintiffs Have Properly Pleaded a Claim for Breach of Contract

### A. Discovery Has Not Commenced, and Defendants Claim No Prejudice

Defendants argue that the addition of the contract claim should be denied on grounds of undue delay. However, the Second Circuit has repeatedly held that "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." *Richardson Greenshields Secs., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)).[8] Defendants do not identify any prejudice from amendment. Def. Br. at 7-8. Nor could they, given that discovery has not yet commenced. As the Second Circuit observed in *Richardson*, courts have routinely granted motions to amend with longer delays than here, even when discovery was ongoing or near complete. 825 F.2d at 653 n.6. This includes cases where new claims were added "long after [the parties] acquired the facts necessary to support those claims."

---

[7] *See* CSAC ¶ 156 (noting that systematic suppression and trader manipulation were "done for the same reason—to promote the profitability of the banks at the expense of their customers, the BBA's rules, and the general public").

[8] *See also Ruotolo v. City of N.Y.*, 514 F.3d 184, 192 (2d Cir. 2008) ("In gauging prejudice, we consider, among other factors, whether an amendment would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.' . . . Undue prejudice arises when an 'amendment [comes] on the eve of trial and would result in new problems of proof'" (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) and *Fluor*, 654 F.2d at 856)).

*Id.*[9] Defendants argue that the Court should deny leave to amend on timeliness grounds because plaintiffs have been afforded "repeated opportunities to amend." Def. Br. at 8. However, plaintiffs have amended their complaint only once (upon consolidation); leave to amend was denied after the defendants filed their motion to dismiss plaintiffs' first amended complaint, and although the Court permitted plaintiffs to reference the Barclays settlements in their motion to dismiss opposition, plaintiffs would have had the opportunity to add new claims had leave been granted.[10]

Defendants also contend that plaintiffs' delay in asserting a contract claim is "tactical," but they identify no tactical motive. As defendants' inability to claim prejudice reflects, no tactical advantage was sought or gained here.[11] Plaintiffs' new contract claim arises from the same facts as their other claims, including the unjust enrichment claim that has been pending since the outset of this case.[12]

---

[9] *See also Republic Nat'l Bank of Miami v. Chase Manhattan Bank, N.A.*, 5 Fed. R. Serv. 3d 1359 (S.D.N.Y. 1986) (granting defendant leave to replead answer to add affirmative defense "never mentioned throughout . . . two-year pretrial phase"; although "there is no justifiable excuse for [defendant's] failure to come forward with this defense earlier," the "real issue is whether allowing the amendment will prejudice [plaintiff]").

[10] See, Letter from Michael Hausfeld to the Court (Aug. 1, 2012) (Doc. No. 199) (noting in course of requesting leave to amend that "the emerging facts likely give rise to additional claims (and possibly defendants) . . . ."). Defendants cite *In re Hyperion Securities Litigation*, No. 93 CIV. 7179, 1995 WL 422480, at *8 (S.D.N.Y. July 14, 1995), but there the court denied leave to file a third amended complaint where the plaintiffs had amended twice after consolidation, and even then the plaintiffs' proposed amendment was deficient

[11] *See Teletronics Proprietary Ltd. v. Medtronic, Inc.*, No. 83 CIV. 8568, 1984 WL 1250, at *1-2 (S.D.N.Y. Nov. 20, 1984) (where plaintiff offered "no explanation for its failure to include [unrelated] antitrust claims in its original pleading," leave to replead would be granted where there was "no basis for concluding that the motion to amend was made with a dilatory motive or in bad faith," even where "discovery will be broadened").

[12] This case is far different from *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409 (2d Cir. 1990) cited by defendants, where the plaintiff waited until after judgment was entered to seek leave to amend; where plaintiff failed to attach a proposed amended complaint to its motion; and where the defendant argued that the delay in moving to amend to add claims based on foreign law was a tactical one to avoid dismissal on the basis of a forum selection or *forum non conveniens*. Defendants also cite to the unpublished summary order in *Farricker v. Penson Dev., Inc.*, No. 12-204-CV, 2013 WL 765067, at *2 (2d Cir. Mar. 1, 2013). However, that order does not explain the facts of the case, the stage of discovery when leave to amend

Finally, defendants observe that plaintiffs' amendment comes after this Court's decision on defendants' motion to dismiss, but plaintiffs' contract claim was not at issue on that motion. Even if it were, courts routinely grant leave to amend after identifying a defect in a claim pending before the court.[13]

### B.   Plaintiffs' Breach of Contract Claim is Not Futile

Defendants first argue that plaintiffs have failed to "identify any provision of any relevant contract" that a defendant breached. However, the CSAC clearly states that Baltimore's interest rate swap confirmations entitle it to receive "USD-LIBOR-BBA" for a one-month maturity (CSAC ¶¶ 377, 379), and that defendants' conduct "breached the contractual term that provided that Plaintiffs would receive payments that were based on the LIBOR definition." CSAC ¶ 387.

Defendants' repeated argument that they cannot be liable for breach of the covenant of good faith or fair dealing unless they have breached an "express contractual provision" (Def. Br. at 9-10) misstates the law. The implied covenant of good faith and fair dealing bars parties from "do[ing] anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Thyroff*, 460 F.3d at 407. This means that a party may be liable for breach of the covenant of good faith and fair dealing "even though there was no

---

was denied, the similarity or differences between the new claim and those pending in the case, or any other relevant facts. The district court's decision did, however, premise its determination on the "undue prejudice" that would be suffered by the defendants, which defendants here do not claim.

[13] *See, e.g., WorldHomeCenter.com Inc. v. Franke Consumer Prods., Inc.*, No. 10 Civ. 3205, 2011 WL 2565284, at *5-6, *8 (S.D.N.Y. June 22, 2011) (granting leave to amend to add rule of reason allegations after determining that vertical price maintenance claim required such allegations). Defendants cite *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007), but in that case the plaintiffs had amended their complaint twice, including after the defendants had outlined arguments for dismissal in their motion to dismiss; attempted to amend a third time ***after*** entry of judgment, which subjected the motion to a more exacting standard; and as the Second Circuit observed, "plaintiffs' proposed amendments merely recycled versions of claims which had already fallen victim to a motion to dismiss."

8

technical breach of the [c]ontract." *Chase Manhattan Bank, N.A. v. Keystone Distribs., Inc.*, 873 F. Supp. 808, 816 (S.D.N.Y. 1994).[14]

Defendants make the remarkable argument that they could manipulate LIBOR rates however they pleased without giving rise to a cause of action for injuring the rights of counterparties to receive the fruits of their contracts. However, an accurate LIBOR was at the heart of the parties' contractual bargain: as this Court noted, "it is precisely because LIBOR was thought to accurately represent prevailing interest rates in that market that it was so widely utilized as a benchmark in financial instruments." Order at *16. Defendants casually ignore (except on a different point) the leading authority cited in plaintiffs' opening brief, *City of New York v. Coastal Oil N.Y., Inc.*, 1999 WL 493355, at **5–8 (S.D.N.Y. July 12, 1999). In *Coastal Oil* the court sustained an implied covenant claim against Coastal Oil New York where Coastal had reported "misleadingly high prices" to publications that were used to determine New York's payment obligations under the parties' contract. Similarly here, plaintiffs allege that defendants reported falsely high prices to the entity whose published rates determined the payment obligations under LIBOR-based instruments.

Defendants also appear to argue that an implied covenant claim is limited to "intentional or reckless" conduct. Even if that is true, defendants' conspiracy to manipulate LIBOR rates was indisputably, at the very least, in reckless disregard of the rights of the parties whose contracts provided for a rate of interest tied to LIBOR.[15] Finally, defendants argue that the addition of

---

[14] *See Frankini v. Landmark Constr. of Yonkers, Inc.*, 937 N.Y.S.2d 80, 83 (N.Y. App. Div. 2012) ("The implied covenant of good faith and fair dealing is breached when a party to a contract acts in a manner that, **_although not expressly forbidden by any contractual provision_**, would deprive the other party of the right to receive the benefits under their agreement.") (emphasis added) (internal quotation marks and citations omitted).

[15] The complaint expressly alleges that defendants "understood that the collusion to suppress LIBOR had serious consequences for the prices of derivatives and LIBOR-based products being offered to their

plaintiffs' contract claim should be denied because it is "unsuited to class treatment." But that is not a relevant inquiry at this stage: there is no pending motion to strike the class allegations, and defendants do not cite a single case taking into consideration the suitability of a claim to "class treatment" in determining whether a plaintiffs' complaint is "futile" for purposes of a motion to amend under Rule 15(a). In any event, defendants' purported obstacle to certification—that individual issues will predominate over common ones for purposes of Rule 23(b)(3) because the class members have different contracts (Def. Br. at 11–12)—is a red herring: the class members' contracts will be identical in the only way that matters because they all entitle the class members to receive accurate LIBOR rather than artificially suppressed LIBOR (CSAC ¶¶ 383-385). Courts have certified contract actions where the plaintiffs' claim presents common factual and legal issues, despite differences in contract terms.[16] But this is not an appropriate inquiry at this stage, when there is no factual record on whether contractual language varies in any material way, much less that such variations are so significant as to cause individual issues to predominate over common ones.[17]

---

customers." CSAC ¶ 331. Going even further, the complaint refers to the CFTC's investigation, which revealed that during the class period, a Barclays' senior compliance officer had expressly informed the FSA of his "concerns about the trillions of dollars of derivatives fixed off LIBOR" that would be affected by defendants' suppression of LIBOR. *Id*. ¶¶ 86a, 331. Moreover, malice or sinister motive is not required to show a breach of covenant of good faith. *India.com. Inc. v. Dalal*, 324 F. App'x 59, 61-62 (2d Cir.2009) (unpublished).

[16] *See, e.g., Wu v. Pearson Educ., Inc.*, 277 F.R.D. 255, 265 (S.D.N.Y. 2011); *Waterbury Hosp. v. U.S. Foodservice Inc. (In re U.S. Foodservice Inc. Pricing Litig.)*, No. 3:06-cv-1657, 2011 U.S. Dist. LEXIS 138238, at *49-59 (D. Conn. Nov. 29, 2011); *City of Farmington Hills Employees Ret. System v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347, 355 (D. Minn. 2012).

[17] *See, e.g., Parker v. Time Warner Ent'mt Co., L.P.*, 331 F.3d 13, 21 (2d Cir. 2003) (reversing denial of class certification before certification motion and discovery, noting that district court's conclusions were based "on assumptions of fact rather than findings of fact").; *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) ("[D]ismissal of class allegations at the pleading stage should be done rarely and . . . the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery.") (internal citations and quotation markss omitted).

Dated: New York, New York
August 6, 2013

Respectfully submitted,

By: /s/ Arun Subramanian

William Christopher Carmody (WC8478)
Arun Subramanian (AS2096)
Seth Ard (SA1817)
Ashley Simonsen (AS2507)
SUSMAN GODFREY LLP
560 Lexington Avenue, 15th Floor
New York, New York 10022
Telephone: 212-336-8330
Facsimile: 212-336-8340

Marc M. Seltzer
SUSMAN GODFREY LLP
1901 Avenue of the Stars
Los Angeles, California 90067-6029

Drew D. Hansen (pro hac vice)
SUSMAN GODFREY LLP
1201 Third Avenue Suite 3800
Seattle, WA 9810

By: /s/ Michael D. Hausfeld

Michael D. Hausfeld
William P. Butterfield
Hilary K. Scherrer
Nathaniel Giddings
HAUSFELD LLP
1700 K Street, N.W., Suite 650
Washington, D.C. 20006

Counsel for OTC Plaintiffs

11