# LOVELL STEWART HALEBIAN JACOBSON LLP

61 Broadway, Suite 501
New York, New York 10006
www.lshllp.com

Telephone                                                                                               Facsimile
212.608.1900                                                                                        212.719.4775

September 18, 2013

**BY ECF AND FAX:**

Honorable Naomi Reice Buchwald
United States District Judge
U.S. Courthouse
New York, NY  10007-1312

        Re:     *In re LIBOR-Based Financial Instruments Antitrust Litigation*
             11-MD-2262 (NRB)

Dear Judge Buchwald:

The Exchange-Based Plaintiffs ("Plaintiffs") respectfully request a pre-motion conference to seek leave to serve limited requests on Defendants for the documents that Defendants and their subsidiaries have produced (prior to the date of this letter) to the Commodity Futures Trading Commission ("CFTC") and other government entities relating to U.S. dollar LIBOR, derivatives trading, and the non-public, confidential portions of the RBS Deferred Prosecution Agreement and UBS Non-Prosecution Agreement with the U.S. Department of Justice ("DOJ").

Plaintiffs agree to keep such productions confidential and to make the portions of any filings based thereon under seal.  Further, such production would be subject to the absence of meritorious objections by the CFTC, the DOJ or other government entities to such production.

Under Fed.R.Civ.P. 26(c), the filing of a motion to dismiss does not stay discovery and Defendants have the burden to demonstrate good cause for any such stay.  *Barnes v. Smith*, 12 Civ. 1916, 2013 WL 357593, at \*1 (S.D.N.Y. Jan. 17, 2013) (motion to stay discovery denied where the defendants provided no other justification for a stay other than the pending motion to dismiss); *Association Fe Y Allegria v. Republic of Ecuador*, 98 Civ. 8650, 1999 WL 147716, at \*1 (S.D.N.Y. Mar. 16, 1999) (Defendants failed to satisfy their burden of showing good cause for a stay of discovery pending resolution of their motion to dismiss).

Here, Plaintiffs seek solely to obtain the documents Defendants have previously produced to the CFTC and other governmental entities relating to U.S. dollar trading, derivatives trading, and the non-public portions of two orders.  These documents are relevant to the issues of when Defendants made false LIBOR submissions, why they did so, the degree of falsity in each Defendant's report, the degree of artificiality in a given date's LIBOR, the cumulative degree of artificiality in LIBOR, and whether Defendants were cooperating with or otherwise aiding and abetting one another.

Courts in CEA manipulation cases have ordered, before a complaint has been sustained, early production by Defendants of documents they produced to the government. *See, e.g.*, ***In re***

***Crude Oil Commodity Futures Litig.,*** 11-cv-05569 (WHP) (S.D.N.Y.) Transcript of Hearing Dated March 22, 2012 at p. 4-5 (Pauley, J.) (attached) ("And I'm learning from [*In re Platinum and Palladium Commodities Litig.*, 10 Civ. 3617 (WHP)] and I don't want to waste a year going through a motion to dismiss on the grounds that the complaint only parrots the allegations, the CFTC allegations…"); ***In re Platinum and Palladium Commodities Litig.***, 10 Civ. 3617, Dkt. No. 59, at 2 (S.D.N.Y. Nov. 30, 2010) (while a motion to dismiss was pending, the court ordered defendants to produce to plaintiffs documents that were produced pursuant to subpoenas to the CFTC); ***In re Dairy Farmers of America, Inc. Cheese Antitrust Litig.***, 09-cv-03690 (N.D. Ill.) (Hibbler, J.) *compare* Docket No. 34 at pp. 2-4 (defendants sought to stay all discovery pending dismissal motions) *with* Docket No. 75 at pp. 4-5 (Judge Hibbler entered pre-trial order No. 1, directing that "[t]argeted discovery, including, but not limited to the previously produced materials in the CFTC investigation shall be allowed to proceed").[1]

In the (very different) circumstances that previously existed on March 1, 2012, the Court denied Plaintiffs' prior request for documents produced by Defendants to government entities. *See* Dkt. No. 115. This Court emphasized three reasons: (1) under Rule 11, Plaintiffs are required to have a good faith belief that they have a claim before they file a lawsuit (Dkt. No. 117, at p. 4-5), (2) production would not be cost-free (Dkt. No. 117, at p. 5-6), and (3) ordering the relief requested might inhibit Defendants' response to the government. *Id.*

Much has changed in the eighteen-plus months since the Court's prior ruling. The first change is what this Court characterized as "shifting sands" resulting from the initial government settlement, which was by Barclays. *See* Transcript of August 8, 2012, Dkt. No. 214 at 5. Now, RBS and UBS have also settled civil and criminal matters with the CFTC, DOJ and other governmental entities. The RBS Deferred Prosecution Agreement and UBS Non-Prosecution Agreement designated non-public and confidential the portions of the settlement relating to certain LIBOR benchmarks. *See* DOJ Deferred Prosecution Agreement with The Royal Bank of Scotland plc at n.1 and Attachment C thereto; DOJ Non-Prosecution Agreement with UBS AG at n.1 and Appendix C thereto. These likely include U.S. dollar LIBOR.

The foregoing three settlements involve $1.2 billion in civil monetary penalty payments to the CFTC, and additional fines paid to other U.S. and foreign government entities. At the very least, the Barclays and RBS settlements were based, in substantial part, on production of extensive information and documents regarding U.S. dollar LIBOR.

The second change since this Court's March 1, 2012 denial of production of documents is that Plaintiffs have alleged their claims in accordance with Fed. R. Civ. P. Rule 11. Indeed, the focus of the ongoing inquiry into the pleading of Plaintiffs' claims now appears to have shifted away from whether Defendants manipulated LIBOR. The focus now appears to be shifting to (a) exactly when and how frequently Defendants did so for purposes of advantaging their derivatives

---

[1] *See also* ***In re LaBranche Secs. Litig.***, 333 F. Supp. 2d 178, 181, 183 (S.D.N.Y. 2004) (finding that there will be no costs to defendants in producing the requested materials, while "if the stay remains in place, Lead Plaintiffs will be the only ones without access to those documents and will be prejudiced by their inability to make informed decisions about their litigation strategy in this rapidly shifting landscape").

positions, and (b) the degrees to which Defendants' misreports were used to benefit derivatives positions and/or were false. *Compare In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-2262, 2013 WL 4504769, at *8-12 (S.D.N.Y. Aug. 23, 2013) ("August 23 Order") (pre-August 2007 claims) *and* *13-14 (post-August 2007 manipulative intent inquiry).

Plaintiffs believe that the documents produced to the government by Defendants will reveal (a) the identity of other Defendants involved in the misreporting by Barclays and RBS, (b) the frequency and specifics of pre-August 2007 and post-July 2007 trader-based manipulation, as well as (c) the degree to which the allegedly coordinated or individual suppressions were being used, post-July 2007, to advantage a Defendant's trading derivative positions.[2] *See* Plaintiffs' Second Amended Complaint, ¶¶195, 206, 241; *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2013 WL 1285338, at *46 (S.D.N.Y. Mar. 29, 2013) ("March 29 Order"). The documents may also enable Plaintiffs to begin to analyze the degree of artificiality in individual reports and overall LIBOR on both a daily and cumulative ongoing basis, and the cumulative and net daily impact on Eurodollar futures contract prices.

The third important change since the March 1, 2012 denial of production is the substantial progress of the government investigations. In addition to the three settlements that have been announced, other Defendants have, by now, at least produced substantially all their pertinent records to the CFTC and other government entities. Again, the only documents sought by Plaintiffs are the documents produced through the date hereof. By definition, such production would not inhibit productions to the government.

Finally, there is no search burden involved in producing the non-public confidential portions of the UBS and RBS agreements with the DOJ. Under Fed.R.Civ.P. 26(c), each Defendant has the burden to establish by evidence any asserted search or other potential burden with respect to documents previously produced to the government. *See e.g.*, Michael C. Silberberg, *Civil Practice in the Southern District of New York*, Second Edition, Volume 2, §24:3 at p. 283 (citations omitted) ("The grounds alleged in the motion which constitute good cause for a protective order must be supported by factual evidence showing clearly defined, specific and serious injury."). Plaintiffs obviously may respond to any such attempted showing of burden only after receiving and reviewing same. But we respectfully note that this Court has the discretion to compare any such asserted burden to Defendants' significant degree of social responsibility for the extensive misconduct already alleged herein.

Respectfully submitted,

**Lovell Stewart Halebian Jacobson**          **Kirby McInerney LLP**
/s/ Christopher Lovell                               /s/ David Kovel

cc:     All Counsel (by electronic service)

---

[2] Although Plaintiffs maintain that intent to manipulate LIBOR suffices to plead the CEA manipulation claims here, this Court has not yet agreed. *See* March 29 Order, at *43 n.18.