# DAVIS POLK & WARDWELL LLP

450 LEXINGTON AVENUE
NEW YORK, NY 10017
212 450 4000
FAX 212 701 5800

MENLO PARK
WASHINGTON, D.C.
SÃO PAULO
LONDON
PARIS
MADRID
TOKYO
BEIJING
HONG KONG

ROBERT F. WISE, JR.
212 450 4512

**BY HAND DELIVERY AND ECF**         November 11, 2013

Re:   *In re LIBOR-Based Financial Instruments Antitrust Litigation*,
      MDL No. 2262, 11 Civ. 2613, Master File No. 1:11-md-2262-NRB

Honorable Naomi Reice Buchwald
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Buchwald:

We write on behalf of Defendants in response to the Schwab Plaintiffs' supplemental letter brief concerning their motion to remand. For the reasons stated below and in Defendants' previously-filed opposition brief ("Opp'n"), the Schwab Complaint was properly removed.

**I.    Removal Was Proper under the Edge Act.**

Jurisdiction exists under either prong of the Edge Act because (1) the setting of LIBOR is an international or foreign financial operation and (2) the suit relates to transactions involving international or foreign banking because it involves transactions in financial instruments based on LIBOR. 12 U.S.C. § 632. Indeed, other plaintiffs in the MDL asserting similar claims have asserted that the Edge Act applies.[1]

Plaintiffs' attempt to avoid federal jurisdiction is based on a misreading of *AIG v. Bank of America Corp.*, 712 F.3d 775 (2d Cir. 2013) ("*AIG*"). *AIG* relates only to the "transactions" prong of the Edge Act and turned on the lack of any involvement of the removing national banks in the claimed international banking transactions, *i.e.*, the writing of some residential mortgages on offshore properties. Opp'n 14-15. The "transactions" giving rise to the present action, by contrast, are international and foreign banking activities engaged in by the three national banks, among others, namely the alleged false LIBOR reports. Plaintiffs read "banking transaction" overly narrowly to exclude everything but the sale to them of instruments referencing LIBOR. Their reading, however, is inconsistent with *AIG*, which focused not on the plaintiff's purchases of RMBS in the United States, but on whether the national banks had themselves participated in the offshore mortgage transactions underlying those securities. Here, there is no dispute that the national bank Defendants participated in the underlying transactions at issue, responding to a survey by a foreign banking association in London regarding loan rates they would be charged in the London interbank market.

---

[1] *FNMA v. Barclays Bank plc*, 13-7720, Compl. ¶ 12; *FHLMC v. Bank of Am. Corp.*, 13-3952, Compl. ¶ 6.

Furthermore, even if Plaintiffs' narrow focus on the instruments they purchased were correct – and it is not – there would still be Edge Act jurisdiction under the "transactions" prong because those instruments were based on LIBOR, an index inherently the product of international or foreign banking by the national banks.[2]

In any event, federal jurisdiction is independently available under the Edge Act's "operations" prong, which was not addressed in *AIG*, because their participation in the USD LIBOR panel was clearly part of their international financial operations. Federal jurisdiction is consistent with the Edge Act's goal of "increas[ing] the stability of, and the public's confidence in, international markets"—issues at the heart of Plaintiffs' allegations of LIBOR manipulation. *AIG*, 712 F.3d at 779.

## II. Removal Was Proper under the Foreign Sovereign Immunities Act.

Plaintiffs' argument that section 22(a) of the Securities Act of 1933 bars removal pursuant to the FSIA is contrary to the text and purpose of § 1441(d). The FSIA grants to an instrumentality of a foreign state an unqualified right to remove "[a]ny civil action." Opp'n 18-19. Congress's manifest intent in enacting the FSIA makes clear that § 1441(d) impliedly overrides section 22(a). *See id.* at 19-21; *see also Dar El-Bina v. Iraq*, 79 F. Supp. 2d 374, 386 n.97 (S.D.N.Y. 2000) ("One of the goals of the FSIA was to render uniform in procedure and substance the treatment of foreign sovereigns subjected to suit in American courts, in part by ensuring a federal forum. This requires a right to remove all cases against foreign states[.]"). This construction of § 1441(d) is consistent with the Second Circuit's recognition that section 22(a) does not automatically override removal statutes. *See CalPERS v. WorldCom, Inc.*, 368 F.3d 86, 108 (2d Cir. 2004). To the extent Plaintiffs rely on the Ninth Circuit's decision in *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031 (9th Cir. 2008), which held that section 22(a) trumps the removal provisions of CAFA, their reliance is misplaced. *Luther*'s rationale does not apply to the extraordinary removal rights provided by the FSIA, Opp'n 21-22, and, in any event, even as applied to CAFA, *Luther* is inconsistent with the law of the Second Circuit, *see N.J. Carp. Vac. Fund v. Harborview Mtg. Loan Trust*, 581 F. Supp. 2d 581, 582, 586-88 (S.D.N.Y. 2008) (noting that a "clear split in the Circuits is evidenced by recent holdings in this Circuit").

Section 22(a) is in any event irrelevant because the Securities Act claims are facially time-barred and have been asserted solely and improperly for the purpose of defeating removal. Opp'n 23-25. Plaintiffs do not contend that the claims were brought within the one-year limitations period (15 U.S.C. § 77m), but instead argue (Reply 14-15) that their claims were tolled under the doctrine of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), because they were members of the putative class in *Mayor & City Council of Baltimore v. Credit Suisse Group AG, et al.*, No. 11-cv-5450 (S.D.N.Y.) (the "Baltimore Action"). But the Baltimore Action cannot have tolled the Securities Act limitations period because it did not include any Securities Act claim or even remotely concern whether Defendants' registration statements contained material false statements. *Id*, ECF No. 1. *See Cullen v. Margiotta*, 811 F.2d

---

[2] *Racepoint Partners, LLC v. JPMorgan Chase Bank*, which Plaintiffs cite for the proposition that U.S. dollar transactions are not subject to the Edge Act, is readily distinguishable. The court expressly noted that "Plaintiffs do not allege any foreign or international involvement in the 2001 [*i.e.*, U.S. dollar] note issuance." 2006 WL 3044416, at *3 (S.D.N.Y. Oct. 26, 2006). Here, Plaintiffs do allege foreign and international involvement, namely alleged manipulation of the LIBOR setting process. It would defeat the Edge Act's purpose to hold it inapplicable merely because a concededly international transaction happened to involve U.S. currency.

Davis Polk & Wardwell LLP

698, 721 (2d Cir. 1987) (*American Pipe* tolling applies only where the "factual basis of the [earlier] claims was the same"), *overruled on other grounds*, *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987); *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 355 (1983) (Powell, J., concurring) (*American Pipe* should not be "abused by the assertion of claims that differ from those raised in the original class suit"). Moreover, the Baltimore Action cannot have tolled *any* claims with respect to defendant RBS—one of the two FSIA removing defendants here—because RBS was not named a defendant in the initial complaint in the Baltimore Action. *See Cullen*, 811 F.2d at 726 (*American Pipe* tolling is "inapplicable to persons who were not defendants" in earlier suit). The Securities Act claims are also barred under its three-year statute of repose, which runs from the date of the public offering of the relevant security. 15 U.S.C. § 77m. As Plaintiffs acknowledge, the Second Circuit has held that *American Pipe* tolling cannot extend the statute of repose. Reply 15 n.13; *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013). Plaintiffs' complaint was filed on April 29, 2013, and Plaintiffs have not alleged—nor even sought to identify in briefing on remand—any relevant public securities offering made after April 29, 2010. (Indeed, the Complaint asserts a putative claim period ending in May 2010. Compl. ¶ 1.) Plaintiffs' Securities Act claims are thus plainly barred by the statute of repose and cannot serve to defeat FSIA jurisdiction.

Finally, Plaintiffs assert that, even if removal of their claims as to RBS and Portigon was appropriate, removal of the entire action was improper. Ltr. 3. Plaintiffs misconstrue *dicta* from a single decision of the Fourth Circuit, *Schlumberger Indus., Inc. v. Nat'l Surety Corp.*, 36 F.3d 1274, 1282-83 & n.17 (4th Cir. 1994), which has been widely rejected by other courts, *see, e.g.*, *Consumers Energy Co. v. Certain Underwriters at Lloyd's London*, 45 F. Supp. 2d 600, 609-610 (E.D. Mich. 1999). *Schlumberger* aside, courts have consistently held that *actions*—rather than *claims*—are properly removed pursuant to the FSIA. *See, e.g., In re Asbestos Prods. Liab. Litig.*, 2013 WL 4774504, at *4-5 (3d Cir. Sept. 6, 2013).[3] Moreover, the Second Circuit has endorsed pendent party jurisdiction under the FSIA in a summary order, *see Credit Lyonnais S.A. v. Korea Asset Mgmt. Corp.*, 111 F. App'x 44, 45 n.1 (2d Cir. 2004), and has relied on the reasoning of the Ninth Circuit's FSIA decision in *Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404 (9th Cir.1989), to uphold pendent party jurisdiction. *Roco Carriers v. M/V Nurnberg Exp.*, 899 F.2d 1292, 1296-97 (2d Cir. 1990).

Respectfully yours,

Robert F. Wise, Jr.

cc:   All Counsel (by ECF)

---

[3] *See also, e.g., In re Air Crash Disaster*, 96 F.3d 932, 942 (7th Cir. 1996); *In re Surinam Airways Holding Co.*, 974 F.2d 1255, 1258-59 (11th Cir. 1992); *Noonan v. Possfund Invs.*, 89 Civ. 2903, 1994 WL 515440, at *3 (S.D.N.Y. Sept. 3, 1993); *Colgan v. Port Auth.*, 91 Civ. 1136, 1991 WL 180384, at *3-4 (E.D.N.Y. Aug. 14, 1991).

Davis Polk & Wardwell LLP