**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262<br>ECF Case<br>**ORAL ARGUMENT REQUESTED** |
| THIS DOCUMENT RELATES TO:<br><br>MAYOR AND CITY COUNCIL OF BALTIMORE, ET AL.,<br><div align="center">Plaintiffs,</div><div align="center">v.</div>BANK OF AMERICA CORPORATION, ET AL.,<br><div align="center">Defendants.</div> | No. 11-cv-5450 |

**MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANTS' MOTION TO DISMISS**
**OTC PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................... 1

DESCRIPTION OF CLAIMS .............................................................................. 2

ARGUMENT ....................................................................................................... 4

I.   Breach of Contract and Unjust Enrichment Claims Do Not Lie Against Defendants
     With Which the Named Plaintiffs Did Not Transact ..................................... 4

     A.   There Can Be No Contract or Unjust Enrichment Claim
          Absent Any Contract or Transactional Nexus with the
          Defendant ............................................................................................. 4

     B.   New York Law Does Not Recognize a Claim for
          "Conspiracy" to Commit Breach of Contract or Unjust
          Enrichment ........................................................................................... 6

     C.   The Named OTC Plaintiffs Must Themselves Have
          Standing to Bring Claims on Behalf of a Putative Class ...................... 7

     D.   OTC Plaintiffs Do Not Plead Any Valid Exception to the
          Requirements for Standing in a Class Action ....................................... 8

          1.   "Conspiracy or Concerted Scheme" ........................................... 8

          2.   Named Plaintiff Must Itself Have Standing to Sue Defendants to
               Assert Class Claims .................................................................. 10

II.  Plaintiffs Have Not Plausibly Alleged a Conspiracy Under *Twombly* .............. 12

III. OTC Plaintiffs Fail To State a Claim for Breach of the Implied Covenant of Good
     Faith and Fair Dealing or Unjust Enrichment .............................................. 15

     A.   OTC Plaintiffs Fail to Allege Any Relevant Misconduct or
          Injury Attributable to the Defendants with Which They
          Claim to Have Contracts ..................................................................... 15

          1.   The Baltimore Contracts ........................................................... 17

          2.   The New Britain and TCEH Contracts ...................................... 18

     B.   OTC Plaintiffs Fail to Allege that Defendants Acted With
          the Purpose of Impairing the Swap Contracts As Required
          for a Breach of the Implied Covenant of Good Faith and
          Fair Dealing ....................................................................................... 20

i

**Page**

    C.     OTC Plaintiffs Cannot Allege Unjust Enrichment Because
          the Remedy They Seek is a Contractual Remedy ................................................ 22

CONCLUSION ..................................................................................................................... 26

## TABLE OF AUTHORITIES

### CASES

**Page(s)**

*Abu Dhabi Com. Bank v. Morgan Stanley & Co.*,
   651 F. Supp. 2d 155 (S.D.N.Y. 2009) ............................................................................8

*In re AIG Advisor Grp.*,
   No. 06 Civ. 1625, 2007 WL 1213395 (E.D.N.Y. Apr. 25, 2007) ...........................................9

*Allee v. Medrano*,
   416 U.S. 802 (1974) ............................................................................8

*Angel Music, Inc. v. ABC Sports, Inc.*,
   112 F.R.D. 70 (S.D.N.Y. 1986) ............................................................................8

*Beavers v. Metro. Life Ins. Co.*,
   566 F.3d 436 (5th Cir. 2009) ..........................................................................15

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................2, 12, 13, 14

*Carvel Corp. v. Diversified Mgmt. Grp., Inc.*,
   930 F.2d 228 (2d Cir. 1991) .........................................................................21

*Cassese v. Wash. Mutual, Inc.*,
   262 F.R.D. 179 (E.D.N.Y. 2009) .....................................................................9

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*,
   504 F.3d 229 (2d Cir. 2007) .........................................................................11

*City of New York v. Coastal Oil N. Y., Inc.*,
   No. 96 Civ. 8667, 1999 WL 493355 (S.D.N.Y. July 12, 1999) ...........................................22

*Cruz v. FXDirectDealer, Inc.*,
   720 F.3d 115 (2d Cir. 2013) ...........................................................................3

*DeBlasio v. Merrill Lynch & Co.*,
   No. 07 Civ. 318, 2009 WL 2242605 (S.D.N.Y. July 27, 2009) ...........................................15

*Elledge v. Friberg-Cooper Water Supply Corp.*,
   240 S.W.3d 869 (Tex. 2007) .........................................................................15

**Page(s)**

*Fin. Acquisition Partners LP v. Blackwell*,
    440 F.3d 278 (5th Cir. 2006) ................................................................17

*Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*,
    862 F. Supp. 2d 322 (S.D.N.Y. 2012)......................................................9

*Georgia Malone & Co. v. Rieder*,
    19 N.Y.3d 511 (2012) ..............................................................6, 7, 16

*Grad v. Roberts*,
    14 N.Y.2d 70 (1964) ....................................................................21

*Griffin v. Dugger*,
    823 F.2d 1476 (11th Cir. 1987) .............................................................8

*Herman v. Green*,
    234 F.3d 1262 (2d Cir. 2000).................................................................5

*Highland Capital Mgmt., L.P. v. Schneider*,
    No. 02 Civ. 8098, 2004 WL 2029406 (S.D.N.Y. Sept. 9, 2004)...........................17

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
    12 N.Y.3d 132 (2009) ................................................................24, 25

*Kader v. Paper Software, Inc.*,
    111 F.3d 337 (2d Cir. 1997)................................................................20

*Keene Corp. v. Bogan*,
    No. 88 Civ. 0217, 1990 WL 1864 (S.D.N.Y. Jan. 11, 1990)...............................21

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006).................................................................6

*La Mar v. H&B Novelty & Loan Co.*,
    489 F.2d 461 (9th Cir. 1973) .........................................................8, 9, 10

*Lehman v. Garfinkle*,
    No. 08 Civ. 9385, 2009 WL 2973207 (S.D.N.Y. Sept. 16, 2009) ........................6, 7

*Lewis v. Casey*,
    518 U.S. 343 (1996)........................................................................7

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    935 F. Supp. 2d 666 (S.D.N.Y. 2013)..................................................6, 15

Page(s)

*In re LIBOR-Based Fin. Instruments Antitrust Litig. ("In re LIBOR II")*,
    No. 11 MD 2262, 2013 WL 4504769 (S.D.N.Y. Aug. 23, 2013).....................3, 19, 21, 22, 23

*LJL 33rd Street Assocs., LLC v. Pitcairn Props. Inc.*,
    725 F.3d 184 (2d Cir. 2013)...........................................................................................20

*M/A Com Sec. Corp. v. Galesi*,
    904 F.2d 134 (2d Cir. 1990)...........................................................................................20

*Mahon v. Ticor Title Ins. Co.*,
    683 F.3d 59 (2d Cir. 2012)...........................................................................................7, 9

*Mayor & City Council of Baltimore, Md. v. Citigroup, Inc*,
    709 F.3d 129 (2d Cir. 2013)........................................................................................14, 15

*MBIA Ins. Corp. v. Royal Bank of Canada*,
    706 F. Supp. 2d 380 (S.D.N.Y. 2009).................................................................................5

*McCall v. Chesapeake Energy Corp.*,
    817 F. Supp. 2d 307 (S.D.N.Y. 2011), *aff'd*, 509 F. App'x 62 (2d Cir. 2013)........................9

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    272 F. Supp. 2d 243 (S.D.N.Y. 2003)..............................................................................7, 8

*Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*,
    392 F.3d 520 (2d Cir. 2004)...........................................................................................16

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012)....................................................................................10, 11, 12

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
    Nos. 08 Civ. 8781, 08 Civ. 5093, 2013 WL 1809767 (S.D.N.Y. Apr. 30, 2013)....................11

*Pappas v. Tzolis*,
    20 N.Y.3d 228 (2012) .................................................................................................22, 24

*Paul v. Bank of America Corp.*,
    No. 09 Civ. 1932, 2011 WL 684083 (E.D.N.Y. Feb. 16, 2011)............................................21

*Pitcairn Props., Inc. v. LJL 33rd St. Assocs., LLC*,
    No. 11 Civ. 7318, 2012 WL 6082398 (S.D.N.Y. Nov. 20, 2012), *aff'd*,
    725 F.3d 184 (2d Cir. 2013)...........................................................................................21

*Salvatore v. Kumar*,
    45 A.D.3d 560 (N.Y. 2d Dep't 2007) ................................................................................6

Page(s)

*Schroeder v. Capital One Fin. Corp.*,
    665 F. Supp. 2d 219 (E.D.N.Y. 2009) ............................................................................20, 21

*Shady Records, Inc. v. Source Enters., Inc.*,
    351 F. Supp. 2d 74 (S.D.N.Y. 2004)........................................................................................23

*Shell Oil Co. v. Ross*,
    356 S.W.3d 924 (Tex. 2011)....................................................................................................15

*Smith v. Fitzsimmons*,
    180 A.D.2d 177 (N.Y. 4th Dep't 1992) ........................................................................6, 7, 13

*Thompson v. Bd. of Educ. of Romeo Cmty. Schools*,
    709 F.2d 1200 (6th Cir. 1983) ................................................................................................10

*Thyroff v. Nationwide Mut. Ins. Co.*,
    460 F.3d 400 (2d Cir. 2006)......................................................................................................5

*Union Bank, N.A. v. CBS Corp.*,
    No. 08 Civ. 8362, 2009 WL 1675087 (S.D.N.Y. June 10, 2009)...........................................23

*United States ex rel. Smith v. N.Y. Presbyterian Hosp.*,
    No. 06 Civ. 4056, 2007 WL 2142312 (S.D.N.Y. July 18, 2007) ...........................................19

*Usov v. Lazar*,
    No. 13 Civ. 818, 2013 WL 3199652 (S.D.N.Y. June 25, 2013)................................................3

*Vincent v. Money Store*,
    915 F. Supp. 2d 553 (S.D.N.Y. 2013)......................................................................................15

*Yucyco, Ltd. v. Republic of Croatia*,
    No. 96 Civ. 5559, 1997 WL 728173 (S.D.N.Y. Nov. 19, 1997) ............................................16

## STATUTES & RULES

28 U.S.C. § 2072(b) ....................................................................................................................9

N.Y. C.P.L.R. § 202 ..................................................................................................................15

Fed. R. Civ. P. 9(b) ...................................................................................................................15

Fed. R. Civ. P. 23 .................................................................................................................1, 8, 9

**Page(s)**

### OTHER AUTHORITIES

1 McLaughlin on Class Actions § 4:28 (5th ed. 2008)..........................................................9, 10

Defendants respectfully submit this memorandum of law in support of their motion to dismiss the OTC Plaintiffs' Second Consolidated Amended Complaint ("SAC").[1]

## PRELIMINARY STATEMENT

OTC Plaintiffs' remaining claims in this case – breach of the implied covenant of good faith and fair dealing, and unjust enrichment – are legally deficient and should be dismissed.

*First*, OTC Plaintiffs lack Article III standing to assert their claims against those Defendants with which they allege no contractual or transactional relationship.[2]  Under New York law,[3] a plaintiff cannot sue a defendant for breach of contract if the parties had no contract, or assert unjust enrichment if there were no dealings between the parties under which the defendant was unjustly enriched, let alone if there were no dealings between them at all.  The Court should thus dismiss OTC Plaintiffs' claims against the Defendants with which they allege no contractual or transactional nexus.

Neither allegations of conspiracy nor the assertion of purported class claims change the result.  The "conspiracy" allegations do not convert OTC Plaintiffs' individual breach of contract and unjust enrichment claims into causes of action that can be asserted collectively against all Defendants.  And, as the U.S. Supreme Court and the Second Circuit have repeatedly held, styling a complaint as a class action under Rule 23 of the Federal Rules of Civil Procedure cannot alter a constitutional standing requirement.  Therefore, the named OTC Plaintiffs' lack of

---

[1] In addition to the arguments set forth in this memorandum, Defendants incorporate their other pending objections to the Second Amended Complaint, as to which the Court has reserved decision.  (*See* Sept. 20, 2013 Ltr. From Robert F. Wise, Jr., Dkt. No. 422 (objecting to SAC's inclusion of amended allegations not authorized by the Court's August 23, 2013 decision on OTC Plaintiffs' motion for leave to amend); Oct. 9, 2013 Order, Dkt. No. 452 (reserving decision on Defendants' objections).)

[2] Most of the Defendants are not alleged to have had any contracts with any of the named Plaintiffs, and none of the Defendants are alleged to have had contracts with all of the named Plaintiffs.

[3] OTC Plaintiffs have not alleged that any other jurisdiction's law is applicable, and the Defendants therefore address the OTC Plaintiffs' unjust enrichment and breach of implied covenant of good faith and fair dealing claims under New York law only.  Other arguments may be available under other states' laws. *See, e.g., infra* n.12.

1

standing to assert claims on their own behalf against most of the Defendants means they lack

standing to do so on behalf of absent class members as well.  And, as discussed in Section I.D.

below in response to the Court's questions, there is no "conspiracy or concerted scheme"

exception to standing rules that could overcome this deficiency.

  *Second*, insofar as the OTC Plaintiffs' claims are based on an alleged "conspiracy," they

cannot be sustained.  New York law does not recognize an independent tort for "conspiracy" to

breach a contract or commit unjust enrichment.  Even if there were such a claim, OTC Plaintiffs'

allegations are insufficient to support an inference of conspiracy under *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544 (2007).  The "conspiracy" claims must therefore be dismissed as against

all Defendants for this independent reason.

  *Third*, OTC Plaintiffs fail to allege the required substantive elements of their claims.

Even with respect to those Defendants with which they allege a contractual relationship, OTC

Plaintiffs do not adequately allege any relevant misconduct or injury in connection with the

specific agreements at issue, let alone advance plausible allegations directed at the remainder of

the Defendants with which no contractual or other transactional relationship is alleged.

Moreover, OTC Plaintiffs fail to allege that Defendants suppressed LIBOR for the purpose of

impairing these swap contracts, as the law requires.  Finally, because OTC Plaintiffs seek to

enforce a purported *contractual* right, there can be no claim for unjust enrichment against any

Defendant because such a claim exists only absent a contract governing the transaction out of

which the dispute arises.

## DESCRIPTION OF CLAIMS

  OTC Plaintiffs assert breach of contract and unjust enrichment claims against all 23

Defendants, although as to at least 18 of the Defendants, OTC Plaintiffs allege no contract or

other dealings whatsoever.[4]  Their theory appears to be that, whether or not they had any direct

dealings with OTC Plaintiffs, all Defendants "colluded" or "conspired" to violate the implied

covenant of good faith and fair dealing and to obtain unjust enrichment.  (SAC ¶ 390

("Defendants breached the implied covenant of good faith and fair dealing by colluding to

undermine plaintiffs' right to receive or make payments based on a LIBOR rate that is set

according to the terms of the LIBOR definition."); Oct. 10, 2013 Letter from W. Carmody, Dkt.

No. 457 (arguing that unjust enrichment is appropriately asserted "against a defendant who did

not directly deal with a plaintiff but who engaged in a common scheme with a party that did").)

　　　　OTC Plaintiffs allege that Defendants breached the implied covenant of good faith and

fair dealing in certain swap agreements "by obtaining contractual benefits from their collusive

and manipulative acts, in the form of paying less or receiving more LIBOR-based payments at

the expense of the OTC Plaintiffs and members of the Class."  (SAC ¶ 391.)[5]  OTC Plaintiffs

allege that the effect of the alleged LIBOR suppression was to decrease the LIBOR-based

payments they received, but they do not allege that such decrease was the purpose or aim of the

---

[4] OTC Plaintiffs' Proposed Second Amended Complaint submitted with their motion for leave to amend included two named plaintiffs alleging direct dealings with only Defendants UBS and Deutsche Bank, although UBS is not alleged to have had direct dealings with both of the named plaintiffs.  The latest Second Amended Complaint adds a new named plaintiff alleging direct dealings with Defendants Barclays, Citibank, and newly named defendant Credit Suisse International.  As set forth in the Sept. 20, 2013 Letter from Robert F. Wise, Jr. on behalf of all Defendants, these additions were improper because they were not authorized by the Court's August 23 Order and should therefore be stricken.  (Dkt. No. 422.)

[5] The SAC also includes a claim for breach of an express contractual provision (SAC ¶ 393 ("collusion to manipulate the LIBOR rate also breached the contractual term that provided that Plaintiffs would receive payments that were based on the LIBOR definition"), but the Court has already rejected that claim.  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262, slip op. at 54 n.31, 2013 WL 4504769, at *21 n.31 (S.D.N.Y. Aug. 23, 2013) ("*In re LIBOR II*") (limiting breach of contract claim to – at most – breach of the implied covenant of good faith and fair dealing).  Moreover, Second Circuit precedent does not permit a claim for breach of the implied covenant to proceed on the same facts as a claim for express breach.  *See Cruz v. FXDirectDealer, Inc.*, 720 F.3d 115, 125 (2d Cir. 2013) ("[W] hen a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant."); *Usov v. Lazar*, No. 13 Civ. 818, 2013 WL 3199652, at *6 (S.D.N.Y. June 25, 2013) (holding that a "duplicative breach of covenant of good faith and fair dealing claim should be dismissed as redundant and not allowed as an alternative to [a] breach of contract claim").

alleged conduct.  To the contrary, they allege that purported LIBOR suppression was driven by reputational considerations unconnected to the swap agreements at issue.  (*Id.* ¶¶ 44, 67-73.)

OTC Plaintiffs also assert an unjust enrichment claim, alleging that it "would be inequitable for Defendants to be permitted to retain the benefit which Defendants obtained from their manipulative acts and at the expense of the OTC Plaintiffs and members of the Class."  (*Id.* ¶ 396.)  OTC Plaintiffs do not explain how a Defendant with no transactional relationship with a Plaintiff, and which is not alleged to have received any money from or otherwise rightly belonging to a Plaintiff, could conceivably have been enriched at that Plaintiff's expense.

On October 18, 2013, the Court granted Defendants leave to move to dismiss OTC Plaintiffs' claims.  In granting leave, the Court posed two questions to the parties about a purported "conspiracy or concerted scheme[]" exception to the requirements for standing in a class action, one directed to the doctrine generally and the other to its application in this case. (Dkt. No. 478 at 1-2.)  As discussed in Section I.D. below, to the extent such an exception exists at all, it is not applicable to OTC Plaintiffs' claims.  Therefore, even if OTC Plaintiffs had adequately pled the existence of a "concerted scheme" to suppress LIBOR (which they have not), they would still lack standing to bring unjust enrichment or breach of contract claims against defendants with which they never transacted.

## ARGUMENT

## I.   BREACH OF CONTRACT AND UNJUST ENRICHMENT CLAIMS DO NOT LIE AGAINST DEFENDANTS WITH WHICH THE NAMED PLAINTIFFS DID NOT TRANSACT

### A.   There Can Be No Contract or Unjust Enrichment Claim Absent Any Contract or Transactional Nexus with the Defendant

OTC Plaintiffs fail to allege the most fundamental elements of their claims against Defendants with which they have alleged no dealings.

4

**Breach of Contract Claim.**  An action for breach of the implied covenant of good faith and fair dealing sounds in contract and depends on the existence of an underlying express contract between the parties.  *See Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407-08 (2d Cir. 2006).  Only parties to a contract can sue or be sued for its breach.  *See, e.g.*, *Herman v. Green*, 234 F.3d 1262 (2d Cir. 2000) (affirming dismissal of implied-covenant claim where plaintiffs "have offered, and we have found, no support for the proposition that a contract's covenant of good faith and fair dealing can bind someone who was not a party to that contract"); *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009) ("It is well established that . . . a party who is not a signatory to a contract cannot be held liable for breaches of that contract").  Accordingly, the Court should dismiss OTC Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing against the Defendants with which they had no direct dealings.[6]

**Unjust Enrichment Claim.**  OTC Plaintiffs fail to allege that those Defendants with which they did not transact were unjustly enriched by receipt of money or property that in equity ought to have gone to the representative Plaintiffs.  A Defendant that did not owe LIBOR-based payments to a Plaintiff (and, indeed, did not transact with a Plaintiff in any way) could not have been "unjustly enriched" at that Plaintiff's expense based on alleged LIBOR suppression.  As this Court has ruled, absent any transactional relationship between the representative Plaintiffs and a Defendant allowing for the possibility of unjust enrichment, no claim for unjust enrichment

---

[6] The Defendants that have not transacted with the OTC Plaintiffs are Bank of America Corporation, Bank of America, N.A., The Bank of Tokyo-Mitsubishi UFJ, Ltd., Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A., Credit Suisse Group AG, HBOS plc, HSBC Bank plc, HSBC Holdings plc, JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., Lloyds Banking Group plc, The Norinchukin Bank, Royal Bank of Canada, The Royal Bank of Scotland Group plc, Société Générale, and WestLB AG.  UBS did not transact with one of the two OTC Plaintiffs: City of New Britain Firefighters' & Police Benefit Fund.  If the Court disallows the addition of the new plaintiff in the SAC, TCEH, the Defendants that did not transact with plaintiffs would also include Barclays plc, Citibank, N.A., Citigroup, Inc., and Credit Suisse International.  It is not alleged that either UBS or Deutsche Bank had any direct dealings with TCEH.

can lie.  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 737

(S.D.N.Y. 2013) ("Where plaintiff and defendant 'simply had no dealings with each other,' their

relationship is 'too attenuated'" to support an unjust enrichment claim (quoting *Georgia Malone*

*& Co. v. Rieder*, 19 N.Y.3d 511, 517-18 (2012))).  Accordingly, the Court should also dismiss

OTC Plaintiffs' claim for unjust enrichment against the Defendants with which they did not

transact.[7]

**B.     New York Law Does Not Recognize a Claim for "Conspiracy" to Commit Breach of Contract or Unjust Enrichment**

OTC Plaintiffs cannot avoid dismissal against the Defendants with which they did not

transact by asserting a "conspiracy" claim for breach of contract or unjust enrichment.  In New

York, there is no independent cause of action for "conspiracy."  *See Kirch v. Liberty Media*

*Corp.*, 449 F.3d 388, 401 (2d Cir. 2006); *Salvatore v. Kumar*, 45 A.D.3d 560, 563-64 (N.Y. 2d

Dep't 2007) ("New York does not recognize civil conspiracy to commit a tort as an independent

cause of action.  Such a claim stands or falls with the underlying tort."); *Smith v. Fitzsimmons*,

180 A.D.2d 177, 180-81 (N.Y. 4th Dep't 1992) ("[T]here cannot be any cause of action for

conspiracy to breach the contract.").  "Conspiracy" does not afford OTC Plaintiffs a cause of

action against any Defendant.

Moreover, breach of contract and unjust enrichment claims lie only against a defendant

with which a plaintiff had *some* kind of transactional relationship.  Neither cause of action can be

pleaded against a defendant whose sole connection to the alleged wrongdoing is as a purported

"co-conspirator" with the plaintiff's counterparty.  *See, e.g.*, *Lehman v. Garfinkle*, No. 08 Civ.

---

[7] *See supra* n.6.  Any previous uncertainty regarding the requirement of a transactional nexus for unjust enrichment was removed last year by the New York Court of Appeals.  *See Georgia Malone*, 19 N.Y.3d at 517-18.  Decisions pre-dating the 2012 ruling in *Georgia Malone* are thus no longer good law to the extent they suggest that unjust enrichment claims can be maintained without direct dealings between the plaintiff and defendant.

9385, 2009 WL 2973207, at *7 (S.D.N.Y. Sept. 16, 2009) ("To the extent Plaintiff is attempting

to argue that these defendants should be liable on contracts to which they were not parties, on the

ground that all Defendants were co-conspirators, this argument would fail, as New York law

does not recognize such a theory of liability."); *Fitzsimmons*, 180 A.D.2d at 180-81; *Georgia*

*Malone*, 19 N.Y.3d at 517-18 (no cause of action for unjust enrichment absent a transactional

relationship).  In short, there is no "conspiracy" exception to the basic pleading requirements

OTC Plaintiffs must satisfy for breach of contract and unjust enrichment.

### C.     The Named OTC Plaintiffs Must Themselves Have Standing to Bring Claims on Behalf of a Putative Class

Because the named OTC Plaintiffs have no basis, as a matter of law, to assert the contract

and unjust enrichment claims against the Defendants with which they did not transact, they lack

Article III standing to assert those claims on behalf of purported absent class members.  Named

plaintiffs can represent a class against a defendant only to the extent they have individual

standing to sue that defendant.  *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (a putative

class action "adds nothing to the question of standing, for even named plaintiffs who represent a

class must allege and show that they personally have been injured, not that injury has been

suffered by other, unidentified members of the class to which they belong and which they

purport to represent"); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62-66 (2d Cir. 2012)

(affirming dismissal of class claims against certain defendants for lack of standing, explaining

that "plaintiff's injury resulting from the conduct of one defendant" has no "bearing on her

Article III standing to sue other defendants"); *In re Merrill Lynch & Co., Inc. Research Reports*

*Sec. Litig.*, 272 F. Supp. 2d 243, 255 (S.D.N.Y. 2003) ("It is axiomatic that a putative class

representative must be able to individually state a claim against defendants, even though he or she purports to act on behalf of a class.").[8]

### D.   OTC Plaintiffs Do Not Plead Any Valid Exception to the Requirements for Standing in a Class Action

#### 1.   "Conspiracy or Concerted Scheme"

OTC Plaintiffs nevertheless argue that their ability to assert class claims against the Defendants with which they did not transact is saved by a purported "conspiracy or concerted scheme" exception to the class standing requirements.  OTC Plaintiffs rely on dicta in *La Mar v. H&B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973), in which the Ninth Circuit, after holding that a plaintiff could *not* maintain a class action against defendants whom it lacked personal standing to sue, observed that its holding excluded "situations in which all injuries are the result of a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury," and "instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious."  *Id.* at 466.

Courts in the Second Circuit, however, have consistently rejected the existence of the *La Mar* exceptions to standing, explaining that they relate at most to the *class certification* inquiry under Rule 23 (specifically, the "adequacy" and "typicality" of a purported class representative), not to the threshold question of whether a named plaintiff has Article III standing to assert a

---

[8] *See also Allee v. Medrano*, 416 U.S. 802, 828-29 (1974) (Burger, J., concurring in part) ("[A] named plaintiff cannot acquire standing to sue by bringing his action on behalf of others. . . . Standing cannot be acquired through the back door of a class action."); *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) ("[A] plaintiff cannot include class action allegations in a complaint and expect to be relieved of personally meeting the requirements of constitutional standing."); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 169 (S.D.N.Y. 2009) ("A putative class representative lacks standing to bring a claim if it did not suffer the injury that gives rise to that claim. Where multiple claims are brought, 'at least one named plaintiff must have standing to pursue each claim alleged.'"); *cf. Angel Music, Inc. v. ABC Sports, Inc.*, 112 F.R.D. 70, 74 (S.D.N.Y. 1986) ("The courts of this circuit have expressly endorsed these concepts of standing for named plaintiffs in purported class actions . . . reaffirming the principle that representative plaintiffs must have individual standing to assert claims against all the members of the defendant class.").

claim against each defendant.  *McCall v. Chesapeake Energy Corp.*, 817 F. Supp. 2d 307

(S.D.N.Y. 2011), *aff'd*, 509 F. App'x 62 (2d Cir. 2013), is directly on point.  The court found

that a plaintiff who was neither a party to certain agreements, nor a third-party beneficiary of

those agreements, lacked standing to sue on those agreements, and consequently could not

represent a class of others purporting to do so, notwithstanding a "conspiracy" allegation.  As the

court explained:

> [Plaintiff] also argues that her conspiracy claim provides a "juridical link" which
> provides her standing against all the Bank Defendants.  The juridical link
> doctrine, however, is employed to allow plaintiffs to satisfy the adequacy or
> typicality requirements for class certification where there was an alleged
> conspiracy or other relationship between defendants.  [Plaintiff] does not cite to
> any case where the juridical link doctrine was found to cure a named plaintiff's
> lack of Article III standing, and, other courts in the Second Circuit have dismissed
> this same argument.

*Id*. at 313-14 (citing *Cassese v. Washington Mut., Inc.,* 262 F.R.D. 179, 183-84 (E.D.N.Y. 2009);

*In re AIG Advisor Grp.,* No. 06 Civ. 1625, 2007 WL 1213395, at *6 (E.D.N.Y. Apr. 25, 2007)).

        The Second Circuit has similarly explained that *La Mar*'s analysis arose in the context of

Rule 23 and has rejected as "flawed" any reliance on Rule 23 considerations – including the

purported *La Mar* exceptions – to decide issues of Article III standing.  *See Mahon*, 683 F.3d at

64 ("[W]hether or not Rule 23 would permit a plaintiff to represent a class against non-injurious

defendants cannot affect the plaintiff's Article III standing to sue the non-injurious defendants.");

*id.* ("[W]e also disagree with the approach that analyzes class certification before Article III

standing and treats the class as the relevant legal entity."); *see also Fort Worth Employees' Ret.*

*Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 333 (S.D.N.Y. 2012) ("[I]t is black

letter law that a rule of procedure – such as Rule 23, governing class actions – cannot create

standing." (internal quotation marks and citation omitted) (citing 28 U.S.C. § 2072(b)); 1

McLaughlin on Class Actions § 4:28 (5th ed. 2008) ("The 'juridical link' doctrine – under which

9

in narrowly defined circumstances a plaintiff who has no cause of action against certain

defendants may nevertheless satisfy the typicality and adequate representation requirements of

class certification – has no bearing on standing.").  Thus, under controlling authority, OTC

Plaintiffs cannot satisfy Article III standing requirements simply by alleging a conspiracy among

the Defendants or otherwise invoking the purported *La Mar* exceptions.[9]

### 2. Named Plaintiff Must Itself Have Standing to Sue Defendants to Assert Class Claims

In their letter opposing Defendants' request for leave to move to dismiss these claims,

OTC Plaintiffs cited the Second Circuit's decision in *NECA-IBEW Health & Welfare Fund v.*

*Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012), as authority for permitting them to

prosecute class claims on behalf of class members whose claims did not arise out of the same

transactions as theirs.  (Oct. 10, 2013 Letter from W. Carmody, Dkt.  No. 457.)  OTC Plaintiffs'

reliance on *NECA* is misplaced.

Unlike the named OTC Plaintiffs here, the named plaintiff in *NECA itself had standing to*

*sue all defendants* and sought to represent a class of persons that it contended had  highly similar

claims *against those same defendants*.  The purported class in *NECA* consisted of purchasers of

residential mortgage-backed securities ("RMBS") sold in offerings that were issued,

underwritten, and sponsored by the same defendants pursuant to the same shelf registration

statement that included a series of representations alleged to have been false or misleading with

respect to each offering.  *See NECA*, 693 F.3d at 151.  The named plaintiff had not participated

in every offering at issue, nor had it participated in each "tranche" within the various offerings,

---

[9] Courts outside the Second Circuit have applied those exceptions sparingly and in narrow circumstances, often involving constitutional challenges to uniform policies employed by state actors and other circumstances not applicable here.  *See, e.g.*, *Thompson v. Bd. of Educ. of Romeo Cmty. Schools*, 709 F.2d 1200, 1205 (6th Cir. 1983) (recognizing potential *La Mar* exceptions, but finding them inapplicable because "this case does not involve a state statute or uniform policy being applied statewide by the defendants").

and defendants argued that the plaintiff lacked standing to represent a class that included purchasers outside of the specific offerings and tranches in which it had purchased.  There was no dispute, however, that the named plaintiff had standing to assert its own claims against each of the defendants (because the named plaintiff had bought certificates in an offering issued or underwritten by those defendants).  *See id.* at 158.  Even then the Second Circuit found that the named plaintiff had *class standing* to represent other purported class members only where the offerings were made by means of  "similar if not identical" alleged misstatements, 693 F.3d at 162, **and** were backed by mortgage loans originated by the same lenders whose loans backed the named plaintiffs' certificates, *id.* at 163-64.

Here, the named OTC Plaintiffs – unlike the named plaintiff in *NECA* – do not have standing to assert *any* claims against the Defendants that had no direct dealings with them.  This key distinction renders *NECA* inapplicable to the present circumstances.  *See NECA*, 693 F.3d at 158 ("[T]o establish Article III standing in a class action . . . for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis." (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007))); *see also N.J. Carpenters Health Fund v. Residential Capital, LLC*, Nos. 08 Civ. 8781, 08 Civ. 5093, 2013 WL 1809767, at *4 (S.D.N.Y. Apr. 30, 2013) (explaining that *NECA*'s holding depended on an initial finding that the named plaintiff had Article III standing with respect to all named defendants, and dismissing claims against defendants where such standing was lacking).

Moreover, the decision in *NECA* turned on the Second Circuit's finding that the class claims brought by the named plaintiffs were based on substantially the same alleged

11

misrepresentations about the loan origination practices of the same mortgage lenders, and

therefore "implicate[d] 'the same set of concerns' as [named] plaintiff's claims."  693 F.3d at

150;  *see id.* at 162 ("[T]he same three defendants were "alleged to have inserted nearly identical

misrepresentations into the Offering Documents associated with *all* of the Certificates, whose

purchasers plaintiff seeks to represent."  *NECA*, 693 F.3d at 162 (emphasis in original)); *id.* at

163 ("Sections 11 and 12(a)(2) claims brought by a purchaser of debt from one offering would

raise a 'set of concerns' nearly identical to that of a purchaser from another offering. . . .  [T]he

inappropriateness of denying class standing on the happenstance of the misrepresentation's

location in one offering versus another seems patent.").

     OTC Plaintiffs' claims here stand in stark contrast.  Although OTC Plaintiffs allege that

all Defendants suppressed their LIBOR submissions, the contract and unjust enrichment claims

of class members differ fundamentally from one another because each class member must show

that *its particular counterparty Defendant* engaged in the alleged conduct.  There will be

significant differences among the Defendants, both with respect to their alleged participation in

purported LIBOR manipulation and with respect to the circumstances and terms of their

contracts with class members.  It would stretch *NECA* beyond recognition and violate

fundamental notions of standing in class actions if a plaintiff whose claims depended on

demonstrating conduct of one particular defendant could represent a class of plaintiffs whose

claims depended on demonstrating the conduct of *other* defendants with respect to different

contracts and relationships.

## II.     PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED A CONSPIRACY UNDER *TWOMBLY*

     The crux of the SAC is that the Defendants allegedly engaged in a conspiracy to breach a

contract and engage in unjust enrichment (SAC ¶¶ 390, 396).  As stated above, New York does

not recognize a cause of action for conspiracy to breach a contract or to engage in unjust

enrichment.  *See, e.g, Fitzsimmons*, 180 A.D.2d at 180-81 (finding no cause of action for a

conspiracy to breach a contract).  The SAC should therefore be dismissed as to all of the

Defendants.  Even if there were a cause of action for conspiracy – which there is not – OTC

Plaintiffs' claims would still fail as to all of the Defendants because Plaintiffs have not plausibly

alleged a conspiracy to suppress LIBOR consistent with the requirements of *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 553-63 (2007).

Defendants presented this argument in their original motion to dismiss the antitrust

claims asserted by all plaintiff groups and incorporate that argument by reference here.  (Mem. in

Support of Defs.' Mot. to Dismiss Antitrust Claims (June 29, 2012), Dkt. No. 166, at 11-21;

Reply Mem. of Law in Support of Defs.' Mot. to Dismiss Antitrust Claims (Sept. 27, 2012), Dkt.

No. 228, at 1-7.)  In brief, OTC Plaintiffs make no specific factual allegations suggestive of a

conspiracy, and their own allegations undermine any such suggestion.  OTC Plaintiffs' purported

evidence of concerted action consists solely of:  (1) statistical analyses purporting to conclude

that USD LIBOR was "too low" during particular time periods according to certain benchmarks,

but not concluding that this pattern resulted from alleged concerted action (SAC ¶¶ 160-231);

and (2) regulatory settlements indicating that certain Defendants made improperly low LIBOR

submissions due to reputational concerns, but containing no indication – despite years of

investigation and millions of documents reviewed – that such conduct occurred pursuant to an

agreement with any other Defendant, let alone all other Defendants (*id.* ¶¶ 244-300).  Moreover,

by pleading that purported LIBOR suppression resulted from Defendants' desire to hide their

true financial condition for reputational reasons (SAC ¶¶ 44, 67-73), OTC Plaintiffs both

undermine the notion that Defendants would have shared and coordinated this strategy with

others, and expressly concede the type of "independent responses to common stimuli" and "mere interdependence unaided by an advance understanding among the parties" that defeat a claim of conspiracy. *Twombly*, 550 U.S. at 556 n.4.  Indeed if, as Plaintiffs allege, a bank perceived that it was financially weak and wanted to keep that fact hidden by understating its borrowing rates to avoid being the "odd man out" (SAC ¶ 77), it would not have revealed the very fact it wished to conceal by soliciting the participation of other banks in a conspiracy.

A recent Second Circuit case decided after briefing on the original motion to dismiss further underscores the insufficiency of OTC Plaintiffs' conspiracy allegations.  In *Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*,[10] plaintiffs alleged that nearly a dozen of "the world's largest and best-known financial institutions" had "conspired to restrain trade by simultaneously refusing to support the ARS [auction rate securities] auctions they managed." 709 F.3d 129, 131, 133 (2d Cir. 2013).  The Second Circuit held that plaintiffs' allegations were insufficient to plead a Sherman Act section 1 conspiracy claim, explaining that "a bare allegation of parallel conduct is not enough," and confirming *Twombly*'s prohibition against sustaining allegations that are "just as much in line with" unilateral conduct, and that "could just as easily turn out to have been rational business behavior" rather than improper agreement.  *Id.* at 137. Notably, the court found that plaintiffs' own allegations suggested a common motive for independent, unilateral decisions by defendants to exit the ARS market and that communications cited by plaintiffs indicated at most "interfirm *awareness*" of what the other defendants were doing, rather than an unlawful agreement, which was insufficient to sustain a claim.  *Id.* at 139.

As in *Baltimore*, OTC Plaintiffs here rely on allegations of parallel conduct with motive allegations that undercut, rather than support, an inference of concerted action.  They cite studies

---

[10] The named plaintiff and its counsel were the same as here.

showing divergence of USD LIBOR from other benchmark rates as evidence of parallel conduct; but instead of alleging "plus factors" to support an inference that such conduct was the product of a conspiracy, they assert a motive common to all defendants (*i.e.*, an alleged desire to hide from others their alleged weak creditworthiness) that is more consistent with independent, rather than concerted, action.  OTC Plaintiffs otherwise rely entirely on government investigations and settlements that – despite extensive review and scrutiny of millions of documents – have produced no evidence of the conspiracy they allege:  an agreement among all panel banks to suppress USD LIBOR over a thirty-month span.  Plaintiffs' conspiracy allegations thus suffer the same deficiencies as those in *Baltimore*.[11]

## III.   OTC PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING OR UNJUST ENRICHMENT

OTC Plaintiffs also fail to allege the required substantive elements of their claims, presenting yet another independent basis for dismissal of the claims against all Defendants.[12]

### A.   OTC Plaintiffs Fail to Allege Any Relevant Misconduct or Injury Attributable to the Defendants with Which They Claim to Have Contracts

The SAC does not allege a single specific act by which the Defendants with which OTC Plaintiffs claim to have had contracts caused them any injury.  The SAC therefore fails to state a

---

[11] OTC Plaintiffs' pleading deficiencies are further accentuated by the fact that, because the OTC Plaintiffs' claims are based on factual allegations that "sound in fraud," they are subject to the heightened pleading standard of Rule 9(b).  *DeBlasio v. Merrill Lynch & Co.*, No. 07 Civ. 318, 2009 WL 2242605, at *9 (S.D.N.Y. Jul. 27, 2009) (analyzing claims, including breach of contract and unjust enrichment, under Rule 9(b)'s heightened pleading standard because "each of Plaintiffs' claims sounds in fraud.").  OTC Plaintiffs' conclusory allegations of conspiracy fail to satisfy Rule 9(b)'s heightened pleading requirements.

[12] TCEH's unjust enrichment claims should also be dismissed as time barred to the extent they arose more than two years before the filing of this action.  New York's borrowing statute, N.Y. C.P.L.R. § 202, applies to TCEH's claims because TCEH allegedly resides in Texas (SAC ¶ 14) and suffered economic injury in Texas.  *See Vincent v. Money Store*, 915 F. Supp. 2d 553, 560, 568-69 (S.D.N.Y. 2013).  TCEH's unjust enrichment claims must, therefore, be timely pursuant to Texas' two-year statute of limitations.  *See Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007).  TCEH did not exercise due diligence to discover its claims, *see Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 440-41 (5th Cir. 2009), and was on notice of its injuries by May 29, 2008 at the latest, *In re LIBOR*, 935 F. Supp. 2d at 710.  Thus, its claims cannot be salvaged by reference to the discovery rule or fraudulent concealment.  *See Shell Oil Co. v. Ross*, 356 S.W.3d 924, 928-30 (Tex. 2011).

claim for either breach of the implied covenant of good faith and fair dealing or unjust

enrichment.  It is well established that any claim for breach of the implied covenant of good faith

and fair dealing requires factual allegations establishing an actual breach of these duties. *See*

*Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004) (to state a claim

for breach of contract, a plaintiff must plead conduct constituting a breach and that the breach

"*directly and proximately caused* [the] damages" (emphasis in original)); *Yucyco, Ltd. v.*

*Republic of Croatia*, No. 96 Civ. 5559, 1997 WL 728173, at *6 (S.D.N.Y. Nov. 19, 1997) (a

plaintiff asserting a claim for breach of the implied covenant of good faith and fair dealing must

identify "specific actions on the part of particular defendants that allegedly breached this duty").

The SAC therefore fails to state a claim against even those Defendants for either breach of the

implied covenant of good faith and fair dealing or unjust enrichment.

 Similarly, to assert a claim for unjust enrichment, a plaintiff must allege sufficient facts

establishing that defendants were enriched at the plaintiff's expense, and that it would be

inequitable to allow defendants to retain what is sought to be recovered. *See, e.g.*, *Georgia*

*Malone*, 19 N.Y.3d at 516.  OTC Plaintiffs here have failed to allege the causal nexus between

specific acts on the part of the Defendants and particular injuries suffered by any of the Plaintiffs

required to sustain either their claim for breach of the implied covenant of good faith and fair

dealing or their follow-on claim for unjust enrichment.

 As discussed above, OTC Plaintiffs simply repeat the implausible allegations that *all*

Defendants colluded over a two-and-a-half-year period to suppress unspecified tenors of USD

LIBOR.  But apart from this sweeping and implausible assertion, they do not point to any way in

which *any Defendant* with which they contracted actually breached the contracts identified in the

SAC or unjustly enriched themselves at OTC Plaintiffs' expense.  OTC Plaintiffs' failure to satisfy this elemental pleading burden is fatal to the claims asserted against all Defendants.

### 1.    The Baltimore Contracts

The SAC alleges that Plaintiff  Mayor and City Council of Baltimore ("Baltimore") had an unspecified number of swap contracts with UBS and Deutsche Bank under which it received payments linked to 1-month USD LIBOR.  (*See* SAC ¶¶ 337, 379, 381.)  Yet the SAC cites no specific allegedly improper communications involving UBS or Deutsche Bank and other panel banks referring to 1-month USD LIBOR, nor does it allege even a single 1-month USD LIBOR submission by any bank that adversely affected a specific swap held by Baltimore.

With respect to UBS and Deutsche Bank, the few allegations in the SAC referring specifically to 1-month USD LIBOR consist exclusively of three charts purportedly demonstrating a negative correlation during the 2007-2008 period between various Defendants' 1-month USD LIBOR submissions and a "probability of default" ("PD") metric devised by a third party.  (*See id.* ¶ 171 Grph. 1.)  As an initial matter, the PD metric does not purport to measure the price of unsecured USD cash on the London interbank market, as LIBOR does, and its relationship to LIBOR therefore cannot serve as the basis for any allegation of misconduct.[13] *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 285-86 (5th Cir. 2006) (holding it inappropriate to rely on the opinion of plaintiffs' expert at the pleading stage because it "requires a court to confront a myriad of complex evidentiary issues not generally capable of resolution at the pleading stage" (internal quotation marks omitted)); *Highland Capital Mgmt., L.P. v. Schneider*, No. 02 Civ. 8098, 2004 WL 2029406, at *4 (S.D.N.Y. Sept. 9, 2004) ("[A]llegations

---

[13] Rather, it allegedly measures "each bank's equity and bond prices, [and] accounting information," as well as extrinsic information "such as the level of interest rates, unemployment rates, inflation rates, etc."  (SAC ¶ 163.)

that simply set forth the opinions of its proposed expert . . . serve[] no permissible purpose in [a] [c]omplaint.").

But even if this Court accepted Plaintiffs' threadbare contention that a negative correlation between the PD metric and the banks' USD LIBOR submissions somehow evidences suppression, these charts still fail to support the alleged claims against Deutsche Bank and UBS. The charts are wholly irrelevant as to Deutsche Bank, which allegedly entered into swap agreements with Baltimore pursuant to an ISDA Master Agreement executed *in January 2010* – more than one year after the period covered by the graphs.  And with respect to UBS, these aggregated analyses fail to identify any particular day during the 2007-2008 period on which UBS allegedly suppressed its 1-month submissions, and thus they cannot satisfy Baltimore's burden to allege specific misconduct and injury attributable to UBS.

### 2.    The New Britain and TCEH Contracts

The only other contracts referenced in the SAC are attributed to Plaintiff City of New Britain Firefighters' and Police Benefit Fund ("New Britain") – which allegedly entered into LIBOR-referencing contracts with Deutsche Bank – and Plaintiff Texas Competitive Electric Holdings Co. ("TCEH") – which allegedly entered into LIBOR-referencing contracts with Citibank, Barclays, and newly-named defendant, Credit Suisse International.[14]  These allegations also fail because Plaintiffs allege no specific acts of relevant misconduct by the contracting Defendants or any resulting injury given that Plaintiffs do not identify which tenor of USD LIBOR their financial instruments referenced – or, in the case of New Britain, even whether they were making or receiving payments tied to USD LIBOR.  (*See* SAC ¶¶ 383, 387.)

---

[14] Plaintiffs have alleged no contractual relationship between any entity and Credit Suisse Group AG.

18

As this Court has previously noted, tenors of USD LIBOR are not interchangeable: Conduct alleged with respect to one tenor cannot simply be imputed to another. *See* August 23, 2013 Order at 34 & n.22, 2013 WL 4504769, at *13 & n.22 (S.D.N.Y. Aug. 23, 2013) (finding that allegations regarding 1-month and 6-month USD LIBOR could not support a claim of injury tied to 3-month USD LIBOR).  And as the SAC itself recognizes, USD LIBOR was calculated for 15 separate maturities each day during the Class Period.  (SAC ¶ 56.)  Plaintiffs cannot satisfy their obligation to identify specific instances of misconduct by any of the Defendants and resulting harm when they do not allege which tenors of USD LIBOR were suppressed to cause their losses.  *See, e.g.*, *United States ex rel. Smith v. N.Y. Presbyterian Hosp.*, No. 06 Civ. 4056, 2007 WL 2142312, at *16 (S.D.N.Y. July 18, 2007) (Buchwald, J.) ("As a matter of law, a contract claim asserting breach of the implied covenants of good faith and fair dealing does not survive a motion to dismiss when it is based only on generalized allegations and grievances.").

Moreover, as with the Baltimore contracts, the SAC fails to allege any specific acts by any Defendant that would have caused Plaintiffs any injury.  While Plaintiffs have cited various communications excerpted from the regulatory settlements with Barclays (*see, e.g.*, SAC ¶¶ 86, 95), they do not allege that (i) TCEH held instruments linked to the specific tenors of USD LIBOR purportedly referenced in those communications, (ii) any alleged manipulation on those dates would have adversely impacted a position held by TCEH (or any other named Plaintiff), or (iii) any of the communications relating to the pertinent dates and tenors were made by the three banks with whom TCEH alleges contractual privity.  TCEH must allege all three elements, yet it alleges none.

19

**B.**     **OTC Plaintiffs Fail to Allege that Defendants Acted With the Purpose of Impairing the Swap Contracts As Required for a Breach of the Implied Covenant of Good Faith and Fair Dealing**

OTC Plaintiffs fail to allege facts with respect to any Defendant showing that such Defendant acted with the purpose of impairing their contractual rights as necessary for a breach of the implied covenant of good faith and fair dealing.  As explained by the Second Circuit, "The implied covenant of good faith and fair dealing bars a party from taking actions *so directly to impair* the value of the contract for another party that it may be assumed that they are inconsistent with the intent of the parties."  *LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc.*, 725 F.3d 184, 195 (2d Cir. 2013) (emphasis added).  Notably, the doctrine does not merely prohibit actions "that impair" the value of a contract, but rather prohibits acting "so directly **to impair**" the value of a contract.  An action "to impair" a contract is, necessarily, an act taken for the purpose of injuring the counterparty, not an act that incidentally does so.  *See M/A Com Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) (finding that the implied covenant does not extend so far as to undermine a party's "general right to act on its own interests in a way that may incidentally lessen" the other party's anticipated fruits of the contract); *Kader v. Paper Software, Inc.*, 111 F.3d 337, 342 (2d Cir. 1997).

Consistent with the Second Circuit's articulation of the standard, district courts have explained that breach of the implied covenant of good faith and fair dealing requires a showing of intent to harm or other improper purpose aimed at the parties' dealings under the contract. *See, e.g.*, *Pitcairn Props., Inc. v. LJL 33rd St. Assocs., LLC*, No. 11 Civ. 7318, 2012 WL 6082398, at *5 (S.D.N.Y. Nov. 20, 2012) *aff'd*, 725 F.3d 184 (2d Cir. 2013) ("In order to state a cause of action for breach of the implied covenant of good faith and fair dealing, the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff."); *Schroeder v. Capital One Fin. Corp.*,

665 F. Supp. 2d 219, 226 (E.D.N.Y. 2009) ("A cause of action for breach of an implied warranty of good faith and fair dealing requires the pleading of intent by the breaching party to deprive the injured party of his rights under the contract."); *Keene Corp. v. Bogan*, No. 88 Civ. 0217, 1990 WL 1864, at *15-16 (S.D.N.Y. Jan. 11, 1990) (conduct in violation of implied covenant must be "severe enough to warrant an inference that the party acted in bad faith, or intended to do harm").  Although some courts have alternatively characterized the required showing as "reckless disregard," *see Keene Corp.*, 1990 WL 1864, at *15-16; *Paul v. Bank of America Corp.*, No. 09 Civ. 1932, 2011 WL 684083, at *6 (E.D.N.Y. Feb. 16, 2011),[15] these decisions do not purport to hold that mere awareness of potential harm is sufficient, or to otherwise contradict the Second Circuit's explanation that breach of the implied covenant requires action taken "so directly ***to impair***" the contract's value.

OTC Plaintiffs do not plead any action by Defendants "to impair" the relevant contracts. There is no allegation that anyone involved in making LIBOR submissions on behalf of Defendants had any direct involvement in the alleged interest rate swap contracts with OTC Plaintiffs or any specific knowledge of them, much less any motive, purpose, or intent to harm OTC Plaintiffs or deprive them of their rights under the contracts.  At most, OTC Plaintiffs suggest that Defendants had a general awareness that the banks were parties to various LIBOR-referenced transactions, but general awareness that LIBOR movements might affect some contracts falls far short of the required showing.  *See Keene Corp.*, 1990 WL 1864, at *15-16. Indeed, OTC Plaintiffs' own allegations contradict any attempt to plead the required state of

---

[15] In its August 23 Order, this Court relied upon *Paul* for the "reckless disregard" standard.  *See In re LIBOR II*, slip op. at 60-61, 2013 WL 4504769, at *22.  However, neither the decision of the Second Circuit nor that of the New York Court of Appeals relied upon by *Paul* supports that standard.  Rather, both decisions support an intent standard, describing the "implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement."  *Carvel Corp. v. Diversified Management Group, Inc.*, 930 F.2d 228, 230 (2d Cir. 1991); *see also Grad v. Roberts*, 14 N.Y.2d 70, 75 (1964) (same).

mind, because they have alleged that Defendants were motivated by reputation-based considerations having nothing to do with gains or losses on LIBOR-based transactions involving the OTC counterparties.  (SAC ¶¶ 44, 67-73.)[16]

The facts here thus stand in sharp contrast to those of *City of New York v. Coastal Oil N.Y., Inc.*, No. 96 Civ. 8667, 1999 WL 493355 (S.D.N.Y. July 12, 1999), cited in the Court's August 23 Order granting OTC Plaintiffs leave to plead their state law claims.  The Court cited *Coastal Oil* in the portion of its Order discussing whether the alleged breach frustrated the purposes of the OTC Plaintiffs' swap agreements, *In re LIBOR II*, slip op. at 58-60, 2013 WL 4504769, at *22, but not in the section discussing the required state of mind or intention behind the breach.  *Coastal Oil* supports Defendants' position on the latter point because in that case, the only plausible motivation for the defendant's conduct, and therefore its evident intent, was to obtain an advantage under the relevant contracts at the expense of plaintiff.  There is no such indication here, and indeed, OTC Plaintiffs have affirmatively alleged otherwise.

**C.    OTC Plaintiffs Cannot Allege Unjust Enrichment Because the Remedy They Seek is a Contractual Remedy**

By alleging that they entered into "binding and enforceable contracts with Defendants in connection with each of their purchases of LIBOR-based instruments" (SAC ¶ 388), OTC Plaintiffs are precluded as a matter of law from asserting a claim for unjust enrichment.  As explained by the New York Court of Appeals, "[a] party may not recover in . . . unjust enrichment where the parties have entered into a contract that governs the subject matter" of their dispute.  *Pappas v. Tzolis*, 20 N.Y.3d 228, 234 (2012) (ellipses in original) (citation omitted).  This rule ensures that unjust enrichment claims remain narrow causes of action,

---

[16] Moreover, the allegations are inconsistent with any such purpose given the various, ever-changing positions that Defendants maintain with respect to such instruments.

available only where there is no available contractual remedy.  "Unjust enrichment [] is not a

catch-all claim for anyone who believes that another has acted unjustly.  Rather, it is a specific

equitable cause of action that can be asserted when one party, in the absence of contract, receives

a benefit at the expense of another without providing adequate compensation, and equity and

good conscience require restitution."  *Shady Records, Inc. v. Source Enters., Inc.*, 351 F. Supp.

2d 74, 78 (S.D.N.Y. 2004).

In its August 23 Order, the Court permitted OTC Plaintiffs to plead unjust enrichment

notwithstanding their alleged contracts with Defendants because it held that there was no

provision of the parties' swap agreements "clearly cover[ing] the dispute between the parties" –

namely, "whether defendants were permitted to manipulate LIBOR itself and thereby depress the

amount they were required to pay plaintiffs."  *In re LIBOR II*, slip op. at 50-51, 2013 WL

4504769, at *19 (quoting *Union Bank, N.A. v. CBS Corp.*, No. 08 Civ. 8362, 2009 WL 1675087,

at *7 (S.D.N.Y. June 10, 2009)).  Under controlling New York law, however, a contract will be

found to "govern" the relevant "subject matter" of a dispute (and thereby preclude an unjust

enrichment claim) even if the terms of the contract do not expressly address the factual scenario

giving rise to the dispute.[17]  The test focuses more generally on the nature of the transaction out

of which the dispute arises, including the remedy sought by the plaintiff, to determine if they are

traceable to an underlying contract.  Here they plainly are, because the very LIBOR-based

payments OTC Plaintiffs seek are themselves based on and traceable to an alleged underlying

contractual entitlement, without which there would be no LIBOR-based payments in the first

place.  That is, the rights they seek to vindicate through their unjust enrichment claims are their

---

[17] Indeed, allowing a claim for unjust enrichment to proceed whenever a contract does not explicitly address the factual scenario in dispute would do precisely what this Court has cautioned against – convert the cause of action into a broad "catch-all" claim that could be used to supplement the terms of a contract with additional rights and remedies not bargained for by the parties.  *Shady Records*, 351 F. Supp. 2d at 78.

23

alleged contractual rights under the swap agreements.  Under these circumstances, they cannot

seek alternative recovery for unjust enrichment.

The New York Court of Appeals' recent decision in *Pappas v. Tzolis* is instructive.  The

defendant bought out his co-owners' stake in an LLC, but before doing so, he allegedly

"surreptitiously negotiated the sale" to a third party of a lease that the LLC owned, allegedly

increasing the LLC's overall value.  20 N.Y.3d at 231-32.  The former co-owners claimed unjust

enrichment, arguing that the sale price was unfairly suppressed because of the undisclosed

negotiations.  *Id.* at 232, 234.  The court held that plaintiffs had no unjust enrichment claim

because the co-owners' "sale of interests in the LLC was controlled by contracts."  *Id.* at 234.  In

dismissing the unjust enrichment claim, the court did not look to whether failure to disclose the

sale of the lease to a third party was specifically addressed by the parties' LLC purchase

agreement.  Rather, the court simply noted that, because the subject matter of the dispute

regarding defendants' alleged misrepresentation was "the sale of interests in the LLC," it was

"controlled" by the parties' contract.  *Id.*  Notably in that case, as here, the recovery sought by

the plaintiff (*i.e.*, an increased sales price) was traceable to the parties' contract because, without

the contract, the plaintiff would not have been entitled to any sales price at all.

The New York Court of Appeals reached a similar conclusion in *IDT Corp. v. Morgan*

*Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 137 (2009).  Plaintiff retained Morgan Stanley to

advise it on the sale of a company and then brought an unjust enrichment claim to recover

investment banking fees paid to Morgan Stanley because, while providing its services to the

plaintiff, it allegedly misappropriated confidential business information.  *Id.* at 141.  The Court

of Appeals did not inquire as to whether the investment banking agreement between the parties

specifically addressed the plaintiff's rights if Morgan Stanley misappropriated its information,

and there was no suggestion in the opinion that it did.  Rather, the Court of Appeals broadly held that the unjust enrichment claim could not lie because the "fee arose from services governed by an engagement letter signed by [the plaintiff]."  *Id.* at 142.  Thus, again, the court deemed the appropriate inquiry to be a broad one, focused on whether the services provided by the defendant and remedy sought by the plaintiff were traceable to a contract, not whether the contract specifically and expressly contemplated the factual scenario alleged to exist.

Here, the relevant transaction and requested remedy are at least as traceable – if not more so – to the underlying contracts as those in *Pappas* and *IDT*.  The OTC Plaintiffs' only claim for "unjust enrichment" is based on the alleged obligations under their LIBOR-referenced instruments, that is, what they claim they were contractually entitled to receive.  Applying the same approach as employed by the New York Court of Appeals, OTC Plaintiffs' unjust enrichment claims should be dismissed.

## CONCLUSION

For the foregoing reasons, the OTC Plaintiffs' Second Amended Complaint should be dismissed in its entirety against all Defendants.

Dated:          New York, New York
                November 26, 2013


/s/ Robert F. Wise, Jr.                         /s/ Daryl A. Libow
Robert F. Wise, Jr.                             Daryl A. Libow
Arthur J. Burke                                 Christopher M. Viapiano
Paul S. Mishkin                                 SULLIVAN & CROMWELL LLP
DAVIS POLK & WARDWELL LLP                        1701 Pennsylvania Avenue, N.W.
450 Lexington Avenue                            Washington, D.C.  20006
New York, New York  10017                        Telephone: (202) 956-7500
Telephone: (212) 450-4000                       Fax: (202) 956-6973
Fax: (212) 450-4800                             libowd@sullcrom.com
robert.wise@davispolk.com                       viapianoc@sullcrom.com
arthur.burke@davispolk.com
paul.mishkin@davispolk.com                      *Attorneys for Defendant The Bank of*
                                                *Tokyo-Mitsubishi UFJ, Ltd.*
*Attorneys for Defendants Bank of America*
*Corporation and Bank of America, N.A.*

/s/ Jeffrey T. Scott
David H. Braff
Yvonne S. Quinn
Jeffrey T. Scott
Matthew J. Porpora
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
braffd@sullcrom.com
quinny@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com

/s/ Jonathan D. Schiller
Jonathan D. Schiller
Leigh M. Nathanson
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York  10022
Telephone: (212) 446-2300
jschiller@bsfllp.com
lnathanson@bsfllp.com

Michael Brille
5301 Wisconsin Avenue NW
Washington, D.C.  20015
Telephone: (202) 237-2727
mbrille@bsfllp.com

*Attorneys for Defendant Barclays plc*

/s/ Andrew A. Ruffino
Andrew A. Ruffino
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York  10018
Telephone: (212) 841-1000
aruffino@cov.com

Alan M. Wiseman
Thomas A. Isaacson
Jonathan Gimblett
1201 Pennsylvania Avenue N.W.
Washington, D.C.  20004
Telephone: (202) 662-6000
awiseman@cov.com
tisaacson@cov.com
jgimblett@cov.com

/s/ Michael R. Lazerwitz
Michael R. Lazerwitz
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York  10006
Telephone: (212) 225-2000
mlazerwitz@cgsh.com

*Attorneys for Defendants Citibank, N.A.
and Citigroup, Inc.*

<table>
<tr>
<td>

_/s/ David R. Gelfand_

David R. Gelfand
Sean M. Murphy
MILBANK TWEED HADLEY & McCLOY  LLP
One Chase Manhattan Plaza
New York, New York  10005
Telephone: (212) 530-5000
dgelfand@milbank.com
smurphy@milbank.com

_Attorneys for Defendant Coöperatieve_
_Centrale Raiffeisen-Boerenleenbank B.A._

</td>
<td>

_/s/ Herbert S. Washer_

Herbert S. Washer
Elai Katz
Joel Kurtzberg
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York  10005
Telephone: (212) 701-3000
hwasher@cahill.com
ekatz@cahill.com
jkurtzberg@cahill.com

_Attorneys for Defendant Credit Suisse_
_Group AG_

</td>
</tr>
</table>

*/s/* Moses Silverman
Moses Silverman
Andrew C. Finch
Ankush Khardori
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3355
Fax: (212) 492-0355
msilverman@paulweiss.com
afinch@paulweiss.com
akhardori@paulweiss.com

*Attorneys for Defendant Deutsche Bank AG*

*/s/* Thomas C. Rice
Thomas C. Rice
Paul C. Gluckow
Omari L. Mason
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York  10017
Telephone: (212) 455-2000
Fax: (212) 455-2502
trice@stblaw.com
pgluckow@stblaw.com
omason@stblaw.com

*Attorneys for Defendants JPMorgan Chase & Co.
and JPMorgan Chase Bank, N.A.*

*/s/* Ed DeYoung
Ed DeYoung
Roger B. Cowie
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201
Telephone: (214) 740-8614
Fax: (214) 740-8800
edeyoung@lockelord.com
rcowie@lockelord.com

Gregory T. Casamento
3 World Financial Center
New York, New York  10281
Telephone: (212) 812-8325
Fax: (212) 812-8385
gcasamento@lockelord.com

*Attorneys for Defendants HSBC Holdings
plc and HSBC Bank plc*

*/s/* Marc J. Gottridge
Marc J. Gottridge
Lisa J. Fried
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York  10022
Telephone: (212) 918-3000
marc.gottridge@hoganlovells.com
lisa.fried@hoganlovells.com

*Attorneys for Defendants Lloyds Banking
Group plc and HBOS plc*

/s/ Andrew W. Stern
Alan M. Unger
Andrew W. Stern
Nicholas P. Crowell
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York  10019
Telephone: (212) 839-5300
Fax: (212) 839-5599
aunger@sidley.com
astern@sidley.com
ncrowell@sidley.com

*Attorneys for Defendant The Norinchukin Bank*

/s/ Fraser L. Hunter, Jr.
Fraser L. Hunter, Jr.
David S. Lesser
Alan E. Schoenfeld
WILMER CUTLER PICKERING
HALE AND DORR LLP
250 Greenwich Street,
New York, New York  10007
Telephone: (212) 230-8800
Fax: (212) 230-8888
fraser.hunter@wilmerhale.com
david.lesser@wilmerhale.com
alan.schoenfeld@wilmerhale.com

/s/ Robert G. Houck
Robert G. Houck
Alejandra de Urioste
James D. Miller
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York  10019
Telephone: (212) 878-8000
Fax: (212) 878-8375
robert.houck@cliffordchance.com
alejandra.deurioste@cliffordchance.com
jim.miller@cliffordchance.com

*Attorneys for Defendant Royal Bank of Scotland
Group plc*

/s/ Arthur W. Hahn
Arthur W. Hahn
Christian T. Kemnitz
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois  60661
Telephone: (312) 902-5200
arthur.hahn@kattenlaw.com
christian.kemnitz@kattenlaw.com

*Attorneys for Defendant Royal Bank of
Canada*

/s/ Steven Wolowitz
Steven Wolowitz
Henninger S. Bullock
Andrew J. Calica
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
Telephone: (212) 506-2500
Fax: (212) 262-1910
swolowitz@mayerbrown.com
hbullock@mayerbrown.com
acalica@mayerbrown.com

*Attorneys for Defendant Société Générale*

*/s/* Peter Sullivan
Peter Sullivan
Lawrence J. Zweifach
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York  10166-0193
Telephone: (212) 351-4000
psullivan@gibsondunn.com
lzweifach@gibsondunn.com

Joel S. Sanders (*admitted pro hac vice*)
555 Mission Street, Suite 3000
San Francisco, California  94105
jsanders@gibsondunn.com

*Attorneys for Defendant UBS AG*

*/s/* Ethan E. Litwin
Ethan E. Litwin
Christopher M. Paparella
Marc A. Weinstein
Morgan J. Feder
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York  10004
Telephone: (212) 837-6000
Fax: (212) 422-4726
litwin@hugheshubbard.com
paparella@hugheshubbard.com
feder@hugheshubbard.com

*Attorneys for Defendant Portigon AG (f/k/a WestLB AG)*