**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262, 11 Civ. 2613 |
|---|---|
| THIS DOCUMENT RELATES TO: EXCHANGE-BASED PLAINTIFFS' ACTION | Master File No. 1:11-md-2262-NRB<br><br>ECF Case<br><br>**Oral Argument Requested** |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SOCIÉTÉ GÉNÉRALE'S MOTION TO DISMISS EXCHANGE-BASED PLAINTIFFS' [CORRECTED] SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**</u>

MAYER BROWN LLP
1675 Broadway
New York, New York  10019
(212) 506-2500

*Attorneys for Defendant*
*Société Generalé*

# <u>TABLE OF CONTENTS</u>

**Page(s)**

PRELIMINARY STATEMENT ............................................................................... 1

BACKGROUND ................................................................................................... 4

ARGUMENT ....................................................................................................... 7

I.      PLAINTIFFS' CEA CLAIMS AGAINST SG ARE TIME BARRED ............................ 7

II.     THE *LAYDON* ACTION DID NOT TOLL THE STATUTE OF LIMITATIONS .......... 7

      A.     *American Pipe* Tolling Does Not Apply To Named Plaintiffs ............................. 7

      B.     Plaintiffs Are Not Entitled To Tolling Because They Voluntarily Dismissed The *Laydon* Action ................................................................. 8

      C.     Any Tolling of the Statute of Limitations Would Contravene The Policies Underlying *American Pipe* .............................................................. 11

III.    EVEN IF THE *LAYDON* ACTION TOLLED PLAINTIFFS' CEA CLAIMS, THOSE CLAIMS ARE STILL TIME BARRED .......................................... 14

      A.     Plaintiffs' Period 2 and Period 3 CEA Claims Against SG Are Time Barred ..................................................................................... 15

      B.     Plaintiffs' Period 2 CEA Claims Against SG Are Time Barred For Additional Reasons ................................................................... 16

      C.     Plaintiffs' Period 3 CEA Claims Against SG Are Time Barred For Additional Reasons ................................................................... 16

            1.     All Named Plaintiffs Were On Inquiry Notice Prior To The Start of Period 3 ..................................................................... 16

            2.     Plaintiffs Who Purchased Contracts During Period 3 Were Placed On Inquiry Notice Before May 20, 2010 For Additional Reasons .......... 17

IV.    PLAINTIFFS FAIL TO ADEQUATELY ALLEGE TOLLING BY FRAUDULENT CONCEALMENT .................................................... 20

V.     PLAINTIFFS' CEA CLAIMS SHOULD BE DISMISSED FOR FAILURE TO ADEQUATELY PLEAD SPECIFIC INTENT ........................................ 21

VI.    PLAINTIFFS' OTHER CLAIMS AGAINST SG SHOULD ALSO BE DISMISSED ............................................................................ 21

      A.     Plaintiffs' Antitrust And Unjust Enrichment Claims ........................................ 21

      B.     Pre-February 2009 CEA Claims ................................................................. 21

CONCLUSION ................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*380544 Canada, Inc. v. Aspen Tech., Inc.*,
   544 F. Supp. 2d 199 (S.D.N.Y. 2008) .................................................................................14

*A.B. Dick Co. v. Marr*,
   197 F. 2d 498 (2d Cir. 1952) ...............................................................................................9

*American Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974) ..................................................................................................... *passim*

*Arneil v. Ramsey*,
   414 F. Supp. 334 (S.D.N.Y. 1976), *aff'd*, 550 F.2d 774 (2d Cir. 1977) ...............................14

*Bingham* v. *Zolt*,
   683 F. Supp. 965 (S.D.N.Y. 1988) .......................................................................................20

*Elgendy v. City of New York*,
   No. 99 CIV. 5196 (JGK), 2000 WL 1119080 (S.D.N.Y. Aug. 7, 2000) ................................9

*Giovaniello v. ALM Media, LLC*,
   726 F.3d 106 (2d Cir. 2013) ................................................................................................13

*Hall Special Situations Inv. Fund v. Basix Corp.*,
   No. 91 Civ. 1202 (CSH), 1994 WL 132235 (S.D.N.Y. Apr. 14, 1994) ................................8

*In re Direxion Shares ETF Trust*,
   279 F.R.D. 221 (S.D.N.Y. 2012) .................................................................6, 8, 9, 10, 11, 14

*In re ICN/Viratek Secs. Litig.*,
   No. 87 Civ 4296, 1996 WL 164732 (S.D.N.Y. Apr. 9, 1996) ............................................22

*In re IndyMac Mortgage-Backed Secs. Litig.*,
   718 F. Supp. 2d 495 (S.D.N.Y. 2010) .........................................................................9, 10, 11

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   935 F. Supp. 2d 666 (S.D.N.Y. 2013) ............................................................................. *passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11 Civ. 2613 (NRB), 2013 WL 4504769 (S.D.N.Y. Aug. 23, 2013) .............................22

*In re Merrill Lynch Ltd. P'ships Litig.*,
   154 F.3d 56 (2d Cir. 1998) ..................................................................................................20

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Methyl Tertiary Butyl (MTBE) Prods. Liab. Litig.*,
  591 F. Supp. 2d 259 (S.D.N.Y. 2008)......................................................................22

*In re WorldCom Secs. Litig.*,
  496 F.3d 245 (2d Cir. 2007)..................................................................................14

*Koch v. Christie's Int'l PLC*,
  699 F.3d 141 (2d Cir. 2012)..................................................................................20

*Korwek v. Hunt*,
  827 F.2d 874 (2d Cir. 1987)..................................................................................13

*Matana v. Merkin*,
  No. 13 Civ. 1534, 2013 WL 3940825 (S.D.N.Y. July 30, 2013) ...........................14

*Monroe Cnty. Employees' Ret. Sys. v. YPF Sociedad Anonima*,
  No. 13 Civ. 842 (SAS), 2013 WL 5548833 (S.D.N.Y. Oct. 8, 2013) ...............12, 13

*O'Brien* v. *Nat'l Prop. Analysts Partners*,
  719 F. Supp. 222 (S.D.N.Y. 1989).........................................................................20

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000).......................................................................................9

*Shelford v. New York State Teachers Ret. Sys.*,
  889 F. Supp. 81 (E.D.N.Y. 1993) .............................................................................8

*Smith v. Bayer Corp.*,
  131 S. Ct. 2368 (2011)..............................................................................................8

*United States ex rel. Hindin v. N.Y. Lutheran Med. Ctr.*,
  No. 00-CV-7499, 2009 WL 366490 (E.D.N.Y. 2009) .........................................6, 8

*Vincent v. The Money Store*,
  915 F. Supp. 2d 553 (S.D.N.Y. 2013)......................................................................7

**STATUTES**

Commodity Exchange Act, 7 U.S.C. § 1 *et seq.* (2012) ...................................................1

Fed. R. Civ. P. 9(b) ...........................................................................................................1

Fed. R. Civ. P. 12(b)(6).....................................................................................................1

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**OTHER AUTHORITY**

9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2367 (3d ed. 2008) ..................................................................................................................9

Defendant Société Générale ("SG") respectfully submits this memorandum of law in support of its motion to dismiss the Exchange-Based Plaintiffs' (Corrected) Second Amended Consolidated Class Action Complaint ("SAC") pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).

## PRELIMINARY STATEMENT

As shown below, Exchange-Based Plaintiffs fail to state any claim against SG.  The SAC should therefore be dismissed as against SG in its entirety.

*First,* Plaintiffs' Commodity Exchange Act ("CEA") claims against SG are fully time barred.  The reason for this conclusion is simple.  Plaintiffs did not seek leave to add SG as a defendant in this case until May 23, 2013.  That date is more than two years after March 15, 2011, the date Plaintiffs allege they were put on inquiry notice.  Accordingly, Plaintiffs' claims against SG are time barred under the CEA's two-year statute of limitations.

SG was not a defendant in the Exchange-Based Plaintiffs' action at the time of the Court's March 29, 2013 memorandum and order ("March 29 Order") (ECF No. 286) which addressed the application of the CEA's two-year statute of limitations.  In the March 29 Order, the CEA claims of the Exchange-Based Plaintiffs who transacted in Eurodollar futures contracts between August 1, 2007 and May 29, 2008 ("Period 1") were held time barred because articles and other public information gave Plaintiffs inquiry notice by no later than May 29, 2008—more than two years before the first LIBOR complaints were filed.  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 704, 709, 711-12 (S.D.N.Y. 2013) ("*In re LIBOR*") (internal citations and quotations omitted).  The Court noted that Plaintiffs' "Period 2" (May 30, 2008 through April 14, 2009) CEA claims may be time barred, but that it could not yet determine whether inquiry notice had been triggered during that period.  *Id.* at 712.  Finally, the Court found that Plaintiffs' "Period 3" (April 15, 2009 through May 2010) CEA claims were timely as to the Defendants who were then named in the action, because those claims were asserted against those Defendants on

April 15, 2011—within two years of the date on which those Plaintiffs purchased their Eurodollar contracts.  *Id.* at 712.

As Plaintiffs have acknowledged, they deliberately elected not to name SG as a defendant in their First Amended Consolidated Class Action Complaint ("FAC"), filed April 30, 2012, even though SG's participation on the USD LIBOR panel (which began on February 9, 2009) was a matter of public record.  It was not until May 23, 2013—more than two years after March 15, 2011, the date that <u>Plaintiffs</u> say they were on inquiry notice—that the Exchange-Based Plaintiffs sought leave to bring CEA claims against SG.  Thus, the Court need not determine whether Plaintiffs were on inquiry notice in Period 2 or Period 3 in order to dismiss Plaintiffs' CEA claims against SG.  Because Plaintiffs delayed bringing any CEA claims against SG for more than two years after *they say* they had inquiry notice, the law and simple arithmetic bar Plaintiffs' Period 2 and Period 3 claims against SG.

*Second*, Plaintiffs' claims against SG were not tolled by a complaint that had been filed by Jeffrey Laydon on April 27, 2011, which had asserted CEA claims against all USD LIBOR panel banks including SG, but which was voluntarily dismissed when Plaintiffs filed their FAC—which did not assert any claims against SG.  As a threshold matter, the Supreme Court's *American Pipe* decision makes clear that tolling of the limitations period applies, if at all, only to absent class members.  Tolling is thus not available to the named Plaintiffs here.  Because the named Plaintiffs cannot state a claim against SG, this action cannot be maintained.

Moreover, because the *Laydon* action was voluntarily dismissed, the law treats those claims as though they had never been asserted.  Accordingly, the case law establishes that a voluntarily dismissed claim does not toll the limitations period.  Thus, the *Laydon* action did not toll Plaintiffs' CEA claims against SG.  In addition, any application of tolling would contravene

*American Pipe*'s policies that include ensuring essential fairness to defendants. Here, the putative class representatives and their counsel made a conscious decision not to pursue claims against SG when the FAC was filed in April 2012, or at any time during the limitations period. As the courts have recognized, *American Pipe* tolling is not a mechanism for remedying plaintiffs' pleading decisions.

*Third*, even assuming *arguendo* (and contrary to law and fact) that the limitations period was tolled, it would not alter the result in this case. Laydon's complaint asserted claims only on behalf of Plaintiffs who transacted in Eurodollar contracts between January 1, 2006 and *December 31, 2009*. The law is clear that the *Laydon* action cannot provide tolling for unasserted plaintiffs—*i.e.*, Plaintiffs who transacted on or after January 1, 2010. Absent tolling, the CEA claims of Plaintiffs who transacted on or after January 1, 2010 are time barred for the reasons discussed above.

The claims of Plaintiffs who transacted *before* January 1, 2010 are likewise time barred, even assuming *arguendo* that the *Laydon* action provides tolling, because, as shown below, (1) Plaintiffs who transacted before January 1, 2010 were on inquiry notice at the time of their transactions or before, but (2) at best any tolling provided by *Laydon* would render timely only any CEA claims of Plaintiffs who were put on inquiry notice on or after May 20, 2010.[1] Thus,

---

[1] As shown below (*infra*, at 14-21), May 20, 2010 is two years (730 days) before the expiration of the statute of limitations assuming, *arguendo*, that *Laydon* provided tolling. This 730-day period is the combination of: (i) the 388 days that transpired between the dismissal of the *Laydon* action when the FAC was filed (April 30, 2012) and Plaintiffs' motion for leave to assert CEA claims against SG (May 23, 2013); and (ii) the 342 days that transpired prior to the filing of the *Laydon* action (April 27, 2011). Thus, any Plaintiff who was on inquiry notice before May 20, 2010 is time barred even assuming, *arguendo*, that *Laydon* provided tolling. As this Court has held, Plaintiffs who transacted in Period 1 were placed on inquiry notice by May 29, 2008. Because those same named Plaintiffs concede that they also transacted in Periods 2 and 3, they continued to be on inquiry notice for each subsequent transaction. In any event, as shown below, public information existed sufficient to provide similar notice during Periods 2 and 3. Thus, Plaintiffs who transacted before January 1, 2010 were put on inquiry notice well before May 20, 2010 and their CEA claims against SG are therefore time barred.

even assuming *arguendo* that the *Laydon* action provided tolling (and even then only to a small subset of Plaintiffs), no Plaintiff's CEA claim against SG was timely brought.

*Fourth*, in addition to the time bar, Plaintiffs' CEA claims against SG also fail for an independent reason. As Defendants showed in their Motion For Reconsideration of March 29, 2013 Order On Motion to Dismiss (ECF No. 419), Plaintiffs have failed to plead the specific intent element of their CEA claims with the requisite particularity. Those arguments establish yet a further basis for dismissing Plaintiffs' CEA claims against SG.

*Fifth*, the SAC asserts antitrust and unjust enrichment claims against SG. These claims are the same as those previously asserted against the other Defendants and dismissed by the Court in its March 29 Order. As a result, Plaintiffs' antitrust and unjust enrichment claims against SG should be dismissed as well.

For these reasons and the reasons set forth below, SG respectfully requests that the Court dismiss Plaintiffs' claims against SG in their entirety.

## BACKGROUND

Plaintiffs concede that, at the latest, on March 15, 2011 they were put on inquiry notice of potential irregularities concerning the setting of USD LIBOR (SAC ¶¶ 283, 285 (ECF No. 438)). Indeed, within weeks, plaintiffs began filing lawsuits in this and other courts. *In re LIBOR*, 935 F. Supp. 2d at 676.

One such plaintiff, Jeffrey Laydon, filed a class action complaint in the United States District Court for the Northern District of Illinois naming all the USD LIBOR panel banks, including SG, as defendants. *Laydon v. Credit Suisse Grp. AG*, No. 11-cv-02824 (N.D. Ill. Apr.

27, 2011).[2]  Laydon sought to represent a class of persons who transacted in Eurodollar futures contracts on the Chicago Mercantile Exchange ("CME") between January 1, 2006 and December 31, 2009.  *Laydon* Compl. at 2, ¶ 66.  The *Laydon* action—which, until the SAC, was the only one to assert CEA claims against SG for alleged USD LIBOR-related conduct—was transferred to this Court on August 12, 2011.  Transfer Order (ECF No. 1.); *Laydon v. Credit Suisse Grp. AG*, No. 11 Civ. 5638 (S.D.N.Y.).

By Order dated November 29, 2011, the Court appointed Kirby McInerney LLP and Lovell Stewart Halebian Jacobson LLP (collectively, "Lead Counsel") to serve as interim class counsel for the putative class of Exchange-Based Plaintiffs (*i.e.*, all Plaintiffs who allegedly transacted in Eurodollar futures contracts on the CME).  ECF No. 66.  On December 22, 2011, the Court endorsed Pretrial Order No. 1 ("PTO 1") (ECF. No. 90), which, among other things, gave Lead Counsel sole responsibility to coordinate and organize plaintiffs in the conduct of the Exchange-Based Action, (*id.* ¶ 18).  PTO 1 also designated *FTC Capital GmbH v. Credit Suisse Group AG*, Case No. 11 Civ. 2613 as the lead action for the Exchange-Based Plaintiffs.  *Id.* ¶ 12. Laydon's claims, like those of all other Plaintiffs asserting CEA claims, were consolidated with the *FTC Capital* action and were transferred to both the MDL docket (11-MD-2262) and the *FTC Capital* docket.  *Id.* ¶ 13(k).  Upon transfer, the Clerk closed the docket for the *Laydon* action.  *Id.* ¶ 14.

On April 30, 2012, the Exchange-Based Plaintiffs filed the FAC that superseded the *Laydon* complaint, among others.  ECF No. 134.  The FAC did not name SG as a defendant, nor

---

[2]   A copy of the *Laydon* complaint is attached as Exhibit A to the accompanying Declaration of Andrew J. Calica, dated December 13, 2013 ("Calica Decl.").

did it name Laydon as a plaintiff.  As a result, Laydon's claims against SG were voluntarily dismissed.[3]

On May 23, 2013, following the issuance of the March 29 Order dismissing many of Plaintiffs' claims, the Exchange-Based Plaintiffs sought leave to amend their CEA claims.  Notice of Exchange-Based Plaintiffs' Motion for Leave to Amend as to Commodity Exchange Act Claims and File the Second Amended Consolidated Class Action Complaint, dated May 23, 2013 (ECF No. 341).  For the first time, the Exchange-Based Plaintiffs attempted to assert CEA claims against SG.  When the Court subsequently asked Lead Counsel why it had not done so earlier, Lead Counsel acknowledged that although Plaintiffs had considered doing so, they deliberately had elected not to assert claims against SG in the FAC.  *See* Aug. 8, 2013 Hr'g Tr. 84:8-85:6 (ECF No. 387) ("I mean, your Honor, we reconsidered a number of things when we did our [second] amended complaint, and we reached the conclusion that we should have [included SG as a defendant].  It's that simple, we should have included [SG] in the first one."); *id.* at 86:19-87:1 ("We should have put [SG] in, it's true, but in some sense, given all we were tacking on, we made a judgment call not to include [SG].  We should have.").

In its August 23, 2013 memorandum and order ("August 23 Order") (ECF No. 389), the Court granted Plaintiffs leave to add SG as a defendant, and on September 16, 2013, Plaintiffs filed their SAC (ECF No. 438).  The SAC alleges a Class Period of August 2007 to May 2010 (SAC ¶ 1).  On October 15, 2013, the Court granted SG leave to file this motion to dismiss.  ECF No. 465.

---

[3]  *See, e.g.*, *In re Direxion Shares ETF Trust*, 279 F.R.D. 221, 236 (S.D.N.Y. 2012); *United States ex rel. Hindin v. N.Y. Lutheran Med. Ctr.*, No. 00-CV-7499, 2009 WL 366490, at *1 (E.D.N.Y. 2009).

## ARGUMENT

### I.     PLAINTIFFS' CEA CLAIMS AGAINST SG ARE TIME BARRED

To be timely, Plaintiffs must have asserted their CEA claims against SG within two years of the date on which they had inquiry notice.  *See In re LIBOR*, 935 F. Supp. 2d at 697 ("A claim pursuant to the CEA must be brought 'not later than two years after the date the cause of action arises.' 7 U.S.C. § 25(c)"); *id.* (holding that the CEA incorporates a "discovery accrual rule wherein discovery of the injury, not discovery of the other elements of a claim, is what starts the clock.") (internal quotation and citation omitted).  Plaintiffs concede that they were on inquiry notice of their claims by no later than March 15, 2011 (SAC ¶¶ 273, 283, 285), but they did not seek to assert claims against SG until May 23, 2013—more than two years later.  *See* ECF No. 341.  As a result, Plaintiffs' CEA claims against SG are barred by the CEA's two-year statute of limitations.

### II.     THE *LAYDON* ACTION DID NOT TOLL THE STATUTE OF LIMITATIONS

In an effort to avoid dismissal, Plaintiffs may try to argue that, while it was pending, the *Laydon* action tolled the statute of limitations on Plaintiffs' claims against SG.  As shown below: (i) named Plaintiffs are not eligible for tolling; (ii) Plaintiffs are, in any event, not entitled to tolling because they voluntarily dismissed the *Laydon* action; and (iii) application of tolling here would contravene the polices underlying *American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974).

#### A.     *American Pipe* Tolling Does Not Apply To Named Plaintiffs

As an initial matter, tolling is inapplicable to the named Plaintiffs.  *See Vincent v. The Money Store*, 915 F. Supp. 2d 553, 560-61 (S.D.N.Y. 2013) (holding that *American Pipe* tolling is only available, if at all, to claims by unnamed putative class members, and is inapplicable to claims asserted by named plaintiffs).  *American Pipe*'s holding and rationale was directed to

absent class members.  *Cf. Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2380 n. 10 (2011) ("[*American Pipe*] demonstrate[s] only that a person *not a party* to a class suit may receive certain benefits (such as the tolling of a limitations period) related to that proceeding.") (emphasis added).  Here, it is the named Plaintiffs—the same Plaintiffs who deliberately elected not to assert CEA claims against SG when *Laydon* was voluntarily dismissed by the filing of the FAC (or at any time prior to May 23, 2013)—who seek to assert claims against SG after the limitations period has expired.  No tolling is available to the named Plaintiffs and their claims are therefore time barred.

The cases establish that if the named plaintiffs in a putative class action are time barred, then the action cannot be maintained.  *See, e.g.*, *Hall Special Situations Inv. Fund v. Basix Corp.*, No. 91 Civ. 1202 (CSH), 1994 WL 132235, at *2 (S.D.N.Y. Apr. 14, 1994) ("Plaintiff's claim on its own behalf is clearly time barred.  Where the named plaintiff in a class action suit fails to state a claim upon which relief could be granted, the complaint must be dismissed."); *Shelford v. New York State Teachers Ret. Sys.*, 889 F. Supp. 81, 89 (E.D.N.Y. 1993) (dismissing putative class action complaint because the named plaintiffs' claims were time barred).

## B.   Plaintiffs Are Not Entitled To Tolling Because They Voluntarily Dismissed The *Laydon* Action

Further, because the *Laydon* action was voluntarily dismissed, it did not toll any Plaintiffs' statute of limitations against SG.  After the *Laydon* action was consolidated with the Exchange-Based Plaintiffs' Action, Mr. Laydon was not named as a party in the FAC and his claims against SG were dismissed when the FAC, which did not assert claims against SG, superseded his pleading.  *See In re Direxion Shares ETF Trust*, 279 F.R.D. 221, 236 (S.D.N.Y. 2012) ("Because [plaintiff] Salach is no longer named in the SAC, his claims were voluntarily dismissed when the SAC superseded the Amended Complaint"); *see also United States ex rel. Hindin v. N.Y. Lutheran Med. Ctr.*, No. 00-CV-7499, 2009 WL 366490, at *1 (E.D.N.Y. 2009) (stating that a defendant

8

may be voluntarily dismissed by virtue of an amended pleading that drops the defendant as a party).

The law is clear that a claim that is voluntarily dismissed is treated as if it had never been filed. *See, e.g.*, *In re IndyMac Mortgage-Backed Secs. Litig.*, 718 F. Supp. 2d 495, 503-05 (S.D.N.Y. 2010) (The "law treats a voluntarily dismissed [claim] as if it had never been filed."); *A.B. Dick Co. v. Marr*, 197 F. 2d 498, 502 (2d Cir. 1952); 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2367 (3d ed. 2008) (stating that a voluntary dismissal "leaves the situation as if the action never had been filed"). Accordingly, a voluntarily dismissed claim does not toll the statute of limitations. *See Elgendy v. City of New York*, No. 99 CIV. 5196 (JGK), 2000 WL 1119080, at *5 (S.D.N.Y. Aug. 7, 2000) (holding that "when an action is voluntarily dismissed, a party cannot deduct from the statute of limitations the time during which the action was pending"); *In re Direxion*, 279 F.R.D. at 236; *In re IndyMac*, 718 F. Supp. 2d at 504; Wright & Miller, *supra*, § 2367. Thus, the brief existence of Mr. Laydon's claims against SG does not toll the statute of limitations applicable to Plaintiffs' claims. Therefore, the only date relevant to determining the timeliness of Plaintiffs' claims is May 23, 2013, the date on which they sought leave to add SG as a defendant.[4] Because May 23, 2013 is more than two years after the date on which Plaintiffs assert they were on inquiry notice (March 15, 2011), their claims against SG are time barred.

*In re IndyMac* is illustrative. That case involved securities class action claims arising from the collapse of the United States residential mortgage market and its impact on one type of mortgage-backed security. *See* 718 F. Supp. 2d at 498. A putative class action complaint was

---

[4]  *See Rothman v. Gregor*, 220 F.3d 81, 96 (2d Cir. 2000) ("When a plaintiff seeks to add a new defendant to an existing action, the date of the filing of the motion to amend constitutes the date the action was commenced for the statute of limitations purposes.") (citation omitted).

filed on January 21, 2009 by IBEW Local 103, but later was voluntarily dismissed.  *See id.* at 503-04.  The entities who were later designated lead plaintiffs, the Wyoming State Treasurer and the Wyoming Retirement System, commenced a separate class action on May 14, 2009.  *See id.*  In their motion to dismiss on statute of limitations grounds, defendants argued that plaintiffs could not use the prior IBEW complaint to invoke tolling under *American Pipe* because the IBEW complaint had been dismissed voluntarily.  Judge Kaplan agreed, holding that the well-established rule that a voluntarily dismissed complaint does not toll the statute of limitations applies equally in the class action context.  *See id.* at 504.  Accordingly, the *IndyMac* court held that May 14, 2009, the date the second class action complaint was filed, was the operative date for measuring the statute of limitations.  *Id.* at 505.

In re Direxion is likewise instructive.  *See* 279 F.R.D. at 224-28.  That case involved claims brought by purchasers of shares in certain exchange-traded funds ("ETFs"), including, in the First Amended Complaint, purchasers of shares of one such ETF, "Large Cap Bear 3X ETF," known by the ticker symbol BGZ.  *See id.* at 225.  When the Second Amended Complaint was filed, however, none of the named plaintiffs was a BGZ purchaser.  A putative plaintiff, Booth, thereafter sought to intervene as a named plaintiff for BGZ purchasers.  *See id.* at 234.  Booth argued that his claims were timely because, in the First Amended Complaint, a previous plaintiff, Salach, had alleged that he purchased shares in the BGZ fund.  *See id.* at 236.  Judge Forrest disagreed, holding that "[b]ecause Salach [was] no longer named in the [Second Amended Complaint], his claims were voluntarily dismissed when the [Second Amended Complaint] superseded the [First] Amended Complaint."  *Id.*  Citing *In re IndyMac*, the court stated that "a voluntarily dismissed [claim] does not toll the statute of limitations."  *Id.*  As a result, Judge

Forrest held that the timeliness of Booth's claims would be judged against the date that plaintiffs filed the Second Amended Complaint.  *See id.*

As *In re IndyMac* and *In re Direxion* demonstrate, a voluntarily dismissed claim, such as the *Laydon* action, does not toll the statute of limitations.  Because Plaintiffs' motion for leave to add SG as a defendant was brought more than two years after Plaintiffs assert they were placed on inquiry notice, their CEA claims against SG are time barred.

C.     **Any Tolling of the Statute of Limitations Would Contravene The Policies Underlying *American Pipe***

In addition, use of the *Laydon* action to toll the statute of limitations would contravene the policies underlying *American Pipe*.  An application of tolling here would undermine the important policy of ensuring essential fairness to defendants, a policy that requires plaintiffs to place each defendant on notice during the limitations period of the claims against it and the size and scope of the prospective litigation.  *See American Pipe*, 414 U.S. at 553-55 (holding that plaintiffs must provide "the essential information necessary [for the defendant] to determine both the subject matter and the size of a prospective litigation" during the limitations period).

Here, the message to SG from Plaintiffs' decision was unmistakable—Plaintiffs' election put SG on notice that it was <u>not</u> going to encounter claims by the Exchange-Based Plaintiffs.  *See American Pipe*, 414 U.S. at 554 ("The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.") (citation omitted).  Plaintiffs may wish they had made a different choice, but that does not provide grounds for upsetting the careful balance struck by the Supreme Court.

The class representatives and Lead Counsel's election not to pursue claims against SG was a conscious one:

> "I don't know if you want to belabor it, but these are the two figures, HBOS, and you see what we call the suppression during this period, and then you see Societe Generale.  So, the period of suppression at the time we were filing the first amended complaint, the heart of it, we considered that.  We should have put [SG] in, it's true, but in some sense, given all we were tacking on, we made a judgment call not to include [SG].  We should have."

Aug. 8, 2013 Hr'g Tr. 86:19-87:1 (ECF No. 387).  That election was made in the face of all the information necessary to evaluate a claim against SG.  As the Court recognized in its March 29 Order, the membership of the USD LIBOR panel, the quote each bank on the panel submitted, and the method by which LIBOR was calculated were all matters of public record.  "Plaintiffs, that is, knew which banks affected the final LIBOR fixes and precisely how they affected those fixes."  *In re LIBOR*, 935 F. Supp. 2d at 707.  Plaintiffs do not contend otherwise:

> The Court:   But I still don't understand why they [SG] weren't joined in the first place.
>
> Mr. Kovel:   I mean, your Honor, we reconsidered a number of things when we did our [second] amended complaint, and we reached the conclusion that we should have [included SG as a defendant].  It's that simple, we should have included [SG] in the first one.

Aug. 8, 2013 Hr'g Tr. 84:8-85:6.

A recent decision, *Monroe County Employees' Retirement System v. YPF Sociedad Anonima,* No. 13 Civ. 842 (SAS), 2013 WL 5548833 (S.D.N.Y. Oct. 8, 2013), does not change the result.  Indeed, the distinctions between that case and the situation here underscore the policy reasons for the inapplicability of tolling in this case.  In *Monroe County*, plaintiff-intervenors argued that the original complaint tolled claims that were dismissed when an amended complaint was filed.  *See* 2013 WL 5548833, at *1.  Judge Scheindlin held that the original complaint tolled the statute of limitations for the unnamed class members who later sought to intervene.  *See id.* at *3.

*Monroe County* is readily distinguishable.  That case involved claims by proposed new class representatives seeking to reassert claims that other plaintiffs had dismissed.  By contrast, here, it is the *same* Plaintiffs who made the decision not to assert claims against SG in the FAC but who nonetheless seek tolling.  Unlike the new plaintiffs in *Monroe County*, the Plaintiffs here do not merit the equitable remedy of tolling to overcome a pleading decision made by others.

*Monroe County* is also distinguishable on a ground that is at the heart of *American Pipe*'s policy favoring the right of defendants to be placed on notice of the claims against them.  Unlike the plaintiffs in *Monroe County*, who had always asserted some form of claim against each of the defendants, the Exchange-Based Plaintiffs affirmatively abandoned any claims against SG, only attempting to revive those claims after the statute of limitations had run.  As the Second Circuit emphasized in *Giovaniello v. ALM Media, LLC*, 726 F.3d 106, 119 (2d Cir. 2013), "*American Pipe* and *Crown, Cork* represent a careful balancing of the interests of plaintiffs, defendants, and the court system." (internal citations and quotations omitted).  The Second Circuit recognized that *American Pipe* is not a panacea for plaintiffs to use as a remedy for their own pleading decisions. *See Giovaniello*, 726 F. 3d at 119 ("*American Pipe* tolling is an exception to the operation of an applicable statute of limitations. . . ." and "[s]ome members of the Supreme Court have expressed concern that *American Pipe* tolling might be abused."); *Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir. 1987) (declining to extend *American Pipe* tolling to subsequently-filed class actions because to do so would extend the doctrine "beyond its carefully crafted parameters into the range of abusive options.")

For all of these reasons, the *Laydon* action did not toll Plaintiffs' claims against SG.

## III.   EVEN IF THE *LAYDON* ACTION TOLLED PLAINTIFFS' CEA CLAIMS, THOSE CLAIMS ARE STILL TIME BARRED

Even assuming *arguendo*, and contrary to law and fact, that tolling by the *Laydon* action is available, Plaintiffs' CEA claims against SG are still time barred.  The putative class period in *Laydon* ended on December 31, 2009.  The case law is clear that *American Pipe* tolls claims, if at all, only for "asserted" members of the putative class.  *See American Pipe*, 414 U.S. at 554.  Thus, the *Laydon* action does not help Plaintiffs who transacted on or after January 1, 2010.[5]  As discussed, those Plaintiffs' CEA claims are time barred because they were not asserted within two years from the date Plaintiffs' allege they were put on inquiry notice.

Likewise, the claims of Plaintiffs who transacted *before* January 1, 2010 are time barred, even assuming *arguendo* that the *Laydon* action provided tolling.  As discussed below, Plaintiffs were on inquiry notice no later than May 29, 2008 and continued to be on notice for each of their subsequent transactions in Periods 2 and 3.  In any event, as shown below, *see infra*, at 16-19, public information existed sufficient to provide similar inquiry notice during Periods 2 and 3.  Consequently, Plaintiffs who transacted before January 1, 2010 were on inquiry notice at the time

---

[5]  Plaintiffs who transacted in Eurodollar futures contracts on or after January 1, 2010 (the first day following the end of the *Laydon* putative class period) were never "asserted" members of the *Laydon* putative class, which purported to include those who transacted in Eurodollar futures contracts between January 1, 2006 and December 31, 2009. *Laydon* Compl. ¶ 66 (emphasis added).  As a result, the statute of limitations applicable to those Plaintiffs' claims was never tolled.  *See Arneil v. Ramsey*, 414 F. Supp. 334, 340 (S.D.N.Y. 1976) (holding that *American Pipe* tolling did not apply to an attorney or to the manager of an apple orchard who were not asserted members of a class that was limited to a stockbroker's employees), *aff'd*, 550 F.2d 774 (2d Cir. 1977), *overruled on other grounds*, *In re WorldCom Secs. Litig.*, 496 F.3d 245 (2d Cir. 2007); *Matana v. Merkin*, No. 13 Civ. 1534, 2013 WL 3940825, at *9 (S.D.N.Y. July 30, 2013) (holding that a putative class action complaint did not toll plaintiff's claims because, "[Plaintiff] was not a member of the putative class: [plaintiff] invested in Ascot Fund Limited. . . whereas the Merkin class action was brought on behalf of investors in Ascot Partners, Gabriel Fund, and Ariel Fund, but *not* Ascot Fund") (emphasis in original); *In re Direxion*, 279 F.R.D. at 237 (holding that a purchaser in one ETF, known by the ticker symbol BGZ, was not entitled to *American Pipe* tolling because the purchaser was not an asserted member of a putative class that was limited to purchasers in different ETFs, known by the ticker symbols FAZ and ERY); *380544 Canada, Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 215-16 (S.D.N.Y. 2008) (holding that *American Pipe* did not toll the claims of two putative plaintiffs, who were officers of the defendant-corporation, because the alleged class explicitly excluded officers of the corporation from its definition).  Because no Plaintiff who purchased contracts on or after January 1, 2010 sought to assert claims against SG until May 23, 2013—more than two years after March 15, 2011, the date Plaintiffs allege they were first put on inquiry notice—their claims are time barred.

of their trades, if not before.  As demonstrated *supra*, at 3-4, at best any tolling provided by the *Laydon* action would render timely only any CEA claims of Plaintiffs who were put on notice *after* May 20, 2010.[6]  Thus, because Plaintiffs who transacted before January 1, 2010 were on inquiry notice well before May 20, 2010, their claims are time barred regardless of any purported tolling provided by the *Laydon* action.

**A.** **Plaintiffs' Period 2 and Period 3 CEA Claims Against SG Are Time Barred**[7]

This Court has already held that Plaintiffs who purchased contracts in Period 1 (August 2007 through May 29, 2008) were on inquiry notice by no later than May 29, 2008.  Accordingly, all named Plaintiffs—each of whom alleges that it traded throughout the class period and none of whom alleges it traded only during Period 3—have been on inquiry notice since May 29, 2008.  *In re LIBOR*, 935 F. Supp. 2d at 738-39.  None of the named Plaintiffs alleges that it transacted only during Period 3 and each named Plaintiff alleges that it traded during both Periods 1 and 2.  *See* Decl. of David E. Kovel in Support of the Exchange-Based Plaintiffs' Mot. for Recons. ¶¶ 3-8 (Sept. 6, 2013) (ECF. No. 398); SAC ¶ 27; Aug. 8, 2013 Hr'g Tr. 105:9-11 (ECF No. 387: available after 11/25/2013) ("[T]here are seven plaintiffs.  We allege that generally all of them

---

[6]  As the figure below illustrates, Plaintiffs who transacted before January 1, 2010 are time barred, even assuming *arguendo* that the *Laydon* action provided tolling, because they were put on inquiry notice before May 20, 2010.



[7]  Plaintiffs' Period 1 CEA claims have already been held to be time barred.  *See supra*, at 1.

have traded in those different periods."). As the Court has recognized, those Plaintiffs who purchased during Period 2 could not "wipe their mind clean and become a blank slate . . . as if they didn't know what happened in period one." Aug. 8, 2013 Hr'g Tr. 105:15-21. The same is true for the named Plaintiffs' Period 3 transactions.

Thus, Plaintiffs' claims against SG are time barred, irrespective of any purported tolling, because each Plaintiff was on inquiry notice by no later than May 29, 2008 and remained on inquiry notice in connection with each of its subsequent purchases. Because the last of those subsequent purchases for which there is purported tolling occurred on December 31, 2009, the Plaintiffs were on inquiry notice before May 20, 2010 and their claims are time barred.

**B.** **Plaintiffs' Period 2 CEA Claims Against SG Are Time Barred For Additional Reasons**

Defendants demonstrated in their Renewed Motion to Dismiss The Exchange-Based Plaintiffs' Period 2 CEA Claims that Plaintiffs' Period 2 CEA claims are time barred. (Mem. of Law in Supp. of Defs.' Renewed Mot. To Dismiss the Exchange-Based Pls.' Period 2 Claims, ECF No. 454; Reply Mem. of Law in Further Supp. of Defs.' Renewed Mot. To Dismiss the Exchange-Based Pls.' Period 2 Claims, ECF No. 494). There, Defendants showed that news reports and other public information placed Plaintiffs on continued inquiry notice during Period 2. SG fully incorporates by reference Defendants' arguments in support of that Motion. For those reasons as well, Plaintiffs' Period 2 CEA claims against SG fail.

**C.** **Plaintiffs' Period 3 CEA Claims Against SG Are Time Barred For Additional Reasons**

1.   **All Named Plaintiffs Were On Inquiry Notice Prior To The Start of Period 3**

In their opposition to Defendants' Period 2 CEA Motion, Plaintiffs assert, for the first time, that certain "individual funds"—which are not named parties—supposedly assigned their claims to a named Plaintiff and that those funds had only begun transacting in Period 2. *See* Period 2 Opp.

at 22.  Even if those new unpleaded assertions could be recognized—and they cannot (Period 2 Reply Br. at 4-5)—any putative plaintiff who may have first transacted in Period 2 and continued purchasing contracts in Period 3 would have been on inquiry notice before the start of Period 3 (April 15, 2009) by virtue of the flood of articles published in Period 2.  *See* Period 2 Mov. Br. at 5-9; Declaration of Matthew J. Porpora, dated September 20, 2013 (ECF No. 455) (attaching articles).

Equally unavailing is Plaintiffs' argument that notwithstanding their inquiry notice during prior Periods, Plaintiffs cannot be charged with inquiry notice in Period 3 because "no one suspects that a company will continue to engage in wrongdoing after it has come under public scrutiny, and Defendants here claim that the market was well aware of their [alleged] LIBOR manipulation by the end of Period 1."  Period 2 Opp. at 23.  As Defendants have demonstrated, this argument is unsupported by the case law.  *See* Period 2 Reply Br. at 5.

Indeed, Plaintiffs' argument would invert the entire principle of inquiry notice.  In effect, Plaintiffs argue that public reports about alleged misconduct *negate* inquiry notice.  Plaintiffs offer no authority for such a strange contention.  Plaintiffs were therefore on inquiry notice as of May 29, 2008 and certainly no later than April 14, 2009, the last day of Period 2.  Both of those dates are well prior to May 20, 2010.  Plaintiffs' claims are therefore time barred regardless of any purported tolling by the *Laydon* action.  *See supra*, at 3-4.

2.      Plaintiffs Who Purchased Contracts During Period 3 Were Placed On
        Inquiry Notice Before May 20, 2010 For Additional Reasons

Notice continued during Period 3.  Indeed, the SAC relies heavily on a study (*see* SAC ¶¶ 134-146) conducted by economists Snider and Youle at UCLA and the University of Minnesota, published in April 2010, that concluded that "LIBOR did not accurately reflect average bank borrowing costs" and that "quotes provided by USD-LIBOR panel banks in fact deviated from

17

their costs of borrowing as reflected in CDS spreads."  SAC ¶ 134.[8]  The issues that the SAC

claims were raised by Snider and Youle in April 2010 were based on public information that the

Plaintiffs likewise could have reviewed.  Thus, Plaintiffs were on inquiry notice before May 20,

2010.[9]

     For example, Plaintiffs use Snider and Youle to support the alleged discrepancy between

LIBOR rates and default insurance costs—which Plaintiffs allege evidences suppression—detailed

in the May 29, 2008 *Wall Street Journal* article.  *See* SAC ¶¶ 134; 143.  Supposedly based on the

comments of Snider and Youle, the SAC also alleges that the discrepancy between certain panel

banks' submissions and their CDS spreads purportedly evidences clear "underreport[ing]" of

borrowing costs to the BBA.  SAC ¶ 136.  As this Court has recognized, it was feasible for

Plaintiffs to have performed the same analysis—including during Period 3—based on public

---

[8]  Connan Snider and Thomas Youle, *Does the LIBOR reflect banks' borrowing costs?* (Apr. 2, 2010), Calica Decl. Ex. B.

[9]  As in prior periods, articles and other reports published during Period 3 (before May 20, 2010) continued to raise questions about the accuracy of LIBOR.  *See, e.g.*, *Market Disruption Events*, Mondaq, Apr. 23, 2009, *available at* 2009 WLNR 7602211 (noting that banks have had to amend debt agreements to a different benchmark rate with borrowers but hope to return to a LIBOR-based approach "in the hope that LIBOR would again become representative of their lender's cost of funds in the inter-bank market.") (Calica Decl. Ex. C); *Libor rates hit record low below 1 per cent*, Independent (London), May 6, 2009 (highlighting the ongoing divergence between LIBOR and OIS from its historical average: "The interbank cost of borrowing three-month dollars fell below 1 per cent for the first time yesterday, . . . with the three-month dollar Libor/OIS spread contracting to 79 basis points . . . .") (Calica Decl. Ex. D); Gavin Finch and Anna Rascouet, *Lowest Libor Hides 'Exceptionally Wide' Spreads Between Banks*, Bloomberg, May 25, 2009 (highlighting the ongoing divergence between LIBOR and OIS from its historical average: "Libor-OIS, which indicates banks' reluctance to lend, fell to 0.45 percentage point last week, the lowest level since February 2008. Still, futures indicate the measure is about two years away from shrinking to 0.25 percentage point. That's the level former Fed Chairman Alan Greenspan has said would be considered 'normal.'") (Calica Decl. Ex. E); David Oakley & Michael Mackenzie, *Fall in Libor Fails to Paint a True Picture*, Fin. Times, June 3, 2009, *available at* http://www.ft.com/cms/s/0/22478a70-5061-11de-9530-00144feabdc0.html ("[A]nalysts and bankers warn that Libor rates may not be telling the full story. That is because there are wide differences between the rates at which individual banks can borrow. . . . Steven Major, head of global fixed income at HSBC, says: "Libor is very misleading. The published levels may be very low compared with recent history, but in reality I am not convinced much volume is going through beyond the one-month maturity.  Furthermore, if institutions want to fix their debt over a longer term they have to pay enormous rates to do so.") (Calica Decl. Ex. F); Shannon D. Harrington and Liz Capo McCormick, *Libor Daily Survey May Include Larger Number of Banks*, Bloomberg, June 19, 2009 (quoting an interest-rate strategist's description of participation on the LIBOR panel: "It just brings scrutiny on you. If you put in a high fixing people are saying you're having problems. If you put in a low fixing people are saying that you're trying to distort the fixing.") (Calica Decl. Ex. G).

information then available to them.  *In re LIBOR*, 935 F. Supp. 2d at 706-07 ("[P]laintiffs could have compared the submissions to the bank's cost of default insurance – a comparison that, to some extent, had already been performed and published in the May 29, 2008, *Wall Street Journal* article.").

Referencing the observations by Snider and Youle, Plaintiffs further allege that "bunching around the fourth-lowest rate suggests that Defendants collectively depressed LIBOR by reporting the lowest possible rates that would not be excluded from the calculation of LIBOR on a given day."  SAC ¶ 138; *see also id.* ¶ 146 ("Given the method by which the BBA calculates LIBOR . . . that strong concentration around the fourth-lowest rate is exactly what would occur if a number of banks sought in concert to depress LIBOR.").  Again, Plaintiffs could have conducted a similar analysis using public information concerning rates submitted to the BBA.  *See In re LIBOR*, 935 F. Supp. 2d at 706-07.

Replicating a form of analysis that had been publicized before Period 3, Plaintiffs also allege that the spread between the Federal Reserve Eurodollar Deposit Rate and LIBOR (the "Eurodollar Spread") "strongly supports that Defendants suppressed their LIBOR quotes and colluded to suppress reported LIBOR rates."  SAC ¶ 81.  Based on information that was publicly available in Period 3, the SAC then uses the Eurodollar Spread to allege that LIBOR was on average suppressed on by 38 basis points between October 1, 2008 and May 17, 2010.  SAC ¶ 97.  Again, nothing prevented Plaintiffs from using this public information to conduct a similar analysis during Period 3.

In short, Plaintiffs had more than sufficient publicly available information to trigger inquiry notice prior to May 20, 2010.

## IV.   PLAINTIFFS FAIL TO ADEQUATELY ALLEGE TOLLING BY FRAUDULENT CONCEALMENT

Just as Plaintiffs failed to demonstrate concealment arising in Period 2 (*see* Period 2 Mov. Br. at 15-16)—or in Period 1, *In re LIBOR*, 935 F. Supp. 2d at 710-11—the SAC similarly fails to allege with particularity that the statute of limitations should be tolled during Period 3.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (citations omitted); *In re LIBOR*, 935 F. Supp. 2d at 710-11.  The alleged conduct at issue was not inherently self-concealing, because "a person of ordinary intelligence could have reviewed the submitted quotes along with the numerous articles analyzing those quotes and explaining why they were likely artificial."  *In re LIBOR*, 935 F. Supp. 2d at 710-11.  Moreover, Plaintiffs' conclusory allegation that the Defendants took "affirmative steps" to conceal their misconduct does not set forth *any* facts as to SG, much less does it satisfy the requisite particularity or specificity.  SAC ¶¶ 427-28; *O'Brien* v. *Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 232 (S.D.N.Y. 1989); *Bingham* v. *Zolt*, 683 F. Supp. 965, 975 (S.D.N.Y. 1988).

Further, Plaintiffs do not allege that they undertook any investigation into their claims during Period 3 or at any other time.  *See* SAC ¶¶ 283-428; Aug. 8, 2013 Hr'g Tr. 87:6-110:21; *see generally* Period 2 Opp. at 22-24.  Plaintiffs' inaction dooms any fraudulent concealment argument.  *See Koch*, 699 F.3d at 157 ("Reasonable diligence is a prerequisite to the applicability of equitable tolling."); *In re LIBOR*, 935 F. Supp. 2d at 710-11 (stating that plaintiff's ignorance of his claim cannot be the result of a lack of due diligence).

Indeed, courts require specific details of any investigations that plaintiffs undertook.  *See In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998) (granting dismissal when plaintiff made "no allegation of any specific inquiries . . . let alone detail when such inquiries were

20

made, to whom, regarding what, and with what response").  Here, Plaintiffs have made no such allegations.

## V.  PLAINTIFFS' CEA CLAIMS SHOULD BE DISMISSED FOR FAILURE TO ADEQUATELY PLEAD SPECIFIC INTENT

Pursuant to the Court's August 23 Order, Defendants filed a Motion For Reconsideration of March 29, 2013 Order On Motion To Dismiss, directed to Plaintiff's failure to plead the specific intent element of their CEA claims with the requisite particularity.  SG joined that motion to the extent the Court deems that the motion is directed to the SAC.  ECF No. 419, p.13 n.11. Defendants' arguments, which SG fully incorporates by reference, establish an additional basis for dismissing Plaintiffs' CEA claims against SG.

## VI.  PLAINTIFFS' OTHER CLAIMS AGAINST SG SHOULD ALSO BE DISMISSED

### A.  Plaintiffs' Antitrust And Unjust Enrichment Claims

The Court has already dismissed Plaintiffs' antitrust and unjust enrichment claims as against the other Defendants.  ECF Nos. 286 and 389.  The SAC draws no distinction between SG and the other Defendants with regard to those claims.  Thus, those claims should be dismissed as against SG for the reasons stated in the Court's March 29 and August 23 Orders.

### B.  Pre-February 2009 CEA Claims

It is not clear from the face of the SAC whether Plaintiffs assert any CEA claims against SG in connection with purchases made before February 9, 2009, the date on which SG is alleged to have joined the BBA's USD LIBOR panel.  *Compare* SAC ¶ 55, n.14 (alleging that SG participated in suppression of LIBOR "subsequent[ ]" to joining the BBA's LIBOR panel on February 9, 2009), *with id.* ¶¶ 45, 523-33 (Second Claim for Relief—asserting a CEA claim against "All Panel Bank Defendants" for the period January 2005 through August 2007). Regardless, any pre-February 2009 CEA claims would fail as to SG.

The Court has already held that Plaintiffs' CEA claims for nearly the entirety of the pre-February 2009 period—*i.e.*, the Period 1 (August 2007 through May 29, 2008) claims are time barred.  *In re LIBOR*, 935 F. Supp. 2d at 738-39.  In any event, claims regarding any period prior to February 9, 2009 would fail as against SG for the obvious reason that Plaintiffs do not, and cannot, allege that SG had any involvement in (or control over) the setting of USD LIBOR during that time.  *See, e.g.*, SAC ¶ 457; *In re LIBOR*, 935 F. Supp. 2d at 715 (discussing Plaintiffs' allegation that Defendants had the ability to influence LIBOR through submission of daily quotes to the BBA); *In re Methyl Tertiary Butyl (MTBE) Prods. Liab. Litig.*, 591 F. Supp. 2d 259, 279 (S.D.N.Y. 2008) (concluding that defendants may not be held liable for well contamination that occurred before they entered the market for gasoline additives); *In re ICN/Viratek Secs. Litig.*, No. 87 Civ. 4296, 1996 WL 164732, at *13 n.4 (S.D.N.Y. Apr. 9, 1996) (dismissing putative class action claims against defendant that concerned statements made prior to the date when he became Viratek's president).  Thus, to the extent Plaintiffs are asserting such claims against SG, those claims should likewise be dismissed.[10]

---

[10]  In its August 23 2013 Order, the Court denied Plaintiffs' motion for leave to assert CEA claims based on alleged "day-to-day, trading-based manipulation."  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Civ. 2613 (NRB), 2013 WL 4504769, at *13 (S.D.N.Y. Aug. 23, 2013).  Despite the Order, Plaintiffs' SAC includes allegations of such conduct, purportedly beginning in August 2007 (18 months before SG is alleged to have joined the USD LIBOR panel), as part of its first claim for relief.  *See* SAC ¶¶ 512-522.  The Court has stayed a decision on the permissible content of the SAC until resolution of the pending motions addressed to the complaints. ECF No. 452.  SG reserves its right to seek to challenge the propriety and sufficiency of such unsanctioned allegations, should it become necessary to do so.

## **CONCLUSION**

For the reasons set forth above, SG respectfully requests that the Court grant SG's motion to dismiss the SAC against SG in its entirety and with prejudice.

Dated:          New York, New York
                December 13, 2013

                                        */s/* Steven Wolowitz
                                        Steven Wolowitz
                                        Henninger S. Bullock
                                        Andrew J. Calica
                                        MAYER BROWN LLP
                                        1675 Broadway
                                        New York, New York  10019
                                        Telephone: (212) 506-2500
                                        Fax: (212) 262-1910
                                        swolowitz@mayerbrown.com
                                        hbullock@mayerbrown.com
                                        acalica@mayerbrown.com

                                        *Attorneys for Defendant Société Générale*