**Lieff**
**Cabraser**
**Heimann**&
**Bernstein**

Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
t 212.355.9500
f 212.355.9592

August 20, 2014

Steven E. Fineman
Managing Partner
sfineman@lchb.com

**VIA ECF AND HAND DELIVERY**

The Honorable Naomi Reice Buchwald
United States District Judge
500 Pearl Street
New York, NY 10007

RE:     *In re LIBOR-Based Financial Instruments Antitrust Litigation,*
        Master File No. 1:11-md-2262-NRB; Case Nos. 13-cv-7005, 14-cv-3094

Dear Judge Buchwald:

We write on behalf of the Schwab plaintiffs (collectively, "Schwab") and plaintiff Bay Area Toll Authority ("BATA," and with Schwab, "Plaintiffs") in response to Defendants' August 13, 2014 letters regarding their anticipated motions to dismiss. Plaintiffs agree that full briefing will ultimately be warranted to address Defendants' numerous arguments. Further, as discussed in a separate letter being filed today on behalf of all "direct action" plaintiffs, Schwab and BATA intend to amend their Complaints as of right. While Plaintiffs dispute that any of their claims are deficient, those amendments may obviate, at least to some extent, Defendants' motions. Accordingly, rather than provide a point-by-point rebuttal to Defendants' letters, we summarize here Plaintiffs' initial responses to Defendants' primary arguments.[1]

## I.     **Procedural Background**

In August 2011, Schwab filed three substantively identical non-class actions in the Northern District of California (the "Initial Schwab Actions"), asserting claims arising from Defendants' unlawful suppression of U.S.-Dollar LIBOR during the period August 2007 to May 2010. In September 2011, those cases were transferred to this Court for pretrial purposes in accordance with 28 U.S.C. § 1407 (Nos. 11-cv-6409, 11-cv-6411, and 11-cv-6412). The operative complaints, filed on April 30, 2012, included claims against Defendants for violations of the Sherman Act, RICO, and California's Cartwright Act, as well as claims under California common law for interference with economic advantage, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. By its Order of March 29, 2013, the Court, *inter alia*, dismissed Schwab's antitrust and RICO claims with prejudice and declined to exercise supplemental jurisdiction over Schwab's common-law claims. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 685-95, 724-36 (S.D.N.Y. 2013) ("*LIBOR I*").

Following the Court's ruling, Schwab filed its present action in San Francisco Superior Court on April 29, 2013 (the "Schwab California Action").[2] The Complaint includes (i) claims

---

[1] Plaintiffs reserve their right to raise additional arguments in opposing Defendants' motions.

[2] Schwab also filed a notice of appeal with respect to its antitrust and RICO claims, but the Second Circuit *sua sponte* dismissed the appeal for lack of appellate jurisdiction, reasoning that this Court's order was not "final" under

*Footnote continued on next page*

The Honorable Naomi Reice Buchwald
August 20, 2014
Page 2

over which this Court declined to exercise supplemental jurisdiction, i.e., interference with prospective economic advantage, breach of the implied covenant of good faith and fair dealing, and unjust enrichment; and (ii) claims for fraud and rescission of contract, as well as for violations of California's unfair competition law (Cal. Bus. & Prof. Code § 17200 ("UCL Section 17200")), California's securities laws (Cal. Corp. Code §§ 25400 & 25401), and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act"). Schwab further alleges that Defendants expressly or tacitly conspired to suppress LIBOR, and thus each Defendant is being sued both individually—as a primary violator of the law—and as a co-conspirator under California law. Schwab Compl. ¶¶ 50-257, 320-24. Defendants removed the Schwab California Action to the Northern District of California and then moved to transfer the case to this Court, which Schwab opposed. On October 2, 2013, the Judicial Panel on Multidistrict Litigation ("JPML") ordered the case transferred, and on December 27, 2013, this Court denied Schwab's motion to remand.

On March 31, 2014, BATA filed an action in the Northern District of California, asserting Sherman Act, RICO, and Cartwright Act claims as well as claims under California law for fraud, interference with prospective economic advantage, breach of contract, unjust enrichment, and violation of UCL Section 17200. BATA also alleges, under California law, that Defendants conspired to suppress LIBOR. BATA Compl. ¶¶ 40-252, 288-92. On May 1, 2014, the JPML ordered BATA's case transferred to this Court.

## II.     Claim-Specific Arguments[3]

### A.     Sherman Act, Cartwright Act, and RICO Claims (BATA)

While BATA respectfully disagrees with the Court's rulings regarding antitrust injury, the "RICO Amendment" of the Private Securities Litigation Reform Act, and RICO extraterritoriality, we expect the Court is not inclined to reconsider them. At the same time, BATA wishes to preserve its appellate rights. Accordingly, if the Court determines to apply its prior rulings to BATA's claims, BATA will file an appeal.

### B.     Contract and Unjust-Enrichment Claims (Schwab and BATA)

Defendants intend to move to dismiss Schwab's claims for breach of the implied covenant of good faith and fair dealing and for rescission of contract, to the extent those claims are asserted against Defendants with which Schwab "did not transact, based on the Court's rulings to date." Dkt. No. 594, at 1. BATA asserts claims for breach of contract against Bank of America, Citibank, and JPMorgan Chase & Co. based on interest-rate swaps BATA entered into with those counterparties. Defendants do not seek to dismiss those claims. *See* Dkt. No. 594, at 1, 3, 7-9 (BATA not included among cases in which Defendants will move to dismiss).

---

*Footnote continued from previous page*

28 U.S.C. § 1291. The U.S. Supreme Court is expected to address this issue in *Gelboim v. Bank of America Corp.*, No. 13-1174.

[3] Schwab and BATA join the arguments in the letter being submitted today by Richard Leveridge of Dickstein Shapiro LLP addressing Defendants' personal-jurisdiction arguments. Further, by not raising a personal-jurisdiction defense in the Initial Schwab Actions, Defendants have waived or forfeited any such defense regarding California.

The Honorable Naomi Reice Buchwald
August 20, 2014
Page 3

Regarding Schwab's contract claims, Defendants fail to specify what they consider a "stranger" Defendant. Nor do the Court's prior rulings address the circumstance where, as in the Schwab California Action, plaintiffs transacted with broker-dealer affiliates of LIBOR Panel Banks (in addition to transacting directly with certain Panel Banks). Among Schwab's transactions, for example, are those in which Schwab purchased LIBOR-based financial instruments from broker-dealer affiliates of Panel Banks that issued the instruments. Further, even were the Court to determine that a contract claim cannot lie against a Panel Bank Defendant with respect to Schwab's purchases of LIBOR-based instruments from the Panel Bank's affiliate, Schwab's unjust-enrichment claims would be unaffected. *See Process Specialties, Inc. v. Sematech, Inc.*, No. CIV. S-00414 FCD PAN, 2001 U.S. Dist. LEXIS 26261, at *63 (E.D. Cal. Nov. 8, 2001) ("there is no such [privity] requirement under California law" with respect to unjust enrichment).

## C.  Fraud (Schwab and BATA)

Plaintiffs' claims are, contrary to Defendants' contention, timely. Plaintiffs respectfully disagree with the Court's determination that by May 2008, "a person of ordinary intelligence would clearly have been on notice that LIBOR was probably being set at artificial levels" (*LIBOR I*, 935 F. Supp. 2d at 705). Indeed, Barclays recently "conceded" that its June 2012 settlement with the government constituted "the (first) occasion that Barclays disclosed its false 2007-2009 [LIBOR] submission rates." *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 233 (2d Cir. 2014).

Even assuming *arguendo* the Court's inquiry-notice ruling with respect to claims under the Commodity Exchange Act comports with the high threshold California law imposes for dismissal,[4] those claims have been equitably tolled from the date a putative class complaint encompassing claims substantially similar to Plaintiffs' claims, including the Over-the-Counter Plaintiffs' August 5, 2011 class complaint, was filed. California's equitable-tolling doctrine serves "to toll the statute of limitations in favor of a plaintiff who acted in good faith where the defendant is not prejudiced by having to defend against a second action." *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1188 (9th Cir. 2009). Because this form of tolling "covers situations beyond those covered by *American Pipe*" (*id.*), it is irrelevant whether a California court would recognize "cross-jurisdictional tolling" under *American Pipe* (*see* Dkt. No. 595, at 1 n.2).[5]

Defendants' argument that Plaintiffs "fail to plausibly allege that any purported reliance was reasonable or justified" (Dkt. No. 595, at 2) also lacks merit. Whether reliance on a misstatement or omission was reasonable "is a question of fact for the jury, and may be decided as a matter of law only if the facts permit reasonable minds to come to just one conclusion."

---

[4] *See Broberg v. Guardian Life Ins. Co. of Am.*, 171 Cal. App. 4th 912, 921 (2009) ("When a plaintiff reasonably should have discovered facts for purposes of the accrual of a cause of action or application of the delayed discovery rule is generally a question of fact, properly decided as a matter of law only if . . . the allegations in the complaint and facts properly subject to judicial notice[] can support only one reasonable conclusion.").

[5] As Defendants effectively concede (*see* Dkt. No. 596, at 2 n.4), the statutes of limitations for Schwab's claims for breach of the implied covenant of good faith and fair dealing, interference with prospective economic advantage, and unjust enrichment were tolled during the pendency of the Initial Schwab Actions. *See* 28 U.S.C. § 1367(d).

The Honorable Naomi Reice Buchwald
August 20, 2014
Page 4

*Broberg*, 171 Cal. App. 4th at 921 (citation and internal quotation marks omitted).  Further, this Court has held that if the offering materials for LIBOR-based financial instruments "described how LIBOR was calculated by reference to the 'proper' procedures rather than the manipulation that allegedly was occurring," they "would contain a material misrepresentation," and if those materials "did not describe how LIBOR was calculated," they "would still be omitting that LIBOR was being manipulated, surely a material omission."  *LIBOR I*, 935 F. Supp. 2d at 728.  Accordingly, Defendants' reliance on this Court's statement that "'no one bank could possibly guarantee that a particular LIBOR fix was determined in a manner that wholly complied with the BBA's rules'"[6] misses the point.  This is particularly so given Plaintiffs' allegations that Defendants conspired to suppress LIBOR.[7]

### D.    Conspiracy (Schwab and BATA)

Defendants' contention that BATA has not "pleaded claims for civil conspiracy at all" disregards that "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration."  *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 457 (Cal. 1994).  Further, Plaintiffs have plausibly alleged a conspiracy.  *See* Schwab Compl. ¶¶ 50-257, 320-24; BATA Compl. ¶¶ 40-252, 288-92.

### E.    Interference with Prospective Economic Advantage (Schwab and BATA)[8]

Defendants incorrectly assert that Plaintiffs' claims for interference with prospective economic advantage are legally deficient because Plaintiffs fail to identify the business relationships Defendants disrupted and do not plausibly allege that Defendants intentionally interfered with those relationships.  Among other things, with respect to Plaintiffs' transactions with Defendants' broker-dealer affiliates, the Court reasonably can infer at the pleading stage that Defendants knew of those business relationships.  *See Eldorado Stone, LLC v. Renaissance Stone, Inc.*, No. 04cv2562 JM (LSP), 2005 U.S. Dist. LEXIS 45237, at *14 (S.D. Cal. Aug. 9, 2005) (plaintiffs' allegations "gave rise to an inference" that defendant knew of the relationships at issue).  Relatedly, in light of Plaintiffs' well-pled allegations as to Defendants' motives for suppressing LIBOR, their far-reaching acts to further that scheme, and the manifestly foreseeable results of Defendants' actions (lower rates of return on LIBOR-based financial instruments), the Court reasonably can infer that Defendants "acted either with the desire to interfere or the

---

[6] Dkt. No. 595, at 2 (quoting *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 631 n.31 (S.D.N.Y. 2013) ("*LIBOR II*")).

[7] Defendants' vague assertion that "certain Plaintiffs" fail to sufficiently allege "intent on the part of Defendants to induce reliance on any allegedly fraudulent conduct" (Dkt. No. 595, at 2) is likewise unavailing.  *See, e.g.*, Schwab Compl. ¶ 59 (alleging Defendants' motive to pay lower interest rates on LIBOR-based financial instruments); BATA Compl. ¶ 49 (same); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262 (NRB), 2014 U.S. Dist. LEXIS 86765, at *76-77 (S.D.N.Y. June 23, 2014) ("*LIBOR III*") (holding that Exchange-Based Plaintiffs sufficiently pled scienter).  Plaintiffs also plead proximate causation, as they would not "have suffered the alleged damage even in the absence of the fraudulent inducement."  *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1064 (2012).

[8] Defendants assert that Plaintiffs' claims for interference with prospective economic advantage and for violation of UCL Section 17200 should be dismissed because, *inter alia*, they are partially or completely time-barred and Plaintiffs do not plead proximate causation.  Those arguments fail for the reasons discussed in Section II.C., *supra*.

The Honorable Naomi Reice Buchwald
August 20, 2014
Page 5

knowledge that interference was certain or substantially certain to occur as a result of [their] action."  *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 957-58 (Cal. 2003).

## F.     Violation of UCL Section 17200 (Schwab and BATA)

Plaintiffs state claims for violations of UCL Section 17200.  In short, contrary to Defendants' assertions, (i) Plaintiffs' claims, which arise from these California-based entities' damages as a result of materials misstatements or omissions disseminated to them by Defendants or their affiliates, are not impermissibly extraterritorial;[9] (ii) Schwab and BATA have statutory standing;[10] and (iii) Plaintiffs plead deception, intent, and reliance (*see* Section II.C., *supra*).[11]

## G.     Federal and State Securities Claims (Schwab)

Schwab's securities claims are timely under the *American Pipe* rule or as a result of equitable tolling.  *See, e.g.*, *Benfield v. Mocatta Metals Corp.*, 26 F.3d 19, 23 (2d Cir. 1994) (*American Pipe* applied because there was "a sufficient commonality between [defendant]'s alleged acts of commodity wrongdoing and [plaintiff]'s allegation of RICO violations to preclude a claim by [defendant] of unfair surprise"); Section II.C., *supra* (discussing California's equitable-tolling doctrine).[12]  Defendants' challenges to the specificity of Plaintiffs' allegations regarding the subject transactions, as well as to Plaintiffs' ability to plead loss causation or damages, are misplaced.  *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 120 (2d Cir. 2013) (non-fraud claims under Sections 11 and 12(a)(2) require "ordinary notice pleading") (citation and internal quotation marks omitted); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 156 (2d Cir. 2012) ("Neither scienter, reliance, nor loss causation is an element of § 11 or § 12(a)(2) claims . . . .").

In light of the foregoing arguments and authorities, Defendants' anticipated motions to dismiss lack merit.  At any rate, because Plaintiffs intend to amend their Complaints as of right, Defendants' motions should await the filing of amended pleadings.

---

[9] *See Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011) ("Certainly the UCL reaches any unlawful business act or practice committed in California.").

[10] *See* Cal. Bus. & Prof. Code § 17201 (defining "person" to include "corporations, firms, partnerships, joint stock companies, associations and other organizations of persons"); *Notrica v. State Comp. Ins. Fund*, 70 Cal. App. 4th 911, 939-44 (1999) (California's State Compensation Insurance Fund was a "person" under the UCL).

[11] Defendants also assert that UCL Section 17200 claims cannot lie based on securities transactions, and that to the extent choice-of-law provisions provide for the law of a jurisdiction other than California, Plaintiffs cannot state such claims.  As to the former argument, "[t]he California courts have expressly held that federal securities laws do not preempt Section 17200 generally."  *Strigliabotti v. Franklin Res., Inc.*, No. C 04-00883 SI, 2005 U.S. Dist. LEXIS 9625, at *29 (N.D. Cal. Mar. 7, 2005).  At any rate, any such preclusion would not apply to the extent Plaintiffs' claims arise from transactions in non-securities.  *See id.* at *30 (assuming *arguendo* claims based on securities transactions are precluded, that "does not encompass all situations where securities are somehow implicated but not purchased or sold").  The choice-of-law question will turn on the specific language of any such choice-of-law provisions.

[12] The U.S. Supreme Court, in *Public Employees' Retirement System of Mississippi v. IndyMac MBS, Inc.*, No. 13-640, is expected to address whether *American Pipe* applies to the Securities Act's three-year time limitation.

The Honorable Naomi Reice Buchwald
August 20, 2014
Page 6

Respectfully,

Steven E. Fineman

cc:     All Counsel of Record (by ECF)