**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 | FAX (212) 849-7100

August 20, 2014

ELECTRONICALLY FILED

Honorable Naomi Reice Buchwald
United States District Court
for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re:  Darby Financial Products & Capital Ventures International v. Barclays Bank PLC, et al.,
     1:13-cv-08799-NRB (S.D.N.Y.)

Dear Judge Buchwald:

    We write on behalf of plaintiffs Darby Financial Products and Capital Ventures International (collectively, "Plaintiffs") in response to the pre-motion letters submitted by the Defendant banks requesting leave to file motions to dismiss certain claims brought in *In re LIBOR-Based Financial Instruments Antitrust Litigation*, No. 11-md-2262. As explained below, Defendants have identified no valid basis for dismissal of Plaintiffs' Complaint, which is mostly focused on breach of contract and unjust enrichment claims arising out of interest rate swap agreements with counterparty defendants (including UBS, RBS, Deutsche Bank, JPMorgan, and Barclays). Should the Court believe that full briefing is necessary to resolve the issues raised by the Defendants, we look forward to the opportunity to do so.

    ***Amending the Complaint.*** Defendants concede that Plaintiffs' contract and unjust enrichment claims are asserted only as to Defendant counterparties and that such claims are expressly authorized by this Court's ruling in *In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR III")*, 2014 WL 2815645, at *20 (S.D.N.Y. June 23, 2014). However, to address concerns expressed in the Court's opinions and other issues raised in Defendants' letters, Plaintiffs intend to amend their Complaint as to other claims in accordance with the schedule proposed in the letter from Richard J. Leveridge to the Court dated August 20, 2014. Any briefing schedule on a motion to dismiss should take into account that amendment, which will be filed by the jointly proposed deadline.

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

Honorable Naomi Reice Buchwald
August 20, 2014

***Plaintiffs' contract-based claims are timely, and well-pled.*** Defendants do not appear to seek dismissal of Plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing on the merits, nor do they list this case among those for which a more definitive statement is required.  App. to Defendants' August 13, 2014 Pre-Motion Submissions, at 9-10 (ECF No. 593-1).  Plaintiffs also allege breaches of express contractual provisions by three of the counterparty Defendants, unlike certain other plaintiffs.  Defendants' sole ground for dismissal of the contract-based claims is the assertion that the claims are barred by the applicable statute of limitations in Pennsylvania, where Plaintiffs' transactions occurred.

Pennsylvania specifies a four-year statute of limitations for claims alleging breach of contract and breach of the implied covenant of good faith and fair dealing.  42 Pa. Consol. Stat. § 5525(a).  Pennsylvania law also provides that the limitations period can be suspended by the continuing nature of *both* Plaintiffs' contracts *and* Defendants' wrongdoing.  *Carbis Walker LLP v. Winner Int'l Inc.*, 2008 WL 4491497, at *39 (Pa. Com. Pl. Aug. 4, 2008) ("[A] continuing contract . . . tolls the statute of limitations . . . ."); *Mantia v. N. Ins. Co. of New York*, 39 Pa. D. & C.4th 71, 88 (Com. Pl. 1998) ("When a defendant's conduct is continuing in nature, the statute of limitations is tolled while that conduct continues.") (citing *Dellape v. Murray*, 651 A.2d 638, 640 (Pa. Commw. 1994)).  Both of these doctrines are applicable here and operated to toll the four-year statute of limitations for so long as Defendants' LIBOR manipulation was continuing.  Additionally, Plaintiffs' claims were preserved by the filing of class-action LIBOR complaints on behalf of Plaintiffs and other class members, including *Carpenters Pension Fund of W. Va. v. Bank of Am Corp.*, No. 11-cv-2883 (S.D.N.Y.) on April 27, 2011.  *Miller v. Fed. Kemper Ins. Co.*, 352 Pa. Super. 581, 590 (1986).[1]

---

[1]  Defendants argue in a footnote that *American Pipe* tolling is inapplicable to state-law claims. Letter from Jeffrey T. Scott & David R. Gelfand to Hon. Naomi Reice Buchwald at 1 n.2, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No.11-md-2262, ECF No. 595 (S.D.N.Y. Aug. 13, 2014) (citing *In re Bear Stearns Cos. Sec. Derivative & ERISA Litig.*, 2014 WL 463582, at *16 (S.D.N.Y. Feb. 5, 2014)). However, this is not the case, as "New York courts have . . . long embraced the principles of *American Pipe*." *Cullen v. Margiotta*, 811 F.2d 698, 719 (2d Cir. 1987) (collecting cases); *see Sapirstein-Stone-Weiss Found. v. Merkin*, 950 F. Supp. 2d 621, 626 (S.D.N.Y. 2013), *reconsideration denied* (July 11, 2013) (prior federal class action tolled individual state-law claims); *Paru v. Mut. of Am. Life Ins. Co.*, 863 N.Y.S.2d 151, 152 (1st Dep't 2008); *Cambridge House Tenants' Ass'n v. Cambridge Dev., L.L.C.*, 2012 WL 254979 (N.Y. Sup. Ct. Jan 19, 2012). "*American Pipe* tolling is [also] properly extended to claims of absent class members that involve the same evidence, memories, and witnesses as were involved in the initial putative class action." *Cullen*, 811 F.2d at 719. *See United Airlines, Inc. v. McDonald*, 432 U.S. 385, 393-94 n. 14 (1977); *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985) ("[A] related class action gives defendants full notice 'of the need to preserve evidence and witnesses respecting the claims of *all* the members of the class.  Tolling the statute of limitations thus creates no potential for unfair surprise . . . .'") (quoting *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353 (1983)); *Escott v. Barchris Constr. Corp.*, 340 F.2d 731, 734 (2d Cir. 1965) (tolling applies when prior class action "made [defendants] aware of the nature of the evidence that would be needed at trial"), *cert. denied*, 382 U.S. 816 (1965).

Honorable Naomi Reice Buchwald
August 20, 2014

***Plaintiffs' unjust enrichment claims are timely, and well-pled.*** Plaintiffs bring unjust enrichment claims solely against those Defendant banks with which they negotiated directly, and Defendants do not appear to seek dismissal of these claims on the merits. App. to Defendants' August 13, 2014 Pre-Motion Submissions at 11-13. Nor are the unjust enrichment claims untimely under Pennsylvania's four-year statute of limitations, *Cole v. Lawrence*, 701 A.2d 987, 989 (Pa. Super. Ct. 1997), which as discussed above was suspended by the continuing nature of the contracts at issue, the continuing nature of Defendants' misconduct, and the filing of class-action complaints in 2011 expressly encompassing the unjust enrichment claims at issue.

***Plaintiffs' fraud-based claims are timely, and well-pled.*** Plaintiffs' fraud claims are likewise timely under Pennsylvania's two-year statute of limitations, 42 Pa. Consol. Stat. § 5524(7), which as discussed above was suspended by the continuing nature of Defendants' misconduct, and by the filing of the class-action complaints.

Defendants argue that Plaintiffs' reliance was unreasonable. Letter from Jeffrey T. Scott & David R. Gelfand to Hon. Naomi Reice Buchwald at 2 (ECF No. 595, Aug. 13, 2014) ("Scott & Gelfand Letter"). The scope of that "ask" is breathtaking. Defendants are asking the Court to rule, as a matter of law, that as early as 2007 no reasonable investor could ever have relied on LIBOR, so that every actor in this *multitrillion-dollar* market was acting irrationally. Clearly, the severe disconnect between Defendants' theory, and reality, requires *at least* waiting for discovery on this issue. This is also true with respect to reliance after May 2008 (*i.e.*, after the Court's "inquiry notice" date), given the market's continuing reliance on LIBOR. There is a difference between finding, for the purposes of inquiry notice, that investors should have begun investigating by May 2008, and deeming every market actor (including many governments) to have acted irrationally in relying on LIBOR. *See, e.g., Miller v. Am. Bureau of Shipping, Inc.*, 1998 WL 879674, at *1 (9th Cir. Dec. 16, 1998) (mem.) (reversing dismissal of fraud claims for lack of reasonable reliance based on plaintiff's being on inquiry notice).

Defendants similarly try to avoid practical realities by arguing that they lacked intent to deceive even though they knew that LIBOR was being manipulated. The Court has already rejected that distinction, finding scienter was adequately pled under the Commodity Exchange Act. *See LIBOR III*, 2014 WL 2815645, at *14. This makes sense, as "[w]here representations are made to the public at large for the purpose of influencing the action of anyone who may act upon those representations, a common-law cause of action for fraud lies in favor of any individual who acts upon them and is injured thereby." *Young v. Robertshaw Controls Co.*, 481 N.Y.S.2d 891, 893 (3d Dep't 1984). Defendants cannot escape liability for falsifying LIBOR by claiming to have borne no ill will toward any particular investor who would be harmed thereby.

Finally, Defendants also suggest it is unclear how their misconduct harmed certain plaintiffs. Whatever the merit of those arguments to other cases, it defies common sense to apply them to Plaintiffs. As holders of financial instruments on which they were to receive LIBOR-based payments, Plaintiffs were directly impacted by LIBOR's suppression, as alleged in the

3

Honorable Naomi Reice Buchwald
August 20, 2014

Complaint.[2] Determining precisely how much less Plaintiffs were paid is simply not a pleading burden. *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 167 (2d Cir. 2012), *cert. denied,* 133 S. Ct. 1624, 185 L. Ed. 2d 576 (U.S. 2013).

***Plaintiffs' interference claims are timely, and well-pled.*** Plaintiffs' interference claims are timely under Pennsylvania's two-year statute of limitations, *Bender v. McIlhatten*, 360 Pa. Super. 168, 173 (1987), which was suspended (as discussed above) by the continuing nature of Defendants' wrongdoing, and by the continuing nature of the affected contracts themselves.[3]

Defendants urge that Plaintiffs must allege that Defendants knew of and "*intended* to interfere with Plaintiffs' contracts or business relations." Letter from Marc J. Gottridge to Hon. Naomi Reice Buchwald at 2-3 (ECF No. 596, Aug. 13, 2014). As discussed above in the context of Plaintiffs' fraud claims, this slices the elements far too finely, as this Court has already held. *See LIBOR III*, 2014 WL 2815646, at *14 ("[I]t may suffice for plaintiffs to allege that defendants knowingly engaged in unquestionably illegitimate conduct while fully comprehending the consequences in the market."). Defendants knew that Plaintiffs held LIBOR-linked instruments, and that their conduct would impact *every* LIBOR-based instrument. Such knowledge suffices even if Defendants' focus was not on the specific positions on Plaintiffs' books. *See Jacobs v. Continuum Health Partners, Inc.*, 776 N.Y.S.2d 279, 280 (2004) ("To state a cause of action for tortious interference with prospective business advantage, it must be alleged that the conduct . . . was undertaken for the sole purpose of harming plaintiff, *or* that such conduct was wrongful or improper independent of the interference allegedly caused thereby.") (emphasis added) (citation omitted). Here, it would be absurd to require that Defendants have particularized intent to interfere with each one of the hundreds of LIBOR-linked instruments held by Plaintiffs.[4]

---

[2] With respect to the aiding and abetting and conspiracy claims, Defendants assert that they neither knew of, nor substantially assisted each other's misconduct. Scott & Gelfand Letter at 2-3. However, Plaintiffs allege facts showing that Defendants knew of each other's false submissions, assisted this misconduct by suppressing their own submissions, and did so pursuant to a conspiracy among the LIBOR panel banks. *See, e.g.,* Complaint ¶¶ 69-70, 80-81, 95-96, 109-110, 168-179, 216-218, 220-221, 336-337, 359-360.

[3] The running of the limitations period was also suspended by the filing of the class-action complaints. *See* note 1, *supra*.

[4] Certain Defendants, which are among the world's largest financial institutions, say they are beyond the reach of courts in New York, one of the world's leading financial centers. Letter from Joel Kurtzberg to Hon. Naomi Reice Buchwald (ECF No. 600, Aug. 13, 2014). As described in the August 20, 2014 letter to the Court from Richard J. Leveridge on this issue, Defendants' contacts with New York, including via the LIBOR-based instruments at issue in this case, amply support the assertion of specific jurisdiction.

Honorable Naomi Reice Buchwald
August 20, 2014

Respectfully submitted,

*[signature: Dan Brockett]*

Daniel L. Brockett

cc:     All counsel (via ECF)