UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| LIBOR-Based Financial Instruments | ) | MDL No. 2262 |
| Antitrust Litigation | ) | |
| | ) | Master File No. 1:11-md-2262 (NRB) |
| This Document Relates to: | ) | |
| The Earle Action | ) | |
| | ) | |
| | ) | |
| HEATHER M. EARLE, HENRYK | ) | Case No. 13 Civ. 407 (NRB) |
| MALINOWSKI, LINDA CARR, and ERIC | ) | |
| FRIEDMAN, on behalf of themselves and | ) | |
| all others similarly situtated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BANK OF AMERICA CORP., BANK OF | ) | |
| AMERICA, N.A., BANK OF TOKYO – | ) | |
| MITSUBISHI UFJ LTD., BARCLAYS | ) | |
| BANK PLC, CITIGROUP, INC., | ) | |
| CITIBANK N.A., CREDIT SUISSE | ) | |
| GROUP, AG, COÖPERATIEVE | ) | |
| CENTRALE RAIFFEISEN- | ) | |
| BOERENLEENBANK B.A., DEUTSCHE | ) | |
| BANK AG, HBOS PLC, HSBC | ) | |
| HOLDINGS PLC, HSBC BANK PLC, | ) | |
| JPMORGAN CHASE & CO., CHASE | ) | |
| BANK USA, N.A., THE NORINCHUKIN | ) | |
| BANK, LLOYDS BANKING GROUP | ) | |
| PLC, ROYAL BANK OF CANADA, | ) | |
| ROYAL BANK OF SCOTLAND and UBS | ) | |
| AG, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE EARLE PLAINTIFFS'
MOTION FOR APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL**

**TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

I.      PRELIMINARY STATEMENT ............................................................................ 1

II.     PROCEDURAL AND FACTUAL BACKGROUND............................................. 1

        a.      The LIBOR Scandal................................................................................... 2

        b.      The Earle Plaintiffs' Claims...................................................................... 3

        c.      No Other Existing or Proposed Class Protects the Interests of Homeowners
                Harmed by the *Upward* Manipulation of Certain LIBOR Rates ............................ 4

III.    THE COURT SHOULD APPOINT KAPLAN FOX AND BLOCK & LEVITON AS
        INTERIM CO-LEAD CLASS COUNSEL FOR THE HOMEOWNER LIBOR
        INFLATION CLASS................................................................................................ 5

        a.      The Firms Thoroughly Investigated the Misconduct Alleged in this Action ......... 6

        b.      The Firms Satisfy Rule 23(g)(1)(A)(ii)...................................................... 7

                i.       The Firms Have Substantial Experience in Investigating and Litigating
                         Antitrust Cases........................................................................... 7

                ii.      Block & Leviton and Kaplan Fox Have Substantial Experience in
                         Litigating and Trying Class Actions and Complex Cases ........................ 10

        c.      The Firms Are Knowledgeable About the Applicable Law and Satisfy
                Rule 23(g)(1)(A)(iii) ............................................................................... 12

        d.      The Firms Will Devote Significant Resources to Representing the Homeowner
                LIBOR Inflation Class in this Litigation ............................................. 12

        e.      Appointment of Interim Co-Lead Class Counsel Based In This District Serves
                the Best Interests of the Class ................................................................ 13

IV.     CONCLUSION....................................................................................................... 13

## TABLE OF AUTHORITIES

Cases                                                                                                    Page

*Bank of America Corp. Sec. Litig.*,
    No. 09 MDL 2058 (DC) (S.D.N.Y.) ............................................................................... 10

*Baycol Products Litig.*,
    MDL No. 1431 (D. Minn.)............................................................................................. 11

*Deangelis v. Cozine*,
    286 F.R.D. 220 (S.D.N.Y. 2012) ................................................................................... 6

*In re 3Com Sec. Litig.*,
    No. C-97-21083-EAI (N.D. Cal.) ................................................................................. 10

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    240 F.R.D. 56 (E.D.N.Y. 2006) ..................................................................................... 5

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    06-md-1775 (E.D.N.Y.) ...................................................................................... 8, 9, 10

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*,
    08 M.D.L. No. 1963 (RWS), 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009) ........................... 5

*In re Brand Name Prescription Drugs Antitrust Litig.*,
    MDL 997 (N.D. Ill.)..................................................................................................... 8

*In re Cast Iron Soil Pipe and Fittings Antitrust Litig.*,
    MDL No. 2508 (E.D. Tenn.).......................................................................................... 8

*In re Crude Oil Commodity Futures Litig.*,
    No. 11 Civ. 3600 (WHP), 2012 WL 569195 (S.D.N.Y. Feb. 14, 2012) ........................... 5

*In re Domestic Drywall Antitrust Litig.*,
    13-MD-2437 (E.D. Pa.) ...................................................................................... 9, 10, 12

*In re Ductile Iron Pipe Fittings Antitrust Litig.*,
    12-cv-00711 (D.N.J.) .................................................................................................... 8

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
    3:03-md-1542 (D. Conn.) ............................................................................................ 10

*In re Flat Glass Antitrust Litig.*,
    385 F.3d 350 (3d. Cir. 2004)................................................................................... 7-8, 12

*In re Flat Glass Antitrust Litig.*,
    MDL 1200 (W.D. Pa.) .................................................................................. 7, 8

*In re High Fructose Corn Syrup Antitrust Litig.*,
    295 F.3d 651 (7th Cir. 2002) .................................................................. 7, 9, 12

*In re High Fructose Corn Syrup Antitrust Litig.*,
    MDL No. 1087 (C.D. Ill.) ............................................................................. 7, 8

*In re Hydrogen Peroxide Antitrust Litig*,
    552 F.3d 305 (3d Cir. 2008) .............................................................................. 9

*In re Hydrogen Peroxide Antitrust Litig.*,
    MDL 1682 (E.D. Pa.) .................................................................................. 8, 10

*In re Infant Formula Antitrust Litig.*,
    MDL 878 (N.D. Fla.) ....................................................................................... 8

*In re Medical X-Ray Film Antitrust Litig.*,
    CV 93-5904 (E.D.N.Y.) .................................................................................... 8

*In re Merrill Lynch & Co., Inc. Sec., Derivative and ERISA Litig.*,
    No. 07-cv-9633 (S.D.N.Y.) ............................................................................ 10

*In re Methyl Methacrylate (MMA) Antitrust Litig.*,
    06-md-01768 (E.D. Pa.) ................................................................................. 10

*In re NBR Antitrust Litig.*,
    MDL 1684 (E.D. Pa.) ....................................................................................... 8

*In re Neurontin Antitrust Litig.*,
    No. 02-1390 (D.N.J) ..................................................................................... 8, 9

*In re Plastic Additives Antitrust Litig.*,
    03-CV-1898 (E.D. Pa.) ..................................................................................... 8

*In re Pool Prods. Dist. Mkt. Antitrust Litig.*,
    MDL No. 2328 (E.D. La.) ................................................................................. 8

*In re Thomas Trains Paint Litig.*,
    Lead Case No. 07c3514 (N.D. Ill.) ................................................................. 11

*Payne v. Bank of America Corp.*,
    Case No. 13-cv-00598-NRB ............................................................................. 4

*Providian Credit Card Cases*, JCCP 4085 (Cal. Super. Ct.) ........................................................ 11

*Providian Financial Corp. Credit Card Terms Litig.*,
    MDL No. 1301 (E.D. Pa.) ..................................................................................................... 11

**Statutes and Rules**

Class Action Fairness Act (28 U.S.C. § 1332(d)) ................................................................... 4

Federal Rules of Civil Procedure
    15(a) ................................................................................................................................. 1
    23(g) .............................................................................................................................. 1, 5
    23(g)(1)(A) ..................................................................................................................... 5, 6
    23(g)(1)(A)(i) .................................................................................................................... 5
    23(g)(1)(A)(ii) ................................................................................................................. 5, 7
    23(g)(1)(A)(iii) ............................................................................................................... 5, 12
    23(g)(1)(A)(iv) .............................................................................................................. 5, 12
    23(g)(1)(B) ........................................................................................................................ 6
    23(g)(1)(C) ........................................................................................................................ 5

Massachusetts Regulation of Business Practice and Consumer Protection Act
    (Mass. Gen. Laws. ch. 93A § 1 *et seq.*) ....................................................................... 1, 3

New York General Business Law § 349 ............................................................................. 1, 3

Sherman Act § 1 (15 U.S.C. § 1) ....................................................................................... 1, 3

**Other Authorities**

Manual for Complex Litigation (Fourth) § 10.22 (2011) ...................................................... 5

## I.   PRELIMINARY STATEMENT

Pursuant to the Court's Order dated September 4, 2014 (ECF No. 638) and Rule 23(g) of the Federal Rules of Civil Procedure, plaintiffs Heather Earle, Henryk Malinowski, Linda Carr, and Eric Friedman (together, the "Earle Plaintiffs") seek the appointment of Kaplan Fox & Kilsheimer LLP and Block & Leviton LLP (the "Firms") as interim co-lead class counsel for a class of mortgagors with adjustable rate mortgages indexed to the six-month or twelve-month United States dollar ("USD") London InterBank Offered Rate ("LIBOR"), whose interest rates were set or adjusted during the period August 13, 2007, through June 26, 2012 (the "Homeowner LIBOR Inflation Class"), and who, unlike other homeowner plaintiffs, base their claims on an *inflation* of six-month and twelve-month USD LIBOR.

The Firms satisfy the requisite criteria for selecting interim co-lead class counsel. They have actively and uniquely investigated this case.  They have substantial expertise in prosecuting complex litigation, including MDLs and class actions, and are widely recognized as leaders in the field.  They are willing and able to commit significant time and resources to this litigation, and they have demonstrated the ability and resources to litigate complex class actions effectively and efficiently.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

The Earle Plaintiffs initially asserted a claim for violation of Sherman Act § 1, 15 U.S.C. § 1.  In accordance with their right under Federal Rule of Civil Procedure 15(a) and this Court's September 4 Order, the Earle Plaintiffs intend to amend their complaint to assert claims at least under New York General Business Law § 349 and the Massachusetts Regulation of Business Practice and Consumer Protection Act (Mass. Gen. Laws. ch. 93A § 1 *et seq.*).  A copy of the proposed Amended Class Action Complaint is attached as Exhibit A to the Declaration of Gregory

1

K. Arenson in Support of a Motion for the Appointment of Interim Co-Lead Class Counsel, dated September 15, 2014 ("Arenson Dec.").

    a.    **The LIBOR Scandal**

The Earle amended complaint alleges a multi-year scheme by Defendants[1] to unfairly, unlawfully, and deceptively manipulate and agree to artificially ***inflate*** the six-month and twelve-month USD LIBOR tenors from August 13, 2007, through June 26, 2012 (the "Class Period"), causing mortgagors with adjustable rate mortgages indexed to six-month and twelve-month USD LIBOR whose interest rates were set or adjusted during the Class Period to overpay on their mortgages.

While others have filed an action proposing to represent a class of homeowners, the Earle action contains the only proposed homeowner classes in the MDL advancing a theory of *inflation* rather than *suppression* of LIBOR. When news of the LIBOR scandal broke, a number of cases were filed alleging that Defendants artificially suppressed LIBOR in order to appear more creditworthy. However, it was not until the Barclays settlement in June 2012 that it was revealed that Defendants also engaged in the artificial inflation of certain key rates. The Firms investigated and, through various statistical analyses and research and consultation with an expert, uncovered that Defendants both individually and in concert inflated six-month and twelve-month USD LIBOR – *i.e.*, the rates that are commonly used as benchmarks for adjustable rate mortgages.

---

[1] The defendants named in the initial complaint were: Bank of America Corporation, Bank of America, N.A., Bank of Tokyo-Mitsubishi UFJ Ltd., Barclays Bank plc, Citigroup, Inc., Citibank N.A., Credit Suisse Group, AG, Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A., Deutsche Bank AG, HBOS plc, HSBC Holdings plc, HSBC Bank plc, JPMorgan Chase & Co., Chase Bank USA, N.A., The Norinchukin Bank, Lloyds Banking Group plc, Royal Bank of Canada, Royal Bank of Scotland, and UBS AG (the "Defendants"). The amended complaint does not name Credit Suisse Group, AG or The Norinchukin Bank.

Various governmental authorities throughout the United States and European Union, including the United States Department of Justice and the United Kingdom Financial Services Authority, have conducted investigations and imposed massive monetary fines in connection with the conduct alleged in Earle Plaintiffs' amended complaint. Settlements or plea agreements between governmental authorities and some of the Defendants, most of which occurred after Earle Plaintiffs filed their original complaint, include express admissions of the type of conduct that the Earle Plaintiffs allege -- specifically, the unfair, deceptive, and conspiratorial artificial and unjustified inflation of six-month and twelve-month USD LIBOR. Thus, Defendants' admissions corroborate the Firms' independent findings of inflated six-month and twelve-month USD LIBOR set out in the Earle Plaintiffs' complaint and proposed amended complaint.

b.    **The Earle Plaintiffs' Claims**

As detailed in the amended complaint, the Firms seek to represent at least the following classes of mortgagors:

> **Nationwide Class**: All persons and entities who had an adjustable rate mortgage on property located in the United States indexed to six-month or twelve-month USD LIBOR that was set or adjusted during the period August 13, 2007, through June 26, 2012.

> **Massachusetts Class**: All persons and entities who had an adjustable rate mortgage on property located in Massachusetts indexed to six-month or twelve-month USD LIBOR that was set or adjusted during the period August 13, 2007, through June 26, 2012.

> **New York Class**: All persons and entities who had an adjustable rate mortgage on property located in New York indexed to six-month or twelve-month USD LIBOR that was set or adjusted during the period August 13, 2007, through June 26, 2012.

The Earle Plaintiffs' claims are at least under Sherman Act § 1 (15 U.S.C. § 1) on behalf of the Nationwide Class; N.Y. Gen. Bus. Law § 349 on behalf of the New York Class; and the Massachusetts Regulation of Business Practice and Consumer Protection Act (Mass. Gen. Laws. ch. 93A § 1 *et seq.*) on behalf of the Massachusetts Class.   The state law claims satisfy the

requirements for diversity jurisdiction under the Class Action Fairness Act (28 U.S.C. § 1332(d)) and share the same nexus of facts as the Sherman Act claim.

   c.    **No Other Existing or Proposed Class Protects the Interests of Homeowners Harmed by the *Upward* Manipulation of Certain LIBOR Rates**

The Earle Plaintiffs seek to represent homeowners and other mortgagors who had an adjustable rate mortgage indexed to six-month or twelve-month USD LIBOR that was set or adjusted during the Class Period.  These rates were artificially inflated by Defendants during the relevant period, causing the interest rates paid on these adjustable rate mortgages to be higher than they otherwise would have been in the absence of such manipulation.

Another action, *Payne v. Bank of America Corp.*, Case No. 13-cv-00598-NRB (the "Payne Action"), proposes to represent a class of homeowners who were injured because the margins on their adjustable rate mortgages were fixed at artificially high rates due to the *suppression* of LIBOR.  ECF No. 626-2.  The Payne plaintiffs' complaint does not specify which tenors of USD LIBOR were affected by the alleged suppression.  The Payne Action also asserts different claims than this action.  Currently, the Payne plaintiffs assert claims for RICO, fraud, and violations of the California Unfair Competition Law.  *Id.* at 2.  In their letter submission to the Court on August 20, 2014, the Payne plaintiffs stated that they will voluntarily dismiss their RICO claim and add claims for breach of contract and breach of the covenant of good faith and fair dealing.  *Id.*  Further, unlike this action, which defines the Class Period as August 13, 2007, to June 26, 2012, the Payne Action seeks to represent homeowners during a different time, *i.e.*, March 2007 to March 2011. *Id.* at 3.

The Earle Plaintiffs thus respectfully submit that separate counsel should be appointed to represent a Homeowner LIBOR Inflation Class (*i.e.*, the class set forth in this action) and a Homeowner LIBOR Suppression Class for any class in the Payne Action.

**III.     THE COURT SHOULD APPOINT KAPLAN FOX AND BLOCK & LEVITON AS INTERIM CO-LEAD CLASS COUNSEL FOR THE HOMEOWNER LIBOR INFLATION CLASS**

Federal Rule of Civil Procedure 23(g) provides that "the court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."  The Manual for Complex Litigation (Fourth) (2011) (the "Manual") recommends that in complex cases like this one the court select and authorize attorneys to act on behalf of other counsel and their clients, with the designated attorneys assuming "a responsibility to the court and an obligation to act fairly, efficiently, and economically in the interests of all parties and parties' counsel." Manual, at § 10.22.  The goal is to determine who best will represent the interests of the class, and who best will be able to accomplish the goals of efficiency and economy in doing so. *See In re Crude Oil Commodity Futures Litig.*, No. 11 Civ. 3600 (WHP), 2012 WL 569195, at *1 (S.D.N.Y. Feb. 14, 2012); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006).

Rule 23(g)(1)(A) lists the mandatory factors that courts must consider in appointing class counsel. *See In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 08 M.D.L. No. 1963 (RWS), 2009 WL 50132, at *11 (S.D.N.Y. Jan. 5, 2009) (explaining that it is "generally accepted that the considerations set out in Rule 23(g)(1)(C) [sic], which governs appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification"). These four factors are: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Rule 23(g)(1)(A)(i)-(iv).  In addition to the criteria it must consider, the Court may also consider "any

other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Deangelis v. Cozine*, 286 F.R.D. 220, 223 (S.D.N.Y. 2012) (quoting Rule 23(g)(1)(B)).

Each of these factors favors the appointment of the Firms as interim co-lead class counsel for the Homeowner LIBOR Inflation Class.

### a.    The Firms Thoroughly Investigated the Misconduct Alleged in this Action

After the announcement of the Barclays settlement agreement, which disclosed the upward manipulation of certain USD LIBOR rates, the Firms launched an investigation that included, among other things, examination of the relationship between six-month and twelve-month USD LIBOR and adjustable rate mortgages and statistical analyses of the divergence during the Class Period between LIBOR and benchmark rates, which, prior to the Class Period, showed an extremely high rate of correlation. Based on their investigation, including consultation with an expert, the Firms uncovered the artificially *high* rates of six-month and twelve-month USD LIBOR during the Class Period. Based on these findings, which have been corroborated by independent studies, including an analysis conducted by the Federal Reserve Bank of Cleveland, the Earle Plaintiffs filed their complaint against Defendants on January 17, 2013. This action was stayed shortly thereafter.

During the period that this action was stayed, the Firms continued their investigation. The proposed amended complaint contains additional statistical support and the admissions of various Defendants stemming from their pleas or settlements with various government agencies. It also asserts additional claims entitling the Earle Plaintiffs to relief under the New York and Massachusetts consumer protection statutes. Accordingly, the Earle Plaintiffs respectfully submit that the Firms satisfy the first Rule 23(g)(1)(A) criterion.

### b.    The Firms Satisfy Rule 23(g)(1)(A)(ii)

#### i.    The Firms Have Substantial Experience in Investigating and Litigating Antitrust Cases

For more than 40 years, Kaplan Fox has been a leader in representing those injured by violations of antitrust law, recovering billions of dollars for its clients and classes they represent. The firm has been regularly chosen by courts to act as lead or co-lead counsel, and the firm is widely recognized for its effective handling of antitrust actions.  The *National Law Journal* and Law.com this month named Kaplan Fox on their inaugural list of America's Elite Trial Lawyers. The *Legal 500* ranks Kaplan Fox – whose lawyers include former federal and state prosecutors as well as attorneys who joined Kaplan Fox from some of the country's most prestigious defense firms – as one of the top U.S. antitrust firms, and many of the firm's lawyers have been designated numerous times by their peers as New York "Super Lawyers" for their antitrust, securities, and class action litigation work.  The firm has been involved in some of the largest and most important antitrust cases in history, litigating issues which resulted in significant changes in antitrust law. Kaplan Fox's significant antitrust achievements include:

> *In re High Fructose Corn Syrup Antitrust Litig.*, MDL No. 1087 (C.D. Ill.): Kaplan Fox was one of three co-lead counsel appointed to represent a class of direct purchasers alleging that the Archer Daniels Midland Company and a number of its competitors conspired to fix the price of high fructose corn syrup.  Kaplan Fox was actively involved in all aspects of this case from its inception to the eve of trial.  In particular, after the district court granted summary judgment for the defendants, Gregory Arenson successfully argued the case before the U.S. Court of Appeals for the Seventh Circuit, with Judge Posner writing a seminal antitrust law opinion reversing the trial court's decision.  *See In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651 (7th Cir. 2002).  The case settled shortly before trial, with Kaplan Fox and its co-counsel obtaining $531 million for the class.

> *In re Flat Glass Antitrust Litig.*, MDL 1200 (W.D. Pa.):  Kaplan Fox was one of four co-lead counsel in an action against the leading manufacturers of flat glass (used in everything from house windows to car windshields).  The firm was significantly involved in all aspects of the case, including a successful argument before the U.S. Court of Appeals for the Third Circuit, which issued a groundbreaking summary judgment opinion that is routinely cited in antitrust cases throughout the federal courts.  *See In re Flat Glass Antitrust Litig.*, 385

F.3d 350 (3d. Cir. 2004). *Flat Glass* settled on the eve of trial, with Kaplan Fox and its co-counsel recovering a total of $122 million for the class.

*In re Air Cargo Shipping Servs. Antitrust Litig.*, 06-md-1775 (E.D.N.Y.): Kaplan Fox is one of four co-lead counsel for direct purchasers in this pending antitrust class action against the world's major providers of air cargo shipping services. To date, Kaplan Fox and its co-counsel have recovered almost $500 million in settlements (with another more than $350 million preliminarily approved) for the proposed class. As co-lead counsel, Kaplan Fox is actively involved in all aspects of this complicated case, which has included extensive discovery and class certification proceedings.

In addition to the *Air Cargo* litigation, Kaplan Fox is currently serving as co-lead counsel in a number of other pending antitrust class actions, including *In re Cast Iron Soil Pipe and Fittings Antitrust Litig.*, MDL No. 2508 (E.D. Tenn.), *In re Ductile Iron Pipe Fittings Antitrust Litig.*, 12-cv-00711 (D.N.J.), and *In re Pool Prods. Dist. Mkt. Antitrust Litig.*, MDL No. 2328 (E.D. La.).

Kaplan Fox has recovered over $2 billion on behalf of its clients in antitrust cases, including: *In re Brand Name Prescription Drugs Antitrust Litig.*, MDL 997 (N.D. Ill.) (more than $720 million recovered); *In re High Fructose Corn Syrup Antitrust Litig.*, MDL No. 1087 (C.D. Ill.) ($531 million recovered); *In re Air Cargo Shipping Services Antitrust Litig.*, MDL 1775 (E.D.N.Y.) ($485 million recovered, with a further $363 million preliminarily approved); *In re Neurontin Antitrust Litig.*, No. 02-1390 (D.N.J) ($190 million recovered); *In re Infant Formula Antitrust Litig.*, MDL 878 (N.D. Fla.) ($126 million recovered); *In re Flat Glass Antitrust Litig.*, MDL 1200 (W.D. Pa.) ($122 million recovered); *In re Hydrogen Peroxide Antitrust Litig.*, MDL 1682 (E.D. Pa.) ($97 million recovered); *In re Plastic Additives Antitrust Litig.*, 03-CV-1898 (E.D. Pa.) ($46.8 million recovered); *In re Medical X-Ray Film Antitrust Litig.*, CV 93-5904 (E.D.N.Y.) ($39.6 million recovered); and *In re NBR Antitrust Litig.*, MDL 1684 (E.D. Pa.) ($34.3 million recovered).

Kaplan Fox partner Gregory Arenson will be lead counsel and supervisor of the Kaplan Fox attorneys. Mr. Arenson has substantial experience in litigating antitrust cases and other

complex matters. He argued the appeals in both *In re High Fructose Corn Syrup Antitrust Litig.* and *In re Hydrogen Peroxide Antitrust Litig*, 552 F.3d 305 (3d Cir. 2008). He also led the plaintiffs' three-day evidentiary hearing on class certification last fall in *Air Cargo*. Mr. Arenson is an oft-published writer of scholarly articles, including on discovery issues and the use of experts. In a relatively recent survey of defense counsel, Mr. Arenson was named as one of the 75 best plaintiffs' lawyers in the country based on his expertise and influence. *See* http://lawprofessors. typepad.com/files/dc-188012-v2-trial_lawyer_kingpins1.xls. He also has been repeatedly named as a "Super Lawyer."

In addition, Kaplan Fox partner Richard Kilsheimer has over 35 years of experience in antitrust litigation. Mr. Kilsheimer has successfully represented plaintiffs in numerous antitrust class actions across the country and is currently serving as co-lead counsel for plaintiffs in several pending cases. In the last two months, he won approval of a $190 million settlement for the class in *In re Neurontin Antitrust Litigation*, Master File No. 02-1390 (D.N.J.), after 12 years of hard-fought litigation to the eve of trial.

Joining Kaplan Fox as proposed interim co-lead class counsel is Block & Leviton, a preeminent class action litigation firm. Block & Leviton has been appointed as lead counsel in various class actions by courts around the nation, including most recently the appointment as Interim Co-Lead Counsel for the class of indirect purchasers in *In re Domestic Drywall Antitrust Litig.*, 13-MD-2437 (E.D. Pa.) (Baylson, J.). Block & Leviton's attorneys have recouped over $1.4 billion on behalf of class members and are equipped to make significant contributions to the management and prosecution of this litigation.

Block & Leviton partner Jeffrey Block will be lead counsel and supervisor of the Block & Leviton team. Mr. Block has over 25 years of experience litigating class actions and has achieved

numerous favorable results for the classes he has represented. Mr. Block has been recognized by federal courts around the country for achieving fair and substantial results for class members and for doing so with efficiency and effectiveness.

Joining Mr. Block on Block & Leviton's team will be Whitney Street, a partner who is well-versed in the management and prosecution of antitrust class actions. Ms. Street serves as the Chair of Block & Leviton's Competition Law Litigation Group and, as noted above, was recently appointed Interim Co-Lead Counsel on behalf of the indirect purchaser class in *In re Domestic Drywall Antitrust Litig.*, a case that involves allegations of price fixing and other concerted conduct. Prior to joining Block & Leviton, Ms. Street was a key member of the litigation teams in the following major antitrust cases: *Air Cargo Shipping Services Antitrust Litig.*, 06-md-1775 (E.D.N.Y.) ($485 million recovered); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 3:03-md-1542 (D. Conn.) ($115 million recovered); *In re Hydrogen Peroxide Antitrust Litig.*, 05-cv-666 (E.D. Pa.) ($97 million recovered); and *In re Methyl Methacrylate (MMA) Antitrust Litig.*, 06-md-01768 (E.D. Pa.) ($15 million recovered).

ii.    **Block & Leviton and Kaplan Fox Have Substantial Experience in Litigating and Trying Class Actions and Complex Cases**

In addition to their significant antitrust experience, the Firms have substantial class action and complex litigation experience spanning other practice areas. Specifically, Kaplan Fox has been recognized as one of the best securities litigation firms in the country, representing large institutional and private investors alike. In that regard, Kaplan Fox has recovered billions of dollars on behalf of investor classes, including: *Bank of America Corp. Sec. Litig.*, No. 09 MDL 2058 (DC) (S.D.N.Y.) ($2.425 billion recovered); *In re Merrill Lynch & Co., Inc. Sec., Derivative and ERISA Litig.*, No. 07-cv-9633 (S.D.N.Y.) ($475 million recovered); and *In re 3Com Sec. Litig.*, No. C-97-21083-EAI (N.D. Cal.) ($259 million recovered).

10

In addition to its widely recognized securities practice, Kaplan Fox has also successfully represented classes in litigation of consumer protection claims. Most notably, Kaplan Fox has secured recoveries for class members in the following cases: *Baycol Products Litig.*, MDL No. 1431 (D. Minn.) ($350 million recovered); *Providian Credit Card Cases*, JCCP 4085 (Cal. Super. Ct.)/*Providian Financial Corp. Credit Card Terms Litig.*, MDL No. 1301 (E.D. Pa.) ($105 million recovered); and *In re Thomas Trains Paint Litig.*, Lead Case No. 07c3514 (N.D. Ill.) ($30 million recovered).

Block & Leviton currently represents a number of major pension funds in class action litigation throughout the United States, including the State of Ohio Pension Funds in a securities class action lawsuit against BP, where it is working to recover investor losses related to the catastrophic explosion on the Deepwater Horizon oil rig and the resultant oil spill in the Gulf of Mexico. Most recently, Block & Leviton secured a classwide recovery on behalf of the investors of Swisher Hygiene, Inc. In approving the settlement, Judge Mullen (W.D.N.C.) noted that Block & Leviton achieved "a very fair and more than adequate recovery" for Swisher's investors, and he was "*particularly impressed with the quality of counsel.*" (Transcript at 7-8 (Arenson Dec. Exhibit D)) (emphasis added). He went on to say:

> Even for a hotly contested questionable liability personal injury case this is a -- this would be a good settlement. So the fact that it's occurring within the context of a securities case, which is very difficult for plaintiffs to win, is *extremely impressive to me.*

(*Id.* at 8) (emphasis added). Finally, Judge Mullen thanked Block & Leviton for "*being as competent and as much on top of this case as [they] were and requiring as little intervention from the Court* as [they] did." (*Id.* at 9) (emphasis added).

A more complete description of the Firms' experience and expertise is set forth in the resumes submitted as Exhibits B and C to the Arenson Dec.

      **c.**      **The Firms Are Knowledgeable About the Applicable Law and Satisfy Rule 23(g)(1)(A)(iii)**

The Firms are widely respected and nationally known for their ability to successfully represent classes in complex litigation. As proposed interim co-lead class counsel knowledgeable about antitrust and state consumer protection and unfair business practice laws, they satisfy the requirement of Rule 23(g)(1)(A)(iii).

Kaplan Fox has been at the forefront of antitrust litigation, successfully prosecuting numerous landmark antitrust cases, including *In re Flat Glass Antitrust Litig.*, 385 F.3d 350 (3d Cir. 2004) and *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F. 3d 651 (7th Cir. 2002). Similarly, Block & Leviton is currently serving as co-lead counsel for Indirect Purchasers in *In re Domestic Drywall Antitrust Litig.*, 13-MD-2437 (E.D. Pa.). Moreover, Block & Leviton has substantial experience in litigating class actions, including those alleging claims brought under state consumer protection and unfair business practices laws.  Both firms have extensive experience litigating in this District.

      **d.**      **The Firms Will Devote Significant Resources to Representing the Homeowner LIBOR Inflation Class in this Litigation**

The Firms have the necessary financial resources and manpower required to litigate this case to a successful conclusion and are committed to prosecuting this action in the best interests of the Class, as shown by the Firms' noteworthy accomplishments in the matters described above. Thus, proposed interim co-lead class counsel satisfy the requirement of Rule 23(g)(1)(A)(iv). Both Kaplan Fox and Block & Leviton are staffed with numerous attorneys and support staff who are prepared to fully litigate this action.  Further, proposed interim co-lead class counsel are committed to ensuring that resources are used properly, including that case work is divided appropriately and that attorneys and staff are working on tasks that are commensurate with their experience and billable hourly rates.

Both Kaplan Fox and Block & Leviton regularly take on cases that require them to advance the costs of litigation. The Firms are willing and able to do the same in this litigation and will devote all necessary resources to vigorously litigate the Earle Plaintiffs' action effectively and efficiently. In fact, the Firms have already invested substantial time and resources into this case and are prepared to continue that investment for the duration.

e.   **Appointment of Interim Co-Lead Class Counsel Based In This District Serves the Best Interests of the Class**

The Firms respectfully submit that it is in the best interests of the proposed Homeowner LIBOR Inflation Class to be represented by counsel who are headquartered in New York. Kaplan Fox's principal office is located in Manhattan, allowing it to minimize cost and to efficiently manage the litigation. Further, it is likely that, because many of Defendants' American offices are located in New York, many of the depositions that will be taken in connection with this action will occur in New York. Although located in Boston, Block & Leviton partners Jeffrey Block and Whitney Street are both admitted to the bar of New York and to this Court.

Both Kaplan Fox and Block & Leviton have substantial experience litigating in this District and are familiar with federal practice before this Court. Thus, the Earle Plaintiffs respectfully submit that appointment of the Firms will serve their and the proposed classes' best interests.

## IV.   **CONCLUSION**

For all the foregoing reasons, the Earle Plaintiffs respectfully request that the Court grant their motion and name Kaplan Fox & Kilsheimer LLP and Block & Leviton LLP as interim co-lead class counsel for the Homeowner LIBOR Inflation Class.

DATED: September 15, 2014

/s/ Gregory K. Arenson
Gregory K. Arenson
Richard J. Kilsheimer
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, N.Y. 10022
Telephone:  (212) 687-1980
Fascimile:  (212) 687-7714
garenson@kaplanfox.com
rkilsheimer@kaplanfox.com

Jeffrey C. Block
Whitney E. Street
Erica G. Sorg
**BLOCK & LEVITON LLP**
155 Federal Street, Suite 400
Boston, MA 02110
Telephone:  (617) 398-5600
Fascimile:  (617) 507-6020
Jeff@blockesq.com
Whitney@blockesq.com
Erica@blockesq.com

Attorneys for plaintiffs Heather M. Earle, Henryk
Malinowski, Linda Carr, and Eric Friedman