# KIRBY McINERNEY LLP

825 Third Avenue
New York, NY 10022
212.371.6600
Fax. 212.751.2540
WWW.KMLLP.COM
Of counsel
  Roger W. Kirby
  Alice McInerney

September 15, 2014

**BY ECF AND HAND DELIVERY**

Honorable Naomi Reice Buchwald
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

    Re:    *In re Libor-Based Financial Instruments Antitrust Litig.,* 11 Civ. 2613, Master File No. 1:11-md-2262-NRB

Dear Judge Buchwald:

    On behalf of Exchange-Based Plaintiffs ("Plaintiffs"), we respond to Defendants' arguments to limit the scope of claims that Plaintiffs allege against Defendants Lloyds Banking Group plc, HBOS plc ("HBOs") and Lloyds TSB Bank Plc ("Lloyds TSB" and collectively, "Lloyds") and Defendant Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A. ("Rabobank").

    Defendants Lloyds and Rabobank recently entered into government settlements and criminal deferred prosecution agreements with the U.S. Department of Justice ("DOJ") in which they admit to, among other things, engaging in suppression and episodic trader-based manipulation of LIBOR during the proposed Class Period, January 1, 2005 through May 10, 2010. This Court should "freely give leave" to Plaintiffs to amend their complaint to include this new information of manipulation and specific instances of trader-based manipulation to support their claims.[1]

    **1.**    **Plaintiffs' Trader-Based Manipulation Claims Are Timely For All Periods.**

    Before the Lloyds and Rabobank government settlements disclosed specific examples of when these Defendants manipulated LIBOR to benefit their own trading positions, Plaintiffs could neither discover nor plausibly plead the particular contracts on which Plaintiffs were harmed. These government settlements provide only examples and not a complete set of dates on which these Defendants engaged in trader-based manipulation. Therefore, Plaintiffs still cannot discover all of their Eurodollar futures contract transactions that were harmed by Lloyds' or Rabobank's trader-based manipulation. The law of the case in this litigation is that the "discovery accrual rule" is applicable to Plaintiffs' claims under the Commodity Exchange Act ("CEA") wherein "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *LIBOR III*, at *15, Slip Op. at 40 (quoting *Koch v. Christie's Int'l PLC*, 699

---

[1] *In re LIBOR-Based Fin. Instruments Litig.*, No. 11-2262, 2014 WL 2815645, at *2, Slip Op. at 6 (S.D.N.Y. June 23, 2014) ("*LIBOR III*") [ECF No. 568]. *See also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 709, Slip Op. at 83 (S.D.N.Y. 2013) ("*LIBOR I*"); and *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 619, Slip Op. at 25 (S.D.N.Y. 2013) ("*LIBOR II*").

F.3d 141, 149 (2d Cir. 2012) (quoting *Rotella v. Wood*, 528 U.S. 549, 555 (2000)) (internal quotation marks omitted)). *See also In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 345-46 (S.D.N.Y. 2000) (the injury analysis must determine when Plaintiffs discovered or should have discovered their "economic injury from artificially high and non-competitive copper prices throughout the Class Period"). Plaintiffs' CEA claims against Rabobank and Lloyds based on trader-based manipulation of LIBOR are timely because Plaintiffs could not discover their injuries resulting from instances of trader-based manipulation until the settlements revealed the dates of misconduct.

This Court has held that: "plaintiffs must plead '(1) that they transacted in Eurodollar futures contracts on days on which Eurodollar futures contract prices were artificial as a result of trader-based manipulation of LIBOR, [and] (2) that their positions were such that they were injured.'" *LIBOR III*, at *3, Slip Op. at 10 (quoting *LIBOR II*, 962 F. Supp. 2d at 620-21). Plaintiffs thus would not have been on notice that Rabobank's or Lloyds' trader-based manipulation caused injury to their Eurodollar futures transactions until after the publication of the Rabobank and Lloyds settlements on October 29, 2013 and July 28, 2014, respectively. *See LIBOR III*, at 612 n.5, Slip Op. at 9 n.5 (a person of ordinary intelligence would have likely been put on inquiry notice of his injury from Barclays' trader-based manipulation only after the publication of the Barclays settlements on June 27, 2012). Currently undisclosed instances of trader-based manipulation on days when Defendants manipulated LIBOR to benefit their own trades remain to be determined through discovery. *See LIBOR II*, at 617, Slip Op. at 20 ("Thus, it appears that we cannot reasonably expect plaintiffs, prior to discovery, to have identified the particular contracts and transactions on which the moving defendants allegedly sought to profit."). Under this Court's reasoning that "we could not expect plaintiffs to connect their trading to instances of manipulative conduct that occurred on dates that are still not publicly available," *id.*, at 624 n.23, Slip Op. at 35 n.23, Plaintiffs' claims based on still undisclosed instances of trader-based manipulation cannot be time barred.

Moreover, any inquiry notice of the probability that "LIBOR was fixed at artificial levels beginning in August 2007" from constant suppression of LIBOR, is insufficient to trigger inquiry notice of the probability that Plaintiffs' Eurodollar futures transactions were injured by episodic trader-based manipulation. *See LIBOR III*, at *3 n.5, Slip Op. at 9 n.5 ("claims based on defendants' persistent suppression of LIBOR require different allegations to survive than do those based on day-to-day, trader-based manipulation."); *id.* at *5, Slip Op. at 15 ("while plaintiffs' damages are "plausible" based on a persistent suppression theory, even without allegations of specific transactions, damages are merely "conceivable"—and thus insufficiently pled—if LIBOR was allegedly being manipulated in different directions on different days."). Even under the Court's holding that Plaintiffs had inquiry notice subsequent to August 2007 of Defendants' systemic suppression of LIBOR, there is no authority supporting the argument that an ordinary person should have found it probable that she had been injured due to episodic trader-based LIBOR manipulation. *See Rotella*, 528 U.S. at 556 (a plaintiff must be in "possession of the critical facts that he has been hurt and who has inflicted the injury"); *Yeadon v. New York City Trans. Auth.*, 719 F. Supp. 204, 210 (S.D.N.Y. 1989) (claim not untimely where "plaintiffs knew of their injury, but lacked critical facts about who had inflicted them and for what reason"). Under Second Circuit authority, knowledge or conduct relating to one theory of a claim does not suffice to show knowledge or conduct relating to another theory of a claim. *See Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 363-64 (2d Cir. 2013) (holding inquiry notice of hiding income in a divorce proceeding is not inquiry notice of hiding a settlement for a property

investment, even if the latter was suspected); *see also In re Amaranth Natural Gas Commodities Litig.*, 730 F.3d 170, 185-86 (2d Cir. 2013) (separately examining the plausibility of allegations of intent supporting plaintiffs' two theories of manipulation). The same reasoning is applicable here.[2]

Plaintiffs could not have been on notice before they knew "that their positions were such that they were injured." *LIBOR III*, at *6, Slip Op. at 10 (quoting *LIBOR II*, 962 F. Supp. 2d at 620-21). This is consistent with the Court's holding that Plaintiffs "could not [be] expect[ed] . . . to connect their trading to instances of manipulative conduct that occurred on dates that are still not publicly available." *LIBOR II*, at 624 n.23, Slip Op. at 35 n.23.[3]

### 2. Plaintiffs Have Set Forth Good Reasons For Leave to Allege Trader-Based Manipulation Claims Against Rabobank.

Plaintiffs' motion for reconsideration of the Court's June 23, 2014 Order limiting the scope of trader-based manipulation claims against Rabobank to pre-August 2007 should be granted because Plaintiffs consistently have attempted to plead trader-based claims during the period after August 2007. Plaintiffs respectfully submit that the Court overlooked facts and the full scope of relief sought by Plaintiffs in the "initial motion" for leave to amend their Complaint. *See LIBOR III*, at *8, Slip Op. at 22 (citing Plaintiffs' Sept. 10, 2013 Letter at 1, 3). In their letter to the Court dated September 10, 2013, Plaintiffs filed a request for a pre-motion conference "to seek leave to amend their operative Complaint to allege: "the details of Plaintiffs' trades in Eurodollar Futures Contracts." ECF No. 402. Plaintiffs further requested leave to amend to allege that pre-August 2007 manipulation revealed by Barclays government settlements "disadvantaged certain plaintiffs' transactions made on the same day or within days of the misreport." *Id.* Plaintiffs' request for leave to amend to plead the details of their Eurodollar futures contracts was not limited to the pre-August 2007 time period. *See id.* at 1. In fact, Plaintiffs specifically noted in their request that they had not previously alleged a claim based on pre-August 2007 conduct "or trader-based manipulation" and that the SAC alleged specific instances of trader-based manipulation by Barclays during: i) 2005; ii) 2006 to August 2007; and iii) September 2007 until 2009. *Id.* (citing SAC ¶¶ 195-196).[4]

Then, on November 5, 2013, Plaintiffs filed a letter motion seeking a pre-motion conference regarding their request for leave to amend their Complaint to include previously-

---

[2] *See also LIBOR III*, at *3, Slip Op. at 10 (trader-based claims alleging "broad allegations" of LIBOR manipulation "insufficient to allege actual damages"); *LIBOR II*, at *13, Slip Op. at 33 ("we cannot say that the alleged trader-based manipulation was so constant that plaintiffs adequately plead actual damages by alleging merely that they traded during the Class Period.").

[3] This is why the Court held previously that "plaintiffs may advance claims against only Barclays and Rabobank," *LIBOR III* at *7, Slip Op. at 19, because there was no information connecting any of the other Defendants' conduct with Plaintiffs' injury.

[4] On September 10, 2013, Plaintiffs filed their Second Amended Complaint, as corrected on September 30, 2013, which included facts disclosed in government settlements with Defendants Barclays, UBS and RBS. ECF Nos. 407, 438. The SAC added a Commodity Exchange Act claim against ALL Defendants for trader-based manipulation during the period August 2007 through May 10, 2010 (SAC ¶¶ 512-22) and expanded the Class Period to include a claim against all Defendants based on trader-based manipulation during the period January 1, 2005 through early August 2007 (SAC ¶¶ 523-33). Therefore, as early as September 10, 2013, all Defendants were on notice that Plaintiffs intended to include claims against them based on trader-based manipulation for the entire Class Period, including during the period subsequent to August 2007.

unknown facts exposed by the Rabobank settlements.  ECF No. 493.  Not only did the pre-motion conference letter make no mention of the timeframe of manipulation, but also it expressly sought to "further amend" the complaint as to Rabobank.  It also expressly included **specific examples of post-August 2007** manipulations and explicitly noted that the Rabobank settlement documents show that "other Defendants, in addition to Barclays, UBS and RBS, engaged in trader based manipulation **between 2005 and 2008**."  Furthermore, it stated that dates of Rabobank's trader-based manipulation coincided with Barclays' manipulation on certain dates, **including** on September 26, 2007, and on various Eurodollar futures settlement dates, **including** on March 17, 2008.  *Id.* at 2-4.  The letter expressly stated that Plaintiffs could allege that their own Eurodollar futures trades were injured by the newly-revealed Rabobank manipulations.  *Id.* at 4 n.9.

And, in submissions to the Court on January 10, 2014, Plaintiffs further demonstrated that they could show that Plaintiffs Atlantic Trading and 303030 Trading were net purchasers/net sellers of Eurodollar futures contracts on days when Rabobank traders inflated/suppressed LIBOR to benefit their own trades.  This explicitly included many post-August 2007 trades, specifically including on September 10 and 27, 2007 and on March 17, 2008.  *See* ECF No. 523 at 5.  Plaintiffs stated that they "can adequately allege in conformance with the Court's August 23 Order" that Plaintiffs Atlantic Trading, 303030 Trading and FTC were "injured on those days." *Id.* at 6-7.

Rather than being "explicitly tied," as Rabobank asserts (ECF No. 493 at 3), to earlier temporal limitations, Plaintiffs' November 5, 2013 and January 10, 2014 submissions explicitly mentioned, expressly sought leave to plead, and carefully explained why they had suffered injuries from specific newly-revealed, post-August 2007 criminal manipulations by Rabobank.  Rabobank's opposing arguments are contrary to the policy favoring litigation on the merits, contrary to the explicit text of Plaintiffs' letters, and contrary to the common sense that newly revealed, post-August 2007 criminal manipulations by Rabobank had apparently injured Plaintiffs who were expressly seeking leave to allege and obtain redress for such specific instances.

Fairly read, Plaintiffs' November 5, 2013 request for leave to amend and January 10, 2014 memorandum put Rabobank and other Defendants on specific notice that Plaintiffs sought leave to make and intended to allege claims against Rabobank for trader-based manipulations during at least 2005 through 2008.  These submissions simply were not limited to the pre-August 2007 period.

Accordingly, Plaintiffs respectfully request that the Court reconsider its ruling as to the motion to amend with respect to the then newly-revealed criminal manipulations by Rabobank which Plaintiffs clearly sought to plead.

In addition, based on the new settlement with Lloyds, Plaintiffs have additional information that allows them to allege trader-based manipulation (and collusion) against Rabobank for the period beyond August 2007.  For this reason, Plaintiffs seek leave to amend.  Defendant Rabobank also erroneously argues that Plaintiffs' "sole basis" for seeking leave to amend the Complaint to assert trader-based manipulation claims against Rabobank is the recent Lloyds settlements.  ECF No. 609 at 1.  The deferred prosecution agreement that Rabobank entered into with the DOJ unequivocally demonstrates that Rabobank engaged in trader-based manipulation in August, September and October 2007 and March 2008, and these are but a few

examples of the unlawful conduct. *See* Rabobank DOJ SOF ¶¶ 17-26. Moreover, the Rabobank settlements, as well as related guilty pleas of its LIBOR submitters and traders, demonstrate that Rabobank's Dollar LIBOR and Yen LIBOR submissions were made by submitters in London until December 2008, and that a supervisor of Rabobank's money market desk in London not only knew but also participated in requests to "nudge up" Rabobank's USD LIBOR and Yen LIBOR to benefit trading positions. *See id.* ¶ 42 ("Submitter-3, who supervised the Yen LIBOR submitters in addition to the U.S. Dollar LIBOR submitters, was aware of the conduct on the desk he supervised and played an active role in it."); ¶¶ 17-60. Plaintiffs are entitled to plead facts from which the court can draw reasonable inferences of collusion between Rabobank and Lloyds. *See LIBOR II*, at 620, Slip. Op. at 25 ("a court must accept as true all well-pleaded factual allegations and must draw all reasonable inferences in favor of the plaintiff."). It would be premature to determine without a fully-developed record of allegations whether Plaintiffs are entitled to reasonable inferences of collusion between Rabobank and Lloyds.

### 3. Plaintiffs Have Set Forth Good Reasons For Leave to Allege Trader-Based Manipulation Claims Against Lloyds.

For the reasons set forth above, the Lloyds Defendants cannot establish that Plaintiffs' claim relating to January 17, 2008 is time barred. Notably, the trader-based manipulation on January 17, 2008 was requested for an artificially inflated 3-month LIBOR, which is contrary to any purported notice of LIBOR suppression during January 2008. *See* ECF No. 592. Before the Lloyds government settlements disclosed specific dates and direction of related trader-based LIBOR manipulation, Plaintiffs could not have been on notice of any injury to Eurodollar futures contract transactions that would have been harmed by LIBOR inflation. Also, Defendants have raised a fact-intensive inquiry into whether there was any compliance with a requested manipulation on May 11, 2009, which is better left to discovery, especially given that the incident was significant enough to be included in the facts giving rise to the DOJ's deferred prosecution agreement and Lloyds' submitter's assistant pledged to "see what we can do" and suggested future collusion was to coordinate "libor inputs to suit the books." *See* Lloyds DOJ SOF ¶ 19.

Accordingly, Defendants Rabobank and Lloyds have failed to carry their burden to show that claims for trader-based LIBOR manipulation for Eurodollar contracts purchased during or subsequent to August 2007 are untimely, or that Plaintiffs' proposed amendment is futile. Therefore, this Court should grant leave to Plaintiffs to file their Amended Complaint and include trader-based manipulation claims against Rabobank and Lloyds during the entire Class Period.

Respectfully submitted,

| | |
|---|---|
|  */s/ Christopher Lovell*  |  */s/ David E. Kovel*  |
| Christopher Lovell | David E. Kovel |
| LOVELL STEWART HALEBIAN | KIRBY McINERNEY LLP |
| JACOBSON LLP | |

*Interim Co-Lead Counsel for Exchange-Based Plaintiffs and the Proposed Class*

cc:     All Counsel of Record (by Electronic Filing)