## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANICAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262, 11 Civ. 2613 |
| | No. 1:11-MD-02262-NRB |
| THIS DOCUMENT RELATES TO: EXCHANGE-BASED PLAINTIFFS ACTION | |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO PRELIMINARILY APPROVE EXCHANGE-BASED PLAINTIFFS' SETTLEMENT WITH DEFENDANT BARCLAYS BANK PLC AND TO CONDITIONALLY CERTIFY SETTLEMENT CLASS

**LOVELL STEWART HALEBIAN JACOBSON LLP**
Christopher Lovell
61 Broadway, Suite 501
New York, NY 10006
Telephone: (212) 608-1900
Facsimile: (212) 719-4775
Email: clovell@lshllp.com

**KIRBY McINERNEY LLP**
David Kovel
Lauren Wagner Pederson
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: (212) 371-6600
Facsimile: (212) 751-2540
Email: dkovel@kmllp.com
Email: lpederson@kmllp.com

TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

      Overview of the Terms and Benefits of the Proposed Barclays Settlement ........................1

      Overview of the Court's Authority to Preliminarily Approve the Proposed Barclays
      Settlement .................................................................................................................3

II.   STATEMENT OF FACTS ......................................................................................5

      A.    Procedural Chronology.........................................................................................5

      B.    Chronology of Settlement Negotiations .................................................................8

      C.    All Cash Payment And Cooperation .......................................................................8

III.  ARGUMENT ...........................................................................................................9

      A.  The Authority of This MDL Court to Approve, And The Strong Judicial Policy In Favor
          Of Approving Early Class Action Settlements ..............................................................9

      1.    A settlement involving only one or a subset of class actions that are
      consolidated into an MDL is appropriate.

            2.    A settlement involving a putative class that has not yet been certified and
                  is represented by interim co-lead counsel is appropriate.

            3.    The fact that some claims implicated in the settlement were filed in this
                  District while others were transferred by MDL Order from other Districts
                  does not detract from the Court's authority to approve the proposed
                  Barclays Settlement.

      B.    The Proposed Barclays Settlement Is Clearly Within The Range of What May
            Possibly Be Found To Be A Fair and Reasonable Settlement At Final
            Approval……………………………………………………………….…...13

            1.  The Process of Arm's Length Negotiations Fully Supports
                Preliminary Approval..............................................................................14

            2.    The Unique Combination Of Value From This Ice-Breaker Proposed
                  Settlement Amply Warrants Preliminary Approval Because It Is Well
                  Within The Range Of What Possibly May Be Found At The Final
                  Approval Stage To Be Fair And Reasonable ............................................15

3.  Applying the *Grinnell* Final Approval Factors To The
        Circumstances Here Fully Supports Preliminary Approval......................18

    a.  Unlike In *Grinnell*, Recovery On The Claims Being Settled Here Is Not
        Foreclosed For Most Of The Alleged Wrongdoing Because Of The
        Availability of Joint And Several Liability Of Other Defendants From
        Whom Plaintiffs May Recover ................................................................19

    b.  *Grinnell* Factors 4, 5 and 6: Due To The Dismissal With Prejudice Of All
        Claims Except For A Portion Of The CEA Manipulation Claims, And The
        Legal Uncertainties And Factual Risks Of The Undismissed Claims, The
        Risks Of Establishing Liability And Damages Are Very Substantial…20

    c.  *Grinnell* Factors 8 and 9: The Range Of Reasonableness Of The
        Settlement Fund In Light Of The Likely Or Best Possible Recovery And
        All The Attendant Risks Of Litigation…………………………………...23

    d.  *Grinnell* Factor 3: The Stage Of The Proceedings And The Amount Of
        Discovery Completed.................................................................................25

    e.  *Grinnell* Factors 2 and 7: The Reaction Of The Class To The Settlement,
        And The Ability Of The Settling Defendants To Withstand A Greater
        Judgment .................................................................................................26

C.  The Court Should Conditionally Certify A Settlement Class As To The Claims
    Against Barclays Subject To Final Certification At The Final Approval Stage....27

    1.  The Requirements of Rule 23(a) Are Conditionally Satisfied As To The
        Settlement Class On The Claims Against Barclays ...................................28

        a. Numerosity Of The Settlement Class Is Conditionally Satisfied As To
           The Claims Against Barclays.................................................................28

        b. There Are Common Questions of Law and Fact As To The Claims Of
           Settlement Class Members Against Barclays.........................................28

        c. Typicality Of The Plaintiffs Is Conditionally Satisfied As To The
           Claims Against Barclays ......................................................................30

        d. Adequacy Of The Class Representatives Is Conditionally Satisfied As
           To The Claims Against Barclays............................................................31

    2.  The Proposed Settlement Class Conditionally Satisfies The Two Prongs
        Of Rule 23(b)(3) As To The Claims Against Barclays..............................32

a. Common Questions of Law and Fact On The Claims Against Barclays
Do Conditionally Predominate Among Settlement Class Members ........33

b. A Settlement Class Is Conditionally The Superior Method To
Adjudicate The Claims Against Barclays, And Preserves Judicial
Resources ..................................................................................................33

D.     The Court Should Conditionally Appoint Lovell Stewart And Kirby McInerney
To Act As Class Counsel For The Settlement Class..............................................34

E.     The Court Should Direct Class Counsel To Propose And Move For Approval Of
A Plan And Forms Of Notice Within Ninety Days Of Preliminary Approval Of
The Proposed Settlement Of The Claims Against Barclays ..................................34

IV. CONCLUSION......................................................................................................................36

TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..................................................................................................... 27, 31

*Aponte v. Comprehensive Health Management, Inc.*
  2013 WL 1364147 (S.D.N.Y. 2013)................................................................................... 10

*Armstrong v. Bd of Sch. Dir. of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980)*, Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ..................... 19

*Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*,
  222 F.3d 52 (2d Cir. 2000)................................................................................................. 31

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) (Ellis, M.J.) ........................................................................ 2

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)........................................................................................................... 24

*Buxbaum v. Deutsche Bank AG*,
  216 F.R.D. 72 (S.D.N.Y. 2003) .......................................................................................... 35

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)......................................................................................... 18, 19

*Consolidated Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)................................................................................................. 28

*D'Amato v. Deutsche Bank*,
  236 F.3d 76 (2d Cir. 2001)................................................................................................. 26

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)............................................................................................... 12

*Eisen v. Carlisle & Jacquelin*,
  391 F.2d 555 (2d Cir.1968)................................................................................................ 30

*FTC Capital Gmbh v. Credit Suisse Group AG et al.*,
  Class Action Complaint, ECF No. 1, No. 11 Civ. 2613 (S.D.N.Y.)............................................ 5

*Gautreaux v. Pierce*,
  690 F.2d 616, 621 n.3 (7th Cir. 1982) ................................................................................. 19

*Gen. Tel. Co. of Southwest v. Falcon*,

457 U.S. 147 (1982)............................................................................................. 31

*In re Advanced Battery Technologies, Inc. Securities Litig.,*
298 F.R.D. 171 (S.D.N.Y. 2014) ..................................................................... 10

*In re Agent Orange Prod. Liab. Litig.,*
818 F.2d 145 (2d Cir. 1987)............................................................................. 25

*In re Air Cargo Shipping Antitrust Litig.,*
No. 06-MD-1775, 2009 WL 3077396 (E.D.N.Y. 2009)........................... 2, 11, 14, 23

*In re Amaranth Natural Gas Commodities Litig.,*
269 F.R.D. 366 (S.D.N.Y. 2010) (SAS) ...................................................... 21, 31

*In re Amaranth Natural Gas Commodities Litig.,*
730 F.3d 170 (2d Cir. 2013).............................................................................. 21

*In re Ampicillin Antitrust Litig.,*
82 F.R.D. 652 (D.D.C. 1979)............................................................................ 17

*In re Anthony J. DiPlacido,*
364 F.3d. Appx. 657 CFTC Nov. 5, 2008) .................................................. 21, 22

*In re AT&T Mobility Wireless Data Serv. Sales Litig.,*
270 F.R.D. 330 (N.D. Ill. 2010) ....................................................................... 19

*In re Automotive Parts Antitrust Litig.*
2:12-CV-00203-MOB, 2014 WL 1377828 (E.D. Mich. Feb. 13, 2014) ............. 3, 16

*In re Baldwin-United Corp.,*
105 F.R.D. 475 (S.D.N.Y. 1984) ...................................................................... 19

*In re Chambers Dev. Sec. Litig.,*
912 F. Supp. 822 (W.D. Pa. 1995)................................................................... 23

*In re Chocolate Confectionary Antitrust Litig.,*
No. 08-MD-1935 (E.D. Pa.)............................................................................... 11

*In re Commodity Exchange, Inc. Silver Futures and Options Trading Litig.,*
560 Fed.Appx. 84 (2d Cir. 2014) ..................................................................... 21

*In re Corrugated Container Antitrust Litig.,*
643 F.2d 195 (5th Cir. 1981) ............................................................................ 32

*In re Currency Conversion Fee Antitrust Litig.,*
01 MDL 1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006)............................. 14, 22

*In re Drexel Burnham Lambert Group Inc.*,
  960 F.2d 285 (2d Cir. 1992) ......................................................................... 30

*In re Global Crossing Sec. and ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y.2004) ............................................................... passim

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) (Buchwald, J.) ......................................... 2, 10, 18

*In re Initial Pub. Offering Sec. Litig.*,
  226 F.R.D. 186 (S.D.N.Y. 2005) ............................................................ 12, 14, 17

*In re Initial Public Offering Sec. Litig.*
  260 F.R.D. 81 (S.D.N.Y. 2009 ) ............................................................... passim

*In re Lehman Brothers Securities and ERISA Litigation*,
  No. 09-MD-2017 (LAK) (S.D.N.Y.) ................................................................ 11

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003) ......................................................... 3, 16

*In re Marsh & McLennan Sec. Litig.*,
  No. 04 Civ. 8144, 2009 WL 5178546, at *23-24 ................................................ 35

*In re Managed Care Litig.*,
  246 F. Supp. 2d 1363 (J.P.M.L. 2003) ....................................................... 4, 10

*In re Municipal Derivatives Antitrust Litig.*,
  No. 08-MD-1950, Master Dkt. No. 08-CV- (S.D.N.Y.), ......................................... 11

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
  176 F.R.D. 99, 102 (S.D.N.Y. 1997) ....................................................... 4, 13, 14

*In re NASDAQ Market-Makers Antitrust Litig.*,
  No. 94 Civ. 3996, 1999 WL 395407 (S.D.N.Y. June 15, 1999) ................................. 35

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................. 14, 25

*In re Natural Gas Commodities Litig.*,
  231 F.R.D. 171 (S.D.N.Y. 2005) .................................................................. 21

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*,
  No. 10-MD-2179 (E.D. La.) ....................................................................... 11

*In re Packaged Ice Antitrust Litig.*,

08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)............................................ 3, 16

*In re PaineWebber Ltd. P'ships Litig.*,
   147 F.3d 132 (2d Cir. 1998)) ......................................................................... 2, 10

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) (Pollack, J.) ..................................................... 15

*In re Patenaude*,
   210 F.3d 135 (3d Cir. 2000)................................................................................. 4

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ............................................................. 19, 28, 35

*In re Sumitomo Copper Litig.*,
   194 F.R.D. 480 (S.D.N.Y. 2000) ...................................................................... 21

*In re Sumitomo Copper Litig.*,
   74 Supp.2d 393 (S.D.N.Y. 1999) (Pollack, J.).................................................... 22

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 07-MD-1827 (N.D. Cal.)................................................................... 11, 12, 23

*In re Traffic Exec. Ass'n. E. R.R.s.*,
   627 F.2d 631 (2d Cir. 1980)............................................................................... 13

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 0165 (CM) 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ................... 27

*Johnston v. HBO Film Mgmt., Inc.*,
   265 F.3d 178 (3d Cir. 2001)............................................................................... 28

*Kaye v. Fast Food Operators, Inc.* ,
   99 F.R.D. 161 (S.D.N.Y. 1983) ......................................................................... 14

*Marisol A. by Forbes v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997)......................................................................... 28, 30

*Masters v. Wilhelmina Model Agency, Inc.*,
   473 F.3d 423 (2d Cir. 2007)............................................................................... 34

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1995)......................................................................... 18, 23

*McBean v. City of New York.*
   233 F.R.D. 377 (S.D.N.Y. 2006) ....................................................................... 26

*Monaco v. Carpinello*,
   2007 WL 1174900  (E.D.N.Y. 2007)......................................................................... 14

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)................................................................................... 23

*Plummer v. Chem. Bank*,
   668 F.2d 654 (2d Cir. 1982)................................................................................... 27

*Shapiro v. JPMorgan Chase & Co.*,
   11 CIV. 8331 CM MHD, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)................................ 15

*State Street Bank & Trust Co. ERISA Litig.*,
   No. 07-Civ-8488, 2009 WL 3458705 (S.D.N.Y. Oct. 28, 2009).............................................. 19

*Strobl v. New York Mercantile Exch.*,
   582 F. Supp. 770 (S.D.N.Y. 1984) ............................................................... 19, 21, 22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)............................................................................... 2, 10

*Weil v. Long Island Sav. Bank*,
   200 F.R.D. 164 (E.D.N.Y. 2001) ............................................................................ 28

*Williams v. First Nat'l Bank*,
   216 U.S. 582 (1910)............................................................................................. 10

**Statutes**

7 U.S.C. §13(a) ..................................................................................................... 5

7 U.S.C. §2(a)(1)................................................................................................... 6

7 U.S.C. §25(a) ..................................................................................................... 20

15 U.S.C. §1.......................................................................................................... 6

28 U.S.C. § 1407 .................................................................................................. 4

**Rules**

Fed. R. Civ. P. 23.................................................................................................. 1

Fed. R. Civ. P. 23(a) ...................................................................................... 27, 32

Fed. R. Civ. P. 23(a)(1) ................................................................................................ 28

Fed. R. Civ. P. 23(a)(2) ........................................................................................... 28, 30

Fed. R. Civ. P.23(a)(3) .................................................................................................. 30

Fed. R. Civ. P. 23(a)(4) ............................................................................................ 31, 32

Fed. R. Civ. P. 23(b) ..................................................................................................... 32

Fed. R. Civ. P. 23(b)(3) ..................................................................................... 27, 32, 33, 34

Fed. R. Civ. P. 23(b)(3)(A)-(D) ...................................................................................... 33

Fed. R. Civ. P. 23(c) ...................................................................................................... 34

Fed. R. Civ. P. 23(c)(2) .................................................................................................. 35

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................ 34

Fed. R. Civ. P. 23(e) ................................................................................................... 9, 35

Fed. R. Civ. P. 23(g)(1) ............................................................................................ 33, 34

Fed. R. Civ. P.23(g)(2) .............................................................................................. 33, 34

## Other Authorities

Herbert B. Newberg & Alba Conte,
   *Newberg on Class Actions* § 11.41, at 89 (4th ed. 2002) ...................................... 9, 25

Jerry W. Markham, *Manipulation of Commodity Futures Prices – The Unprosecutable
   Crime*, 8 Yale J. on Reg. 281 (1991) .................................................................. 22

Manual for Complex Litigation (Fourth) § 21.651 (2004) ......................................... 10, 12, 13, 14

# I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") Rule 23, the Exchange-Based Plaintiffs ("Plaintiffs") respectfully submit this memorandum of law in support of their motion for an Order preliminarily approving the Settlement Agreement between Plaintiffs and Defendant Barclays Bank plc ("Barclays").[1]  As parts of Preliminary Approval, the Court should conditionally certify a Settlement Class on Plaintiffs' claims against Barclays based upon their Eurodollar futures and options contracts transactions and direct Plaintiffs to submit, within ninety days of preliminary approval, a proposed plan and proposed forms of notice to the Settlement Class of the proposed Barclays Settlement.

**Overview of the Terms and Benefits of the Proposed Barclays Settlement.**  Pursuant to the terms of the Settlement Agreement, Barclays will pay **$19,975,000.00** and provide important information, documents and other cooperation to Plaintiffs that will enable Plaintiffs to name new Defendants, make new allegations against existing Defendants, and otherwise improve Plaintiffs' claims against the new and existing non-settling Defendants.  *See* Section II. C, *infra* (listing the cooperation).  The $19,975,000 is not subject to any reversion.  That is, no matter how many Class members do or do not file proofs of claim, none of the Settlement will revert to Barclays.

In consideration therefor, the Plaintiffs' claims based upon their Eurodollar futures and options contracts transactions against Barclays will be dismissed, and Barclays will be released from **and solely from** damages, losses or other claims in respect of Eurodollar futures contracts or option contract transactions relating to the subject matter of this action.

---

[1] The Settlement Agreement between Exchange-Based Plaintiffs and Barclays ("Settlement Agreement" or "Agreement") dated October 7, 2014, is annexed as Exhibit 1 to the Declaration of Christopher Lovell in support of this motion ("Lovell Decl.").

"At the outset, we emphasize that there is a 'strong judicial policy in favor of settlements, particularly in the class action context.'" *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012) (Buchwald, J.) (citing *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005) (emphasizing the "strong judicial policy in favor of settlements, particularly in the class action context").

"[C]ourts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013) (Ellis, M.J.) (citing cases).

The consideration provided by the proposed Barclays Settlement merits preliminary approval because it is well within the range of what may "possibly" be found to be reasonable at the final settlement approval stage. *See* Section III. B. 2, *infra*. Indeed, the Settlement involves a unique combination of consideration. This includes substantial, all-cash monetary compensation. It includes valuable cooperation that will enable Plaintiffs to add party Defendants, add many new specific allegations against existing Defendants, and otherwise improve Plaintiffs' claims. It further provides the benefit to Class members who submit proofs of valid claims that the entire Net Settlement Fund will be distributed among them with no reversion to Barclays of Settlement monies in respect of the persons who fail to submit proofs of claim.

This valuable combination of consideration:

(a) removes risks associated with litigating against the settling defendant, *see In re Air Cargo Shipping Antitrust Litig.*, No. 06-MD-1775, 2009 WL 3077396, at *8 (E.D.N.Y. 2009)

(noting settlement was beneficial because it allowed plaintiffs to avoid fighting over damages and class certification with settling defendant);

(b) provides for immediate cooperation from settling parties, which will afford access to documents, and other information without protracted and expensive discovery, and which will aid in resolving claims against the remaining defendants and enable Plaintiffs to name new party Defendants, *see id.* (the settling defendant's "obligation under the settlement to cooperate may assist plaintiffs to resolve the action as against the outstanding defendants");

(c) materially enhances the recovery from the Settlement to those Class members who do file proofs of valid claims; and

(d) acts as an "ice breaker" or catalyst settlement that often has encouraged further defendants to settle in prior class actions.  *See, e.g., In re Linerboard Antitrust Litig.,* 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) ("The Court also notes that this settlement has significant value as an 'ice-breaker' settlement - it is the first settlement in the litigation - and should increase the likelihood of future settlements."); *In re Packaged Ice Antitrust Litig.*, 08-MD-01952, 2011 WL 717519 *10 (E.D. Mich. Feb. 22, 2011) ("Also of significant value is the fact that the Settlement Agreement with Home City can serve as an "ice-breaker" settlement and includes the promise of cooperation from Home City which, as discussed above, has already been beneficial to the Plaintiffs in their continued prosecution of their claims against the non-settling Defendants"); *In re Automotive Parts Antitrust Litig.* 2:12-CV-00203-MOB, 2014 WL 1377828 (E.D. Mich. Feb. 13, 2014) (court preliminary approves an "ice breaker" settlement with Nippon Seiki defendants and provisionally certifies a settlement class).

**Overview of the Court's Authority to Preliminarily Approve the Proposed Barclays Settlement.**  The authority to approve an early settlement is among the pre-trial matters within

this Court's purview in multidistrict ("MDL") litigation under 28 U.S.C. § 1407.  *E.g.*, *In re Patenaude*, 210 F.3d 135, 144 (3d Cir. 2000) ("there is no basis for concluding that settlement conferences are not pretrial proceedings" under 28 U.S.C. § 1407); *In re Managed Care Litig.*, 246 F. Supp. 2d 1363 (J.P.M.L. 2003) ("It is established Panel and court of appeals precedent that settlement matters are appropriate pretrial proceedings subject to centralization under § 1407.").

"Where the proposed settlement appears to be the product of serious, informed, non–collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted."  *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).  *See* Section III.A, *infra* expanding upon the authority of this Court to enter and the propriety in these circumstances of entering an order of preliminary approval of the proposed Barclays Settlement.

Exercising that authority is especially appropriate where, as is demonstrated in detail hereinafter:

(A) Settlements of this type at this stage in multidistrict litigation have repeatedly been approved and are clearly appropriate in circumstances lesser or similar to those now before the Court.  *See id.*, *infra*.

(B) The process that led to the Barclays' settlement was one of arm's-length negotiations between experienced counsel for the parties, including Court-appointed Interim Co-Lead Counsel ("Co-Lead Counsel") for the Eurodollar futures contracts and options traders (*i.e.*, the **only** claiming persons in these litigations who are settling their claims for products affected by the Settlement).

4

(C) Such Interim Co-Lead Counsel had and have been expressly empowered by this Court to negotiate to settle claims, including at this stage of the litigation. *See* Pretrial Order No. 1, ECF No. 90, ¶18 (quoted in the Statement of Facts *infra*); Section III. B. and B.1, *infra*.

(D) The Settlement consideration and other terms provide very substantial value to the Settlement Class, and otherwise amply satisfy the controlling standards for preliminary approval. *See* Section *id*. B.2-3, *infra*.

(E) Given the overwhelming common questions of law (as indicated by more than 300 pages of decisions by this Court on the motions to dismiss) and extensive common questions of fact, the claims of the Settlement Class against Barclays are clearly worthy of conditional certification of the Settlement Class on the claims against Barclays for purposes of sending notice to the Settlement Class and subject to final certification of the Settlement Class at the final approval stage. *See id.*, C, *infra*.

## II.      STATEMENT OF FACTS

### A.      Procedural Chronology

On April 15, 2011, an exchange-based Plaintiff, FTC Capital GmBH and its associated entities, filed the first complaint in what became the consolidated LIBOR actions.  The complaint alleged that Defendants and others manipulated the price of LIBOR and Eurodollar futures in violation of Section 9(a) of the Commodity Exchange Act, 7 U.S.C. §13(a) ("CEA").  *See FTC Capital Gmbh v. Credit Suisse Group AG et al.*, Class Action Complaint, ECF No. 1, No. 11 Civ. 2613 (S.D.N.Y.)

On November 29, 2011, the Court consolidated all LIBOR-related class action complaints pending before the Court.  ECF No. 66.  The Court appointed Kirby McInerney LLP ("Kirby McInerney") and Lovell Stewart Halebian Jacobson LLP ("Lovell Stewart") as Interim Co-Lead Counsel for the Exchange-Based Plaintiffs.  *Id.*

On December 22, 2011, this Court entered Pretrial Order No. 1.  ECF No. 90.  Among other things, this Order invested Interim Co-Lead Counsel with both the responsibility and the authority to "negotiate with defense counsel with respect to settlement and other matters," "[t]o request that the Court approve settlements, if any, and fee awards," and "[t]o perform such other duties and to undertake such other responsibilities as [Interim Co-Lead Counsel] deem[s] necessary or desirable in the prosecution of this litigation."  *Id.* at ¶18.

On April 30, 2012, Plaintiffs filed their Amended Consolidated Class Action Complaint. Amended Consolidated Class Action Complaint. [ECF No. 134].  It alleged that Defendants and others manipulated the U.S. Dollar LIBOR ("LIBOR") rate and the price of Eurodollar futures and options contracts in violation of Section 9(a) of the CEA, are liable for the manipulative acts of agents, representatives and/or other persons acting for Defendants under Section 2(a)(1) of the CEA, 7 U.S.C. §2(a)(1), aided and abetted violations of Section 9(a) of the CEA, agreed to fix and suppress LIBOR in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. §1 ("Sherman Act"), and were unjustly enriched by such manipulation and agreement in violation of the common law.

On March 29, 2013, after extensive motion practice by Plaintiffs and Defendants, the Court issued a 161 page Memorandum and Order.  Therein, the Court (1) granted Defendants' motion to dismiss Plaintiffs' federal antitrust claim and unjust enrichment claim, (2) granted Defendants' motion to dismiss with respect to Plaintiffs' commodity manipulation claims based on Eurodollar futures and options contracts purchased during Period 1 (August 2007 to May 29, 2008), (3) denied Defendants' motion to dismiss with respect to Plaintiffs' commodity manipulation claims based on Eurodollar futures and options contracts purchased during Period 2 (May 30, 2008 to April 14, 2009)  and Period 3 (April 15, 2009 to May 2010), and (4) allowed

Plaintiffs to move to amend their complaint to include allegations based on information derived from the Barclays settlements with government agencies.  [ECF No. 286].

On August 23, 2013, after further extensive motion practice by Plaintiffs and Defendants the Court issued a 65 page Memorandum and Order.  Therein, the Court (1) denied Plaintiffs' motion to add allegations with respect to antitrust and trader-based manipulation, (2) denied Defendants Bank of Tokyo-Mitsubishi UFJ, Ltd., Credit Suisse Group AG, and Norinchukin Bank's motion for reconsideration without prejudice, and (3) allowed Plaintiffs to file a second amended complaint in conformity with such Memorandum and Order [ECF No. 389], which Plaintiffs filed in September 2013.

On October 8, 2013, after still further extensive motion practice by Defendants and Plaintiffs, the Court issued a Memorandum and Order.  Therein, the Court (1) granted Defendants' request for leave to file their Renewed Motion to dismissed Plaintiffs' Period 2 CEA Claims, and (2) stayed a decision on the permissible content of the Second Consolidated Amended Complaint until resolution of other then-pending motions.  [ECF No. 452].

On October 17, 2013, the Court denied Plaintiffs' renewed motion for disclosure of documents that Defendants and their subsidiaries produced to the Commodity Futures Trading Commission ("CFTC") and other governmental agencies related to LIBOR.  [ECF No. 489].

On June 23, 2014, after yet even more substantial motion practice by Plaintiffs and Defendants, the Court issued an 80 page Memorandum and Order.  Therein, the Court (1) denied Plaintiffs' motion for reconsideration of the Court's August 23, 2013 Order, (2) granted Plaintiffs' motion for leave to amend their complaint to add certain allegations of day-to-day, trader-based manipulation, (3) denied Defendants' motion for reconsideration of the Court's holding that Plaintiffs have adequately pled scienter, and (4) granted Defendants' motion to

dismiss Plaintiffs' commodity manipulation claims based on Eurodollar futures and options contracts purchased during Period 2 (May 30, 2008 to April 14, 2009).  [ECF No. 568].

On August 22, 2014, counsel for Barclays and Plaintiffs signed a Memorandum of Understanding ("MOU").  This MOU set forth the terms on which the parties agreed, subject to the preparation of a full Settlement Agreement, to settle all claims based on Eurodollar futures and options contracts transactions during the proposed Class Period that Plaintiffs have or could have asserted against Barclays in this action.  The MOU was the culmination of arms-length, settlement negotiations that extended over more than twelve months.  *See* Lovell Decl. ¶7.

On September 4, 2014, Plaintiffs and Barclays notified the Court of the execution of the MOU and their intention to move for preliminary approval of a Barclays settlement.

On October 7, 2014, Plaintiffs and Barclays executed the Settlement Agreement annexed as Ex. A to the Lovell Decl.  As set forth therein, the proposed Settlement Class is limited to the following definition:

> All Persons (other than Defendants, their employees, affiliates, parents, subsidiaries, and co-conspirators) that transacted in LIBOR-based Eurodollar futures contracts or options on exchanges such as the Chicago Mercantile Exchange between January 1, 2005 and May 31, 2010.

Settlement Agreement ¶ 4.

## B. Chronology of Settlement Negotiations

Beginning in August 2013, Interim Co-Lead Counsel entered arm's length negotiations with counsel for Barclays in order to attempt to reach a settlement of the Exchange-Based Plaintiffs' claims based upon their Eurodollar futures and options contract transactions against Barclays.  Lovell Decl. ¶7.  These negotiations included numerous telephone conferences, meetings, emails, and other communications.  *Id.*  At no time was there any collusion.  *Id.* at ¶4.

After extensive and hard fought negotiations, a memorandum of understanding was executed on August 22, 2014, and the Settlement Agreement was executed on October 7, 2014.

### C.  All Cash Payment And Cooperation

Barclays has agreed to pay $19,975,000.00 in cash and further has agreed to cooperate with Plaintiffs through a proffer and other steps.  Such steps include production by Barclays of the following categories of documents: (1) direct communications between Barclays employees and employees of other financial institutions, including LIBOR panel banks, that represent possible requests to or among other panel banks for LIBOR submissions to be made at a certain level or in a certain direction, (2) liquidity updates circulated by personnel on Barclays' London Money Markets Desk, including those which reference Barclays' and other LIBOR panel banks' LIBOR submissions and including those which were created after April 14, 2009, (3) documents reflecting Barclays' knowledge of other panel banks' expected LIBOR submissions including those which were created after April 14, 2009, and (4) documents quoted in Plaintiffs' Complaint that are in Barclays' possession or control.

Plaintiffs now move pursuant to Fed. R. Civ. P. 23 for an Order preliminarily approving the Settlement.  Further facts are set forth in the context of "Argument" below.

### III.  ARGUMENT

### A.  The Authority Of This MDL Court To Approve, And The Strong Judicial Policy In Favor Of Approving Early Class Action Settlements

Proposed settlements of Fed. R. Civ. P. Rule 23(b)(3) classes require notice to class members, an opportunity to object, and final approval by the Court.  Fed. R. Civ. P. 23(e); *see generally* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41, at 89 (4th ed. 2002).

"Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910).  As the Second Circuit has also stated, there is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores,* 396 F.3d at 116

In reviewing proposed class action settlements, Courts should recognize this "general policy favoring settlement." *In re IMAX Sec. Litig.*, 283 F.R.D. at 188 (Buchwald, J.) ("At the outset, we emphasize that there is a 'strong judicial policy in favor of settlements, particularly in the class action context.'") (citing *PaineWebber*, 147 F.3d at 138; *see In re Advanced Battery Technologies, Inc. Securities Litig.,* 298 F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation."); *Aponte v. Comprehensive Health Management, Inc.* 2013 WL 1364147 *2 (S.D.N.Y. 2013) (same).

### 1.     A settlement involving only one or a subset of class actions that are consolidated into an MDL is appropriate.

"Partial settlements in multidistrict litigation involving multiple defendants are routine." *In re Managed Care Litig.*, 246 F. Supp. 2d 1363, 1366 n.3 (J.P.M.L. 2003); *see also* Manual for Complex Litigation (Fourth) § 21.651 (2004).  Furthermore, the Exchange-Based Plaintiffs' proposed settlement with Barclays will not disrupt the ongoing adjudication of remaining claims in these MDL proceedings.

In this MDL, all class actions asserting claims on behalf of exchange-based traders of LIBOR-based financial instruments have been consolidated into a single putative class action, as reflected in the Exchange-Based Plaintiffs' Second Amended Consolidated Class Action Complaint.  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-MD-2262, 11 Civ. 2613

[ECF Nos. 66, 187, 438].  Counsel for those plaintiffs have given their consent to the proposed settlement.

Further, only one of the individual actions in the MDL—*Amabile et al. v. Bank of America Corporation et al.*, No. 13-CV-1700—falls within the scope of the proposed settlement. *Amabile* Compl. ¶¶ 35, 171 n.80 ("Plaintiffs are aware that a class action complaint was filed which ostensibly includes them as absent class members.").  If the *Amabile* plaintiffs wish to pursue their claims individually, they will have the opportunity to opt out of the settlement.

Approval of partial settlements in MDL cases is now quite common.  Examples of such cases include:

- *In re Municipal Derivatives Antitrust Litig.*, No. 08-MD-1950, Master Dkt. No. 08-CV-(S.D.N.Y.), Master Dkt. Nos. 1208, 1667, 1693, 1828, 1829 (orders preliminarily approving partial settlements among different settlement classes and individual defendants).

- *In re Lehman Brothers Securities and ERISA Litigation*, No. 09-MD-2017 (LAK) (S.D.N.Y.), Dkt. Nos. 548, 549, 1291, 1350 (orders preliminarily approving four partial settlements between different plaintiff classes and defendants, including directors and officers of Lehman Brothers, a group of underwriter defendants, underwriter defendant UBS, and Lehman's former auditor).

- *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 (E.D.N.Y.), Dkt. Nos. 732, 1254-56, 1291, 1362-63, 1381, 1418, 1568-72, 1622, 1630, 1652, 1657, 1979-80, 2017 (orders preliminarily approving partial settlements among various plaintiff classes and individual defendants).

- *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-MD-1827 (N.D. Cal.), Dkt. Nos. 4688, 6311 (orders preliminarily approving ten partial settlements among different consumer classes and individual defendants).

- *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, No. 10-MD-2179 (E.D. La.), Dkt. Nos. 6418, 6419 (orders preliminarily approving partial settlements between BP and classes of plaintiffs seeking economic and property damages and medical compensation and benefits).

- *In re Chocolate Confectionary Antitrust Litig.*, No. 08-MD-1935 (E.D. Pa.), Dkt. Nos. 1023-25 (orders preliminarily approving partial settlements involving classes of indirect purchasers for resale, direct purchasers, and indirect end users).

> **2.    A settlement involving a putative class that has not yet been certified and is represented by interim co-lead counsel is appropriate.**

The fact that the Exchange-Based Plaintiffs' putative class has not yet been certified and is represented by Interim Co-Lead Counsel does not prevent the Court's approval of a reasonable settlement.  Manual for Complex Litigation (Fourth) § 21.132 ("Parties frequently settle before the judge has decided whether to certify a class.").   In this situation, classes are frequently certified specifically for the purpose of settlement.  Conditional or provisional certification is a mechanism commonly used as part of the preliminary approval process to outline the contours of the proposed settlement class for purposes of notice to the proposed class members.  *See, e.g.*, *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (holding that conditional certification of settlement classes is permissible under Fed. R. Civ. P. 23).   "The use of a settlement class allows the parties to concede, for purposes of settlement negotiations, the propriety of bringing the suit as a class action and allows the court to postpone formal certification of the class until after settlement negotiations have ended."   *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 190 (S.D.N.Y. 2005).

In all but one of the cases listed in the previous section (*In re TFT-LCD (Flat Panel) Antitrust Litigation*), at least one partial settlement was approved prior to the certification of any litigation class, and the certification of settlement classes was properly integrated into the approval process.

> **3.    The fact that some claims implicated in the settlement were filed in this District while others were transferred by MDL Order from other Districts does not detract from the Court's authority to approve the proposed Barclays Settlement.**

Because this Court, as the MDL-assigned transferee court, has authority to approve settlements and certify settlement classes without transferring cases back to their transferor courts, the fact that some actions implicated in the settlement originated in courts outside this

jurisdiction is irrelevant.  Here, the proposed Settlement Class releases the claims associated with trades of Eurodollar futures contracts and options contracts.   If approved, the Settlement would bind class members from multiple jurisdictions unless they opt out of the Settlement Class.

**B.    The Proposed Barclays Settlement Is Clearly Within The Range Of What May Possibly Be Found To Be A Fair And Reasonable Settlement At Final Approval**

Preliminary approval of a settlement is not mentioned in either the Fed. R. Civ. P. generally Rule 23 in particular.  However, the Judicial Center's Manual for Complex Litigation recommends preliminary approval in complex cases.   MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 ("MANUAL").

Preliminary approval is akin to "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Exec. Ass'n. E. R.R.s.*, 627 F.2d 631, 634 (2d Cir. 1980).  In determining whether to grant preliminary approval, the Court considers both the negotiating process leading up to the settlement and the settlement's terms.   In the latter regard, the issue is whether the terms are "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard."  *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ*").

Preliminary approval should be granted when a proposed settlement:  (1) is not illegal, is the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to a class representative or segments of the class, and (2) falls within the range of what possibly may be later found to be fair and reasonable.  *In re Currency Conversion Fee Antitrust Litig.*, 01 MDL 1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) ("where the proposed settlement appears to be the product of serious, informed,

non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the reasonable range of approval, preliminary approval is granted") (citing *In re NASDAQ Mkt. Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ I*") ; *see also* MANUAL; *compare also Air Cargo*, 2009 WL 3077396, at *7 (finding Lufthansa settlement "procedurally fair because it was the product of arm's length negotiations between experienced and able counsel"); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("*NASDAQ II*") ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement"); *In re Initial Public Offering Sec. Litig.*, 226 F.R.D. 186, 191(S.D.N.Y. 2005), and *In re Initial Public Offering Sec. Litig.* 260 F.R.D. 81, 87 (S.D.N.Y. 2009 )(same); *Monaco v. Carpinello*, 2007 WL 1174900 *9 (E.D.N.Y. 2007); *Kaye v. Fast Food Operators, Inc.,* 99 F.R.D. 161, 165 (S.D.N.Y. 1983) (Buchwald, Magistrate Judge)(district court approves securities class action settlement "reached after arms-length negotiations" and recommended for approval by Magistrate Judge).

The proposed Settlement here plainly meets the standards for preliminary approval.

### 1. The Process Of Arm's Length Negotiations Fully Supports Preliminary Approval

The Settlement is the result of arm's length negotiations, is not collusive, and does not contain any obvious deficiencies or preferential treatment.  Lovell Decl. ¶¶4-5.

In negotiating with Barclays, Interim Co-Lead Counsel also had the benefit of: (1) numerous thoughtful decisions by extensive proceedings before, and resulting guidance from this Court; (2) government orders revealing various facts, and (3) statements and indications from Barclays' counsel characterizing, for settlement purposes, the scope and the general contents of the informational and documentary cooperation to be provided.  Further, Interim Co-Lead

Counsel had investigated, researched, analyzed, and evaluated a broad array of relevant factual and legal issues.  This included extensive consultations with economists about the impact of LIBOR on Eurodollar futures contracts, the degree of deviation in LIBOR, and the range of the total financial consequences of similar deviation in Eurodollar futures contract prices.

Moreover, Interim Co-Lead Counsel are experienced with commodity futures and antitrust claims.  *See* Lovell Decl. ¶17, having previously tried such claims in 1979-1980 (CEA manipulation claim) and 1983 (both antitrust and CEA manipulation claims), and continuously litigated such claims since 1977.  Lovell Decl. ¶18.  Further, Interim Co-Lead Counsel have strong relevant business experience in the commodities markets.  *Id.*  In the foregoing circumstances, Interim Co-Lead Counsel were well-informed about the legal risks, factual uncertainties, potential damages and other aspects of the strengths and weaknesses of the claims asserted herein when the terms of the Settlement Agreement were agreed upon.  *See* Lovell Decl. ¶¶7, 19.

The process leading up to and the timing of the Barclays Settlement, fully support preliminary approval thereof.  Indeed, the opinion of experienced and informed counsel supporting settlement is entitled to considerable weight.  *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) (Pollack, J.) (stating "great weight" is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation; *Shapiro v. JPMorgan Chase& Co.*,  11 CIV. 8331 CM MHD, 2014 WL 1224666 *2 (S.D.N.Y. Mar. 24, 2014)  ("Co–Lead Counsel, who have extensive experience in prosecuting complex class actions, strongly believe the Settlement is in the best interests of the Class, an opinion which is entitled to 'great weight'").

    **2.**    **The Unique Combination Of Value From This Ice-Breaker Proposed Settlement Amply Warrants Preliminary Approval Because It Is Well**

**Within The Range Of What Possibly May Be Found At The Final Approval Stage To Be Fair And Reasonable**

The Barclays Settlement provides a unique combination of consideration.  For instance, it is the initial ice-breaker settlement in this complex civil case.   In complex civil litigation involving multiple parties, the first "ice-breaker" settlement has significant value in encouraging further settlements.  *See, e.g., In re Linerboard Antitrust Litig.,* 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) ("The Court also notes that this settlement has significant value as an 'ice-breaker' settlement - it is the first settlement in the litigation - and should increase the likelihood of future settlements."); *In re Packaged Ice Antitrust Litig*., 08-MD-01952, 2011 WL 717519 *10 (E.D. Mich. Feb. 22, 2011) ("Also of significant value is the fact that the Settlement Agreement with Home City can serve as an "ice-breaker" settlement and includes the promise of cooperation from Home City which, as discussed above, has already been beneficial to the Plaintiffs in their continued prosecution of their claims against the non-settling Defendants"); *In re Automotive Parts Antitrust Litig.* 2:12-CV-00203-MOB, 2014 WL 1377828 (E.D. Mich. Feb. 13, 2014) (court preliminary approves an "ice breaker" settlement with Nippon Seiki defendants and provisionally certifies a settlement class).

Second, the all-cash payment of $19,975,000 is substantial both on an absolute scale and, as is set forth in "3.b" below, relative to the risks of prosecuting the claims and the amounts that are being given up by settling with Barclays in the context of these (mostly) joint and several liability claims.

Third, Barclays is providing extensive cooperation.  Courts have repeatedly recognized the value of cooperation:

[F]rom a pragmatic standpoint, the value of . . . willing allies in litigation, as opposed to the specter of hundreds of uncooperative opponents, is significant. The [settling defendants] know far better than the plaintiff classes precisely what

occurred in the [relevant] period . . . and their willingness to open their files and aid plaintiffs in amassing evidence against [non-settling defendants] may ease the plaintiffs' discovery burden enormously.

*In re IPO Sec. Litig.*, 226 F.R.D. at 198-99 (footnote omitted).

Settlement consideration requiring cooperation in continuing litigation against non-settling defendants is especially beneficial on joint and several liability claims.  This is because (1) the settling defendant typically has knowledge of probative facts that may be used against other defendants, and (2) the dismissal of the settling-defendant from the action does not extinguish the plaintiffs' ability to recover any and all joint and several liability damages over and above the amount of the settlement payment.  *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class would relinquish substantial parts of its recovery due to joint and several liability and where settling defendant's "assistance in the case against [a non-settling defendant] will prove invaluable to plaintiffs  and adds substantially to the economic value of the settlement package to the plaintiff classes"). "

Here, there are instances of strictly individual alleged trader-based manipulation by Barclays which the Class is relinquishing and giving up. However, Plaintiffs still retain the vast majority of their claims for damages against the other defendant banks who are jointly and severally liable for the LIBOR manipulation associated with alleged coordinated longer-term LIBOR suppression as well as Barclays' trader-based manipulation which was done in coordination with others.

### 3.    Applying The *Grinnell* Final Approval Factors To The Circumstances Here Fully Supports Preliminary Approval

In this Circuit, in order to determine whether a proposed class action settlement is substantively fair, reasonable and adequate **for purposes of final approval,** courts may consider:

17

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Compare City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) *with Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079-80 (2d Cir. 1995) ("*Maywalt*"). *See also Imax Securities Litig., supra,* 283 F.R.D. at 192 *(*Buchwald, J.)(awarding final settlement approval where *Grinnell* factors satisfied).

"[N]ot every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *In re Global Crossing Sec. and ERISA Litig.,* 225 F.R.D. 436, 456 (S.D.N.Y.2004) (internal quotation marks and citation omitted).  As set forth below, the *Grinnell* factors strongly merit preliminary approval of the Settlement.

At this preliminary approval stage, however, a *Grinnell* analysis is not necessary to find the settlement to be within the range of what may later be found to be reasonable:

> [T]he Court will be in a position to fully evaluate the *Grinnell* factors at the [final] fairness hearing, where it can consider the submissions by proponents and potential opponents of the settlements and the reaction of the Class Members.  At this stage of the proceeding, the Court need only find that the proposed settlement fits 'within the range of possible approval,' *Armstrong*, 616 F.2d at 314, a test that the settlement here easily satisfies.[2]

---

[2]   *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (citing *Armstrong v. Bd of Sch. Dir. of Milwaukee*, 616 F.2d 305 (7th Cir. 1980) (*overruled on other grounds, Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998))); *see also Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) ("The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval."); *In re AT&T Mobility Wireless Data Serv. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (quoting *Armstrong* with approval); *In re State Street Bank & Trust Co. ERISA Litig.*, No. 07-Civ-8488, 2009 WL 3458705, at *1 (S.D.N.Y.

### a.   Unlike In *Grinnell*, Recovery On The Claims Being Settled Here Is Not Foreclosed For Most Of The Alleged Wrongdoing Because Of The Availability Of Joint And Several Liability Of Other Defendants From Whom Plaintiffs May Recover

*Grinnell* did not involve a settlement of the claims against one of twenty different Defendants.  Instead, it involved the payment by all four defendants of $10 million to the three classes of plaintiffs (commercial, industrial, and governmental subscribers of central station protections services).  *Grinnell*, 495 F.2d at 452.

In contrast, all of the suppression based manipulation claims from 2007 through 2010 are allegedly conspiratorial joint and several liability manipulations.  With regard to the episodic, trader-based manipulation, each and every instance of this alleged activity would likely involve joint and several liability where Barclays allegedly cooperated or conspired with one or more present or future Defendants in such trader-based manipulation.  *Compare Strobl*, 582 F. Supp. 770, 778 (S.D.N.Y. 1984) (defendants jointly and severally liable on a jury verdict for manipulation in violation of the CEA), *aff'd* 768 F.2d 22 (2d Cir. 1985).

To the extent that Barclays' alleged instances of trader-based manipulation also involve strictly internal, standalone Barclays efforts to manipulate LIBOR and succeeded in doing so, then they would likely not involve joint and several liability.  The number of alleged manipulations committed by Barclays that does not involve joint and several liability is, relatively speaking, likely a very small percentage of the overall total.  The vast majority of Barclays' alleged manipulations involve coordinated longer term LIBOR suppression for which there is joint and several liability.  Also, Barclays allegedly engaged in trader-based

---

Oct. 28, 2009) (stating preliminary approval question is whether settlement is in range of possible approval).  The proposed settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard."  *In re Baldwin-United Corp.*, 105 F.R.D. 475, 482 (S.D.N.Y. 1984).

manipulation which was done in coordination with others and, therefore, involves joint and several liability.  Unlike the circumstances in *Grinnell*, it likely is **only** in this relatively small percentage of instances for which the opportunity to recover damages at trial (or by settlement) is being foreclosed by the proposed Barclays Settlement.

The interplay of the presence of all the remaining Defendants with the presence of joint and several liability, renders the Barclays Settlement totally different from the "entire settlement for all purposes" facts and circumstances of *Grinnell* that led to the *Grinnell* settlement approval factors.

Nevertheless, assuming *Grinnell* applies here, its criteria are fully satisfied.

> **b.**    ***Grinnell* Factors 4, 5 and 6: Due To The Dismissal With Prejudice Of All Claims Except For A Portion Of The CEA Manipulation Claims, And The Legal Uncertainties And Factual Risks Of The Sustained Claims, The Risks Of Establishing Liability And Damages Are Very Substantial**

Even a cursory analysis of the *Grinnell* factors shows that this Settlement should be approved.  There is great risk to the continued prosecution of Plaintiffs' claims against Barclays. The antitrust claim has been dismissed with prejudice altogether.  ECF No. 286.  Similarly, the unjust enrichment claim has been dismissed.  *Id.*  The CEA claims have been dismissed with prejudice in substantial part.  *Id.*

The remaining CEA claims also are subject to legal uncertainty and factual risks.  Since the private right of action in Section 22(a) of the CEA, 7 U.S.C. §25(a), was enacted, the U.S. Supreme Court and the Second Circuit Court of Appeals have not passed on numerous aspects of the pleading standards and have not passed on any aspects of the proof standards of claims thereunder in civil litigation against defendants.

The Second Circuit Court of Appeals has repeatedly refused to set aside decisions certifying classes of traders asserting manipulation of commodity futures prices.[3]  With that exception, the Court of Appeals has not dealt definitively with private rights of action under Section 22(a) of the CEA.

The Court of Appeals has upheld a pre-Section 22(a) civil damages CEA manipulation verdict.  *Strobl v. New York Mercantile Exch.,* 582 F. Supp. 770 (S.D.N.Y. 1984), *aff'd,* 768 F.2d 22 (2d Cir. 1985), *cert. denied sub nom., Simplot* v. *Strobl,* 474 U.S. 1006 (1985).  It also has upheld an administrative finding in a CFTC enforcement action for manipulation in violation of the CEA.  *In re Anthony J. DiPlacido*, 364 F.3d. Appx. 657, 662 (CFTC Nov. 5, 2008), *aff'd sub nom., DiPlacido v. CFTC*, 364 Fed. Appx. 657 (2d Cir. 2009), *cert. denied*, 130 S.Ct. 1883 (U.S. March 22, 2010).  Last year, the Second Circuit addressed some of the standards for a claim under Section 22(a) for aiding and abetting manipulation in violation of the CEA.  *In re Amaranth Natural Gas Commodities Litig.*, 730 F.3d 170, 180-181 (2d Cir. 2013).  And this year, the Court of Appeals addressed CEA manipulation claims at the pleading stage.  *In re Commodity Exchange, Inc. Silver Futures and Options Trading Litig.*, 560 Fed.Appx. 84, 86 (2d Cir. 2014).

Otherwise, there is an absence of controlling precedent on claims under Section 22(a).  Unlike with federal securities law class actions, in which more than one hundred cases per year often are filed, CEA commodity futures manipulation class actions are extremely rare, averaging

---

[3] *In re Sumitomo Copper Litig.*, 194 F.R.D. 480 (S.D.N.Y. 2000), *appeal denied*, 262 F.3d 134 (2d Cir. 2001); *see also In re Amaranth Natural Gas Commodities Litig.,* 269 F.R.D. 366 (S.D.N.Y. 2010) (SAS), *petition for review denied,* 10-4110-mv (2d Cir. Dec. 30, 2010), *In re Natural Gas Commodities Litig.*, 231 F.R.D. 171, 186 (S.D.N.Y. 2005), *petition for review denied* (2d Cir. Aug. 1, 2006); *In re Sumitomo Copper Litig.*, 194 F.R.D. 480 (S.D.N.Y. 2000), *appeal denied*, 262 F.3d 134 (2d Cir. 2001).

approximately one commodity manipulation class action filed every two years.[4]   In the foregoing context, the legal uncertainty involved in CEA manipulation claims is much greater than the more developed securities or antitrust types of claims.   As a result there have inevitably been splits over pleading and other issues among the different decisions of this Court interpreting Section 22(a).   Thus, CEA manipulation law—wholly unlike federal securities law or federal antitrust law—is somewhat of an "open field" for Defendants to argue for what Plaintiffs may view as restrictive applications of private actions for manipulation.   There **is** potentially a wide divergence of outcomes that could result from continued litigation in many fact scenarios (including those here).   Indeed, in CEA manipulation cases, settlement may become a "saga" in itself.   *In re Sumitomo Copper Litig.*, 74 Supp.2d 393, 396 (S.D.N.Y. 1999) (Pollack, J.).   The parties frequently seek to use the power of the better argument (in lieu of binding precedent) to reach a settlement.

Again, two substantive CEA manipulation trials reviewed by this Circuit have upheld the proof of the manipulation violation.   *Strobl supra*; *DiPlacido supra*.   Nonetheless, there are assertions that claims for manipulation in violation of the CEA are complex and difficult to prove.   *Compare* Jerry W. Markham, *Manipulation of Commodity Futures Prices – The Unprosecutable Crime*, 8 Yale J. on Reg. 281 (1991) *with In re Sumitomo Copper Litigation,* 74 F.Supp. 2d at 397.   As has been recognized, "the complexity of Plaintiffs' claims *ipso facto* creates uncertainty."   *Currency Conversion*, 263 F.R.D. at 123.

---

[4] Since 1974, approximately 24 class actions asserting claims for commodity manipulation were filed in federal courts nationwide, according to a search of the Westlaw "allfeds" database, averaging slightly more than one commodity manipulation class action filed every twenty months.

Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995); *see also In re IPO Sec. Litig.*, 260 F.R.D. 81, 118-19 (S.D.N.Y. 2009); *Air Cargo*, 2009 WL 3077396, at *9.

> c.   *Grinnell* **Factors 8 and 9**: The Range Of Reasonableness Of The Settlement Fund In Light Of The Likely Or Best Possible Recovery And All The Attendant Risks Of Litigation

Fundamental to a determination of whether a settlement is fair, reasonable and adequate "'is the need to compare the terms of the compromise with the *likely* rewards of litigation.'" *Maywalt,* 67 F.3d at 1079-80 (emphasis added).  In making the determination, the settlement agreement must be considered as a whole.  *Id.* at 1079.  The determination of a reasonable settlement is not susceptible to a simple mathematical equation yielding a particular sum. Rather, "in any case there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

The intricacies of what can and cannot be proved based on the law today are pertinent to both the "likely" recovery standard under *Maywalt,* 67 F.3d at 1079, and the "best possible" recovery standard under *Grinnell*.  Further, an apples to apples comparison of this class action settlement to the "best possible" recovery following trial, typically should consider not only nominal damages but the amount of damages to the class members who file a claim seeking to share in the proceeds of any trial judgment.  This is because, under *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479-81 (1980), only class members who file claims to assert their rights to share in a judgment, typically are entitled to receive their share of the funds.  Unclaimed funds (except

for the attorneys' fee thereon) are returned to the defendants.  *Id.*  Here, because years more time would pass between the time of the wrongdoing (January 2005 – May 2010) and the time of any judgment herein, it is very likely that fewer Class members would be in a position to claim after an eventual trial and appeals than are able to do so today.

But Plaintiffs have negotiated for and obtained another benefit here: there shall be no reversion to Barclays of unclaimed funds.  Settlement Agreement ¶¶9, 18.3. Subject to the confirmation that Plaintiffs will obtain through Barclays' cooperation, Interim Co-Lead Counsel estimate that the actual payout to Class Members from this Settlement will comprise a substantial percentage of the trader-based damages of claiming Class Members, when factoring in the Court's dispositive rulings.

Given the substantial risks here and the fact that these early, partial settlements are a judicially well-recognized strategic step to assist Plaintiffs in the case against the non-Settling Defendants, the standards for preliminary approval are met in this case.

Against the background of risk and uncertainty, the substantial benefits afforded here plainly represent a reasonable result for the members of the Settlement Class.  Considering the "complexity, expense and likely duration of the litigation," the "risks of establishing liability . . . [and] damages," and the "reasonableness of the settlement fund" in light of all the attendant risks of litigation, Barclays' $19,975,000 total guaranteed cash payment and its ongoing cooperation, easily bring the Settlement Agreement within the possible range of approval as a "fair, reasonable and adequate" of the Settlement Class' claims.[5]

---

[5] Although a court must also find that the plan for distributing the settlement fund is reasonable, it is appropriate to defer the submission of such a plan until after a court has approved the adequacy of the overall settlement.  *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 170 (2d Cir. 1987) ("The prime function of the district court in holding a hearing on the fairness of the settlement is to determine that the amount paid is commensurate with the value of the case.

**d.    Factor 3: The Stage Of The Proceedings And The Amount Of Discovery Completed**

As this litigation heads into the latter half of its fourth year, Interim Co-Lead Counsel are aware of the possibilities facing the Class based upon numerous rulings form this Court.  *See* the literally hundreds of pages of decisions by the Court recounted in the Statement of Facts *supra*.

The volume and substance of Interim Co-Lead Counsel's knowledge of the merits and potential weaknesses of Plaintiffs' claims are unquestionably adequate to support the Settlement. Although Plaintiffs have not had the opportunity to engage in formal discovery proceedings, Interim Co-Lead Counsel conducted an extensive pre- and post-complaint investigation, and the information learned during that process is reflected in many of the allegations set forth in the Amended Complaint.  Moreover, numerous government orders have since revealed hundreds of important facts synthesized from many sources and documents.  Critically, the briefing of the motions to dismiss has given Interim Co-Lead Counsel the opportunity to assess parts of the import of these facts, the Court's reactions thereto, and many other aspects of the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses.  Next, Interim Co-Lead Counsel have received from Barclays' counsel indications, under strict confidentiality, of the substance of the information that Barclays will provide in cooperation.

Based upon these and other sources of information, Interim Co-Lead Counsel was extremely knowledgeable of the relevant issues and able to recommend the Settlement to the Plaintiffs and to the proposed class.  *See Global Crossing*, 225 F.R.D. at 458 ("Formal discovery

---

This can be done before a distribution scheme has been adopted so long as the distribution scheme does not affect the obligations of the defendants under the settlement agreement. The formulation of the plan in a case such as this is a difficult, time-consuming process."); *NASDAQ II*, 187 F.R.D. at 480 (noting that "it is appropriate, and often prudent, in massive class actions" to defer consideration of the plan of distribution); NEWBERG § 12:35 at 342.  Plaintiffs are not proposing a class distribution of the proceeds of these Settlements at this time.

is not a prerequisite [to settlement]; the question is whether the parties had adequate information about their claims"). Accordingly, this factor also supports approval of the Settlement.

> e.    **Factors 2 and 7**: The Reaction Of The Class To The Settlement, And The Ability Of The Settling Defendants To Withstand A Greater Judgment

At this time, Plaintiffs are not aware of any objections to the proposed Settlement. One benefit of this Settlement at this juncture is that any Class member who has a different judgment about the Settlement than Interim Co-Lead Counsel may opt out of the Class. After the Class has been provided notice of the Settlement, Plaintiffs will address the Class's reaction in their motion seeking final approval.

While there is no basis to believe that Barclays is incapable of withstanding a judgment greater than the $19,975,000.00 cash consideration it has agreed to provide as part of the Settlement, that factor alone is neither sufficient to defeat approval of the Settlement nor does it indicate that the Settlement is not fair, reasonable or adequate. *Compare In re Global Crossing Sec. and ERISA Litig.*, 255 F.R.D. 439, 460 (S.D.N.Y. 2004) ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate") *with* 225 F.R.D. at 456 ("not every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances"); *D'Amato v. Deutsche Bank,* 236 F.3d 76, 86 (2d Cir. 2001) (fact that Austrian banks could pay more to settle did not crater the settlement); *McBean v. City of New York*. 233 F.R.D. 377 (S.D.N.Y. 2006) (However, the ability of defendants to pay more, on its own, does not render the **settlement** unfair, especially where the other *Grinnell* factors favor approval."); *see also In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 0165 (CM) 2007 WL 4115809, at

*11 (S.D.N.Y. Nov. 7, 2007) (defendant's substantial net worth "alone does not prevent the Court from approving the Settlement where the other *Grinnell* factors are satisfied").

### C. The Court Should Conditionally Certify A Settlement Class As To The Claims Against Barclays Subject To Final Certification At The Final Approval Stage

The Court should also conditionally determine whether a proposed Settlement Class as to the claims against Barclays is within the range of what may be found to warrant certification at the final approval hearing.  Under Rule 23, claims or entire class actions may be certified for settlement purposes only.  *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Plummer v. Chem. Bank*, 668 F.2d 654, 658 (2d Cir. 1982). Here, Plaintiffs seek conditional certification of a Settlement Class not on all claims in this entire action but only on claims against Barclays based on  transactions in Eurodollar futures and options contracts.  Such Settlement Class is defined to include:

> All Persons (other than Defendants, their employees, affiliates, parents, subsidiaries, and co-conspirators) that transacted in LIBOR-based Eurodollar futures contracts or options on exchanges such as the Chicago Mercantile Exchange between January 1, 2005 and May 31, 2010.

Settlement Agreement ¶4.

This Settlement Class on the claims against Barclays satisfies (or, more properly, is conditionally now within the range of what may be found at final approval to satisfy) the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3).

### 1. The Requirements of Rule 23(a) Are Conditionally Satisfied As To The Settlement Class On The Claims Against Barclays

#### a. Numerosity Of The Settlement Class Is Conditionally Satisfied As To The Claims Against Barclays

Rule 23(a)(1)'s numerosity requirement does not mean that joinder must be impossible, but rather "…merely be difficult or inconvenient, rendering use of a class action the most

efficient method to resolve plaintiffs' claims." *In re Initial Public Offering Securities Litig.*, 260 F.R.D. 81, 90 (S.D.N.Y. 2009) ("*IPO*").  In fact, numerosity can be presumed at a level of forty class members or more.  *Id. citing Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995).  Interim Co-Lead Counsel have strong reason to believe that there are at least hundreds of geographically dispersed persons and entities that fall within the Settlement Class definition.  Thus, joinder would be impracticable and Rule 23 (a)(1) is satisfied.

### b.    There Are Common Questions of Law and Fact As To The Claims Of Settlement Class Members Against Barclays

Fed. R. Civ. P. 23(a)(2) requires that there be questions of law or fact common to the class.  Commonality "does not require an identity of claims or facts among class members; instead, the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004) (quoting *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001)); *see also Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *Weil v. Long Island Sav. Bank*, 200 F.R.D. 164, 169 (E.D.N.Y. 2001) ("A single common issue of law will satisfy the commonality requirement.").  Because it requires only one common question, Rule 23(a)(2) is generally considered a "'low hurdle' easily surmounted." *In re Prudential Sec. Inc. Ltd. P'ships. Litig.*, 163 F.R.D. at 206 n.8.

The legal and factual aspects of the particular Settlement Class here are extremely homogenous and, therefore, clearly common.

**Common Questions Of Law.**  First, each Class Member makes the exact same legal claims against Barclays.  ECF No. 438.  The legal standards applicable to these claims are subject to numerous common disputed questions that have consumed many pages of decisions by

this Court, briefing by the parties, and are a significant issue in this litigation. The common questions of law relating to the pleading of the claims, involve numerous common questions that will also apply to the determination of whether the proof of claims is sufficient. But there will also be numerous additional common questions of procedural, evidentiary, and substantive law relating to all Class members' claims as the litigation progresses. These will include, as one very small example, the interpretation of the impact in the joint and several liability and other contexts on the claims of guilty pleas, consent decrees, and other government orders.

More substantively, the common questions of law will include the application of the elements of a claim for manipulation to the types of evidence adduced in support of those allegations that the Court has sustained.

**Common Questions Of Fact.** There are also overwhelming common questions of fact shared among all Settlement Class members. Eurodollar futures and options contracts are generally standardized except for the exact time of expiration of each succeeding contract and the price at which the transaction occurs. For example, for many Settlement Class members, even the price of the closing transactions is standardized because of the uniform contractual requirement that the price of each Eurodollar futures contract at expiration shall be 100 minus LIBOR. Also, all prices of all Class members' Eurodollar futures or options transactions were made in the same centralized marketplace subject to the same uniform rule set, and the same customs and procedures. Furthermore, the alleged artificial impact on the centralized market place results from the exact same type of exogenous event. This event is a knowingly false submission of LIBOR by Barclays and/or other Defendants. Indeed, at the oral argument on the original motion to dismiss, Defendants' liaison counsel fairly and accurately described Eurodollar futures as LIBOR futures or bets on LIBOR. *See* ECF No. 325, Tr. 26:1-2 (Mar. 5,

2013).  Finally, the LIBOR reports themselves were produced from the same single system and are subject to the same common interest rate and economic benchmarks.

In sum, there are also numerous questions of fact common to all Settlement Class members.  Rule 23(a)(2) is easily satisfied.

### c.  Typicality Of The Plaintiffs Is Conditionally Satisfied As To The Claims Against Barclays

Typicality may be satisfied under Rule 23(a)(3) where typicality "requires that the claims of the class representatives be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Marisol A. v Giuliani*, 126 F3d 372, 376 (2d Cir. 1997) (finding named plaintiffs' claims typical of the class under Rule 23(a)(3) where "each named plaintiff challenges a different aspect of the child welfare system"; "[t]he claimed deficiencies implicate different statutory, constitutional and regulatory schemes"; and "no single plaintiff (named or otherwise) is affected by each and every legal violation alleged . . . and [] no single specific legal claim identified by the plaintiffs affects every member of the class." (citing *In re Drexel Burnham Lambert Group Inc.,* 960 F.2d 285, 291 (2d Cir. 1992); *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir.1968), *vacated on other grounds,* 417 U.S. 156 (1974))).

All Settlement Class members make the same legal claims and the injuries of Plaintiffs, who are the proposed Settlement Class representatives, are typical of the injuries of the members of the Settlement Class because Plaintiffs' injuries arise from transacting at the alleged artificial prices.

### d.  Adequacy Of The Class Representatives Is Conditionally Satisfied As To The Claims Against Barclays

Rule 23(a)(4) adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).  The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citing *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157-58. n.13 (1982)).  Generally, courts will consider "whether (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *Id.* at 61.

First, the proposed Settlement Class representatives transacted in Eurodollar futures contracts and options contracts during the Class Period and were thereby impacted by Defendants' conduct.  The same is true of all members of the Settlement Class.  Thus, the proposed class representatives' interests in proving liability and damages are aligned with that of members of the Settlement Class.  Second, the Settlement Class representatives are represented by experienced counsel thoroughly familiar with complex class action and commodities litigation.  *See e.g., In re Amaranth Natural Gas Commodities Litig.*, 269 F.R.D. at 386 (finding that Futures Lead Counsel have substantial experience in commodity futures manipulation class actions).  Thus, Rule 23(a)(4) is satisfied.

Moreover, the interests of the Settlement Class members are adequately protected by representative Plaintiffs and were not in conflict while reaching this Agreement.  All Class members share an overriding interest in obtaining the largest possible monetary recovery from this case.  *See Global Crossing*, 225 F.R.D. at 453 (certifying settlement class and finding that "[t]here is no conflict between the class representatives and the other class members.  All share

the common goal of maximizing recovery."); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes."). Representative Plaintiffs are not afforded any special compensation and all Settlement Class members similarly share a common interest in obtaining Barclays' early and substantial cooperation in prosecuting the claims against the new and existing non-Settling Defendants.

Interim Co-Lead Counsel have diligently represented the interests of the Class in this litigation and will continue to do so.   Accordingly, the requirements of Rule 23(a)(4) are satisfied.

### 2. The Proposed Settlement Class Satisfies The Two Prongs of Rule 23(b)(3) As To The Claims Against Barclays

In addition to establishing that the proposed Settlement Class satisfies Rule 23(a)'s requirements, Plaintiffs must also show that one of three alternative categories under Rule 23(b) has been established.  *IPO*, 260 F.R.D. at 92.  Plaintiffs move pursuant to Rule 23(b)(3) and therefore must establish (1) "…that the questions of law or fact common to class members predominate over any questions affecting only individual members…" and (2) "…that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### a. Common Questions of Law and Fact On The Claims Against Barclays Do Conditionally Predominate Among Settlement Class Members

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *IPO*, 260 F.R.D. at 92.  Here, Plaintiffs allege that Defendants manipulated LIBOR and Eurodollar futures contracts causing artificial prices that

affected all members of the Settlement Class.  Thus, issues common to the members of the Class predominate over any individual questions.

> **b.**  **A Settlement Class Is Conditionally The Superior Method To Adjudicate The Claims Against Barclays, And Preserves Judicial Resources**

Rule 23(b)(3)'s "superiority" requirement requires a plaintiff to show that a class action is superior to other methods available for "fairly and efficiently adjudicating the controversy."  *See* Fed. R. Civ. P. 23(b)(3)(A)-(D) (listing four non-exhaustive factors to consider).

The damages suffered by many of the individual members of the Settlement Class are likely to be relatively small such that the expense and burden of individual litigation make it virtually impossible for them to protect their rights.  Moreover, the prosecution of separate actions by thousands of individual members of the Settlement Class would impose heavy burdens upon the Court and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Settlement Class.  For these and other reasons, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.  Thus, both prongs of Rule 23(b)(3) are satisfied.

> **D.**  **The Court Should Appoint Lovell Stewart And Kirby McInerney To Act As Class Counsel For The Settlement Class**

Federal Rule of Civil Procedure 23(g)(1) provides that "…a court that certifies a class must appoint class counsel."  Rule 23(g)(1).  Rule 23(g)(2) provides that where, as here, only one application is made seeking appointment as class counsel, "…the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4)."  Rule 23(g)(2).

The Court previously appointed Lovell Stewart and Kirby McInerney as Interim Co-Lead Counsel for the Exchange-Based Plaintiff class to "be solely responsible for coordinating and organizing plaintiffs in the conduct of the Exchange-Based Plaintiff Action."  *See* Pre-

Trial Order No. 1, Docket No. 90 at ¶18. For all the same reasons the Court appointed Lovell Stewart and Kirby McInerney as Interim Co-Lead Counsel, the Court should now appoint Lovell Stewart and Kirby McInerney as class counsel for the Settlement Class.

E. **The Court Should Direct Class Counsel To Propose And Move For Approval Of A Plan And Forms Of Notice Within Ninety Days Of Preliminary Approval Of The Proposed Settlement Of The Claims Against Barclays**

Federal Rule of Civil Procedure provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Accordingly, the Second Circuit has held that the adequacy of a class action settlement notice is "measured by reasonableness." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 438 (2d Cir. 2007).[6]

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. Rule 23(c)(2)(B). Where "the parties seek simultaneously to certify a settlement class and to settle a class action, the elements of Rule 23(c) notice (for class certification) are combined with the elements of Rule 23(e) notice (for settlement or dismissal)." *Global Crossing*, 225 F.R.D. at 448. Rule 23(c)(2) requires the "best practicable notice," while Rule 23(e) requires notice that is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Prudential Ins. Co. of Am.*

---

[6] "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. Notice is adequate if it may be understood by the average class member." *Id.* (internal citations omitted).

*Sales Practices Litig.*, 962 F. Supp. 450, 527 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998). Neither Rule 23 nor due process requires actual notice to each possible class member.[7]

Class Counsel anticipate that the program of notice here will include both individual mailing to all exchange clearing members and to all large traders listed in the Commodity Futures Trading Commission Large Trader Reports, as well as other persons.  Also, the program of notice will include publication notice.  The degree of the publication notice depends upon the likely scope of mail notice which will help determine how much is practicable, or reasonable to spend on publication notice.  In order to develop the names and addresses for the individual mail notice and determine the likely scope or coverage of individual mail notice, Plaintiffs need to subpoena the CFTC to obtain the names and addresses of large traders during the Settlement Class Period, and subpoena the Chicago Mercantile Exchange ("CME") to obtain the names and addresses of all clearing members during the Settlement Class Period.

This type of combined individual mail notice and publication notice has repeatedly been held to satisfy Constitutional due process as well as Rule 23.  *See, e.g, In re Marsh*, 2009 WL 5178546, at *23-24; *Buxbaum*, 216 F.R.D. at 81.

Plaintiffs are preparing the subpoenas and may serve them as soon as the Court enters the preliminary approval order, which authorizes Plaintiffs to conduct such discovery for purposes of sending notice to the Settlement Class.

In these circumstances, the Court should direct, as part of the preliminary approval Order, Class Counsel to file a motion proposing a plan of notice, and forms of Notice and

---

[7] *See In re Marsh & McLennan Sec. Litig.*, No. 04 Civ. 8144, 2009 WL 5178546, at *23-24; *Buxbaum v. Deutsche Bank AG*, 216 F.R.D. 72, 80-81 (S.D.N.Y. 2003); *In re NASDAQ Market-Makers Antitrust Litig.*, No. 94 Civ. 3996, 1999 WL 395407, at *2 n.3 (S.D.N.Y. June 15, 1999).

Summary Notice that are reasonable and satisfy Rule 23(c) and (e), within ninety days of the preliminary approval order.

## IV.     CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court enter an order that, among other things: (1) grants preliminary approval of the proposed Settlement; (2) conditionally certifies the Settlement Class for settlement purposes; (3) appoints Interim Co-Lead Counsel as Class Counsel; (4) allows Class Counsel to issue subpoenas to the CFTC and CME to obtain information necessary to issue Notice of the Barclays Settlement; and (5) directs Class Counsel to file within ninety days of the entry of the Preliminary Approval Order a motion for approval of the plan and forms of notice to the Settlement Class.

Dated: October 8, 2014
New York, New York

**LOVELL STEWART HALEBIAN JACOBSON LLP**

By:     /s/ *Christopher Lovell*
        Christopher Lovell
        61 Broadway, Suite 501
        New York, New York 10006
        Telephone: (212) 608-1900
        Email: clovell@lshllp.com

**KIRBY McINERNEY LLP**

By:     /s/ *David Kovel*
        David Kovel
        Lauren Wagner Pederson
        825 Third Avenue, 16th floor
        New York, New York 10022
        Telephone: (212) 371-6600
        Facsimile: (212) 751-2540
        Email: dkovel@kmllp.com
        Email:  lpederson@kmllp.com

*Interim Co-Lead Counsel for Exchange-Based Plaintiffs and the Proposed Settlement Class*