**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LIBOR-BASED FINANICAL INSTRUMENTS ANTITRUST LITIGATION | Case No. 11 Civ. 2613-NRB |
| THIS DOCUMENT RELATES TO: EXCHANGE-BASED PLAINTIFFS ACTION | No. 1:11-MD-02262-NRB |
| | ECF CASE |

**DECLARATION OF CHRISTOPHER LOVELL IN SUPPORT OF THE EXCHANGE-BASED PLAINTIFFS' MOTION TO PRELIMINARILY APPROVE SETTLEMENT WITH DEFENDANT BARCLAYS BANK PLC AND CONDITIONALLY CERTIFY SETTLEMENT CLASS**

I, Christopher Lovell, declare as follows:

1.      I am an attorney for the named Exchange-Based Class Plaintiffs Metzler Investment GmbH, FTC Futures Fund SICAV, FTC Futures Fund PCC Ltd., Atlantic Trading USA, LLC, 303030 Trading LLC, Gary Francis, and Nathanial Haynes (collectively, "Plaintiffs").  Lovell Stewart Halebian Jacobson LLP ("Lovell Stewart") and Kirby McInerney LLP ("Kirby McInerney") are Court-appointed Interim Co-Lead Counsel for Plaintiffs in this action.  Lovell Stewart and Kirby McInerney have significant experience in antitrust and commodity futures litigation and class actions, including settlements thereof.

2.      I submit this Declaration in Support of Plaintiffs' Motion to Preliminarily Approve the Settlement between Plaintiffs, for themselves and on behalf of the proposed Settlement Class for the claims against defendant Barclays Bank PLC ("Barclays").  I have personal knowledge of the information set forth herein.

**A.  The Settlement Agreement**

3.      Annexed as Exhibit 1 hereto is a true and accurate copy of the Settlement Agreement between and among Plaintiffs and Barclays (the "Settlement Agreement") executed on October 7, 2014.   Exhibit 1 reflects the complete agreement among the parties to the Settlement Agreement.    A memorandum of understanding ("MOU") between and among Plaintiffs and Barclays (the "Settling Parties") was executed on August 22, 2014.   But it is superseded by the terms of the Settlement Agreement, which substantially incorporates and supersedes the terms of the MOU.   There are no oral or written agreements or understandings, other than the Settlement Agreement.

## B.  The Process

4.      David Kovel, a partner with Kirby McInerney, and I personally conducted the extensive settlement negotiations on behalf of Plaintiffs with counsel for Barclays.   There was no collusion or preference among counsel for the parties to the Settlement Agreement at any time during the settlement negotiations.   Instead, the Settlement Agreement was reached only after extensive, hard-fought, arm's length negotiations that were undertaken in good faith by experienced legal counsel for the parties.

5.      Neither in the Settlement Agreement nor in the negotiations was there any preferential treatment of anyone in the proposed settlement class.

6.      Mr. Kovel and I sought to obtain the best deal from Barclays for the Plaintiffs and the proposed settlement class of persons who transacted in LIBOR-based Eurodollar futures or options on exchanges such as the Chicago Mercantile Exchange between January 1, 2005 and May 31, 2010.

7.      As a result, such negotiations commenced in August 2013 and continued through the execution of the Settlement Agreement on October 7, 2014.   The settlement negotiations

included numerous telephonic, in-person and written communications.  In connection with these settlement negotiations, Interim Co-Lead Counsel were informed concerning liability and damages issues and the relative strengths and weaknesses of each side's litigation position. Interim Co-Lead Counsel analyzed and evaluated many contested legal and factual issues posed by the litigation.  To settle the claims against them, Barclays agreed to pay $19,975,000 without any rights to any reversion, and to provide important cooperation to Plaintiffs that will assist in the prosecution of this litigation against the remaining Defendants.

### C.  Interim Co-Lead Counsel's Information At The Time Of The Settlement

8.      Plaintiffs had litigated this case for over twenty-eight months before executing the MOU on August 22, 2014 and, then, the Settlement Agreement on October 7, 2014.

9.      Interim Co-Lead Counsel took steps to ensure that we had all the necessary information to advocate for a fair settlement that serves the best interests of the Settlement Class for the claims against Barclays.  Before deciding that the proposed Settlement was beneficial and should be signed, Interim Co-Lead Counsel had the benefit of information contained in multiple government documents.  These documents contained quotes from contemporaneous statements made by certain Defendants, including Barclays.  They contained new descriptions or summaries of the conduct by certain Defendants, including Barclays.  They also contained other information that provided further insights into the conduct of various companies, including Barclays.

10.     The amount and specificity of information contained in the government documents is typically available only after substantial discovery.

11.     Also, Interim Co-Lead Counsel had the benefit of extensive other investigation. This included multi-year consultations with economists and consulting experts. Defendants' daily dollar LIBOR quotes and benchmark interest rates were all available.

3

12.     Accordingly, the consulting experts also analyzed the likely degree of dislocation in dollar LIBOR and dollar LIBOR-based Eurodollar futures contract prices. They made estimates of potential amounts of damages exposure. The economists also consulted with or advised Interim Co-Lead Counsel on numerous other points.

13.     Further, before signing even the MOU, Interim Co-Lead Counsel received multiple indications from counsel for Barclays about what their proffers of information pursuant to the Settlement will contain. Interim Co-Lead Counsel learned, generally, what such cooperation and proffers will show, and what they will not show. This also provided information that, typically, may be obtained by counsel in a case only after significant discovery.

14.     In addition, Interim Co-Lead Counsel researched, analyzed, and evaluated numerous legal and factual issues. This includes those sharply contested issues that have been briefed on the parties' competing motions. These issues produced hundreds of pages of decisions by this Court. *See, e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262 (NRB), ECF No. 286, 935 F.Supp.2d 666 (S.D.N.Y. 2013); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262 (NRB), ECF No. 389, 962 F. Supp. 2d 606 (S.D.N.Y. 2013); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262 (NRB), ECF No. 568, 2014 WL 2815645 (S.D.N.Y. Jun. 23, 2014); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262 (NRB), ECF No. 489 (S.D.N.Y. Oct. 17, 2013) (denying Plaintiffs' application for disclosure of certain documents Defendants produced to governmental agencies).

15.     Some of the most important issues in this case, such as manipulative intent and statute of limitations, were briefed repeatedly on the foregoing motions. The respective counsel for the parties sought zealously to represent their clients' opposing interests. The Court invited

or allowed them to do so, considered the arguments, and treated these important issues in increasingly greater depth and detail.

16.     Interim Co-Lead Counsel also had the important benefit of the information and guidance contained in the numerous decisions and orders by this Court.

### D.  Counsel's Experience

17.     Interim Co-Lead Counsel are extremely experienced with commodity futures and antitrust claims involving the "esoteric" commodity futures markets.  *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 356 (1982) quoting H.R. Rep. No. 93-975, p.1 (1974), 1974 U.S. Code Cong & Admin. News at 5843.  Attached hereto as Exhibits 2 and 3 are true and accurate copies of the firm resumes of Interim Co-Lead Counsel.

18.     For example, I previously tried such claims in 1979-1980 (Commodity Exchange Act ("CEA") manipulation claim), 1983 (both antitrust and CEA manipulation claims), and later. I have been continuously litigating such claims since 1977 at one level or another.  Mr. Kovel also has strong relevant business experience in the esoteric commodities markets, having traded commodities professionally prior to serving as lead counsel in numerous class actions alleging claims under antitrust statutes and the CEA.

### E.  CONCLUSION

19.     In the foregoing circumstances, I respectfully submit that Interim Co-Lead Counsel were well-informed about: (a) the legal risks, factual uncertainties, potential damages and other aspects of the claims asserted on behalf of the proposed class; and (b) the benefits, risks and consequences of the proposed settlement.

20.     In Interim Co-Lead Counsel's opinion, the proposed Settlement with Barclays is fair, adequate, and reasonable in light of the benefits it will provide to the proposed class

members, the strengths and weaknesses of the claims being settled, the risks of continued prosecution, and many other factors.  Interim Co-Lead Counsel believes it provides substantial benefits to members of the proposed class.

21.     The $19,975,000 non-reversionary all-cash payment and the other consideration provided by the proposed Settlement, constitute, in our opinion, fair and adequate consideration in all the circumstances, including the risks of litigation.  Again, there is no reversion, *i.e.*, none of the $19,975,000 payment will be returned to Barclays regardless of the number of Class members that submit proofs of claim.  The proposed Settlement also avoids the delay and uncertainty of continued, protracted litigation against this particular Defendant.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 8, 2014.


New York, New York                    /s/Christopher Lovell
                                       Christopher Lovell