## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANICAL INSTRUMENTS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: EXCHANGE-BASED PLAINTIFFS ACTION | MDL No. 2262, 11 Civ. 2613<br><br>No. 1:11-MD-02262-NRB |

## SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered into this 7th day of October, 2014, by and between Defendant Barclays Bank plc ("Barclays") and named Exchange-Based Class Plaintiffs Metzler Investment GmbH, FTC Futures Fund SICAV, FTC Futures Fund PCC Ltd., Atlantic Trading USA, LLC, 303030 Trading LLC, Gary Francis, and Nathanial Haynes (collectively the "Exchange-Based Plaintiffs"), for themselves and on behalf of each Class Member[1] in *FTC Capital GmbH, et al. v. Credit Suisse Group AG, et al.*, No. 11-cv-2613.  This Agreement is intended by the Settling Parties to fully, finally and forever resolve, discharge and settle the Released Claims, upon and subject to the terms and conditions hereof.

WHEREAS, Exchange-Based Plaintiffs have alleged, among other things, that Barclays: (i) violated Sections 9(a) and 22(a) of the Commodity Exchange Act, 7 U.S.C. §§ 13(a) and 25(a) by manipulating and aiding and abetting in manipulation of the U.S. Dollar LIBOR rate and Eurodollar futures prices, (ii) incurred vicarious liability under Section 2(a)(1) of the Commodity Exchange Act, 7 U.S.C. § 2(a)(1) by manipulative acts of employees, (iii) violated Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 by conspiring to manipulate the U.S. Dollar LIBOR rate; and (iv) was unjustly enriched as a result of its allegedly manipulative acts in connection with U.S. Dollar LIBOR.  Exchange-Based Plaintiffs further contend that they suffered monetary damages as a result of Barclays' conduct;

WHEREAS, Barclays maintains that it has meritorious defenses to the claims of liability and damages made by Exchange-Based Plaintiffs;

WHEREAS, Exchange-Based Plaintiffs, for themselves and on behalf of each Class Member, and Barclays agree that neither this Agreement nor any statement made in the negotiation thereof shall be deemed or construed to be an admission or evidence of:  (i) any violation of any statute or law, (ii) any liability or wrongdoing by Barclays, or (iii) the truth of any of the claims or allegations alleged in the Action;

WHEREAS, Barclays agrees to cooperate with Exchange-Based Plaintiffs' Counsel and Exchange-Based Plaintiffs as set forth, below, in this Agreement;

WHEREAS, arm's length settlement negotiations have taken place, through counsel, between Barclays and Exchange-Based Plaintiffs, and this Agreement embodies all of the terms and conditions of the Settlement between Barclays and Exchange-Based Plaintiffs, both individually and on behalf of each Class Member;

WHEREAS, Exchange-Based Plaintiffs' Counsel have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the Action, the legal and factual defenses thereto, and the applicable law, that:

---

[1] All capitalized terms shall have the meaning set forth herein in the text or in ¶ 1 of this Agreement.

(i) it is in the best interests of the Class to enter into this Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Class, and (ii) the Settlement set forth herein is fair, reasonable, and adequate, and in the best interests of Class Members; and

WHEREAS, Barclays, despite believing that it is not liable for the claims asserted against it in the Action and that it has good and meritorious defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and thereby to put to rest this controversy and avoid the risks inherent in complex litigation;

NOW, THEREFORE, IT IS HEREBY AGREED by and among Exchange-Based Plaintiffs (for themselves and each Class Member) and Barclays, by and through their respective counsel or attorneys of record, that, subject to the approval of the Court, the Action as against Barclays shall be finally and fully settled and releases extended, as set forth below.

## A. DEFINITIONS

1.      As used in this Agreement the following capitalized terms have the meanings specified below.

1.1.    "Action" means *FTC Capital GmbH, et al. v. Credit Suisse Group AG, et al.*, No. 11-cv-2613, and related class action cases on behalf of Exchange-Based Plaintiffs that are currently pending in the Multi-District Litigation in the U.S. District Court for the Southern District of New York.

1.2.    "Agreement" means this Settlement Agreement, together with any exhibits attached hereto, which are incorporated herein by reference.

1.3.    "Authorized Claimant" means any Class Member who, in accordance with the terms of this Agreement, is entitled to a distribution from the Net Settlement Fund pursuant to any Distribution Plan or order of the Court.

1.4.    "Barclays" means Barclays Bank plc, a British public limited company headquartered in London, England.

1.5.    "Claims Administrator" means the Notice and/or Claims Administrator(s) to be approved by the Court.

1.6.    "Class" or "Settlement Class" shall have the meaning set forth in ¶ 4, below.

1.7.    "Class Member" or "Settlement Class Member" means a Person who is a member of the Class and has not timely and validly excluded itself from the Class in accordance with the procedure to be established by the Court.

1.8.    "Court" means the U.S. District Court for the Southern District of New York.

1.9.    "Defendants" means Barclays, Credit Suisse Group AG, Bank of America Corporation, Bank of America, N.A., J.P. Morgan Chase & Co., J.P. Morgan Chase Bank, N.A., HSBC Holdings plc, HSBC Bank plc, HBOS plc, Lloyds Banking Group plc, Lloyds TSB Bank plc, WestLB AG, Westdeutsche ImmobilienBank AG, UBS AG, Royal Bank of Scotland Group plc, Deutsche Bank AG, The Norinchukin Bank, Royal Bank of Canada, The Bank of Tokyo-Mitsubishi UFJ, Ltd., Coöperative Central Raiffeisen-Boerenleenbank B.A., Société Générale S.A., Citigroup, Inc., Citibank NA, and John Does 1-5 (as defined by Plaintiffs' Corrected Second Amended Complaint ¶ 48).

1.10.    "Distribution Plan" means any plan or formula of allocation of the Settlement Fund, to be approved by the Court upon notice to the Class, where by the Net Settlement Fund shall in the future be distributed to Authorized Claimants.

1.11.    "Effective Date" means the first date by which all of the events and conditions specified in ¶ 32, below, have occurred.

1.12.    "Escrow Agent" means the entity jointly designated by Exchange-Based Plaintiffs' Counsel and Barclays, and any successor agent, to maintain the Settlement Fund.

1.13.    "Exchange-Based Plaintiffs" means Metzler Investment GmbH, FTC Futures Fund SICAV, FTC Futures Fund PCC Ltd., Atlantic Trading USA, LLC, 303030 Trading LLC, Gary Francis, and Nathanial Haynes.

1.14.    "Exchange-Based Plaintiffs' Counsel" means (i) the law firms of Lovell Stewart Halebian Jacobson LLP and Kirby McInerney LLP and (ii) any other attorney or law firm that represents Exchange-Based Plaintiffs and seeks to receive any portion of the attorneys' fees that may be awarded by the Court in connection with this Settlement.

1.15.    "Execution Date" means the date on which this Agreement is executed by the last party to do so.

1.16.    "Final" means, with respect to any court order, including, without limitation, the Judgment, that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise.  An

order becomes "Final" when: (i) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (ii) an appeal has been filed and either (a) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (b) the order has been affirmed in its entirety and the prescribed time, if any, for commencing any further appeal has expired. For purposes of this ¶ 1.16, an "appeal" includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and any other proceedings of like kind. Any appeal or other proceeding pertaining solely to any order adopting or approving the Distribution Plan, and/or any order issued in respect of an application for attorneys' fees and expenses pursuant to ¶ 28, below, shall not in any way delay or prevent the Judgment from becoming Final.

1.17.   "Final Approval Order" means the Court's approval of the Settlement following preliminary approval thereof, notice to the Class, and a hearing on the fairness of the Settlement.

1.18.   "Judgment" means the order of judgment and dismissal of the Action with prejudice as to Barclays, the form of which shall be mutually agreed upon by the Settling Parties and submitted to the Court for approval thereof.

1.19.   "LIBOR" means the London Interbank Offered Rate.

1.20.   "Multi-District Litigation" means *LIBOR-Based Financial Instruments Antitrust Litigation*, No. 11-MD-2262, and is currently pending in the U.S. District Court for the Southern District of New York.

1.21.   "Net Settlement Fund" means the Settlement Fund less the payments set forth in ¶¶ 17.1–17.5, below.

1.22.   "Notice" means the form of notice of the proposed Settlement to be provided to Class Members as provided in this Agreement and the Preliminary Approval Order.

1.23.   "Person(s)" means an individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, municipality, state, state agency, any entity that is a creature of any state, any government or any political subdivision, authority, office, bureau or agency of any government, and any business or legal entity, and any spouses, heirs, predecessors, successors, representatives or assignees of any of the foregoing.

1.24.   "Proof of Claim and Release" means the form to be sent to Class Members, upon further order(s) of the Court, by which any Class Member may make a claim against the Net Settlement Fund.

1.25.   "Released Claims" means any and all manner of claims, debts, demands, rights, interests, actions, suits, causes of action, whether class, individual or otherwise in nature, fees, costs, penalties, damages whenever incurred, and liabilities of any nature whatsoever (including, without limitation, direct or indirect claims or demands for rescission, damages, interest, attorneys' fees, and any other costs, expenses or liabilities whatsoever), whether based on federal, state, local, statutory or common law, in equity, or on any other law, rule or regulation, whether fixed or contingent, known or unknown, liquidated or unliquidated, suspected or unsuspected, asserted or unasserted, matured or unmatured, which Releasors or any of them, whether directly, representatively, derivatively, or in any other capacity, now or ever had against Releasees, arising from or relating in any way to any conduct alleged in the Action or that could have been alleged in the Action against the Releasees concerning Eurodollar future contracts or options by Exchange-Based Plaintiffs, any Class Members, or Releasors, including, but not limited to, any purported manipulation of USD LIBOR under the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, or any purported conspiracy or collusion between Barclays and any other Defendant (including, but not limited to, all claims under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1; California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, *et seq.*; New York's Donnelly Act, N.Y. Gen. Bus. Law §§ 340, *et seq.*; and any other federal or state statute or common law, or the law of any foreign jurisdiction).

1.26.   "Releasees" means Barclays, its predecessors, successors and assigns, its direct and indirect parents, subsidiaries, and affiliates, and its respective current and former officers, directors, employees, managers, members, partners, agents (in their capacity as agents of Barclays), shareholders (in their capacity as shareholders of Barclays), attorneys, and legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.  "Affiliates" in this provision means entities controlling, controlled by, or under common control with a Releasee.

1.27.   "Releasors" means Exchange-Based Plaintiffs and each and every Class Member on their own behalf and on behalf of their respective predecessors, successors and assigns, direct and indirect parents, subsidiaries and affiliates, their current and former officers, directors, employees, agents, and legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.  With respect to any Class Member that is a government entity, Releasor includes any Class Member as to which the government entity has the legal right to

release such claims.  As used in this provision, "affiliates" means entities controlling, controlled by, or under common control with a Releasor.

1.28.   "Settlement" means the settlement of the Released Claims set forth herein.

1.29.   "Settlement Amount" means $19,975,000.

1.30.   "Settlement Fund" means the Settlement Amount plus any interest that may accrue.

1.31.   "Settling Party" means Barclays or any Exchange-Based Plaintiff (for itself and on behalf of each Class Member).

1.32.   "USD LIBOR" means U.S. Dollar LIBOR.

## B.   PRELIMINARY APPROVAL ORDER, NOTICE ORDER, AND SETTLEMENT HEARING

2.   **Reasonable Best Efforts to Effectuate this Settlement.**  The Settling Parties agree to cooperate with one another to the extent reasonably necessary to effectuate and implement the terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the terms and conditions of this Agreement.

3.   **Motion for Preliminary Approval.**  Within thirty (30) calendar days after the Execution Date, Exchange-Based Plaintiffs' Counsel shall submit this Agreement to the Court and shall file a motion for entry of an order (the "Preliminary Approval Order") requesting, *inter alia*, preliminary approval of the Settlement, including certification of the Class for purposes of the Settlement only, and for a stay of all proceedings in the Action against the Releasees until the Court renders a final decision on approval of the Settlement.  The motion shall include a proposed order preliminarily approving the Settlement substantially in the form attached hereto as Exhibit A.

4.   **Stipulation to Certification of a Settlement Class.**  The Settling Parties hereby stipulate for purposes of the Settlement only that the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied and, subject to Court approval, the following Class shall be certified:

> All Persons (other than Defendants, their employees, affiliates, parents, subsidiaries, and co-conspirators) that transacted in LIBOR-based Eurodollar futures or options on exchanges such as the Chicago Mercantile Exchange between January 1, 2005 and May 31, 2010.

If the Settlement as described herein is finally disapproved by any court, is terminated as provided herein or is reversed or vacated following any appeal taken therefrom, then this

stipulation for the purposes of Settlement that the above Class should be certified becomes null and void, and Barclays reserves all rights to contest that the Action should be certified as a class action.

5. **Notice to Class.**  In the event that the Court preliminarily approves the Settlement, Exchange-Based Plaintiffs' Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Preliminary Approval Order, provide Class Members whose identities can be determined after reasonable efforts with notice of the date of the hearing scheduled by the Court to consider the fairness, adequacy and reasonableness of the proposed Settlement ("Settlement Hearing").  The Notice may be sent solely for this Settlement or combined with notice of other settlements or of any litigation class.  The Notice shall also explain the general terms of the Settlement set forth in this Agreement, the general terms of the proposed Distribution Plan, the general terms of the Fee and Expense Application (as defined in ¶ 28, below), and a description of Class Members' rights to object to the Settlement, request exclusion from the Class, and appear at the Settlement Hearing.  The text of the Notice shall be agreed upon by Exchange-Based Plaintiffs' Counsel and Barclays before its submission to the Court for approval thereof.

6. **Publication.**  Exchange-Based Plaintiffs' Counsel shall cause to be published a summary ("Summary Notice") in accord with the Notice submitted to the Court by Exchange-Based Plaintiffs' Counsel and approved by the Court.  Barclays shall have no responsibility for providing publication or distribution of the Settlement or any notice of the Settlement to Class Members or for paying for the cost of providing notice of this Settlement to Class Members.  The Settling Parties shall mutually agree on any content relating to Barclays that will be used by Exchange-Based Plaintiffs' Counsel and/or the Claims Administrator in any Settlement-related press release or other media publications, including on websites.

7. **Motion for Final Approval and Entry of Final Judgment.**  Thirty (30) days prior to the date of the Settlement Hearing set by the Court in the Preliminary Approval Order, to the extent permitted by the Court, Exchange-Based Plaintiffs' Counsel shall make a motion to the Court for the final approval of the Settlement, and the Settling Parties shall jointly seek entry of the Final Approval Order and Judgment on substantially the following terms:

7.1.   Fully and finally approving the Settlement contemplated by this Agreement as fair, reasonable, and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms and conditions;

7.2.   Finding that the Notice constituted the best notice practicable under the circumstances and complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process;

7.3.    Directing that the Action be dismissed with prejudice as to Barclays and, except as provided for herein, without costs;

7.4.    Discharging and releasing the Released Claims as to the Releasees;

7.5.    Permanently barring and enjoining the institution and prosecution by Exchange-Based Plaintiffs and any Class Member of any lawsuit, arbitration or other proceeding against the Releasees in any jurisdiction asserting any of the Released Claims;

7.6.    Reserving the Court's continuing and exclusive jurisdiction over the Settlement, including all future proceedings concerning the administration and enforcement of this Agreement;

7.7.    Determining pursuant to Rule 54(b) of the Federal Rules of Civil Procedure that there is no just reason for delay and directing entry of a final Judgment as to Barclays; and

7.8.    Containing such other and further provisions consistent with the terms of this Agreement to which the Settling Parties expressly consent in writing.

8.    Sufficiently before the Settlement Hearing, Exchange-Based Plaintiffs' Counsel will timely request that the Court approve the Fee and Expense Application (as defined in ¶ 28, below).  As set forth in ¶ 30, below, a Fee and Expense Application and the Distribution Plan are matters separate and apart from the Settlement between the Settling Parties.

## C.    SETTLEMENT FUND

9.    **Payments made by Barclays.**  Barclays shall pay by wire transfer five million dollars ($5 million) of the Settlement Amount into the Settlement Fund within ten (10) business days after the Execution Date.  The balance of the Settlement Amount, which shall be fourteen million, nine hundred and seventy five thousand dollars ($14,975,000), shall be paid into the Settlement Fund by Barclays within ten (10) business days after entry of the Final Approval Order.  All interest earned by any portion of the Settlement Amount paid into the Settlement Fund shall be added to and become part of the Settlement Fund.  Except as provided in ¶ 36, below, the Settlement Amount shall not be subject to reduction and upon the occurrence of the Effective Date, no funds may be returned to Barclays through reversion or other means.  The Escrow Agent shall only act in accordance with instructions mutually agreed upon by the Settling Parties in writing.

10.    **Disbursements Prior to Effective Date.**  No amount may be disbursed from the Settlement Fund unless and until the Effective Date, except that, upon written notice to the Escrow Agent by Exchange-Based Plaintiffs' Counsel with a copy to Barclays: (i) reasonable costs of the Notice ("Notice and Administrative Costs") may be paid from the Settlement Fund

as they become due; (ii) Taxes and Tax Expenses may be paid from the Settlement Fund as they become due; and (iii) reasonable costs of the Escrow Agent ("Escrow Agent Costs") may be paid from the Settlement Fund as they become due.  Exchange-Based Plaintiffs' Counsel will attempt in good faith to minimize the amount of Notice and Administrative Costs.  In the event that the Settlement Agreement is not approved, Plaintiffs will not be required to reimburse Barclays for the costs of Notice.

11.     **Refund by Escrow Agent.**  If Exchange-Based Plaintiffs do not file a motion for final approval of the Settlement at least thirty (30) calendar days prior to the Settlement Hearing date set by the Court in the Preliminary Approval Order, or on such other date as ordered by the Court, or the Settlement is finally disapproved by any court or is terminated as provided herein, or the Judgment is overturned on appeal or by writ, the Settlement Fund, including all interest earned on such amount while held in the escrow account, and excluding any proper, previously disbursed Notice and Administrative Costs, Taxes and Tax Expenses, and Escrow Agent Costs, will be refunded, reimbursed, and repaid by the Escrow Agent to Barclays within three (3) business days after receiving notice.

12.     **No Additional Payments by Barclays**.  Under no circumstances will Barclays be required to pay more than the Settlement Amount.  For purposes of clarification, and as provided in ¶ 17, below, the payment of any Fee and Expense Award (as defined in ¶ 29, below), Notice and Administrative Costs, Taxes and Tax Expenses, Escrow Agent Costs, and any other costs associated with the implementation of this Agreement, shall be paid exclusively from the Settlement Fund. This Settlement is not a claims-made settlement and, if all conditions of the Settlement are satisfied, the Judgment is entered and becomes Final, no portion of the Settlement Fund will be returned to Barclays, irrespective of the number of Claims filed, the collective amount of losses of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants.  If any portion of the Net Settlement Fund remains following distribution pursuant to ¶ 18 and is of such an amount that in the discretion of the Claims Administrator it is not cost effective or efficient to redistribute to the Settlement Class, then such remaining funds, after payment of any further Notice and Administration Costs and Taxes and Tax Expenses and other costs and expenses related to the Action, shall be donated to a non-profit charitable organization selected by Exchange-Based Plaintiffs' Counsel and approved by the Court.

13.     **Taxes.**  The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B–l.  The Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 13, including the "relation-back election" (as defined in Treas. Reg. § 1.468B–l) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to prepare and deliver timely and properly the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

13.1.    For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.  The Escrow Agent shall satisfy the administrative requirements imposed by Treas. Reg. § 1.468B–2 by, *e.g.*, (i) obtaining a taxpayer identification number, (ii) satisfying any information reporting or withholding requirements imposed on distributions from the Settlement Fund, and (iii) timely and properly filing applicable federal, state and local tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B–2(k)) and paying any taxes reported thereon.  Such returns (as well as the election described in this ¶ 13) shall be consistent with this ¶ 13 and in all events shall reflect that all Taxes as defined in ¶ 13.2, below, on the income earned by the Settlement Fund shall be paid from the Settlement Fund as provided in ¶ 17, below.

13.2.    All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including, without limitation, any taxes or tax detriments that may be imposed upon Barclays or its counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes (collectively, "Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶ 13, including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶ 13 (collectively, "Tax Expenses"), shall be paid from the Settlement Fund; in all events, Barclays and its counsel shall have no liability or responsibility for the Taxes or the Tax Expenses.  With funds from the Settlement Fund, the Escrow Agent shall indemnify and hold harmless Barclays and its counsel for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall timely be paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B–2(I)(2)); neither Barclays nor its counsel is responsible therefor, nor shall they have any liability therefor. The Settling Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶ 13.

14.    **Exchange-Based Plaintiffs' Release and Covenant Not to Sue.**  Upon the Effective Date, and in exchange for the receipt of the Settlement Amount provided for herein, the

receipt and sufficiency of which is hereby acknowledged, the Releasors, and any other Person
claiming against the Settlement Fund (now or in the future) through or on behalf of any Releasor,
shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever
released, relinquished, and discharged Releasees from any and all Released Claims, and shall be
permanently barred and enjoined from instituting, commencing, or prosecuting any such
Released Claim in any lawsuit, arbitration or other proceeding against any Releasee in any court
or venue in any jurisdiction worldwide.  Each Releasor shall be deemed to have released all
Released Claims against the Releasees regardless of whether any such Releasor ever seeks or
obtains by any means, including, without limitation, by submitting a Proof of Claim and Release,
any distribution from the Settlement Fund or Net Settlement Fund.  The releases set forth herein
are given pursuant to New York law and are to be construed under New York law, including
N.Y. General Obligations Law § 15-108, which bars claims for contribution by joint tortfeasors
and other similar claims.  This Agreement is expressly intended to absolve Releasees against any
claims for contribution, indemnification or similar claims from other defendants in the Action,
arising out of or related to the Released Claims, in the manner and to the fullest extent permitted
under the law of New York or any other jurisdiction that might be construed or deemed to apply
to any claims for contribution, indemnification or similar claims against any Releasee.
Notwithstanding the foregoing, should any court determine that any Defendant is/was legally
entitled to any kind of contribution or indemnification from Barclays arising out of or related to
Released Claims, the Releasors agree that any money judgment subsequently obtained by the
Releasors against any Defendant shall be reduced to an amount such that, upon paying the entire
amount, the Defendant would have no claim for contribution, indemnification or similar claims
against Barclays.  Except in the event of termination of this Settlement, the Settling Parties agree
not to assert under Rule 11 of the Federal Rules of Civil Procedure or any similar law, rule or
regulation, that the Action was brought or defended in bad faith or without a reasonable basis.

15.    **Unknown Claims/California Civil Code Section 1542.**  The release set forth in
¶ 14, above, constitutes a waiver of Section 1542 of the California Civil Code (to the extent it
applies to the Action), which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH
> THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS
> OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE,
> WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY
> AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The release set forth in ¶ 14, above, also constitutes a waiver of any and all provisions, rights,
and benefits of any federal, state or foreign law, rule, regulation, or principle of law or equity
that is similar, comparable, equivalent to, or which has the effect of, Section 1542 of the
California Civil Code.  The Releasors acknowledge that they are aware that they may hereafter
discover facts in addition to, or different from, those facts which they know or believe to be true

with respect to the subject matter of this Agreement, but that it is their intention to release fully, finally, and forever all of the Released Claims, and in furtherance of such intention, the release shall be irrevocable and remain in effect notwithstanding the discovery or existence of any such additional or different facts.  In entering and making this Agreement, the Releasors assume the risk of any mistake of fact or law and the release shall be irrevocable and remain in effect notwithstanding any mistake of fact or law.

16.     **Payment of Fees and Expenses.**  Subject to Court approval, Exchange-Based Plaintiffs and Exchange-Based Plaintiffs' Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and past, current, or future litigation expenses.  Attorneys' fees and expenses awarded by the Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Exchange-Based Plaintiffs' Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or cost award is reduced or reversed.  Barclays shall have no responsibility for any costs, fees, or expenses incurred for or by Exchange-Based Plaintiffs' or Class Members' respective attorneys, experts, advisors, agents, or representatives.

**D.     ADMINISTRATION AND DISTRIBUTION OF SETTLEMENT FUND**

17.     **Distribution of Settlement Fund.**  The Claims Administrator, subject to such supervision and direction of the Court and/or Exchange-Based Plaintiffs' Counsel as may be necessary or as circumstances may require, shall administer the claims submitted by Class Members and shall oversee the distribution of the Settlement Fund pursuant to the Distribution Plan.  Subject to the terms of this Agreement and any order(s) of the Court, the Settlement Fund shall be applied as follows:

17.1.    To pay Notice and Administrative Costs;

17.2.    To pay Escrow Agent Costs;

17.3.    To pay all costs and expenses reasonably and actually incurred in assisting Class Members with the filing and processing of claims against the Net Settlement Fund;

17.4.    To pay the Taxes and Tax Expenses;

17.5.    To pay any Fee and Expense Award; and

17.6.    To distribute the Net Settlement Fund to Authorized Claimants as allowed by the Agreement, any Distribution Plan, or order of the Court.

18.     **Distribution of Net Settlement Fund.**  Upon the Effective Date and thereafter, and in accordance with the terms of this Agreement, the Distribution Plan, or any order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following:

18.1.   Each Class Member who claims to be an Authorized Claimant shall be required to submit to the Claims Administrator a verified completed Proof of Claim and Release supported by such documents as specified in the Proof of Claim and Release and as are reasonably available to such Class Member;

18.2.   Except as otherwise ordered by the Court, each Class Member who fails to submit a Proof of Claim and Release within such period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to this Agreement and the Settlement set forth herein, but shall in all other respects be subject to and bound by the provisions of this Agreement, the releases contained in this Agreement, and the Judgment;

18.3.   The Net Settlement Fund shall be distributed to Authorized Claimants and, in no event, shall there be any reversion to Barclays.  The distribution to Authorized Claimants shall be substantially in accordance with the Distribution Plan to be approved by the Court upon such further notice to the Class as may be required. Any such Distribution Plan is not a part of this Agreement. No funds from the Net Settlement Fund shall be distributed to Authorized Claimants until the Effective Date; and

18.4.   Each Class Member shall be subject to and bound by the provisions of this Agreement, the releases contained herein, and the Judgment, regardless of whether such Class Member seeks or obtains by any means, including, without limitation, by submitting a Proof of Claim and Release or any similar document, any distribution from the Net Settlement Fund.

19.     **No Liability for Distribution of Settlement Funds.**  The Releasees and their counsel shall have no responsibility for, interest in, or liability whatsoever with respect to the investment or distribution of the Settlement Fund, the Distribution Plan, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, the distribution of the Net Settlement Fund, or any losses incurred in connection with any such matters.  Effective immediately upon the Execution Date, the Releasors hereby fully, finally, and forever release, relinquish, and discharge the Releasees and their counsel from any and all such liability.  No Person shall have any claim against Exchange-Based Plaintiffs' Counsel or the Claims Administrator based on distributions made substantially in accordance with the Agreement and the Settlement contained herein, the Distribution Plan, or further orders of the Court.

20.     **Balance Remaining in Net Settlement Fund.**  If there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), Exchange-Based Plaintiffs' Counsel shall submit an additional distribution plan to the Court for approval.

E.     COOPERATION

21.     **Stay of Discovery.**  The Settling Parties agree to a stay of all discovery as to Barclays, subject to the provisions of ¶¶ 22–27, below.  The stay will automatically be dissolved if (i) the Court does not enter the Preliminary Approval Order, the Final Approval Order, or the Judgment, or (ii) the Court enters the Final Approval Order and the Judgment and appellate review is sought and, on such review, the Final Approval Order or the Judgment is finally vacated, modified, or reversed, unless the Settling Parties, in their sole discretion within thirty (30) calendar days from the date of the mailing of such ruling to such parties, provide written notice to all other parties hereto of their intent to proceed with the Settlement under the terms of the Preliminary Approval Order, the Final Approval Order or the Judgment as modified by the Court or on appeal.

22.     **Barclays' Cooperation.**  Barclays shall provide reasonable cooperation in the Action, including discovery cooperation, requested by Exchange-Based Plaintiffs' Counsel, to benefit the Class.  All cooperation shall be coordinated in such a manner so that all unnecessary duplication and expense is avoided.

22.1.    Barclays' cooperation obligations shall only apply to Releasors who act with, by or through Exchange-Based Plaintiffs' Counsel pursuant to this Agreement.

22.2.    Notwithstanding any other provision in this Agreement, Barclays may assert where applicable the attorney work-product doctrine, the attorney-client privilege, the common interest doctrine, the joint defense privilege and/or any other applicable privilege or protection with respect to any documents, interviews, declarations, and/or affidavits, depositions, testimony, material, and/or information requested under this Agreement.  Any documents, declarations, affidavits, deposition testimony and information provided to Exchange-Based Plaintiffs' Counsel pursuant to this provision shall be covered by the protective orders in place in the Action.  None of the cooperation provisions are intended to, nor do they, waive any such privileges or protections. Barclays agrees that its counsel will meet with Exchange-Based Plaintiffs' Counsel as is reasonably necessary to discuss any applicable privilege or protection.  Any disputes regarding privilege that cannot be resolved amongst the parties shall be reserved for resolution by the Court.

22.3.    If any document protected by the attorney-client privilege, attorney work-product doctrine, the common interest doctrine, the joint defense privilege and/or any

other applicable privilege or protection is accidentally or inadvertently produced, the document shall promptly be returned to Barclays' counsel, and its production shall in no way be construed to have waived any privilege or protection attached to such document or information.

22.4.    Notwithstanding any other provision of this Agreement, in the event that Barclays believes that Exchange-Based Plaintiffs' Counsel has unreasonably requested cooperation, its counsel and Exchange-Based Plaintiffs' Counsel agree to meet and confer regarding such disagreement and seek resolution from the Court if necessary.  If Court resolution is sought, the disputed aspect of cooperation shall be held in abeyance until such resolution by the Court and such abeyance shall not constitute a breach of this Agreement.

22.5.    Exchange-Based Plaintiffs' Counsel agree to use any and all of the information and documents obtained from Barclays only for the purpose of the Action, and agree to be bound by the terms of the protective orders entered in the Action.

22.6.    Exchange-Based Plaintiffs' Counsel agree, unless ordered by a court and consistent with due process, that under no circumstances shall Exchange-Based Plaintiffs' Counsel produce documents obtained from Barclays to any Person, including, without limitation, counsel for any other plaintiff in the Action or any Class Member who excludes itself from the Class for purposes of the Settlement.

23.    **Document Production.**  Barclays will provide cooperation by promptly producing the following categories of documents for the benefit of Exchange-Based Plaintiffs:

23.1.    Direct communications between Barclays employees and employees of other financial institutions, including USD LIBOR panel banks, that represent possible requests to or among other panel banks for USD LIBOR submissions to be made at a certain level or in a certain direction;

23.2.    Liquidity updates circulated by personnel on Barclays' London Money Markets Desk, including those which reference Barclays' and other USD LIBOR panel banks' LIBOR submissions and including those which were created after April 14, 2009;

23.3.    Documents reflecting Barclays' knowledge of other panel banks' expected USD LIBOR submissions including those which were created after April 14, 2009; and

23.4.    Documents quoted in Exchange-Based Plaintiffs' complaint in the Action that are in Barclays' possession or control.

24.    **Other Information.**  Barclays will cooperate to provide information necessary for Exchange-Based Plaintiffs to authenticate or otherwise make usable at trial the

aforementioned documents, including providing access to Barclays' employees and former employees where possible.  Promptly after the Execution Date, Barclays will also provide an attorney proffer to present necessary background information regarding Barclays' derivatives positions and trading sufficient for Exchange-Based Plaintiffs to ascertain the extent of Barclays' involvement in the Eurodollar and other relevant futures or derivatives markets during the periods of alleged false LIBOR submissions.

25.    **Other Communications.**  In addition to the aforementioned documents, Barclays shall provide a list of dates on which communications took place within Barclays involving possible internal requests for favorable USD LIBOR submissions, which may or may not reference other USD LIBOR panel banks' LIBOR submissions, but shall produce these communications to Exchange-Based Plaintiffs only under the following circumstances:

25.1.    If Exchange-Based Plaintiffs can make a good faith demonstration to Barclays that another USD LIBOR panel bank made a false USD LIBOR submission on one of the listed dates, Barclays will produce internal communications that occurred on that date unless Exchange-Based Plaintiffs' claims against other Defendants have been dismissed in their entirety and the dismissal has been upheld on appeal;

25.2.    In the event and at the time that Barclays produces any such communications to other civil plaintiffs pursuant to discovery, settlement or other reason, Barclays will promptly produce those communications to Exchange-Based Plaintiffs unless Exchange-Based Plaintiffs' claims against other Defendants have been dismissed in their entirety and the dismissal has been upheld on appeal; or

25.3.    Barclays will produce such communications (i) after the onset of general merits discovery in the Multi-District Litigation or (ii) twelve months after the Execution Date, whichever is shorter, unless Exchange-Based Plaintiffs' claims against other Defendants have been dismissed in their entirety and the dismissal has been upheld on appeal.

26.    **Other Productions.**  In the event and at the time that Barclays produces any documents to other plaintiffs in the Multi-District Litigation pursuant to discovery, settlement or other reason, Barclays will promptly produce those documents to Exchange-Based Plaintiffs unless Exchange-Based Plaintiffs' claims against all other Defendants have been dismissed in their entirety and the dismissal has been upheld on appeal.

27.    **Other Discovery.**  Notwithstanding the above, Exchange-Based Plaintiffs shall have the right, (i) after the onset of general merits discovery in the Multi-District Litigation to make requests to Barclays, without subpoena, for documents relating to USD LIBOR, including electronically stored information ("ESI"), which are non-duplicative of requests made by non-settling plaintiffs and Barclays shall cooperate (by, among other ways, allowing Exchange-Based

Plaintiffs to provide search terms for electronic searches of specific Barclays custodians' files) and produce responsive, non-privileged documents for the period January 1, 2005 through May 31, 2010; and (ii) twelve months after the Execution Date to request that Barclays produce documents and provide testimony relating to USD LIBOR that Barclays has not at that time produced to parties in the Multi-District Litigation.  This provision shall be terminated if Exchange-Based Plaintiffs' claims against all other Defendants have been dismissed in their entirety and the dismissal has been upheld on appeal.  If Barclays declines to produce documents in response to a request by Exchange-Based Plaintiffs, Exchange-Based Plaintiffs shall have the right to seek production of documents from Barclays by making a motion to the Court, unless Exchange-Based Plaintiffs' claims against all other Defendants have been dismissed in their entirety and the dismissal has been upheld on appeal.  Exchange-Based Plaintiffs and Barclays agree that the standards for production set forth in Rule 34 of the Federal Rules of Civil Procedure shall apply to any request or motion made pursuant to this ¶ 27.  Exchange-Based Plaintiffs shall be prohibited from seeking any documents from Barclays after more than twenty-eight (28) months from the Effective Date.

**F.**    **ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

28.    **Fee and Expense Application.**  Barclays shall have no interest or right in or to any portion of the Settlement Fund based on any ruling that the Court makes on any application by Exchange-Based Plaintiffs' Counsel for fees, costs, or expenses.  Exchange-Based Plaintiffs' Counsel may, at their discretion and election, choose to submit an application or applications to the Court (collectively, "Fee and Expense Application") for distributions to them from the Settlement Fund for an award of attorneys' fees or reimbursement of expenses incurred in connection with prosecuting the Action.

29.    **Payment of Fee and Expense Award.**  Any amounts that are awarded by the Court pursuant to a Fee and Expense Application (the "Fee and Expense Award") shall be paid from the Settlement Fund as provided in ¶ 17, above, but no earlier than the Effective Date.

29.1.    Subject to the requirements in ¶ 28, above, attorneys' fees may be distributed pursuant to the terms of a Fee and Expense Award, provided however that any Exchange-Based Plaintiffs' Counsel seeking to draw down their share of the attorneys' fees prior to the Final Approval Order or the Fee and Expense Award becoming Final shall unconditionally guarantee the repayment of the amount drawn down.

29.2.    In order to receive a distribution of funds prior to the Final Approval Order or the Fee and Expense Award becoming Final, Exchange-Based Plaintiffs' Counsel shall be required to reimburse the Settlement Fund within thirty (30) business days for all or the pertinent portion of the draw-down with interest, calculated at the rate of interest published in the Wall Street Journal for 3-month U.S. Treasury Bills as of the close on the date that the draw-down was distributed, if a Final Approval Order is not

entered or if the Fee and Expense Award is reduced or overturned on appeal.

30.     **Award of Fees and Expenses not Part of Settlement.**  The procedures for, and the allowance or disallowance by the Court of, any Fee and Expense Application are not part of the Settlement set forth in this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Agreement.  Any order or proceeding relating to any Fee and Expense Application, or any appeal from any Fee and Expense Award or any other order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the Judgment and the Settlement of the Action as set forth herein.  No order of the Court or modification or reversal on appeal of any order of the Court concerning any Fee and Expense Award or the Distribution Plan shall constitute grounds for termination of this Agreement.

31.     **No Liability for Fees and Expenses of Exchange-Based Plaintiffs' Counsel.**  The Releasees shall have no responsibility for, and no liability whatsoever with respect to, any payment(s) to Exchange-Based Plaintiffs' Counsel for fees and expenses and/or to any other Person who may assert some claim thereto, or any Fee and Expense Award that the Court may make in the Action.

**G.     CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL OR TERMINATION**

32.     **Effective Date.**  The Effective Date of this Agreement shall be conditioned on the occurrence of all of the following events:

32.1.   Barclays no longer has any right under the terms of this Agreement to terminate the Agreement or, if Barclays does have such right, it has given written notice to Exchange-Based Plaintiffs' Counsel that it will not exercise such right;

32.2.   The Court has entered the Final Approval Order and the Judgment; and

32.3.   The Judgment has become Final.

33.     **Occurrence of Effective Date.**  Upon the occurrence of all of the events referenced in ¶ 32, above, any and all remaining interest or right of Barclays in or to the Settlement Fund, if any, shall be absolutely and forever extinguished, and the Net Settlement Fund shall be transferred from the Escrow Agent to the Claims Administrator at the written direction of Exchange-Based Plaintiffs' Counsel.

34.     **Failure of Effective Date to Occur.**  If all of the conditions specified in ¶ 32, above, are not satisfied, then this Agreement shall be terminated, subject to and in accordance with ¶ 36, below, unless the Settling Parties mutually agree in writing to continue with it for a specified period of time.

35.    **Failure to Enter Proposed Preliminary Approval Order, Final Approval Order, or Judgment.**  If the Court does not enter the Preliminary Approval Order, the Final Approval Order, or the Judgment, or if this Court enters the Final Approval Order and the Judgment and appellate review is sought and, on such review, the Final Approval Order or the Judgment is finally vacated, modified, or reversed, then this Agreement and the Settlement incorporated therein shall be terminated, unless the Settling Parties, in their sole discretion within thirty (30) days from the date of the mailing of such ruling to such parties provide written notice to all other parties hereto of their intent to proceed with the Settlement under the terms of the Preliminary Approval Order, the final Approval Order, or the Judgment as modified by the Court or on appeal.  Such notice may be provided on behalf of Exchange-Based Plaintiffs and the Class by Exchange-Based Plaintiffs' Counsel.  No Settling Party shall have any obligation whatsoever to proceed under any terms other than substantially in the form provided and agreed to herein; provided, however, that no order of the Court concerning any Fee and Expense Application or the Distribution Plan, or any modification or reversal on appeal of such an order, shall constitute grounds for termination of this Agreement by any Settling Party.  Without limiting the foregoing, Barclays shall have, in its sole and absolute discretion, the option to terminate the Settlement in its entirety in the event that the Judgment, upon becoming Final, does not provide for the dismissal with prejudice of the Action as to Barclays and a full discharge of the Released Claims as to Barclays.

36.    **Termination.**  Unless otherwise ordered by the Court, in the event that the Effective Date does not occur or this Agreement should terminate or be cancelled, or otherwise fail to become effective for any reason, including, without limitation, in the event that the Settlement as described herein is not finally approved by the Court or the Judgment is reversed or vacated following any appeal taken therefrom, or pursuant to ¶ 35, above, then:

36.1.    Within ten (10) business days after written notification of such event is sent by counsel for Barclays or Exchange-Based Plaintiffs' Counsel to the Escrow Agent, the Settlement Fund, including the Settlement Amount and all interest earned in the Settlement Fund and all payments disbursed, including all expenses, costs, excluding any Notice and Administrative Costs that have either been properly disbursed or are due and owing pursuant to ¶¶ 5–6, above, Taxes and Tax Expenses that have been properly paid or that have accrued and will be properly payable at some later date, and Escrow Agent Costs that have either been properly disbursed or are due and owing, will be refunded, reimbursed, and repaid by the Escrow Agent to Barclays;

36.2.    The Escrow Agent or its designee shall apply for any tax refund owed to the Settlement Fund and pay the proceeds to Barclays, after deduction of any fees or expenses reasonably incurred in connection with such application(s) for refund;

36.3.    The Settling Parties shall be restored to their respective positions in the

Action as of the Execution Date, with all of their respective legal claims and defenses, preserved as they existed on that date;

36.4.    The terms and provisions of this Agreement, with the exception of ¶¶ 11–12, 32–36, 38, and 41–42 (which shall continue in full force and effect), shall be null and void and shall have no further force or effect with respect to the Settling Parties, and neither the existence nor the terms of this Agreement (nor any negotiations preceding this Agreement nor any acts performed pursuant to, or in furtherance of, this Agreement) shall be used in the Action or in any other lawsuit, arbitration or other proceeding for any purpose (other than to enforce the terms remaining in effect); and

36.5.    Any Judgment or order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

## H.    NO ADMISSION OF LIABILITY

37.    **Final and Complete Resolution.**  The Settling Parties intend the Settlement as described herein to be a final and complete resolution of all disputes between them with respect to the Action, and it shall not be deemed or construed as an admission by any Settling Party of anything, including, without limitation, the merit or lack of merit of any claim or defense, or an admission of liability by any Person, including, without limitation, Releasees.

38.    **Use of Agreement as Evidence.**  Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement:  (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claims, of any allegation made in the Action, or of any wrongdoing or liability of Releasees; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any liability, fault, or omission of the Releasees in any civil, criminal, or administrative proceeding before any court, administrative agency, arbitration panel or other tribunal.  Nothing in this paragraph or Agreement shall exclude Exchange-Based Plaintiffs from using any documents and testimony obtained in connection with ¶¶ 22 through 27 above as necessary to continue to prosecute the Action.  Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement shall be admissible in any proceeding for any purpose, except to enforce the terms of the Settlement, and except that the Releasees may file this Agreement and/or the Judgment in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.  The limitations described in this ¶ 38 apply whether or not the Court enters the Preliminary Approval Order, the Final Approval Order, or the Judgment.

## I.    MISCELLANEOUS PROVISIONS

39.    **Barclays' Right to Communicate.**  Exchange-Based Plaintiffs' Counsel acknowledges and agrees that Barclays has the right to communicate orally and in writing with, and to respond to inquiries from, Class Members, including (without limitation): (i) communications between Class Members and representatives of Barclays whose responsibilities include client relations to the extent such communications are initiated by Class Members; (ii) communications between Class Members who are ongoing clients of Barclays or who seek to become clients of Barclays; and (iii) communications that might be necessary to conduct Barclays' business.

40.    **Voluntary Settlement.**  The Settling Parties agree that the Settlement Amount and the other terms of the Settlement as described herein were negotiated in good faith by the Settling Parties, and reflect a Settlement that was reached voluntarily after consultation with competent legal counsel.

41.    **Consent to Jurisdiction.**  Barclays, each Exchange-Based Plaintiff, and each Class Member hereby irrevocably submit to the exclusive jurisdiction of the Court only for the specific purpose of any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement.

42.    **Resolution of Disputes; Retention of Exclusive Jurisdiction.**  Any disputes between or among Barclays and any Exchange-Based Plaintiff or Class Member (or their counsel) concerning matters contained in this Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court.  The Court shall retain exclusive jurisdiction over the implementation and enforcement of this Agreement.

43.    **Binding Effect.**  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto. Without limiting the generality of the foregoing, each and every covenant and agreement herein by Exchange-Based Plaintiffs, and Exchange-Based Plaintiffs' Counsel shall be binding upon all Class Members.

44.    **Authorization to Enter Settlement Agreement.**  The undersigned representatives of Barclays represent that they are fully authorized to enter into and to execute this Agreement on behalf of Barclays.  Exchange-Based Plaintiffs' Counsel, on behalf of Exchange-Based Plaintiffs, represent that they are, subject to Court approval, expressly authorized to take all action required or permitted to be taken by or on behalf of the Class pursuant to this Agreement to effectuate its terms and to enter into and execute this Agreement and any modifications or amendments to the Agreement on behalf of the Class that they deem appropriate.

45.    **Notices.**  All notices and other communications required to be given hereunder, or

which may be given pursuant to the provisions hereof, shall be in writing.  Each such notice shall be given either by (i) e-mail; (ii) hand delivery; (iii) registered or certified mail, return receipt requested, postage pre-paid; (iv) FedEx or similar overnight courier; or (v) facsimile and first class mail, postage pre-paid, and, if directed to any Class Member, shall be addressed to Exchange-Based Plaintiffs' Counsel at their addresses set forth on the signature page hereof; and if directed to Barclays, shall be addressed to its attorneys at the address set forth on the signature pages hereof or such other addresses as Exchange-Based Plaintiffs' Counsel or Barclays may designate, from time to time, by giving notice to all parties hereto in the manner described in this paragraph.

46.    **No Conflict Intended.**  The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

47.    **No Party Deemed to Be the Drafter.**  No Settling Party shall be deemed to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter.

48.    **Choice of Law.**  This Agreement and the exhibit(s) hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of New York, and the rights and obligations of the parties to this Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New York without giving effect to that State's choice of law principles.

49.    **Amendment; Waiver.**  This Agreement shall not be modified in any respect except by a writing executed by all the Settling Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party.  The waiver by any party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach of this Agreement, whether prior, subsequent, or contemporaneous.

50.    **Execution in Counterparts.**  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  Counsel for the parties to this Agreement shall exchange among themselves original signed counterparts and a complete set of executed counterparts shall be filed with the Court.

51.    **Integrated Agreement.**  This Agreement constitutes the entire agreement between the Settling Parties and no representations, warranties, or inducements have been made to any Settling Party concerning this Agreement other than the representations, warranties, and covenants contained and memorialized herein.

52.     **Reservation of Rights.**  This Agreement does not settle or compromise any claims by Exchange-Based Plaintiffs or any Class Member asserted in the Action against any Defendant or any potential defendant other than the Releasees.  All rights of any Class Member against any other Person other than the Releasees are specifically reserved by Exchange-Based Plaintiffs and the Class Members.

[Continued on the following page]

[Continued from the previous page]

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have executed this Agreement as of the date set forth below.

Dated: _October 7, 2014_

*Exchange-Based Plaintiffs' Counsel, on behalf of*
*Exchange-Based Plaintiffs individually and the Class*

By: _____

Christopher Lovell
LOVELL STEWART HALEBIAN JACOBSON LLP
61 Broadway, Suite 501
New York, NY 10006
Tel: (212) 608-1900
Fax: (212) 719-4677
E-Mail: clovell@lshllp.com

By: _____

David E. Kovel
KIRBY MCINERNEY LLP
825 Third Avenue, 16th Floor
New York, NY 10022
Tel: (212) 317-2300
Fax: (212) 751-2540
E-Mail: dkovel@kmllp.com

Dated:  October 7, 2014

*Counsel for Defendant Barclays Bank plc*

By: _____

Jonathan D. Schiller
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Ave.
New York, NY  10022
Tel:  (212) 446-2000
Fax:  (212) 446-2350
E-Mail:  jschiller@bsfllp.com

William A. Isaacson
5301 Wisconsin Avenue NW
Washington, D.C.  20015
Tel:  (202) 237-2727
Fax:  (202) 237-6131
E-Mail:  wisaacson@bsfllp.com

By: _____

David H. Braff
Yvonne S. Quinn
Jeffrey T. Scott
Matthew J. Porpora
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
Tel:  (212) 558-4000
Fax:  (212) 558-3588
E-Mail:  braffd@sullcrom.com
          quinny@sullcrom.com
          scottj@sullcrom.com
          porporam@sullcrom.com