**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION** | |
| | Master File No. 1:11-md-2262-NRB |
| THIS DOCUMENT RELATES TO: | |
| | ECF Case |
| *City of Houston v. Bank of America Corp., et al.*, Case No. 1:13-cv-05616; | |
| | **ORAL ARGUMENT** |
| *City of Richmond, et al. v. Bank of America Corp., et al.*, Case No. 1:13-cv-00627; | **REQUESTED** |
| *City of Riverside, et al. v. Bank of America Corp., et al.*, Case No. 1:13-cv-00597; | |
| *County of Mendocino v. Bank of America Corp., et al.*, Case No. 1:13-cv-08644; | |
| *County of Sacramento v. Bank of America Corp., et al.*, Case No. 1:13-cv-05569; | |
| *County of San Diego v. Bank of America Corp., et al.*, Case No. 1:13-cv-00667; | |
| *County of San Mateo, et al. v. Bank of America Corp., et al.*, Case No. 1:13-cv-00625; | |
| *County of Sonoma, et al. v. Bank of America Corp., et al.*, Case No. 1:13-cv-05187; | |
| *East Bay Municipal Utility District v. Bank of America Corp., et al.*, Case No. 1:13-cv-00626; | |
| *Federal Deposit Insurance Corp. as Receiver for Amcore Bank, N.A., et al. v. Bank of America Corp., et al.*, Case No. 1:14-cv-01757; | |
| *National Credit Union Administration Board v. Credit Suisse Group AG, et al.*, Case No. 13-cv-7394; | |
| *San Diego Assoc. of Governments v. Bank of America Corp., et al.*, Case No. 1:13-cv-05221; | |

MAYER BROWN LLP
1675 Broadway
New York, New York 10019
(212) 506-2500

*Attorneys for Defendant*
*Société Générale*

*The Federal Home Loan Mortgage Corp. v. Bank of America Corp., et al.*, Case No. 1:13-cv-03952;

*The Regents of the Univ. of California v. Bank of America Corp., et al.*, Case No. 1:13-cv-05186; and

*Triaxx Prime CDO 2006-1 LTD, et al. v. Bank of America Corp., et al.*, Case No. 1:14-cv-146.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SOCIÉTÉ GÉNÉRALE'S MOTION TO DISMISS THE INDIVIDUAL PLAINTIFFS' AMENDED COMPLAINTS

**TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ...................................................................................................................... 4

I.  SG IS NOT SUBJECT TO PERSONAL JURISDICTION IN ANY OF THE
    RELEVANT FORUMS ............................................................................................. 4

    A.  Individual Plaintiffs Do Not Plead Facts Sufficient To Support An
    Assertion of General Jurisdiction Over SG ......................................................... 4

    B.  Individual Plaintiffs Do Not Plead Facts Sufficient To Support An
    Assertion Of Specific Jurisdiction Over SG ........................................................ 6

II.  THE INDIVIDUAL PLAINTIFFS FAIL TO STATE A CLAIM AGAINST SG ........... 8

    A.  There Are No Allegations That SG Engaged In Misconduct Prior To
    Joining The LIBOR Panel ................................................................................... 8

    B.  There Are No Allegations That SG Engaged In Misconduct After It Joined
    The LIBOR Panel ............................................................................................... 9

    C.  The Individual Plaintiffs' Limited References To SG Do Not Support An
    Inference Of Wrongdoing .................................................................................. 11

        1.  Membership On The LIBOR Panel Does Not Support An
    Inference Of Wrongdoing By SG .......................................................... 12

        2.  Receipt Of Information Requests From Regulators Does Not
    Support An Inference Of Wrongdoing By SG ......................................... 12

        3.  Participation In The Market For Interest Rate Derivatives Does
    Not Support An Inference of Wrongdoing By SG ................................... 13

III.  THE INDIVIDUAL PLAINTIFFS' CLAIMS AGAINST SG SHOULD BE
    DISMISSED FOR ADDITIONAL REASONS .......................................................... 14

    A.  Individual Plaintiffs' Antitrust, Contract, Unfair Competition And Tort
    Claims ............................................................................................................... 14

    D.  *American Pipe* Tolling Does Not Apply To The Individual Plaintiffs'
    Claims Against SG ............................................................................................ 15

CONCLUSION .................................................................................................................. 16

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................... *passim*

*Chloé v. Queen Bee of Beverly Hills, LLC*,
   616 F.3d 158 (2d Cir. 2010) ...................................................................................................4

*Clopay Plastic Products Co. v. Excelsior Packaging Grp., Inc.*,
   No. 12-CV-5262(JPO), 2014 WL 4473352 (S.D.N.Y. Sept. 11, 2014) ...................................7

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) .................................................................................................1, 4, 5

*Gucci Am., Inc. v. Weixing Li*,
   Nos. 11-cv-3934, 12-cv-4557, 2014 WL 4629049 (2d Cir. Sept. 17, 2014) ...........................5

*Hinds Cnty., Miss. v. Wachovia Bank N.A.*,
   620 F. Supp. 2d 499 (S.D.N.Y. 2009) ...................................................................10, 12, 13

*In re Commodity Exch., Inc. Silver Futures & Options Trading Litig.*,
   560 F. App'x 84 (2d Cir. 2014) .............................................................................................14

*In re Crude Oil Commodity Litig.*,
   No. 06 Civ. 6677(NRB), 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ...................................8

*In re ICN/Viratek Secs. Litig.*,
   No. 87 Civ. 4296, 1996 WL 164732 (S.D.N.Y. Apr. 9, 1996) .................................................9

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   935 F. Supp. 2d 666 (S.D.N.Y. 2013) .................................................................... *passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   962 F. Supp. 2d 606 (S.D.N.Y. 2013) ...............................................................................3, 7

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   ___ F. Supp. 2d ___, No. 11-MD-2262, 2014 WL 2815645 (S.D.N.Y. June 23, 2014)
   .................................................................................................................................. *passim*

*In re Methyl Tertiary Butyl (MTBE) Prods. Liab. Litig.*,
   591 F. Supp. 2d 259 (S.D.N.Y. 2008) ...................................................................................9

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Roman Catholic Diocese of Albany, N.Y., Inc.*,
  745 F.3d 30 (2d Cir. 2014)........................................................................................5, 6

*In re Ski Train Fire in Kaprun, Austria on November 11, 2000*,
  343 F. Supp. 2d 208 (S.D.N.Y. 2004).......................................................................5

*In re Terrorist Attacks on September 11, 2001*,
  714 F.3d 659 (2d Cir. 2013)......................................................................................7

*Kolbeck v. LIT Am., Inc.*,
  923 F. Supp. 557 (S.D.N.Y. 1996) ..........................................................................12

*LaFlamme v. Société Air France*,
  702 F. Supp. 2d 136 (E.D.N.Y. 2010) .....................................................................12

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  No. 12 civ. 3723 (RJS), 2013 WL 1294668 (S.D.N.Y. Mar. 28, 2013) ..................10

*Madonna v. United States*,
  878 F.2d 62 (2d Cir. 1989).......................................................................................11

*Meyer v. Bd. of Regents of Univ. of Okla.*,
  No. 13 Civ. 3128 (CM), 2014 WL 2039654 (S.D.N.Y. May 14, 2014)....................5

*O'Brien v. Nat'l Prop. Analysts Partners*,
  936 F.2d 674 (2d Cir. 1991)......................................................................................11

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
  750 F.3d 221 (2d Cir. 2014)................................................................................5, 6, 7

*Troma Ent., Inc. v. Centennial Pictures, Inc.*,
  729 F.3d 215 (2d Cir. 2013)......................................................................................4

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014)..............................................................................................7

### OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ........................................................................................1, 8, 11, 12

Fed. R. Civ. P. 12(b)(2)........................................................................................................1

Fed. R Civ. P. 12(b)(6).........................................................................................................1

Defendant Société Générale ("SG") respectfully submits this memorandum of law in support of its motion to dismiss the Individual Plaintiffs' Amended Complaints pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(6) and 9(b).[1]

## PRELIMINARY STATEMENT

As shown below, the Individual Plaintiffs' claims against SG should be dismissed for lack of personal jurisdiction and because they fail to state a claim against SG.

*First,* SG is not subject to general or specific personal jurisdiction in any of the forums (California, Kansas, New York, Texas or Virginia) where the Individual Plaintiffs have brought claims against it. The Individual Plaintiffs acknowledge, and SG has independently demonstrated, that SG is a French bank headquartered in France. Thus, for purposes of general jurisdiction, SG is not "at home" in any United States forum within the meaning of *Daimler*. Further, the Individual Plaintiffs do not allege any suit-related conduct by SG in the forums that could justify the exercise of specific jurisdiction. The Complaints do not—because they cannot—allege that SG determined or sent its US dollar LIBOR ("LIBOR") quotes from the United States or engaged in any other purported misconduct in the relevant forums. Moreover, none of the Individual Plaintiffs allege that SG was a counterparty to any LIBOR-related agreement or that they otherwise had direct dealings with SG. Thus, there is no basis upon which to infer that SG could foresee that the Individual Plaintiffs would suffer harm in the relevant forum, even assuming *arguendo* that foreseeability was sufficient to establish jurisdiction.

*Second,* the Individual Plaintiffs fail to meet the pleading requirements of *Twombly* and Rule 9(b) for any of their claims because they do not allege any specific misconduct by SG. The

---

[1] For purposes of this motion, the Individual Plaintiffs are defined as including plaintiffs in the following actions: 13 CV 5616; 13 CV 627; 13 CV 597; 13 CV 8644; 13 CV 5569; 13 CV 667; 13 CV 625; 13 CV 5187; 13 CV 626; 13 CV 1757; 13 CV 7394; 13 CV 5221; 13 CV 3952; 13 CV 5186; and 13 CV 146.

Complaints focus heavily on alleged misconduct occurring prior to February 2009—*i.e.,* prior to the time when SG was a LIBOR panel bank.  Claims regarding this period fail as against SG because the Individual Plaintiffs do not allege, nor could they, that SG had any role in (or control over) the setting of LIBOR.

The Individual Plaintiffs also fail to allege any actionable conduct by SG after it joined the LIBOR panel in February 2009.  None of the Individual Plaintiffs alleges that SG was a counterparty to any swap agreement or other transaction or that it otherwise had direct dealings with SG.  Not only was there no relationship between SG and the Individual Plaintiffs but the Individual Plaintiffs also fail to allege any representation (or omission) purportedly made by SG to them in connection with their agreements with others, much less a representation (or omission) on which the Individual Plaintiffs' purport to have justifiably relied.

Further, there are no allegations linking SG to any communications—identified in the regulatory settlements or otherwise—that suggest collusive behavior or manipulation.  SG is not among those defendants that the Individual Plaintiffs allege engaged in specific misconduct or whose traders or contributors purportedly have been disciplined for such conduct.  In addition, the Complaints are devoid of any well-pled allegations that SG's LIBOR quotes were false.  None of the Individual Plaintiffs satisfies *LIBOR III*'s requirement that they allege that SG submitted an artificial quote, let alone one that impacted the fixing, on any day in which they purchased, held, sold or made or received any payment under a swap agreement.  Further, SG is not referenced in any of the charts or figures in the Complaints and thus there is no purported empirical evidence to support an allegation of wrongdoing by SG.

Permitting the Individual Plaintiffs to proceed to discovery on their factually unsupported claims against SG would, moreover, contravene the important and well established policy against

needlessly subjecting defendants to the enormous expense of discovery and the one requiring that each defendant be adequately apprised of the factual basis for the claims against it.  The case law also makes clear that the limited allegations referencing (i) SG's membership on the LIBOR panel, (ii) receipt of information requests from regulators, and (iii) alleged participation, along with other banks, in the market for interest-rate derivatives do not support an inference of wrongdoing.  Thus, the Individual Plaintiffs cannot state a claim against SG.

*Third*, the Individual Plaintiffs' claims against SG fail for additional reasons, including those set forth in defendants' joint briefing, which SG incorporates fully by reference.  The Court has already dismissed antitrust claims in its *LIBOR I* and *LIBOR II* rulings and should dismiss the Individual Plaintiffs' antitrust claims on those same grounds.  Because none of the Individual Plaintiffs alleges any relationship with SG, the Court's prior rulings in *LIBOR I* and *LIBOR III* apply equally to bar the Individual Plaintiffs' contract and unjust enrichment claims.  For similar reasons, the absence of any alleged relationship or business dealings with SG and the lack of any well-pled allegations that SG knew about the Individual Plaintiffs' agreements with other counterparties is also fatal to the Individual Plaintiffs' various tort claims and the National Credit Union Administration Board's ("NCUA's") California Unfair Competition Law claim.  Finally, *American Pipe* tolling does not save the Individual Plaintiffs' time-barred contract, quasi-contract and tort claims, even assuming *arguendo* that the doctrine was available to them, because the OTC Plaintiffs—the only putative class complaint on which these Plaintiffs could rely for purported tolling—did not seek leave to add SG as a defendant until May 17, 2013.  As a result, as against SG, the Individual Plaintiffs do not benefit from any tolling that purportedly began when the OTC Plaintiffs filed their original complaints in August 2011.

3

For these reasons and the reasons set forth below, SG respectfully requests that the Court dismiss the Individual Plaintiffs' claims against SG in their entirety.

## ARGUMENT

## I. SG IS NOT SUBJECT TO PERSONAL JURISDICTION IN ANY OF THE RELEVANT FORUMS

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has personal jurisdiction over the defendant. *See Troma Ent., Inc. v. Centennial Pictures Inc.,* 729 F.3d 215, 217 (2d Cir. 2013). The plaintiff must make a prima facie showing that includes facts that, if credited, would suffice to establish jurisdiction over the defendant. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). As shown in the Joint Memorandum of Law in Support of Defendants' Motion to Dismiss the Direct Actions for Lack of Personal Jurisdiction, which SG fully incorporates by reference, and, as SG further demonstrates below, the Individual Plaintiffs have not alleged any basis on which this Court could exercise general or specific jurisdiction over SG.

### A. Individual Plaintiffs Do Not Plead Facts Sufficient To Support An Assertion of General Jurisdiction Over SG

Following *Daimler*, corporations are only "at home"—absent "exceptional circumstances" that are not present here—for purposes of exercising general jurisdiction in the state where they are incorporated or have their principal place of business. *Daimler AG v. Bauman*, 134 S. Ct. 746, 758 (2014). There is no dispute, and SG has demonstrated, that SG is a French bank headquartered in France. *See* Declaration of Dominique Bourrinet ¶2, filed as part of Defendants' Motion to Dismiss the Direct Actions for Lack of Personal Jurisdiction, and incorporated fully by reference; Direct Action (California) Plaintiffs AC ¶58; City of Houston AC ¶43; Freddie Mac AC ¶29; FDIC AC ¶21; NCUA AC ¶27; Triaxx AC ¶32. Thus, SG plainly is not "at home" in any of

the jurisdictions—California, Kansas, New York, Texas or Virginia[2]—where the Individual Plaintiffs brought their suits and thus there is no basis for exercising general jurisdiction over SG. *See In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 39 (2d Cir. 2014).

This outcome is not altered (nor does this become the "exceptional case") for those Individual Plaintiffs who filed in New York or Texas because SG has a branch or an office there. *See Daimler* 1327 S. Ct at 761 n.18 (stating that prior decisions that permitted courts to exercise general jurisdiction because the foreign corporation conducted business through a branch office in the forum "should not attract heavy reliance today."). As the Second Circuit recently held in *Gucci*, the presence of a New York branch did not render the Bank of China subject to general jurisdiction in that forum because it (i) was incorporated and headquartered abroad, and (ii) only a small fraction of its global operations were conducted in New York. *See Gucci Am., Inc. v. Weixing Li*, Nos. 11-cv-3934, 12-cv-4557, 2014 WL 4629049, at *10 (2d Cir. Sept. 17, 2014). The same is true for SG, a French bank, headquartered abroad, that conducts only a fraction of its operations in the United States. *See* Bourrinet Decl. ¶¶2, 7—8; *cf.* City of Houston AC ¶43 (alleging that SG is present in over 33 countries across Europe, the Americas and Asia).

Nor, moreover, would a contention that an SG affiliate engages in continuous and systematic business in the forum be sufficient to make SG at home there. *See, e.g.*, *Meyer v. Bd. of Regents of Univ. of Okla.*, No. 13 Civ. 3128 (CM), 2014 WL 2039654, at *4 (S.D.N.Y. May 14, 2014) ("Indeed, the 'at home in' formulation of Daimler calls into the question the notion that 'doing business in' New York—the traditional formulation of the CPLR 301 test—is constitutionally compliant."). As the Second Circuit held in *Sonera*, even imputing the contacts of a subsidiary to its parent—which SG does not concede is proper under *Daimler*—the relevant

---

[2]   In multi-district litigation, the court exercises personal jurisdiction only to the extent that the transferor court could do so. *See In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 343 F. Supp. 2d 208, 213 (S.D.N.Y. 2004).

inquiry would be whether the subsidiary's contacts with the forum "shift the company's primary place of business (or place of incorporation) away from" its home country.  *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014).  But, just as in *Sonera*, neither SG's nor its affiliates' contacts with the forums come close to making SG "at home" there.  Indeed, SG's "home" is in France and the Individual Plaintiffs do not contend otherwise.  *See id.* at 226 ("Even assuming [the subsidiary's] New York contacts should be imputed to [the parent], they do not shift the company's primary place of business (or place of incorporation) away from Turkey.").

### B.   Individual Plaintiffs Do Not Plead Facts Sufficient To Support An Assertion Of Specific Jurisdiction Over SG

The assertion of specific jurisdiction is "limited to [claims] involving issues deriving from, or connected with the very controversy that establishes jurisdiction."  *Roman Catholic Diocese*, 745 F.3d at 38 (citations omitted).  The Individual Plaintiffs do not allege a single suit-specific SG contact with any of the forum states (or with the United States more generally) that could support an assertion of specific jurisdiction.

As an initial matter, the Individual Plaintiffs do not—because they cannot—allege that SG determined the level of its LIBOR contributions or transmitted those contributions to Thompson Reuters from the United States.  SG made those determinations in France and transmitted its contributions from England.  *See* Bourrinet Decl. ¶10.  Further, none of the Individual Plaintiffs alleges that it contracted with or otherwise had any direct dealings with SG.  In addition, there are no specific allegations that SG knew about the Individual Plaintiffs or their alleged agreements with other counterparties. Thus, there is no basis upon which to conclude that SG could foresee that the Individual Plaintiffs would suffer harm in the forum as a result of a purported conspiracy to suppress (or raise or periodically raise or lower) LIBOR, even if foreseeability were enough,

6

which the case law demonstrates it is not.  *See, e.g.*, *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013) ("The fact that harm . . . is foreseeable . . . is insufficient for the purpose of establishing specific personal jurisdiction over a defendant").  And, of course, a plaintiff's contacts with the forum are entirely irrelevant to the jurisdictional analysis.  *See Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014) ("the relationship must arise out of the contacts the defendant *himself* creates with the forum state.") (emphasis in original).[3]  The Individual Plaintiffs have thus failed to allege any nexus, much less the requisite "substantial nexus," between any business allegedly conducted by SG in the forums and their claims.[4]  *See Clopay Plastic Products Co. v. Excelsior Packaging Grp., Inc.*, No. 12-CV-5262(JPO), 2014 WL 4473352, at *4 (S.D.N.Y. Sept. 11, 2014).

Further, there are no allegations that could justify imputing another defendant's alleged forum contacts to SG.  The Complaints are devoid of any well-pled allegation that SG entered into an agreement with or engaged in a conspiracy with any other defendant concerning LIBOR in the United States (or anywhere else).  Similarly, none of the Individual Plaintiffs identifies any communications suggesting collusive or manipulative behavior from the regulatory settlements or otherwise between SG and any other defendant, including any communications that allegedly occurred in the United States or with U.S. participants.[5]

---

[3]  The Individual Plaintiffs cannot rely on the Clayton Act's nationwide service of process provision (Triaxx has not asserted an antitrust claim) to justify an exercise of specific jurisdiction over SG.  As Defendants demonstrated in their joint memorandum, these antitrust claims are all subject to dismissal under the Court's prior rulings in *LIBOR I* and *LIBOR II* and, therefore, the Clayton Act cannot be the source for securing jurisdiction over SG with respect to their state law claims.  But, even if the Individual Plaintiffs' antitrust claims could somehow survive this Court's prior rulings, under *Daimler* and *Walden*, which both involved claims under federal statutes, the analysis still turns on the fairness and reasonableness of exercising jurisdiction in the forum state.  And, here, as discussed, SG has insufficient contacts with any of the relevant forums to support specific jurisdiction.

[4]   Where, as here, the exercise of personal jurisdiction is incompatible with due process, the Court need not assess the forum jurisdiction's long-arm statute.  *See Sonera*, 750 F.3d at 224.

[5]  Even if the Individual Plaintiffs could clear the first hurdle in establishing jurisdiction—that the defendant is subject to jurisdiction under the law of the forum state (which they cannot establish)—as shown in defendants' joint

*(continued . . . )*

## II.     THE INDIVIDUAL PLAINTIFFS FAIL TO STATE A CLAIM AGAINST SG

The Individual Plaintiffs' claims against SG must be dismissed because there are no well-pled allegations in the Complaints that SG engaged in any purportedly manipulative or collusive conduct.  The Individual Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To state a fraud or misrepresentation claim (whether a primary violation or for aiding and abetting), the Individual Plaintiffs "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Moreover, where, as here, multiple defendants are alleged to have committed fraud, "the complaint must specifically allege the fraud perpetrated by each defendant, and 'lumping' all defendants together fails to satisfy the particularity requirement."  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, ___ F. Supp. 2d ___, No. 11-MD-2262, 2014 WL 2815645, at *7 (S.D.N.Y. June 23, 2014) ("*LIBOR III*") (quoting *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677(NRB), 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007)).  Thus, each of the claims asserted against SG requires some showing of wrongdoing, but the Complaints do not contain a single allegation of specific conduct by SG that could be actionable.  Accordingly, the Court should dismiss all claims against SG.

### A.     There Are No Allegations That SG Engaged In Misconduct Prior To Joining The LIBOR Panel

The Individual Plaintiffs do not allege any conduct by SG prior to February 2009, when SG joined the LIBOR panel.[6]  In any event, claims regarding any period prior to February 9, 2009

---

*(. . . continued)*

memorandum the Individual Plaintiffs cannot satisfy the second step in the analysis, which requires that the exercise of jurisdiction comports with due process protections established under the United States Constitution.

[6]  The only allegations from this pre-February 2009 time period that even reference SG concern SG analyst reports that the Individual Plaintiffs apparently include as purported support for their claims against other defendants.  *See, e.g.*, Direct Action (California) AC ¶¶379—80, 383.  Those analyst reports obviously do nothing to support an inference of any wrongdoing by SG.

fail as against SG for the obvious reason that Individual Plaintiffs do not, and cannot, allege that SG had any involvement in (or control over) the setting of LIBOR during that time. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 715 (S.D.N.Y. 2013) ("*LIBOR I*") (discussing plaintiffs' allegation that defendants had the ability to influence LIBOR through submission of daily quotes to the BBA); *In re Methyl Tertiary Butyl (MTBE) Prods. Liab. Litig.*, 591 F. Supp. 2d 259, 279 (S.D.N.Y. 2008) (concluding that defendants may not be held liable for well contamination that occurred before they entered the market for gasoline additives); *In re ICN/Viratek Secs. Litig.*, No. 87 Civ. 4296, 1996 WL 164732, at *12 n.4 (S.D.N.Y. Apr. 9, 1996) (dismissing putative class action claims against defendant that concerned statements made prior to the date when he became Viratek's president).

## B.    There Are No Allegations That SG Engaged In Misconduct After It Joined The LIBOR Panel

The Individual Plaintiffs likewise fail to plead any alleged wrongdoing by SG after it joined the LIBOR panel in February 2009. *First*, none of the Individual Plaintiffs alleges: (i) that SG was a counterparty to any swap agreement or other LIBOR-linked transaction in which an Individual Plaintiff allegedly engaged, or (ii) that they otherwise had direct dealings with SG. No Individual Plaintiff references, incorporates, or appends to its amended complaint any agreement to which SG is alleged to have been a party. In addition to lacking any relationship with SG, the Individual Plaintiffs also do not identify any representation (or omission) that SG allegedly made to them in connection with Plaintiffs' entry into agreements with other counterparties or into transactions pursuant those agreements, much less a particular statement by SG on which they purportedly relied. Accordingly, the Individual Plaintiffs have failed to plead, let alone with the requisite particularity, that SG participated in any fraudulent conduct.

9

*Second*, the Individual Plaintiffs do not allege that SG was a party to any communications—identified in the regulatory settlements or otherwise—that suggest collusion, benchmark rate manipulation, or any other improper conduct.  SG is not alleged to be among those defendants that purportedly engaged in specific misconduct or whose traders or other employees purportedly have been disciplined for LIBOR-related conduct.  As a result, there is no factual basis from which to infer that SG engaged in misconduct or even that it knew that other banks were purportedly submitting artificial quotes.  *See, e.g.*, *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, No. 12 civ. 3723 (RJS), 2013 WL 1294668, at *9 (S.D.N.Y. Mar. 28, 2013) (dismissing fraud and conspiracy claims against certain defendants because plaintiffs failed to "differentiate among defendants" and "specify which Defendants are responsible for which alleged fraud"); *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 515 (S.D.N.Y. 2009) (dismissing antitrust claims against certain defendants because the complaint "makes no specific factual averment of involvement in the alleged conspiracy.").

*Third*, the Complaints do not include any well-pled allegations that SG's LIBOR quotes were false—whether for purposes of suppression, inflation, or trader-based manipulation.  None of the Individual Plaintiffs alleges with any specificity that SG made an artificial LIBOR quote, let alone one that impacted the fixing, on any day in which they entered into, exited, or made or received any payment under a swap agreement or other LIBOR-linked transaction with those other counterparties.  *See, e.g., LIBOR III*, 2014 WL 2815645, at *7 ("it is not enough for plaintiffs to assert that Barclays and Rabobank submitted artificial quotes on certain dates; in addition, those quotes must have potentially had an impact on the published LIBOR fix because only then could plaintiffs have plausibly suffered damages.").  Further, SG is not referenced in any of the charts, figures or academic studies quoted in the Complaints that purport to show a pattern of collusive or

manipulative behavior.  Instead, each of those figures or citations either (i) concerns a period before SG joined the LIBOR panel, (ii) compares the quotes of different banks to one another or against other purported benchmarks, or (iii) both.  Thus, there is no purported empirical analysis that could even theoretically support an inference of wrongdoing by SG.

*Fourth*, the absence of any specific assertions of wrongdoing against SG is fatal to the Individual Plaintiffs' claims for an additional reason.  As the Supreme Court has recognized, "it is only by taking care to require allegations that reach the level suggesting conspiracy" that the potentially enormous expense of discovery can be avoided.  *Twombly*, 550 U.S. 559; *see also Madonna v. United States*, 878 F.2d 62, 66 (2d Cir. 1989) (a plaintiff's contention that discovery will hopefully unearth information tending to prove an alleged fraud or manipulation is precisely what Rule 9(b) forbids.).  Rule 9(b) likewise serves to (i) ensure that each defendant is apprised of the factual grounds upon which plaintiff's claims are based, (ii) safeguard the defendant's reputation from improvident charges of wrongdoing, and (iii) inhibit the institution of strike suits. *See, e.g.*, *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 678 (2d Cir. 1991).  Each of these important and well established policies would be contravened by allowing the Individual Plaintiffs to proceed with their claims against SG on the basis of the threadbare allegations in their Complaints.

**C.    The Individual Plaintiffs' Limited References To SG Do Not Support An Inference Of Wrongdoing**

Even though the Individual Plaintiffs make no specific allegations of misconduct by SG, they nonetheless urge the Court to infer that SG colluded with other panel banks to manipulate LIBOR.  All they can point to, however, is (i) SG's membership on the LIBOR panel, (ii) requests for information directed to SG from regulators, and (iii) participation by SG or its affiliates in the

market for US dollar interest rate derivatives.   None of these allegations, individually or collectively, is sufficient to state a claim against SG.

> ### 1.   Membership On The LIBOR Panel Does Not Support An Inference Of Wrongdoing By SG

The allegation that SG was, at certain times, a member of the LIBOR panel does not, by itself, support an inference that SG engaged in any misconduct.   Courts consistently hold that allegations of "guilt by association" through membership in a trade association are not sufficient to allege participation in a conspiracy.  *See, e.g.*, *Twombly*, 550 U.S. at 567 n.12 (observing that an allegation of membership in a guild does not support a finding of antitrust conspiracy); *Kolbeck v. LIT Am., Inc.*, 923 F. Supp. 557, 569 (S.D.N.Y. 1996) ("Broad allegations . . . that some defendants are guilty because of their association with others[] do not inform each defendant of its role in the [alleged] fraud and do not satisfy Rule 9(b).").   As discussed, the Individual Plaintiffs have not alleged any specific misconduct by SG and, therefore, there is no basis for the inference that the Individual Plaintiffs ask the Court to draw.

> ### 2.   Receipt Of Information Requests From Regulators Does Not Support An Inference Of Wrongdoing By SG

The Individual Plaintiffs' allegation that SG received requests for information from government regulators does not support an inference that SG engaged in misconduct.   A request by regulators for information does not equate to an allegation that SG participated in any wrongdoing, nor does it constitute a finding that SG was involved in a conspiracy or manipulation. *See, e.g.*, *Hinds Cnty*, 620 F. Supp. 2d at 514 (holding that the mere existence of a government investigation does not make the complaint's "allegations plausible for the purposes of deciding a motion to dismiss under the standards laid out in *Twombly* and *Iqbal*."); *LaFlamme v. Société Air France*, 702 F. Supp. 2d 136, 154 (E.D.N.Y. 2010) (allegations of pending investigations "are not probative" of an antitrust conspiracy).   The inference that the Individual Plaintiffs are seeking to

draw is especially weak here because the regulators' requests for information are admittedly part of a panel-wide inquiry involving upwards of twenty banks.  *See* NCUA AC ¶144 (alleging that U.S. regulators issued information requests to numerous panel banks in 2010 and 2011).  Given the broad scope of the inquiry, an allegation that SG received information requests is not sufficient to plead a claim against it.[7]  *See Hinds Cnty.,* 620 F. Supp. 2d at 514 (concluding that the pendency of investigations by the Department of Justice, IRS, SEC and state attorneys general into industry-wide collusive practices involving more than thirty banks was insufficient to state an antitrust claim).

### 3. Participation In The Market For Interest Rate Derivatives Does Not Support An Inference of Wrongdoing By SG

Two of the Individual Plaintiffs seek an inference that SG engaged in misconduct based on its alleged participation in the market for OTC US dollar interest-rate derivatives.  *See* FDIC AC ¶¶53, 423; Freddie Mac AC ¶¶60, 208.  As support, these Individual Plaintiffs point to a 2010 market survey contending that SG was one among fourteen broker-dealers that held a combined 82% of interest rate derivatives by notional amount.  *See id*.  This allegation is nothing more than a suggestion of market power, which the Court has previously found insufficient to plead manipulation.  *See LIBOR III*, 2014 WL 2815645, at *11 ("In order to create a strong inference of scienter, allegations of market presence must be coupled with pleading 'specific actions which exhibited an actual intent to bring about' the manipulation at issue.") (internal citations omitted);

---

[7]  The City of Houston's allegation (AC ¶17) that SG has settled with U.S. and U.K. authorities is simply false, and it is not surprising, therefore, that plaintiff offers no support for its contention.  Equally irrelevant are allegations by some of the Individual Plaintiffs that SG was a member of the Yen LIBOR panel or that SG entered into a settlement with the European Commission concerning the Euribor benchmark.  *See, e.g., LIBOR I*, 935 F. Supp. 2d at 722 (stating that plaintiffs can only recover on claims concerning US dollar LIBOR, not other indices such as Yen LIBOR or TIBOR); Mar 5. 2013 Hr'g Tr. at 9 ("THE COURT:  Let's remember, this case only involves US dollar LIBOR, okay?").

13

*see also In re Commodity Exch., Inc. Silver Futures & Options Trading Litig.,* 560 F. App'x 84, 86 (2d Cir. 2014) ("[M]arket power by itself is not enough to establish a CEA violation.").

**III.    THE INDIVIDUAL PLAINTIFFS' CLAIMS AGAINST SG SHOULD BE DISMISSED FOR ADDITIONAL REASONS**

**A.    Individual Plaintiffs' Antitrust, Contract, Unfair Competition And Tort Claims**

For the additional reasons set forth in the Court's prior rulings, the Joint Memorandum of Law in Support of Defendants' Motion to Dismiss Direct Action Claims Covered by Prior Rulings, and Defendants' Motion to Dismiss Direct Action Plaintiffs' UCL and GBL Claims, which SG fully incorporates by reference, the Individual Plaintiffs' antitrust, contract, unjust enrichment and NCUA's Unfair Competition Law claims—none of the Individual Plaintiffs alleges that it had direct dealings with SG—fail as against SG.  For the additional reasons set forth in the Memorandum of Law in Support of Defendants' Motion to Dismiss the Fraud and Related Claims in the Individual Actions and the Memorandum of Law in Support of Defendants' Motion to Dismiss the Tortious Interference Claims in the Direct Actions, which SG fully incorporates by reference, the Individual Plaintiffs' fraud, tortious interference and related claims against SG should be dismissed in their entirety.  In particular, the Individual Plaintiffs do not allege (i) that they had any relationship with SG, let alone a special relationship, that could give rise to a duty on the part of SG, (ii) any material statement (or omission) made by SG to them on which they purportedly relied, much less justifiably, to their detriment in entering into or performing under their agreements with other counterparties, (iii) that SG had any knowledge, let alone the requisite direct knowledge, of their purported agreements with other defendants or counterparties or specifically intended to interfere with those agreements, or (iv) that SG had actual knowledge of another party's supposed misrepresentation to an Individual Plaintiff or provided substantial assistance in furtherance of that misrepresentation.

14

### D.     *American Pipe* Tolling Does Not Apply To The Individual Plaintiffs' Claims Against SG

Defendants demonstrated in their joint briefing that the Individual Plaintiffs' contract, quasi-contract and tort claims are barred, in whole or in part, by the applicable statutes of limitation.  Defendants also showed that absent cross-jurisdictional tolling, *American Pipe* tolling does not apply to the Individual Plaintiffs' claims.  Nonetheless, some of the Individual Plaintiffs have alleged in their amended complaints that the limitations periods on their claims were tolled by the filing of the (unspecified) "first putative class action complaint relating to the LIBOR manipulation conspiracy."  Direct Action (California) Plaintiffs' AC ¶521.  Any such tolling does not assist the Individual Plaintiffs as against SG because, as this Court previously held in *LIBOR III*—when it concluded that Exchange-Based Plaintiffs' CEA claims against SG were time barred—, "only asserted members of the class who would have been parties had the suit been permitted to continue as a class action may have their claims tolled."  *LIBOR III*, 2014 WL 2815645, at *27 (internal quotations and citations omitted).  Thus, the Individual Plaintiffs could be eligible for *American Pipe* tolling, if at all, only if they were asserted members of a previously filed class action complaint that named SG as a defendant.  *See id.*

The only putative class action of which the Individual Plaintiffs could even arguably claim to have been members is the OTC action.  The OTC Plaintiffs, however, did not seek leave to add SG as a defendant until May 17, 2013.  [ECF 333, 334].  As a result, as against SG, the Individual Plaintiffs do not benefit from any tolling that purportedly began when the OTC Plaintiffs filed their original complaints in August 2011.  Accordingly, *American Pipe* tolling, even assuming *arguendo* that it might even apply, does nothing to render the Individual Plaintiffs' claims against SG timely.

15

## CONCLUSION

For the reasons set forth above, SG respectfully requests that the Court grant SG's motion to dismiss all claims asserted by the Individual Plaintiffs against SG in their entirety and with prejudice.

Dated:     New York, New York
           November 5, 2014

                              */s/* Steven Wolowitz
                              Steven Wolowitz
                              Henninger S. Bullock
                              Andrew J. Calica
                              MAYER BROWN LLP
                              1675 Broadway
                              New York, New York  10019
                              Telephone: (212) 506-2500
                              Fax: (212) 262-1910
                              swolowitz@mayerbrown.com
                              hbullock@mayerbrown.com
                              acalica@mayerbrown.com

                              *Attorneys for Defendant Société Générale*