**MAYER•BROWN**

Mayer Brown LLP
1675 Broadway
New York, New York 10019-5820

Main Tel +1 212 506 2500
Main Fax +1 212 262 1910
www.mayerbrown.com

**Steven Wolowitz**
Direct Tel +1 212 506 2535
Direct Fax +1 212 849 5535
swolowitz@mayerbrown.com

November 10, 2014

BY ECF AND HAND

The Honorable Naomi Reice Buchwald
United States District Judge
Daniel Patrick Moynihan United States Court House
500 Pearl Street
New York, NY 10007-1312

Re:   *In re LIBOR-Based Fin. Instruments Antitrust Litig.,*
      No. 1:11-md-2262-NRB (S.D.N.Y.)

Dear Judge Buchwald:

    We are counsel for defendant Société Générale ("SG") in the above-captioned matter and submit this letter pursuant to Rule 2.E.1 of Your Honor's Individual Practices in connection with SG's Motion to Dismiss the Individual Plaintiffs' Amended Complaints.[1] Courtesy copies of SG's motion papers, which were electronically filed on November 5, 2014, are enclosed.

    For the reasons set forth in SG's memorandum of law, all of the Individual Plaintiffs' claims against SG should be dismissed. *First,* as a threshold matter, SG is not subject to general or specific jurisdiction in any of the forums (California, Kansas, New York, Texas or Virginia) where the Individual Plaintiffs have brought claims against it. Under the Supreme Court's ruling in *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014), corporations are "at home", absent "exceptional circumstances" that are not alleged here, only where they are incorporated or have their principal place of business. The Individual Plaintiffs have acknowledged, and SG has demonstrated, that SG is a French bank headquartered in France. Thus, there is no basis for exercising general jurisdiction over SG.

    There also is no basis for exercising specific jurisdiction over SG. The Individual Plaintiffs do not, because they cannot, allege that SG determined the levels of its LIBOR contributions or transmitted those contributions to Thompson Reuters from the United States. Moreover, none of the Individual Plaintiffs allege that SG was a counterparty to any LIBOR-related agreement or that they otherwise had direct dealings with SG. Thus, there is no basis upon which to infer that SG could foresee that the Individual Plaintiffs would suffer harm in the relevant forum, even assuming *arguendo* that foreseeability was sufficient to establish jurisdiction.

---

[1] SG's Motion is directed to the plaintiffs in the following actions: 13 CV 5616; 13 CV 627; 13 CV 597; 13 CV 8644; 13 CV 5569; 13 CV 667; 13 CV 625; 13 CV 5187; 13 CV 626; 13 CV 1757; 13 CV 7394; 13 CV 5221; 13 CV 3952; 13 CV 5186; and 13 CV 146.

Mayer Brown LLP operates in combination with other Mayer Brown entities with offices in Europe and Asia
and is associated with Tauil & Chequer Advogados, a Brazilian law partnership.

The Honorable Naomi Reice Buchwald
November 10, 2014
Page 2

*Second*, the Individual Plaintiffs fail to meet the pleading requirements of *Twombly* or Rule 9(b) for any of their claims against SG because they do not allege any specific misconduct by SG.  The Individual Plaintiffs do not allege, nor could they, that SG had any role in (or control over) the setting of LIBOR in the period before February 2009 because SG was not a member of the LIBOR panel.  Thus, claims regarding that period fail as against SG.  The Individual Plaintiffs also fail to allege any actionable conduct by SG after it joined the panel in February 2009.  None of the Individual Plaintiffs alleges that SG was a counterparty to any swap agreement or other LIBOR-linked transaction or that it otherwise had direct dealings with SG.  The Individual Plaintiffs also fail to identify any representation (or omission) purportedly made by SG to them concerning their agreements with others, much less one on which the Individual Plaintiffs purport to have justifiably relied.  In addition, there are no allegations linking SG to any communications—identified in the regulatory settlements or otherwise—that suggest collusive behavior or manipulation.  The Complaints, moreover, lack any well-pled allegations that SG's LIBOR quotes were artificial.  None of the Individual Plaintiffs satisfies *LIBOR III*'s requirement that they allege that SG submitted an artificial quote, let alone one that impacted the fixing, on any day in which they purchased, held or sold a swap agreement or other instrument.  Further, SG is not referenced in any of the charts or figures in the Complaints and thus there is no purported empirical evidence to support an allegation of wrongdoing by SG.

Permitting the Individual Plaintiffs to proceed to discovery on their factually unsupported claims against SG would, moreover, contravene the important and well established policy against needlessly subjecting defendants to the enormous expense of discovery and the one requiring that each defendant be adequately apprised of the factual basis for the claims against it.  The case law also makes clear that the limited allegations referencing (i) SG's membership on the USD LIBOR panel, (ii) receipt of information requests from regulators, and (iii) alleged participation in the market for interest-rate derivatives do not support an inference of wrongdoing.  Thus, the Individual Plaintiffs cannot state a claim against SG.

*Third*, the Individual Plaintiffs' claims against SG fail for additional reasons set forth in the Court's prior rulings and in defendants' joint briefing, which SG incorporates fully by reference.  The Court's prior rulings dismissing the class plaintiffs' antitrust claims apply equally to bar the Individual Plaintiffs' antitrust claims against SG.  As discussed, none of the Individual Plaintiffs alleges any direct dealings or other relationship with SG and, accordingly, the Individual Plaintiffs' contract and unjust enrichment claims against SG also fail under this Court's prior rulings. The absence of (i) any alleged relationship with SG, (ii) any alleged statement (or omission) made by SG to the Individual Plaintiffs on which they purportedly relied, (iii) well-pled allegations that SG knew about the Individual Plaintiffs' specific agreements with other counterparties, or (iv) that SG had actual knowledge of and substantially assisted other parties' purported misrepresentations dooms the Individual Plaintiffs' tort claims as well as the National Credit Union Administration Board's California Unfair Competition Law claim against SG.

Finally, as Defendants showed in their joint briefing, the Individual Plaintiffs' contract, quasi-contract and tort claims are barred, in whole or in part, by the applicable statutes of

The Honorable Naomi Reice Buchwald
November 10, 2014
Page 3

limitation.  Defendants also demonstrated that absent cross-jurisdictional tolling, *American Pipe* tolling does not apply to the Individual Plaintiffs' claims.  But, in any event, any such tolling does not assist the Individual Plaintiffs as against SG because the OTC Plaintiffs—the only putative class to which the Individual Plaintiffs could claim to have been a part—did not seek leave to add SG as a defendant until May 17, 2013.  As a result, as against SG, the Individual Plaintiffs do not benefit from any tolling that purportedly began when the OTC Plaintiffs filed their original complaints in mid-2011.  Thus, *American Pipe* tolling, even assuming *arguendo* that it might even apply, does nothing to render the Individual Plaintiffs' claims against SG timely.

      For these reasons and the additional reasons set forth in SG's moving papers, Plaintiffs' claims against SG should be dismissed in their entirety.  SG respectfully requests oral argument on its motion to dismiss.

                                          Respectfully submitted,

                                          /s/Steven Wolowitz

Encls.

cc:      All Counsel (*via email*)