**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>EXCHANGE-BASED PLAINTIFFS ACTION | MDL No. 2, 11 Civ. 2613<br><br>Master File No. 1:11-md-2262-NRB |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF THEIR PRE-MOTION CONERENCE REQUEST FOR PRELIMINARY APPROVAL OF THE BARCLAYS SETTLEMENT**

**LOVELL STEWART**
**HALEBIAN JACOBSON LLP**
Christopher Lovell
Jody R. Krisiloff
Amanda N. Miller
61 Broadway, Suite 501
New York, New York 10006
Telephone: (212) 608-1900
clovell@lshllp.com
jkrisiloff@lshllp.com
amiller@lshllp.com

**KIRBY McINERNEY LLP**
David Kovel
Lauren Wagner Pederson, Of Counsel
825 Third Avenue, 16th Floor
New York, New York 10022
Telephone: (212) 371-6600
dkovel@kmllp.com
lpederson@kmllp.com

*Interim Co-Lead Counsel for Exchange-Based Plaintiffs and the Class*

# TABLE OF CONTENTS

I.   INTRODUCTION  .............................................................................................1

    1.   Because The Proposed Settlement And Settlement Class Do Not Create "Fundamental" Conflicts Of Interest Going To The "Very Heart" Of The Litigation, Subclasses Are Not Required  ....................................................2

    2.   A Plan Of Allocation Is Not Required Even For Final Approval Of A Proposed Settlement, And Approval Of A Plan Is Analytically Very Different From Approval Of The Settlement................................................7

    3.   Although A Plan Of Allocation Is Not Required Until After Final Approval, Plaintiffs Will Seek Preliminary Approval From The Court Of A Program And Content Of Class Notice That Includes The Legal Risk Discounts And Other Aspects Of The Plan Of Allocation  ......................10

    4.   There Are Multiple Cost-Effective Safeguards In The Process Of Preparing, Preliminarily Approving, And Providing Notice To The Class Of The Plan Of Allocation........................................................................10

        a.   A Plan Of Allocation Need Only Have A Rational Basis..................10

        b.   Differing Interests Among Class Members Are Appropriately Represented  ....................................................................................12

        c.   After Preliminary Approval Of The Barclays Settlement, There Will Be Multiple Further Safeguards In The Consideration Of The Plan Of Allocation And Settlement Class  ..................................................13

    5.   A Plan Of Allocation Has Not Been Proposed Because Plaintiffs Have Not Received Information Appropriate To Consider In Formulating The Plan Of Allocation, And There Was No Reversion To Barclays Or Other Need Prematurely To Try To Specify The Plan Of Allocation  ........................14

        a.   However, Interm Co-Lead Counsel Have Considered The Legal Risks And Other Parts Of The Plan Of Allocation  .........................15

    6.   Interim Co-Lead Counsel Did Not Predicate The Barclays Settlement Or Their Recommendation That Such Settlement Is Fair And Reasonable Upon Any Specific Legal Risk Discount For Transactions During The Time-Barred Period  ...............................................................................16

    CONCLUSION ...............................................................................................17

# Table of Authorities

**Cases**                                                                                      **Page(s)**

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ..........................................................................................................5

*Becher v. Long Island Lighting Co.,*
   64 F.Supp.2d 174 (E.D.N.Y. 1999) ............................................................................10

*Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck–Medco Managed
Care, L.L.C.,*
   504 F.3d 229 (2d Cir.2007) ..........................................................................................4

*Charron v. Wiener,*
   731 F.3d 241 (2d. Cir 2013) ............................................................2, 3, 4, 6, 7, 10, 13

*Downes, et al. v. Wisconsin Energy Corp. Ret. Account Plan,*
   2012 WL 1410023 (E.D. Wis. 2012) ..........................................................................11

*In re Agent Orange Product Liability Litigation,*
   818 F.2d 145 (2d Cir. 1987) ..........................................................................................7

*In re AIG, Inc. Sec. Litig.,*
   689 F.3d 229 (2d Cir. 2012) ..........................................................................................6

*In re Cardizem CD Antitrust Litig.,*
   218 F.R.D. 508 (E.D.Mich.2003) ..............................................................................13

*In re Cendant Corp. Sec. Litig.,*
   404 F.3d 173 (3d Cir. 2005) ..........................................................................................3

*In re Gulf Oil/Cities Service Tender Offer Litig.,*
   142 F.R.D. 588 (S.D.N.Y. 1992) ................................................................................11

*In re HealthSouth Corp. Sec. Litig.,*
   334 Fed. App'x 248 (11th Cir. 2009) ............................................................................8

*In re IMAX Sec. Litig.,*
   283 F.R.D. 178 (S.D.N.Y. 2012) ................................................................................10

*In re LIBOR-Based Financial Instruments Antitrust Litig.,*
   962 F.Supp.2d 606 (S.D.N.Y. Aug. 23, 2013) ......................................................1, 12

*In re LIBOR-Based Financial Instruments Antitrust Litig.*,
   935 F.Supp.2d 666 (S.D.N.Y. Mar. 29, 2013) .......................................................12

*In re Literary Works in Electronic Databases Copyright Litig.*,
   654 F.3d 242 (2d Cir. 2011) ....................................................................................4

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
   169 F.R.D. 493 (S.D.N.Y. 1996) ..........................................................................11

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................7

*In re PaineWebber Ltd. P'ship. Litig.*,
   174 F.R.D. 35 (S.D.N.Y. 1996) ......................................................................11, 13

*In re Platinum & Palladium Commodities Litig.*,
   2014 WL 3500655 (S.D.N.Y. July 15, 2014) .......................................................14

*In re Relafen Antitrust Litig.*,
   231 F.R.D. 52 (D. Mass. 2005) ............................................................................ 13

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. Oct. 7, 1999) ............................................................8, 9

*In re Warfarin Sodium Antitrust Litig.*,
   212 F.R.D. 231 (D.Del.2002) ...............................................................................13

*In re Washington Public Power Supply Sys. Secs, Litig.*,
   1988 WL 158947 (W.D. Wash. 1988) ...................................................................8

*Maley v. Del Global Technologies Corp.*,
   186 F.Supp.2d 358 (S.D.N.Y. 2002) ....................................................................11

*Precision Associates, Inc. v. Panalpina World Transport*,
   2013 WL 4525323 (E.D.N.Y. Aug. 27, 2013) .......................................................9

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) .....................................................................................2

*White v. Nat'l Football League*,
   822 F. Supp. 1389 (D. Minn. 1993) .....................................................................11

## Other Authority

*Manual for Complex Litigation, Fourth* ........................................................................8

Newberg on Class Actions (4th ed. 2002) ......................................................................8

## I.      INTRODUCTION

During the October 27, 2014 conference, the Court granted the Exchange-Based Plaintiffs ("Plaintiffs") leave to supplement their pre-motion conference request for preliminary approval of the proposed settlement with Defendant Barclays Bank plc ("Barclays") ("Barclays Settlement").  *E.g.*, Transcript of October 27, 2014 Settlement Hearing ("Tr."), ECF No. 704, pp. 26-28.  Plaintiffs now respectfully submit this memorandum to address many questions expressly or partially raised during such conference:

(1) Are subclasses within the Barclays Settlement Class required or appropriate given that the proposed Settlement and Settlement Class cover all transactions including those occurring during a date-range held by this Court to be time-barred as to the Commodity Exchange Act ("CEA") claims?[1]  Tr. p. 12.

(2) Is a plan of allocation a prerequisite to or, at least, appropriate here before preliminary approval of the Barclays Settlement?  Tr. pp. 11-15, 20, 26-27.

(3) If a plan of allocation is not required for final or preliminary approval, do Plaintiffs nonetheless intend to submit to the Court with the proposed notice to the Class, the legal risk discounts and other parts of the plan of allocation?  Tr. pp. 14-15, 19.

(4) If there are no subclasses, are there other judicially recognized safeguards including mechanisms for representation of any potentially differing interests of any class members who transacted solely during the time-barred date range?  *Id.*, Tr. p. 5.  For example, do the named Plaintiffs or other class representatives have transactions that occurred solely within, or that overwhelmingly stood to gain from transactions during the date-range that this Court has held to be time-barred?  Tr. pp. 28-29.

---

[1] *E.g., In re LIBOR-Based Financial Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 624 (S.D.N.Y. Aug. 23, 2013) ("*LIBOR II*").

(5) Why was a plan of allocation not prepared earlier, what process will be used to prepare it, and what will it look like?  Tr. pp. 7-9, 12-15.

(6) In agreeing to the Barclays Settlement or recommending that the Barclays Settlement is fair and reasonable, did Interim Co-Lead Counsel have in mind any discounts or specific treatments of the time-barred transactions as part of (or in order to reach) their decisions to settle and/or to recommend the Barclays Settlement as fair and reasonable?  Tr. pp. 4-6, 20-21, 28-29.

Plaintiffs' proposed answers to these questions are set forth below.

1.    **Because The Proposed Settlement And Settlement Class Do Not Create "Fundamental" Conflicts Of Interest Going To The "Very Heart" Of The Litigation, Subclasses Are Not Required**

In its most recent treatment of whether subclasses were required within a settlement class, the Second Circuit Court of Appeals was confronted by a situation in which all five named plaintiffs objected to the settlement made by class counsel because the settlement both failed to create subclasses and excluded certain claims from any compensation whatsoever.  *Charron v. Wiener*, 731 F.3d 241, 244-246, 254 (2d. Cir 2013) ("*Charron*").  Despite the sharply differing interests raised by the named plaintiffs themselves, the Second Circuit held that subclasses were not required, and cautioned as follows:

> All class settlements value some claims more highly than others, based on their perceived merits, and strike compromises based on probabilistic assessments. *See, e.g., Weinberger v. Kendrick,* 698 F.2d 61, 78 (2d Cir. 1982) (approving settlement that paid more for federal claims than for state law claims, finding that state law claims were less valuable because they would have been more difficult to prove in court, and "that it was not unfair for the settlement's distribution formula to reflect this"). **If these types of compromises automatically created subclasses that required separate representation, the class action procedure would become even more cumbersome than it already is, and would create even more transaction costs in the form of legal fees.**

*Id.* at 253-254 (emphasis added).  Distributing settlement proceeds based upon a rational plan of allocation and without subclasses occurs routinely in class actions.  *See* "4.a" *infra*.

2

*Charron* effectively strengthened and confirmed the rationale of prior holdings that differing interests within a proposed settlement class rise to the level requiring the creation of subclasses **only** if such differing interests involve "fundamental" conflicts among class members that go "to the very heart" of the litigation.  *Charron*, 731 F.3d at 250.  As the language quoted above and other parts of *Charron* make clear, applying different legal risk discounts in allocation plans often does not create "fundamental" conflicts that go to "the very heart" of the litigation, and the additional costs and burden of creating duplicative subclass structures need to be considered.[2]

As this Court emphasized (Tr. p. 8-9, 30-31), the facts of every case are different.  But the facts here are better than those in *Charron* in certain respects.  These include (a) all named Plaintiffs here support the Barclays Settlement, and (b) **no** compensation exclusion or other allocation decisions have yet been made.  The facts and claims here are also more homogenous than those in *Charron* for the following reasons.  Plaintiffs and all class members allege the same legal claims and same legal injuries: they transacted in standardized instruments in the same centralized market at artificial prices that were proximately caused by the exogenous shocks of Defendants' alleged unlawful conduct.  ECF No. 680, Ex. 1 at pp. 29-30.  Each of the common issues emphasized in Plaintiffs' proposed preliminary approval memorandum is the same for the class members who have transactions that are in or outside of the time-barred date range.  *Id.*  All class members have to rebut the limitations-period affirmative defense against the CEA claims.  But there are differing prospects of success, creating differing litigation risks for class members' transactions during different time periods.

---

[2]  In addition to incurring more costs, subclassing has other drawbacks, including the potential "Balkanization of the class action," and creation of a huge obstacle to settlement "if each subclass [] had an incentive to hold out for more [money]."  *In re Cendant Corp. Sec. Litig.,* 404 F.3d 173, 202 (3d Cir. 2005) (citation omitted).

The latter point leads to another fact that, as in *Charron*, contraindicates subclasses. That is that most class members here very likely have portions of their claim that are time-barred and portions that are not. *Charron*, 731 F.3d at 251-252; *see* "4.b" below addressing the "sample" of class members that are named plaintiffs. Under the Second Circuit's class conflict jurisprudence, only that (unknown) number of class members who transacted **solely** in time barred or **solely** in timely periods have grounds even to assert a cognizable conflict objection. *Charron,* 731 F.3d at 245-247 (only class members who rented **solely** prior to the cut-off date could even assert that there was a conflict); *In re Literary Works in Electronic Databases Copyright Litig.,* 654 F.3d 242, 259 (2d Cir. 2011) ("*Literary Works*") (only those class members who **solely** participated through Category C could assert there was a conflict).

Unlike another case in which subclasses were found appropriate by the Second Circuit, the claims here do NOT involve distinct legal injuries. *See Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 504 F.3d 229, 246 (2d Cir.2007) ("*Central States*").[3] Unlike in *Central States*, no segment of the settlement class here avoided the Eurodollar futures market or merely paid set premiums (including premiums based on historical or other experience). *Id.*

---

[3] In *Central States*, all of the class members made legal claims under the Employee Retirement Income Security Act of 1974 ("ERISA") that were "similar." 504 F.3d 243-246. But the legal claims encompassed certain differences and, more importantly, the alleged injury was different from the start of the litigation.

Specifically, the self-funded plans "paid the entire cost of their beneficiaries' drugs." 504 F.3d at 235. But the insured and capitated plans paid set premiums. *Id.* Furthermore, the settlement agreement itself did make allocation decisions between these different types of injuries. 504 F.3d at 235-236. The Court remanded for a further determination of how the settlement agreement's 55% allocation determination was calculated, or why that discount properly reflected relative losses suffered by insured, capitated, plan injuries compared to the different self-insured plans during price overpayment injuries.

In contrast to *Central States*, here all Settlement Class members make the same legal claims, and suffered the same legal injuries, *i.e.*, transacting at allegedly artificial prices caused by Defendants' allegedly unlawful conduct.

Further, unlike situations in which subclasses have been required, the Settlement Class for the Barclays claims has not been greatly or even slightly expanded.[4]  This, again, ensures that the class does not include different types of legal injuries.  *Id.*  On the contrary, originally this Court *sua sponte* substantially narrowed the class here.  ECF No. 32 (dividing original class into distinct, small classes).  That limitation has been observed and strictly maintained in the Barclays Settlement Class.

Also, the facts here are virtually the exact opposite of those that led to subclasses in *Literary Works*.  There, different legal claims had been made from the outset, distinct legal injuries were present from the outset, the settlement did make allocation decisions without providing separate representation for the different claims and injuries, and the plan of allocation contained a "Class C reduction" that would punitively have eliminated all consideration paid to Category C if required to provide specified levels of return to Categories A and B.  *Literary Works*, 654 F.3d at 246, 252-255.  None of these factors is present here.  The majority opinion in *Literary Works* heavily emphasized or actually turned on the latter "Category C reduction" as providing evidence of inadequate representation and requiring subclasses.  *Id.* at 253-254 and n. 7.  However, the dissent opined that subclasses still were not required on even those facts (which, obviously, are far far beyond the homogenous legal claims and legal injuries here).  *Id.* at 263-264.

Plaintiffs and all Barclays Settlement Class members had and have the same interests to negotiate for and obtain the optimal settlement consideration from Barclays.  Wholly unlike in

---

[4] The Barclays Settlement encompasses claims based upon the same time period as alleged in the Complaint.  ECF No. 680, Ex. 3, ¶4.  The Settlement Class is represented by the same interim co-lead counsel appointed by this Court.  ECF No. 66.  Plaintiffs have alleged and litigated the same claims and same legal injuries for all class members in that Defendants allegedly manipulated Eurodollar futures contract prices, causing Plaintiffs and Class members to sustain the legal injury of transacting at artificial prices.  Accordingly, this is not a situation in which the Settlement Class was greatly expanded to include, or always included, class members with different legal claims for different legal injuries.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624-625 (1997) ("*Amchem*").

*Literary Works*, there are no separate legal claims here, no distinct legal injuries, and no allocation decisions made during the Barclays Settlement negotiations or otherwise to date.  *See* "5" and "6" *infra*.  Because there were no "fundamental" conflicts going to "the very heart" of the litigation when Interim Co-Lead Counsel pursued and sought to maximize the settlement consideration for the Barclays claims, subclasses are not required and the additional costs thereof are inappropriate here.  *See* "5" and "6" *infra*.

Finally, the mere fact that class settlements may include class members or date ranges of transactions that are arguably time-barred or otherwise legally invalid, does not bar a settlement class.  "Defendants in class action suits are entitled to settle claims pending against them on a class-wide basis even if a court believes that those claims may be meritless, provided that the class is properly certified under Rules 23(a) and (b) and the settlement is fair under Rule 23(e)." *In re AIG, Inc. Sec. Litig.,* 689 F.3d 229, 243-44 (2d Cir. 2012).  Again, as the Second Circuit recognized in *Charron*, it is typical for members of the same settlement class to have claims of varying strength on the merits, and those distinctions are properly addressed in the plan of allocation.  *Charron*, 735 F.3d at 253-254.

Plaintiffs fully recognize the correctness of this Court's observation that different facts may require different outcomes.  Tr. p. 4-5, 12-14.  But based on all the further facts and reasons developed hereinafter, Plaintiffs respectfully submit that the additional "transaction costs" of duplicative representation for subclasses (about which the Second Circuit expressly cautioned in *Charron*), are not rendered appropriate by any of the facts or circumstances discussed below or otherwise present here.

>    **2.    A Plan Of Allocation Is Not Required Even For Final Approval Of A
>         Proposed Settlement, And Approval Of A Plan Is Analytically Very
>         Different From Approval Of The Settlement**

The standard for approval of a settlement does not require inclusion of a proposed plan of

allocation.   In a still-controlling authority on this point, the Second Circuit stated:

> The prime function of the district court in holding a hearing on the fairness of the
> settlement is to determine that the amount paid is commensurate with the value of
> the case.  This can be done before a distribution scheme has been adopted so long
> as **the distribution scheme does not affect the obligations of the defendants
> under the settlement agreement**. **The formulation of the plan in a case such
> as this is a difficult, time-consuming process**.

*In re Agent Orange Product Liability Litigation*, 818 F.2d 145, 170 (2d Cir. 1987) (emphasis

added).  First, the "distribution scheme" here will not affect the "obligations" of Barclays in any

way, much less in the material ways contemplated in *Agent Orange*.  *See* Barclays Settlement

Agreement, ECF No. 211-3 at ¶19, p. 13 (Barclays has "no responsibility for, interest in, or

liability whatsoever with respect to the investment or distribution of the Settlement Fund").

Second, especially in multi-defendant antitrust and commodity futures manipulation

cases, the "formulation of the plan" of allocation may, in the words of *Agent Orange* quoted

above, be a "difficult, time consuming process."   Similar to *Charron*, the Second Circuit in

*Agent Orange* cautioned that the difficulty and time involved in preparing a plan of allocation

should also be considered.  *See* "5" below regarding why a plan of allocation was not previously

submitted.

Given this time/expense trade-off, many courts have found it "prudent" in complex

litigation to postpone the plan of allocation until after the settlement has been finally approved.

*In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 480 (S.D.N.Y. 1998) (noting in

multiple defendant price fixing cases and other massive class actions "it is appropriate, and often

prudent," to defer consideration of the plan of distribution until after final settlement approval);

*accord In re HealthSouth Corp. Sec. Litig.,* 334 Fed. App'x 248, 251, 253-255 (11th Cir. 2009) (no plan of allocation in the class notice or as part of preliminary approval); *see Manual for Complex Litigation, Fourth,* § 21.313 at 296 ("Often … the details of allocation and distribution are not established until **after** the settlement is approved.") (emphasis added); Newberg on Class Actions § 12:35 at 342 (4th ed. 2002) (same).[5]

Third, the reasons for deferring the plan of allocation until after final approval greatly increase when there are multiple defendants and only one defendant or some defendants have settled:

> With respect to consideration of the methods of allocating settlement proceeds and attorneys' fees, however, there are clear reasons for delay.  These issues will be addressed in a later proceeding before the Court with notice to class members and opportunity to be heard.  Such deferral of allocation decisions is routinely followed in partial settlements where the appropriate allocation among class members can best be determined when further settlements have been achieved or the litigation is completely resolved.

*In re Washington Public Power Supply Sys. Secs, Litig.*, 1988 WL 158947, *4 (W.D. Wash. 1988) (citing cases).

Also, other courts in this Circuit have routinely granted preliminary approval of a class settlement before examining or approving any plan of allocation.  *E.g., In re Wachovia Equity Secs. Litig.,* No. 08-6171 (RJS), 2012 WL 2774969, at *1 (S.D.N.Y. June 12, 2012) (approving plan of allocation after preliminary approval of proposed settlement and certification of settlement class); *In re Canadian Sup. Secs. Litig.,* No. 09-10087, 2011 WL 5830110, at *2 (S.D.N.Y. Nov. 16, 2011) (same); *In re Giant Interactive Grp. Inc. Secs. Litig.*, 279 F.R.D. 151,

---

[5] *Compare In re Sumitomo Copper Litig.,* 96-cv-4584, 189 F.R.D. 274 (S.D.N.Y. Oct. 7, 1999) (granting class certification and preliminary approval of four groups of settlements) *and* 74 F. Supp. 2d 393 (S.D.N.Y. Nov. 15, 1999) (granting final approval of same) *with* D.E. No. 349 (May 1, 2002 Order Establishing Plan of Allocation is entered **after** final approval had been granted).

156 (SDNY 2011) (same); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 135 (S.D.N.Y. 2010) (same); *In re Qiao Xing Secs. Litig.*, No. 07-7097, 2008 WL 872298, at *1-2 (S.D.N.Y. Apr. 2, 2008) (same).[6]

Next, where the plan of allocation is not part of the terms of the settlement, it is analytically distinct from the settlement. Thus, for one example, the Court may change the plan of allocation before, during or after the final approval hearing based upon the objections and the entire record developed. *E.g.*, *In re Sumitomo Copper Litig.*, No. 96 Civ. 4584 (S.D.N.Y.), D.E. 349 (Order Establishing Plan of Allocation (Order No. 110)) (filed May 1, 2002); *In re Natural Gas Commodity Litig.*, No. 03 Civ. 6186 (S.D.N.Y.), D.E. 618 (Order Establishing Modified Plan of Allocation and Awarding Plaintiffs' Compensation) (filed June 7, 2010).

In sharp contrast, in considering whether to approve a settlement, the Court may not modify the terms thereof and should preliminarily approve or reject the settlement as written or advise the parties to change same. *Valley Disposal, Inc. v. Cent. Vermont Solid Waste Mgmt. Dist.*, 71 F.3d 1053, 1059 (2d Cir. 1995) ("*Valley Disposal*") (citing *Evans v. Jeff D.,* 475 U.S. 717, 720 (1986)).

---

[6] For example, in *Precision Associates, Inc. v. Panalpina World Transport*, No. 08-cv-0042, 2013 WL 4525323 (E.D.N.Y. Aug. 27, 2013) ("*Freight Forwarders*"), plaintiffs moved for preliminary approval of the first ten partial settlements prior to formulating any plan of allocation. *Id.*, ECF 527 (9/20/2011); ECF 576 (4/2/2012); ECF 590 (6/14/2012); ECF 637 (8/29/2012); ECF 645 (09/17/2012); ECF 668 (10/10/2012); ECF 687 (12/10/2012); and ECF 712 (1/29/2013). The Honorable John J. Gleeson preliminarily approved each of these settlements before any plan of allocation had been proposed. *Id.*, ECF 530 (9/23/11); ECF 587 (5/9/2012); ECF 604 (8/11/2012); ECF 643 (9/12/2012); ECF 649 (9/19/2012); ECF 673 (10/18/2012); ECF 692 (12/12/2012); and ECF 715 (1/30/2013). The court then approved the proposed class notice program, again prior to any plan of allocation. *Id.*, ECF 666. The class notice provided that "a plan of allocation has not yet been determined" and referred class members to the settlement website. *Id.*, ECF 656-3. During the notice period, the plan of allocation was posted on the settlement website. Plaintiffs moved for approval of the plan of allocation in conjunction with their motion for final approval of the ten settlements on July 26, 2013, ECF 854, and the approval was granted. *Freight Forwarders*, 2013 WL 4525323, at *6.

**3.      Although A Plan Of Allocation Is Not Required Until After Final Approval, Plaintiffs Will Seek Preliminary Approval From The Court Of A Program And Content Of Class Notice That Includes The Legal Risk Discounts And Other Aspects Of The Plan Of Allocation**

Even though the plan of allocation has not been legally required until after final approval, Plaintiffs intend to proceed as follows.  Plaintiffs' motion for preliminary approval of the program and content of class notice will include the legal risk discounts and other aspects of the plan of allocation.  Far more than the procedures followed in prior complex cases in this Circuit, this process will provide class members with additional information with which to evaluate the Barclays Settlement and (if appropriate) to object to the plan of allocation or the entire Settlement.

**4.      There Are Multiple Cost-Effective Safeguards In The Process Of Preparing, Preliminarily Approving, And Providing Notice To The Class Of The Plan Of Allocation**

**a.      A Plan Of Allocation Need Only Have A Rational Basis**

"When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis.  Such [a] reasonable plan may consider the relative strength and values of different categories of claims."  *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012) (Buchwald, J.) (internal citations and quotation marks omitted; alteration in original).  To properly account for differences in the strength of class members' respective claims, class counsel and class representatives often incorporate discounts for statute of limitations issues and other litigation risks into a rational plan of allocation without incurring the additional "transaction costs" and "attorneys' fees"  (*Charron*, 731 F.3d 254) of subclass or separate allocation counsel.  *E.g., Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182-83 (E.D.N.Y. 1999) ("Insofar as [the sole objector to the plan of allocation] raised concerns at the fairness hearing [on the $7.75 million settlement] about the allocation of only

10

$100,000 to members of Group III (only 145 of whom filed proofs of claim), the claims of members in this group would have been subject to substantial difficulties of proof at trial, particularly with respect to defendants' statute of limitations defense. Indeed, there existed a significantly greater risk of non-recovery for these individuals than for the members of Groups I [$2.08 million] and II [$2.3 million]."); *Downes, et al. v. Wisconsin Energy Corp. Ret. Account Plan*, 2012 WL 1410023, at *4 (E.D. Wis. 2012) (approving a plan of allocation that adjusts claims based on the probability of success in light of litigation risks and statute of limitations risks specific to each Class member).

More generally, courts have held that "an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel" who are "familiar with the relative strengths and weaknesses of the potential claims of class members."[7] *In re PaineWebber Ltd. P'ship. Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997), *aff'd* 117 F.3d 721 (2d Cir. 1997) ("As a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information."); *Maine State Retirement Sys. v. Countrywide Fin. Corp.*, No. 10 Civ. 00302 MRP, 2013 WL 6577020, at *10 (C.D. Cal. Dec. 5, 2013) (rejecting objectors' allegations of intra-class conflict given "structural assurances of fairness present in this settlement," where the court "assisted Plaintiffs in developing a plan of allocation that was fair to all class members" and the court and a mediator "each evaluated the plan of allocation and both independently concluded that it was fair to all class members").

---

[7] *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002); *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 515 (S.D.N.Y. 1996); *White v. Nat'l Football League*, 822 F. Supp. 1389, 1420-24 (D. Minn. 1993), *aff'd*, 41 F.3d 402 (8th Cir. 1994), *cert. denied*, 515 U.S. 1137 (1995); *In re Gulf Oil/Cities Service Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992).

###### b.    Differing Interests Among Class Members Are Appropriately Represented

As set forth in the David Kovel Declaration [ECF No. 398], the named plaintiffs transacted at various different times during the Class Period.  For example, Plaintiff 303030 Trading did not make any transactions after December 2008, during the period in which the suppression (reputation motivated) manipulation claims are timely under the CEA.  *Id.* at ¶3 and Ex. A thereto (ECF No. 398-1).  Although Plaintiff 303030 Trading does have timely trader-based manipulation claims, this Court has previously indicated that those claims do not involve continuous manipulation.  They are significantly more limited than the continuous suppression manipulation that this Court found to be plausibly indicative of continuous price artificiality. *Compare LIBOR II*, 962 F. Supp. 2d at 623-624 *with In re LIBOR-Based Financial Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 710, 718-719 (S.D.N.Y. Mar. 29, 2013) ("*LIBOR I*"). Therefore, a large number of the compensable transactions of Plaintiff 303030 Trading will be in the time-barred portion of the Class Period.  Plaintiff 303030 Trading very likely will have a strong interest to encourage a reasonable and fair allocation in respect of the time-barred transactions.

In addition, at least one class member who may, if appropriate, become involved in the mechanism for devising a plan of allocation, solely has transactions during the time-barred period.  The remaining named Plaintiffs have transactions that occurred both during the time-barred period and during the timely period.

12

c.    **After Preliminary Approval Of The Barclays Settlement, There Will Be Multiple Further Safeguards In The Consideration Of The Plan Of Allocation And Settlement Class**

Even though a plan of allocation need only have a rational basis, the Second Circuit Court of Appeals and other courts have approved mechanisms in which account was taken through class representatives, counsel or other means of differing interests in the allocation of the claim without incurring all the duplication and other costs of subclasses.  *In re PaineWebber Ltd. P'ship. Litig.*, 174 F.R.D. 35, 36 (S.D.N.Y. 1996), *aff'd* 117 F.3d 721 (2d Cir. 1997) (affirming for the reasons provided by the District Court which had rejected unnamed class members' motion to intervene and create subclass for plaintiffs subject to statute of limitations defense because "the mere fact that a proposed intervenor would assert different claims from those asserted by the named plaintiffs does not render the latter inadequate to represent the former, nor does the fact that the named plaintiffs may be subject to defenses that the proposed intervenor is not"); *In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 260 (D.Del.2002), *aff'd,* 391 F.3d 516, 532–33, 539 (3d Cir.2004); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 62 (D. Mass. 2005) (the Court approved structural protections implemented by class counsel); *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 515 (E.D.Mich.2003).   A similar type of mechanism or process is available for use by Interim Co-Lead Counsel in formulating the plan of allocation here though it was not required in *Charron*.  *See* "4.b" *supra*.

Next, after such appropriate process of formulating legal risk discounts and other aspects of the plan of allocation, they will be submitted to this Court for preliminary approval along with and as a part of the proposed program and substance of the notice to the Barclays Settlement Class of the Barclays Settlement.

13

In addition to the foregoing procedural safeguards and protections, notice will then be provided to all members of the Barclays Settlement Class who will then have an opportunity to object to the legal risk discounts and other aspects of the plan of allocation.

After receiving and fully considering all those objections, this Court will again have the opportunity to pass (at or after the final approval hearing) on the legal risk discounts and other aspects of the plan of allocation.

Also, this Court will have the power to amend the plan of allocation which, unlike other parts of the settlement, is not presented to the Court on a "take it or leave it" basis. *Valley Disposal*, 71 F.3d at 1059 (citing *Evans v. Jeff D.,* 475 U.S. at 720). Again, where as here, the plan of allocation is not part of the settlement terms, the Court may modify the plan of allocation before, during or after the final approval hearing.

### 5. A Plan Of Allocation Has Not Been Proposed Because Plaintiffs Have Not Received Information Appropriate To Consider In Formulating The Plan Of Allocation, And There Was No Reversion To Barclays Or Other Need Prematurely To Try To Specify The Plan Of Allocation

In previous CEA manipulation cases in which substantial discovery had occurred and the defendant had a right to the reversion of the settlement funds and the amount to be paid to class members needed to be specified in order for that reversion to be calculated, the class counsel there did undertake the "time consuming process" of preparing and proposing a substantially complete plan of allocation as part of the settlement and motion for preliminary approval. *E.g.*, *In re Platinum & Palladium Commodities Litig.*, No. No. 10 Civ. 3617, 2014 WL 3500655, at *3-5, 13 (S.D.N.Y. July 15, 2014). However, the time consuming process and information from defendants necessary to prepare the plan had been obtained from the defendants during discovery, and there was a need to formulate the plan in order to accommodate the defendants' reversion expectations.

14

In contrast, here Plaintiffs have not received any discovery from Defendants.  Moreover, there will be no reversion to Barclays from the Barclays Settlement.  *E.g.*, ECF No. 680, Ex. 3 at ¶¶9, 18.3 (Barclays Settlement).  Therefore, there both was no need to go through the time consuming process of preparing the plan of allocation, and the ability to do so was much less than it will be after preliminary approval and Plaintiffs' full receipt from Barclays of its cooperation.

<b>a.      However, Interim Co-Lead Counsel Have Considered The Legal Risks And Other Parts Of The Plan Of Allocation</b>

As demonstrated in "2" above, it is not necessary to review a plan of allocation in order to preliminarily approve the settlement.  This, however, does not mean that Plaintiffs have not done any work on allocation.  In fact, Plaintiffs have already employed experts and undertaken a framework for allocation of the Barclays Settlement proceeds.  This framework includes several steps, some of which include the cooperation of Barclays.  Briefly, Barclays has agreed to provide the dates on which communications took place within Barclays involving possible internal requests for favorable USD LIBOR submissions.  *See* Barclays Settlement Agreement, ECF No. 211-3 ¶ 25.  Based on those dates, Plaintiffs will evaluate the potential impact of those possible requests on relevant Eurodollar futures and options contracts and analyze, among other things, the timing of and total potential harm to the market.  This includes based on the volume of trade.

With respect to Barclays, trader-based damages could have been incurred primarily during "Period 0," from January 1, 2005 until August 6, 2007.  Plaintiffs have also evaluated the potential effect on LIBOR from the suppression alleged in the Complaint, using certain benchmarks as a proxy for the but-for LIBOR and the effect of this LIBOR suppression on the Eurodollar futures and options contracts.  Thereafter, Plaintiffs may consider the amount of

15

trades entered and exited per day (using open interest) and other factors to estimate damages for timely and time-barred periods.  Plaintiffs may discount damages, as appropriate, in any period in order to incorporate litigation risks such as statute of limitations issues.

Plaintiffs will provide detail and specifics on this framework when the Notice of Settlement is submitted to the Court for approval.  Plaintiffs are also aware, however, that the landscape of this litigation has been evolving.  Each ensuing bank and broker settlement with regulatory authorities sheds light on alleged, specific incidents of manipulation.  Thus, the plan of allocation may change in these or other respects depending on new information.  For the foregoing reasons, committing to an exact plan of allocation well before the foregoing have occurred and the program of notice filed, would be premature, time consuming, expensive, and unnecessarily rigid.[8]

### 6.    Interim Co-Lead Counsel Did Not Predicate The Barclays Settlement Or Their Recommendation That Such Settlement Is Fair And Reasonable Upon Any Specific Legal Risk Discount For Transactions During The Time-Barred Period

It was not part of Interim Co-Lead Counsel's reasoning in making the Barclays Settlement or recommending preliminary approval that any specific legal risk discount or other specific treatment of the time-barred transactions would be made.  Based on experience with other cases, there was a preliminary view that there should not be any punitive treatment of time-barred transactions such that compensation thereof would be eliminated in order to guarantee a certain rate of return to the timely transactions.  *See, e.g.*, *Literary Works*, 654 F.3d at 246, 252-255 (where there were separate legal claims and distinct legal injuries from the outset, the plan of allocation did contain such an unprecedented punitive term which the majority opinion held to be

---

[8]  Plaintiffs also have moved for reconsideration of this Court's ruling on statute of limitations based on trader-based injury.  *See* ECF No. 648.

evidence of inadequate representation and the need for subclasses).   But Interim Co-Lead Counsel did extensively consider the work and process that would have to be completed in order to formulate a fair and rational plan of allocation.  *See* "5" above (recounting steps Interim Co-Lead Counsel have taken).

Apart from that, in making and recommending the Barclays Settlement, Interim Co-Lead Counsel considered (a) that the cash consideration that Barclays is paying to settle represents a substantial percentage recovery of the non-joint and several liability of Barclays (ECF No. 680, Ex. 1, pp. 16, 20-24); (b) that the cooperation that Barclays is providing will aid in the preparation of a plan of allocation as well as the prosecution of all of the claims (the suppression claims based on reputation, as well as trader-based claims); and (c) that the other terms of the Barclays Settlement will significantly enhance the payout to class members who do file proofs of claim (this includes the "no reversion" provision).

Again, all Barclays Settlement Class members were and are united in interest to obtain the optimal consideration from Barclays in this first, ice-breaker settlement.

## <u>CONCLUSION</u>

This Court should exercise its discretion to grant preliminary approval of the Barclays Settlement and direct Plaintiffs to proceed to prepare their proposed program and content of notice to the class, including the legal risk discounts and other parts of the plan of allocation. Alternatively, this Court should permit Plaintiffs to file their motion for preliminary approval and supplement same in any respects the Court finds to be incomplete or insufficient at this point.

Dated:  November 12, 2014            **KIRBY McINERNEY LLP**
New York, New York

                                    By:  _____ */s/ David Kovel* _____
                                    David Kovel
                                    Lauren Wagner Pederson, Of Counsel
                                    825 Third Avenue, 16th Floor

17

New York, New York 10022
Telephone: (212) 371-6600
dkovel@kmllp.com
lpederson@kmllp.com

**LOVELL STEWART
HALEBIAN JACOBSON LLP**

By: _____*/s/ Christopher Lovell*_____
Christopher Lovell
Jody R. Krisiloff
Amanda N. Miller
61 Broadway, Suite 501
New York, New York 10006
Telephone: (212) 608-1900
clovell@lshllp.com
jkrisiloff@lshllp.com
amiller@lshllp.com

*Interim Co-Lead Counsel for Exchange-Based Plaintiffs and the Class*

18