USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/18/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

In re:

LIBOR-Based Financial Instruments
Antitrust Litigation.

This Document Applies to:

Exchange-Based Plaintiff Action

----------------------------------------X

**MEMORANDUM AND ORDER**

11 MDL 2262 (NRB)
11 Civ. 2613 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

The Exchange-Based Plaintiffs have three motions pending before this Court:[1]

(1) a motion for reconsideration of our refusal in LIBOR III[2] to consider plaintiffs' untimely request to add certain post-2007 allegations to their complaint;

(2) a motion for leave to amend the complaint to add claims against Lloyds Banking Group plc, HBOS plc, and Lloyds TSB Bank Plc (collectively, "Lloyds"); and

(3) a motion for leave to amend the complaint to add claims against Cooperatieve Centrale Raiffeisen- Boerenleenbank B.A. ("Rabobank").

---

[1] We have reviewed a pre-motion letter from plaintiffs (Aug. 13, 2014, ECF No. 592); responses from Rabobank (Aug. 20, 2014, ECF No. 609) and Lloyds (Aug. 20, 2014, ECF No. 611); a reply from plaintiffs (Sept. 15, 2014, ECF No. 648); and a joint sur-reply from Rabobank and Lloyds (Sept. 23, 2014, ECF No. 652). We previously informed the parties that we would consider plaintiffs' motions on these letters. See Order, Sept. 4, 2014, ECF No. 639.

[2] In re LIBOR-Based Fin. Instruments Antitrust Litig., ___ F. Supp. 2d ___, 2014 WL 2815645, 2014 U.S. Dist. LEXIS 86765, ECF No. 568 (S.D.N.Y. June 23, 2014). Asterisked citations in this opinion refer to the Westlaw electronic reporter, and ECF citations refer to the main MDL docket except where noted.

We will address each in turn.

## I.   Motion for Reconsideration of LIBOR III

Plaintiffs first seek to reargue the portion of LIBOR III that rejected plaintiffs' belated effort to assert trader-based claims outside the January 2005 to August 2007 timeframe.   While styled as a motion to reconsider that aspect of LIBOR III, this motion is in reality an attempt to reargue our analysis in LIBOR I[3] by conflating the inquiry notice analysis for limitations purposes with the substantive issue of the sufficiency of pleading the elements of a claim.

### A.   Plaintiff Has Not Shown Entitlement to Reconsideration.

After we held in LIBOR II[4] that plaintiffs had failed to adequately plead claims of trader-based manipulation,[5] plaintiffs moved for leave to amend their pleadings to include allegations of trader-based misconduct between January 2005 and August 2007. See Pls.' Letter, Sept. 10, 2013, ECF No. 402 (seeking "leave to amend [plaintiffs'] operative Complaint to allege:   . . . (b) that specific or other pre-August 2007 events of

---

[3] In re LIBOR-Based Fin. Instruments Antitrust Litig., 935 F. Supp. 2d 666, ECF No. 286 (S.D.N.Y. Mar. 29, 2013).

[4] In re LIBOR-Based Fin. Instruments Antitrust Litig., 962 F. Supp. 2d 606, ECF No. 389 (S.D.N.Y. Aug. 23, 2013).   Specifically, LIBOR II held that plaintiffs must plead "(1) that they transacted in Eurodollar futures contracts on days on which Eurodollar futures contract prices were artificial as a result of trader-based manipulation of LIBOR, [and] (2) that their positions were such that they were injured."   962 F. Supp. 2d at 620-21, slip op. at 27-28.

[5] As described in LIBOR II, trader-based manipulation is "manipulation wherein defendants allegedly submitted specific LIBOR quotes in order to benefit particular positions that they held in the Eurodollar futures market" or similar interest-rate markets.   962 F. Supp. 2d at 619, slip op. at 23-24.

2

manipulation revealed by the government settlements caused LIBOR to be artificial in a specified direction which disadvantaged certain plaintiffs' transactions made on the same day or within days of that misreport"). In the extensive briefing on this motion, plaintiffs repeatedly attempted to include claims for trader-based manipulation after August 2007. See LIBOR III at *8, slip op. at 22 (citing Pls.' Letter 4, Nov. 5, 2013, ECF No. 493; Pls.' Supp. Mem. of Law Regarding Rabobank 6, ECF No. 523; Tr. 10:21-11:16, Feb. 4, 2014, ECF No. 549). We acknowledged plantiffs' supplemental papers and consciously chose to rule on the merits only of plaintiffs' original motion. See id. ("It would be manifestly unjust and contrary to established practice to allow plaintiffs to 'shift the goalposts' and add amendments that fall outside the time period that was the focus of the initial motion.").

Plaintiffs now reargue this point by citing essentially the same set of papers and transcripts that we cited in LIBOR III. See Pls.' Letter 4-5, Aug. 13, 2014 (citing Pls.' Letter, Nov. 5, 2013; Pls.' Supp. Mem. of Law Regarding Rabobank; Pls.' Letter, Feb. 7, 2014, ECF No. 540; Tr., Feb. 4, 2014).

"Reconsideration is appropriate only where a court has overlooked controlling decisions or facts presented in the underlying motion which, had they been considered, might reasonably have altered the result of the initial decision."

In re Fosamax Prods. Liab. Litig., 815 F. Supp. 2d, 649, 651-52
(S.D.N.Y. 2011) (citing Shrader v. CSX Transp., Inc., 70 F.3d
255, 257 (2d Cir. 1995)).   As a corollary, when a court has
noted and rejected a litigant's arguments, the litigant's remedy
is to appeal from final judgment.   Because we considered
plaintiffs' arguments before issuing LIBOR III, we deny
plaintiffs' motion for reconsideration.

### B.   Plaintiffs' Motion Would Fail on the Merits.

Even if we were to address plaintiffs' proposed amendment
on its merits, we would reject plaintiffs' new allegations as
untimely.

In LIBOR I we extensively addressed the issue of inquiry
notice in the context of the two-year statute of limitations
under the Commodities Exchange Act.   See Commodities Exchange
Act of 1936 § 22(c), 7 U.S.C. § 25(c) (2012).   Our discussion on
this topic was fulsome.   As we explained, a plaintiff may be on
notice——and therefore the limitations period may begin——well
before the plaintiff has enough knowledge to state a claim for
commodities fraud.   See LIBOR I, 935 F. Supp. 2d at 699-700,
slip op. at 59-60.   Once "circumstances would suggest to an
investor of ordinary intelligence the probability that she has
been defrauded," id. at 698, slip op. at 55 (quoting Koch v.
Christie's Int'l PLC, 699 F.3d 141, 151 (2d Cir. 2012)), the
investor has a duty to inquire; and if the plaintiff fails to

inquire after being on notice, then the limitations period (here two years) bars the claim.   See id. (citing Koch, 699 F.3d at 153).

Not only did we review the law, but we were open about our thinking going forward.  Of particular relevance in this context was our tentative position that news articles from 2008 "placed plaintiffs on inquiry notice of their injury based on any sort of LIBOR manipulation, including both . . . persistent suppression and . . . day-to-day manipulation for trading advantage . . . ," because injuries from persistent suppression would have been indistinguishable from injuries from day-to-day manipulation.   Id. at 709, slip op. at 85.   We offered our thoughts on this issue specifically to invite plaintiffs to respond to our concerns about inquiry notice.   See id. at 709, slip op. at 83 ("However, if plaintiffs pursue such a motion, they should respond to the following concerns [regarding inquiry notice of artificial pricing before August 2007 and inquiry notice of damages from trader-based manipulation].").

LIBOR I was decided on March 29, 2013.   Yet at no time until August 13, 2014, did plaintiffs challenge the conclusion of LIBOR I that our analysis of inquiry notice applied to all forms of manipulation.  Not until plaintiffs' reply letter on reconsideration of our third major opinion in this case did plaintiffs clearly articulate their position that the news

articles from 2008 did not place plaintiffs on inquiry notice of their injuries from trader-based manipulation.

Most significantly, plaintiffs' argument is devoid of a persuasive analytical reason for the Court to change its mind. Instead, the reply letter is filled with selected quotations from LIBOR II and III, mostly about pleading standards, strung together in a misleading way.

First, plaintiffs quote a sentence from LIBOR III as "law of the case" that "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock."   Pls.' Letter 1, Sept. 15, 2014 (quoting LIBOR III at *14, slip op. at 40 (internal citations omitted)).    True, but the very next sentence of LIBOR III clarifies that the rule is not a rule of "actual notice" but of "inquiry notice": "Applying the corollary doctrine of 'inquiry notice,' a court must ask at what point the circumstances were such that they would suggest to a person of ordinary intelligence the probability that she has been defrauded."   LIBOR III at *14, slip op. at 41.    Given that public agencies in the United States and Europe continue to pursue their investigations into LIBOR manipulation, it is conceivable that plaintiffs will not receive actual notice of some new claims for years to come.    But the emergence of new information in 2013, 2014, or beyond does not alter the facts that plaintiffs were on inquiry notice in 2008 and that the

limitations period expired in 2010 after plaintiffs' failure to investigate diligently.

Next, plaintiffs cite a footnote from LIBOR III for the proposition that "a person of ordinary intelligence would have likely been put on inquiry notice of his injury from Barclays' trader-based manipulation only after the publication of the Barclays settlements on June 27, 2012."  Pls.' Letter 2, Sept. 15, 2014 (citing LIBOR III at *3 n.5, slip op. at 9 n.5). In fact, the cited footnote says:

> A person of ordinary intelligence reading those articles [from 2008] would therefore not have been on inquiry notice of his injury if he had purchased Eurodollar futures contracts prior to August 2007, as those articles did not indicate LIBOR's artificiality at that time; indeed, he would have likely been put on inquiry notice of his injury only after the publication of the Barclays settlements on June 27, 2012.

LIBOR III at *3 n.5, slip op. at 9 n.5 (emphasis added).  Thus, with respect to claims based on trades after August 2007, the same footnote affirmed that such claims would be time-barred. See id.

Next, plaintiffs cite several quotations from our holdings on pleading standards.  For example, in the context of pleading, we wrote that "we could not expect plaintiffs to connect their trading to instances of manipulative conduct that occurred on dates that are still not publicly available," so long as plaintiffs could show damages for at least some specific

7

instances.    LIBOR II, 962 F. Supp. 2d at 624 n.23, slip op. at
35 n.23.    For the limitations analysis, however, the relevant
question is not the adequacy of pleading but whether plaintiffs
diligently investigated once they were on inquiry notice.    The
difficulty in discovering particular instances of manipulation
cannot excuse plaintiffs' complete failure to investigate the
possibility of LIBOR fraud.

     Likewise, plaintiffs point out that we have applied a
different pleading standard for trader-based manipulation than
for persistent manipulation.    See LIBOR III at *3 n.5, slip op.
at 9 n.5; id. at *5, slip op. at 15.    However, as we discussed
in LIBOR I, plaintiffs' injuries were the precisely the same,
whether caused by persistent suppression or sporadic
manipulation, and so inquiry notice began on the same date,
regardless of whether one type of manipulation is easier to
plead than the other.    See LIBOR I, 935 F. Supp. 2d at 710, slip
op. at 86-87.

     Plaintiffs' approach would imply that the limitations
period for their CEA claims is open-ended, and that plaintiffs
may wait indefinitely until some government agency's
investigation reveals the facts the plaintiffs need in order to
articulate their claims.    We disagree, and adhere to our view
that plaintiffs have been on inquiry notice of their injuries
since 2008.    Accordingly, even if there were grounds for

reconsideration and the motion were timely, we would deny plaintiffs' motion on the merits.

## II.  Motion for Leave to Add Claims Against Lloyds

Plaintiffs also seek to add claims against Lloyds for trader-based manipulation on two dates: January 17, 2008, and May 11, 2009. This application relies on the Lloyds DOJ SOF[6] and the Lloyds CFTC Order.[7]

For the reasons discussed in our earlier decisions, the January 17, 2008 events are time-barred and thus the proposed amendment would be futile.

As for the May 11, 2009 claim, there is no evidence in the settlement documents cited by plaintiffs that Lloyds made an artificial submission on that date. According to the Lloyds DOJ SOF, a Lloyds trader disclosed his trading position to a LIBOR submitter's assistant, asked for an advantageous LIBOR submission, withdrew his request, and then discussed making a fraudulent submission later that month. Nothing in the document indicates that the LIBOR submitter learned of, much less acted upon, the trader's withdrawn request. This Court rejects plaintiffs' suggestion that their proposed amendment should be allowed because defendants have raised "a fact-intensive inquiry," Pls.' Letter 5, Sept. 15, 2014. The bottom line is

---

[6] Deferred Prosecution Agreement between Lloyds Banking Group plc and the Department of Justice, Statement of Facts (July 28, 2014), filed as Pls.' Letter Ex. A, Aug. 13, 2014.
[7] Lloyds Banking Group plc and Lloyds Bank plc, Order Instituting Proceedings (C.F.T.C. July 28, 2014), filed as Pls.' Letter Ex. C, Aug. 13, 2014.

that plaintiffs must advance a sufficient basis to support an amendment. That they have not done.

## III. **Motion for Leave to Add Claims Against Rabobank**

Finally, plaintiffs seek to amend their complaint against Rabobank to assert an agreement between Rabobank and Lloyds to submit false U.S. Dollar LIBOR quotes. Plaintiffs' proposed amendment is pure speculation, based on settlement documents related to interactions between Rabobank and Lloyds on Yen LIBOR. See Pls.' Letter 3, Aug. 3, 2014 ("Although the settlements describe attempts to manipulate Yen LIBOR, Lloyds' interaction with Rabobank in one currency quite plausibly could have occurred in USD LIBOR as well."). Plaintiffs' statement of their position is its own refutation.

## IV. **Conclusion**

For the above reasons, plaintiffs' motions are denied. The clerk is directed to terminate ECF No. 592 in the MDL case (11 MDL 2262) and ECF No. 202 in the Exchange-Based Plaintiff Action (11 Civ. 2613).

**IT IS SO ORDERED.**


Dated:   New York, New York
         November  /7 , 2014


NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE