## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262<br>ECF Case<br><br>Master File No. 1:11-md-2262-NRB<br>**ORAL ARGUMENT REQUESTED** |
| THIS DOCUMENT RELATES TO:<br><br>AMABILE, *et al.,*<br>Plaintiff,<br>v.<br>BANK OF AMERICA CORPORATION, *et al.*,<br>Defendants. | No. 13-cv-2297 |
| BAY AREA TOLL AUTHORITY,<br>Plaintiff,<br>v.<br>BANK OF AMERICA CORPORATION, *et al.*,<br>Defendants. | No. 14-cv-3094 |
| CEMA JOINT VENTURE,<br>Plaintiff,<br>v.<br>CHARTER ONE BANK, N.A., *et al.*,<br>Defendants. | No. 13-cv-5511 |
| CITY OF HOUSTON,<br>Plaintiff,<br>v.<br>BANK OF AMERICA CORPORATION, *et al.*,<br>Defendants. | No. 13-cv-5616 |
| CITY OF PHILADELPHIA,<br>Plaintiff,<br>v.<br>BANK OF AMERICA CORPORATION, *et al.*,<br>Defendants. | No. 13-cv-6020 |
| CITY OF RICHMOND,<br>Plaintiff,<br>v.<br>BANK OF AMERICA CORPORATION, *et al.*,<br>Defendants. | No. 13-cv-0627 |

| | |
|---|---|
| CITY OF RIVERSIDE,<br>Plaintiff,<br>v.<br>BANK OF AMERICA CORPORATION, *et al.*,<br>Defendants. | No. 13-cv-0597 |
| COUNTY OF MENDOCINO,<br>Plaintiff,<br>v.<br>BANK OF AMERICA CORPORATION, *et al.*,<br>Defendants. | No. 13-cv-8644 |
| COUNTY OF SACRAMENTO,<br>Plaintiff,<br>v.<br>BANK OF AMERICA CORPORATION, *et al.*,<br>Defendants. | No. 13-cv-5569 |
| COUNTY OF SAN DIEGO,<br>Plaintiff,<br>v.<br>BANK OF AMERICA CORPORATION, *et al.*,<br>Defendants. | No. 13-cv-0667 |
| COUNTY OF SAN MATEO,<br>Plaintiff,<br>v.<br>BANK OF AMERICA CORPORATION, *et al.*,<br>Defendants. | No. 13-cv-0625 |
| COUNTY OF SONOMA,<br>Plaintiff,<br>v.<br>BANK OF AMERICA CORPORATION, *et al.*,<br>Defendants. | No. 13-cv-5187 |
| DARBY FINANCIAL PRODUCTS, *et al.*,<br>Plaintiffs,<br>v.<br>BARCLAYS BANK PLC, *et al.*,<br>Defendants. | No. 13-cv-8799 |

| | |
|---|---|
| EAST BAY MUNICIPAL UTILITY DISTRICT, Plaintiff, v. BANK OF AMERICA CORPORATION, *et al.*, Defendants. | No. 13-cv-0626 |
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR AMCORE BANK, N.A., *et al.*, Plaintiffs, v. BANK OF AMERICA CORPORATION, *et al.*, Defendants. | No. 14-cv-1757 |
| FEDERAL HOME LOAN MORTGAGE CORPORATION, Plaintiff, v. BANK OF AMERICA CORPORATION, *et al.*, Defendants. | No. 13-cv-3952 |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, Plaintiff, v. BARCLAYS BANK PLC, *et al.*, Defendants. | No. 13-cv-7720 |
| MARAGOS, Plaintiff, v. BANK OF AMERICA CORPORATION, *et al.*, Defendants. | No. 13-cv-2297 |
| NATIONAL CREDIT UNION ADMIN. BOARD, Plaintiff, v. CREDIT SUISSE GROUP. AG, *et al.*, Defendants. | No. 13-cv-7394 |
| PRINCIPAL FINANCIAL GROUP, INC. , *et al.*, Plaintiffs, v. BANK OF AMERICA CORPORATION, *et al.*, Defendants. | No. 13-cv-6014 |

| | |
|---|---|
| PRINCIPAL FUNDS, INC., *et al.*, <br> Plaintiffs, <br> v. <br> BANK OF AMERICA CORPORATION, *et al.*, <br> Defendants. | No. 13-cv-6013 |
| PRUDENTIAL INVESTMENT PORTFOLIOS 2, <br> Plaintiff, <br> v. <br> BANK OF AMERICA CORPORATION, *et al.*, <br> Defendants. | No. 14-cv-4189 |
| SALIX CAPITAL US INC. , <br> Plaintiff, <br> v. <br> BANC OF AMERICA SECURITIES LLC, *et al.*, <br> Defendants. | No. 13-cv-4018 |
| SAN DIEGO ASSOCIATION OF GOVERNMENTS, <br> Plaintiff, <br> v. <br> BANK OF AMERICA CORPORATION, *et al.*, <br> Defendants. | No. 13-cv-5221 |
| THE CHARLES SCHWAB CORPORATION, *et al.*, <br> Plaintiffs, <br> v. <br> BANK OF AMERICA CORPORATION, *et al.*, <br> Defendants. | No. 13-cv-7005 |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, <br> Plaintiff, <br> v. <br> BANK OF AMERICA CORPORATION, *et al.*, <br> Defendants. | No. 13-cv-5186 |
| TRIAXX PRIME CDO 2006-1 LIMITED, *et al.* , <br> Plaintiffs, <br> v. <br> BANK OF AMERICA CORPORATION, *et al.*, <br> Defendants. | No. 14-cv-0146 |

**DECLARATION OF DANIEL BROCKETT IN SUPPORT OF OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS THE DIRECT ACTIONS
<u>FOR LACK OF PERSONAL JURISDICTION</u>**

Daniel L. Brockett hereby declares, under penalty of perjury:

1.      I am a partner with Quinn Emanuel Urquhart & Sullivan, LLP, counsel of record for Plaintiffs Prudential Investment Portfolios 2, Salix Capital US Inc., Darby Financial Products, Capital Ventures International, the City of Philadelphia, and the Pennsylvania Intergovernmental Cooperation Authority.

2.      This Declaration is submitted in support of Direct Action Plaintiffs' Memorandum in Opposition to Defendants' Motions to Dismiss the Direct Actions for Lack of Personal Jurisdiction, filed concurrently herewith.  It states facts relevant to the personal jurisdiction inquiry on a defendant-by-defendant basis primarily for those Moving Defendants that challenge personal jurisdiction in New Jersey and Pennsylvania (based upon Schedule G to Defendants' Master Appendix, Dkt. No. 743-1).  Exhibits A-D to this Declaration indicates which claims are challenged by which Defendants in each of the *Prudential*, *Salix*, *Darby*, and *Pennsylvania* actions.

3.       I make this Declaration based upon my review of publicly-available documents as well as my review of the pleadings, affidavits, and record in these actions, and other publicly-available sources.  If called upon to testify as to the facts herein, I could and would do so competently.

**A.      Bank of America**

4.      Bank of America Corp. ("BAC") and Bank of America, N.A. ("BANA") (collectively, "Bank of America") are Defendants in the *Prudential* and *Philadelphia* actions. BAC and BANA challenge jurisdiction in New Jersey and Pennsylvania.

5.      BAC is a global banking and financial services corporation.  BANA is a federally chartered national banking association, and a subsidiary of BAC.

6.      Bank of America regularly transacts business in and has substantial contacts with New Jersey and Pennsylvania.  For instance, as of January 1, 2014, BANA had 300 banking centers in New Jersey and 77 in Pennsylvania.  *See* New Jersey fact sheet, *available at* http://about.bankofamerica.com/assets/pdf/New_Jersey_StateFactSheet.pdf (last visited 12-7-2014); Pennsylvania fact sheet, *available at* http://about.bankofamerica.com/assets/pdf/Pennsylvania_StateFactSheet.pdf (last visited 12-7-2014).  BANA also made hundreds of millions of dollars in loans to small businesses and individuals in both states.  *Id*.  And as of December 31, 2013, Bank of America had over $6 billion in outstanding home equity loans and over $3.8 billion in outstanding credit card balances in New Jersey alone.  *See* Bank of America Corp. 2013 Annual Report, available at http://media.corporate-ir.net/media_files/IROL/71/71595/AR2013.pdf (last visited 12-7-2014).

7.      As one example of a financing transaction between BANA and the City of Philadelphia, in August 2008 BANA provided substitute credit support for approximately $1.6 billion of outstanding Water and Wastewater Revenue Bonds issued by Philadelphia.  Specifically, BANA provided a letter of credit as a replacement for an AMBAC insurance policy for those municipal bonds.  See Moody's Affirms A3 Underlying Rating on Approximately $1.6 Billion of the City of Philadelphia's Water and Wastewater Bonds, available at http://www.phila.gov/investor/pdfs/Moodys_Report1.pdf (last visited 12-8-2014).

8.      BAC and its affiliates were also obligors on floating rate securities on which they paid interest to the Prudential Funds tied to USD Libor.  *See* Pru. Compl. ¶ 17, Exs. A-D. Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), the broker-dealer subsidiary of BAC, does not challenge jurisdiction in New Jersey.  The Prudential Funds allege that BAC and its affiliates, directly and through Merrill Lynch, sent to the Prudential Funds and their investment managers in New Jersey prospectuses and other offering documents describing those

2

floating rate securities with false information about USD Libor.  *Id*. ¶¶ 14-18.  They also allege that the Prudential Funds and their investment managers made investment decisions in New Jersey to purchase those floating rate securities issued by BAC and its affiliates, and sold by Merrill Lynch.  *Id*.

**B.**     **Barclays**

9.       Barclays PLC ("BPLC"), Barclays Bank PLC ("BBPLC"), and Barclays Capital, Inc. ("BCI") (collectively, "Barclays") are defendants in the *Prudential* action, and challenge jurisdiction in New Jersey.[1]  BBPLC is a defendant in the *Philadelphia* action, and challenges jurisdiction in Pennsylvania.

10.      BPLC is a financial holding company, and the parent company of BBPLC.  BCI is a registered broker-dealer incorporated under the laws of Connecticut with its principal place of business in New York, and is a subsidiary of BPLC.

11.      Barclays regularly transacts business in and has substantial contacts with New Jersey and Pennsylvania.  A significant part of Barclays' operations are based in the U.S.  *See* Declaration of Lisa M. Kaas in Opposition to Defendants' Motions to Dismiss for Lack of Personal Jurisdiction in New York ("Kass Decl.").  Those operations include New Jersey and Pennsylvania.  For instance, BBPLC is registered as a foreign profit corporation with the New Jersey Secretary of State, and holds a license issued by the Pennsylvania Department of Banking to conduct business in that state.  *See* Gonsalves Decl. (Dkt. No. 759).  Barclays also maintains an office in Philadelphia, Pennsylvania, which provides wealth management products and services to its clients through the BBPLC and BCI brands.  *See* Barclays locations, *available at*

---

[1]   BBPLC, as a swap counterparty, assented to jurisdiction in New York in the ISDA Master Agreement between it and the Prudential Funds.  *See* Opposition to Motion to Dismiss for Lack of Personal Jurisdiction.

https://wealth.barclays.com/en_us/home/others/contactus/global/americas/philadelphia.html)
(last visited 12-8-2014).

12.     BBPLC and its affiliates were also obligors on floating rate securities on which they paid interest to the Prudential Funds tied to USD Libor.  *See* Pru. Compl. ¶ 17, Exs. A-D. The Prudential Funds allege that BBPLC and its affiliates, directly and through the broker-dealer subsidiary BCI, sent to the Prudential Funds and their investment managers in New Jersey prospectuses and other offering documents describing those floating rate securities with false information about USD Libor.  *Id*. ¶¶  14-17, 19.

13.     BBPLC and BCI also marketed USD interest rate swaps to the Prudential Funds and their investment managers in New Jersey on which BBPLC was the counterparty that made floating rate payments tied to USD Libor.  *Id*. ¶ 17, Ex. E.  The Prudential Funds allege that they and their investment managers made investment decisions in New Jersey to purchase those floating rate securities issued by BBPLC and its affiliates and sold by BCI, and to enter into those interest rate swaps.  *Id*. ¶¶ 14-17, 19.

14.     In addition to selling securities issued by BBPLC and its affiliates, the Prudential Funds allege that BCI also acted as an underwriter or dealer in selling numerous floating rate notes to the Prudential Funds paying interest tied to USD Libor that were issued by third parties. *Id*. ¶ 17, Ex. A-D.  The Prudential Funds allege that BCI sent to the Prudential Funds and their investment managers in New Jersey prospectuses and other offering documents with false information about USD Libor.  *Id*. ¶¶ 14-17, 19.  They further allege that the Prudential Funds and their investment managers made investment decisions in New Jersey to purchase those floating rate securities sold by BCI as an underwriter or a dealer.  *Id*.

### C.     Citi

15.      Citibank, N.A. ("CBNA") and Citigroup Funding, Inc. ("CFI") are Defendants in the *Prudential* action.  CBNA and CFI challenge jurisdiction in NJ.  CBNA and Citigroup Financial Products, Inc. ("CFPI") (collectively, with CFI, "Citi") are Defendants in the *Philadelphia* action.  CBNA and CFPI challenge jurisdiction in PA, to the extent they are not sued for breach of contract where they are a swap counterparty or for other claims directly associated with the swap transactions at issue.

16.     CBNA is a federally chartered national banking association, and is a subsidiary of the Citi parent company, Citigroup, Inc. ("Citigroup").  Citigroup concedes jurisdiction in New Jersey and Pennsylvania.  CFI was a subsidiary of Citigroup that issued commercial paper and other debt instruments.  According to information supplied by Citigroup, "[a]s of December 31, 2013, CFI was merged into the parent holding company Citigroup, Inc. . . ."  *See* Dkt. 754-1, at 5.  As a result, claims against CFI are now claims against Citigroup.  CFPI is a financial holding company and subsidiary of Citigroup.

17.     Citi regularly transacts business in and has substantial contacts with New Jersey and Pennsylvania.  For instance, CBNA has many permanent branch locations in New Jersey and Pennsylvania, through which it regularly transacts business in those states.  *See* Citi Locator, available at https://online.citibank.com/US/GCL/citilocator/flow.action (last visited 12/8/2014).

18.     Citigroup and its affiliates were also obligors on floating rate securities on which they paid interest to the Prudential Funds tied to USD Libor.  *See* Pru. Compl. ¶ 17, Exs. A-D. Citigroup Global Markets Inc. ("CGMI"), the broker-dealer subsidiary of Citigroup, does not challenge jurisdiction in New Jersey.  The Prudential Funds allege that Citigroup and its affiliates, directly and through CGMI, sent to the Prudential Funds and their investment managers in New Jersey prospectuses and other offering documents describing those floating

rate securities with false information about Libor.  *Id.* ¶¶ 14-17, 20.  They further allege that the Prudential Funds and their investment managers made investment decisions in New Jersey to purchase the floating rate securities issued by Citigroup and its affiliates and sold by CGMI.  *Id.*

19.     Similarly, CFPI (then known as Salomon Brothers Holding Company Inc) was the counterparty to USD Libor-linked interest rate swaps that Philadelphia entered into in Pennsylvania.  *See* Philadelphia Compl. ¶¶ 20, 23, 33, Exs A-B.  Philadelphia alleges that CFPI transmitted information and proposals for those swaps to the offices of Philadelphia in Pennsylvania where the decisions were made to enter into those swaps.  *Id.*

20.     The challenge of CFPI to jurisdiction in Pennsylvania also fails because those USD interest rate swaps were documented under the ISDA Master Agreement dated as of December 5, 2002, between Salomon Brothers Holding Company Inc (now CFPI) and Philadelphia.  *Id.* Ex. B.  In Part 4(d) of the schedule to that ISDA Master Agreement, CFPI submits to the fullest extent permitted by applicable law to the non-exclusive jurisdiction of the courts of the State of Pennsylvania and of the United States District Court for the Eastern District of Pennsylvania.  *Id.*

**D.     Credit Suisse**

21.     Credit Suisse Group AG ("CSGAG"), Credit Suisse AG ("CSAG"), Credit Suisse (USA) Inc. ("CSUI"), and Credit Suisse Securities (USA) LLC ("CSSU") (collectively, "Credit Suisse") are Defendants in the *Prudential* action, and challenge jurisdiction in New Jersey. CSGAG is a Defendant in the *Philadelphia* action, and challenges jurisdiction in Pennsylvania.

22.     CSGAG is a global financial services holding company, and the parent of the global bank CSAG.  CSUI is a financial services company with its headquarters in New York, and is a subsidiary of CSGAG.   CSSU is a registered broker-dealer and a subsidiary of CSUI.

23.     Credit Suisse regularly transacts business in and has substantial contacts with New Jersey and Pennsylvania.  Credit Suisse regularly conducts significant business in the U.S., directly and through its U.S.-based subsidiaries and the New York branch of CSAG.  *See* Kass Decl.  Those nationwide operations include New Jersey and Pennsylvania.  For instance, in 2013, Credit Suisse and its U.S. subsidiaries had 81 employees located in New Jersey and 52 employees in Pennsylvania.  *See* Finlan Decl. (Dkt. No. 769), Roseman Decl. (Dkt. No. 770).  Credit Suisse has offices in both of those states, through which it regularly transacts business.  And CSSU has acknowledged that some of its revenue was attributable to New Jersey specifically.  *See* Finlan Decl. (Dkt. No. 769).

24.     In addition, CSUI and its affiliates were obligors on floating rate securities on which they paid interest to the Prudential Funds tied to USD Libor.  *See* Pru. Compl. ¶ 17, Exs. A-D.  The Prudential Funds allege that CSUI and its affiliates, directly and through broker-dealer subsidiary CSSU, sent to the Prudential Funds and their investment managers in New Jersey prospectuses and other offering documents describing those floating rate securities with false information about USD Libor.  *Id*. ¶¶ 14-17, 21.  They further allege that the Prudential Funds and their investment managers made investment decisions in New Jersey to purchase those floating rate securities issued by CSUI and its affiliates and sold by CSSU.  *Id*.

25.     As a registered broker-dealer, CSSU also acted as an underwriter or dealer in selling numerous floating rate notes to the Prudential Funds that paid interest tied to USD Libor that were issued by third parties.  *See* Pru. Compl. ¶ 17, Exs. A-D.  The Prudential Funds allege that CSSU sent to the Prudential Funds and their investment managers in New Jersey prospectuses and other offering documents with false information about USD Libor.  *Id*. ¶¶ 14-17, 21.  They further allege that the Prudential Funds and their investment managers made

investment decisions in New Jersey to purchase those floating rates securities sold by CSSU as an underwriter or a dealer.  *Id.*

26.     CSGAG, CSAG, and CSI are also Defendants in the *Salix* action.  CSGAG and CSAG challenge jurisdiction in New York.  CSI also challenges jurisdiction in NY, to the extent it is not sued for breach of contract where it is a swap counterparty or for other claims directly associated with the swap transactions at issue.

27.     Salix is bringing claims primarily on assignment from the FrontPoint Funds, which entered into transactions referred to as corporate bond basis packages ("Bond Basis Packages").  *See* Salix Compl. ¶ 8.  These transactions involved a simultaneous acquisition of fixed rate corporate bonds, credit default swaps, and USD interest rate swaps.  *Id.*  The FrontPoint Funds acquired Bond Basis Packages in which they entered into the interest rate swaps with CSI and bought the bonds from the Credit Suisse broker-dealer affiliate Credit Suisse Securities (USA) LLC ("CSSU").  *Id.* ¶ 25 and Exs.

28.     Salix alleges that in acquiring the Bond Basis Packages from CSI and CSSU, it was at the FrontPoint Funds' New York office where the relevant information was received, the relevant decisions were made and the transactions were entered into.  *Id.* ¶¶ 17-24, 35. CSI sent information concerning proposed Bond Basis Packages to the New York office of the FrontPoint Funds.  *Id.*  CSSU has conceded that it is subject to New York jurisdiction in connection with the claims of Salix arising from the acquisition of the Bond Basis Packages.  CSI is also subject to New York jurisdiction based upon its numerous contacts with the FrontPoint Funds in New York and its close cooperation with CSSU, its New York based affiliate.

### E.  Deutsche Bank

29.     Deutsche Bank AG ("Deutsche Bank") is a defendant in the *Prudential* and *Philadelphia* actions, and challenges jurisdiction in New Jersey and Pennsylvania.  Deutsche Bank is a global financial company.

30.     Deutsche Bank regularly transacts business in and has substantial contacts with New Jersey and Pennsylvania.  For instance, Deutsche Bank has wholly-owned subsidiaries located in New Jersey (Deutsche Bank Trust Company New Jersey Ltd. and DB Services New Jersey Inc.), which on information and belief transact business in New Jersey on Deutsche Bank's behalf.  *See* Comprehensive List of Shareholdings, available at https://www.db.com/ir/en/download/Anteilsbesitz_Shareholdings_2013.pdf (last visited 12-8-2014).

31.     In addition, Deutsche Bank and its affiliates were obligors on floating rate securities on which they paid interest to the Prudential Funds tied to USD Libor.  *See* Pru. Compl. ¶ 17, Exs. A-D.  The Prudential Funds allege that Deutsche Bank and its affiliates sent to the Prudential Funds and their investment managers in New Jersey prospectuses and other offering documents describing those floating rate securities with false information about USD Libor.  *Id*. ¶¶ 14-17, 22.  The Prudential Funds allege that they and their investment managers made investment decisions in New Jersey to purchase those floating rate securities.

32.     Deutsche Bank also marketed USD interest rate swaps to the Prudential Funds and their investment managers in New Jersey on which Deutsche Bank was the counterparty that made floating rate payments tied to USD Libor.  *Id*. ¶ 17, Ex. F.  The Prudential Funds allege that they and their investment managers made investment decisions in New Jersey to enter into those interest rate swaps.  *Id*. ¶¶ 14-17, 22.

F.      **HSBC**

33.      HSBC Holdings PLC ("HSBC Holdings") and HSBC Bank PLC ("HSBC Bank")

(collectively, "HSBC") are defendants in *Prudential*, and challenge jurisdiction in New Jersey.

34.      HSBC Holdings is a global financial services company, and the parent of HSBC

Bank, which is an international banking company.

35.      HSBC regularly transacts business in and has substantial contacts with the U.S.

For example, in its 2013 Annual Report, HSBC Holdings stated that it "is one of the largest

banking and financial services organizations in the world," and described its dealings and

expansions in the U.S. market.  *See* HSBC Holdings 2013 Annual Report, available at

http://www.hsbc.com.hk/1/2/about/financial-information/financial-reports/holdings (lasted

visited 12-8-2014).  HSBC Bank controls two U.S. subsidiaries that are "significant to the

activities of a critical operation or core business line."  *Id.*  Its subsidiary HSBC North America

Holdings Inc. "is a bank holding company organized under the laws of the State of Delaware and

is the top level holding company for HSBC's operations in the US."  These operations include

HSBC Bank USA, N.A., which, "as at December 31, 2013…had 244 branches and 30 branches

and 30 representative offices in the US."  HSBC has also acknowledged on this motion that some

of its revenue is attributable to its business in the U.S.  *See* Francis Decl. (Dkt. No. 773).

36.      HSBC's national operations include New Jersey.  For instance, through its

affiliates, HSBC has branches and ATMs in New Jersey through which it regularly conducts

business in New Jersey.  *See* HSBC Branch and ATMs search, available at

http://www.us.hsbc.com/1/2/home/customer-service/hsbc-locations/branch).

37.      In addition, HSBC and its affiliates were obligors on floating rate securities on

which they paid interest to the Prudential Funds tied to USD Libor.  *See* Pru. Compl. ¶ 17, Exs.

A-D.  HSBC Securities (USA) Inc. ("HSBCSI"), the broker-dealer subsidiary of HSBC, does not

challenge jurisdiction in New Jersey.  The Prudential Funds allege that HSBC and its affiliates, directly and through HSBCSI, sent to the Prudential Funds and their investment managers in New Jersey prospectuses and other offering documents describing those floating rate securities with false information about Libor.  *Id*. ¶¶ 14-17, 23.  They further allege that the Prudential Funds and their investment managers made investment decisions in New Jersey to purchase those floating rate securities issued by HSBC and its affiliates and sold by HSBCSI.  *Id*.

**G.      JPMorgan**

38.      J.P. Morgan Chase & Co. ("JPMCC") and J.P. Morgan Chase Bank, N.A. ("JPMCBNA") (collectively, "JPMorgan") are defendants in the *Prudential* action, and challenge jurisdiction in NJ.  JPMCC and JPMBCBNA are also defendants in the *Philadelphia* action, and challenge jurisdiction in Pennsylvania to the extent they are not sued for breach of contract where they are a swap counterparty or for other claims directly associated with the swap transactions at issue.

39.      JPMCC is a global banking and financial services corporation, and the parent company of JPMorgan.  JPMCBNA is a federally chartered national banking association, and a subsidiary of JPMCC.

40.      JPMorgan regularly transacts business in and has substantial contacts with New Jersey and Pennsylvania.  For instance, as of 2013, JPMorgan employed over 11,300 New Jersey residents serving customers throughout the state, contributed more than $4.5 million to New Jersey charities, made more than 24,000 mortgage loans totaling $6.6 billion, originated more than 20,000 small business loans totaling $444 million, provided more than $50 million in community development loans and investments, and operated 217 banking centers, 258 locations, and more than 494 ATMs.  *See* J.P. Morgan – New Jersey, *available at* https://www.chase.com/commercial-bank/bank-locations/new-jersey-commercial-bank (last

visited 12-8-2014).  During 2013, JPMorgan also paid more than $840 million in wages and

benefits to New Jersey employees, remitted more than $36 million in state and local employee

withholding tax, paid more than $46 million in state and local taxes, purchased more than $631

million in goods and services from New Jersey companies, and served more than 2.4 million

consumer customers and 139,000 small business customers.  *Id*.

      41.    Similarly, in Pennsylvania, JPMorgan employs 2,416 Pennsylvania residents, paid

more than $63 million in wages and benefits to Pennsylvania employees in 2013 and paid

more than $8.9 million in state and local taxes in 2013.  *See* J.P. Morgan - Pennsylvania, *available at*

https://www.chase.com/commercial-bank/bank-locations/pennsylvania-commercial-bank (last

visited 12-8-2014).  During that time, JPMorgan also contributed more than $29 million in

Pennsylvania community development loans and investments and $3.7 million to Pennsylvania

charities, operated in 8 locations, and served more than 1.9 million consumer customers and

69,000 small business customers.  *Id*.

      42.    In exchange for the State of New Jersey's agreement to provide annual subsidies

of $22.5 million through the year 2024, JPMorgan recently agreed to relocate 2,612 employees

to Jersey City and to create 1,000 additional jobs in New Jersey, either by moving workers from

elsewhere or generating new positions.  *See* JP Morgan, RBC putting 4,500 workers in Jersey

City," *available at* http://www.capitalnewyork.com/article/real-

estate/2014/05/8545547/jpmorgan-rbc-putting-4500-workers-jersey-city (last visited 12-8-2014).

As part of this transaction, J.P. Morgan "would now be able to purchase its operations center in

Jersey City and expand its footprint there to more than a million square feet."  *Id.*   JPMorgan

affiliate J.P. Morgan Securities LLC ("JPMS") also operates a "principal office" in Florham

Park, New Jersey, and another location in Philadelphia.  *See* Our Offices, *available at* http://www.jpmorgansecurities.com/pages/am/securities/our-offices (last visited 12-8-2014).

43.     In addition, JPMCC and its affiliates were obligors on floating rate securities on which they paid interest to the Prudential Funds tied to USD Libor.  *See* Pru. Compl. ¶ 17, Exs. A-B.  JPMS, the broker-dealer subsidiary of JPMCC, does not challenge jurisdiction in New Jersey.  The Prudential Funds allege that JPMCC and its affiliates, directly and through JPMS, sent to the Prudential Funds and their investment managers in New Jersey prospectuses and other offering documents describing those floating rate securities with false information about Libor. *Id*. ¶¶ 14-17, 24.  The Prudential Funds and their investment managers made investment decisions in New Jersey to purchase those floating rate securities issued by JPMCC and its affiliates and sold by JPMS.  *Id*.

44.     Similarly, JPMCBNA was the counterparty to USD Libor-linked interest rate swaps that Philadelphia and PICA entered into in Pennsylvania.  *See* Philadelphia Compl. ¶¶ 20, 23, 33, Exs A, D-E.  Philadelphia and PICA allege that JPMCBNA transmitted information and proposals for those swaps to the offices of Philadelphia and PICA in Pennsylvania where the decisions were made to enter into those swaps.  *Id*.

45.     The challenge of JPMCBNA to jurisdiction in Pennsylvania also fails because those USD interest rate swaps were documented under the ISDA Master Agreements between JPMCBNA, on the one hand, and Philadelphia and PICA, on the other hand.  *Id*. Exs D-E.  In Part 4(9) of the schedule to the Philadelphia ISDA Master Agreement dated as of January 20, 2006 and Section 5(k) of the schedule to the PICA ISDA Master Agreement dated as of December 6, 2001, as amended, JPMCBNA submits to the fullest extent permitted by applicable law to the non-exclusive jurisdiction of the courts of the State of Pennsylvania, in Philadelphia

13

and of the United States District Court for the Eastern District of Pennsylvania, in Philadelphia. *Id*.

      **H.**    **RBS**

      46.    The Royal Bank of Scotland PLC ("RBS") is a defendant in the *Prudential* and *Philadelphia* actions, and challenges jurisdiction in New Jersey and Pennsylvania.  RBS is an international banking company.

      47.    RBS regularly transacts business in and has substantial contacts with New Jersey and Pennsylvania.  For instance, RBS and its affiliates own RBS Citizens Financial Group, which is a $120 billion commercial bank holding company which, through its bank subsidiaries, operates a branch network under the Citizens Bank brand in several states, including New Jersey and Pennsylvania.  RBS Citizens bank specifically claims that it is "one of the best banks in Jersey when it comes to offering great products, locations and service," *see* Citizens Bank – Your Local New Jersey Bank, *available at* https://www.citizensbank.com/banking/new-jersey.aspx (last visited 12-8-2014), and claims that its "banks in [Pennsylvania] offer a variety of accounts along with excellent customer service…When you're looking for Pennsylvania banks, whether you live outside Harrisburg, in Monroeville, or close to Erie, you'll be sure to find a [RBS Citizens] branch nearby."  *See* Citizens Bank – "Your Local Pennsylvania Bank," *available at* https://www.citizensbank.com/banking/pennsylvania.aspx (last visited 12-8-2014).

      48.    In addition, RBS and its affiliates were obligors on floating rate securities on which they paid interest to the Prudential Funds tied to USD Libor.  *See* Pru. Compl. ¶ 17, Exs. A-D.  RBS Securities Inc. ("RBSS"), the broker-dealer subsidiary of RBS, does not challenge jurisdiction in New Jersey.  The Prudential Funds allege that RBS and its affiliates, directly and through RBSS, sent to the Prudential Funds and their investment managers in New Jersey prospectuses and other offering documents describing those floating rate securities with false

information about USD Libor.  *Id*. ¶¶ 14-17, 26.  The Prudential Funds allege that they and their investment managers made investment decisions in New Jersey to purchase those floating rate securities.

49.     RBS also marketed interest rate swaps to the Prudential Funds and their investment managers in New Jersey on which RBS was the counterparty that made floating rate payments tied to USD Libor.  *Id*. ¶ 17, Ex. G.  The Prudential Funds allege that they and their investment managers made investment decisions in New Jersey to purchase those floating rate securities and to enter into those interest rate swaps.  *Id*. ¶¶ 14-17, 26.

**I.     RBC**

50.     Royal Bank of Canada ("RBC") is a defendant in *Prudential* and *Philadelphia*. RBC challenges jurisdiction in New Jersey.  RBC also challenges jurisdiction in Pennsylvania, to the extent it is not sued for breach of contract where it is a swap counterparty or for other claims directly associated with the swap transactions at issue.  RBC is a global banking company.

51.     RBC regularly transacts business in and has substantial contacts with New Jersey and Pennsylvania.  For instance, RBC operates offices in Princeton and Florham Park, New Jersey, and in both Philadelphia and Scranton, Pennsylvania under the RBC Capital Markets brand.  *See* RBC Capital Markets Office Locator, *available at* https://www.rbccm.com/about/cid-155865.html (last visited 12-8-2014).   Under its RBC Wealth Management brand name, RBC also operates offices throughout the United States, including 7 offices in New Jersey (in Red Bank, Parsippany, Florham Park, Princeton, Wall Township, Mount Laurel and Paramus) and 12 offices in Pennsylvania (in York, Pittsburgh, Lancaster, Wayne, Philadelphia, Chadds Ford, Monroeville, Lemoyne, Sewickley, and Conshohocken).  *See* RBC Wealth Management Office Locator, *available at* https://www.rbcwmfa.com/locator/ (last visited 12-8-2014).   In exchange for the State of New Jersey's agreement to provide RBC annual subsidies of $7.9 million in tax

15

credits through 2024, RBC agreed in May, 2014 to relocate 900 jobs to New Jersey, with a

median salary of $126,500.  *See* JP Morgan, RBC putting 4,500 workers in Jersey City, *available*

*at* http://www.capitalnewyork.com/article/real-estate/2014/05/8545547/jpmorgan-rbc-putting-

4500-workers-jersey-city (last visited 12-8-2014).

52.     The challenge of RBC to jurisdiction in Pennsylvania also fails because those

interest rate swaps were documented under the ISDA Master Agreement dated as of December 6,

2007 between RBC and Philadelphia.  *See* Philadelphia Compl. ¶ 20, Exs A-C.  In part 11(b) of

the schedule to that Agreement, RBC submits to the fullest extent permitted by applicable law to

the non-exclusive jurisdiction of the courts of the Commonwealth of Pennsylvania, in

Philadelphia, and the United States District Court for the Eastern District of Pennsylvania, in

Philadelphia.  *Id.* Ex. C.

**J.      UBS**

53.     UBS AG is a defendant in the *Philadelphia* action, and challenges jurisdiction in

Pennsylvania.  UBS AG is a global financial institution.

54.     UBS AG regularly transacts business in and has substantial contacts with

Pennsylvania, including through its subsidiary UBS Financial Services Inc.  This subsidiary

maintains multiple offices in Pennsylvania, including in Conshohocken, Philadelphia, Newtown,

Pittsburgh, Erie, and Canonsburg.  *See* Find a Branch, available at

http://www.ubs.com/us/en.html  (last visited 12-8-2014).


Dated: December 8, 2014
       New York, New York

_____
Daniel L. Brockett


16