**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262<br>ECF Case |
| THIS DOCUMENT RELATES TO:<br>Case No. 1:13-cv-7005-NRB | Master File No. 1:11-md-2262-NRB |
| BAY AREA TOLL AUTHORITY,<br>                    Plaintiff,<br>        v.<br><br>BANK OF AMERICA CORPORATION,<br>*et al.*,<br>                    Defendants. | No. 14-cv-3094 |
| THE CHARLES SCHWAB CORPORATION, *et al.*,<br>                    Plaintiffs,<br>        v.<br><br>BANK OF AMERICA CORPORATION,<br>*et al.*,<br>                    Defendants. | No. 13-cv-7005 |
| GEORGE MARAGOS, in his official capacity as the COMPTROLLER OF THE COUNTY OF NASSAU, acting on behalf of the COUNTY OF NASSAU,<br>                    Plaintiff,<br>        v.<br><br>BANK OF AMERICA CORPORATION,<br>*et al.*,<br>                    Defendants. | No. 13-cv-2297 |
| NATIONAL CREDIT UNION ADMINISTRATION BOARD,<br>                    Plaintiff,<br>        v.<br><br>CREDIT SUISSE GROUP AG *et al.*,<br>                    Defendants. | No. 13-cv-7394 |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UCL AND GBL CLAIMS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................. 1

ARGUMENT ........................................................................ 1

    I.    Defendants' Reliance On Choice-Of-Law Clauses And The SOL Is
        Unavailing. ............................................................ 1

        A.    Defendants' Choice-of-Law Arguments Are Speculative Or
            Demonstrably Erroneous. ...................................... 1

        B.    Plaintiffs' Claims Are Not "Extraterritorial." ............. 3

    II.   Schwab's UCL Claims Are Not Barred By A So-Called "Securities
        Exception." ........................................................... 4

    III.  Plaintiffs' UCL And GBL Claims Are Well-Pled. ................. 5

        A.    Defendants Largely Reiterate Arguments They Offer,
            Unpersuasively, Against Plaintiffs' Other Claims. ......... 7

CONCLUSION ..................................................................... 9

## TABLE OF AUTHORITIES

**Page**

1208841.1

1208841.1

## PRELIMINARY STATEMENT

Plaintiffs[1] allege that Defendants, acting individually and in concert, perpetrated a widespread scheme for more than three years to artificially suppress U.S.-Dollar LIBOR ("LIBOR"), causing the rates of return on instruments indexed, tied, or otherwise referenced to LIBOR to be lower than they would have been absent Defendants' misconduct.  Defendants' unfair, unlawful, and fraudulent actions give rise to claims by Schwab and NCUA under Section 17200 of the California Business and Professions Code, i.e., the Unfair Competition Law ("UCL"), and by Maragos (on behalf of Nassau County) under Section 349 of New York's General Business Law ("GBL").[2]  In challenging these claims, Defendants largely rely on arguments—including as to statutes of limitations ("SOL") and reliance—that are dispensed with in briefs addressing Plaintiffs' other claims.  And the statute-specific arguments Defendants raise with respect to these claims are equally unavailing.  Their motion must therefore be denied.

## ARGUMENT[3]

**I.      Defendants' Reliance On Choice-Of-Law Clauses And The SOL Is Unavailing.**

**A.      Defendants' Choice-of-Law Arguments Are Speculative Or Demonstrably Erroneous.**

Defendants first contend (at 2) Plaintiffs' UCL claims must be dismissed to the extent they "are contractually governed by another state's law."  To the extent Defendants' argument is

---

[1] For purposes of this brief, "Plaintiffs" refers to Schwab, Bay Area Toll Authority ("BATA"), National Credit Union Administration Board ("NCUA"), and George Maragos, on behalf of Nassau County ("Maragos").

[2] BATA has determined not to further pursue its UCL claims.

[3] As detailed in the omnibus SOL brief being filed today by Plaintiffs and others, Defendants' argument (at 5) that "[a] substantial portion of Plaintiffs' consumer protection claims" are time-barred must fail.  *See* SOL Opp.  While joining those arguments, Maragos notes in particular that New York's "continuing wrong doctrine" applies where, as with Maragos's claims, a new claim arose every time plaintiff received a payment that was decreased by defendants' manipulation.  In *Merine ex rel. Prudential-Bache Utility Fund, Inc. v. Prudential-Bache Utility Fund, Inc.*, 859 F. Supp. 715 (S.D.N.Y. 1994), for example, a mutual fund shareholder alleged that excessive fees had been charged to the fund on a regular basis for years.  The court held that "[u]nder the continuing wrong doctrine, a new cause of action arose each time defendants charged excessive fees," and thus the action was timely as to excessive fees charged for the length of the limitations period, up to the date of filing.  *Id.* at 725; *see also Butler v. Gibbons*, 173 A.D.2d 352, 353 (1st Dep't 1991) ("a new cause of action accrued each time defendant collected the rents and kept them to himself").

directed at Schwab, it is speculative, or at least premature, as Defendants point to no specific choice-of-law clause.  The language of any such clause would, of course, determine whether its scope encompasses UCL claims.

Defendants further assert (at 2-4) that NCUA cannot bring a UCL claim because WesCorp's pay-fixed contracts with certain Defendants contain New York choice-of-law provisions.  But Defendants ignore that many of WesCorp's UCL claims do not rest on its ISDA pay-fix swap contracts, but rather, WesCorp's entire portfolio of investments tied to LIBOR (such as RMBS).  *See* NCUA Compl. ¶ 4.  A choice-of-law provision in an ISDA pay-fix swap contract has no spillover effect on UCL claims for these completely independent investments.

Even with respect to the swap contracts, a procedural choice-of-law provision does not eliminate a substantive claim based on California law.  These provisions state that "*this agreement* will be governed by and construed in accordance with the laws of the state of New York."  *See id.* Ex. 5, at 24.  By its express terms, the provision has no impact on extra-contractual claims.  Under New York law, a contractual choice-of-law provision governs a statutory claim only if that claim "arises out of" the contract itself.  *Harley v. Minerals Techs. Inc.*, No. 13-CV-954 RJS, 2014 WL 5017830, at *4 (S.D.N.Y. Sept. 26, 2014).  A UCL claim, however, exists "independent of any contractual relationship between the parties." *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1471 (2006).[4]  Accordingly, the choice-of-law provision does not encompass WesCorp's UCL claim.[5]

---

[4] Unless otherwise indicated, internal citations have been omitted from this brief and all emphasis has been added.

[5] Defendants' reliance on *Enterprise Bank & Trust v. Barney Ashner Homes, Inc.*, 300 P.3d 115 (Kan. Ct. App. 2013), is misplaced because Kansas law does not control the interpretation of a contract that expressly provides that it shall be "governed by and construed in accordance with" New York law.  *See* NCUA Compl. Ex. 6-18.  Even were Kansas law relevant, *Enterprise Bank* is an unpublished decision that is "not binding precedent" and "not favored for citation."  Kan. Sup. Ct. Rule 7.04(G)(2)(B)(i)-(ii).  The better interpretation of Kansas law is contained in *Ritchie Enterprises v. Honeywell Bull, Inc.*, which held that the "express and unambiguous wording of the parties' choice of law provision reveals only an agreement as to what law would govern their contract."  730 F. Supp. 1041, 1046 (D. Kan. 1990).  To the extent *Enterprise Bank* is reliable authority, it is inapposite.  That case dealt only with

### B.    Plaintiffs' Claims Are Not "Extraterritorial."

Defendants erroneously contend Plaintiffs' claims are impermissibly extraterritorial.  As an initial matter, Defendants incorrectly contend (at 4) NCUA "attempts to assert UCL claims on behalf of credit unions in Kansas, Texas, Illinois, and Connecticut."  Consumer Br. 4.  In fact, NCUA asserts a UCL claim on behalf of WesCorp, a California resident.  NCUA Compl. ¶ 7.

Defendants also (at 4) mischaracterize the claims of certain non-resident Schwab plaintiffs as "alleging injuries and conduct that occurred outside of California."  But Defendants assume, incorrectly and without supporting authority, that claims by Schwab plaintiffs residing in Arizona, Nevada, and Massachusetts are based on neither injuries nor conduct occurring in California.  To the contrary, the UCL applies because (1) all of those plaintiffs' transactions in LIBOR-based financial instruments were executed by Schwab's trading desk in San Francisco (Schwab Compl. ¶ 21); and (2) in purchasing those instruments in California, Schwab relied on misstatements or omissions by Defendants or their agents regarding LIBOR.  The UCL "may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California."  *Nw. Mortg., Inc. v. Super. Ct.*, 85 Cal. Rptr. 2d 18, 25 (Cal. Ct. App. 1999).  Non-residents' ability to seek redress under the UCL in such instances flows from the principle that "the presumption against extraterritoriality is one against an intent to encompass conduct occurring in a foreign jurisdiction in the prohibitions and remedies of a domestic statute."  *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 968 P.2d 539, 554 n.20 (Cal. 1999).  Defendants' dissemination of false or misleading statements to Schwab in California, which purchased in

---

*tort* claims, and courts have consistently distinguished between tort claims and statutory claims brought under the UCL.  *See Bank of the West v. Superior Court*, 833 P.2d 545, 551 (Cal. 1992).  Finally, should this Court decide that California law governs the scope of the choice-of-law provisions in the swap contracts, courts in California have held that such a determination is inappropriate at the motion-to-dismiss stage.  *See Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 930 (N.D. Cal. 2013).

California hundreds of billions of dollars in LIBOR-based financial instruments in reliance on those misstatements or omissions (Schwab Compl. ¶¶ 21, 268-300, 328-31) constitutes "conduct" occurring in California.

That is particularly so because California recognizes that "the place of the wrong is the state where the last event necessary to make the actor liable occurred."  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 07-01827, 2013 U.S. Dist. LEXIS 173319, at *174 (N.D. Cal. Dec. 3, 2013).  Reliance by Schwab's personnel in San Francisco was the "last event" necessary to trigger liability, and thus constituted a critical link between California and the claims of non-resident Schwab entities.  All of the Schwab Plaintiffs can therefore assert UCL claims.  *See Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011) ("Certainly the UCL reaches any unlawful business act or practice committed in California.").

## II.   Schwab's UCL Claims Are Not Barred By A So-Called "Securities Exception."

Defendants assert (at 13) that Schwab's UCL claims are barred because they are "based on securities transactions."  As an initial matter, even the illusory securities "exception" Defendants read into the statute could not bar Schwab's claims in their entirety, as they arise in part from transactions in commercial paper and certificates of deposit ("CDs"), which were not securities.  Schwab Compl. ¶ 269 (stating Schwab purchased, *inter alia*, commercial paper, i.e., "an unsecured promissory obligation with a fixed maturity typically of up to nine months," and CDs); *Marine Bank v. Weaver*, 455 U.S. 551, 558-59 (1982) ("The definition of 'security' in the [Exchange] Act provides that an instrument which seems to fall within the broad sweep of the Act is not to be considered a security if the context otherwise requires.  It is unnecessary to subject issuers of bank certificates of deposit to liability under the antifraud provisions of the federal securities laws since the holders of bank certificates of deposit are abundantly protected

under the federal banking laws."); *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651
F.3d 329, 339 n.4 (2d Cir. 2011).[6]

Defendants' argument fails even to the extent Schwab's UCL claims are based on
securities transactions.  The UCL "contains no language supporting an exclusion for securities,
and under the plain language of the UCL, we cannot create such an exclusion."  *Roskind v.
Morgan Stanley Dean Witter & Co.*, 95 Cal. Rptr. 2d 258, 265 n.8 (Cal. Ct. App. 2000).  Indeed,
the California Court of Appeals has emphasized, in addressing this issue, that "we are bound (as
would be the Ninth Circuit, on this issue of state law) by our own Supreme Court's broad
interpretation of California's UCL."  *Id.* (citing *Auto Equity Sales, Inc. v. Super. Ct.*, 369 P.2d
937, 939-40 (Cal. 1962)).[7]

## III.    Plaintiffs' UCL And GBL Claims Are Well-Pled.

Defendants further argue (at 14-16) that Plaintiffs fail to plausibly allege that Defendants'
conduct was "consumer-oriented" within the purview of the UCL or the GBL.  But neither
statute, contrary to Defendants' contention, denies recovery to investment managers or funds
(Schwab) or other business entities, or to a municipality (Nassau, on whose behalf Maragos
sues).  Even a "sophisticated" plaintiff can understandably be deceived by a widespread,
conspiratorial scheme involving some of the largest and most powerful financial institutions in
the world.

---

[6] *See also Zeller v. Bogue Elec. Mfg. Corp.*, 476 F.2d 795, 799-800 (2d Cir. 1973) (Friendly, C.J.) (stating Rule 10b-5 does not encompass notes that "fit[] the general notion of 'commercial paper'" defined by the Securities and Exchange Commission ("SEC") as "prime quality negotiable commercial paper . . . used to facilitate well recognized types of current operational business requirements and of a type eligible for discounting by Federal Reserve banks") (quoting SEC Release 4412 (Sept. 20, 1961))

[7] Defendants' reliance on *Bowen v. Ziasun Technologies, Inc.*, 11 Cal. Rptr. 3d 522 (Cal. Ct. App. 2004), is unavailing.  *Bowen* was wrongly decided, the court there failed to accord the UCL the appropriately broad reading and effect recognized by the California Supreme Court.  *See, e.g., Overstock.com, Inc. v. Gradient Analytics, Inc.*, 61 Cal. Rptr. 3d 29, 50 n.20 (Cal. Ct. App. 2007) (distinguishing *Bowen* on its facts and noting that the California Attorney General "filed an amicus curiae brief on this issue arguing, among other points, that *Bowen* was wrongly decided").

Further, Defendants' essentially *ipse dixit* assertion (at 15-16) that Plaintiffs cannot plausibly allege that Defendants' suppression of LIBOR constitutes "consumer-oriented" conduct simply ignores Plaintiffs' allegations and common sense.  Plaintiffs allege that Defendants aimed to, and did, cause LIBOR—"the primary benchmark for short term interest rates globally"—to be artificially suppressed on a daily basis for more than three years, including during a period that saw the most disruptive market dislocation since the Great Depression.  As a result of Defendants' misconduct, Plaintiffs and innumerable others were deprived of their rightful payments in connection with LIBOR-based financial instruments. It is difficult to imagine conduct more oriented to consumers at large.  *See, e.g.*, *Int'l Union of Operating Eng'rs, Stationary Eng'rs Local 39 Pension Trust Fund v. Bank of N.Y. Mellon*, No. C 11-03620 WHA, 2012 U.S. Dist. LEXIS 18281, at *10-13 (N.D. Cal. Feb. 14, 2012) (upholding UCL claim under statute's "unfairness" prong, asserted by pension fund on behalf of itself and alleged class of entities alleging that they were damaged by the bank's alleged practices in connection with foreign-exchange transactions).[8]

As with California's UCL, the consumer-oriented element of GBL §349 has been liberally construed.  It is not limited to small claims.  *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 52 (2d Cir. 1992).  Courts have found consumer-oriented activity "where plaintiffs plead repeated acts of deception directed at a broad group of individuals."  *New York v. Feldman*,

---

[8] Defendants argue (at UCL Br. 14) that the UCL claim must be dismissed because NCUA does not allege "consumer-oriented" conduct, citing *Rosenbluth International, Inc. v. Superior Court of Los Angeles County*, 101 Cal. App. 4th 1073, 1078 (Cal Ct. App. 2002), as well as a few cases that rely on *Rosenbluth's* holding.  That authority has been abrogated by statute.  *Rosenbluth* interpreted a *prior* version of the UCL, and held that "sophisticated corporations" did not have third-party standing to bring suit under the UCL on behalf of "the general public."  The UCL was amended in 2004 to eliminate all third-party standing.  Accordingly, *Rosenbluth*, and the cases that cite it, are no longer governing law.  *See* Cal. Bus. & Prof. Code § 17204 (West 2004) (providing that a plaintiff that has  "suffered injury in fact and has lost money or property as a result of the unfair competition" has standing under the UCL).  Even if a "consumer-oriented" requirement still exists under the UCL (which it does not), NCUA's claim on behalf of WesCorp would satisfy it.  Federally chartered credit unions are "cooperative associations organized for the purpose of promoting thrift among [their] members and creating a source of credit for provident or productive purposes."  *625 3rd St. Associates, L.P. v. Alliant Credit Union*, 633 F. Supp. 2d 1040, 1047 (N.D. Cal. 2009) (quotation marks omitted);

210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002).  The same applied to a "company-wide statement" that certain liens were valid and payable (*Wurtz v. Rawlings Co., LLC*, 2014 U.S. Dist. Lexis 141869, No 12-CV-01182 (E.D.N.Y. Oct. 3, 2014)), recurring solicitations directed at a company's customer base (*Delgado v. Ocwen Loan Servicing, LLC*, 2014 U.S. Dist. LEXIS 135758, 13-CV-4427 (E.D.N.Y. Sept. 23, 2014)), and a scheme directed at applicants for loan modifications (*Harte v. Ocwen Fin. Corp.*, 2014 U.S. Dist. Lexis 132611, 13-CV-5410 (E.D.N.Y. Sept. 19, 2014)).[9]

### A.    Defendants Largely Reiterate Arguments They Offer, Unpersuasively, Against Plaintiffs' Other Claims.

The remainder of Defendants' brief essentially reprises unavailing arguments they offer against other claims by plaintiffs in this MDL (including Schwab and NCUA).  Plaintiffs therefore refer the Court to the relevant discussions in those briefs, which Plaintiffs incorporate here:

- *Compare* Consumer Br. 17 (asserting that Plaintiffs' allegations are not sufficiently particularized) *with* Fraud Opp. § I.A. & B.);

- *Compare* Consumer Br. 19-20 (asserting that Schwab fails to allege reliance) *with* Fraud Opp. § I.D.);

---

[9] The decisions on which Defendants rely are inapposite.  In *Linear Technology Corp. v. Applied Materials, Inc.*, 61 Cal. Rptr. 3d 221 (Cal. Ct. App. 2007), for example, the claim was "based on contracts not involving either the public in general or individual consumers who are parties to the contracts," but rather a corporate entity purporting to sue for harm they suffered.  In *Dollar Tree Stores Inc. v. Toyama Partners LLC*, 875 F. Supp. 2d 1058 (N.D. Cal. 2012), where the dispute arose from an agreement concerning the sale of a shopping center, the court held that a UCL claim did not "implicate the public in general or individual consumers."  *Id.* at 1083.  Similarly, the contract at issue in *Exxonmobil Inter-America, Inc. v. Advanced Information Engineering Services, Inc.*, 328 F. Supp. 2d 443 (S.D.N.Y. 2004), concerned the purchase of a vehicle location system to trace Exxonmobil's trucks in 29 Latin American countries.  The installation of such a unique system was considered to be a "private contract dispute, unique to the parties," *Id.* at 447, because it "called for a customized installation and implementation plan for the AVL system."  Therefore, it was considered a "private transaction [that] does not have ramifications for the public at large."  *Id.* at 449.  Those facts, as in the other decisions Defendants cite, are far removed from the allegations here.

- *Compare* Consumer Br. 21-24 (arguing that Plaintiffs fail to allege proximate causation) *with* Fraud Opp. § I.D.;

- *Compare* Consumer Br. 24 (arguing that Plaintiffs cannot state UCL claims against non-counterparty Defendants) *with* Prior Rulings Opp.;

- *Compare* Consumer Br. 24-25 (contending Schwab fails to allege aiding and abetting or conspiracy) *with* Fraud Opp. § II.

Defendants also mistakenly claim that a misrepresentation must be material to a plaintiff's decision to enter into a contract under GBL §349.  To the contrary, the Maragos amended complaint does not claim fraud in the inducement of the swap contracts which Nassau County (through NIFA) entered in 2004, nor does it allege that defendants' manipulation of LIBOR started as early as 2004.  There is no requirement that the defendants' manipulation be material to plaintiff's decision to enter into the swap transactions.

"[A] plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29, (2000).  In that case, plaintiffs took out a homeowners' loan from defendant, on the representation that they could repay it at any time with no prepayment charge.  When they later sought to repay the loan, Chemical charged a $275 "attorney's fee" to return their collateral. The Appellate Division dismissed their GBL §349 claim for failure to show that the $ 275 attorney's fee "had any effect on plaintiffs' decision to borrow from defendant in the first place." The Court of Appeals found that the Appellate Division applied an incorrect standard: "[P]laintiffs allege that defendant's material deception caused them to suffer a $ 275 loss. ... Plaintiffs need not additionally allege that they would not otherwise have entered into the

transaction. Nothing more is required." *Id*. at 30.  Similarly, plaintiff in this action has alleged that defendants' material deception caused Nassau County to suffer a $7,245,000 loss, which satisfies the materiality requirement.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss Schwab's and NCUA's UCL claims and Maragos's GBL claim should be denied.

Dated:  December 8, 2014                    Respectfully submitted,


                                            LIEFF, CABRASER, HEIMANN &
                                            BERNSTEIN, LLP

                                            By:

                                            _____
                                            Steven E. Fineman
                                            Michael J. Miarmi
                                            LIEFF, CABRASER, HEIMANN &
                                            BERNSTEIN, LLP
                                            250 Hudson Street, 8th Floor
                                            New York, NY 10013-1413
                                            Tel.:  (212) 355-9500
                                            Fax:  (212) 355-9592
                                            E-mail:   sfineman@lchb.com
                                                         mmiarmi@lchb.com


                                            Richard M. Heimann
                                            Eric B. Fastiff
                                            Brendan P. Glackin
                                            Marc A. Pilotin
                                            LIEFF, CABRASER, HEIMANN &
                                            BERNSTEIN, LLP
                                            275 Battery Street, 29th Floor
                                            San Francisco, CA 94111-3339
                                            Tel.:  (415) 956-1000
                                            Fax:  (415) 956-1008
                                            E-mail:  rheimann@lchb.com
                                                        efastiff@lchb.com
                                                        bglackin@lchb.com
                                                        mpilotin@lchb.com

                                            *Attorneys for Schwab and BATA*

                                            *** Filed on behalf of Schwab, BATA,
                                            Maragos, and NCUA*