UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re LIBOR-Based Financial Instruments Antitrust Litigation | ) ) ) MDL No. 2262 |
| | ) ECF Case |
| This Document Relates To: | ) Master File No. 1:11-md-02262-NRB |
| | ) |
| The Federal Home Loan Mortgage Corporation, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:13-cv-03952-NRB |
| | ) |
| Bank of America Corporation, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DECLARATION OF LISA MACVITTIE IN SUPPORT OF THE FEDERAL HOME LOAN MORTGAGE CORPORATION'S OPPOSITION TO CERTAIN DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

I, Lisa A. MacVittie, pursuant to 28 U.S.C. § 1746, under the penalty of perjury, hereby declare as follows:

1.     I am an Associate General Counsel with The Federal Home Loan Mortgage Corporation ("Freddie Mac"), the Plaintiff in the above-captioned action. I make this Declaration based upon my personal knowledge, inquiries within Freddie Mac, and the review of records maintained in the regular course of business.

2.     Freddie Mac has long-standing relationships with many of the Defendants and/or their affiliates or subsidiaries in numerous contexts. In entering into transactions with these Defendants, Freddie Mac relied upon their reputations, integrity, and the history of their relationships and course of dealing with Freddie Mac. The Defendants' transactions with Freddie Mac were as follows:

## Bloomberg Messages

3.      Freddie Mac subscribed to the Bloomberg Professional service ("Bloomberg"),
which provided, among other things, market data, news, financial analysis, and a method of
communicating with other subscribers.  Numerous banks and financial institutions, including
certain Defendants, subscribed to Bloomberg.  Subscribers received a unique message address,
*e.g.*, Name@bloomberg.net.  Bloomberg subscribers could also "chat" with each other via instant
messages sent through Bloomberg.

4.      It was common for Bloomberg subscribers, including subscriber Defendants, to
send electronic messages to other subscribers, including Freddie Mac in Virginia.  As set forth
below, Exhibits 1-4 to this Declaration are true and correct copies of Bloomberg messages that
were sent to various Freddie Mac employees in Virginia, which were collected at my direction.
Throughout the conspiracy period, Freddie Mac's counterparties to master swap agreements
and/or their affiliates or subsidiaries regularly contacted Freddie Mac in Virginia by telephone,
electronic messages, and "chats" to solicit interest-rate derivative transactions.

5.      Attached as **Exhibit 1** is a true and correct copy of an electronic message sent on
May 13, 2008 to eight employees of Freddie Mac in Virginia (as well as several other financial
institutions) by or on behalf of Credit Suisse Securities.  In that message, the author defended
"libor" and claimed that British Bankers Association had no incentive to depress Libor.

6.      Attached as **Exhibit 2** is a true and correct copy of an electronic message sent on
May 16, 2008 to five employees of Freddie Mac in Virginia (as well as several other financial
institutions) by or on behalf of JPMorgan Securities.  That message also included a research note
and an invitation for Freddie Mac to join a conference call to discuss the note.

2

7.      The research note attached to the message consists of nine pages of focused analysis supporting the conclusion that "the Libor fixing process is not broken; BBA Libor broadly reflects the borrowing costs of top tier large banks.  Differences between Libor and other indices can largely be explained by the composition of the Libor panel.  The main limitations of Libor are due more to lack of liquidity in the market rather than any bias in the fixing process." The research note also includes an econometric analysis that purported to explain the spread between USD bbaLIBOR and OIS rates as a function of market forces and not collusion or fraud.

8.      Attached as **Exhibit 3** is a true and correct copy of an electronic message sent on May 29, 2008 to ten employees of Freddie Mac in Virginia (as well as several other financial institutions, including Defendants Bank of America, Société Générale, Barclays, Citigroup, and JPMorgan) by or on behalf of Deutsche Bank Securities.  That message states that a *Wall Street Journal* article published earlier that day that "purport[ed] to estimate the mispricing of the LIBOR rate submissions" had "limited credibility."

9.      Attached as **Exhibit 4** is a true and correct copy of an electronic message sent on May 29, 2008 to five employees of Freddie Mac in Virginia by or on behalf of JPMorgan Securities.  That message also addresses the *Wall Street Journal* article published on that same date regarding bbaLIBOR, and explains the author's reasons for concluding that the article is "deeply flawed," including criticisms of the comparisons that the *Wall Street Journal* made to other indexes.

10.     Between 2007 and 2009, at least the following Defendants and/or their affiliates, subsidiaries, or internal groups collectively sent hundreds of thousands of electronic messages to employees of Freddie Mac in Virginia:

3

a.      Bank of America (Banc of America Securities; Merrill Lynch; CMBS
        Strategy; Interest Rate Strategy);

b.      Bank of Tokyo - Mitsubishi UFJ (Mitsubishi UFJ Securities);

c.      Barclays (Barclays Capital);

d.      Citibank (Citigroup Global Markets);

e.      Credit Suisse (Credit Suisse Securities);

f.      Deutsche Bank (Deutsche Bank Securities);

g.      HBOS/Bank of Scotland (HBOS TS);

h.      Lloyds (Lloyds TSB Bank PLC);

i.      JPMorgan (JPMorgan Securities; JPMorgan Credit Research; Global
        Sector Research; JPMorgan Technical Analysis Research);

j.      Rabobank (Central Banks Rabobank);

k.      RBC (RBC Capital Markets);

l.      RBS (Royal Bank of Scotland; RBS Securities Inc.; RBS GBM; RBS
        Greenwich Capital); and

m.      Société Générale (SG Americas Securities).


### Single-Family Seller/Servicers

11.     Certain Defendants entered into contracts with Freddie Mac to sell loans to (as

"Sellers") Freddie Mac in Virginia. These Defendants regularly contact Freddie Mac in Virginia

by telephone, mail and electronic messages to sell loans to Freddie Mac in Virginia, and deliver

mortgage loan data and documents to Freddie Mac in Virginia. These Defendants collectively

sold Freddie Mac nearly three million (3,000,000) loans from 2007 to 2014 with unpaid principal

balances exceeding five hundred billion dollars ($500,000,000,000). The following moving Defendants are or were Sellers to Freddie Mac: Bank of America, N.A., Barclays Bank plc, Citibank, N.A. and JPMorgan Chase Bank, N.A.

12.     Certain Defendants entered into contracts with Freddie Mac to service loans (as "Servicers") on behalf of Freddie Mac. These Defendants regularly contact Freddie Mac in Virginia by telephone, mail and electronic messages in the course of their servicing responsibilities, and deliver servicing data and documentation to Freddie Mac in Virginia. As of December 31, 2009, these Defendants collectively serviced over two million (2,000,000) loans on behalf of Freddie Mac, with unpaid principal balances exceeding four hundred billion dollars ($400,000,000,000). The following moving Defendants are or were Servicers for Freddie Mac: Bank of America, N.A. and JPMorgan Chase Bank, N.A.

## Single-Family Document Custodians

13.     Certain Defendants entered into agreements with Freddie Mac to provide custodial services for original mortgage notes ("Notes") and related documents for loans sold to and serviced for Freddie Mac, including loans that Defendants sold to and serviced for Freddie Mac. As a custodian, these Defendants are responsible for, among other things, reviewing, examining and verifying the Notes in accordance with the terms of the agreement. The following moving Defendants are or were document custodians for Freddie Mac: Bank of America, N.A., Citibank, N.A., and JPMorgan Chase Bank, N.A.

**Warehouse Lenders**

14.     Certain Defendants provide warehouse lines of credit to Freddie Mac's Sellers/Servicers to, among other things, fund mortgage loans. When a Seller or Servicer draws on a line of credit to fund a mortgage loan, a warehouse lender receives an interest in the mortgage note as collateral. Before Freddie Mac will purchase such a mortgage loan from a Seller or Servicer, Freddie Mac requires the warehouse lenders to enter into agreements with Freddie Mac, which the warehouse lenders deliver to Freddie Mac in Virginia on an ongoing basis as new mortgage loans are sold to Freddie Mac. The following moving Defendants have entered into such agreements with Freddie Mac: Bank of America, N.A., Barclays Bank plc, Citibank, N.A., JPMorgan Chase Bank, N.A., and Royal Bank of Scotland.

**Financing Secured by MSRs or MSR Income Stream**

15.     Certain Defendants also provide financing to Freddie Mac's Seller/Servicers, which is secured by the Servicers' Mortgage Servicing Rights ("MSRs") or income streams related to their MSRs. Freddie Mac requires its Seller/Servicers and their lenders to enter into an agreement with Freddie Mac prior to entering into any such financing arrangement. The following Defendants entered into such acknowledgment agreements with Freddie Mac in Virginia: Bank of America, N.A., Barclays Bank plc, Citibank, N.A., Credit Suisse Group AG and JPMorgan Chase Bank, N.A.

**REMIC Securities**

16.     Certain Defendants entered into master dealer agreements with Freddie Mac, under which they, as dealers, provided services to Freddie Mac in Virginia in connection with

6

the development, structuring, issuance and/or sale of REMIC securities.  The following

Defendants are or were dealers of REMIC securities issued by Freddie Mac in Virginia:

Barclays Bank plc, Deutsche Bank AG, JPMorgan Chase Bank, N.A., and Société Générale.


I declare under penalty of perjury that the foregoing is true and correct.  Executed this 8th

day of December, 2014 at McLean, Virginia.


Lisa A. MacVittie