**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262 |
| | ECF Case |
| | Master File No. 1:11-md-2262-NRB |
| | ORAL ARGUMENT REQUESTED |

| | |
|---|---|
| THIS DOCUMENT RELATES TO: | |
| BAY AREA TOLL AUTHORITY,<br>            Plaintiff,<br>            v.<br>BANK OF AMERICA CORPORATION, et al.,<br>            Defendants. | No. 14-cv-3094 |
| CEMA JOINT VENTURE,<br>            Plaintiff,<br>            v.<br>CHARTER ONE BANK, N.A., et al.<br>            Defendants. | No. 13-cv-5511 |
| THE CHARLES SCHWAB CORPORATION, et al.,<br>            Plaintiffs,<br>            v.<br>BANK OF AMERICA CORPORATION, et al.,<br>            Defendants. | No. 13-cv-7005 |
| CITY OF HOUSTON,<br>            Plaintiff,<br>            v.<br>BANK OF AMERICA CORPORATION, et al.,<br>            Defendants. | No. 13-cv-05616 |
| CITY OF PHILADELPHIA, et al.,<br>            Plaintiffs,<br>            v.<br>BANK OF AMERICA CORPORATION, et al.,<br>            Defendants. | No. 13-cv-06020 |

| | |
|---|---|
| CITY OF RICHMOND, et al.,<br>Plaintiffs,<br>v.<br>BANK OF AMERICA CORPORATION, et al.,<br>Defendants. | No. 13-cv-00627 |
| CITY OF RIVERSIDE, et al.,<br>Plaintiffs,<br>v.<br>BANK OF AMERICA CORPORATION, et al.,<br>Defendants. | No. 13-cv-00597 |
| COUNTY OF MENDOCINO,<br>Plaintiff,<br>v.<br>BANK OF AMERICA CORPORATION, et al.,<br>Defendants. | No. 13-cv-08644 |
| COUNTY OF SACRAMENTO,<br>Plaintiff,<br>v.<br>BANK OF AMERICA CORPORATION, et al.,<br>Defendants. | No. 13-cv-05569 |
| COUNTY OF SAN DIEGO,<br>Plaintiff,<br>v.<br>BANK OF AMERICA CORPORATION, et al.,<br>Defendants. | No. 13-cv-00667 |
| COUNTY OF SAN MATEO, et al.,<br>Plaintiffs,<br>v.<br>BANK OF AMERICA CORPORATION, et al.,<br>Defendants. | No. 13-cv-00625 |
| COUNTY OF SONOMA, et al.,<br>Plaintiffs,<br>v.<br>BANK OF AMERICA CORPORATION, et al.,<br>Defendants. | No. 13-cv-05187 |

| | |
|---|---|
| DARBY FINANCIAL PRODUCTS, et al.,<br>　　　　　　Plaintiffs,<br>　　　v.<br>BARCLAYS BANK PLC, et al.,<br>　　　　　　Defendants. | No. 13-cv-08799 |
| EAST BAY MUNICIPAL UTILITY DISTRICT,<br>　　　　　　Plaintiff,<br>　　　v.<br>BANK OF AMERICA CORPORATION, et al.,<br>　　　　　　Defendants. | No. 13-cv-00626 |
| FEDERAL DEPOSIT INSURANCE CORPORATION<br>AS RECEIVER FOR AMCORE BANK, N.A., et al.,<br>　　　　　　Plaintiffs,<br>　　　v.<br>BANK OF AMERICA CORPORATION, et al.,<br>　　　　　　Defendants. | No. 14-cv-01757 |
| THE FEDERAL HOME LOAN MORTGAGE<br>CORPORATION,<br>　　　　　　Plaintiff,<br>　　　v.<br>BANK OF AMERICA CORPORATION, et al.,<br>　　　　　　Defendants. | No. 13-cv-03952 |
| NATIONAL CREDIT UNION ADMINISTRATION<br>BOARD, as Liquidating Agent of U.S. Central Federal<br>Credit Union, Western Corporate Federal Credit Union,<br>Members United Corporate Federal Credit Union,<br>Southwest Corporate Federal Credit Union, and<br>Constitution Corporate Federal Credit Union,<br>　　　　　　Plaintiff,<br>　　　v.<br>CREDIT SUISSE GROUP AG, et al.,<br>　　　　　　Defendants | No. 13-cv-2497 |
| PRUDENTIAL INVESTMENT PORTFOLIOS 2,<br>　　　　　　Plaintiff,<br>　　　v.<br>BANK OF AMERICA CORPORATION, et al.,<br>　　　　　　Defendants. | No. 14-ev-04189 |

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br>Plaintiff,<br>v.<br>BANK OF AMERICA CORPORATION, et al.,<br>Defendants. | No. 13-cv-05186 |
| SALIX CAPITAL US INC.,<br>Plaintiff,<br>v.<br>BANC OF AMERICA SECURITIES LLC, et al.,<br>Defendants. | No. 13-cv-04018 |
| SAN DIEGO ASSOCIATION OF GOVERNMENTS,<br>Plaintiff,<br>v.<br>BANK OF AMERICA CORPORATION, et al.,<br>Defendants. | No. 13-cv-05221 |
| TRIAXX PRIME CDO 2006-1 LTD., et al.,<br>Plaintiffs,<br>v.<br>BANK OF AMERICA CORPORATION, et at.,<br>Defendants. | No. 14-cv-146 |

**<u>DIRECT ACTION PLAINTIFFS' JOINT MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE TORTIOUS INTERFERENCE CLAIMS</u>**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ......................................................................................................................1

I.     PLAINTIFFS HAVE ADEQUATELY ALLEGED DEFENDANTS HAD
REASON TO KNOW THE CONTRACTS EXISTED.......................................................1

     A.     Defendants are Liable Regardless of Whether They Dealt With Plaintiffs ............1

     B.     In the Alternative, at Least Those Defendants That Had a Libor-Related
Contact With a Plaintiff Should Be Fully Liable To That Plaintiff........................4

          1.     In many instances, Defendants gained specific knowledge of a
third-party contract because they played matchmaker................................4

          2.     Due to the integrated nature of MBS, and their direct involvement
in MBS, Defendants gained knowledge of specific MBS holdings
even when they did not sell the certificates to a Plaintiff ..........................5

          3.     Defendants could not reasonably believe they were the only ones
providing Libor instruments to Plaintiffs....................................................6

          4.     To the extent the Court finds sufficient knowledge, it should find
so as to any relevant affiliate as well ........................................................7

II.     PLAINTIFFS HAVE ALLEGED THE REQUISITE STATE OF MIND ........................8

CONCLUSION.....................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adler, Barish, Daniels, Levin & Creskoff v. Epstein*,
   393 A.2d 1175 (Pa. 1978) ..........................................................................................8

*Am. Diamond Exch., Inc. v. Alpert*,
   920 A.2d 357 (Conn. App. Ct. 2007)..........................................................................8

*Baty v. ProTech Ins. Agency*,
   63 S.W.3d 841 (Tex. App. 2001) ................................................................................8

*Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings*,
   2005 WL 782698 (N.D. Ill. Apr. 6, 2005) ..................................................................8

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
   2014 WL 5334053 (S.D.N.Y. Oct. 20, 2014) .............................................................9

*Clark v. Meadwestvaco Corp.*,
   2010 WL 5100699 (E.D. Va. Dec. 9, 2010) ...............................................................8

*Clark v. Napper*,
   2010 WL 5113800 (E.D. Va. Nov. 3, 2010) ...............................................................8

*Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*,
   249 F.3d 204 (4th Cir. 2001) ......................................................................................8

*Don King Productions v. Douglas*,
   742 F. Supp. 741 (S.D.N.Y. 1990) .............................................................................2

*Eldorado Stone, LLC v. Renaissance Stone, Inc.*,
   2005 U.S. Dist. LEXIS, at *14 (S.D. Cal. Aug. 9, 2005) ..........................................7

*Enesco Corp. v. K's Merch. Mart Inc.*,
   2000 WL 1800640 (N.D. Ill. Aug. 29, 2000) .............................................................2

*Exelis, Inc. v. SRC, Inc.*,
   2013 WL 5464706 (N.D.N.Y. Sept. 30, 2013) ...........................................................6

*Glenn v. Point Park College*,
   272 A.2d 895 (Pa. 1971) ............................................................................................8

*Goldhirsh Grp v. Alpert*,
   107 F.3d 105 (2d Cir. 1997)........................................................................................8

*Grimshaw v. Ford Motor Co.*,
   174 Cal. Rptr. 348 (Ct. App. 1981).............................................................................2

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
   501 F. Supp. 848 (S.D.N.Y. 1980) .............................................................................8

*High Falls Brewing Co., LLC v. Boston Beer Corp.*,
  852 F. Supp. 306 (W.D.N.Y. 2011) .................................................................8

*In re Libor-Based Fin. Instr. Antitrust Litig. ("Libor III")*,
  2014 WL 2815645 (S.D.N.Y. June 23, 2014) ................................................9

*Indy Lube Investments, L.L.C. v. Wal-Mart Stores, Inc.*,
  199 F. Supp. 2d 1114 (D. Kan. 2002) ...........................................................2

*Jacobs v. Continuum Health Partners*,
  776 N.Y.S.2d 279 (N.Y. App. Div. 2004) .....................................................8

*Kallok v. Medtronic, Inc.*,
  573 N.W.2d 356 (Minn. 1998) ......................................................................2

*Korea Supply Co. v. Lockheed Martin Corp.*,
  63 P.3d 937 (Cal. 2003) .................................................................................8

*Lightning Lube, Inc. v. Witco Corp.*,
  4 F.3d 1153 (3d Cir. 1993) ....................................................................2, 6, 8

*LinkCo, Inc. v. Fujitsu Ltd.*,
  230 F. Supp. 2d 492 (S.D.N.Y. 2002) ...........................................................3

*M-I LLC v. Stelly,*
  733 F. Supp. 2d 759 (S.D. Tex. 2010) ...........................................................8

*Major Computer, Inc. v. Acad. Life Ins. Co.*,
  929 F.2d 1249 (8th Cir. 1991) ...................................................................1, 2

*Malatesta v. Leichter*,
  542 N.E.2d 768 (Ill. Ct. App. 1989) ..............................................................2

*Membler.com LLC v. Barber*,
  2013 WL 5348546 (E.D.N.Y. Sept. 23, 2013) ...............................................6

*Mercury Skyline Yacht Charters v. Dave Matthews Band, Inc.*,
  2005 WL 3159680 (N.D. Ill. Nov. 22, 2005) .................................................3

*Monex Deposit Co. v. Gilliam*,
  680 F. Supp. 2d 1148 (C.D. Cal. 2010) .........................................................6

*Prudential Ins. Co. of Am. v. J.P. Morgan Securities LLC*,
  No. ESX-L-3085-12 (N.J. Law Div. Jul. 17, 2013).......................................5

*Prudential Real Estate Affiliates v. Long & Foster Real Estate, Inc.*,
  2000 WL 248170 (4th Cir. Mar. 6, 2000) ......................................................1

*Rain Bird Corp. v. Nat'l Pump Co.*,
  2003 U.S. Dist. LEXIS 26792 (N.D. Miss. Dec. 23, 2003)...........................2

*Ramona Manor Convalescent Hosp. v. Care Enters.*,
  225 Cal. Rptr. 120 (Ct. App. 1986)................................................................1

*Revere Transducers, Inc. v. Deere & Co.*,
   595 N.W.2d 751 (Ia. 1999) ..............................................................................2

*Roche Diagnostics GmbH v. Enzo Biochem, Inc.*,
   992 F. Supp. 2d 213 (S.D.N.Y. 2013) ..............................................................3

*Savage v. Pacific Gas & Electric Co.*,
   26 Cal. Rptr. 2d 305 (Ct. App. 1993) ...............................................................8

*Sebastian Int'l, Inc. v. Russolillo*,
   162 F. Supp. 2d 1198 (C.D. Cal. 2001) ............................................................6

*Sedona Corp v. Ladenburg Thalmann & Co.*,
   2009 WL 1492196 (S.D.N.Y. May 27, 2009) ...................................................6

*St. John's Univ., N.Y. v. Bolton*,
   757 F. Supp. 2d 144 (E.D.N.Y. 2010) ...........................................................2, 8

*Suprise v. DeKock*,
   84 S.W.3d 378 (Tex. App. 2002) ......................................................................1

*Syncsort Inc. v. Innovative Routines Int'l*,
   2008 WL 1925304 (D.N.J. Apr. 30, 2008) ........................................................3

*Transcription Communs. Corp. v. John Muir Health*,
   2009 WL 666943 (N.D. Cal. Mar. 13, 2009) ....................................................1

*Trindade v. Reach Media Grp., LLC*,
   2013 WL 3977034 (N.D. Cal. Jul. 31, 2013) .....................................................3

*Trump Taj Mahal Assocs. v. Costruzioni Aeronautiche Giovanni Agusa S.p.A.*,
   761 F. Supp. 1143 (D.N.J. 1991) ......................................................................3

*Velop, Inc. v. Kaplan*,
   693 A.2d 917 (N.J. App. Div. 1997) .................................................................8

*Vendever LLC v. Intermatic Mfg. Ltd.*,
   2011 WL 4346324 (N.D. Tex. Sept. 16, 2011) .................................................8

*Wal-Mart Stores, Inc. v. Sturges*,
   52 S.W.3d 711 (Tex. 2001) ...............................................................................8

*Wells Fargo Bank, N.A. v. Konover*,
   2011 WL 1225986 (D. Conn. Mar. 28, 2011) ...................................................2

*Woods v. Fox Broad. Sub., Inc.*,
   28 Cal. Rptr. 3d 463 (Ct. App. 2005) ...............................................................6

*Zimmerman v. Philip Morris Inc.*,
   78 F. Supp. 2d 1191 (D. Kan. 1999) .................................................................8

**<u>OTHER AUTHORITIES</u>**

14 N.Y. Prac., New York Law of Torts § 3:14 ..............................................................................1

Restatement (Second) of Torts § 766..........................................................................................8

## PRELIMINARY STATEMENT

Defendants' arguments against the "interference" claims (however labeled in the various jurisdictions, and asserted in combinations by various Plaintiffs) boil down to the position that they were entitled to manipulate Libor[1] knowing it would immediately and necessarily interfere with trillions of dollars' worth of contracts and advantages, but escape liability as long as they did not have someone's name in mind when they did so.  That is not the law.

## ARGUMENT

## I.   PLAINTIFFS HAVE ADEQUATELY ALLEGED DEFENDANTS HAD REASON TO KNOW THE CONTRACTS EXISTED

### A.   Defendants are Liable Regardless of Whether They Dealt With Plaintiffs

"It is sufficient merely that defendant knew of . . . facts that would lead a reasonable person to believe a contract existed."  14 N.Y. Prac., New York Law of Torts § 3:14; *see also Prudential Real Estate Affiliates v. Long & Foster Real Estate, Inc.*, 2000 WL 248170, at *5 (4th Cir. Mar. 6, 2000) (evidence of common industry practices sufficient to show burden that defendant industry "player" knew or should have known terms of contract); *Transcription Communs. Corp. v. John Muir Health*, 2009 WL 666943, at *10 (N.D. Cal. Mar. 13, 2009) ("not persuaded knowledge of the injured party's specific identity or name is a prerequisite to recovery"); *Ramona Manor Convalescent Hosp. v. Care Enters.*, 225 Cal. Rptr. 120, 126 (Ct. App. 1986) (same); *Suprise v. DeKock*, 84 S.W.3d 378, 382 (Tex. App. 2002) (actual knowledge not needed; the proper inquiry is whether, in light of all the surrounding facts and circumstances, a reasonable person would believe in their existence).[2]

---

[1]   Certain plaintiffs (Freddie Mac, the FDIC-R, and Principal Financial Group, collectively the "bbaLIBOR™ Plaintiffs") have alleged that bbaLIBOR™ was a trademarked product offered by the British Bankers Association on behalf of the Panel Bank Defendants in the market for interest-rate benchmarks.  These Plaintiffs have agreed to use the term "Libor" herein as shorthand for the product alleged in their respective complaints.

[2]   *See also Major Computer, Inc. v. Acad. Life Ins. Co.*, 929 F.2d 1249, 1252 (8th Cir. 1991) ("It is enough to show that defendant had knowledge of facts which, if followed by reasonable inquiry, would have led to a

Plaintiffs' burden is also lessened by the fact that, where there are many contracts that were interfered with, as here, plaintiffs need only allege that defendants knew of "category of contracts" that they were interfering with.  *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1170 (3d Cir. 1993).  Were the law otherwise, large institutions would be effectively insulated from all liability when their actions tortiously interfered with large numbers of contracts at once, since it would be impracticable for any plaintiff to prove that such a defendant knew exactly how many contracts it had interfered with and what each of those contracts said.  Courts thus deny liability where Defendants claim to have a blind eye as to any one contract.  *See, e.g.*, *Enesco Corp. v. K's Merch. Mart Inc.*, 2000 WL 1800640, at *9 (N.D. Ill. Aug. 29, 2000) (imputing knowledge to a company that was "better off not knowing" about its suppliers' contracts).

Defendants undeniably knew the "category" of contracts, relationships, and advantages at issue here existed.[3]  Defendants have no doubt issued, executed, sold, purchased, underwritten, and brokered untold billions of dollars' worth of the same exact, vanilla "categories" of Libor-

---

complete disclosure of the contractual relations[.]"); *Wells Fargo Bank, N.A. v. Konover*, 2011 WL 1225986, at *24 (D. Conn. Mar. 28, 2011) ("For a tortious interference claim, knowledge of the contract need not have been perfect or precise."); *Rain Bird Corp. v. Nat'l Pump Co.*, 2003 U.S. Dist. LEXIS 26792, at *49 (N.D. Miss. Dec. 23, 2003) ("A finding of willful ignorance is sufficient to infer knowledge of the contract."); *Indy Lube Investments, L.L.C. v. Wal-Mart Stores, Inc.*, 199 F. Supp. 2d 1114, 1124 (D. Kan. 2002) ("[K]nowledge [of a contract] may consist of actual or constructive knowledge."); *Don King Productions v. Douglas*, 742 F. Supp. 741, 775 (S.D.N.Y. 1990) ("a plaintiff is not required to prove that the defendant had perfect or precise knowledge of the terms and conditions of the contracts in issue"); *Revere Transducers, Inc. v. Deere & Co.*, 595 N.W.2d 751, 764 (Ia. 1999) (applying the same rule as *Major Computer*); *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 362 (Minn. 1998) (same); *see also generally, e.g.*, *St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 173 (E.D.N.Y. 2010) ("on a motion to dismiss it is sufficient for Plaintiff to allege facts from which the court might reasonably infer that [defendant] had such knowledge"); *Grimshaw v. Ford Motor Co.*, 174 Cal. Rptr. 348, 368 (Ct. App. 1981) ("Circumstantial evidence is admissible to establish motive, knowledge or state of mind since direct evidence on such facts is rarely available."); *Malatesta v. Leichter*, 542 N.E.2d 768, 780 (Ill. Ct. App. 1989) ("Illinois courts have not required knowledge of the specific details of a plaintiff's prospective business relationships.").

[3]   Indeed, Defendants would have gained knowledge of these relationships through the many communications they engaged in with each other.  *See, e.g.*, Barclays SOF ¶¶ 23-29; Barclays CFTC Order pp. 15-18; UBS SOF, ¶¶ 40-61; UBS CFTC Order at pp. 17-29, 56-57; RBS SOF ¶¶ 43-61, 62-65; RBS CFTC Order pp. 14-15, 21-24, 27-29, 37; Lloyds SOF ¶¶ 28-46; Lloyds CFTC Order pp. 21-22; Rabobank SOF ¶¶ 69-84; Rabobank CFTC Order pp. 20- 24.   (The Barclays, UBS, RBS, and Lloyds SOF and CFTC documents are appended to various complaints including within Exs. 1-10 of CA Public Plaintiffs Compl.)

referencing contracts, loans, notes, and bonds as at issue in these cases.[4]  Further, Plaintiffs here (*e.g.*, municipalities, investment funds, financial institutions) are exactly the types of financial actors Defendants knew would have Libor-referencing portfolios, even in the hypothetical scenario where a given bank had zero financial dealings or attempted dealings with these financial behemoths—which, of course, is quite often not the case, as discussed in Section I.B below.  The complaints' allegations that Defendants knew or should have known that Plaintiffs were entering into these transactions[5] are thus sound.

Most of the cases cited by Defendants merely recite the "knowledge" element generally, or decide issues on summary judgment, where there were not even facts tying the defendants even to the broad "categories" of contracts at issue.[6]  Threadbare allegations of "constructive knowledge" or awareness of a plaintiff's "reputation" or "business model" rejected in such contexts are far afield of the facts pled here.[7]  No other case has dealt with a defendant that was essentially able to turn a dial knowing that doing so would automatically and immediately interfere with trillions of dollars' worth of contracts and relationships, even if that defendant did

---

[4]   Defendants state in one sentence that the FDIC-R failed to "identify instruments tied to LIBOR" held by the 28 Closed Banks for which the FDIC-R did not assert breach of contract claims.  The FDIC-R Complaint, however, is replete with allegations that the Closed Banks entered into not only interest-rate swaps with Defendants, but other types of financial contracts.  *See, e.g.*, FDIC-R Compl. ¶¶ 73, 343, 346, 360.

[5]   *See, e.g.*, Darby Compl. ¶¶ 466, 476; Freddie Mac Compl. ¶¶ 80, 224-79, 304, 306; FDIC-R Compl. ¶¶ 73, 155-271, 344, 346; NCUA Compl. ¶ 296; Phila. Compl. ¶¶ 477, 487; Pru. Compl. ¶¶ 402, 412; Salix Compl. ¶¶ 534-35, 546-47; CA Public Plaintiffs Compl. ¶¶ 610-11; Houston Compl. ¶¶ 497-98; Schwab Compl. ¶¶ 38-52, 268-300, 334-39; BATA Compl. ¶¶ 20-36, 250-53, 328-83.

[6]   *See Mercury Skyline Yacht Charters v. Dave Matthews Band, Inc.*, 2005 WL 3159680, at *7 (N.D. Ill. Nov. 22, 2005) (no allegation that the Dave Matthews Band had any knowledge of watercraft rental contracts); *Trump Taj Mahal Assocs. v. Costruzioni Aeronautiche Giovanni Agusta S.p.A.*, 761 F. Supp. 1143, 1164 (D.N.J. 1991) (no allegation that defendant helicopter manufacturer knew of the employment contracts between the victims of helicopter crash and their employer, or that plaintiffs even used the defendant's helicopters).

[7]   *See Roche Diagnostics GmbH v. Enzo Biochem, Inc.*, 992 F. Supp. 2d 213, 221 (S.D.N.Y. 2013) (purported "constructive knowledge" based solely on fact that copy of agreement was publicly filed); *Trindade v. Reach Media Grp., LLC*, 2013 WL 3977034, at *16 (N.D. Cal. Jul. 31, 2013) (insufficient knowledge allegations were based on "reputation" and complaint was "bare even regarding the existence of the contracts"); *Syncsort Inc. v. Innovative Routines Int'l*, 2008 WL 1925304, at *9 (D.N.J. Apr. 30, 2008) (bare allegation that type of contract was common in the field; also noting that no wrongdoing was alleged on the part of defendant); *LinkCo, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492, 496 (S.D.N.Y. 2002) (rejecting presumption of knowledge of universally "implied" contract term).

not have a name in mind when doing so.  Having consciously decided to wrongfully suppress the "world's most important number,"[8] they should not be heard to defend themselves on the ground they "only" knew they were interfering with the trillion-dollar market *generally*.

**B.**   **In the Alternative, at Least Those Defendants That Had a Libor-Related Contact With a Plaintiff Should Be Fully Liable To That Plaintiff**

Even if the Court determines that more is needed than Defendants' absolute certainty that suppressing Libor would interfere with Libor contracts, most of Plaintiffs' claims survive. Defendants gained specific knowledge where they played third-party "matchmaker," such as when they (or an affiliate) sold a Plaintiff someone else's bond.  Further, where a Defendant had a Libor-related contact with a Plaintiff, it should not be heard to say it naively believed that now-identified Plaintiff had no Libor exposure beyond that from that Defendant itself.

**1.**   **In many instances, Defendants gained specific knowledge of a third-party contract because they played matchmaker**

The Plaintiffs that bring interference claims primarily entered into Libor-linked transactions directly with certain Defendants as swap counterparties, or as a debt securities' issuer, underwriter, broker, dealer, or obligor.  Plaintiffs agree a Defendant cannot interfere with its own relationship.  Plaintiffs do assert, however, that, where the relationship was with one bank affiliate but not the other on a given transaction, interference claims are valid against the "other" affiliate.  Thus, where a bank affiliate was a counterparty, affiliates of that Defendant should be held liable for interfering.  Further, Defendants' arguments say nothing of situations as where a Defendant sold a Plaintiff a Libor-linked note *where a true third party was the underlying obligor*.  In such situations, that Defendant undeniably knew the specific Plaintiff-third-party contract and relationship existed, because Defendants played matchmaker.  *See, e.g.*,

---

[8]  *E.g.*, BBA Press Release, May 21, 2009, *available at* http://www.bbatrent.com/news-releases/bba-libor-the-worlds-most-important-number-now-tweets-daily.

Pru. Compl. Exs. A & B (identifying transactions, including many where Defendants played a role but were not the obligor). This includes, notably, *all* mortgage-backed securities ("MBS") sold by Defendants to Plaintiffs, such as to the Prudential Funds and Freddie Mac,[9] because there the actual relationship post-sale is between the holder of the MBS certificates, and the MBS Trust.

2.   **Due to the integrated nature of MBS, and their direct involvement in MBS, Defendants gained knowledge of specific MBS holdings even when they did not sell the certificates to a Plaintiff**

Defendants notably gained specific knowledge of specific floating-rate MBS held by Plaintiffs, even when Plaintiffs did not purchase the MBS Certificate from them or their affiliates. Defendants' many roles other than seller of the certificate—including issuer, servicer, Trustee, hedging provider, or depositary, *see* Triaxx Am. Compl. ¶¶ 181-182, Appx. C, gave them and their affiliates insight into who held the MBS certificates. *See also id.* Triaxx Exhibit A (attached hereto and listing roles of Defendant and affiliates in MBS purchased by Triaxx). Generally, knowledge should be found across Defendants' enterprise. *See* Section I.B.4 below and Plaintiffs' Fraud Opposition Section I.B. But given the integrated nature of MBS, specifically, such is particularly the case with these investments. *Prudential Ins. Co. of Am. v. J.P. Morgan Securities LLC*, No. ESX-L-3085-12, Order at 44-45, 45 n.28 (N.J. Law Div. Jul. 17, 2013) (attached to Waldman Decl.) (in MBS context, noting "[t]he possibility that eight J.P. Morgan entities engaged in the same general line of business and did not know what each together was doing is so remote that it need not be discussed further").

---

[9] *See, e.g.*, Freddie Mac Compl. ¶ 10, 223 ("Freddie Mac purchased billions of dollars of USD floating-rate MBS from Bank Defendants and others").

### 3.     Defendants could not reasonably believe they were the only ones providing Libor instruments to Plaintiffs

It would have been unreasonable for a Defendant that had a Libor-related contact with a Plaintiff (as swap counterparty, as MBS seller, issuer, seller, servicer, etc.) to presume it was the only bank entering into Libor-referencing contracts and relationships with that Plaintiff.  Indeed, in the course of 20 years and 68 respective contracts with 34 different banks, *every* ISDA Master Agreement associated with a contracting Defendant and Freddie Mac or a Closed Bank contained identical language incorporating Libor as the interest-rate benchmark.  *See* FM Ex. 17-24; FDIC-R Ex. 22-73.  To suggest any one of those banks reasonably thought they were the only one doing so is absurd.[10]

Accordingly, where privity existed at least once, Plaintiffs have even more clearly met their supposed obligation to "plausibly" allege that a particular Defendant had reason to know a particular Plaintiff had a relevant "category of contracts."  *See Lightning Lube*, 4 F.3d at 1170.[11]  Put another way, after contracting once with a Plaintiff on a Libor-referencing instrument, that bank now had a "face" to go along with its knowledge that *all* Libor-referencing instruments were being interfered with.  These Defendants are thus liable to the Plaintiffs with whom they

---

[10]   As discussed in Section I.A, knowledge of the exact details of the contracts and relationships at issue is not required.  Thus, the Court should not hold Plaintiffs to the impossible task of not only showing Defendants knew Plaintiffs had Libor-referencing instruments with third parties, but further showing Defendants knew that contract X was specifically with third-party Y and had Z terms.  Defendants well-knew the type of counterparties that would be involved—including, primarily, other banks like themselves.  They not only knew this because it is obvious, but because the banks' Libor submitters often adjusted rates based on conversations with other banks about their own Libor-referencing portfolios.  As for knowledge of the terms, by definition all that matters is that Defendants knew they referenced Libor.  This all more than suffices to show Defendants had the requisite knowledge.  *See* Section I.A above; *Monex Deposit Co. v. Gilliam*, 680 F. Supp. 2d 1148, 1162-63 (C.D. Cal. 2010) ("[A]s former customers of Monex, the Gilliams clearly knew that Monex had economic relationships with its customers."); *Sebastian Int'l, Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1204 (C.D. Cal. 2001) ("representative list" of a plaintiff's vendors gave defendant notice of all of plaintiff's vendors for purposes of tortious interference).

[11]   *See generally Exelis, Inc. v. SRC, Inc.*, 2013 WL 5464706, at *5 (N.D.N.Y. Sept. 30, 2013) (inference of knowledge reasonable based on working relationship with plaintiff); *Membler.com LLC v. Barber*, 2013 WL 5348546, at *11 (E.D.N.Y. Sept. 23, 2013) (knowledge sufficiently pled via allegations of defendant's role as an intern with the plaintiff); *cf. Sedona Corp v. Ladenburg Thalmann & Co.*, 2009 WL 1492196, at *9 (S.D.N.Y. May 27, 2009) (cited by Defendants; no allegation that stock placement agent knew of *any* of the plaintiff's specific software sales contracts).

contracted, not for their "own" contracts, but on all the *other* contracts and relationships that these Plaintiffs had in the same "category" of Libor-referencing instruments.[12]

### 4.   To the extent the Court finds sufficient knowledge, it should find so as to any relevant affiliate as well

Application of any of the above alternative rulings would again raise the issue of liability across affiliates.  Defendants again try to compartmentalize each entity as to limit liability for banks that split the panel bank role and the contracting role.  This is the same basic principle, based on the same three inapposite cases, that Defendants claim insulates their non-Libor panel affiliates from fraud liability.  As discussed in Plaintiffs' Fraud Opposition Section I.B, such arguments miss the mark, both as to knowledge and responsibility for suppression, particularly at the pleading stage.  Thus, if the Court rules that "knowledge" is only sufficiently alleged where a Plaintiff was in privity with a Defendant at least once, it should make clear that rule should be applied across each bank rather than on an affiliate-by-affiliate basis.[13]

---

[12]   As seen in the above discussion, Plaintiffs are *not* using the existence of privity to hold a specific bank liable for interfering with its own contracts, as Defendants appear to presume.  *See* Tortious Int. Br. at 9 n.12 (citing *Woods v. Fox Broad. Sub., Inc.*, 28 Cal. Rptr. 3d 463 (Ct. App. 2005)).  Rather, they use the existence of privity in underwriter-type situations to show Defendants knew a Plaintiff-third-party relationship had been formed, and as evidence to show Defendants should have known that same Plaintiff held *other* instruments, with other Defendants and even third parties, within the same "category."

[13]   Additionally, Schwab and BATA assert claims in part on transactions with broker-dealer subsidiaries or other affiliates of the Bank Defendants, whom the Bank Defendants "controlled or otherwise directed," or in whose operations Defendants "materially participated."  Schwab Compl. ¶¶ 274-75; *see also id.* ¶¶ 38-52, 277-300, 334-39; BATA Compl. ¶¶ 20-36, 252(a) (swap transaction with Citigroup Financial Products, Inc.), 328-33.  At the very least, the Court can reasonably infer that the Bank Defendants knew of those relationships.  *See Eldorado Stone, LLC v. Renaissance Stone, Inc.*, 2005 U.S. Dist. LEXIS 45237, at *14 (S.D. Cal. Aug. 9, 2005) (plaintiffs' allegations "gave rise to an inference" that defendant knew of the relationships at issue).

The CA Public Plaintiffs also note with regard to their relationships with Merrill Lynch Capital Services (CA Public Plaintiffs Compl. ¶¶ 404-05, 433-34, 440-41, 454-55, 473) and Bear Stearns Inc. (*id.* ¶¶ 428-32, 445-46, 458-61), that Bank of America and JPMorgan would have known of these relationships, respectively, because Bank of America acquired Merrill, *id.* ¶ 405, and JPMorgan acquired Bear Stearns, *id.* ¶ 446; *see also* Declaration of Nanci E. Nishimura In Support of CA Public Plaintiffs and City of Houston ("Nishimura Decl.") ¶¶ 7-8, 11 and Ex. 2, 4; ¶ 37 and Ex. 13 (declaration citations referencing and quoting SEC filings by Bank of America and JPMorgan regarding their acquisitions of Merrill and Bear).  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss . . . a district court may consider . . ., documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint . . . .  Where a document is not incorporated by reference, the court may neverless [sic] consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint.") (internal authorities and other citations omitted).  Thus, from at least the time at which Bank of America first began investigating Merrill and

## II.    PLAINTIFFS HAVE ALLEGED THE REQUISITE STATE OF MIND

Defendants next argue that Plaintiffs have failed to "plausibly allege that the defendant specifically intended to interfere with the relevant contract or business relation."  Tortious Int. Br. at 10.  This is primarily based on the argument that Defendants had one end-goal in mind (to appear financially healthy) rather than another (to specifically harm a particular Plaintiff).  *Id.* at 12-13.  The law rejects this nonsensical defense.  *See, e.g.*, *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003) (refusing to adopt "specific intent" requirement because it would lead to an "absurd and unfair result").

Rather, it is sufficient to allege the defendant knew its misconduct was substantially certain to interfere.  *See* Restatement (Second) of Torts § 766, cmt. (j).[14]  It is also sufficient to allege that a defendant's acts were independently wrongful.  *E.g.*, *Jacobs v. Continuum Health Partners*, 776 N.Y.S.2d 279, 280 (N.Y. App. Div. 2004).  Thus, as the Third Circuit in *Lightning Lube* recognized, even "if there is no desire at all to accomplish the interference and it is brought about only as a necessary consequence of the conduct of the actor engaged in for an entirely different purpose, his knowledge of this makes the interference intentional."  4 F.3d at 1170; *Harper & Row, Publishers, Inc. v. Nation Enters.*, 501 F. Supp. 848, 853 n.12 (S.D.N.Y. 1980) *aff'd*, 723 F.2d 195 (2d Cir. 1983) *rev'd on other grounds*, 471 U.S. 539 (1985) ("Malice—the

---

JPMorgan first began investigating Bear as a target of acquisition until at least the time of acquisition, they would have known of those entities' relationships with Plaintiffs.  Further, to the extent that Bank of America and JPMorgan did not assume the rights and obligations of Merrill and Bear, respectively, under those banks' contracts with Plaintiffs, then they would have remained aware of these third-party entities' relationships with Plaintiffs even after the point of acquisition.

[14]  *See also Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 212-13 (4th Cir. 2001); *St. John's Univ.*, 757 F. Supp. 2d at 173; *Vendever LLC v. Intermatic Mfg. Ltd.*, 2011 WL 4346324, at *6 (N.D. Tex. Sept. 16, 2011); *Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings*, 2005 WL 782698, at *22 (N.D. Ill. Apr. 6, 2005); *Zimmerman v. Philip Morris Inc.*, 78 F. Supp. 2d 1191, 1193 (D. Kan. 1999); *Savage v. Pacific Gas & Electric Co.*, 26 Cal. Rptr. 2d 305, 314 (Ct. App. 1993); *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 775 (S.D. Tex. 2010); *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 860 (Tex. App. 2001); *Velop, Inc. v. Kaplan*, 693 A.2d 917, 926 (N.J. App. Div. 1997); *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 393 A.2d 1175, 1182 n.13 (Pa. 1978); *Glenn v. Point Park College*, 272 A.2d 895, 896 (Pa. 1971).

intent to injure the plaintiff—is not a requirement of the tort.").[15]  Accordingly, even when courts use verbiage like "intent," they actually refer to whether the defendant "use[d] dishonest, unfair, or improper means."  *See Goldhirsh Grp v. Alpert*, 107 F.3d 105, 109 (2d Cir. 1997).[16]

The Court has previously recognized that the purpose of the *specific* intent requirement of the Commodities Exchange Act claim is to separate nefarious conduct from the innocent.  *See In re Libor-Based Fin. Instr. Antitrust Litig. ("Libor III")*, 2014 WL 2815645, at *14 (S.D.N.Y. June 23, 2014) ("Because the conduct alleged has no legitimate purpose, plaintiffs need not demonstrate that defendants acted with bad intent to distinguish the complained of conduct from potentially lawful activity.").  It thus allowed the claims despite similar arguments as made here about what Defendants' end-goal was.  The result here is all the clearer given, as above, interference claims do *not* have a *specific* intent requirement.  And in another Libor case, Judge Scheindlin found a "strong inference" of scienter for a 1934 Act securities fraud case in part based on the banks' "motive"—despite arguments that they were truly just interested in protecting their reputations.  *See Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 2014 WL 5334053, at *3 (S.D.N.Y. Oct. 20, 2014).

Similarly, here, that Defendants may have been more interested in helping themselves than hurting these Plaintiffs does not absolve them of liability.  Because Defendants' suppression of Libor was wrongful even apart from its impact on these specific investments, and because the

---

[15]  *See also High Falls Brewing Co., LLC v. Boston Beer Corp.*, 852 F. Supp. 306, 311 (W.D.N.Y. 2011) ("[D]eliberate or intentional interference may be shown where the defendant is certain, or substantially certain, that his actions will result in a breach of the contract[.]"); *Clark v. Napper*, 2010 WL 5113800, at *5-6 (E.D. Va. Nov. 3, 2010) (burden of "intent" for interference is "eased" where actor "knows that the interference is certain or substantially certain to occur as a result of his action"), *report and recommendation adopted sub nom.*, *Clark v. Meadwestvaco Corp.*, 2010 WL 5100699 (E.D. Va. Dec. 9, 2010); *Korea Supply*, 63 P.3d at 941 ("plaintiff need not plead that the defendant acted with the specific intent to interfere with the plaintiff's business expectancy").

[16]  The authority cited by Defendants makes clear that "malice" is not an element of the tort, in Texas or any other state that follows the Restatement.  *See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001); *see also Am. Diamond Exch., Inc. v. Alpert*, 920 A.2d 357, 363 (Conn. App. Ct. 2007).

9

consequences of such suppression were not just "substantially certain" but immediate and automatic,[17] the "intent" requirement of these torts are met.[18]

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that Defendants' motions to dismiss all "interference" claims be denied.  In the alternative, Plaintiffs respectfully request leave to replead.

Dated:  December 8, 2014

Respectfully submitted,

By:     /s/ *Daniel L. Brockett*
       Daniel L. Brockett

Daniel L. Brockett
Daniel P. Cunningham
Steig D. Olson
Jacob J. Waldman
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York  10010-1601
Tel.:  (212) 849 7000
Fax:  (212) 849-7100
E-mail:  danbrockett@quinnemanuel.com
   danielcunningham@quinnemanuel.com
   steigolson@quinnemanuel.com
   jacobwaldman@quinnemanuel.com

By:     /s/ *Mathieu J. Shapiro*
      Mathieu J. Shapiro

Mathieu J. Shapiro (PA 76266)
OBERMAYER REBMANN MAXWELL &
HIPPEL LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, Pennsylvania 19103
Tel.: (215) 665-3000
Fax: (215) 665-3165
E-mail:  mathieu.shapiro@obermayer.com

---

[17]   No matter how the test is phrased and how many factors are used elsewhere, Tortious Int. Br. at 13, Defendants cannot seriously suggest that a reasonable person would have had trouble predicting that suppressing Libor would interfere with Libor-referencing instruments.

[18]   Defendants also move to dismiss Plaintiffs' aiding and abetting and conspiracy claims associated with the interference claims.  These arguments are addressed in Plaintiffs' Fraud Opposition, Section II and incorporated by reference here.

Michael J. Boni (PA 52983)
Joshua D. Snyder (PA 88657)
John E. Sindoni (PA 91729)
BONI & ZACK LLC
15 St. Asaphs Road
Bala Cynwyd, PA  19004
Tel.: (610) 822-0200
Fax:  (610) 822-0206
E-mail:  mboni@bonizack.com
         jsnyder@bonizack.com
         jsindoni@bonizack.com

*Counsel for Plaintiffs The City of Philadelphia
and The Pennsylvania Intergovernmental
Cooperation Authority*

Jeremy D. Andersen (pro hac vice)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Tel.:  (213) 443-3000
Fax:  (213) 443-3100
E-mail:
jeremyandersen@quinnemanuel.com

*Attorneys for the Darby, Philadelphia,
Prudential, and Salix Plaintiffs*


By:    /s/ *Richard J. Leveridge*
         Richard J. Leveridge

Richard J. Leveridge
James R. Martin
Jennifer D. Hackett
Woody N. Peterson
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC  20006-5403
Tel.: (202) 420-2200
Fax:  (202) 420-2201
E-mail:  leveridger@dicksteinshapiro.com
         martinj@dicksteinshapiro.com
         hackettj@dicksteinshapiro.com
         petersonw@dicksteinshapiro.com

*Attorneys for Plaintiffs The Federal Home Loan
Mortgage Corporation and The Federal
Deposit Insurance Corporation as Receiver*

By:    /s/ *David S. Preminger*
         David S. Preminger

David S. Preminger
KELLER ROHRBACK L.L.P.
1440 Avenue of the Americas
Ninth Floor
New York, NY 10036
Tel.: (646) 380-66908
Fax: (646) 380-6692
E-mail:  dpreminger@kellerrohrback.com

*Counsel for the Triaxx Plaintiffs*

By: ___/s/ *Steven E. Fineman*
Steven E. Fineman
Michael J. Miarmi
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel.:  (212) 355-9500
Fax:  (212) 355-9592
E-mail:   sfineman@lchb.com
                mmiarmi@lchb.com

Richard M. Heimann
Eric B. Fastiff
Brendan P. Glackin
Marc A. Pilotin
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel.:  (415) 956-1000
Fax:  (415) 956-1008
E-mail:  rheimann@lchb.com
                efastiff@lchb.com
                bglackin@lchb.com
                mpilotin@lchb.com

*Attorneys for the Schwab Plaintiffs and Plaintiff*
*Bay Area Toll Authority*

By: ___/s/ *William E. Walker, Jr.*_____
            William E. Walker, Jr.

William E. Walker, Jr. (Ohio Bar No.
0038703)
P.O. Box 192
Massillon, Ohio 44648-0192
Tel.: (330)327-2509
E-mail:   williamwalker@gmx.com

*Attorney for Plaintiff CEMA Joint Venture*

By:   /s/ *Nanci E. Nishimura*
      Nanci E. Nishimura

Nanci E. Nishimura
Joseph W. Cotchett (JC7420)
Nanci E. Nishimura (admitted pro hac vice)
Matthew K. Edling (admitted pro hac vice)
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: 650.697.6000
Fax: 650.697.0577
E-mail:  jcotchett@cpmlegal.com
         nnishimura@cpmlegal.com
         medling@cpmlegal.com


Alexander E. Barnett (AB7292)
COTCHETT, PITRE & McCARTHY, LLP
40 Worth Street, 10th Floor
New York, NY 10013
Tel.: (212) 201-6820
Fax: (646) 219-6678
E-mail:  abarnett@cpmlegal.com

*Attorneys for The Regents of the University of California East Bay Municipal Utility District (EBMUD); San Diego Association of Governments (SANDAG); City of Richmond; Richmond Joint Powers Financing Authority; Successor Agency to the Richmond Community Redevelopment Agency; City of Riverside; Riverside Public Financing Authority; County of Mendocino; County of Sacramento; County of San Diego; County of San Mateo; San Mateo County Joint Powers Financing Authority; County of Sonoma; David E. Sundstrom, in his official capacity as Treasurer of the County of Sonoma.*

By:   /s/ *Nanci E. Nishimura*
      Nanci E. Nishimura

Nanci E. Nishimura
Joseph W. Cotchett (JC7420)
Nanci E. Nishimura (admitted pro hac vice)
Matthew K. Edling (admitted pro hac vice)
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: 650.697.6000
Fax: 650.697.0577
E-mail:  jcotchett@cpmlegal.com
         nnishimura@cpmlegal.com
         medling@cpmlegal.com


Alexander E. Barnett (AB7292)
COTCHETT, PITRE & McCARTHY, LLP
40 Worth Street, 10th Floor
New York, NY 10013
Tel.: 212.201.6820
Fax: 646.219.6678
E-mail:  abarnett@cpmlegal.com

Richard Warren Mithoff
MITHOFF LAW FIRM
One Allen Center
500 Dallas Street
Houston, TX 77002
Tel.: 713.654.1122
Fax.: 713.739.8085
E-mail:  rmithoff@mithofflaw.com

*Attorneys for The City of Houston*

13

By:   /s/ *David C. Frederick*
          David C. Frederick

David C. Frederick (pro hac vice)
Wan J. Kim (pro hac vice)
Andrew C. Shen
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel:  (202) 326-7900
Fax: (202) 326-7999
E-mail:  dfrederick@khhte.com
              wkim@khhte.com
              ashen@khhte.com

*Attorneys for Plaintiff National Credit Union*
*Administration Board as Liquidating Agent for*
*Various Credit Unions*