**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | Master File No. 11-md-2262 (NRB) |
| THIS DOCUMENT RELATES TO: | |
| METZLER INVESTMENT GmbH, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CREDIT SUISSE GROUP AG, et al., <br><br> Defendants. | No. 11 Civ. 2613 |

**JOINT DECLARATION OF DAVID E. KOVEL AND CHRISTOPHER LOVELL IN SUPPORT OF (A) EXCHANGE-BASED PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND (B) EXCHANGE-BASED PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ........................................................................................................ 2

II.     SUMMARY OF CLAIMS AND THE PROCEDURAL HISTORY OF THE
        LITIGATION ............................................................................................................. 4

III.    THE SETTLEMENT NEGOTIATIONS .......................................................... 16

IV.     EXECUTING THE COURT'S PRELIMINARY APPROVAL ORDER RELATING
        TO CLASS NOTICE ................................................................................................ 18

V.      THE PLAN OF DISTRIBUTION ...................................................................... 20

VI.     PLAINTIFFS' COUNSEL'S APPLICATION FOR AN AWARD OF
        ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES ............................. 20

        A.      Plaintiffs' Counsel's Fee Request ......................................................... 21

        B.      Plaintiffs' Counsel's Litigation Expenses............................................ 23

VII.    ADDITIONAL EXHIBITS ................................................................................. 24

VIII.   CONCLUSION..................................................................................................... 24

## TABLE OF DEFINED TERMS

The following defined terms are used in this Joint Declaration:

| Parties | |
|---|---|
| **Term** | **Definition** |
| Barclays | Barclays Bank plc. |
| BOA | Bank of America Corporation and Bank of America, N.A. |
| Citi | Citigroup Inc., Citibank, N.A., and Citigroup Global Markets Inc. |
| Credit Suisse | Credit Suisse AG.  Credit Suisse AG merged with and into UBS AG and ceases to exist. |
| Defendants | The defendants currently named in the Action, Persons formerly named as defendants that have settled the Action, been dismissed from the Action, or are otherwise not currently named in the Action, and any Persons that may be added to the Action in the future as defendants through amended or supplemental pleadings. |
| Deutsche Bank | Deutsche Bank AG, Deutsche Bank Securities Inc., and DB Group Services (UK) Ltd. |
| Exchange-Based Plaintiffs or Plaintiffs | Metzler Asset Management GmbH (f/k/a Metzler Investment GmbH), FTC Futures Fund SICAV, FTC Futures Fund PCC Ltd., Atlantic Trading USA, LLC, 303030 Trading LLC, Gary Francis, and Nathanial Haynes. |
| HSBC | HSBC Bank plc. |
| JPMorgan | JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. |
| Lloyds | Lloyds Bank plc and Bank of Scotland plc, collectively. |
| MUFG | MUFG Bank, Ltd. (f/k/a The Bank of Tokyo-Mitsubishi UFJ, Ltd.). |
| NatWest | NatWest Markets plc (f/k/a The Royal Bank of Scotland plc). |
| Norinchukin | The Norinchukin Bank. |
| Portigon | Portigon AG (f/k/a WestLB) and Westdeutsche Immobilienbank AG (n/k/a Westdeutsche Immobilien Servicing AG), collectively. |
| Rabobank | Coöperatieve Rabobank U.A. (f/k/a/ Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.). |
| RBC | Royal Bank of Canada and RBC Capital Markets, LLC. |
| Settling Defendants | Credit Suisse, Lloyds, NatWest, Portigon, RBC, Rabobank, Norinchukin, MUFG, and UBS. |
| Settling Parties | Settling Defendants and Settlement Class Members. |
| SG | Société Générale. |
| UBS | UBS AG. |

| Settlement Class | |
|---|---|
| **Term** | **Definition** |
| Settlement | Settlement Agreement Between Exchange-Based Plaintiffs and Credit Suisse AG, Lloyds Bank plc, Bank of Scotland plc, NatWest Markets plc, Portigon AG, Westdeutsche Immobilienbank AG, Royal Bank of Canada, RBC Capital Markets, LLC, Coöperatieve Rabobank U.A., The |

| Settlement Class | |
|---|---|
| **Term** | **Definition** |
| | Norinchukin Bank, MUFG Bank, LTD., and UBS AG, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Md. 2262, (Apr. 8, 2024) [ECF No. 4011-1]. |
| Settlement Class | All persons, corporations and other legal entities that transacted in Eurodollar futures and/or options on Eurodollar futures on exchanges, including, without limitation, the Chicago Mercantile Exchange, between January 1, 2003 and May 31, 2011, inclusive; provided that if Exchange-Based Plaintiffs expand the class period in any subsequent amended complaint, motion or settlement, the period in the Settlement Class definition in this Agreement shall be modified so as to include that expanded class period. Excluded from the Settlement Class are: (i) Defendants, their employees, affiliates, parents, subsidiaries, and alleged co- conspirators; (ii) the Releasees; (iii) any Settlement Class Member who files a timely and valid request for exclusion; and (iv) any Persons dismissed from this Action with prejudice. |
| Settlement Class Members | All persons falling within the definition of the Settlement Class. |

| Settlement Terminology | |
|---|---|
| **Term** | **Definition** |
| Claim Form | Proof of Claim and Release for the Exchange-Based Plaintiffs' Settlement with Credit Suisse, Lloyds, NatWest, Portigon, RBC, Rabobank, Norinchukin, MUFG, and UBS, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Md. 2262 (Apr. 11, 2024) [ECF No. 4012-10]. |
| Claims Administrator or Settlement Administrator | A.B. Data, Ltd. |
| Huntington Bank | Escrow Agent for the Settlement. |
| Publication Notice | Publishing the Summary Notice one time in *IBD Weekly* and one time in *The Wall Street Journal* and press release over *PR Newswire* which, in addition to print format, included broadcast and digital websites across the United States. |
| Postcard Notice or Notice | The Postcard Notice of Class Action Settlement, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Md. 2262 (Apr. 11, 2024) [ECF No. 4012-3]. |
| Net Settlement Fund | The Settlement Fund less Court-approved disbursements, including: (i) notice, claims administration, and escrow costs; (ii) any attorneys' fees and/or expenses awarded by the Court; and (iii) all other expenses, costs, Taxes, Tax Expenses, and other charges approved by the Court. |
| Notice Program | The notice protocol detailed in the Declaration of Elaine Pang Regarding Notice Program, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Md. 2262 (Apr. 9, 2024) [ECF No. 4012]. |
| Period 0 | January 1, 2005 through August 8, 2007. |

| Settlement Terminology | |
|---|---|
| **Term** | **Definition** |
| Periods 1 and 2 | August 2007 through April 14, 2009. |
| Period 3 | April 15, 2009 through May 2010. |
| Plaintiffs' Counsel | Kirby McInerney LLP and Lovell Stewart Halebian Jacobson LLP. |
| Plan of Distribution | Plan of Distribution for the Exchange-Based United States Dollar LIBOR Settlement, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Md. 2262 (Apr. 11, 2024) [ECF No. 4012-7]. |
| Preliminary Approval Order | Order (1) Preliminarily Approving Settlement with Defendants Credit Suisse AG, Lloyds Bank plc, Bank of Scotland plc, Natwest Markets plc, Portigon AG, Westdeutsche Immobilienbank AG, Royal Bank of Canada, RBC Capital Markets, LLC, Coöperatieve Rabobank U.A., The Norinchukin Bank, MUFG Bank, Ltd., and UBS AG; (2) Conditionally certifying the Settlement Class; (3) Appointing Settlement Class Counsel; (4) Approving Claims Administrator and Escrow Agent; (5) Approving Notice Program; (6) Preliminarily approving Plan Of Distribution; and (7) scheduling a Fairness Hearing, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Md. 2262 (Apr. 26, 2024) [ECF No. 4028]. |
| Prior Settlements | The separate settlements for which the Court granted Final Approval on September 17, 2020: (i) Barclays Bank plc; (ii) Citigroup Inc., Citibank, N.A., and Citigroup Global Markets Inc.; (iii) Deutsche Bank AG, Deutsche Bank Securities Inc., and DB Group Services (UK) Ltd.; (iv) HSBC Bank plc; (v) JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. and Bank of America Corporation and Bank of America, N.A.; and (vi) Société Générale, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Md. 2262, (Sept. 17, 2020) [ECF No. 3175-80]. |
| Settlement Class Period | January 1, 2003 through May 31, 2011. |
| Settlement Fund | The aggregate cash consideration provided for in the Settlement, which is $3,450,000, plus any interest that may accrue on it. |
| Settlement Website | www.USDLiborEurodollarSettlements.com. |
| Summary Notice | The Summary Notice of Class Action Settlement, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Md. 2262 (Apr. 11, 2024) [ECF No. 4012-4]. |

| Declarations | |
|---|---|
| **Term** | **Definition** |
| Joint Decl. | The Joint Declaration of David E. Kovel and Christopher Lovell in Support of (A) Exchange-Based Plaintiffs' Motion for Final Approval of Class Action Settlement, and (B) Exchange-Based Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses. |
| Ewashko Decl. | The accompanying Declaration of Jack Ewashko on Behalf of A.B. Data, Ltd. Regarding Notice and Claims Administration for Class Action with Settling Defendants. |

| Other Defined Terms | |
|---|---|
| **Term** | **Definition** |
| 2018 Advisory Note | Fed. R. Civ. P. 23(e), Adv. Comm. Notes to 2018 Amendments. |
| Action | The action captioned *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Md. 2262 (S.D.N.Y.). |
| CEA | Commodity Exchange Act. |
| CFTC | United States Commodity Futures Trading Commission. |
| DOJ | United States Department of Justice. |
| Eurodollar Futures | Eurodollar futures contracts and options on Eurodollar futures contracts. |
| FCA | United Kingdom Financial Conduct Authority. |
| LIBOR | London Interbank Offered Rate. |
| Operative Complaint | Fifth Amended Consolidated Class Action Complaint, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Md. 2262 [ECF No. 3510]. |
| SEC | United States Securities and Exchange Commission. |
| Second Circuit | United States Court of Appeals for the Second Circuit. |

Pursuant to 28 U.S.C. §1746, we, David E. Kovel and Christopher Lovell, declare:

1.      We are, respectively, partners of the law firms of Kirby McInerney LLP ("Kirby McInerney") and Lovell Stewart Halebian Jacobson LLP ("Lovell Stewart," and together with Kirby McInerney, "Plaintiffs' Counsel" or "Interim Co-Lead Counsel").  The Court appointed Kirby McInerney and Lovell Stewart as interim co-lead counsel for the Exchange-Based Plaintiffs ("Plaintiffs") and the putative class in the above-captioned action (the "Action").  *See generally In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Md. 2262 (NRB), 2011 WL 5980198 (S.D.N.Y. Nov. 29, 2011), ECF No. 66; *see also* Pre-Trial Order No. 1, ECF No. 90, at ¶ 18.[1]  The Exchange-Based Plaintiffs represent a proposed Settlement Class of those persons who transacted in Eurodollar Futures and options on Eurodollar Futures ("Eurodollar Futures").  By Order dated April 26, 2024, the Court appointed Kirby McInerney and Lovell Stewart as Settlement Class Counsel for the proposed Settlement Class.  *See* Preliminary Approval Order, ECF No. 4028.  We have significant experience litigating antitrust and commodity futures class actions, including settlements thereof; we have been actively involved in prosecuting this Action since its inception, are familiar with its proceedings; and we have personal knowledge of matters set forth herein.

2.      We respectfully submit this Declaration in support of the motions by Exchange-Based Plaintiffs for final approval of the Settlement with Defendants Credit Suisse, Lloyds, NatWest, Portigon, RBC, Rabobank, Norinchukin, MUFG, and UBS (the "Exchange-Based Settlement" or "Settlement"), certification of the Settlement Class, approval of the Plan of Distribution for allocating the proceeds of the Settlement to eligible Settlement Class Members

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed in the "Table of Defined Terms."  All references to "ECF No." herein refer to documents in the docket of the MDL Action, No. 11-MD-2262 (NRB) unless otherwise specified.

(the "Plan of Distribution"), and an award of attorneys' fees and payments of litigation expenses (the "Fee and Expense Application").

3.    This Declaration is submitted in support of the Settlement and we believe is inadmissible in any subsequent proceedings, other than in connection with the approval of the Settlement.  If the Settlement is not approved by the Court, we believe that this Declaration and the statements contained herein are without prejudice to the Exchange-Based Plaintiffs' position on the merits of the Exchange-Based Action.

## I.    INTRODUCTION

4.    If approved, the proposed Settlement, consisting of a $3,450,000 cash payment, would completely resolve the pending litigation in the Exchange-Based Action.  This Settlement brings the total settlement amount in the Exchange-Based Action to $190,450,000.[2]  Collectively, the Exchange-Based settlements continue to represent the largest recovery for a "futures-only" class asserting claims under the CEA.  The Settlement, which was negotiated at arm's length by experienced counsel, is reasonable and appropriate and is deserving of preliminary approval by the Court.

5.    The settlement amount paid by Settling Defendants is non-reversionary; if the Court grants final approval of the Settlement and the Settlement otherwise becomes effective and final as defined in the Settlement, no money will be returned to the Settling Defendants regardless of how many Settlement Class Members submit proofs of claim or are entitled to payment.  Further, the Settlement provides an immediate cash benefit to the Settlement Class while avoiding the substantial risk, expense, and delay of seeking to take this Action to trial against Settling

---

[2] On September 17, 2020, this Court granted Final Approval of settlements with: (i) Barclays Bank plc; (ii) Citigroup Inc., Citibank, N.A., and Citigroup Global Markets Inc.; (iii) Deutsche Bank AG, Deutsche Bank Securities Inc., and DB Group Services (UK) Ltd.; (iv) HSBC Bank plc; (v) JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. and Bank of America Corporation and Bank of America, N.A.; and (vi) Société Générale.  *See* ECF Nos. 3175-80.

Defendants and seeking to obtain a litigated class. These risks include that the Settlement Class would recover less than the amount of the Settlement Fund at trial, or nothing at all, after additional years of litigation. We respectfully submit that the fact that Exchange-Based Plaintiffs achieved these results despite the significant legal risks to the Exchange-Based Plaintiffs that repeatedly manifested throughout the litigation underscores the reasonableness of the settlement.

6.      Settlement Class Counsel believes that the Settlement is procedurally and substantively fair and respectfully recommends the Court's approval. Throughout the pendency of this Action, Settlement Class Counsel conducted the extensive settlement negotiations on behalf of Plaintiffs with counsel for Defendants. Kirby McInerney was principally responsible for conducting the last round of negotiations with Settling Defendants while providing regular updates to Lovell Stewart. Plaintiffs and Settlement Class Counsel had a thorough understanding of the strengths and weaknesses of the claims asserted in the Action at the time they reached the Settlement. During the last rounds of settlement negotiations, Kirby McInerney respectfully submits that there was no collusion or preference among counsel for the Parties to the Settlement, and on that basis Lovell Stewart agrees with this assessment. Instead, the Settlement was reached only after extensive, hard-fought, arm's-length negotiations that were undertaken in good faith by experienced legal counsel for the parties. We believe the Settlement confers a substantial immediate benefit to the Settlement Class and is eminently fair, reasonable, and adequate given the legal hurdles and risks involved in proving liability and damages.

7.      The Plan of Distribution, which is available for download and review at the Settlement Website, provides that a Settlement Class Member who submits an acceptable Proof of Claim will receive his, her, or its *pro rata* share of the "Net Settlement Fund," *i.e.*, the Settlement Fund less specific court-approved fees and expenses. Specifically, the Plan provides for

distribution of 75% of the Net Settlement Fund on the basis of *pro rata* "Recognized Net Loss" and 25% on the basis of *pro rata* "Recognized Volume," subject to a guaranteed minimum payment of $20.  The Plan of Distribution is substantively identical to the one previously approved by the Court.  *See* Section V, *infra*.

8.    Although the deadline to file requests for exclusions and objections is not until August 15, 2024, the initial reaction of the Settlement Class to the Settlement is favorable. Significantly, following the distribution of approximately 12,581 Postcard Notices to potential Settlement Class Members, no objections have been filed to date to any aspect of the Settlement, the Plan of Distribution, or Settlement Class Counsel's fee request.  *See* Sections IV and V, *infra*. The deadline for Settlement Class Members to file objections and requests for exclusions from the Settlement is August 15, 2024.  *Id.*

9.    Since the inception of this litigation, Plaintiffs' Counsel has committed a substantial amount of time and resources to this Action and have prosecuted this case on a wholly contingent basis and by doing so, assumed the risk of an unfavorable result.  *See* Section VI, *infra*.  The work performed by Plaintiffs' Counsel is described herein as well as in individual declarations submitted by each firm.  *See* Section VI, *infra*; Exs. B-C.  For the reasons set forth in these declarations and the accompanying memorandum of law, we respectfully request that the Court award attorneys' fees (*see* Section VI.A., *infra*), and reimburse litigation expenses (*see* Section VI.B., *infra*).

## II.    SUMMARY OF CLAIMS AND THE PROCEDURAL HISTORY OF THE LITIGATION

10.    On April 15, 2011, an Exchange-Based Plaintiff, FTC Capital GmbH, and its associated entities, represented by Kirby McInerney, filed the first complaint in what became the consolidated LIBOR actions.  The complaint alleged that Defendants and others manipulated the price of U.S. Dollar LIBOR ("LIBOR") and Eurodollar futures in violation of Section 9(a) of the

CEA, 7 U.S.C. § 13(a), agreed to fix and suppress LIBOR in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 ("Sherman Act"), and were unjustly enriched by such manipulation and agreement in violation of the common law. *See* Class Action Complaint, *FTC Capital GmbH et al. v. Credit Suisse Group AG et al.*, No. 11 Civ. 2613 (S.D.N.Y. Apr. 15, 2011), ECF No. 1.

11.    On November 29, 2011, the Court consolidated all LIBOR-related class action complaints pending before the Court. *See* ECF No. 66.  The Court appointed Kirby McInerney and Lovell Stewart as Interim Co-Lead Counsel for the Exchange-Based Plaintiffs. *Id.*

12.    On December 22, 2011, this Court entered Pretrial Order No. 1. *See* ECF No. 90. Among other things, this Order invested Interim Co-Lead Counsel with both the responsibility and the authority to "negotiate with defense counsel with respect to settlement and other matters," "[t]o request that the Court approve settlements, if any, and fee awards," and "[t]o perform such other duties and to undertake such other responsibilities as [Interim Co-Lead Counsel] deem[s] necessary or desirable in the prosecution of this litigation." *Id.* ¶ 18.

13.    On April 30, 2012, Plaintiffs filed their Amended Consolidated Class Action Complaint. *See* ECF No. 134.  It alleged that Defendants and others manipulated the LIBOR rate and the price of Eurodollar futures and options contracts in violation of Section 9(a) of the CEA, were liable for the manipulative acts of agents, representatives, and/or other persons acting for Defendants under Section 2(a)(1) of the CEA, 7 U.S.C. §2(a)(1), aided and abetted violations of Section 9(a) of the CEA, agreed to fix and suppress LIBOR in violation of the Sherman Act, and were unjustly enriched.  In particular, Exchange-Based Plaintiffs were responsible for overseeing the development of the econometric analyses, on behalf of the Bondholder, Exchange-Based, and OTC Plaintiffs, which the Second Circuit found persuasive evidence of antitrust conspiracy (as described herein ¶ 25).

14.     On March 29, 2013, after extensive motion practice by Plaintiffs and Defendants, the Court issued a 161-page Memorandum and Order.  Therein, the Court, among other things: (1) granted Defendants' motion to dismiss Plaintiffs' federal antitrust claim and unjust enrichment claim; (2) granted Defendants' motion to dismiss with respect to Plaintiffs' commodity manipulation claims based on Eurodollar futures and options contracts purchased during Period 1 (August 9, 2007 to May 29, 2008); (3) denied Defendants' motion to dismiss with respect to Plaintiffs' commodity manipulation claims based on Eurodollar futures and options contracts purchased during Period 2 (May 30, 2008 to April 14, 2009) and Period 3 (April 15, 2009 to May 2010); and (4) allowed Plaintiffs to move to amend their complaint to include allegations based on information derived from the Barclays settlements with government agencies.  *See generally In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666 (S.D.N.Y. 2013) ("*LIBOR I*"), ECF No. 286.

15.     On August 23, 2013, after further extensive motion practice by Plaintiffs and Defendants, the Court issued a 65-page Memorandum and Order.  Therein, the Court, among other things: (1) denied Plaintiffs' motion to add allegations with respect to antitrust and trader-based manipulation; (2) denied Defendants MUFG, Credit Suisse, and Norinchukin's motion for reconsideration without prejudice; and (3) allowed Plaintiffs to file a second amended complaint in conformity with that Memorandum and Order, which included allowing Plaintiffs leave to name Société Générale as a defendant.  *See generally In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606 (S.D.N.Y. 2013) ("*LIBOR II*"), ECF No. 389.

16.     On September 10, 2013, Plaintiffs filed the Second Amended Consolidated Class Action Complaint, ECF No. 407, and as corrected ECF No. 438 ("CSAC").  Notably, Plaintiffs' CSAC materially expanded the scope of the existing claims in the MDL to allege LIBOR

manipulation pre-dating August 2007 and trader-based manipulation based on evidence obtained from government settlements. Exchange-Based Plaintiffs continue to be the only putative class representatives to actively pursue such claims in the MDL. Plaintiffs' "Period 0" trader-based manipulation theory of liability materially enhanced claims against Defendants.

17.     On October 7, 2013, after still further extensive motion practice by Defendants and Plaintiffs, the Court issued a Memorandum and Order. Therein, the Court: (1) granted Defendants' request for leave to file their renewed motion to dismiss Plaintiffs' Period 2 CEA Claims; and (2) stayed a decision on the permissible content of the CSAC until resolution of other then-pending motions. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Md. 2262 (NRB), 2013 WL 5570424 (S.D.N.Y. Oct. 7, 2013), ECF No. 452.

18.     On June 23, 2014, after even more substantial motion practice by Plaintiffs and Defendants, the Court issued an 80-page Memorandum and Order. Therein, the Court: (1) denied Plaintiffs' motion for reconsideration of the Court's August 23, 2013 Order; (2) granted Plaintiffs' motion for leave to amend their complaint to add certain allegations of day-to-day, trader-based manipulation; (3) denied Defendants' motion for reconsideration of the Court's holding that Plaintiffs had adequately pled scienter in connection with their CEA claims; and (4) granted Defendants' motion to dismiss Plaintiffs' commodity manipulation claims based on Eurodollar futures and options contracts purchased during Period 2 (May 30, 2008 to April 14, 2009). *See generally In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Md. 2262 (NRB), 27 F. Supp. 3d 447 (S.D.N.Y. 2014) ("*LIBOR III*"), ECF No. 568. Notably, the Court sustained certain of Plaintiffs' trader-based manipulation claims against Defendants Barclays and Rabobank.

19.     On May 27, 2015, Plaintiffs respectfully requested that the Court reconsider its *LIBOR I* and *LIBOR III* decisions based on the Second Circuit's summary order in *BPP Ill., LLC*

*v. Royal Bank of Scotland Grp. PLC*, 603 F. App'x 57 (2d Cir. 2015) ("*BPP II*") as it related to the timeliness of portions of Plaintiffs' CEA claims. *See* ECF No. 1142. On September 30, 2015, Plaintiffs renewed their request for reconsideration and in the alternative sought interlocutory review of the Court's *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Md. 2262 (NRB), 2015 WL 4634541 (S.D.N.Y. Aug. 4, 2015) ("*LIBOR IV*"), ECF No. 1164, statute of limitations analysis as it related to the CEA claims. *See* ECF No. 1214. On October 29, 2015, the Court denied Plaintiffs' request for reconsideration of *LIBOR I* and *LIBOR III* and in the alternative for interlocutory review. *See* ECF No. 1229.

20.    On January 16, 2015, certain Defendants, including Credit Suisse, Lloyds, NatWest, Portigon, RBC, Rabobank, Norinchukin, and MUFG, moved to dismiss Plaintiffs' CEA suppression claims for lack of personal jurisdiction. *See* ECF No. 966.

21.    On June 29, 2015, Plaintiffs submitted a letter motion requesting leave to file Plaintiffs' [Proposed] Third Amended Complaint ("PTAC"). *See* ECF No. 1159. In this complaint, Plaintiffs relied heavily on cooperation material provided pursuant to the "icebreaker" Barclays Settlement to develop allegations against new Defendants, including RBC Capital Markets, LLC, and strengthen existing allegations against NatWest and RBC.

22.    On November 3, 2015, after further extensive motion practice by Defendants and Plaintiffs, the Court issued a 67-page Memorandum and Opinion that, among other things, granted in part and denied in part Defendants' motion to dismiss for lack of personal jurisdiction. Specifically, the Court granted certain foreign defendants' motion to dismiss on jurisdictional grounds. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Md. 2262 (NRB), 2015 WL 6696407 (S.D.N.Y. Nov. 3, 2015) ("*LIBOR V*"), ECF No. 1234.

23.    On January 29, 2016, Rabobank filed a pre-motion letter concerning a proposed motion to strike Plaintiffs' class action allegations insofar as they related to trader-based manipulation claims.  *See* ECF No. 1308.  On May 13, 2016, after further extensive motion practice by Rabobank and Plaintiffs, the Court issued a Memorandum and Order that, among other things, denied Rabobank's request to file a motion to strike class allegations from Plaintiffs' complaint.  ECF No. 1408.

24.    On April 15, 2016, the Court issued a Memorandum and Order granting Plaintiffs' leave to file the PTAC within the confines of the Order.  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Md. 2262 (NRB), 2016 WL 1558504, at *8-11 (S.D.N.Y. Apr. 15, 2016), ECF No. 1380.  In particular, the Court sustained trader-based manipulation allegations against Deutsche Bank.  Furthermore, in this opinion, the Court also articulated class standing requirements for episodic trader-based manipulation claims against specific Defendants and dismissed persistent suppression claims with respect to certain Defendants, including Credit Suisse, Lloyds, Portigon, Norinchukin, and MUFG for failure to allege a prima facie case of personal jurisdiction.

25.    On May 23, 2016, the Second Circuit vacated the Court's ruling in *LIBOR I*, reinstated Exchange-Based Plaintiffs' antitrust claim, and remanded the case for further proceedings.  *See Gelboim v. Bank of Am. Corp.*, 823 F.3d 759 (2d Cir. 2016).  Subsequently, all remaining Defendants, including Credit Suisse, Lloyds, NatWest, Portigon, RBC, Rabobank, Norinchukin, MUFG, and UBS, sought to dismiss Exchange-Based Plaintiffs' antitrust claim on antitrust standing grounds, and certain Defendants sought to dismiss Exchange-Based Plaintiffs' antitrust claims on personal jurisdiction grounds.

26.     On June 17, 2016, the Court issued an Order denying a stay of class action discovery because of the pendency of the anticipated motions to dismiss.  *See* ECF No. 1461. Plaintiffs subsequently engaged in extensive review of discovery materials previously produced to government regulators by Defendants.

27.     On December 2, 2016, C2 Capital Management, LLC ("C2C"), represented by Plaintiffs' Counsel, sought leave to intervene as of right or, in the alternative, through permissive intervention, as an additional named Exchange-Based Plaintiff.  *See* ECF No. 1659.  In accord with the Court's April 15, 2016 Order, C2C's intervention as an additional named plaintiff would benefit the class by ensuring an additional class representative whose trades covered substantial portions of the class period.  *Id.*

28.     On December 20, 2016, the Court granted in part Defendants' motion to dismiss the antitrust claims for lack of antitrust standing and granted certain Defendants' motion to dismiss the antitrust claims with respect to personal jurisdiction.  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Md. 2262 (NRB), 2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016) ("*LIBOR VI*"), ECF No. 1676.  In particular, Plaintiffs' antitrust claims against Credit Suisse, Lloyds, NatWest, Portigon, RBC, Rabobank, Norinchukin, MUFG, and UBS were dismissed pursuant to this order.

29.     On January 13, 2017, Plaintiffs sought leave to file a [Proposed] Fourth Amended Complaint in light of the Second Circuit's *Gelboim* decision and this Court's ruling in *LIBOR VI*. ECF No. 1726.  On April 20, 2017, after further motion practice, the Court issued a Memorandum and Order granting Plaintiffs' request for leave to file their proposed Fourth Amended Complaint within the confines of the Order, while denying the request of C2C for leave to intervene, as well as Plaintiffs' motion for reconsideration of *LIBOR VI*.  *See* ECF No. 1859.  In accordance with the

April 20, 2017 Order, Plaintiffs filed their Fourth Amended Complaint on September 29, 2017 which conformed to the Court's prior rulings and supplemented Plaintiffs' efficient enforcer analysis. *See* ECF Nos. 2292, 2294.

30.    On March 24, 2017, Plaintiffs asked the Court for leave to file a motion pursuant to Rule 54(b) to certify as a partial final judgment the Court's orders in Exchange-Based Plaintiffs' case dismissing Plaintiffs' persistent suppression claims on personal jurisdiction grounds against certain foreign Defendants based on claims arising under the CEA and antitrust law.[3] *See* ECF No. 1828.  In an Order dated May 3, 2017, the Court suggested that Plaintiffs submit a proposed Rule 54(b) order. *See* ECF No. 1896.

31.    On May 2, 2017, Plaintiffs submitted their motion to certify this action as a class action for their antitrust and CEA claims against the remaining non-settling defendants. *See* ECF Nos. 1885, 1890-91.  The motion was fully briefed by the parties.

32.    Following this Court's judgment dismissing the 2011 Schwab Plaintiffs action in its entirety, filed on April 27, 2017, ECF No. 1877, Plaintiffs submitted a proposed Rule 54(b) order on May 16, 2017. *See* ECF No. 1922.

33.    In an Order dated June 8, 2017, the Court advised those plaintiffs who had previously sought an order entering partial final judgment of *LIBOR VI*, and who were identified in the appendix to the June 8, 2017 Order, to revise their proposed orders to parallel the wording of the OTC Plaintiffs' order. *See* ECF No. 1962.

34.    On June 19, 2017, Plaintiffs submitted a revised proposed amended Rule 54(b) order. *See* ECF No. 1986.

---

[3] *See LIBOR V*, 2015 WL 6696407, at *19-20 (dismissing persistent suppression CEA claims against certain Foreign Defendants on personal jurisdiction grounds); *LIBOR VI*, 2016 WL 7378980, at *2-13 (dismissing Foreign Defendants on personal jurisdiction grounds on remand of antitrust claims).

35.    On June 26, 2017, the Court entered an Order for Entry of Partial Final Judgment dismissing Plaintiffs' antitrust claims against Defendants Credit Suisse, Lloyds, NatWest, Portigon, RBC, Rabobank, Norinchukin, MUFG, and UBS on personal jurisdiction grounds for the reasons given in *LIBOR VI*.  *See* ECF No. 1989.

36.    On October 11, 2017, Plaintiffs filed their letter motion for preliminary approval of four separate settlements with: (i) Barclays Bank plc;[4] (ii) Citigroup Inc., Citibank, N.A., and Citigroup Global Markets Inc.; (iii) Deutsche Bank AG, Deutsche Bank Securities Inc., and DB Group Services (UK) Ltd.; and (iv) HSBC Bank plc.  *See* ECF No. 2307-1.

37.    On December 12, 2017, Plaintiffs filed their motion for an order preliminarily approving a plan of distribution for the settlements with Barclays, Citi, Deutsche Bank and HSBC. *See* ECF Nos. 2365, 2383-85.

38.    On February 28, 2018, the Court issued a Memorandum and Order denying Plaintiffs' motion for class certification (the "February 28, 2018 Order").  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430 (S.D.N.Y. Feb. 28, 2018) ("*LIBOR VII*"), ECF No. 2452.

39.    On March 16, 2018, Plaintiffs filed a FED. R. CIV. P. 23(f) petition for permission to appeal the February 28, 2018 Order (the "March 16, 2018 Petition") with the Second Circuit. *See* Motion for Leave to Appeal, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 18-728 (2d Cir. Mar. 16, 2018), ECF No. 1.  On March 26, 2018, Defendants UBS AG and Rabobank filed an answer to the March 16, 2018 Petition.  *See* Opp. to Motion for Leave to Appeal, *In re*

---

[4] On December 2, 2014, the Court granted preliminary approval of the Barclays Settlement.  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Md. 2262, 2014 WL 6851096 (S.D.N.Y. Dec. 2, 2014), ECF No. 861.

*LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 18-728 (2d Cir. Mar. 26, 2018), ECF Nos. 20-21.

40.    On April 2, 2018, Plaintiffs filed their reply in support of the March 16, 2018 Petition. *See* Reply Br., *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 18-728 (2d Cir. Apr. 2, 2018), ECF No. 56.

41.    On June 18, 2018, the Court held a settlement conference during which the Court, *inter alia*, made recommendations and asked questions about the contents of the proposed plan of distribution.  Further, the Court requested that Plaintiffs implement revisions to the proposed plan of distribution.  *See* ECF No. 2633.

42.    On September 7, 2018, Plaintiffs filed their letter motion for preliminary approval of a settlement with defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A., and Bank of America Corporation and Bank of America, N.A.  *See* ECF No. 2728-1.

43.    Additionally, on September 7, 2018, Plaintiffs filed their motion for an order preliminarily approving Plaintiffs' (1) notice program for settlements with Defendants BOA, Barclays, Citi, Deutsche Bank, HSBC, and JPMorgan; and (2) amended plan of distribution.  *See* ECF No. 2729-1.  This submission included Plaintiffs' redlined amended plan of distribution responding to the Court's comments and suggestions from the June 18, 2018 settlement conference. *See* ECF No. 2729-6.

44.    On November 6, 2018, following oral argument in the Second Circuit in support of Plaintiffs' March 16, 2018 Petition, the Second Circuit denied Plaintiffs' Rule 23(f) petition because "an immediate appeal is not warranted."  Order at 2, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 18-728 (2d Cir. Nov. 6, 2018), ECF No. 83.

45.     On March 25, 2019, the Court issued a lengthy opinion involving multiple related

cases.  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Md. 2262 (NRB), 2019

WL 1331830 (S.D.N.Y. Mar. 25, 2019) ("*LIBOR VIII*"), ECF No. 2837.

46.     On April 16, 2019, the Court sent a letter concerning Plaintiffs' redlined amended

plan of distribution.  The Court pointed out the denial of the Rule 23(f) petition by the Second

Circuit, and the findings made in *LIBOR VII* about the unreliability of Plaintiffs' experts and the

reliability of Defendants' experts.  *See* ECF No. 2853.  Noting the use in the prior proposed plan

of net loss as one of the metrics of compensation, the Court posed various questions, including

whether all the settlement monies could or should be distributed by means of the net loss method.

*Id.*  On May 24, 2019, Plaintiffs responded to the Court's questions.  *See* ECF No. 2875.

47.     On August 12, 2019, Plaintiffs filed their motion for an order preliminarily

approving a Revised Plan of Distribution.  *See* ECF Nos. 2954-57.

48.     On September 4, 2019, the Court granted Plaintiffs' motion for preliminary

approval of the Revised Plan of Distribution.  *See* ECF No. 2973.

49.     On January 23, 2020, Plaintiffs filed their motion for an order preliminarily

approving the settlement with SG.  *See* ECF No. 3023.

50.     On March 2, 2020, the Court granted preliminary approval of Plaintiffs' settlements

with BOA, Barclays, Citi, Deutsche Bank, HSBC, JPMorgan, and SG.  *See* ECF No. 3038.

51.     On August 13, 2020, Plaintiffs filed their motion for final approval of the class

action settlements with BOA, Barclays, Citi, Deutsche Bank, HSBC, JPMorgan, and SG.  *See* ECF

No. 3141.

52.     On September 17, 2020, the Court held a fairness hearing in connection with Plaintiffs' motion for final approval of the class action settlements with BOA, Barclays, Citi, Deutsche Bank, HSBC, JPMorgan, and SG.

53.     On September 17, 2020, the Court entered final judgment and final approval of the class action settlements with BOA, Barclays, Citi, Deutsche Bank, HSBC, JPMorgan, and SG.  *See* ECF Nos. 3175-80.

54.     On December 30, 2021, the Second Circuit vacated in part the Court's ruling in *LIBOR V* and reinstated Exchange-Based Plaintiffs' antitrust claim against Defendants Credit Suisse, Lloyds, NatWest, Portigon, RBC, Rabobank, Norinchukin, MUFG, and UBS.  *See Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. plc*, 22 F.4th 103 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2852 (2022).

55.     On September 6, 2022, Plaintiffs filed a stipulation and proposed order dismissing without prejudice all claims against certain Defendants, substituting certain Defendants, and proposing to file a Fifth Amended Consolidated Class Action Complaint.  *See* ECF No. 3508.

56.     On September 7, 2022, Plaintiffs filed their Fifth Amended Consolidated Class Action Complaint.  *See* ECF No. 3510.

57.     On February 27, 2023, Plaintiffs filed a letter-motion requesting a pre-motion conference concerning Plaintiffs' motion for class certification against previously dismissed Defendants Credit Suisse, Lloyds, NatWest, Portigon, RBC, Rabobank, Norinchukin, MUFG, and UBS.  *See* ECF No. 3638. On April 24, 2023, the Court denied Plaintiffs' letter-motion requesting a pre-motion conference concerning Plaintiffs' motion for class certification.  *See* ECF No. 3658.

58.     On September 7, 2023, Plaintiffs filed a motion authorizing Plaintiffs to distribute the BOA, Barclays, Citi, Deutsche Bank, HSBC, JPMorgan, and SG Net Settlement Funds to Claimants and reimburse the Claims Administrator.  *See* ECF No. 3723.

59.     On October 24, 2023, the Court authorized Plaintiffs to distribute the BOA, Barclays, Citi, Deutsche Bank, HSBC, JPMorgan, and SG Net Settlement Funds to Claimants and reimburse the Claims Administrator.  *See* ECF No. 3840.  The distribution of the Net Settlement Funds is ongoing.

60.     On April 9, 2024, Plaintiffs filed a motion seeking preliminary approval of the Settlement.  *See* ECF No. 4006.  On April 26, 2024, the Court entered an order: (1) preliminarily approving settlement with Defendants Credit Suisse AG, Lloyds Bank plc, Bank of Scotland plc, Natwest Markets plc, Portigon AG, Westdeutsche Immobilienbank AG, Royal Bank of Canada, RBC Capital Markets, LLC, Coöperatieve Rabobank U.A., The Norinchukin Bank, MUFG Bank, Ltd., and UBS AG; (2) conditionally certifying the Settlement Class; (3) appointing Settlement Class Counsel; (4) approving Claims Administrator and Escrow Agent; (5) approving Notice Program; (6) preliminarily approving Plan Of Distribution; and (7) scheduling a Fairness Hearing. *See* ECF No. 4028.

## III.     THE SETTLEMENT NEGOTIATIONS

61.     In the thirteen-year pendency of the Exchange-Based Plaintiffs' Action, Settlement Class Counsel undertook extensive legal and factual analyses of the Exchange-Based Plaintiffs' claims.  Settlement Class Counsel have reviewed transcripts of LIBOR-related material, analyzed discovery (which consisted of documents previously produced by each of the Defendants to government regulators), and worked in depth with consulting and testifying experts.  As a result, Settlement Class Counsel were well-informed of the facts and issues concerning liability and damages and the relative strengths and weaknesses of each side's litigation position.

62.     Plaintiffs' Settlement with Credit Suisse, Lloyds, NatWest, Portigon, RBC, Rabobank, Norinchukin, MUFG, and UBS is the eighth and final settlement by Exchange-Based Plaintiffs in the litigation following its settlements with Defendants BOA, Barclays, Citi, Deutsche Bank, HSBC, JPMorgan, and SG.   If approved, the proposed Settlement, consisting of a $3,450,000 cash payment, would completely resolve the pending litigation in the Exchange-Based Action.

63.     The Settlement is the culmination of extremely hard-fought, arm's-length negotiations by counsel highly experienced in complex antitrust matters and was reached following renewed settlement discussions that spanned several months, after prior attempts to resolve claims with individual Settling Defendants failed.

64.     In preparation for and during the pendency of settlement negotiations with Settling Defendants, Exchange-Based Plaintiffs' Counsel, *inter alia*, reviewed documents produced by the Settling Defendants and compiled evidence relating to Settling Defendants.

65.     That investment of attorney time ensured Class Counsel were well prepared to pursue Exchange-Based Plaintiffs' claims against Settling Defendants and to advance settlement negotiations with Settling Defendants.

66.     On January 30, 2024, counsel for Plaintiffs and for Credit Suisse, Lloyds, NatWest, Portigon, RBC, Rabobank, Norinchukin, MUFG, and UBS advised the Court of the Settlement subject to further documentation.   Subsequently, counsel for the settling parties negotiated the remaining terms of the Settlement Agreement.

67.     The Stipulation, which was executed by the parties on April 8, 2024, reflects the terms of the Settlement, including a settlement amount of $3,450,000 and the scope of the release of claims. *See* ECF No. 4011-1.

68.     At all times, both sides vigorously negotiated their respective positions. Exchange-Based Plaintiffs' Counsel were well-informed of the facts and issues concerning liability and damages and the relative strengths and weaknesses of each side's litigation position.

69.     The aggregate Settlement Fund, minus fees and expenses awarded by the Court, will be available to be distributed to eligible members of the Exchange-Based Settlement Class. The settlement amount paid by Settling Defendants is non-reversionary; if the Court grants final approval of the Settlement and the Settlement otherwise becomes effective and final as defined in the Settlement, no money will be returned to Settling Defendants, regardless of how many Settlement Class Members submit proofs of claim or are entitled to payment.

## IV.    EXECUTING THE COURT'S PRELIMINARY APPROVAL ORDER RELATING TO CLASS NOTICE

70.     Pursuant to the Preliminary Approval Order, Settlement Class Counsel and the Court-approved Settlement Administrator, A.B. Data, Ltd. ("A.B. Data") implemented a notice program whereby notice was given to potential Settlement Class Members by mail and publication.

71.     The Court-approved Notice disclosed, among other things, the following information to Settlement Class Members: (1) the $3,450,000 million aggregate Settlement Fund; (2) that the Plan of Distribution was available on the Settlement Website; (3) that Settlement Class Counsel would apply for an award of attorneys' fees in an amount not to exceed one third of the Settlement Fund and reimbursement for litigation costs and expenses incurred, and that any Settlement Class Member could object to the requested fees and expenses; (4) that requests for exclusion from the Settlement must be mailed to the Settlement Administrator postmarked no later than August 15, 2024; (5) that objections to the Settlement, Plan of Distribution, or the Fee and Expense Application must be received and filed (not simply postmarked) no later than August 15, 2024; and (6) that the deadline for filing new or revised Claim Forms is October 21, 2024.  In

addition, the Notice explained that if a Settlement Class Member previously submitted a valid claim in the Prior Settlements, they did not need to submit another Proof of Claim to participate in this Settlement unless they wished to amend their claim.

72.    Annexed hereto as Exhibit A is the Declaration of Jack Ewashko on Behalf of A.B. Data, Ltd. Regarding Notice and Claims Administration for Exchange-Based Plaintiffs' Class Action Settlement with the Settling Defendants (the "Ewashko Decl."). Pursuant to the Court-approved notice program, A.B. Data mailed by first-class mail, in the aggregate, 12,581 Postcard Notices to potential Settlement Class Members (¶¶ 8-10). In addition, the Ewashko Declaration describes, *inter alia*, A.B. Data's efforts in providing publication notice (¶¶ 11-12), updating and maintaining the Settlement website (¶¶ 13-16), and responding to Settlement Class Members' inquiries (¶¶ 14, 17-18).

73.    As of July 30, 2024 (the date of execution of the Ewashko Declaration), no additional requests for exclusion had been received. *See* Ewashko Decl. ¶ 20; ¶ 8, *supra*; and Exhibit B to the Supplemental Declaration of Steven Straub on Behalf of A.B. Data, Ltd. Regarding Objections and Requests for Exclusion dated September 10, 2020, ECF No. 3171-1. To date, no objections to the Settlement, the Plan of Allocation, or the maximum amounts listed in the Notice that Settlement Class Counsel would seek for an award of attorneys' fees and reimbursement of litigation expenses, have been entered on this Court's dockets or have otherwise been received by Settlement Class Counsel. Ewashko Decl. ¶ 19. Settlement Class Counsel will file reply papers on August 29, 2024 to address any additional requests for exclusion and any objections that may be received.

## V.    THE PLAN OF DISTRIBUTION

74.    The Plan of Distribution is substantively identical to the previously approved Corrected Plan of Distribution in connection with the prior Exchange-Based Settlements and found by the Court as fair and adequate.[5]  *See* ECF Nos. 3175-80.[6]

75.    By way of summary, the payment methods employed by the Plan of Distribution have been previously approved in prior futures contract price manipulation litigation and have a rational basis.  The Plan of Distribution provides each Authorized Claimant his, her, or its pro rata share of the Net Settlement Fund.  Specifically, the Plan of Distribution provides for distribution of 75% of the Net Settlement Fund on the basis of pro rata "Recognized Net Loss" and 25% on the basis of pro rata "Recognized Volume," subject to a guaranteed minimum payment of $20.  *See* ECF No. 4012-7.

76.    As noted above, 12,581 copies of the Postcard Notice, which indicates that a copy of the Plan of Distribution is available on the Settlement Website, have been disseminated.  *See* Ewashko Decl. ¶¶ 8-10 and Ex. A.  The Plan of Distribution is posted on the Settlement Website. *Id.* ¶ 13.  To date, no objections to the Plan of Distribution have been received.  *Id.* ¶ 19.

## VI.    PLAINTIFFS' COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

77.    For their efforts on behalf of the Settlement Class, Plaintiffs' Counsel seek an award of attorneys' fees to compensate them for the services they have rendered on behalf of the Settlement Class.  *See* Section VI.A., *infra*.  Plaintiffs' Counsel also requests reimbursement of

---

[5] The Plan of Distribution was formulated by experienced counsel with the assistance of nationally recognized mediator, Kenneth Feinberg, Esq., and implemented the revisions that the Court proposed during the June 18, 2018 conference.  *See* ECF No. 2729-3 at 4-5.

[6] A single objector previously objected to the Revised Plan of Distribution, arguing that the Net Settlement Fund should be distributed equally between Recognized Net Loss and Recognized Volume.  *See* ECF No. 3171-1 at 5-8 (Objection to the Plan of Distribution).  The Court overruled the objection and approved the Revised Plan of Distribution. *See* ECF Nos. 3175-80.

expenses incurred in connection with the prosecution of this Action in the amount of $135,349.19. *See* Section VI.B., *infra*.

### A.    Plaintiffs' Counsel's Fee Request

78.    During the period between August 13, 2020 and July 26, 2024, Settlement Class Counsel committed a substantial amount of time and resources to this Action and have prosecuted this case on a wholly contingent basis and by doing so, assumed the risk of an unfavorable result. As described below, Plaintiffs' Counsel's Fee Request seeks reimbursement of time and expenses incurred during the period between August 13, 2020 and July 26, 2024. The work performed by Settlement Class Counsel is described above as well as in the attached individual declarations submitted by Kirby McInerney and Lovell Stewart. Plaintiffs' Counsel seek an award of attorneys' fees in the amount of 30% of the remainder of the Settlement Fund minus the amount of the reimbursement ordered by the Court of Counsel's litigation expenses, to compensate them for the services they have rendered on behalf of the Settlement Class.

79.    Annexed hereto as Exhibit B is the Declaration of David E. Kovel in Support of Interim Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses Filed on Behalf of Kirby McInerney LLP with Exhibits 1 (lodestar report), 2 (litigation expenses report), and 3 (firm resume).

80.    Annexed hereto as Exhibit C is the Declaration of Benjamin M. Jaccarino in Support of Interim Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses Filed on Behalf of Lovell Stewart Halebian Jacobson LLP with Exhibits 1 (lodestar report), 2 (expenses report), and 3 (firm resume).

81.    Based upon the foregoing declarations, we make the following statements as summaries. Between August 13, 2020 and July 26, 2024, Plaintiffs' Counsel devoted a total of 1,354.96 hours in the prosecution of this Action, for a total lodestar of $1,135,700.95. As set forth

herein and by the lodestar reports of Class Counsel, attached hereto as Ex. 1 in each of Plaintiffs' Counsel's attached declarations (Exs. B-C), Class Counsel has devoted a significant amount of time in the prosecution of this Action.

82.     During the period of August 13, 2020 to July 26, 2024, for attorneys and professional support staff who billed five or more hours to the Action, the total number of hours expended by Plaintiffs' Counsel is 1,354.96 hours.  The total lodestar is $1,135,700.95, consisting of $1,079,913.45 for attorneys' time and $55,787.50 for professional support staff time.  *See* Table 1, *infra*.  The requested fee of $994,395.24 (or 30% of the Settlement Fund less total expenses of $135,349.19) results in a multiplier of 0.88 to Plaintiffs' Counsel's total submitted lodestar of $1,135,700.95.

83.     Plaintiffs' Counsel restricted time submitted to the period between August 13, 2020 and July 26, 2024, inclusive.  Plaintiffs' Counsel do not seek fees in connection with work performed in connection with (i) securing approval of the Prior Settlements and (ii) work exclusively performed to facilitate the administration and distribution of the Prior Settlements.  In addition, time expended on Settlement Class Counsel's application for attorneys' fees and reimbursement of litigation expenses has also been excluded.  Each firm also reviewed its time and expenses for accuracy, necessity, and reasonableness.  As a result of this review, reductions were made to both time and expenses in the exercise of billing judgment.  *See* ¶ 3 in each of Plaintiffs' Counsel's attached declarations (Exs. B-C).

84.     In addition, as set forth in their declarations, Plaintiffs' Counsel's lodestar figures are based upon the firms' current billing rates (subject to annual increases), and do not include charges for expense items.  For personnel who are no longer employed by the firm, the lodestar calculation is based on the billing rates for such personnel in his or her final year of employment

by the firm (and capped at the reduced document-review rate). The declarants from each firm comprising Plaintiffs' Counsel attest that the hourly rates for the attorneys and professional support staff are in line with the rates by other lawyers at law firms handling large, complex class action litigation and/or which have been accepted in other complex or class action litigation, subject to subsequent annual increases. Annexed hereto as Exhibit D is a table prepared by Kirby McInerney in order to reflect billing rates for partners and non-partners at plaintiffs' firms in cases involving antitrust and other comparable complex class actions and for firms that regularly defend antitrust and comparable class actions compiled by Settlement Class Counsel from fee applications submitted by such firms.

85.    The following chart summarizes the aggregate hours, lodestar, and expenses of Plaintiffs' Counsel set forth in the attached declarations. *See* ¶¶ 5, 7 and Exs. 1 and 2 in each of Plaintiffs' Counsel's attached declarations (Exs. B-C).

| TABLE 1: Plaintiffs' Counsel's Summary Hours, Lodestar, and Expenses | | | |
|---|---|---|---|
| FIRM NAME | HOURS | LODESTAR | EXPENSES |
| Kirby McInerney LLP | 1,221.90 | $998,860.00 | $113,531.53 |
| Lovell Stewart Halebian Jacobson | 133.06 | $136,840.95 | $21,817.66 |
| TOTAL: | 1,354.96 | $1,135,700.95 | $135,349.19 |

86.    Based upon the attached declarations, we believe that Settlement Class Counsel's requested fee award is fair, reasonable, and justified, whether calculated as a percentage of the fund or as a multiple of counsel's lodestar.

**B.    Plaintiffs' Counsel's Litigation Expenses**

87.    Our statements and summaries in this section are based on the declarations set forth in Exhibits B through C. Through the pendency of this litigation, Settlement Class Counsel have sought to ensure that sufficient resources were dedicated to prosecuting Plaintiffs' claims. Plaintiffs' Counsel advanced the litigation expenses required to pursue and complete such complex

litigation with no guarantee of repayment. Based on the attached declarations, Plaintiffs' Counsel have incurred a total of $135,349.19 (or 3.92% of the Settlement Fund) in unreimbursed expenses in connection with the prosecution of this Action. We believe these expenses were reasonably necessary to the prosecution of this Action and are of the type that Plaintiffs' Counsel normally incurs in litigation and that would be reimbursed by clients under fee arrangements where the client was paying expenses.

88. The following schedule was prepared from Exhibit 2 in each of the attached declarations. *See* ¶ 8 in each of Plaintiffs' Counsel's attached declarations (Exs. B-C). The litigation expenses reflected in Exhibit 2 are the actual incurred expenses, and do not contain any administrative charges.

| TABLE 2: CUMULATIVE EXPENSES BY CATEGORY | |
| --- | --- |
| **EXPENSE CATEGORY** | **CUMULATIVE EXPENSES** |
| Online Legal Research | $6,795.67 |
| Document Retrieval (Including Pacer) | $609.70 |
| Document Management/Litigation Support | $77,333.26 |
| Local Travel | $101.48 |
| Meals | $45.08 |
| Experts | $50,464.00 |
| **TOTAL EXPENSES** | **$135,349.19** |

## VII.    ADDITIONAL EXHIBITS

89. Annexed hereto as Exhibit E is a compendium of unreported cases, documents, and transcripts, in alphabetical order by case name, cited in the accompanying final approval settlement brief and fee brief.

## VIII.    CONCLUSION

90. In view of the recovery to the Settlement Class and the substantial risks of this Action, Settlement Class Counsel respectfully submit that: the Settlement should be approved as fair, reasonable and adequate; and the Plan of Allocation should be approved as fair and reasonable.

91.    Plaintiffs' Counsel respectfully seek reimbursement of litigation expenses and an award of attorneys' fees in the amount of 30% of the remainder of the Settlement Fund minus the amount of the reimbursement ordered by the Court of Plaintiffs' Counsel's litigation expenses.

We certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 1, 2024 in New York, New York.


_/s/ David E. Kovel_                              _/s/ Christopher Lovell_
   David E. Kovel                                  Christopher Lovell

26