IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL PRODUCTS ANTITRUST LITIGATION | MDL NO. 2262<br>NO. 1:11-MD-02262-NRB |
| THIS DOCUMENT RELATES TO: | ECF CASE |
| The OTC Action | NO. 1:11-CV-5450 |

**MEMORANDUM OF LAW IN SUPPORT OF CREDIT SUISSE
GROUP AG'S, CREDIT SUISSE INTERNATIONAL'S, AND
CREDIT SUISSE (USA), INC.'S MOTION TO DISMISS THE OTC
SECOND AMENDED CONSOLIDATED COMPLAINT AND TO
DENY LEAVE TO AMEND AND FILE THE PROPOSED THIRD
<u>AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

PROCEDURAL POSTURE/FACTUAL BACKGROUND .......................................................... 2

ARGUMENT ................................................................................................................................. 5

I.  TCEH's Unjust Enrichment Claim Against Credit Suisse International Is Time-Barred. . 5

    A.  TCEH's unjust enrichment claim against Credit Suisse International is time-barred
        by Texas's two-year limitations period .................................................................... 5

    B.  Even If Texas Law Did Not Apply, Plaintiffs' Unjust Enrichment Claims Against
        Credit Suisse International Are Barred by New York's Three-Year Statute of
        Limitations. ............................................................................................................... 7

II. SEIU's Proposed Unjust Enrichment Claim Against Credit Suisse (USA), Inc. Is Also
    Time-Barred. ................................................................................................................... 10

III. Plaintiffs' Allegations of Fraudulent Concealment Do Not Alter the Application of the
     Statute of Limitations. .................................................................................................... 11

IV. Plaintiff's Unjust Enrichment and Breach of Contract and Implied Covenant of Good
    Faith and Fair Dealing Claims Must Be Dismissed Based on this Court's Prior
    Decisions. ....................................................................................................................... 11

    A.  Credit Suisse International and Credit Suisse (USA), Inc. Were Not Panel Banks
        for USD LIBOR Submissions And Are Not Alleged to Have Engaged in Any
        Misconduct. ................................................................................................................. 11

    B.  CSGAG and Credit Suisse (USA), Inc. Are Non-Counterparties And Were Not
        Panel Banks for US LIBOR Submissions. ................................................................. 15

CONCLUSION ........................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bigio* v. *Coca-Cola.*,
675 F.3d 163 (2d Cir. 2012) ................................................................. 12, 14, 14n, 15

*Bregman* v. *Perles*,
747 F.3d 873 (D.C. 2014) ............................................................................... 10n

*Cantor Fitzgerald Inc.* v. *Lutnick*,
313 F.3d 704 (2d Cir. 2002) ............................................................................... 6

*Concord Associates, L.P.,* v. *Entertainment Properties Trust*,
No. 12-Civ-1667(ER), 2014 WL 1396524 (S.D.N.Y. Apr. 9, 2014) ................................. 12

*Cortec Industries, Inc.* v. *Sum Holding L.P.*,
949 F. 2d 42 (2d Cir. 1991) ............................................................................... 10n

*Diamond Chemical Co., Inc.* v. *Atofina Chemicals, Inc.*,
268 F. Supp. 2d 1 (D.D.C. 2003) ....................................................................... 13n

*In re Digital Music Antitrust Litigation*,
812 F. Supp. 2d 390 (S.D.N.Y. July 18, 2011) ....................................................... 12

*Done* v. *HSBC Bank USA*,
No. 09-CV-4878 (JFB)(ARL), 2010 WL 3824142 (E.D.N.Y. Sept. 23, 2010) ............... 10n

*El-Hanafi* v. *U.S.*,
No. 1:13-cv-2027-GHW, 2014 WL 4199643 (S.D.N.Y. Aug. 22, 2014) ...................... 6

*Elledge* v. *Friberg-Cooper Water Supply Corp.*,
240 S.W.3d 869 (Tex. 2007) ............................................................................... 7

*Ellefson* v. *Megadeth, Inc.*,
No. 04-Civ. 5395 (NRB), 2005 WL 82022 (S.D.N.Y. Jan. 13, 2005) ...................... 6

*Fletcher* v. *Atex, Inc.*,
68 F.3d 1451 (2d Cir. 1995) ............................................................................... 14

*Grynberg* v. *Eni S.p.A.*,
No. 06 Civ. 6495 (RLC), 2007 WL 2584727 (S.D.N.Y. Sept. 5, 2007) ................... 6-7

*HAS Residential Mortgage Services of Texas* v. *Casuccio*,
350 F. Supp. 2d 352 (E.D.N.Y. 2003) ................................................................. 14n

*I. Meyer Pincus & Associates, P.C.* v. *Oppenheimer & Co., Inc.,*
    936 F.2d 759 (2d Cir. 1991) ................................................................................10n

*IDT Corp.* v. *Morgan Stanley Dean Witter & Co.,*
    12 N.Y.3d 132 (2009) ............................................................................................8

*Ingrami* v. *Rovner,*
    45 A.D. 3d 806 (N.Y. App. Div. 2d Dep't 2007) ....................................... 7-8, 10n

*Jager* v. *Mitschele,*
    No. 06-CV-1938 (JS)(WDW), 2010 WL 4722292 (E.D.N.Y. Nov. 12, 2010) .....................6n

*Johnson & Higgins of Texas, Inc.* v. *Kenneco Energy, Inc.,*
    962 S.W.2d 507 (Tex. 1998) ..................................................................................7

*Karl Rove & Co.* v. *Thronburgh,*
    39 F.3d 1273 (5th Cir. 1994) ..............................................................................13n

*Kermanshah* v. *Kermanshah,*
    580 F. Supp. 2d 247 (S.D.N.Y. 2008) ...................................................... 7-8, 10n

*In re Koreag, Controle et Revision S.A.,*
    961 F.2d 341 (2d Cir. 1992) ...................................................................................9

*Lambert* v. *Sklar,*
    30 A.D.3d 564 (N.Y. App. Div. 2006) ..................................................................8

*In re LIBOR-Based Financial Instruments Antitrust Litigation,*
    935 F. Supp. 2d 666 (S.D.N.Y. 2013) ..............................................................6, 11

*In re LIBOR-Based Financial Instruments Antitrust Litigation,*
    No. 11-md-2262, 2014 WL 2815645 (S.D.N.Y. June 23, 2014) .................. *passim*

*Malmsteen* v. *Berdon, LLP,*
    477 F. Supp. 2d 655 (S.D.N.Y. 2007) ............................................................... 8-9

*Mayo* v. *Hartford Life Insurance Co.,*
    354 F.3d 400 (5th Cir. 2004) ..................................................................................7

*In re Nokia Erisa Litigation,*
    No. 10 Civ. 3306 (GBD), 2011 WL 7310321 (S.D.N.Y. Sept. 6, 2011) ..............13

*In re Parmalat Securities Litigation,*
    375 F. Supp. 2d 278 (S.D.N.Y. 2005) ................................................................13n

*Pricaspian Development Corp.* v. *Total S.A.,*
    397 Fed. Appx. 673 (2d Cir. 2010) ........................................................................7

*In re Processed Egg Products Antitrust Litigation*,
    821 F. Supp. 2d 709 (E.D. Pa. 2011) ...................................................................12

*RA Global Services, Inc.* v. *Avicenna Overseas Corp.*,
    817 F. Supp. 2d 274 (S.D.N.Y. 2011)............................................................... 6-7

*Rodrigues* v. *It's Just Lunch, Intern*,
    2014 WL 1921187 (S.D.N.Y. May 14, 2014) ......................................................6

*Simonds* v. *Simonds*,
    45 N.Y.2d 233 (1978) ...........................................................................................9

*Skanga Energy & Marine Ltd.* v. *Arevenca, S.A.*,
    2014 WL 3928704 (S.D.N.Y. 2014).................................................................13n

*In re Sotheby's Holdings, Inc.*,
    No. 00 Civ. 1041 (DLC), 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000)..............13

*Spinale* v. *Tenzer Greenblatt, LLP*,
    309 A.D.2d 632 (N.Y. App. Div. 1st Dep't 2003) ............................................ 8-9

*United Teamster Fund* v. *MagnaCare Administration Services, LLC*,
    No. 13 Civ. 6062 (WHP), 2014 WL 4058070 (S.D.N.Y. Aug. 14, 2014).............8

*Woori Bank* v. *Merrill Lynch*,
    923 F. Supp. 2d 491 (S.D.N.Y. 2013), *aff'd*, 542 Fed. Appx. 81 (2d Cir. 2013) ....................6

**Statutes**

D.C. Code §12-301 .................................................................................................10n

N.Y. C.P.L.R. § 202 ...................................................................................................6

N.Y. C.P.L.R. § 213(1) .........................................................................................8, 8n

N.Y. C.P.L.R. § 214(3) ...........................................................................7, 8, 8n, 10n

Tex. Civ. Prac. & Rem. Code § 16.003(a) ...............................................................7

# PRELIMINARY STATEMENT

In their Second Amended Complaint ("SAC"), the OTC Plaintiffs named Credit Suisse Group AG ("CSGAG") as a defendant and asserted claims for unjust enrichment and breach of contract against Credit Suisse International[1] for the first time. No other Credit Suisse-affiliated entities were sued. CSGAG moved to dismiss, along with the rest of the Joint Defense Group, and, because CSGAG was a non-contracting party, this Court granted that motion in its entirety.[2] But Plaintiffs did not serve Credit Suisse International until March 2014 — well after the Joint Defense Group filed its motions to dismiss. Because Credit Suisse International had not been served at the time the motions to dismiss were filed, Credit Suisse International did not join Defendants' motions to dismiss.[3] When Credit Suisse International was finally served, the parties stipulated that Credit Suisse International's response to the SAC would not be due until after the then-pending motions to dismiss were decided and that Credit Suisse International had not waived any grounds for moving to dismiss the SAC other than inadequate service.[4] *See* Declaration of Elai Katz, Ex. A. Credit Suisse International now moves to dismiss the unjust enrichment claims in the SAC — which were not filed until September 2013, more than 3 years after any alleged wrongdoing took place — as untimely. Both the contract and unjust enrichment claims must also be dismissed because the SAC does not adequately allege that Credit Suisse International was a LIBOR-panel bank or that it had any involvement in or knowledge of the alleged

---

[1] Credit Suisse International, a bank domiciled in the United Kingdom, is an indirect wholly owned subsidiary of Credit Suisse AG.

[2] *See In re LIBOR-Based Financial Instruments Antitrust Litigation*, No. 11-md-2262, 2014 WL 2815645, at *23 (S.D.N.Y. June 23, 2014) ("*LIBOR III*"); MDL Dkt. 682 (clarifying that CSGAG was covered by the *LIBOR III* ruling).

[3] Credit Suisse International and Credit Suisse (USA), Inc. now join and adopt all arguments for dismissal contained in prior consolidated memoranda submitted by defendants and this Court's orders relating to the OTC action.

[4] The Court directed defendants to file any motions to dismiss by January 16, 2015.

LIBOR manipulation that forms the basis of OTC Plaintiffs' claims. This Court's prior rulings preclude bringing a breach of contract or unjust enrichment claim under such circumstances.

Before Credit Suisse International could move against the SAC, in August 2014, the OTC Plaintiffs asked this Court to file a Proposed Third Amended Complaint ("PTAC"). That proposed pleading — which has not yet been filed — includes the same claims against Credit Suisse International as were included in the SAC. In addition, it purports to assert for the first time claims against Credit Suisse (USA), Inc.[5] and to resuscitate claims against the already-dismissed CSGAG. The Court should deny the OTC Plaintiffs' request for leave to file the PTAC against these Credit Suisse entities. The claims against Credit Suisse (USA), Inc., like the claims against Credit Suisse International, are time barred and subject to dismissal because the PTAC does not adequately allege that Credit Suisse (USA), Inc. was a LIBOR-panel bank or that it had any involvement in or knowledge of the alleged LIBOR manipulation that forms the basis of OTC Plaintiffs' claims. The contract claims against Credit Suisse (USA), Inc. should also be dismissed because it is not a counterparty to any contract with plaintiffs. And this Court has already considered and rejected the OTC Plaintiffs' arguments for resuscitating their claims against CSGAG because of allegations concerning "agency." In any event, the agency allegations in the PTAC are conclusory, and the facts pled suggest nothing more than a typical parent/subsidiary/corporate affiliate relationship. As such, they are insufficient to state a claim against any of the Defendants.

## PROCEDURAL POSTURE/FACTUAL BACKGROUND

On September 10, 2013, the OTC Plaintiffs amended their complaint to include a new plaintiff — a Texas firm known as Texas Competitive Electric Holdings Company ("TCEH") —

---

[5] Credit Suisse (USA), Inc., a bank domiciled in Wilmington, Delaware, is an indirect wholly owned subsidiary of Credit Suisse AG.

that asserted for the first time a cause of action for unjust enrichment and breach of contract and the implied covenant of good faith and fair dealing against Credit Suisse International. SAC ¶¶ 391, 395-98, MDL Dkt. No. 406. This was the first putative class action complaint to include allegations against Credit Suisse International.

The SAC was filed against Credit Suisse International on September 10, 2013 — three years and four months after the last wrongful act alleged in the SAC.[6] Credit Suisse (USA), Inc. was not named as a defendant in the SAC, which alleged that Credit Suisse International (1) unjustly enriched itself between August 2007 and May 2010 through "contractual benefits from their collusive and manipulative acts, in the form of paying less or receiving more LIBOR-based payments" and (2) committed breach of contract and breach of the implied covenant of good faith and fair dealing. SAC ¶¶ 1, 388-94, 391, 396, 398. The OTC Plaintiffs first served Credit Suisse International in March 2014,[7] at which time the parties stipulated that Credit Suisse International could move to dismiss the SAC on any grounds except inadequate service. The parties further stipulated that such response would not be due until the Court so ordered or the Federal Rules of Civil Procedure required a response after the Court issued an order about the then-pending motions to dismiss. Katz Decl. Ex. A.

On October 8, 2014, the Court clarified its ruling in *LIBOR III* that OTC Plaintiffs lacked standing to assert claims against non-contracting party CSGAG. Order, MDL Dkt. No. 682 ("October 8, 2014 Order"). The Court dismissed CSGAG from the OTC action after review of the parties' filings, rejecting the OTC Plaintiffs' argument that "CSGAG can be held liable for the state law claims under agency or other theories." MDL Dkt. No. 627 at 1-2 & n.1.

---

[6] SAC ¶¶ 395-98.

[7] At that time, defendants' motion to dismiss the SAC had already been fully briefed.

On March 5, 2013, SEIU Pension Plans Master Trust ("SEIU") filed a complaint in the Southern District of New York that brought federal antitrust and state law unjust enrichment claims against a number of defendants, including Credit Suisse Group AG but not Credit Suisse (USA), Inc. ("SEIU Complaint"). *See* SEIU Dkt. No. 1. The SEIU Complaint was consolidated into the LIBOR MDL on March 20, 2013 and was stayed under this Court's case management orders.

On August 13, 2014, the MDL Defendants filed letters requesting leave to move to dismiss the claims in the stayed actions. On August 20, 2014, the OTC Plaintiffs filed a letter requesting to add SEIU as a lead Plaintiff and Credit Suisse (USA), Inc. as a defendant. MDL Dkt. No. 627. The OTC Plaintiffs included a redline of the PTAC, split into three attachments to their letter. *See id.* Unlike the SEIU Complaint, the PTAC named Credit Suisse (USA), Inc. as a defendant. On September 5, 2014, the Court granted the OTC Plaintiffs leave to add SEIU as a lead plaintiff, but did not specifically permit Plaintiffs to add Credit Suisse (USA), Inc. as a defendant or to file the PTAC.[8] *See* MDL Dkt. No. 638 at 2. The parties submitted letters regarding Plaintiffs' request for leave to move to dismiss and an agreed proposed briefing schedule, *see* MDL Dkt. Nos. 732, 849, and the Court telephonically approved the filing of this motion under the briefing schedule set for the previously-stayed class actions. *See* MDL Dkt. No. 865.

In the PTAC, SEIU alleges it purchased a "LIBOR-linked" bond from Credit Suisse (USA), Inc. on November 15, 2006. PTAC ¶398. It does not allege it entered into a written contract with Credit Suisse (USA), Inc. SEIU alleges two claims for relief, one for breach of the implied covenant of good faith and fair dealing and one for unjust enrichment. *See* PTAC ¶¶

---

[8] As the OTC Plaintiffs have not been granted leave to file the PTAC, and have not filed the PTAC, the Court may construe the present motion as a motion to strike OTC Plaintiffs' allegations against Defendants or a motion opposing leave to amend as to the Defendants. If the Court were to consider the PTAC as the operative complaint, the Court may construe the present motion as a motion to dismiss.

380-405 (breach of implied covenant); ¶¶ 406-409 (unjust enrichment). TCEH's breach of contract and unjust enrichment allegations against Credit Suisse International were unchanged.

The PTAC also alleges that Credit Suisse International and its subsidiaries are "controlled" by their parent company, CSGAG, because the companies allegedly operate under a unified brand and logo, have revenue sharing agreements, provide loans to each other, and have common members on their Boards of Directors. *See* PTAC ¶¶ 26-27.

## ARGUMENT

The OTC Plaintiffs' contract and unjust enrichment claims in the SAC and proposed contract and unjust enrichment claims in the PTAC are subject to dismissal on several grounds. First, the OTC Plaintiffs' unjust enrichment claims against Credit Suisse International are time barred, as are SEIU's proposed unjust enrichment claims against Credit Suisse (USA), Inc. Second, by impermissibly lumping all Credit Suisse entities together, the OTC Plaintiffs fail to adequately allege that CSGAG, Credit Suisse International, or Credit Suisse (USA), Inc. were involved in the alleged manipulation of USD LIBOR or were agents of entities involved in the manipulation. Finally, the OTC Plaintiffs fail to sufficiently allege that two Defendants, CSGAG and Credit Suisse (USA), Inc., contracted with Plaintiffs, and thus any contract based or unjust enrichment claims alleged against CSGAG and Credit Suisse (USA), Inc. cannot survive a motion to dismiss based on this Court's prior rulings.

**I.     TCEH's Unjust Enrichment Claim Against Credit Suisse International Is Time-Barred.**

**A.     TCEH's Unjust Enrichment Claim Against Credit Suisse International is Time-Barred by Texas's Two-Year Limitations Period.**

TCEH's unjust enrichment claims are time-barred by Texas's two-year limitations period because the asserted causes of action accrued in Texas — a state with a shorter limitations period than New York. The OTC action was originally filed in New York federal court and, thus, the

Court must look to New York's choice of law principles to determine what law to apply.  *See,*

*e.g.*, *Woori Bank* v. *Merrill Lynch*, 923 F. Supp. 2d 491, 495 (S.D.N.Y. 2013), *aff'd*, 542 Fed.

Appx. 81 (2d Cir. 2013); *El-Hanafi* v. *U.S.*, No. 1:13-cv-2027-GHW, 2014 WL 4199643 at* 5

(S.D.N.Y. Aug. 22, 2014); *Ellefson* v. *Megadeth, Inc.*, No. 04-Civ. 5395 (NRB), 2005 WL 82022

at *3 (S.D.N.Y. Jan. 13, 2005); *Rodriguez* v. *It's Just Lunch, International*, 300 F.R.D. 125, 135

(S.D.N.Y. 2014).   New York's borrowing statute, N.Y. C.P.L.R. § 202,[9] states that where, as

here, a cause of action accrues outside of New York, the shorter statute of limitations between

New York or the state where the action accrues applies.  *See Cantor Fitzgerald Inc.* v. *Lutnick*,

313 F.3d 704, 710 (2d Cir. 2002); *Grynberg* v. *Eni S.p.A.*, No. 06 Civ. 6495 (RLC), 2007 WL

2584727, at *3-4 (S.D.N.Y. Sept. 5, 2007).   The accrual state for purely economic injuries, like

those at issue here (*see* pp. 8-10 below), is where "the plaintiff resides and sustains the economic

impact of the loss."  *Cantor Fitzgerald, Inc.*, 313 F.3d at 710 (citation omitted); *RA Global Ser-*

*vices, Inc.* v. *Avicenna Overseas Corp.*, 817 F. Supp. 2d 274, 281-82 (S.D.N.Y. 2011) (Buch-

wald, J.).

In borrowing the statute of limitations of the accrual state, New York also borrows the

rules on accruals, extensions, and tolls.  *Grynberg*, 2007 WL 2584727, at *3-4.  To the extent

that the accrual state's statute of limitations includes rules about fraudulent concealment or toll-

ing of the statute of limitations until the discovery of the alleged injury, this Court has already

ruled that plaintiffs were on inquiry notice no later than May 29, 2008.  *In re LIBOR-Based Fi-*

*nancial Instruments Antitrust Litigation*, 935 F. Supp. 2d 666, 698, 705, 709-10 (S.D.N.Y. 2013)

---

[9] The provision states "An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply."   The statute's exception only applies to defendants who are residents of New York and is, thus, inapplicable to non-resident defendants such as Credit Suisse International (a British entity).  *Jager* v. *Mitschele*, No. 06-CV-1938 (JS)(WDW), 2010 WL 4722292, at *2 (E.D.N.Y. Nov. 12, 2010).

("*LIBOR I*"); *LIBOR III*, 2014 WL 2815645, at *14, 19. Since TCEH alleges that the latest act of unjust enrichment is May 2010, Plaintiffs should have discovered any alleged injury before the end of the period when Credit Suisse International was allegedly unjustly enriched. The outcome is the same under Texas law where a claim "generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy." *Mayo* v. *Hartford Life Insurance Co.*, 354 F.3d 400, 410 (5th Cir. 2004) (quoting *Johnson & Higgins of Texas, Inc.* v. *Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998)); *RA Global Services, Inc.*, 817 F. Supp. 2d at 290.

TCEH's unjust enrichment claims are time-barred under Texas's two-year statute of limitations. Tex. Civ. Prac. & Rem. Code § 16.003(a); *Elledge* v. *Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870-71 (Tex. 2007). TCEH alleges manipulation of LIBOR ended in May 2010, SAC ¶1, making that the last possible point at which Credit Suisse International could have profited from the alleged manipulation of LIBOR. Because TCEH's unjust enrichment claim accrued no later than May 2010, the time to file a claim expired no later than May 2012, more than a year before TCEH first sued Credit Suisse International.

**B.      Even If Texas Law Did Not Apply, Plaintiffs' Unjust Enrichment Claims Against Credit Suisse International Are Barred by New York's Three-Year Statute of Limitations.**

TCEH's unjust enrichment claim against Credit Suisse International is alternatively time-barred by New York's three-year statute of limitations. N.Y. C.P.L.R. § 214(3); *see also Kermanshah* v. *Kermanshah*, 580 F. Supp. 2d 247, 263-64 (S.D.N.Y. 2008); *Ingrami* v. *Rovner*, 45 A.D. 3d 806, 808-09 (N.Y. App. Div. 2d Dep't 2007). New York's statute of limitations for unjust enrichment accrues when the defendant allegedly enriches itself with the proceeds of the alleged misconduct. *See Pricaspian Development Corp.* v. *Total S.A.,* 397 Fed. Appx. 673, 675 (2d Cir. 2010); *Grynberg* v. *Eni S.p.A.*, No. 06 Civ. 6495 (RLC), 2007 WL 2584727, at *3

(S.D.N.Y. Sept. 5, 2007). TCEH alleges defendants' manipulation of LIBOR occurred through May 2010, which makes the end of May 2010 the latest date on which Credit Suisse International could have enriched itself and the latest date on which the time to bring unjust enrichment claims could have started to run. To be timely under New York law, Plaintiffs' claims must have been filed against Credit Suisse International by the end of May 2013. TCEH failed to meet that deadline, and its claim is time-barred.

If Texas law did not apply, TCEH's unjust enrichment claim would be subject to New York's three-year limitations period prescribed by N.Y. C.P.L.R. § 214(3),[10] because it concerns alleged economic injuries. *See, e.g.*, *Kermanshah*, 580 F. Supp. 2d at 263-64 (finding a three-year limitations period applies to unjust enrichment); *Ingrami*, 45 A.D. 3d at 808-09 (same); *Lambert* v. *Sklar*, 30 A.D.3d 564, 566 (N.Y. App. Div. 2006) (same); *Spinale* v. *Tenzer Greenblatt, LLP*, 309 A.D.2d 632, 632 (N.Y. App. Div. 1st Dep't 2003) (same); *see also United Teamster Fund* v. *MagnaCare Administration Services, LLC*, No. 13 Civ. 6062 (WHP), 2014 WL 4058070, at *12 (S.D.N.Y. Aug. 14, 2014) ("New York's statute of limitations for unjust enrichment claims is three years where a plaintiff seeks monetary relief and six years for equitable relief."); *IDT Corp.* v. *Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (2009) (recognizing for purposes of determining whether a three or six-year statute of limitations applies to fiduciary duty claims based on the distinction between a claim that seeks economic injuries or equitable relief). While New York law applies a six-year statute of limitations for those unjust enrichment claims that seek equitable relief, N.Y. C.P.L.R. § 213(1),[11] *Malmsteen* v. *Berdon, LLP*, 477 F. Supp. 2d 655, 667 (S.D.N.Y. 2007), the six-year period does not apply here because

---

[10] N.Y. C.P.L.R. § 214(3) states "an action to recover a chattel or damages for the taking or detaining of a chattel" is subject to a three-year limitations period.

[11] N.Y. C.P.L.R. § 213(1) states "an action for which no limitation is specifically prescribed by law" is subject to a six-year limitations period.

the claims, as pled, primarily seek damages. To the extent that equitable relief is sought, it is inadequately pled.

To determine whether a claim primarily seeks financial, rather than equitable relief — and thus, whether the three or six year statute of limitations applies — New York courts look to "the reality and essence of a cause of action." *Spinale* v. *Tenzer Greenblatt, LLP*, 309 A.D.2d 632, 632 (N.Y. App. Div. 1st Dep't 2003). Here, the remedy Plaintiffs seek is primarily financial — the difference between the allegedly manipulated LIBOR rate and the "true" LIBOR rate. SAC ¶¶ 396-98. Plaintiffs request that the Court award them the alleged wrongful and inequitable proceeds that Defendants allegedly received. *See, e.g.*, SAC ¶¶ 391, 396 (Credit Suisse International obtained "contractual benefits from their collusive and manipulative acts, in the form of paying less or receiving more LIBOR-based payments"). Since the essence of the damages Plaintiffs request is monetary, the three year statute of limitations for unjust enrichment based on monetary damages applies. *See Spinale*, 309 A.D.2d at 632.

TCEH does seek equitable relief for its alleged unjust enrichment claims in the form of a constructive trust. *See* PTAC ¶ 408. But that claim is inadequately pled, because the Complaint fails to include the essential allegation that there was a fiduciary relationship between Plaintiffs and Credit Suisse International. *See Malmsteen* v. *Berdon, LLP*, 477 F. Supp. 2d 655, 668-69 (S.D.N.Y. 2007); *see also In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 352 (2d Cir. 1992) ("Under New York law, a party claiming entitlement to a constructive trust must ordinarily establish four elements: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment."); *Simonds* v. *Simonds*, 45 N.Y.2d 233, 242 (1978) (constructive trust existed where there was a fiduciary relationship). The contracts entered into by the Plaintiffs and Credit Suisse International expressly

disavow that either party was "acting as a fiduciary for or an adviser" to the other. *See, e.g.*, Katz Decl. Ex. C at Part 5(b)(i)(1) (Credit Suisse International and TCEH Schedule to Master Agreement) (Each party "is acting for its own account, and it has made its own independent decisions to enter into this Agreement and each Transaction and as to whether this Agreement and each Transaction is appropriate or proper for it based solely upon its own judgment and upon advice from such advisers as it has deemed necessary."); *Id.* ("The other party is not acting as a fiduciary for or an adviser to it in respect of this Agreement or any Transaction.").[12]

## II. SEIU's Proposed Unjust Enrichment Claim Against Credit Suisse (USA), Inc. Is Also Time-Barred.

SEIU's proposed unjust enrichment claim against Credit Suisse (USA), Inc. is time-barred under either New York's[13] or Washington, D.C.'s[14] three year statute of limitations for unjust enrichment claims. The SEIU funds are headquartered in Washington, D.C., PTAC ¶19, which is the accrual jurisdiction to determine the applicable statute of limitations under New York law (*see* p. 6 above). A three year statute of limitations applies to SEIU's unjust enrichment claims because New York[15] and Washington, D.C. both apply three year statute of limitations to unjust enrichment claims. The last date SEIU alleges unjust enrichment is May 2010, and thus, its claims must have been filed against Credit Suisse (USA), Inc. by the end of May 2013. The earliest SEIU's unjust enrichment claim could be deemed filed against Credit Suisse (USA), Inc. is August 20, 2014, when the OTC plaintiffs first wrote the Court requesting leave to

---

[12] Although the SAC and PTAC do not attach or incorporate by reference the contract, this Court can consider the contract on a motion to dismiss because it is "integral to the complaint." *Cortec Industries, Inc.* v. *Sum Holding L.P.*, 949 F. 2d 42, 47-48 (2d Cir. 1991); *see also I. Meyer Pincus & Associates, P.C.* v. *Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir. 1991) (a document is integral where a Complaint relies on its terms and effect); *Done* v. *HSBC Bank USA*, No. 09-CV-4878 (JFB)(ARL), 2010 WL 3824142, at *2 (E.D.N.Y. Sept. 23, 2010) (same).

[13] N.Y. C.P.L.R. § 214(3); *see also Kermanshah* v. *Kermanshah*, 580 F. Supp. 2d 247, 263-64 (S.D.N.Y. 2008); *Ingrami* v. *Rovner*, 45 A.D. 3d 806, 808-09 (N.Y. App. Div. 2d Dep't 2007).

[14] D.C. Code §12-301; *Bregman* v. *Perles*, 747 F.3d 873, 876 (D.C. 2014).

[15] SEIU's unjust enrichment claims would be subject to New York's three-year limitations period prescribed by N.Y. C.P.L.R. § 214(3) because they concern alleged economic injuries (*see* pp. 8-10 above).

file the PTAC. SEIU's unjust enrichment claim is therefore time-barred.

**III.    Plaintiffs' Allegations of Fraudulent Concealment Do Not Alter the Application of the Statute of Limitations.**

Plaintiffs' allegations of fraudulent concealment are unavailing. Plaintiffs allege that the earliest they could have discovered any alleged manipulation of USD LIBOR was March 15, 2011. *See, e.g.*, PTAC ¶ 310. The Court has held, however, that plaintiffs were on inquiry notice no later than May 29, 2008, and this notice did not dissipate. *LIBOR I*, 935 F. Supp. 2d at 698, 705, 709; *LIBOR III*, 2014 WL 2815645, at *14-15, *19. TCEH's claims expired before they filed their initial complaints against Credit Suisse International in September 2013. Nothing in Plaintiffs' amended complaints is new or changes this analysis. *Compare, e.g.*, SAC ¶¶ 301-30, *with* PTAC ¶¶ 310-39 (identical allegations). Plaintiffs' unjust enrichment claims remain time-barred.

**IV.    Plaintiff's Unjust Enrichment and Breach of Contract and Implied Covenant of Good Faith and Fair Dealing Claims Must Be Dismissed Based on this Court's Prior Decisions.**

**A.    Credit Suisse International and Credit Suisse (USA), Inc. Were Not Panel Banks for USD LIBOR Submissions And Are Not Alleged to Have Engaged in Any Misconduct.**

All proposed unjust enrichment and implied covenant of good faith and fair dealing claims against Credit Suisse International and Credit Suisse (USA), Inc. must be dismissed,[16] as Plaintiffs have failed to allege sufficient facts to plausibly allege that these entities were involved with, or had knowledge of, the alleged LIBOR manipulation. As noted in the Direct Action briefing, *see* MDL Dkt. No. 746 at 16-18, the Court previously declined to dismiss contract or unjust enrichment claims against counterparty banks insofar as plaintiffs had "adequately alleged

---

[16] As to Credit Suisse (USA), Inc., since the PTAC has not yet been filed, they are not yet defendants in the OTC action. The Court should not permit the amendments to be filed because, as demonstrated here, the proposed amendments would be futile.

that *defendants'* alleged manipulation of LIBOR was at least in reckless disregard of the potential harm to OTC plaintiffs." *LIBOR III*, 2014 WL 2815645, at *24 (emphasis added). That holding rested on the premise that the Plaintiffs must show that their particular counterparties were actually *involved* in alleged LIBOR manipulation. *See id.* at *23 (concluding that plaintiffs adequately alleged that each of the "five counterparty banks" had "misreported its LIBOR submissions" (internal quotation marks omitted)). Further, "[u]nder *Ashcroft* v. *Iqbal*, '[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Bigio* v. *Coca-Cola.*, 675 F.3d 163, 173 (2d Cir. 2012). Additionally, "[g]roup pleading, by which allegations are made against families of affiliated entities is simply insufficient to withstand review on a motion to dismiss." *Concord Associates, L.P.,* v. *Entertainment Properties Trust*, No. 12-Civ-1667(ER), 2014 WL 1396524, at *24 (S.D.N.Y. Apr. 9, 2014*); see also, e.g.*, In re Digital Music Antitrust Litigation*, 812 F. Supp. 2d 390, 417 (S.D.N.Y. July 18, 2011) (dismissing claim against parent company where "complaint alleges direct involvement of the Parent Companies by way of generic references to 'defendants'"); *In re Processed Egg Products Antitrust Litigation*, 821 F. Supp. 2d 709, 746-49 (E.D. Pa. 2011) (rejecting "single enterprise" theory of liability and dismissing claims against corporate affiliates not alleged to have been directly involved in the alleged wrongdoing).

Here, the SAC and the PTAC both lump all of the entities together and implausibly refer to "Credit Suisse" collectively as a panel bank. SAC ¶¶20, 32; PTAC ¶¶25, 41. The OTC complaint does not allege that Credit Suisse International or Credit Suisse (USA), Inc. were on the panel for USD LIBOR submissions or any facts suggesting that any of these entities was involved in, or even had knowledge of, any alleged LIBOR manipulation. For example, the PTAC

does not and could not allege that Credit Suisse International or Credit Suisse (USA), Inc. employees were involved in or knew about the alleged manipulation of LIBOR, much less that any of the employees involved in the particular transactions these companies entered into with plaintiffs knew of such manipulation. There is also no allegation that the Credit Suisse entity that submitted LIBOR was even aware of or influenced by the transactions with plaintiffs. All breach of contract or covenant of good faith and fair dealing and unjust enrichment claims against Credit Suisse International and Credit Suisse (USA), Inc., which are not panel banks (and are not alleged to be involved in any LIBOR manipulation), must be dismissed.

Nor may such involvement or knowledge be imputed to Credit Suisse International or Credit Suisse (USA), Inc. merely by virtue of their membership in the same corporate family as CSGAG. *See In re Nokia Erisa Litigation*, No. 10 Civ. 3306 (GBD), 2011 WL 7310321, at *4 n.5 (S.D.N.Y. Sept. 6, 2011) (dismissing claim and explaining that "fact that Nokia Corp., a corporate parent, is alleged to have perpetrated a fraud does not alone establish a plausible theory for imputing Nokia Corp.'s knowledge of the truth to the subsidiary . . ."); *In re Sotheby's Holdings, Inc.*, No. 00 Civ. 1041 (DLC), 2000 WL 1234601, at *6 (S.D.N.Y. Aug. 31, 2000) (rejecting contention that it was reasonable to infer that alleged misleading statements "were endorsed by the subsidiary" and dismissing claim against subsidiary).

The OTC Plaintiffs also fail to allege facts sufficient to hold Credit Suisse International or Credit Suisse (USA), Inc. liable for Plaintiffs' unjust enrichment and contract claims under an agency theory.[17] Under New York law, "an agency relationship results from a manifestation of

---

[17] Under New York's choice of law principles "agency law questions are governed by the law of the forum with 'the most significant relationship with the particular issue in conflict.'" *Skanga Energy & Marine Ltd.* v. *Arevenca, S.A.*, No. 11cv4296, 2014 WL 3928704, at *8 (S.D.N.Y. Aug. 12, 2014). Here, there is no outcome determinative difference between Texas, Washington, D.C. and New York law—the three bodies at issue for the various claims (*see, e.g.*, pp. 5-11 above). *Compare In re Parmalat Securities Litigation*, 375 F. Supp. 2d 278, 290 (S.D.N.Y. 2005) *with Karl Rove & Co.* v. *Thronburgh*, 39 F.3d 1273, 1295-96 (5th Cir. 1994) *with Diamond Chemical Co., Inc.* v. *Atofina Chemicals, Inc.*, 268 F. Supp. 2d 1, 14 (D.D.C. 2003). "Where the laws at issue are not in actual conflict, the

-13-

consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act." *Bigio*, 675 F.3d at 175. A parent's ownership of a subsidiary and financial arrangements with the subsidiary are plainly insufficient to support allegations that the subsidiary is an agent of the parent — indeed, OTC Plaintiffs' allegations merely demonstrate the typical relationship between corporate affiliates. *Id.* at 175-76 (finding "[a] corporate parent's ownership interest in a subsidiary, standing alone . . . insufficient to demonstrate the existence of an agency relationship" and that "Plaintiffs' assertions that Defendants . . . did (and continue to do) business with CCE, and advised CCE in some unspecified manner on the subject of profitability simply do not suggest that Defendants had the power to control CCE's conduct. Indeed, these allegations amount to nothing more than the usual concomitants of the relationship between a parent and a partially-owned subsidiary."); *Fletcher* v. *Atex, Inc.*, 68 F.3d 1451, 1459-62 (2d Cir. 1995) (concluding no agency relationship existed between a parent and subsidiary even though parent's approval was necessary for subsidiary's "real estate leases, major capital expenditures, [and] negotiations for sale of minority stock ownership" and the parent and subsidiary shared a central cash management system). The OTC Plaintiffs' allegations that Credit Suisse International is "controlled" by CSGAG, that the companies "operate under a unified brand and logo," "take[] a unified approach to risk management," and that Credit Suisse International "has revenue sharing agreements with its parent,"[18] and has received loans from its parent, and that Credit Suisse (USA), Inc. is "an indirect wholly owned subsidiary of Credit Suisse Group AG" and is part of an "integrated global bank" with CSGAG, PTAC ¶25, are in-

_____

court applies New York law." *HAS Residential Mortgage Services of Texas* v. *Casuccio*, 350 F. Supp. 2d 352, 362 (E.D.N.Y. 2003).

[18] *See, e.g.*, PTAC ¶26-27. The OTC Plaintiffs also allege that Credit Suisse International and CSGAG "have overlapping Boards of Directors, and Credit Suisse Group AG approves all Board appointments for its subsidiary Credit Suisse International" and that Credit Suisse International follows CSGAG employment policies. PTAC ¶27. These allegations are likewise insufficient to support that Credit Suisse International is an agent of CSGAG. *See, Bigio*, 675 F.3d at 175-76.

sufficient to impute an agency relationship between a parent and subsidiary. *See, e.g.*, *Bigio*, 675 F.3d at 173 (2d Cir. 2012) (conclusory allegations that affiliated companies conspired, had an agency relationship, or aided and abetted wrongdoing of the other insufficient to survive a motion to dismiss). This Court has previously rejected the OTC Plaintiffs' attempts to state a claim based on conclusory agency allegations. *See* MDL Dkt. No. 682 at 1-2. All claims alleged under an agency theory against Credit Suisse International and Credit Suisse (USA), Inc. fail as the OTC plaintiffs have not pled facts sufficient to show the necessary authority or control to plausibly establish that Credit Suisse International or Credit Suisse (USA), Inc. acted as an agent of CSGAG.

**B.     CSGAG and Credit Suisse (USA), Inc. Are Non-Counterparties And Were Not Panel Banks for US LIBOR Submissions.**

OTC Plaintiffs cannot assert contract and quasi-contract claims against CSGAG and Credit Suisse (USA), Inc. because they were not counterparties to any contract with plaintiffs. As Defendants noted in their motion to dismiss the Direct Action complaints, the Court previously dismissed the OTC Plaintiffs' implied covenant and unjust enrichment actions brought against non-counterparty banks — banks that did not deal with Plaintiffs and that were not the recipients of Plaintiffs' alleged LIBOR-related losses. *See* MDL Dkt. No. 746 at 12-14 (citing *In re LIBOR-Based Financial Instruments Antitrust Litigation*, No. 11-md-2262, 2014 WL 2815645, at *20 (S.D.N.Y. June 23, 2014) ("*LIBOR III*")). The Court's core holding in *LIBOR III* regarding both implied covenant and unjust enrichment claims was that there was an "inadequate nexus" between Plaintiffs and non-counterparty defendants. *LIBOR III*, 2014 WL 2815645, at *20. Accordingly, under this Court's prior rulings, breach of the implied covenant of good faith and fair dealing and unjust enrichment claims only survive to the extent they are alleged against counterparties — *the actual entity with which the Plaintiff dealt*. As the OTC

Plaintiffs do not allege that they contracted or had any other relationship with CSGAG related to their claims, their claims against CSGAG must be dismissed.

Further, the Court has already rejected such agency arguments asserted by the OTC Plaintiffs about CSGAG. In response to CSGAG's letter seeking clarification of the Court's ruling in *LIBOR III* dismissing claims against non-counterparties, the OTC Plaintiffs argued that as a non-counterparty CSGAG could still be "held liable for the state law claims under agency or other theories" as "explained in previous briefing." MDL Dkt. No. 627 at 1-2 (citing MDL Dkt. No. 526 at 6 n.3). The Court rejected that "agency" argument as inconsistent with *LIBOR III*, holding that the OTC Plaintiffs' claims against CSGAG "fail[ed] to meet the standing requirements of Article III" because the OTC Plaintiffs only alleged a direct counterparty relationship with CSGAG's subsidiary Credit Suisse International. MDL Dkt. No. 682 at 1-2. CSGAG is dismissed from the OTC action. *Id*. That holding governs here. In any event, OTC Plaintiffs make no plausible allegations that an agency relationship existed among CSGAG, Credit Suisse International and Credit Suisse (USA), Inc. (*see* pp. 13-15 above).

Moreover, with respect to Credit Suisse (USA), Inc., the PTAC alleges SEIU purchased one "LIBOR-linked" bond and does not allege that it entered a written contract with Credit Suisse (USA), Inc. PTAC ¶398. Accordingly, the PTAC does not allege a counterparty relation-ship within the meaning of *LIBOR III* for the reasons specified in Defendants Join Memorandum of Law in Support of Defendants' Motion to Dismiss Direct Action Claims Covered by Prior Rulings and related briefing. Dkt. No. 746 at Part IV.A. CSGAG and Credit Suisse (USA), Inc. fully adopt those arguments here.

Finally, the claims against CSGAG fail independently because CSGAG, like Credit Suisse International and Credit Suisse (USA), Inc., was not on the USD LIBOR panel. Rather,

another Credit Suisse entity not named as a defendant in this action — Credit Suisse AG[19] —

was on the panel and made the submissions.

## CONCLUSION

For all the foregoing reasons, this Court should grant Credit Suisse International, CSGAG

and Credit Suisse (USA), Inc.'s motion to dismiss the SAC and to deny leave to amend and file

the PTAC as to Defendants.


Dated:  January 16, 2014                              Respectfully submitted,

                                             _/s/ Joel Kurtzberg_
                                             Joel Kurtzberg (jkurtzberg@cahill.com)
                                             Herbert S. Washer (hwasher@cahill.com)
                                             Elai Katz (ekatz@cahill.com)
                                             CAHILL GORDON & REINDEL LLP
                                             80 Pine Street
                                             New York, New York  10005
                                             Tel: (212) 701-3000; Fax: (212) 269-5420

                                             *Attorneys for Credit Suisse Group AG, Credit*
                                             *Suisse International, Credit Suisse (USA), Inc.*

---

[19] Unopposed Motion of Plaintiffs The Federal Home Loan Mortgage Corporation and the Federal Deposit Insurance Corporation as Receiver for 38 Closed Banks to Dismiss Certain Defendants Without Prejudice, Add Certain Defendants, and Amend the Case Caption in Their Respective Cases, MDL Dkt. No. 909; Katz Decl. Ex. D ¶8 (Declaration of Pierre Schreiber, MDL Dkt. No. 767).