# LOVELL STEWART HALEBIAN JACOBSON LLP

61 Broadway, Suite 501
New York, New York 10006
www.lshllp.com

| | |
|---|---|
| Telephone | Facsimile |
| 212.608.1900 | 212.719.4775 |

January 27, 2015

**BY ECF AND HAND DELIVERY**
Honorable Naomi Reice Buchwald
United States Courthouse
500 Pearl Street
New York, NY  10007-1312

    Re:    *In re LIBOR-Based Financial Instruments Antitrust Litigation*
               No. 11 Civ. 2613 (NRB), Master File No. 1:11-md-2262-NRB

Dear Judge Buchwald:

       As counsel for the Exchange-Based Plaintiffs ("Plaintiffs"), we are writing this letter pursuant to Your Honor's Individual Practices 2.B in order to request a pre-motion conference at which Plaintiffs will seek leave to lift any stay of discovery sufficient to permit Plaintiffs to initiate the following two types of Barclays Settlement Class discovery:

       **1. The CME Subpoena.**  The first is a subpoena to the Chicago Mercantile Exchange ("CME") in the form of Exhibit D to the Kovel Declaration [ECF No. 957-4, Ex. D] which will be served on the CME Group, Inc.  Rule 23(c)(2)(B) provides that notice to a Rule 23(b)(3) class must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  As in prior commodity futures manipulation cases, Plaintiffs propose to send individual, direct mail notice to the last known address of Class members here.  Eurodollar futures and options were transacted on the CME, which has two types of information helpful for this direct mail notice: (1) the names and addresses of large traders reflected on a large trader report; and (2) the names and addresses of CME clearing brokers reflected on CME records.[1]  In prior commodity futures class actions, such information has customarily been obtained from the exchange on which the futures contract is traded.  The proposed CME subpoena would obtain that information here as well.

      **2. The Document Request To Each Defendant.**  Plaintiffs respectfully request leave to send a document request in the form of Exhibit A attached hereto to each Defendant.  This request seeks documents sufficient to show the LIBOR-related borrowings and loans by each Defendant, and records of other dollar denominated borrowings or loans for those days in which

---

[1]     In order to transact on the CME, customer trades must go through and be cleared by a CME clearing member.  The Notice directs CME clearing members themselves to send the Notice to their customers who are Class members.  Reimbursement of the clearing member's reasonable mailing costs will be provided.  Alternatively, CME clearing members may supply their pertinent customers' names and addresses to the Settlement Administrator which will then make such mailing.

that Defendant did not engage in Eurodollar borrowings or loans, during the Class Period. This information will provide Plaintiffs' economist with the type of information customarily used as a benchmark in commodity futures manipulation class action claims to determine the **amount** of price artificiality for purposes of a plan of allocation (for, here, the Barclays settlement proceeds). *See* ECF Nos. 954, 956.

Pursuant to the Court's Order filed December 2, 2014, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2014 WL 6851096, ECF No. 861 (S.D.N.Y. Dec. 2, 2014) (the "Dec. 2 Order"), Plaintiffs proposed and submitted to the Court a form of Proposed Notice of Class Action Settlement with Defendant Barclays and a Summary Notice, a proposed Proof of Claim and Release forms, and proposed Plan of Allocation, and also described the proposed allocation process, and how Plaintiffs intended to address the allocation issues and adequacy concerns raised by the Court in the Dec. 2 Order. ECF Nos. 953-957.

Such proposed Plan of Allocation has one missing component, which is a schedule of the actual amounts of price artificiality of Eurodollar futures and options during the Class Period. Price artificiality, which essentially arises here from the difference between the allegedly false LIBOR that was reported and the true borrowing rate(s) of the Defendant(s), represents the amounts of allegedly unlawful impact on LIBOR on a given day. *See* ECF No. 956, Seyhun Declaration ("Seyhun Decl.") at 3-5. By applying these daily artificiality numbers as set forth in the Plan of Allocation to Class members' purchases and sales, the net damages of each Class member and the sum total of the net damages of all Class members may be determined. *See* ECF Nos. 955-956. These calculations determine the amount of the payment to each Class member under the proposed plan of allocation (subject to the legal discount process as described by Judge Gertner). ECF No. 955.

In making the foregoing estimates to date, Plaintiffs' economists have used and Plaintiffs have based allegations in the Complaint on proxies for Defendants' actual borrowing rates. This includes the proxy of the Federal Reserve Eurodollar Deposit Rate ("FRED"). However, Plaintiffs' economist, Dr. Seyhun, opines that the actual inter-bank borrowing rates, including the names of counterparties, "would provide additional refinement to and more confidence in the accuracy of the "but-for" LIBOR estimate" *i.e.*, in the estimate of the amount of daily price artificiality. Seyhun Decl. at ¶ 14. As explained in his Declaration, Dr. Seyhun intends to use such actual borrowing rates as the (or as an important part of the) benchmark from which to estimate the amounts of price artificiality. *See* Seyhun Decl. at 3-5.

The proposed Rule 34 Document Request attached as Exhibit A hereto seeks such documents and information from Defendants. Plaintiffs ask Defendants to produce documents and information regarding the **actual** interest rates charged to and by each Defendant on a daily basis during the Class period. Plaintiffs also seek the identification of the counterparties to, and amounts and durations of such transactions.[2] *See* Seyhun Decl. ¶ 13.

---

[2]  Plaintiffs are communicating with Defendants to schedule a "meet and confer" regarding the scope of the request. With Defendants' consent, Plaintiffs are submitting this Letter before such "meet and confer" has been held.

With regard to the burden on Defendants of making such production, one would think that, with all the government investigations, each Defendant already would have responsibly isolated the requested information and checked their reports against their actual borrowing rates. The "formulation of the plan [of allocation] in a case such as this is a difficult, time-consuming process." *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 170 (2d Cir. 1987). But permitting the very limited production requested herein to be made now, should not be "difficult" or "time consuming" for any Defendant that has not already isolated these documents. Finally, when viewing this litigation as a whole, there is no incremental burden whatsoever. The only burden is one of timing because the same documents would have been needed and requested later in this case. If the Plan of Allocation is to be completed now, then Plaintiffs respectfully submit that the documents are pertinent and needed now.[3]

In all the circumstances, Plaintiffs respectfully request that they be allowed to serve the proposed Rule 34 Document demand on Defendants, and the proposed subpoena on the CME.

Respectfully submitted,

| | |
|---|---|
| */s/ Christopher Lovell* | */s/ David E. Kovel* |
| Christopher Lovell | David E. Kovel |
| LOVELL STEWART HALEBIAN | KIRBY McINERNEY LLP |
| 61 Broadway, Suite 501 | 825 Third Avenue, 16th floor |
| New York, New York 10006 | New York, New York 10022 |
| Telephone: (212) 608-1900 | Telephone: (212) 371-6600 |
| Email: clovell@lshllp.com | Email: dkovel@kmllp.com |

*Interim Co-Lead Counsel for Exchange-Based Plaintiffs and the Proposed Class*

cc:   All Counsel of Record (via ECF)

---

[3] Plaintiffs emphasize here that they are not trying to obtain early merits discovery or evade any stay on discovery. Plaintiffs are solely seeking to formulate the Plan of Allocation for the Barclays Settlement in the most accurate manner possible. Solely for that purpose, Plaintiffs respectfully request that they be permitted to obtain this information. However, as a matter of case management, if this Court determines that the production of such information is premature for any reason, then Plaintiffs respectfully request that the Court direct that the completion of this part of the Plan of Allocation and the sending of the Class notice be delayed until after such time as the production of such information has been made.