# MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP

**1 CHASE MANHATTAN PLAZA**

**NEW YORK, NY 10005**

212-530-5000

FAX: 212-530-5219

David R. Gelfand
Partner
DIRECT DIAL NUMBER
212-530-5520
Fax: 212-822-5520
E-MAIL: dgelfand@milbank.com

**LOS ANGELES**
213-892-4000
FAX: 213-629-5063

**WASHINGTON, D.C.**
202-835-7500
FAX: 202-835-7586

**LONDON**
44-20-7615-3000
FAX: 44-20-7615-3100

**FRANKFURT**
49-(0)69-71914-3400
FAX: 49-(0)69-71914-3500

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**BEIJING**
8610-5969-2700
FAX: 8610-5969-2707

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

**TOKYO**
813-5410-2801
FAX: 813-5410-2891

**SÃO PAULO**
55-11-3927-7700
FAX: 55-11-3927-7777

February 4, 2015

**BY ECF AND HAND DELIVERY**

Honorable Naomi Reice Buchwald
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: <u>In re LIBOR-Based Fin. Instruments Antitrust Litig.</u>, 11-MD-2262 (NRB)

Dear Judge Buchwald:

This letter is submitted on behalf of all Defendants in the above-referenced matter other than Barclays Bank plc ("<u>Barclays</u>") in response to Exchange-Based Plaintiffs' ("<u>Plaintiffs</u>") letter dated January 27, 2015 (the "<u>Letter</u>") (ECF No. 1001). Plaintiffs seek to lift the stay of discovery[1] to permit them to initiate what they characterize as "Barclays Settlement Class discovery"—specifically: (i) a broad document request to Defendants (the "<u>Party Document Requests</u>") and (ii) a document subpoena to the Chicago Mercantile Exchange ("<u>CME</u>") (the "<u>CME Subpoena</u>"). Plaintiffs assert that the discovery they seek is necessary to develop an appropriate allocation plan for the Barclays settlement and provide notice to putative settlement class members. To the contrary, Plaintiffs are improperly seeking merits discovery in contravention of the stay. The Court should deny Plaintiffs' request. At a minimum, the Court should not authorize service of the Party Document Requests before Defendants' pending motion to dismiss for lack of personal jurisdiction (*see* ECF Nos. 966, 978) has been decided.

---

[1]    On October 23, 2014, the Court stated that it "intends to address the motions already scheduled and the anticipated motions addressed to the newly defined putative classes *before commencing any discovery*" in Plaintiffs' action. ECF No. 698 (emphasis added). The motions to which the Court referred—including motions to dismiss the Direct Action Plaintiffs' claims and the motions to dismiss previously stayed putative class actions—remain pending or subject to further briefing.

Hon. Naomi Reice Buchwald
February 4, 2015
Page 2

**The Party Document Requests**

  The Party Document Requests are far reaching. They seek all documents from Defendants regarding interest rates that any Defendant actually charged or was charged in connection with Eurodollar transactions—anywhere in the world—*each day* over a five and a half year time period—*i.e.*, between January 1, 2005 and May 31, 2010. Plaintiffs assert that the production they seek from Defendants, which they call "very limited," will be used to formulate a plan for allocation of the Barclays settlement (Letter at 3 & n.3)—specifically, to determine the amount of price artificiality during the relevant period. But the discovery Plaintiffs seek from Defendants is clearly unnecessary for that stated purpose.

  Plaintiffs' economist, Dr. H. Nejat Seyhun, opines that he can calculate LIBOR artificiality for the suppression period at issue (August 7, 2007 to May 31, 2010) by comparing LIBOR to the Federal Reserve Eurodollar Deposit rate ("<u>FRED</u>"). ECF No. 956, Seyhun Declaration ("<u>Seyhun Decl.</u>") ¶ 14. FRED is publicly available—indeed, as the Court has noted, (*see In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 679-80 (S.D.N.Y. 2013) ("<u>LIBOR I</u>"), slip op. at 10-11), Plaintiffs extensively compared Defendants' LIBOR submissions to FRED in their prior complaints. *See, e.g.*, ECF No. 438 § V.B.2.a. Although Dr. Seyhun opines that "real interbank borrowing rates" from Defendants "would provide additional refinement to and more confidence in the accuracy of" his but-for LIBOR estimates for the suppression period, he does not state the data is *necessary* to develop a fair plan of allocation.[2] Seyhun Decl. ¶ 14. Significantly, with respect to the January 1, 2005 to August 6, 2007 period, Dr. Seyhun does not even propose to calculate but-for LIBOR by reference to "real interbank borrowing rates." For that period, he proposes to calculate but-for LIBOR simply by recalculating LIBOR after replacing any manipulating bank's purportedly artificial report with "another proxy, likely the highest (or lowest) bid of the remaining banks." *Id.* ¶ 13.[3] But the Barclays settlement is based on the allegations in the complaint; Plaintiffs already have the data they relied on for that purpose.

  Much of the information sought by Plaintiffs has nothing to do with the calculation of LIBOR insofar as relevant to the Barclays settlement, which only further shows that the Party Document Requests represent an improper effort to obtain merits discovery. In addition, Plaintiffs remarkably seek the requested transaction data for *all Defendants* for each day between January 1, 2005 and May 31, 2010, even though the Barclays settlement releases putative class members' claims only against Barclays, which for the January 1, 2005 to August 6, 2007 period is alleged to have engaged in trader conduct only sporadically. Plaintiffs provide no explanation for why they could not just compute the extent to which Barclays caused LIBOR to be artificial if the goal is to allocate the sums Barclays is paying to the putative settlement class. Despite Plaintiffs' unsupported assertion that the discovery they seek would "not be 'difficult' or 'time

---

[2]  Although Plaintiffs attempt to justify the discovery sought by stating that Dr. Seyhun "intends to use such actual borrowing rates as the (or as an important part of the) benchmark" (*see* Letter at 2), Dr. Seyhun actually stated in his declaration that benchmarks other than FRED "may be appropriate." Seyhun Decl. ¶ 14.

[3]  Defendants do not express an opinion on the correct way to retroactively recalculate LIBOR—if such a task is even possible. But Plaintiffs cannot show the extensive discovery they request is necessary for this effort in the face of their own expert's statements regarding his but-for LIBOR estimations.

consuming'" for Defendants to provide (*see* Letter at 3), collection and processing of transaction data for a period of over five years for all Defendants would be unduly burdensome.

**The CME Subpoena**

Plaintiffs represent that they seek to subpoena the records of the CME for assistance in providing adequate notice to putative class members, stating there are "two types of information helpful for this direct mail notice: (1) the names and addresses of large traders reflected on a large trader report; and (2) the names and addresses of CME clearing brokers reflected on CME records." Letter at 1. Although Plaintiffs assert that their subpoena is drafted to obtain these names and addresses, the CME Subpoena actually consists of 20 requests, only two of which seek the information that Plaintiffs say they need for notice purposes.[4] As with the Party Document Requests, the CME Subpoena seeks broad-based merits discovery. This is evident from even a cursory review of the proposed subpoena, which requests, for example:

- All documents produced or received by the CME concerning this case (Request 13);

- All documents concerning any investigation relating to Defendants (Request 14);

- All documents relating to disciplinary action relating to Defendants (Request 15);

- All communications between the CME and Defendants relating to Defendants, Eurodollar Futures or Option Contracts and/or LIBOR (Request 17);

- Documents created or maintained by CME market surveillance staff (Request 16), floor observation reports or memos (Requests 11 and 12); and

- The CME Rulebook(s) for the relevant period (Request 1).

The CME Subpoena should be limited to Plaintiffs' stated effort of seeking information they need for notice purposes. Accordingly, Plaintiffs should be allowed only to subpoena two types of information from the CME—the names and addresses of "large traders" and of CME clearing brokers—and nothing more.

For the foregoing reasons, the Court should deny Plaintiffs' request to lift the stay of discovery to permit Plaintiffs to serve the Party Document Requests and CME Subpoena.

Respectfully submitted,

 /s/ David R. Gelfand

David R. Gelfand

cc: All counsel (via ECF)

---

[4] Request 19 seeks "documents sufficient to show the names and addresses of all 'large traders.'" Request 20 seeks documents sufficient "to show the names and addresses of all CME Group clearing house members who cleared any trades in Eurodollar Futures or Options Contracts." ECF No. 957, Ex. D.