**DICKSTEIN**SHAPIRO LLP

1825 Eye Street NW  |  Washington, DC 20006-5403
TEL (202) 420-2200  |  FAX (202) 420-2201  |  dicksteinshapiro.com

February 19, 2015

Via Facsimile and ECF

Honorable Naomi Reice Buchwald
United States District Court for the Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY  10007-1312

Re:    *In re LIBOR-Based Financial Instruments Antitrust Litigation*,
       No. 11-md-2262 (NRB); Restatement (Second) Torts § 531

Dear Judge Buchwald:

        Certain plaintiffs ("Requesting Plaintiffs") write to request the Court to consider this brief
answer to the Court's question at the February 5, 2015 hearing "if there [are] any limiting
principles that the plaintiffs acknowledge" regarding alleged fraud claims.  Transcript of Hearing
("Tr.") (Feb. 5, 2015) at 8:23-9:4.  The letter is intended to respond to the Court's statement that
"it would be very helpful" if plaintiffs "delineate a principle or principles that the Court could
evaluate."  *Id*.

        At the hearing, counsel speaking on behalf of all plaintiffs responded to the Court that
Section 531 of the Restatement (Second) of Torts ("Section 531") provided the limiting principle
by confining claims to the "class of persons" that the defendant "intends or has reason to expect
to act or to refrain from action in reliance upon the misrepresentation."  Tr. 10:8-17.  Plaintiffs
did not understand the Court to be soliciting each plaintiff's individual views at oral argument as
to the application of Section 531 to the misrepresentations and claimed losses alleged in each
plaintiff's respective complaint.

        Requesting Plaintiffs refer the Court to pages 16-17 of Plaintiffs' Fraud Opposition (Dkt
No. 890) ("Opp."), which quotes in part 2008 representations published by the British Bankers'
Association ("BBA") that LIBOR was "central in interest rate swaps," "the great majority of
floating rate securities and loans relate to LIBOR," LIBOR was the "basis for settlement of
interest rate contracts on the world's major futures and options exchanges" and was "written into
standard derivative and loan documentation such as the ISDA terms."[1]  Requesting Plaintiffs

---

[1] *See also* UBS Statement of Facts ¶ 1 (LIBOR was an interest-rate benchmark used in "futures, options, swaps, and
other derivative financial instruments," "mortgages," and "other consumer lending products."); Fraud Opp. at 16,
n.38 (BBA obtained trademark to market LIBOR for use in derivatives and adjustable-rate loans).

Los Angeles  |  New York  |  Silicon Valley  |  Stamford  |  Washington, DC                    DSMDB-3316245 v4

**DICKSTEIN**SHAPIRO**LLP**

Honorable Naomi Reice Buchwald
February 19, 2015
Page 2

allege that (1) the BBA acted with, and on behalf of, all Defendants[2] in promoting and marketing LIBOR as an interest-rate benchmark,[3] (2) all Defendants fundamentally misrepresented how they determined their individual submissions, how they determined LIBOR, and how they would make those determinations in the future,[4] (3) LIBOR existed to serve as an interest-rate benchmark in financial instruments that included a floating-rate component,[5] and (4) Plaintiffs reasonably relied on the misrepresentations alleged in their respective complaints.

Comment e to Section 531 states that a defendant "may have reason to expect" misrepresentations will reach a class of persons even where the defendant does not know the specific identity of those persons.[6] Comment e explains that the class of persons encompassed by Section 531 may include even "a rather large group, such as potential sellers, buyers . . . lenders or investors, or others who may be expected to enter into dealings in reliance upon the misrepresentation."

Consistent with these Section 531 limiting principles, at a minimum, plaintiffs that seek damages from losses arising from financial instruments that incorporated LIBOR for its intended

---

[2] *See, e.g.*, FDIC-R ¶ 132 (BBA "calculates and produces BBA LIBOR at the request of our members for the good of the market"), ¶¶ 67, 406 (Panel Bank Defendants served on BBA committees responsible for publishing and marketing LIBOR); Freddie Mac ¶¶ 1, 20, 74, 154 (same); Principal Financial ¶ 45 (Defendants possessed control over LIBOR).

[3] *See, e.g.*, FDIC-R ¶¶ 36-38 (an index becomes a "financial benchmark" when market participants choose to incorporate it into financial instruments) (citing multiple authorities), ¶ 41 (benchmark must serve intended purpose to be marketable), ¶ 74 (financial instruments that incorporated LIBOR as a benchmark were priced based on the express understanding that Defendants would adhere to the benchmark's published methodology), ¶¶ 291, 294, 302, 325, 328, 336 (Defendants sought to induce reliance in markets for financial products requiring an interest-rate benchmark to succeed in the fraud), ¶ 388 (Defendants colluded to create false impression that LIBOR was suited for its intended purpose); Freddie Mac ¶¶ 3, 5, 45-48, 81, 173, 193, 211, 216 (same); Principal Financial ¶¶ 152, 165-87.

[4] Defendants incorrectly claimed at oral argument that *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 786 F. Supp. 2d 1202 (S.D. Tex. 2009) is analogous. Tr. 10:18-11:13. In that case, the defendants "truthfully reported" price and volume information to an independent index publisher and asserted reliance based on an "industry practice." *Id.* at 1207. Requesting Plaintiffs have alleged not only that the Panel Banks falsely reported data to the BBA, but also that, to induce Requesting Plaintiffs' reliance, the BBA and Panel Banks collectively misrepresented how LIBOR was, and would be, determined. *See, e.g.*, Freddie Mac ¶¶ 281-98; Principal Financial ¶¶ 225-33.

[5] *See, e.g.*, Freddie Mac ¶¶ 3, 47, 48; FDIC-R ¶¶ 38, 392, 397, 408, 431, 433.

[6] A defendant has "reason to expect" a result *"if he has information from which a reasonable man would conclude that the result will follow or would govern his conduct upon the assumption that it will do so."* § 531 cmt. d.

**DICKSTEIN**SHAPIRO LLP

Honorable Naomi Reice Buchwald
February 19, 2015
Page 3

use as an interest-rate benchmark fall well within the class of persons that a reasonable person would expect would rely on LIBOR's accuracy and reliability (regardless of privity).[7]

The relevant class of persons in each action should therefore include, irrespective of privity,[8] those who incurred depression-related[9] losses on products that *incorporated* US Dollar LIBOR for its intended use as an interest-rate benchmark in over-the-counter and exchange-traded interest-rate derivatives, floating-rate securities, and floating-rate loans.[10]

Respectfully submitted,


Richard J. Leveridge
(202) 420-4778 direct dial
(202) 379-9325 direct fax
leveridger@dicksteinshapiro.com

cc:      All Counsel of Record (by ECF)

---

[7] This is not to say that other plaintiffs, who may not have had LIBOR-linked investments, cannot also meet the Restatement's "class of persons" test, as those other plaintiffs have argued. Rather, it is just to observe that the claims of the Requesting Plaintiffs here meet the plain meaning of the Restatement, regardless of what larger principle the Court uses to decide claims in other contexts.

[8] Defendants do not challenge plaintiffs' fraud claims for lack of privity. Defendants' Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Fraud and Related Claims in Direct Actions (Dkt No. 926) at 8.

[9] The City of Houston maintains that the relevant class of persons in each action should also include, irrespective of privity, those who incurred losses due to alleged upward manipulation of US Dollar LIBOR for its intended use as an interest-rate benchmark in debt instruments and obligations.

[10] Some of these financial instruments include both fixed-and floating-rate components.