**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262 (NRB) (THK) |
| THIS DOCUMENT RELATES TO:<br><br>Baltimore | |

**OTC PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS THE PUTATIVE CLASS ACTIONS
FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................. iii

FACTUAL BACKGROUND ................................................................................................. 2

    A.   Moving Defendants ................................................................................................. 2

    B.   Forum Selection Clause .......................................................................................... 2

    C.   Jurisdictional Facts for Each Moving Defendant ................................................. 3

        1.   Barclays ........................................................................................................ 3

        2.   Credit Suisse ................................................................................................. 4

        3.   Deutsche Bank .............................................................................................. 4

        4.   RBS ............................................................................................................... 5

STANDARD OF REVIEW ................................................................................................... 5

ARGUMENT ......................................................................................................................... 6

I.    Defendants "No COnsent" Argument is Meritless ........................................................ 6

    A.   Contractual Defendants' "No Contractual Consent" Argument is Wrong.................. 6

    B.   CSI, Barclays and Deutsche Bank Also Consented by New York Registration .............. 9

        1.   CSI Consented to Jurisdiction by Registering as Foreign Corporations .......................... 9

        2.   Barclays and Deutsche Bank Consented by Registering as Foreign Branches ............... 12

II.    DEFENDANTS' No "SPECIFIC JURISDICTION" Argument is MERITLESS.............. 12

    A.   Defendants' "No Nexus or Minimal Contacts" Argument is Baseless .......................... 13

    B.   Defendants' "Reasonableness" Argument Should be Rejected ...................................... 17

    C.   Defendants Do Not Contest that Agents' Contacts Are Imputed to Principals.............. 18

III.    DEFENDANTS CANNOT DEFEAT OTHER BASES OF JURISDICTION ................. 20

    A.   Defendants' "No General Jurisdiction" Argument is Mistaken ...................................... 20

    B.   Three Defendants' "No Waiver" Argument is Incorrect on These Facts........................ 22

C.     Alternative Remedies Are Preferable to Dismissal ........................................................ 24

   1.   Pendent Jurisdiction is Appropriate................................................................. 24

   2.   Case Could be Transferred to Court that Has Jurisdiction ............................. 24

   3.   Plaintiffs Should Be Given Leave for Jurisdictional Discovery.................................... 25

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
  98 F.3d 25 (2d Cir. 1996) ................................................................ 14

*Bagdon v. Philadelphia & Reading Coal & Iron Co.*,
  217 N.Y. 432 (1916) ........................................................ 9, 10, 11, 12

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
  305 F.3d 120 (2d Cir. 2002) ........................................................... 17

*Bense v. Interstate Battery System of America*,
  683 F.2d 718 (2d Cir. 1982) ............................................................. 7

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ......................................................................... 8

*Chatwal Hotels & Resorts LLC v. Dollywood Co.*,
  No. 14-CV-8679 CM, 2015 WL 539460 (S.D.N.Y. Feb. 6, 2015) ............... 10, 11, 12

*Chew v. Dietrich*,
  143 F.3d 24 (2d Cir. 1998) .............................................................. 14

*Chloe v. Queen Bee of Beverly Hills, LLC*,
  616 F.3d 158 (2d Cir. 2010) ..................................................... passim

*City of N.Y. v. Mickalis Pawn Shop, LLC*,
  645 F.3d 114 (2d Cir. 2011) ............................................................ 22

*CutCo Indus., Inc. v. Naughton*,
  806 F.2d 361 (2d Cir. 1986) .......................................................... 5, 6

*Daimler AG v. Bauman*,
  134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) ...................................... passim

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*,
  290 F.3d 42 (1st Cir. 2002) ......................................................... 13, 19

*Dichiara v. Ample Faith Investments Ltd.*,
  No. 06-3838(DLC), 2006 WL 3431197 (S.D.N.Y. Nov. 29, 2006) ................ 6, 7

*Elsevier, Inc. v. Grossman*,
  No. 12 CIV 5121 KPF, 2015 WL 72604  (S.D.N.Y. Jan. 5, 2015) ................ 19, 20

*Firstclass Corp. v. Silverjet PLC*,

    560 F. Supp. 2d 324 (S.D.N.Y. 2008) ............................................................ 7

*GB Marketing USA Inc. v. Gerolsteiner Brunnen GmbH & Co.*,
    782 F.Supp. 763 (W.D.N.Y. 1991) ................................................................ 16

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    131 S. Ct. 2846 (2011) ................................................................................... 11

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
    *425 F.3d 158*  (2d Cir. 2005) ........................................................................ 17

*Gucci Am., Inc. v. Weixing Li*,
    768 F.3d 122 (2d Cir. 2014) ............................................................. 11, 22, 23

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ....................................................................................... 15

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*,
    763 F.2d 55 (2d Cir. 1985) ............................................................................ 14

*In Ayyash v. Bank Al–Madina*,
    No. 04 Civ. 9201(GEL), 2006 WL 587342 (S.D.N.Y. March 9, 2006) .................. 25

*In re Hellas Telecommunications (Luxembourg) II SCA*,
    No. 12-10631 (MG), 2015 WL 373647 (Bankr. S.D.N.Y. Jan. 29, 2015) ............ 21

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    27 F.Supp.3d 447 (S.D.N.Y. 2014) ................................................................. 8

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    962 F. Supp. 2d 606 (S.D.N.Y. 2013) ............................................................. 8

*In re Magnetic Audiotape Antitrust Litig.*,
    334 F.3d at 208 ............................................................................................... 25

*In re S. African Apartheid Litig.*,
    643 F. Supp. 2d 423 (S.D.N.Y. 2009) ............................................................. 5

*In re Ski Train Fire in Kaprun, Austria on November 11, 2000*,
    343 F. Supp. 2d 208 (S.D.N.Y. 2004) ............................................................. 6

*Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*,
    475 F. Supp. 2d 450 (S.D.N.Y. 2007) ............................................................. 7

*IUE AFL-CIO Pension Fund v. Herrmann*,
    9 F.3d 1049 (2d Cir. 1993) ............................................................................ 24

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013) ............................................................. 14, 15, 16

*NW Direct Design & Mfg., Inc. v. Global Brand Marketing, Inc.*,
  1999 WL 493348 (S.D.N.Y. July 12, 1999)................................................................ 13

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978) .................................................................................................. 25

*Perkins v. Benguet Consolidated Mining Co.*,
  342 U.S. 437 (1952) .................................................................................................. 21

*Rainbow Apparel Distribution Ctr. Corp. v. Gaze U.S.A., Inc.*,
  295 F.R.D. 18 (E.D.N.Y.2013)................................................................................. 19

*Recurrent Capital Bridge Fund I, LLC v. ISR Sys. & Sensors Corp.*,
  875 F. Supp. 2d 297 (S.D.N.Y. 2012) .......................................................... 5, 9, 12

*Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*,
  No. 13-1654, 2014 WL 2610608 (S.D.N.Y. June 10, 2014).................................. 15

*Roby v. Corporation of Lloyd's*,
  996 F.2d 1353 (2d Cir. 1993)..................................................................................... 7

*SAS Grp., Inc. v. Worldwide Inventions, Inc.*,
  245 F. Supp. 2d 543 (S.D.N.Y. 2003) ...................................................... 13, 16, 17

*STX Panocean (UK) Co. v. Glory Wealth Shipping Pte Ltd.*,
  560 F.3d 127 (2d Cir. 2009) .................................................................................. 9, 11

*The Rockefeller Univ. v. Ligand Pharm.*,
  581 F. Supp. 2d 461 (S.D.N.Y. 2008) ................................................................... 9, 12

*Tiffany (NJ) LLC, Tiffany & Co. v. China Merchants Bank*,
  589 F. App'x 550 (2d Cir. 2014)................................................................................ 11

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*,
  216 F.Supp.2d 198 (S.D.N.Y. 2002) ...................................................................... 16

**Statutes**

28 U.S.C. § 1406....................................................................................................... 24

28 U.S.C. § 1631....................................................................................................... 24

CPLR § 1304....................................................................................................... 9, 11, 12

N.Y. Banking Law § 200 ..................................................................................... 11, 12

N.Y. Bus. Corp. Law  § 1301(a) .............................................................................. 11

N.Y. Bus. Corp. Law  § 1304(a)(6) .......................................................................... 11

N.Y. CPLR § 302(a)(1)..............................................................................................................19

(2d Cir. 1975)

Five defendants, belonging to four corporate families, seek to dismiss claims from the OTC complaint for lack of personal jurisdiction.  Defendants argue that under last year's Supreme Court decision in *Daimler AG v. Bauman*, general jurisdiction is no longer appropriate in the forum states.  While most defendants concede that personal jurisdiction is proper for OTC plaintiffs' contract claims, they argue that the forum selection clauses do not extend to their unjust enrichment claims.  Defendants also argue that specific jurisdiction is improper because plaintiffs do not allege any facts to support it.  Finally, defendants argue that general jurisdiction is lacking under *Daimler*.  The motion should be rejected for three reasons.

***First***, the forum selection clause applies to all claims "relating" to the contract, and the terms of the LIBOR swaps form part of that contract.  The unjust enrichment claims clearly "relate" to the contracts because they relate to the LIBOR swaps.  Further, the cases are clear that this type of clause, which covers all claims "relating to" the contract, is expansive enough to encompass related unjust enrichment claims.  The same forum selection clause exists in contracts with every moving defendant or its agent except the contract with RBS's agent.

***Second***, there is clearly specific jurisdiction over defendants.  According to the attached declarations, every moving defendant, or its agent, negotiated the LIBOR transactions and managed the parties' ongoing LIBOR relationship through defendants' employees who worked at defendants' New York branches.  There could not be an easier case for specific personal jurisdiction.  Defendants ignore these facts, which are within their knowledge and which easily defeat their motion, relying on the absence of allegations in the complaint.  But plaintiffs are entitled to rely on affidavits to oppose a motion to dismiss for lack of personal jurisdiction.

***Third***, there are ample other grounds to assert personal jurisdiction, including general jurisdiction, waiver, and supplemental jurisdiction.  For example, after defendants' briefing, a

SDNY bankruptcy court held that moving defendant Deutsche Bank is subject to general jurisdiction in New York under *Daimler*'s "exceptional circumstances" test.

Finally, as a matter of common sense and efficiency, defendants' motion should be rejected. At least one defendant from each moving corporate family concedes that personal jurisdiction is proper here for the contract claim. So defendants are proposing the farcical scenario in which the contract and unjust enrichment claims between the same parties, relating to the same swaps and same facts, would be litigated in different forums. That would be tremendously inefficient for the Courts and the parties. The Court should respectfully reject defendants' ***third attempt*** to prevent these claims from proceeding to discovery.

## FACTUAL BACKGROUND

### A.   Moving Defendants

During the relevant period, 3 defendants contracted directly with OTC plaintiffs ("Contracting Defendants") and the other 2 owned subsidiaries who acted as their agents in contracting directly with OTC plaintiffs ("Corporate Parents"). The following chart summarizes which claims defendants seek to dismiss and which plaintiffs they contracted with:

|  | **Contracted With** | **Seeks to Dismiss** |
|---|---|---|
| Barclays | TCEH | Unjust Enrichment |
| Credit Suisse International | TCEH | Unjust Enrichment |
| Credit Suisse Group AG | (TCEH contracted with CSI; SEIU contracted with CSUSA) | Unjust Enrichment and Contract |
| Deutsche Bank | Baltimore; New Britain; Yale | Unjust Enrichment |
| Royal Bank of Scotland Group[1] | (Highlander contracted with Citizens Bank) | Unjust Enrichment and Contract |

### B.   Forum Selection Clause

Each Contracting Defendant consented to personal jurisdiction in New York through

---

[1] These entities are referred to below, respectively, as Barclays, CSI, CSGAG, Deutsche Bank and RBS. CSUSA refers to defendant Credit Suisse (USA), Inc.  Citizens Bank refers to defendant Citizens Bank of Massachusetts.

substantially identical forum selection clauses contained in their ISDA agreements.[2] These agreements are governed by New York law.[3] The operative clause in the ISDA agreements states that, with respect to "any suit, action or proceedings ***relating to*** this Agreement ('Proceedings'), each party irrevocably" submits to the jurisdiction of the courts of New York and waives personal jurisdiction arguments "with respect to such Proceedings." *See, e.g.*, Yale Decl., Ex. 1 §13(h)(i).   Each OTC LIBOR swap was memorialized by a Confirmation that "***forms part of*** . . . the ISDA Master Agreement." *Id.* Ex. 2 at 1 (emphasis added).

### C.   Jurisdictional Facts for Each Moving Defendant

#### 1.   Barclays

On August 11, 2011, the original complaint was served on Barclays' agent in New York, who was "authorized by appointment to accept service" on Barclays' behalf. *See* 11-cv-5450 Dkt. 5.  TCEH entered into several LIBOR swaps with Barclays during the class period. TCEH Decl. ¶ 3.   The Confirmations for the swaps state that the correspondent for all payments under the LIBOR swap is "BARCLAYS BANK PLC NEW YORK."  *Id.* Ex. 4 at 4.

TCEH reached agreement on the terms of the swap through communications with Barclay's personnel who worked in Barclays' New York offices and were located in New York at the time of the negotiations. *Id.* ¶ 10.   After the swaps were entered into, all TCEH conversations related to these swaps during the Class Period were with Barclays New York personnel, contacted at their "212" numbers. *Id.*   Barclays sent TCEH the fully executed original copy of ISDA Agreement, which governed all the LIBOR swaps, from its New York office. *Id.* ¶ 12.

The attached Counsel Declaration sets forth additional facts about Barclays' LIBOR-

---

[2] The following declarations were filed in support of this motion: Alexander C. Banker ("Yale Decl."); Kristopher E. Moldovan ("TCEH Decl."); Steven Krause ("Baltimore Decl."); Jeff Buckley ("Highlander Decl."); Rebecca Salerni ("New Britain Decl."); Seth Ard ("Counsel Decl.").

[3] *See* OTC Proposed Third Amended Complaint ("OTC Compl."), Dkt. No. 627-3, ¶¶ 383, 385, 387-88, 391.

related conduct in New York and Barclays' general contacts with New York. *Id.* ¶¶ 3-8.

### 2.    Credit Suisse

CSI entered into an ISDA agreement and several LIBOR swaps with TCEH that existed during the Class Period.  TCEH Decl. ¶ 2.  TCEH negotiated and agreed to these LIBOR swaps with Credit Suisse personnel who worked and were located in Credit Suisse's New York office. *Id.* ¶ 6. After the swaps were entered into, all TCEH conversations related to these swaps were with Credit Suisse's New York personnel, contacted at their "212" numbers. *Id.*  A signed copy of the ISDA was sent to Credit Suisse in New York.  *Id.* ¶ 8.  Payments for settlement and reset notices were sent to CSI's New York bank account. *Id.* ¶ 9.  The swap confirmations were signed by "Credit Suisse Securities (USA) LLC" – a New York entity – as CSI's "agent," and executed copies were faxed to Credit Suisse in New York.  *Id.* Ex. 2; Counsel Decl. ¶ 14.

CSUSA also entered into LIBOR transactions with SEIU.  CSUSA's principal place of business is New York and does not contest jurisdiction in New York.  Counsel Decl. ¶ 13.

As explained in the accompanying memorandum, CSI and CSUSA were acting as CSGAG's agent in entering into these transactions. OTC Compl. ¶¶ 25-27. The Counsel Declaration sets forth additional allegations about Credit Suisse's LIBOR-related and general contacts with New York.  *Id.* ¶¶ 9-20.

### 3.    Deutsche Bank

Deutsche Bank entered into an ISDA agreement and several LIBOR swaps with Yale University, the City of Baltimore, and the City of New Britain Firefighters' and Police Benefit Fund, that existed during the Class Period.  OTC Compl. ¶¶ 384, 386, 393.

Yale agreed to the terms of these LIBOR swaps over the phone with employees of Deutsche Bank's New York branch, reached at their "212" numbers.  After this, Yale's primary contact for all the swaps were Deutsche Bank New York personnel. *Id.* ¶¶ 6-8. The LIBOR

swap confirmations for Yale and Baltimore state the "Office of [Deutsche Bank AG] for this transaction is New York." *Id.* ¶ 4(a); Baltimore Decl. Ex. 2.   The Baltimore and New Britain ISDA agreements are with Deutsche Bank's New York branch. Baltimore Decl. Ex. 1; New Britain Decl. Ex. 1. The Counsel Declaration sets forth additional allegations about Deutsche Bank's LIBOR-related and general contacts with New York.  Decl. ¶ 21-24.

### 4.   RBS

For the reasons set forth in the accompanying brief, Citizens Bank acted as RBS's agent in these transactions. Citizens Bank entered into a LIBOR transaction with Highlander Realty that existed during the Class period. Citizens Bank's principal place of business is in Massachusetts. *See* Highlander Complaint, 13-cv-2343 Dkt. 1-1 ¶ 3. Highlander personally discussed the terms of the LIBOR transaction with Citizens' Bank personnel in Massachusetts and they reached substantial agreement on the terms of the transaction, and substantially advanced the formation of the contract, during their discussions in Massachusetts. Highlander Decl. ¶ 2.  Questions relating to the contract were directed to Massachusetts branch. *Id.* ¶ 3. The attached declaration sets forth allegations relating to RBS's LIBOR-related and general contacts with Massachusetts and New York. Counsel Decl. ¶¶ 25-32.

### STANDARD OF REVIEW

To defeat a motion to dismiss under Rule 12(b)(2), "until an evidentiary hearing is held, [a plaintiff] need make only a *prima facie* showing by its pleadings and affidavits that jurisdiction exists." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986); *accord In re S. African Apartheid Litig.*, 643 F. Supp. 2d 423, 428 (S.D.N.Y. 2009).  Plaintiffs may rely solely on the pleadings and affidavits and, having made a *prima facie* showing, will prevail "notwithstanding a controverting presentation by the moving party."   *Recurrent Capital Bridge Fund I, LLC v. ISR Sys. & Sensors Corp.*, 875 F. Supp. 2d 297, 304 (S.D.N.Y. 2012).  Plaintiffs'

allegations and supporting affidavits are construed "in the light most favorable to plaintiffs, resolving all doubts in their favor." *CutCo*, 806 F.2d at 365.

## ARGUMENT

In an MDL, the MDL court exercises personal jurisdiction only to the extent that each transferor court could. *See In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 343 F. Supp. 2d 208, 213 (S.D.N.Y. 2004). As a result, personal jurisdiction for the Contracting Defendants and CSGAG is evaluated in New York ("New York Defendants"). Personal jurisdiction for RBS is evaluated in Massachusetts, where the Highlander action was brought.[4]

## I.   DEFENDANTS' "NO CONSENT" ARGUMENT IS MERITLESS

### A.   Contractual Defendants' "No Contractual Consent" Argument is Wrong

Contractual Defendants argue that the consent-to-jurisdiction clause in their contracts does not apply to the unjust enrichment claims. But defendants ignore the language of the actual forum-selection clause, contravening black-letter law that the analysis of the scope of a forum-selection clause turns "on the precise language used in the contract." *Dichiara v. Ample Faith Investments Ltd.*, No. 06-3838(DLC), 2006 WL 3431197, at *4 (S.D.N.Y. Nov. 29, 2006).

The forum-selection clause, which is nearly identical in each Contracting Defendant's contract, clearly encompasses the unjust enrichment claims. In that clause, the parties agreed, without limitation, that "any suit, action or proceedings ***relating to this Agreement*** (collectively defined in the agreement as 'Proceedings') may be heard in state or federal courts in Manhattan" and waived their right to object "with respect to such Proceedings, that such court does not have any jurisdiction over such party." *See, e.g.*, Yale Decl., Ex. 1 §13(h)(i) (emphasis added).

---

[4] Highlander's original complaint named Citizens Bank and Royal Bank of Scotland, plc. In the proposed consolidated complaint, Highlander asserts claims against Citizens Bank and RBS Group, which amends the Massachusetts complaint to add RBS Group. When the Highlander action is transferred back to Massachusetts, the trial will occur against these entities in Massachusetts, which is where personal jurisdiction must be evaluated.

Because the Contracting Defendants consented to jurisdiction for all claims "relating to" the forum-selection clause – which is treated as an "expansive" clause – they have consented to jurisdiction not just as to contract claims, but also to their unjust enrichment claims that arise from the same conduct.  *See Dichiara*, 2006 WL 3431197, at *4-5 (holding that a forum selection clause governing disputes "arising under or relating to" the contract was an "expansive" clause that extended to unjust enrichment and conversion claims relating to the underlying agreement); *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1359, 1361 (2d Cir. 1993) (a clause conferring on English courts "exclusive jurisdiction to settle any dispute ... arising out of or relating to" plaintiffs' business with defendants covered far more than just "allegations of contractual violations.").[5]

Nor can there be any dispute that the unjust enrichment claims "relat[e]" to the ISDA Master Agreement.   The terms of the LIBOR swaps are memorialized in a Confirmation that "***forms a part of***" the ISDA Agreement. *See*, *e.g.*, Yale Decl. Ex. 2 at 1 (emphasis added). Defendants consented to jurisdiction in New York not only for claims relating to the ISDA agreement, **but also to any claim "relating to" the LIBOR swaps at issue in this litigation**. The unjust enrichment claims clearly "relate" to these LIBOR swaps, as this Court explained:

> Plaintiffs have alleged that they purchased financial instruments from defendants wherein they paid defendants fixed sums and received in return a floating amount tied to LIBOR. . . . Although plaintiffs had entered into their swap agreements with the "expectation that the floating payments [they] would receive over the life of the contract would be calculated based on LIBOR submissions that conformed to the LIBOR definition, an

---

[5] *See also Bense v. Interstate Battery System of America*, 683 F.2d 718, 720 (2d Cir. 1982) (finding that a forum selection clause applying to "causes of action arising directly or indirectly" from an agreement covers federal antitrust actions); *cf. Firstclass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324, 329 (S.D.N.Y. 2008) (holding that a forum selection clause will also encompass related tort claims); *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 475 F. Supp. 2d 450, 454 (S.D.N.Y. 2007) (exercising personal jurisdiction over conversion and aiding and abetting claims because those claims arose out of or were based upon a contract containing a forum selection clause); *Dichiara v. Ample Faith Invs., Ltd.*, No. 06 Civ. 3838 (DLC), 2006 WL 3431197, at *4-5 (S.D.N.Y. Nov. 29, 2006) (holding that a forum selection clause governing disputes "arising under or relating to" the contract extended to unjust enrichment and conversion claims relating to the underlying agreement).

> accurate measure of interbank borrowing costs," *id.*, defendants allegedly manipulated LIBOR such that it was fixed at a lower level than it would have been at normally, and thereby paid plaintiffs less than they were entitled to receive. On face, these allegations appear to state a claim for unjust enrichment.

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 629 (S.D.N.Y. 2013).

Defendants argue that the unjust enrichment claims cannot "relat[e] to" the contract because this Court previously held that the contract does not "clearly cover" the subject matter of the unjust enrichment claim. That argument is specious: the "clearly govern" standard is far narrower than the "relate" standard, and a contract can relate to a dispute without clearly governing it. Indeed, this Court made a similar point when it rejected defendants' argument that the unjust enrichment claim should be dismissed because the claim was "traceable to a contract," namely, the ISDA agreement. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F.Supp.3d 447, 483 (S.D.N.Y. 2014) (quoting Defs.' OTC Mem. at 25). The Court explained that defendants misstated the law because the clearly govern standard is far broader than defendants' "traceable" standard. *Id.* Defendants repeat a similar mistake now: the Court's holding that the contract did not "clearly govern" the unjust enrichment claim has nothing to do with whether the claim is "related" or "traceable" to the contract.[6]

Because defendants contractually consented to personal jurisdiction for the unjust enrichment claims, the enforcement of personal jurisdiction in this district "does not offend due process." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 14 (1985); *accord Recurrent Capital*, 875 F. Supp. 2d at 306 ("Contractual consent to jurisdiction, through forum selection clauses, 'obviat[es] the need for a separate analysis of the [Constitutional] propriety of

---

[6] Defendants also argue that plaintiffs are estopped from arguing that the unjust enrichment claim is "related" to the contract because they successfully argued that the contract does not "clearly govern" the unjust enrichment claim. This rehashes the same error: a contract can relate to a dispute without clearly governing it. In fact, defendants are the ones taking inconsistent positions: defendant's prior position that the unjust enrichment claim is "traceable to [the] contract" (*see* LIBOR III at 70-71) implies that the unjust enrichment claim "relates" to the contract, which is what defendants now contest.

exercising personal jurisdiction.'" (quotation marks omitted)).

Finally, CSGAG is bound by the forum selection clause in the CSI contract because, as argued in the companion brief, CSI was acting as CSGAG's agent when it entered into that contract.[7]  *See, e.g., Recurrent Capital Bridge Fund I, LLC v. ISR Sys. & Sensors Corp.*, 875 F. Supp. 2d 297, 307-08 (S.D.N.Y. 2012) ("A non-party to a contract may be subject to its forum selection clause if the non-party is so 'closely related' to either the parties to the contract or the contract dispute itself that enforcement of the clause against the non-party is foreseeable.").

### B.      CSI, Barclays and Deutsche Bank Also Consented by New York Registration

#### 1.      CSI Consented to Jurisdiction by Registering as Foreign Corporations

CSI registered under CPLR § 1304 to do business as a foreign liability company in New York on January 13, 2014, prior to its counsel accepting service of process in this matter. Counsel Decl. ¶ 19. The application requires the "designation of the secretary of state as its agent upon whom service against it may be served," CPLR § 1304(6), and Credit Suisse designated its "legal compliance department" at an address for "Credit Suisse International" on Madison Avenue in New York City as the address where service should be forwarded.  *Id.*

"***It is well-settled under New York law that registration under § 1304 subjects foreign companies to personal jurisdiction in New York***." *STX Panocean (UK) Co. v. Glory Wealth Shipping Pte Ltd.*, 560 F.3d 127, 131 (2d Cir. 2009) (collecting cases). Personal jurisdiction in this context is premised on consent, and courts in this district have been nearly universal in finding "personal jurisdiction where a defendant has maintained an active authorization to do business on file with the Department of State."  *The Rockefeller Univ. v. Ligand Pharm.*, 581 F. Supp. 2d 461, 467 (S.D.N.Y. 2008) (collecting cases); *Bagdon v. Philadelphia & Reading Coal & Iron Co.*, 217 N.Y. 432, 436–37 (1916) (Cardozo, J.) (designation of an agent for service of

---

[7] This argument does not apply to RBS because the Highlander contract does not have a forum selection clause.

process is not merely a mechanism for transmitting process but a ***"real consent" to jurisdiction***). This consent extends to <u>all claims</u>, regardless of where they arose. *See Rockefeller*, 581 F. Supp. 2d at 466. Because this "jurisdiction is premised upon consent, it is doubtful that the minimum contacts test under the due process clause presents an impediment to the exercise of jurisdiction." *Id.* at 467. Even if due process considerations were relevant, they are easily met here given that CSI entered these LIBOR swaps while operating out of its New York branch; New York's interests in adjudicating this case are substantial given that CSI's forum selection clause requires the parties to consent to New York jurisdiction, applying New York law, for all disputes "relating to" ISDA agreement, which governs the LIBOR swaps. *See id.* (finding due process satisfied in similar circumstances).

Nor can Defendants argue that the Cardozo doctrine announced in *Bagdon* was invalidated by *Daimler*. The *Daimler* holding relates to due process in the context of <u>general jurisdiction</u>; the Cardozo doctrine rests on <u>consent to jurisdiction</u>, which is a completely separate issue in which due process concerns are minimal if any. *See, e.g., Rockefeller*, 581 F. Supp. 2d at 467 (due process concerns minimal if any). The *Daimler* Court even highlighted that jurisdiction-by-consent was not an issue there. *See Daimler,* 134 S.Ct. at 755–56 (noting that general jurisdiction defines the scope of a court's jurisdiction when an entity "***has not consented*** to suit in the forum" (quotation omitted and emphasis added)).

A court in this District has reached a different conclusion, holding that registration as a foreign liability company in New York does not constitute consent to jurisdiction in the wake of *Daimler*. *See Chatwal Hotels & Resorts LLC v. Dollywood Co.*, No. 14-CV-8679 CM, 2015 WL 539460, at *5-6 (S.D.N.Y. Feb. 6, 2015). But this decision is respectfully mistaken. The decision's discussion of this issue was brief and it did not cite the Second Circuit's decision in

*STX*, or the Cardozo decision.  The court first concluded that the prior law in this Circuit was unsettled on the Cardozo doctrine – which is contrary to the Second Circuit's conclusion in *STX*. *See* 560 F.3d at 131.  The Court then jettisoned the well-settled Cardozo doctrine based solely on the mistaken premise that the *Gucci* Court was signaling that doctrines like the Cardozo doctrine should be rejected in the wake of *Daimler*.  *Chatwal*, 2015 WL 539460 at *6.  But the *Chatwal* decision did not cite, or appear to consider, the fact that the *Gucci* Court instructed the district court on remand to determine whether there were any other bases of jurisdiction, and ***in a footnote specifically mentioned the Cardozo doctrine as a possible basis for jurisdiction***.

> The district court may also consider ***whether BOC has consented to personal jurisdiction in New York by applying for authorization to conduct business in New York*** and designating the New York Secretary of State as its agent for service of process.  N.Y. Bus. Corp. Law  § 1301(a), 1304(a)(6); N.Y. Banking Law § 200; *Bagdon v. Phila. & Reading Coal & Iron Co.,* 217 N.Y. 432, 111 N.E. 1075 (1916) (***Cardozo***, *J.*).  *See also Daimler,* 134 S.Ct. at 755–56 (noting that general jurisdiction defines the scope of a court's jurisdiction when an entity "has not consented to suit in the forum" (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2856 (2011)).

*Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 137 n. 15  (2d Cir. 2014) (emphasis added).

Far from signaling a distrust of Cardozo doctrine, the *Gucci* panel appeared to embrace it.[8]  Because nothing in *Daimler* or *Gucci* upset the Cardozo doctrine, there is no reason to depart from "the well-settled view . . . that registration under § 1304 subjects foreign companies to personal jurisdiction in New York."  *STX*, 560 F.3d at 131.  Moreover, even those rare courts that decline to apply the Cardozo doctrine recognize registration in New York is "***very strong evidence*** that the corporation is subject to *in personam* jurisdiction" in New York.

---

[8] A companion summary order issued by the same panel also invoked the Cardozo doctrine. *See Tiffany (NJ) LLC, Tiffany & Co. v. China Merchants Bank*, 589 F. App'x 550, 553 (2d Cir. 2014), *as amended* (Sept. 23, 2014).

*Chatwal*, 2015 WL 539460, at *6 (emphasis added).

2.    Barclays and Deutsche Bank Consented as Registered Foreign Branches

Barclays and Deutsche Bank obtained a license from the New York State Department of Financial Services to operate as a Foreign Branch in New York; they held this license throughout the Class Period and when this action was commenced. Counsel Decl. ¶ 20. Through the registration, these banks consented to service, and therefore personal jurisdiction, in New York for any "cause of action arising out of a transaction with its New York agency or agencies or branch or branches." N.Y. Bnk. Law 200.[9]  This provision is identical to CPLR § 1304, except that it does not grant a consent to all claims.

As set forth above, the LIBOR transactions at issue in the unjust enrichment claims are with Barclays' and Deutsche Bank's "New York agency or agencies or branch or branches." Accordingly, Barclays and Deutsche Bank have expressly consented to jurisdiction for these claims. As above, because jurisdiction is based on consent, the due process concerns are minimal, if any, and easily satisfied.

## II.    DEFENDANTS' NO "SPECIFIC JURISDICTION" ARGUMENT IS MERITLESS

Defendants argue that plaintiffs fail to allege suit-related contacts that would subject defendants to specific jurisdiction. Def. Mem. at 2. As a threshold matter, to the extent defendants argue that the pleadings alone need to establish every basis for personal jurisdiction, they are wrong: affidavits submitted with plaintiffs' opposition are also considered in determining whether plaintiffs make a prima facie showing of personal jurisdiction. *See, e.g.*, *Recurrent Capital Bridge Fund I, LLC v. ISR Sys. & Sensors Corp.*, 875 F. Supp. 2d 297, 304 (S.D.N.Y. 2012) (plaintiffs may rely on pleadings and affidavits and, having made a *prima facie*

---

[9] Defendants may argue that Barclays and Deutsche Bank only consented to service of process in this District, not specifically to personal jurisdiction.  That is incorrect: "New York's long-held view [is] that the designation of an agent for service of process is not merely a mechanism for transmitting process but a 'real consent' to jurisdiction." *The Rockefeller Univ.*, 581 F. Supp. 2d at 466-67 (citing *Bagdon*, 217 N.Y. at 436-37).

showing, will prevail "notwithstanding a controverting presentation by the moving party").[10]

Defendants are also flat wrong on the merits.  As the declarations demonstrate, and defendants know, every defendant or its agent entered into LIBOR transactions directly with an OTC plaintiff where the transactions were negotiated, agreed to, and managed by defendants' (or its agents') employees <u>who worked and were located in defendants' New York and Massachusetts offices</u>.  *See* INTRO. § C *supra*. Many of the transactions were explicitly with the "New York branch" of Contracting Defendant, and there are many other indicia that the transactions were substantially related to the forum states. *Id.* There could not be an easier case for specific-jurisdiction for the contract claim[11] and the unjust enrichment claim.[12]

## A.    Defendants' "No Nexus or Minimal Contacts" Argument is Baseless[13]

Defendants nevertheless argue that specific jurisdiction would offend due process because the injuries do not "proximately result" from defendants' New York contacts. Def. Mem. at 18. Defendants also argue that the central wrongful conduct occurred in London, making personal jurisdiction inappropriate here.  These arguments fail for three reasons.

*__First__*, defendants cite tort cases; in contract cases, it is black-letter law that there is no proximate cause requirement for jurisdiction and specific jurisdiction is proper when the

---

[10] If there is any doubt that plaintiffs can rely on these affidavits, plaintiffs should be given leave to replead the facts contained therein in the complaint.  Defendants claim that they did not waive their personal jurisdiction argument because personal jurisdiction was so obvious under prior law. Plaintiffs should be given leave to replead for the same reason.

[11] *See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 31 (2d Cir. 1996) (specific jurisdiction exists for contract "which had been partially negotiated in New York" even though the alleged breach occurred outside New York); *see also NW Direct Design & Mfg., Inc. v. Global Brand Marketing, Inc.,* 1999 WL 493348, at *3 (S.D.N.Y. July 12, 1999) ("Courts have consistently held that contract negotiations occurring in New York are sufficient to support jurisdiction when they either 'substantially advance' or were 'essential' to the formation of a contract or if they resulted in a more solid business relationship between the parties.").

[12] *See, e.g., SAS Grp., Inc v. Worldwide Inventions, Inc.,* 245 F. Supp. 2d 543, 550-51 (S.D.N.Y. 2003) (collecting cases) (defendants' negotiations in New York of contract that related to contract and unjust enrichment claim was sufficient for New York long-arm jurisdiction and comported with due process).

[13] Defendants do not contest that their acts subject them to the long-arm statutes of the forum states, and choose to rely instead on due process arguments.  Massachusetts long-arm statute is irrelevant because it extends to full extent of constitution. *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002). Cases discussing New York's long-arm statute are cited below, but the focus is on due process.

negotiations of the contract occurred in New York, even if the breach or wrong occurred elsewhere. *See, e.g., Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 31 (2d Cir. 1996) ("In *Hoffritz* we rejected the notion that a claim based on an alleged breach of contract that occurs outside of New York cannot be said to 'arise out of' transactions in the forum" (quoting *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 60 (2d Cir. 1985)).

**_Second_**, proximate cause is never required for specific jurisdiction. Defendants cite *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998) for the proposition that due process is satisfied "only if the plaintiff's injury was proximately caused by [defendant's New York] contacts." Def. Mem. at 18 (quoting *Chew*, 143 F.3d at 29). But in *Chew*, the Second Circuit explained that **_proximate cause is not required_** in circumstances where, as here, "the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial" than minimal contacts. *See Chew*, 143 F.3d at 29.[14]

Defendants' reliance on a Sixth Circuit decision is also unavailing, as it contradicts clear Second Circuit law that proximate cause is not required. In *Licci*, for example, the district court found there was no "proximate causation" between the New York contacts (wire transfers that passed through New York bank accounts) and the injury (terrorist attacks). The Second Circuit did not question this conclusion, and certified to the Court of Appeals whether proximate cause was required under the long-arm statute. Upon receiving the response that no "causal link" is required, the Second Circuit found that New York jurisdiction complied with the long-arm statute and due process. *See Licci*, 732 F.3d at 167-173.

In the Second Circuit, the only nexus required is that the forum contacts must **_"relate to"_**

---

[14] Further, the *Chew* Court questioned whether proximate cause is ever required by due process, explaining in a footnote that the only case cited for that proposition was a case that did not mention proximate cause and was based on the New York long-arm statute. *Chew*, 143 F.3d at 29 n.5; *cf. Licci*, 732 F.3d at 168 (proximate cause is not required for New York's long-arm statute).

***the claim***.  *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 167 (2d Cir. 2010)

("[***T]he nexus requirement . . . merely requires the cause of action to 'relate to' defendant's***

***minimum contacts with the forum***" (citing due process and long-arm cases) (emphasis added));

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (noting that

specific jurisdiction is proper "[w]hen a controversy is ***related to*** or 'arises out of' a defendant's

contacts with the forum" (emphasis added)).  The cases defendants cite say the same thing.  *See,*

*e.g.*, *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13-1654, 2014 WL 2610608, at *8

(S.D.N.Y. June 10, 2014)  (specific jurisdiction exists where "the claim arises out of, ***or relates***

***to***, the defendant's contacts with the forum" (emphasis added)).

  ***Third***, due process is clearly satisfied on these facts. Defendants' contacts with the

forum state, including their negotiation, agreement to, and management of the LIBOR

transactions with OTC plaintiffs that form the basis of this suit, clearly "**relate to**" the contract

and unjust enrichment causes of action for the reasons given above.  The nexus requirement

only requires that the forum contact relate to a <u>single element</u> of the claim.[15]  *See Licci*, 732

F.3d at 169 (due process and New York long-arm statute satisfied "where at least one element

[of cause of action] arises from the New York contacts" (quotations omitted)). To state a claim

for unjust enrichment, a plaintiff must allege that "(1) the other party was enriched, (2) at that

party's expense, and (3) that it is against equity and good conscience to permit the other party to

retain what is sought to be recovered." 962 F. Supp. 2d at 629 (quotations omitted).  The first

and second elements substantially relate to the LIBOR transactions, which set forth the payment

structure that Defendants manipulated to enrich themselves at Plaintiff's expense. *Id.* at 629-30

("[D]efendants allegedly manipulated LIBOR such that it was fixed at a lower level than it

---

[15] This is another reason that proximate cause of the <u>injury</u> – which is at best a single element of a claim – cannot be
a perquisite for jurisdiction.

would have been at normally, and thereby paid plaintiffs less than they were entitled to receive" under the terms of the LIBOR swap contracts, supporting the unjust enrichment claim). Further, because this Court has ruled that plaintiffs must prove that they had direct dealings with a defendant or its agent to have an unjust enrichment claim, plaintiffs' contracts are integral to their claims.

Indeed, courts regularly hold that the nexus requirement under New York's long-arm statute – which is no broader than the due process clause[16] – is met for unjust enrichment claims where, as here, a related contract was negotiated in New York. *See, e.g.*, *SAS Grp., Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543, 550-51 (S.D.N.Y. 2003) (defendants "actions that were sufficient to constitute 'transacting business' in New York in the context of [the] breach of contract claim" – a meeting in New York to solicit defendants' business and a preliminary discussion of sales of defendants' products – "also suffice to satisfy that prong of Section 302(a)(1) in the context of plaintiff's unjust enrichment claim," in which plaintiff alleged that it paid for products that it never ordered or received).[17]

Further, the relevant contacts are not just those with plaintiffs, or those that give rise to the lawsuit, but also other contacts by defendant with the forum that relate to the subject matter of the litigation, evaluated under the totality of the circumstances. *See Chloe*, 616 F. 3d at 167

---

[16] The *Licci* court found no reported decision in this circuit where the New York long-arm statute applied but due process was not satisfied. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013) ("It would be unusual, indeed, if a defendant transacted business in New York and the claim asserted arose from that business activity within the meaning of section 302(a)(1), and yet, in connection with the same transaction of business, the defendant cannot be found to have purposefully availed itself of the privilege of doing business in the forum and [to have been able to] foresee being haled into court there . . . Indeed, we have been pointed to no such decisions in this Circuit.").

[17] *See also United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F.Supp.2d 198 (S.D.N.Y. 2002) (finding nexus between plaintiff's causes of action, including unjust enrichment, and defendant's New York activities); *GB Marketing USA Inc. v. Gerolsteiner Brunnen GmbH & Co.*, 782 F.Supp. 763, 770 (W.D.N.Y. 1991) (exercise of personal jurisdiction appropriate under Section 302(a)(1) on plaintiff's unjust enrichment claims because "the combined effect of [defendant's New York] activities … was, allegedly, to create a potentially lost-lasting business relationship between [the parties], pursuant to which [plaintiff] undertook to promote the sale of [defendant's] product. It is out of that relationship that these claims arise.").

(holding that district "too narrowly construe[d] the nexus requirement" when it held that "only [the] activity upon which the complaint [was] based" was relevant for minimal contacts analysis, rather than sales of other types of products to other individuals).[18]   Defendants' relevant minimal contacts with New York and Massachusetts include not only the specific LIBOR transactions entered into with plaintiffs, but also their larger business plan of entering into untold billions of dollars of LIBOR transactions in New York and Massachusetts that defendants manipulated to their benefit.  *See Chloe*, 616 F.3d at 167 (relevant contacts were all bags defendant sold in New York, even if party did not sell in New York type of bag sold to plaintiff that gave rise to cause of action).  The relevant contacts also include all defendants' LIBOR-related conduct that has a connection with the forum states, set forth in the declarations.

Finally, there can be no doubt that by entering into the LIBOR transactions with plaintiffs through ***defendants'*** employees and agents located and based in the forum state, defendants purposefully availed themselves of the forum and should have expected to be haled to Court there. *See, e.g., SAS Grp., Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543, 547 (S.D.N.Y. 2003) (specific jurisdiction over unjust enrichment claim appropriate because defendant "deliberately reach[ed] out beyond its home state for the purpose of establishing a business relationship with [plaintiff] and, as a result, it purposefully availed [itself] of the forum and should have reasonably foreseen being haled into court here" (quotations omitted)).

### B.   Defendants' "Reasonableness" Argument Should be Rejected

Defendants also argue that exercising jurisdiction would be unreasonable, largely

---

[18] *See also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F.3d 120, 127–28 (2d Cir. 2002) (ruling that district court "took too narrow a view of the relevant contacts" where it failed to consider for due process purposes defendant law firm's maintenance of an apartment in New York, faxing of newsletters to New York, and work for New York clients as contacts "related to" plaintiff's legal malpractice claim); *see also Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 166* (2d Cir. 2005) ("No single event or contact connecting defendant to the forum state need be demonstrated; rather, the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper." (internal quotation marks omitted))

focusing on comity concerns. Def. Mem. at 19.  As a threshold matter, because there are minimum contacts, defendants bear the burden of making a "compelling case" that exercising jurisdiction would be unreasonable under the "reasonableness test." *Chloe*, 616 F.3d at 164. Defendants did not even attempt to meet their burden.

Defendants' argument is also wrong.  Defendants contend (without explanation) that three of the five reasonableness factors favor no jurisdiction: burden on defendant, the forum state's interest, and plaintiffs' interest in convenient and effective relief.[19]  To the contrary, it is undisputed that related contract claims between the same parties (or their agents) were properly brought in the forum states, so defendants are proposing the farcical scenario where plaintiffs' contract and unjust enrichment claims would be heard in different forums.  That would unduly burden the parties and the courts, not be in the interest of the forum states,[20] and would undermine plaintiffs' interest in convenient and effective relief.

Defendants' comity concerns are irrelevant to the OTC case because defendants (or their agents) already consented to jurisdiction for a related contract claim, and have already litigated and won dismissal of the antitrust claims, so they have purposefully availed themselves of this forum for disputes arising out of the same common nucleus of facts.

### C.     Defendants Do Not Contest that Agents' Contacts Are Imputed to Principals

Defendants do not deny that specific jurisdiction can be based on an agents' contacts with the state.  *Cf.* Def. Mem. n. 19 (arguing that subsidiaries' contacts cannot be imputed to

---

[19] The five factors are: 1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.  *Chloe*, 616 F.3d at 164.

[20] The forum states have a strong interest in these claims both because defendants entered into the LIBOR transactions while operating out of the forum states and because all of the moving banks have a strong presence there, they entered into LIBOR transactions with many other OTC class members who reside there, and much of defendants' LIBOR-related conduct occurred there.  New York's interest is even stronger because the ISDA agreements require New York law and consent to New York jurisdiction for all claims relating to LIBOR swaps.

parent for purposes of general jurisdiction).  Nor could they.

Courts have not hesitated to find that specific jurisdiction premised on a theory of agency, which is expressly permitted by both forum state's long-arm statutes,[21] comports with due process and the long-arm statutes.  *See Elsevier, Inc. v. Grossman*, No. 12 CIV 5121 KPF, 2015 WL 72604, at *10 (S.D.N.Y. Jan. 5, 2015) (specific jurisdiction based on agency comported with due process and New York's long-arm statute); *see also Rainbow Apparel Distribution Ctr. Corp. v. Gaze U.S.A., Inc.,* 295 F.R.D. 18, 27 (E.D.N.Y.2013) ("***Asserting jurisdiction over [defendant] on a theory of agency does not offend notions of fair play and substantial justice***."); *Chloe*, 616 F.3d at 167-68 (New York); *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002) (Massachusetts). Further, consistent with the due process clause, the forum states do not require a "formal agency relationship" for the acts to be attributed to the principal; rather, the Second Circuit, discussing New York's agency law, held that only "some control" is required.  *See Chloe*, 616 F.3d at 167-68 ("[T]he plaintiff [does] not need to establish a formal agency relationship – it is enough if the agent engaged in purposeful activities in this State ... and that [the principal] exercised some control over [agent] in the matter" (quotation marks omitted)).[22]

For the reasons explained in the companion Credit Suisse and RBS briefs, CSI and CSUSA acted as CSAG's agent and Citizens Bank acted as RBS's agent in a manner that subjects them to liability for their agents' acts.  Those same allegations are clearly sufficient to satisfy the less restrictive agency standards of the long-arm statutes and due process. Moreover, it would make no sense for the Corporate Parents to be liable for the contract and unjust

---

[21] *See* N.Y. CPLR § 302(a)(1) (permitting long-arm jurisdiction for acts done "in person ***or through an agent***." (emphasis added)); M.G.L.A. c. 223A, § 3 (acts done "directly or ***by an agent***" (emphasis added)).
[22] *See also Daynard*, 290 F.3d at 56-57 ("Even if the defendants' relationship were to fall slightly outside of the confines of these specific doctrines [including agency doctrine], the question before us is whether a sufficient relationship exists under the Due Process Clause to permit the exercise of jurisdiction, not whether a partnership, joint venture, or other particular agency relationship between the two defendants exists.").

enrichment claims because the LIBOR transactions were entered into by their agents, but not to be subject to specific jurisdiction in states where their agents negotiated those transactions.[23]

Defendants may argue that *Daimler* undercuts the use of agency to support specific jurisdiction, but that would be incorrect. The *Daimler* Court analyzed "agency" in the context of general jurisdiction, not specific jurisdiction, and highlighted that distinction. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 759, 187 L. Ed. 2d 624 (2014) ("***A subsidiary, for example, might be its parent's agent for claims arising in the place where the subsidiary operates, yet not its agent regarding claims arising elsewhere***."). That distinction was critical: the *Daimler* Court faced the due process concern of a state exercising jurisdiction over a foreign company for "events occurring *entirely outside the United States*" simply because it had an agent there. *Daimler*, 134 S. Ct. at 750. That due process concern is not pertinent to specific jurisdiction analysis where the agents' act must have a connection to the litigation and to the forum state. Not surprisingly, Courts after *Daimler* have continued to accept that an agency relationship can support specific jurisdiction. *See, e.g., Elsevier*, 2015 WL 72604 at *10.

## III.    DEFENDANTS CANNOT DEFEAT OTHER BASES OF JURISDICTION

### A.    Defendants' "No General Jurisdiction" Argument is Mistaken

Defendants argue that they are not subject to general jurisdiction in New York because this is not an "exceptional" case where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761, 187 L. Ed. 2d 624 (2014); Def. Mem. at 7.

---

[23] Royal Bank of Scotland, Plc, which is a defendant on the Massachusetts Highlander complaint, says in a footnote that it also contests jurisdiction. It is equally subject to jurisdiction in Massachusetts under agency principals. *See, e.g.*, Highlander Complaint, 13-cv-2343 Dkt. 1-1 ¶ ("RBS, at all times material hereto, set the overall policies and, in particular, loan policies and direct:, owner banks as to how all loan transactions are to be underwritten and it sets guidelines as to loan terms, rates, administration and the like for Citizens Bank, which is a wholly owned subsidiary.").

A recent decision held that Deutsche Bank is subject to general jurisdiction in New York under *Daimler's* "exceptional case" test:

> Here, the Plaintiffs rely on allegations that [Deutsche Bank, "DB"] has substantial contacts with the U.S., including a principal location "in New York, where it has $5 billion in assets and operates out of a massive 1.6 million square foot Regional Head Office at 60 Wall Street that employs some 1,600 personnel, including 1,000 executives." But unlike in *Daimler,* the Plaintiffs do not allege that DB's New York office belongs to a subsidiary or affiliate. *See id.* at 751 ("Jurisdiction over the lawsuit was predicated on the California contacts of Mercedes–Benz USA, LLC (MBUSA), a subsidiary of Daimler incorporated in Delaware with its principal place of business in New Jersey.") Rather, they allege that DB's New York office is the North American Regional Head Office for DB itself, which "serves as a critical hub of [DB's] core banking operations, and physically spans over 1.6 million square feet of space, for which [DB] pays some $67 million annually in rent, pursuant to a 15–year lease." These allegations portray DB's presence in the U.S. as more than merely transitory, but rather "so 'continuous and systematic' as to render [it] essentially at home [here]." *Daimler,* 134 S.Ct. at 761. The Plaintiffs allegations establish that DB maintains a substantial, long-term presence in the U.S. and in New York; DB's contacts with the U.S. are not limited to the in-state operations of its affiliate as in *Daimler.* The Plaintiffs therefore adequately allege that DB is subject to general jurisdiction.

*In re Hellas Telecommunications (Luxembourg) II SCA*, No. 12-10631 (MG), 2015 WL 373647, at *11 (Bankr. S.D.N.Y. Jan. 29, 2015) (citations omitted).  Deutsche Bank is subject to general jurisdiction in New York for all these reasons and those set forth in the Counsel Declaration, including that Deutsche Bank has a registered Foreign Branch in New York and is subject to oversight by New York banking authority. *Id.* ¶¶ 21-24. The other defendant groups are subject to general jurisdiction under the "exceptional" case test for similar reasons. *Id.* ¶¶ 3-20.

Defendants argue that the exceptional case doctrine is limited to circumstances like *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), where a corporation was forced to move headquarters during a war.  Def. Mem. at 7-8.  But that is inconsistent with the plain language of *Daimler*, which phrased the "exceptional case" test in terms of how "substantial" the connection is, not in terms of the reasons why the corporation may have moved.

### B.      Three Defendants' "No Waiver" Argument is Incorrect on These Facts

Three moving defendants – Barclays, Deutsche Bank, and CSGAG – have already moved to dismiss the breach of contract and unjust enrichment claims without raising a personal jurisdiction defense. They argue that they did not waive their personal jurisdiction defenses because, under *Gucci*, their *Daimler* defense was not available previously. Def. Mem. at 24. But *Gucci* only considered Rule 12(h) waiver, and the circumstances of this case are very different from *Gucci*. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (beyond Rule 12(h), there are "various [additional] reasons a defendant may be estopped from raising the issue," such as "[a] court will obtain, through implied consent, personal jurisdiction over a defendant if [t]he actions of the defendant [during the litigation] . . . amount to a legal submission to the jurisdiction of the court, whether voluntary or not," "consider[ing] all of the relevant circumstances" (quotations omitted)).

*Gucci* is a very different case.  Defendants waived their personal jurisdiction arguments by their repeated attempts to dismiss the OTC complaint, including a ***successful*** attempt to dismiss the direct breach of contract claim.  RBS also argues that parts of the Court's prior rulings on unjust enrichment bar that claim. The *Gucci* Court did not deal with that type of extreme forfeiture, where a litigant challenges personal jurisdiction after having successfully obtained merits rulings on the claims.

While defendants argue that their personal jurisdiction defense was not "available" until the Supreme Court issued its decision in *Daimler* on January 14, 2014, Defendants fail to note that they (a) filed their reply brief on the previous motion to dismiss two weeks after the *Daimler* decision entered, and appeared at oral argument 3 weeks after *Daimler* entered,

without mentioning *Daimler*.[24]   The Court denied their motions to dismiss five months later on

June 23, 2014,[25] and still Defendants said nothing about *Daimler*.   Defendants first mentioned

*Daimler* on August 14, 2014, 7 months after the decision issued.[26]   In that letter, in which

defendants were required to list all of the motions to dismiss they intended to file, Barclays and

Deutsche Bank did not list themselves as contesting personal jurisdiction in the OTC Baltimore

action:[27]

<u>**Actions Subject to Dismissal for Lack of Personal Jurisdiction**</u>

| <u>Case Name</u> | <u>Index No.</u> | <u>Defendants Moving to Dismiss</u> | <u>Date Filed</u> | <u>Jurisdiction Filed</u> |
|---|---|---|---|---|
| FTC Capital GMBH, et al.  v. Credit Suisse Grp. AG et al. | 11-cv-2613 | BTMU[1] CSGAG[2] Deutsche Bank AG Norinchukin Bank Portigon AG WestImmo[3] | 04.15.2011 | S.D.N.Y. |
| Mayor and City Council of Baltimore v. Bank of Am. Corp. et al. | 11-cv-5450 | CSGAG | 08.05.2011 | S.D.N.Y. |

Barclays' and Daimler's personal jurisdiction argument was raised for the first time

against the OTC complaint in this motion to dismiss, which was filed ***a year after Daimler***

***issued***.  These acts constitute waiver, and have no analogue in *Gucci*.

Defendants also argue that plaintiffs are not prejudiced by defendants' having waited

until now to raise this argument. But the prejudice is manifest – defendants have already

subjected plaintiffs' to two rounds of briefing on these claims, and obtained some favorable

---

[24] *Daimler* entered on January 14, 2014.  Defendant's filed their reply brief on January 28, 2014.  11-md-2262 Dkt. 536.  Defendants appeared for oral argument on the motion on February 4, 2014. 11-md-2262 Dkt. 551.
[25] 11-md-2262 Dkt. 568.
[26] Dkt. 601.
[27] RBS also sought leave to dismiss the Highlander Action for lack of personal jurisdiction and Deutsche Bank and CSGAG sought leave to dismiss the SEIU action for lack of personal jurisdiction.

rulings on them, and now seek a determination that the court lacks jurisdiction over the claims.

### C.   Alternative Remedies Are Preferable to Dismissal

#### 1.   Pendent Jurisdiction is Appropriate

Defendants argue that pendent or supplemental jurisdiction is inappropriate because a plaintiff must establish personal jurisdiction with respect to each claim asserted. Def. at 20. That misstates the law. While a plaintiff only has a <u>right</u> to have each claim heard in a state if it can establish jurisdiction for each claim, a court still has <u>discretion</u> to exercise supplemental or pendent jurisdiction over claims with the same common nucleus of facts.  *See* 4A Wright & Miller § 106.7 (explaining pendent personal jurisdiction: "a district court has discretion to exercise personal jurisdiction over a claim that it ordinarily lacks jurisdiction over only when that claim arises out of the same common nucleus of operative fact as does a claim that is within the in personam jurisdiction power of the court"). The Second Circuit accepts this doctrine.  *See IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056-57 (2d Cir. 1993) (holding that district court had personal jurisdiction over defendants as to related state-law claims on basis of pendent personal jurisdiction, because personal jurisdiction was proper over same defendants under federal statute authorizing nationwide service of process). Even if there were no jurisdiction over the unjust enrichment claims, the Court should respectfully exercise supplemental jurisdiction over them to avoid the harsh inefficiencies of adjudicating the unjust enrichment and contract claims in two separate jurisdictions.

#### 2.   Case Could be Transferred to Court that Has Jurisdiction

Should this Court determine that any of the direct actions were commenced in a state which did not have personal jurisdiction over the defendants, and that the statute of limitations has run, then the case should be transferred to a state that has jurisdiction under 28 U.S.C. §§ 1406 or 1631 in a manner that keeps plaintiffs' claims timely.  Plaintiffs refer to the letter

submitted by individual plaintiffs on February 19, 2015 for a discussion why this approach is proper.  *See* 11-md-2262 Dkt. 1025.

3.     Plaintiffs Should Be Given Leave for Jurisdictional Discovery

Defendants argue that plaintiffs should not even be entitled to jurisdictional discovery because plaintiffs have not alleged a "plausible basis" to obtain that relief.  That is meritless. To begin, defendants use the wrong standard. A plaintiff is entitled to such discovery "when the allegations are sufficient to articulate a ***colorable basis*** for personal jurisdiction, which could be established with further development of the factual record."  *Id*. at 195 (citing *In Ayyash v. Bank Al–Madina*, No. 04 Civ. 9201(GEL), 2006 WL 587342 (S.D.N.Y. March 9, 2006)). Plaintiffs easily state a "colorable basis" for all the reasons above.

In particular, plaintiffs believe that jurisdictional discovery would reveal abundant facts regarding each of the moving defendant's wrongful acts in or specifically directed to the forum states, as discussed in the declarations.  *See, e.g.*, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) ("discovery is available to ascertain the facts bearing on [jurisdictional] issues"); *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d at 208 (reversing dismissal prior to allowing discovery on the plaintiff's insufficiently developed allegations regarding the relationship between the foreign parent and its subsidiary).

In addition, to establish that RBS is alternatively subject to jurisdiction in New York, plaintiffs believe that jurisdictional discovery would reveal facts showing that RBS's contacts with New York subject it to specific and general jurisdiction in New York.  The attached declaration sets forth facts showing at least a colorable basis for that assertion.

**CONCLUSION**

For the foregoing reasons, defendants motion to dismiss for lack of personal jurisdiction should be rejected.

Dated: February 27, 2015

By:     /s/ *Michael D. Hausfeld*                        /s/ *William Christopher Carmody*

Michael D. Hausfeld                              William Christopher Carmody (WC8478)
William P. Butterfield                           Arun Subramanian (AS2096)
Hilary Scherrer                                  Seth Ard (SA1817)
Nathaniel C. Giddings                            SUSMAN GODFREY L.L.P.
HAUSFELD LLP                                      560 Lexington Avenue, 15th Floor
1700 St. NW, Suite 650                            New York, New York 10022
Washington, D.C. 20006                            Telephone: 212-336-3330
Telephone: (202) 540-7200                         Facsimile: 212-336-8340
Facsimile: (202) 540-7201                         bcarmody@susmangodfrey.com
Email: mhausfeld@hausfeldllp.com                  asubramanian@susmangodfrey.com
Email: wbutterfield@hausfeldllp.com               sard@susmangodfrey.com
Email: hscherrer@hausfeldllp.com
Email: ngiddings@hausfeldllp.com                  Marc M. Seltzer
                                                  SUSMAN GODFREY L.L.P.
***Counsel for Baltimore, New Britain, and***    1901 Avenue of the Stars
***TCEH and Interim Lead Counsel for the***      Los Angeles, California  90067-6029
***Proposed OTC Plaintiff Class***
                                                  Drew D. Hansen
Max R. Schwartz (MS2517)                          SUSMAN GODFREY LLP
Donald A. Broggi                                  1201 Third Avenue, Suite 3800
SCOTT+SCOTT LLP                                   Seattle, WA 98101
The Chrysler Building                             Telephone: (206) 516-3880
405 Lexington Avenue, 40th Floor                  Facsimile: (206) 516-3883
New York, NY 10174                                Email: dhansen@susmangodfrey.com
Telephone: (212) 223-6444
Email: mschwartz@scott-scott.com                  Barry C. Barnett
Email: dbroggi@scott-scott.com                    SUSMAN GODFREY L.L.P.
                                                  901 Main Street, Suite 5100
Christopher M. Burke                              Dallas, TX 75202
SCOTT+SCOTT LLP                                   Telephone: (214) 754-1900
707 Broadway, Suite 1000                          Facsimile: (214) 754-1933
San Diego, CA 92101                               Email: bbamett@susmangodfrey.com
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
Email: cburke@scott-scott.com                     ***Counsel for Baltimore, New Britain, and***
                                                  ***TCEH and Interim Lead Counsel for the***
                                                  ***Proposed OTC Plaintiff Class***
***Additional Counsel for Plaintiffs***

**CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2015 I caused the foregoing  OTC Plaintiffs'

Memorandum of Law In Opposition to  Defendants' Motions to Dismiss the Putative Class

Actions For Lack Of Personal Jurisdiction to be served via the Electronic Case Filing (ECF)

system in the United States District Court for the Southern District of New York, on all parties

registered for CM/ECF in the above-captioned matters.


Dated: February 27, 2015

/s/  *William C. Carmody*
William C. Carmody

1