**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262 |
| THIS DOCUMENT RELATES TO: | Master File No. 1:11-md-2262-NRB ECF Case |
| The OTC Action | |

**OTC PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO CREDIT SUISSE GROUP AG, CREDIT SUISSE INTERNATIONAL, AND CREDIT SUISSE (USA), INC.'S MOTION TO DISMISS THE OTC SECOND CONSOLIDATED AMENDED COMPLAINT AND TO DENY LEAVE TO AMEND AND FILE THE PROPOSED THIRD AMENDED COMPLAINT (ECF NO. 958)**

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT .............................................................................. 1

II.    PROCEDURAL BACKGROUND ........................................................................ 2

III.   FACTUAL ALLEGATIONS AGAINST CREDIT SUISSE ............................. 4

IV.   ARGUMENT ......................................................................................................... 5

   A.   CREDIT SUISSE'S STATUTE OF LIMITATIONS ARGUMENTS LACK MERIT. ........................... 5

      1.   *Legal Standard.* ................................................................................................... 5

      2.   *New York's Statute of Limitations Applies.* ..................................................... 6

          a.   New York has the greatest interest in the litigation. .................................... 6

          b.   SEIU and TCEH's unjust enrichment claims do not fall under New York's Borrowing Statute. ................................................................................................ 9

          c.   TCEH and SEIU's claims are subject to a six year statute of limitations and are therefore timely. ........................................................................................ 11

          d.   Even if New York's three year statute of limitations applies, TCEH and SEIU's claims are timely. .................................................................................... 13

      3.   *Application of Texas and the District of Columbia's Statutes of Limitations Does Not Render TCEH or SEIU's Unjust Enrichment Claims Untimely.* ........................................... 13

          a.   *American Pipe* tolled the claims against CSI and CSUSA. ..................... 14

          b.   TCEH and SEIU's claims relate back under Rule 15. .............................. 15

   B.   FRAUDULENT CONCEALMENT APPLIES. ..................................................................... 17

   C.   THIS COURT'S PRIOR DECISIONS DO NOT REQUIRE DISMISSAL OF THE UNJUST ENRICHMENT OR BREACH OF CONTRACT CLAIMS. ..................................................... 18

      1.   *Whether CSI or CSUSA Served on the USD LIBOR Panel is Immaterial to TCEH and SEIU's Claims.* ................................................................................................ 18

      2.   *CSGAG is Liable for the Acts of CSI and CSUSA.* ........................................ 21

V.    CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*27001 P'ships v. BT Sec. Corp.*,
   No. 2004 Civ. 7487, 2010 WL 5553366 (Ala. Cir. Ct. Jan 14, 2010) ....................................15

*Adams v. Crystal City Marriott Hotel*,
   No. 02 Civ.10258, 2004 WL 744489 (S.D.N.Y. Apr. 6, 2004)................................................10

*American Pipe & Constr. Co. v. Utah*,
   414 U.S. 538, 553 (1974)...................................................................................................13, 14

*Amusement Indus., Inc. v. Stern,*
   693 F. Supp. 2d 327 (S.D.N.Y. 2010)......................................................................................21

*Antone v. Gen. Motors Corp.*,
   64 N.Y.2d 20 (1984) .................................................................................................................10

*Appel v. Kidder, Peabody & Co.*,
   628 F. Supp. 153 (S.D.N.Y. 1986) ...........................................................................................11

*Becks v. Emery-Richardson, Inc.*,
   No. 87 Civ. 1554, 1990 WL 303548 (S.D. Fla. Dec. 21, 1990) ........................................14, 15

*Bigio v. Coca- Cola Co.*,
   675 F.3d 163 (2d Cir. 2012)......................................................................................................21

*Bishop v. Best Buy, Co. Inc.*,
   No. 08 Civ. 8427, 2010 WL 4159566 (S.D.N.Y. Oct. 13, 2010) .............................................16

*Bishop v. City of N.Y.*,
   518 F. App'x 55 (2d Cir. 2013) ................................................................................................16

*Bradkin v, Leverton*,
   26 N.Y.2d 192 (1970) ...............................................................................................................21

*Cantor Fitzgerald Inc. v. Lutnick*,
   313 F.3d 704 (2d Cir. 2002)........................................................................................................9

*Chardon v. Soto*,
   462 U.S. 650 (1983)..................................................................................................................14

*Cherry v. Victoria Equip. & Supply, Inc.*,
   645 S.W.2d 781 (Tex. 1983)......................................................................................................18

*Cleveland v. Caplaw Enters.*,
   448 F.3d 518, 523 (2d Cir. 2006)..............................................................................................23

*Columbia Broad. Sys., Inc. v. Stokely–Van Camp, Inc.*,
  522 F.2d 369 (2d Cir. 1975)...........................................................................21

*Cooney v Osgood Mach., Inc.*,
  81 N.Y.2d 66 (1993) ........................................................................................7

*Corsello v. Verizon N.Y., Inc.*,
  18 N.Y.3d 777 (2012) .....................................................................................20

*Counihan v. Allstate Ins. Co.*,
  194 F.3d 357 (2d Cir. 1999)............................................................................12

*Crown, Cork & Seal Co. v. Parker*,
  462 U.S. 345, 350 (1983)................................................................................14

*Cullen v. Margiotta*
  811 F.2d 698 (2d Cir. 1987).....................................................................14, 15

*DD v. Lincoln Hall*,
  No. 09-CV-860 CS/LMS, 2010 WL 695027 (S.D.N.Y. Feb. 19, 2010) ...................6

*Dodona I, LLC v. Goldman, Sachs & Co.*,
  847 F.Supp.2d 624 (S.D.N.Y.2012).................................................................20

*Earl v. Novartis Consumer Health, Inc.*,
  2008 WL 4274468, at *4 n.2 (S.D.N.Y. 2008) ................................................15

*Elbit Sys., Ltd. v. Credit Suisse Grp.*,
  917 F. Supp. 2d 217 (S.D.N.Y. 2013)........................................................20, 21

*EMD Constr. Corp. v. New York City Dep't of Hous. Pres. & Dev.*,
  70 A.D.3d 893, 895 N.Y.S.2d 469 (2010) ......................................................12

*Flight Scis., Inc. v. Cathay Pac. Airways Ltd.*,
  647 F. Supp. 2d 285 (S.D.N.Y. 2009) .............................................................11

*Forster v. Schofield*,
  No. 3:11-0109, 2011 WL 6101548 (M.D. Tenn. Dec. 8, 2011) .........................1

*FTC Capital GMBH v. Credit Suisse Grp. AG*,
  No. 11-2613 (S.D.N.Y. Apr. 15, 2011)..............................................................2

*Grynberg v. Eni S.p.A.*,
  No. 06 Civ. 6495, 2007 WL 2584727 (S.D.N.Y. Sept. 5, 2007) ........................9

*Hyatt v State of Cal. Franchise Tax Bd.*,
  105 A.D.3d 186, 962 N.Y.S.2d 282 (2d Dep't 2013) ......................................11

*In re Chaus Sec. Lit.*,
    801 F. Supp. 1257 (S.D.N.Y. 1992)........................................................16

*In re Digital Music Antitrust Litig.*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011)......................................................21

*In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig.*,
    815 F. Supp. 620 (S.D.N.Y. 1993) ..........................................................16

*In re Joint E. & S. Dist. Asbestos Litig.*,
    129 B.R. 710 (E.D.N.Y. 1991) ................................................................10

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    27 F. Supp. 3d 447 (S.D.N.Y. 2014)...........................................3, 4, 19, 21

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    962 F. Supp. 2d 606 (S.D.N.Y. 2013)...................................................8, 14

*In re Mirena IUD Prods. Liab. Litig.*,
    29 F. Supp. 3d 345 (S.D.N.Y. 2014)..........................................................5

*In re Processed Egg Prods. Antitrust Litig.*,
    821 F. Supp. 2d 709 (E.D. Pa. 2011) ......................................................21

*In re S. African Apartheid Litig.*,
    617 F. Supp. 2d 228 (S.D.N.Y. 2009)......................................................21

*In re S. African Apartheid Litig.*,
    633 F. Supp. 2d 117 (S.D.N.Y. 2009)......................................................21

*In re Sept. 11th Litig.*,
    494 F. Supp. 2d 232 (S.D.N.Y. 2007).........................................................7

*In re Sumitomo Copper Litig.*,
    120 F. Supp. 2d 328 (S.D.N.Y. 2000)......................................................17

*In re WorldCom Sec. Litig.*,
    496 F.3d 245 (2d Cir. 2007)....................................................................14

*Kermanshah v. Kermanshah*,
    580 F. Supp. 2d 247 (S.D.N.Y. 2008)......................................................12

*Krupski v. Costa Crociere S.p.A.*,
    560 U.S. 538 (2010)................................................................................16

*Lang v. Paine, Webber, Jackson & Curtis, Inc.*,
    582 F. Supp. 1421 (S.D.N.Y. 1984).........................................................11

*Mandarino v. Mandarino*,
   180 F. App'x 258 (2d Cir. 2006) ...........................................................................6

*Maslan v. Am. Airlines, Inc.*,
   885 F. Supp. 90 (S.D.N.Y. 1995) ..........................................................................7

*Merrifield v. Bd. of Cnty. Comm'rs for Cnty. of Santa Fe*,
   654 F.3d 1073 (10th Cir. 2011) ...........................................................................21

*Natural Res. Corp. v. Royal Res. Corp.*,
   427 F. Supp. 880 (S.D.N.Y. 1977) .......................................................................10

*Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*,
   51 F. Supp. 2d 457 (S.D.N.Y. 1999).......................................................................5

*Probulk Carriers Ltd. v. Peraco Chartering USA LLC*,
   No. 11 Civ 5686, 2012 WL 3095319 (S.D.N.Y. July 20, 2012) ...........................20

*RA Global Servs. v. Avicenna Overseas Corp.*,
   817 F. Supp. 2d 274 (S.D.N.Y. 2011)......................................................................9

*Roni LLC v. Arfa*,
   18 N.Y.3d 846 (2011) ...........................................................................................12

*Sack v. Low*,
   478 F.2d 360 (2d Cir. 1973)............................................................................10, 11

*Sapirstein-Stone-Weiss Found. v. Merkin*,
   950 F. Supp. 2d 621 (S.D.N.Y. 2013)....................................................................14

*Simonds v. Simonds*,
   45 N.Y.2d 233 (1978) ...........................................................................................20

*Skanga Energy & Marine Ltd. v. Arevenca, S.A.*,
   No. 11-cv-4296, 2014 WL 3928704 (S.D.N.Y. Aug. 12, 2014)............................21

*Sounds Express Int'l Ltd. v. Ame. Themes and Tapes, Inc.*,
   101 F.R.D. 694 (S.D.N.Y.1984) ...........................................................................16

*Spiro v. Healthport Techs., LLC*,
   No. 14 Civ. 2921, 2014 WL 4277608 (S.D.N.Y. Aug. 29, 2014) .........................21

*State of N.Y. v. SCA Servs., Inc.*,
   761 F. Supp. 14 (S.D.N.Y. 1991) ..........................................................................12

*Thompson v. Dolgencorp, LLC*,
   No. Civ-14-243, 2015 WL 339717 (E.D. Okla. Jan. 26, 2015).............................16

*Transamerican Ref. Corp. v. Dravo Corp.*,
No. Civ. A. H-88-789, 1990 WL 122228 (S.D. Tex. June 22, 1990) ..................................... 17

*United Bd. of Carpenters & Joiners of Am. v Nyack Waterfront Ass'n*,
212 A.D.2d 778, 623 N.Y.S.2d 601 (2d Dep't 1995) .............................................................. 10

*Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
446 F. Supp. 2d 163 (S.D.N.Y. 2006) ....................................................................................... 9

*Usach v. Tikhman*,
No. 11 Civ. 1472, 2011 WL 6106542 (S.D.N.Y. Dec. 7, 2011) ............................................... 7

*Welsbach Elec. Corp. v. MasTec N. Am., Inc.*,
7 N.Y.3d 624 (2006) .............................................................................................................. 11

*Williams v. Dow Chem. Co.*,
No. 01 Civ. 4307, 2004 WL 1348932 (S.D.N.Y. June 16, 2004) ........................................... 14

*Wood v. Mustang Exp. Trucking, Inc.*,
No. 00-CV-6433T, 2007 WL 655624 (W.D.N.Y. Feb. 26, 2007) .......................................... 21

*Xiotech Corp. v. Express Data Prods. Corp., ESI, LLC*,
11 F. Supp. 3d 225 (N.D.N.Y. 2014) ....................................................................................... 7

*Zeno v. Ford Motor Co.*,
480 F. Supp. 2d 825 (W.D. Pa. 2007) .................................................................................... 21

## STATUTES

C.P.L.R. § 202 ............................................................................................................................ 9

C.P.L.R. § 213 .......................................................................................................................... 12

Fed. R. Civ. P. 12 ....................................................................................................................... 1

## OTHER AUTHORITIES

Credit Suisse, Annual Report 2013, at 335, available at https://www.credit-
suisse.com/media/cc/docs/ publications/annualreporting/2013/csg-ar-2013-en.pdf ............... 19

Credit Suisse Group AG – Principal Legal Entities Overview (Sept. 29, 2014), available
at https://www.credit-suisse.com/media/ cc/docs/investors/simplified-legal-entity-
overview.pdf ........................................................................................................................... 21

## I.      **PRELIMINARY STATEMENT**

Over the Counter Plaintiffs ("OTC Plaintiffs")[1] hereby respond to Credit Suisse Group AG ("CSGAG"), Credit Suisse International ("CSI"), and Credit Suisse (USA), Inc.'s ("CSUSA") (collectively "Credit Suisse")[2] Motion to Dismiss their Second Amended Consolidated Amended Complaint and to Deny Leave to Amend and File the Proposed Third Amended Complaint and Memorandum of Law in Support thereof, ECF Nos. 958 & 960 (hereinafter "Memorandum").[3] In their Memorandum, Credit Suisse argues that OTC Plaintiffs' state law claims are time barred and that prior rulings of this Court compel their dismissal.[4] Each of these arguments lacks merit, and the Court should deny the motion in its entirety.

First, Credit Suisse does ***not*** contest that Texas Competitive Electric Holdings Company LLC ("TCEH") and SEIU Pension Plans Master Trust ("SEIU")'s breach of contract claims are untimely; that TCEH and SEIU's unjust enrichment claims are untimely under New York's six year statute of limitations; or that any of TCEH and SEIU's claims against CSGAG are untimely under any jurisdiction's statute of limitations. Because New York's six year statute of limitations applies to TCEH and SEIU's claims, all of their claims are timely. Regardless, TCEH and SEIU's unjust enrichment claims are timely under Texas and District of Columbia's statutes of limitation, respectively, under *American Pipe* tolling and under Rule 15(c).

---

[1] OTC Plaintiffs are Mayor and City Council of Baltimore; City of New Britain Firefighters' and Police Benefit Fund; Texas Competitive Electric Holdings Company LLC, Yale University; Jennie Stuart Medical Center, Inc.; Variety Children's Hospital d/b/a Miami Children's Hospital; Highlander Realty LLC, and SEIU Pension Plans Master Trust.

[2] Credit Suisse contends that "since the PTAC has not yet been filed," CSUSA is not yet a defendant "in the OTC action." Mem. at 11. However, CSUSA has moved to dismiss the SCAC, and a non-party cannot move to dismiss an action. *See* Fed. R. Civ. P. 12(b) ("[A] party may assert . . ."); *see also Forster v. Schofield*, No. 3:11-0109, 2011 WL 6101548, at *5 (M.D. Tenn. Dec. 8, 2011). CSUSA therefore appears to accept the fact that it is a defendant.

[3] All references herein refer to the memorandum of law in support of the motion.

[4] Credit Suisse also seeks denial of leave to file the PTAC because "the proposed amendments would be futile." Mem. at 11. For ease of reference, OTC Plaintiffs will refer to the present motion as a motion to dismiss.

1

Second, Credit Suisse's argument that CSI and CSUSA cannot be held liable because they were not on the U.S. Dollar LIBOR panel overlooks the fact that Credit Suisse itself identified the entire "group," including subsidiaries, as being on the submitting panel, the close inter-relationship and overlapping management of the Credit Suisse entities, and the fact that unjust enrichment claims extend to defendants who may have been enriched despite no involvement in the wrongdoing at issue.

Third, Credit Suisse's argument that claims against CSGAG are foreclosed by the Court's prior opinions inasmuch as CSGAG was not a signatory to TCEH or SEIU's contracts overlooks the detailed allegations supporting agency in the OTC Plaintiffs' Proposed Third Amended Complaint ("PTAC"), ECF No. 627-1-3 (filed Aug. 20, 2014), which have ***never*** been addressed or ruled upon by the Court. Given those allegations, and indeed prior case law where claims have been ***sustained*** against CSGAG based on the contracting of its subsidiaries, the Court should not dismiss these fact-intensive allegations at the pleadings stage.

## II.    **PROCEDURAL BACKGROUND**

These consolidated proceedings can be traced to the filing of a class action complaint in this District in April 2011. *See* Class Action Compl., *FTC Capital GMBH v. Credit Suisse Grp. AG*, No. 11-2613 (S.D.N.Y. Apr. 15, 2011). In relevant part, that complaint alleged collusive suppression of LIBOR, named CSGAG as a defendant, and asserted claims for violations of the Sherman Act and unjust enrichment on behalf of "all others who transacted Libor-based contracts on the Chicago Mercantile Exchange . . . and the over-the-counter . . . market between 2006 and June 2009. . . ." *Id*. at 1.[5] On September 10, 2013, OTC Plaintiffs filed their Second Consolidated Amended Complaint ("SCAC"). ECF No. 406. In relevant part, the SCAC added

---

[5] That complaint noted that "over-the-counter swaps, including, but not limited to . . . plain vanilla swaps . . . based on Libor" were encompassed by its class definition. *Id*. at ¶ 44.

TCEH as a plaintiff and CSI as a defendant, alleged collusive suppression of LIBOR, and asserted federal and state law claims.

On November 26, 2013, the Defendants moved to dismiss the state law claims asserted by the OTC Plaintiffs in the SCAC,[6] *see* ECF No. 508, and on June 23, 2014, the Court denied this motion as to those Defendants with whom the OTC Plaintiffs "directly transacted": UBS, Deutsche Bank, Barclays, Citibank, and Credit Suisse. *In re LIBOR-Based Fin. Instruments Antitrust Litig*., 27 F. Supp. 3d 447, 478 (S.D.N.Y. 2014) ("*LIBOR III*").[7] Counsel for CSGAG and CSI wrote the Court on August 13, 2014 asking it to clarify *LIBOR III* and to dismiss the claims against CSGAG "(not a contracting party)" ***but not CSI*** "(a contracting party)." ECF No. 590. Credit Suisse did not contend at that time, as it now does, that *LIBOR III* was wrongly decided against CSI because the claims against it are untimely.

At that time, OTC Plaintiffs moved the Court for permission to file the PTAC, which, in relevant part, proposed to add SEIU as a plaintiff and CSUSA as a defendant. The PTAC also added agency allegations to make it clear that CSI and CSUSA were acting as CSGAG's agent.

On October 8, 2014, the Court clarified *LIBOR III*, holding that "the OTC [P]laintiffs' claims survive against CSI − and not against CSGAG − because the OTC [P]laintiffs alleged only that one of the OTC plaintiffs had contracted with CSI." Order, ECF No. 682. But the Court did not rule on OTC Plaintiffs' request for leave to file PTAC, which ***added agency allegations*** against the Credit Suisse entities. Credit Suisse did not oppose the filing of the PTAC, the

---

[6] While CSI did not join the motion on its face, CSGAG did; the Defendants never explicitly disavowed CSI's involvement in the briefing, and indeed, the memorandum of law in support of the motion (joined by CSGAG) makes numerous arguments as to why the SCAC's claims against CSI should be dismissed. *See* Mem. of Law in Supp. of Defs.' Mot. to Dismiss OTC Pls.' Sec. Consol. Am. Compl., ECF No. 508 at 5 n.6; 15 n.12 (filed Nov. 26, 2013).

[7] The parties briefed one of the same arguments that Credit Suisse raises again the present motion: whether TCEH unjust enrichment claim against CSI was barred by the statute of limitations. *See* ECF Nos. 508 at 15 n.12; 526 at 12 n.6. The Court did not discuss this argument in *LIBOR III*.

addition of SEIU as a plaintiff, or the addition of CSUSA as a defendant.[8] On September 5,

2014, the Court granted OTC Plaintiffs leave to add SEIU as a named plaintiff. Order, ECF No.

638. Credit Suisse thereafter filed the present motion on January 16, 2015.

## III.   FACTUAL ALLEGATIONS AGAINST CREDIT SUISSE

The OTC Plaintiffs' SCAC and PTAC contain allegations against Credit Suisse that are

more than sufficient to state plausible claims for unjust enrichment and breach of the implied

covenant of good faith and fair dealing against each of CSGAG, CSI, and CSUSA.

As to CSI, the SCAC alleges that "[o]n October 29, 2007, TCEH entered into an ISDA

Master Agreement with [CSI] . . ." the terms of which "are governed by New York law."

Pursuant to the terms of this master agreement, "TCEH owned and entered into several fixed-for-

floating swaps during the Class Period with . . . Credit Suisse . . . ." SCAC ¶ 387.[9]

The PTAC adds SEIU as a plaintiff and CSUSA as a defendant (which the Court

permitted on September 5, 2014, ECF No. 638) and specifically alleges that SEIU purchased

500,000 LIBOR-linked bonds issued by CSUSA on November 15, 2006. PTAC ¶ 19. Second, it

alleges that CSI "and its 'subsidiaries are 'controlled' by their ultimate parent, [CSGAG] . . . ."

PTAC ¶¶ 26, 27. In support of this allegation, the PTAC alleges as follows:

> These entities operate under a unified brand and logo, and Credit
> Suisse presents itself as an 'integrated global bank.' Credit
> Suisse takes a unified approach to risk management that requires certain
> [CSI] personnel ultimately to report to [CSGAG] personnel. [CSI]
> is managed as part of the Investment Banking Division of
> [CSGAG], and [CSI] has revenue sharing agreements with its
> parent. [CSGAG] ensures that its subsidiary is able to meet its debt
> obligations, and makes loans worth billions of dollars to that end.

---

[8] Only RBS opposed the filing of the PTAC. *See* ECF No. 732 (filed Nov. 5, 2014).

[9] TCEH also entered into ISDA Master Agreements with Barclays and Citibank and entered into fixed-for-floating swaps with these banks during the Class Period. *Id*. at ¶ 387. In *LIBOR III*, the Court found that the unjust enrichment and breach of contract claims against these three entities survived, 27 F. Supp. 3d at 482, and neither Barclays nor Citibank have joined Credit Suisse's statute of limitations defense.

> Credit Suisse also has overarching organizational and employment policies. [CSI] and [CSGAG] have overlapping Boards of Directors, and [CSGAG] approves all Board appointments of its subsidiary [CSI]. The [CSGAG] Remuneration Committee recommends employee compensation amounts for [CSI]. [CSI] also adheres to employment policies by its parent, [CSGAG].

PTAC ¶¶ 26, 27. The PTAC also alleges that CUSA is "an indirect and wholly owned subsidiary of [CSGAG] . . . domiciled in Wilmington, Delaware" and that it "is part of the 'integrated global bank' [CGAG], is controlled by [CSGAG], and its debt securities are guaranteed by [CSGAG]." PTAC ¶ 25. The PTAC expressly alleges that CSI "operated as [CSGAG]'s agent with respect to the TCEH Credit Suisse Master Agreement." PTAC ¶ 389.

## IV.   ARGUMENT

### A.   Credit Suisse's Statute of Limitations Arguments Lack Merit.

Credit Suisse does not argue that TCEH and SEIU's breach of contract claims are untimely or that any of the claims against CSGAG are untimely. Instead, Credit Suisse only argues that TCEH and SEIU's unjust enrichment claims against CSI and CSUSA, respectively, are time-barred. Mem. at 5-11. This argument is incorrect for a number of reasons.

#### 1.   Legal Standard.

While "[a] defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion to dismiss . . . 'the Court can only grant [this] motion . . . if there is ***no factual question*** as to whether the alleged violations occurred within the statutory period." *In re Mirena IUD Prods. Liab. Litig.*, 29 F. Supp. 3d 345, 349-50 (S.D.N.Y. 2014) (citing *Gelber v. Stryker Corp.,* 788 F. Supp. 2d 145, 153 (S.D.N.Y. 2011) (quoting *Clement v. United Homes, LLC,* 914 F. Supp. 2d 362, 369 (E.D.N.Y. 2012)) (emphasis added). That is, the defendant has the burden to show the court that it is "'***beyond doubt*** that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.,* 51 F.

5

Supp. 2d 457, 468 (S.D.N.Y. 1999) (quoting *Abdul–Alim Amin v. Universal Life Ins. Co.*, 706 F.2d 638, 640 (5th Cir. 1983)) (emphasis added). For this reason, courts are generally unwilling to dismiss claims on statute of limitations grounds prior to discovery. *See, cf.*, *Mandarino v. Mandarino,* 180 F. App'x 258, 261 (2d Cir. 2006) (reversing the district court's dismissal on statute of limitations grounds, holding that "the District Court should not have resolved the fact-specific equitable tolling issue on defendants' motion to dismiss [because w]hen . . . facts are disputed, the best practice is to analyze [the] question . . . in the context of summary judgment . . ."); *DD v. Lincoln Hall*, No. 09-CV-860 CS/LMS, 2010 WL 695027, at *7 (S.D.N.Y. Feb. 19, 2010) (deciding to conduct an evidentiary hearing into the facts supporting an equitable tolling claim before dismissing the plaintiff's claims as time-barred). As further explained below, Credit Suisse does not satisfy this heavy burden.

## 2. New York's Statute of Limitations Applies.

The Court need not determine whether TCEH's or SEIU's claims are timely under Texas or District of Columbia law, because they are unquestionably timely under New York law. Credit Suisse overlooks the fact that SEIU is a New York resident and that New York law, including New York's statute of limitations, applies to its claims. Credit Suisse also overlooks the numerous other factors supporting application of New York's statute of limitations here.

### a. New York has the greatest interest in the litigation.

Credit Suisse assumes in its brief that TCEH and SEIU's claims against CSI and CSUSA (again, it does not contend that any of the claims against CSGAG are untimely) are subject to Texas and the District of Columbia's statutes of limitation. But that ignores the threshold interest analysis that must be conducted to determine what law should apply in this consolidated class proceeding. Applying the proper analysis, it is clear that New York's law applies.

Where a conflict between the laws of two states exists, the court must conduct a choice of law analysis to determine which jurisdiction's law applies. *Xiotech Corp. v. Express Data Prods. Corp., ESI, LLC*, 11 F. Supp. 3d 225, 238-39 (N.D.N.Y. 2014). As the Court recently observed, under New York's choice of law rules, the law of the jurisdiction having the greatest interest governs OTC Plaintiffs' claims. Feb. 5, 2015 Hr'g Tr. at 23, ECF No. 1047; *see also In re Sept. 11th Litig.*, 494 F. Supp. 2d 232, 239 (S.D.N.Y. 2007); *Cooney v Osgood Mach., Inc.*, 81 N.Y.2d 66, 70-71 (1993). The interest analysis is particularly appropriate in situations where, as here, the misconduct at issue affects a diverse group of investors located across the United States. *See Maslan v. Am. Airlines, Inc.*, 885 F. Supp. 90, 94 (S.D.N.Y. 1995) ("[T]he asserted existence of a class of diverse plaintiffs argues strongly for the application of interest analysis to arrive at one . . . applicable state limitation period[].."). Under this analysis, OTC Plaintiffs' allegations establish that New York law applies to their unjust enrichment claims.

First, both TCEH and SEIU's agreements with CSI and CSUSA, respectively, are governed by New York law. PTAC ¶ 389; Declaration of Samuel H. Rudman in Supp. of OTC Pls.' Mem. of Law in Opp. to Credit Suisse Grp. AG, Credit Suisse Int'l, and Credit Suisse (USA), Inc.'s Mot. to Dismiss the Sec. Am. Compl. and to Deny Leave to Am. and File the Proposed Third Am. Compl., Ex. A at 30, Ex. B at 10, ECF No. 1076 (filed Feb. 27, 2015) ("Rudman Decl."); Declaration of Kristopher E. Moldovan in Supp. of OTC Pls.' Mem. of Law in Opp. to Defs.' Mots. To Dismiss the Putative Class Actions for Lack of Personal Jurisdiction, Ex. 1 at 13, ECF No. 1077 (filed Feb. 27, 2015) ("Moldovan Decl."). Thus, the parties have all agreed that New York had the greatest interest in this action and expect New York law to apply. *See, cf.,Usach v. Tikhman*, No. 11 Civ. 1472, 2011 WL 6106542, at *5 (S.D.N.Y. Dec. 7, 2011) ("Enforcement of choice of law clauses in high-value agreements is therefore 'favored since it

protects the justifiable expectation of the parties who choose New York law as the governing law in international financial transactions."') (quoting *IRB–Brazil Resseguros S.A. v. Inepar Invs., S.A.,* 83 A.D.3d 573, 574, 922 N.Y.S.2d 308 (1st Dep't 2011)). Indeed, the Court has already concluded that OTC Plaintiffs' state law claims are properly brought under New York law. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 629-32 (S.D.N.Y. 2013) ("*LIBOR II*").

Second, much of the misconduct at issue stemmed from New York. As to TCEH, all of TCEH's transactions with CSI between August 2007 and May 2010, including related conversations and mailings, were facilitated by Credit Suisse Securities (USA) LLC ("CSS"), which was acting as CSI's agent. Moldovan Decl. ¶ 6, Ex. 3, 5, 6. CSS is headquartered in New York City, and the personnel with whom TCEH were interacting were all based in New York City. Moldovan Decl. ¶ 6. In addition, TCEH's bank account with which payments were made to/from Credit Suisse was with JP Morgan Chase Bank – New York. Moldovan Decl. ¶ 13, Ex. 3. With regards to SEIU, the bonds at issue were issued and sold in New York, the issuer of the bonds was headquartered in New York, the principal trustee was a New York resident, and the premium and interest on the bonds was paid quarterly from a corporate trust office in New York City. Rudman Decl., Ex. A at 3, 4, 30, 34, 35, Ex. B at 10, 13. Additionally, not only does SEIU have a trustee residing in New York, but there are potentially hundreds of beneficiaries of SEIU residing in New York. Declaration of Kevin J. Doyle in Supp. of OTC Pls.' Mem. of Law in Opp. to Credit Suisse Grp. AG, Credit Suisse Int'l, and Credit Suisse (USA), Inc.'s Mot. to Dismiss the Sec. Am. Compl. and to Deny Leave to Am. and File the Proposed Third Am. Compl. ¶ 4 ("Doyle Decl."). These individuals suffered damage as a result of Credit Suisse's manipulation of LIBOR.

Third, New York has the greatest interest in the claims asserted by the OTC Plaintiffs given (a) that New York law applies to the vast majority of LIBOR-Based Instruments under the industry-standard ISDA terms; (b) the substantial amount of LIBOR-linked bonds that were issued to absent class members residing in New York; (c) that the New York Attorney General conducted a sweeping investigation into LIBOR, SCAC ¶ 282; PTAC ¶ 291; and (d) that the JPML's consolidation of the LIBOR cases in this District was based, in part, on New York's interest in the litigation and the fact that CSGAG supported centralization in this District.[10] *See* Transfer Order, Case No. 1:11-cv-02625, ECF No. 75 (filed Aug. 12, 2011).

In contrast, Texas and Washington D.C. are only interested in this action to the extent (a) plaintiffs or absent Class Members are headquartered in those jurisdictions, and (b) Credit Suisse dealt with plaintiffs or absent Class Members within the borders of those jurisdictions (of which there are likely very few in comparison to New York). These interests do not outweigh New York's significant interest in this litigation. *See Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 193-96 (S.D.N.Y. 2006) (rejecting application of the laws of the state of incorporation and applying New York law because (i) the state of incorporation had "only limited connection to the conduct at issue" and (ii) the breach of fiduciary duty related to conduct that occurred in New York).

### b.  SEIU and TCEH's unjust enrichment claims do not fall under New York's Borrowing Statute.

New York's borrowing statute only applies if the cause of action (i) is initiated by a non-

---

[10] Credit Suisse cites *RA Global Servs. v. Avicenna Overseas Corp.*, 817 F. Supp. 2d 274 (S.D.N.Y. 2011), *Grynberg v. Eni S.p.A.*, No. 06 Civ. 6495, 2007 WL 2584727 (S.D.N.Y. Sept. 5, 2007), and *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704 (2d Cir. 2002) as authority for its position that the Court must apply the limitations periods from Texas and the District of Columbia. Mem. at 6. However, none of those cases were subject to an MDL order which designated a forum for purposes of venue or involved a contract or instrument with a choice-of-law provision. Nor were any of those cases class actions involving a diverse set of plaintiffs.

resident and (ii) accrued outside of New York. N.Y. C.P.L.R. § 202. This inquiry is highly factual and unsuited for resolution on a motion to dismiss. *See Sack v. Low*, 478 F.2d 360, 367-68 (2d Cir. 1973); *United Bd. of Carpenters & Joiners of Am. v Nyack Waterfront Ass'n*, 212 A.D.2d 778, 623 N.Y.S.2d 601 (2d Dep't 1995). Here, as in *Sack*, TCEH and SEIU should be given the opportunity to demonstrate through discovery that their claims accrued in New York. If the Court is inclined to rule now, however, it should nevertheless deny Credit Suisse's motion.[11]

As an initial matter, SEIU is a resident of New York such that New York's statute of limitations governs its claims. SEIU is a Taft-Hartley multi-employer pension plan and the citizenship of pension plans is determined by the residence of its trustee. *In re Joint E. & S. Dist. Asbestos Litig.*, 129 B.R. 710, 793 (E.D.N.Y. 1991) *vacated,* 982 F.2d 721 (2d Cir. 1992) *opinion modified on reh'g,* 993 F.2d 7 (2d Cir. 1993) ("In ascertaining the residency of a trust, the court will look to the state citizenship of the trustees and deem the trust to reside in each state where its trustees reside.") (citing *Navarro Savings Ass'n v. Lee,* 446 U.S. 458, 464 (1980)). One of SEIU's trustees, Kevin Doyle, has resided in New York since 1998. Doyle Decl. ¶ 3. As a new York resident, the borrowing statute does not apply to SEIU's claims. *See Adams v. Crystal City Marriott Hotel*, No. 02 Civ.10258, 2004 WL 744489, at *2 (S.D.N.Y. Apr. 6, 2004) ("If plaintiff is a resident of New York, then the borrowing statute does not apply . . . and defendant's motion to dismiss must be denied.").

In any event, both SEIU and TCEH's claims accrued in New York such that the borrowing statute still does not apply. While the place of accrual is generally where the plaintiff

---

[11] "The primary purpose of CPLR 202 . . . is to prevent forum shopping by a nonresident seeking to take advantage of a more favorable statute of limitations in New York." *Antone v. Gen. Motors Corp.*, 64 N.Y.2d 20, 27-28 (1984) (citing *Nat'l Sur. Co. v. Ruffin*, 242 N.Y. 413, 417 (1926)). Here, OTC Plaintiffs could not have shopped for a forum with the longest statute of limitations because MDL Panel ***required*** all of the actions to be litigated in New York. Thus, the policy concerns underlying the borrowing statute are not in play here.

resides, *Natural Res. Corp. v. Royal Res. Corp.*, 427 F. Supp. 880, 882 (S.D.N.Y. 1977) (citing cases), "the plaintiff's residence need not necessarily be the situs of the economic impact . . . and the court can properly consider all relevant factors in determining where the loss is felt." *Lang v. Paine, Webber, Jackson & Curtis, Inc.*, 582 F. Supp. 1421, 1425 (S.D.N.Y. 1984) (citing *Sack*, 478 F.2d at 367-68).[12] The Second Circuit has articulated several factors courts should consider in making this determination, including: (1) "how plaintiffs paid for the securities-whether by check sent from [the plaintiff's state of residence] or in some other fashion," (2) whether "the plaintiffs maintained an open account" with the defendant in New York, (3) whether "the loss was reflected in that account," and (4) "how the securities were handled" by the parties. *Sack*, 478 F.2d at 367-68. Applying these factors here, it is clear that OTC Plaintiffs have alleged sufficient facts showing that the cause of action accrued in New York. As explained above, both TCEH and SEIU's agreements with CSI and CSUSA, respectively, have choice of law provisions designating New York law as the governing law;[13] the instruments purchased by TCEH and SEIU were issued, sold, and completed in New York; and the payments on these instruments were paid from New York.[14] *See* Part IV-A-2-a, *supra*.

### c.   *TCEH and SEIU's claims are subject to a six year statute of limitations and are therefore timely.*

In general, unjust enrichment and breach contract claims are subject to a six year statute of limitations under New York law. *See Flight Scis., Inc. v. Cathay Pac. Airways Ltd.*, 647 F.

---

[12] *See also cf., Hyatt v State of Cal. Franchise Tax Bd.*, 105 A.D.3d 186, 962 N.Y.S.2d 282 (2d Dep't 2013) ("[D]espite [plaintiff's] alleged (and disputed) residency in Nevada during a portion of the relevant period, New York has the greatest interest in applying its privilege law.").

[13] New York courts enforce choice-of-law clauses where "the chosen law bears a reasonable relationship to the parties or the transaction." *Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 7 N.Y.3d 624, 629 (2006).

[14] Moreover, as to SEIU, it is not only a resident of New York, but there are potentially hundreds of beneficiaries of SEIU residing in New York. Doyle Decl. ¶ 4. As a result, the "economic impact of the loss" was certainly felt in New York.. *See Appel v. Kidder, Peabody & Co.*, 628 F. Supp. 153, 156 (S.D.N.Y. 1986) (holding that the trust's action accrued where the trust beneficiaries resided).

Supp. 2d 285, 288 (S.D.N.Y. 2009) ("[C]laims for breach of the covenant of good faith and fair dealing and for unjust enrichment are . . . subject to a six-year statute of limitations") (citing cases); *see also* N.Y. C.P.L.R. § 213. While it is true that courts have applied a three year statute of limitations to unjust enrichment claims sounding in tort that seek monetary – as opposed to equitable – relief, Mem. at 7-10, the OTC Plaintiffs' unjust enrichment claim does not fit into this exception. First, OTC Plaintiffs' unjust enrichment claim is a quasi-contract claim, and under well-settled case law, should be measured against the same six-year limitations period. *EMD Constr. Corp. v. New York City Dep't of Hous. Pres. & Dev.*, 70 A.D.3d 893, 894, 895 N.Y.S.2d 469, 470 (2010) (citing cases). TCEH and SEIU's unjust enrichment claim also seek an equitable remedy – the creation of a constructive trust or, in the alternative, restitution,[15] PTAC ¶¶ 408-09, – which subjects this claim to the six year statute of limitations. *See State of N.Y. v. SCA Servs., Inc.*, 761 F. Supp. 14, 15 (S.D.N.Y. 1991) (characterizing the restitution remedy for unjust enrichment as equitable); *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 361 (2d Cir. 1999) ("A constructive trust is an equitable remedy . . . ."). In short, this simply is not a case where the unjust enrichment claim seeks "only money damages," *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 262 (S.D.N.Y. 2008), and as such, it is subject to the six year statute of limitations.

As a result, TCEH and SEIU's unjust enrichment claims are timely. The last wrongful act, which Credit Suisse argues is the last day on which an unjust enrichment claim would lie,

---

[15] Credit Suisse contends that OTC Plaintiffs have not established that the elements necessary to create a constructive trust. Mem. at 9-10. This argument turns on the contention CSI and TCEH were not in a fiduciary relationship. However, under New York law, whether a fiduciary relationship exists is a question of fact inappropriate for determination on a motion to dismiss, and often, on inappropriate for resolution on a motion for summary judgment. *See Roni LLC v. Arfa*, 18 N.Y.3d 846, 848 (2011) ("Ascertaining the existence of a fiduciary relationship inevitably requires a fact-specific inquiry.") (internal quotations omitted). In any event, this argument does not address whether a fiduciary relationship exists as between SEIU and CSUSA or the fact that OTC Plaintiffs request another form of equitable relief – restitution – as a remedy for their unjust enrichment claim.

occurred in May 2010.[16] Mem. at 7. TCEH and SEIU's unjust enrichment claims, as subject to the six year statute of limitations, would not have expired until May 2016. TCEH was added as a named plaintiff (and CSI as a defendant) on September 10, 2013, and SEIU was added as a named plaintiff (and CSUSA as a defendant) on August 10, 2014. Their unjust enrichment claims are therefore timely and dismissal is inappropriate.

> **d.      Even if New York's three year statute of limitations applies, TCEH and SEIU's claims are timely.**

TCEH and SEIU's claims under New York's three year statute of limitations would survive for the same reasons as their claims survive under other jurisdiction's shorter statute of limitations. *See* Parts IV-A-3, IV-B, *infra*.

> **3.      Application of Texas and the District of Columbia's Statutes of Limitations Does Not Render TCEH or SEIU's Unjust Enrichment Claims Untimely.**

If, as Credit Suisse contends, Texas or District of Columbia law applies here, Credit Suisse cannot satisfy its burden of proving "beyond doubt" that there is "no set of facts" under which TCEH and SEIU's claims against CSI and CSUSA would be untimely. As an initial matter, because the first class complaint was filed against CSGAG in April 2011, there is no question TCEH and SEIU's unjust enrichment claims against CSGAG are timely no matter which jurisdiction's statute of limitations applies based on *American Pipe* tolling and relation back under Rule 15(c). Contrary to Credit Suisse's argument, the unjust enrichment claims against CSI and CSUSA are timely for the same reasons.

---

[16] Since filing the PTAC, SEIU has uncovered evidence that defendants continued to manipulate the U.S. Dollar LIBOR rate until June 2012, which coincided with the European sovereign debt crisis. *See* Compl. for Violations of Fed. Antitrust Laws and Supp. State Law Claims, ECF No. 1, *Nat'l Asbestos Workers Pension Fund v. Bank of Am., Corp.*, No. 15-cv-01334 (S.D.N.Y. filed Feb. 24, 2015). Under this set of pled facts, TCEH and SEIU's unjust enrichment claims are timely without regard to *American Pipe* tolling or relation back under Rule 15 since their claims would have been filed within two and three years, respectively, of the last alleged wrongful act.

a.   *American Pipe* *tolled the claims against CSI and CSUSA.*

In *American Pipe & Constr. Co. v. Utah*, the Supreme Court held that "the commencement of the original class suit tolls the running of the statute [of limitations] for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." 414 U.S. 538, 553 (1974). In *Crown, Cork & Seal Co. v. Parker*, the Supreme Court expanded the *American Pipe* doctrine, holding that until class certification is denied, "[t]he filing of a class action tolls the statute of limitations as to all asserted members of the class . . . not just to intervenors." 462 U.S. 345, 350 (1983) (internal quotations omitted). The "theoretical basis" of this doctrine "is the notion that class members are treated as parties to the class action . . ." *In re WorldCom Sec. Litig.*, 496 F.3d 245, 255 (2d Cir. 2007), such that they are "treated as though they had been named plaintiffs during the pendency of the class action." *Chardon v. Soto*, 462 U.S. 650, 659 (1983).

The complaint filed in April 2011 (which encompassed claims on behalf of the OTC Plaintiffs) asserted a claim for unjust enrichment against CSGAG. Under *American Pipe*, all other class member' unjust enrichment claims – including TCEH and SEIU's – are treated as though they were filed against Credit Suisse in April 2011. *See Sapirstein-Stone-Weiss Found. v. Merkin*, 950 F. Supp. 2d 621, 625-26 (S.D.N.Y. 2013) (holding New York's longstanding "embrace[]" of the "principles of *American Pipe*" meant a federal class action tolled the statute for claims under New York law); *see also Williams v. Dow Chem. Co.*, No. 01 Civ. 4307, 2004 WL 1348932, at *11 (S.D.N.Y. June 16, 2004); *Cullen v. Margiotta* 811 F.2d 698, 719 (2d Cir. 1987) *overruled on other grounds*, *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, 483 U.S. 143 (1987).[17] While "certain federal courts have held that the tolling effect announced in

---

[17] This Court has already concluded that OTC Plaintiffs' unjust enrichment and breach of contract claims

*(continued…)*

*American Pipe* does not extend to defendants not in the original class action, such decisions are ordinarily premised on insufficient notice . . . ." *Becks v. Emery-Richardson, Inc.*, Nos. 86 Civ 6866, No. 87 Civ. 1554, 1990 WL 303548, at *12 (S.D. Fla. Dec. 21, 1990). In situations such as this where the previously unnamed defendant had notice, *see also* Part IV-A-3-b, *supra*, courts have applied this doctrine to those additional defendants, such as CSI and CSUSA, which clearly had notice based on the notice given to CSGAG. *Id.*; *see also 27001 P'ships v. BT Sec. Corp.*, No. 2004 Civ. 7487, 2010 WL 5553366, at *6-7 (Ala. Cir. Ct. Jan 14, 2010).[18]

Because *American Pipe* tolling applies, TCEH and SEIU's unjust enrichment claims are timely. As to TCEH, two years from April 2011 is April 2009, which is one month before the last alleged wrongful act. As to SEIU, three years from April 2011 is April 2008, which is thirteen months before the last alleged wrongful act.[19]

### b.   TCEH and SEIU's claims relate back under Rule 15.

In addition, TCEH and SEIU's claims against CSI and CSUSA, respectively, are timely under Federal Rule of Civil Procedure 15(c). Under Rule 15(c), an amended pleading that adds a new defendant relates back to the initial complaint where that defendant received notice of the suit within 120 days, will not be prejudiced if added, and knew or should have known that the suit would have been brought against it but for the plaintiff's mistake in identifying that defendant. Fed. R. Civ. P. 15(c)(1)(C). Each of these requirements is satisfied here.

First, the claims made against CSI and CSUA involve the same conduct, transaction, or

---

*(…continued)*

are properly brought under New York law, *LIBOR II*, 962 F. Supp. 2d at 629-32

[18] For example, the court in *Earl v. Novartis Consumer Health, Inc.* only granted summary judgment because there was affirmative evidence that the additional party did not have notice of the complaint. 2008 WL 4274468, at *4 n.2 (S.D.N.Y. 2008).

[19] As noted above, OTC Plaintiffs have learned of new facts suggesting that the last wrongful act actually occurred in June 2012. *See* note 16, *supra*.

occurrence alleged in the first-filed complaint in this matter in April 2011. Second, as demonstrated, in part, by the fact that Credit Suisse made arguments on CSI's behalf prior to CSI formally making an appearance in the case, *see* Part II, *infra*, there can be little doubt that CSI and CSUSA were aware of this suit at least 120 days after its filing and that there can be no prejudice to either entity at this stage of the litigation. *See In re Chaus Sec. Lit*., 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992) ("The principal inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party . . . .").[20] Third, Credit Suisse has produced no evidence that it did not know or should have not known that but for a mistake in identifying the correct corporate entities to sue, CSI and CSUSA would have been parties to this action at a much earlier date in time. *See Krupski v. Costa Crociere S.p.A..,* 560 U.S. 538, 548 (2010) (holding that the "mistake" requirement of Rule 15(c) focuses on the defendant's knowledge rather than the plaintiff's knowledge). If anything, the fact that CSI and CSUSA are represented by the same counsel as CSGAG, which has been a party to this action since April 2011, confirms that CSI and CSUSA were well-aware of their potential liability in this matter at the time these actions were first commenced in April 2011. *See Bishop v. Best Buy, Co. Inc.*, No. 08 Civ. 8427, 2010 WL 4159566, at *3 (S.D.N.Y. Oct. 13, 2010) *on reconsideration,* No. 08 Civ. 8427, 2011 WL 4011449 (S.D.N.Y. Sept. 8, 2011) and *aff'd sub nom. Bishop v. City of N.Y.*, 518 F. App'x 55 (2d Cir. 2013). Because Credit Suisse has offered

---

[20] The Second Circuit applies a relatively low bar for determining when a newly named defendant first had notice under Rule 15(c) where one of its closely-related affiliates was also named. *See Sounds Express Int'l Ltd. v. Ame. Themes and Tapes, Inc.,* 101 F.R.D. 694, 697 (S.D.N.Y.1984) (noting that courts in the Second Circuit "have generally held that Rule 15(c) is satisfied where the original party and added party have a close identity of interests. . . . [I]dentity of interests has also served as touchstone for determining whether the new party knew or should have known that 'but for' a mistake in identity, he would have been sued in the first instance."); *In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig.,* 815 F. Supp. 620, 646 (S.D.N.Y. 1993) ("'The identity of interest principle is often applied where the original and added parties are a parent corporation and its wholly owned subsidiary, two related corporations whose officers, directors, or shareholders are substantially identical and who have similar names or share office space, past and present forms of the same enterprise, or co-executors of an estate.'") (quoting *Hernandez Jimenez v. Calero Toledo,* 604 F.2d 99, 102-03 (1st Cir.1979)).

no such evidence regarding CSI and CSUSA's apparent lack of knowledge, a question of fact exists and a motion to dismiss is inappropriate. *See Thompson v. Dolgencorp, LLC*, No. Civ-14-243, 2015 WL 339717, at *3 (E.D. Okla. Jan. 26, 2015).

This being the case, the claims against CSI and CSUSA relate back to April 2011, and therefore the claims are timely under both Texas and District of Columbia's statute of limitations for the same reasons as they are timely under *American Pipe* tolling.

### B.      Fraudulent Concealment Applies.

Credit Suisse argues, in a single paragraph and without citation to any of the state's laws that it contends apply, that this Court's holding in *LIBOR I* that the EBPs were on inquiry notice of their CEA claims by May 29, 2008 requires that this Court hold that TCEH's claims against CSI expired before it asserted its claims in September 2013. Mem. at 11.[21] That argument conflates the CEA inquiry notice standard with the state law inquiry notice standards, which are inherently more fact-specific. *See In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 347 (S.D.N.Y. 2000) (holding that where the defendant alleges that the plaintiff was on inquiry notice such that the limitations period began to run, the defendant caries an '"extraordinary'" burden of proving such, and dismissal is "appropriate only in 'extreme circumstances."') (quoting *In re Prudential Secs. Inc. Ltd. P'ships Litig.*, 930 F. Supp. 68, 76 (S.D.N.Y.1996)); *Transamerican Ref. Corp. v. Dravo Corp.*, No. Civ. A. H-88-789, 1990 WL 122228, at *2 (S.D. Tex. June 22, 1990) (finding that so long as the plaintiff pleads the requisite elements of fraudulent concealment with particularity, the claims withstand a motion to dismiss). Each of the OTC Plaintiffs' complaints, which Credit Suisse ignore, plausibly allege that Credit Suisse's fraudulent concealment tolled the applicable statute of limitations until at least March 15, 2011.

---

[21] Credit Suisse does not argue that SEIU's claims are untimely without fraudulent concealment, and therefore, necessarily concedes that these claims are timely without fraudulent concealment. OTC Plaintiffs agree.

SCAC ¶¶ 301-327; PTAC ¶¶ 310-336.[22] These allegations are sufficient at this stage under New York and Texas law.

### C. This Court's Prior Decisions Do Not Require Dismissal of the Unjust Enrichment or Breach of Contract Claims.

Credit Suisse also contends that the breach of contract and unjust enrichment claims should be dismissed based on this Court's holding in *LIBOR III*. Mem. at 11-17. This argument misses the mark because it is irrelevant whether CSI and CSUSA were the Credit Suisse entity responsible for submitting LIBOR rates for the bank and because of the agency relationship between the Credit Suisse defendants.

### 1. Whether CSI or CSUSA Served on the USD LIBOR Panel is Immaterial to TCEH and SEIU's Claims.

Credit Suisse argues that CSI and CSUSA cannot be liable for the acts of CSGAG. Mem. at 13-15. Specifically, Credit Suisse asserts that the claims against CSI and CSUSA should be dismissed because OTC Plaintiffs fail to "allege sufficient facts to plausibly allege that these entities were involved with, or had knowledge of, the alleged LIBOR manipulation" inasmuch as these entities were not on the LIBOR panel. Mem. at 11. This argument fails for six reasons.

First, Credit Suisse's argument relies on facts beyond the pleadings. The listing of panel banks by the BBA does not specify any particular Credit Suisse entity on the panel bank, but rather says that "Credit Suisse" was a panel bank. As such, it appears that the BBA considered the Credit Suisse unified company to be on the panel. Further, Credit Suisse's most recent 20-F

---

[22] OTC Plaintiffs make myriad factual allegations concerning the Defendants' fraudulent concealment after March 2008. For instance, (1) in April 2008, a Credit Suisse employ affirmatively attributed low LIBOR quotes to banks holding large amounts of cash, PTAC ¶¶ 317, 319; (2) in May 2008, Citibank and HBOS categorically denied the allegations of the March 2008 *Wall Street Journal* article that this Court concluded gave the EBPs inquiry notice. PTAC ¶ 322. These denials are sufficient to plead fraudulent concealment, or at the very least, to create a factual question precluding a finding to the contrary at this stage. *See, e.g.*, *Cherry v. Victoria Equip. & Supply, Inc.*, 645 S.W.2d 781, 782 (Tex. 1983) (concluding that a defendant's denials of involvement in an incident created a fact issue as to whether fraudulent concealment existed).

states that "the Group" is a member of US Dollar LIBOR panel – and the "Group" is defined as "Credit Suisse Group AG **and** its consolidated subsidiaries," which includes CSI.[23] Credit Suisse, Annual Report 2013, at 335, available at https://www.credit-suisse.com/media/cc/docs/ publications/annualreporting/2013/csg-ar-2013-en.pdf ("The Group, which is a member of three LIBOR rate-setting panels (US Dollar . . . Swiss Franc . . . and Euro LIBOR), is cooperating fully with these investigations.").

Second, Credit Suisse's argument is premised on a fundamentally flawed reading of *LIBOR III*. In *LIBOR III*, the Court held that the OTC Plaintiffs had "plausibly alleged that defendants' alleged manipulation of LIBOR was at least in reckless disregard of the detriment to plaintiffs, with whom [non-panel] defendants were in direct contractual privity." 27 F. Supp. 3d at 483. CSI was a named defendant when the Court decided *LIBOR III*, and consequently, this Court concluded that the OTC Plaintiffs had stated viable unjust enrichment and breach of contract claims against CSI even though CSI is allegedly not on the LIBOR panel. This was reaffirmed by the Court in its October 8, 2014 Order when it held that CSI would remain a named defendant in this action. Order, ECF No. 682. Italicizing the word "defendants" does not change this straightforward reading of *LIBOR III*.

Third, OTC Plaintiffs allege that the Defendants, whether panel banks or not, breached their contracts through, among other things, their failure to disclose fraudulent and collusive conduct, intentional misrepresentations of USD LIBOR, and underpayments to OTC Plaintiffs based on an artificially low LIBOR rate. PTAC ¶¶ 402-404. Given the close relationship between

---

[23] Despite being a named defendant since April 2011, CSGAG contends, for the first time, that it was not on the USD LIBOR panel. Mem. at 16-17. If Credit Suisse AG is, in fact, the properly-named defendant in this action, there can be little doubt that all claims against Credit Suisse AG will relate back to April 2011 under Rule 15, *see* Part IV-A-3-b, *supra*, and OTC Plaintiffs respectfully request permission to substitute Credit Suisse AG for CSGAG. In any event, Credit Suisse's own failure to notify OTC Plaintiffs of the entity responsible for LIBOR submission until this point in time strongly supports OTC Plaintiffs' agency theory of liability described herein.

the various Credit Suisse defendants, including, *inter alia*, "operat[ing] under a unified brand and logo," "present[ing] itself as an 'integrated global bank," the sharing of Boards of Directors, and revenue sharing agreements, PTAC ¶¶ 26-27, OTC Plaintiffs have more than adequately alleged that CSI and CSUSA are in breach of their contracts with TCEH and SEIU and have been unjustly enriched.[24]

Fourth, TCEH and SEIU's unjust enrichment claim does not require wrongdoing by the defendant. *See Simonds v. Simonds,* 45 N.Y.2d 233, 241 (1978) ("Unjust enrichment . . . does not require the performance of any wrongful act by the one enriched. Innocent parties may frequently be unjustly enriched."); *Corsello v. Verizon N.Y., Inc.,* 18 N.Y.3d 777, 790 (2012) (observing that unjust enrichment recovery lies in cases "in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled.").[25] Here, CSI and CSUSA were unjustly enriched by Credit Suisse's wrongful acts.

Fifth, given that no discovery has taken place regarding CSI and CSUSA's knowledge of the alleged collusive manipulation of LIBOR, OTC Plaintiffs have adequately alleged their claims against CSI and CSUSA. *See, e.g., Probulk Carriers Ltd. v. Peraco Chartering USA LLC*, No. 11 Civ 5686, 2012 WL 3095319, at *6-7 (S.D.N.Y. July 20, 2012) (finding that allegations that the defendant "failed to communicate . . . all information coming to its knowledge which affected . . . the performance . . ." of the contract when there was a duty to do so were sufficient

---

[24] Credit Suisse argues that SEIU has not alleged that it is in privity with CSUSA. Mem. at 16. This argument ignores the allegation that "OTC Plaintiffs' and all class members, entered into binding and enforceable contracts with Defendants in connection with each of their purchases of LIBOR-based instruments . . ." and that "[e]ach of these contracts includes an implied covenant that each contracting Defendant will act in good faith and deal fairly with plaintiff. . . ." PTAC ¶¶ 400-01.

[25] Because unjust enrichment can occur indirectly, *Dodona I, LLC v. Goldman, Sachs & Co.,* 847 F.Supp.2d 624, 653 (S.D.N.Y.2012), CSGAG is liable for unjust enrichment as well inasmuch as CSGAG shares revenue with CSI and CSUSA. PTAC ¶ 26. *See also Elbit Sys., Ltd. v. Credit Suisse Grp.,* 917 F. Supp. 2d 217, 231 (S.D.N.Y. 2013) (finding that an unjust enrichment claim against CSGAG had been adequately alleged where the complaint alleged that a CSGAG subsidiary, CSS, shared ill-gotten gains with CSGAG).

20

to defeat the defendant's motion to dismiss). Indeed, this Court has already concluded that OTC Plaintiffs' may state these claims against those entities with which they are in privity. *LIBOR III*, 27 F. Supp. 3d at 487. CSI and CSUSA are two such parties, and as such, these claims should not be dismissed.

Finally, none of the cases cited by Credit Suisse alter this conclusion. Unlike the PTAC, the complaints in each of cases cited by Credit Suisse did not allege an act or omission by the corporate family member that was dismissed. *See, e.g., Bigio v. Coca- Cola Co*., 675 F.3d 163, 170, 173 (2d Cir. 2012) (finding that the plaintiffs' complaint was "unequivocal" that defendant was not involved in any way in the alleged wrongdoing and was only sued because it had a minority interest in the corporation that was alleged to have been involved); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 418-19 (S.D.N.Y. 2011) (dismissing antitrust claims against parent corporations where the complaint only alleged that the subsidiaries were owned by the parent; the complaint contained "no allegations about *any* involvement of the Parent Companies" and "no allegation that the Parent Companies directed the subsidiaries to engage in an antitrust conspiracy"); *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 748-50 (E.D. Pa. 2011) (finding that the complaint's few allegations related to certain entities "in no way imply that the entities directly agreed to or participated in the conspiracy, and as such, fail to provide . . . notice so that any of [these defendant entities] seeking to respond . . . would have little idea where to begin").

## 2.    CSGAG is Liable for the Acts of CSI and CSUSA.

Credit Suisse's final argument is that CSGAG should not remain in the case because it is not in privity with any of the OTC Plaintiffs. Mem. at 15-17. Credit Suisse's argument, however,

is wholly premature, and fails under New York agency law.[26]

To begin, it is not the case, as Credit Suisse contends, that this Court already rejected OTC Plaintiffs' argument that CSGAG is liable under an agency theory. Mem. at 16. In its order clarifying *LIBOR III*, the Court ***did not discuss*** the agency argument, and "[i]t is elementary that an opinion is not binding precedent on an issue it did not address." *Merrifield v. Bd. of Cnty. Comm'rs for Cnty. of Santa Fe*, 654 F.3d 1073, 1084 (10th Cir. 2011) (citing *Webster v. Fall*, 266 U.S. 507, 511 (1925)).[27]

Moreover, the Court could not have concluded that an agency relationship does not exist at this stage of the litigation. Under New York law, "the principal will be liable to third parties for the acts of its agent that were within the scope of the agent's actual or apparent authority," *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 344 (S.D.N.Y. 2010) (citing *Citibank, N.A. v. Nyland (CF8) Ltd.*, 878 F.2d 620, 623–24 (2d Cir. 1989)), and "[t]he level of control necessary to form a principal-agent relationship between a parent company and subsidiary defies resolution by mechanical formulae for the inquiry is inherently fact-specific." *In re S. African Apartheid Litig.*, 633 F. Supp. 2d 117, 121 (S.D.N.Y. 2009) (internal quotations and alterations omitted); *see also Wood v. Mustang Exp. Trucking, Inc.*, No. 00-CV-6433T, 2007 WL 655624, at *2 (W.D.N.Y. Feb. 26, 2007).

---

[26] New York agency law applies because New York has the most significant relationship to this litigation. *See* Part IV-A-2-a, *supra*; *Skanga Energy & Marine Ltd. v. Arevenca, S.A.*, No. 11-cv-4296, 2014 WL 3928704, at *8 (S.D.N.Y. Aug. 12, 2014).

[27] While this argument is easily rejected, if Credit Suisse's argument is accepted, then it must also be true that this Court already rejected Credit Suisse's statute of limitations argument because Credit Suisse made these same arguments in its *LIBOR III* briefing, *see* n.6, *supra*, and the Court concluded that OTC Plaintiffs had adequately alleged breach of contract and unjust enrichment claims against CSI. Credit Suisse would surely dispute this to be the case, but Credit Suisse cannot have it both ways.

Rather, resolution of the issue depends on "the situation of the parties, their relations to one another, and the business in which they are engaged; the general usages of the business in question and the purported principal's business methods; the nature of the subject matter and the circumstances under which the business is done." *Columbia Broad. Sys., Inc. v. Stokely–Van Camp, Inc.,* 522 F.2d 369, 375–76 (2d Cir. 1975).[28] Thus, "[a]t the motion to dismiss stage, the question 'is not whether plaintiffs have proved the existence of an agency relationship, merely whether they should have the chance to do so.'" *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 273 (S.D.N.Y. 2009) (quoting *In re Parmalat Secs. Litig.*, 375 F. Supp. 2d 278, 295 (S.D.N.Y. 2005)); *see also Spiro v. Healthport Techs., LLC,* No. 14 Civ. 2921, 2014 WL 4277608, at *6 n.7 (S.D.N.Y. Aug. 29, 2014).

This being the case, it is premature for the Court to dismiss the claims against CSGAG based on an agency theory where the allegations in the PTAC plausibly state an agency relationship between the Credit Suisse entities. Credit Suisse does not contest or deny that CSGAG was aware that CSUSA and CSI were selling LIBOR-Based instruments during the Class Period. Indeed, the PTAC specifically alleges that CSGAG controlled CSI and CSUSA and that employees of these subsidiaries reported their activities to CSGAG personnel. PTAC ¶¶ 26-28. The PTAC further alleges that CSUSA and CSI are part of CSGAG, the "integrated global bank," and as such, that these entities share policies and revenues and that these subsidiaries' "debt securities are guaranteed" by CSGAG. PTAC ¶¶ 25-26. The PTAC also provides specific allegations as to CSGAG's oversight and control of its subsidiaries, noting that

---

[28] The fact that a contract provides that no agency relationship exists is immaterial. For instance, in *Cleveland v. Caplaw Enters.*, the Second Circuit, joining the other Circuit Courts, expressed its reluctance "to rely upon conclusory contractual language to dismiss a . . . claim for lack of agency." 448 F.3d 518, 523 (2d Cir. 2006). The court explained that "[s]lavish deference to contractual language is inappropriate in the highly-factual and often nuanced agency analysis." *See also Zeno v. Ford Motor Co.*, 480 F. Supp. 2d 825, 845 (W.D. Pa. 2007) (concluding that a no-agency clause was not dispositive as whether an agency exists is a highly factual inquiry).

CSGAG recommends employee compensation amounts for CSI, that CSI and CSGAG have overlapping Boards of Directors, and that CSGAG "approves all Board appointments for its subsidiary . . . ." PTAC ¶ 26. The PTAC also alleges that CSGAG ensures that its subsidiaries are funded and that it receives a financial benefit from those activities. PTAC ¶ 26. In short, the PTAC alleges CSGAG's knowledge, oversight, and control of CSUSA and CSI concerning activities that were plainly within CSUSA and CSI's authority to conduct. Allegations similar to this have been held to support liability in other cases.

Courts reviewing similar allegations, including agency allegations against CSGAG, have concluded that such allegations are sufficient at the motion to dismiss stage. For instance, in *Elbit Systems, LLC*, Judge Stein rejected CSGAG's motion to dismiss securities claims and found that the complaint had adequately alleged an agency relationship between CSGAG and one of its subsidiaries CSS.[29] 917 F. Supp. 2d at 225-26. In relevant part, ***Judge Stein concluded that the following allegations "[t]aken together . . . plausibly allege that CSS had actual authority to transact business as [CSGAG]'s agent*** . . .": (a) that CSS was a wholly owned subsidiary of CSGAG and that the entities share email suffixes and a corporate logo; (b) that CSGAG described its operations in cities such as New York as its "local offices" rather than as separate corporate entities and one of CSGAG's "Main" New York office is CSS's office; (d) that CSS and CSGAG share Board Members; and (e) that CSGAG controlled CSS through a management group and Code of Conduct. *Id*. (emphasis added). The allegations in the PTAC at least rise to this level and are therefore sufficient to plausibly allege an agency relationship at this

---

[29] CSS is a subsidiary of CSUSA and acted as CSI's agent in CSI's dealings with TCEH. *See* Credit Suisse Group AG – Principal Legal Entities Overview (Sept. 29, 2014), available at https://www.credit-suisse.com/media/cc/docs/investors/simplified-legal-entity-overview.pdf. Even though CSS is one step further down the corporate chain from CSGAG than CSUSA (and in theory, has a more attenuated relationship), Judge Stein nevertheless found the complaint adequately alleged an agency relationship. That a subsidiary of CSUSA could have an agency relationship with CSGAG weighs in favor of an agency relationship existing as between CSUSA and CSGAG.

stage of the litigation. *See also In re S. African Apartheid Litig.*, 617 F. Supp. 2d at 274 (holding that claims against the parent stemming from activity of its South African subsidiary survived a motion to dismiss where the complaint alleged that the subsidiary "carried out its activities on behalf of [the parent] or that [the parent] ratified those activities in order to profit from them"); *see also, cf., Bradkin v, Leverton*, 26 N.Y.2d 192 (1970) (permitting unjust enrichment claim against an officer of a corporation to proceed even though the plaintiff contracted only with the corporation).

In short, the PTAC alleges that the Credit Suisse entities at issue in this litigation have common ownership, common decision-making, common management, and common funds, and CSGAG cannot escape liability when one of its corporate affiliates was manipulating LIBOR while other of its affiliates were selling LIBOR-Based Instruments that they knew referenced a collusively manipulated interest rate.

## V.   **CONCLUSION**

For the foregoing reasons, this Court should deny Credit Suisse's motion and grant OTC Plaintiffs leave to file the PTAC without further delay.

Dated: February 27, 2015                    Respectfully Submitted,

/s/ Michael D. Hausfeld                      /s/ William C. Carmody
Michael D. Hausfeld                          William C. Carmody
William P. Butterfield                       Arun Subramanian
Hilary K. Scherrer                           SUSMAN GODFREY L.L.P.
Nathaniel C. Giddings                        560 Lexington Avenue, 15th Floor
HAUSFELD LLP                                 New York, New York 10022
1700 K St. NW, Suite 650                     Telephone: (212) 336-8330
Washington, D.C. 20006                       Facsimile: (212) 336-8340
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email: mhausfeld@hausfeld.com                Marc Seltzer
Email: wbutterfield@hausfeld.com             SUSMAN GODFREY L.L.P.
                                             1901 Avenue of the Stars, Suite 950

Email: hscherrer@hausfeld.com
Email: ngiddings@hausfeld.com

Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Drew D. Hansen
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
Email: dhansen@susmangodfrey.com

Barry C. Barnett
SUSMAN GODFREY L.L.P.
901 Main Street, Suite 5100
Dallas, TX 75202
Telephone: (214) 754-1900
Facsimile: (214) 754-1933
Email: bbarnett@susmangodfrey.com

*Interim Lead Counsel Plaintiff and the Proposed OTC Plaintiff Class*

Max R. Schwartz (MS2517)
Donald A. Broggi
SCOTT+SCOTT LLP
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: (212) 223-6444
Email: mschwartz@scott-scott.com
Email: dbroggi@scott-scott.com

Christopher M. Burke
SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
Email: cburke@scott-scott.com

Samuel H. Rudman
ROBBINS GELLER RUDMAN & DOWD LLP
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: (631) 367-7100
Email: srudman@rgrdlaw.com

Patrick W. Daniels
David W. Mitchell
Nathan W. Bear
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Email: patrickd@rgrdlaw.com
Email: davidm@rgrdlaw.com
Email: nbear@rgrdlaw.com

*Additional Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Nathaniel C. Giddings, hereby certify that on February 27, 2015, I caused the foregoing OTC Plaintiffs' Memorandum of Law in Opposition to Credit Suisse Group AG, Credit Suisse International, and Credit Suisse (USA), Inc.'s Motion to Dismiss the OTC Second Consolidated Amended Complaint and to Deny Leave to Amend and File the Proposed Third Amended Complaint (ECF No. 958), to be served via the Electronic Case Filing (ECF) system in the United States District Court for the Southern District of New York on all parties registered for CM/ECF in the above-captioned matter.

Dated: February 27, 2015

                                        */s/ Nathaniel C. Giddings*
                                        Nathaniel C. Giddings
                                        HAUSFELD LLP
                                        1700 K St. NW, Suite 650
                                        Washington, D.C. 20006
                                        Telephone: (202) 540-7200
                                        Facsimile: (202) 540-7201
                                        Email: ngiddings@hausfeld.com