# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MASTER FILE 11 MDL 2262 (NRB) 11 Civ. 2613 (NRB) |
| THIS DOCUMENT RELATES TO: EXCHANGE-BASED PLAINTIFFS ACTION | |

**EXCHANGE-BASED PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE PUTATIVE CLASS ACTIONS FOR LACK OF PERSONAL JURISDICTION**

# **Table of Contents**

FACTUAL BACKGROUND .................................................................................................. 1

   I.  Exchange-Based Plaintiffs ................................................................................. 1

   II.  The Moving Defendants ..................................................................................... 1

PROCEDURAL HISTORY ................................................................................................... 3

ARGUMENT .......................................................................................................................... 5

   I.  Standards of Review Support Personal Jurisdiction ......................................... 5

   II.  Plaintiffs Have Established A Prima Facie Case of Statutory Jurisdiction Over
       Defendants ......................................................................................................... 7

      A.  Plaintiffs Need Only Establish Defendants' Minimum Contacts With the United
          States At Large .......................................................................................... 8

      B.  Venue Is Not A Prerequisite For Plaintiffs To Rely
          on the CEA's Service Provision ............................................................. 10

   III.  The Assertion of Personal Jurisdiction Over Defendants
       Comports With Due Process .............................................................................. 13

      A.  The Court Has General Jurisdiction Over Defendants ............................... 14

      B.  The Court Has Specific Jurisdiction Over Defendants .............................. 16

      C.  The Exercise of Jurisdiction Over Defendants Is Reasonable ................... 23

   V.  Jurisdictional Discovery Is Warranted If Any Additional
       Facts Are Necessary To Establish Jurisdiction Over Any Defendant .............. 24

CONCLUSION ...................................................................................................................... 25

## Table of Authorities

**Cases**

*Abeloff v. Barth*,
    119 F.R.D. 315 (D. Mass. 1988)........................................................................ 19

*Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*,
    956 F. Supp. 427 (S.D.N.Y. 1996)................................................................. 16, 17

*In re Amaranth Natural Gas Commodities Litig.*,
    587 F. Supp. 2d 513 (S.D.N.Y. 2008)........................................ 5, 8, 11, 13, 21, 23

*APWU v. Potter*,
    343 F.3d 619 (2d Cir. 2003)............................................................................ 24

*Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano County*,
    480 U.S. 102 (1987)....................................................................................... 13

*Atlantica Holdings, Inc. v. BTA Bank JSC*,
    No. 13 Civ. 5790, 2015 WL 144165 (S.D.N.Y. Jan 12, 2015)............................ 24

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    305 F.3d 120 (2d Cir. 2002)....................................................................... 6, 20

*In re Bernard L. Madoff Inv. Sec. LLC*,
    No. 08 Civ. 99000, 2015 WL 603209 (Bankr. S.D.N.Y. Feb. 13, 2015) ............... 24

*Beydoun v. Wataniya Restaurants Holding, Q.S.C.*,
    768 F.3d 499 (6th Cir. 2014) ......................................................................... 20

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)................................................................................. 13, 17

*Chew v. Dietrich*,
    143 F.3d 24 (2d Cir. 1998)........................................................................... 9, 20

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010)....................................................................... 20, 22

*CutCo Indus. v. Naughton*,
    806 F. 2d 361 (2d Cir. 1986)............................................................................. 6

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014).......................................................................... 9, 14, 15, 16

*Daniel v. Am. Bd. of Emergency Medicine*,
    428 F.3d 408 (2d Cir. 2005)........................................................................ 11, 12

*Donogue v. Dicut, Inc.,*
   No. 01 Civ. 10194 (NRB), 2002 WL 1728539 (S.D.N.Y. July 24, 2002)...............................24

*Ehrenfeld v. Mahfouz,*
   489 F.3d 542 (2d Cir. 2007).........................................................................................25

*Eskofot A/S v. E.I. Du Pont De Nemours & Co.,*
   872 F. Supp. 81 (S.D.N.Y. 1995)...............................................................9, 17, 19, 21

*First Fed. Sav. & Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co.,*
   634 F. Supp. 1341 (S.D.N.Y 1986)..............................................................................12

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
   131 S. Ct. 2846 (2011)..............................................................................................14, 16

*Grand River Enters. Six Nations, Ltd. v. Pryor,*
   425 F.3d 158 (2d Cir. 2005).......................................................................................20

*Gucci America, Inc. v. Weixing Li,*
   768 F.3d 122 (2d Cir. 2014)..........................................................................14, 15, 17

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.,*
   104 F. Supp. 2d 279 (S.D.N.Y. 2000)..........................................................................11

*In re Hellas Telecommunications (Luxembourg) II SCA,*
   524 B.R. 488 (Bankr. S.D.N.Y. 2015).........................................10, 13, 14, 15, 16

*Int'l Controls Corp. v. Vesco,*
   490 F.2d 1334 (2d Cir. 1974)......................................................................................12

*Jazini by Jazini v. Nissan Motor Co.,*
   148 F.3d 181 (2d Cir. 1998).......................................................................................25

*Leasco Data Processing Equip. Corp. v. Maxwell,*
   468 F.2d 1326 (2d Cir. 1972)........................................................................8, 11, 17, 21

*King County, Wash. v. IKB Deutsche Industriebank AG, et al.,*
   712 F. Supp. 2d 104 (S.D.N.Y. 2010).........................................................................15

*Leon v. Shmukler,*
   992 F. Supp. 2d 179 (E.D.N.Y. 2014) .......................................................................25

*In re LIBOR-Based Fin. Instruments Antitrust Litig.,*
   935 F. Supp. 2d 666 (S.D.N.Y 2013)................................................................3, 21, 22

*In re LIBOR-Based Fin. Instruments Antitrust Litig.,*
   962 F. Supp. 2d 606 (S.D.N.Y. 2013).............................................................................3

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  27 F. Supp. 3d 447 (S.D.N.Y. 2014)................................................................... 4, 21

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  732 F.3d 161 (2d Cir. 2013).................................................................................. 23

*In re Magnetic Audiotape Antitrust Litig.*,
  334 F.3d 204 (2d Cir. 2003).................................................................................. 25

*Mariash v. Morrill*,
  496 F.2d 1138 (2d Cir. 1974)................................................................................... 9

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996)................................................................................. 6, 13

*Morrison v. Nat'l Austl. Bank Ltd.*,
  130 S. Ct. 2869 (2010)............................................................................................. 8

*MPG Assoc., Inc. v Randone*,
  2010 N.Y. Misc. LEXIS 6980, 2010 NY Slip Op 33949(U)
  (N.Y. Sup. Ct. Oct. 26, 2010) .............................................................................. 23

*Porina v. Marward Shipping Co.*,
  521 F.3d 122 (2d Cir. 2008).................................................................................. 15

*Premium Plus Partners, L.P. v. Davis*,
  No. 04-C-1851, 2005 WL 711591 (N.D. Ill. Mar. 28, 2005) ................................ 11

*Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*,
  No. 13 Civ. 1654, 2014 WL 2610608 (S.D.N.Y. June 10, 2014)........................... 21

*Rolls-Royce Motors, Inc. v. Charles Schmitt & Co.*,
  657 F. Supp. 1040 (S.D.N.Y. 1987)....................................................................... 11

*S.E.C. v. Softpoint*,
  No. 95 Civ. 2951, 2001 WL 43611 (S.D.N.Y. Jan. 18, 2001)........................... 9, 10

*S.E.C. v. Straub*,
  921 F. Supp. 2d 244 (S.D.N.Y. 2013).................................................................... 22

*S.E.C. v. Unifund SAL*,
  910 F.2d 1028 (2d Cir. 1990)................................................................................... 9

*Sikhs for Justice v. Nath*,
  893 F. Supp. 2d 598 (S.D.N.Y. 2012).................................................................... 25

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
  750 F.3d 221 (2d Cir. 2014).................................................................................. 15

*Stratagem Dev. Corp. v. Heron Int'l N.V.*,
   153 F.R.D. 535 (S.D.N.Y. 1994) ................................................................ 25

*In re Term Commodities Cotton Futures Litig.*,
   No. 12 Civ. 6126, 2013 WL 9815198 (S.D.N.Y. Dec. 20, 2013)...................................*passsim*

*Ticketmaster-New York, Inc. v. Alioto*,
   26 F.3d 201 (1st Cir.1994) ........................................................................ 24

*United States Securities and Exchange Commission v. Sharef*,
   924 F. Supp. 2d 539 (S.D.N.Y. 2013) ........................................................ 21

*United States v. Scophony Corp.*,
   333 U.S. 795 (1948) ................................................................................... 19

*United States v. Titan*,
   241 F.3d 135 (2d Cir. 2001) .................................................................... 6, 9

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014) ..................................................................... 9, 10, 17

*Wiwa v. Royal Dutch Petroleum Co.*,
   226 F.3d 88 (2d Cir. 2000) ....................................................................... 24

*Wyndham Assoc. v. Bintliff*,
   398 F.2d 614 (2d Cir. 1968) ..................................................................... 11

## Statutes

7 U.S.C. §§ 1, *et seq.* ......................................................................................... 1

7 U.S.C. § 25(c) ...................................................................................... 6, 7, 8, 10

15 U.S.C. § 22 ................................................................................................... 11

28 U.S.C. § 1391 ............................................................................................... 10

## Rules

Fed. R. Civ. P. 12(h) ........................................................................................ 10

Fed. R. Civ. P. 4(k) ...................................................................................... 9, 17

Rule 12(b)(2) ........................................................................................... 1, 3, 4, 5

Rule 12(b)(6) ................................................................................................. 3, 17

The Exchange-Based Plaintiffs respectfully submit this memorandum of law in opposition to Defendants' Motion to Dismiss the putative Class Actions for Lack of Personal Jurisdiction [ECF No. 966].  Defendants have waived personal jurisdiction arguments, and in any event, their motion lacks merit and should be denied.

## FACTUAL BACKGROUND

### I.  Exchange-Based Plaintiffs

Plaintiffs Metzler Investment GmbH, FTC Futures Fund SICAV, FTC Futures Fund PCC Ltd., Atlantic Trading USA, LLC, 303030 Trading LLC, Gary Francis, and Nathanial Haynes ("Plaintiffs") are investors that transacted in Eurodollar futures and options contracts on exchanges such as the Chicago Mercantile Exchange ("CME") and suffered damages caused by Defendants' unlawful manipulation of LIBOR.  ¶¶20-27.[1]  Plaintiffs assert certain claims under the Commodity Exchange Act, as amended, 7 U.S.C. §§ 1, *et seq.* (the "CEA"), on behalf of themselves and others who transacted in Eurodollar futures and options contracts on the CME during the period from at least January 1, 2005 through May 2010 (the "Class Period").

### II.  The Moving Defendants

Fourteen of the named Defendants move to dismiss Plaintiffs' claims for purported lack of personal jurisdiction based on Rule 12(b)(2).[2]  Defendants (or their predecessors or affiliates) were members of a "Panel" of sixteen banks designated by the British Bankers' Association

---

[1] All references to "¶__" and "¶¶__," unless otherwise noted, refer to the Plaintiffs' [Corrected] Second Amended Consolidated Class Action Complaint (the "Complaint") [ECF No. 438].  All references to "Defs. Br." refer to Defendants' Joint Memorandum of Law in Support of Motions To Dismiss The Putative Class Actions for Lack of Personal Jurisdiction. [ECF No. 978].

[2] *See* Notice of Defendants' Motions To Dismiss The Putative Class Action Complaints, and Schedule A thereto listing moving defendants as: The Bank of Tokyo-Mitsubishi UFJ Ltd. ("BTMU"), Credit Suisse Group AG ("Credit Suisse"), Deutsche Bank AG ("Deutsche Bank"), HSBC Holdings plc ("HSBC Holdings"), HSBC Bank plc ("HSBC Bank"), Lloyds Banking Group plc ("Lloyds"), Lloyds Bank plc ("Lloyds Bank"), HBOS plc ("HBOS"), Norinchukin Bank ("Norinchukin"), Portigon AG ("Portigon", as successor in interest to WestLB AG), Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A. (Rabobank"), Royal Bank of Scotland Group plc ("RBS Group"), Royal Bank of Canada ("RBC") and WestDeutsche Immobilienbank AG (collectively, referred to herein, as "Defendants). [ECF Nos. 966, 966-1].

("BBA") to submit interbank borrowing rates to establish daily LIBOR for the U.S. dollar ("USD LIBOR" or simply "LIBOR").   ¶¶5-8.   Throughout the Class Period, Defendants betrayed Plaintiffs' and other investors' confidence in LIBOR, as these financial institutions conspired to, and did, manipulate LIBOR by misreporting to the BBA the actual interest rates at which each of the Defendants and other LIBOR Panel banks expected they could borrow unsecured funds in the London interbank market – *i.e.*, their true costs of borrowing – on a daily basis.  ¶13.  The BBA then relied on the false information Defendants provided to set LIBOR.  *Id.*

Three of the sixteen LIBOR Panel banks were incorporated under the laws of the United States and principally operated in the United States, including Bank of America N.A. ("BofA"), which has its main office in North Carolina and its LIBOR derivative trading operations in New York. ¶28; Declaration of John B. Gaffney [ECF No. 977-1] ("Gaffney Decl.")  ¶4.  J.P. Morgan & Chase Bank N.A. ("J.P. Morgan") and Citibank N.A. ("Citibank") both have their main offices in New York, New York.  ¶¶30, 32.  While J.P. Morgan and Citibank claim that their London branches submitted their daily LIBOR rates, BofA does not deny that it submitted daily LIBOR rates to the BBA and its agents were based in the United States, either from New York or North Carolina.  ¶58, Declaration of Brent L. Barton [ECF No. 977-1] ¶4; Declaration of Joseph B. Wollard [ECF No. 977-1] ¶4; Gaffney Decl, ¶4.  By acting collectively and in concert knowingly to misstate their true borrowing costs, Defendants and the other LIBOR Panel banks collusively and systematically manipulated LIBOR and created artificial trading and settlement prices for LIBOR-based derivatives, including Eurodollar futures and options contracts traded on the CME. ¶¶13-14, 430-36, 443-44, 448-49.

Accordingly, a substantial portion of the acts and transactions giving rise to Plaintiffs' CEA claims occurred in the United States and in this District.

## PROCEDURAL HISTORY

On April 30, 2012, Plaintiffs filed their Amended Consolidated Class Action Complaint ("FAC") asserting claims against all banks that were members of the LIBOR Panel for, *inter alia*, suppression of LIBOR and manipulation of Eurodollar futures prices in violation of the CEA during the initial proposed Class Period (August 2007 through May 2010).  [ECF No. 134]. On June 29, 2012, Defendants filed a motion to dismiss Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  [ECF Nos. 165-66].  None of the Defendants asserted personal jurisdiction challenges under Rule 12(b)(2).  *Id.*

After Barclays, Rabobank, UBS and RBS entered into settlements with the Commodity Futures Trading Commission ("CFTC") and the U.S. Department of Justice ("DOJ"), Plaintiffs repeatedly sought to amend the FAC to allege facts disclosed for the first time in the settlements that LIBOR Panel members had engaged in day-to-day trader-based manipulation during 2005 through at least May 2010.  [ECF Nos. 341].  Plaintiffs also moved for discovery of documents that Defendants had already produced to governmental authorities.  [ECF No. 115, 415].  The Court denied Plaintiffs' requests for discovery.  [ECF No. 489].

In a series of Orders on Defendants' motions to dismiss Plaintiffs' CEA and other claims, which were granted in part and denied in part, the Court held that Plaintiffs plausibly alleged timely CEA manipulation claims against Defendants for suppression of LIBOR based on contracts entered into subsequent to April 14, 2009.[3]  The Court also granted leave to Defendants to file a renewed Rule 12(b)(6) motion to dismiss Plaintiffs' CEA claims during Period 2 (*i.e.*,

---

[3]  *In re LIBOR-Based Fin. Instruments Antitrust Litig* ("*LIBOR I*")*,* 935 F. Supp. 2d 666, 719, Slip Op. at 111 (S.D.N.Y. 2013) [ECF No. 286] (Plaintiffs "have adequately alleged that defendants manipulated the price of Eurodollar contracts and that this manipulation caused them actual damages"); *see also id.* at 722, 723, Slip Op. at 118, 121 (Plaintiffs have adequately alleged vicarious liability and aiding and abetting for manipulation).  *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR II*")*,* 962 F. Supp. 2d 606 (S.D.N.Y. 2013) [ECF No. 389].

May 30, 2008 through April 14, 2009), which they filed on October 10, 2013.  [ECF Nos. 453].

Again, none of the Defendants challenged personal jurisdiction under Rule 12(b)(2).  *Id.*

On September 10, 2013, Plaintiffs filed a Second Amended Complaint, as corrected on

September 30, 2013, previously defined as the Complaint, which included (to preserve rights on

appeal) antitrust and other claims that the Court had previously dismissed or denied leave to

allege.  [ECF No. 438].  By letter dated September 20, 2013, Defendants challenged the

substance of Plaintiffs' Complaint, including the inclusion of dismissed claims, but raised no

challenges to personal jurisdiction.  [ECF No. 422].  In an Order dated October 9, 2013, the

Court reserved ruling on the "permissible content" of allegations in the Complaint, staying a

decision pending resolution of pending motions addressed to Plaintiffs' Complaint, as well as

other complaints in related actions, and noting that the "operative complaints will then be

denominated the Third Consolidated Amended Complaints."  [ECF No. 452].

By Order dated June 23, 2014, the Court granted Defendants' motion to dismiss CEA

claims based on transactions entered during Period 2, but denied their motion to reconsider the

Court's scienter ruling.  *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR III*")*,* 27 F.

Supp. 3d 447 (S.D.N.Y. 2014) [ECF No. 568].  Significantly, the Court held that Plaintiffs

plausibly alleged that all of the defendants "manipulated LIBOR for reputational purposes while

knowing that such conduct would impact the price of Eurodollar futures."  *LIBOR II*, 27 F. Supp.

3d 447, 470, Slip Op. at 38.[4]  Finally, the Court granted Plaintiffs' motion for leave to allege

trader-based CEA manipulation claims against Barclays and Rabobank during the period January

1, 2005 through August 7, 2007.  *Id.* at 463-64, Slip Op. at 22.

---

[4] *See id.*  ("the 'danger' of submitting artificial LIBOR quotes – the manipulation of the price of Eurodollar futures contracts – was either known to the defendant banks or so obvious that they must have been aware of it.") (citing ¶449).

By letter dated July 17, 2014, the Court advised the parties to the various related MDL cases to submit pre-motion letters for any viable motions to dismiss causes of action that had not been the subject of previous rulings by the Court.  [ECF No. 572].  On August 13, 2014, Defendants filed pre-motion conference letter requests seeking permission to move to dismiss Plaintiffs' and other actions for lack of personal jurisdiction under Rule 12(b)(2).  [ECF No. 601].  Plaintiffs opposed Defendants' pre-motion letter requests for leave to assert jurisdictional challenges, arguing, *inter alia*, that Defendants had waived such defenses as a matter of law. [ECF Nos. 618, 620].

On November 13, 2014, Defendants proposed a briefing schedule for motions to dismiss in the class actions that had been stayed pending resolution of motions to dismiss Plaintiffs' and other claims in the Court's *LIBOR I*, *II* and *III* Orders, which the Court endorsed on December 4, 2014.  [ECF No. 865].  In addition to filing motions to dismiss related to the previously-stayed class actions, Defendants filed another motion to dismiss Plaintiffs' Complaint under Rule 12(b)(2).[5]

## ARGUMENT

### I.   Standards of Review Support Personal Jurisdiction

On a motion to dismiss under Rule 12(b)(2), prior to the opportunity for discovery, Plaintiffs need only make a *prima facie* showing of jurisdiction "by pleading in good faith legally sufficient allegations of jurisdiction."  *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 526 (S.D.N.Y. 2008) (citation omitted).  "The Court must construe the pleadings and supporting affidavits in the light most favorable to the plaintiff" and resolve all doubts in Plaintiffs' favor.  *In re Term Commodities Cotton Futures Litig.*, No. 12 Civ. 6126

---

[5]  To Plaintiffs' direct knowledge the Court did not grant the pre-motion request to file such a motion in this action. Defendants have represented that the Court has granted the filing of this motion during a phone conference, which did not include Plaintiffs' counsel.

(ALC)(KNF), 2013 WL 9815198, *31 (S.D.N.Y. Dec. 20, 2013) (holding that plaintiffs made a prima facie showing of jurisdiction over foreign defendant in an action alleging CEA manipulation violations); *see also CutCo Indus. v. Naughton*, 806 F. 2d 361, 365 (2d Cir. 1986).

When a complaint invokes federal question jurisdiction under a federal statute like the CEA, which provides for nationwide service in the United States, 7 U.S.C. § 25(c), the Court must examine defendants' contacts throughout the United States as a whole to determine whether the exercise of personal jurisdiction is appropriate. *Cotton Futures*, 2013 WL 9815198, at *28-29 (citing *U.S. v. Titan*, 241 F.3d 135, 152 (2d Cir. 2001)) ("In determining whether personal jurisdiction exists over a foreign defendant who . . . has been served under a federal service of process provision . . . a court should consider the defendant's contacts throughout the United States and not just those contacts with the forum."). The analysis is limited only by the due process requirements of the Fifth Amendment. *Id.* Under the Fifth Amendment, a plaintiff need only establish defendants' "certain minimum contacts with the United States such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id*. at *29 (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002)). Jurisdiction is to be determined based on a defendant's contacts at the time of filing the complaint and over a reasonable period prior thereto. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569-70 (2d Cir. 1996) ("the minimum contacts inquiry is fact-intensive, and the appropriate period for evaluating a defendant's contact will vary in individual cases," thus a defendant's contacts with the forum must be evaluated over a reasonable period under the circumstances – *e.g.*, six years "up to and including the date the suit was filed").

II.    **Plaintiffs Have Established A *Prima Facie* Case of Statutory Jurisdiction Over Defendants**

Plaintiffs allege credible facts that are sufficient to establish jurisdiction over each of the Defendants.  Indeed, Plaintiffs allege that Defendants are prominent financial institutions that colluded in violation of the CEA to manipulate LIBOR rates and prices in the exchange-based market for Eurodollar futures – the most actively-traded futures contract on the CME.  ¶¶2-3, 5, 11, 448, 514, 525; *see also id.* at ¶449 ("Each Defendant well knew, from its financial sophistication and its familiarity with CME Eurodollar futures contracts . . . that such contracts traded with reference, and settled to, USD-LIBOR.").  Plaintiffs also allege that each of the Defendants transacts business in this District; that part of the events or omissions giving rise to Plaintiffs' claims occurred in this District; that Defendants transacted in Eurodollar futures and other LIBOR-based derivative contracts by traders and broker-dealers located in the U.S. and specifically in New York and Stamford, Connecticut; that Defendants willfully aided, abetted, counseled, induced and procured the alleged violations of the CEA; and that Defendants knew and intended that their alleged manipulation of LIBOR would have direct, foreseeable effects in the U.S., including substantial effects on the financial markets and the U.S. economy and commerce.  ¶¶19, 188, 205, 206, 448, 458-91, 498-504.

Importantly, Plaintiffs also allege that the Court has jurisdiction under Section 22 of the CEA, 7 U.S.C. § 25(c). ¶18.  Section 22(c) states:

**(c)  Jurisdiction; statute of limitations; venue; process**

The United States district courts shall have exclusive jurisdiction of actions brought under this section. Any such action shall be brought not later than two years after the date the cause of action arises. Any action brought under subsection (a) of this section may be brought in any judicial district wherein the defendant is found, resides, or transacts business, or in the judicial district wherein any act or transaction constituting the violation occurs. Process in such action may be served in any judicial district of which the defendant is an inhabitant or wherever the defendant may be found.

7

7 U.S.C. § 25(c).  This provision authorizes personal jurisdiction, venue and nationwide service of process in a private right of action (*i.e.*, an action brought under subsection (a) of the CEA). When, as here, a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction.  *Cotton Futures*, 2013 WL 9815198, at *28 (citing *Amaranth*, 587 F. Supp. 2d at 526).

### A.     Plaintiffs Need Only Establish Defendants' Minimum Contacts With the United States At Large

CEA Section 22(c) provides that process may be served in any judicial district in which "the defendant is an inhabitant or wherever the defendant may be found."  The statutory language "wherever the defendant may be found" indicates a congressional intention to extend personal jurisdiction to the limit permitted by the Due Process Clause of the Fifth Amendment. *Amaranth*, 587 F. Supp. 2d at 526 (holding that the service clause of the CEA "mirrors" that of the Securities Exchange Act of 1934 and permits personal jurisdiction to the extent allowed under the Fifth Amendment) (citing *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1339 (2d Cir. 1972) (it is reasonable to infer that Congress meant to assert personal jurisdiction over foreigners not present in the United States but, of course, not beyond the bounds permitted by the due process clause of the Fifth Amendment), *abrogated by Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869 (2010)).  Therefore, the only question is whether this Court's exercise of personal jurisdiction over Defendants comports with the Due Process Clause of the Fifth Amendment.

Defendants erroneously argue that the Court should examine whether there is a constitutionally sufficient relationship between Defendants and New York, although they concede that personal jurisdiction for Plaintiffs' CEA claims is based on the nationwide service provisions under the CEA.  Defs. Br. at 4 (citing 7 U.S.C. § 25(c)).  Accordingly, this Court

should determine the constitutionality of personal jurisdiction based upon Defendants' contacts throughout the United States, *i.e.*, their "national, rather than local, contacts." *Cotton Futures*, 2013 WL 9815198, at \*29 (citing *Titan*, 241 F.3d at 152).[6]

Nevertheless, Defendants argue that applying a national contacts theory following *Daimler, Walden* and *Porina* is inconsistent with due process, although they admit that in *Porina* the Second Circuit conducted a national contacts analysis. Defs. Br. at 22-23. In *Daimler*, defendants admitted that Daimler's U.S. subsidiary was subject to general jurisdiction in California. *Daimler AG v. Bauman*, 134 S. Ct. 746, 766 (2014) (Sotomayor, J. concurring). Therefore, the Court applied California's long-arm statute and Fed. R. Civ. P. 4(k)(1) to analyze general jurisdiction in California. *Id.* at 753. (citing Rule 4(k)(1)).[7] The Court in *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014), similarly relied on Rule 4(k)(1), noting that the jurisdiction of federal courts in "most cases is linked to service of process on a defendant subject to jurisdiction of a court of general jurisdiction in the state where the district court is located." *Walden* involved federal common law, and thus there was no federal statute that specifically

---

[6] "Second Circuit authority clearly establishes that the constitutionality of *in personam* jurisdiction in federal question cases where Congress has provided for worldwide service is to be determined by national, rather than local, contacts." *S.E.C. v. Softpoint*, No. 95 Civ. 2951, 2001 WL 43611, at \*5 (S.D.N.Y. Jan. 18, 2001) (because the United States is the sovereign whose jurisdictional power is in question, the relevant minimum contacts are those with the United States, and not the State of New York) (citing *Chew v. Dietrich*, 143 F.3d 24, 30 (2d Cir. 1998) ("since the question of personal jurisdiction is one of federal law, we are free to consider all of [defendant's] contacts with the United States in deciding whether the exercise of personal jurisdiction is proper"); *S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir. 1990) (under federal securities laws, worldwide service of process permits the exercise of personal jurisdiction when a defendant's activities had "an unmistakably foreseeable affect within the United States" and could "reasonably be expected to be visited upon United States shareholders."); *Mariash v. Morrill*, 496 F.2d at 1142-43 (because the federal securities laws authorize nationwide service, it is the United States and not New York asserting jurisdiction over defendants)\).

[7] Rule 4(k)(1) provides federal courts with personal jurisdiction over a defendant when a claim arises under federal law and that defendant is subject to a state's courts of general jurisdiction. Any Defendant subject to the general jurisdiction of a state court has sufficient contacts with the United States at large. *Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir. 1974) (where defendants reside in the U.S., the "minimal contacts" necessary to justify federal jurisdiction over them are present). Unlike in *Daimler*, Defendants here contest general jurisdiction in New York and other state courts of general jurisdiction. Thus, Fed. R. Civ. P. 4(k)(2) also provides jurisdiction. *See Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 87 (S.D.N.Y. 1995) (Rule 4(k)(2) provides federal courts with personal jurisdiction over a foreign defendant in a federal question case if the defendant is not subject to state courts of general jurisdiction and has "at least minimum contacts with the United States at large.").

9

provided for national service of process and the forum state's personal jurisdiction rules applied. *Id.* at 1120. "In a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules 'if the federal statute does not specifically provide for national service of process.'" *Cotton Futures*, 2013 WL 9815198, at *28 (citation omitted). Conversely, where a federal statute provides for national service of process, as here, "personal jurisdiction is not determined by the forum state's rules." *Id. See also In re Hellas Telecommunications (Luxembourg) II SCA*, 524 B.R. 488, 506 (Bankr. S.D.N.Y. 2015). ("Nationwide contacts satisfy due process requirements where the court has federal jurisdiction and nationwide service of process is authorized under applicable federal statute.").

Once it is clear that the minimum contacts test is to be applied with respect to the United States and not simply New York, the constitutional propriety of this Court's assertion of jurisdiction over Defendants becomes obvious.

**B.      Venue Is Not A Prerequisite For Plaintiffs To Rely on the CEA's Service Provision**

Defendants half-heartedly assert a purported jurisdictional hurdle, contending that Plaintiffs must demonstrate that venue is proper prior to relying on the CEA's nationwide service provision. Defs. Br. at 21 n.33. As a threshold matter, only 3 of the Defendants contest venue in New York.[8] *Id.* This is because venue *is* proper in New York. It is undisputed that at least three of the LIBOR Panel bank members, BofA, Citibank and J.P. Morgan, are found and transact business in New York. 7 U.S.C. § 25(c) (an action may be brought in any district "wherein the

---

[8] Defendants Credit Suisse, Lloyds and HBOS contest venue in New York (Defs. Br. at 21 n.33), but they, like all the other Defendants, have waived any challenges to venue by omitting such arguments that clearly were available to be raised in their previous motions to dismiss Plaintiffs' claims. *See* Fed. R. Civ. P. 12(h); *Softpoint*, 2001 WL 43611, at *7. Plaintiffs also allege venue under 28 U.S.C. § 1391(b), (c) and (d), but primarily rely on the CEA. ¶19.

defendant is found, resides, or transacts business, or in the judicial district wherein any act or transaction constituting the violation occurs").[9]

Although Defendants urge this Court to look to the Clayton Act, 15 U.S.C. § 22, to require Plaintiffs to demonstrate that venue is proper prior to relying on the CEA's nationwide service provision, Defendants' cited Second Circuit authority provides no such support. Defs. Br. at 21 n.33 (citing *Daniel v. Am. Bd. of Emergency Medicine*, 428 F.3d 408, 424-25 (2d Cir. 2005)). To the contrary, in *Daniel* the Second Circuit found that it was reversible error for the district court to have compared the restrictive venue and jurisdiction language of the Clayton Act with the more permissive venue and jurisdiction provisions of the Securities Exchange Act of 1934 ("Exchange Act"). *Id.* at 426 ("attempts to analogize the venue and service of process provisions of Section 12 with counterpart provisions in the Exchange Act and RICO offer little help in resolving the parties' personal jurisdiction dispute because the text and structure of those statutes differ in important respects from the Clayton Act.").[10] In *Daniel*, the Second Circuit expressly noted that the venue provisions of the Exchange Act, which mirror the CEA venue provisions, reach even more broadly than Section 12 of the Clayton Act. *Daniel*, 428 F.3d at 426; *Amaranth,* 587 F. Supp. 2d at 526 n.70 (comparing Exchange Act to CEA). Although for

---

[9] *See Rolls-Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F. Supp. 1040, 1058 (S.D.N.Y. 1987) (*declined to follow on other grounds, PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65 (2d Cir. 1998)) (where contacts between the claim and the district are not insignificant or miniscule, but rather go to the heart of plaintiff's claims that venue is proper). *See also Hallwood Realty Partners, L.P. v. Gotham Partners, L.P., et al.*, 104 F. Supp. 2d 279, 287 (S.D.N.Y. 2000) ("In a multidefendant action where a common scheme is alleged, venue is proper as to all defendants in any district in which any defendant performed an act or transaction in furtherance of the scheme, even in absence of contact with that district by one or more other defendants.") (*Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 620-21 (2d Cir. 1968), cert. denied, 393 U.S. 977 (1968) ("In cases involving numerous defendants from different states, it is inevitable that some party will be inconvenienced no matter where the suit is tried.")).

[10] *Id.* (citing *Leasco*, 468 F.2d 1326, 1339) ("Congress intended for the venue and service provisions of Section 27 [of the Exchange Act] 'to extend personal jurisdiction to the full reach permitted by the due process clause.'"). Defendants' reliance on out of Circuit authority, *Premium Plus Partners, L.P. v. Davis*, No. 04-C-1851, 2005 WL 711591, at *7 (N.D. Ill. Mar. 28, 2005), is misplaced because the parties erroneously stipulated that venue qualified personal jurisdiction, and the Court accepted the parties' assertion of the law because personal jurisdiction can be waived.

Clayton Act claims, a plaintiff must demonstrate venue *prior* to accessing statutory nationwide service, the same result does not obtain under the Exchange Act or the CEA. *Daniel*, 428 F.3d at 423 ("the plain language of Section 12 indicates that its service of process provision applies (and, therefore, establishes personal jurisdiction) only in cases in which its venue provision is satisfied.").

Moreover, the language of the CEA's venue provision need not be constrained by the Clayton Act's requirement that a Defendant be "found" or "transact business" in "all of the Challenged Jurisdictions," as Defendants argue. Defs. Br. 21 n.33. The fact that some of the alleged numerous daily acts and transactions constituting CEA violations occurred in this District easily satisfies the venue requirements under the CEA.[11] *See, e.g.*, ¶19 (Each Defendant "transacted business in the Southern District of New York and a part of the events or omissions giving rise to the claims occurred in the Southern District of New York"); ¶¶30, 32 (Citibank and J.P. Morgan are headquartered in New York, New York and were contributing members of the LIBOR Panel throughout the Class Period); ¶538 (Defendants aided and abetted the alleged misconduct in this country).

These allegations not only support venue, but also demonstrate that exercising jurisdiction over the Defendants under the facts of this case is constitutional and entirely fair and reasonable. *First Fed. Sav. & Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co.*, 634 F. Supp. 1341, 1350-51 (S.D.N.Y 1986) (when venue is proper as to the defendant under the federal statute, "personal jurisdiction over it is both constitutional and within the compass of the statute").

---

[11] *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1347 (2d Cir. 1974) ("any use of instrumentalities of the mails or other interstate facilities made within the forum district constituting an important step in . . . (the) consummation (of the fraudulent scheme) is sufficient" to establish venue) (citation omitted). Government settlements also demonstrate that multiple acts of trader-based manipulation and transactions constituting CEA violations occurred in New York. *See, e.g.*, ¶¶188, 190.

### III.    The Assertion of Personal Jurisdiction Over Defendants Comports With Due Process

The due process test for personal jurisdiction consists of two related inquiries: "minimum contacts" and reasonableness.  *Metro. Life*, 84 F.3d at 567-69.  The initial minimum contacts analysis distinguishes between "specific" and "general" jurisdiction.   Specific jurisdiction exists when personal jurisdiction over a defendant arises out of or is related to the defendants' contacts with the United States.  *Amaranth*, 587 F. Supp. 2d at 537. By contrast, general jurisdiction allows a court to exercise power over a defendant in a case in which the subject matter of the suit is unrelated to those contacts and is based on a defendant's general business contacts throughout the United States. *Hellas*, 524 B.R. at 508 (finding general jurisdiction in the United States over Deutsche Bank).

"The minimum contacts test analyzes whether the defendant has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Cotton Futures*, 2013 WL 9815198, *29 (quotation marks omitted).  "While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Metro. Life*, 84 F.3d at 567-69 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985); *see also Burger King,* 471 U.S. at 478 (holding that a defendant must demonstrate that the assertion of personal jurisdiction in the forum will "make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent") (internal quotation marks omitted); *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano County*, 480 U.S. 102, 116 (1987) (Brennan, J., concurring) (finding that only in "rare cases" will inconvenience defeat the reasonableness of jurisdiction).

13

Plaintiff has demonstrated the requisite minimum contacts between Defendants and the United States, and Defendants have not and cannot show any severe comparative disadvantage or grave difficulty or inconvenience from litigating this case in this Multidistrict litigation.

### A.   The Court Has General Jurisdiction Over Defendants

Defendants deny that they are subject to general jurisdiction because none of them is "at home" in New York, California or other states.  Defs. Br. at 7 (citing *Daimler*, 134 S. Ct. 761 n.19).  But the issue before this Court is whether Defendants have made themselves at home in the United States, and not in any particular state. *See Hellas*, 524 B.R. at 507-8 (assessing Deutsche Bank AG's contacts with the United States, including a principal location in New York where it operated a "massive Regional Head Office").  Plaintiffs' allegations and evidence submitted by Defendants and Plaintiffs through Declarations demonstrate that general jurisdiction over each of the Defendants is proper.  *See* Kovel Decl.

Defendants argue that there are no exceptional circumstances here that justify the exercise of general jurisdiction outside of any Defendant's place of incorporation or principal place of business.  Defs. Br. at 7.  Defendants' argument should be rejected.  In *Daimler*, the Court clarified that *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S. Ct. 2846 (2011) "did not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business; it simply typed those places paradigm all-purpose forums….exemplar bases." *Daimler*, 134 S. Ct. at 760.[12]  Also, in *Daimler*, the Supreme

---

[12] *Goodyear* involved a lawsuit against Goodyear, an Ohio Corporation, and its subsidiaries in France, Turkey and Luxembourg, which was brought in North Carolina based on a bus accident in France that killed two U.S. boys visiting Paris. The Supreme Court held that the foreign subsidiaries were not "at home" in North Carolina so there was no general jurisdiction over them.  As *Daimler* relied on the same general jurisdiction standards promulgated in *Goodyear*, Defendants' arguments that constitutional arguments on personal jurisdiction were not available to them prior to *Daimler* being handed down by the Supreme Court should be rejected.  Also, Defendants' reliance on *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014) is unavailing.  *Gucci* involved questions related to service of a subpoena on, and the scope of an asset freeze and injunction order on, a non-party Chinese bank owned in part

Court did not overrule the long-established tests for analyzing the exercise of general jurisdiction. Indeed, *Daimler* involved foreign plaintiffs asserting claims against foreign defendants for entirely foreign conduct, which the Court found to be unacceptable for the grasp of general jurisdiction. *Id.* at 750.[13] In contrast here, Plaintiffs allege wrongdoing that was carried out in a cohesive scheme by domestic and foreign banks and was directed at the financial markets in the United States. *See* Argument Section II, *supra*.

General jurisdiction over Defendants here is acceptable and fully within the grasp of due process requirements because each of them maintained a branch or other office and engaged in substantial, long-term banking, investment banking and other business activities in the United States so as to render them at home in the United States. *Hellas*, 524 B.R. at 508. *See also King County, Wash. v. IKB Deutsche Industriebank AG, et al.*, 712 F. Supp. 2d 104 (S.D.N.Y. 2010) (a department of a foreign parent was doing business in New York in a manner that was sufficient to subject it to general jurisdiction).

In *Hellas*, a bankruptcy court in the Southern District of New York held that Deutsche Bank AG, a foreign bank – and also a defendant in the instant action – is subject to general jurisdiction in the United States. 524 B.R. at 508.[14] The *Hellas* court emphasized that unlike the

---

by the Chinese government. The Bank allegedly was receiving transfers of proceeds from defendants' sales of infringing products on the Internet. The question of jurisdiction over a defendant where there is a federal statute providing nationwide service of process was never an issue before the *Goodyear* or *Gucci* Courts. Accordingly, this Court should hold that Defendants have waived their personal jurisdiction defenses.

[13] Defendants' other cited authorities similarly involved foreign plaintiffs, defendants and conducts and therefore are inapposite. *E.g., Porina v. Marward Shipping Co.*, 521 F.3d 122, 124-25 (2d Cir. 2008); *Sonera Holding B.V. v. Cukurova Holding A.S.,* 750 F.3d 221, 223 (2d Cir. 2014). In *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014), the Bank of China's business and operations in New York were insubstantial.

[14] Defendants argued that at the time they filed their motion on January 16, 2015, post-*Daimler*, no court had exercised general jurisdiction outside a defendant's place of incorporation or principal place of business. Defs. Br. at 7. Less than two weeks later, the *Hellas* court exercised general jurisdiction over Deutsche Bank, a foreign bank that had its incorporation and principal place of business in Germany, but had a branch office in New York operating out of a "massive 1.6 million square foot Regional Head Office", which was a "critical hub of [DB's] core banking operations", with "1,600 personnel, including 1000 executives", and "$5 billion in assets."

defendant in *Daimler*, Deutsche Bank's New York office did not belong to a subsidiary or affiliate, but rather was the North American Regional Head Office for "Deutsche Bank itself". *Id.*  The court found that plaintiffs had established that Deutsche Bank maintains a "substantial, long-term presence" in the United States and in New York and that its contacts with the United States were not limited to an in-state operation of an affiliate, as in *Daimler*.  *Id.*  Therefore, the court held that Deutsche Bank's "presence in the United States" was "so 'continuous and systematic' as to render it essentially at home here."  *Id.* (citing *Daimler*, 134 S. Ct. at 761 (quoting *Goodyear*, 131 S. Ct. at 2851)).

The exercise of general jurisdiction over Deutsche Bank in the United States likewise is appropriate here.   The other Defendants' systematic and continuous, long-term presence in the United States is comparable and renders general jurisdiction over them equally appropriate.  *See* Kovel Decl. ¶¶5, 9, 16, 19, 25, 33, 40, 45, 49, 58. As global banking titans, Defendants' continuous presence and core operations in the United States provides them critical access to the capital markets in the United States.  *See id.*   Accordingly, exercising jurisdiction over them comports with due process and is substantially just.

**B.**     **The Court Has Specific Jurisdiction Over Defendants**

**1.**     **Defendants Have the Requisite Minimum Contacts with the United States**

Each Defendant's aggregate contacts throughout the United States satisfy the minimum contacts standard of due process.  Defendants strain hard to apply a more restrictive "substantial" contacts test based on various state long-arm statutes (Defs. Br. at 9-19), but the New York long-arm statute or other statutes cannot be imported here to set a "higher threshold for minimum contacts than is constitutionally required."  *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 956 F. Supp. 427, 440-41 (S.D.N.Y. 1996) (rejecting application of New York long-arm statute

16

for Rule 4(k)(2) personal jurisdiction).   Specific jurisdiction is appropriate over Defendants because each of them has "purposely avail[ed] itself of the privilege of conducting activities within the forum and could foresee being haled into court there."  *Cotton Futures*, 2013 WL 9815198, at *29 (citing *Burger King*, 471 U.S. at 475).[15]  In *Leasco*, the Second Circuit outlined three factors to determine whether the activities of a foreign corporation satisfy the minimum contacts standard of due process.  *Leasco*, 468 F.2d at 1326.  These non-exclusive factors are: "(1) transacting business in the United States, (2) doing an act in the United States, or (3) having an effect in the United States by an act done elsewhere."  *Eskofot*, 872 F. Supp. at 87.[16]

In *Cotton Futures*, the court examined a Netherlands-based corporate defendant's nationwide activities in a CEA case and found "the requisite minimum contacts through [the defendant's] business transactions and [acts committed inside] the United States that made suit in this country reasonably foreseeable."   2013 WL 9815198, at *29.   Among other things, the plaintiffs in *Cotton Futures* alleged that Louis Dreyfus was a holding company that indirectly or directly held and controlled certain of the defendants that had "willfully aided, abetted, counseled, induced or procured" the manipulation of cotton prices in the United States in violation of the CEA.  *Id.* at *28.  The plaintiffs also alleged that Louis Dreyfus acted through individuals that allegedly had manipulated cotton prices and "originate[d] approximately 20% of the United States cotton production."  *Id.*  The court found this fact, along with other "pervasive facts" alleged by plaintiff, including that as a sophisticated company, Louis Dreyfus had set up

---

[15]  In *Walden*, the Supreme Court held that "well-established principles of personal jurisdiction" were sufficient to decide the case.  134 S. Ct. at 1126.  Thus, Defendants' argument that *Walden* "dramatically changed the analysis of whether a court has personal jurisdiction over a defendant" should be rejected.  Defs. Br. at 24.  All of Defendants' personal jurisdiction arguments based on specific jurisdiction were available and known to be available to Defendants when they filed their two previous extensive Rule 12(b)(6) motions to dismiss.  Defendants' reliance on *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014) is unavailing.

[16]  *See also Aerogroup*, 957 F. Supp. at 439 n.17 (*Leasco* indicates that the three factors "are not exclusive but were simply the factors relevant to its facts") (citing *Leasco*, 468 F.2d at 1340).

entities in the United States "to carry out various functions of its cotton merchandising business" amounted to a reasonable inference that Louis Dreyfus "had intentions of doing business and did do business at the national level." *Id.* at *29.

Similarly, Defendants and the other LIBOR Panel banks transacted business and acted through individual LIBOR submitters and traders that manipulated LIBOR rates in the United States and even from New York. ¶¶11, 457. Defendants, as the LIBOR Panel banks, had and exercised exclusive control over LIBOR – "the world's most important number." Eurodollar futures are the largest and most actively traded futures contract in the world, including in the United States. ¶449. Because LIBOR is an integral part of the price of Eurodollar futures contacts, *any* manipulation of LIBOR had a direct and immediate impact on the settlement and trading price of Eurodollar futures (*i.e.*, the source of Plaintiff's injury). ¶¶433, 436. The enormity of the foreseeable impact from manipulation of LIBOR in the United States, and specifically on the Eurodollar futures market, is staggering.[17]

Defendants themselves and their affiliates in the United States had trillions of dollars of Eurodollar futures and other interest rate derivative contracts outstanding during the Class Period. ¶¶459-91. Government settlements already have exposed interactive requests for trader-based manipulation of LIBOR by U.S. Dollar swaps traders in New York and London. ¶188 ("My NYK were screaming at me about an unchanged 3m libor . . . Submitter-1 responded, 'I am going 90 altho 91 is what I should be posting.'"); ¶190 ("For Monday we are very long 3m

---

[17]   ¶498 ("Many hundreds of trillions of dollars of Eurodollar futures transactions and options on Eurodollar futures transactions are entered into each year in interstate commerce in the United States."). Eurodollar futures and options contracts trade in an open outcry form in Chicago and also electronically on the CME's GLOBEX platform. ¶430. In fact, the CME licensed LIBOR from the BBA to use LIBOR as the pricing component and marketing basis for the Eurodollar futures contract. ¶¶450, 455. During the Class Period, the Eurodollar futures contract was (and still is) one of the most actively traded futures contracts in the world. ¶456. In 2012 alone, the total trading volume of 3-month Eurodollar futures was 425 million contacts, with each contract for $1 million in notional principal, which amounts to $425 trillion dollars in notional principal. ¶¶342, 430.

cash here in NY and would like the setting to be as low as possible").  Tellingly, in the instant motion, Defendant Rabobank expressly does not contest personal jurisdiction in this action related to its admitted trader-based manipulation.  [ECF 966-1].[18]

The relevant contacts of Defendants also include all the LIBOR-related conduct that has a connection with the United States, as set forth in the various complaints and declarations submitted in the consolidated and coordinate actions.  *See generally*, Declaration of David E. Kovel, filed concurrently herewith ("Kovel Decl."); *see also Eskofot*, 872 F. Supp. at 88-89 (all of the defendant's activities in the United States buttress the court's conclusion that it has personal jurisdiction).

Moreover, not a single one of the Defendants denies that it transacted business in the United States, nor can they.  *See generally* Kovel Decl.  The meaning of "transacts business" has been defined as the "practical everyday business or commercial concept of doing or carrying on business of any substantial character."  *Abeloff v. Barth*, 119 F.R.D. 315, 326 (D. Mass. 1988) (citing *U.S. v. Scophony Corp.*, 333 U.S. 795 (1948)).   Defendants' own declarations demonstrate that this standard is easily met here.  *See, generally*,  Declaration of Joel Kurtzberg [ECF No. 997] (annexing declarations of Defendants).   The additional facts set forth in the Kovel Declaration make Defendants' business transactions even more apparent.

---

[18] In addition, 6 named defendants are located in the United States (Bank of America Corporation, Bank of America, N.A., J.P. Morgan Chase & Co., J.P. Morgan Chase Bank, N.A., Citigroup, Inc., and Citibank NA).  Moreover, 3 foreign banks, Barclays Bank plc, WestLB AG and UBS AG, also expressly do not contest personal jurisdiction in New York.  Therefore, this Court already has jurisdiction over 10 of named defendants in Plaintiffs' action.  This fact makes it even more reasonable for this Court to adjudicate Plaintiffs' claims, which must be brought in U.S. district courts.

## 2.        Defendants' Contacts in the United States Relate to Plaintiffs' Claims

Defendants have significant individual contacts throughout the United States. Nevertheless, they argue that their contacts fail to establish jurisdiction because they do not proximately relate to Plaintiffs' claims.  Not so.

In fact, proximate cause is never required for specific jurisdiction.  Defendants cite *Chew v. Dietrich,* 143 F.3d 24, 29 (2d Cir. 1998), for the proposition that due process is satisfied "only if the plaintiff's injury was proximately caused by [defendant's relevant] contacts."  Defs. Br. at 18 (quoting *Chew*, 143 F.3d at 29).   However, in *Chew*, the Second Circuit explained that proximate cause is not required in circumstances where, as here, "the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial" than minimal contacts.  *See Chew*, 143 F.3d at 29.  Moreover, the Second Circuit observed that the authority cited by the district court in support of a proximate cause requirement "[made] no reference to such a test." *Id.* at 143 F.3d at 29 n.5.[19]

Instead, the Second Circuit only requires that the forum contacts "relate to" the claim. *See Bank Brussels*, 305 F.3d at 128 (district court erred in denying specific jurisdiction under due process clause because "while these [New York] contacts may not have directly given rise to the plaintiff's cause of action, they certainly 'relate to' it"); *see also Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 167 (2d Cir. 2010) ("[T]he nexus requirement . . . merely requires the cause of action to "relate to" defendant's minimum contacts with the forum."); *see also Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) ("No single event or contact connecting defendant to the forum state need be demonstrated; rather, the totality of all

---

[19] Defendants' reliance on a Sixth Circuit authority that contradicts recent Second Circuit authority is unavailing. *See* Def. Br. at 18 (citing *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 508 (6th Cir. 2014)).

defendant's contacts with the forum state must indicate the exercise of jurisdiction would be proper." (internal quotation marks omitted)).[20]

Here, Defendants' contacts in the United States relate to Plaintiffs' claims.  Defendants entered into a course of conduct that was directed at one of the world's largest *U.S. Dollar* benchmarks and at the most actively-traded futures contracts on the CME.  A foreign defendant is subject to personal jurisdiction, where, as here, it "know[s] or [has] good reason to know, that [its] conduct will have effects in the [forum] seeking to assert jurisdiction over [it]."  *Eskofot*, 872 F. Supp. at 87 n.8; *Amaranth*, 587 F. Supp. 2d at 527 (same) (citing *Leasco*, 468 F.2d at 1341).  The artificial effect on the price of Eurodollar futures contracts on the CME was direct, known and foreseeable to Defendants.  *LIBOR III*, 27 F. Supp. 3d 447, 470, Slip Op. at 38.  Plaintiffs also allege that these foreign Defendants through their affiliates also traded these very same Eurodollar futures contracts on an exchange in the United States. ¶¶459-91; *LIBOR I*, 935 F. Supp. 2d at 715, Slip Op. at 99-100.[21]

In *Amaranth*, Judge Scheindlin held that a Canadian trader's alleged manipulative transactions "presented unmistakably foreseeable effects within the United States" when he instructed another defendant to hold voluminous natural gas futures trades until the last minutes of the settlement period, and on a different occasion instructed another trader to  "smash" the settlement price of specific natural gas futures contracts.  *Amaranth*, 587 F. Supp. 2d at 536.  Based on these transactions, the court rejected the trader's assertion of lack of his requisite minimum contacts with the forum.  *Id.*   The same result should be obtained here where

---

[20] The cases defendants cite say the same thing.  *See, e.g., Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13 Civ. 1654, 2014 WL 2610608, at *8 (S.D.N.Y. June 10, 2014) (specific jurisdiction exists where "the claim arises out of, or relates to, the defendant's contacts with the forum" (emphasis added)).

[21] Due process concerns are met when the effects in the United States occur as "a direct and foreseeable result of the conduct outside the territory" and a defendant "must know, or have good reason to know, that his conduct will have effects in the forum seeking to assert jurisdiction over him."  *U.S. S.E.C. v. Sharef*, 924 F. Supp. 2d 539, 545 (S.D.N.Y. 2013).

Defendants' LIBOR manipulation knowingly created artificial trading and settlement prices for Eurodollar futures contracts.

Defendant's relevant minimal contacts in the United States also include not only the specific manipulation of LIBOR, which Defendants knew would impact the price of Eurodollar futures traded on the CME, but also manipulative transactions conducted through their U.S.-based traders involving LIBOR derivatives (*including Eurodollar futures transactions*) entered into in the United States. ¶¶188, 190, 459-91; *LIBOR I*, 935 F. Supp. 2d 715, Slip Op. at 99-100.

Defendants also conducted general business and banking activities that entailed entering into billions of LIBOR-based transactions in the United States. *See* Kovel Decl. ¶¶7, 56. Defendants' actions and course of conduct were directed at the CME Exchange and investors in Eurodollar futures on the CME, as well as generally an important interest rate benchmark tied to trillions of dollars of loans and investments in the United States. ¶459-91. "It is the defendant's actions, not his expectations, that empower a forum's courts to subject him to judgment." *S.E.C. v. Straub*, 921 F. Supp. 2d 244, 254 (S.D.N.Y. 2013) (citation omitted). Not surprisingly, both the CFTC and DOJ have already demonstrated that the United States has the jurisdiction to subject a defendant engaging in manipulation of LIBOR to settlements and judgments (*i.e.*, non-prosecution agreements) in the United States. Kovel Decl. ¶¶29, 30, 55 (citing to agreements in government settlements arising from LIBOR manipulation that Plaintiffs previously filed with the Court). The totality of Defendants' LIBOR-based and other transactions in the United States were sufficiently extensive and regular to make the possibility of litigation in the United States a foreseeable risk of their business. *Id. See also Chloe*, 616 F.3d at 167 (relevant contacts were all bags defendant sold in New York, not just type of bag sold to plaintiff that gave rise to cause of action).

In addition, each of the Defendants established connections to the United States by, *inter alia*, commencing lawsuits in U.S. courts,[22] registering offices, seeking qualifications and licensing to transact business, paying taxes, employing officers and agents, and/or generally engaging other activities reasonably expected of business ventures under the protection and permission of domestic laws.  *See generally,* Kovel Decl.; *see also Amaranth*, 587 F. Supp. 2d at 537 (listing factors evidencing defendants' connection with the United States).  As set forth in their numerous declarations, Defendants' LIBOR-related conduct has direct connections to the United States, including significant presence in New York.

### C.     The Exercise of Jurisdiction Over Defendants Is Reasonable

Because Plaintiffs have established minimum contacts in the United States, Defendants bear the burden of presenting a "compelling case" that the exercise of personal jurisdiction nevertheless would be unreasonable as a matter of law.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 173-74 (2d Cir. 2013). Courts in this Circuit consider five factors in assessing unreasonableness:  (1) the burden on the defendants; (2) the interest of the forum state in adjudicating the controversy; (3) the interest of the plaintiff in obtaining convenient and effective relief; (4) the interest of the interstate judicial system in obtaining the most efficient resolution of the dispute; and (5) the shared interest of the states in furthering fundamental social policies.  *See, e.g.*, *Cotton Futures*, 2013 WL 9815198, at *30 (citations omitted).

Defendants' broad invocation of international comity is insufficient to make a "compelling" case as to any of these factors, much less to outweigh the interest in the United States in adjudicating matters brought under the CEA and protecting the United States

---

[22] *See, e.g.*, *MPG Assoc., Inc. v Randone*, 2010 N.Y. Misc. LEXIS 6980, 9, 2010 NY Slip Op 33949(U), 5 (N.Y. Sup. Ct. Oct. 26, 2010) ("Defendant's contention that he is not subject to jurisdiction in New York is incorrect, *inter alia*, in light of the fact that Defendant filed a lawsuit in New York in 2006, thereby availing himself of New York's court system."

commodities markets, especially where there is "no evidence of any competing foreign forum for this controversy". *Donogue v. Dicut, Inc.*, No. 01 Civ. 10194 (NRB), 2002 WL 1728539, at *3 (S.D.N.Y. July 24, 2002).   Moreover, Defendants cannot seriously claim any heavy burden in proceeding in the United States as they all have offices in New York, "a major world capital which offers central location, easy access, and extensive facilities of all kinds." (*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 99 (2d Cir. 2000)), and will already be defending against other claims arising from the same nucleus of facts.   Additionally, "the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago [in litigating internationally]." *Cotton Futures*, 2013 WL 9815198, at *30; *Atlantica Holdings, Inc. v. BTA Bank JSC*, No. 13 Civ. 5790, 2015 WL 144165 (S.D.N.Y. Jan 12, 2015) (same).   Accordingly, on a "sliding scale", Defendants fail to carry their burden of showing that litigating in this forum is unreasonable. *In re Bernard L. Madoff Inv. Sec. LLC*, No. 08 Civ. 99000, 2015 WL 603209, at *6 (Bankr. S.D.N.Y. Feb. 13, 2015) (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994)).

## IV.   Jurisdictional Discovery Is Warranted If Any Additional Facts Are Necessary To Establish Jurisdiction Over Any Defendant

Should there be any doubt whether Plaintiffs' allegations are sufficient to establish personal jurisdiction over any of the Defendants, Plaintiffs respectfully request that they be granted leave to take jurisdictional discovery.   A plaintiff should be provided with "ample opportunity to secure and present evidence relevant to the existence of jurisdiction" through jurisdictional discovery. *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003).   Indeed, it is well settled under Second Circuit authority that a court has discretion to order discovery when "the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual

record." *Leon v. Shmukler*, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003).

Plaintiffs believe that jurisdictional discovery here will provide the production of ample documents showing the degree to which Defendants have the required minimal contacts with the United States over the entire alleged Class Period, including bank accounts and relationships, offices and operations, investment banking divisions, trading desks and trading revenues (especially any that are generated in the United States by trading desks but reported through a foreign division).   Discovery also can include depositions to determine the extent of all of the Defendants' continuous contacts with LIBOR submitters located in the United States; the extent of Defendants' Eurodollar trades and other LIBOR-based derivatives trades and transactions in the United States; and trader-based manipulative conduct and related communications. *Stratagem Dev. Corp. v. Heron Int'l N.V.*, 153 F.R.D. 535, 547 (S.D.N.Y. 1994) (the court has discretion to order jurisdictional discovery when although plaintiffs "have not made a *prima facie* showing, they have made a sufficient start toward establishing personal jurisdiction.").[23] Based upon the Complaint and additional materials submitted to the Court, Plaintiffs have already made a more than sufficient start toward demonstrating that jurisdiction over Defendants is appropriate.

## CONCLUSION

For all of the foregoing reasons the Court should deny Defendants' motions to dismiss the Exchange-Based Plaintiffs' claims on personal jurisdiction grounds.

---

[23]  *See also Ehrenfeld v. Mahfouz*, 489 F.3d 542, 550 n.6 (2d Cir. 2007) ("If the District Court understood *Jazini* as forbidding jurisdictional discovery any time a plaintiffs does not make a prima facie showing of jurisdiction, this would indeed be legal error") (discussing *Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998); *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 25 (S.D.N.Y. 2012) (allowing jurisdictional discovery when it was a "close question" whether a relationship supported jurisdiction, and noting that discovery was appropriate because the relationship was "not determinable on the current record.").

Dated: March 16, 2015
New York, New York

**KIRBY McINERNEY LLP**

By:     /s/ *David E. Kovel*
David E. Kovel (dkovel@kmllp.com)
Lauren Wagner Pederson, Of Counsel
(lpederson@kmllp.com)
Thomas W. Elrod (telrod@kmllp.com)
825 Third Avenue, 16th floor
New York, New York 10022
Telephone: (212) 371-6600
Facsimile: (212) 751-2540

**LOVELL STEWART HALEBIAN
JACOBSON LLP**

By:     /s/ *Christopher Lovell*
Christopher Lovell (clovell@lshllp.com)
Jody R. Krisiloff (jkrisiloff@lshllp.com)
Amanda N. Miller (amiller@lshllp.com)
61 Broadway, Suite 501
New York, New York 10006
Telephone: (212) 608-1900
Facsimile: (212) 719-4775

*Interim Co-Lead Counsel for Exchange-Based
Plaintiffs and the Class*