## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262<br>ECF Case<br><br>Master File No. 1:11-md-2262-NRB<br>**ORAL ARGUMENT REQUESTED** |
| THIS DOCUMENT RELATES TO:<br><br>THE BERKSHIRE BANK, ET AL., Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>BANK OF AMERICA CORPORATION, ET AL.<br><br>     Defendants. | No. 12-cv-5723-NRB<br>No. 13-cv-01016-NRB |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE LENDER CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

Page

I.   PLAINTIFFS DO NOT STATE A FRAUD CLAIM............................................................1

    A.   Plaintiffs Are Too Remote to Sue in Fraud .......................................................... 1

    B.   Plaintiffs Cannot Allege Justifiable Reliance ...................................................... 3

    C.   Plaintiffs Do Not Allege a Duty to Disclose........................................................ 5

    D.   Plaintiffs Fail to Allege Scienter Against Non-Panel Bank Defendants................. 6

    E.   Berkshire's Benefit of the Bargain Damages Are Not Recoverable....................... 7

    F.   Most of Plaintiffs' Claims Are Time-Barred........................................................ 9

II.   PLAINTIFFS DO NOT STATE A CONSPIRACY TO DEFRAUD CLAIM.................10

# TABLE OF AUTHORITIES

CASES

PAGE(S)

*900 Unlimited, Inc. v. MCI Telecomms. Corp.*,
   626 N.Y.S.2d 188 (N.Y. App. Div. 1995) ............................................................... 6

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
   651 F. Supp. 2d 155 (S.D.N.Y. 2009) ..................................................................... 7

*All State Insurance Co. v. GMAC Mortgage, LLC*,
   No. 27-CV-11-3480, 2011 WL 7943021 (Minn. Dist. Ct. Hennepin Cnty. Nov. 28, 2011) ..... 7

*Arturet-Velez v. R.J. Reynolds Tobacco Co.*,
   429 F.3d 10 (1st Cir. 2005) ..................................................................................... 9

*Barrett v. Huff*,
   776 N.Y.S.2d 678 (N.Y. App. Div. 2004) ............................................................... 4

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
   No. 12-CV-5329 SAS, 2014 WL 5334053 (S.D.N.Y. Oct. 20, 2014) ...................... 7

*Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*,
   465 N.Y.S. 2d 606 (Sup. Ct. 1983) ......................................................................... 8

*Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.*,
   785 F Supp. 411 (S.D.N.Y. 1992) ....................................................................... 3, 4

*DeAngelis v. Corzine*,
   17 F. Supp. 3d 270 (S.D.N.Y. 2014) ....................................................................... 7

*Doehla v. Wathne Ltd., Inc.*,
   No. 98 CIV. 6087 (CSH), 2000 WL 987280 (S.D.N.Y. July 17, 2000) .................. 8

*Erbe v. Lincoln Rochester Trust Co.*,
   144 N.E.2d 78 (N.Y. 1957) ..................................................................................... 9

*Ernst & Young v. Pac. Mutual Life Ins. Co.*,
   51 S.W.3d 573 (Tex. 2001) ............................................................................. 1, 2, 3

*Exxon Corp. v. Emerald Oil & Gas Co., L.C.*,
  348 S.W.3d 194 (Tex. 2011)...................................................................................................1

*Farina v. Bastianich*,
  No. 109524/201 1E, 2012 WL 10785204 (N.Y. Sup. Ct. Sept. 28, 2012),
  *aff'd as modified by* 984 N.Y.S.2d 46 (N.Y. App. Div. 2014) ..............................................10

*Galope v. Deutsche Bank Nat'l Trust Co.*,
  No. 12-00323, Slip Op. at 14 n.13 (C.D. Cal. Jan. 12, 2015). ..................................................6

*Garcia v. Bernabe*,
  289 F.2d 690 (1st Cir. 1961)....................................................................................................9

*GC Capital v. Deutsche Bank AG*,
  No. SACV 12-02213-JLS, 2014 WL 1672567 (C.D. Cal. Apr. 28, 2014)................................9

*Globe Communications Corp. v. RCS Rizzoli Periodici*,
  729 F. Supp. 973 (S.D.N.Y. 1990)...........................................................................................2

*H. Rosenblum, Inc. v. Adler*,
  461 A.2d 138 (N.J. 1983)..........................................................................................................2

*Hoeffner v. Orrick, Herrington & Sutcliffe LLP*,
  878 N.Y.S.2d 717 (2009) ..........................................................................................................8

*Hoffman v. 162 N. Wolfe LLC*,
  175 Cal. Rptr. 3d 820 (Ct. App. 2014) ..............................................................................5, 6

*Hopkinson v. Estate of Siegal*,
  470 F. App'x 35 (2d Cir. 2012) ................................................................................................9

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
  957 N.Y.S.2d 329 (App. Div. 2012).........................................................................................5

*In re Bear Stearns Cos. Sec. Derivative & ERISA Litig.*,
  995 F. Supp. 2d 291 (S.D.N.Y. 2014)...................................................................................1, 2

*In re CRM Holdings, Ltd. Sec. Litig.*,
  No. 10 CIV. 975 RPP, 2012 WL 1646888 (S.D.N.Y. May 10, 2012).......................................7

*In re Foreign Exchange Benchmark Rates Antitrust Litig.*,
No. 13 Civ. 7789 (LGS), 2015 WL 363894 (S.D.N.Y. Jan. 28, 2015)................................. 10

*In re Interactive Network Sec. Litig.*,
948 F. Supp. 917 (N.D. Cal. 1996) ................................................................................. 7

*In re Libor-Based Fin. Instruments Antitrust Litig.*,
935 F. Supp. 2d 666 (S.D.N.Y. 2013)................................................................... 4, 5, 9

*In re Libor-Based Fin.Instruments Antitrust Litig.*,
27 F. Supp. 3d 447 (S.D.N.Y. 2014)................................................................................ 10

*In re Libor-Based Fin.Instruments Antitrust Litig.*,
2014 WL 6488219 (S.D.N.Y. Nov. 18, 2014) ................................................................. 10

*Jiagbogu v. Bank of Am., N.A.*,
No. G048858, 2014 WL 2879939 (Cal. Ct. App. June 25, 2014) ........................................ 5

*Koch v. Christie's Int'l PLC*,
699 F.3d 141 (2d Cir. 2012)............................................................................................. 9

*Lama Holding Co. v. Smith Barney Inc.*,
668 N.E.2d 1370 (N.Y. 1996)........................................................................................... 7

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
108 F.3d 1531 (2d Cir. 1997) ........................................................................................... 5

*LiMandri v. Judkins*,
52 Cal. App. 4th 326 (Ct. App. 1997)............................................................................... 6

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010)......................................................................................................... 9

*Nader v. Allegheny Airlines, Inc.*,
512 F.2d 527 (D.C. Cir. 1975), *rev'd in part on other grounds*,
426 U.S. 290 (1976)...................................................................................................... 1, 2

*New Amsterdam Project Mgmt. Humanitarian Found. v. Laughrin*,
No. C 07-935JF (HRL), 2009 WL 1513390 (N.D. Cal. May 29, 2009), *aff'd*,
400 F. App'x 250 (9th Cir. 2010) ..................................................................................... 9

*Pasternak v. Dow Kim*,
   961 F. Supp. 2d 593 (S.D.N.Y. 2013)....................................................................... 8

*Phoenix Light SF Ltd. v. ACE Sec. Corp.*,
   No. 650422/2012, 2013 WL 1788007 (N.Y. Sup. Ct. Apr. 24, 2013)...................... 9

*Pludeman v. N. Leasing Sys., Inc.*,
   890 N.E.2d 184 (N.Y. 2008)...................................................................................... 7

*Pooshs v. Philip Morris USA, Inc.*,
   250 P.3d 181 (Cal. 2011) .......................................................................................... 9

*Prudential Ins. Co. of Am. v. J.P. Morgan Sec. LLC*,
   No. ESXL-3085-12, Order at 37-39, 45 (N.J. Law Div. Jul. 17, 2013).................... 7

*Rio Grande Royalty Co. v. Energy Transfer Partners*,
   786 F. Supp. 2d 1202 (S.D. Tex. 2009) .......................................................... 1, 2, 3

*Ritani, LLC v. Aghjayan*,
   970 F. Supp. 2d 232 (S.D.N.Y. 2013)....................................................................... 7

*Robb Evans & Assocs. LLC v. Sun Am. Life Ins.*,
   No. 10 Civ. 5999 (GBD), 2013 WL 123727 (S.D.N.Y. Jan. 8, 2013)...................... 9

*Rossman v. Herb Chambers Commonwealth Ave., Inc.*,
   957 N.E.2d 254 (Mass. App. Ct. 2011) .................................................................... 6

*Sedaghatpour v. DoubleClick, Inc.*,
   213 F. Supp. 2d 367 (S.D.N.Y. 2002)....................................................................... 5

*Shah v. Meeker*,
   435 F.3d 244 (2d Cir. 2006), *abrogated in part on other grounds by*
   *Merck & Co. v. Reynolds*, 559 U.S. 632 (2010) ................................................... 4, 5

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994)....................................................................................... 2

*Stewart v. Jackson & Nash*,
   976 F.2d 86 (2d Cir. 1992)......................................................................................... 8

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
   802 F. Supp. 2d 1125 (C.D. Cal. 2011) .................................................................... 9

*Teamsters Allied Benefit Funds v. McGraw*,
    No. 09 CIV. 140 (PGG), 2010 WL 882883 (S.D.N.Y. Mar. 11, 2010)...................................7

*Terra Sec. ASA Konkursbo v. Citigroup, Inc.*,
    450 F. App'x 32 (2d Cir. 2011) ...............................................5

*Twin Holdings of Del. LLC. v. CW Capital, LLC*,
    No. 005193/09, 2010 WL 309022 (N.Y. Sup. Ct. Jan. 19, 2010) ...........................8

*Varwig v. Anderson-Bechel Porsche/Audi, Inc.*,
    141 Cal. Rptr. 539 (Cal. Ct. App. 1977).................................................2

*Watson v. Riptide Worldwide, Inc.*,
    No. 11 Civ. 0874 (PAC), 2012 WL 383946 (S.D.N.Y. Feb. 7, 2012)....................7

*Young v. Robertshaw Controls Co.*,
    481 N.Y.S.2d 891 (1984)................................................................2

## OTHER AUTHORITIES

Restatement (Second) of Torts § 529......................................................6

Restatement (Second) of Torts § 531......................................................1

Restatement (Second) of Torts § 541, cmt. a............................................5

Restatement (Second) of Torts § 545A, cmt. b...........................................5

Restatement (Second) of Torts § 551......................................................6

Defendants submit this reply memorandum of law in further support of their motion to dismiss the lender plaintiffs' second amended class action complaint (the "Complaint").

## I.    PLAINTIFFS DO NOT STATE A FRAUD CLAIM

### A.    Plaintiffs Are Too Remote to Sue in Fraud

Plaintiffs pay lip service to the notion that there is a limit on the scope of fraud liability, but their argument admits of none.  They assert that any lender who allegedly relied on LIBOR may sue, regardless of the lack of any connection to Defendants or how attenuated the alleged fraud is from the transaction underlying the claim.[1]  Courts have uniformly rejected such virtually limitless third-party fraud liability.  *See, e.g.*, *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 219 (Tex. 2011) ("The standard [for fraud] is not met if a defendant merely foresees that some party may rely on statements made in a public filing."); Defs.' Mem 6-10.

The Restatement itself, on which Plaintiffs rely, recognizes that there is a limiting principle and that fraud liability is not coextensive with reliance or even foreseeability.  *See* Restatement (Second) of Torts § 531; Defs.' Mem. 8-9.  It provides a "reason to expect" standard, *id.*, which has been interpreted by courts to mean that liability is limited to circumstances in which the connection between the plaintiff and defendant is not too attenuated. *See, e.g.*, *Rio Grande Royalty Co. v. Energy Transfer Partners*, 786 F. Supp. 2d 1202, 1209-10 (S.D. Tex. 2009); *In re Bear Stearns Cos. Sec. Derivative & ERISA Litig.*, 995 F. Supp. 2d 291, 313-14 (S.D.N.Y. 2014); *Ernst & Young v. Pac. Mutual Life Ins. Co.*, 51 S.W.3d 573, 578-82 (Tex. 2001); *Nader v. Allegheny Airlines, Inc.*, 512 F.2d 527, 548-49 (D.C. Cir. 1975), *rev'd in*

---

[1] Plaintiffs assert that Defendants had "reason to expect" reliance by, and are therefore liable to, anyone "that would receive payment streams based on LIBOR."  Opp. 3.  Plaintiffs alternatively contend that there was an "especial likelihood" that they, as purportedly "major financial institutions," would rely on LIBOR.  Opp. 5.  Plaintiffs do not explain why there is any more of an "especial likelihood" that "major financial institutions" would rely on LIBOR than "minor" financial institutions or any other institutions or persons that made loans or entered into floating-rate swap transactions tied to LIBOR.  Indeed, the Complaint seeks to assert claims on behalf of "all lending institutions headquartered in the United States" that originated or purchased LIBOR-based loans, not just "major financial institutions."  Compl. ¶ 345.

*part on other grounds*, 426 U.S. 290 (1976).

Indeed, the facts in the cases cited by Defendants—such as *Rio Grande*, *Bear Stearns*, *Ernst & Young*, and *Nader*—are more similar to the facts at hand than those in any of the cases cited by Plaintiffs.[2]  Plaintiffs' failure to distinguish *Rio Grande* is particularly telling.  There, the court dismissed the plaintiff's fraud claims because "[p]laintiff provide[d] no allegations that specifically connect[ed] Defendants' purported misstatements to it."[3]  *Rio Grande* thus confirms that third-party fraud claims are limited to those plaintiffs that have a specific, suit-related connection to the maker of the misrepresentation.[4]  Defs.' Mem. 6-10.  The Complaint here alleges *no* connection between Plaintiffs and Defendants.[5]  Plaintiffs instead rely on allegations

---

[2] *Globe Commc'ns Corp. v. RCS Rizzoli Periodici, S.p.A.*, on which Plaintiffs rely, involved a specific connection between plaintiff and defendant that caused plaintiff's injury.  729 F. Supp. 973 (S.D.N.Y. 1990).  In *Globe*, the defendant magazine, Novella 2000, published an article defaming a singer.  Plaintiff Globe republished the article. *Id.* at 975.  The singer sued Globe for defamation, and Globe, in turn, sued Novella 2000 for contribution.  *Id.*  There was therefore a specific connection between Novella 2000 and Globe:  Novella 2000 defamed the very plaintiff that sued Globe and caused Globe's injury.  *See id.* at 978.  In other words, Globe concerned whether an original or subsequent publisher should bear the cost of a single defamation suit for a republished article, rather than liability to a potentially limitless class.  In this case, by contrast, Plaintiffs seek limitless liability based on claims that allege no connection with Defendants at all.  The only other cases Plaintiffs rely on for support, Opp. 6 n.12, either (i) further reinforce the need for a specific connection between plaintiff and defendant, *see Varwig v. Anderson-Bechel Porsche/Audi, Inc.*, 141 Cal. Rptr. 539, 540-41 (Cal. Ct. App. 1977) (suit by car purchaser against wholesale seller of *that car*, where wholesaler knew car would be sold at retail); *Young v. Robertshaw Controls Co.*, 481 N.Y.S.2d 891, 893-94 (N.Y. App. Div. 1984) (purchaser of *defendant's product* died in an explosion caused by that product); *H. Rosenblum, Inc. v. Adler*, 461 A.2d 138, 140, 155 (N.J. 1983) (plaintiffs acquired stock in corporation audited by defendant, which allegedly handed false audit opinion to plaintiffs), or (ii) are irrelevant to third-party fraud, *see Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1125, 1129 (2d Cir. 1994) (affirming dismissal of securities fraud claim by shareholder against issuer and controlling officers for failing to plead scienter with particularity).

[3] 786 F. Supp. 2d at 1210.  *Rio Grande* did not, as Plaintiffs contend, turn on whether defendants' price reports to the index publisher were true or whether index manipulation was only a "side-effect" of the defendants' alleged conduct.  Opp. 6. n.10.

[4] *See also Bear Stearns*, 995 F. Supp. 2d at 313 ("[E]xtension of [the auditor's] liability to purchasers of unregistered swaps whose existence the auditor did not expect and had no reason to expect inappropriately stretches that liability.").  Plaintiffs attempt to distinguish *Bear Stearns*, but there is no meaningful difference between the unexpected purchase of unregistered derivatives tied to the performance of Bear Stearns stock in that case and Plaintiffs' LIBOR-linked transactions with third-parties.  Both lack the requisite connection to the maker of the alleged misrepresentation.

[5] Contrary to Plaintiffs' mischaracterization, Opp. 2, Defendants do not argue that fraud liability requires privity.  Plaintiffs also mischaracterize Defendants' position by asserting that it is tantamount to a request for "immunity" from fraud liability.  Opp. 1, 6.  Defendants have moved to dismiss on remoteness grounds claims based on transactions with which Defendants had no connection.  Plaintiffs fail to recognize this when they claim that if they "are not among the 'class of persons' . . . then nobody would be."  Opp. 4.

that courts repeatedly reject under the Restatement's reason-to-expect standard, namely that it was industry practice for LIBOR to be used in loans,[6] or that it was "obvious" that Plaintiffs might rely on LIBOR.[7]  Significantly, Plaintiffs cite no case with similar facts, in which a court has extended fraud liability to a virtually limitless class (such as all "lenders" that used LIBOR in some way) on transactions having no connection whatsoever to defendants or even allegedly known to them, based only on plaintiff's purported reliance on publicly available information supposedly affected by the alleged fraud.

Plaintiffs' argument that Defendants' alleged fraud "required" lenders to rely on LIBOR in transactions with third-parties, Opp. 4-5, is also incorrect and belied by the Complaint.  The Complaint alleges that Defendants suppressed their LIBOR submissions to avoid signaling weakness to the marketplace and to "reap large financial benefits" from Defendants' *own* contracts based on LIBOR.  Compl. ¶ 252.  Neither of these alleged goals somehow "required" lending institutions to incorporate LIBOR into transactions with *third parties*.

### B.    Plaintiffs Cannot Allege Justifiable Reliance

Plaintiffs cannot plausibly allege justifiable reliance on the accuracy of LIBOR because, by August 2007, Plaintiffs "had access to the critical information underlying [their] fraud claim," *i.e.*, market data allegedly showing that LIBOR was not accurate.  *See Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.*, 785 F Supp. 411, 419 (S.D.N.Y. 1992).  According to Plaintiffs, this market data showed a "dramatic increase in the negative spread

---

[6] *Compare* Opp. 5-6, *with Ernst & Young*, 51 S.W.3d at 581 (holding that "generalized industry practice or understanding" is "insufficient" to state a third-party fraud claim), *and Rio Grande*, 786 F. Supp. 2d at 1210 (rejecting fraud claim that "essentially alleges that it was industry practice for certain traders to rely on the HSC Index in making contracts").

[7] *Compare* Compl. ¶ 6 ("[I]t was not only foreseeable but obvious that by manipulating the rate of USD LIBOR, Defendants would impair the interest income received by Plaintiffs and other lenders providing USD LIBOR-tied loans."), *with Ernst & Young*, 51 S.W.3d at 580 ("Even an obvious risk that a misrepresentation might be repeated to a third party is not enough to satisfy the reason-to-expect standard.").

between" LIBOR and the Eurodollar deposit rate in August 2007, which Plaintiffs were positioned to notice.[8] Compl. ¶ 81; *see Compania*, 785 F. Supp. at 419-20 (reliance on defendant bank's promise to provide favorable foreign exchange rates was unreasonable when customer could have "compared [the bank's] rates to the interbank rate published in the newspaper").[9]

That Plaintiffs did not know the panel banks' precise borrowing costs is irrelevant, Opp. 8-9; as this Court has already ruled, Plaintiffs could have compared LIBOR to other alleged indicators of panel banks' financial health "to conclude that LIBOR was likely artificial." *In re LIBOR- Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 708 (S.D.N.Y. 2013) ("*LIBOR I*"). Indeed, by May 29, 2008, at the latest, "plaintiffs' investigative work had already been done for them and had been published in the pages of the *Wall Street Journal.*" *Id.* at 708. This case is thus "distinguishable from those in which the information necessary to place plaintiffs on inquiry notice of their injury [was] solely in the control of the defendants." *Id.*

Plaintiffs attempt to distinguish this Court's prior rulings by searching for a difference between justifiable reliance and inquiry notice. Their efforts are futile. *See, e.g.*, *Barrett v. Huff*, 776 N.Y.S.2d 678, 681 (N.Y. App. Div. 2004) ("Where a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means, he cannot claim justifiable reliance on defendant's misrepresentations.").[10] This is

---

[8] Plaintiffs' allegation of this "dramatic increase" in the spread between LIBOR and other benchmark rates in August 2007 directly undermines their argument that they could not have been on notice of the alleged artificiality of LIBOR because it could only be discerned through analysis of "patterns in behavior over many years." Opp. 8 (emphasis omitted). In fact, Plaintiffs allege that the deviations between LIBOR and the Eurodollar deposit rate were so large that "*each* calculated spread between August 8, 2007 and May 17, 2010" was "statistically significant at the extremely high 99% confidence level." Compl. ¶ 84 n.72 (emphasis added).

[9] Plaintiffs seek to distinguish *Compania* on the ground that the plaintiff there "could have realized the discrepancy" by comparing the rates it traded at to "the New York Interbank exchange rate as published." Opp. 10. But the same is true here: according to Plaintiffs, USD LIBOR and the Eurodollar deposit rate represent "identical underlying factors" and the spread between the two "should be at or close to zero," with a "negative spread . . . strongly suggest[ing] manipulation and collusion." Compl. ¶ 79. Therefore, taking Plaintiffs' allegations as true, Plaintiffs "could have realized the discrepancy" by simply comparing LIBOR to the published Eurodollar deposit rate.

[10] *See also, e.g.*, *Shah v. Meeker*, 435 F.3d 244, 252 (2d Cir. 2006), *abrogated in part on other grounds by Merck &*

- 4 -

particularly true insofar as Plaintiffs allege they are "major financial institutions." Opp. 5; *see*

*Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 450 F. App'x 32, 34 (2d Cir. 2011) ("'It is well

established that '[w]here sophisticated businessmen engaged in major transactions enjoy access

to critical information but fail to take advantage of that access, New York courts are particularly

disinclined to entertain claims of justifiable reliance.''" (quoting *Lazard Freres & Co. v.*

*Protective Life Ins. Co.*, 108 F.3d 1531, 1541 (2d Cir. 1997))).[11]  Sophisticated plaintiffs must do

*more* to show justifiable reliance than is required for a plaintiff to show that it was not on inquiry

notice.  Whereas inquiry notice requires examining whether "an investor of ordinary intelligence

would reasonably rely" on the defendant's statements, *LIBOR I*, 935 F. Supp. 2d at 698, 705

(internal quotation marks and citation omitted), justifiable reliance "is a matter of the qualities

and characteristics of the *particular plaintiff*, and the circumstances of the *particular case*"—

here, the qualities, characteristics, and circumstances are that of lending institutions.

Restatement (Second) of Torts § 545A, cmt. b (emphasis added); *see also id.* § 541, cmt. a

(barring "recovery" by an "experienced" plaintiff that "is capable of appreciating [a

misrepresentation's] falsity at the time by the use of his senses").  Plaintiffs cannot plausibly

allege justifiable reliance where this Court has already ruled that publicly available information

put persons of "ordinary intelligence" on notice of alleged issues with the accuracy of LIBOR.

*LIBOR I*, 935 F. Supp. 2d at 711.

### C.    Plaintiffs Do Not Allege a Duty to Disclose

Plaintiffs do not allege or argue that they had a contractual, confidential, or fiduciary

relationship with Defendants that could give rise to a duty to disclose.  But such a duty is

---

*Co. v. Reynolds*, 559 U.S. 632 (2010); *Jiagbogu v. Bank of Am., N.A.*, No. G048858, 2014 WL 2879939, at *6 (Cal. Ct. App. June 25, 2014); *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 957 N.Y.S.2d 329, 330 (N.Y. App. Div. 2012); *Sedaghatpour v. DoubleClick, Inc.*, 213 F. Supp. 2d 367, 375 (S.D.N.Y. 2002).

[11] *See Hoffman v. 162 N. Wolfe LLC*, 175 Cal. Rptr. 3d 820, 835 (Cal. Ct. App. 2014) (plaintiff's "experience and sophistication" render "[h]is failure to make further inquiry . . . unreasonable").

necessary for fraudulent-omission claims.[12]  Plaintiffs rely exclusively on Restatement (Second)

of Torts Sections 551 and 529, but these sections recognize such claims only in the context of

transactional dealings.[13]  Tellingly, Plaintiffs do not distinguish *Galope v. Deutsche Bank Nat'l*

*Trust Co.*, which rejected fraudulent omission claims against a LIBOR panel bank because the

defendant was not a "party to any transaction with Plaintiff" and plaintiff had not "shown any

circumstances indicating a fiduciary relationship."  No. 12-00323, Slip Op. at 14 n.13 (C.D. Cal.

Jan. 12, 2015).  Plaintiffs' fraud claims based on omissions must therefore be dismissed.[14]

### D.  Plaintiffs Fail to Allege Scienter Against Non-Panel Bank Defendants

Plaintiffs must allege scienter as to each Defendant, including affiliates of LIBOR panel

banks against which Plaintiffs assert "direct liability as co-authors [of LIBOR submissions]" or

"parties that knowingly used the misstatements for pecuniary gains."  Opp. 14.[15]  Plaintiffs

cannot invoke the group-pleading doctrine to cure their lack of scienter allegations against

affiliates because (i) LIBOR is not a "group-published statement[] subject to the group-pleading

---

[12] *See 900 Unlimited, Inc. v. MCI Telecomms. Corp.*, 626 N.Y.S.2d 188, 188 (N.Y. App. Div. 1995) ("In the absence of a contractual relationship or a confidential or fiduciary relationship, a party may not recover for fraudulent concealment of fact, since absent such a relationship, there is no duty to disclose.").

[13] *See, e.g.*, *Hoffman*, 175 Cal. Rptr. 3d at 827-28 & n.11 ("The Restatement Second of Torts similarly requires that the duty of disclosure be based upon a relationship (i.e., business transaction) between the parties."); *Rossman v. Herb Chambers Commonwealth Ave., Inc.*, No. 09-P-954, 957 N.E.2d 254, at *2 (Mass. App. Ct. 2011) ("Under Restatement (Second) of Torts § 551, a contemplated transaction between the parties is a prerequisite to a duty to disclose.").  Plaintiffs do not cite any case applying Section 551 outside the transactional context.  *See* Opp. 13 n.21.

[14] Plaintiffs are correct that privity is not always necessary for a fraudulent omission claim, Opp. 13 n.22, but Plaintiffs do not allege *any* relationship, whether based in privity or otherwise, that gives rise to a duty to disclose. *See LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336-37 (Ct. App. 1997) (noting that absent a fiduciary duty, "[e]ach of the other three circumstances in which nondisclosure may be actionable presupposes the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise").

[15] Plaintiffs' arguments based on regulatory settlements do not satisfy their obligation to allege scienter against non-panel bank Defendants.  Opp. 15.  Outside of two irrelevant references to Barclays and HBOS affiliates—none of which are named defendants—the regulatory settlements are not alleged to distinguish between affiliate and panel banks.  In any event, Plaintiffs' allegations have identified no facts to support that affiliates of *other* panel banks were in any way involved in the alleged conduct or derived any benefit therefrom.

doctrine"[16] and (ii) the group-pleading doctrine "cannot be relied on to establish scienter."[17] Plaintiffs must allege scienter as to *each* individual Defendant; therefore, they fail to allege scienter against the affiliate banks.[18]

### E. Berkshire's Benefit of the Bargain Damages Are Not Recoverable

Berkshire seeks benefit of the bargain damages not recoverable in fraud. *See, e.g.*, *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996) ("Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained."). By arguing that its losses are "neither 'undeterminable' nor 'speculative,'" Opp. 17, Berkshire confuses the rule (that only out-of-pocket losses are recoverable) with its rationale (that "the loss of the bargain [is] undeterminable and speculative"). *Lama Holding*, 668 N.E.2d at 1374. Moreover, Berkshire's losses *are* speculative because it assumes (1) an *objective* value of LIBOR, when in fact LIBOR is a

---

[16] *DeAngelis v. Corzine*, 17 F. Supp. 3d 270, 281-82 (S.D.N.Y. 2014) (rejecting plaintiff's "improper[] attempt[] to group-plead the scienter requirement").

[17] *Teamsters Allied Benefit Funds v. McGraw*, No. 09 CIV. 140 (PGG), 2010 WL 882883, at *11 n.6 (S.D.N.Y. Mar. 11, 2010); *In re CRM Holdings, Ltd. Sec. Litig.*, No. 10 Civ. 975 RPP, 2012 WL 1646888, at *30 (S.D.N.Y. May 10, 2012) ("Plaintiffs fail to allege facts that adequately address the scienter element with respect to each of the Individual Defendants—an element that cannot be satisfied through group pleading."). Plaintiffs do not address the cases holding that group-pleading may not substitute for scienter allegations against each defendant, but instead mistakenly rely on cases addressing the attribution of misstatements under the group-pleading doctrine. *See, e.g.*, *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 176-77, 179-80 (S.D.N.Y. 2009) (applying group-pleading doctrine to attribute statements to Morgan Stanley but separately deciding that plaintiffs pleaded scienter against Morgan Stanley); *In re Interactive Network, Inc. Sec. Litig.*, 948 F. Supp. 917, 920 (N.D. Cal. 1996) (not addressing scienter); *Watson v. Riptide Worldwide, Inc.*, No. 11 Civ. 0874 (PAC), 2012 WL 383946, at *4-5 (S.D.N.Y. Feb. 7, 2012) (group-pleading doctrine not satisfied for negligent misrepresentation claim); *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, No. 12-CV-5329 SAS, 2014 WL 5334053, at *5-6 (S.D.N.Y. Oct. 20, 2014) (addressing who qualifies as a "maker" of a statement under Rule 10b-5, and not the group-pleading doctrine).

[18] *See, e.g.*, *Ritani, LLC v. Aghjayan*, 970 F. Supp. 2d 232, 250 (S.D.N.Y. 2013). The lack of affiliate-specific allegations thus distinguishes *Allstate Insurance Co. v. GMAC Mortgage, LLC*, No. 27-CV-11-3480, 2011 WL 7943021 (Minn. Dist. Ct. Hennepin Cnty. Nov. 28, 2011), because there "one [could] readily deduce [from the complaint] given the corporate positions and titles of the individual defendants, that these individuals actually operate the day-to-day business of [the] corporate defendant, and consequently were involved in or knew about the alleged fraudulent concealment of most of the lease," *Pludeman v. N. Leasing Sys., Inc.*, 890 N.E.2d 184, 186 (N.Y. 2008) (quoting the Appellate Division) (third alteration in original). *Prudential Insurance Co. of America v. J.P. Morgan Securities LLC*, No. ESXL-3085-12, Order at 37-39, 44-45 (N.J. Law Div. Jul. 17, 2013), is similarly distinguishable because, unlike in that case, the possibility that panel bank affiliates were uninvolved in the alleged suppression of LIBOR submissions is not "so remote that it need not be discussed further."

weighted average of panel banks' *opinions* of the rate at which other banks would lend to them, and (2) that, had Berkshire known of alleged LIBOR suppression, Berkshire and its counterparties would have agreed to the same contractual terms.

Plaintiffs' employment cases are not "instructive," Opp. 18, because they involve claims for actual losses. *See Pasternak v. Dow Kim*, 961 F. Supp. 2d 593, 596 (S.D.N.Y. 2013) ("The [out-of-pocket rule] has been widely applied to fraudulent inducement claims in the employment context to preclude expectation damages.").[19] Berkshire does not seek to recoup the losses it suffered as a result of entering its contracts; it instead seeks the benefit it believes it might have received under those contracts had the alleged fraud not occurred.[20] Plaintiffs' reliance on *Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*, demonstrates this distinction, because, unlike that plaintiff, which sought damages for "the loss of the corn crop which plaintiff claims it would not have sustained had it not been induced to buy the defective machine," Berkshire does not ask "to be put in the position [it] would have been in if [it] had not made the purchase," but impermissibly seeks what it "might have gained" under its contracts had LIBOR not been allegedly suppressed. 465 N.Y.S.2d 606, 618-19 (N.Y. App. Div. 1983).[21]

---

[19] *See also Stewart v. Jackson & Nash*, 976 F.2d 86, 88-89 (2d Cir. 1992) (not addressing out-of-pocket rule but holding that plaintiff could state a fraudulent-inducement claim based on damages arising from her decision to leave a firm with her desired practice focus); *Hoeffner v. Orrick, Herrington & Sutcliffe LLP*, 878 N.Y.S.2d 717, 718 (2009) (limiting damages to "the difference between the immediately payable portion of the other firm's offer, such as the signing bonus, and the sum he received from defendant law firm immediately after agreeing to remain with defendant"); *Doehla v. Wathne Ltd., Inc.*, 2000 WL 987280, at *6 (S.D.N.Y. July 17, 2000) (recognizing that the out-of-pocket rule "bars Plaintiff from claiming as damages the sums Defendants would have paid him had they performed [plaintiff's] contract with Defendants" but noting that plaintiff's damages arising from the decision to reject an alternative offer in reliance on a fraudulent statement are not unduly speculative).

[20] Compl. ¶ 1 (alleging that Defendants caused "them to receive lower interest than they would have been entitled [to] but for Defendants' fraud."). Plaintiffs' reliance on *Twin Holdings of Delaware LLC. v. CW Capital, LLC*, No. 005193/09, 2010 WL 309022, at *7, 9 (N.Y. Sup. Ct. Jan. 19, 2010), is misplaced because that case does not address the out-of-pocket rule (it addresses specific performance under a contract) and because Berkshire does not allege that its damages are the difference between its contracts and a "refinance[d]" loan.

[21] Berkshire also argues that its actual losses are equal to the difference between the loan Berkshire paid and the then-present value of the payment streams under the terms of the loan. Opp. 19. But the present value of the payment streams is itself an expectation of future payments under the terms of the loan and thus is precisely what is

- 8 -

## F.       Most of Plaintiffs' Claims Are Time-Barred

Plaintiffs repeat the same arguments this Court rejected in *LIBOR I* and *LIBOR III.*

Plaintiffs' attempt to distinguish *LIBOR I* misses the point: the concept of inquiry notice is not

limited to CEA claims, but rather is embedded in each of the state laws applicable to Plaintiffs'

claims. *See* Defs.' Mem 19, nn. 52-54.[22]  Courts in the relevant jurisdictions make clear that the

threshold to trigger the statute of limitations is "quite low"[23] and that the *Merck & Co. v.*

*Reynolds*, 559 U.S. 633 (2010), standard does not apply.[24]  The entirety of GDB's claims, and

DFG's claims accruing before February 13, 2010, are time-barred.[25]  *See* Defs.' Mem 22-23.[26]

---

forbidden as damages by New York's "out-of-pocket" rule.

[22] Plaintiffs argue that the law of the place of injury under New York's borrowing statute is not the plaintiff's place of residence but rather its "financial base." Opp. 20 n. 38. The "financial base" exception that plaintiffs invoke, however, is available only in the "extremely rare case" where the "economic injury occurred in a place other than the plaintiff's residence." *Robb Evans & Assocs. LLC v. Sun Am. Life Ins.*, No. 10 Civ. 5999 (GBD), 2013 WL 123727, at *1 (S.D.N.Y. Jan. 8, 2013). Plaintiffs have not alleged that they suffered an injury anywhere other than their states of residence such that another state's law would apply, and accordingly there is no basis for invoking this exception.

[23] *New Amsterdam Project Mgmt. Humanitarian Found. v. Laughrin*, No. C 07-935JF (HRL), 2009 WL 1513390, at *3 (N.D. Cal. May 29, 2009), *aff'd*, 400 F. App'x 250 (9th Cir. 2010). Plaintiffs' cases lend them no support. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 155-56 (2d Cir. 2012) (holding inquiry notice rule applies under New York law and distinguishing *Erbe v. Lincoln Rochester Trust Co.*, 144 N.E.2d 78, 80-81 (N.Y. 1957)); *Pooshs v. Philip Morris USA, Inc.*, 250 P.3d 181, 187 (Cal. 2011) (applying inquiry notice rule); *GC Capital v. Deutsche Bank AG*, No. SACV 12-02213-JLS, 2014 WL 1672567, at *6 (C.D. Cal. Apr. 28, 2014) (same); *Phoenix Light SF Ltd. v. ACE Sec. Corp.*, No. 650422/2012, 2013 WL 1788007, at *4-5 (N.Y. Sup. Ct. Apr. 24, 2013) (not applying New York law); *Garcia v. Bernabe*, 289 F.2d 690, 692 (1st Cir. 1961) (recognizing that statute runs when "with reasonable diligence [the fraud] might have been discovered").

[24] *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1140 (C.D. Cal. 2011) (statute "begins to run when the plaintiff has information which would put a reasonable person on inquiry"); *Hopkinson v. Estate of Siegal*, 470 F. App'x 35, 37 n.2 (2d Cir. 2012) (*Merck* not controlling under New York law; *Arturet-Velez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10, 14 (1st Cir. 2005) ("This does not require actual knowledge; it is enough that the would-be plaintiff had notice that would have led a reasonable person to investigate and so uncover the needed information."). Even if *Merck* did apply, it would not help Plaintiffs because this Court found that by May 2008 the public was on notice that LIBOR was "likely artificial" and that the "submission of artificial LIBOR quotes was necessarily illegitimate," which are the key allegations underpinning Plaintiffs' claims. *LIBOR I*, 935 F. Supp. 2d at 708.

[25] Plaintiffs concede the operative date for determining the timeliness of their claims against Defendants British Bankers' Association, BBA Enterprises Ltd., and BBA LIBOR Ltd. (together, "BBA") is November 13, 2014, when the BBA was added to the Complaint; thus, as to the BBA, *all* of DFG's and Berkshire's claims accruing before November 13, 2008 are time-barred.

[26] Plaintiffs' arguments for tolling the statutes of limitations on their fraud claims fail for the reasons discussed in Defendants' replies in support of their motions to dismiss the Direct Action Plaintiffs' fraud and consumer claims.

## II. PLAINTIFFS DO NOT STATE A CONSPIRACY TO DEFRAUD CLAIM

Plaintiffs' conspiracy to defraud claim fails because they have not stated a claim for fraud.[27] Plaintiffs have also not plausibly alleged a conspiracy to suppress USD LIBOR. Defs.' Mem 24-25. Plaintiffs seek to rely on Judge Schofield's recent decision in *In re Foreign Exchange Benchmark Rates Antitrust Litigation* for support, but there the Court held that the complaint "offer[ed] direct evidence akin to the recorded phone call in which two competitors agreed to fix prices at a certain level." No. 13 Civ. 7789 (LGS), 2015 WL 363894, at *6 (S.D.N.Y. Jan. 28, 2015) (internal quotation marks omitted). Plaintiffs, by contrast, admittedly rely only on "inferences," and implausible ones at that. Opp. 24 (internal quotation marks omitted). Unlike in *Foreign Exchange*, where the alleged conspiracy "allowed Defendants to take large proprietary positions and make trades that would have been too risky to undertake absent collusion,"[28] Plaintiffs' alleged motivations here undermine any inference of conspiracy. Moreover, in *Foreign Exchange*, the Court noted that the regulatory settlements *corroborated* Plaintiffs' conspiracy allegations, 2015 WL 363894, at *6, whereas here regulatory investigations have failed to reveal a hint of a conspiracy to suppress LIBOR, and undercut any inference of collusion.[29]

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

---

ECF No. 918, at 3-4 (equitable tolling under California law); ECF No. 926, at 6-7 (fraudulent concealment and continuing violation).

[27] *Farina v. Bastianich*, No. 109524/2011E, 2012 WL 10785204, at *14 (N.Y. Sup. Ct. Sept. 28, 2012), *aff'd as modified by* 984 N.Y.S.2d 46 (App. Div. 2014).

[28] *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, 2015 WL 363894 at *8.

[29] *See, e.g.*, Mem. Of Law In Supp. Of Defs.' Mot. To Dismiss Pls.' Antitrust Claims, *In re Libor-Based Fin. Instruments Antitrust Litig.*, 11-md-02262 (S.D.N.Y. Jun. 29, 2012), ECF No. 166 at 11-22. Allegations of Rabobank, RBS, and UBS trader conduct concerning Yen LIBOR, not USD LIBOR, that Plaintiffs reference (Opp. 24 n.45) are irrelevant. *See In re LIBOR-Based Fin. Instruments Antitrust Litig. (LIBOR IV)*, 2014 WL 6488219, at *4 (S.D.N.Y. Nov. 18, 2014); *In re Libor-Based Fin. Instruments Antitrust Litig. (LIBOR III)*, 27 F. Supp. 3d 447, 460 (S.D.N.Y. 2014).

Dated: New York, New York
March 17, 2015

Respectfully submitted,

| | |
|---|---|
| */s/* Robert F. Wise, Jr. | */s/* Daryl A. Libow |
| Robert F. Wise, Jr. | Daryl A. Libow |
| Arthur J. Burke | Christopher M. Viapiano |
| Paul S. Mishkin | SULLIVAN & CROMWELL LLP |
| DAVIS POLK & WARDWELL LLP | 1700 New York Avenue, N.W., Suite 700 |
| 450 Lexington Avenue | Washington, D.C.  20006 |
| New York, New York  10017 | Telephone: (202) 956-7500 |
| Telephone: (212) 450-4000 | Fax: (202) 956-6973 |
| Fax: (212) 450-4800 | libowd@sullcrom.com |
| robert.wise@davispolk.com | viapianoc@sullcrom.com |
| arthur.burke@davispolk.com | |
| paul.mishkin@davispolk.com | *Attorneys for Defendant The Bank of* |
| | *Tokyo-Mitsubishi UFJ, Ltd.* |
| *Attorneys for Defendants Bank of America* | |
| *Corporation and Bank of America, N.A.* | |

/s/ Jeffrey T. Scott
David H. Braff
Yvonne S. Quinn
Jeffrey T. Scott
Matthew J. Porpora
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
braffd@sullcrom.com
quinny@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com

/s/ Jonathan D. Schiller
Jonathan D. Schiller
Leigh M. Nathanson
Amos Friedland
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-2300
jschiller@bsfllp.com
lnathanson@bsfllp.com
afriedland@bsfllp.com

Michael Brille
5301 Wisconsin Avenue NW
Washington, D.C. 20015
Telephone: (202) 237-2727
mbrille@bsfllp.com

*Attorneys for Defendant Barclays Bank plc*

/s/ Andrew A. Ruffino
Andrew A. Ruffino
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 841-1000
aruffino@cov.com

Alan M. Wiseman
Thomas A. Isaacson
Jonathan Gimblett
One City Center
850 Tenth Street, N.W.
Washington, D.C. 20001
Telephone: (202) 662-6000
awiseman@cov.com
tisaacson@cov.com
jgimblett@cov.com

/s/ Michael R. Lazerwitz
Michael R. Lazerwitz
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
mlazerwitz@cgsh.com

*Attorneys for Defendants Citibank, N.A.
and Citigroup Inc.*

| | |
|---|---|
| _/s/_ David R. Gelfand | _/s/_ Herbert S. Washer |
| David R. Gelfand | Herbert S. Washer |
| Sean M. Murphy | Elai Katz |
| MILBANK TWEED HADLEY & McCLOY LLP | Joel Kurtzberg |
| One Chase Manhattan Plaza | CAHILL GORDON & REINDEL LLP |
| New York, New York 10005 | 80 Pine Street |
| Telephone: (212) 530-5000 | New York, New York 10005 |
| dgelfand@milbank.com | Telephone: (212) 701-3000 |
| smurphy@milbank.com | hwasher@cahill.com |
| | ekatz@cahill.com |
| | jkurtzberg@cahill.com |
| _Attorneys for Defendant Coöperatieve_ | |
| _Centrale Raiffeisen-Boerenleenbank B.A._ | _Attorneys for Defendant Credit Suisse_ |
| | _Group AG_ |

| | |
|---|---|
| /s/ Moses Silverman | /s/ Ed DeYoung |
| Moses Silverman | Ed DeYoung |
| Andrew C. Finch | Gregory T. Casamento |
| Jessica Brach | LOCKE LORD LLP |
| Noam Lerer | 3 World Financial Center |
| PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP | New York, New York 10281 |
| 1285 Avenue of the Americas | Telephone: (212) 812-8325 |
| New York, New York 10019 | Fax: (212) 812-8385 |
| Telephone: (212) 373-3355 | edeyoung@lockelord.com |
| Fax: (212) 492-0355 | gcasamento@lockelord.com |
| msilverman@paulweiss.com | |
| afinch@paulweiss.com | Roger B. Cowie |
| jbrach@paulweiss.com | 2200 Ross Avenue, Suite 2200 |
| nlerer@paulweiss.com | Dallas, Texas 75201 |
| | Telephone: (214) 740-8614 |
| *Attorneys for Defendant Deutsche Bank AG* | Fax: (214) 740-8800 |
| | rcowie@lockelord.com |
| | |
| | *Attorneys for Defendants HSBC Holdings plc and HSBC Bank plc* |
| /s/ Thomas C. Rice | /s/ Marc J. Gottridge |
| Thomas C. Rice | Marc J. Gottridge |
| Paul C. Gluckow | Lisa J. Fried |
| Shannon P. Torres | HOGAN LOVELLS US LLP |
| Omari L. Mason | 875 Third Avenue |
| SIMPSON THACHER & BARTLETT LLP | New York, New York 10022 |
| 425 Lexington Avenue | Telephone: (212) 918-3000 |
| New York, New York 10017 | marc.gottridge@hoganlovells.com |
| Telephone: (212) 455-2000 | lisa.fried@hoganlovells.com |
| Fax: (212) 455-2502 | |
| trice@stblaw.com | *Attorneys for Defendants Lloyds Banking Group plc and HBOS plc* |
| pgluckow@stblaw.com | |
| storres@stblaw.com | |
| omason@stblaw.com | |
| | |
| *Attorneys for Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.* | |

| | |
|---|---|
| */s/ Andrew W. Stern*<br>Alan M. Unger<br>Andrew W. Stern<br>Nicholas P. Crowell<br>SIDLEY AUSTIN LLP<br>787 Seventh Avenue<br>New York, New York 10019<br>Telephone: (212) 839-5300<br>Fax: (212) 839-5599<br>aunger@sidley.com<br>astern@sidley.com<br>ncrowell@sidley.com<br><br>*Attorneys for Defendant The Norinchukin Bank* | */s/ Arthur W. Hahn*<br>Arthur W. Hahn<br>Christian T. Kemnitz<br>KATTEN MUCHIN ROSENMAN LLP<br>525 West Monroe Street<br>Chicago, Illinois 60661<br>Telephone: (312) 902-5200<br>arthur.hahn@kattenlaw.com<br>christian.kemnitz@kattenlaw.com<br><br>*Attorneys for Defendant Royal Bank of Canada* |
| */s/ Fraser L. Hunter, Jr.*<br>Fraser L. Hunter, Jr.<br>David S. Lesser<br>Alan E. Schoenfeld<br>WILMER CUTLER PICKERING<br>HALE AND DORR LLP<br>250 Greenwich Street,<br>New York, New York 10007<br>Telephone: (212) 230-8800<br>Fax: (212) 230-8888<br>fraser.hunter@wilmerhale.com<br>david.lesser@wilmerhale.com<br>alan.schoenfeld@wilmerhale.com<br><br>*/s/ Robert G. Houck*<br>Robert G. Houck<br>Alejandra de Urioste<br>CLIFFORD CHANCE US LLP<br>31 West 52nd Street<br>New York, New York 10019<br>Telephone: (212) 878-8000<br>Fax: (212) 878-8375<br>robert.houck@cliffordchance.com<br>alejandra.deurioste@cliffordchance.com<br><br>*Attorneys for Defendant The Royal Bank of Scotland Group plc* | */s/ Peter Sullivan*<br>Peter Sullivan<br>Lawrence J. Zweifach<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, New York 10166-0193<br>Telephone: (212) 351-4000<br>psullivan@gibsondunn.com<br>lzweifach@gibsondunn.com<br><br>Joel S. Sanders (*admitted pro hac vice*)<br>555 Mission Street, Suite 3000<br>San Francisco, California 94105<br>jsanders@gibsondunn.com<br><br>*Attorneys for Defendant UBS AG* |

/s/ Christopher M. Paparella
Christopher M. Paparella
Ethan E. Litwin
Marc A. Weinstein
Morgan J. Feder
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Fax: (212) 422-4726
Chris.Paparella@hugheshubbard.com
Ethan.Litwin@hugheshubbard.com
Marc.Weinstein@hugheshubbard.com
Morgan.Feder@hugheshubbard.com

*Attorneys for Defendants Portigon AG (f/k/a WestLB AG) and Westdeutsche ImmobilienBank AG*

/s/ Richard D. Owens
Richard D. Owens
Jeff G. Hammel
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1200
richard.owens@lw.com
jeff.hammel@lw.com

*Attorneys for Defendants British Bankers' Association, BBA Enterprises Ltd., and BBA LIBOR Ltd.*