# Hogan Lovells

Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022
T  +1 212 918 3000
F  +1 212 918 3100
www.hoganlovells.com

March 19, 2015

**By ECF and Hand Delivery**

Honorable Naomi Reice Buchwald
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, MDL No. 2262,
11 Civ. 2613, Master File No. 1:11-md-2262-NRB

Dear Judge Buchwald:

I write on behalf of Defendants in *Amabile v. Bank of America Corp.*, No. 13-cv-1700 ("*Amabile*"), in response to Plaintiffs' letter of March 12, 2015 (MDL ECF No. 1103) (the "March 12 Letter"), which purports to respond to the Court's inquiry at the February 5, 2015 oral argument regarding whether Plaintiffs concede that only Plaintiffs Amabile, Furlong, Haggerty, Pankau, Restani, Vecchione, and 303 Capital have pled Commodity Exchange Act ("CEA") claims within period zero (January 1, 2005 to August 6, 2007) consistent with the Court's prior rulings.  The March 12 Letter is improper in several respects.

First, Plaintiffs improperly attempt to supplement their complaint through the table on page two of the March 12 Letter, which includes new allegations regarding Plaintiffs' alleged trading positions not found in Exhibit A or B to Plaintiffs' amended complaint.  Specifically, Plaintiffs seek to advance new allegations of (i) trading on dates on which Barclays allegedly engaged in trader conduct, and (ii) net positions of certain Plaintiffs who allegedly traded on dates on which Rabobank allegedly engaged in trader conduct.  *Compare Amabile* Am. Compl. Ex. A and B (*Amabile* ECF Nos. 12-7 and 12-8), *with* March 12 Letter at 2.[1]  The Court should disregard these new factual allegations.[2]

---

[1] Plaintiffs falsely state that the dates that are listed in Exhibit A to their complaint are dates on which "LIBOR is known to have been manipulated as revealed in various settlement agreements."  March 12 Letter at 1.  In fact, no

Honorable Naomi Reice Buchwald
March 19, 2015
Page 2

Second, Plaintiffs fail to meaningfully respond to the point made in Defendants' letter of February 27, 2015 (MDL ECF No. 1065) that it is impossible, with respect to entries in Exhibit A to Plaintiffs' complaint—in which certain Plaintiffs are identified as both "buyers" and "sellers" on the same date—to determine whether a particular Plaintiff was allegedly a net buyer or seller on the particular day. Because Plaintiffs have never identified the net position of those Plaintiffs, it is impossible to determine whether they could have possibly been harmed by any alleged trader conduct.

Third, the March 12 Letter indicates that Plaintiffs will be seeking discovery before their claims have even survived a motion to dismiss. Plaintiffs apparently hope to address some of the defects in Exhibit A if allowed to amend it following a subpoena to the Chicago Mercantile Exchange for trading records. But it is entirely inappropriate for Plaintiffs to seek discovery in order to fashion their complaint. *See Stander v. Fin. Clearing & Servs. Corp.*, 718 F. Supp. 1204, 1210 (S.D.N.Y. 1989) ("It is well settled law that an insufficient and conclusory complaint cannot serve as the basis for discovery aimed at fishing for a possible claim against the purported defendant."). And the admission that certain Plaintiffs "cannot discern" whether they were buyers or sellers of Eurodollar futures on particular dates demonstrate that these Plaintiffs cannot possibly plead their claims consistent with this Court's prior rulings. These Plaintiffs should not be allowed to "unlock the doors of discovery . . . armed with nothing more than conclusions" that they held positions adverse to the alleged manipulation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Finally, Plaintiffs' suggestion that they may advance time-barred claims against Lloyds and RBS "because the settlements . . . do not list the entire universe of manipulative conduct," March 12 Letter at 2, is unavailing. Plaintiffs may not cure otherwise deficient pleadings through speculation about conduct they have not alleged or what discovery might reveal. "The bottom line is that plaintiffs must advance a sufficient basis to support a [claim]," *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 CIV. 2613 NRB, 2014 WL 6488219, at *4 (S.D.N.Y. Nov. 18, 2014), and they have failed to do so as against Lloyds (in Period 0) or RBS (in any period).

---

regulator found that LIBOR was impacted as a result of each instance of trader conduct identified in the settlement documents of Defendants who are referenced in Exhibit A.

[2] *See, e.g., Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 122-23 (S.D.N.Y. 2010) (rejecting allegations first made in affidavit filed with motion to dismiss opposition brief and stating that "a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss").

Honorable Naomi Reice Buchwald
March 19, 2015
Page 3

Respectfully submitted,

By: *Marc Gottridge 18F*

Marc J. Gottridge
Hogan Lovells US LLP
875 Third Avenue
New York, New York 10022
Tel:     (212) 918-3000
E-mail: marc.gottridge@hoganlovells.com

*Attorney for Defendants Lloyds Banking*
*Group plc, Lloyds Bank plc (formerly known as*
*Lloyds TSB Bank plc) and HBOS plc*

cc: All counsel (via ECF)