

# SCHLESINGER
## LAW OFFICES, P.A.

March 26, 2015

**By ECF and Facsimile (212) 805-7927**
Honorable Naomi Reice Buchwald
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

      Re:     *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, MDL NO. 2622
              *Amabile et al. v. Bank of America Corp. et al.*, 1:13-cv-01700-NRB

Dear Judge Buchwald:

      I write on behalf of the *Amabile* plaintiffs in reply to Defendants' March 19, 2015 letter. The Court, respectfully, should reject Defendants' new contentions contained in their post-briefing letters, which inappropriately supplement their motions to dismiss. Notwithstanding Defendants' procedural flaws, their claims are without merit.

      The Court asked who among the *Amabile* plaintiffs assert a period zero trader based manipulation claim. (The Court: Do you think there are more plaintiffs who have period zero claims? Haberman: Yes. I just have to obtain—The Court: Can you send me a letter and let me know?). Feb. 5, 2015 Hrg., Tr. 85:2-5. The *Amabile* plaintiffs responded on March 12, 2015.

      Defendants complain that *Amabile* plaintiffs advanced new allegations. But this is disingenuous. First, these dates of wrongdoing are contained in the Barclays and Rabobank settlement agreements. Second, the Court held that September 29, 2005 and June 30, 2006 are period zero dates in which exchange based traders could have been injured. *Libor III*, 27 F. Supp. 3d 447, 464. Accordingly, Plaintiffs Joseph Amabile, Norman Byster, Michael Cahill, David Klusendorf, and Christopher Lang, in addition to those contained in Exhibit A, matched their records to what the Court has already found meritorious. Even if these allegations are "new," *Amabile* plaintiffs pray that the Court allows them to again amend their complaint to allege such dates. Defendants' citation to *Madu, Edozie & Madu, P.C. v. SocketWorkts Ltd. Nigeria*, 265 F.R.D. 106 (S.D.N.Y. 2010) actually supports the *Amabile* plaintiffs. Noting that the case was only at the motion to dismiss stage, the court "decline[d] to convert the instant motion into a motion for summary judgment since discovery has not yet commenced." The *Madu* court instead permitted the plaintiffs to plead facts not originally contained in the complaint in an amended complaint. A similar result is appropriate here.

      Second, Defendants claim that some Plaintiffs' positions are indecipherable. Not so. As previously explained, their position is "seller" on days where the request was "upward" and

"buyer" on days where the request was "downward." Even if inartfully pled, these claims do not fail as a matter of law.

Next, Defendants accuse *Amabile* Plaintiffs for prematurely seeking discovery. Defendants again paint a false picture. Plaintiffs are not seeking information from Defendants to substantiate their claims. Rather, Plaintiffs are continuing their attempt to get *their own* trading records. Following Defendants' logic, a plaintiff physically injured would be unable to plead injury without attaching medical bills. Defendants' argument that *Amabile* plaintiffs' claims do not meet the *Iqbal/Twombly* pleading threshold is meritless.

Defendants' last claim should fail as well. Lloyds and RBS entered into settlement agreements and admitted they violated the CEA. Lloyds, indeed, conceded that "From *mid-2006 through 2009*…[Lloyds Banking Group plc and Lloyds Bank plc] committed certain actions of *manipulation*, attempted manipulation and false reporting in connection with the London Interbank Offered Rate ("LIBOR") for Sterling, U.S. Dollar, and Yen." *In the Matter of: Lloyds Banking Group plc and Lloyds Bank plc,* CFTC Docket No. 14-18 (emphasis supplied). In the Lloyds-DOJ Deferred Prosecution Agreement, Lloyds too conceded: "Between at least as early as 2006 and at least as late as July 2009, Yen, Dollar and Pound Sterling LIBOR submitters at LTSB and HBOS submitted LIBOR rates intended to benefit trading positions, rather than rates that complied with the definition of LIBOR." *United States of America v. Lloyds Banking Group PLC*, Deferred Prosecution Agreement (Lloyds DPA). Though the manipulation dates in the Lloyds DPA are outside period zero, the manipulators were USD LIBOR submitters in period zero: "From at least July 2007…Submitter-1 was the Dollar LIBOR submitter at HBOS[;]" "From at least January 2006…Submitter-2 was the Dollar submitter at LTSB." For Rule 8 pleading purposes, this provides sufficient support that Lloyds committed unlawful acts under the CEA in period zero, such that Plaintiffs' claims are credible and should proceed to discovery. While the RBS DPA was focused on the Yen and Swiss Franc LIBOR from 2006 through 2010 – where "RBS…derivative traders…attempted to manipulate and did manipulate RBS's LIBOR submissions…in order to benefit their derivatives trading positions" – nothing limits RBS's tortious conduct to those currencies. Accordingly, *Amabile* plaintiffs plead a cause of action for trader-based manipulation against Lloyds and RBS.

Respectfully yours,

Jeffrey L. Haberman