KIRBY McINERNEY LLP

825 Third Avenue
New York, NY 10022
212.371.6600
Fax. 212.751.2540
WWW.KMLLP.COM
Of counsel
  Roger W. Kirby
  Alice McInerney

May 27, 2015

**BY ECF AND HAND DELIVERY**
Honorable Naomi Reice Buchwald
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

> Re:   *In re LIBOR-Based Financial Instruments Antitrust Litig.*,
>        No. 11 Civ. 2613 (NRB), Master File No. 1:11-md-2262-NRB

Dear Judge Buchwald:

We are interim co-lead counsel for the Exchange-Based Plaintiffs and the proposed Class ("Plaintiffs") in the above-referenced action and submit this letter in accordance with Rule 2.B of Your Honor's Individual Practices. The Second Circuit Court of Appeals recently issued a summary order in *BPP Illinois, LLC v. Royal Bank of Scotland* that calls into question the basis for this Court's dismissal of certain of Plaintiffs' Commodity Exchange Act ("CEA") claims for being untimely. The Second Circuit opinion constitutes an intervening change in law that requires this Court's reconsideration of its dismissal of those claims. Plaintiffs therefore respectfully request a pre-motion conference to seek leave to file a motion to reconsider the Court's *LIBOR I* and *LIBOR III* decisions.[1]

**Background.** In *LIBOR I* and *LIBOR III*, this Court dismissed Plaintiffs' CEA claims based on their Eurodollar futures contracts purchased during "Period 1" (August 2007 to May 29, 2008) and "Period 2" (May 30, 2008 to April 14, 2009), respectively. The dismissal of both the Period 1 and 2 claims was based on the Court's holding that Plaintiffs were on inquiry notice no later than May 29, 2008, due to "the numerous [news] articles which suggested that LIBOR had been at artificial levels since the start of the Class Period". *LIBOR III*, 27 F. Supp. 3d at 471; Slip Op. at 41. Plaintiffs dispute that they were on inquiry notice. *See* Compl. ¶¶318-24, 328-34, 335-37 [ECF No. 438]. Under the Court's reasoning, the CEA's two-year statute of limitation had run before Plaintiffs' initial complaint was filed and the Period 1 and 2 claims were therefore time-barred.

The Second Circuit in *BPP Ill., LLC v. Royal Bank of Scotland Grp. PLC ("BPP II")*, 13 Civ. 4459, 2015 U.S. App. LEXIS 7850 (2d Cir. May 13, 2015), has recently held in an action for fraud concerning defendant RBS's alleged manipulation of LIBOR, that those very same news articles which this Court held had put Plaintiffs on inquiry notice as a matter of law, were

---

[1] *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666 (S.D.N.Y. 2013) [ECF No. 286] ("*LIBOR I*"); *Id.*, 27 F. Supp. 3d 447 (S.D.N.Y. 2014) [ECF No. 568] ("*LIBOR III*").

NEW YORK            CALIFORNIA

Kirby McInerney LLP

Honorable Naomi Reice Buchwald
March 27, 2015
Page 2

in fact not sufficient to support a dismissal on statute of limitations grounds at the Rule 12(b)(6) stage.  The district court in *BPP Ill., LLC v. Royal Bank of Scotland Grp. PLC ("BPP I"),* 13 Civ. 638, 2013 U.S. Dist. LEXIS 161761 (S.D.N.Y. Nov. 13, 2013) relied on this Court's ruling on inquiry notice in *LIBOR I* in finding that the news articles had triggered inquiry notice, but the Second Circuit vacated the district court's decision on those very grounds.  Noting that the district court "acted too hastily" in addressing the discovery rule question at the 12(b)(6) stage, the Second Circuit held that "[w]hile further proceedings might show that the BPP Plaintiffs' claims are in fact untimely under the discovery rule, the present record is insufficient to decide this question as a matter of law."  *BPP II*, 2015 U.S. App. LEXIS 7850, at *4-5.

There is no factual basis to distinguish the outcome mandated by the Second Circuit in *BPP II*, from what this Court determined as the correct result in Plaintiffs' case.  The advent of the *BPP II* decision justifies this Court's reconsideration of its prior statute of limitations rulings.

**The standard on a Motion to Reconsider.**  Plaintiffs seek to move for reconsideration under Local Rule 6.3.  As this Court has previously stated, reconsideration "may [ ] be warranted 'where the movant demonstrates that there has been an intervening change of controlling law'" *Small v. Nobel Biocare USA, LLC*, 05 Civ. 3225, 2012 U.S. Dist. LEXIS 38727, at *8-9 (S.D.N.Y. Mar. 20, 2012) (quoting *Padilla v. Maersk Line, Ltd.*, 636 F. Supp. 2d 256, 259 (S.D.N.Y. 2009) (*citing Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).  Reconsideration may be granted where the "moving party can point to controlling decisions . . . that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

**The *BPP I* and *LIBOR* time-bar dismissals were based on identical grounds**.  All of the aspects of the district Court's *BPP I* dismissal on statute of limitations grounds that were relevant to the Second Circuit's decision to vacate it also exist in this Court's *LIBOR I* and *LIBOR III* decisions.  Being indistinguishable on any relevant basis, those decisions would also be reversed if allowed to stand.

The factors common to all three lower court decisions are as follows:

1) Decided on a motion to dismiss;[2]
2) As a matter of law;[3]
3) That plaintiffs were on notice of injury stemming from LIBOR manipulation, due to media articles discussing potential manipulation of LIBOR in April-May 2008;[4]
4) That discovery of the injury triggers the time for inquiry notice;[5]

---

[2] *Compare LIBOR I*, 935 F. Supp. 2d at 676-677; Slip Op. at 1-4 and *LIBOR III*, 27 F. Supp. 3d at 456; Slip Op. at 4 with *BPP I*, 2013 U.S. Dist. LEXIS 161761, at *2.

[3] *Compare LIBOR I*, 935 F. Supp. 2d at 700; Slip. Op. at 60 with *BPP I*, 2013 U.S. Dist. LEXIS 161761, at *23.

[4] *Compare LIBOR I*, 935 F. Supp. 2d at 700, Slip. Op. at 60-61 and *LIBOR III*, 27 F. Supp. 3d at 477; Slip Op at 55-56, with *BPP I*, 2013 U.S. Dist. LEXIS 161761, at *28.

**Kirby McInerney LLP**

Honorable Naomi Reice Buchwald
March 27, 2015
Page 3

5) That inquiry notice was not dissipated by public denials and reassuring statements;[6]
6) That plaintiffs' failure to file initial complaints or conduct an inquiry within the statute of limitations period running from the April-May 2008 (or April 2009 for Period 2 Purchasers) time of inquiry notice time-barred their claims;[7] and
7) That a finding of fraudulent concealment based upon the public denials of the BBA and the LIBOR panel banks was impossible, given the information publicized in the media in the April-May 2008 period.[8]

**The Order to Vacate in *BPP II* Is On Grounds Applicable to *LIBOR I* and *III*.** The Second Circuit in *BPP II*, citing Pennsylvania case law, noted that "*the finder of fact* focuses on whether plaintiff was reasonably diligent in discovering his injury." (emphasis added). *BPP II*, 2015 U.S. App. LEXIS 7850, at *3 (quoting *Crouse v. Cyclops Indus.*, 560 Pa. 394, 404 (Penn. 2000)). Moreover, when one "should reasonably be aware that he has suffered an injury is a factual issue 'best determined by the collective judgment, wisdom, and experience of jurors.'" *Id.* at *3-4. The Second Circuit also held that the need to make "a showing of reasonable diligence was premature." *Id.* at 4. This is in part because questions of inquiry notice and fraudulent concealment are factual issues. *Id.* at 4-5 ("Only where the facts are so clear that reasonable minds could not differ may a court determine as a matter of law at the *summary judgment stage*, the point at which a party should have been reasonably aware of his or her injury and its cause and thereby fix the commencement date of the limitations period.") (emphasis in original) (citation omitted).

---

[5] *Compare LIBOR I*, 935 F. Supp. 2d at 699, Slip. Op. at 58-59 and *LIBOR III*, 27 F. Supp. 3d at 471, Slip. Op. at 40, with *BPP I*, 2013 U.S. Dist. LEXIS 161761, at *37-38.

[6] *Compare LIBOR I*, 935 F. Supp. 2d at 705, Slip. Op. at 75 ("defendants' and the BBA's assurances that all was well with LIBOR could not have been reasonably relied on by plaintiffs and thus do not excuse plaintiffs' failure to inquire."); *LIBOR III*, 27 F. Supp. 3d at 476; with *BPP I*, 2013 U.S. Dist. LEXIS 161761, at *30 ("the fact that [BBA's] public denials flew in the face of the data marshaled by the newspaper articles discussed above, a reasonable person would have at least inquired further before accepting the BBA's representations.").

[7] *Compare LIBOR I*, 935 F. Supp. 2d at 712, Slip. Op. at 91 ("plaintiffs' claims are barred to the extent that they are based on contracts purchased during Period 1" because "it would have been more than two years after the date of inquiry notice."); *LIBOR III*, 27 F. Supp. 3d at 477; Slip Op. at 56 ("the complaint was filed on . . . more than two years after any Period 2 plaintiff would have discovered his injury had he exercised reasonable diligence."); with *BPP I*, 2013 U.S. Dist. LEXIS 161761, at *39 ("because [ ] Plaintiffs, through reasonable diligence, could have known of their injury and the cause thereof by May 29, 2008, the two-year statute of limitations on their claims began to run at least beginning on that date. Plaintiffs filed their initial complaint in this case on December 21, 2012 . . . . Therefore, the . . . claims must be, and are, dismissed as untimely.").

[8] *Compare LIBOR I*, 935 F. Supp. 2d at 88 ("plaintiffs have not adequately alleged fraudulent concealment. For one, they did not "remain[ ] unaware of [defendants'] violation during the limitations period," as they were on notice no later than May 29, 2008"); *LIBOR III*, 27 F. Supp. 3d at 471, Slip Op. at 41 (citing *LIBOR I*); with *BPP I*, 2013 U.S. Dist. LEXIS 161761, at *32 ("Plaintiffs' fraudulent concealment argument [ ] fails . . . [h]owever reasonable it may have been to rely on Defendants' statements about the reliability of LIBOR in early 2008, it was no longer reasonable to do so by late May 2008 in the face of substantial reports to the contrary.").

**Kirby McInerney LLP**

Honorable Naomi Reice Buchwald
March 27, 2015
Page 4

     **The Second Circuit would apply the same standard to _LIBOR I_ and _LIBOR III_.**
That the Second Circuit was applying a statute of limitations governed by Pennsylvania law does
not affect the holding's application to _LIBOR I_ and _LIBOR III_.  First, as the district court in _BPP
I_ noted, the standard for inquiry notice, the discovery rule and fraudulent concealment in
Pennsylvania law is the same as that applied in _LIBOR I_.[9]  Second, regardless of the burden of
proof required by state law, it is federal law that determines whether a question of fact exists or
whether an issue can be decided as a matter of law:

> [S]tate law determines which party bears the burden of proof and which facts are
> material for purposes of summary judgment.  But, the federal district judge, under
> the applicable standards set forth in the Federal Rules of Civil Procedure for
> judgment as a matter of law, determines whether a genuine issue of material fact
> exists such that a reasonable jury could return a verdict for the nonmoving party.

_See Jackson v. Allstate Ins. Co._, 441 F. Supp. 2d 728, 734, n.9 (E.D. Pa. 2006) (citations
omitted).  Plaintiffs in _BPP I_ tried in vain to distinguish between the standard for the discovery
rule in CEA cases under _LIBOR I_ and a purportedly higher standard for invoking inquiry notice
in fraud cases.  _BPP I_, 2013 U.S. Dist. LEXIS 161761, at \*36.  The court denied any relevant
difference between the two standards.  _Id._

     Both the substantive law on when the statute of limitations begins to run, and the
procedural standards on when a dismissal as a matter of law is appropriate were identical
between _BPP Illinois, LIBOR I_ and _LIBOR III_.[10]

     **The same facts were before both the _BPP Illinois_ Court and this Court in _LIBOR I_
and _LIBOR III_.**  Not only did _BPP I_ rely on the same standards as those applied in _LIBOR_, but it
also relied on the same media reports and publicly available information in charging plaintiffs
with inquiry notice of LIBOR manipulation.  In _LIBOR I_ this Court identified seven news articles
by the _Wall Street Journal_ and others and one special report by Citigroup analysts between April
10, 2008 and May 29, 2008, which purportedly put Plaintiffs on notice of LIBOR manipulation.
935 F. Supp. 2d at 704, Slip Op. at 71-72.  The district court in _BPP I_ cited to each of these same
articles in its own decision. _BPP I_, 2013 U.S. Dist. LEXIS 161761, at \*24-28.  In addition the

---

[9] _Compare LIBOR I_, 935 F. Supp. 2d at 698, Slip. Op. at 55 ("To determine when an injury has been discovered,
courts in the Second Circuit apply an 'inquiry notice' analysis similar to the analysis under Pennsylvania's discovery
rule: 'Inquiry notice . . . gives rise to a duty of inquiry when the circumstances would suggest to an investor of
ordinary intelligence the probability that she has been defrauded.'") with _BPP I_, 2013 U.S. Dist. LEXIS 161761, at
\*35; _see also Id._ at \*37 ("Significantly, the discovery rule standard under Pennsylvania law is analogous to the
standard that Judge Buchwald applied to accrual of the CEA claims.").

[10] This decision is in accord with Second Circuit law.  _See Koch v. Christie's Int'l PLC_, 699 F.3d 141, 153 (2d Cir.
2012)  (finding much more than here – such as outstanding litigation and highly certain statistical studies as to
wine's authenticity commissioned by the plaintiff – to have triggered inquiry notice); _Cohen v. S.A.C. Trading Corp._,
711 F.3d 353, 362 (2d Cir. 2013) (no inquiry notice triggered).

**Kirby McInerney LLP**

Honorable Naomi Reice Buchwald
March 27, 2015
Page 5

*BPP* district court relied on *LIBOR I*'s finding that "the membership of the LIBOR panel, the quote each bank on the panel submits daily to the BBA, and the method by which LIBOR is calculated are all public." *BPP I*, 2013 U.S. Dist. LEXIS 161761, at *34.

No better statement of the close parallels between the *BPP I*, *LIBOR I* and *LIBOR III* can be made than that in the penultimate paragraph of the *BPP* district court's statute of limitations discussion:

> Judge Buchwald concluded that the articles and report discussed above gave the LIBOR MDL plaintiffs sufficient notice of their injury – the alleged manipulation of LIBOR – as well as "who was responsible for [it]." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d at 707. The same is true for the BPP Plaintiffs and the claims at issue in this case.

*BPP I*, 2013 U.S. Dist. LEXIS 161761, at *38.

**The Second Circuit would reverse *LIBOR I* and *LIBOR III*.**  Given that *LIBOR I* and *LIBOR III* were applying the same legal standards to the same set of facts as the district court in *BPP I*, the Second Circuit's Order vacating *BPP I*, works as an implied reversal of *LIBOR I* and *LIBOR III*.  Indeed, it is hard to understand how the Second Circuit could disapprove of *BPP I*'s statute of limitation holding without also disapproving of *LIBOR I* which was cited by the lower Court in *BPP I* **twelve times** in its statute of limitations discussion.

\*     \*     \*

The Second Circuit's *BPP II* decision is an intervening change of law that justifies this court in reconsidering the portion of its orders in *LIBOR I* and *LIBOR III* that dismiss Plaintiffs' Period 1 and Period 2 CEA claims on statute of limitations grounds.  Plaintiffs respectfully request leave to move to have these claims be reinstated.

Respectfully submitted,

/s/ Christopher Lovell
Christopher Lovell
LOVELL STEWART HALEBIAN
61 Broadway, Suite 501
New York, New York 10006
Telephone: (212) 608-1900
Email: clovell@lshllp.com

/s/ David E. Kovel
David E. Kovel
KIRBY McINERNEY LLP
825 Third Avenue, 16th floor
New York, New York 10022
Telephone: (212) 371-6600
Email: dkovel@kmllp.com

*Interim Co-Lead Counsel for Exchange-Based Plaintiffs and the Proposed Class*

cc:    All Counsel of Record (by Electronic Filing)