PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373 3000

UNIT 3601  FORTUNE PLAZA OFFICE TOWER A
NO 7 DONG SANHUAN ZHONGLU
CHAO YANG DISTRICT
BEIJING 100020
PEOPLE S REPUBLIC OF CHINA
TELEPHONE (86 10) 5828 6300

12TH FLOOR  HONG KONG CLUB BUILDING
3A CHATER ROAD  CENTRAL
HONG KONG
TELEPHONE (852) 2846 0300

MOSES SILVERMAN

TELEPHONE  (212) 373-3355
FACSIMILE    (212) 492 0355
E MAIL   msilverman@paulweiss com

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU  U K
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2 2 UCHISAIWAICHO 2 CHOME
CHIYODA KU  TOKYO 100 0011  JAPAN
TELEPHONE (81 3) 3597 8101

2001 K STREET NW
WASHINGTON  DC 20006 1047
TELEPHONE (202) 223 7300

500 DELAWARE AVENUE  SUITE 200
POST OFFICE BOX 32
WILMINGTON  DE 19899 0032
TELEPHONE (302) 655 4410

May 29, 2015

**VIA ECF and Hand Delivery**

Honorable Naomi Reice Buchwald
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, NY  10007-1312

In re LIBOR-Based Financial Instruments Antitrust Litigation,
MDL No. 2262, Master File No. 1:11-md-02262-NRB

Dear Judge Buchwald:

This firm represents defendants Deutsche Bank AG ("Deutsche Bank") and Deutsche Bank Securities Inc.  We write to respond to Dickstein Shapiro's letter of May 13 submitted on behalf of the Direct Action Plaintiffs ("DAPs") concerning the purported relevance of recent LIBOR-related settlements between Deutsche Bank and regulatory authorities to motions to dismiss pending before the Court.  (*See* Dkt. No. 1132.)  The letter was joined in whole by the Over-the-Counter Plaintiffs and in part by the Exchange-Based Plaintiffs.  This letter was also joined by the Lender Action Plaintiffs, whose own brief letter incorporates by reference all of the arguments addressed below.

Plaintiffs' letter does not clearly specify which pending motions are supposedly implicated by Deutsche Bank's settlements—or how—but we set forth below responses to the issues that the Plaintiffs appear to raise.  As explained further below, nothing in these settlement papers undermines the grounds for dismissal set forth in Defendants' pending motions to dismiss.

A. The Settlements Do Not Reflect Any USD LIBOR Interbank Coordination

Plaintiffs begin by claiming that Deutsche Bank's settlements indicate "that Defendants conspired to violate both the law and the LIBOR-setting rules." (Dkt.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Naomi Reice Buchwald                                                                      2

No. 1132 at 2.) They appear to seek to buttress their substantive "civil conspiracy" claims and, perhaps, to bolster their conspiracy-based theory of personal jurisdiction.

As an initial matter, and as discussed in Defendants' prior briefs, Plaintiffs' conspiracy-based theory of personal jurisdiction can (and should) be rejected as a matter of law, particularly following the U.S. Supreme Court's decision in *Walden* v. *Fiore*, 134 S. Ct. 1115 (2014). *See In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-2481 KBF, 2015 WL 892255, at *5 (S.D.N.Y. Mar. 3, 2015) ("The rules and doctrines applicable to personal jurisdiction are sufficient without the extension of the law to a separate and certainly nebulous 'conspiracy jurisdiction' doctrine.").[1] Thus, even if it were the case that Deutsche Bank's settlements bolstered Plaintiffs' theory that there was a years-long conspiracy among panel banks to suppress USD LIBOR—and the settlements do no such thing—it would have no effect on Defendants' pending motions to dismiss for lack of personal jurisdiction.

All of the statements from Deutsche Bank's settlement papers that Plaintiffs reference are taken out of context and, when read correctly, do not show that Deutsche Bank coordinated with any panel bank regarding its USD LIBOR submissions. As discussed in greater detail in Deutsche Bank's response to DAPs' letter concerning pending antitrust claims (which is also being filed today), the settlement papers do not contain *any* statements suggesting that Deutsche Bank coordinated with other banks regarding USD LIBOR submissions.

To start, Plaintiffs cite to a communication quoted in Deutsche Bank's Consent Order with the New York State Department of Financial Services ("DFS") that indicates that a Deutsche Bank LIBOR submitter was aware on one day that other banks would be leaving their submissions unchanged, but the Consent Order explicitly states that that information was "obtained through brokers"—not other banks—and in any event, there is no indication that the banks had agreed on their submissions. NYCO ¶ 42.[2] Plaintiffs cite to two other communications as well, but neither of them contains any indication that it actually related to USD LIBOR (as opposed to another benchmark). *See id.* ¶¶ 37-38. And this Court has "rejected the concept" that allegations regarding a different currency should be "import[ed]" into a proceeding that concerns USD LIBOR. Hearing Tr., Dkt. No. 1047, at 37:22-24 (Feb. 5, 2015).

Plaintiffs also cite references to a meeting among panel banks and the BBA in April 2008 during which concerns were raised about whether certain panel banks were making inappropriately low LIBOR submissions. NYCO ¶ 63; Final Notice ¶ 4.58.

---

[1] *See also* Joint Mem. of Law in Support of Defs.' Mot. to Dismiss the Direct Actions for Lack of Personal Jurisdiction, Dkt. No. 754, at 15; Joint Mem. of Law in Support of Defs.' Mot. to Dismiss the Putative Class Actions for Lack of Personal Jurisdiction, Dkt. No. 978, at 14; Joint Reply Mem. of Law in Further Support of Defs.' Mot. to Dismiss the Putative Class Actions for Lack of Personal Jurisdiction, Dkt. No. 1124, at 8-10.

[2] For ease of reference, this letter uses the same abbreviations for the settlement documents as those used in Plaintiffs' letter.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Naomi Reice Buchwald                                                                                                  3

As this Court has explained, however, the LIBOR-setting process is a "cooperative endeavor." *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR I*"), 935 F. Supp. 2d 666, 688 (S.D.N.Y. 2013). Given that context, the notion that discussions that appear to have been specifically designed to *prevent* the risk of "lowballing" are indicative of a *conspiracy* to lowball—as Plaintiffs suggest—is illogical on its face.

Finally, Plaintiffs point to an internal Deutsche Bank communication in which one employee directed another employee on a single occasion to "[m]ake sure our libors are on the low side." NYCO ¶ 57. But that communication makes no reference to coordination with other panel banks, and the DFS itself found "no evidence" that the instruction was followed. *Id.* ¶ 57 n.1. There is not a single statement in Deutsche Bank's settlement papers that suggest that anyone at the bank *ever* engaged in reputation-driven suppression of its USD LIBOR submissions—let alone that anyone at the bank coordinated with other panel banks to do so.

B. <u>Deutsche Bank's Settlements Do Not Support Personal Jurisdiction Based On Plaintiffs' "Lowballing" Claims</u>

Plaintiffs also refer to various statements in Deutsche Bank's settlement papers in support of their contention that Deutsche Bank should be subject to personal jurisdiction in the Plaintiffs' cases on the basis of contacts with the United States and New York. (Dkt. No. 1132 at 3-4.) The contention remains baseless.

As a review of the relevant statements and communications makes clear, they relate to what this Court has described as "trader-based" manipulation—not reputation-based suppression of LIBOR—and as has previously been shown with respect to other settling defendants, allegations concerning one form of misconduct cannot establish personal jurisdiction on the basis of the other.[3] This Court has recognized that "claims based on defendants' persistent suppression of LIBOR require different allegations to survive than do those based on day-to-day, trader-based manipulation." *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR III*"), 27 F. Supp. 3d 447, 460 (S.D.N.Y. 2014). In any event, Plaintiffs' letter does not claim that any of the *Plaintiffs* were themselves harmed by any trader-based misconduct at Deutsche Bank—making the relevant statements and communications irrelevant to the jurisdictional analysis. *See, e.g., 7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, No. 13 Civ. 981 (PGG), 2015 WL 1514539, at *10 (S.D.N.Y. Mar. 31, 2015); *Absolute Activist Master Value Fund, Ltd. v. Ficeto*, No. 09 Civ. 8862 (GBD), 2013 WL 1286170, at *11-*12 (S.D.N.Y. Mar. 28, 2013).

In addition, Plaintiffs rely on statements—nearly identical to those in most other LIBOR-related settlements to date—that some actions of Deutsche Bank employees

---

[3] Joint Reply Mem. of Law in Further Support of Defs.' Mot. to Dismiss the Direct Actions for Lack of Personal Jurisdiction, Dkt. No. 922, at 11 & n.23; Joint Reply Mem. of Law in Further Support of Defs.' Mot. to Dismiss the Putative Class Actions for Lack of Personal Jurisdiction, Dkt. No. 1124, at 12-13.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Honorable Naomi Reice Buchwald                                                                4

harmed some unnamed counterparties in the United States, but those statements are insufficient to show (as Plaintiffs must) that Deutsche Bank intentionally harmed any *particular* plaintiff through the conduct of its employees. Even if certain Deutsche Bank employees were aware that their conduct would in some instances adversely affect counterparties in the United States, "the fact that harm in the forum is foreseeable . . . is insufficient for the purpose of establishing specific personal jurisdiction over a defendant," as Judge Gardephe recently explained in the USD LIBOR-related case pending before him, *7 West 57th Street*. 2015 WL 1514539, at *11 (internal quotations omitted; ellipses in original).

Finally, although Deutsche Bank's settlements refer to misconduct on the part of certain New York-based employees, Plaintiffs do not allege that any of that conduct actually harmed any of *them*, as they must in order to successfully plead personal jurisdiction over the company. *See id.* at *10 ("Plaintiff has not pled facts suggesting that the conduct of the two Barclays employees has any connection with the injury suffered by [plaintiff] . . . .").

C. <u>The Settlements Do Not Bolster Plaintiffs' Fraudulent Concealment Claim</u>

Plaintiffs seek to bolster their fraudulent concealment claim by citing statements in the settlement papers they claim show efforts to conceal. The statements they rely on are often misconstrued or taken out of context, and none has any bearing on what Plaintiffs knew about USD LIBOR, and when. This Court has already held that facts publicly known by May 29, 2008 put Plaintiffs on notice of their potential claims and started the running of the statute of limitations. *See LIBOR I*, 935 F. Supp. 2d at 710. Nothing in the settlement papers changes that.

D. <u>The Settlements Do Not Support Plaintiffs' Fraud Allegations With Respect to Non-Transacting Defendants</u>

Plaintiffs seek to bolster their fraud claims by citing statements in the settlement papers that stand for the (unsurprising) proposition that LIBOR is used in various instruments, and that changes in LIBOR could affect counterparties. (Dkt. No. 1132 at 5.) These statements have no bearing on Plaintiffs' contention that they can state a claim for fraud against defendants they *did not* transact with, a contention that has no legal basis.[4]

These statements also have no bearing on the other dispositive defenses raised by the Defendants in their prior briefing on the Plaintiffs' fraud claims—including that Plaintiffs failed to adequately allege reliance on any alleged misstatements, that

---

[4] Mem. of Law in Support of Defs.' Mot. to Dismiss the Fraud and Related Claims in the Direct Actions, Dkt. No. 756, at 23-25; Defs.' Reply Mem. of Law in Further Support of Their Mot. To Dismiss the Fraud and Related Claims in the Direct Actions, Dkt. No. 926, at 8-9.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Naomi Reice Buchwald                                                              5

many of those claims are time-barred, and that the Plaintiffs cannot assert fraud claims as to instruments not tied to LIBOR.[5]

### E. The Settlements Do Not Support Plaintiffs' *Scienter* Allegations With Respect To Defendants That Are Affiliates of Panel Banks

Plaintiffs argue that they can lump together claims against panel banks and their affiliates because Deutsche Bank admitted that employees of different affiliates were involved in wrongdoing. (Dkt. No. 1132 at 5.) The passage they cite, included in a document which relates to non-party DB Group Services (UK) Ltd., does not say this. DBGS SOF ¶ 14. Even if it did, however, the fact that employees of different entities were involved in wrongdoing does not relieve Plaintiffs of their obligation to allege specific claims against specific entities. *See, e.g., In re Nokia ERISA Litig.*, No. 10-cv-03306, 2011 WL 7310321, at *4 n.5 (S.D.N.Y. Sept. 6, 2011) ("The fact that Nokia Corp., a corporate parent, is alleged to have perpetrated a fraud does not alone establish a plausible theory for imputing Nokia Corp.'s knowledge of the truth to the subsidiary . . . .").[6]

For these reasons, and those stated in our memoranda in support of the pending motions to dismiss, Plaintiffs' claims should be dismissed.

Respectfully submitted,

Moses Silverman

cc: All Counsel of Record (by ECF)

---

[5] *See, e.g.*, Mem. of Law in Support of Defs.' Mot. to Dismiss the Fraud and Related Claims in the Direct Actions, Dkt. No. 756, at 10-21, 25, 27-32. Plaintiffs also claim that additional unspecified "facts" discussed in other parts of their letter in some way raise an inference of fraud, but they do not even attempt to explain how any fact cited in other parts of the letter has any bearing on any of the specific dispositive defenses raised in Defendants' motion to dismiss.

[6] *See also* Mem. of Law in Support of Defs.' Mot. to Dismiss the Fraud and Related Claims in the Direct Actions, Dkt. No. 756, at 26; Defs.' Reply Mem. of Law in Further Support of Their Mot. to Dismiss the Fraud and Related Claims in the Direct Actions, Dkt. No. 926, at 11.