# KIRBY McINERNEY LLP

825 Third Avenue
New York, NY 10022
212.371.6600
Fax. 212.751.2540
WWW.KMLLP.COM
Of counsel
  Roger W. Kirby
  Alice McInerney

September 30, 2015

**BY ECF AND HAND DELIVERY**
Honorable Naomi Reice Buchwald
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

    Re:    *In re LIBOR-Based Financial Instruments Antitrust Litig.*,
             No. 11 Civ. 2613 (NRB), Master File No. 11-md-2262 (NRB)

Dear Judge Buchwald:

      We are interim co-lead counsel for the Exchange-Based Plaintiffs and the proposed Class ("Plaintiffs") in the above-referenced action, and respectfully submit this letter in accordance with Rule 2.B of Your Honor's Individual Practices seeking leave to move for one of two alternative forms of relief. First, Plaintiffs respectfully renew their prior request for a pre-motion conference to seek leave to file a motion to reconsider the Court's *LIBOR I* and *LIBOR III* decisions based on the Second Circuit's recent summary order in *BPP Ill., LLC v. Royal Bank of Scotland Grp. PLC* ("*BPP II*"), 603 F. App'x 57 (2d Cir. 2015). *See* ECF No. 1142.[1] Second, and in the alternative, Plaintiffs respectfully request that the Court certify the order dismissing Plaintiffs' original pre-motion request and the cognate portion of its *LIBOR IV* decision relating to statute of limitations under the Commodity Exchange Act (the "CEA") for interlocutory appellate review pursuant to 28 U.S.C. § 1292(b).[2]

---

[1] On May 13, 2015, the Second Circuit Court of Appeals issued a summary order in *BPP II* that called into question the basis for this Court's dismissal of certain of Plaintiffs' Commodity Exchange Act ("CEA") claims for being untimely. On May 27, 2015, Plaintiffs requested a pre-motion conference seeking leave to file a motion to reconsider the Court's statute of limitations analysis in *LIBOR I* and *LIBOR III* decisions. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666 (S.D.N.Y. 2013) [ECF No. 286] ("*LIBOR I*"); *Id.*, 27 F. Supp. 3d 447 (S.D.N.Y. 2014) [ECF No. 568] ("*LIBOR III*"). Plaintiffs argued that the Second Circuit's opinion in *BPP II* required this Court's reconsideration of its dismissal of those claims. S*ee* ECF No. 1142. On August 4, 2015, the Court issued its *LIBOR IV* decision and dismissed Plaintiffs' request for a pre-motion conference regarding *BPP Illinois* without prejudice. *Id.*, No. 11 Md. 2262 (NRB), 2015 WL 4634541, at *7, Slip Op. at *28 (S.D.N.Y. Aug. 4, 2015) [ECF No. 1164] ("*LIBOR IV*"); *see also* ECF No. 1165.

[2] *LIBOR IV*, 2015 WL 4634541, at *122-23, Slip Op. at *318-19.

Kirby **McInerney LLP**

Honorable Naomi Reice Buchwald
September 30, 2015
Page 2

      **1.**      **The Court should grant Plaintiffs' request to reconsider *LIBOR I* and *LIBOR III*.**

      Plaintiffs seek leave to move for reconsideration under Local Rule 6.3. This Court has stated that "reconsideration may [ ] be warranted 'where the movant demonstrates that there has been an intervening change of controlling law." *Small v. Nobel Biocare USA*, LLC, No. 05 Civ. 3225 (NRB), 2012 WL 952396, at *1 (S.D.N.Y. Mar. 20, 2012) (quoting *Padilla v. Maersk Line, Ltd.*, 636 F. Supp. 2d 256, 259 (S.D.N.Y. 2009) (citing *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992))). Reconsideration may be granted where the "moving party can point to controlling decisions . . . that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). For the reasons set forth in their prior submissions [*see* ECF Nos. 1142, 1151] and summarized below, Plaintiffs respectfully submit that *BPP II* represents a *de facto* reversal (equivalent in this circumstance to an intervening change of controlling law), and that reconsideration is warranted based on the Second Circuit's order.[3]

      In *BPP II*, an action for fraud concerning defendant RBS's alleged manipulation of LIBOR, the Second Circuit held that those very same news articles which this Court held had put Plaintiffs on inquiry notice as a matter of law, were in fact not sufficient to support a dismissal on statute of limitations grounds at the Rule 12(b)(6) stage. The district court in *BPP Ill., LLC v. Royal Bank of Scotland Grp. PLC* ("*BPP I*"), No. 13 Civ. 0638 (JMF), 2013 WL 6003701 (S.D.N.Y. Nov. 13, 2013), relied on this Court's ruling on inquiry notice in *LIBOR I* in finding that the news articles had triggered inquiry notice, and in fact cited this Court's statute of limitations analysis twelve times.[4] However, the Second Circuit vacated the *BPP I* court's decision on those very grounds. Noting that the district court "acted too hastily" in addressing the discovery rule question at the Rule 12(b)(6) stage, the Second Circuit held that "[w]hile further proceedings might show that the BPP Plaintiffs' claims are in fact untimely under the discovery rule, the present record is insufficient to decide this question as a matter of law." *BPP II*, 603 F. App'x at 59.

---

[3] *See Anwar v. Fairfield Greenwich Ltd.*, 884 F. Supp. 2d 92 (S.D.N.Y. 2012) (defendants' motion for reconsideration based on two summary orders granted in part and denied in part; district court states that while the two Second Circuit summary orders "do not have precedential effect . . . they are nevertheless persuasive authority to the extent that their factual patterns align with the instant case and their reasoning is compelling."); *Goris v. Breslin*, No. 04 Civ. 5666, 2009 WL 1955607, at *5 (E.D.N.Y. July 6, 2009) *aff'd,* 402 F. App'x 582 (2d Cir. 2010) (court finds summary order of appeals court in another case persuasive because of similar facts presented); *United States v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010**)** ("[d]enying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases).

[4] *See, e.g., BPP I*, 2013 WL 6003701, at *11 ("Judge Buchwald concluded that the articles and report discussed above gave the LIBOR MDL plaintiffs sufficient notice of their injury – the alleged manipulation of LIBOR – as well as 'who was responsible for [it].' *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d at 707. The same is true for the BPP Plaintiffs and the claims at issue in this case.").

Honorable Naomi Reice Buchwald
September 30, 2015
Page 3

There is no factual basis to distinguish the outcome mandated by the Second Circuit in *BPP II*, from what this Court determined as the correct result in Plaintiffs' case. All of the aspects of the district court's *BPP I* dismissal on statute of limitations grounds that were relevant to the Second Circuit's decision to vacate *BPP I* also exist in this Court's *LIBOR I* and *LIBOR III* decisions. *See* ECF No. 1142 at 2-3.

Moreover, the Second Circuit would apply the same standard applied in *BPP II* to *LIBOR I* and *LIBOR III*. Judge Furman found no difference between the standard for inquiry notice under the CEA and the discovery rule under Pennsylvania law. Indeed, Judge Furman held that, "the discovery rule standard under Pennsylvania law is analogous to the standard that Judge Buchwald applied to accrual of the CEA claims." *BPP I*, 2013 WL 6003701, at *11.[5] Therefore, the Second Circuit would also conclude here that "the present record is insufficient to decide this question as a matter of law." *See BPP II*, 603 F. App'x at 59.[6]

> **2. In the alternative, the Court should grant Plaintiffs' request for interlocutory appeal of its *LIBOR IV* analysis as incorporated in its August 4, 2015 Order [ECF No. 1165].**

Plaintiffs respectfully request, in the alternative, leave to appeal the Court's dismissal of Plaintiffs' motion to reconsider. *See* ECF No. 1165. A district court may certify an order for interlocutory appeal when: (1) the "order involves a controlling question of law", (2) "as to which there is substantial ground for difference of opinion and", (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . . " 28 U.S.C. § 1292(b). The determination of whether certification under Section 1292(b) is appropriate under these standards is in this Court's discretion. *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 1997 WL 458739, at *4 (S.D.N.Y. Aug. 12, 1997). Plaintiffs submit that the exceptional circumstances presented by the present LIBOR proceedings justify interlocutory appeal. *See German v. Fed. Home Loan Mortg. Corp.*, No. 93 Civ. 6941 (NRB), 2000 WL

---

[5] In *LIBOR IV*, this Court found that CEA claims were subject to an "intermediate inquiry notice" standard, but determined that the Securities Exchange Act of 1934 and Pennsylvania common law fraud claims were subject to "weak inquiry notice" standards. *See LIBOR IV*, 2015 WL 4634541, at *116, 120-21, Slip Op. 303, 314. However, the Court conceded that the Pennsylvania rule is "narrow" compared to the inquiry notice standard for the Exchange Act, and acknowledged that the issue was "difficult." *Id.*, 2015 WL 4634541, at *121, Slip Op. 314. Likewise, the Pennsylvania inquiry notice standard "places a greater burden upon Pennsylvania plaintiffs vis-á-vis the discovery rule than most other jurisdictions" but requires that "factual questions regarding that notice [be submitted] to the jury as fact-finder. *Gleason v. Borough of Moosic*, 15 A.3d 479, 484-85 (Pa. 2011). Thus, the Pennsylvania inquiry notice standard is comparable to the inquiry notice standard generally applied to CEA claims.

[6] *See also Schenker AG v. Societe A.G.* No. 14 Civ. 4711, 2015 WL 1951422 at *3 (E.D.N.Y. Apr. 23, 2015) (antitrust complaint was not barred on statute of limitations grounds despite defendant Qantas's assertions that certain public information of government raids and news articles (some of which did not even name Qantas) put plaintiff on inquiry notice of Qantas's alleged violations; the court holds that "while notice of the conspiracy in the airline industry generally and the fact that Qantas charged increased surcharges may or may not have been sufficient for Schenker to infer that Qantas was involved in the conspiracy, [the court] cannot say as a matter of law that this provided inquiry notice" on the 12(b)(6) motion to dismiss).

Honorable Naomi Reice Buchwald
September 30, 2015
Page 4

1006521, at *1 (S.D.N.Y. July 19, 2000) ("exceptional circumstances [ ] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.").

The primary issue warranting certification here – whether, absent any discovery, it can be held as a matter of law that under an objective, ordinary person standard, inquiry notice can be triggered for plaintiffs who purchased Eurodollar futures, but not for plaintiffs who purchased over-the-counter swaps – will impact whether various claims can go forward in this multi-district litigation. As demonstrated in *BPP I* and *LIBOR IV*, this Court's ruling on inquiry notice based upon news articles released regarding possible LIBOR manipulation in May 2008 implicates a wide variety of actions arising from alleged manipulation of USD LIBOR. Thus, "[b]ecause the district court's efficiency concerns are greatest in large, complex cases, certification may be more freely granted in so-called 'big' cases." *Lloyd's*, 1997 WL 458739 at *4.

In *LIBOR IV*, this Court distinguished *BPP II* from an exchange-based individual action[7] by differentiating when the duty of inquiry arises, based on the same information, for bond and over-the-counter swap investors as compared to Eurodollar futures (exchange-based) investors.[8] This determination is grounds for interlocutory appeal. *See Fed. Hous. Fin. Agency v. UBS Americas, Inc.*, 858 F. Supp. 2d 306, 338 (S.D.N.Y. 2012) *aff'd*, 712 F.3d 136 (2d Cir. 2013) ("timeliness determinations, which go directly to the plaintiff's ability to maintain some or all of its claims, are precisely the type of legal issue that Congress intended to be addressed through the Section 1292(b) procedure").

In addition, substantial grounds for differences of opinion give rise to an issue for interlocutory appeal. *See German*, 2000 WL 1006521 at *2 (substantial grounds for difference of opinion when "courts in the Circuit have approached the issue from a variety of perspectives"). Here, there exist substantial grounds for difference of opinion because the *BPP II* decision conflicts with this Court's decisions on the same issue. That is, this Court's finding that there is a material difference between inquiry notice, based on the same news articles, for Eurodollar futures investors and swaps and OTC investors is not based on reasoning in *BPP II* and conflicts with the Second Circuit inquiry notice authorities which apply an objective, reasonable person standard. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 153 (2d Cir. 2012) (applying ordinary person standard to a billionaire wine aficionado); *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 362 (2d Cir. 2013) (applying ordinary person standard to a highly suspicious wife in divorce proceeding). *See also LIBOR I*, 935 F. Supp. 2d at 699 ("[W]hen the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded," the investor has a duty to inquire).

---

[7] *Amabile et al. v. Bank of America Corp.*, No. 13 Civ. 1700 (S.D.N.Y.).

[8] Notably, this Court's factual determination as to the purported length of time that investors generally hold certain investments on an instrument-by-instrument basis is impermissible at the pleading stage. *LIBOR IV*, 2015 WL 4634541, at *122-23, Slip Op. at *318-19. In *BPP II*, the Second Circuit determined that the record was insufficient to draw such factual conclusions as a matter of law. *BPP Illinois*, 603 F. App'x at 59.

Kirby **McInerney LLP**

Honorable Naomi Reice Buchwald
September 30, 2015
Page 5

Finally, there can be no doubt that an immediate appeal may materially advance the ultimate termination of the litigation. *See, e.g., FHFA v. UBS*, 858 F. Supp. 2d at 338-39 ("An appellate ruling that [plaintiff's] claims are in fact timely is likely to significantly affect the parties' bargaining positions and may hasten the termination of this litigation through settlement … and will also remove a cloud of legal uncertainty that hangs over the other 17 actions in this suite of cases."). The Court's inquiry notice rulings have eliminated a large swath of claims in this action and "[c]ourts place particular emphasis on the importance of this . . . factor." *Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 310 (S.D.N.Y. 2007), *aff'd*, 543 F.3d 104 (2d Cir. 2008).

In sum, the Second Circuit's *BPP II* decision justifies Plaintiffs' request to move this Court to reconsider the portion of its orders in *LIBOR I* and *LIBOR III* that dismiss Plaintiffs' Period 1 and Period 2 CEA claims on statute of limitations grounds. Alternatively, Plaintiffs respectfully request permission to move to have this issue in the *LIBOR IV* Order certified for appellate review pursuant to Section 1292(b) as there exists a substantial ground for difference of opinion on controlling law and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

Respectfully submitted,

| /s/ Christopher Lovell | /s/ David E. Kovel |
|---|---|
| Christopher Lovell | David E. Kovel |
| LOVELL STEWART HALEBIAN JACOBSON LLP | KIRBY McINERNEY LLP |
| 61 Broadway, Suite 501 | 825 Third Avenue, 16th floor |
| New York, New York 10006 | New York, New York 10022 |
| Telephone: (212) 608-1900 | Telephone: (212) 371-6600 |
| Email: clovell@lshllp.com | Email: dkovel@kmllp.com |

*Interim Co-Lead Counsel for Exchange-Based Plaintiffs and the Proposed Class*

cc:   All Counsel of Record (by Electronic Filing)