SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP

15TH FLOOR

560 LEXINGTON AVENUE

NEW YORK, NEW YORK 10022-6828

(212) 336-8330

FAX (212) 336-8340

WWW.SUSMANGODFREY.COM

_____

| | | | |
|---|---|---|---|
| SUITE 5100 | SUITE 5100 | SUITE 950 | SUITE 3800 |
| 1000 LOUISIANA STREET | 901 MAIN STREET | 1901 AVENUE OF THE STARS | 1201 THIRD AVENUE |
| HOUSTON, TEXAS 77002-5096 | DALLAS, TEXAS 75202-3775 | LOS ANGELES, CALIFORNIA 90067-6029 | SEATTLE, WASHINGTON 98101-3000 |
| (713) 651-9366 | (214) 754-1900 | (310) 789-3100 | (206) 516-3880 |

WILLIAM CHRISTOPHER CARMODY
DIRECT DIAL (212) 336-8334

E-MAIL BCARMODY@SUSMANGODFREY.COM

November 23, 2015

BY HAND AND ECF

The Honorable Naomi Reice Buchwald
United States District Court for the Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:     *In re LIBOR-Based Financial Instruments Antitrust Litigation*
        Case No. 11-md-2262 (NRB)

Dear Judge Buchwald:

We write as lead counsel for the OTC class.  We attach an updated proposed Third Consolidated Amended Complaint, which reflects the rulings made in *LIBOR V* (Dkt. 1234)[1].  We also write to seek clarification of *LIBOR V* on a narrow issue, outline the changes made in the complaint, and seek leave to add a fraud and aiding and abetting fraud claim.

I.     Clarification of *LIBOR V*

OTC plaintiffs seek clarification that *LIBOR V* does not bar OTC plaintiffs from asserting claims that were not challenged by any defendant, or that were not resolved against plaintiffs. In *LIBOR V*, this Court addressed a motion to dismiss various claims by the defendants, but many claims in the PTAC went underlined unchallenged or were not resolved against OTC plaintiffs. As relevant here, the Court did not address CSI's motion to dismiss Texas Competitive Electric Holdings Company's ("TCEH") breach of contract claim; neither Barclays nor

---

[1] Attached as Exhibit A is a clean copy of the proposed Third Amended Complaint, and attached as Exhibit B is a redline comparing it to the proposed Third Amended Complaint that OTC plaintiffs previously submitted on August 20, 2014 (Dkt. # 627).

The Honorable Naomi Reice Buchwald
November 23, 2015
Page 2

Citibank moved to dismiss any of TCEH's claims against them;[2] and the Royal Bank of Canada ("RBC") did not move to dismiss any of SEIU's claims against RBC.

These claims have now survived many rounds of motion to dismiss practice. At the end of *LIBOR V*, and in the November 12, 2015 Judgment, this Court granted "the OTC Plaintiffs leave to amend their consolidated complaint to include claims of SEIU (only against CSGAG or CSAG…) … but not claims of TCEH …." (Dkt. 1237). We write to seek clarification that this Court did not intend to bar the <u>unchallenged</u> claims asserted by TCEH and SEIU described above, or TCEH's breach of contract claim against CSI.

II. <u>New Allegations Against Credit Suisse AG</u>

As permitted in *LIBOR V*, the complaint adds Credit Suisse AG as a defendant and adds allegations that Credit Suisse International and Credit Suisse (USA) Inc. acted as an agent for Credit Suisse AG. *See LIBOR V*, at 60 n. 34 ("Credit Suisse has asserted that CSAG, rather than CSGAG, was a member of the LIBOR panel. We grant SEIU leave to allege its agency allegations against CSAG instead of against CSGAG in the Third Amended Complaint, provided of course that counsel can do so consistent with Rule 11."). *See* Proposed Third Amended Complaint ¶¶ 24-26. The complaint continues to plead the same claims, in the alternative, against CSGAG.

III. <u>Fraud Claims</u>

In *LIBOR IV*, Your Honor addressed a claim for fraud against the defendants based on the allegation that the "banks submitted false LIBOR quotes to the BBA." Slip Op. at 153 ("false data" fraud). We respectfully pray the Court to permit plaintiffs to amend their complaint for the sole purpose of adding the "false-data" fraud cause of action, and a claim for aiding and abetting the false-data fraud, against the defendants that submitted USD LIBOR quotes to the BBA during the Class Period. These are claims the Court has already sustained as to several individual plaintiffs, and the OTC plaintiffs have alleged each of the factual elements of the fraud claim identified by the Court since the first consolidated complaint. These claims are reflected in the attached proposed amended complaint. *See* Proposed Third Amended Complaint ¶¶ 408-428.

In *LIBOR IV*, the Court observed that in furtherance of the false-data fraud claim, the complaints alleged "that the false submissions [to the BBA] caused LIBOR to misrepresent banks' borrowing rates, a position that is implicit in all of

---

[2] In fact, the Court already denied Barclays' and Citibank's motion to dismiss TCEH's claims against them in *LIBOR III*. Slip Op. at 67-72.

The Honorable Naomi Reice Buchwald
November 23, 2015
Page 3

the complaints." Slip Op. at 153. The Court also noted that the plaintiffs alleged "persistent, intentional suppression of LIBOR quotes, leading to suppression of LIBOR in a large number of instances," and that "LIBOR quotes" are sufficiently identifiable to pass muster under Rule 9(b) and that artificially low quotes constituted "false statements." Slip Op. at 154. These have been allegations of the OTC plaintiffs' consolidated complaint from day one. *E.g.*, Dkt. 130 (consolidated amended complaint) (defendants "manipulate[d] LIBOR by misreporting the actual interest rates at which they expected they could borrow funds—*i.e.,* their true costs of borrowing—on a daily basis," and "[b]y acting together and in concert to knowingly understate their true borrowing costs," caused "LIBOR to be calculated or suppressed artificially low, reaping hundreds of millions, if not billions, of dollars in ill-gotten gains"); *id*. ¶2 ("Defendants collusively and systematically suppressed LIBOR during the Class Period so that the interest rates on LIBOR-based instruments that the Baltimore Plaintiffs purchased during that time were lower than they otherwise would have been absent Defendants' misconduct."). As to the element of reliance, the Court noted that "[p]laintiffs, together with their counterparties and issuers, incorporated LIBOR into contracts to define payments. This was reliance." Slip. Op. at 163. The OTC plaintiff class is <u>defined</u> as plaintiffs who purchased financial instruments "that paid interest indexed to LIBOR."[3]

There is no prejudice as to this proposed amendment. Discovery has not commenced, and defendants have for years been aware of the allegations in the OTC plaintiffs' complaint that comprise the claim of fraud. Most importantly, given the Court's ruling in *LIBOR IV*, the defendants will be defending against the same claims asserted by the individual plaintiffs. That is, defendants will be defending these claims in any event. We respectfully pray for the Court's permission to add these claims.

IV. <u>The Barclays Settlement</u>

In support of the OTC plaintiffs' claims, the complaint includes allegations based on the roughly 2,500 documents produced to OTC Plaintiffs' counsel last week pursuant to Barclays' cooperation obligation. These documents confirm that Barclays ***regularly learned*** what LIBOR quotes other panel banks would be submitting ***before*** Barclays submitted its own quote, and that Barclays learned this ***directly from other panel banks*** and from brokers. *See, e.g.*, Proposed Third Amended Complaint ¶¶ 415-416. For example, Class Counsel

---

[3] Similarly, with respect to the aiding and abetting claim, this Court recognized that "it is plausible that each panel bank knew (1) that each other bank was suppressing LIBOR, and (2) that its own suppression would help each other bank suppress LIBOR" and that "multiple panel banks' quotes jointly influenced the final LIBOR fix." Slip Op. at 123-24.

The Honorable Naomi Reice Buchwald
November 23, 2015
Page 4

obtained an audio recording from January 11, 2008, at 9:32am GMT (roughly 90 minutes <u>before</u> the 11am submission deadline), in which the primary Barclays USD submitter, Peter Johnson, asked a submitter ***from another panel bank*** where he was going to submit "one month LIBOR" that day and the other submitter shared his planned submission; on the same call, they also discussed where other panel banks would be submitting that day.  *Id.*  There are many other telephone calls in this production in which Mr. Johnson and submitters from other panel banks revealed their planned LIBOR quotes in advance of the deadline and during the Class Period, proving this was not an isolated event.  *Id.*[4]  Similarly, on September 17, 2008, Mr. Johnson had a telephone call with someone who is likely a broker, approximately 15 minutes ***<u>before</u>*** the deadline for submitting LIBOR quotes, during which he learned Credit Suisse's LIBOR quotes before Barclays had submitted its own LIBOR quotes.  On the same call, Mr. Johnson revealed the quotes that he intended to submit on behalf of Barclays that day.  The recordings contain many other examples where the panel banks used brokers in this way as conduits to coordinate their submissions (i.e., the banks shared their planned LIBOR submissions with brokers, and the brokers then revealed to the panel banks where other panel banks were planning to submit that day – all in advance of the deadline).  Put together, this new evidence demonstrates that defendants aided and abetted fraud through direct collusion.[5]

We thank the Court for its attention to this matter, and are available to answer any questions that the Court may have.

Respectfully submitted,

William Christopher Carmody
SUSMAN GODFREY LLP

Cc:  All Counsel (By ECF)

---

[4] The Complaint also sets forth direct evidence that on November 29, 2007, Barclays learned the confidential USD LIBOR submissions of ***every panel bank*** before the submission deadline and adjusted its LIBOR submission downward by 20 basis points in order to stay within the pack of other banks' low LIBOR submissions.  Ex. A ¶ 116-18.

[5] In *LIBOR IV*, this Court discussed three theories of aiding and abetting.  *See, e.g.*, Slip Op. at 121-22.  The Court held that the pleadings before it were sufficient to state an aiding and abetting claim under certain theories, but insufficient to sustain an aiding and abetting theory based on collusion to suppress USD LIBOR; the attached pleading, buttressed by these new documents showing that the banks were regularly sharing their planned submissions with each other in advance of the submission deadline to coordinate their suppression, plausibly plead that Defendants aided and abetted fraud by colluding to suppress USD LIBOR (in addition to the other aiding and abetting theories).