**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000 | FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7345**

WRITER'S INTERNET ADDRESS
**danbrockett@quinnemanuel.com**

December 8, 2015

<u>ELECTRONICALLY FILED</u>

Honorable Naomi Reice Buchwald
United States District Court
for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re:   <u>Darby Financial Products v. Barclays Bank PLC</u>, 13-cv-8799

Dear Judge Buchwald:

    We write to request a pre-motion conference regarding a motion for leave to amend Plaintiffs' complaint in the above-captioned Libor-related matter.  The sole purpose of the amendment is to provide termination dates for Plaintiffs' swaps, the absence of which the Court said made the complaint here less "particular" than those filed by other plaintiffs.  Defendants refused to enter a stipulation jointly requesting such relief, saying it may be procedurally improper to do so.[1]  But they also refused to say whether or not they would actually oppose a motion to the same effect until Plaintiffs approached the Court first.  We are thus forced to request a pre-motion conference without even knowing whether there is any actual dispute.

    ***Darby Is Merely Providing the Termination Date Data the Court Favorably Cited Elsewhere***

    In *Libor IV*, the Court upheld fraud-by-omission claims relating to swap termination fees, because calculation of those fees would have been distorted by the suppression of Libor.  MDL Dkt. 1222, at 145.  Like the *Philadelphia* and *Salix* complaints the Court found sufficiently "particular" with respect to terminations, the on-file *Darby* complaint alleged that Plaintiffs terminated swaps during the period of Libor suppression, and that Plaintiffs were harmed as a

---

[1]   *See* Exhibits 2 & 3 hereto (party correspondence).

Honorable Naomi Reice Buchwald
December 8, 2015

result.[2]  Like those complaints, *Darby* included an exhibit that identified the swap counterparty, notional amount, trade date, and payment dates for each of the swaps at issue—all of which had Plaintiffs receiving the Libor-linked payment during the swap's lifetime.[3]  But *Darby* did not include a column for termination dates, which the Court suggested distinguished *Darby*.  The sole purpose of the Proposed Second Amended Complaint is to provide that "date" data.  *See* Exhibit 1 hereto (proposed SAC) at Exhibit A (transactional list, with new right-hand column).

### *There Is No Prejudice Or Undue Delay, And The Amendment Is Not Futile*

This Court has stated "the general rule that leave to amend should be granted absent evidence of undue delay, bad faith, undue prejudice, or futility." *World Reach Shipping Ltd. v. Indus. Carriers Inc.*, 2006 WL 3316828, at *2 (S.D.N.Y. Nov. 9, 2006); *see also* Fed. R. Civ. Pro. 15(a)(2).  In the Libor cases, the Court has routinely granted leave, generally only denying such a request when the proposed amendment related to an already-rejected theory.[4]

Defendants note that the termination dates could have been included in the initial complaint, and that *Libor IV* was decided in August.  But neither observation establishes "undue delay" or "bad faith."  At the outset, Plaintiffs had every reason to think their complaint already put Defendants on notice of the claims—it provided extensive identifying information about the swaps at issue, and of course the counterparty-defendant would well-know when its own swaps were terminated.  As to the time between *Libor IV* and now, as the Court is aware, *even now* the parties are *still* engaged in extensive negotiations over the interpretation and application of the Court's 431-page (now, 433-page amended) decision.  That this footnote distinction was not immediately rushed to the Court's attention is hardly the stuff of bad faith.

In any event, "delay" is viewed in context and through the lens of prejudice.  *See, e.g., Blagman v. Apple, Inc.*, 2014 WL 2106489, at *2 (S.D.N.Y. May 19, 2014) (allowing amendment to alter class definition, and to add allegations and claims, where lengthy delay caused no prejudice).  As outlined above, the on-file complaint identified every swap at issue in the case, and made clear that Plaintiffs were seeking damages not just on distorted payments during the life of the swaps, but also on distorted termination payments.  Particularly as this case is still in the pleading stage, and the counterparty would itself already know when it occurred,

---

[2] *See, e.g.*, 13-cv-8799, Dkt. 36 ("Darby Amended Complaint") ¶¶ 15 ("When swaps are terminated, the termination payment is calculated by using discount factors calculated from the relevant Libor forward curve at the time of the termination . . . This resulted in Plaintiffs making termination payments that were materially inflated (or receiving termination payments that were materially depressed) in connection with the swap unwinds."), 274, 310.

[3] *See* Darby Amended Complaint Ex. A.

[4] *See, e.g.*, MDL Dkt. 389 (leave to add a new defendant); MDL Dkt. 568 (leave to include details of trader-based manipulation); MDL Dkt. 638 (leave to add additional plaintiffs); MDL Dkt. 1234 (leave to include additional claims).

Honorable Naomi Reice Buchwald
December 8, 2015

Defendants have not and could not claim to have been prejudiced by the fact the complaint did not previously specify when the terminations occurred, as to facially delineate between swaps only subject to damages based on distorted "regular" payments from those that were also subject to damages based on distorted "termination" payments.

Because the Court already upheld complaints that appear to be distinguishable only in that they provided a "date" column, it cannot be said the proposed amendment is futile and, indeed, it is clear its filing should not be allowed to trigger any new defense motions.

### *The Proposed Amendment Does <u>Not</u> "Broaden" Anything*

Defendants suggest that the proposed amendment represents an "attempt to broaden [Plaintiffs'] legal theories of recovery." Not so. The on-file complaint explained that Libor's suppression "resulted in Plaintiffs making termination payments that were materially inflated (or receiving termination payments that were materially depressed) in connection with the swap unwinds." Darby Amended Complaint ¶ 15; *see also id.* ¶ 16 (referring to both "the inflated payments made (and depressed payments received) by Plaintiffs in connection with swap unwinds"). The prayer for relief requested *all* "losses incurred during the termination process." *Id.* at p.162. And Exhibit A in both the on-file and proposed amended complaints identify the exact same swaps. Thus, if anything, the proposed amendment only *narrows* the case by specifying which of those swaps were *not* terminated during the period of suppression.

Defendants' assertion is disingenuously made with reference to the parts of the proposed amendment that add additional language regarding Plaintiffs' *receipt* of distorted payments. This was done in paragraphs that when (improperly) viewed in isolation previously only mentioned Plaintiff's *payment* of distorted payments. *See, e.g.*, Proposed Second Amended Complaint ¶ 396. But, as seen in the quotes above, the on-file complaint elsewhere made plain that Plaintiffs were seeking damages based on *all* distorted termination payments. Even if it had not done so, clarifying that Plaintiffs were seeking damages on all terminations regardless of the direction of the cash flows would not constitute a new "legal theory of recovery." Regardless of how the math worked out on a particular day in terms of who was writing the check, all of Plaintiffs' swaps were impacted in the same way: Libor's suppression distorted the calculation the amounts due always to the detriment of Plaintiffs as the Libor-receiving parties. Adding a few words on occasion to improve upon shorthand used previously, fully in line with the allegations already made elsewhere in the on-file complaint, is in no way the assertion of a new legal theory, but rather just a matter of housekeeping—one that Defendants are in no way prejudiced by.

As Defendants have not actually stated that they will oppose this request, Plaintiffs ask that the Court grant leave to file the attached Proposed Second Amended Complaint, and confirm that such will not trigger any additional motion-to-dismiss practice. In the alternative, Plaintiffs request a conference to discuss a potential motion seeking such relief.

Honorable Naomi Reice Buchwald
December 8, 2015


Respectfully submitted,


 /s/ *Daniel L. Brockett*
Daniel L. Brockett
QUINN EMANUEL URQUHART & SULLIVAN, LLP


cc:     All Counsel of Record (via ECF)