# POMERANTZ LLP

Attorneys at Law

**Jeremy A. Lieberman**  
jalieberman@pomlaw.com

600 Third Avenue  
New York, New York 10016  
T: 212.661.1100   F: 212.661.8665

December 9, 2015

**VIA ECF**

Honorable Naomi Reice Buchwald  
United States District Judge  
United States District Court  
Southern District of New York  
500 Pearl Street – Courtroom 21A  
New York, NY 10007-1312

    Re:    *In re LIBOR-Based Financial Instruments Antitrust Litig.*, **No. 11-MD-2262 (NRB);** *The Berkshire Bank and Government Development Bank for Puerto Rico v. Bank of America, et al.*, **No. 12-cv-5723-NRB;** and *Directors Financial Group v. Bank of America, et al.*, **No. 13-cv-01016-NRB**

Dear Judge Buchwald:

    In accordance with provision 2B of Your Honor's Individual Practices, the Court's November 3, 2015 Order (Dkt. #310 at 35-36) ("*LIBOR V*"), November 12, 2015 Judgment (Dkt. #1236) and the conference call with the Court on December 7, 2015, we write on behalf of plaintiff Berkshire Bank ("Berkshire"), in the above-referenced actions to request that the Court hold a pre-motion conference to address Plaintiffs' intention to move pursuant to Federal Rules of Civil Procedure 15(a), 59(e) and Local Rule 6.3 to amend *LIBOR V* to dismiss Berkshire's claims without prejudice and for leave to amend the First Amended Consolidated Complaint ("FAC"), filed on November 17, 2015, to add information concerning Berkshire's specific investments and the cash flows it did and would have received if LIBOR had not been suppressed or had Berkshire invested in comparable investment opportunities.

    In *LIBOR V*, the Court held that its assessment of "out-of-pocket" damages under New York law would be based on a comparison of the cash flows received by Berkshire from its LIBOR-based mortgages with those that would have been received if Berkshire had pursued another investment opportunity. *Id*. at 29. The Court held: "However, Berkshire has not pleaded information about any specific investment, so we cannot assess whether Berkshire suffered any net loss on any mortgage or other loan. Accordingly, we dismiss Berkshire for failure to plead damages." *Id*. at 30. "[W]e have no basis upon which to assess whether an amended pleading would be futile. Accordingly, Berkshire may not amend without first moving for leave to do so." *Id*. at 35-36.

Honorable Naomi Reice Buchwald
In re LIBOR-Based Financial Instruments Antitrust Litigation
11-MD-2262 (NRB)
December 9, 2015
Page | 2

      Leave to amend should be "freely given," unless the Court finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). *See Williams v. Citigroup Inc.,* 659 F.3d 208, 212-213 (2d Cir. 2011) (stating the Second Circuit's "strong preference for resolving disputes on the merits"). "As a procedural matter, a party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to Rules 59(e) or 60(b)." *Citigroup*, 659 F.3d at 213. Second Circuit authority holds that following dismissal for failure to state a claim, a curative amendment should normally be allowed: "Where the possibility exists that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course." *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991).

      As discussed in our letter of November 17, 2015 (Dkt. # 1239), amendment should be permitted because there has not been any undue delay or bad faith by Berkshire, nor will amendment prejudice Defendants or delay the proceedings. We do not repeat those arguments here but, rather, incorporate them by reference.

      During the call with Court on December 7, 2015, the Court indicated that it wanted more specificity in Berkshire's pre-motion conference letter as to Berkshire's alleged damages so that the Court may better determine at the outset whether permitting Berkshire to amend the FAC would be futile, suggesting that Berkshire should submit a proposed amended complaint with the letter. Attached hereto as Exhibit A is Berkshire's Proposed Second Amended Consolidated Complaint ("PSAC").

      The amendment of Berkshire's damages will not be futile. "Leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, *i.e.*, if it appears beyond doubt that plaintiff can plead no set of facts that would entitle him to relief." *Milanese v. Rust-Oleum Corp.,* 244 F.3d 104, 110 (2d Cir. 2001) (citations omitted).

      The Court dismissed Berkshire's claim on the sole basis that it "has not pleaded information about any specific investment, so we cannot assess whether Berkshire Bank suffered any net loss on any mortgage or other loan." *LIBOR V*. at 30. The Court stated that the appropriate method of measuring Berkshire's damages is by "out-of-pocket" losses. *Id*. at 29.

      New York law permits a plaintiff asserting a fraud claim to recover any "out-of-pocket" losses. *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 422, 668 N.E.2d 1370, 1374 (1996). Under Section 10(b) of the Securities Exchange Act of 1934 – which is also governed by the "out-of-pocket" rule -- a claimant may recover the difference between the price paid and the true value of the investment. *Acticon AG v. China North East Petro. Holdings Ltd.*, 692 F.3d 34, 38 (2d Cir. 2012). Here, when Berkshire originated or purchased loans, inherent in that

Honorable Naomi Reice Buchwald
In re LIBOR-Based Financial Instruments Antitrust Litigation
11-MD-2262 (NRB)
December 9, 2015
Page | 3

transaction was that LIBOR would be calculated according to its definition – an average of the middle quartile of the panel bank's true borrowing costs on that day. The expected future cash flow from the interest payments tied to LIBOR were inherent in the pricing and terms of those transactions. Defendants' suppression of LIBOR created a discrepancy between the loans' true value and the price paid. Thus damages should be calculated as the difference between the "price" of the loans and the "true value" of the loans at the suppressed LIBOR rate. The then present value is the difference in the future payment streams between "true LIBOR" and "suppressed LIBOR." Meeting this standard, the PSAC identifies Berkshires damages for specific adjustable rate loans as the difference between the interest paid on those loans and the interest that it would have received if the Panel Banks had reported their true borrowing costs. *See* Exhibit A at ¶¶ 17-21; Appendix B.

In *LIBOR V*, the Court adopted a different approach for determining "out-of-pocket" damages in this case, stating that the measurement of damages that it would apply to Berkshire would be "to compare the cash flows received with those that would have been received if the plaintiff had invested in a hypothetical interest-bearing deposit" or had originated its "fixed-rate mortgages or floating-rate mortgages based on some other index." *Id*. at 29. Meeting this standard, the PSAC identifies two alternative benchmarks that were comparable and highly correlated to LIBOR prior to the suppression: (1) the Eurodollar deposit rate benchmark published daily by the Federal Reserve Bank of New York ("Fed Eurodollar Rate"), and (2) fixed rates created by interest rate swaps linked to anticipated cash flows from LIBOR denominated notes. On any given day (*e.g.* the day on which a loan was originated), Berkshire could have exchanged the LIBOR indexed cash flows for any tenor of LIBOR (e.g. 1, 3 or 6 month) and loan term (e.g. 10, 15 or 30 years) for fixed rate cash flows at the then prevailing market conditions. The LIBOR swap market is one of the most liquid financial markets in the world with over $1.4 trillion of notional value turn over daily. The PSAC alleges that Berkshire would have used these alternatives if Berkshire had known that the panel banks were suppressing LIBOR. *See* Exhibit A at ¶¶ 12-16. The PSAC calculates damages for specific adjustable rate loans as the difference between the interest payments received based on suppressed LIBOR and the interest payments Berkshire would have received if it had used these alternative rates. *See* Exhibit A at ¶¶ 19-21; Appendix B. Indeed, as its main business is lending money, the only plausible inference is that had Berkshire known LIBOR was being suppressed it would have issued a different type of loan rather than investing money in an interest bearing deposit. Berkshire's customers earn "interest bearing deposit" rates on their accounts (e.g. savings). If Berkshire invested at that same rate it would necessarily lose money as a financial institution.

These proposed amendments cure the defect that the Court identified in *LIBOR V* and adequately allege damages. Accordingly, Plaintiffs respectfully request a pre-motion conference to address the filing of a motion for leave to amend the FAC.

Please do not hesitate to contact me if the Court has any questions or concerns regarding this matter.

Honorable Naomi Reice Buchwald
In re LIBOR-Based Financial Instruments Antitrust Litigation
11-MD-2262 (NRB)
December 9, 2015
Page | 4

        Respectfully,

        **POMERANTZ LLP**

By: *s/ Jeremy A. Lieberman*
    Marc I. Gross
    Jeremy A. Lieberman
    Michael J. Wernke
    600 Third Avenue
    New York, NY 10016
    Tel: (212) 661-1100
    Fax: (212) 661-8665
    Email: migross@pomlaw.com
           jalieberman@pomlaw.com
           mjwernke@pomlaw.com

cc:    All counsel (via ECF )