PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS   NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

UNIT 3601 OFFICE TOWER A
BEIJING FORTUNE PLAZA
NO 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR HONG KONG CLUB BUILDING
3A CHATER ROAD CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U K
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST SUITE 3100
PO BOX 226
TORONTO ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
212-373-3460

WRITER'S DIRECT FACSIMILE
212-492-0460

WRITER'S DIRECT E-MAIL ADDRESS
afinch@paulweiss.com

December 15, 2015

**VIA ECF AND HAND DELIVERY**

Honorable Naomi Reice Buchwald
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007-1312

Re: In re LIBOR-Based Financial Instruments Antitrust Litigation, 11-MD-2262 (NRB)

Dear Judge Buchwald:

We write on behalf of Defendants Citibank, N.A. and Citigroup Inc. (together, "Citi"), Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A. ("Rabobank"), Deutsche Bank AG ("DB"), Lloyds Bank plc, Lloyds Banking Group plc and HBOS PLC (together, "Lloyds"), the Royal Bank of Canada and RBC Capital Markets LLC (together, "RBC"), and The Royal Bank of Scotland Group plc ("RBS Group") and The Royal Bank of Scotland plc ("RBS plc") (together, "RBS") (collectively, "Opposing Defendants")[1] in response to the Exchange-Based Plaintiffs' ("Plaintiffs") letter of June 29, 2015 requesting leave to file their Proposed Third Amended Complaint ("PTAC"). ECF No. 1159. Plaintiffs propose to assert Commodity Exchange Act ("CEA") manipulation claims premised on trader conduct (Second Claim) as well as claims for aiding and abetting alleged trader conduct at other panel banks (Fourth Claim).[2] Plaintiffs should be denied leave to add the vast majority of these claims.

***All of Plaintiffs' Proposed Claims Against Citi, DB, Lloyds, RBS and RBC, and the Vast Majority Against Rabobank, Are Deficient Under This Court's Rulings.*** In Appendix A to the PTAC, Plaintiffs purport to identify the days on which traders of certain Defendants requested that U.S. Dollar LIBOR submissions be manipulated. *See* PTAC ¶ 33. The vast majority of

---

[1] Plaintiffs' request to add DB Group Services (UK) Ltd., Deutsche Bank Securities Inc. ("DBSI"), and RBS Securities, Inc. ("RBSSI") as defendants should be denied. DB's and RBS's objections as set forth in this letter (other than personal jurisdiction as to DBSI and RBSSI) apply equally to these entities. Specifically, (i) Plaintiffs make no substantive allegations of involvement in LIBOR manipulation against DBSI or RBSSI, *see* PTAC ¶¶ 70, 72, 283–289; (ii) DBSI and RBSSI were not parties to DB's and RBS's respective regulatory settlements, *see In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR IV*"), No. 11-md-2262, 2015 WL 6243526, at *43–44 (S.D.N.Y. Oct. 20, 2015); (iii) Plaintiffs' failure to sue DBSI and RBSSI in earlier complaints was not based on "a mistake concerning the proper party's identity," *id.* at *156, and claims against DBSI and RBSSI are therefore time-barred; and (iv) in any event, all claims against RBSSI are time-barred under the Court's prior rulings, *see infra* p. 2.

[2] While the PTAC also asserts Sherman Act and common law claims, Plaintiffs concede, as they must given this Court's dismissal of those claims, that those claims have been included only to preserve them for appeal.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Naomi Reice Buchwald						2

these claims are subject to dismissal for one or more of the reasons below. For the convenience of the Court, Opposing Defendants have attached a version of Appendix A that includes the rows with allegations against them and a new column, titled "Why Claim Fails the Pleading Standards," which sets out the reason(s) why various claims fail.

- **Failure to Allege Net Position**: Plaintiffs do not allege that any Plaintiff actually held a net position (*i.e.*, as a "buyer" or "seller") that would have been affected by the alleged manipulation of a particular defendant (assuming any resulting impact on published LIBOR) on most of the dates set forth in Appendix A. *Cf. In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR III*"), 27 F. Supp. 3d 447, 462, 464 (S.D.N.Y. 2014). These claims fail the pleading standards established by the Court.

- **No Personal Jurisdiction**: Many claims against DB and RBC, and all claims against Lloyds and RBS, fail to allege a nexus to New York and in particular that New York was "the location of the person who requested the submitter to engage in manipulation." *LIBOR IV*, at *38.

- **Time-Barred**: Many CEA claims, including all claims against RBS, allege conduct during "Period 1" or "Period 2" and are therefore time-barred under the Court's rulings. *See id.* at *114–17 (summarizing prior rulings).

- **"Plaintiff Harmed" Not Identified**: To plead injury, Plaintiffs must allege "(1) that they transacted in Eurodollar futures contracts on days on which Eurodollar futures contract prices were artificial as a result of trader-based manipulation of LIBOR, [and] (2) that their positions were such that they were injured." *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR II*"), 962 F. Supp. 2d 606, 620–21 (S.D.N.Y. 2013). Plaintiffs frequently fail to satisfy this requirement because they do not identify which Plaintiff was harmed on a given day.

- **Harm Not Alleged**: Plaintiffs fail to allege harm in three ways. *First*, Plaintiffs sometimes allege misconduct on days when that conduct could not have affected the published LIBOR. *LIBOR IV*, at *40 n.73. *Second*, for some claims, Plaintiffs allege conduct that concerned a tenor other than 3-month USD LIBOR but do not allege what effect, if any, that conduct had on the Opposing Defendants' USD LIBOR submissions in the relevant tenor. *Third*, in some instances, Plaintiffs fail to plausibly allege that a Defendant made an artificial LIBOR submission at all. For example, Plaintiffs allege that Citi manipulated LIBOR on September 28, 2006, PTAC ¶ 290, based on a single communication between a Barclays derivative trader, Don Lee, and a Citi trader, Rajesh Ghude, in which Ghude admits he had "no clue" who submits Citi's LIBOR.[3] The fact that Ghude had "no clue" who made Citi's submissions precludes an inference that Ghude had been conspiring before that date. And, knowing nothing of the submitter's identity, Ghude could not possibly know whether that person would be amenable to a manipulation request from Ghude. Indeed, plaintiffs never allege that Ghude thereafter spoke to the unidentified submitter or that the submitter altered the submission as a result. Similarly, Plaintiffs do not plausibly allege that RBC was influenced by a request from Barclays to submit an inflated LIBOR on February 28, 2007. PTAC ¶¶ 271–273, 281. On that date, RBC submitted a LIBOR fix (5.345) that was tied with submissions in the lowest quartile. Its alleged co-conspirator, Barclays, submitted the highest fix at 5.355. *See* ECF No. 467-1, at 8. Paragraph

---

[3] [Lee]: who enters 3m for you guys? It should be one of your cash guys
[Ghude]: ask ur guy who does it for us and I can call him. *I have no clue who does it for us.* [Plaintiffs partially quoted this communication in the PTAC, but deliberately and misleadingly omitted the emphasized language.]

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Naomi Reice Buchwald 3

346 of the PTAC undermines any suggestion that RBC submitted an inflated LIBOR, alleging that on the same day, a Barclays trader complained to a trader at another bank because the bank submitted a 3-month LIBOR fix of "34.5" (*i.e.*, 5.345), the same rate submitted by RBC.  PTAC ¶ 346.  Far from supporting a manipulation claim, the only plausible reading of these allegations is that even if Barclays made such a request, RBC's trader ignored it and RBC's LIBOR submitters were never aware of it.  The PTAC fails to allege either any actual communication by anyone with the RBC LIBOR submitters or any discernible effects that would make the assumption of such a communication plausible.  Finally, Plaintiffs assert that Paragraphs 286–288 of the PTAC show that RBS engaged in trader-based manipulation on three dates in 2007, but the new allegations merely recount speculation about RBS's LIBOR submissions by individuals at Barclays and Tullett Prebon, and provide no plausible indication that RBS engaged in any manipulative activity.

- *Based on Irrelevant Conduct*:  With respect to some claims, Plaintiffs allege misconduct that has nothing to do with USD LIBOR.  *See LIBOR IV*, at *45.

- *Previously Rejected Claims*:  This Court has already spent considerable time clarifying which claims Plaintiffs are permitted to assert against Rabobank and previously denied Plaintiffs leave to add trader conduct claims against Rabobank based on all but four of the dates listed in Appendix A (June 30, 2006, August 17, 2006, September 1, 2006, and November 29, 2006)—either because Plaintiffs failed to adequately allege the claim or because the claim is time-barred.  *See LIBOR III*, 27 F. Supp. 3d at 464 & n.9 (chart showing only "examples of day-to-day, trader-based manipulation [that] remain" after the application of this Court's rulings).  Appendix A adds no new allegations that require a different result.  Accordingly, Plaintiffs should be denied leave to add claims against Rabobank that this Court has already rejected.

*Plaintiffs Improperly Assert Aiding and Abetting Claims in Relation to Trader Conduct.*  The PTAC purports to assert a claim for aiding and abetting alleged trader manipulation (Fourth Claim).  *See* PTAC ¶¶ 718–721.  This Court has upheld aiding and abetting claims based on trader conduct, however, only against Barclays because of Barclays' "admitted trader-based conspiracy."  *LIBOR IV*, at *49.  The PTAC does not plausibly allege a trader-based conspiracy involving USD LIBOR against the Opposing Defendants.

*Plaintiffs' Reservation of Rights as to Additional Trader Conduct Claims.*  The PTAC states that Plaintiffs believe the listing of trader conduct claims contained in Appendix A is under-inclusive.  PTAC ¶ 328; App'x A, at 1 n.1.  To the extent Plaintiffs seek to assert at a later time additional trader conduct claims against any Opposing Defendant beyond those specifically identified in Appendix A, Opposing Defendants reserve their rights to seek dismissal of those claims on all applicable grounds, including lack of personal jurisdiction.

For the foregoing reasons, and those set forth in the attached Appendix A, Plaintiffs should be denied leave to add (i) any trader manipulation claims against Citi, RBC, RBS, Lloyds or DB, (ii) the vast majority of trader manipulation claims against Rabobank, or (iii) aiding and abetting claims against any Opposing Defendant.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Naomi Reice Buchwald                                                                                              4

Respectfully submitted,

*Andrew C. Finch*

Andrew C. Finch

cc: All Counsel (by ECF notification)