# POMERANTZ LLP

## Attorneys at Law

**Jeremy A. Lieberman**
jalieberman@pomlaw.com

600 Third Avenue
New York, New York 10016
T: 212.661.1100  F: 212.661.8665

December 30, 2015

**VIA ECF**

Honorable Naomi Reice Buchwald
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street – Courtroom 21A
New York, NY 10007-1312

Re:  *In re LIBOR-Based Financial Instruments Antitrust Litig.*, No. 11-MD-2262 (NRB); *The Berkshire Bank and Government Development Bank for Puerto Rico v. Bank of America, et al.*, No. 12-cv-5723-NRB; and *Directors Financial Group v. Bank of America, et al.*, No. 13-cv-01016-NRB

Dear Judge Buchwald:

We write on behalf of plaintiff Directors Financial Group ("DFG"), in the above-referenced actions to put forth certain documents and information before the Court concerning loans originated and sold by DFG and its related damages as directed by the Court during the December 7, 2014 4:30 p.m. call with the Court.

Submitted with this letter as Exhibits A-G are documents bearing bates numbers DFG_00000001 – DFG 00000127. These documents refer to seven loans originated and sold by DFG. For each loan there is an agreement concerning the origination of the loan and a document concerning the sale of the loan. As shown in the chart below, four of the loans are referenced in paragraph 14 of the First Amended Consolidated Complaint ("FAC") while the other three loans are in addition to those identified in the FAC.

| Exhibit | Loan | **First Bates Number of Agreement** | **First Bates Number of Sale Chart** | Paragraph referenced in FAC (ECF No. 1238) |
|---|---|---|---|---|
| A | ▮ | DFG_00000001 | DFG_00000014 | 14(d) |
| B | ▮ | DFG_00000018 | DFG_00000033 | 14(b) |
| C | ▮ | DFG_00000037 | DFG_00000050 | 14(c) |
| D | ▮ | DFG_00000054 | DFG_00000068 | N/A |
| E | ▮ | DFG_00000072 | DFG_00000086 | N/A |

| | | | | |
|---|---|---|---|---|
| F | ▮ | DFG_00000091 | DFG_00000106 | 14(a) |
| G | ▮ | DFG_00000110 | DFG_00000122 | N/A |

DFG was damaged by Defendants' suppression of LIBOR. Although the loans originated by DFG had an initial fixed rate before switching to a LIBOR-based adjustable rate, that fixed rate was set using the 12-month LIBOR plus a margin that was a function of the loan-to-value ratio ("LTV"). Specifically, the fixed rate for these loans can be described by the following equation: 12-month LIBOR + (1.2% x LTV) + 2.1%, where 12-month LIBOR is the LIBOR fixing on the loan origination date. Any specific loan may vary slightly from this formula by about +-15bp as a result of, *inter alia*, rounding to a standard utilized rate.[1]

When originating these loans, DFG used the 12-month LIBOR as a benchmark, believing that it represented the true average borrowing costs of the panel banks (per the BBA's stated process), and a margin was added to the 12-month LIBOR based on LTV. The loans therefore accrued less interest than they would have if LIBOR had been truthfully reported. When DFG sold these loans, the sale price expressly included compensation to DFG for the accrued interest on the loans for the days it was held prior to its sale. For, example, on the ▮ loan, DFG was paid $306.56 for the interest that had accrued over the 8 days that DFG held the loan. *See* DFG_00000014. If LIBOR had not been suppressed (*i.e.* if "true LIBOR" had been reported), DFG would have received an additional $18.11 upon the sale of the loan because the fixed rate, which was LIBOR on the date of origination plus a margin, would have been higher. The below chart summarizes DFG's damages as to these particular loans. DFG originated and sold thousands of such loans during the Class Period.

| Formula | Category | | | | |
|---|---|---|---|---|---|
| A | True Fixed Rate | 4.10% | 6.66% | 4.13% | 3.673% |
| B | Actual Fixed Rate | 3.875% | 6.50% | 3.75% | 3.50% |
| C | Loan Notional | $356,000 | $158,400 | $417,000 | $417,000 |
| D | Days of Accrued Interest | 8 | 19 | 7 | 9 |
| (A-B) x C x D/360 | Damages | $18.11 | $13.54 | $30.71 | $18.03 |

"D", days accrued interest, is the number of days between the loan origination date and the loan sale date.

---

[1] Two of the loans produced herewith (▮) have an initial interest-only period (as opposed to monthly payments comprising of interest and principal). Therefore, while their fixed rate was also set using LIBOR plus a margin, the equation representing their pricing is different than the other loans. We are seeking further clarification on the specific equation/relationship.

[2] While the fixed rate on the ▮ loan is similarly expressed by the above equation, its origination date was June 25, 2010, outside the Class Period, and has therefore not been included in the assessment of damages.

Moreover, because these loans were made pursuant to Fannie Mae guidelines, DFG was required to make loans that conformed to Fannie Mae's stated characteristics, which required using LIBOR as the benchmark rate. For example, the ▓▓▓ and ▓▓▓ loans state at the bottom of the form that the loans are a "Fannie Mae UNIFORM INSTRUMENT" for "MULTISTATE FIXED/ADJUSTABLE RATE NOTE – WSJ One-Year LIBOR" referring to the 12-month LIBOR as published in the Wall Street Journal. *See* DFG_00000001-5; and DFG_00000054-58. On May 16, 2008 (prior to the origination of the ▓▓▓ and ▓▓▓ loans), Fannie Mae issued an amendment to its guidelines, specifying that all "Jumbo-Conforming Mortgages" were required to be tied to LIBOR. *See* Fannie Mae Announcement 08-11, attachment 3 at 1 (publicly available). Moreover, the loan documents are made on "Form 3528", which Fannie Mae's published guidelines state must be made pursuant to the WSJ one-year LIBOR. *See* Fannie May Standard ARM Plan Matrix, May 2015 at 12 (publicly available).

DFG also suffered damages because when DFG sold these loans to a third party, the sale price included payment for the "servicing fee", the right to receive the payment stream from the contractual interest payments. This payment was a function of future payment streams, which was less than DFG would have received if LIBOR had not been suppressed. Such loans were packaged into pools of similarly situated loans and sold to third party investors. Because of this pooling, tracking the documentation as to the servicing fee as to each particular loan has proved challenging. We are working to obtain this specific information and will alert the Court once have done so.

                                          Respectfully,

                                          **POMERANTZ LLP**

                                      By: _____
                                          Marc I. Gross
                                          Jeremy A. Lieberman
                                          Michael J. Wernke
                                          600 Third Avenue
                                          New York, NY 10016
                                          Tel: (212) 661-1100
                                          Fax: (212) 661-8665
                                          Email: migross@pomlaw.com
                                                          jalieberman@pomlaw.com
                                                          mjwernke@pomlaw.com

cc:     All counsel (via ECF)