**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262 |
| THIS DOCUMENT RELATES TO: | Master File No. 1:11-md-2262-NRB ECF Case |
| The OTC Action | |

**OTC PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH BARCLAYS BANK PLC**

# **TABLE OF CONTENTS**

I.      INTRODUCTION……………………………………………………………………...1

II.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE…………….1

    A.     The Standard for Preliminary Approval……………………………………………...1

    B.     The Settlement Is Entitled to a Presumption of Fairness……………………………3

    C.     The Settlement is Substantively Fair………………………………………………3

        1.     The Complexity, Expense, and Likely Duration of the Litigation………………5

        2.     The Reaction of the Class to the Settlement……………………………………6

        3.     The Stage of the Proceedings…………………………………………………...6

        4.     The Risks of Establishing Liability and Damages……………………………...7

        5.     The Risks of Maintaining the Class Action Through Trial………………………9

        6.     The Ability of Defendants to Withstand a Greater Judgment……………………9

        7.     The Reasonableness of the Settlement in Light of the Best
            Possible Recovery and the Attendant Risks of Litigation……………………… 10

III.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE………………..12

    A.     Rule 23(a) Requirements……………………………………………………………13

        1.     Rule 23(a)(1) – Numerosity………………………………………………...13

        2.     Rule 23(a)(2) – Commonality………………………………………………14

        3.     Rule 23(a)(3) – Typicality…………………………………………………15

        4.     Rule 23(a)(4) – Adequacy…………………………………………………16

    B.     Rule 23(b)(3) Requirements………………………………………………………... 17

        1.     Predominance…………………………………………………………………17

        2.     Superiority………………………………………………………………… 19

    C.     The Court Should Appoint OTC Plaintiffs' Counsel as Counsel for the Class………..21

IV.    OTC PLAINTIFFS WILL FILE A SEPARATE MOTION FOR APPROVAL OF A
    NOTICE PLAN AND PLAN OF DISTRIBUTION………………………………………22

V.     CONCLUSION………………………………………………………………………..23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984) ...................................................................10

*Allen v. Dairy Farmers of Am., Inc.*,
  No. 5:09-CV-230, 2011 WL 1706778 (D. Vt. May 4, 2011) ...................................2

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)............................................................................12, 13, 19

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013)................................................................................17

*In re AOL Time Warner, Inc.*,
  No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................6, 11

*In re Austrian and German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)..................................................................3

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000)..............................................................................16

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012).................................................................10

*Bolanos v. Norwegian Cruise Lines Ltd.*,
  212 F.R.D. 144 (S.D.N.Y. 2002) .....................................................................15

*Bourlas v. Davis Law Assocs.*,
  237 F.R.D. 345 (E.D.N.Y. 2006) .....................................................................13

*Campbell v. Purdue Pharma, L.P.*,
  No. 1:02CV00163 TCM, 2004 WL 5840206, at *4 (E.D. Mo. June 25, 2004) ....................13

*Capsolas v. Pasta Res. Inc.*,
  No. 10-CV-5595 RLE, 2012 WL 1656920 (S.D.N.Y. May 9, 2012)........................3

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*,
  No. 85 CIV. 3048 (JMW), 1987 WL 7030 (S.D.N.Y. Feb. 13, 1987) ....................8

*Chambery v. Tuxedo Junction Inc.*,
  10 F. Supp. 3d 415, 421 (W.D.N.Y. 2014) ...........................................................21

*Charron v. Pinnacle Grp. N.Y. LLC*,
   874 F. Supp. 2d 179 (S.D.N.Y. 2012)....................................................................8

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)......................................................................... *passim*

*Cohen v. J.P. Morgan Chase & Co.*,
   262 F.R.D. 153 (E.D.N.Y. 2009) ............................................................................12

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013)..............................................................................................9

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995)......................................................................................13

*In re Corrugated Container Antitrust Litig.*,
   No. MDL 310, 1981 WL 2093 (S.D. Tex. 1981)...............................................11, 12

*In re Currency Conversion Fee Antitrust Litig.*,
   264 F.R.D. 100 (S.D.N.Y. 2010) ............................................................................16

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009)......................................................................................15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ...............3

*In re Folding Cartons Antitrust Litig.*,
   75 F.R.D. 727 (N.D. Ill. 1977).................................................................................19

*In re Foreign Exchange Benchmark Rates Antitrust Litig.*,
   Case No. 13-cv-7789 (S.D.N.Y.), ECF No. 536.......................................................23

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005).............................................................................9

*Ge Dandong v. Pinnacle Performance Ltd.*,
   No. 10 CIV. 8086 JMF, 2013 WL 5658790 (S.D.N.Y. Oct. 17, 2013)...................18

*Gen. Tel. Co. of Southwest v. Falcon*,
   457 U.S. 147 (1982)................................................................................................15

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................6, 14

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)........................................................................................4

*In re High-Tech Employee Antitrust Litig.*,
No. 11-CV-2509-LHK, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013) ...................................11

*In re Ind. Energy Holdings PLC Sec. Litig.*,
210 F.R.D. 476 (S.D.N.Y. 2002) ...................................................13

*In re Initial Public Offering Sec. Litig.*,
260 F.R.D. 81 (S.D.N.Y. 2009) ..................................................13

*In re Labelstock Antitrust Litig.*,
584 F. Supp. 2d 697 (M.D. Penn. 2008) .......................................9

*Larsen v. JBC Legal Group, P.C.*,
235 F.R.D. 191 (E.D.N.Y. 2006) ...............................................17

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11 CIV. 2613 NRB, 2014 WL 6851096 (S.D.N.Y. Dec. 2, 2014) ....................4

*In re LIBOR-Based Financial Instruments Antitrust Litig.*,
962 F. Supp. 2d 606 (S.D.N.Y. 2013) ..........................................19

*In re Linerboard Antitrust Litig.*,
292 F. Supp. 2d 631 (E.D. Penn. 2003) ........................................11

*Martens v. Smith Barney, Inc.*,
181 F.R.D. 243 (S.D.N.Y. 1998) ...............................................16

*In re Master Key Antitrust Litig.*,
70 F.R.D. 23 (D. Conn. 1975) ..................................................19

*MCI Commc'ns Corp. v. Am. Tel. & Telegraph Co.*,
708 F.2d 1081 (7th Cir. 1983) ..................................................8

*McReynolds v. Richards-Cantave*,
588 F.3d 790 (2d Cir. 2009) ....................................................2

*Menkes v. Stolt-Nielsen S.A.*,
270 F.R.D. 80 (D. Conn. 2010) .................................................2

*In re NASDAQ Market-Makers Antitrust Litig.*,
169 F.R.D. 493 (S.D.N.Y. 1996) ............................................16, 19

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ...........................................5, 8, 10

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) .................................................2

*New Jersey Carpenters Health Fund v. Residential Capital, LLC*,
   No. 08 CV 5093 HB, 2013 WL 6839093 (S.D.N.Y. Dec. 27, 2013) ....................................20

*In re Packaged Ice Antitrust Litig.*,
   No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011).........................................11

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y.) ...............................................................................................2, 3

*Park v. The Thomson Corp.*,
   No. 05 CIV.2931 (WHP), 2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008).............................7, 8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   986 F. Supp. 2d 207 (E.D.N.Y. 2013) .................................................................................5, 7

*In re Playmobil Antitrust Litig.*,
   35 F. Supp. 2d 231 (E.D.N.Y. 1998) .........................................................................15, 16, 20

*Precision Associates, Inc. v. Panalpina World Transport*,
   Case No. 08-cv-0042 (E.D.N.Y.).......................................................................................1, 23

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ......................................................................................4, 14

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
   237 F.R.D. 26 (E.D.N.Y. 2006) ..........................................................................................4, 6

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)...................................................................................................15

*In re Salomon Analyst Metromedia Litig.*,
   544 F.3d 474 (2d Cir. 2008)...................................................................................................17

*Shelter Realty Corp. v. Allied Maint. Corp.*,
   75 F.R.D. 34 (S.D.N.Y. 1977) .........................................................................................18, 19

*In re Stock Exchanges Options Trading Antitrust Litig.*,
   No. 99 CIV 0962(RCC), 2005 WL 1635158 (S.D.N.Y. July 8, 2005)....................................1

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011)...................................................................................................19

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
   257 F.3d 256 (2d Cir. 2001)....................................................................................................5

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001)...................................................................................................17

*In re Vitamin C Antitrust Litig.*,
    No. 06-MD-1738 BMC JO, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ............................5

*In re Vitamins Antitrust Litigation* ...............................................................................................20

*In re Vitamins Antitrust Litigation*,
    209 F.R.D. 251, 270 (D.D.C. 2002)..........................................................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)....................................................................................................2, 10

*In re Warner Commc'ns*,
    618 F. Supp. 735 (S.D.N.Y. 1985) .............................................................................................8

*Weber v. Gov't Emps. Ins. Co.*,
    262 F.R.D. 431 (D.N.J. 2009)....................................................................................................9

*Weil v. Long Island Sav. Bank*,
    200 F.R.D. 164 (E.D.N.Y. 2001) .............................................................................................14

*Weseley v. Spear, Leeds & Kellogg*,
    711 F. Supp. 713 (E.D.N.Y. 1989) ............................................................................................5

## Rules

Fed. R. Civ. P. 23 ............................................................................................................... passim

## Other Authorities

F. Matthew Ralph, Caroline B. Sweeney, *E-Discovery and Antitrust Litigation* ............................5

Futures & Derivatives L. Rep. 1 ....................................................................................................8

## I.    INTRODUCTION

OTC Plaintiffs[1] respectfully submit this memorandum in support of their motion for preliminary approval of the settlement ("Settlement") reached between OTC Plaintiffs, on behalf of themselves and the punitive Class, and Defendant Barclays Bank PLC ("Barclays") (together with OTC Plaintiffs, the "Parties") in the above-captioned litigation (the "OTC Action").[2] If approved, the proposed Settlement, consisting of a $120,000,000 cash payment and an agreement to provide significant cooperation to OTC Plaintiffs in pursuing their case against the non-settling defendants will resolve this complex case against Barclays.   The Settlement was reached after extended, frank, and contentious negotiations over the course of more than two years, including mediation sessions conducted under the guidance of three different mediators: the Honorable Daniel Weinstein, the Honorable Layn R. Phillips, and renowned settlement master Kenneth Feinberg.[3]  As demonstrated below, the Settlement is an excellent result for the Class; is fair, reasonable and adequate under the governing standards in this Circuit; and warrants approval.

## II.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A.    The Standard for Preliminary Approval

"Preliminary approval is generally the first step in a two-step process before a class-action settlement is approved." *In re Stock Exchanges Options Trading Antitrust Litig.*, No. 99 CIV 0962(RCC), 2005 WL 1635158, at *4 (S.D.N.Y. July 8, 2005). "In considering preliminary

---

[1] OTC Plaintiffs are Mayor and City Council of Baltimore; City of New Britain (which was substituted for the City of Firefighters' and Police Benefit Fund pursuant to the Court's order dated March 3, 2004 (ECF No. 1334)); Texas Competitive Electric Holdings Company LLC; Yale University; Jennie Stuart Medical Center, Inc.; Variety Children's Hospital d/b/a Miami Children's Hospital; Highlander Realty LLC; and SEIU Pension Plans Master Trust.

[2] Unless otherwise defined herein, all capitalized terms have the meaning ascribed to them in the Settlement Agreement between OTC Plaintiffs and Barclays Bank PLC, dated November 11, 2015 (the "Settlement").

[3] For a more extended discussion of the procedural history of this case, including a summary of the claims, the settlement negotiations, and the terms of the settlement, the OTC Plaintiffs hereby incorporate by reference the Declaration of Michael D. Hausfeld, filed concurrently herewith (hereinafter "Hausfeld Decl.").

approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice" and "[o]nce preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ II*").

In determining whether to grant preliminary approval to a settlement, the court should consider both the "negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009). Preliminary approval "is appropriate where [the settlement] is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies. . . , and where the settlement appears to fall within the range of possible approval." *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010).

While "[t]he decision to grant or deny such approval lies squarely within the discretion of the trial court," *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y.), in determining whether preliminary approval is appropriate, the court should start "with the proposition that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions." *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-CV-230, 2011 WL 1706778, at *2 (D. Vt. May 4, 2011); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005).

As explained below, the Settlement is both substantively and procedurally fair such that it warrants preliminary approval.

**B.      The Settlement Is Entitled to a Presumption of Fairness**

Where, as here, the proposed settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000). Indeed, in circumstances such as this, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. at 125.

Both of these aspects are present here. First, this Court has previously concluded that OTC Plaintiffs' Counsel has the requisite skills and experience in class actions to lead this litigation on behalf of the punitive Class. *See* ECF No. 66. And it is beyond dispute that Barclays is represented by reputable and highly-experience counsel. Second, as set forth in greater detail in the Hausfeld Declaration, the settlement negotiations between OTC Plaintiffs and Barclays stretched out over a period of more than two years, under the guidance of three well-respected mediators. Hausfeld Decl. ¶ 20. The use of a mediator "strengthen[s]" the presumption that the compromise is fair and reasonable. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *14 (S.D.N.Y. Nov. 8, 2010); *see also Capsolas v. Pasta Res. Inc.*, No. 10-CV-5595 RLE, 2012 WL 1656920, at *1 (S.D.N.Y. May 9, 2012) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."). In short, the Settlement is entitled to a presumption of fairness.

**C.      The Settlement is Substantively Fair**

While it is unnecessary to undertake "a full fairness analysis" at the preliminary approval

stage, *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006),[4]

some courts have looked to the nine factors announced in *City of Detroit v. Grinnell Corp.*, 495

F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*,

209 F.3d 43 (2d Cir. 2000) (the "*Grinnell* factors"), at the preliminary approval stage. *See, e.g.*,

*Reade-Alvarez*, 237 F.R.D. at 34; *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200,

210 (S.D.N.Y. 1995). The *Grinnell* factors are as follows:

> (1) the complexity, expense and likely duration of the litigation,
> (2) the reaction of the class to the settlement, (3) the stage of the
> proceedings and the amount of discovery completed, (4) the risks of
> establishing liability, (5) the risks of establishing damages,
> (6) the risks of maintaining the class action through the trial,
> (7) the ability of the defendants to withstand a greater judgment, (8)
> the range of reasonableness of the settlement fund in light of the best
> possible recovery, and (9) the range of reasonableness of the
> settlement fund to a possible recovery in light of all the attendant
> risks of litigation.

*Grinnell*, 495 F.2d at 463.

As explained below, each of the applicable *Grinnell* factors weighs in favor of this Court

granting preliminary approval to the Settlement. *See In re LIBOR-Based Fin. Instruments Antitrust

Litig.*, No. 11 CIV. 2613 NRB, 2014 WL 6851096, at *2 (S.D.N.Y. Dec. 2, 2014) ("In this instance,

we grant the motion for preliminary approval, as there are enough factors to suggest that the

Proposed Settlement is viable. First, the Proposed Settlement is the result of arm's-length

negotiations . . . . Second, it is reasonable to expect that the Exchange-Based Plaintiffs will benefit

considerably from Barclays's cooperation in producing evidence to use against the many non-

settling defendants . . . . Third, to win an award without settling, the . . . Plaintiffs must prove a

factually complex case with genuine legal uncertainties.").

---

[4] Preliminary approval is warranted so long as "a proposed settlement is merely within the range of possible approval." *Id.*

4

### 1.      *The Complexity, Expense, and Likely Duration of the Litigation.*

OTC Plaintiffs can think of no other case that better embodies the challenges faced by plaintiffs in antitrust litigation than this one. *See In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012) ("Federal antitrust cases are complicated, lengthy, and bitterly fought, as well as costly."); *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual complexities of antitrust cases"); *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989) (explaining that antitrust class actions "are notoriously complex, protracted, and bitterly fought").

The OTC Action was initially filed over four years ago and has undergone multiple rounds of motion to dismiss briefing. OTC Plaintiffs' primary claim—their antitrust claim—has been dismissed, and there is a possibility that the Second Circuit could uphold dismissal of that claim. Additionally, OTC Plaintiffs face the monumental task of trudging through what is likely to be a highly-contentious discovery process, motions for class certification (and the likely Rule 23(f) petition by whichever side loses that motion), summary judgment, and at the end of this process, a weeks- if not months-long trial, *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) ("*NASDAQ III*") (estimating that trial could consume over a year), from which the losing party will likely appeal, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 212 (E.D.N.Y. 2013) ("The losing parties would likely appeal any adverse jury verdicts, thereby extending the duration of litigation.").

In short, while OTC Plaintiffs' Counsel (and presumably counsel for Defendants) have already expended significant resources litigating this case, "[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result." *NASDAQ III*, 187 F.R.D. at 477; *see also* F. Matthew Ralph, Caroline B.

Sweeney, *E-Discovery and Antitrust Litigation*, Antitrust, Fall 2011, at 58 ("Electronic discovery, or e-discovery, remains a major driver (or accelerator) of litigation expense, notwithstanding the 2006 e-discovery amendments to the Federal Rules of Civil Procedure."). The first *Grinnell* factor supports preliminary approval.

### 2.     The Reaction of the Class to the Settlement

Because notice has yet to be provided to potential members of the Class, courts generally do not consider this *Grinnell* factor at the preliminary approval stage. *See Reade-Alvarez*, 237 F.R.D. at 34. In any event, all of the OTC Plaintiffs approve of this settlement, and should any objections from class members be received prior to the Fairness Hearing, OTC Plaintiffs' Counsel will address those concerns in the final approval papers.

### 3.     The Stage of the Proceedings

"The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). The lack of formal discovery does not preclude approval of a settlement. *Id.*; *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004). Instead, "it is enough for the Parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10.

Numerous facts demonstrate that this *Grinnell* factor supports preliminary approval. First, the parties have been litigating this action for more than four years and have received at least five lengthy rulings from the Court on the viability of their claims. *See* ECF Nos. 286; 389; 568; 1164; 1234. Second, the parties have briefed and argued the viability of the antitrust claim in the Second

Circuit. Third, OTC Plaintiffs have undertaken extensive legal and factual analysis of the OTC Plaintiffs' claims and the reasonable value of the case. Fourth, OTC Plaintiffs' Counsel have engaged consulting experts to better understand the LIBOR market and the magnitude of harm inflicted on the Class. Fifth, OTC Plaintiffs' Counsel and Barclays' counsel conducted settlement negotiations over the course of more than two years; these negotiations, which were extremely contentious, were accompanied by an honest and frank discussion on the relative strengths and weaknesses of the claims and defenses. Hausfeld Decl. ¶ 27. The information gained through these various means have provided OTC Plaintiffs' Counsel with a comprehensive understanding of the relative strengths and weaknesses of their case that has enabled the OTC Plaintiffs' Counsel to negotiate a settlement that they believe to be an excellent result for the Class. The Court should therefore conclude that this factor supports preliminary approval of the Settlement.

### 4.     The Risks of Establishing Liability and Damages

"In assessing the Settlement, the Court should balance the benefits afforded the Class, including the *immediacy* and *certainty* of a recovery, against the continuing risks of litigation." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d at 224 (emphasis in the original). In this case, OTC Plaintiffs face significant risks in continuing to litigate this case, which are amplified by the complexity of the LIBOR market and the fact that Defendants are global financial institutions that can afford to litigate this case indefinitely.

This litigation presents the Court, the parties, and eventually, a jury, with the task of understanding extremely complex derivative instruments in an opaque, unregulated market. This risk will only be amplified as the case proceeds to discovery and substantive motions. And should the case proceed to trial, "[t]he complexity of Plaintiff's claims *ipso facto* creates uncertainty . . . . A trial on these issues would likely be confusing to a jury." *Park v. The Thomson Corp.*, No. 05

CIV.2931 (WHP), 2008 WL 4684232, at *4 (S.D.N.Y. Oct. 22, 2008); *see* 31 No. 7 Futures & Derivatives L. Rep. 1 ("Derivative instruments, in most cases, are highly complex and difficult to understand for even highly sophisticated and intelligent investors."). This makes proving liability and damages, both of which would have required the assistance of experts, all the more risky.[5]

Additional risk is created by the fact that Barclays and the other Defendants have extremely deep pockets and are represented by some of the best law firms in the United States. Absent settlement, Barclays was most certainly prepared to vigorously contest its liability and damages. "Establishing otherwise [would] require considerable additional pre-trial effort and a lengthy trial, the outcome of which is uncertain." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 199 (S.D.N.Y. 2012) *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013). Put simply, "liability is never automatic." *Park*, 2008 WL 4684232, at *4. And even if OTC Plaintiffs were able to establish Barclays' liability at trial, "[t]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *NASDAQ III*, 187 F.R.D. at 476; *see also MCI Commc'ns Corp. v. Am. Tel. & Telegraph Co.*, 708 F.2d 1081, 1166–69 (7th Cir. 1983).

In sum, "[t]here is a substantial risk that the plaintiff might not be able to establish liability at all and, even assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away." *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 CIV. 3048 (JMW), 1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987). "These factors therefore weigh in favor of the Settlement." *Park*, 2008 WL 4684232, at *4.

---

[5] It is a foregone conclusion that this case will require a "battle of the experts." "In this 'battle of experts,' it is difficult to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad of non-actionable factors . . . ." *In re Warner Commc'ns*, 618 F. Supp. 735, 744–45 (S.D.N.Y. 1985).

### 5.      The Risks of Maintaining the Class Action Through Trial

Although OTC Plaintiffs believe that their proposed litigation class will be certified, they also know that the Defendants will vigorously contest any motion for class certification and that there is no guarantee that a litigation class will be certified. Assuming the litigation class is certified, the Court could nonetheless review and modify that grant of certification at any point prior to trial, such that the risk of maintaining the class through trial would never be 100% certain. *See Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory"); *see also Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). This being the case, this *Grinnell* factor weighs in favor of preliminary approval.

### 6.      The Ability of Defendants to Withstand a Greater Judgment

There can be little doubt that Barclays could withstand a greater judgment than the amount of compensation provided for in the Settlement. But this alone is not sufficient for the Court to decline preliminary approval of the Settlement. *See Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009) ("[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement."). In any event, given the extent of the cooperation being provided by Barclays, OTC Plaintiffs submit that application of the *Grinnell* factors weighs so strongly in favor of preliminary approval that consideration of this factor alone, which is neutral at worst, does not militate against granting preliminary approval of the settlement. *See In re Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Penn. 2008) ("Moreover, the benefit of obtaining the cooperation of the Settling Defendant tends to offset the fact that [it] would be able to withstand a larger judgment.").

###### 7. *The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation*

The last two *Grinnell* factors "recognize the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 119 (2d Cir. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). In applying these factors, "[d]ollar amounts [in class action settlement agreements] are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984); *see also NASDAQ III*, 187 F.R.D. at 478 ("Ultimately, the exact amount of damages need not be adjudicated for purposes of settlement approval."). Consequently, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2.

Continuing this litigation against Barclays would, as outlined above, necessitate the expenditure of countless hours and dollars over several more years with no guarantee that OTC Plaintiffs would ever be able to establish liability, certify a class, and prove damages; all of which would be required for OTC Plaintiffs to recover anything at trial. These risks are arguably dispositive for these *Grinnell* factors. *See In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012) ("[T]he propriety of a given settlement amount is a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery (or reduced recovery).").

In comparison to the antecedent risks of continuing litigation against Barclays, this first "ice-breaker" Settlement provides OTC Plaintiffs and the Class both significant cash compensation ($120,000,000) and immediate and substantial cooperation. Hausfeld Decl. ¶¶ 28-33. That OTC

Plaintiffs and the Class will receive compensation now rather than years from now, if at all, weighs strongly in favor of preliminary approval. *See AOL Time Warner*, 2006 WL 903236, at *13 ("[T]he benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery."). And as to the cooperation, although this is not quantifiable in "dollars and cents," the value of Barclays' cooperation to the Class is arguably invaluable: it will provide OTC Plaintiffs with, among other things, documents, witness interviews, data, and market knowledge that will assist OTC Plaintiffs in their continued litigation against the non-settling Defendants and their eventual motion for class certification. *See In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *10 (E.D. Mich. Feb. 22, 2011) (noting cooperation "has already been beneficial to the OTC Plaintiffs in their continued prosecution of their claims against the non-settling Defendants"). As such, the cooperation provisions of the Settlement strongly weigh in favor of preliminary approval. *See In re Corrugated Container Antitrust Litig.*, No. MDL 310, 1981 WL 2093, at *16 (S.D. Tex. 1981) ("The cooperation clauses constituted a substantial benefit to the class.").

Finally, as the first settlement in the OTC Action, this Settlement has the potential to "break the ice' and bring other defendants to the point of serious negotiations." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Penn. 2003). Thus, this Settlement could pay further dividends in the form of additional settlements (without the associated risks of continuing to litigate this case through trial) with other Defendants, and if the Second Circuit reverses the dismissal of the antitrust claim, the non-Settling Defendants will be jointly and severally liable for all damages caused to the Class. This exerts significant pressure on the non-settling Defendants. *See In re High-Tech Employee Antitrust Litig.*, No. 11-CV-2509-LHK, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013). As the court in *In re Corrugated Container Antitrust Litigation*

explained: "[T]his strategy was designed to achieve a maximum aggregate recovery for the class and the fact that the later settlements were at considerably higher rates tends to show that the strategy was successful." 1981 WL 2093, at *23.

In sum, each of the relevant *Grinnell* factors weighs in favor of this Court granting preliminary approval to the Settlement.

## III. CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

In accordance with the Settlement, OTC Plaintiffs respectfully request that the Court certify the following Class for settlement purposes:

> All persons or entities (other than Defendants and their employees, affiliates, parents, and subsidiaries) that purchased in the United States, directly from a Defendant (or a Defendant's subsidiaries or affiliates), a U.S. Dollar LIBOR-Based Instrument and that owned the U.S. Dollar LIBOR-Based Instrument any time during the period August 2007 through May 2010 (the "Class Period").[6]

Settlement ¶ 3(a).

Certification of a settlement class is appropriate where that class meets all of the requirements of Rule 23(a) as well as one of the requirements of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). When certification of a settlement class is sought, "courts must take a liberal rather than a restrictive approach." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009). For the reasons explained below, the proposed settlement class more than satisfies the requirements for certification.

---

[6] "Specifically excluded from the Class are Defendants; Released Parties; co-conspirators; the officers, directors, or employees of any Defendant, Released Party, or co-conspirator; any entity in which any Defendant, Released Party, or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant, Released Party, or co-conspirator and any person acting on their behalf. Also excluded from the Class are any judicial officers presiding over this action and the members of his/her immediate families and judicial staff, and any juror assigned to the OTC Action." Settlement ¶ 3(b). Additionally, for the avoidance of doubt, persons or entities that only purchased bonds issued by entities other than U.S. LIBOR Panel Banks are not members of the Class.

A.       **Rule 23(a) Requirements**

The Supreme Court has explained the Rule 23(a) factors as follows:

> Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical . . . of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").

*Amchem*, 521 U.S. at 613. The proposed settlement Class meets each of these requirements.

### 1.       *Rule 23(a)(1) – Numerosity*

The numerosity requirement is satisfied where the class is so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). This does not mean that joinder must be impossible, "but refers to the difficulty or inconvenience of joinder." *In re Ind. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002).

Numerosity is presumed in this Circuit where a class consists of forty (40) or more members. *See generally Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *In re Initial Public Offering Sec. Litig.*, 260 F.R.D. 81, 90-91 (S.D.N.Y. 2009) (hereinafter "*IPO*"). "While a precise quantification of the class is not required, some evidence or a reasonable estimate of the number of class members must be provided." *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 350-51 (E.D.N.Y. 2006). In making this determination, "the court may make some common sense assumptions and rely on reasonable inferences drawn from the available facts." *Id.* at 351.

The numerosity requirement is more than satisfied here. To start, LIBOR serves as the benchmark interest rate "for trillions of dollars in financial instruments worldwide." Proposed Third Consol. Am. Compl. ¶ 5, ECF No. 1240 (filed Nov. 23, 2015) (hereinafter "PTAC"). The size of the LIBOR market alone is sufficient to satisfy the numerosity requirement. *See Campbell*

*v. Purdue Pharma, L.P.*, No. 1:02CV00163 TCM, 2004 WL 5840206, at *4 (E.D. Mo. June 25, 2004) (noting that the volume of commerce made it "reasonable to assume that the class defined by [p]laintiffs would have such numbers that their joinder would be both impractical and inconvenient") (citing cases). OTC Plaintiffs' Counsel estimate that there are potentially thousands of members of the Class. This being the case, numerosity is easily met here.

### 2.    Rule 23(a)(2) – Commonality

Because "[a] single common issue of law will satisfy the commonality requirement," *Weil v. Long Island Sav. Bank*, 200 F.R.D. 164, 169 (E.D.N.Y. 2001), commonality is generally considered a "'low hurdle' easily surmounted." *In re Prudential Sec. Inc. Ltd. P'ships. Litig.*, 163 F.R.D. at 206 n.8; *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004) (noting that commonality "does not require an identity of claims or facts among class members; instead the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class"). Here, OTC Plaintiffs and each class member makes the exact same factual and legal claims, including, but not limited to:

    a.   Whether Defendants submitted false LIBOR quotes;

    b.   Whether Defendants knew that other Defendants' LIBOR quotes were false;

    c.   Whether Defendants conspired with others to submit false LIBOR quotes;

    d.   Whether Defendants breached the implied covenant of good faith and fair dealing through their manipulative acts;

    e.   Whether it would be inequitable for Defendants to be permitted to retain the benefit which Defendants obtained from their manipulative acts;

    f.   Whether Defendants' conduct had a manipulative effect on

LIBOR during the Class Period;

g.   Whether Defendants' conduct negatively affected the rates of return of LIBOR-Based Instruments purchased directly from the Defendants during the Class Period; and

h.   The appropriate measure of damages for the injury sustained by the OTC Plaintiffs and other members of the Class as a result of Defendants' unlawful activities.

Accordingly, the commonality requirement is satisfied.

### 3.      *Rule 23(a)(3) – Typicality*

The typicality requirement is satisfied where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding." *Bolanos v. Norwegian Cruise Lines Ltd*., 212 F.R.D. 144, 155 (S.D.N.Y. 2002).[7]

The Class satisfies the typicality requirement inasmuch as the OTC Plaintiffs' claims are co-extensive with the claims belonging to the Class. The OTC Plaintiffs' central claim is that the banks belonging to the U.S. Dollar LIBOR panel manipulated their LIBOR quotes in order to suppress the published LIBOR rate throughout the Class Period, thereby causing OTC Plaintiffs and the Class, purchasers of U.S. Dollar LIBOR Instruments, to pay more or receive less on those products than they would have in a non-manipulated market. As the Second Circuit explained: "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met

---

[7] The Supreme Court has noted that the "commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Accordingly, inasmuch as commonality has been established, typicality has been established as well.

irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993); *see In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 241 (E.D.N.Y. 1998) (noting that typicality "in the antitrust context will be established by plaintiffs and all class members alleging the same antitrust violations by the defendants").[8] This being the case, the Class satisfies the typicality requirement.

### 4.    *Rule 23(a)(4) – Adequacy*

In order to satisfy the adequacy requirement, the Court must be satisfied that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Second Circuit has concluded that the adequacy requirement is met where the named plaintiffs (1) do not have interests that are antagonistic to those of the class and (2) have selected counsel who is qualified, experienced, and generally able to conduct the litigation. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Importantly, "[o]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 514–15 (S.D.N.Y. 1996) ("*NASDAQ I*") (holding that to deny class certification on adequacy grounds, "it must be shown that any asserted 'conflict' is so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation").

The adequacy prerequisite is satisfied here. As to the first requirement – no antagonistic interests – all members of the Class have claims arising from the same alleged course of conduct and the same legal theories as the OTC Plaintiffs. This is sufficient. *See In re Currency Conversion*

---

[8] To the extent there are differences in the facts relevant to the claim off each OTC Plaintiff or the damages suffered by each potential member of the Class, these differences do not preclude a finding of typicality. *See In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d at 242 ("Differences in the damages sustained by individual class members does not preclude a showing of typicality, nor defeat class certification.").

*Fee Antitrust Litig.*, 264 F.R.D. 100, 112–13 (S.D.N.Y. 2010) ("[T]he great weight of authority in price-fixing conspiracy cases, absent special circumstances such as arbitration, holds that the victim of one alleged co-conspirator is adequate to prove liability for victims of all co-conspirators.") (citing cases). As to the second requirement – capable counsel – as set forth in greater detail herein, *see* Part IV-C, *infra*, OTC Plaintiffs' Counsel is highly qualified and has vigorously pursued this litigation on behalf of the OTC Plaintiffs and the punitive class. OTC Plaintiffs have demonstrated their effective representation of the interests of the punitive Class by selecting qualified counsel.

For the reasons explained above, the proposed settlement Class satisfies each of the requirements of Rule 23(a).

**B.     Rule 23(b)(3) Requirements**

In addition to the Class satisfying the requirements of Rule 23(a), as explained in greater detail below, the Class also satisfies the requirements of Rule 23(b)(3) that (1) common issues predominate over individual issues, and (2) a class action is the superior method of adjudicating this controversy. Fed. R. Civ. P. 23(b)(3); *see also Larsen v. JBC Legal Group, P.C.*, 235 F.R.D. 191, 196 (E.D.N.Y. 2006).

**1.     *Predominance***

Predominance requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The Second Circuit has explained that in order to meet this requirement "a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 480 (2d Cir. 2008), *abrogated on other grounds by Amgen Inc. v. Connecticut Ret. Plans & Trust*

*Funds*, 133 S. Ct. 1184 (2013). However, predominance does not require all issues be common; rather, "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001); *see also Shelter Realty Corp. v. Allied Maint. Corp.*, 75 F.R.D. 34, 37 (S.D.N.Y. 1977) (noting that Rule 23(b)(3) "calls only for predominance, not exclusivity, of common questions").

The predominance requirement is satisfied here. The case *Ge Dandong v. Pinnacle Performance Ltd.*, No. 10 CIV. 8086 JMF, 2013 WL 5658790 (S.D.N.Y. Oct. 17, 2013), is on point. In that case, the plaintiffs, a group of Singapore-based investors, sued Morgan Stanley & Co. and several of its affiliates for the sale of derivative financial products (so-called "Credit Linked Notes") in which the documents provided to the plaintiffs at the time of sale "failed to reveal the true nature of the financial arrangement." *Id*. at *2. In particular, the plaintiffs alleged that these offering documents "were materially false and misleading in various ways . . . ." *Id.* Judge Jesse M. Furman found these allegations to be sufficient to satisfy the predominance requirement: "[L]iability for an implied covenant claim does not require reliance on any sort of misrepresentation. Accordingly, common issues predominate with respect to Plaintiffs' implied covenant claims as well." *Id*. at *12 (citations omitted).

OTC Plaintiffs have similarly alleged that the Defendants' conduct was antithetical to the documents provided to the OTC Plaintiffs at the time of sale of their LIBOR investments; as in *Ge Dandong*, the documents provided to OTC Plaintiffs by Defendants "failed to reveal the true nature of the financial arrangement." As the Court explained in *LIBOR II*:

> By allegedly manipulating LIBOR downward, such that it was lower than it would have been if set according to its definition, defendants depressed the consideration plaintiffs received pursuant to their contracts and undermined the contractual bargain whereby plaintiffs

agreed to pay a certain fixed rate in exchange for receiving a rate that reflected prevailing interest rates. In other words, plaintiffs have alleged that defendants injur[ed their right] to receive the fruits of the contract, so directly . . . impair[ing] the value of the contract for [plaintiffs] that it may be assumed that [defendants' alleged actions] are inconsistent with the intent of the parties.

*In re LIBOR-Based Financial Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 632-33 (S.D.N.Y. 2013) (internal citations and quotations omitted) (alterations in original). This being the case, the OTC Plaintiffs' good faith and fair dealing claim satisfies the predominance requirement of Rule 23(b)(3).[9]

### 2. *Superiority*

Rule 23(b)(3) identifies four factors to be considered in determining whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy":

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

---

[9]  Although OTC Plaintiffs' antitrust claims is currently dismissed, to the extent they are revived, questions regarding the existence of the alleged conspiracy as well as the manner in which OTC Plaintiffs and the Class were harmed similarly predominate over any individualized issues. *See Amchem*, 521 U.S. 591, 625 (1997) ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."); *NASDAQ I*, 169 F.R.D. at 518 ("Since a single conspiracy is alleged, the relevant proof of this will not vary among class members, and clearly presents a common question fundamental to all class members."); *In re Master Key Antitrust Litig.*, 70 F.R.D. 23, 26 (D. Conn. 1975) (characterizing question of the existence of a conspiracy as "the central and common element of these cases"); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 338 (3d Cir. 2011) (en banc) (Scirica, J., concurring) ("Issues of predominance and fairness do not undermine this settlement. All plaintiffs here claim injury that by reason of defendants' conduct . . . has caused a common and measurable form of economic damage . . . . All claims arise out of the same course of defendants' conduct; all share a common nucleus of operative fact, supplying the necessary cohesion. Class members' interests are aligned . . . . [S]hared issues of fact or law outweigh issues not common to the class and individual issues do not predominate."). It is immaterial that the alleged conspiracy spans multiple products sold within the same market, as each of these products was impacted by the alleged conspiracy in a similar manner. *See In re Folding Cartons Antitrust Litig.*, 75 F.R.D. 727, 734 (N.D. Ill. 1977) ("[C]ontentions of infinite diversity of product, marketing practices, and pricing have been made in numerous cases and rejected. Courts have consistently found the conspiracy issue the overriding, predominant question."); *Shelter Realty Corp. v. Allied Maint. Corp.*, 75 F.R.D. 34, 37 (S.D.N.Y. 1977) (concluding that even though the multiple services at issue in the complaint were priced separately for each plaintiff, the existence of the alleged conspiracy was the predominant issue).

Fed. R. Civ. P. 23(b)(3)(A)-(D). Consideration of the relevant factors demonstrates that the superiority requirement is satisfied here.[10]

As to the first two factors, while it is true that a number of so-called "direct action plaintiffs" have filed non-class cases asserting similar claims, the existence of what are essentially opt-outs does not preclude a finding of superiority. As the court explained in *In re Vitamins Antitrust Litigation*:

> Defendants also argue that a class action is not superior because a large number of class members are likely to opt-out of the class and because many plaintiffs have large individual claims. This argument also fails. While there are a large number of so-called direct action plaintiffs participating individually, and all cases have been consolidated for pretrial purposes in this forum, the Court is at a loss to understand how adding additional individual actions, especially in view of a trial on the merits, will promote manageability. Moreover, there are a variety of tools available pursuant to Rule 23(d) and the Federal Rules which have been used, and, will continue to be used, in this case, as needs arise. The Court is confident that with the assistance of able attorneys on both sides, management issues will be successfully resolved. The Court is satisfied that a class action is superior in this case.

209 F.R.D. 251, 270 (D.D.C. 2002); *see also New Jersey Carpenters Health Fund v. Residential Capital, LLC*, No. 08 CV 5093 HB, 2013 WL 6839093, at *5 (S.D.N.Y. Dec. 27, 2013) (concluding that the existence of individual actions by Fannie Mae and Freddie Mac, nine opt-outs from one class, and fifteen opt-outs from another class did not preclude a finding of superiority, and noting that "the fact that so many investors remain in these lawsuits militates in favor of adjudicating the issues as class actions"). Similar logic applies here: if the Class is not certified for settlement purposes, many more individual actions will necessarily be filed in this

---

[10] Courts considering motions to certify settlement classes need not consider the fourth superiority factor. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial.").

Court (or filed elsewhere and subsequently transferred) by would-be-members of the Class seeking to preserve their rights. This course of action would be exponentially more difficult and inefficient than certifying the Class for settlement purposes *See Playmobil*, 35 F. Supp. 2d at 249 (certifying a class because "proceeding forward as a class action for liability is superior and would avoid duplication, unnecessary costs and a wasting of judicial resources."). Thus, the first two factors weigh in favor of a superiority finding.

As to the third factor, OTC Plaintiffs have a demonstrated interest in focusing the litigation in this Court by filing their initial action in this Court and pursuing the litigation here. In addition, several of the Defendants are headquartered or have significant operations related to the alleged misconduct in this District. *See Chambery v. Tuxedo Junction Inc.*, 10 F. Supp. 3d 415, 421 (W.D.N.Y. 2014) (concluding that the superiority requirement was satisfied because, in part, "the Defendant's headquarters are in this District, making this a desirable forum"). In addition, this Court is already familiar with the complicated facts and legal issues presented in this case, having presided over this action for more than four years and issued numerous, substantive opinions on the legal issues presented by this action. The third superiority factor likewise supports certification.

In sum, certification of the punitive Class is the superior course of action.

**C.      The Court Should Appoint OTC Plaintiffs' Counsel as Counsel for the Class**

Under Rule 23(g), a court that certifies a class must appoint class counsel, who is charged with fairly and adequately representing the interests of the class. *See* Fed. R. Civ. P. 23(g)(1). In determining class counsel, the Court must consider (1) the work undertaken by counsel in identifying or investigating the potential claims; (2) counsel's experience in handling class actions, other complex litigation, and similar claims; (3) counsel's knowledge of the applicable law; and

(4) the resources that counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A).

OTC Plaintiffs' Counsel readily meet these requirements and should be appointed as counsel for the Class. First, as outlined in the Hausfeld Declaration, OTC Plaintiffs' Counsel undertook significant effort in identifying and asserting the claims in this action, including seeking leave to amend to add the breach of the implied covenant of good faith and fair dealing claim after the federal antitrust claim was dismissed. Hausfeld Decl. ¶¶ 10, 14. Second, the Susman Godfrey and Hausfeld firms have significant experience litigating antitrust class actions. Indeed, the Court has already assessed the qualifications of the firms and chose to appoint them to serve as interim lead counsel for the OTC Plaintiffs. ECF No. 66. Finally, following their appointment, Susman Godfrey and Hausfeld have both vigorously prosecuted the OTC Action and committed substantial resources necessary to effectively and efficiently litigate this case. For these reasons, the Court should now appoint Susman Godfrey and Hausfeld as counsel for the Class.[11]

## IV.    OTC PLAINTIFFS WILL FILE A SEPARATE MOTION FOR APPROVAL OF A NOTICE PLAN AND PLAN OF DISTRIBUTION

OTC Plaintiffs are committed to the Net Settlement Fund being distributed in a reasonable and equitable fashion to members of the Class. However, OTC Plaintiffs have not yet received structured data or customer lists from Barclays or any of the other Defendants that will aid in formulating a Notice Plan and Plan of Distribution. As such, OTC Plaintiffs respectfully propose to file a separate Motion for Approval of the Plan of Distribution and Form and Manner of Notice of the Settlement Agreement at a later date. At that time, OTC Plaintiffs' Counsel will recommend to the Court a proposed Plan of Distribution and Notice Plan (including the claim form), which will include input from economic consultants, Mr. Feinberg, and, if necessary, allocation counsel.

---

[11] OTC Plaintiffs also request that the Court appoint Citibank, NA as the escrow agent, Rust Consulting as the claims administrator, and Ken Feinberg as the settlement administrator.

OTC Plaintiffs anticipate filing this motion as soon as practicable after receiving lists of Class Members and structured data from at least Barclays.

As a practical matter, that means the notice and claim form that will issue to members of the Class will include a description of the case, the terms of the settlement, and the mechanism and plan of distribution, sufficient for members of the Class to intelligently and meaningfully participate, object, opt-out or otherwise comment on the settlement while avoiding confusion caused by multiple rounds of notice.

Other courts have permitted this course of action in similarly complex cases. Recently, the Honorable Lorna G. Schofield preliminarily approved a settlement with a separate notice procedure nearly identical to the procedure proposed here. *See In re Foreign Exchange Benchmark Rates Antitrust Litigation*, Case No. 13-cv-7789 (S.D.N.Y.), ECF No. 536 ¶¶ 8–9. Similarly, in *Precision Associates, Inc. v. Panalpina World Transport*, Case No. 08-cv-0042 (E.D.N.Y.) ("Freight Forwarders"), the plaintiffs moved for preliminary approval of the first ten partial settlements prior to formulating any plan of distribution, and the Honorable John J. Gleeson preliminarily approved each of these settlements before the plan of distribution had been proposed.[12]

## V.     CONCLUSION

For the foregoing reasons, OTC Plaintiffs respectfully request the Court grant their motion.

---

[12] *See* ECF Nos. 527, 530, 576, 587, 590, 605, 637, 643, 645, 649, 668, 673, 687, 692, 712, 715 in *Freight Forwarders*.

March 8, 2016                                    Respectfully submitted,


*/s/ William C. Carmody*                         */s/ Michael D. Hausfeld*
William C. Carmody                               Michael D. Hausfeld
Arun Subramanian                                 William P. Butterfield
Seth Ard                                         Hilary K. Scherrer
SUSMAN GODFREY L.L.P.                             Nathaniel C. Giddings
560 Lexington Avenue, 15th Floor                 HAUSFELD LLP
New York, NY 10022                               1700 K Street, NW, Suite 650
Tel: 212-336-8334                                Washington, DC 20006
bcarmody@susmangodfrey.com                       Tel: 202-540-7200
asubramanian@susmangodfrey.com                   mhausfeld@hausfeld.com
sard@susmangodfrey.com                           wbutterfield@hausfeld.com
                                                 hscherrer@hausfeld.com
Marc M. Seltzer                                  ngiddings@hausfeld.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Tel: 310-789-3100
mseltzer@susmangodfrey.com


**Counsel for the OTC Plaintiffs**

24