**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262 |
| THIS DOCUMENT RELATES TO: | Master File No. 1:11-md-2262-NRB ECF Case |
| The OTC Action | |

**DECLARATION OF MICHAEL D. HAUSFELD**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF**
**SETTLEMENT WITH BARCLAYS BANK PLC**

Pursuant to 28 U.S.C. § 1746, I, Michael D. Hausfeld, declare:

1.      I am chairman of the law firm of Hausfeld LLP.  My firm serves as interim co-lead counsel for the putative class of over-the-counter plaintiffs ("OTC Plaintiffs")[1] in the above-captioned litigation (the "OTC Action").  *See* ECF No. 66 (filed Nov. 29, 2011).

2.      I submit this declaration in support of the OTC Plaintiffs' Motion for Preliminary Approval of Settlement with Barclays Bank plc ("Barclays").  I have been actively involved in prosecuting and resolving this action, am familiar with its proceedings, and have personal knowledge of the matters set forth herein, and if called upon and sworn as a witness, I could competently testify thereto.

3.      Because this declaration is submitted in support of a Settlement, it is inadmissible in any subsequent proceedings, other than in connection with the Settlement.  In the event the

---

[1] OTC Plaintiffs are Mayor and City Council of Baltimore; City of New Britain; Texas Competitive Electric Holdings Company LLC; Yale University; Jennie Stuart Medical Center, Inc.; Variety Children's Hospital d/b/a Miami Children's Hospital; Highlander Realty LLC; and SEIU Pension Plans Master Trust.

Settlement is not approved by the Court, this declaration and the statements contained herein are without prejudice to OTC Plaintiffs' position on the merits of the OTC Action.

4.      Attached hereto as Exhibit A is a true and correct copy of the Settlement Agreement between the OTC Plaintiffs and Barclays (together with OTC Plaintiffs, the "Parties").   If approved, the proposed settlement, consisting of an agreement by Barclays to pay $120 million in cash and to provide significant cooperation to OTC Plaintiffs in pursuing their case against the non-settling defendants, will resolve this complex case against Barclays.[2]

## I.   SUMMARY OF CLAIMS AND THE PROCEDURAL HISTORY OF THE LITIGATION

5.      The following is a summary of the nature of OTC Plaintiffs' claims, the principal events that have occurred in the litigation to date, and the terms of the Settlement.

6.      On April 15, 2011, the first complaint alleging an interbank conspiracy to artificially suppress U.S. Dollar LIBOR was filed in this Court.  *See* Class Action Compl., *FTC Capital GMBH v. Credit Suisse Grp. AG*, Case No. 11-2613 (S.D.N.Y.).

7.      Following extensive factual investigation, OTC Plaintiff Mayor and City Council of Baltimore, represented by Susman Godfrey LLP and Hausfeld LLP ("OTC Plaintiffs' Counsel"), filed its complaint shortly thereafter.  *See* Class Action Compl., *Mayor and City Council of Baltimore v. Bank of America*, Case No. 11-5450 (S.D.N.Y. filed Aug. 5, 2011) (the "*Baltimore* Action").

---

[2] The non-settling defendants are Credit Suisse Group AG; Credit Suisse International; Credit Suisse (USA) Inc.; Bank of America Corporation; Bank of America, N.A.; JP Morgan Chase & Co.; JPMorgan Chase Bank, NA; HSBC Holdings PLC; HSBC Bank PLC; Lloyds banking Group PLC; WestLB AG; Westdeutsche Immobilienbank AG; UBS AG; The Royal Bank of Scotland Group PLC; Citizens Bank of Massachusetts a/k/a RBS Citizens Bank N.A.; Deutsche Bank AG; Citibank NA; Citigroup Inc.; Coöperatieve Centrale Raiffeisen Boerenleenbank B.A.; The Norinchukin Bank; The Bank of Tokyo-Mitsubishi UFJ, Ltd; HBOS PLC; Société Générale S.A.; and Royal Bank of Canada.

8.     On August 12, 2015, the Judicial Panel on Multidistrict Litigation ("JPML") centralized the various actions in this Court "for coordinated and consolidated pretrial proceedings."  Transfer Order, ECF No. 1, Case No. 11-md-2262-NRB.

9.     On November 29, 2011, the Court consolidated the various LIBOR class actions pending before the Court under Federal Rule of Civil Procedure 42(a) and appointed OTC Plaintiffs' Counsel as "interim class counsel for the putative class of over-the-counter plaintiffs." Mem. and Order, ECF No. 66.

10.     On April 30, 2012, OTC Plaintiffs, on behalf of themselves and a putative Class, filed their Consolidated Amended Complaint ("CAC"). ECF No. 130.  This complaint built on OTC Plaintiffs' Counsel's extensive pre-research filing and included substantial additional information garnered from (a) counsel's work with industry and economic experts, (b) the Defendants' filings with the United States Securities and Exchange Commission ("SEC"), (c) court documents filed in other LIBOR proceedings in Canada, Singapore, and Japan, and (d) scholarly articles concerning the suppression of U.S. Dollar LIBOR during the Class Period. In relevant part, this complaint alleged that the Defendants, the banks that comprised the U.S. dollar LIBOR panel during the Class Period, "conspired to, and did, manipulate LIBOR by misreporting the actual interest rates at which they expected they could borrow funds—*i.e.*, their true costs of borrowing—on a daily basis. By acting together and in concert to knowingly understate their true borrowing costs, Defendants caused LIBOR to be calculated or suppressed artificially low, reaping hundreds of millions, if not billions, of dollars in ill-gotten gains."  CAC at ¶ 6.  OTC Plaintiffs alleged that this conduct constituted a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and unjust enrichment.  *Id*. at ¶¶ 220-230.

11.     On June 27, 2012, Barclays announced that it had reached settlements with the U.K.

Financial Services Authority, U.S. Department of Justice, and the U.S. Commodity Futures Trading Commission related to those entities' investigations into Barclays' (and other banks') LIBOR submissions. *See* U.S. Dep't of Justice, *Barclays Bank PLC Admits Misconduct Related to Submissions for the London Interbank Offered Rate and the Euro Interbank Offered Rate and Agrees to Pay $160 Million Penalty* (June 27, 2012), http://www.justice.gov/opa/pr/barclays-bank-plc-admits-misconduct-related-submissions-london-interbank-offered-rate-and. In relevant part, the U.S. Department of Justice concluded, "[I]n the midst of the financial crisis, Barclays's management directed that U.S. Dollar LIBOR submissions be artificially lowered." *Id*.

12. Two days later, on June 29, 2012, the Defendants moved to dismiss the OTC Plaintiffs' complaint. ECF No. 165.

13. On March 29, 2013, the Court granted the Defendants' motion to dismiss the OTC Plaintiffs' antitrust claim. ECF No. 286 ("*LIBOR I*"). The Court reached this conclusion based on its belief that the OTC Plaintiffs had not adequately alleged antitrust injury because the LIBOR-setting process was designed to be cooperative rather than competitive. *Id*. at 31.

14. On May 17, 2013, OTC Plaintiffs sought leave to amend the complaint to add additional allegations with respect to their antitrust injury, reassert their unjust enrichment claim, and assert a claim for breach of the implied covenant of good faith and fair dealing. ECF No. 333. On August 23, 2013, the Court denied OTC Plaintiffs' request to reassert their antitrust claim but granted their request to assert their state law claims. ECF No. 389 ("*LIBOR II*"). Consistent with this order, the OTC Plaintiffs filed their Second Consolidated Amended Complaint on September 10, 2013. ECF No. 406.

15. On November 26, 2013, the Defendants moved to dismiss the OTC Plaintiffs' unjust enrichment and breach of the implied covenant of good faith and fair dealing claims, ECF

No. 507, and, on June 23, 2014, the Court granted in part and denied in part this motion. ECF No. 568 ("*LIBOR III*"). Specifically, the Court permitted the OTC Plaintiffs to proceed on these claims as to those Defendants with whom they "directly transacted." *Id*. OTC Plaintiffs thereafter filed a Proposed Third Consolidated Amended Complaint, which added additional named plaintiffs that are in privity with one or more of the Defendants. ECF No. 627 (filed Aug. 20, 2014).

16. Certain Defendants made additional motions to dismiss to Second Consolidated Amended Complaint and/or requested that the Court deny leave to file the Proposed Third Consolidated Amended Complaint, *see* ECF Nos. 958, 971, 977, and, on November 3, 2015, the Court granted in part these motions. ECF No. 1234.

17. Based on this ruling, OTC Plaintiffs submitted an updated Proposed Third Consolidated Amended Complaint on November 23, 2015. ECF No. 1240. Certain Defendants have opposed the filing of this updated complaint. *See* ECF No. 1259. The Court has requested, ECF No. 1291, and received, ECF No. 1301, supplemental information regarding whether leave to file the Proposed Third Consolidated Amended Complaint should be granted.

18. Discovery in the OTC Plaintiffs' action has now commenced, with OTC Plaintiffs having served document requests on the non-settling Defendants on January 27, 2016 and negotiated the parameters by which Defendants will produce to OTC Plaintiffs all documents previously produced by Defendants to government regulators.

19. On February 5, 2015, after the Supreme Court reversed the Second Circuit's denial of the *Gelboim* appeal, *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897 (2015), the Court granted OTC Plaintiffs' request to appeal the dismissal of their antitrust claim. ECF No. 1008. OTC Plaintiffs filed their notice of appeal on February 20, 2015. ECF No. 1043. Briefing in that appeal is closed and oral argument was heard on November 13, 2015. S*ee In re: Libor-Based Financial*

*Instruments*, No. 15-423 (2d Cir.), Dkt. 1081.

## II.   THE SETTLEMENT WITH BARCLAYS

### A.   Settlement Negotiations

20.   OTC Plaintiffs' settlement with Barclays is the first settlement by OTC Plaintiffs in the litigation – a so-called "ice-breaker" settlement.  The settlement is the culmination of extremely hard-fought, arm's-length negotiations by counsel highly experienced in complex antitrust matters and was reached under the oversight and with the assistance of three preeminent mediators over the course of more than two years.

21.   The Parties first discussed the possibility of settlement of this action in a mediation session before the Honorable Daniel Weinstein in December 2013.  While these settlement discussions were productive, they did not result in an agreement.

22.   Thereafter, the Parties intermittently engaged in further settlement discussions and participated in a mediation session in May 2014 under the oversight of the Honorable Layn Phillips, which similarly were productive but did not result in an agreement.

23.   Thereafter, the Parties continued to engage in intermittent settlement discussions. In May 2015, the parties participated in a third mediation session, this time before Kenneth Feinberg, at which point they reached a general agreement regarding the scope of cooperation that Barclays would agree to provide as part of a settlement, should the parties agree on other material terms.

24.   Throughout the summer of 2015, with the assistance of both Mr. Feinberg and Judge Phillips, the Parties continued to engage in negotiations regarding a settlement amount as well as other material terms.

25.   On August 24, 2015, the Parties reached agreement on all material terms, including

a settlement amount of $120 million.

26.     Over the next three months, the Parties exchanged drafts and engaged in further negotiations regarding the details of the Settlement Agreement.  The Settlement Agreement was finally executed on November 11, 2015, after almost two years of negotiations.

27.     At all times, both sides vigorously negotiated their respective positions.  OTC Plaintiffs' Counsel were well-informed of the facts and issues concerning liability and damages and the relative strengths and weaknesses of each side's litigation position.

**B.     Settlement Terms**

28.     The cash portion of the Settlement consists of $120 million, which will comprise the Settlement Fund.  The Settlement Fund is non-reversionary if there is final approval of the Settlement by the Court; no money will be returned to Barclays.

29.     The Settlement obligates Barclays to provide extensive cooperation which fall into three categories: attorney proffers, documents/data, and testamentary evidence.

30.     First, the attorney proffers cover, *inter alia*, (1) background knowledge on the U.S. Dollar LIBOR setting process and market; (2) "[a] full account of facts known to Barclays that are relevant to the Released Claims, including but not limited to the alleged conduct, if any such facts exist, relating to the manipulation and suppression of U.S. Dollar LIBOR by Barclays and other panel banks;" (3) the benefits flowing to Barclays from this conduct; and (4) "[a] description of Barclays' knowledge, if any, of the alleged interbank conspiracy to manipulate U.S. Dollar LIBOR, including Barclays' knowledge, if any, of other banks, bank employees, and brokers who may have participated or assisted in efforts to manipulate or conspire to manipulate U.S. Dollar LIBOR, and communications relating thereto." Settlement at ¶ 14(ii).

31.     Second, Barclays has agreed to provide OTC Plaintiffs with data relevant to the

OTC Action, including transactional information and documents produced to government regulators.  *Id*. at 14(h)(iv)-(v).  Barclays has already begun producing documents under the Settlement.

32.     Finally, Barclays has agreed to provide testamentary cooperation.  This cooperation will come in the form interviews of former and current employees, *id*. at 14(h)(vi), declarations and affidavits, *id*. at 14(h)(vii), depositions, *id*. at 14(h)(viii), and testimony at trial, *id*. at 14(h)(ix).

33.     Barclays is obligated to provide this cooperation for the longer of seven (7) years or the duration of the OTC Action.  *Id*. at 14(x).

34.     The fact that Barclays' cooperation comes at this stage of the case greatly enhances its value to the OTC Plaintiffs.  For instance, Barclays' cooperation will permit OTC Plaintiffs' Counsel to obtain information that will help guide discovery going forward and may help drive settlement negotiations with other defendants.

        I declare under penalty of perjury that the forgoing is true and correct.

Executed on March 4, 2016
Washington

_____
        Michael D. Hausfeld

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262 |
| THIS DOCUMENT RELATES TO: | Master File No. 1:11-md-2262-NRB ECF Case |
| The OTC Action | |

**SETTLEMENT AGREEMENT BETWEEN**
**OTC PLAINTIFFS AND BARCLAYS BANK PLC**

## **TABLE OF CONTENTS**

1.  RECITALS ............................................................................................................... 1

2.  DEFINITIONS.......................................................................................................... 3

3.  SETTLEMENT CLASS CERTIFICATION .................................................... 11

4.  GOOD FAITH EFFORTS TO EFFECTUATE THIS SETTLEMENT
    AGREEMENT ...................................................................................................... 12

5.  PRELIMINARY APPROVAL ORDER, NOTICE, AND FAIRNESS
    HEARING.............................................................................................................. 12

6.  EFFECTIVE DATE OF SETTLEMENT ........................................................... 18

7.  CLAIMS ADMINISTRATOR AND SETTLEMENT ADMINISTRATOR.................. 19

8.  SCOPE AND EFFECT OF SETTLEMENT ..................................................... 19

9.  FEE AND EXPENSE APPLICATION ............................................................... 21

10. THE SETTLEMENT FUND ................................................................................ 22

11. ADMINISTRATION OF THE SETTLEMENT ............................................... 25

12. TAXES ..................................................................................................................... 31

13. TERMINATION OF THE SETTLEMENT ...................................................... 33

14. COOPERATION OBLIGATIONS ..................................................................... 35

15. RESERVATION OF CLASS MEMBERS' RIGHTS AGAINST
    OTHER DEFENDANTS ...................................................................................... 46

16. MISCELLANEOUS .............................................................................................. 47

17. SIGNATURES........................................................................................................ 50

1.    **RECITALS**

This Settlement Agreement ("Agreement") is made and entered into on November 11, 2015 (the "Execution Date"), between Plaintiffs the Mayor and City Council of Baltimore; City of New Britain Firefighters' and Police Benefit Fund; Texas Competitive Electric Holdings Company LLC; Yale University; Jennie Stuart Medical Center, Inc.; Variety Children's Hospital d/b/a Miami Children's Hospital; Highlander Realty LLC; and SEIU Pension Plans Master Trust (collectively, the "OTC Plaintiffs"), individually and on behalf of the OTC Class in the OTC Action, and defendant Barclays Bank plc ("Barclays"), by and through OTC Plaintiffs' Counsel and Barclays' Counsel. This Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims, upon and subject to the terms and conditions hereof.

WHEREAS, the OTC Plaintiffs have alleged, among other things, that Barclays: (1) violated the Sherman Act, 15 U.S.C. § 1, by conspiring to manipulate the U.S. Dollar LIBOR rate; (2) breached the covenant of good faith and fair dealing by manipulating the U.S. Dollar LIBOR rate; and (3) was unjustly enriched as a result of its manipulative acts in connection with U.S. Dollar LIBOR (collectively, the factual predicate of the OTC Action);

WHEREAS, the OTC Plaintiffs contend that they and the OTC Class suffered monetary damages as a result of Barclays' (and the other Defendants') alleged conduct;

WHEREAS, Barclays maintains that it has meritorious defenses to the claims of liability and damages made by the OTC Plaintiffs in the OTC Action and all charges of liability and damages against it arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the OTC Action;

WHEREAS, the OTC Plaintiffs, for themselves individually and on behalf of the OTC Class, and Barclays agree that neither this Agreement nor any statement made in negotiation

1

thereof shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Barclays or of the truth of any of the claims or allegations alleged in the OTC Action;

WHEREAS, OTC Plaintiffs' Counsel have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the OTC Action, the legal and factual defenses thereto, and the applicable law, that: (1) it is in the best interests of the OTC Class to enter into this Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein, including the value of the Settlement Amount to be paid by Barclays under this Agreement and the cooperation to be provided to the OTC Plaintiffs by Barclays under this Agreement, are obtained for the OTC Class; and (2) the settlement set forth in this Agreement is fair, reasonable, and adequate and in the best interests of the OTC Class;

WHEREAS, Barclays, while continuing to deny that it is liable for the claims asserted against it in the OTC Action, has nevertheless agreed to enter into this Agreement to avoid the further risk, expense, inconvenience, and distraction of burdensome and protracted litigation, and thereby to resolve this controversy, to avoid the risks inherent in complex litigation, and to obtain complete dismissal of the OTC Action as to Barclays and a release of the claims as set forth herein;

WHEREAS, this Agreement is the product of arm's-length negotiations between OTC Plaintiffs' Counsel and Barclays' Counsel under the guidance and oversight of Mediators Kenneth Feinberg and Layn R. Phillips, and this Agreement embodies all of the terms and conditions of the settlement agreed upon between Barclays and the OTC Plaintiffs, both for themselves individually and on behalf of the OTC Class;

NOW, THEREFORE, in consideration of the covenants, terms, and releases in this Agreement, it is agreed, by and among the OTC Plaintiffs (individually and on behalf of the OTC Class) and Barclays, by and through the OTC Plaintiffs' Counsel and Barclays' Counsel, that, subject to the approval of the Court, the OTC Action be settled, compromised, and dismissed with prejudice as to Barclays and the other Released Parties only, without costs, except as stated herein, and releases be extended, as set forth in this Agreement.

2.     **DEFINITIONS**

As used in this Agreement, the following capitalized terms have the meanings specified below:

(a)     <u>Agreement</u>: This Settlement Agreement.

(b)     <u>Alternative Judgment</u>: A Final Judgment and Order of Dismissal entered by the Court but in a form other than proposed by OTC Plaintiffs' Counsel and Barclays.

(c)     <u>Authorized Claimant</u>: Any OTC Class Member who will be entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Distribution approved by the Court in accordance with the terms of this Agreement.

(d)     <u>Barclays</u>: Barclays Bank plc, a British public limited company headquartered in London, England.

(e)     <u>Barclays' Counsel</u>: Sullivan & Cromwell LLP and Boies, Schiller & Flexner LLP.

(f)     <u>BBA</u>: British Bankers' Association.

(g)     <u>Claims Administrator</u>: The third party to be retained by OTC Plaintiffs' Counsel and approved by the Court to manage and administer the process by which the Class will be notified of this Agreement and by which each eligible member of a Class is paid pursuant to this Agreement.

(h)     Class Distribution Order: An order approving the Claims Administrator's and, where applicable, the Settlement Administrator's determinations concerning the acceptance and rejection of the claims submitted herein and approving any fees and expenses not previously applied for, including the fees and expenses of the Settlement Administrator and the Claims Administrator, and, if the Effective Date has occurred, directing payment of the Net Settlement Fund to or for the account of Authorized Claimants, as the case may be.

(i)     Class Notice: The Notice and Summary Notice, collectively.

(j)     Class Plaintiffs: Mayor and City Council of Baltimore; City of New Britain Firefighters' and Police Benefit Fund; Texas Competitive Electric Holdings Company LLC; Yale University; Jennie Stuart Medical Center, Inc.; Variety Children's Hospital d/b/a Miami Children's Hospital; Highlander Realty LLC; and SEIU Pension Plans Master Trust, collectively.

(k)     Court: The United States District Court for the Southern District of New York.

(l)     Defendants: Credit Suisse Group AG; Credit Suisse International; Credit Suisse (USA) Inc.; Bank of America Corporation; Bank of America, N.A.; JPMorgan Chase & Co.; JPMorgan Chase Bank, NA; HSBC Holdings PLC; HSBC Bank PLC; Barclays Bank plc; Lloyds Banking Group PLC; WestLB AG; Westdeutsche Immobilienbank AG; UBS AG; The Royal Bank of Scotland Group PLC; Citizens Bank of Massachusetts a/k/a RBS Citizens Bank N.A.; Deutsche Bank AG; Citibank NA; Citigroup Inc.; Coöperatieve Centrale Raiffeisen Boerenleenbank B.A.; The Norinchukin Bank; The Bank of Tokyo-Mitsubishi UFJ, Ltd; HBOS PLC; Société Générale S.A.; Royal Bank of Canada; and any other Person or Persons who are named as defendants in the OTC Action at any time up to and including the date a Preliminary Approval Order is issued.

(m)     Effective Date or Effective Date of Settlement: See Paragraph 6(a).

(n)     Escrow Agent: Citibank, N.A.

(o)     Exchange-Based Plaintiffs' Action: *FTC Capital GmbH, et al. v. Credit Suisse Group AG, et al*., No. 11-cv-2613, and related class action cases on behalf of Exchange-Based Plaintiffs that are currently pending in the multi-district litigation in the U.S. District Court for the Southern District of New York.

(p)     Execution Date: The date of execution of this Agreement by counsel for all Parties thereto.

(q)     Fairness Hearing: The hearing to be held by the Court to determine whether the settlement set forth in this Agreement shall receive final approval pursuant to Federal Rule of Civil Procedure 23.

(r)     Fee and Expense Application: *See* Paragraph 9(a).

(s)     Final Judgment and Order of Dismissal: The order of the Court finally approving the settlement set forth in this Agreement and dismissing the OTC Action against Barclays with prejudice. The Final Judgment and Order of Dismissal shall become final when (i) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (ii) an appeal has been filed and either (1) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (2) the order has been affirmed in its entirety and the prescribed time, if any, for commencing any further appeal has expired. It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

(t)     LIBOR: The London Interbank Offered Rate.

(u)     Mediator: Layn R. Phillips, or if he is unable or unwilling to serve in that capacity, Kenneth Feinberg.

(v)     <u>Net Settlement Fund</u>: *See* Paragraph 10.

(w)     <u>Notice</u>: The Notice of Proposed Settlement of Class Action to be provided to the Class as provided in this Agreement and the Preliminary Approval Order.

(x)     <u>OTC Action</u>: *Mayor and City Council of Baltimore v. Credit Suisse Group AG, et al.*, No. 11-MD-2262 (NRB) and related class action cases on behalf of OTC Plaintiffs that are currently pending in the multi-district litigation in the U.S. District Court for the Southern District of New York.

(y)     <u>OTC Class or Class</u>: *See* Paragraph 3(a).

(z)     <u>OTC Class Member</u>: A Person who is a member of the OTC Class and has not timely and validly excluded himself, herself, or itself in accordance with the procedures established by the Court.

(aa)     <u>OTC Plaintiffs' Counsel</u>: Hausfeld LLP and Susman Godfrey LLP.

(bb)     <u>Parties</u>: Barclays and the OTC Plaintiffs.

(cc)     <u>Person(s)</u>: An individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, municipality, state, state agency, any entity that is a creature of any state, any government or any political subdivision, authority, office, bureau or agency of any government, and any business or legal entity, and any spouses, heirs, predecessors, successors, representatives, or assignees of the foregoing.

(dd)     <u>Plan of Distribution</u>: A plan or formula of allocation of the Net Settlement Fund whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of expenses of notice and administration of the settlement, Taxes and tax expenses, and such attorneys' fees, costs, expenses, interest, and other expenses as may be awarded by the Court. At

a time and in a manner determined by the Court, OTC Plaintiffs' Counsel shall submit for Court approval a Plan of Distribution for the OTC Class that will provide for the distribution of the applicable Net Settlement Fund. The Plan of Distribution shall be devised and implemented with the assistance of the Settlement Administrator.

(ee)     <u>Preliminary Approval Order</u>: An order of the Court that preliminarily approves the settlement set forth in this Agreement and directs Notice thereof to the Class.

(ff)     <u>Released Claims</u>: Any and all manner of claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, arising from or relating in any way to any conduct alleged or that could have been alleged in and arising from the factual predicate of the OTC Action; <u>provided</u>, <u>however</u>, that Released Claims do not include (1) claims that are the subject of the Settlement Agreement, dated October 7, 2014, between Barclays and the Exchange-Based Plaintiffs, specifically claims arising from or relating in any way to any conduct alleged in the Exchange-Based Plaintiffs' Action or that could have been alleged in the Exchange-Based Plaintiffs' Action concerning Eurodollar future contracts or options; (2) claims arising under foreign law related to transactions outside the United States; or (3) claims to enforce any of the terms of this Agreement. For the avoidance of doubt, Released Claims does not include claims relating to or arising out of the purchase of non-U.S. Dollar LIBOR-Based Instruments or any other claims that do not arise out

of the factual predicate of the OTC Action, such as a claim to complete the settlement or otherwise enforce the terms of a U.S. Dollar LIBOR-Based Instrument.

(gg)   Released Party or Released Parties: Barclays and each of its past or present direct and indirect parents (including holding companies), subsidiaries, affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), predecessors, successors, and each of their respective officers, directors, employees, agents, attorneys, legal or other representatives, trustees, heirs, executors, administrators, advisors, and assigns. Released Parties does not include: (i) any of the other Defendants; or (ii) any other Person formerly named as a party in the OTC Action.

(hh)   Releasing Parties: Individually and collectively, Class Plaintiffs and each OTC Class Member, on behalf of themselves and any of their respective past or present officers, directors, stockholders, agents, employees, legal representatives, partners, associates, trustees, parents, subsidiaries, divisions, affiliates, heirs, executors, administrators, purchasers, predecessors, successors, and assigns, whether or not they object to the settlement set forth in this Agreement and whether or not they make a claim for payment from the Net Settlement Fund.

(ii)   Settlement Administrator: Kenneth Feinberg.

(jj)   Settlement Amount: One hundred and twenty million dollars ($120 million).

(kk)   Settlement Fund: The escrow account established pursuant to Paragraph 10 of this Agreement, including all monies held therein in accordance with the terms of this Agreement.

(ll)   Settling Defendant: Barclays.

(mm)   Settling Defendant's Claims: Claims, including "Unknown Claims" as defined below, that any Released Party may have against a Releasing Party or OTC Plaintiffs' Counsel

8

relating to the institution, prosecution, or settlement of the OTC Action, except for claims to enforce any of the terms of this Agreement. For the avoidance of doubt, Settling Defendant's Claims does not include claims relating to or arising out of the purchase of non-U.S. Dollar LIBOR-Based Instruments or any other claims that do not arise out of the factual predicate of the OTC Action, such as a claim to complete the settlement or otherwise enforce the terms of a U.S. Dollar LIBOR-Based Instrument.

(nn)   <u>Summary Notice</u>: The summary notice of proposed settlement and hearing for publication.

(oo)   <u>Taxes</u>: *See* Paragraph 12(c).

(pp)   <u>Unknown Claims</u>: Any and all Released Claims against the Released Parties which Releasing Parties do not know or suspect to exist in his, her, or its favor as of the Effective Date, and the Settling Defendant's Claims against Releasing Parties which Released Parties do not know or suspect to exist in his, her, or its favor as of the Effective Date, which if known by the Releasing Parties or Released Parties might have affected his, her, or its decision(s) with respect to the settlement. With respect to any and all Released Claims and Settling Defendant's Claims, the Parties stipulate and agree that by operation of the Final Judgment and Order of Dismissal, upon the Effective Date, Releasing Parties and Released Parties shall have expressly waived, and each OTC Class Member shall be deemed to have waived, and by operation of the Final Judgment and Order of Dismissal shall have expressly waived, the provisions, rights and benefits of California Civil Code § 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

and any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542.

The Releasing Parties and Released Parties may hereafter discover facts other than or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims and Settling Defendant's Claims. Nevertheless, Class Plaintiffs and the Released Parties shall expressly, fully, finally, and forever settle and release, and each OTC Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, fully, finally, and forever settled and released, any and all Released Claims and Settling Defendant's Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Class Plaintiffs and the Released Parties acknowledge, and OTC Class Members shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Settling Defendant's Claims was separately bargained for and was a key element of the Agreement.

(qq)     U.S. Dollar LIBOR-Based Instrument: An instrument that includes any term, provision, obligation or right to be paid or to receive interest based upon the U.S. Dollar LIBOR rate, including but not limited to asset swaps, collateralized debt obligations, credit default swaps, forward rate agreements, inflation swaps, interest rate swaps, total return swaps, options or floating rate notes. For the avoidance of doubt, U.S. Dollar LIBOR-Based Instrument does not include an instrument that includes only a term, provision, obligation or right to pay interest based upon the U.S. Dollar LIBOR rate, such as business, home, student or car loans, or credit cards.

10

3.      **SETTLEMENT CLASS CERTIFICATION**

(a)      The Parties hereby stipulate for purposes of settlement only that the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) are satisfied, and, subject to Court approval, the following settlement class shall be certified as to Barclays (the "Class" or "OTC Class"):

> All persons or entities (other than Defendants and their employees, affiliates, parents, and subsidiaries) that purchased in the United States, directly from a Defendant (or a Defendant's subsidiaries or affiliates), a U.S. Dollar LIBOR-Based Instrument and that owned the U.S. Dollar LIBOR-Based Instrument any time during the period August 2007 through May 2010 (the "Class Period").

(b)      Specifically excluded from the Class are Defendants; Released Parties; co-conspirators; the officers, directors, or employees of any Defendant, Released Party, or co-conspirator; any entity in which any Defendant, Released Party, or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant, Released Party, or co-conspirator and any person acting on their behalf. Also excluded from the Class are any judicial officers presiding over this action and the members of his/her immediate families and judicial staff, and any juror assigned to the OTC Action.

(c)      The Parties' agreement as to certification of the Class is only for purposes of effectuating a settlement and for no other purpose. Barclays retains all of its objections, arguments, and defenses with respect to class certification, and reserves all rights to contest class certification, if the settlement set forth in this Agreement does not receive the Court's final approval, if the Court's approval is reversed or vacated on appeal, if this Agreement is terminated as provided herein, or if the settlement set forth in this Agreement otherwise fails to become effective. The Parties acknowledge that there has been no stipulation to any Class or certification of any Class for any purpose other than effectuating the settlement, and that if the

settlement set forth in this Agreement does not receive the Court's final approval, if the Court's approval is reversed or vacated on appeal, if this Agreement is terminated as provided herein, or if the settlement set forth in this Agreement otherwise fails to become effective, this agreement as to certification of the OTC Class becomes null and void *ab initio*, and this Agreement or any other settlement-related statement may not be cited regarding certification of the OTC Class, or in support of an argument for certifying a class for any purpose related to this proceeding.

4.      **GOOD FAITH EFFORTS TO EFFECTUATE THIS SETTLEMENT AGREEMENT**

The Parties agree to cooperate with one another in good faith to effectuate and implement the terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the terms of this Agreement. This includes Barclays serving notice on those persons and entities required to receive notice pursuant to 28 U.S.C. § 1715.

5.      **PRELIMINARY APPROVAL ORDER, NOTICE, AND FAIRNESS HEARING**

(a)      Within thirty (30) days of execution of this Agreement, OTC Plaintiffs' Counsel shall submit to the Court and Barclays shall support a motion requesting entry of the Preliminary Approval Order. That motion shall:

(i)      Seek certification of the Class for purposes of settlement only, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3);

(ii)      Request preliminary approval of the settlement set forth in this Agreement as fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23;

(iii)      Seek the appointment of the OTC Plaintiffs as Class representatives of the OTC Class under Federal Rule of Civil Procedure 23;

(iv) Seek appointment of OTC Plaintiffs' Counsel as interim Class counsel under Federal Rule of Civil Procedure 23(g);

(v) If practicable at the time the motion is filed or otherwise at a later time, seek approval of the form and method of dissemination of (1) the Notice, which shall be mailed along with a proof of claim form via first-class mail, and (2) the Summary Notice, which shall be published based upon the recommendations of the Claims Administrator. With the object of reducing the costs of Class Notice, OTC Plaintiffs' Counsel shall use their reasonable best efforts to coordinate the provision of Class Notice pertaining to this Agreement with the provision of notice for any other settlements that may be reached in the OTC Action as of the time of Preliminary Approval. The Claims Administrator will also establish and maintain a dedicated settlement website, from which each member of the Class can view and download relevant documents, including the Notice, Summary Notice, and proof of claim form;

(vi) Seek appointment of a qualified claims administrator as the Claims Administrator;

(vii) Seek appointment of Citibank N.A. as Escrow Agent;

(viii) Stay all proceedings in the OTC Action against Barclays until the Court renders a final decision on approval of the settlement set forth in this Agreement; and

(ix) Attach a proposed form of order, which shall include such provisions as are typical in such orders, including (1) a finding that the proposed plan of

notice complies with Federal Rule of Civil Procedure 23 and the requirements of due process, (2) setting a date for the Fairness Hearing, and (3) a provision that, if final approval of the settlement is not obtained, the settlement is null and void, and the Parties will revert to their positions *ex ante* without prejudice to their rights, claims, or defenses.

(b)     Class Notice shall apprise each member of the Class of his, her or its right to exclude themselves from the settlement Class, or object to the settlement.

(c)     Barclays shall, at its own expense and as reasonably available to Barclays and permissible by law, supply to OTC Plaintiffs' Counsel in electronic format or such other form as may be reasonably requested by OTC Plaintiffs' Counsel or the Claims Administrator, the names and addresses of all clients, who, between August 1, 2007 and May 31, 2010 entered into a U.S. Dollar LIBOR-Based Instrument and who can be reasonably identified based on client records that Barclays has in its possession, custody, or control. Any information provided pursuant to this provision shall be covered by the protective order in effect in the OTC Action, or, if no protective order is in effect, shall nevertheless be maintained as confidential. Moreover, any information provided pursuant to this provision shall be used solely for purposes of providing notice and administering and verifying claims, as set forth in Paragraphs 5 and 11, and any distribution of such information shall be limited to what is necessary for those purposes. If the Parties are unable to agree on the scope of the client-identifying data to be produced, the issue shall be submitted to the Mediator for resolution. Notice shall be mailed to those Persons that are identified by Barclays. Notice to other members of the Class shall be by publication, if approved by the Court.

(d)      Any Person seeking exclusion from the Class must file a timely written request for exclusion ("Request for Exclusion"). Any Person that files such a request shall be excluded from the Class, shall have no rights with respect to this Agreement, and shall receive no payment provided for in this Agreement. A Request for Exclusion must meet all of the following criteria:

     (i)      Be in writing;

     (ii)      Be signed by the Person or his, her, or its authorized representative;

     (iii)      State the name, address and phone number of that Person;

     (iv)      Include (1) proof of membership in the Class and (2) a signed statement that "I/we hereby request that I/we be excluded from the proposed OTC Class in the *In re LIBOR-Based Financial Instruments Antitrust Litigation*";

     (v)      Be mailed to the Claims Administrator at the address provided in the Class Notice and postmarked no later than fourteen (14) days prior to the date set for the Fairness Hearing or any other date set by the Court.

(e)      A Request for Exclusion that does not include all of the foregoing information, that does not contain the proper signature, that is sent to an address other than the one designated in the Class Notice, or that is not sent within the time specified, shall be invalid, and the Person(s) filing such an invalid request shall be an OTC Class Member and shall be bound by the settlement set forth in this Agreement, if approved. OTC Plaintiffs' Counsel agrees to provide Barclays with notice of any Person who requests to be excluded from the Class, together with all documents and information provided by such Person, within three (3) business days of receipt by OTC Plaintiffs' Counsel of that exclusion request.

(f)      Any Person who has not requested exclusion from the Class and who objects to the settlement set forth in this Agreement may appear in person or through counsel, at that Person's own expense, at the Fairness Hearing to present any evidence or argument that the Court deems proper and relevant. However, no such Person shall be heard, and no papers, briefs, pleadings, or other documents submitted by any such Person shall be received and considered by the Court, unless such Person properly submits a written objection that includes all of the following:

(i)      A notice of intention to appear;

(ii)      Proof of membership in the Class, including documentation evidencing the purchase of a U.S. Dollar LIBOR-Based Instrument during the Class Period; and

(iii)      The specific grounds for the objection and any reasons why such Person desires to appear and be heard, as well as all documents or writings that such Person desires the Court to consider.

(g)      Such a written objection must be both filed with the Court no later than fourteen (14) days prior to the date set for the Fairness Hearing and mailed to OTC Plaintiffs' Counsel and Barclays' Counsel at the addresses provided in the Class Notice and postmarked no later than fourteen (14) days prior to the date set for the Fairness Hearing. Any Person that fails to object in the manner prescribed herein shall be deemed to have waived his or her objections and will forever be barred from making any such objections in the OTC Action, unless otherwise excused for good cause shown, as determined by the Court.

(h)     If the Preliminary Approval Order is entered by the Court, Class Plaintiffs shall seek, and Barclays shall support, entry of a Final Judgment and Order of Dismissal, that meets all of the following criteria:

(i)      Certifies the Class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) solely for the purpose of the settlement;

(ii)     Approves finally the settlement set forth in this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Class within the meaning of Federal Rule of Civil Procedure 23 and directing its consummation according to its terms;

(iii)    Finds that the Class Notice constituted due, adequate, and sufficient notice of the settlement set forth in this Agreement and the Fairness Hearing and meets the requirements of due process and the Federal Rules of Civil Procedure;

(iv)    Directs that, as to the Released Parties, the OTC Action shall be dismissed with prejudice and, except as provided for in this Agreement, without costs; provided, however, that such dismissal shall not affect, in any way, the right of Class Plaintiffs or OTC Class Members to pursue claims, if any, outside the scope of the Released Claims;

(v)     Orders that the Releasing Parties are permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any Released Claims against any Released Party;

(vi)     Retains with the Court exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of the settlement; and

(vii)    Determines under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directs that the judgment of dismissal as to Barclays shall be final and entered forthwith.

## 6.     EFFECTIVE DATE OF SETTLEMENT

(a)     The Effective Date of Settlement shall be the date when all of the following events shall have occurred and shall be conditioned on the occurrence of all of the following events:

(i)      The contribution to the Settlement Fund has been made pursuant to this Agreement;

(ii)     Entry of the Preliminary Approval Order;

(iii)    Final approval by the Court of the settlement set forth in this Agreement, following Class Notice and the Fairness Hearing;

(iv)     No Party has exercised his, her, or its rights to terminate this Agreement pursuant to Paragraphs 10(c), 13(a), 13(c), or 13(d); and

(v)      Entry by the Court of a Final Judgment and Order of Dismissal, and the Final Judgment and Order of Dismissal becomes final, or, in the event that the Court enters an Alternative Judgment and neither Class Plaintiffs nor Barclays elects to terminate this Agreement, and such Alternative Judgment becomes final.

(b)     Notwithstanding any other provision herein, any proceeding or order, or motion for reconsideration, appeal, petition for a writ of certiorari or its equivalent, pertaining solely to

18

any Plan of Distribution and/or Fee and Expense Application, shall not in any way delay or preclude the Effective Date.

## 7.    CLAIMS ADMINISTRATOR AND SETTLEMENT ADMINISTRATOR

(a)    Pursuant to the Preliminary Approval Order and subject to Court approval, OTC Plaintiffs' Counsel shall engage the Settlement Administrator and a qualified claims administrator as the Claims Administrator. Both the Claims Administrator and the Settlement Administrator will assist with the settlement claims process as set forth herein.

(b)    The Claims Administrator shall effectuate the notice plan approved by the Court in the Preliminary Approval Order, shall administer and calculate the claims submitted by OTC Class Members, and shall oversee distribution of the Net Settlement Fund to Authorized Claimants in accordance with the Plan of Distribution.

(c)    The Settlement Administrator shall assist in the development of the Plan of Distribution and the resolution of any disputes between OTC Class Members and the Claims Administrator pursuant to the Plan of Distribution.

## 8.    SCOPE AND EFFECT OF SETTLEMENT

(a)    The obligations incurred pursuant to this Agreement shall be in full and final disposition of the following:

(i)    The OTC Action against Barclays;

(ii)    Any and all Released Claims as against all Released Parties; and

(iii)    Any and all Settling Defendant's Claims as against all Releasing Parties.

(b)    Upon the Effective Date of Settlement, each of the Releasing Parties:

(i)    Shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal, shall have, fully, finally, and forever waived, released, relinquished, and discharged all Released Claims against the Released

19

Parties, regardless of whether such Releasing Party executes and delivers a proof of claim;

(ii)     Shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties; and

(iii)    Agrees and covenants not to sue any of the Released Parties on the basis of any Released Claims or to assist any third party in commencing or maintaining any suit against any Released Party related in any way to any Released Claims.

(c)     Upon the Effective Date of Settlement, each of the Released Parties:

(i)     Shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have fully, finally, and forever released and discharged Class Plaintiffs, OTC Plaintiffs' Counsel, and each and all OTC Class Members from each and every one of the Settling Defendant's Claims;

(ii)     Shall forever be enjoined from prosecuting the Settling Defendant's Claims; and

(iii)    Agrees and covenants not to sue on the basis of the Settling Defendant's Claims, or to assist any third party in commencing or maintaining any such suit related to the Settling Defendant's Claims.

(d)     The releases provided in this Agreement shall become effective immediately upon occurrence of the Effective Date of Settlement without the need for any further action, notice, condition, or event.

20

(e)     As an express and material condition of this Agreement, the Court shall enter an order, in the Final Judgment and Order of Dismissal or otherwise, to the extent permitted by law, barring claims against the Released Parties for contribution or indemnification (however denominated) for all or a portion of any amounts paid or awarded in the OTC Action by way of settlement, judgment, or otherwise by any of the following:

(i)     Any of the other Defendants currently named in the OTC Action;

(ii)     Any other Person formerly named as a party in the OTC Action; or

(iii)     Any other Person subsequently added or joined as a party in the OTC Action.

(f)     In the event that this Agreement is terminated pursuant to Paragraphs 10(c), 13(a), 13(c) or 13(d), or any condition for the final approval of this Agreement is not satisfied, the release and covenant not to sue provisions of the foregoing paragraphs shall be null and void and unenforceable.

## 9.     FEE AND EXPENSE APPLICATION

(a)     OTC Plaintiffs' Counsel will submit an application or applications (the "Fee and Expense Application") to the Court for an award from the Settlement Fund of the following:

(i)     Attorneys' fees not to exceed 33-1/3% of the Settlement Fund;

(ii)     Reimbursement of litigation expenses, plus interest, incurred in connection with the prosecution of the OTC Action; and

(iii)     May also seek service awards for Class Plaintiffs in conjunction with their representation of the Class.

(b)     Barclays will take no position regarding the Fee and Expense Application. Attorneys' fees, expenses, and interest as are awarded by the Court ("Fee and Expense Award") to OTC Plaintiffs' Counsel shall be paid from the Settlement Fund to OTC Plaintiffs' Counsel

immediately upon entry by the Court of an order awarding such amounts, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the settlement or any part thereof, subject to OTC Plaintiffs' Counsel's joint and several obligation to repay those amounts to the Settlement Fund, plus accrued interest at the same net rate as is earned by the Settlement Fund, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Settlement Fund is required consistent with the provisions of Paragraph 13(c) hereof. In such event, OTC Plaintiffs' Counsel shall, within ten (10) business days from the event which requires repayment of the Fee and Expense Award, refund to the Settlement Fund the Fee and Expense Award paid to them, along with interest.

(c)      Notwithstanding any other provision of this Agreement to the contrary, the Fee and Expense Application shall be considered by the Court separate and apart from its consideration of the fairness, reasonableness, and adequacy of the settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal of any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Agreement or the settlement of the OTC Action, or affect the finality or binding nature of any of the releases granted hereunder. The Released Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment of attorneys' fees or expenses to OTC Plaintiffs' Counsel.

## 10.    THE SETTLEMENT FUND

(a)      The Settlement Fund shall be established as an escrow account and administered by the Escrow Agent, subject to approval by the Court. The Settlement Fund shall be administered pursuant to this Agreement and subject to the Court's continuing supervision and control. No monies shall be paid from the Settlement Fund without the specific authorization of

OTC Plaintiffs' Counsel. Counsel for the Parties agree to cooperate, in good faith, to form an appropriate escrow agreement in conformance with this Agreement.

(b)      Barclays shall cause the payment of one hundred and twenty million dollars ($120 million) to be paid to the Escrow Agent by wire transfer within fifteen (15) business days following the Execution Date, provided that within five (5) days following the Execution Date, OTC Plaintiffs' Counsel shall provide Barclays with such information as Barclays may require to complete the wire transfer. These funds, together with any and all interest earned thereon, shall constitute the Settlement Fund. OTC Plaintiffs' Counsel may pay from the Settlement Fund on a nonrefundable basis, without further approval from Barclays or the Court, the costs and expenses reasonably and actually incurred up to the sum of $500,000 in connection with providing Class Notice and the administration of the settlement, including, without limitation, locating members of the Class, soliciting OTC Class Members' claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, and processing proof of claim and release forms. All costs and expenses incurred in connection with providing Class Notice and the administration of the settlement in excess of $500,000 shall be paid from the Settlement Fund, subject to approval from the Court. If for any reason the settlement set forth in this Agreement fails to become effective, the amounts paid or incurred for such expenses shall not be recoupable by Barclays from OTC Plaintiffs' Counsel or any other Person.

(c)      Without prejudice to the Class Plaintiffs' right to seek enforcement of this Agreement by motion or otherwise, if the Settlement Amount is not timely transferred to the escrow account, OTC Plaintiffs' Counsel may terminate this Agreement if the following occur:

(i)      OTC Plaintiffs' Counsel has notified Barclays' Counsel in writing of OTC Plaintiffs' Counsel's intention to terminate this Agreement; and

(ii)     The entire Settlement Amount is not transferred to the Settlement Fund within ten (10) business days after OTC Plaintiffs' Counsel has provided such written notice.

(d)     The Settlement Fund shall be invested exclusively in accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either: (i) fully insured by the Federal Deposit Insurance Corporation ("FDIC"); or (ii) secured by instruments backed by the full faith and credit of the United States Government. The proceeds of these accounts shall be reinvested in similar instruments at their then-current market rates as they mature. All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund.

(e)     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and the Plan of Distribution approved by the Court.

(f)     The Settlement Fund shall be applied as follows:

(i)     To pay any Fee and Expense Award, if and to the extent allowed by the Court;

(ii)     To pay all the costs and expenses reasonably and actually incurred in connection with providing Class Notice and the administration of the settlement, including, without limitation, locating members of the Class, soliciting OTC Class Members' claims, assisting with the filing of claims,

24

administering and distributing the Net Settlement Fund to Authorized Claimants, and processing proof of claim and release forms;

(iii)  To pay the Taxes and tax expenses described in Paragraph 12 hereof;

(iv)  To pay any other Court approved fees and expenses; and

(v)  To distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Authorized Claimants for each Class as allowed by the Court pursuant to the Class Distribution Order.

(g)  With the object of reducing the costs of Class Notice, OTC Plaintiffs' Counsel shall use their reasonable best efforts to coordinate the provision of Class Notice pertaining to this Agreement with the provision of notice for any other settlements that may be reached. In all events, Barclays shall have no liability for the costs of provision of notice beyond those set forth in Paragraph 10(b).

(h)  As set forth above, Barclays shall be responsible for paying the Settlement Amount. Barclays shall have no responsibility for any other costs, including, as further detailed in this Agreement, any attorneys' fees and expenses or any Taxes or tax-related costs relating to the Settlement Fund, but all such fees, expenses, and costs shall be paid from the Settlement Fund, as approved by the Court.

## 11.   ADMINISTRATION OF THE SETTLEMENT

(a)  Any OTC Class Member who does not submit a valid proof of claim will not be entitled to receive any of the proceeds from the Net Settlement Fund, but will otherwise be bound by all of the terms of this Agreement and the settlement, including the terms of the Final Judgment and Order of Dismissal to be entered in the OTC Action and the releases provided for herein, and will be barred from bringing any action against the Released Parties concerning the Released Claims.

(b)     The Claims Administrator shall process this settlement based upon proofs of claim submitted in connection with the settlement, and, after entry of the Class Distribution Order, distribute the Net Settlement Fund in accordance with the Class Distribution Order. Except for its obligation to fund the settlement or cause it to be funded as detailed in this Agreement, Barclays shall have no liability, obligation, or responsibility for the administration of the settlement or disbursement of the Net Settlement Fund. OTC Plaintiffs' Counsel shall have the right but not the obligation to advise the Claims Administrator to waive what OTC Plaintiffs' Counsel reasonably deems to be formal or technical defects in any proofs of claim submitted, including, without limitation, failure to submit a document by the submission deadline, in the interests of achieving substantial justice.

(c)     For purposes of determining the extent, if any, to which an OTC Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(i)     Each OTC Class Member, at a time determined by the Court, shall be required to submit a proof of claim (as shall be approved by the Court) which, *inter alia*, releases all Released Claims against all Released Parties, is signed under penalty of perjury by an authorized Person, and is supported by such documents or proof as OTC Plaintiffs' Counsel and the Claims Administrator, in their discretion, may deem acceptable;

(ii)     All proofs of claim must be submitted by the date specified in the Preliminary Approval Order, unless such period is extended by order of the Court. Any OTC Class Member who fails to submit a proof of claim by such date shall be forever barred from receiving any payment pursuant to this Agreement (unless, by order of the Court, a later submitted proof of

26

claim by such OTC Class Member is approved) but shall in all other respects be bound by all of the terms of this Agreement and the settlement, including the terms of the Final Judgment and Order of Dismissal to be entered in the OTC Action and the releases provided for herein, and will be barred from bringing any action against the Released Parties concerning the Released Claims. Provided that it is received before the motion for the Class Distribution Order is filed, a proof of claim shall be deemed to have been submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon. In all other cases, the proof of claim shall be deemed to have been submitted when actually received by the Claims Administrator;

(iii)    Each proof of claim shall be submitted to and reviewed by the Claims Administrator who shall determine whether the proof of claim is in accordance with this Agreement and any applicable orders of the Court, and the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to Paragraph 11(c)(v), *infra*. The Claims Administrator will review each approved proof of claim and determine, in accordance with the Plan of Distribution, the amount to be distributed to that claimant. The Released Parties shall not have any role in, or responsibility or liability to any Person for, the solicitation, review, or evaluation of proofs of claim;

(iv)   Proofs of claim that do not meet the submission requirements may be rejected. Prior to rejection of a proof of claim, the Claims Administrator shall communicate with the claimant in order to remedy the curable deficiencies in the proofs of claim submitted. The Claims Administrator shall notify, in a timely fashion and in writing, all claimants whose proofs of claim it proposes to reject, in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review by the Settlement Administrator. If the claimant so desires and complies with the requirements of Paragraph 11(c)(v), *infra*, the claimant may seek review by the Court;

(v)   If any claimant whose claim has been rejected, in whole or in part, desires to contest such rejection, the claimant must, within twenty (20) days after the date of mailing of the notice required in Paragraph 11(c)(iv), *supra*, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation. If a dispute concerning a claim cannot be otherwise resolved, OTC Plaintiffs' Counsel shall thereafter present the request for review to the Court; and

(vi)   The administrative determinations of the Claims Administrator accepting and rejecting claims, as modified by the Settlement Administrator, as the case may be, shall be presented to the Court, on notice to Barclays' Counsel, for approval by the Court in the Class Distribution Order (as defined in Paragraph 2(h)).

28

(d)     Each claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's claim, and the claim will be subject to investigation and discovery pursuant to the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that claimant's status as an OTC Class Member and the validity and amount of the claimant's claim. No discovery shall be allowed to be directed to Barclays or any of the Released Parties, and no discovery shall be allowed on the merits of the OTC Action or settlement in connection with processing of the proofs of claim.

(e)     Payment pursuant to this Agreement and the Plan of Distribution shall be deemed final and conclusive against all OTC Class Members. All OTC Class Members whose claims are not approved shall be barred from any participation in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Agreement and the settlement, including the terms of the Final Judgment and Order of Dismissal to be entered in the OTC Action and the releases provided for herein, and will be barred from bringing any action against the Released Parties concerning the Released Claims.

(f)     All proceedings with respect to the administration, processing, and determination of claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court.

(g)     The Net Settlement Fund shall be distributed by the Claims Administrator to, or for the account of, Authorized Claimants, as the case may be, only after the Effective Date and after all of the following have occurred:

(i)     All claims have been processed and evaluated by the Claims Administrator, and where requested by the Settlement Administrator and

29

all claimants whose claims have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to be heard concerning such rejection or disallowance;

(ii)     All objections with respect to all rejected or disallowed claims have been resolved by the Court and all appeals therefrom have been resolved or the time therefor has expired;

(iii)    All matters with respect to the Fee and Expense Application have been resolved by the Court and all appeals therefrom have been resolved or the time therefor has expired; and

(iv)    All fees and costs of administration have been paid.

(h)    OTC Plaintiffs' Counsel will apply to the Court for the Class Distribution Order.

(i)    Class Plaintiffs and OTC Class Members shall look solely to the Settlement Fund as full, final, and complete satisfaction of all Released Claims. Except as set forth in Paragraph 10(b), Barclays shall have no obligation under this Agreement or the settlement to pay or cause to be paid any amount of money, and Barclays shall have no obligation to pay or reimburse any fees, expenses, costs, liability, losses, Taxes, or damages whatsoever alleged or incurred by Class Plaintiffs, by any OTC Class Member, or by any Releasing Parties, including, but not limited to, by their attorneys, experts, advisors, agents, or representatives, with respect to the OTC Action and Released Claims. Class Plaintiffs and OTC Class Members acknowledge that as of the Effective Date, the releases given herein shall become effective immediately by operation of the Final Judgment and Order of Dismissal and shall be permanent, absolute, and unconditional.

(j)    Barclays shall not have a reversionary interest in the Net Settlement Fund. If there is a balance remaining in the Net Settlement Fund after six (6) months from the date of

distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), or reasonably soon thereafter, the Claims Administrator shall, if logistically feasible and economically justifiable, reallocate such balances among Authorized Claimants in an equitable fashion. These redistributions shall be repeated until the remaining balance in the Net Settlement Fund is *de minimis* and such remaining balance shall be donated to an appropriate § 501(c)(3) non-profit organization selected by OTC Plaintiffs' Counsel and approved by the Court.

## 12.   TAXES

(a)   The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and agree not to take any position for Tax purposes inconsistent therewith. The Settlement Fund, less any amounts incurred for notice, administration, and/or Taxes (as defined below), plus any accrued interest thereon, shall be returned to Barclays, as provided in Paragraph 13(c), if the settlement does not become effective for any reason, including by reason of a termination of this Agreement pursuant to Paragraph 13(a).

(b)   For the purpose of § 468B of the Internal Revenue Code and the Treasury regulations thereunder, OTC Plaintiffs' Counsel shall be designated as the "administrator" of the Settlement Fund. OTC Plaintiffs' Counsel shall timely and properly file all income, informational, and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)). Such returns shall be consistent with this Paragraph 12 and in all events shall reflect that all Taxes (as defined below) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

31

(c)     The following, collectively "Taxes," shall be promptly paid out of the Settlement Fund by the Escrow Agent without prior order from the Court:

(i)     Taxes or other similar imposts or charges (including any estimated taxes, interest, penalties, or additions to tax) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1 (or any relevant equivalent for state tax purposes); and

(ii)    Other taxes or tax expenses imposed on or in connection with the Settlement Fund.

(d)     The Claims Administrator shall also be obligated to, and shall be responsible for, withholding from distribution to OTC Class Members any funds necessary to pay any Taxes, including the establishment of adequate reserves for any Taxes. The Parties agree to cooperate with the Claims Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

(e)     Neither the Parties nor their counsel shall have any responsibility for or liability whatsoever with respect to the following:

(i)     Any act, omission, or determination of the Escrow Agent, Claims Administrator, Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement Fund or otherwise;

32

(ii)     The Plan of Distribution;

(iii)     The determination, administration, calculation, or payment of any claims asserted against the Settlement Fund;

(iv)     Any losses suffered by, or fluctuations in the value of, the Settlement Fund; or

(v)     The payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

(f)     The Escrow Agent shall indemnify and hold harmless the Parties out of the Settlement Fund from and against any claims, liabilities, or losses relating to the matters addressed in Paragraph 12(e).

## 13.     TERMINATION OF THE SETTLEMENT

(a)     Class Plaintiffs, through OTC Plaintiffs' Counsel, and Barclays, through Barclays' Counsel, shall, in each of their separate discretions, have the right to terminate the settlement set forth in this Agreement by providing written notice of their election to do so ("Termination Notice") to all other Parties hereto within thirty (30) days of the date on which any of the following occur:

(i)     The Court enters an order declining to enter the Preliminary Approval Order in any material respect;

(ii)     The Court enters an order refusing to approve this Agreement or any material part of it;

(iii)     The Court enters an order declining to enter the Final Judgment and Order of Dismissal in any material respect;

(iv)     The Court enters an Alternative Judgment;

(v)    The Final Judgment and Order of Dismissal is modified or reversed by a court of appeal or any higher court in any material respect; or

(vi)    An Alternative Judgment is modified or reversed by a court of appeal or any higher court in any material respect.

(b)    Notwithstanding this paragraph, the Court's determination as to the Fee and Expense Application or any Plan of Distribution, or any determination on appeal from any such order, shall not provide grounds for termination of this Agreement or settlement.

(c)    Except as otherwise provided herein, in the event the settlement is terminated in accordance herewith, is vacated, is not approved, or the Effective Date fails to occur for any reason, then the Parties to this Agreement shall be deemed to have reverted to their respective status in the OTC Action as of the Execution Date, and, except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered, and any portion of the Settlement Fund previously paid by or on behalf of Barclays, together with any interest earned thereon (and, if applicable, repayment of any Fee and Expense Award referred to in Paragraph 9(a) hereof), less any Taxes due, if any, with respect to such income, and less costs of administration and notice actually incurred and paid or payable from the Settlement Fund (not to exceed $500,000 without the prior approval of the Court) shall be returned to Barclays within ten (10) business days from the date of the Termination Notice. At the request of Barclays' Counsel, the Escrow Agent shall apply for any tax refund owed on the Settlement Fund and pay the proceeds to Barclays.

(d)    Upon application to the Mediator, this Agreement may be terminated if the Mediator determines that all Persons that excluded themselves from the OTC Class would likely have been eligible to receive collectively (but for their exclusion) a material part of the potential

distributions from the Settlement Fund. Following the deadline approved by the Court for all Persons to exclude themselves from the Class, OTC Plaintiffs' Counsel shall provide a list to Barclays of all Persons that have requested exclusion from the Class. Any application to terminate under this paragraph must be made in writing within thirty (30) days following the receipt by Barclays from OTC Plaintiffs' Counsel of the list of all Persons that have requested to exclude themselves from the Class.

(e)     Neither Barclays nor Barclays' Counsel shall directly, or indirectly, solicit or encourage any Person to request exclusion from the Class.

**14.     COOPERATION OBLIGATIONS**

(a)     In consideration for the dismissal of the OTC Plaintiffs' and the OTC Class Members' claims against Barclays in the OTC Action and the release of the Released Claims, subject to any order from the Court, Barclays shall provide cooperation as set forth below.

(b)     All cooperation shall be coordinated in such a manner so that all unnecessary duplication and expense is avoided. Barclays' cooperation obligations shall apply only to Releasing Parties who act with, by or through OTC Plaintiffs' Counsel pursuant to this Agreement.

(c)     Nothing in this Agreement shall impose on Barclays an obligation to produce or provide any materials or information protected from disclosure by the work-product doctrine, the attorney-client privilege, the common interest privilege, the joint defense privilege, the bank regulatory or examination privilege, obligations under applicable data privacy laws or regulations, and/or any other applicable privilege or protection with respect to any documents, interviews, declarations and/or affidavits, depositions, testimony, material, and/or information requested under this Agreement. For any documents withheld from production pursuant to this Agreement, Barclays shall, if directed by the Mediator, create a privilege log describing withheld

35

documents in sufficient detail so as to explain the nature of the privilege asserted or the basis of any law, regulation, policy, or other rule of any governmental body protecting disclosure of such documents. In the event of a disagreement between Barclays and OTC Plaintiffs' Counsel regarding a claim of any privilege or protection, the Parties will seek resolution of such disputes from the Mediator, with the Parties retaining the right to seek a ruling from the Court with respect to the applicability of privilege or work product.

(d)     Any documents, declarations, affidavits, deposition testimony, and information provided to Class Plaintiffs pursuant to this provision shall be covered by the protective order in effect in the OTC Action, or, if no protective order is in effect, shall be maintained as confidential and available only to OTC Plaintiffs' Counsel and Barclays' Counsel, unless Barclays otherwise agrees.

(e)     None of the cooperation provisions are intended to, nor do they, waive any applicable privilege or protection.

(f)     The information provided by Barclays' Counsel in connection with oral presentations may be utilized by OTC Plaintiffs or OTC Plaintiffs' Counsel to assist in the prosecution of the OTC Action or any action related to any Released Claim; provided, however, the Parties expressly agree that any of the information provided in connection with the cooperation obligations set forth in this Paragraph 14, including without limitation oral presentations, may be used directly or indirectly by OTC Plaintiffs or OTC Plaintiffs' Counsel solely in connection with the prosecution of the OTC Action or any action related to any Released Claim, but not for the prosecution of any action or proceeding against any Released Party nor for any other purpose whatsoever.

(g)     In the event of a disagreement between Barclays' Counsel and OTC Plaintiffs' Counsel with respect to this Paragraph 14, the Parties will seek resolution from the Mediator, if necessary.

(h)     Subject to the foregoing, Barclays will provide OTC Plaintiffs and the OTC Class the following cooperation:

(i)     **Preliminary Approval:** Barclays shall cooperate to the extent reasonably necessary in connection with OTC Plaintiffs' Counsel's preparation of the motion for preliminary approval and any related documents necessary to effectuate and implement the terms and conditions of this Agreement.

(ii)    **Proffers:** Beginning within ten (10) business days of the Execution Date, Barclays' Counsel will meet with OTC Plaintiffs' Counsel at a mutually agreeable time and place to provide, over as many days as required to complete the proffers, the following categories of information:

a.      A general description of the U.S. Dollar LIBOR-setting process, including but not limited to the individuals and entities involved, the factors considered in determining Barclays' daily submission, the BBA's rules governing the U.S. Dollar LIBOR-setting process, and the nature of the LIBOR-setting process;

b.      A general description of the over-the-counter market for LIBOR-Based Instruments, including but not limited to information, if any is reasonably accessible, regarding the types of instruments, the notional value of such instruments, Barclays' market share for such

instruments, the market share of other LIBOR panel banks, and competition among banks regarding that market;

c.   A full account of facts known to Barclays that are relevant to the Released Claims, including but not limited to the alleged conduct, if any such facts exist, relating to the manipulation and suppression of U.S. Dollar LIBOR by Barclays and other panel banks, and the individuals and entities involved in the conduct, the specific locations and dates of key meetings or communications relating to the conduct, including actual words exchanged in such communications or meetings and the identifies of the speakers and other participants, and the products and instruments affected by such conduct, and the conduct's effect on Barclays' profitability;

d.   A description, based on reasonably accessible information, of the benefits that Barclays received, intended to receive, or may have received, from manipulating LIBOR;

e.   A description of Barclays' knowledge, if any, of the alleged inter-bank conspiracy to manipulate U.S. Dollar LIBOR, including Barclays' knowledge, if any, of other banks, bank employees, and brokers who may have participated or assisted in efforts to manipulate or conspire to manipulate U.S. Dollar LIBOR, and communications relating thereto;

f.      A description of Barclays' role or participation, if any, in conduct for which RBS and Deutsche Bank were charged with price-fixing in violation of the Sherman Act;

g.      A description of Barclays' internal compliance policies with respect to U.S. Dollar LIBOR, including policies in effect at the time of the alleged conduct and policies enacted prior to June 27, 2013;

h.      To the extent not prohibited by any law, regulation, policy, or other rule of any governmental body protecting disclosure of such information, and absent objection of regulators, the identities and last known contact information of all current and former officers, directors, and employees of Barclays who have been interviewed by any United States or European country governmental body, including but not limited to the U.S. Department of Justice ("DOJ"), U.S. Commodities Futures Trading Commission ("CFTC"), U.S. Securities and Exchange Commission ("SEC"), New York Department of Financial Services ("NYDFS"), United Kingdom Financial Conduct Authority ("FCA"), United Kingdom Serious Fraud Office ("SFO"), European Commission ("EC"), the Japanese Financial Supervisory Agency ("JFSA"), Swiss Financial Market Supervisory Authority ("Swiss FINMA"), the German Federal Financial Supervisory Authority ("BaFin"), the Monetary Authority of Singapore ("MAS"), and the Canadian Competition

39

Bureau ("CCB") investigating alleged manipulative or anticompetitive conduct in, or affecting, the U.S. Dollar LIBOR-setting process;

i.   Absent objection of the regulators, the identification of all individuals who were identified by code names in the papers released by the governmental bodies pertaining to conduct with respect to U.S. Dollar LIBOR;

j.   The identities and last known contact information of all current and former officers, directors, and employees of Barclays who have been disciplined or dismissed by Barclays in connection with U.S. Dollar LIBOR-related conduct;

k.   The identities and relationship to U.S. Dollar LIBOR of employees of Barclays who were interviewed by Barclays, the nature and location of relevant documents collected or reviewed by Barclays in connection with any investigation, the searches performed by Barclays, and the manner in which Barclays maintains and stores documents and other information relevant to the asserted claims; and

l.   Information learned in interviews or testimony that is relevant to the claims asserted in the OTC Action, to the extent such information is reasonably accessible to Barclays, no matter whether such interviews were conducted by or provided to

Barclays, a government body, or someone else, including actual words used during such interviews or testimony.

(iii) **Counsel Inquiries**: Barclays' Counsel will respond to reasonable follow-up inquiries of OTC Plaintiffs' Counsel throughout the duration of this Action or any action related to any Released Claims, including to produce further material, information, and documents relating to U.S. Dollar LIBOR.

(iv) **Transactional Data:**

    a. Barclays will use its reasonable best efforts to produce reasonably requested transactional data related to the subject matter of the OTC Action, including but not limited to transactional data for U.S. Dollar LIBOR transactions entered into or lasting during the Class Period, data reflecting profits from U.S. Dollar LIBOR transactions, and data pertaining to the rates at which Barclays was actually able to borrow funds in the London inter-bank market during the Class Period, to the extent any such data is reasonably accessible.

    b. As soon as possible after the Execution Date, the Parties shall agree on a schedule to meet and confer about production by Barclays of transaction data related to the subject matter of the OTC Action.

    c. Barclays shall use reasonable best efforts to make available its current personnel or in-house experts at reasonable times, to assist

OTC Plaintiffs' Counsel in understanding Barclays' transactional data.

(v)    **Documents:**

    a.  Absent objection by the specific regulator to which documents were produced, within ten (10) business days after the Execution Date, Barclays shall commence preparation for production to OTC Plaintiffs, in a mutually agreeable electronic format, and to the extent not prohibited by any law, regulation, policy, or other rule of any governmental body protecting disclosure of such documents, Barclays shall produce those documents that it has already produced or made available to the DOJ, CFTC, and FSA with respect to their investigations regarding alleged manipulative or anticompetitive conduct in, or affecting, the U.S. Dollar LIBOR-setting process, but not documents created during the course of the investigation for the purpose of communicating with or cooperating with these authorities. For purposes of clarity, the term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A).

    b.  At OTC Plaintiffs' Counsel's written request and explanation, Barclays will use its reasonable best efforts to produce additional

reasonably requested and reasonably accessible documents in a mutually agreeable electronic format; and

c.  For all documents produced by Barclays pursuant to this Agreement that are not in English, Barclays shall provide any certified or uncertified English translations of such documents it has available. Barclays is not obligated to create any new translations of documents for use by OTC Plaintiffs or OTC Plaintiffs' Counsel.

d.  As applicable and upon request, Barclays shall provide a business record or authenticity declaration as to any documents produced by Barclays pursuant to this Settlement Agreement or any other process.

e.  Barclays shall produce to OTC Plaintiffs' Counsel, within one business day after Execution Date, the set of documents that Kenneth Feinberg, who previously acted as mediator in facilitating settlement negotiations between the Parties, identified to OTC Plaintiffs' Counsel as cooperation that Barclays would be willing to provide in consideration of settlement.

(vi)  **Interviews:**

a.  At Barclays' expense, Barclays shall use its good faith efforts to make available for interviews with OTC Plaintiffs' Counsel and/or their experts up to five (5) current Barclays employees designated by OTC Plaintiffs' Counsel.

b. At OTC Plaintiffs' Counsel's request, and for good cause, Barclays will meet and confer regarding additional interviews of current Barclays' employees sought by OTC Plaintiffs' Counsel, but failing agreement, the Parties will seek resolution by the Mediator.

c. Barclays shall use good faith efforts to assist OTC Plaintiffs' Counsel in arranging interviews with former Barclays employees.

(vii) **Declarations and Affidavits:**

a. Subject to a protective order entered by the Court and subject to good cause, Barclays shall use its reasonable best efforts to make available up to ten (10) current Barclays employees designated by OTC Plaintiffs' Counsel for the preparation of declarations and/or affidavits throughout the duration of this Action or any action related to any Released Claims. Notwithstanding the foregoing, Plaintiffs need not demonstrate good cause for declarations and/or affidavits to be used in connection with class certification.

b. At OTC Plaintiffs' Counsel's request and for good cause, Barclays will meet and confer regarding no more than ten (10) additional individuals.

c. Barclays will also use its reasonable best efforts to make current Barclays employees available to provide declarations, certifications, or affidavits regarding the authentication of documents, including their certification as records of a regularly conducted activity pursuant to Federal Rule of Evidence 803(6)

44

(such declarations, certifications, and/or affidavits shall not count towards those permitted pursuant to (a) or (b) above).

(viii) **Depositions:**

    a. Barclays shall use its reasonable best efforts to make available for depositions in the OTC Action or any action related to any Released Claims up to five (5) current Barclays employees designated by OTC Plaintiffs' Counsel.

    b. At OTC Plaintiffs' Counsel's request and for good cause, Barclays will meet and confer regarding additional individuals, but failing agreement, the Parties will seek resolution by the Mediator.

    c. Barclays shall use good faith efforts to assist OTC Plaintiffs' Counsel in arranging depositions with former Barclays employees.

(ix) **Testimony at Trial:**

    a. Barclays shall use its reasonable best efforts to make available for testimony at trial in the OTC Action or any action related to any Released Claims, each of the then-current Barclays employees designated by OTC Plaintiffs' Counsel, who possess information, based on OTC Plaintiffs' Counsel's good faith belief, that would assist Class Plaintiffs in trial of the Class Plaintiffs' claims as alleged in the OTC Action or any action related to any Released Claims.

b.  Barclays shall use good faith efforts to assist OTC Plaintiffs' Counsel in arranging for the appearance of former employees at trial.

(x)  **Continuation, Scope, and Termination of Barclays' Obligation:** Barclays' obligations to cooperate under the Agreement are continuing until and shall terminate upon the later of: (1) the date when final judgment has been rendered, with no remaining rights of appeal, in the OTC Action against all Defendants; or (2) seven (7) years after the Court enters the Preliminary Approval Order.

(xi)  **Mediation:** In the event of a disagreement between Barclays and OTC Plaintiffs' Counsel with respect to any cooperation obligation, the Parties will seek resolution from the Mediator, if necessary.

## 15.  RESERVATION OF CLASS MEMBERS' RIGHTS AGAINST OTHER DEFENDANTS

All rights of any OTC Class Member against other former, current, or future defendants or co-conspirators, or any other Person other than the Released Parties, with respect to any of the Released Claims are specifically reserved by Class Plaintiffs and the OTC Class Members. The purchase, sale, and trading of a U.S. Dollar LIBOR-Based Instrument by Barclays shall, to the extent permitted or authorized by law, remain in the case against the other current or future Defendants in the OTC Action as a potential basis for damage claims and shall be part of any joint and several liability claims against the other former, current, or future Defendants in the OTC Action or any other Persons other than the Released Parties.

16.    **MISCELLANEOUS**

(a)    The Parties to this Agreement intend the settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Class Plaintiffs and any OTC Class Member against the Released Parties with respect to the OTC Action and the Released Claims. Accordingly, Class Plaintiffs and Barclays agree not to assert in any judicial proceeding that the OTC Action was brought by Class Plaintiffs or defended by Barclays in bad faith or without a reasonable basis. The Parties further agree not to assert in any judicial proceeding that any Party violated Federal Rule of Civil Procedure 11. The Parties agree that the amount paid and the other terms of the settlement were negotiated at arm's length in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel and the Mediator.

(b)    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

(c)    The administration and consummation of the settlement as embodied in this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders relating to the Fee and Expense Application, the Plan of Distribution, and enforcing the terms of this Agreement.

(d)    For the purpose of construing or interpreting this Agreement, Class Plaintiffs and Barclays agree that it is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

(e)    This Agreement shall constitute the entire agreement between Class Plaintiffs and Barclays pertaining to the settlement of the OTC Action against Barclays and supersedes any and all prior and contemporaneous undertakings of Class Plaintiffs and Barclays in connection therewith. All terms of this Agreement are contractual and not mere recitals. The terms of this

Agreement are and shall be binding upon each of the Parties hereto, their heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, and upon all other Persons claiming any interest in the subject matter hereto through any of the Parties hereto including any OTC Class Members.

(f)    This Agreement may be modified or amended only by a writing executed by Class Plaintiffs, through OTC Plaintiffs' Counsel, and Barclays, through Barclays' Counsel, subject (if after preliminary or final approval by the Court) to approval by the Court. Amendments and modifications may be made without notice to the Class unless notice is required by law or by the Court.

(g)    Nothing in this Agreement constitutes an admission by Barclays as to the merits of the allegations made in the OTC Action, the validity of any defenses that could be asserted by Barclays, or the appropriateness of certification of any class other than the Class under Federal Rule of Civil Procedure 23 for purposes of settlement only. This Agreement is without prejudice to the rights of Barclays to do either or both of the following:

> (i)    Challenge the Court's certification of any class, including the Class, in the OTC Action should the Agreement not be approved or implemented for any reason; and/or

> (ii)    Oppose any certification or request for certification in any other proposed or certified class action.

(h)    All terms of this Agreement shall be governed by and interpreted according to the substantive laws of New York without regard to its choice-of-law principles.

(i)    Except as provided in Paragraph 11, Barclays, Class Plaintiffs, their respective counsel, and the OTC Class Members hereby irrevocably submit to the exclusive jurisdiction of

the United States District Court for the Southern District of New York for any suit, action, proceeding or dispute arising out of or relating to this Agreement or the applicability of this Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein.

(j)     The Parties acknowledge that this Agreement makes no determination as to which OTC Class Members are entitled to distribution of the Settlement Fund or as to the formula for determining the amounts to be distributed.

(k)     The proposed Plan of Distribution is not a necessary term of this Agreement, and it is not a condition of this Agreement that any particular Plan of Distribution be approved. The Released Parties will take no position with respect to the proposed Plan of Distribution or such Plan of Distribution as may be approved by the Court. The Plan of Distribution is a matter separate and apart from the settlement between the Parties, and any decision by the Court concerning a particular Plan of Distribution shall not affect the validity or finality of the proposed settlement, including the scope of the release.

(l)     This Agreement may be executed in counterparts by Class Plaintiffs and Barclays, and a facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Agreement.

(m)     Class Plaintiffs and Barclays acknowledge that they have been represented by counsel and have made their own investigations of the matters covered by this Agreement to the extent they have deemed it necessary to do so. Therefore, Class Plaintiffs and Barclays and their respective counsel agree that they will not seek to set aside any part of this Agreement on the grounds of mistake. Moreover, Class Plaintiffs and Barclays and their respective counsel understand, agree, and expressly assume the risk that any fact may turn out hereinafter to be

other than, different from, or contrary to the facts now known to them or believed by them to be true, and further agree that this Agreement shall be effective in all respects notwithstanding and shall not be subject to termination, modification, or rescission by reason of any such difference in facts.

(n)      Each of the undersigned attorneys represents that he is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval; and the undersigned OTC Plaintiffs' Counsel represent that they are authorized to execute this Agreement on behalf of Class Plaintiffs. Each of the undersigned attorneys shall use their best efforts to effectuate this Agreement.

## 17.   SIGNATURES

WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives, have agreed to this Agreement as of the date first herein written above.

*OTC Plaintiffs and the Class:*

William C. Carmody
Arun Subramanian
Seth Ard
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, NY 10022
Tel:  212-336-8334
bcarmody@susmangodfrey.com
asubramanian@susmangodfrey.com
sard@susmangodfrey.com

Marc M. Seltzer
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Tel:  310-789-3100
mseltzer@susmangodfrey.com

Michael D. Hausfeld
William P. Butterfield
Hilary K. Scherrer
Nathaniel C. Giddings
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
Tel:  202-540-7200
mhausfeld@hausfeld.com
wbutterfield@hausfeld.com
hscherrer@hausfeld.com
ngiddings@hausfeld.com

*Defendant Barclays Bank plc:*

David H. Braff
Jeffrey T. Scott
Yvonne S. Quinn
Matthew J. Porpora
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Tel:  212-558-4000
braffd@sullcrom.com
scottj@sullcrom.com
quinny@sullcrom.com
porporam@sullcrom.com

Jonathan Schiller
BOIES SCHILLER & FLEXNER LLP
575 Lexington Ave., Seventh Floor
New York, NY 10022
Tel:  212-446-2388
jschiller@bsfllp.com

*OTC Plaintiffs and the Class:*

*Defendant Barclays Bank plc:*

William C. Carmody
Arun Subramanian
Seth Ard
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, NY 10022
Tel: 212-336-8334
bcarmody@susmangodfrey.com
asubramanian@susmangodfrey.com
sard@susmangodfrey.com

Marc M. Seltzer
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Tel: 310-789-3100
mseltzer@susmangodfrey.com

David H. Braff
Jeffrey T. Scott
Yvonne S. Quinn
Matthew J. Porpora
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Tel: 212-558-4000
braffd@sullcrom.com
scottj@sullcrom.com
quinny@sullcrom.com
porporam@sullcrom.com

Michael D. Hausfeld
William P. Butterfield
Hilary K. Scherrer
Nathaniel C. Giddings
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
Tel: 202-540-7200
mhausfeld@hausfeld.com
wbutterfield@hausfeld.com
hscherrer@hausfeld.com
ngiddings@hausfeld.com

Jonathan Schiller
BOIES SCHILLER & FLEXNER LLP
575 Lexington Ave., Seventh Floor
New York, NY 10022
Tel: 212-446-2388
jschiller@bsfllp.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262 |
| THIS DOCUMENT RELATES TO: | Master File No. 1:11-md-2262-NRB ECF Case |
| The OTC Action | |

**ERRATA TO SETTLEMENT AGREEMENT BETWEEN
OTC PLAINTIFFS AND BARCLAYS BANK PLC**

WHEREAS, the Settlement Agreement Between OTC Plaintiffs and Barclays Bank plc was executed on November 11, 2015;

WHEREAS, City of New Britain Firefighters' and Police Benefit Fund ("City of New Britain Fund") was named as one of the Class Plaintiffs in the Agreement;[1]

WHEREAS, the real party in interest to the LIBOR product transactions is the City of New Britain, not the City of New Britain Fund;

WHEREAS, on March 3, 2016, the Court entered an order (ECF No. 1334) substituting the City of New Britain as the named party plaintiff in place of the City of New Britain Fund in the above-captioned litigation;

NOW, THEREFORE, it is agreed, by and among the OTC Plaintiffs (individually and on behalf of the OTC Class) and Barclays, by and through the OTC Plaintiffs' Counsel and Barclays' Counsel, that the City of New Britain is substituted for the City of New Britain Fund

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning ascribed to them in the Settlement Agreement Between OTC Plaintiffs and Barclays Bank PLC, dated November 11, 2015.

1

as a Class Plaintiff in the Agreement.


Dated:  March 8, 2016


*OTC Plaintiffs and the Class:*                    *Defendant Barclays Bank plc:*


*/s/ William C. Carmody*                            */s/ David H. Braff*
William C. Carmody                                 David H. Braff
Arun Subramanian                                   Jeffrey T. Scott
Seth Ard                                           Yvonne S. Quinn
SUSMAN GODFREY L.L.P.                               Matthew J. Porpora
560 Lexington Avenue, 15th Floor                    SULLIVAN & CROMWELL LLP
New York, NY 10022                                 125 Broad Street
Tel:  212-336-8334                                 New York, NY 10004
bcarmody@susmangodfrey.com                         Tel:  212-558-4000
asubramanian@susmangodfrey.com                     braffd@sullcrom.com
sard@susmangodfrey.com                             scottj@sullcrom.com
                                                   quinny@sullcrom.com
Marc M. Seltzer                                    porporam@sullcrom.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Tel:  310-789-3100
mseltzer@susmangodfrey.com


*/s/ Michael D. Hausfeld*                           */s/ Jonathan D. Schiller*
Michael D. Hausfeld                                Jonathan D. Schiller
William P. Butterfield                             BOIES SCHILLER & FLEXNER LLP
Hilary K. Scherrer                                 575 Lexington Ave., Seventh Floor
Nathaniel C. Giddings                              New York, NY 10022
HAUSFELD LLP                                        Tel:  212-446-2388
1700 K Street, NW, Suite 650                        jschiller@bsfllp.com
Washington, DC 20006
Tel:  202-540-7200
mhausfeld@hausfeld.com
wbutterfield@hausfeld.com
hscherrer@hausfeld.com
ngiddings@hausfeld.com