# Exhibit B

**Spreadsheet of Exchange-Based Action Claims Dismissed on Grounds of**
**Personal Jurisdiction Pursuant to *LIBOR IV* and *LIBOR V*[1]**

**Column Entitled: "All Claims that the Parties Agree Survive."** This column identifies all claims that remain in the case at this time against each Panel Bank Defendant named in the Exchange-Based Action (or whether those Defendants did not move on personal jurisdiction grounds). The Court asked the parties to provide "a spreadsheet containing a list of claims that, in accordance with [our general rulings], are dismissed on jurisdictional grounds" in the Exchange-Based Action. *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 2015 WL 6696407, at *20 (S.D.N.Y. Nov. 3, 2015) ("*LIBOR V*"). The parties agree that the Court's requested spreadsheet does not apply to claims dismissed on the merits alone or statute of limitations grounds alone. This spreadsheet therefore does not include claims that, prior to rulings in *LIBOR IV* and *LIBOR V*, were dismissed on the merits or held to be time barred. Defendants reserve the right to argue in the future, if necessary, that claims dismissed on other grounds are also subject to dismissal under the Court's personal jurisdiction holdings. The Claims for Relief in the Exchange Based Action that allege CEA violations are:

> Count 1 – CEA Price Suppression and Trader-Based Manipulation Beginning August 2007[2]
> Count 2 – CEA Price Manipulation from January 2005 through the Beginning of August 2007
> Count 3 – Vicarious Liability for CEA Violations
> Count 4 – Aiding and Abetting CEA Violations

If a claim is listed as "surviving," that does not necessarily mean that the entirety of the claim survives. For example, if a portion of the claim was dismissed on statute of limitation grounds, the spreadsheet does not identify the time periods that survived.

**Column Entitled: "Claims that the Parties Agree Are Dismissed on PJ Grounds (Excludes Claims the Parties Agree Were Dismissed on Merits Alone or Statute of Limitations Grounds Alone)."** This column identifies all claims that the parties agree were dismissed on personal jurisdiction grounds. At this time, Plaintiffs do not believe that any claims were dismissed on personal jurisdiction grounds. The column does not, however, identify claims that to date have been dismissed on merits alone or statute of limitations grounds alone. In the Exchange-Based Action, these include CEA claims that are time barred, antitrust and unjust enrichment claims. *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 935 F. Supp. 2d 666, 685-95, 736-38 (S.D.N.Y. 2014)

---

[1] The chart is based on the operative complaint, the Exchange Plaintiffs' Second Amended Consolidated Class Action Complaint (Dkt. No. 438) (the "SAC").

[2] Count 1 of the SAC asserts claims only up to May 2010, as the putative class period alleged in the SAC is from August 2007 to May 2010. SAC ¶ 1. In their proposed Third Amended Complaint ("PTAC"), Plaintiffs assert CEA claims during a putative class period ending May 31, 2011.

("*LIBOR I*"); *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 27 F. Supp. 3d 447, 471 (S.D.N.Y. 2014) ("*LIBOR III*"). With respect to these claims, Defendants reserve the right to argue at a later date, if necessary, about the applicability of the Court's personal jurisdiction holdings.

**Column Entitled: "Claims in Dispute."** In some instances, the parties disagree about what claims were dismissed on personal jurisdiction grounds. Claims that are in dispute are included in this column.

2

Parties' Positions with Respect to Each Dispute

| Issue | Defendants' Position | Plaintiffs' Position |
|---|---|---|
| 1 | **Claims for Which Plaintiffs Are Not Entitled to Jurisdictional Discovery (Claim Should Be Listed as Dismissed on Personal Jurisdictional Grounds).**<br><br>These are claims where Plaintiffs contend that they are entitled to jurisdictional discovery and, therefore, dismissal of these claims is premature. Plaintiffs have not established a *prima facie* basis for the exercise of personal jurisdiction and accordingly are not entitled to any jurisdictional discovery, both for the reasons set forth in Defendants' letters to the Court on December 10, 2015 (Dkt. No. 1253) and January 28, 2016, (Dkt. No. 1306), and for the reasons the Court cited in denying Direct Action Plaintiffs' request for such discovery (Dkt. No. 1267). Plaintiffs should not be able to delay or avoid dismissal based on unsubstantiated and previously-rejected demands for additional information. The claims should be dismissed forthwith.<br><br>*First*, Plaintiffs claim they require discovery as to where LIBOR was "determined or transmitted." The Court denied a similar request made by Direct Action Plaintiffs in its December 23 order, holding that the question of where a LIBOR submission was determined or transmitted has "one or at most two straightforward answers and does not require the expansive discovery sought by Plaintiffs." (Dkt. No. 1267). The result here should be the same. In any event, defendants have already provided this information in the declarations submitted with their Rule 12(b)(2) motions to dismiss based on personal jurisdiction. (Dkt. No. 977; *see also* Dkt No. 1253 (addressing why defendants have already provided the information sought by Plaintiffs)). | **Claims for Which Plaintiffs Are Entitled to Jurisdictional Discovery (Claim Should Not Be Listed as Dismissed on Personal Jurisdictional Grounds)**<br><br>The Court upheld CEA claims based upon "Persistent Suppression" against Panel Banks, and the Court held that it would uphold personal jurisdiction for these CEA claims against panel banks on the basis of their allegedly false LIBOR submissions "where the LIBOR submission was determined or transmitted." *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 2015 WL 6243526, at *37 (S.D.N.Y. Oct. 20, 2015) (Amended Memorandum and Order) ("*LIBOR IV*").<br><br>In briefing and letters to the Court (Dkt. Nos. 1111, 1285, 1286), Plaintiffs in the Exchange-Based Action ("Exchange Plaintiffs") have requested that certain jurisdiction discovery be allowed regarding where Panel Banks' LIBOR submissions were "determined or transmitted", including the location of all offices from which submissions were made; whether these locations changed over time during the Class Period; and where all bank officials that determined or influenced LIBOR submissions were located. Plaintiffs also seek jurisdictional discovery to determine the location of all persons that requested submitters to manipulate LIBOR, as well as the location of the submitters and the location to which the submitter aimed its conduct or intended an effect on a trading position. To date, the Court has not yet ruled on Plaintiffs' request for jurisdictional discovery.<br><br>The Court's December 23, 2015 discovery order in the re- |

3

lated Direct Action Plaintiffs' Cases (Dkt. No. 1267) further specified that "[w]ith respect to the location from which the LIBOR submission was transmitted or determined, *LIBOR IV* contemplated a geographical response: from what office was the submission made, and/or if the submitter was directed by another bank official, where was that official's office located?" Exchange Plaintiffs need jurisdictional discovery to determine the location of all offices from which submissions were made; whether these locations changed over time during the Class Period; and where all bank officials that determined or influenced LIBOR submissions were located.

The Court also upheld CEA claims based upon "trader-based manipulation" against certain Panel Banks, and the Court held that trader-based manipulation claims involve both the Panel Bank's submitter and the requester who made the request for a submitter to make a false request, it would "uphold personal jurisdiction in the location of the person who requested the submitter to engage in manipulation." *LIBOR IV*, at *38. The Court also held that the requester is subject to personal jurisdiction in the forum containing his office, and personal jurisdictional also "is available in the requester's forum, to which the submitter aimed its conduct and intended an effect, (*i.e.*, bolstering the requester's trading position." *LIBOR IV*, at *32. Exchange Plaintiffs seek jurisdictional discovery to determine the location of all persons that requested submitters to manipulate LIBOR, as well as the location of the submitters and the location to which the submitter aimed its conduct or intended an effect on a trading position.

The Court also upheld Exchange Plaintiffs' CEA claims

Plaintiffs contend further that "Defendants' declarations do not supply all of the information that the Court has stated is relevant under *LIBOR IV* and *LIBOR V*," but this Court has already rejected similar arguments. For example, the Direct Action plaintiffs argued that defendants' declarations were inadequate in a November 23, 2015 letter (Dkt. No. 1242), but the Court rejected this argument on December 23, 2015. (Dkt. No. 1267). For the reasons stated in defendants' January 28, 2016 letter (Dkt. No. 1306), Plaintiffs have failed to articulate any basis for why those prior rulings should be revisited.

*Second*, Plaintiffs' are also not entitled to jurisdictional discovery for their "trader-based manipulation" claims "to determine the location of all persons that requested submitters to manipulate LIBOR." The Court has not authorized Plaintiffs to allege trader-based claims against any defendants other than Rabobank and settling defendant Barclays Bank PLC, and, as to these defendants, has allowed only certain trader-based claims to proceed. *See LIBOR III*, 27 F. Supp.3d at 464 n.9; *cf. In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Civ. 2613 NRB, 2014 WL 6448219, at *3-4 (S.D.N.Y. Nov. 18, 2014) (denying leave to add trader-based claims against Lloyds and Rabobank). But Barclays Bank PLC and Rabobank do not contest jurisdiction as to the specific trader-based claims that the Court has authorized Plaintiffs to assert and, therefore, as to these trader-based claims, discovery is unnecessary. To the extent Exchange Plaintiffs seek discovery from defendants with respect to trader-based claims that have not been adequately alleged, this Court has already determined there is no basis for such claims. Moreover, even if there were any

such basis, Plaintiffs have failed to demonstrate a *prima facie* basis for personal jurisdiction at this time. To the extent they seek discovery with respect to trader-based claims that are still pending adjudication from the Court on Plaintiffs' request for leave to amend and file the Proposed Third Amended Complaint, such a request is premature until the Court resolves the pending request.[3]

*Third*, Plaintiffs are not entitled to jurisdictional discovery "to determine whether a LIBOR requester traded in Eurodollar futures or options" in order "to establish which forum the requester's and submitter's conduct was aimed or intended." This gets the burden backwards. Plaintiffs bear the burden of establishing a *prima facie* case for personal

against Panel Banks based upon aiding and abetting and vicarious liability. *LIBOR I*, 935 F. Supp. 2d 666, 722-23, (S.D.N.Y. 2013). *See also LIBOR IV*, at *49. By engaging in "aid to concealment" conduct with several Panel Banks that are located in the U.S., *i.e.*, JPMorgan, Citibank and Bank of America, all Panel Banks liable for persistent suppression of LIBOR are subject to this Court's jurisdiction. *See also LIBOR IV*, at *50. *See also id.* at *49 ("Because each persistent suppressor needed all (or at least significant number) of the other banks to suppress LIBOR simultaneously in order to avoid immediate detection, each persistent suppressor plausibly bears vicarious liability for harm caused by the others' persistent suppression."). This argument is currently before the Court to determine, *see* Dkt.

---

[3] **Rabobank's Position**: In *LIBOR III*, this Court denied Plaintiffs leave to plead trader-based claims against Rabobank with respect to 14 of the 18 dates in relation to which Plaintiffs seek to plead such claims in the Proposed Third Amended Complaint. *Compare* PTAC at App'x A (alleging trader conduct claims corresponding to 18 dates) *and* Pls.' Supp. Mem. of Law Regarding Rabobank and in Further Support of Their Mot. for Recons. of the Court's Aug. 23, 2013 Mem. and Order, Dkt. No. No. 523 at 3 (seeking to allege trader conduct claims with respect to same 18 dates) *with LIBOR III*, 27 F. Supp. 3d at 464 n.9 (authorizing Plaintiffs to allege trader conduct claims against Rabobank corresponding to only four of the 18 dates: June 30, August 17, September 1 and November 29, 2006). Rabobank does not contest personal jurisdiction with respect to the four specific trader-based claims the Court has authorized Plaintiffs to assert — claims corresponding to alleged trader conduct on June 30, August 17, September 1, and November 29, 2006. As set forth in Defendants' letters of December 15, 2015 (Dkt. No. 1259), and January 28, 2016 (Dkt. No. 1306), however, Rabobank has *not* conceded personal jurisdiction with respect to other trader-based claims. Following *LIBOR III*, Rabobank moved to dismiss the Exchange-Based Action in its entirety "[e]xcept as to claims for relief under the [CEA] based on alleged conduct in the January 2005 through August 2007 period that is the subject of plaintiffs' Second Claim for Relief" (Dkt. No. 966-1 at 4 n.7). At the time that motion to dismiss was filed, the *only* trader-based claims remaining against Rabobank that were the subject of Plaintiffs' Second Claim for Relief were those the Court authorized in *LIBOR III*—namely, claims corresponding to alleged trader conduct on June 30, August 17, September 1 and November 29, 2006. Accordingly, the only claims with respect to which Rabobank did not contest personal jurisdiction were claims relating to those four specific dates.

**Plaintiffs' Position**: Plaintiffs disagree with Rabobank's position, as set forth in their letter briefs filed on January 5, 2016 [Dkt. No. 1286] and February 25, 2016 [Dkt. No. 1328]. Plaintiffs incorporate by reference their responses to Rabobank's arguments in their prior submissions. Plaintiffs CEA claims are not and should not be limited to dates of trader-based manipulation reflected in government settlements.

jurisdiction, *i.e.*, pleading that foreign defendants "purposefully directed [their] allegedly wrongful activities toward the United States." *LIBOR V*, at *19. Plaintiffs have not done so.

*Fourth*, apart from the question of jurisdictional discovery, Plaintiffs suggest that dismissal on personal jurisdiction grounds of their CEA claims based on a theory of aiding and abetting or vicarious liability would somehow be inconsistent with the Court's decision in *LIBOR I* that Plaintiffs adequately alleged those claims. 935 F. Supp. at 721-23. But *LIBOR V* affirmed that "the scienter necessary, as a matter of substantive law, to plead a violation of the CEA does not rise to the level of purposeful direction by the defendants of their allegedly wrongful conduct to the United States." *LIBOR V*, at *19. That is, stating a CEA claim is not sufficient to show purposeful availment of the forum, as required to establish personal jurisdiction, which Plaintiffs have not done.

No. 1286, and for this reason it is premature to dismiss the aiding and abetting suppression claims.

Exchange Plaintiffs also seek jurisdictional discovery to determine whether bank affiliates or subsidiaries based in the U.S. engaged in aiding and abetting of Panel Banks' alleged false LIBOR submissions in violation of the CEA.

As stated in their letter of January 5, 2016 (Dkt. No. 1286), Exchange Plaintiffs are not in a position, without jurisdictional discovery, to state whether CEA claims based on persistent suppression, trader-based manipulation, aiding and abetting and/or vicarious liability against the Panel Banks that are challenging this Court's jurisdiction are dismissed or upheld on jurisdictional grounds. Before discovery, a plaintiff need only allege facts that support (not prove) a *prima facie* basis for jurisdiction. *See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). At a minimum, Exchange Plaintiffs' CEA allegations are sufficient to entitle them to conduct discovery regarding where the Panel Banks' suit-related conduct actually occurred.

Exchange Plaintiffs will meet and confer with Defendants regarding their belief that Defendants' declarations do not supply all of the information that the Court has stated is relevant under *LIBOR IV* and *LIBOR V*. For example, Citibank has declared that its LIBOR submissions were made by employees in London (Dkt. No. 763, ¶4), but as set forth in Exchange Plaintiffs' January 5, 2016 letter, there is recently disclosed evidence of internal communications between Andrew Thursfield, Citigroup's London-based head of European risk treasury desk, and Scott Bere, the New York-based head of Citibank's North American Treasury

unit, and internal communications between Citi's LIBOR submitter and a New York-based Senior U.S. Dollar Trader to determine Citibank's LIBOR submissions.

In addition, Exchange Plaintiffs seek jurisdictional discovery to determine whether a LIBOR requester traded in Eurodollar futures or options, or other positions linked to the same IMM fixes to which Eurodollar futures and options settle because that will help to establish which forum the requester's and submitter's conduct was aimed or intended.

**Exchange Plaintiffs' PTAC Enhances Allegations Against Existing Defendants and Adds CEA Claims Against New Defendants that Support Personal Jurisdiction.**

Plaintiffs' PTAC meets the standards set forth in *LIBOR IV* and *LIBOR V* to state a *prima facie* basis for personal jurisdiction against Defendants. The PTAC asserts new trader-based allegations against Deutsche Bank, RBC, HSBC, Lloyds, HBOS, Bank of Scotland and RBS. The PTAC sets forth in detail chats that make it clear that Deutsche Bank employees in their New York office made *regular* requests that their London counterparts manipulate LIBOR. The PTAC alleges that Merrill Lynch International derivatives trader, Stylianos Contogoulas, conspired with and communicated requests for preferential LIBOR submissions to Barclays and RBC-affiliated traders in New York, which were then acted upon by affiliated Panel Banks.

The PTAC alleges that Royal Bank of Scotland plc and Credit Suisse AG are the proper USD LIBOR Panel Bank members, and Plaintiffs will meet and confer with Defendants to reach a stipulated agreement on this issue.

---

2 | **Exchange Plaintiffs' Reliance on the Proposed Third Amended Complaint ("PTAC") Is Improper.** Exchange Plaintiffs' PTAC is irrelevant for the purposes of this spreadsheet. In *LIBOR V*, the Court directed Exchange Plaintiffs and Defendants to provide a list of claims dismissed on jurisdictional grounds. *LIBOR V*, at *20. Plaintiffly, the Court's instruction can only pertain to the operative SAC, not the PTAC.

Even if the Court were to consider Exchange Plaintiffs' PTAC, for the reasons stated in Defendants' January 28, 2016 letter to the Court (Dkt. No. 1306), Exchange Plaintiffs' new trader-based allegations fail to establish a *prima facie* basis for personal jurisdiction over any claims other than specific trader-based claims arising out of an alleged request to manipulate LIBOR originating in New York. *See also* Opposing Defendants' December 15, 2015 letter (Dkt. No. 1259).

Similarly, as explained in greater detail in Defendants' January 28, 2016 letter to the Court (Dkt. No. 1306), Plaintiffs also fail to establish that Credit Suisse AG, Rabobank, Deutsche Bank AG, HBOS plc, RBS, Lloyds, Portigon AG,

BTMU, and Norinchukin Bank consented to general jurisdiction by registering with the New York State Department of Financial Services. The Second Circuit in *Brown v. Lockheed Martin Corp.*, ___ F. 3d ___, 2016 WL 641392 (2d Cir. Feb. 18, 2016), recently held that a Connecticut state statute with language that was "unclear" as to whether it purported to confer general jurisdiction should be construed as conferring only specific jurisdiction. 2016 WL 641392, at *14-15. As explained more fully in defendants' February 22, 2016 notice of supplemental authority (Dkt. No. 1324), the Second Circuit's holding applies with even greater force to the state statute at issue here, New York Banking Law § 200, which expressly limits any consent based on appointment of the Superintendent of Banking as agent for service of process only to "cause[s] of action *arising out of a transaction with [a defendant's] New York agency or agencies or branch or branches.*" N.Y. Banking Law § 200(3) (emphasis added); *see, e.g., 7 W. 57th St. Realty Co. v. Citigroup, Inc.*, No. 13 Civ. 981, 2015 WL 1514539, at *11 (S.D.N.Y. Mar. 31, 2015) (Gardephe, J.) ("The plain language of [§ 200] limits any consent to personal jurisdiction by registered banks to *specific* personal jurisdiction."). Plaintiffs' reading of § 200 also violates each foreign defendant's due process rights. *See Brown*, 2016 WL 641392, at *4-5 (holding that Defendant did not consent to jurisdiction in Connecticut by registering under Conn. Gen. Stat. §33-920 because "to accord a broader effect of the Connecticut registration and agent-appointment statute would implicate Due Process and other constitutional concerns."). Finding that a license to operate a bank branch constitutes consent to general jurisdiction would be contrary to the Second Circuit's ruling in *Gucci America, Inc. v. Li*, 768 F.3d 122 (2d Cir. 2014), which held that a foreign bank is not subject to gen-

The PTAC also supports personal jurisdiction over Rabobank, Deutsche Bank, RBS, Lloyds, BTMU and Norinchukin. By registering with the New York State Department of Financial Services ("NYSDFS"), these Panel Banks have consented to jurisdiction. Plaintiffs have provided a sufficient showing of jurisdiction for each of these Panel Banks based upon their consent. *See Vera v. Republic of Cuba*, 91 F. Supp. 3d 561, 570-71 (S.D.N.Y. 2015); *Beach v. Citigroup Alternative Invs. LLC*, No. 12 CIV. 7717 (PKC), 2014 WL 904650, at *6-7 (S.D.N.Y. Mar. 7, 2014) (holding that consent by registering as a foreign corporation and designating a local agent is an independent basis for jurisdiction, separate from general jurisdiction analysis); *Matter of B&M Kingstone, LLC v. Mega Intl. Commercial Bank Co., Ltd.*, 131 A.D.3d 259, 15 N.Y.S.3d 318 (1st Dep't 2015) (by registering a branch under § 200, a bank consents to jurisdiction for any action). *See also Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 137 (2d Cir. 2014) (on remand "the district court may also consider whether [the defendant] has consented to personal jurisdiction in New York by applying for authorization to conduct business in New York and designating the New York Secretary of State as its agent for service of process.").

The Court should grant Exchange Plaintiffs leave to file their PTAC prior to making personal jurisdiction determinations. *See Laydon v. Mizuho Bank, Ltd.*, No. 12 Civ. 3419 (GBD), 2015 WL 1515487 (S.D.N.Y. Mar. 31, 2015) (allowing amendment of complaint to add Tullett Prebon PLC, ICAP Europe Ltd. and Lloyds Banking Group PLC as defendants in Yen LIBOR class action); *Danaher Corp. v. Travelers Indem. Co*, No. 10 Civ. 0121 (JPO) (JCF), 2013 WL 150027, at *6 (S.D.N.Y. Jan. 10, 2013); *Cantone & Co.*

8

eral jurisdiction due to the presence of a local branch of the foreign bank in the forum. *Id.* at 135; *see Motorola Credit Corp. v. Uzan*, 2015 WL 5613077, at *2 (S.D.N.Y. Sept. 9, 2015) (concluding that a finding that registration under § 200 constitutes consent to jurisdiction "would directly contradict *Gucci*"). Plaintiffs' reading also implicates the unconstitutional conditions doctrine by requiring defendants to surrender their constitutional rights under *Daimler* and *Gucci* to receive a government benefit (*i.e.*, the privilege of registering a bank branch in New York) and should be rejected to avoid the constitutional issue.

*v. Seafriga*, No. 07 Civ. 6602 (PKL), 2010 WL 1488014, at *4 (S.D.N.Y. Apr. 12, 2010) (permitting amendment and deferring factual determinations regarding personal jurisdiction); *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08 Civ. 9116 (PGG), 2009 WL 1357946 at *5 (S.D.N.Y. May 12, 2009) ("[W]ith respect to (Defendant's) concerns about personal jurisdiction [over proposed defendant], this Court need not resolve this issue pre-amendment"). On February 25, 2016, [Dkt. No. 1328], Plaintiffs responded to Defendants' letter dated January 28, 2016 [Dkt. No. 1306], and Defendants' letter providing supplemental authority dated February 22, 2016 [Dkt. No. 1324]. Plaintiffs incorporate herein the arguments set forth in their prior submissions.

*FTC Capital Gmbh et al. v. Credit Suisse Group, et al., No. 11-cv-2613 S.D.N.Y.*

| Defendant | Claims that the Parties Agree Are Dismissed on PJ Grounds (Excludes Claims the Parties Agree Were Dismissed on Merits Alone or Statute of Limitations Grounds Alone) | All Claims that the Parties Agree Survive | Claims in Dispute |
|---|---|---|---|
| Bank of America Corp. | Not moving on PJ grounds | Not moving on PJ grounds | Not applicable |
| Bank of America, N.A. | Not moving on PJ grounds | Not moving on PJ grounds | Not applicable |
| Barclays Bank PLC | Not moving on PJ grounds | Not moving on PJ grounds | Not applicable |
| BTMU | None | None | Counts 1-4 (Issues 1, 2) |
| Citibank, N.A. | Not moving on PJ grounds | Not moving on PJ grounds | Not applicable |
| Citigroup, Inc. | Not moving on PJ grounds | Not moving on PJ grounds | Not applicable |
| CSGAG | None | None | Counts 1-4 (Issues 1, 2) |
| Deutsche Bank AG | None | None | Counts 1-4 (Issues 1, 2) |
| HBOS PLC | None | None | Counts 1-4 (Issues 1, 2) |
| HSBC Bank PLC | None | None | Counts 1-4 (Issues 1, 2) |
| HSBC Holdings PLC | None | None | Counts 1-4 (Issues 1, 2) |
| JP Morgan Chase & Co. | Not moving on PJ grounds | Not moving on PJ grounds | Not applicable |
| JP Morgan Chase Bank, N.A. | Not moving on PJ grounds | Not moving on PJ grounds | Not applicable |
| Lloyds Banking Group plc | None | None | All Counts (Issues 1, 2) |
| Lloyds TSB Bank PLC | None | None | Counts 1-4 (Issues 1, 2) |
| Norinchukin Bank | None | None | Counts 1-4 (Issues 1, 2) |
| Portigon AG  (f/k/a WestLB AG) | None | None | Counts 1-4 (Issues 1, 2) |

10

| | | | | *FTC Capital Gmbh et al. v. Credit Suisse Group, et al.*, No. 11-cv-2613 S.D.N.Y. |
|---|---|---|---|---|
| **Defendant** | | **Claims that the Parties Agree Are Dismissed on PJ Grounds (Excludes Claims the Parties Agree Were Dismissed on Merits Alone or Statute of Limitations Grounds Alone)** | **All Claims that the Parties Agree Survive** | **Claims in Dispute** |
| Rabobank | | None | Count 2 – CEA Violation Between January 2005 and August 2007[4] Count 3 – Vicarious Liability for CEA Violations[5] | Counts 1, 4 (Issues 1, 2) Counts 2, 3 (all other claims) (Issues 1, 2) |
| Royal Bank of Canada | | None | None | Counts 1-4 (Issues 1, 2) |
| RBS Group plc | | None | None | Counts 1-4 (Issues 1, 2) |
| UBS AG | | Not moving on PJ grounds | Not moving on PJ grounds | Not applicable |
| Westdeutsche Immobilien Bank AG | | None | None | Counts 1-4 (Issue 1) |

---

[4] **Rabobank's Position**: To the extent premised on claims of alleged trader conduct on June 30, 2006, August 17, 2006, September 1, 2006, and November 29, 2006 — the only trader conduct claims against Rabobank the Court has authorized Exchange-Based Plaintiffs to add to their complaint. *See LIBOR III*, 27 F. Supp.3d 447, 464-65 (S.D.N.Y. 2014).

**Plaintiffs' Position**: Plaintiffs disagree with Rabobank's position, as set forth in their letter briefs filed on January 5, 2016 [Dkt. No. 1286], and February 25, 2016 [Dkt. No. 1328]. Plaintiffs incorporate by reference their responses to Rabobank's arguments in their prior submissions. Plaintiffs CEA claims are not and should not be limited to dates of trader-based manipulation reflected in government settlements.

[5] **Rabobank's Position**: To the extent premised on claims of alleged trader conduct on June 30, 2006, August 17, 2006, September 1, 2006, and November 29, 2006 — the only trader conduct claims against Rabobank the Court has authorized Exchange-Based Plaintiffs to add to their complaint. *See LIBOR III*, 27 F. Supp.3d 447, 464-65 (S.D.N.Y. 2014).

**Plaintiffs' Position**: Plaintiffs disagree with Rabobank's position, as set forth in their letter briefs filed on January 5, 2016 [Dkt. No. 1286] and February 25, 2016 [Dkt. No. 1328]. Plaintiffs incorporate by reference their responses to Rabobank's arguments in their prior submissions. Plaintiffs CEA claims are not and should not be limited to dates of trader-based manipulation reflected in government settlements.

11

12