```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
In re:

LIBOR-Based Financial Instruments        MEMORANDUM AND
Antitrust Litigation.                        ORDER

This Document Applies to:                11 MD 2262 (NRB)

THE FEDERAL HOME LOAN MORTGAGE
CORPORATION,

                    Plaintiff,

         - against -                     13 Civ. 3952 (NRB)

BANK OF AMERICA CORPORATION; BANK OF
AMERICA, N.A.; BARCLAYS BANK PLC; BRITISH
BANKERS' ASSOCIATION; BBA ENTERPRISES,
LTD; BBA LIBOR, LTD; CITIGROUP, INC.;
CITIBANK, N.A.; COÖPERATIVE CENTRALE
RAIFFEISEN BOERENLEENBANK, B.A.; CREDIT
SUISSE GROUP AG; CREDIT SUISSE
INTERNATIONAL; DEUTSCHE BANK AG; HSBC
HOLDINGS PLC; HSBC BANK USA, N.A.; J.P.
MORGAN CHASE & CO.; J.P. MORGAN CHASE
BANK, N.A.; LLOYDS BANKING GROUP, PLC;
LLOYDS TSB BANK PLC; HBOS PLC; SOCIÉTÉ
GÉNÉRALE; THE NORINCHUKIN BANK; ROYAL
BANK OF CANADA; THE ROYAL BANK OF
SCOTLAND GROUP PLC; THE ROYAL BANK OF
SCOTLAND PLC; THE BANK OF TOKYO-
MITSUBISHI UFJ, LTD; UBS AG; WESTLB AG;
and PORTIGON AG,

                    Defendants.
------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

In <u>LIBOR IV</u>, this Court addressed the motions to dismiss the complaints of plaintiffs who do not seek to represent classes or become class members. That opinion analyzed, <u>inter</u>

1

alia, defendants' arguments regarding the timeliness of plaintiffs' claims, which this Court had previously addressed at length, and regarding personal jurisdiction, which we addressed for the first time.  The Federal Home Loan Mortgage Corporation ("Freddie Mac") seeks reconsideration of two aspects of our decision in LIBOR IV.  First, Freddie Mac argues that this Court overlooked certain allegations, and incorrectly imputed to Freddie Mac other allegations, that led this Court to improperly hold that its fraud claims arising before March 14, 2011 were time-barred.  Second, according to Freddie Mac, this Court overlooked facts regarding defendants' course of dealing with Freddie Mac in mortgage-backed securities and mortgage loans that support the exercise of personal jurisdiction over those defendants.  For the reasons stated below, Freddie Mac's motion is denied, except for our finding that this Court has personal jurisdiction over defendants Bank of America, N.A., Barclays Bank, plc, Citibank, N.A., and JPMorgan Chase Bank, N.A. for fraud claims related to the sale of mortgage loans.

**I.   Legal Standard**

"Reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  In re Initial Pub. Offering Sec. Litig., 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005) (internal quotation marks omitted).  The moving party must identify "an

2

intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted).  "A motion seeking such relief is addressed to the sound discretion of the district court . . . ." Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009) (internal quotation marks omitted).

**II. Statute of Limitations**

This Court first addressed statute of limitations arguments in LIBOR I. 935 F. Supp. 2d 666, 697-713 (S.D.N.Y. 2013). In that decision, we held that numerous articles and a report referenced in those articles placed the Exchange-Based Plaintiffs on inquiry notice of their injury on May 29, 2008, and that claims arising between August 2007 and that date were therefore time-barred. Id. at 695, 712. In LIBOR III, we extended that holding, and found that the Commodities Exchange Act claims arising after the Exchange-Based Plaintiffs were on inquiry notice, but more than two years before the filing date, were similarly untimely. 27 F. Supp. 3d 447, 471-77 (S.D.N.Y. 2014). In LIBOR IV, we analyzed the statute of limitations and the "discovery rules" of eleven different jurisdictions and applied them to the individual plaintiffs' claims. We characterized the rule postponing accrual of fraud claims in

3

Virginia, where Freddie Mac filed suit, as a "weak inquiry notice" rule: the statute of limitations begins to run when "the plaintiff discovers, or when a reasonably diligent plaintiff would discover, facts sufficient to state a claim."  LIBOR IV, No. 11 MD 2262, 2015 WL 6243526, at *126, 2015 U.S. Dist. LEXIS 147561, at *418 (S.D.N.Y. Oct. 20, 2015).

Applying this rule to Freddie Mac, we held that fraud claims arising before March 14, 2011 — two years before it filed its complaint — were untimely.  Id., 2015 WL 6243526, at *170, 2015 U.S. Dist. LEXIS 147561, at *523.  We came to this conclusion because (1) the statute of limitations for fraud in Virginia runs for two years; (2) we held that owners of instruments other than Eurodollar futures contracts might not have closely followed LIBOR-related news, and therefore might not have discovered the articles relied upon in our analysis in LIBOR I; (3) however, Freddie Mac's complaint did show that it was aware of the British Bankers' Association's (the "BBA") responses to allegations of LIBOR manipulation that appeared in the press between April and August 5, 2008, which would have caused a reasonable investor to ask what those statements were responding to, and a brief search would have alerted it to criticism of the LIBOR submission process.  Id., 2015 WL 6243526, at *14, *134, *135, *170, 2015 U.S. Dist. LEXIS 147561, at *121, **432-36, *523.  Therefore, we determined that Freddie

4

Mac was on inquiry notice by August 5, 2008.  Id., 2015 WL 6243526, at *170, 2015 U.S. Dist. LEXIS 147561, at *523. Because "it would have taken one year, at the very most, for a sophisticated investor to discover that he had been injured by the panel banks' LIBOR suppression," we held that Freddie Mac's claims began to run on August 5, 2009, more than two years before it filed its complaint.[1]  Id., 2015 WL 6243526, at *135, *170, 2015 U.S. Dist. LEXIS 147561, at **434-35, *523.

Freddie Mac argues that this Court improperly applied the analysis of the Exchange-Based Plaintiffs' claims to Freddie Mac's fraud claims by overlooking facts alleged by Freddie Mac that the Exchange-Based Plaintiffs did not include in their complaint, and by imputing to Freddie Mac facts that the Exchange-Based Plaintiffs, but not Freddie Mac, alleged.  Thus, according to Freddie Mac, its complaint properly alleges that it was not on inquiry notice of its injury until Barclays PLC, Barclays Bank PLC, and Barclays Capital Inc. settled with various regulators in June of 2012, fewer than two years before it filed its complaint.  None of Freddie Mac's arguments in the

---

[1] While Freddie Mac argues that it should only be held to the diligence expected of a reasonable person and not that of a sophisticated investor, Virginia law looks to the diligence exercised by "a reasonable and prudent man under the particular circumstances; not measured by any absolute standard, but depending on the relative facts of the special case."  STB Mktg. Corp. v. Zolfaghari, 393 S.E.2d 394, 397 (Va. 1990) (internal quotation marks omitted).  Here, Freddie Mac engaged regularly in LIBOR-linked transactions and, as its complaint acknowledges, followed, at least to some extent, LIBOR-related news.  We think it is appropriate to expect it to undertake the modest investigation outlined in LIBOR IV upon learning of possible LIBOR manipulation.

5

instant motion convinces us that we erred in analyzing Virginia's statute of limitations and accompanying discovery rule.

Freddie Mac contends that "objective evidence" showed that reasonable investors did not suspect that defendants manipulated LIBOR. First, Freddie Mac argues that the precipitous fall in Barclays' stock price after it entered into settlements with regulators shows that reasonable investors did not suspect LIBOR manipulation. This argument mixes apples and oranges: that the disclosure caused the stock price decline does not dictate when Freddie Mac was on inquiry notice of possible LIBOR suppression. Second, the other piece of "objective evidence" that Freddie Mac points to — former Chairman of the Federal Reserve Alan Greenspan's statement that he did not think that bankers would have misrepresented LIBOR — is no such thing. That one might have, at some point, reasonably thought that banks would not manipulate LIBOR does not suggest what one might believe in the face of widespread skepticism of the LIBOR submission process.

Next, Freddie Mac argues that this Court overlooked several statements by the BBA, defendants, and third parties that would have led a reasonable person to believe their plausible explanations for LIBOR's behavior during the financial crisis. But LIBOR IV squarely considered the "responses [to the LIBOR-related articles published in Spring 2008] that the BBA and

6

banks published through August 5, 2008," and found that, upon reading those statements, "a reasonable investor would have asked what the BBA was responding to, and would have almost immediately discovered the barrage of news articles criticizing LIBOR."  2015 WL 6243526, at *134, 2015 U.S. Dist. LEXIS 147561, at *433.  Therefore, we held that plaintiffs who relied on these responses were on inquiry notice of their injury by August 5, 2008, and that a diligent investigation would have allowed such plaintiffs, including Freddie Mac, to state a claim by August 5, 2009.  Id., 2015 WL 6243526, **134-35, *170, 2015 U.S. Dist. LEXIS 147561, at **433-35, *523.  Freddie Mac's additional allegations that the BBA had an incentive to root out misconduct by members of the LIBOR panel does not alter our conclusion. Given the widespread reporting on potential irregularities in LIBOR submissions — reporting that a reasonable person in Freddie Mac's position would have found — any perceived incentives to maintain the integrity of LIBOR would not have led a reasonable person to ignore the multitude of criticisms of the LIBOR submission process.  Further, statements by regulators in Spring 2008 — months before Freddie Mac was on inquiry notice of its injury — that "it is difficult to find convincing evidence of actual misreporting," Samuel Cheun & Matt Raskin, Recent Concerns Regarding LIBOR's Credibility, MarketSource (May 20, 2008), available at http://www.newyorkfed.org/newsevents/news/-

7

markets/2012/libor/MarketSource_Report_May202008.pdf (emphasis added), do not change the analysis:[2] the relevant questions is when could Freddie Mac have stated, not proven, a claim.[3]

Relatedly, the argument that Freddie Mac could not have stated a claim until it obtained direct evidence of fraud must fail. Owens v. DRS Automobile Fantomworks, Inc., the sole case Freddie Mac cites for this proposition, does not convince us otherwise. 764 S.E.2d 256 (Va. 2014). In that case, the Virginia Supreme Court reviewed the sufficiency of evidence necessary to raise a disputed issue of fact at trial. Id. at 260. The Court held that, because "the plaintiff is bound by so much of the testimony of the defendant as is clear, reasonable and uncontradicted" when the plaintiff calls the defendant as a witness, the trial court properly struck the plaintiff's weak circumstantial evidence used to contradict the defendant's testimony. Id. at 259-60 (emphasis and internal quotation marks omitted). Such a holding clearly does not even implicate the

---

[2] Nor does a lack of public regulator action from 2008 until UBS disclosed in its Form 20-F that the Commodity Futures Trading Commission (the "CFTC"), Securities and Exchange Commission, and the Department of Justice had issued it subpoenas dissipate inquiry notice, a claim implicitly rejected in LIBOR I. See 935 F. Supp. 2d 666, 704 (S.D.N.Y. 2013) (finding Exchange-Based Plaintiffs on inquiry notice prior to announcement of investigations of UBS). A reasonable investor would not conclude from silence that no investigation of any kind was ongoing. Further, the CFTC began its investigation in 2008, a fact that strongly supports our holdings that plaintiffs were placed on inquiry notice that year.

[3] Freddie Mac also argues that we must accept as true and credible the self-serving statement of the former head of the United Kingdom's Financial Services Authority that regulators could not have identified the allegedly manipulative conduct of the banks during the financial crisis. However, we need not accept as true conclusory allegations. Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009).

allegations sufficient to successfully state a fraud claim in a complaint.

Freddie Mac also contends that in determining that a plaintiff could have properly stated a claim for fraud in 2009, this Court relied on facts that Freddie Mac did not include in its complaint. In LIBOR IV, we determined a reasonably diligent investigation would take at most a year to uncover enough information to state a claim because "[a]ll that a prospective plaintiff needed to do was to download the banks' LIBOR submissions (which were publicly available) and compare the banks' reported credit spreads to public data regarding the banks' credit, or to compare published LIBOR to other indices" in order to plead injury, and that by alleging the reputational motive "thoroughly explained" in the LIBOR-related articles, a prospective plaintiff would have been able to plead scienter. 2015 WL 6243526, *135, 2015 U.S. Dist. LEXIS 147561, at **435-36. According to Freddie Mac, however, it was improperly charged with knowledge of LIBOR's divergence from other indices and the banks' reputational motive, because its complaint did not plead these facts, and therefore this Court could not rely on their truth. This argument misunderstands LIBOR IV. Freddie Mac is charged with knowledge of the articles that it would have quickly uncovered had it begun an investigation after learning of the statements of the BBA, defendants, and third-party

9

regulators.  LIBOR IV did not pass on the truth of these articles and the statements contained within them, but found that they provided a good-faith basis for a prospective plaintiff to bring a viable fraud claim.  Whether Freddie Mac pleaded such facts is irrelevant to the analysis.

Finally, Freddie Mac contends that a reasonable investigation would not have uncovered defendants' alleged fraud until Barclays entered into its settlements.  In support of this proposition, Freddie Mac points to the statement of the former head of the CFTC, Gary Gensler, that "[i]t took 20 months before [they] had actionable evidence" of LIBOR manipulation, and Lloyds and HBOS' representations that they did not find evidence of manipulation until 2010.  However, whatever evidence the CFTC thought it needed to have does not impact when a typical civil plaintiff could have stated a claim in order to survive a motion to dismiss.  Further, the document Freddie Mac cites for the latter proposition shows that the Financial Conduct Authority only asked Lloyds to investigate misconduct in 2010 — that Lloyds uncovered the alleged manipulation the same year a regulator asked it to investigate hardly supports the argument that a reasonable investigation would not have uncovered sufficient facts to properly plead a fraud claim.

### III. Personal Jurisdiction

In LIBOR IV, we upheld personal jurisdiction in plaintiffs' home forums for contract, unjust enrichment, and fraud in the inducement claims relating to over-the-counter swaps, because the ISDA Agreements that formed the basis of those transactions "were individually negotiated by plaintiffs with the counterparty defendants," but found that "there is no basis to infer that issuers of broadly-traded securities such as bonds and [mortgage-backed securities ("MBS")] purposely directed those securities into plaintiffs' home forums." 2015 WL 6243526, at *31, 2015 U.S. Dist. LEXIS 147561, at **168-69. Further, we upheld on the merits claims related to MBS only against the issuer, and not against other bond counterparties such as the underwriters, brokers, and dealers. Id., 2015 WL 6243526, at *75, 2015 U.S. Dist. LEXIS 147561, at *291. Freddie Mac asserts that this Court overlooked allegations that, it argues, make out a prima facie case of personal jurisdiction against all defendants regarding its bond claims. Specifically, Freddie Mac argues that its unique status as a purchaser of these products, and defendants' knowledge of this status, served as the basis of a course of dealing with defendants more significant than its swap transactions with defendants.

However, "mere foreseeability does not confer personal jurisdiction," id., 2015 WL 6243526, at *20, 2015 U.S. Dist.

11

LEXIS 147561, at *137, and the impersonal sale of a large number of MBS does not transform the analysis. Nor does it particularly distinguish Freddie Mac from other plaintiffs, who also engaged in bond transactions in the billions of dollars. See, e.g., Am. Compl., Ex. B, ECF No. 669 (showing Core Taxable Money Market Fund's bond transactions with defendants totaling billions of dollars). Further, Freddie Mac's complaint provides no basis whatsoever to exercise personal jurisdiction over defendants regarding MBS transactions: not only is there no description as to what role any defendant played any sale, and therefore no indication as to whether such claims can survive on the merits, but there is no description of any MBS transactions whatsoever, or even a suggestion of which defendants in fact sold these products to Freddie Mac. Without any facts tending to show that defendants possess contacts with Virginia, Freddie Mac has not stated a prima facie case of personal jurisdiction. Pace Freddie Mac, a bare statement that "bank defendants" sold it MBS, without any further elaboration, does not suffice.

However, we agree with Freddie Mac that the sale of mortgage loans by defendants Bank of America, N.A., Barclays Bank, plc, Citibank, N.A., and JPMorgan Chase Bank, N.A. supports the exercise of personal jurisdiction. Freddie Mac alleges that these defendants regularly contacted Freddie Mac to sell mortgage loans, and did in fact sell it millions of such

12

loans.  We think this conduct represents "a course of dealing with [Freddie Mac] in [Virginia] over time," LIBOR IV, 2015 WL 6243526, at *31, 2015 U.S. Dist. LEXIS 147561, at *168, and notably, defendants do not seriously contend otherwise.  Rather, they make two principal arguments.  First, defendants argue that this Court should not consider this argument, as Freddie Mac did not contend in the initial round of briefing that its unique status entered into the jurisdictional analysis or that the sale of mortgage loans supported specific personal jurisdiction over defendants.  However, the Declaration of Freddie Mac's associate general counsel filed contemporaneously with its brief specifically noted that these defendants contacted Freddie Mac in order to sell it loans and Freddie Mac cited this particular point in support of its argument regarding specific personal jurisdiction.  Second, defendants argue that we should apply our analysis holding that the entities affiliated with Charles Schwab Corp. could not bring fraud claims based on the payment of an artificial price for adjustable-rate bonds to Freddie Mac.  In LIBOR IV, we held that because the price of a bond is the present discounted value of future payment streams, bond purchases during any period of LIBOR suppression lowered the price of the bonds and that fraud claims based on an inflated purchase price failed.  2015 WL 6243526, at *70, 2015 U.S. Dist. LEXIS 147561, at **277-78.  Here, however, Freddie Mac contends

13

that it received depressed payments as a result of LIBOR suppression, and so even if it received a benefit in the purchase price of the mortgage loans, the alleged suppression could still plausibly have harmed Freddie Mac.[5] See id., 2015 WL 6243526, at *112, 2015 U.S. Dist. LEXIS 147561, at **381-82 (describing measure of damages for fraud in the inducement claims).

## CONCLUSION

For the reasons stated above, Freddie Mac's motion for reconsideration or reargument is denied, except for our finding that this Court has personal jurisdiction over defendants Bank of America, N.A., Barclays Bank, plc, Citibank, N.A., and JPMorgan Chase Bank, N.A. for fraud claims related to the sale of mortgage loans. This Memorandum and Order terminates Docket no. 1178.

Dated:  New York, New York
        March 31, 2016

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[5] We do not pass on the question as to whether these claims otherwise survive on the merits, which the parties have raised in connection with fraud claims relating to ISDA contracts in their spreadsheet listing the disposition of claims on personal jurisdiction grounds. See Kurtzberg & Leveridge Letter at 2, 68-70, Jan. 21, 2016, ECF No. 1303.

14