PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS          NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

UNIT 3601 OFFICE TOWER A
BEIJING FORTUNE PLAZA
NO 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR HONG KONG CLUB BUILDING
3A CHATER ROAD CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU U K
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU TOKYO 100-0011 JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST SUITE 3100
PO BOX 226
TORONTO ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET NW
WASHINGTON DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER S DIRECT DIAL NUMBER
212-373-3460

WRITER S DIRECT FACSIMILE
212-492-0460

WRITER'S DIRECT E-MAIL ADDRESS
afinch@paulweiss.com

April 1, 2016

**VIA ECF AND HAND DELIVERY**

The Honorable Naomi Reice Buchwald
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007-1312

      Re:    *In re LIBOR-Based Financial Instruments Antitrust Litigation*,
               No. 11-cv-2613 (NRB), Master File No. 11-md-2262 (NRB)

Dear Judge Buchwald:

      We represent Defendant Deutsche Bank AG ("DB") in the above-captioned litigation, and write on behalf of DB and the other Opposing Defendants (as defined in Defendants' January 28, 2016 Letter, ECF No. 1306 ("January 28 Letter")), in response to the Exchange-Based Plaintiffs' ("Plaintiffs") letter of February 25, 2016, ECF No. 1328 ("February 25 Letter"), regarding their request for leave to file their Proposed Third Amended Complaint ("PTAC") and request leave to submit this letter on behalf of DB and the other Opposing Defendants. Plaintiffs oppose this request.

      Below, we address three arguments in the February 25 Letter that Plaintiffs raise for the first time in support of their request for leave to file the PTAC: (1) Plaintiffs' argument that classification of certain Opposing Defendants as "Large Traders" by the Chicago Mercantile Exchange ("CME") supports jurisdiction over them; (2) Plaintiffs' argument that there is personal jurisdiction over Opposing Defendant MLI because of an alleged conspiracy; and (3) Plaintiffs' argument that Opposing Defendant Rabobank "conceded that [it] would not contest" personal jurisdiction over any trader conduct claims in the January 2005 to August 2007 time period through prior motion practice in this action.

      1.    **Classification of Defendants as "Large Traders" Does Not Establish Jurisdiction**

      The classification of certain Opposing Defendants by the CME as "Large Traders" of Eurodollar futures and/or options adds nothing to arguments for personal jurisdiction that the Court has already rejected. In their opposition to the Defendants' motion to dismiss for

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Naomi Reice Buchwald                                                                                           2

lack of personal jurisdiction, Plaintiffs argued that the foreign Defendants were subject to personal jurisdiction in the United States because Defendants had "trillions of dollars of Eurodollar futures and other interest rate derivative contracts outstanding during the Class Period" (ECF No. 1111, at 18), and "conducted general business and banking activities that entailed entering into billions of LIBOR-based transactions in the United States . . . directed at the CME Exchange and investors in Eurodollar futures on the CME" (*id.* at 22).  This Court rejected that argument in *LIBOR V*, holding that Plaintiffs' "reliance on the moving defendants' various . . . United States-directed contacts and activities is misplaced, as they have failed to show that the CEA claim arises out of those defendants' United States contacts." *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR V*"), No. 11-md-2262, 2015 WL 6696407, at *19 n.30 (S.D.N.Y. Nov. 3, 2015).  The Court also rejected Plaintiffs' argument for personal jurisdiction based on a "foreseeable effect on the Eurodollar futures contract prices." *Id.* at *19.[1] Plaintiffs' introduction of the CME "Large Trader" reports is redundant of their assertion that certain foreign Defendants engaged in substantial trading of LIBOR-linked instruments in the United States, and therefore provides no basis for personal jurisdiction that this Court has not already considered and rejected.

### 2. Plaintiffs Fail to Establish Jurisdiction over MLI Based on an Alleged Conspiracy

Plaintiffs argue, for the first time, that there is personal jurisdiction in this case because MLI allegedly "engaged in a conspiracy with Barclays where participants in the conspiracy [*i.e.*, certain Barclays employees] were based in the United States." (February 25 Letter at 3.)  That theory fails as a matter of law.  In *Walden v. Fiore*, 134 S. Ct. 1115 (2014), the Supreme Court held that personal jurisdiction "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  It follows that the relevant jurisdictional question is whether *MLI* "purposefully availed itself of the privilege of doing business" in New York or "expressly aimed" its alleged attempt to manipulate LIBOR at New York, *See In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR IV*"), No. 11-md-2262, 2015 WL 6243526, at *27 (S.D.N.Y. Oct. 20, 2015) (internal quotation marks and citations omitted), not whether its alleged co-conspirator Barclays did.[2]  Consistent with this guidance, multiple cases in the Southern District have rejected conspiracy as a separate means of establishing personal jurisdiction.[3]  This

---

[1]   *See also Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419, 2015 WL 1515358, at *3 (S.D.N.Y. Mar. 31, 2015) (rejecting argument that specific jurisdiction could be based on foreseeable in-forum effects of defendants' alleged manipulation of Yen LIBOR/Euroyen TIBOR); *7 W. 57th St. Realty Co. v. Citigroup, Inc.*, 2015 WL 1514539, at *11 (S.D.N.Y. Mar. 31, 2015) (same in action alleging USD LIBOR manipulation).

[2]   In *LIBOR IV*, the Court did not reach the question whether personal jurisdiction could exist based on the jurisdictional contacts of an alleged co-conspirator absent the defendant's own sufficient contacts with the jurisdiction. 2015 WL 6243526, at *29 & n.48.

[3]   *See In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015) ("The rules and doctrines applicable to personal jurisdiction are sufficient without the extension of the law to a separate and certainly nebulous 'conspiracy jurisdiction' doctrine."); *Tymoshenko v. Firtash*, No. 11-cv-2794 (KMW), 2013 WL 1234943, at *4–5 (S.D.N.Y. Mar. 27, 2013) (noting that "the use of this conspiracy theory has been widely criticized by courts and scholars" and refusing "to consider the contacts of [the defendant's] co-conspirators to establish personal jurisdiction over [the defendant]"); *see also Laydon*, 2015 WL 1515358, at *3 (noting that

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Naomi Reice Buchwald                                              3

Court should similarly reject any conspiracy theory of jurisdiction here. For the reasons explained in prior submissions, in allegedly asking, from London, that someone in New York ask someone else in London to alter LIBOR submissions, MLI did not "purposefully avail[]" itself of the "privilege of doing business in New York," nor was its conduct "expressly aimed" at New York. *LIBOR IV*, 2015 WL 6243526, at *27. Accordingly, there is no personal jurisdiction over MLI.

### 3. Rabobank Did Not Concede Jurisdiction over All 2005–2007 Trader Claims

Plaintiffs argue for the first time that, when moving to dismiss this action for lack of personal jurisdiction, Rabobank "conceded that [it] would not contest personal jurisdiction" as to *any* trader conduct claims based on alleged conduct in the January 2005 through August 2007 period. (February 25 Letter at 8.) That argument is wrong and contradicted by the record. In January 2015, Rabobank moved to dismiss Plaintiffs' claims in their entirety "[e]xcept as to claims for relief under the [CEA] based on alleged conduct in the January 2005 through August 2007 period that is the subject of plaintiffs' Second Claim for Relief." (ECF No. 966-1 at 4 n.7.) At the time that motion to dismiss was filed, the *only* trader conduct claims remaining against Rabobank that were the subject of Plaintiffs' Second Claim for Relief were those the Court authorized in *LIBOR III*—namely, claims corresponding to alleged trader conduct on four specific dates: June 30, August 17, September 1 and November 29, 2006. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR III*"), 27 F. Supp. 3d 447, 464 & n.9 (S.D.N.Y. 2014) (authorizing Plaintiffs to allege trader conduct claims against Rabobank corresponding to only those four dates). Accordingly, the exception to Rabobank's motion to dismiss for lack of personal jurisdiction was limited only to claims based on trader communications on those four specific dates. Those four trader communications emanated from Rabobank's New York branch, and thus Rabobank did not (and does not) contest personal jurisdiction as to claims based on those four communications.

*        *        *

For the reasons set forth above, Opposing Defendants ask that the Court reject Plaintiffs' new arguments regarding personal jurisdiction, and respectfully reiterate their previous request that the Court deny Plaintiffs' request for leave to add most of the new trader-based manipulation claims in their PTAC and to extend the class period.

Respectfully submitted,

Andrew C. Finch

cc:     All Counsel of Record (via ECF)

---

"[c]ourts have been increasingly reluctant to extend [the conspiracy] theory of jurisdiction beyond the context of New York's long-arm statute" to the context of constitutional due process).