MAYER • BROWN

Mayer Brown LLP
1221 Avenue of the Americas
New York, New York 10020-1001

Main Tel +1 212 506 2500
Main Fax +1 212 262 1910
www.mayerbrown.com

**Steven Wolowitz**
Direct Tel +1 212 506 2535
Direct Fax +1 212 849 5535
swolowitz@mayerbrown.com

April 29, 2016

BY HAND AND ECF

The Honorable Naomi Reice Buchwald
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re: *In re LIBOR-Based Financial Instruments Antitrust Litigation*, No. 11-md-02262-NRB

Dear Judge Buchwald:

We are counsel for dismissed defendant and non-party Société Générale. We write on behalf of the Dismissed Defendants[1] pursuant to Rule 2.B of Your Honor's Individual Practices and Local Civil Rule 37.2 to request a pre-motion discovery conference to seek leave to move to quash (and/or for the entry of a protective order directed to) identical nonparty subpoenas issued by the Exchange-Based, Lender, and OTC class plaintiffs ("Plaintiffs") (the "Subpoenas") pursuant to Federal Rule of Civil Procedure 45(d)(3).[2]

The Subpoenas seek production of, *inter alia*, (1) all documents provided to any Government Regulator[3] investigating the setting of USD LIBOR, including documents sufficient to show how those productions were collected and reviewed, (2) all subpoenas and other information requests from any Government Regulator, and (3) all documents concerning communications with any Government Regulator (*see, e.g.,* Exs. A-C). The Court should quash the Subpoenas because: (1) the Court lacks personal jurisdiction over the Dismissed Defendants;

---

[1] The Dismissed Defendants submitting this letter are The Bank of Tokyo-Mitsubishi UFJ, Ltd., Credit Suisse, Lloyds Bank plc, Bank of Scotland plc, The Norinchukin Bank, Portigon AG (f/k/aWestLB AG), Coöperatieve Rabobank U.A. (f/k/a Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.), The Royal Bank of Scotland Group plc, The Royal Bank of Scotland plc, and Société Générale. These banks are Subpoena recipients that were either dismissed from all or some of the Exchange-Based, Lender or OTC actions by this Court's rulings or were never parties to one or more of those actions. HSBC Bank plc and HSBC Holdings plc were also dismissed as defendants in the Court's previous rulings, but the Subpoenas do not appear to be directed at these entities. An exhaustive list of the Dismissed Defendants' objections or arguments, all of which are expressly reserved, would exceed the scope of this pre-motion letter.

[2] Consistent with the Local Rules, counsel for the Dismissed Defendants conferred in good faith with counsel for Plaintiffs, but were unable to resolve the dispute.

[3] The Subpoenas define "Government Regulator" as "any federal or state law enforcement agency or official, any grand jury, any committee of the United States Congress, any agency of a state or other political subdivision, and any other domestic or international government body." The definition also includes a non-exhaustive list of 26 such "Government Regulators," including the Japanese Financial Supervisory Agency, the Australian Securities and Investments Commission, and the Swiss Financial Market Supervisory Authority.

Mayer Brown LLP operates in combination with other Mayer Brown entities (the "Mayer Brown Practices"), which have offices in North America, Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.

(2) the Subpoenas are disproportionate to the needs of the case, and the proposed burden and expense of production would outweigh their likely benefit; and (3) Plaintiffs cannot possibly establish that the Subpoenas, which seek *every* document the Dismissed Defendants have provided to or received from any Government Regulator anywhere in the world, are tailored to discovery required for the disposition of a class certification motion. The Subpoenas, moreover, implicate significant foreign law issues and threaten to invade the investigatory privilege of the U.S. and foreign regulators.

## I. The Court Lacks Personal Jurisdiction Over The Dismissed Defendants

"A district court . . . must have personal jurisdiction over a nonparty in order to compel it to comply with a valid discovery request under [Rule] 45." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 141 (2d Cir. 2014).[4] But the Dismissed Defendants are not subject to either general or specific personal jurisdiction in connection with the Subpoenas.

As this Court has concluded, with regard to general personal jurisdiction, the Dismissed Defendants are not "at home" in New York or the United States. *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR IV*"), 2015 WL 6243526, at *26–*27 (S.D.N.Y. Oct. 20, 2015). Further, as this Court recently held, none of the Dismissed Defendants with New York branches consented to general jurisdiction in New York by registering with the New York State Department of Financial Services pursuant to New York Banking Law § 200(3). *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR VI*"), 2016 WL 1558504, at *7 (S.D.N.Y. Apr. 15, 2016).[5] Thus, general personal jurisdiction is lacking.

Nor are the Dismissed Defendants subject to specific personal jurisdiction. The Second Circuit has held that in evaluating whether a court may exercise specific jurisdiction over a nonparty, the court must "first assess the connection between the nonparty's contacts with the forum and the [subpoena] at issue, and then decide whether exercising jurisdiction for the

[4] The Dismissed Defendants agreed to accept service of the Subpoenas to avoid imposing unnecessary burden and expense on Plaintiffs. The Dismissed Defendants' acceptance of service expressly was subject to the preservation of any and all defenses and objections other than those based on sufficiency of service.

[5] Plaintiffs' anticipated reliance on *Vera v. Republic of Cuba*, 91 F. Supp. 3d 561 (S.D.N.Y. 2015), and *B & M Kingstone, LLC v. Mega Int'l Commercial Bank Co.*, 131 A.D.3d 259, 15 N.Y.S.3d 318 (N.Y. App. Div. 2015), would not assist them. Those cases involved enforcement of *post-judgment* information subpoenas directed to nonparties. As this Court observed in *LIBOR VI*, those cases held that "foreign banks operating local branches in New York . . . [have] obligations to participate as third parties in lawsuits *which involve assets under their management*." *Vera*, 91 F. Supp. 3d at 570 (emphasis added). Those decisions thus have no relevance here. Moreover, as this Court recognized in *LIBOR VI*, to the extent those decisions held that registration under New York Banking Law § 200(3) amounts to consent to general jurisdiction, the decisions "would 'risk unravelling the jurisdictional structure envisioned [by the Supreme Court] based only on a slender inference of consent pulled from routine bureaucratic measures that were largely designed for another purpose entirely.'" *LIBOR VI*, 2016 WL 1558504, at *7 (quoting *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 639 (2d Cir. 2016)).

purposes of the [subpoena] would comport with fair play and substantial justice." *Gucci*, 768 F.3d at 137. Personal jurisdiction is lacking here under both prongs of this test.

*First*, the Dismissed Defendants' purported forum contacts lack the "but for" causal connection to the Subpoenas required for the exercise of personal jurisdiction over the Dismissed Defendants to satisfy constitutional due process. *See Gucci Am., Inc. v. Weixing Li*, 2015 WL 5707135, at *8–*9 (S.D.N.Y. Sept. 29, 2015) (assessing whether a subpoenaed nonparty's contacts with the forum were a "but for" cause of the subpoenas)[6]; *cf. LIBOR VI*, 2016 WL 1558504, at *6 (adhering to the Court's conclusion that "but for causation remains an essential element of the jurisdictional inquiry") (citing *LIBOR IV*, 2015 WL 6243526, at *28). The conduct underlying Plaintiffs' claims (the setting of LIBOR), which purports to give rise to the Subpoenas, occurred overseas[7] and was not aimed at the United States or any forum state. *See, e.g.*, *LIBOR IV*, 2015 WL 6243526, at *20; *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR V*"), 2015 WL 6696407, at *19 (S.D.N.Y. Nov. 3, 2015). There is therefore no connection between the Subpoenas and the Dismissed Defendants' alleged forum activities—establishment or operation of branches or offices in New York (or elsewhere in the U.S.) or allegedly engaging in Eurodollar futures trading and/or transactions in other LIBOR-linked instruments.[8] *See Gucci*, 768 F.3d at 141; *cf.* Apr. 29, 2016 Mem. & Order, at 10 (Dkt. 1396) ("Plaintiffs have not pleaded facts or submitted supporting material that suggests that any panel bank's United States-based affiliate played a role in that bank's alleged persistent suppression of LIBOR"). Plaintiffs cannot satisfy the "but for" requirement—and this failure alone is dispositive.

*Second*, the exercise of specific jurisdiction would not comport with fair play and substantial justice. The Court has held that the Dismissed Defendants' declarations "clearly state that LIBOR submissions were made and determined outside of the United States." Apr. 29, 2016 Mem. & Order, at 6[9]; *see also id.* at 9 ("plaintiffs have simply not identified any reason to think

---

6 *Gucci* concerned a subpoena directed to two accounts maintained by defendants at non-party Bank of China (BOC) that were allegedly used by the defendants to wire proceeds of counterfeit sales to locations outside the U.S. Following remand from the Second Circuit, the District Court determined that the non-party's in-forum contacts were the "but for" cause of the subpoenas because the subpoenas were "premised on the fact that Defendants' proceeds from the sale of counterfeit goods were transferred through BOC's correspondent account in New York." *Gucci*, 2015 WL 5707135, at *8–*9. There is no similar "but for" causal connection here between the Dismissed Defendants' alleged forum contacts and the Subpoenas because the Subpoenas do not arise out of the Dismissed Defendants' alleged in-forum conduct.

7 OTC and Lender Plaintiffs have not asserted trader-based claims. Only the Exchange-Based Plaintiffs have asserted such claims and have been granted leave by the Court to assert a limited number of such claims based on U.S. conduct only against Rabobank, Deutsche Bank AG and DBGS—none of which received a Subpoena from the Exchange-Based Plaintiffs.

8 This Court has, moreover, already rejected Plaintiffs' attempts to establish jurisdiction through conspiracy or vicarious liability theories. *See LIBOR VI*, 2016 WL 1558504, at *6 n.5.

9 The Royal Bank of Scotland Group plc and The Royal Bank of Scotland plc will submit an updated declaration pursuant to the Court's instruction. Apr. 29, 2016 Mem. & Order, at 6-7.

that banks headquartered in Japan, the Netherlands, Canada, Germany, the UK and Switzerland made determinations as to expected interbank borrowing rates in London anywhere other than London or the country in which they are domiciled."). The Dismissed Defendants' LIBOR submissions were not made in the context of a purposeful availment of the privilege of doing business in the forum and thus do not support the exercise of jurisdiction. *See LIBOR IV*, 2015 WL 6243526, at *32 (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013)).[10] The exercise of specific personal jurisdiction under these circumstances would therefore fail to satisfy constitutional due process.

Accordingly, there is no basis for the Court to exercise personal jurisdiction over nonparty Dismissed Defendants here.

## II. The Subpoenas Are Disproportionate And Would Impose Undue Burden on Nonparties

Under Rule 45, a court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv); *see also Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*, 2014 WL 6686600, at *4 (S.D.N.Y. Nov. 21, 2014) (Buchwald, J.) (quashing subpoena that would impose "undue burden" on non-party); *Guercia v. Equinox Holdings, Inc.*, 2013 WL 2156496, at *4–*5 (S.D.N.Y. May 20, 2013) (quashing subpoena after weighing value of the information sought "in relation to its burden" on non-party). A subpoena also must comply with the scope of Rule 26, including, following the 2015 amendment, that discovery sought must be relevant and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also Henry Morgan's Hotel Grp., Inc.*, 2016 WL 303114, at *3 (S.D.N.Y. Jan. 25, 2016) (quashing overbroad subpoena seeking irrelevant information where plaintiff "has not . . . satisfied the Court that . . . production is proportional to the needs of the case").

Here, the Subpoenas vastly exceed the scope of Rules 45 and 26. Plaintiffs request, among other things, all information the Dismissed Defendants provided to any Government Regulator investigating USD LIBOR manipulation, setting, or submissions, and all related communications for a ten-year period. As this Court previously explained, however, "wholesale production of the disclosures to the governmental entities is hardly burden free or necessarily appropriate, both from the perspective of the defendants and from the perspective of the governmental agencies themselves." Oct. 18, 2013 Mem. & Order (Dkt. 489); *see also* Mar. 1, 2012 Hr'g Tr. at 5 (stating that "production would not be cost-free, given the scope of the issues and investigations involved"). Responding to the Subpoenas would require the Dismissed Defendants to undertake time-consuming and expensive review to identify documents that relate

[10] Even when a court concludes that it can exercise personal jurisdiction over a nonparty, the Second Circuit has held that where, as here, the request targets documents that originated and/or are located abroad, the court must conduct a comity analysis. *Gucci*, 768 F.3d at 139. For reasons that the Dismissed Defendants will demonstrate more fully in their moving papers, the Subpoenas would undermine important interests of the relevant foreign jurisdictions (France, Germany, Japan, the Netherlands, Switzerland, and the United Kingdom).

to USD LIBOR, as well as to identify and appropriately protect sensitive competitive information, information subject to bank examination or other privileges or immunities, and private information protected by the U.K. Data Protection Act or similar foreign laws. The broad information sought concerning the Dismissed Defendants is also largely—if not entirely—irrelevant to Plaintiffs' surviving claims against the *Non-Dismissed* Defendants, and any documents conceivably relevant to such claims can instead be obtained directly from the Non-Dismissed Defendants. Plaintiffs thus already have "access to relevant information" through party discovery. Fed. R. Civ. P. 26(b)(1). The extensive discovery they seek from the Dismissed Defendants has little (if any) marginal value to them and is "unreasonably cumulative [and] disproportionate to [their] reasonable needs." *Creighton v. City of New York*, 2016 WL 1178648, at *2 (S.D.N.Y. Mar. 17, 2016). Indeed, the Subpoenas' overbreadth strongly suggests that the Plaintiffs are inappropriately seeking nonparty discovery as a vehicle for attempting to revive dismissed claims against the Dismissed Defendants.

## III. <u>The Subpoenas Are Not Tailored To Discovery Pertinent To A Class Certification Motion</u>

Plaintiffs' request for a cloned set of the Dismissed Defendants' productions to any Government Regulator is improper on its face. *See* Dec. 16, 2015 Hr'g Tr. at 12 ("The Court: But what [Defendants] gave to the government is not necessarily related to what you need to prove on a class action level.").[11] Plaintiffs have, in any event, failed to articulate (because they cannot do so) how the Subpoenas are tailored to seek discovery necessary for the disposition of a class certification motion.

Thus far, Plaintiffs have sought to justify the Subpoenas by claiming that they have evidence that Barclays (and perhaps others) learned that other panel banks were purportedly suppressing LIBOR before the submissions deadline. This theory is not viable. *See, e.g.*, *LIBOR IV*, 2015 WL 6243526, at *46 ("we do not infer collusion from the fact that many banks knew that other banks were suppressing LIBOR and tried to stay in or at the bottom of 'the pack.' It was to be expected that a panel bank would know whether its co-panelists could actually obtain loans at the rates they quoted to the LIBOR panel."). In addition, Plaintiffs have failed to explain why the discovery obtained from Barclays and the Non-Dismissed Defendants is incomplete. Even if they could, there has simply been no showing that the Dismissed Defendants participated in any alleged conspiracy to suppress LIBOR. *See id.* at *90 ("[e]ight years after questions of

---

[11] Not only would a wholesale production of Dismissed Defendants' disclosures to any Government Regulator be overbroad and unduly burdensome, the Subpoena requests are also improper as a matter of law because those LIBOR investigations were broader in scope than Plaintiffs' surviving claims. *See N.J. Carpenters Health Fund, et al. v. DLJ Mortg. Capital, Inc. et al.*, No. 08 Civ. 05653 (PAC), slip op. at 1-2 (S.D.N.Y. Mar. 2, 2012) (request for all documents previously produced to the government "denied as overbroad" because such requests are inappropriate where "the Government's investigation is far broader than the limited subject matter of this lawsuit"); *see also* Mar. 2, 2013 Hr'g Tr. at 54 (Court instructing Plaintiffs' counsel that "your job here, as plaintiffs' counsel . . . is not to piggyback on the government").

LIBOR manipulation first arose, four years after the first suit, two years after our first examination of conspiracy pleading, and with the benefit of over a dozen consent decrees involving LIBOR and similar benchmarks, plaintiffs have not pleaded the existence of a conspiracy to persistently suppress LIBOR, and have found only sporadic agreements to engage in trader-based manipulation.").

Plaintiffs have separately suggested that their experts require the Dismissed Defendants' borrowing data to construct a supposed "true" LIBOR. The Subpoenas are not limited to the pursuit of such data and, instead, contain sweeping requests for all documents exchanged with any Government Regulator. In any event, access to the Dismissed Defendants' borrowing data is not necessary for Plaintiffs to proffer at the class certification stage a common methodology demonstrating that their alleged damages are *capable* of being measured on a class-wide basis. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). Indeed, Plaintiffs' contention is at odds with statements made by the Exchange-Based Plaintiffs' expert that "but for" LIBOR can be determined by calculating the difference between 3M LIBOR and a 3-month benchmark on a day to day basis.[12] To perform such an analysis (the validity of which the Dismissed Defendants by no means concede), Plaintiffs require no more than publicly available information—the submissions, the fixings, and what they claim are comparable benchmarks.

## IV. Significant Foreign Law Issues Are Implicated By The Subpoenas

Documents targeted by the Subpoenas originated from and/or are maintained outside the United States. The Subpoenas therefore implicate as many as three categories of foreign law that must be complied with before any production could be made: (i) blocking or channeling statutes; (ii) data privacy laws; and (iii) bank secrecy laws.[13] Production of documents in contravention of those laws—which in some, but not all cases, may be addressed by channeling discovery requests through the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters—would subject the Dismissed Defendants to a risk of criminal, administrative, and/or civil penalties. Thus, applicable foreign law provides an independent ground to quash the Subpoenas.

## V. The Subpoenas Invade The Investigatory Process Of Various Authorities

Plaintiffs' second and third requests seek production of investigative demands issued by any Government Regulator and documents concerning any communications with any Government Regulator about their LIBOR investigations. To ensure that those investigations are not impeded, the relevant regulators and government authorities should have an opportunity to

---

[12] *See* January 16, 2015 Expert Report of H. Nejat Seyhun in support of the Exchange-Based Plaintiffs' proposed process of allocation for the Barclays settlement. (Dkt. 240, at 4.)

[13] Those foreign laws include, among others, French Law No. 68-678 (July 26, 1968) as modified by Law No. 80-538 (July 16, 1980); French Law No. 78-17 (January 6, 1978), Article L.511-33 of the French Monetary and Financial Code, Germany's Federal Data Protection Act and the United Kingdom's Data Protection Act 1998.

assert, and the Court an adequate opportunity to resolve, any objections that they may have. Indeed, there is already a history in this litigation of government authorities asking to be heard on aspects of Plaintiffs' discovery requests that implicate criminal investigations. *See, e.g.*, Feb. 27, 2012 Let. from U.S. Dept. of Justice; Mar. 1, 2012 Hr'g Tr. at 5. Foreign authorities have also written to the court in the Yen LIBOR/Euroyen TIBOR litigation to assert objections or express their views on document demands. *See, e.g.*, *Laydon v. Mizuho Bank, Ltd.*, *et al.*, No. 12-cv-03419 (Dkt. 433-1). The requests are likewise improper to the extent they seek information protected from disclosure by any protective order, non-disclosure agreement, law, rule, or policy that is binding on the Dismissed Defendants.

* * * *

For these reasons and those that will be discussed more fully in their moving papers, the Dismissed Defendants respectfully request that the Court quash the Subpoenas, or, in the alternative, issue an appropriate protective order.

Respectfully submitted,

Steven Wolowitz

Encls.

cc: All counsel of record (*by ECF*)