# Davis Polk & Wardwell LLP

450 Lexington Avenue
New York, NY 10017
212 450 4000
Fax 212 701 5800

Menlo Park
Washington, D.C.
São Paulo
London
Paris
Madrid
Tokyo
Beijing
Hong Kong

Arthur J. Burke
212 450 4352

ECF and Hand Delivery                                     May 2, 2016

Re:   *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 11-MD-2262 (NRB)

Honorable Naomi Reice Buchwald
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Buchwald:

      On behalf of non-dismissed Defendants in the Lender Action, we respectfully request leave to file a motion to strike the class and conspiracy allegations in the Lender Plaintiffs' ("Lenders") Second Amended Consolidated Class Action Complaint ("SACC"), ECF No. 1383.[1] For at least three reasons, it is "beyond dispute that plaintiffs will be unable to establish" that common issues predominate over individualized ones and certify the proposed class. *Duarte v. Tri-State Physical Med. & Rehab., P.C.*, 2012 WL 2847741, at *6 (S.D.N.Y. July 11, 2012). Furthermore, the conspiracy allegations in the SACC are improper given this Court's prior orders.

## I.    Deficiency of Class Allegations

###     A.    Variations in Fraud Laws Across Fifty States and U.S. Territories

      The Lenders' putative nationwide fraud class fails Rule 23's predominance requirement as a matter of law because adjudication requires application of "the laws of all fifty states." *In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 311 (S.D.N.Y. 2004). In such circumstances, "courts routinely deny class certification." *Id.*[2] Indeed, when Bank of America

---

[1] The SACC also continues to improperly assert claims against other defendants that have been dismissed for lack of personal jurisdiction based on this Court's prior decisions in this litigation, as reflected in the charts recently submitted to this Court. (ECF Nos. 1303, 1339.)

[2] *See also Lewis Tree Serv., Inc. v. Lucent Tech. Inc.*, 211 F.R.D. 228, 233 (S.D.N.Y. 2002) ("[B]ecause the tort of fraud differs meaningfully from one jurisdiction to the next, the application of some uniform substantive law is impossible."); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) ("[Plaintiffs'] claims are governed by different States' laws, a largely legal determination, and no proffered or potential factual development offers any hope of altering that conclusion, one that generally will preclude class certification.").

similarly argued that the proposed nationwide class of ARM plaintiffs was uncertifiable because it involved the fraud laws of thirty-seven different states, ECF No. 1315, the ARM plaintiff responded by limiting its class to a single state, ECF No. 1317, effectively conceding that variations in state fraud laws presented an insuperable barrier to class certification.  This same conclusion applies equally or more so here, where the laws of all fifty states and U.S. territories are at issue.  SACC ¶ 354.[3]  It is unworkable to apply so many sets of fraud laws because they differ in numerous, substantive ways, including as to accrual rules for statutes of limitations,[4] standards for reasonable reliance,[5] methodologies for determining whether plaintiffs have suffered damages,[6] and levels of intent necessary to establish scienter.[7]  These variations are purely legal in nature and cannot be cured through discovery.  *See Pilgrim*, 660 F.3d at 949.

   B.   **Variations in LIBOR-Related Knowledge and Inquiry**

The purported class is also uncertifiable because the Lenders' claims depend in multiple ways on unique questions of LIBOR-related knowledge and inquiry.  The questions of *what* each plaintiff knew about alleged suppression, *when* it knew, and what it did to *investigate* are critical to the case and cannot be addressed through common proof.[8]  At a minimum, these individualized questions will certainly impact the below aspects of the Lenders' claims:

*Reasonable Reliance*.  Each member of the purported class will need to demonstrate some level of reasonable reliance—again, varying by state—and Defendants will be permitted to

---

[3] The purported Lender class consists of lenders from all fifty states and U.S. territories, SACC ¶ 354, and under New York's choice-of-law rules, the substantive law of each plaintiff's home state would likely apply to its fraud claim.  *See In re Thelen LLP*, 736 F.3d 213, 220 (2d Cir. 2013) ("[F]or claims based on fraud, the locus of the tort is generally deemed to be the place where the injury was inflicted, rather than where the fraudulent act originated.").

[4] *LIBOR IV*, 2015 WL 6243526, at *126-38 (discussing variations in state's fraud accrual rules and exceptions).

[5] *Compare, e.g.*, *Niermeyer v. Cook's Termite & Pest Control, Inc.*, 2006 WL 330099, at *6 (Ohio Ct. App. Feb. 14, 2006) (duty to investigate if "a person of ordinary care" would), *with Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (duty to investigate if plaintiff "knows the representation to be false or its falsity is obvious to him"), *and Conder v. A.L. Williams & Assocs., Inc.*, 739 P.2d 634, 638 (Utah Ct. App. 1987) (duty to investigate if apparent to someone of plaintiff's "knowledge and intelligence" or plaintiff has been "warn[ed] that he is being deceived").

[6] *Compare, e.g.*, *O'Connell v. Wahlstrom*, 2007 WL 1598965, at *5 (Minn. App. 2007) ("[I]n jurisdictions . . . that follow the 'out-of-pocket' rule, if the property is worth what plaintiff gave for it, he has suffered no damage and . . . cannot recover."), *with Goldstein v. Miles*, 859 A.2d 313, 324 (Md. App. 2004) ("[A] victim of [fraud] may elect to recover either 'out-of-pocket' expenses or benefit-of-the-bargain damages."), *and Big-O Tires, Inc. v. Santini*, 838 P.2d 1169, 1174 (Wyo. 1992) ("[W]here application of [the out-of-pocket or benefit-of-the-bargain rule] results in leaving a loss uncompensated, a trial court may properly allow recovery of the economic loss sustained.").

[7] *Compare, e.g.*, *White v. Kennedy Krieger Inst., Inc.*, 110 A.3d 724, 744 (Md. 2015) ("reckless indifference" to truth), *with Comerica Bank v. Mahmoodi*, 229 P.3d 1031, 1033 (Ariz. Ct. App. 2010) ("knowledge of . . . falsity or ignorance of . . . truth"), *and First Ark. Bank & Trust, Trustee v. Gill Elrod Ragon Owen & Sherman, P.A.*, 427 S.W.3d 47, 53-54 (Ark. 2013) (knowledge of "fals[ity] or . . . insufficient evidence upon which to make [the statement]"), *and Siemens Fin. Servs., Inc. v. Stonebridge Equip. Leasing, LLC*, 91 A.3d 817, 821 (R.I. 2014) (fraud present only "if the truth is reasonably susceptible of actual knowledge" or if "through a modicum of diligence, accurate facts are available to the speaker" (quoting *Zimmerman v. Kent*, 575 N.E.2d 70, 74 (Mass. 1991))).

[8] These types of issues are always individualized, but particularly so here given the diversity of the purported class, which encompasses *all* lending institutions in the United States, including local community banks and credit unions, mutual savings banks, regional banks, investment banks, and hedge funds, *see* SACC at ¶ 1, all with different business models, goals, practices, and levels of experience and sophistication.

2

challenge the reasonableness of alleged reliance based on the particular circumstances of each plaintiff. Indeed, this Court noted in *LIBOR V* its "doubts about the reasonableness of reliance" as alleged by the Lenders, and that those doubts "are even stronger as to the Lenders than in other contexts, especially for mortgages that the Lenders themselves issued." *LIBOR V*, 2015 WL 6696407, at *11. As this Court further held, whether a member of the purported class can clear this hurdle will turn on individualized facts, including "each particular plaintiff's ability to investigate the possibility of LIBOR manipulation," "each particular plaintiff's reasons for investing in LIBOR-based instruments," and "the alternatives available to each particular plaintiff." *LIBOR IV*, 2015 WL 6243526, at *67. Given these and other individualized questions, reliance will be impossible to demonstrate on a class-wide basis. Lack of commonality as to reliance is routinely a bar to class certification. *See, e.g.*, *Penn. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120-21 (2d Cir. 2014) (absence of fraud-on-the-market theory, such as in common law fraud claims, "would ordinarily preclude certification of a class action seeking money damages because individual reliance issues would overwhelm questions common to the class" (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1993 (2013))).

*Statute of Limitations.* The timing of claim accrual for statute of limitations purposes will also turn on individualized questions of knowledge and inquiry. Even putting aside the varying state statutes of limitation, whether, and to what extent, a putative class member's claim is time-barred will depend on when it was placed on actual or inquiry notice of its alleged harm, which requires inquiry into various individual issues, including when the entity actually learned of alleged LIBOR manipulation, what it did to inquire, and whether the timing and extent of its inquiry were reasonable based on its individual circumstances, including the institution's sophistication and access to information. *See LIBOR V*, 2015 WL 6696407, at *12-13 (noting a "spectrum" of knowledge among plaintiffs and holding that "frequent lender[s]" are among more knowledgeable plaintiffs along this spectrum). These inquiries are inherently individual and would have to be repeated for each class member.

*Mitigation of Damages.* Issues of knowledge and inquiry also bear on whether a purported class member fulfilled its duty to mitigate damages. Although states vary in the specifics, an injured party typically must mitigate fraud damages upon becoming actually or constructively aware of the alleged misrepresentation.[9] For example, if a lender became aware of the alleged manipulation before its loan began paying a LIBOR-based rate, the lender would have a duty to avoid or mitigate its injury if reasonable under the circumstances, such as by entering into an offsetting transaction or selling the loan before the LIBOR-based rate went into effect. No common evidence can resolve whether and when a duty to mitigate arose for a particular plaintiff, or whether the duty was discharged.

### C. Variations in Actual Reliance on LIBOR

Highly individualized issues are also presented by Directors Financial Group's ("DFG") new theory of injury. DFG contends that, although it was not exposed to any *floating* LIBOR-based rate, it was harmed because it used LIBOR to determine the initial *fixed* rate of the loans it

---

[9] *See, e.g.*, *Edelson V., L.P. v. Encore Networks, Inc*, 2013 WL 1952309, at *8 (D.N.J. May 9, 2013) (duty to mitigate triggered when plaintiff "learn[ed] about the fraud"); *see also* Restatement (Second) of Torts § 918 (1979).

extended. (ECF No. 1274.) The Court accepted this theory on the basis of DFG's tender of "the specific [LIBOR-based] formula it used to price the fixed interest rate in its loans." *LIBOR VI,* 2016 WL 1558504, at *4 (S.D.N.Y. Apr. 15, 2016). Determining whether and under what circumstances a lender employed such a formula would require individualized examination of that particular lender's practices, precluding certification of claims based on this new theory of injury.

## II.   Deficiency of Conspiracy Allegations

Contrary to this Court's recent holding that "plaintiffs should not replead definitively dismissed claims," *LIBOR VI,* 2016 WL 1558504, at *11, the SACC alleges an interbank conspiracy to suppress LIBOR, notwithstanding that this Court already dismissed the Lenders' conspiracy claims. SACC at ¶¶ 376-381; *LIBOR V,* 2015 WL 6696407, at *13; *see also LIBOR IV,* 2015 WL 6243526, at *50 (holding that indistinguishable allegations in related actions "[did] not support the pleading of a broad-based conspiracy"). Accordingly, the Lenders' conspiracy allegations are misplaced and should be stricken. *See* Fed. R. Civ. P. 12(f).

*       *       *

For the foregoing reasons, the Court should strike both the class allegations and the allegations of conspiracy contained in the Lenders' SACC.

Respectfully yours,

/s Arthur J. Burke

Arthur J. Burke

cc:  All counsel (via ECF)