

1775 PENNSYLVANIA AVENUE, NW, SUITE 375
WASHINGTON DC 20006
(202) 899-4100 MAIN (612) 336-9100 FAX

JAMES R. MARTIN
JMARTIN@ZELLE.COM
(202) 899-4101 DIRECT

May 16, 2016

Via ECF and Hand Delivery

Honorable Naomi Reice Buchwald
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

RE: *In re LIBOR-Based Financial Instruments Antitrust Litig.*, No. 11-md-2262-NRB

Dear Judge Buchwald:

We write on behalf of the Direct Action Plaintiffs ("DAPs") to ask the Court to (1) hold Defendants in the OTC Class case ("OTC Class Defendants")[1] to the terms of the Court's ruling allowing DAPs to "receive/participate in" pre-certification class discovery ("Discovery Ruling"),[2] and (2) modify a disputed provision in the Protective Order that prevents DAPs from using relevant discovery materials to efficiently litigate these coordinated cases.[3]

To date, OTC Class Defendants have produced some seven million pages of documents, plus electronic data regarding borrowing costs, to the OTC Class.[4] These are the materials previously produced to regulators regarding USD LIBOR manipulation. The documents are undeniably relevant to DAPs' claims because they go to such core issues as who was involved in LIBOR manipulation, over what time period, by what means, to what extent, and the like.

The OTC Class Defendants have agreed to make some documents available to some DAPs. No DAP would get all of the documents and data produced by the OTC Class Defendants to the OTC Class. *See* Appendix A. The OTC Class Defendants insist that those DAPs that receive documents comply with disputed language in the Protective Order which limits the ability of plaintiffs to share documents with each other unless the Court modifies that restriction

---

[1] The OTC Class Defendants are Bank of America, Citigroup, Credit Suisse, Deutsche Bank, JPMorgan, Royal Bank of Canada, and UBS.

[2] Letter from Hon. Naomi Reice Buchwald to Counsel, Dkt. No. 1268.

[3] Amended Stipulation and Protective Order ("Protective Order"), Dkt. No. 1405.

[4] *See, e.g.*, Email from Paul Mishkin (Bank of America) dated April 28, 2016 (listing three "buckets" with sub-buckets for three DAPs), attached as Exhibit A; Email from Paul Gluckow (JPMorgan) dated May 10, 2016 (listing three categories with subcategories), attached as Exhibit B.

upon request. Protective Order §§ 2.1, 2.3.1. In so doing, the OTC Class Defendants seek to create a maze of rules as to who can see what documents based on (1) whether a given DAP has a "live" claim as against the particular OTC Class Defendant that produced documents and, if so, (2) the particular DAP's damages period.[5]

The OTC Class Defendants' tactics in no way advance the Court's "relevance" concerns. Relevance is typically viewed in relation to burden.[6] The burden on Defendants here is zero. In fact, it is the burden on the parties and the Court in ***disallowing*** access that should be taken into account. A labyrinth of access rights would make coordination unworkable.

Further, delaying access until DAPs can serve their own requests for the ***same*** documents would only cause the very duplication and delay the Court previously indicated it wanted to avoid. *See* Hr'g Tr. 47:3-22, Dec. 16, 2015;[7] *Harris v. Wyeth, Inc.*, No. 04 CIV. 7615 NRB, 2012 WL 2317338, at *1 (S.D.N.Y. June 15, 2012) (Buchwald, J.) (stating that the "very purpose" of MDL litigation is "to coordinate and complete shared pretrial matters such as generic discovery"). DAPs should be allowed, indeed encouraged, to use the precertification period to review relevant documents, and prepare their cases in coordination with other DAPs and class counsel, so that they will be prepared to move forward without delay after the Court decides the certification motions.

**A. Relevance is determined by facts and issues, not party status.**

"Relevance" in the context of pretrial discovery turns on Federal Rule of Civil Procedure 26(b)(1)'s definition of the term, not on who possesses the evidence. DAPs, like every LIBOR plaintiff, want to, among other things, reconstruct what USD LIBOR would have been but for the alleged conduct – a process defendants will contend needs to account for what *every* panel bank (and the British Bankers' Association ("BBA")) was doing. Thus, a producing entity's party status in a given case is in no way a talisman of irrelevance.

---

[5] To graphically illustrate that maze, DAPs provide as Appendix A a chart listing each DAP and the different document production sets each would receive from the Class productions.

[6] *See, e.g., Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 293, 299-300 (S.D.N.Y. 2009); *Cohen v. City of New York*, 255 F.R.D. 110, 117 (S.D.N.Y. 2008).

[7] The Court said: "[O]ne of the things I don't want to have happen – and I don't think anybody really does – is to have duplication. So, allowing individual plaintiffs to go off and do whatever they feel like doing only to have it somehow done again. That was a non-starter. But the notion that if there is discovery that if it is appropriate and relevant to your cases that you get the benefit of it, I don't have a problem with that."

Although the Court's Discovery Ruling and rationale seem clear, Defendants may improperly seek to rely on the fourth paragraph of the Discovery Ruling, which precludes class certification discovery in support of "any claim" the Court dismissed on the merits. DAPs do not believe this paragraph applies to them because their claims have survived motions to dismiss and they are not seeking to "go off and do whatever they feel like doing." *Id.*; *see, e.g.* Manual for Complex Litigation § 21.14 ("Allowing some merits discovery during the precertification period is generally more appropriate for cases that are large and likely to continue even if not certified.")

For example, Barclays Bank plc prevailed on personal jurisdiction motions in many DAP cases, but disclosures in an ongoing trial in the United Kingdom have revealed that Barclays possesses abundant information regarding USD LIBOR manipulation, *e.g.*, an email written by a Barclays' USD LIBOR submitter in 2007 that stated, "I'm feeling increasingly uncomfortable about the way in which USD LIBORs are being set by the contributing banks, Barclays included."[8]

Similarly, the recent trial of a former Rabobank USD LIBOR submitter revealed glimpses of documents in Rabobank's possession exposing previously unknown details about the conduct, *e.g.*, (1) documented witness statements that "an unknown person at Bank of America used to call up Rabobank to discuss LIBOR rate submissions with" Rabobank's primary submitter,[9] and (2) documents indicating that the BBA acted as a hub to ensure that each panel bank's individual published submissions were aligned within a narrow range. In the event that a panel bank submitted USD LIBORs to the BBA outside the range of other panel banks, the BBA would contact that panel bank, tell it the proper range, and instruct it to withdraw and re-submit its USD LIBORs for publication within that range.[10]

These basic examples, which DAPs chose because they were the subject of recent trials, confirm the obvious: that ***every*** USD LIBOR panel bank possesses documents that are relevant to ***every*** DAP's case. This is the case because (1) every plaintiff has an interest in what LIBOR "should" have been, (2) issues of joint and several liability remain, and (3) there are grounds to believe panel banks have information about the other panel banks' misdeeds as well as their own.

**B. Documents about LIBOR setting generated before and after a DAP's transactions are relevant to the who, what, when, where, and why of DAP cases.**

The other artificial "relevance" limits the OTC Class Defendants seek to place on their disclosures are based on the producing party's interpretation of whether there are time-restrictions in place on a given DAP's claims. But it is well established that the scope of discovery should not be "limited arbitrarily by any statute of limitations." *Khan v. Sanofi-Synthelabo, Inc.*, No. 01CIV.11423JSMDF, 2002 WL 31720528, at *4 (S.D.N.Y. Dec. 3, 2002); *see also, e.g., Manning v. General Motors*, 247 F.R.D. 646, 652-53 (D. Kan. 2007) (noting that

---

[8] Patrick Gower, *Barclays Traders Were Anxious About Libor Submissions in 2007*, Bloomberg (April 27, 2016, 6:44 AM), http://tinyurl.com/hyqwrbb.

[9] Def. Ex. 608K, at DOJ-FBI-00001853, *United States v. Allen & Conti*, 1:14-cr-00272-JSR (S.D.N.Y. Jan. 19, 2016), Dkt. No. 210-9 (Federal Bureau of Investigation Interview Notes of Paul Robson, Sep. 1, 2015), attached hereto as Exhibit C.

[10] Def. Ex. 608C, at DOJ-FBI-00000628-629, *United States v. Allen & Conti*, 1:14-cr-00272-JSR (S.D.N.Y. Dec. 21, 2015), ECF No. 202-1 (Federal Bureau of Investigation Interview Notes of Paul Robson, July 24, 2014), attached hereto as Exhibit D. A former LIBOR submitter testified under oath in 2015 that "all the BBA seemed to care about was that panel banks would submit rates that were close to each other's rates." Trial Tr. 553:11-21, *United States v. Allen & Conti*, 1:14-cr-00272-JSR (S.D.N.Y. October 21, 2015), excerpted hereto as Exhibit E.

"courts commonly extend the scope of discovery to a reasonable number of years both prior to and following" the liability period).[11]

The Court's limitations rulings only limit the amount of damages that a given DAP can recover. But DAPs will still be required to tell the story of how the conduct began, who was involved, how it was carried out, where it was aimed, and how the conduct affected DAPs. For example, OTC Class Defendants seek to prevent certain DAPs from accessing documents dated prior to March 2008, but DAPs expect that those documents will show that by 2008, Defendants had ***already*** suppressed USD LIBOR by at least 20-30 basis points, and had ***already*** put a system in place where they would align their individual published USD LIBOR submissions.

Nor do documents become irrelevant just because they are dated after a plaintiff's last transaction, as the OTC Class Defendants also appear to contend. Post-event documents can shed light on prior events, such as discussions among traders about prior misdeeds as investigations unfolded. And post-conspiracy data can help show when USD LIBOR finally became accurate again and assist economists in developing statistical models of USD LIBOR suppression.

**C. OTC Class Defendants' selective productions will make coordination impossible.**

Before making productions to any party, the OTC Class Defendants insisted that the proposed Stipulated Protective Order contain a provision allowing them to deny access rights on a case-by-case basis. *See* Protective Order § 2.3.1. DAPs refused to agree to that proviso but did not want to stand in the way of production to the class plaintiffs. DAPs thus agreed to operate under the Protective Order as Defendants insisted, but of course reserved their rights to seek modification of its terms. *E.g.*, *id.*, §§ 2.1, 9.1, 19. The OTC Class Defendants' tactics have already confirmed DAPs belief that the language would be used as a tool for mischief. Their creation of multiple categories of access rights between various DAPs would cause numerous problems.

- Plaintiffs could not efficiently share the costs of document hosting on a central platform with each other or class counsel. *See* Manual for Complex Litigation (Fourth) § 11.444 ("Central document depositories can promote efficient and economical management of voluminous documents in multiparty litigation.").

[11] *In re New Century*, No. CV 07-0931 DDP FMOX, 2009 WL 9568860, at *2 (C.D. Cal. July 8, 2009) ("In general, courts allow discovery to extend to events before and after the period of actual liability so as to provide context."); *Batra v. Investors Research Corp.*, 144 F.R.D. 97, 98 (W.D. Mo. 1992) ("[T]he court is unaware of any case law or statute which provides that the limitations period establishes the time boundaries for relevant evidence."); *Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp.*, 95 F.R.D. 398, 399 (S.D.N.Y. 1982) (holding that while relevant statute of limitations foreclosed upon claims prior to September 1977, it was proper to permit discovery prior to January 1, 1977).

- It would similarly be impossible for the plaintiffs to share experts or expert work product among themselves, due to the inability to work with the same dataset.

- Conferences would have to be prefaced with time-consuming discussions reminding everyone who could hear what. Various sub-groups would have to leave or re-join conferences at various times.

- The Court would likely have to wade through multiple versions of briefs on what otherwise would easily be treated as common issues. Without common access, DAPs could not circulate among themselves draft "joint" materials without having to create a customized set of redactions for each party.[12]

- Attempts to jointly prepare for, and conduct, depositions would similarly be hamstrung by the fear of running afoul of the Protective Order's restrictions – greatly increasing the chances that witnesses will need to sit for multiple days.

- DAPs would be unable to efficiently use the precertification time period to prepare their cases. DAPs would have to wait until after the certification motions to seek the same documents produced to the OTC Class plaintiffs, thus delaying the remand and/or ultimate resolution of these coordinated cases.

The OTC Class Defendants' strategy would thus defeat the primary objective of any MDL: eliminating duplication, reducing cost, and saving the parties, attorneys, witnesses, and courts time and money. *See MDL Standards and Best Practices*, Duke Law Center for Judicial Studies, Standard No. 1, excerpted at Exhibit F. An MDL where plaintiffs cannot, as a practical matter, speak to each other or share work product without fear of violating a court order is guaranteed to accomplish none of those goals. *See, generally, In re Zyprexa Products Liab. Litig.*, No. 05 CV 2948, 2007 WL 4510324, at *2 (E.D.N.Y. Dec. 21, 2007) (ordering the parties to "work together in good faith to ensure that all parties have available at the soonest practicable time all discovery previously taken in the MDL").

[12] The situation is even more absurd than that because different plaintiffs with purportedly different access rights often are represented by the same law firm. So even a single law firm may have to file two versions of a brief or letter on similar issues, one for each client, citing only to documents to which that client is allowed access.

**D. There is no confidentiality concern or other burden that would justify the severe disruption to plaintiffs' ability to coordinate.**

Traditionally, protective orders are justified based on concerns for revealing trade secrets and confidential business or personal information, and prejudicing potential juror pools.[13] No such concerns apply here, as DAPs of course would themselves keep materials confidential.

The OTC Class Defendants cannot claim this to be an issue of burden. DAPs are only seeking access to materials already produced to other plaintiffs in this very MDL. By seeking to scatter the documents into multiple categories, the OTC Class Defendants' approach is *increasing* the burden not just on the Court and plaintiffs, but on themselves as well.

Nor is this a matter of personal jurisdiction. By definition, documents given to the OTC class are already in the U.S., in the hands of U.S. law firms and U.S. plaintiffs, under the supervision of a U.S. court.[14] Allowing a DAP to access already-produced-here documents in order to serve the judicial interest in efficiency no more raises personal jurisdiction concerns than would a Court order requiring briefs referencing already-produced-here documents to be filed publicly in order to serve the judicial interest in the transparent administration of justice.

* * *

DAPs thus respectfully ask the Court to allow all DAPs who survived in any part the motion to dismiss rulings to fully access productions being made to the OTC Class and modify § 2.3.1 of the Protective Order to clarify that § 2.3.1 should not be used to limit any party's ability to access relevant documents.

Sincerely,

*/s/James R. Martin*

James R. Martin
*Co-Liaison Counsel*
*on behalf of Direct Action Plaintiffs*

cc: All Counsel of Record (by Electronic Filing)

---

[13] *See, e.g.*, *Med. Diagnostic Imaging, PLLC v. Carecore Nat., LLC*, No. 06 CIV. 13516 VM/THK, 2009 WL 2135294, at *2 (S.D.N.Y. July 16, 2009); *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 398 (E.D.N.Y. 2007).

[14] As part of their own discovery, DAPs could eventually obtain these documents by subpoenaing those U.S. firms or U.S. parties. *See Orbit One Commc'ns, Inc. v. Numerex Corp.*, 255 F.R.D. 98, 110 (S.D.N.Y. 2008) (requiring the production of non-privileged, relevant documents that were in the possession of counsel). DAPs have not yet propounded those subpoenas because the Discovery Ruling does not expressly authorize them to do so.

## APPENDIX A

| | BoA | Citibank | Credit Suisse | Deutsche Bank | JP Morgan | Royal Bank of Canada | UBS |
|---|---|---|---|---|---|---|---|
| Amabile | **X**[15] 4/15/09 – 5/31/10 | **X** 4/09 – 5/31/10 | | Meet and confer | **X** 4/15/09 – 5/31/11 | | **X** 4/15/09 – 5/31/11 |
| Bay Area Toll Authority | **X** | **X** | | | **X** | | |
| City of Houston | | | | | **X** | **X** | **X** |
| City of Philadelphia | | **X** 7/26/09 - 12/31/10 | | | **X** | **X** | |
| City of Richmond | | | | | | **X** | |
| City of Riverside | **X** | | | | | | |
| County of Mendocino | | | | | | | |
| County of Sacramento | **X** | | | **X** | | | |
| County of San Diego | | **X** | | | | | |
| County of San Mateo | | **X** 4/5/09 - 3/11/11 | | | | | |
| County of Sonoma | | | | | | | |
| Darby | | | | **X** | **X** | | **X** |
| East Bay Municipal Utility | **X** | | | | **X** | | |
| Fannie Mae | **X** | **X** | **X** | **X** | **X** | | **X** |
| FDIC | **X** | **X** | **X** | **X** | **X** | | **X** |
| Freddie Mac | **X** 3/14/08 – 5/31/10 | **X** 3/14/08 – 5/31/10 | | | | | **X** 3/14/08 – 5/31/11 |

[15] An "X" denotes that the OTC Class Defendant will produce documents to a particular DAP.

| | BoA | Citibank | Credit Suisse | Deutsche Bank | JP Morgan | Royal Bank of Canada | UBS |
|---|---|---|---|---|---|---|---|
| Maragos | **X** | **X** | | | **X** | | **X** |
| NCUA | **X** | | | **X** | **X** | | **X** |
| Principal Financial | **X** | **X** | | **X** | **X** | **X** | **X** |
| Principal Funds | **X** | **X** | | | **X** | | **X** |
| Prudential | | **X** 5/10/08 - 12/31/10 | | | | | **X** |
| Regents of California | **X** | | | **X** | | | |
| Salix Capital | **X** 8/9/07 – 12/3/09 | **X** 8/9/07 - 5/31/10 | | **X** 8/9/07 - 12/8/09 | **X** 8/9/07 – 12/3/10 | | **X** 8/9/07 – 12/3/10 |
| San Diego Association of Governments | **X** | | | | | | |
| Triaxx | **X** | **X** | | | **X** | | **X** |