**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262<br>Master File No. 1:11-md-2262-NRB |
| THIS DOCUMENT RELATES TO: | **ORAL ARGUMENT REQUESTED** |

| | |
|---|---|
| ELLEN GELBOIM, *et al.*,<br>　　　　　　　　Plaintiffs,<br>　　　v.<br>CREDIT SUISSE GROUP AG, *et al.*,<br>　　　　　　　　Defendants. | No. 12-cv-1025 |
| METZLER INVESTMENT GmbH, *et al.*,<br>　　　　　　　　Plaintiffs,<br>　　　v.<br>CREDIT SUISSE GROUP AG, *et al.*,<br>　　　　　　　　Defendants. | No. 11-cv-2613 |
| MAYOR AND CITY OF BALTIMORE, *et al.*,<br>　　　　　　　　Plaintiffs,<br>　　　v.<br>CREDIT SUISSE GROUP AG, *et al.*,<br>　　　　　　　　Defendants. | No. 11-cv-5450 |
| JOSEPH AMABILE, *et al.*,<br>　　　　　　　　Plaintiffs,<br>　　　v.<br>BANK OF AMERICA CORP., *et al.*,<br>　　　　　　　　Defendants. | No. 13-cv-1700 |
| BAY AREA TOLL AUTHORITY,<br>　　　　　　　　Plaintiff,<br>　　　v.<br>BANK OF AMERICA CORP., *et al.*,<br>　　　　　　　　Defendants. | No. 14-cv-3094 |

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br>                              Plaintiff,<br>                    v.<br>BANK OF AMERICA CORP., *et al.*,<br>                              Defendants. | No. 13-cv-5186 |
| EAST BAY MUNICIPAL UTILITY DISTRICT,<br>                              Plaintiff,<br>                    v.<br>BANK OF AMERICA CORP., *et al.*,<br>                              Defendants. | No. 13-cv-0626 |
| SAN DIEGO ASSOCIATION OF GOVERNMENTS,<br>                              Plaintiff,<br>                    v.<br>BANK OF AMERICA CORP., *et al.*,<br>                              Defendants. | No. 13-cv-5221 |
| CITY OF RICHMOND, *et al.*,<br>                              Plaintiffs,<br>                    v.<br>BANK OF AMERICA CORP., *et al.*,<br>                              Defendants. | No. 13-cv-0627 |
| CITY OF RIVERSIDE, *et al.*,<br>                              Plaintiffs,<br>                    v.<br>BANK OF AMERICA CORP., *et al.*,<br>                              Defendants. | No. 13-cv-0597 |
| COUNTY OF MENDOCINO, *et al.*,<br>                              Plaintiffs,<br>                    v.<br>BANK OF AMERICA CORP., *et al.*,<br>                              Defendants. | No. 13-cv-8644 |

| | |
|---|---|
| COUNTY OF SACRAMENTO,<br>                              Plaintiff,<br>             v.<br>BANK OF AMERICA CORP., *et al.*,<br>                              Defendants. | No. 13-cv-5569 |
| COUNTY OF SAN DIEGO, *et al.*,<br>                              Plaintiffs,<br>             v.<br>BANK OF AMERICA CORP., *et al.*,<br>                              Defendants. | No. 13-cv-0667 |
| COUNTY OF SAN MATEO, *et al.*,<br>                              Plaintiffs,<br>             v.<br>BANK OF AMERICA CORP., *et al.*,<br>                              Defendants. | No. 13-cv-0625 |
| COUNTY OF SONOMA, *et al.*,<br>                              Plaintiffs,<br>             v.<br>BANK OF AMERICA CORP., *et al.*,<br>                              Defendants. | No. 13-cv-5187 |
| DARBY FINANCIAL PRODUCTS, *et al.*,<br>                              Plaintiffs,<br>             v.<br>BARCLAYS BANK PLC, *et al.*,<br>                              Defendants. | No. 13-cv-8799 |
| FEDERAL DEPOSIT INSURANCE CORP. as Receiver for AMCORE BANK, N.A., *et al.*,<br>                              Plaintiff,<br>             v.<br>BANK OF AMERICA CORP., *et al.*,<br>                              Defendants. | No. 14-cv-1757 |

| | |
|---|---|
| THE FEDERAL HOME LOAN MORTGAGE CORP.,<br><br>                  Plaintiff,<br>      v.<br>BANK OF AMERICA CORP., *et al.*,<br>                  Defendants. | No. 13-cv-3952 |
| CITY OF HOUSTON,<br>                  Plaintiff,<br>      v.<br>BANK OF AMERICA CORP., *et al.*,<br>                  Defendants. | No. 13-cv-5616 |
| CITY OF PHILADELPHIA, *et al.*,<br>                  Plaintiffs,<br>      v.<br>BANK OF AMERICA CORP., *et al.*,<br>                  Defendants. | No. 13-cv-6020 |
| NATIONAL CREDIT UNION ADMINISTRATION BOARD as Liquidating Agent for U.S. Central Federal Credit Union, et al.,<br>                  Plaintiff,<br>      v.<br>CREDIT SUISSE GROUP AG, *et al.*,<br>                  Defendants. | No. 13-cv-7394 |
| PRINCIPAL FINANCIAL GROUP, INC., *et al.*,<br>                  Plaintiffs,<br>      v.<br>BANK OF AMERICA CORP., *et al.*,<br>                  Defendants. | No. 13-cv-6014 |
| PRINCIPAL FUNDS, INC., *et al.*,<br>                  Plaintiffs,<br>      v.<br>BANK OF AMERICA CORP., *et al.*,<br>                  Defendants. | No. 13-cv-6013 |

| | |
|---|---|
| PRUDENTIAL INVESTMENT PORTFOLIOS 2, *et al.*,<br>                              Plaintiffs,<br>               v.<br>BANK OF AMERICA CORP., *et al.*,<br>                              Defendants. | No. 14-cv-4189 |
| SALIX CAPITAL US INC.,<br>                              Plaintiffs,<br>               v.<br>BANC OF AMERICA SECURITIES LLC, *et al.*,<br>                              Defendants. | No. 13-cv-4018 |
| CHARLES SCHWAB BANK, N.A., *et al.*,<br>                              Plaintiffs,<br>               v.<br>BANK OF AMERICA CORP., *et al.*,<br>                              Defendants. | No. 11-cv-6411 |
| SCHWAB MONEY MARKET FUND, *et al.*,<br>                              Plaintiffs,<br>               v.<br>BANK OF AMERICA CORP., *et al.*,<br>                              Defendants. | No. 11-cv-6412 |
| SCHWAB SHORT-TERM BOND MARKET FUND, *et al.*,<br>                              Plaintiffs,<br>               v.<br>BANK OF AMERICA CORP., *et al.*,<br>                              Defendants. | No. 11-cv-6409 |

**JOINT MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS ALL ANTITRUST
CLAIMS FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................... 3

A.  Plaintiffs' Jurisdictional Allegations ........................................................................ 3

B.  This Court's Prior Personal Jurisdiction Rulings ..................................................... 4

C.  *Gelboim* ................................................................................................................... 6

ARGUMENT .................................................................................................................... 6

I.  Plaintiffs' Conspiracy Allegations Fail to Confer Jurisdiction over Defendants. ................... 7

A.  Vicarious Conspiracy Jurisdiction Violates Due Process. ........................................ 8

B.  Even If an Alleged Co-Conspirator's Conduct Could be Imputed to Another Defendant, Plaintiffs' Allegations Still Do Not Confer Jurisdiction. ......................................... 14

C.  Plaintiffs' Conspiracy Allegations Are Deficient under the Applicable Jurisdictional Rules and Statutes. .................................................................................................... 20

II.  Considerations of Fair Play, Substantial Justice, and International Comity Require Dismissal. .................................................................................................................. 26

III.  Because There Is No Venue, There Is No Personal Jurisdiction Under the Clayton Act Over Defendants Who Are Not Found and Do Not Transact Substantial Business in the District in Which Suit Was Brought. ........................................................................................ 27

IV.  This Court's Prior Jurisdictional Rulings Preclude Any Other Basis for Personal Jurisdiction over Antitrust Claims and Apply to the Plaintiffs Whose Claims Were Not Subject to the *LIBOR IV* and *LIBOR V* Rulings. ............................................................................ 29

CONCLUSION ............................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7 W. 57th St. Realty Co.* v. *Citigroup, Inc.*,
   2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ...........................................................17, 22n

*Aeroflex Wichita, Inc.* v. *Filardo*,
   275 F.3d 869 (Kan. 2012) ...........................................................................................25n

*AgJunction LLC* v. *Agrian Inc.*,
   2014 WL 3361728 (D. Kan. July 9, 2014) ....................................................................18

*In re Aluminum Warehousing Antitrust Litig.*,
   90 F. Supp. 3d 219 (S.D.N.Y. 2015)......................................................................*passim*

*Arrowsmith* v. *United Press Int'l*,
   320 F.2d 219 (2d Cir. 1963) (*en banc*) (Friendly, J.)...................................14n, 21n

*Asahi Metal Indus. Co.* v. *Superior Court*,
   480 U.S. 102 (1987)....................................................................................................8n

*In re Auto. Parts Antitrust Litig.*,
   2015 WL 4508938 (E.D. Mich. July 24, 2015) ....................................................11, 13

*Avra Surgical Robotics, Inc.* v. *Gombert*,
   41 F. Supp. 3d 350 (S.D.N.Y. 2014)............................................................................20

*Bankers Life & Cas. Co.* v. *Holland*,
   346 U.S. 379 (1953)...............................................................................................11, 22

*Bertha Bldg. Corp.* v. *Nat'l Theatres Corp.*,
   248 F.2d 833 (2d Cir. 1957), *cert. denied*, 356 U.S. 936 (1958).......................12, 22

*BHC Interim Funding, LP* v. *Bracewell & Patterson, LLP*,
   2003 WL 21467544 (S.D.N.Y. June 25, 2003) ...........................................................25n

*Brown* v. *Kerkhoff*,
   504 F. Supp. 2d 464 (S.D. Iowa 2007) ...........................................12, 14, 23, 24n

*Brown* v. *Lockheed Martin Corp.*,
   814 F.3d 619 (2d Cir. 2016) ............................................................14n, 21n, 27

*Burger King Corp.* v. *Rudzewicz*,
   471 U.S. 462 (1985)....................................................................................................10

*Chew* v. *Dietrich*,
143 F.3d 24 (2d Cir.1998).................................................................8n, 19

*Cold Spring Harbor Lab.* v. *Ropes & Gray LLP*,
762 F. Supp. 2d 543 (E.D.N.Y. 2011) ...............................................28n

*Daimler AG* v. *Bauman*,
134 S. Ct. 746 (2014).......................................................................12, 26

*Daniel* v. *Am. Bd. of Emergency Med.*,
428 F.3d 408 (2d Cir. 2005)............................................................ *passim*

*Daventree Ltd.* v. *Republic of Azerbaijan*,
349 F. Supp. 2d 736 (S.D.N.Y. 2004).............................................25n

*Davis* v. *A & J Elec.*,
792 F.2d 74 (7th Cir. 1986) ............................................................21

*Delta Brands Inc.* v. *Danieli Corp.*,
99 F. App'x 1 (5th Cir. 2004) .........................................................24n

*Diamond Chem. Co.* v. *Atofina Chems., Inc.*,
268 F. Supp. 2d 1 (D.D.C. 2003) ....................................................21n

*Expoconsul Int'l, Inc.* v. *A/E Sys., Inc.*,
711 F. Supp. 730 (S.D.N.Y. 1989) ..................................................27n

*Gates* v. *Wilkinson*,
2003 WL 21297296 (S.D.N.Y. June 4, 2003) ...............................28n, 28

*Gelboim* v. *Bank of America Corp.*,
2016 WL 2956968 (2d Cir. May 23, 2016) ..................................... *passim*

*Gem Corrugated Box Corp.* v. *Mead Corp.*,
189 F. Supp. 584 (S.D.N.Y. 1960) ..................................................28n

*Grove Press, Inc.* v. *Angleton*,
649 F.2d 121 (2d Cir. 1981)...........................................................12n, 24

*Gucci Am. Inc.* v. *Weixing Li*,
768 F.3d 122 (2d Cir. 2014)............................................................26

*Guidotti* v. *Legal Helpers Debt Resolution, L.L.C.*,
866 F. Supp. 2d 315 (D.N.J. 2011), *vacated on other grounds by*, 716 F.3d 76
(3d Cir. 2013).................................................................................24n

*Hanna* v. *Blanchette*,
2014 WL 4185816 (S.D. Tex. Aug. 21, 2014) ...............................11, 24n

iii

*Hanson* v. *Denckla*,
  357 U.S. 235 (1958)..................................................................8-9

*Heinfling* v. *Colapinto*,
  946 F. Supp. 260 (S.D.N.Y. 1996) .........................................25

*In re Honey Transshipping Litig.*,
  87 F. Supp. 3d 855 (N.D. Ill. 2015) .....................................23n

*Indep. Printers Worldwide, Inc.* v. *Cole*,
  2015 WL 4705507 (E.D. Va. Aug. 6, 2015) .........................26n

*Ins. Corp. of Ireland Ltd.* v. *Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982).................................................................8

*International Shoe Co.* v. *Washington*,
  326 U.S. 310 (1945)..........................................................8n, 23n

*J. McIntyre Machinery, Ltd.* v. *Nicastro*,
  564 U.S. 873 (2011) (plurality opinion) ...............................19

*Keeton* v. *Hustler Magazine, Inc.*,
  465 U.S. 770 (1984).................................................................8

*Khan* v. *Gramercy Advisors, LLC*,
  2016 WL 3364747 (Ill. App. Ct. June 15, 2016) ..................23n

*Kingsepp* v. *Wesleyan Univ.*,
  763 F. Supp. 22 (S.D.N.Y. 1991) ..........................................29n

*Kipperman* v. *McCone*,
  422 F. Supp. 860 (N.D. Cal. 1976) ...................................12, 23

*L.H. Carbide Corp.* v. *Piece Maker Co.*,
  852 F. Supp. 1425 (N.D. Ind. 1994) .....................................15n

*Lamont* v. *Haig*,
  590 F.2d 1124 (D.C. Cir. 1978).............................................12n

*Laydon* v. *Mizuho Bank, Ltd.*,
  2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) .........................27

*Leasco Data Processing Equip. Corp.* v. *Maxwell*,
  468 F.2d 1326 (2d Cir. 1972).............................................2, 10

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  962 F. Supp. 2d 606 (S.D.N.Y. 2013).....................................19

*In re LIBOR-Based Financial Instruments Antitrust Litigation,*
  2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ................................................................ *passim*

*In re LIBOR-Based Financial Instruments Antitrust Litigation,*
  2015 WL 6696407 (S.D.N.Y. Nov. 3, 2015) ........................................................6, 15, 17, 30

*Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL,*
  673 F.3d 50 (2d Cir. 2012)............................................................................................14n

*Marvel Characters, Inc.* v. *Kirby,*
  726 F.3d 119 (2d Cir. 2013)...........................................................................................21

*Menowitz* v. *Brown,*
  991 F.2d 36 (2d Cir. 1993).............................................................................................7n

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,*
  2005 WL 106936 (S.D.N.Y. Jan. 18, 2005) ...................................................................7n

*Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.,*
  84 F.3d 560 (2d Cir. 1996).............................................................................................27

*Murphy* v. *Am. Gen. Life Ins. Co.,*
  2015 WL 4379834 (C.D. Cal. July 15, 2015) ...............................................................23n

*Nat'l Indus. Sand Ass'n* v. *Gibson,*
  897 S.W.2d 769 (Tex. 1995)..........................................................................................24n

*In re New Motor Vehicles Canadian Export Antitrust Litg.,*
  307 F. Supp. 2d 145 (D. Me. 2004) ..............................................................................23n

*O'Connor* v. *Sandy Lane Hotel Co.,*
  496 F.3d 312 (3d Cir. 2007)...........................................................................................20

*Pennoyer* v. *Neff,*
  95 U.S. 714 (1877)..........................................................................................................8n

*Peterson* v. *Wallace,*
  622 F. Supp. 2d 791 (D. Minn. 2008)............................................................................25

*Piedmont Label Co.* v. *Sun Garden Packing Co.,*
  598 F.2d 491 (9th Cir. 1979) ........................................................................................12n

*Pincone* v. *D'Alfonso,*
  506 F. App'x 22 (2d Cir. 2012) ......................................................................................28

*Ploense* v. *Electrolux Home Products, Inc.,*
  882 N.E.2d 653 (Ill. App. Ct. 2007) .............................................................................23n

*Precision Assocs., Inc.* v. *Panalpina World Transp. (Holding) Ltd.*,
    2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011) ...................................................23n

*Remmes* v. *Int'l Flavors & Fragrances, Inc, a New York co.*,
    389 F. Supp. 2d 1080 (N.D. Iowa 2005)........................................24n, 25n

*Romak USA, Inc.* v. *Rich*,
    384 F.3d 979 (8th Cir. 2004) .........................................................................14

*Rush* v. *Savchuk*,
    444 U.S. 320 (1980)...........................................................................................9

*San Antonio Tel. Co.* v. *Am. Tel. & Tel. Co.*,
    499 F.2d 349 (5th Cir. 1974) ......................................................................12n

*SEC* v. *Straub*,
    921 F. Supp. 2d 244 (S.D.N.Y. 2013)..........................................................8n

*Sher* v. *Johnson*,
    911 F.2d 1357 (9th Cir. 1990) ......................................................................10

*In re Shulman Transp. Enter., Inc.*,
    744 F.2d 293 (2d Cir. 1984).........................................................................12n

*Sioux Pharm, Inc.* v. *Summit Nutritionals Int'l, Inc.*,
    859 N.W.2d 182 (Iowa 2015) .......................................................................24n

*Spivak* v. *Law Firm of Tripp Scott, P.A.*,
    2015 WL 1084856 (N.D. Ohio Mar. 10, 2015) .......................................11

*SPV OSUS Ltd.* v. *UBS AG*,
    114 F. Supp. 3d 161 (S.D.N.Y. 2015).........................................................19

*Sugartown Worldwide LLC* v. *Shanks*,
    2015 WL 1312572 (E.D. Pa. Mar. 24, 2015)...........................................26n

*Sunward Elecs., Inc.* v. *McDonald*,
    362 F.3d 17 (2d Cir. 2004)...........................................................................7n

*In re Terrorist Attacks on Sept. 11, 2001*,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005)...............................................6, 24, 25n

*Tymoshenko* v. *Firtash*,
    2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) .........................................21

*In re U.S. Office Prods. Co. Sec. Litig.*,
    251 F. Supp. 2d 58 (D.D.C. 2003) ..............................................................28

vi

*United States* v. *Phillip Morris Inc.*,
116 F. Supp. 2d 116 (D.D.C. 2000) ................................................................20

*United States* v. *Smithfield Foods, Inc.*,
332 F. Supp. 2d 55 (D.D.C. 2004) ................................................................21n

*Walden* v. *Fiore*,
134 S. Ct. 1115 (2014) ................................................................ *passim*

*World Skating Fed'n* v. *Int'l Skating Union*,
357 F. Supp. 2d 661 (S.D.N.Y. 2005)................................................25n, 29n

*World-Wide Volkswagen Corp.*, v. *Woodson*,
444 U.S. 286 (1980)................................................................................10

*Yellow Brick Road, LLC* v. *Childs*,
36 F.Supp.3d 855 (D. Minn. 2014) ................................................................25n

*Yen* v. *Buchholz*,
2010 WL 1758623 (N.D. Cal. Apr. 30, 2010) ................................................23n

**Law Reviews**

Ann Althouse, *The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis*, 52 Fordham L. Rev. 234 (1983) ................................................12n

Janet Cooper Alexander, *Unlimited Shareholder Liability Through a Procedural Lens*, 106 Harv. L. Rev. 387 (1992) ................................................................10n, 11n, 14n

Stuart M. Riback, *The Long Arm and Multiple Defendants: The Conspiracy Theory of In Personam Jurisdiction*, 84 Colum. L. Rev. 506 (1984)................................................ *passim*

**Rules**

Federal Rule of Civil Procedure 4(k)(1)(A)................................................21, 21n

Federal Rule of Civil Procedure 4(k)(1)(C)................................................ 21-22, 23n

Federal Rule of Civil Procedure 4(k)(2) ................................................21, 21n, 23n

Federal Rule of Civil Procedure 12(b)(2) ................................................1, 31

Federal Rule of Civil Procedure 12(b)(3). ................................................1, 31

**Statutes**

15 U.S.C. § 22 (Clayton Act)................................................................ *passim*

vii

Following the Second Circuit's remand in *Gelboim* v. *Bank of America Corp.*, 2016 WL 2956968 (2d Cir. May 23, 2016) ("*Gelboim*"), Defendants respectfully submit this joint memorandum of law in support of their motion to dismiss the captioned complaints pursuant to Federal Rule of Civil Procedure 12(b)(2) and (b)(3).[1]

## PRELIMINARY STATEMENT

As this Court has recognized, USD LIBOR was at all relevant times administered by a U.K. trade association and based upon panel bank submissions "determined or transmitted" outside of the U.S. and primarily from London.  Because of the wholly foreign nature of the alleged wrongdoing, this Court held that it could not exercise specific jurisdiction over Plaintiffs' persistent-suppression claims against Defendants.  *Gelboim* changes none of this.  Plaintiffs do not, and cannot, allege that each Defendant directed activities of the alleged conspiracy at or in the U.S.  Therefore, they cannot establish personal jurisdiction consistent with due process or state and federal law.

Plaintiffs seek to revisit this Court's sound rulings in light of *Gelboim*, arguing that specific personal jurisdiction exists under a broad and often-criticized theory of what we term "vicarious conspiracy jurisdiction."  According to Plaintiffs, once a conspiracy is adequately alleged, then, regardless of the extent (or, in this case, absence) of each Defendant's own claim-related contacts with the relevant forum, there is personal jurisdiction over all Defendants who allegedly participated in that conspiracy if a single overt act in furtherance of the alleged conspiracy was committed by *any* Defendant in the forum.  *See, e.g.*, June 24, 2016 Ltr. from Bondholder Pls. to Ct., Dkt. 1468 at 2.

---

[1] Defendants move to dismiss for lack of personal jurisdiction in the jurisdictions set forth in Schedule B ("Challenged Jurisdictions").  Because under Second Circuit precedent venue is a prerequisite for personal jurisdiction, *see* Part III below, Plaintiffs' failure to establish venue as to certain Defendants further supports dismissal for lack of personal jurisdiction as set forth in Schedule C.  For avoidance of doubt these Defendants also move under Fed. R. Ci. P. 12(b)(3).  Appendix A provides summary information for each Defendant based upon the declarations filed previously and resubmitted here as Exhibit 1 to the Declaration of Joel Kurtzberg.  Also submitted is a declaration previously filed in another action which is attached as Exhibit 2 to the Declaration of Joel Kurtzberg.  Defendants include the British Bankers' Association, BBA Enterprises Ltd., and BBA LIBOR Ltd. (collectively, the "BBA").

Plaintiffs' theory of "vicarious conspiracy jurisdiction" should be rejected because it is inconsistent with due process.  In *Walden* v. *Fiore*, the Supreme Court emphasized that "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State," not based on "contacts he makes by interacting with other persons affiliated with the State."  134 S. Ct. 1115, 1123, 1125 (2014).[2]  Even before *Walden*, the Second Circuit rejected any theory of "conspiracy jurisdiction" as broad as that proposed by Plaintiffs here, noting that the principles governing agency in the context of liability differ from those governing personal jurisdiction.  *See Leasco Data Processing Equip. Corp.* v. *Maxwell*, 468 F.2d 1326, 1341 n.11 (2d Cir. 1972) (rejecting theory that defendant's participation in a conspiracy where a purported co-conspirator committed acts in the relevant forum demonstrates jurisdiction), *abrogated on other grounds by Morrison* v. *Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010).  Rather, if personal jurisdiction based on a conspiracy theory can ever comport with due process, a plaintiff must show, at the very least, that each defendant had direction or control over a co-conspirator's tortious acts in the relevant forum, such that the defendant has availed itself of the forum through the defendant's conduct in the conspiracy.  Plaintiffs make no such allegations here.  To hold that the attenuated forum contacts of a defendant's alleged co-conspirators alone — without allegations the defendant even knew of or benefited from those forum contacts, much less directed or caused them to be made — can confer jurisdiction would violate traditional notions of fair play and substantial justice and threaten international comity.

Personal jurisdiction is also lacking here because "vicarious conspiracy jurisdiction" (a) should be rejected under federal common law and the Clayton Act; (b) is not recognized as a basis for personal jurisdiction under the laws of certain Challenged Jurisdictions; and (c) is not recognized in other states, such as New York and Minnesota, unless plaintiffs can also allege — as Plaintiffs do not, and cannot, do here — that each defendant separately directed and controlled tortious actions toward the forum as part of the alleged conspiracy.  Finally, personal jurisdiction

---

[2] Unless otherwise specified, internal citations and quotations are omitted, docket references are to No. 11-md-2262.

is lacking as to some Defendants because those Defendants are not "inhabitants," are not "found," and do not "transact[] business" in the Challenged Jurisdictions, i.e., venue is improper.

## BACKGROUND

### A. Plaintiffs' Jurisdictional Allegations

Plaintiffs allege that Defendants conspired to persistently suppress USD LIBOR whereby the bank Defendants made artificially low USD LIBOR submissions to the BBA. *See, e.g.*, OTC Prop. Compl.[3] ¶ 5.[4] Plaintiffs allege that Defendants "possessed reputational and financial incentives to manipulate LIBOR." *Id.* ¶ 87. Specifically, Plaintiffs allege that Defendants suppressed USD LIBOR every day for at least three years to falsely project financial strength and that Defendants "suppress[ed] as a pack" to avoid "unwanted media and regulatory attention." *Id.* ¶¶ 1, 52, 74-85. Plaintiffs also allege that Defendants suppressed USD LIBOR to reduce their outgoing interest payments on certain financial instruments linked to USD LIBOR. *Id.* ¶ 86.

In furtherance of the alleged conspiracy, Defendants allegedly "participated in meetings and/or conversations" to discuss their intended USD LIBOR submissions in advance. *Id.* ¶ 340. But Plaintiffs do not — and cannot — allege that any of Defendants' USD LIBOR submissions or alleged communications about those submissions occurred in the U.S., and Plaintiffs acknowledge that USD LIBOR is based upon submissions to the BBA *in London*. *E.g.*, Bond-

---

[3] Short form references to the complaints are used throughout this memorandum while long forms are set forth in the Defendants' Notice of Motions to Dismiss. The operative complaints in the Bondholder, OTC and Exchange actions are the Bondholder Compl., the OTC Compl. and the Exchange Compl. However, Defendants address the factual allegations contained in the OTC Prop. Compl. and Exchange Prop. Compl. in support of their argument that the Court should deny Plaintiffs leave to amend the operative complaints in those actions. Defendants reserve all rights to bring a motion to dismiss any future complaint filed by the OTC and Exchange Plaintiffs at an appropriate time.

[4] Certain Plaintiffs also allege that certain Defendants' traders manipulated LIBOR to benefit their trading positions. *See, e.g.*, Exchange Prop. Compl. ¶¶ 265-82. Because the Second Circuit did not address trader-based manipulation, this Court's rulings relating to trader-based claims remain undisturbed. On June 30, 2016, Defendants sought leave to brief issues relating to the plausibility of Plaintiffs' trader-based conspiracy allegations and allegations that the non-panel banks participated in the suppression-based conspiracy. Dkt. 1473. This Court denied that request (*see* Dkt. Nos. 1474 & 1443 (deferring briefing with respect to certain trader-based claims pending resolution of motions addressing efficient enforcer and conspiracy jurisdiction issues)) and, as a result, Defendants do not address here whether this Court may exercise personal jurisdiction over Plaintiffs' trader-based antitrust claims. Defendants reserve the right to brief these issues at a later date, including to the extent Plaintiffs attempt to raise them in opposition. Regardless, this Court has held that these "trader-based manipulation" allegations are irrelevant to the alleged persistent-suppression conspiracy. *See* Apr. 29, 2016 Order, Dkt. 1396 ("Apr. 29 Order") at 7-8.

holder Prop. Compl. ¶¶ 28, 36.  For example, Plaintiffs allege that a U.K.-based Barclays USD LIBOR submitter had a telephone call with "a USD LIBOR submitter from another panel bank" (who is not alleged to have been in the U.S.) during which "the other submitter shared his planned bid" and discussed "where other panel banks would be submitting that day."  OTC Prop. Compl.  ¶ 3.  That same non-U.S. Barclays submitter allegedly also received information about other panel banks' submissions through brokers.  Exchange Prop. Compl. ¶¶ 295-300, 361. From this, Plaintiffs ask the Court to infer "that Defendants shared confidential LIBOR submissions in advance in order to enable them to collude to suppress LIBOR."  OTC Prop. Compl. ¶ 120.

Plaintiffs also allege that Defendants knew that other Defendants were submitting artificially low USD LIBOR quotes, OTC Prop. Compl. ¶¶ 96, 99, 101, and that Defendants knew that suppressing USD LIBOR would harm their customers.  *Id.* ¶¶ 341-43.  Plaintiffs allege that, despite this purported knowledge, some Defendants allegedly failed to "blow the whistle" on other Defendants.  Bondholder Prop. Compl. ¶¶ 153-57.[5]  Beyond Defendants' USD LIBOR submissions and their alleged sharing of information about those submissions,[6] however, Plaintiffs allege no other overt acts in support of the alleged persistent suppression conspiracy.[7]

## B.  This Court's Prior Personal Jurisdiction Rulings

In *In re LIBOR-Based Financial Instruments Antitrust Litigation,* 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ("*LIBOR IV*"), this Court held that specific jurisdiction may exist with

---

[5] *But see, e.g.*, Barclays DOJ SOF ¶ 42 (alleging Barclays communicated with FSA, Bank of England, and Federal Reserve, that the "LIBOR fixes were too low and did not accurately reflect the market"); Barclays CFTC Order at 22; *id.* at 24 n.24 (same); *id.* at 21 (Barclays also reported these suspicions to the BBA, stating that it "believed that LIBOR panel banks, *including Barclays*, were submitting rates that were too low because they were afraid to 'stick their heads above the parapet,' … [Barclays] *encouraged the BBA to react and be heavy handed, suggesting the sanction that banks involved in such conduct be removed from the panel.*") (emphasis added).

[6] As to the BBA, Plaintiffs' allegations are scant and effectively boil down to the assertion that the BBA made reassuring statements to the public about LIBOR while persistent suppression was underway.  *See, e.g.*, Federal Home Loan Mortgage Corporation Am. Compl., (No. 13-cv-3952, Dkt. 60) ¶¶ 101, 102, 111-113.

[7] Plaintiffs have submitted a variety of additional factual allegations concerning various alleged influences on the USD LIBOR submission process from the U.S.  *See, e.g.*, Dkt. 1458 at 2-3.  Even if these allegations were credited, they are irrelevant because, *inter alia*, they all relate to either alleged trader-based manipulation or currencies other than USD LIBOR (such as Yen LIBOR).  Apr. 29 Order at 7-8; Nov. 18, 2014 Order, Dkt. 848 at 10.

respect to persistent suppression claims in a forum if a Defendant determined or transmitted a false USD LIBOR submission in the relevant forum.[8]  2015 WL 6243526, at \*32.  This Court subsequently made clear that Plaintiffs have failed to allege "that the LIBOR determination and submission process occurred any place other than outside the United States."  Apr. 29 Order at 8.  This Court also found numerous other jurisdictional allegations insufficient, holding, for example, that "there is no basis to infer that issuers of broadly-traded securities such as bonds and MBS purposely directed those securities into plaintiffs' home forums," and that such contracts therefore do not support personal jurisdiction.  *LIBOR IV*, 2015 WL 6243526, at \*31.  In addition, this Court held that Defendants were not subject to general jurisdiction, except in their places of incorporation or principal places of business.[9]  *Id.* at \*26-27.

This Court further held that "conspiracy jurisdiction" was unavailing because Plaintiffs failed to allege a plausible conspiracy to manipulate USD LIBOR.  *Id.* at \*29.  Assuming *arguendo* that the theory applied, this Court noted that certain courts recognizing personal jurisdiction on a conspiracy theory have required plaintiffs to, at the very least, "(1) make a *prima facie* factual showing of a conspiracy; (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy; and (3) show that the defendant's co-conspirator committed a tortious act pursuant to the conspiracy in [the forum]."  *Id.*  Finding that Plaintiffs had failed to satisfy the first prong, this Court ended the inquiry there and expressly declined to reach Defendants' additional legal challenges to conspiracy jurisdiction, "including defendants' argument that it is inconsistent with the Supreme Court's statement that personal jurisdiction 'must arise out of contacts that the 'defendant *himself* creates with the forum State.'"  *Id.* at \*29 n.48 (quoting *Walden*, 134 S. Ct. at 1122 (emphasis in original)).  This Court also did not address the

---

[8] This Court also held that certain Defendants were subject to specific jurisdiction with respect to certain claims in a forum where a bond was issued, where a swap counterparty entered into a swap agreement, or designated by a forum selection clause.  *LIBOR IV*, 2015 WL 6243526, at \*37-38.  To exercise jurisdiction on the basis of these contracts, however, the claim must relate to the particular contractual relationship.  *Id.* at \*34.  The Court's prior rulings do not provide a basis for the exercise of personal jurisdiction over Plaintiffs' antitrust claims here.  *See* Part IV below.

[9] This Court since has held that Defendants did not consent to personal jurisdiction in New York by registering with the State's Department of Financial Services.  *See* Apr. 15, 2016 Order, Dkt. 1380 ("Apr. 15 Order") at 19-21.

remaining requirements for establishing "conspiracy jurisdiction" under New York law: that "(a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control or at the request of or on behalf of the out-of-state defendant." *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 805 (S.D.N.Y. 2005).

In *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 2015 WL 6696407, (S.D.N.Y. Nov. 3, 2015) ("*LIBOR V*"), this Court reaffirmed its holdings on personal jurisdiction in the putative class actions. *Id.* at *8-9, 14, 19. It also held that Defendants had not waived their personal jurisdiction arguments in the Exchange and OTC Actions, because they had raised them promptly after intervening subsequent authority. *Id.* at *17-18.

### C. *Gelboim*

In *Gelboim*, the Second Circuit held that Plaintiffs plausibly alleged antitrust injury and an inter-bank conspiracy to persistently suppress USD LIBOR during the putative class period. *Gelboim*, 2016 WL 2956968, at *17. The Second Circuit did not reach the issue of conspiracy jurisdiction. This Court thereafter invited Defendants to renew their motions to dismiss Plaintiffs' antitrust claims for lack of personal jurisdiction in light of the Second Circuit's holding. *See* Letter from the Court to Counsel, Dkt. 1441 at 5. This motion followed.

### ARGUMENT

Plaintiffs' allegations fail to establish a *prima facie* showing that general or specific jurisdiction exists over Defendants. Personal jurisdiction can be general (all-purpose) or specific (conduct-linked). *See LIBOR IV*, 2015 WL 6243526, at *25-27. "Where it applies, the theory of general personal jurisdiction permits suit in a given forum on any and all claims." *Id.* at *25. Specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy." *Id.* at *27. Thus, "[s]pecific personal jurisdiction requires that 'the defendant's suit-related conduct must [have] create[d] a substantial connection with the forum.'" *Id.* (quoting *Walden*, 134 S. Ct. at 1121). To meet this standard, the plaintiff must show that the defendant

"purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there" or "took intentional and allegedly tortious, actions . . . expressly aimed at the forum." *Id*. "[B]ecause specific personal jurisdiction must be established with respect to *each* claim asserted, the claim must arise out of or relate to the defendant's contacts with the forum." *Id*. (emphasis in original).

The personal jurisdiction inquiry requires a two-step analysis: first, whether the defendant is subject to jurisdiction under the law of the forum state; and second, whether the exercise of jurisdiction comports with due process.[10] *Id*. at *21. In multi-district litigation, this Court may exercise personal jurisdiction only to the extent that each transferor court could. *Id*. at *22. Questions of state law are governed by the law of the transferor court and questions of federal law are governed by the law of the transferee court. *Id*.[11]

"Once a defendant has challenged personal jurisdiction, the plaintiff bears the burden of establishing it." *Id*. at *21. Where a plaintiff fails to "make out a *prima facie* showing that personal jurisdiction exists," it fails to meet its burden. *Id*. While the court construes the pleadings in the light most favorable to a plaintiff, it may not "draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *Id*. The court can also consider documents beyond the pleadings. *Id*. at *40.

## I.   PLAINTIFFS' CONSPIRACY ALLEGATIONS FAIL TO CONFER JURISDICTION OVER DEFENDANTS.

This Court has ruled that Plaintiffs failed to allege specific jurisdiction as to *any* Defendant in *any* forum based solely on Plaintiffs' persistent suppression allegations. *Gelboim* does not change that conclusion. *Gelboim* held that Plaintiffs had sufficiently alleged an agreement to

---

[10] Certain defendants move to dismiss only the antitrust claims against them on personal jurisdiction grounds. Personal jurisdiction is a claim-by-claim inquiry. *Sunward Elecs., Inc.* v. *McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) ("plaintiff must establish the court's jurisdiction with respect to *each* claim asserted") (emphasis in original). Accordingly, the existence of jurisdiction over a defendant for any other claim, whether by waiver or otherwise, does not determine whether jurisdiction exists over that defendant for an antitrust claim.

[11] *See also Menowitz* v. *Brown*, 991 F.2d 36, 40 (2d Cir. 1993); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 2005 WL 106936, at *5-6 (S.D.N.Y. Jan. 18, 2005).

suppress USD LIBOR.  The mere plausible existence of a conspiracy, however, does not, as Plaintiffs have suggested, subject every member of the purported conspiracy to personal jurisdiction in any forum in which a single co-conspirator allegedly committed a tortious act.  Such an expansive theory of "vicarious conspiracy jurisdiction" fails to comport with due process and the relevant state and federal jurisdictional statutes.

### A. Vicarious Conspiracy Jurisdiction Violates Due Process.

Plaintiffs claim they have adequately alleged personal jurisdiction under a theory of "vicarious conspiracy jurisdiction."  Under Plaintiffs' theory, a defendant is subject to personal jurisdiction — irrespective of either its own forum contacts or its knowledge or control of its co-conspirators' conduct in the forum — so long as the defendant is alleged to have participated in a conspiracy in which *any* co-conspirator committed a tortious act in the forum.  That expansive theory violates the due process clauses of the Fifth and Fourteenth Amendments.[12]

> *1. To comport with due process, jurisdiction must be based on a defendant's efforts to connect itself to the forum.*

The due process component of the personal jurisdiction analysis "recognizes and protects an individual liberty interest."[13]  *Ins. Corp. of Ireland Ltd.* v. *Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).  For this reason, jurisdiction must be established based on "[e]ach defendant's contacts with the forum State," and those contacts "must be assessed individually."  *Keeton* v. *Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984).  "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."  *Hanson* v. *Denckla*, 357 U.S. 235, 253 (1958).  Rather, "it is essential in each case that there be some act by which the defendant purposefully avails itself of

---

[12] "[T]he due process analysis is basically the same under both the Fifth and Fourteenth Amendments."  *Chew* v. *Dietrich*, 143 F.3d 24, 28 n.4 (2d Cir.1998); *accord SEC* v. *Straub*, 921 F. Supp. 2d 244, 253 (S.D.N.Y. 2013).

[13] Prior to *International Shoe Co.* v. *Washington*, 326 U.S. 310 (1945), the notion that "[e]very [s]tate possesses exclusive jurisdiction and sovereignty over persons and property within its territory" was the guiding principle for courts' adjudicatory authority.  *Pennoyer* v. *Neff*, 95 U.S. 714, 722 (1877).  Under modern jurisprudence, the due process analysis focuses on the defendant's expectations, rather than the power of the sovereignty, and thus the relevant question is whether the defendant "purposefully directed [conduct] toward the forum State."  *Asahi Metal Indus. Co.* v. *Superior Court*, 480 U.S. 102, 112 (1987).

the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.*; *see also Rush* v. *Savchuk*, 444 U.S. 320, 332-33 (1980) (jurisdiction not established over non-resident defendant by attributing insurer's forum contacts).

The Supreme Court's decision in *Walden* crystalized these principles.  There, the Court held that "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant."  134 S. Ct. at 1122.  For this reason, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State. . . .  [A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1123, 1126.  In other words, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State," not based on "contacts he makes by interacting with other persons affiliated with the State."  *Id.* at 1123.  Post-*Walden*, vicarious conspiracy jurisdiction should not be recognized.

> 2.  *Plaintiffs' theory of vicarious conspiracy jurisdiction should be rejected because it fails to sufficiently connect Defendants to the Challenged Jurisdictions, as required by due process.*

Plaintiffs claim that by entering an alleged conspiracy, Defendants were on notice that they would be subject to jurisdiction in whichever forum a co-conspirator committed any overt act in furtherance of that conspiracy.  This Court has noted that "[t]he underlying rationale for exercising personal jurisdiction on the basis of conspiracy is that, because co-conspirators are deemed to be each other's agents, the contacts that one co-conspirator made with a forum while acting in furtherance of the conspiracy may be attributed for jurisdictional purposes to the other co-conspirators."  *LIBOR IV*, 2015 WL 6243526, at *29.  But this agency rationale does not comport with due process, because it fails to provide Defendants sufficient notice that they will be subject to suit in the particular forum and can be haled into a court even where they did not themselves create any suit-related contacts with the forum State.

Courts and commentators alike have long distinguished between the showing necessary to impose liability and that necessary to assert personal jurisdiction — different standards gov-

erned by different rationales. "Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants," while "jurisdiction depends only upon each defendant's relationship with the forum."[14]  *Sher* v. *Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990); *see also LIBOR IV*, 2015 WL 6243526, at *20. "Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant . . . ."  *Walden*, 134 S. Ct. at 1122.  In contrast, the "attribution rules of conspiracy law . . . serve the purpose of broadening the pool of resources to which an injured plaintiff may look for recovery."  Stuart M. Riback, *The Long Arm and Multiple Defendants: The Conspiracy Theory of In Personam Jurisdiction*, 84 Colum. L. Rev. 506, 530 (1984).  In other words, the purposes of personal jurisdiction and conspiracy liability are "diametrically opposed."  *Id.*

For this reason, the Supreme Court has for decades analyzed liability and personal jurisdiction under different standards, holding, for example, that the kind of foreseeability needed for liability to attach is not a "sufficient benchmark" for exercising personal jurisdiction.  *See Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 474 (1985); *accord LIBOR IV*, 2015 WL 6243526, at *32.  Instead, "the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp.*, v. *Woodson*, 444 U.S. 286, 297 (1980).  The Second Circuit has also long made this distinction, noting that "courts have been careful to distinguish the test for liability in tort from that for personal jurisdiction" and that, in light of those different tests, "attaining the rather low floor of foreseeability necessary to support a finding of tort liability is not enough to support *in personam* jurisdiction."  *Leasco*, 468 F.2d at 1341, 1341 n.11.  Accordingly, alleging merely that a co-conspirator committed acts in furtherance of the conspiracy in the forum does not confer jurisdiction over a foreign defendant in a way that

---

[14] It is thus "unremarkable" that a defendant could be liable for a co-conspirator's acts but not subject to jurisdiction in the forum where those acts occurred.  *LIBOR IV*, 2015 WL 6243526, at *20; *see also* Janet Cooper Alexander, *Unlimited Shareholder Liability Through a Procedural Lens*, 106 Harv. L. Rev. 387, 394 (1992) ("A defendant's potential liability is not a factor in determining whether a court has personal jurisdiction over her.").

satisfies due process, because such allegations do not address "whether the *defendant's* actions connect him to the *forum.*" *Walden*, 134 S. Ct. at 1124 (emphasis in original).[15]

The Supreme Court's recent decisions have highlighted that, because due process protects the liberty interests of the defendant, jurisdiction "must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* at 1122 (emphasis in original). No "relationship with a plaintiff or third party, standing alone," can be a sufficient basis for asserting jurisdiction. *Id.* at 1123. Given these holdings, courts that have considered the viability of vicarious conspiracy jurisdiction post-*Walden* have rejected it, holding that participation in a conspiracy cannot "provide a standalone basis for jurisdiction." *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015) (rejecting conspiracy jurisdiction as inconsistent with due process). Rather, these courts have found that allegations of conspiracy should not change the jurisdictional analysis: only if a defendant itself "has in fact engaged in some affirmative act directed at the forum" — through actions for itself or in service of a conspiracy, but in either case through its own affirmative acts — may that defendant potentially be subject to jurisdiction. Otherwise, it may not. *Id.*; *see also In re Auto. Parts Antitrust Litig.*, 2015 WL 4508938, at *4 (E.D. Mich. July 24, 2015) (rejecting conspiracy jurisdiction and noting "[t]he Court has no basis for imputing the actions of one defendant to another in analyzing jurisdiction"); *Spivak* v. *Law Firm of Tripp Scott, P.A.*, 2015 WL 1084856, at *5 (N.D. Ohio Mar. 10, 2015) (rejecting theory that "contacts of one alleged member of a civil conspiracy with the forum state may be attributed to other members of that conspiracy who have no such personal contacts"); *Hanna* v. *Blanchette*, 2014 WL 4185816, at *5 (S.D. Tex. Aug. 21, 2014) (same).

For similar reasons, both the Supreme Court and Second Circuit have rejected the analogous theory of vicarious "conspiracy venue," under which a defendant may be sued in any venue in which an alleged co-conspirator is subject to venue. *Bankers Life & Cas. Co.* v. *Holland*, 346

---

[15] *See also* Alexander, 106 Harv. L. Rev. at 401 n.66 (arguing that "attribution of [co-conspirators'] contacts should violate due process"); Riback, 84 Colum. L. Rev. at 526 ("[W]hile a conspirator's act in the forum might be some evidence of the coconspirator's contacts with the forum, it does not alone supply those contacts without a showing of purposeful availment").

U.S. 379, 384 (1953); *Bertha Bldg. Corp.* v. *Nat'l Theatres Corp.*, 248 F.2d 833, 836 (2d Cir. 1957), *cert. denied*, 356 U.S. 936 (1958).[16]  If venue, which is a creature of statute, cannot be based solely on a co-conspirator's conduct, neither can "personal jurisdiction, the exercise of which is governed by strict constitutional standards."  *Kipperman* v. *McCone*, 422 F. Supp. 860, 873 n.14 (N.D. Cal. 1976); *accord Brown* v. *Kerkhoff*, 504 F. Supp. 2d 464, 517 (S.D. Iowa 2007).

> 3.  *To comport with due process, a co-conspirator's forum contacts can be attributed to a defendant only where, unlike here, they were directed and controlled by the defendant and the defendant knew of and benefited from that conduct.*

In light of the above, a co-conspirator's conduct may be imputed to a defendant only if the defendant's *own* conduct toward the co-conspirator evidences "purposeful availment" toward the forum — i.e., if, consistent with traditional agency principles, the defendant directed and controlled the agent's in-forum tortious conduct and knew about and benefitted from such contacts.[17]  In such a case, the defendant purposefully avails itself of the forum by directing and controlling its agent's actions there under the law of agency.  *See Daimler AG* v. *Bauman*, 134 S. Ct. 746, 759 n.13 (2014) ("[A] corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there.").[18]  Without such direction and control, however, the alleged agent's actions are "mere unilateral activity of third persons" insufficient to confer personal jurisdiction over the defendant.  Riback, 84 Colum. L. Rev. at 524; *see also Brown*, 504 F. Supp. 2d at 517 ("The Supreme Court has repeatedly emphasized actions of third parties not

---

[16] *Accord Piedmont Label Co.* v. *Sun Garden Packing Co.*, 598 F.2d 491, 495 (9th Cir. 1979); *Lamont* v. *Haig,* 590 F.2d 1124, 1135 & n.70 (D.C. Cir. 1978); *San Antonio Tel. Co.* v. *Am. Tel. & Tel. Co.*, 499 F.2d 349, 351 n.3 (5th Cir. 1974).

[17] *See In re Shulman Transp. Enter., Inc.*, 744 F.2d 293, 295 (2d Cir. 1984) ("An essential characteristic of an agency relationship is that the agent acts subject to the principal's direction and control."); *cf. Grove Press, Inc.* v. *Angleton*, 649 F.2d 121, 122 (2d Cir. 1981) (holding under New York law that an agent's actions count for personal jurisdiction only if "the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident [defendant]").

[18] *See also* Ann Althouse, *The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis*, 52 Fordham L. Rev. 234, 234 (1983) ("If a non-resident defendant has directed another person to act for his benefit and under his control in the forum state, the other party's act may supply the minimum contact needed to support jurisdiction over the non-resident in an action arising out of the act.").

controlled by a nonresident are not sufficient to satisfy due process considerations unless the nonresident defendant also purposely avails himself of the privilege of conducting activities within the forum.").

Such an approach is the only one consistent with *Walden* and the due process case law holding that it is the "contacts that the defendant *himself* creates with the forum State" that matter, not those "between the plaintiff (or third parties) and the forum State." *Walden*, 134 S. Ct. at 1122. It also explains why *Walden* does not support vicarious conspiracy jurisdiction, notwithstanding the passage in that decision — oft-quoted by Plaintiffs — that, "although physical presence in the forum is not a prerequisite to jurisdiction [], physical entry into the State — either by the defendant in person *or through an agent*, goods, mail, or some other means — is certainly a relevant contact." *Id.* (emphasis added). The passage merely highlights that a defendant may purposefully avail itself of a forum by affirmatively directing others under its control to commit actions in the forum on its behalf. It does not mean that mere participation in a conspiracy in which a co-conspirator commits any overt act in the relevant forum establishes jurisdiction, without regard for whether the defendant commanded that act to be done, benefited from that act, or even knew about it. For jurisdiction to attach, *the defendant* must direct activity toward that forum sufficient to purposefully avail itself of the forum. *Id.*[19] In short, "if an entity has in fact engaged in some affirmative act directed at the forum, it may be subject to jurisdiction for that reason. The rules and doctrines applicable to personal jurisdiction are sufficient without the extension of the law to a separate and certainly nebulous 'conspiracy jurisdiction' doctrine." *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d at 227; *see also In re Auto. Parts Antitrust Litig.*, 2015 WL 4508938, at *4.

Plaintiffs cannot satisfy this standard. Plaintiffs do not, and cannot, allege that *any* Defendant directed or controlled any other Defendant's submissions, communications, or state-

---

[19] *Walden* provided two examples of suit-related conduct sufficient to constitute purposeful availment of the forum state: conduct "purposefully" directed at the forum state that "envisioned continuing wide-reaching contacts in the forum State," and conduct that seeks to "deliberately exploi[t]" the forum state. *Walden*, 134 S. Ct. at 1122.

ments or that *any* Defendant knew of such contacts and benefitted from them.  Far from it: Plaintiffs allege only that Defendants made USD LIBOR submissions, shared advance information about those submissions, and gave assurances that USD LIBOR was not being manipulated.  *See* Part I.B.1 below.  Moreover, Plaintiffs do not allege that any of the submissions or communications occurred in any of the Challenged Jurisdictions or the U.S.[20]  In the absence of any allegations of control, attributing to Defendants their alleged co-conspirators' purported forum activities would violate due process.  *See Romak USA, Inc.* v. *Rich*, 384 F.3d 979, 985 (8th Cir. 2004); *Brown*, 504 F. Supp. 2d at 517.[21]

### B.  Even If an Alleged Co-Conspirator's Conduct Could be Imputed to Another Defendant, Plaintiffs' Allegations Still Do Not Confer Jurisdiction.

Even if Plaintiffs could impute alleged acts of a co-conspirator to the other Defendants for purposes of specific jurisdiction — and they cannot — their allegations would still fall short because they have failed to allege there were *any* jurisdictionally relevant acts in the Challenged Jurisdictions or, indeed, in the U.S.[22]  As this Court has already held, the alleged persistent sup-

---

[20] While certain Plaintiffs allege that certain Defendants' traders in New York made requests for artificial submissions, *see* Exchange Prop. Compl. ¶¶ 265-91, those allegations are irrelevant to the alleged persistent-suppression conspiracy, *see* n.4 above.

[21] *See also* Alexander, 106 Harv. L. Rev. at 401 n.66 ("[Vicarious conspiracy jurisdiction] goes well beyond agency law because the co-conspirator's acts need not be within the defendant's contemplation.  Such an attribution of contacts should violate due process. . . ."); Riback, 84 Colum. L. Rev. at 524 ("[T]he agency created by a conspiracy cannot be thought of in the same way as an ordinary agency.  In conventional agency, the focus is on the principal's control or authorization.  In conspiracy . . . a conspirator can be held [liable for] acts he did not know about by persons he did not know about.  Thus, treating an act of an agent as the act of his principal for jurisdictional purposes makes little sense if the relationship between the actors is only joint participation in a conspiracy.").

[22] For purposes of jurisdiction over federal antitrust claims, this Court has held that a national contacts approach governs.  *LIBOR IV*, 2015 WL 6243526, at *23.  Defendants respectfully disagree with that ruling and preserve for appeal their argument that the relevant contacts are those that existed with the state and not the nation, *see* Dkt. 745 at Part II.B, but assume for purposes of this motion that this Court will adhere to its prior rulings.  For purposes of jurisdiction over state law antitrust claims, the relevant contacts are those with the state in which the case was brought.  *See Arrowsmith* v. *United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963) (*en banc*) (Friendly, J.) ("[T]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee."); *see also Brown*, 814 F.3d at 624.  A number of the moving defendants have no jurisdictionally relevant contacts with the Challenged Jurisdictions or the U.S. as a whole.  *LIBOR IV*, 2015 WL 6243526, at *29-32.  To the extent that Plaintiffs rely on state law to establish personal jurisdiction (even where the cause of action is a federal statute such as the Clayton Act), the relevant contacts are those that Defendants have with that state.  *Id.* at *22; *see Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (relying on New York law to interpret New York's long-arm statute in case involving claims brought under the Anti–Terrorism Act, 18 U.S.C. § 2333(a) and the Alien Tort Statute, 28

pression of USD LIBOR occurred overseas.  Plaintiffs allege that Defendants *should have known* the conspiracy would have injured Plaintiffs in the Challenged Jurisdictions (or the U.S., generally) and that the conspiracy was intended to impact the Challenged Jurisdictions (or the U.S., generally).  *See, e.g.*, Exchange Prop. Compl. ¶¶ 682-84.  But Plaintiffs fail to demonstrate that the Defendants undertook suit-related conduct — i.e., the alleged persistent suppression of USD LIBOR — in the Challenged Jurisdictions or in the U.S. or that Plaintiffs' claims arose out of Defendants' contacts with the Challenged Jurisdictions or with the U.S.  Plaintiffs' conspiracy allegations, therefore, cannot support specific jurisdiction over the Defendants.

      1.   *Defendants' USD LIBOR Submissions Were Determined and Submitted from Outside the U.S.*

Plaintiffs allege no tortious acts committed in furtherance of the alleged conspiracy to persistently suppress USD LIBOR in any of the Challenged Jurisdictions or in the U.S.  On at least four prior occasions, this Court has ruled that the jurisdictionally relevant contacts with respect to Plaintiffs' allegations of a conspiracy to persistently suppress USD LIBOR are "where the LIBOR submission was determined or transmitted," and that "contacts sufficient to assert personal jurisdiction over defendants for trader-based claims do not suffice as a threshold showing with respect to persistent suppression claims."  Apr. 29 Order, at 1-8; *see also* Apr. 15 Order at 15, 15 n.4; *LIBOR IV*, 2015 WL 6243526, at *32; *LIBOR V*, 2015 WL 6696407, at *8; *see also* Dec. 23, 2015 Order, Dkt. 1267 at 1 (denying Plaintiffs' request for jurisdictional discovery concerning, among other things, all locations where USD LIBOR submissions were "influenced," Dkt. 1242-1).  Plaintiffs do not, and cannot, allege that USD LIBOR submissions occurred in any of the Challenged Jurisdictions, and, as the declarations previously submitted demonstrate, they did not.[23]  Apr. 29 Order at 6.

---

U.S.C. § 1350); *L.H. Carbide Corp.* v. *Piece Maker Co.*, 852 F. Supp. 1425, 1431 (N.D. Ind. 1994) ("[I]mplicit in the newly amended Rule, is the notion that a federal district court is still to look to the long-arm statute of the state in which it sits, pursuant to Rule 4, in order to assert personal jurisdiction over a non-resident defendant in cases that arise under federal law, i.e., non-diversity cases, where Congress has not enacted a personal jurisdiction statute specifically for the federally created cause of action.").  In any event, regardless of whether a state or nationwide contacts approach applies, Plaintiffs have failed to allege personal jurisdiction.

[23] Decl. of P. Schrieber (Dkt. 767) ¶ 8 ("The London Branch of [Credit Suisse AG] was responsible for the USD

LIBOR submissions, and all of the employees who made the submissions were located in London"); Decl. of B. Barton (Dkt. 789) ¶ 4 ("During the Relevant Period, JPMorgan Chase Bank, N.A., London Branch submitted rates to the British Bankers' Association for use in the calculation of USD LIBOR. The individuals that made these submissions were located in London, United Kingdom, and made the submissions from London, United Kingdom"); Decl. of B. Barton (Dkt. 1423-2) ¶ 4 ("[JPMorgan Chase Bank, N.A.'s] submissions were both determined and submitted by individuals located in the United Kingdom, not individuals located in the United States."); Decl. of Dr. F. Borstelmann (Dkt. 786) ¶ 10 ("The Portigon employees responsible for the determination or submission of rates to the BBA in the United Kingdom for use in the calculation of USD LIBOR were located in London, England, and made Portigon's submissions from that location"); Decl. of D. Bourrinet (Dkt. 785) ¶ 10 ("[Société Générale] has at all times determined the level at which its US dollar LIBOR contributions would be made in Paris, France, and transmitted those contributions to Thompson [sic] Reuters from SG's offices in London, England"); Decl. of J. Connors (Dkt. 788) ¶¶ 6-7 ("No UBS AG branch, office, agency, or employee in California or Pennsylvania [or Iowa] has ever been responsible for or involved with the determination or submission of rates to the British Bankers' Association in the United Kingdom for use in the calculation of Dollar Libor"); Decl. of Tim Brown (Dkt. 1423-4) ¶ 2 ("HSBC Bank plc's US dollar LIBOR submissions were determined in and transmitted from HSBC Bank plc's offices in London, England;" and "HSBC Holdings plc did not determine or transmit any US dollar LIBOR submissions because it was not a member of the US dollar LIBOR panel of banks."); Decl. of N. Black (Dkt. 790) ¶ 5 ("HSBC Bank plc has no offices, branches, or other regular place of business in any of the Subject States or in any other state in the United States."); Decl. of Elaine Williams (Dkt. 772) ¶ 5 ("HSBC Holdings plc has no offices, branches, or other regular places of business in the Subject States or in any other state in the United States."); Decl. of M. Gregory (Dkt. 774) ¶ 4 ("The Hongkong and Shanghai Banking Corporation Limited … does not have any offices, branches, or other regular place of business in New York."); Decl. of P. Snell (Dkt. 775) ¶ 4 ("HSBC Bank USA, N.A. has no offices, branches, or other regular places of business in Kansas."); Decl. of R. DeSena (Dkt. 783) ¶ 6 ("During the period relevant to the above-captioned actions, RBC was a member of the British Bankers Association panel of banks making submissions of United States Dollar ("USD") London Interbank Offered Rates ("LIBOR"). The individuals responsible for making such submissions were then employed in the United Kingdom and located in London and those submissions were made from London"); Decl. of W. Gougherty (Dkt. 784) ¶ 15 ("During the relevant time, all submissions of rates to the British Bankers' Association for use in the calculation of U.S. Dollar LIBOR were made from RBS plc's offices in the United Kingdom, not from any offices in the United States"); Decl. of W. Gougherty (Dkt. 1423-5) ¶ 4 ("[A]ll [of RBS Group and RBS plc's] submissions were both determined and transmitted from offices in the United Kingdom, not from any offices in the United States."); Decl. of K. McKendry (Dkt. 781) ¶ 9 ("All of the individuals who made, or had input into the making of, [Lloyds Bank and Bank of Scotland] submissions were then employed in the United Kingdom and those submissions were made from London. At no time did any U.S.-based employees make or have any input into the USD LIBOR submissions . . . of Lloyds Bank or Bank of Scotland"); Decl. of A. Sherman (Dkt. 764) ¶ 10 ("Rabobank employees responsible for U.S. Dollar LIBOR submissions to the British Bankers' Association in the United Kingdom were located in London until December 2008, and in Utrecht starting in January 2009"); Decl. of J. Wollard (Dkt. 763) ¶ 4 ("[Citibank, N.A.] maintains its principal place of business in New York City, although the material allegations in these actions relate to LIBOR submissions that were made by employees at CBNA's branch in London in the United Kingdom."); Decl. of A. Thursfield (Dkt. 1423-1) ¶ 5 ("Employees from [Citibank, N.A.] determined and transmitted [USD LIBOR] submissions in London, not from any offices in the United States."); Decl. of D. Sabella (Dkt. 758) ¶ 8 ("I understand that [The Bank of Tokyo-Mitsubishi UFJ, Ltd.] employees responsible for [USD LIBOR] submissions are located in London, United Kingdom and have made the submissions from London, United Kingdom."); Decl. of O. Takashima (Dkt. 782) ¶ 6 ("All Norinchukin employees and supervisors responsible for submitting Dollar LIBOR rates to the BBA worked in England. The New York Branch did not contribute to submitting Dollar LIBOR rates."); Decl. of P. Gonsalves (Dkt. 1005-1) ¶ 16 ("No U.S. branch or office of [Barclays Bank plc "BBPLC"] has ever been responsible for the determination or submission of rates to the British Bankers' Association in the U.K. for use in the calculation of U.S. Dollar LIBOR. BBPLC's U.S. Dollar LIBOR submissions are determined by employees in London and transmitted from London."); Decl. of J. Randazzo (Dkt. 977-3 at Ex. 9) ¶ 2 ("At all relevant times, Deutsche Bank AG's U.S. Dollar LIBOR submissions were calculated and submitted in London, United Kingdom. No employees responsible for Deutsche Bank AG's U.S. Dollar LIBOR submissions were located in the United States."); Decl. of D. Spring (Dkt. 1423-3) ¶¶ 3-4 ("During the time period relevant to this litigation, Bank of America, N .A. was the Bank of America entity that made submissions to the British Bankers Association for use in the calculation of U.S. Dollar LIBOR. Bank of America, N.A. determined and transmitted its

Plaintiffs have previously pointed to alleged instances of USD LIBOR manipulation in the Challenged Jurisdictions in support of personal jurisdiction.  For example, the Exchange Plaintiffs allege that New York-based traders at several Defendants communicated about desired USD LIBOR submissions.  *See* Exchange Prop. Compl. ¶¶ 265-82.  None of these allegations, however, relates to Plaintiffs' *persistent suppression* theory.  This Court has repeatedly held that such allegations relate to Plaintiffs' theory of *trader-based* misconduct, whereby certain panel banks are alleged to have improperly altered their USD LIBOR submissions upwards or downwards at the behest of traders to allow those traders to increase profits or decrease losses on specific days.  *See LIBOR IV*, 2015 WL 6243526, at *32 n. 54; *LIBOR V*, 2015 WL 6696407, at *8; Apr. 15 Order at 15 n.4, Apr. 29 Order at 7-8; *see also* July 5, 2016 Order (Dkt. 1478) ("[T]his Court is well-aware of the distinctions between persistent suppression and trader-based claims and the necessity to adequately plead every specific conspiracy alleged").  In other words, as this Court has observed, Plaintiffs "have failed to link [trader-based] activity to reputation-oriented persistent suppression, except to note that they occurred over the same time period or that a derivatives trader was aware of persistent suppression."  Apr. 29 Order, at 8 ("such 'connections' are plainly insufficient to attribute the jurisdictional contacts of one scheme, undertaken to increase the profits or stem the losses of derivatives traders, to the other, undertaken to bolster the perception of the panel banks' creditworthiness"); *see also 7 W. 57th St. Realty Co.* v. *Citigroup, Inc.*, 2015 WL 1514539, at *10 (S.D.N.Y. Mar. 31, 2015) (rejecting claim that allegations of trader-based conduct relate to persistent suppression).

### 2.   *Foreseeable Harm Is Insufficient to Confer Jurisdiction.*

Plaintiffs allege that Defendants conspired to persistently suppress USD LIBOR and that a foreseeable effect of such suppression was that Plaintiffs in the Challenged Jurisdictions that purchased USD LIBOR-based instruments would be harmed.  *See, e.g.*, OTC Prop. Compl. ¶ 341

---

U.S. Dollar LIBOR submissions from offices in London, United Kingdom, and not from any offices in the United States."); Decl. of A. Cooper (Dkt. 787) ¶ 9 ("WestImmo is not and has never been a member of the USD LIBOR panel, and has never been responsible for or involved in the determination or submission of rates for use in the calculation of USD LIBOR.").

("Defendants themselves understood that the collusion to suppress LIBOR had serious consequences for the prices of derivatives and LIBOR-based products being offered to their customers."). Such allegations do not demonstrate that the conspiracy was present in the forum, nor do they confer jurisdiction based on "effects" of the alleged conduct in the forum. As this Court previously explained, "[i]t is bedrock law that merely foreseeable effects of defendants' conduct do not support personal jurisdiction." *LIBOR IV*, 2015 WL 6243526, at *32. To support the exercise of personal jurisdiction, Plaintiffs must show that "a defendant took intentional, and allegedly tortious actions . . . expressly aimed at the forum." *Id.*

Plaintiffs have not made and cannot make such a showing here. In *LIBOR IV*, this Court concluded that Defendants had not aimed "their manipulative conduct at the United States or any particular forum state." *Id.* Neither Plaintiffs' conspiracy allegations nor *Gelboim* alter that ruling. That Defendants allegedly entered a conspiracy with knowledge of foreseeable effects in the United States is insufficient to confer jurisdiction. Indeed, in *Walden*, the Supreme Court "explicitly rejected the idea that harm or foreseeability of harm to a forum's resident establishes jurisdiction in that forum." *AgJunction LLC* v. *Agrian Inc.*, 2014 WL 3361728, at *10 (D. Kan. July 9, 2014) (interpreting *Walden* and finding plaintiffs "failed to show that the defendants' conspiracy was directed at" the forum, even where harm in the forum was allegedly foreseeable).

Plaintiffs do not adequately allege that the express purpose of the alleged persistent suppression conspiracy was to harm U.S. investors in USD LIBOR-based instruments. Plaintiffs fail to make *any* factual allegations relevant to persistent suppression to suggest that the panel banks suppressed their USD LIBOR submissions with the purpose of harming U.S. investors, as opposed to investors in other jurisdictions. It is, therefore, unsurprising that the Second Circuit found Plaintiffs' suggestion that the intent of the scheme was to harm investors to be "strange" because their "profits that would be offset by a parity of losses it would suffer as a lender." *See Gelboim*, 2016 WL 2956968, at *17. If anything, Plaintiffs' allegations undermine their position that Defendants consistently stood to profit by suppressing USD LIBOR. According to Plain-

tiffs' trader-based manipulation allegations, certain bank Defendants manipulated their USD LIBOR submissions in both directions depending on their overall trading positions for a given day.[24]  Exchange Prop. Compl. ¶¶ 191-212; *see In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 620-21 (S.D.N.Y. 2013) ("*LIBOR II*") ("[T]he day-to-day, trader-based LIBOR manipulation. . . . consists of a number of discrete instances of allegedly false LIBOR submissions, and those submissions were, at times, artificially high and, at other times, artificially low.").  Plaintiffs have not, and cannot, allege that the conspiracy to persistently suppress USD LIBOR was specifically aimed at the Challenged Jurisdictions or the United States.

   3.  *Plaintiffs' Allegations Lack the Necessary Causal Nexus to Support Personal Jurisdiction.*

   Plaintiffs also fail to plead facts sufficient to show that their claims "aris[e] out of or relate[] to the [Defendants'] contacts with the forum." *J. McIntyre Machinery, Ltd.* v. *Nicastro*, 564 U.S. 873, 881 (2011) (plurality opinion).  The Second Circuit recognizes that, where a defendant has only limited contacts with the forum state, that defendant "will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts." *Chew*, 143 F.3d at 29; *see also LIBOR IV*, 2015 WL 6243526, at *28.  This Court has already held that each Defendant's allegedly tortious conduct all occurred abroad, *e.g.*, Apr. 29 Order, at 8, and Plaintiffs argue that Defendants are subject to personal jurisdiction based solely on the forum contacts of their alleged co-conspirators.  As Defendants' declarations establish, *see* n.23 above and Appendix A, Defendants' contacts with the Challenged Jurisdictions are limited or nonexistent. Plaintiffs must therefore establish proximate causation under *Chew*.  *See SPV OSUS Ltd.* v. *UBS AG*, 114 F. Supp. 3d 161, 169-70 (S.D.N.Y. 2015) ("proximate causation" standard applied where relevant conduct occurred abroad and foreign defendants had only sporadic contacts with the forum).  To show proximate causation, Plaintiffs must establish that Defendants' alleged contacts with the Challenged Jurisdictions were the "legal cause" of Plaintiffs' injuries, and that

---

[24] As to the BBA, Plaintiffs do not, and cannot, allege that the BBA stood to profit at the expense of U.S. investors through the persistent suppression of USD LIBOR (or trader-based manipulation of LIBOR) — let alone that the BBA engaged in wrongful conduct *with the purpose* of harming U.S. investors.

their claims "formally arise out of" those alleged contacts. *O'Connor* v. *Sandy Lane Hotel Co.*, 496 F.3d 312, 318-19 (3d Cir. 2007). Plaintiffs cannot show that Defendants' alleged contacts were the "but for" cause of their alleged injuries, much less the proximate cause.

Through its publication, USD LIBOR reached "more than one million computer screens around the world." *E.g.*, Federal Deposit Insurance Corp. Am. Compl. (Dkt. 22) ¶ 13. The mere fact that disseminated information regarding USD LIBOR reached the Challenged Jurisdictions, however, is insufficient to establish that Defendants proximately caused Plaintiffs' injuries. *See Avra Surgical Robotics, Inc.* v. *Gombert*, 41 F. Supp. 3d 350, 359 (S.D.N.Y. 2014).[25] Even if Plaintiffs could allege that a co-conspirator committed an overt act in the forum, Plaintiffs will have failed to show the requisite causal nexus between Defendants' specific contacts and Plaintiffs' causes of action. *See United States* v. *Phillip Morris Inc.*, 116 F. Supp. 2d 116, 129 (D.D.C. 2000) (rejecting use of vicarious conspiracy jurisdiction where "there [was] no evidence that [defendant] purposefully targeted its activities at residents of the [forum], or even that it committed a single act within the [forum] that has any nexus to the claims being asserted"). Separately, Plaintiffs' allegations that acts of *trader-based manipulation* occurred in the Challenged Jurisdictions are irrelevant because the *persistent suppression* claims at issue here are unrelated to those allegations. Apr. 29 Order, at 7-8. As this Court has repeatedly held, Plaintiffs' persistent suppression claims arise exclusively from foreign conduct. *E.g.*, *id.* at 8. Plaintiffs' failure to allege the necessary causal nexus dooms their claims.

### C. Plaintiffs' Conspiracy Allegations Are Deficient under the Applicable Jurisdictional Rules and Statutes.

Even if Plaintiffs' conspiracy allegations could satisfy due process — and they cannot — Defendants are still not subject to personal jurisdiction, because Plaintiffs cannot show that the

---

[25] This Court has already concluded that the alleged dissemination of USD LIBOR in the U.S. is insufficient to confer personal jurisdiction because it is not "link[ed] . . . to the allegedly tortious activity." *LIBOR IV*, 2015 WL 6243526, at *30. Specifically, as to the BBA, this Court has also held those allegations are deficient because Plaintiffs fail to allege that: (1) the BBA evaluated the accuracy of the panel bank's submissions in the U.S., (2) BBA employees in the U.S. made the decision to publish allegedly false data, (3) the BBA calculated LIBOR in the U.S., or (4) the BBA's distribution of LIBOR in the U.S. was a but-for — let alone a proximate — cause of Plaintiffs' alleged injuries. *Id.* at *38.

"district court [has] a statutory basis for exercising personal jurisdiction." *Marvel Characters, Inc.* v. *Kirby*, 726 F.3d 119, 128 (2d Cir. 2013).  As to Plaintiffs' federal antitrust claims, Plaintiffs may attempt to rely on three potential bases for jurisdiction: (1) Federal Rule of Civil Procedure 4(k)(2); (2) Section 12 of the Clayton Act, 15 U.S.C. § 22, by means of Federal Rule of Civil Procedure 4(k)(1)(C); and (3) the long-arm statutes of the Challenged Jurisdictions under Federal Rule of Civil Procedure 4(k)(1)(A).  As to Plaintiffs' state law antitrust claims, Plaintiffs' only potential basis for jurisdiction is the long-arm statutes under Federal Rule of Civil Procedure 4(k)(1)(A).[26]  Plaintiffs' conspiracy allegations are insufficient to support jurisdiction under any of the applicable jurisdictional rules and statutes.

### 1. *Conspiracy Jurisdiction is Not Recognized Under Rule 4(k)(2).*

A number of courts that have examined whether conspiracy jurisdiction can be exercised under Rule 4(k)(2)[27] have held that there is no conspiracy jurisdiction under federal common law.  *See, e.g.*, *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015) (rejecting plaintiffs' attempt to extend the reach of Rule 4(k)(2) in an antitrust case to allow for jurisdiction to be found through a conspiracy theory); *Tymoshenko* v. *Firtash*, 2013 WL 1234943, at *4-5 (S.D.N.Y. Mar. 27, 2013) (rejecting conspiracy jurisdiction under Rule 4(k)(2)); *see also Davis* v. *A & J Elec.*, 792 F.2d 74, 76 (7th Cir. 1986) (interpreting former Rule 4(e), the predecessor to Rule 4(k), and finding "there is not . . . an independent federal 'civil co-conspirator' theory of personal jurisdiction").[28]  These courts have rejected the "certainly nebu-

---

[26] Rule 4(k)(1)(A) provides: "Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]" Fed. R. Civ. P. 4(k)(1)(A).  "[T]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Arrowsmith* v. *United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963) (*en banc*) (Friendly, J.); *see also Brown*, 814 F.3d at 624 (same).

[27] Rule 4(k)(2) provides: "For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2).

[28] *Cf. Diamond Chem. Co.* v. *Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 11-12 (D.D.C. 2003) ("The essential element required before a court can find that one corporate entity was transacting business through an alter ego is control over the conduct that allegedly violated the antitrust laws."); *United States* v. *Smithfield Foods, Inc.* 332 F. Supp. 2d

lous 'conspiracy jurisdiction' doctrine" under federal common law for two reasons.  *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d at 227.  First, extending the reach of Rule 4(k)(2) "could potentially extend jurisdiction beyond that which Congress intended[,]" and "[i]f Congress had wanted such a general exception, it could have so legislated in connection with Rule 4(k)(2)."  *Id.*  Second, "[i]n cases in which plaintiffs allege the existence of a conspiracy, a court's assertion of jurisdiction based on the potential existence of that conspiracy (as found by a preponderance of the evidence as required by Rule 12(b)(1)) would in effect require the court to rule on the merits of the dispute, which would be inappropriate."  *Id.*[29]

### 2.   *Conspiracy Jurisdiction is Not Recognized Under Section 12 of the Clayton Act.*

Plaintiffs' conspiracy allegations are also insufficient under Rule 4(k)(1)(C)[30] because conspiracy jurisdiction is not recognized under Section 12 of the Clayton Act.  First, the Second Circuit has held that a plaintiff cannot establish jurisdiction under the nationwide service provision of the Clayton Act unless it can also satisfy the venue provision.  *Daniel* v. *Am. Bd. of Emergency Med.,* 428 F.3d 408, 423-25 (2d Cir. 2005).  And both the Supreme Court and Second Circuit have rejected the "frivolous albeit ingenious" argument of vicarious "conspiracy venue" under the Clayton Act, whereby a defendant may be sued in any venue in which an alleged co-conspirator is subject to venue.  *Bankers Life & Cas. Co.*, 346 U.S. at 384; *accord Bertha Bldg. Corp.*, 248 F.2d at 836.  Because venue is a prerequisite for jurisdiction under the Clayton Act, personal jurisdiction is proper under the Act "*only* when the other requirements pertain-

---

55, 62 (D.D.C. 2004) (same).

[29] In any event, Plaintiffs cannot avail themselves of Rule 4(k)(2) because they have not satisfied the plain terms of this rule.  For claims arising under federal law, Rule 4(k)(2) contemplates a potential basis for personal jurisdiction over a defendant *only* when "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction."  Fed. R. Civ. P. 4(k)(2)(A).  District courts within this circuit have imposed on plaintiffs the initial burden to certify that the defendants over which personal jurisdiction purportedly exists pursuant to Rule 4(k)(2) are not subject to jurisdiction in any particular state forum.  *See, e.g.*, *7 W. 57th St. Realty Co.*, 2015 WL 1514539, at *13; *Precision Assocs., Inc.* v. *Panalpina World Transp. (Holding) Ltd.*, 2011 WL 7053807, at *44 (E.D.N.Y. Jan. 4, 2011), *adopted by* 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012).  Plaintiffs have made no such certification here — and, in fact, allege that Defendants *are* subject to personal jurisdiction in certain states — and therefore have failed to satisfy a prerequisite for personal jurisdiction under Rule 4(k)(2).

[30] Fed. R. Civ. P. 4(k)(1)(C) provides: "Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . (C) when authorized by a federal statute."

ing to venue are satisfied." *Daniel*, 428 F.3d at 423; *see* Part III below.  Second, courts have found that, if venue cannot be based solely on a co-conspirator's conduct (as is the case under the Clayton Act), then neither can "personal jurisdiction, the exercise of which is governed by strict constitutional standards." *Kipperman*, 422 F. Supp. at 873 n.14; *accord Brown*, 504 F. Supp. 2d at 517.  Third, as discussed in Part I.C.1, federal courts have found that Section 12 of the Clayton Act and other nationwide service of process provisions do not allow for conspiracy jurisdiction. *See, e.g., In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d at 227.[31]  To the extent Plaintiffs rely on a theory of vicarious conspiracy jurisdiction, they must find support under the Challenged Jurisdictions' long-arm statutes.  As shown below, Plaintiffs cannot.

> ### 3.  *Plaintiffs' Conspiracy Allegations are Insufficient under the Long-Arm Statutes in the Challenged Jurisdictions.*

Plaintiffs' conspiracy allegations are insufficient to confer jurisdiction under the long-arm statutes in the Challenged Jurisdictions, either because those states do not recognize vicarious conspiracy jurisdiction at all, or because, in those states that may recognize such a theory, Plaintiffs' allegations are insufficient.

Questions of state law, including the proper interpretation of a state long-arm statute, are guided by the law of the forum state, even in federal question cases.  *See* n.11 above.  Here, several Challenged Jurisdictions, including California, Illinois, New Jersey, and Texas, do not recognize conspiracy jurisdiction.[32]  The courts of the remaining Challenged Jurisdictions have not

---

[31] *See also In re New Motor Vehicles Canadian Export Antitrust Litg.*, 307 F. Supp. 2d 145, 157-58 (D. Me. 2004) ("I do not believe that the First Circuit would recognize a conspiracy theory of personal jurisdiction, whereby jurisdiction can be obtained over nonresident defendants based upon the jurisdictional contacts of co-conspirators.").

[32] **California**: "California courts have rejected the conspiracy theory of personal jurisdiction . . . ." *Yen* v. *Buchholz*, 2010 WL 1758623, at *5 (N.D. Cal. Apr. 30, 2010); *see also Murphy* v. *Am. Gen. Life Ins. Co.*, 2015 WL 4379834, at *9 (C.D. Cal. July 15, 2015).

**Illinois**: "Illinois courts and the Seventh Circuit have abandoned the conspiracy theory as a basis for personal jurisdiction." *In re Honey Transshipping Litig.*, 87 F. Supp. 3d 855, 873 (N.D. Ill. 2015); *Khan* v. *Gramercy Advisors, LLC*, 2016 WL 3364747, at *22 (Ill. App. Ct. June 15, 2016); *Ploense* v. *Electrolux Home Products, Inc.*, 882 N.E.2d 653, 668 (Ill. App. Ct. 2007) ("There is no shortcut, and there is no substitute, for the analysis required by *International Shoe* and its progeny. '[A] court should look at each defendant's activities. If a conspirator's actions were purposefully aimed at the forum, then jurisdiction is present. If not, assertion of jurisdiction would be unconstitutional, even though liability might attach under the substantive law of conspiracy.'" (quoting Riback, 84 Colum. L. Rev. at 524)).

yet considered whether they should continue to do so in light of the Supreme Court's decision in *Walden*. For the reasons described in Part I.A, after *Walden*, the exercise of conspiracy jurisdiction under state statutes would be inconsistent with due process.

Even if the states that have historically recognized conspiracy jurisdiction would continue to do so after *Walden*, Plaintiffs' conspiracy allegations are insufficient to confer jurisdiction under those statutes.[33] In New York and Minnesota, Plaintiffs must allege that a defendant exercised direction or control over the co-conspirator to impute the co-conspirator's contacts — a standard that, for the reasons outlined above, is necessary to satisfy due process. For example, in New York, to impute a co-conspirator's forum contacts, the plaintiff must demonstrate that "(a) the defendant had an awareness of the effects in New York of [the co-conspirator's] activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control or at the request of or on behalf of the out-of-state defendant." *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d at 805; *see also Grove Press, Inc.* v. *Angleton*, 649 F.2d 121, 122 (2d Cir.

---

**New Jersey**: "To the extent that Plaintiff argues that personal jurisdiction can be established over these individual defendants on the basis of their vicarious or conspiracy liability with the other in-forum Defendants, the court observes that New Jersey has never recognized a 'conspiracy theory of jurisdiction.'" *Guidotti* v. *Legal Helpers Debt Resolution, L.L.C.*, 866 F. Supp. 2d 315, 339 (D.N.J. 2011), *vacated on other grounds by*, 716 F.3d 76 (3d Cir. 2013).

**Texas**: *Nat'l Indus. Sand Ass'n* v. *Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) ("[W]e decline to recognize the assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged conspiracy with a resident in the forum state."); *see also Delta Brands Inc.* v. *Danieli Corp.*, 99 F. App'x 1, 6 (5th Cir. 2004) (same); *Hanna* v. *Blanchette*, 2014 WL 4185816, at *5 (S.D. Tex. Aug. 21, 2014) (same).

[33] *See* n. 35 below. In one other state, **Iowa**, there is a split in authority as to whether its long arm statute recognizes conspiracy jurisdiction. *See Sioux Pharm, Inc.* v. *Summit Nutritionals Int'l, Inc.*, 859 N.W.2d 182, 195 n.4 (Iowa 2015) (recognizing the split in authority and citing *Brown*, 504 F. Supp. 2d at 518 (rejecting conspiracy jurisdiction under Iowa law) and *Remmes* v. *Int'l Flavors & Fragrances, Inc, a New York co.*, 389 F. Supp. 2d 1080, 1093-95 (N.D. Iowa 2005) (finding conspiracy jurisdiction under Iowa law)). For the reasons outlined above, the decision in *Brown* rejecting conspiracy jurisdiction is the only approach consistent with due process. As explained in *Brown*, the *Remmes* decision is flawed because it was premised on outdated Iowa Supreme Court decisions that had since been overruled by the Supreme Court's decision in *World-Wide Volkswagen*, did not consider the Supreme Court's decision in *Bankers Life and Casualty Co.*, and was "underappreciative of Supreme Court precedent[, which] repeatedly emphasized actions of third parties not controlled by a nonresident are not sufficient to satisfy due process considerations unless the nonresident defendant also purposely avails himself of the privilege of conducting activities within the forum." *Brown*, 504 F. Supp. 2d at 514-18. Since both decisions in Iowa preceded *Walden*, and for the reasons outlined in *Brown*, Defendants respectfully submit that the Iowa Supreme Court would now likely follow the better-reasoned decision in *Brown*.

1981); *Heinfling* v. *Colapinto*, 946 F. Supp. 260, 265 (S.D.N.Y. 1996).  And, in Minnesota, before a co-conspirator's in-forum conduct can be imputed to a defendant, plaintiffs must allege the "defendant directed the activities of an agent within the forum, thereby causing harm within the state." *Peterson* v. *Wallace*, 622 F. Supp. 2d 791, 801 (D. Minn. 2008).  Because Plaintiffs have made no such allegations, *see* Part I.A.3 above, Plaintiffs' conspiracy allegations are deficient under those states' long-arm statutes.[34]  In any event, Plaintiffs have failed to allege that the purported conspiracy had a presence in the United States, *see* Part I.B above, let alone in any of the Challenged Jurisdictions that recognize conspiracy jurisdiction.  Because each state that recognizes conspiracy jurisdiction in some form requires, at a minimum, an allegation that an overt act occurred in the forum,[35] Plaintiffs' inability to allege that the conspiracy had any presence in

---

[34] Société Générale did not join the USD LIBOR panel until February 2009 and Plaintiffs make only a conclusory allegation of its participation in a conspiracy.  *See* Exchange Prop. Compl. ¶106 n.16 ("On February 9, 2009, Société Générale replaced defendant HBOS on the BBA's LIBOR panel, and subsequently Société Générale participated in the LIBOR Panel Banks' collusive suppression of LIBOR."); *see generally Gelboim*, 2016 WL 2956968, at *16 nn.19, 20 (exclusively referencing non-U.S. pre-February 2009 communications).  Thus, a conspiracy theory of jurisdiction does not provide a basis for exercising personal jurisdiction over Société Générale.  Plaintiffs' theory fails for the additional reason that they have not pointed to any communications or conduct from February 2009 forward from which it could plausibly be inferred that any bank acted in New York (or in any other Challenged Jurisdiction) at direction or on behalf of Société Générale.  *See, e.g., Daventree Ltd.* v. *Republic of Azerbaijan*, 349 F. Supp. 2d 736, 763 (S.D.N.Y. 2004) (declining to exercise conspiracy jurisdiction over foreign bank because the allegations did not demonstrate that the foreign bank directed the in-forum conduct); *see also BHC Interim Funding, LP* v. *Bracewell & Patterson, LLP*, 2003 WL 21467544, at *6 (S.D.N.Y. June 25, 2003) (finding conspiracy jurisdiction lacking, despite *prima facie* showing of conspiracy, where plaintiff failed to allege facts sufficient to warrant the inference that any action was taken on behalf of or at the direction of the defendant).

[35] **Iowa**: To the extent Iowa allows for conspiracy jurisdiction, a plaintiff must allege "(1) the existence of a conspiracy; (2) the nonresident's participation in or agreement to join the conspiracy; and (3) an overt act taken in furtherance of the conspiracy within the forum's boundaries." *Remmes*, 389 F. Supp. 2d at 1095-96.

**Kansas**: "From a jurisdictional standpoint, if one conspirator commits acts in Kansas in furtherance of a conspiracy and that conspirator falls under the long-arm statute, jurisdiction can be obtained as to all conspirators." *See Aeroflex Wichita, Inc.* v. *Filardo*, 275 F.3d 869, 882 (Kan. 2012).

**Minnesota**: "To establish conspiracy jurisdiction over a defendant in Minnesota, the plaintiff must show that "(1) a conspiracy existed; (2) the non-resident defendant participated in or joined the conspiracy, and (3) an overt act was taken in furtherance of the conspiracy within the forum's borders." *Yellow Brick Road, LLC* v. *Childs*, 36 F.Supp.3d 855, 866-67 (D. Minn. 2014).

**New York**: "To plead a valid cause of action for conspiracy under New York law, a plaintiff must allege the primary tort and four elements: (a) a corrupt agreement between two or more persons, (b) an overt act in furtherance of the agreement, (c) the parties' intentional participation in the furtherance of a plan or purpose, and (d) the resulting damage or injury." *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d at 805.  A "bland assertion" of a conspiracy is insufficient to establish personal jurisdiction under New York's long-arm statute. *World Skating Fed'n* v. *Int'l Skating Union*, 357 F. Supp. 2d 661, 665 (S.D.N.Y. 2005) (quoting *Lehigh Valley Indus., Inc.* v. *Lehigh Colonial Corp.*, 527 F.2d 87, 93-94 (2d Cir. 1975)).

those jurisdictions is fatal.  Plaintiffs' conspiracy allegations are, therefore, insufficient under each state's long-arm statute.

## II. CONSIDERATIONS OF FAIR PLAY, SUBSTANTIAL JUSTICE, AND INTERNATIONAL COMITY REQUIRE DISMISSAL.

Even if the Defendants' alleged contacts with the Challenged Jurisdictions were sufficient to support a *prima facie* case of vicarious conspiracy jurisdiction, the exercise of personal jurisdiction over Defendants would still fail to "comport with fair play and substantial justice" and therefore would fail to satisfy due process.  *Gucci Am. Inc.* v. *Weixing Li*, 768 F.3d 122, 137 (2d Cir. 2014).  To determine whether the exercise of personal jurisdiction is consistent with "fair play and substantial justice," the primary consideration is "the burden that the exercise of jurisdiction will impose on the defendant."  *LIBOR IV*, 2015 WL 6243526, at *28-29.  Courts also consider "the interests of the forum state in adjudicating the case," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of the controversy," and "the shared interest of the states in furthering substantive social policies."  *Id.*  Due process is also not satisfied where exercising jurisdiction threatens "international rapport."  *Daimler AG* v. *Bauman*, 134 S. Ct. 746, 763 (2014).

Here, Plaintiffs seek to exercise jurisdiction over the Defendants in the Challenged Jurisdictions based on an alleged conspiracy to suppress USD LIBOR.  The presence of the alleged conspiracy in the United States or in any Challenged Jurisdiction has already been conclusively refuted by Defendants' declarations, and Plaintiffs have presented no factual allegations or evidence to the contrary, leading this Court to appropriately conclude that the alleged conspiracy was based entirely outside the United States.  Apr. 29 Order at 6-8.  Even if Plaintiffs could allege that

---

**Pennsylvania**: "For a non-forum co-conspirator to be subject to personal jurisdiction, Pennsylvania law requires that 'plaintiff must allege that substantial acts in furtherance of the conspiracy occurred within the forum state and that the foreign defendant was, or should have been, aware of them." *Sugartown Worldwide LLC* v. *Shanks*, 2015 WL 1312572, at *4 (E.D. Pa. Mar. 24, 2015).

**Virginia**: To assert conspiracy jurisdiction over a foreign defendant, the plaintiff must allege that the "co-conspirator who is subject to personal jurisdiction in the forum commit[ed] overt acts in furtherance of the conspiracy [in the forum]." *Indep. Printers Worldwide, Inc.* v. *Cole*, 2015 WL 4705507, at *8 (E.D. Va. Aug. 6, 2015).

a single co-conspirator had a presence or committed an overt act in the United States, exercising jurisdiction over Defendants, based on a theory of vicarious conspiracy jurisdiction, unlinked to any conduct directed by each Defendant toward the forum, would be unreasonably burdensome and threaten international comity.  *See Brown* v, 814 F.3d at 625  ("[C]onstitutional due process principles generally restrict the power of a state to endow its courts with personal jurisdiction over foreign corporate parties . . . with regard to matters not arising within the state."); *see also Laydon* v. *Mizuho Bank, Ltd*., 2015 WL 1515358, at *6 (S.D.N.Y. Mar. 31, 2015) ("personal jurisdiction . . . would not comport with notions of fair play and substantial justice" in Euroyen TIBOR conspiracy case where foreign defendant's TIBOR submitters were located outside the United States). Subjecting the Defendants to jurisdiction in the United States based on such attenuated contacts would not "merely be inconvenient," it "would violate our basic sense of fair play and substantial justice — and deprive the defendants of the due process guaranteed by the Constitution."  *Metro. Life Ins. Co*. v. *Robertson-Ceco Corp*., 84 F.3d 560, 575 (2d Cir. 1996).

### III. BECAUSE THERE IS NO VENUE, THERE IS NO PERSONAL JURISDICTION UNDER THE CLAYTON ACT OVER DEFENDANTS WHO ARE NOT FOUND AND DO NOT TRANSACT SUBSTANTIAL BUSINESS IN THE DISTRICT IN WHICH SUIT WAS BROUGHT.

A plaintiff that asserts personal jurisdiction based on the nationwide service provision of the Clayton Act, 15 U.S.C. § 22, must also satisfy the Act's venue provision.  *Daniel*, 428 F.3d at 424-25.  For certain Defendants in certain Challenged Jurisdictions, *see* n. 1 above, Plaintiffs fail to allege venue under that provision.  To the extent Plaintiffs assert that personal jurisdiction over these Defendants is based on the Clayton Act, Plaintiffs' antitrust claims must be dismissed for want of personal jurisdiction.[36]

For venue to be proper under the Clayton Act in a district where a defendant is not "an inhabitant,"[37] the defendant must "be found or transact[] business" there.  15 U.S.C. § 22.  Only

---

[36] Because Plaintiffs fail to allege venue under the Clayton Act and, therefore, personal jurisdiction as to certain Defendants in certain Challenged Jurisdictions, want of venue provides an independent basis for dismissal of these claims.   Defendants have previously raised want of venue as a basis for dismissal of Plaintiffs' Commodity Exchange Act claims in connection with their prior personal jurisdiction motions.  *See* Dkt. 745 at 22 n.29; Dkt. 978 at 21 n.33.

[37] For a corporation, this means its place of incorporation.  *See, e.g., Expoconsul Int'l, Inc.* v. *A/E Sys., Inc.*, 711 F.

contacts with the specific district in which suit was brought are relevant for purposes of venue under the Clayton Act.  *Daniel*, 428 F.3d at 430; *In re U.S. Office Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 58, 65 (D.D.C. 2003) ("Barring special circumstances such as pendant venue, the plaintiff in a MDL action has the burden of establishing for each claim that venue is proper in the transferor state.").  Plaintiffs have not met their burden to allege that many of the Defendants are "found" or "transact[] business" in the districts in which they brought suit.[38]  The phrase "transacts business" refers to "business of any substantial character," meaning "some amount of business continuity and certainly more than a few isolated and peripheral contacts."  *Gates* v. *Wilkinson*, 2003 WL 21297296, at *1 (S.D.N.Y. June 4, 2003); *see also Pincone* v. *D'Alfonso*, 506 F. App'x 22, 24 (2d Cir. 2012).  Plaintiffs fail to allege certain Defendants conduct any substantial business in the relevant districts, a point made clear by many of Defendants' declarations.[39]

---

Supp. 730, 732 (S.D.N.Y. 1989).

[38] "[T]he plaintiff bears the burden of establishing that venue is proper," *Cold Spring Harbor Lab.* v. *Ropes & Gray LLP*, 762 F. Supp. 2d 543, 551 (E.D.N.Y. 2011), which is determined at the time suit is filed.  *Gates* v. *Wilkinson*, 2003 WL 21297296, at *2 (S.D.N.Y. June 4, 2003); *Gem Corrugated Box Corp.* v. *Mead Corp.*, 189 F. Supp. 584, 586 (S.D.N.Y. 1960).

[39] *See* Decl. of F. Borstelmann (Dkt. 786) ¶ 5 ("Portigon has a single branch office in New York.  It has had no other branches or offices anywhere else in the United States since end of 2009."); Decl. of A. Cambria (Dkt. 771) ¶ 12 ("At all relevant times, Deutsche Bank AG had a single branch in New York.  Deutsche Bank AG has never had a branch in California, Iowa, Kansas, New Jersey, Pennsylvania, Texas or Virginia."); Decl. of A. Cooper (Dkt. 787) ¶ 5 ("WestImmo has a single representative office in New York, and has never had any other offices anywhere else in the United States."); Decl. of T. Finlan (Dkt. 769) ¶¶ 3-4 (Credit Suisse Securities (USA) LLC has no employees in Iowa, and Iowa represents an "insignificant proportion of revenue"); Decl. of P. Gonsalves (Dkt. 1005-1) ¶¶ 8-9, 17, 21, 27, 32, 42, 46, 50 (Barclays Bank plc "has no branches or other offices in" California, Iowa, Kansas, New Jersey, Pennsylvania, Texas or Virginia); Decl. of P. Gonsalves (Dkt. 760) ¶ 5 ("Barclays plc has its registered office in London, England.  It has no other offices."); Decl. of A. Kaplan (Dkt. 761) ¶¶ 8, 13, 18 (Barclays Capital Inc. "has no branches or offices" in Iowa, Kansas or New Jersey); Decl. of T. Ludford (Dkt. 766) ¶¶ 3-4 (Credit Suisse International has "no bank branches," and "no banking or representative offices or agencies in the United States"); Decl. of K. McKendry (Dkt. 781) ¶ 6 (Lloyds Bank has a branch in New York, but "[n]either [Lloyds Banking Group] nor HBOS maintains any offices in the United States"); Decl. of D. Roseman (Dkt. 770) ¶ 2 (Credit Suisse (USA) Inc.'s headquarters and principal place of business is New York); Decl. of Sally Scutt (Dkt. 762) ¶¶ 7-11 (BBA has no "operations," "branches, offices, subsidiaries, or affiliates," "officers or employees," "telephone number or address," or real estate in the United States); Decl. of D. Sabella (Dkt. 758) ¶ 4.4 ("BTMU never has had a branch or office in Kansas or Virginia."); Decl. of P. Schreiber (Dkt. 765) ¶ 2 (CSG AG's headquarters is in Switzerland, and its "principal place of business is and has been in Switzerland"); Decl. of P. Schreiber (Dkt. 767) ¶ 4 (CSAG's United States offices are in New York and California only); Decl. of A. Sherman (Dkt. 764) ¶ 5 ("At all relevant times, Rabobank had a single branch office in the United States, located in New York, New York."); Decl. of O. Takashima (Dkt. 782) ¶ 4 ("There are no Norinchukin offices in any other state [than New York]."); Decl. of D. Bourrinet (Dkt. 785) ¶ 6 ("[Société Générale] has no branches, agency offices or representative offices in California, Kansas or Virginia."); Decl. of Elaine Williams (Dkt. 772) ¶¶ 3-5 (HSBC Holdings plc is "incorporated under the laws of England and Wales, with its registered office in London, England," and

Therefore, venue is improper under Section 12 of the Clayton Act in the Challenged Jurisdictions.  And because venue is improper, so too is personal jurisdiction.  *Daniel*, 428 F.3d at 423.  Plaintiffs' allegations of conspiracy do not affect that conclusion.  *See* Part I.C.2 above.[40]

## IV. THIS COURT'S PRIOR JURISDICTIONAL RULINGS PRECLUDE ANY OTHER BASIS FOR PERSONAL JURISDICTION OVER ANTITRUST CLAIMS AND APPLY TO THE PLAINTIFFS WHOSE CLAIMS WERE NOT SUBJECT TO THE *LIBOR IV* AND *LIBOR V* RULINGS.

This Court held in *LIBOR IV* and *LIBOR V* that it lacks general and specific jurisdiction over persistent suppression claims against Defendants in the Challenged Jurisdictions, except for certain state law claims arising from Plaintiffs' contracts with Defendants.  As explained above, Plaintiffs' conspiracy allegations do not alter this outcome.  The Court's prior holdings apply with equal force to the federal and state antitrust claims asserted by Plaintiffs, including those claims asserted in the actions not addressed in this Court's *LIBOR IV* and *LIBOR V* rulings —

---

"has no offices, branches, or other regular places of business" in the Challenged Jurisdictions); Decl. of N. Black (Dkt. 790) ¶¶ 3-6 (HSBC Bank plc is "incorporated under the laws of England and Wales, with its headquarters and principal place of business in London, England," and "has no offices, branches, or other regular place of business" in the Challenged Jurisdictions); Decl. of M. Gregory (Dkt. 774) ¶¶ 3-4 ("The Hongkong and Shanghai Banking Corporation Limited is … organized under the laws of Hong Kong, with its headquarters and principal place of business in Hong Kong," and "does not have any offices, branches, or other regular place of business in New York"); Decl. of G. Francis (Dkt. 773) ¶¶ 3-5 (no more than 8% of external net operating income for HSBC Holdings plc, HSBC Bank plc, or The Hongkong and Shanghai Banking Corporation Ltd. was derived from the U.S. in 2013); Decl. of P. Snell (Dkt. 775) ¶¶ 3-4 (HSBC Bank USA, N.A. has "its main office in McLean, Virginia" and "has no offices, branches, or other regular places of business in Kansas"); Decl. of W. Gougherty (Dkt. 784) ¶¶ 4, 6, 12 (RBS Group has no U.S. offices and is "not in the business of transacting in financial products linked to U.S. dollar LIBOR … anywhere in the United States," and RBS plc has no offices in Iowa, Pennsylvania, or Virginia); Decl. of John B. Gaffney (Dkt. 757) ¶ 7 ("[Merrill Lynch International Bank] does not operate in the United States."); Decl. of R. DeSena (Dkt. 783) ¶ 4 (RBC does not and has never operated offices in Iowa, Kansas, or Virginia.).

[40] Section 12 speaks to nationwide service of process only in antitrust actions against "a corporation."  15 U.S.C. § 22; *see also Daniel*, 428 F.3d at 422-25.  District courts within the Second Circuit have strictly interpreted section 12 and have held that this provision does *not* confer personal jurisdiction over non-corporate defendants such as the British Bankers' Association (an English unincorporated association).  *See, e.g.*, *World Skating Fed'n*, 357 F. Supp. 2d at 664 (an association formed under the laws of Switzerland does not constitute a corporation within the meaning of section 12 and is not subject to personal jurisdiction under the Clayton Act and noting that "Section 12 as written, and as interpreted, does not apply to entities that simply share common attributes with corporations.  It applies only to corporations."); *Kingsepp* v. *Wesleyan Univ.*, 763 F. Supp. 22, 25 (S.D.N.Y. 1991) ("Section 12's nationwide service of process provision applies to corporations, and has been narrowly construed.").  In any event, as to the BBA, this Court has already concluded that the BBA's alleged contacts with the United States are insufficient to establish personal jurisdiction over the BBA.  *LIBOR IV*, 2015 WL 6243526, at *29-30, *38.  Whether or not those contacts are assessed with respect to any particular state or the United States as a whole is of no moment; the Court determined that it was the nature, not the quantity, of the BBA's alleged contacts that was lacking.  *Id.*

namely, the Bondholder class action and previously-stayed actions.[41]   None of the allegations in those complaints plead any forum-related contacts different than those this Court has already considered and rejected as bases for specific or general jurisdiction.   *LIBOR IV*, 2015 WL 6243526, at *29-32; *LIBOR V*, 2015 WL 6696407, at *6, 8-9, 13-14, 17-20.   Moreover, because Plaintiffs' theory of antitrust liability is unconnected to any contractual or quasi-contractual rela-tionship between any Plaintiff and any Defendant, such relationships are irrelevant to the juris-dictional analysis.   *See LIBOR IV*, 2015 WL 6243526, at *31.

    Nor are the Bondholder Plaintiffs entitled to jurisdictional discovery.   *See* Defs.' May 13, 2016 Letter, Dkt. 1409.   To be entitled to jurisdictional discovery, the Bondholder Plaintiffs must "first make a threshold showing that there is some basis for the assertion of jurisdiction."   Apr. 29 Order at 5-6.   They have not done so.   This Court has already held that the Exchange, Lender, and Direct Action Plaintiffs are not entitled to jurisdictional discovery.   This Court held that De-fendants' declarations established that Defendants' USD LIBOR submissions occurred entirely outside the United States,[42] and that the Exchange, Lender, and Direct Action Plaintiffs had iden-tified no facts sufficient to justify jurisdictional discovery.   *Id.* at 6-10.   The Bondholder Plain-tiffs have alleged no new facts that would justify a different conclusion as to them.   Jurisdictional discovery should be denied.

## CONCLUSION

    To the extent Defendants have challenged personal jurisdiction and venue, Plaintiffs' federal and state antitrust claims should be dismissed under Rule 12(b)(2) and/or (b)(3).

---

[41] When Defendants initially moved to dismiss the class actions on personal jurisdiction grounds, numerous Defend-ants had already been fully dismissed from that action pursuant to the Court's earlier rulings.   As set forth in greater detail in Schedule A to Defendants' January 16, 2015 Motion (Dkt. 966-1), these previously-dismissed Defendants did not move against the OTC Plaintiffs on personal jurisdiction grounds at that time but expressly preserved their personal jurisdiction defense.   Dkt. 966-1 at 4 n.8.   The Court's holdings in *LIBOR IV* and *V* that it lacks personal jurisdiction over the Defendants in the Challenged Jurisdictions apply now to dismiss the OTC Plaintiffs' newly-revived antitrust claims against these previously-dismissed Defendants.   In addition, *LIBOR IV* dismissed certain Defendants from certain actions.   Defendants reserve the right to contend at an appropriate juncture that they were not reinstated by *Gelboim*.   *See* Defendants' Efficient Enforcer Brief n.3.

[42] This Court ordered several Defendants to submit supplemental declarations.   Apr. 29 Order at 6-7.   Those De-fendants have since submitted those declarations.

Dated:  New York, New York
        July 6, 2016

RESPECTFULLY SUBMITTED,


/s/ Arthur J. Burke                                                                            
Arthur J. Burke
Paul S. Mishkin
Adam G. Mehes
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Fax: (212) 450-4800
arthur.burke@davispolk.com
paul.mishkin@davispolk.com
adam.mehes@davispolk.com

*Attorneys for Defendants Bank of America Corporation, Bank of America, N.A., Banc of America Securities LLC (n/k/a Merrill Lynch, Pierce, Fenner & Smither, Inc.), Merrill Lynch & Co.,Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., Merrill Lynch Capital Services, Inc., and Merrill Lynch International Bank Ltd.*

/s/  Daryl A. Libow
Daryl A. Libow
Christopher M. Viapiano
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7500
Fax: (202) 956-6973
libowd@sullcrom.com
viapianoc@sullcrom.com

*Attorneys for Defendant The Bank of Tokyo-Mitsubishi UFJ, Ltd.*

*/s/   David H. Braff*
David H. Braff
Yvonne S. Quinn
Jeffrey T. Scott
Matthew J. Porpora
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
braffd@sullcrom.com
quinny@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com


*/s/  Jonathan D. Schiller*
Jonathan D. Schiller
Leigh M. Nathanson
Amos Friedland
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-2300
jschiller@bsfllp.com
lnathanson@bsfllp.com
afriedland@bsfllp.com

Michael Brille
5301 Wisconsin Avenue NW
Washington, D.C. 20015
Telephone: (202) 237-2727
mbrille@bsfllp.com

*Attorneys for Defendants Barclays plc,*
*Barclays Bank PLC, and Barclays Capital Inc.*

*/s/      Andrew A. Ruffino*
Andrew A. Ruffino
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 841-1000
aruffino@cov.com

Alan M. Wiseman
Thomas A. Isaacson
Andrew D. Lazerow
Jonathan Gimblett
850 Tenth Street, N.W.
Washington, D.C. 20001
Telephone: (202) 662-6000
awiseman@cov.com
tisaacson@cov.com
alazerow@cov.com
jgimblett@cov.com


*/s/    Lev Dassin*
Lev Dassin
Jonathan S. Kolodner
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
ldassin@cgsh.com
jkolodner@cgsh.com

*Attorneys for Defendants Citibank, N.A.,*
*Citigroup Inc., Citigroup Financial*
*Products, Inc., Citigroup Funding, Inc.,*
*Citigroup Global Markets Inc., Citigroup*
*Global Markets Ltd., and Citi Swapco Inc.*

*/s/*  David R. Gelfand

David R. Gelfand
Sean M. Murphy
Mark Villaverde
MILBANK TWEED HADLEY & McCLOY
LLP
28 Liberty Street
New York, New York 10005
Telephone: (212) 530-5000
dgelfand@milbank.com
smurphy@milbank.com
mvillaverde@milbank.com

*Attorneys for Defendant Coöperatieve Ra-
bobank U.A. (f/k/a Coöperatieve
Centrale Raiffeisen-Boerenleenbank B.A.)*

*/s/*      Moses Silverman

Moses Silverman
Andrew C. Finch
Hallie S. Goldblatt
Noam Lerer
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Fax: (212) 757-3990
msilverman@paulweiss.com
afinch@paulweiss.com
hgoldblatt@paulweiss.com
nlerer@paulweiss.com

*Attorneys for Defendants Deutsche Bank AG
and Deutsche Bank Securities Inc.*

*/s/*  Joel Kurtzberg

Herbert S. Washer
Elai Katz
Joel Kurtzberg
Jason Hall
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
Telephone: (212) 701-3000
hwasher@cahill.com
ekatz@cahill.com
jkurtzberg@cahill.com
jhall@cahill.com

*Attorneys for Defendant Credit Suisse
Group AG, Credit Suisse International,
Credit Suisse AG, Credit Suisse Securities
(USA) LLC, and Credit Suisse (USA)
Inc.*

*/s/*     Donald R. Littlefield

Donald R. Littlefield (*pro hac vice*)
Jack D. Ballard (*pro hac vice*)
Michael A. Rodriguez (*pro hac vice*)
BALLARD & LITTLEFIELD, LLP
3700 Buffalo Speedway, Suite 250
Houston, Texas 77098
Telephone: (713)403-6400
Fax: (713)-403-6410
dlittlefield@ballardlittlefield.com
jballard@ballardlittlefield.com
mrodriguez@ballardlittlefield.com

*Attorneys for Defendants HSBC Holdings
plc and HSBC Bank plc in City of Houston v.
Bank of America Corp., et al*., S.D.N.Y.
Case No. 1:13-cv-05616

| | |
|---|---|
| /s/  Ed DeYoung | /s/   Thomas C. Rice |
| Ed DeYoung | Thomas C. Rice |
| Gregory T. Casamento | Paul C. Gluckow |
| LOCKE LORD LLP | Omari L. Mason |
| 3 World Financial Center | Alexander N. Li |
| New York, New York 10281 | SIMPSON THACHER & BARTLETT LLP |
| Telephone: (212) 812-8325 | 425 Lexington Avenue |
| Fax: (212) 812-8385 | New York, New York 10017 |
| edeyoung@lockelord.com | Telephone: (212) 455-2000 |
| gcasamento@lockelord.com | Fax: (212) 455-2502 |
| | trice@stblaw.com |
| Roger B. Cowie | pgluckow@stblaw.com |
| 2200 Ross Avenue, Suite 2200 | omason@stblaw.com |
| Dallas, Texas 75201 | zanderli@stblaw.com |
| Telephone: (214) 740-8614 | |
| Fax: (214) 740-8800 | Abram J. Ellis |
| rcowie@lockelord.com | 900 G Street NW |
| | Washington, D.C.  20001 |
| J. Matthew Goodin | Telephone:  (202) 636-5500 |
| Julia C. Webb | Fax:  (202) 636-5502 |
| 111 South Wacker Drive, Suite 4100 | aellis@stblaw.com |
| Chicago, Illinois 60606 | |
| Telephone: (312) 443-0700 | |
| jmgoodin@lockelord.com | |
| jwebb@lockelord.com | |

*Attorneys for Defendants HSBC Holdings plc, HSBC Bank plc, The Hongkong and Shanghai Banking Corporation Ltd., and HSBC Bank USA, N.A. (except in City of Houston v. Bank of America Corp., et al., S.D.N.Y. Case No. 1:13-cv-05616)*

*Attorneys for Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC f/k/a J.P. Morgan Securities Inc., J.P. Morgan Markets Limited f/k/a Bear, Stearns International Limited, J.P. Morgan Dublin plc f/k/a JPMorgan Bank Dublin plc f/k/a Bear Stearns Bank plc, Chase Bank USA, N.A., and Bear Stearns Capital Markets, Inc.*

/s/ Marc J. Gottridge
Marc J. Gottridge
Lisa J. Fried
Kevin T. Baumann
Benjamin A. Fleming
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Fax: (212) 918-3100
marc.gottridge@hoganlovells.com
lisa.fried@hoganlovells.com
kevin.baumann@hoganlovells.com
benjamin.fleming@hoganlovells.com

*Attorneys for Defendants Lloyds Banking
Group plc, Lloyds Bank plc (f/k/a Lloyds TSB
Bank plc) and HBOS plc*


/s/ Christopher M. Paparella
Christopher M. Paparella
Ethan E. Litwin
Marc A. Weinstein
Morgan J. Feder
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Fax: (212) 422-4726
Chris.Paparella@hugheshubbard.com
Ethan.Litwin@hugheshubbard.com
Marc.Weinstein@hugheshubbard.com
Morgan.Feder@hugheshubbard.com

*Attorneys for Defendants Portigon AG
(f/k/a WestLB AG) and Westdeutsche
ImmobilienBank AG*

/s/ Alan M. Unger
Alan M. Unger
Andrew W. Stern
Nicholas P. Crowell
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Fax: (212) 839-5599
aunger@sidley.com
astern@sidley.com
ncrowell@sidley.com

*Attorneys for Defendant The Norinchukin Bank*


/s/ Richard D. Owens
Richard D. Owens
Jeff G. Hammel
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1200
richard.owens@lw.com
jeff.hammel@lw.com

*Attorneys for Defendants British Bankers'
Association, BBA Enterprises Ltd., and BBA
LIBOR Ltd.*

/s/   Arthur W. Hahn
Arthur W. Hahn
Christian T. Kemnitz
Brian J. Poronsky
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661
Telephone: (312) 902-5200
arthur.hahn@kattenlaw.com
christian.kemnitz@kattenlaw.com
brian.poronsky@kattenlaw.com

*Attorneys for Defendant Royal Bank of
Canada and RBC Capital Markets LLC*

/s/ Fraser L. Hunter, Jr.
Fraser L. Hunter, Jr.
David S. Lesser
Jamie S. Dycus
WILMER CUTLER PICKERING
HALE AND DORR LLP
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Fax: (212) 230-8888
fraser.hunter@wilmerhale.com
david.lesser@wilmerhale.com
jamie.dycus@wilmerhale.com

/s/    Robert G. Houck
Robert G. Houck
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 878-8000
Fax: (212) 878-8375
robert.houck@cliffordchance.com

/s/   Steven Wolowitz
Steven Wolowitz
Henninger S. Bullock
Andrew J. Calica
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Fax: (212) 262-1910
swolowitz@mayerbrown.com
hbullock@mayerbrown.com
acalica@mayerbrown.com

*Attorneys for Defendant Société Générale*

*Attorneys for Defendants The Royal Bank of
Scotland Group plc, and The Royal Bank of
Scotland plc*[43]

---

[43] Wilmer Cutler Pickering Hale and Dorr LLP is counsel for these defendants except as to plaintiffs Prudential Investment Portfolios 2; Triaxx Prime CDO 2006-2 LTD; Triaxx Prime CDO 2007-1 LTD; Principal Funds, Inc.; Principal Capital Interest Only I, LLC; Principal Commercial Funding, LLC; Principal Commercial Funding II, LLC; Principal Financial Group, Inc.; Principal Financial Services, Inc.; Principal Life Insurance Company; Principal Real Estate Investors, LLC; Principal Variable Contracts Funds, Inc.; and Fannie Mae.  Clifford Chance US LLP is counsel for these defendants except as to Plaintiff the Federal Home Loan Mortgage Corporation.

- 36 -

*/s/*    Peter Sullivan
Peter Sullivan
Lawrence J. Zweifach
Jefferson E. Bell
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
psullivan@gibsondunn.com
lzweifach@gibsondunn.com
jbell@gibsondunn.com

Joel S. Sanders (admitted pro hac vice)
555 Mission Street, Suite 3000
San Francisco, California 94105
jsanders@gibsondunn.com

*Attorneys for Defendant UBS AG,UBS*
*Securities LLC, and UBS Limited*