# **Appendix 1**

1.     ***Bank of America***

Bank of America Corp. ("BAC"), Bank of America, N.A., ("BANA"), Merrill Lynch

Capital Services, Inc. ("MLCS"), and Merrill Lynch International Bank ("MLIB") (collectively,

"Bank of America") dispute jurisdiction.  With respect to BAC, the Challenged Jurisdictions are

California, Iowa, Kansas, New Jersey, Pennsylvania, Texas, and Virginia.  With respect to

BANA, the Challenged Jurisdictions are California, Iowa, Kansas, New Jersey, Pennsylvania,

Texas, and Virginia. With respect to MLIB, the Challenged Jurisdiction is New York.  With re-

spect to MLCS, the Challenged Jurisdiction is Iowa.  In addition to challenging jurisdiction,

MLIB challenges venue in New York.

BAC is a parent holding company incorporated in Delaware and headquartered in Char-

lotte, North Carolina.  Gaffney Decl. (Dkt. No. 757) ¶ 3.  BANA is a national bank organized

under federal banking laws and headquartered in Charlotte, North Carolina.  *Id.* ¶ 4.  BANA

maintains offices in New York, including its U.S. institutional trading operations that deal in

LIBOR referenced instruments.  *Id.*  MLCS is a derivatives product dealer that is incorporated in

Delaware and maintains its principal place of business in New York.  *Id.*  ¶ 6.  MLIB is an Ire-

land corporation based in Dublin, Ireland.  MLIB does not operate in the United States.  *Id.* ¶ 7.

Bank of America disputes that it is subject to general jurisdiction in the Challenged Juris-

dictions.  Bank of America further disputes that its transactions with plaintiffs residing in the

Challenged Jurisdictions subject it to specific jurisdiction in those states.  At all relevant times,

BANA was the Bank of America entity that submitted U.S. Dollar LIBOR submissions.  Spring

Decl. (Dkt. No. 1423-3) ¶ 3.  BANA determined and transmitted its U.S. Dollar LIBOR submis-

sions from offices in London, not from any offices in the United States.  *Id.* ¶ 4.  The amended

complaints do not allege that any relevant aspect of Bank of America's conduct in connection with LIBOR submissions relates to any of the Challenged Jurisdictions.

*Source:* Declaration of John B. Gaffney, Director and Assistant General Counsel, Bank of America, N.A. (Dkt. No. 757); Declaration of David A. Spring, Managing Director at Bank of America Merrill Lynch (Dkt. No. 1423-3).

## 2.    *Barclays*

Barclays Bank plc ("BBPLC"), Barclays plc ("BPLC"), and Barclays Capital Inc. ("BCI") dispute jurisdiction.  With respect to BBPLC, the Challenged Jurisdictions are California, Iowa, Kansas, New Jersey, New York, Pennsylvania, Texas, and Virginia.  With respect to BPLC, the Challenged Jurisdiction is New Jersey.  With respect to BCI, the Challenged Jurisdictions are Iowa, Kansas, and New Jersey.  In addition to challenging jurisdiction, BBPLC challenges venue in California, Iowa, Kansas, New Jersey, Pennsylvania, Texas, and Virginia; BPLC challenges venue in New Jersey; BCI challenges venue in Iowa, Kansa, and New Jersey.

 BBPLC, a USD LIBOR panel member and defendant in each direct action, is incorporated under the laws of England and Wales with its headquarters located in London, England. Gonsalves BBPLC Am. Decl. (Dkt. No. 759) ¶¶ 4-5.  BBPLC has extensive operations throughout the United Kingdom.  *Id.* ¶ 6.  Currently, three of BBPLC's 36 branches outside of the U.K. are located in the U.S.  *Id.*  Less than 500 (or 0.8%) of BBPLC's approximately 55,750 employees worldwide are located in the U.S., and BBPLC's U.S. branches generated approximately 5% of BBPLC's worldwide revenue in 2013.  *Id.* ¶¶ 13, 15.  At all relevant times, Barclays' USD LIBOR submissions were determined exclusively in London and transmitted to the British Bankers' Association exclusively from London.  *Id.* ¶ 16.

BPLC is incorporated under the laws of England and Wales with its headquarters located in London, England.  Gonsalves BPLC Decl. (Dkt. No. 760) ¶¶ 4-5.  BPLC has never been a member of the USD LIBOR panel. *Id.* ¶ 11.  It is named as a defendant in one direct action initi-

ated in New Jersey.  BPLC has no operations in New Jersey, or anywhere else in the United States, and therefore is not subject to the exercise of personal jurisdiction by the court in which the action was initiated.  *Id.* ¶¶ 7-8.

BCI is incorporated under the laws of Connecticut with its principal place of business in New York.  Kaplan Decl. (Dkt. No. 761) ¶¶ 4-5.  BCI has never been a member of the USD LIBOR panel.  *Id.* ¶ 7.  BCI does not have sufficient contacts to support the exercise of personal jurisdiction by courts in any of Challenged Jurisdictions.

*Sources*:  Declaration of Patrick Gonsalves for BPLC (Dkt. No. 760), Amended Declaration of Patrick Gonsalves for BBPLC (Dkt. No. 759), and Declaration of Alan B. Kaplan for BCI (Dkt. No. 761).

### 3.  *The Bank of Tokyo-Mitsubishi UFJ Ltd.*

The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU") disputes jurisdiction.  With respect to BTMU, the Challenged Jurisdictions are California, Illinois, Kansas, Minnesota, New Jersey, New York, Texas, and Virginia.  In addition to challenging jurisdiction, BTMU challenges venue in Kansas and Virginia.

BTMU is a financial institution incorporated in Japan with its principal place of business in Japan.  Sabella Decl. (Dkt. No. 758) ¶ 2.  BTMU has over 700 branches in Japan and dozens of branches, representative or other offices in more than 40 other countries around the world.  *Id.* ¶ 3.  At all times relevant to the motions to dismiss for lack of personal jurisdiction, BTMU's operations in the United States were small when compared to its total global operations.  *Id.* ¶ 6. Among the relevant U.S. jurisdictions, BTMU had just one branch in New York, one branch and one office in California (or, for a limited period, two branches and no offices in California) and one office and one agency in Texas.  *Id.* ¶ 4.  (It had one or two other branches and five to seven other offices in the United States, depending on the time period.)  *Id.* ¶ 5.

- 3 -

For the fiscal years ended March 2011 through 2014, all of BTMU's branches and offices in the United States generated less than 6.75% of BTMU's total gross revenue and less than 7.6% of its ordinary profit.  *Id.* ¶ 6. During those same years, less than 6.2% of BTMU's total full-time employees worldwide were located in the United States.  These percentages obviously are lower for any particular jurisdiction (and are much lower for all jurisdictions other than New York).  None of BTMU's U.S. branches, offices or agencies ever has been responsible for or involved with the determination or submission of rates to the British Bankers' Association in the United Kingdom for use in the calculation of Dollar Libor.  *Id.* ¶ 8. The BTMU employees responsible for these submissions are located in London, United Kingdom and have made the submissions from there.  *Id.*

*Source*:  Declaration of Dominick R. Sabella (Dkt. No. 758).

### 4.     *British Bankers' Association*

With respect to the British Bankers' Association, BBA Enterprises Ltd., and BBA LIBOR Ltd. (collectively, the "BBA"), the Challenged Jurisdictions are California, Iowa, New York and Virginia.  In addition to challenging jurisdiction, the BBA challenges venue in California, Iowa, New York, and Virginia.

The British Bankers' Association is a trade association under English law located in London.  Scutt Decl. (Dkt. No. 762) ¶ 3.  BBA Enterprises Ltd. and BBA LIBOR Ltd. are companies registered in England and Wales.  *Id.* ¶ 5. The BBA's principal, and only, place of business is located at Pinners Hall, 105-108 Old Broad Street, London EC2N 1EX, England.  *Id.* ¶ 6.  The BBA does not have, and never has had, offices, employees, property or operations in any of the states in which it has been sued – New York, California, Virginia and Iowa (BBA's Challenged Jurisdictions) or in the United States.  *Id.* ¶¶ 8-11.  The BBA has no other subsidiaries or affiliates.  *Id.* ¶ 4.

*Source*:  Declaration of Sally Scutt (Dkt. No. 762).

*5.*     *Citigroup*

Citigroup Inc. and six related entities (together, the "Citi Defendants") have been named as defendants in various complaints where personal jurisdiction defenses are being asserted on this motion.

As explained below, each Citi Defendant maintains (or maintained) its principal place of business in New York City.  Five of the Citi Defendants are incorporated in Delaware; the other Citi Defendant is incorporated in New York.  The Citi Defendants do not challenge personal jurisdiction in New York (and none of the cases at issue here were filed in Delaware).

The Challenged Jurisdictions for the Citi Defendants generally include the other states where cases were filed: California, Iowa, Kansas, New Jersey, Pennsylvania, Texas, and Virginia.  The Citi Defendants do not have a presence sufficient for general personal jurisdiction in those states under the "at home" test as articulated in the *Daimler* v. *Bauman* decision.  The Citi Defendants further dispute that transactions with plaintiffs in states other than New York subject them to specific jurisdiction in those states.  The claims in this litigation are all based on alleged misconduct centered in London.  The amended complaints do not allege that any relevant conduct by any Citi Defendant in connection with LIBOR submissions had anything to do with any of the Challenged Jurisdiction states.

Citigroup Inc. ("Citigroup") is a parent holding company entity.  Citigroup is incorporated in Delaware and maintains its principal place of business in New York City.  Wollard Decl. (Dkt. No. 763) ¶ 3.

Citibank, N.A. ("CBNA") is a national bank that was organized pursuant to federal banking laws.  *Id.* ¶ 4.  CBNA maintains its principal place of business in New York City.  *Id.*  During the relevant time period, CBNA employees located in London, not from any office in the United States, were responsible for determining and transmitting CBNA's U.S. Dollar LIBOR submissions.  Thursfield Decl. (Dkt. No. 1423-1) ¶ 5  None of the other Citi Defendants were members of the U.S. Dollar LIBOR panel or were responsible for determining and transmitting

U.S. LIBOR submissions.  *Id.* ¶ 6.  CBNA is aware of an ISDA Master Agreement with the County of San Diego (dated as of September 17, 2002) which included an atypical provision consenting to the non-exclusive jurisdiction of courts in New York and California for purposes of claims relating to that Agreement.  Wollard Decl. (Dkt. No. 763) ¶ 5.  CBNA accordingly is not challenging personal jurisdiction in California with respect to the claims by the County of San Diego that CBNA breached that contract.

Citigroup Global Markets, Inc. ("CGMI") operates a business that focuses on investment banking and securities brokerage activities.  *Id.* ¶ 6.  CGMI is incorporated in New York and maintains its principal place of business in New York City.  *Id.*  CGMI has been named as a defendant in three complaints that are the subject of this motion – the Principal Financial and Principal Funds cases (originally filed in Iowa), and the Prudential case (originally filed in New Jersey) – but CGMI is not challenging personal jurisdiction in those actions.

Citigroup Financial Products, Inc. ("CFPI") is an intermediate holding company that is the parent company of CGMI.  *Id.* ¶ 7.  CFPI is incorporated in Delaware and maintains its principal place of business in New York City.  *Id.*

Citigroup Funding, Inc. ("CFI") was a subsidiary of Citigroup that issued commercial paper and other debt instruments.  *Id.* ¶ 8.  As of December 31, 2012, CFI was merged into the parent holding company Citigroup Inc. as part of a corporate reorganization process, and CFI no longer exists as a separate entity.  *Id.*  CFI previously was incorporated in Delaware and maintained its principal place of business in New York City.  *Id.*

Citi Swapco Inc. ("Citi Swapco") is a subsidiary of CFPI that was used until early 2014 as an intermediary for over-the-counter derivative transactions between external counterparties.  *Id.* ¶ 9.  Before June 2008, Citi Swapco was known as Salomon Swapco Inc.  *Id.* Citi Swapco is incorporated in Delaware and maintains its principal place of business in New York City.  *Id.*
*Sources*:  Declaration of Joseph B. Wollard (Dkt. No. 763); Declaration of Andrew James Thursfield (Dkt. No. 1423-1).

**6.** **_Credit Suisse_**

Credit Suisse Group AG ("CSGAG"), Credit Suisse AG ("CSAG"), Credit Suisse International ("CSI"), Credit Suisse (USA) Inc. ("CSUI") and Credit Suisse Securities (USA) LLC ("CSSU") dispute jurisdiction.  With respect to CSGAG, the Challenged Jurisdictions are California, Illinois, Iowa, Kansas, Minnesota, New Jersey, New York, Pennsylvania, Texas, and Virginia.  With respect to CSAG, the Challenged Jurisdictions are Iowa, New Jersey, and New York.  With respect to CSI, the Challenged Jurisdictions are Iowa, New York, and Virginia.  With respect to CSUI, the Challenged Jurisdiction is New Jersey.  With respect to CSSU, the Challenged Jurisdictions are Iowa, and New Jersey.  In addition to challenging jurisdiction, CSGAG challenges venue in California, Illinois, Iowa, Kansas, Minnesota, New Jersey, New York, Pennsylvania, Texas, and Virginia; CSAG challenges venue in Iowa and New Jersey; CSI challenges venue in Iowa, New York, and Virginia; CSUI challenges venue in New Jersey; and CSSU challenges venue in Iowa and New Jersey.

CSGAG has its headquarters in Zurich, Switzerland, and is organized under the laws of Switzerland.  Schreiber CSGAG Decl. (Dkt. No. 765) ¶ 2.  CSGAG is the ultimate parent company for several Credit Suisse-related affiliates.  CSGAG has no operations in the United States.  CSGAG (through its subsidiaries) had 214 branches in Switzerland.  *Id.* ¶ 3. CSGAG's subsidiaries have dozens of branches and representative offices in more than fifty other countries.  *Id.*

CSAG is a Swiss bank, headquartered in Zurich, Switzerland, and is organized under the laws of Switzerland.  Schreiber CSAG Decl. (Dkt. No. 767) ¶ 2.  CSAG maintains a branch office in New York.  *Id.* ¶ 4. CSAG has 21 branches and 21 representative offices worldwide.  *Id.* ¶ 3.  In the United States, CSAG has a New York branch, and representative offices in Los Angeles, San Diego, and San Francisco, California.  *Id.* ¶ 4. CSAG has direct and indirect subsidiaries in the United States, of which Credit Suisse Holdings (USA), Inc. is the highest level United States holding company.  *Id.* ¶ 5.

- 7 -

In 2013, the United States accounted for a minority of CSGAG's and CSAG's consolidated worldwide revenues. All of CSGAG's subsidiaries combined employed 46,000 full-time employees, including 17,900 in Switzerland. Schreiber CSGAG Decl. (Dkt. No. 765) ¶ 5. CSGAG subsidiaries had approximately 8,365 employees in the United States, of which 7,840 were in New York. *Id.* CSGAG subsidiaries also had a relatively small number of employees in California (293), New Jersey (81), Pennsylvania (52), Texas (123), and Virginia (1). *Id.*

CSI is a United Kingdom financial institution, is headquartered in London, and is organized under the laws of the United Kingdom. Ludford Decl. (Dkt. No. 766) ¶ 2. CSI has branches and representative offices in Europe and Asia. CSI has no branches in the United States. *Id.* ¶ 4. In 2013, the Americas accounted for less than 17% of CSI's worldwide revenues. *Id.* ¶ 6. CSI employed approximately 727 full-time employees, of which 10 were employed in New York. *Id.* ¶ 7.

CSUI has its headquarters in New York, New York, and is incorporated in Delaware. Roseman Decl. (Dkt. No. 770) ¶ 2. In 2013, New York accounted for approximately 88% of CSUI's revenue. *Id.* ¶ 4. CSUI (including subsidiaries) employed approximately 8,251 full-time employees, including 81 in New Jersey. *Id.* ¶ 5.

CSSU has its headquarters in New York, New York, and is a Delaware limited liability company. Finlan Decl. (Dkt. No. 769) ¶ 2. In 2013, less than 2% of CSSU's revenue was attributable to New Jersey. *Id.* ¶ 4. Iowa represented a similarly insignificant proportion of revenue. *Id.* CSSU employed approximately 7,840 employees in the United States, of which approximately 5,620 are located in New York. *Id.* ¶ 3. CSSU employs approximately 81 people in New Jersey and none in Iowa. *Id.*

Credit Suisse AG, London branch was the USD LIBOR submitter. Schreiber CSAG Decl. (Dkt. No. 767) ¶ 8. There is no separate entity known as "Credit Suisse AG, London branch"; rather, it is a branch office of Credit Suisse AG. The employees responsible for these submissions were located in London. *Id.*

*Sources*:  Declaration of Pierre Schreiber for CSGAG (Dkt. No. 765); Declaration of Pierre Schreiber for CSAG (Dkt. No. 767); Declaration of Tamlyn Ludford for CSI (Dkt. No. 766); Declaration of Douglas Roseman for CSUI (Dkt. No. 770); Declaration of Thomas Finlan for CSSU (Dkt. No. 769).

### 7.      *Deutsche Bank*

Deutsche Bank Aktiengesellschaft ("Deutsche Bank AG") and Deutsche Bank Securities, Inc. ("DBSI") dispute jurisdiction.  With respect to Deutsche Bank AG, the Challenged Jurisdictions are California, Illinois, Iowa, Kansas, Minnesota, New Jersey, New York, Pennsylvania, Texas, and Virginia.  Cambria Decl. (Dkt. No. 771) ¶ 11.  With respect to DBSI, the Challenged Jurisdiction is Iowa.  *Id.* ¶ 13.  In addition to challenging jurisdiction, Deutsche Bank AG challenges venue in California, Illinois, Iowa, Kansas, Minnesota, New Jersey, Pennsylvania, Texas, and Virginia.

Deutsche Bank AG does not dispute that it is subject to the specific jurisdiction of courts in these actions for breach of contract claims or other claims directly associated with the particular swap transaction at issue where plaintiffs have attached (or alleged that they entered into) an ISDA Master Agreement with Deutsche Bank AG in which it consented to jurisdiction. Deutsche Bank AG, however, has not consented in these agreements to the jurisdiction of any court regarding antitrust claims or any other claims brought by the same plaintiffs but not dependent on the particular swap transaction (such as RICO and fraud claims).

Deutsche Bank AG is incorporated under the laws of the Federal Republic of Germany and has its principal place of business in Frankfurt am Main, Hesse, Germany.  *Id.* ¶¶ 2, 3. Deutsche Bank AG's principal regulators are the Bundesanstalt für Finanzdienstleistungsaufsicht (better known by its abbreviation "BaFin") and the Deutsche Bundesbank (the German central bank).  *Id.* ¶ 5.  On November 4, 2014, the European Central Bank became Deutsche Bank AG's main prudential supervisor.  *Id.* ¶ 6.

- 9 -

Deutsche Bank AG has 66 branches worldwide, only one of which is located in the United States, in New York. *Id.* ¶ 7. Deutsche Bank AG does not have branches in California, Illinois, Iowa, Kansas, New Jersey, Pennsylvania, Texas or Virginia. *See id.* at ¶¶ 7, 12. Deutsche Bank AG is not registered in New York with the Secretary of State but it is registered in New York with the Department of Financial Services and is regulated by the Federal Reserve System as an uninsured state branch of a foreign bank organization. *Id.* ¶¶ 8-10.

Deutsche Bank AG and its subsidiaries are significantly centered in Germany. For example, according to its 2013 Annual Review, Deutsche Bank is the largest bank in Germany. *Id.* ¶ 4. Deutsche Bank and its subsidiaries have 2,706 retail outlets globally, of which 1,826 outlets (67.4% of all retail outlets) are located in Germany. *Id.* ¶ 15. However, Deutsche Bank AG and its subsidiaries do not have any retail outlets in the United States. *Id.* At all relevant times, Deutsche Bank AG and its subsidiaries' operations in the United States were small when compared to its global operations.

Deutsche Bank AG and its subsidiaries' U.S. presence is also small when measured by the number of full-time employees in the United States. As of October 2014, approximately 10.4% of Deutsche Bank AG and its subsidiaries' full-time employees were based in the United States (10,076 out of 96,733 full-time employees worldwide). *Id.* ¶ 16(A). This percentage is minor when compared to the number of full-time Deutsche Bank employees based in Germany alone: 45,442, or almost half of all of Deutsche Bank's global employees (46.9% of 96,733 full-time Deutsche Bank employees worldwide). *Id.* ¶ 16(B).

At all relevant times, Deutsche Bank AG's U.S. Dollar LIBOR submissions were calculated and submitted in London. No employees responsible for Deutsche Bank AG's Dollar LIBOR submissions were located in the United States. Randazzo Decl. (Dkt. No. 977-3) ¶ 2.

DBSI is headquartered in New York.  Cambria Decl. ¶ 13(A).  This Foreign Bank Subsidiary has never had a branch or office in Iowa.  *Id.* ¶ 13(B).  DBSI is not registered with Iowa's Secretary of State or Iowa's Division of Banking.  *Id.* ¶ 14.

*Sources*:  Declaration of Allison Cambria, Vice President and Counsel, Litigation and Regulatory Investigations Group at Deutsche Bank AG's New York Branch (Dkt. No. 771); Declaration of Joseph P. Randazzo, Global Head of Liquidity Management at Deutsche Bank Securities Inc (Dkt. No. 977-3).

## 8.    *HSBC*

HSBC Holdings plc ("Holdings plc"), HSBC Bank plc ("Bank plc"), The Hongkong and Shanghai Banking Corporation Ltd. ("Hongkong Ltd."), and HSBC Bank USA, NA ("Bank USA") dispute jurisdiction.  With respect to Holdings plc, the Challenged Jurisdictions are California, Illinois, Kansas, Minnesota, New Jersey, New York, and Texas.  With respect to Bank plc, the Challenged Jurisdictions are California, Illinois, Minnesota, New Jersey, New York, Texas, and Virginia.  With respect to Hongkong Ltd., the Challenged Jurisdiction is New York.  With respect to Bank USA, the Challenged Jurisdiction is Kansas. In addition to challenging jurisdiction, Holdings plc challenges venue in California, Illinois, Kansas, Minnesota, New Jersey, New York, and Texas; Bank plc challenges venue in California, Illinois, Minnesota, New Jersey, New York, Texas and Virginia; Hongkong Ltd challenges venue in New York; Bank USA challenges venue in Kansas.

Bank plc is a member of the USD LIBOR panel of banks.  Francis Decl. (Dkt. No. 773) ¶ 6.  Holdings plc, Hongkong Ltd. and Bank USA are not members of the USD LIBOR panel.  *Id.*

Bank plc is a public limited company incorporated under the laws of England and Wales, with its headquarters and principal place of business in London, England.  Black Decl. (Dkt. No. 790) ¶ 3.  Bank plc has no offices, branches, or other regular place of business in New Jersey, Virginia, Kansas, Texas, New York, California, or any other state in the United States.  *Id.* ¶ 5. With the exception of one inactive entity, Bank plc has no direct or indirect subsidiaries incorpo-

rated in, or having a principal place of business in, New Jersey, Virginia, Kansas, Texas, New York, California, or any other state in the United States.  *Id.*  ¶ 6.  Bank plc maintains separate books and records and a separate corporate existence from Holdings plc and from Holdings plcs's subsidiaries in the United States.  *Id.*  ¶ 7.  In 2013, approximately 71% of Bank plc's external net operating income (before loan impairment charges and other credit risk provisions), attributed to countries on the basis of customer location, was derived from the United Kingdom. Francis Decl. ¶ 4.  Only approximately 3.5% of Bank plc's external net operating income (before loan impairment charges and other credit risk provisions) was attributable to countries other than the United Kingdom, France, Switzerland, Germany, and Turkey—including the United States, in 2013.  *Id.*  At all relevant times, Bank plc's U.S. Dollar LIBOR submissions were determined in and transmitted from Bank plc's offices in London.  Brown Decl. (Dkt. No. 1423-4) ¶ 2.

Holdings plc is a public limited company incorporated under the laws of England and Wales, with its registered office in London, England.  Williams Decl. (Dkt. No. 772) ¶ 3.  Holdings plc has no offices, branches, or other regular place of business in New Jersey, Kansas, Texas, New York, California, or any other state in the United States.  *Id.*  ¶ 4.  In 2013, approximately 39% of Holdings plc's external net operating income (before loan impairment charges and other credit risk provisions), attributable to countries on the basis of the location of the subsidiary or branch responsible for reporting the results or advancing the funds, was derived from the United Kingdom and Hong Kong.  Francis Decl. (Dkt. No. 773) ¶ 3.  Approximately 91% of Holdings plc's external net operating income (before loan impairment charges and other credit risk provisions) was derived from outside of the United States in 2013.  *Id.*  At all relevant times, Holdings plc did not determine or transmit any U.S. Dollar LIBOR submissions, as it was not a member of the U.S. Dollar LIBOR panel of banks.  Brown Decl. (Dkt. No. 1423-4) ¶ 2.

Hongkong Ltd. is organized under the laws of Hong Kong, with its headquarters and principal place of business in Hong Kong.  Gregory Decl. (Dkt. No. 774) ¶ 3.  Hongkong Ltd. does not have any offices, branches, or other regular place of business in New York.  *Id.* ¶ 4.

Hongkong Ltd. has no subsidiaries incorporated in New York or that have their principal place of business in New York. *Id*. ¶ 5. Hongkong Ltd. maintains separate books and records from Holdings plc, from Bank plc, and from any subsidiaries of Holdings plc that are located in New York. *Id*. at ¶ 6. It also has a separate board of directors and a separate corporate existence from such entities. *Id*. In 2013, 100% of Hongkong Ltd.'s net external operating income, attributable to countries on the basis of the location of the principal operations of the subsidiary or branch, was derived from operations in Hong Kong and the rest of Asia-Pacific. Francis Decl. (Dkt. No. 773) ¶ 5.

Bank USA is a national banking association organized under the laws of the United States, with its main office in McLean, Virginia and having a place of business in New York. Snell Decl. (Dkt. No. 775) ¶ 3. Bank USA has no offices, branches, or other regular places of business in Kansas. *Id.* ¶ 4. Bank USA is a separate legal entity from Holdings plc and Bank plc, and it maintains separate books and records and a separate corporate existence from those entities. *Id.* ¶ 5.

*Sources*: Declarations of Nicola B. Black (Dkt. No. 790), Tim Brown (Dkt. No. 1423-4), Gavin A. Francis (Dkt. No. 773), Michelle Gregory (Dkt. No. 774), Pamela A. Snell (Dkt. No. 775), and Elaine Williams (Dkt. No. 772).

### 9.    *JPMorgan*

JPMorgan Chase & Co. ("JPMCC"), JPMorgan Chase Bank, N.A. ("JPMCBNA"), Chase Bank USA, N.A. (f/k/a Chase Manhattan Bank USA, National Association) ("CBUSANA"), J.P. Morgan Markets Limited (f/k/a Bear, Stearns International Limited) ("JPMM") and J.P. Morgan Dublin plc (f/k/a JPMorgan Bank Dublin plc) (f/k/a Bear Stearns Bank plc) ("JPMD") dispute jurisdiction. With respect to JPMCC, the Challenged Jurisdictions are California, Iowa, Kansas, New Jersey, Pennsylvania, Texas, and Virginia. With respect to JPMCBNA, the Challenged Jurisdictions are California, Iowa, Kansas, New Jersey, Pennsylva-

nia, Texas, and Virginia.  With respect to JPMM, the Challenged Jurisdiction is New York.

With respect to JPMD, the Challenged Jurisdictions are New York and Iowa.  With respect to

CBUSANA, the Challenged Jurisdiction is Iowa.  JPMCC, JPMCBNA, CBUSANA, JPMM and

JPMD do not have presence sufficient for personal jurisdiction in their respective Challenged

Jurisdictions.

JPMCC is a domestic financial holding corporation incorporated in Delaware with its

principal place of business in New York.  Bannerman Decl. (Dkt. No. 777) ¶ 2.  As a financial

holding company, JPMCC's principal business consists of holding stock in various banking insti-

tutions and other legal entities. *Id.*   JPMCBNA, a subsidiary of JPMCC, is a national bank

formed under the laws of the United States. *Id.*  Its headquarters is in Columbus, Ohio, as desig-

nated in its articles of association on file with the Office of the Comptroller of the Currency. *Id.*

JPMM is a foreign private limited corporation incorporated in the United Kingdom with

its principal place of business in London. Smith Decl. (Dkt. No. 779) ¶ 2. JPMM did not have

any branches or offices in the United States from August 2007 to the end of 2011. *Id.* ¶ 3.

CBUSANA is a national bank.  McCullough Decl. (Dkt. No. 778) ¶ 2.As a national bank,

CBUSANA is incorporated under the laws of the United States with its principal place of busi-

ness in Delaware. *Id.*  CBUSANA did not have any branches or offices in Iowa from August

2007 to May 2010. *Id.* ¶3.

JPMD is a foreign financial services corporation incorporated in Ireland with its principal

place of business in Dublin. Quinn Decl. (Dkt. No. 780) ¶ 2. JPMD did not have any branches or

offices in the United States from August 2007 to the end of 2011. *Id.* ¶ 3.

Between August 2007 and mid-2011, JPMCC, JPMM, JPMD and CBUSANA did not

submit rates to the British Bankers' Association in the United Kingdom for use in the calculation

of the U.S. Dollar London Interbank Offered Rate ("USD LIBOR"). Nov. 5, 2014 Barton Decl.

(Dkt. No. 789) ¶ 2. JPMCBNA likewise did not submit rates to the British Bankers' Association

in the United Kingdom for use in the calculation of USD LIBOR from California, Iowa, Kansas,

New Jersey, Pennsylvania, Texas, or Virginia.  *Id.* ¶ 3. JPMorgan Chase Bank, N.A., London Branch submitted rates to the British Bankers' Association for use in the calculation of USD LIBOR.  *Id.* ¶ 4.  These submissions were both determined and submitted by individuals located in the United Kingdom, not individuals located in the United States.  May 12, 2016 Barton Decl. (Dkt. No. 1423-2) ¶ 4.

*Sources*:  Declarations of Christine N. Bannerman (Dkt. No. 777), Brent L. Barton (November 5, 2014) (Dkt. No. 789), Brent L. Barton (May 12, 2016) (Dkt. No. 1423-2), Mary M. McCullough (Dkt. No. 778), Dara Quinn (Dkt. No. 780), Rebecca K. Smith (Dkt. No. 779).

### 10.  *Lloyds*

Lloyds Banking Group PLC ("LBG"), Lloyds Bank plc (f/k/a Lloyds TSB Bank plc) ("Lloyds Bank") and HBOS plc ("HBOS") dispute jurisdiction.  With respect to LBG, the Challenged Jurisdictions are California, Illinois, Iowa, Kansas, Minnesota, New Jersey, New York, Texas, and Virginia.  With respect to Lloyds Bank, the Challenged Jurisdictions are Illinois, Iowa, Minnesota, New Jersey, New York, and Virginia.  With respect to HBOS, the Challenged Jurisdictions are California, Illinois, Iowa, Kansas, Minnesota, New Jersey, New York, Texas, and Virginia.  In addition to challenging jurisdiction, LBG challenges venue in California, Illinois, Iowa, Kansas, Minnesota, New Jersey, New York, Texas, and Virginia; Lloyds Bank challenges venue in Illinois, Iowa, Minnesota, New Jersey, and Virginia; and HBOS challenges venue in California, Illinois, Iowa, Kansas, Minnesota, New Jersey, New York, Texas, and Virginia.

LBG is, and at all relevant times since its formation has been, a corporation organized and existing under the laws of Scotland.  McKendry Decl. (Dkt. No. 781) ¶ 2.  The registered office of LBG is located at The Mound, Edinburgh EH1 1YZ, Scotland (company registration number SC95000) and its principal place of business is in the United Kingdom. *Id.*  Prior to January, 2009, LBG was known as Lloyds TSB Group plc ("LTSB Group"), and its principal banking subsidiary was Lloyds Bank.  *Id.*  In January 2009, substantially simultaneously with its ac-

quisition of 100% of the ordinary shares of HBOS, LTSB Group changed its name to LBG. *Id.* LBG is a holding company for companies engaged in the banking and insurance businesses. The Government of the United Kingdom, through Her Majesty's Treasury, owns a minority of the outstanding shares of LBG's stock. *Id.*

Lloyds Bank, a wholly owned subsidiary of LBG, is, and at all relevant times has been, a corporation organized and existing under the laws of England and Wales, with its registered office located at 25 Gresham Street, London EC2V 7HN, England (company registration number 2065) and its principal place of business in the United Kingdom. *Id.* ¶ 3.

HBOS, a wholly owned subsidiary of Lloyds Bank (having been acquired by Lloyds Bank from LBG on January 1, 2010), is, and at all relevant times has been, a corporation organized and existing under the laws of Scotland, with its registered office located at The Mound, Edinburgh, Scotland (company registration number no. SC218813) and its principal place of business in the United Kingdom. *Id.* ¶ 4. HBOS is a holding company for its subsidiaries, including Bank of Scotland. *Id.*

The principal regulators of LBG, Lloyds Bank and HBOS are the Prudential Regulation Authority and the Financial Conduct Authority, both of the United Kingdom. *Id.* ¶ 5.

The business of LBG and its subsidiaries – including Lloyds Bank, HBOS and Bank of Scotland – is overwhelmingly centered in the United Kingdom. *Id.* ¶ 6. For example, LBG's subsidiaries operate 2,249 bank branches across the United Kingdom – the largest banking branch network in the United Kingdom. *Id.* In contrast, there are only two branches of LBG subsidiary banks in the United States (one each of Lloyds Bank and Bank of Scotland, housed at a common location in New York), and one representative office of Bank of Scotland in each of Chicago and Houston. Neither LBG nor HBOS maintains any offices in the United States. *Id.*

Because the business of LBG and its subsidiaries is so heavily centered in the United Kingdom, LBG no longer presents in its annual report a segment analysis by geography. *Id.* ¶ 7. In 2012, the last year for which LBG presented this data, approximately 89% of its total assets

were in the United Kingdom and over 94% of its total income was earned there. *Id.* In none of the past five years has any country other than the United Kingdom contributed more than 5% of either total assets or income of LBG and its subsidiaries. *Id.*

As of December 31, 2013, LBG and its subsidiaries employed nearly 89,000 people, calculated on a full-time equivalent ("FTE") basis, worldwide; 97% of them (*i.e.*, all but 1200) were based in the UK. *Id.* ¶ 8. As of September 30, 2014, only 326 employees are employed by LBG subsidiaries, on a FTE basis, in the United States – 306 in New York. *Id.*

During the period relevant to the above-captioned actions, Lloyds Bank and Bank of Scotland were members of the panel of banks making submissions of BBA USD LIBOR. *Id.* ¶ 9. All of the individuals who made, or had input into the making of, such submissions were then employed in the United Kingdom and those submissions were made from London. *Id.* At no time did any U.S.-based employees make or have any input into the USD LIBOR submissions (or LIBOR submissions in any other currency) of Lloyds Bank or Bank of Scotland. *Id.* Neither the New York branches of Lloyds Bank and Bank of Scotland nor any other U.S.-based office or entity that is or was a direct or indirect subsidiary of LBG have, or at any relevant time had, any responsibility for determining or making LIBOR submissions. *Id.*

*Source*: Declaration of Kevin P. McKendry (Dkt. No. 781).

## 11. *Norinchukin*

The Norinchukin Bank ("Norinchukin") disputes jurisdiction. The Challenged Jurisdictions for purposes of this Motion and the claims asserted against Norinchukin are California, Illinois, Kansas, Minnesota, New Jersey, New York, Texas, and Virginia. In addition to challenging jurisdiction, Norinchukin challenges venue in California, Illinois, Kansas, Minnesota, New Jersey, Texas, and Virginia.

During the relevant time, The Norinchukin Bank was a Japanese financial institution incorporated under the laws of Japan. Takashima Decl. (Dkt. No. 782) ¶2. Norinchukin main-

tained its headquarters at 1-13-2, Yurakucho, Chiyoda-ku, Tokyo 100-8420, Japan. *Id.* ¶3.  All Norinchukin employees and supervisors responsible for submitting Dollar LIBOR rates worked in London, England.  *Id.* ¶ 6.  Norinchukin's only office in the United States was and is in New York, New York.  *Id.* ¶ 4.   The New York Branch did not contribute to submitting Dollar LIBOR rates. *Id.* ¶ 6.   For the fiscal years that ended March 31, 2011, 2012, 2013, and 2014, less than 0.6% of Norinchukin's worldwide income came from its New York branch operations. *Id.* ¶ 8.  During that period, Norinchukin's New York Branch had fewer than 70 employees out of more than 3,100 Norinchukin employees worldwide. *Id.* ¶ 9.

*Source*:  Declaration of Osamu Takashima (Dkt. No. 782).

### 12.   *Portigon/WestLB*

Portigon AG ("Portigon") disputes jurisdiction.  With respect to Portigon, the Challenged Jurisdictions are California, Illinois, Kansas, Minnesota, New Jersey, New York, Texas, and Virginia.  In addition to challenging jurisdiction, Portigon challenges venue in California, Illinois, Kansas, Minnesota, New Jersey, Texas, and Virginia.

Portigon is a German bank incorporated in the Federal Republic of Germany and headquartered at Herzogstraße 15, 40217 Düsseldorf, Germany.  Borstelmann Decl. (Dkt. No. 786) ¶ 2.  Portigon's principal place of business is and always has been in Germany.  *Id.*  Portigon is owned by the German State of North Rhine-Westphalia.  *Id.* ¶ 3.  North Rhine-Westphalia owns 69.49% of Portigon directly and owns the remaining 30.51% through NRW Bank, which is owned by North Rhine-Westphalia.  *Id.*  Portigon has a single branch office in New York City, and no other U.S. locations.  *Id.* ¶ 5.

Portigon's New York operations are small as compared to its worldwide operations.  *Id.* ¶ 6.  For the fiscal years that ended December 2012 and December 2013, and for the first half of fiscal year 2014, Portigon's New York branch generated 8%, 14% and 4% of Portigon's world-

wide net revenues, respectively.  *Id.* ¶ 7.  During these same periods, respectively, only 7.1%, 6.2% and 3.2% of Portigon's total worldwide employees were located in New York.  *Id.* ¶ 8.

As of August 2011, Portigon ceased participation in the British Bankers' Association's ("BBA") USD LIBOR panel.  *Id.* ¶ 9.  At all relevant times, the Portigon employees that were responsible for the determination or submission of rates to the BBA in the United Kingdom for use in the calculation of USD LIBOR were located in London, England and made Portigon's submissions from that location.  *Id.* ¶ 10.

*Source*:  Declaration of Dr. Frank Borstelmann, company secretary ("Generalsekretariat") of Portigon AG (Dkt. No. 786).

### 13.  *Rabobank*

Coöperatieve Rabobank U.A. (f/k/a Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.) ("Rabobank") disputes jurisdiction.  With respect to Rabobank, the Challenged Jurisdictions are California, Illinois, Iowa, Kansas, Minnesota, New Jersey, New York, Texas, and Virginia.  In addition to challenging jurisdiction, Rabobank challenges venue in California, Illinois, Iowa, Kansas, Minnesota, New Jersey, Texas, and Virginia.

Rabobank is a financial services institution organized under the laws of the Netherlands.  Sherman Decl. (Dkt. No. 764) ¶ 2.  It is headquartered and has its principal place of business in the Netherlands.  *Id.*  Rabobank is a cooperative banking organization.  *Id.* ¶ 3.  As of June 2014, Rabobank had 591 branches in the Netherlands and operated in 40 other countries outside the Netherlands.  *Id.* ¶ 4.  As of December 2013, Rabobank, together with its subsidiaries and affiliates, had approximately 57,000 employees worldwide on a full-time equivalent basis – approximately 39,000 of whom worked in the Netherlands.  *Id.* ¶ 3.

At all times relevant to the motions to dismiss for lack of personal jurisdiction, Rabobank's operations in the United States were small compared to its total global operations.  *Id.* ¶ 5-9.  It maintains a single branch office in the United States, located in New York, New York.

- 19 -

*Id.* ¶ 5.  The New York branch of Rabobank is registered as a foreign bank branch with the New York Department of Financial Services but is not registered in New York with the Secretary of State.  *Id.* ¶ 6.  Rabobank's New York branch is also not a retail bank.  *Id.*  Its banking operations are a comparatively small part of Rabobank's business as a whole.  *Id.*  As of December 2013, the New York branch of Rabobank generated approximately 3.6% of the ordinary income and approximately 2.5% of the ordinary profit of the worldwide operations of Rabobank, its subsidiaries and affiliates.  *Id.*  As of December 2013, the New York branch of Rabobank had approximately 550 employees – less than 1% of Rabobank's total employees worldwide.  *Id.*

In addition, Rabobank has representative offices in Atlanta, Chicago, Dallas, St. Louis, and San Francisco.  *Id.* ¶ 7.  The representative offices do not conduct banking activities.  *Id.*  Their operations are limited to client marketing and service activities.  *Id.*  As of December 2013, the San Francisco representative office had 13 employees, and the Dallas representative office had 11 employees.  *Id.* ¶ 8-9.

Rabobank employees responsible for U.S. Dollar LIBOR submissions to the British Bankers' Association in the United Kingdom were located in London until December 2008, and in Utrecht starting in January 2009.  *Id.* ¶ 10.  At no time was any Rabobank employee located in the United States responsible for transmission of Rabobank's U.S. Dollar LIBOR submissions to the British Bankers' Association.  *Id.*

*Source*:  Declaration of Andrew Sherman (Dkt. No. 764).

### 14.   ***RBS***

Royal Bank of Scotland Group plc ("RBS Group") and The Royal Bank of Scotland plc ("RBS plc") dispute jurisdiction.  With respect to RBS Group, the Challenged Jurisdictions are California, Illinois, Iowa, Kansas, Minnesota, New Jersey, New York, Texas, and Virginia.  With respect to RBS plc, the Challenged Jurisdictions are Iowa, New Jersey, New York, Pennsylvania, and Virginia.  In addition to challenging jurisdiction, RBS Group challenges venue in California,

Illinois, Iowa, Kansas, Minnesota, New Jersey, New York, Texas, and Virginia; and RBS plc challenges venue in Iowa, New York, Pennsylvania, and Virginia.

RBS Group is a United Kingdom bank holding company headquartered and incorporated in Scotland, United Kingdom, with its principal office in Gogarburn, Edinburgh, EH12 1HQ. Nov. 6, 2014 Gougherty Decl. (Dkt. No. 784) ¶ 3. RBS Group's principal place of business is the United Kingdom. *Id.* RBS Group itself—as distinct from some of its subsidiaries—has no offices anywhere in the United States. *Id.* ¶ 4. As reported in the 2013 annual report of RBS Group, only 21% of the global revenue generated by RBS Group family of operating subsidiaries in 2013 was attributable to the United States (versus 60% from the United Kingdom). *Id.* ¶ 5. As a bank holding company, RBS Group itself has not engaged in transactions of financial products linked to U.S. dollar LIBOR in California, Iowa, Kansas, New York, Ohio, Texas, Virginia, or anywhere in the United States. *Id.* ¶ 6.

RBS plc is one of the principal operating subsidiaries of RBS Group. *Id.* ¶ 7. RBS plc is a United Kingdom corporation headquartered and incorporated in Scotland, United Kingdom, with its principal offices at Gogarburn, Edinburgh, EH12 1HQ and 280 Bishopsgate, London, EC2M 4RB. *Id.* ¶ 8. RBS plc's principal place of business is the United Kingdom. As of November 2014, RBS plc had more than 51,000 employees worldwide, and all but approximately 5,500 of those employees were based in the United Kingdom. *Id.* ¶ 9. RBS plc's operations in the United States are small compared to its operations outside of the United States. *Id.* ¶ 10. As of November 2014, in addition to its principal and other offices in the United Kingdom, and more than 600 retail branches located in the United Kingdom, RBS plc maintained offices in more than 30 other non-U.S. jurisdictions worldwide. *Id.* ¶ 11. In the United States, RBS plc's presence consisted of a single branch office located in Stamford, Connecticut, and smaller representative offices in Chicago, Houston, New York, San Francisco, and Jersey City, New Jersey. *Id.* ¶ 12. Of RBS plc's approximately 51,000 employees worldwide as of November 2014, fewer than 350 were based in the United States, and most of them were based in RBS plc's only U.S.

branch office (in Stamford, Connecticut).  *Id.* ¶ 13.  RBS plc's revenue attributable to the United States (including through direct and indirect subsidiaries) is also small as compared to its revenue worldwide.  *Id.* ¶ 14.  As reported in the 2013 annual report of RBS plc, only 20% of the global revenue of RBS plc and its direct and indirect subsidiaries in 2013 was attributable to the United States (versus 62% from the United Kingdom).  *Id.*  Only a small portion of that 20% of revenue generated was attributable to RBS plc itself, with most attributable to the operations of the U.S. broker-dealer (RBS Securities Inc.) and the U.S. retail and commercial bank (Citizens Financial Group, Inc.).  *Id.*

During the relevant time, all submissions of rates to the British Bankers Association for use in the calculation of U.S. Dollar LIBOR were both determined and transmitted from RBS plc's offices in the United Kingdom, not from any offices in the United States.  May 23, 2016 Gougherty Decl. (Dkt. No. 1423-5) ¶ 3-4.

*Source*: November 6, 2014 Declaration of William Gougherty (Dkt. No. 784); May 23, 2016 Declaration of William Gougherty (Dkt. No. 1423-5).

## 15. *Royal Bank of Canada*

Royal Bank of Canada ("RBC") and RBC Capital Markets LLC dispute jurisdiction. With respect to RBC, the Challenged Jurisdictions are California, Illinois, Iowa, Kansas, Minnesota, New Jersey, New York, Pennsylvania, Texas, and Virginia. With respect to RBCCM, the Challenged Jurisdiction is New Jersey.  RBC also challenges venue in Iowa, Kansas, Minnesota, New Jersey, and Virginia.

RBC is a Canadian chartered bank organized and existing under the laws of Canada with its principal place of business and headquarters in Canada.  DeSena Decl. ¶ 2.  As reported in its 2013 annual report, RBC and its subsidiaries earn the vast majority (over 80%) of their revenue outside of the United States, *Id.* ¶ 5, and RBC's operations in the United States are small when compared to its total global operations.  As of the end of 2013, RBC operated 1,372 branches in

Canada and other countries outside of the United States. *Id.* ¶ 3. In contrast, RBC operated ten offices in the United States as of November 5, 2014. *Id.* ¶ 3. RBC has never maintained offices in Iowa, Kansas, or Virginia. *Id.* ¶ 3. RBC did not operate an office in New Jersey during the time periods at issue in the complaints or at the time the complaints were filed. *See Id.* ¶ 3 (as of November 5, 2014 RBC did not had not operated an office in New Jersey).

RBCCM is named as a defendant in one action and the complaint acknowledges that RBCCM "is a Delaware limited liability company and registered broker-dealer located in Minneapolis, Minnesota." Amended Complaint at ¶ 25, *Prudential Investment Portfolios 2 v. Bank of Am. Corp., et al.*, No. 14 Civ. 04189, (D.N.J. Oct. 6, 2014), ECF No. 669.

RBC's U.S. Dollar LIBOR submissions were made by employees in the United Kingdom and transmitted from London. DeSena Decl. ¶ 6. No U.S.-based employees were responsible for submission of rates to the British Bankers' Association in the United Kingdom for use in the calculation of U.S. Dollar Libor. DeSena Decl. ¶ 6. The RBC employees responsible for these submissions are located in London, United Kingdom. *Id.*

*Source*: Declaration of Ralph DeSena (Dkt. No. 783).

### 16.   *Société Générale*

Société Générale ("SG") disputes jurisdiction. With respect to SG, the Challenged Jurisdictions are California, Illinois, Kansas, Minnesota, New Jersey, New York, Texas and Virginia. In addition to challenging jurisdiction, SG challenges venue in California, Kansas, Minnesota, New Jersey, and Virginia.

SG is, and at all times relevant to these litigations was, a limited company (société anonyme) incorporated in France. Bourrinet Decl. (Dkt. No. 785) ¶ 2. SG's headquarters are, and have been, Paris, France. *Id.* ¶ 2. SG has two branches in the United States, a branch in New York, New York and a branch in Chicago, Illinois. *Id.* ¶ 5. SG also has an agency office in Dallas, Texas and a representative office in Houston, Texas (and, since 2015, representative of-

fices in Atlanta, Georgia, Irvine, California, and Santa Monica, California). *Id.* SG has no branches, agency offices or representative offices in Kansas or Virginia. *Id.* ¶ 6.

The United States operations of the SG Group comprise a small portion of worldwide activities of the SG Group. *Id.* ¶ 7. For example, as set forth in its 2014 Registration Statement (Annual Financial Report 2013), available at http://www.societegenerale.com/sites/default/files/societegeneraleddr2014en_0.pdf, in 2013, SG Group as a whole generated €22.8 billion in net banking income, €10.4 billion of which was derived from France compared to only €1.25 billion derived from the Americas (which encompasses North, Central and South America). *Id.* The amount derived from the Americas represents only about 5 percent of the total net banking income of SG Group. *Id.*

As set forth in SG's 2014 Registration Statement, at the end of 2013 SG had a total of 42,710 employees in France. *Id.* ¶ 8. SG had a total of approximately 490 employees in the United States at the end of 2013. *Id.* As a result, SG employs, at most, 1.1 percent of its workforce in the United States. *Id.*

No plaintiff alleges: (1) that SG was a counter party to any swap agreement or other LIBOR-linked transaction in which a Plaintiff allegedly engaged, or (2) that they otherwise had direct dealings with SG. No Plaintiff references, incorporates, or appends to its amended complaint any agreement to which SG is alleged to have been a party. None of the Plaintiffs alleges that SG engaged in specific misconduct in the United States (including in any of the Challenged Jurisdictions), much less any conduct that could be deemed an act in furtherance of an alleged conspiracy.

SG is not alleged to have made its US dollar LIBOR contributions from the United States and is not identified as a participant in any emails or other electronic communications or any conversations that suggest collusion, rate manipulation, or any improper conduct, let alone communications that involved U.S. participants. *Id.* ¶ 9. SG determined the level of its US dollar LIBOR contributions in Paris, France and transmitted those contributions to Thomson Reuters

- 24 -

from SG's office in London, England. *Id.* ¶ 10. SG employees in the United States were not responsible for the determination or transmission of SG's US dollar LIBOR contributions. *Id.* *Source*: Declaration of Dominique Bourrinet (Dkt. No. 785).

## 17.   __UBS__

UBS AG, UBS Securities LLC, and UBS Limited dispute jurisdiction. With respect to UBS AG, the Challenged Jurisdictions are California, Illinois, Iowa, Kansas, Minnesota, New Jersey, New York, Pennsylvania, Texas, and Virginia. With respect to UBS Securities LLC the Challenged Jurisdictions are California, New Jersey, and Iowa. With respect to UBS Limited, the Challenged Jurisdiction is New York. In addition to challenging jurisdiction, UBS AG challenges venue in the Southern District of California, the Eastern District of California, Iowa, Kansas, Minnesota, New Jersey, Pennsylvania, Texas, and Virginia; UBS Securities LLC challenges venue in California, Iowa, and New Jersey; and UBS Limited challenges venue in New York.

UBS AG is a 152-year-old financial institution incorporated in Switzerland. *See* Declaration of John Connors ¶ 3, *Sonterra Capital Master Fund, Ltd. v. Barclays Bank plc, et al.*, No. 15-cv-3538 (VSB), Dkt. 71 (S.D.N.Y. filed Nov. 13, 2015). Its global headquarters and principal place of business are located in Zurich and Basel, Switzerland, at Bahnhofstrasse 45, 8001 Zurich, Switzerland, and Aeschenvorstadt 1, 4051 Basel, Switzerland, respectively. *Id.* In the United States, UBS AG "maintains licensed branches only in California, Connecticut, Florida, Illinois, and New York," *id.* ¶ 5, with none in Iowa, Kansas, Minnesota, New Jersey, Pennsylvania, Texas, or Virginia. As of 2014, the majority of UBS AG's total operating income was attributable to regions outside of the United States. *Id.* ¶ 6 . Out of the CHF 28 billion in total operating income for 2014, only CHF 10.7 million can be attributed to the United States. *Id.* As of 2014, UBS reported 60,155 full time employees worldwide, with only 4,178 of its full time employees located in New York. *Id.* ¶ 7. No UBS AG branch, office, agency, or employee in Cali-

- 25 -

fornia or Pennsylvania has ever been responsible for or involved with the determination or sub-
mission of rates to the British Bankers' Association in the United Kingdom for use in the calcu-
lation of Dollar Libor.  Connors Decl. (Dkt. No. 788) ¶ 6.

UBS Securities LLC is a wholly owned indirect subsidiary of UBS AG incorporated in
Delaware.  *Id.* ¶ 3.  Its headquarters and principal place of business are located at 1285 Avenue
of the Americas, New York, NY 10019.  *Id.*  UBS Securities LLC maintains no branch or office
in Iowa.  *Id.* ¶ 5.  No UBS Securities LLC branch, office, agency, or employee in Iowa has ever
been responsible for or involved with the determination or submission of rates to the British
Bankers' Association in the United Kingdom for use in the calculation of Dollar Libor. *Id.* ¶ 7.

UBS Limited is a wholly owned subsidiary of UBS AG incorporated in the United King-
dom.  *Id.* ¶ 4.  Its headquarters and principal place of business are located at 1 Finsbury Avenue,
London, EC2M 2PP, United Kingdom.  *Id.*  UBS Limited maintains no branch or office in New
York.  *Id.* ¶ 5.  No UBS Limited branch, office, agency, or employee in New York has ever been
responsible for or involved with the determination or submission of rates to the British Bankers'
Association in the United Kingdom for use in the calculation of Dollar Libor.  *Id.* ¶ 8.

*Sources*:  Declaration of John Connors, dated November 5, 2014 (Dkt. No. 788); Declara-
tion of John Connors, *Sonterra Capital Master Fund, Ltd. v. Barclays Bank plc, et al.*, No. 15-
cv-3538 (VSB), Dkt. 71 (S.D.N.Y. filed Nov. 13, 2015).

### *18.*    *Westdeutsche ImmobilienBank AG*

Westdeutsche ImmobilienBank AG ("WestImmo") disputes jurisdiction.  With respect to
WestImmo, the Challenged Jurisdictions are California, Illinois, Kansas, Minnesota, New Jersey,
New York, and Texas.  In addition to challenging jurisdiction, WestImmo challenges venue in
New Jersey, Minnesota, Illinois, California, Kansas, and Texas.

WestImmo is a real estate property finance corporation incorporated in the Federal Re-
public of Germany and headquartered at Groβe Bleiche 46, 55116 Mainz, Germany.  Cooper

Decl. (Dkt. No. 787) ¶ 2.  WestImmo's principal place of business is and always has been in Germany.  *Id.*  WestImmo was formerly owned by Portigon AG, but since September 2012 has been a wholly-owned subsidiary of Erste Abwicklungsanstalt (EAA), which is based in Düsseldorf, Germany.  *Id.* ¶ 3.  At all times relevant to the motion to dismiss for lack of personal jurisdiction, WestImmo had a single representative office in New York City, and no other U.S. locations.  *Id.* ¶ 5.

WestImmo's New York operations were small as compared to its worldwide operations. *Id.* ¶ 6.  For the fiscal years that ended December 2012 and December 2013, and until September 2014, between 4% and 7% of WestImmo's worldwide assets related to the activities of WestImmo's New York representative office.  *Id.* ¶ 7.  For these same periods, less than 2% of WestImmo's total full-time employees worldwide were located in New York.  *Id.* ¶ 8.

WestImmo is not and has never been responsible for the determination or submission of rates to the British Bankers Association in the United Kingdom for use in the calculation of USD LIBOR.  *Id.* ¶ 9.

*Source*: Declaration of Andrew S. Cooper, Managing Director of the New York representative office of Westdeutsche ImmobilienBank AG (Dkt. No. 787).