UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
In re:

LIBOR-Based Financial Instruments          **MEMORANDUM AND ORDER**
Antitrust Litigation.
                                              11 MD 2262 (NRB)
This Document Applies to:

Cases Listed in Appendix


-----------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


In <u>LIBOR IV</u>, "due to the sheer number of allegations and the lack of clarity in many complaints as to which claims are alleged against which defendants . . . we direct[ed] the parties to confer and provide us with a spreadsheet containing a list of claims that, in accordance with [this Court's] conclusions . . . are dismissed on jurisdictional grounds."  No. 11 MD 2262, 2015 WL 6243526, at *37, 2015 U.S. Dist. LEXIS 147561, at *185. While counsel for plaintiffs and defendants have cooperatively worked together over many months to provide this spreadsheet (for which the Court is appreciative), eight[1] numbered and distinct issues remain, which we now resolve.

---

[1]     One dispute between the parties, plaintiffs' request for jurisdictional discovery, was resolved in a Memorandum and Order dated April 29, 2016 (ECF No. 1396).   In that regard, we note that we are satisfied with the supplemental affidavits submitted on behalf of Citigroup Inc., Citibank, N.A., Citigroup Global Markets, Inc., Citigroup Financial Products Inc., Citigroup Funding Inc., Citi Swapco Inc., JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Markets Limited, J.P. Morgan Dublin plc, Chase Bank USA, N.A., Bank of America, N.A., HSBC Bank plc, HSBC Holdings plc, The Royal Bank of Scotland Group plc, and The Royal Bank of Scotland plc (ECF No.

I.   **Resolution of General Disputes**

Certain of the disputes between the parties can be resolved generally, as they apply in the same way to all plaintiffs. These include disputes regarding aiding and abetting liability as it relates to particular contracts and whether plaintiffs may plead breach of contract claims against certain non-panel banks. We resolve those issues in Section I.  Other disputes require resolution both at a general and a specific level, because the parties disagree on the particular rule to apply and because the applicable rule applies to different plaintiffs in different ways.  In Section I, we address which rule to employ and, in Section II, apply that rule.   We follow the parties' denomination of the disputed issues.

A.   Issue 1

The parties dispute whether an ISDA Master Agreement forum selection clause allows this Court to exercise personal jurisdiction with respect to all fraud claims brought in a plaintiff's chosen forum over a defendant who is a party to that agreement.  In LIBOR IV, we addressed the scope of the consent to jurisdiction resulting from the forum selection clauses of the ISDA Master Agreements.  Specifically, we held that:

---

1423).   Therefore, we dismiss fraud claims based on persistent suppression against these defendants.
    Another dispute listed in the introductory section of the parties' joint submission, namely, whether plaintiffs improperly included claims based on a conspiracy jurisdiction theory, is not in fact listed as a dispute between any specific defendant and plaintiff.   That subject will, of course, be addressed in our forthcoming decisions following the remand in Gelboim.

> The forum selection clause in the ISDA Master Agreements uses the phrase "relating to this Agreement." Courts in this Circuit and elsewhere give a broad reading to the phrase "relating to" (and its sister phrases "relate to" and "related to") in forum selection clauses. Here, claims brought against counterparties in their capacity as counterparties relate to the ISDA Agreements, even if they sound in unjust enrichment or fraud in the inducement, because they depend upon the existence of a contractual relationship between the parties.
>
> We caution, however, that this conclusion does not mean that all claims against a counterparty may be brought in a contractually selected forum. The claim must relate to the particular contractual relationship. Thus, for example, we will not uphold jurisdiction over a counterparty for all fraud claims that a plaintiff might bring against that counterparty on the basis of the forum selection clause.

2015 WL 6243526, at *34, 2015 U.S. Dist. LEXIS 147561, at **178-80 (citations and footnotes omitted).

The plaintiffs' current contention that "the Court specifically upheld personal jurisdiction for fraud claims for counterparties in the plaintiffs' home forums, so long as the forum selection clause did not specifically preclude such jurisdiction," Letter from Joel Kurtzberg & Richard J. Leveridge, January 21, 2016 ("PJ Chart") at 2, ECF No. 1303, ignores the explicit limitation just quoted. Specifically, the forum selection clauses in the ISDA Master Agreements do not support the exercise of personal jurisdiction for false data

fraud claims, which do not "depend upon the existence of a contractual relationship between the parties."  LIBOR IV, 2015 WL 6243526, at *34, 2015 U.S. Dist. LEXIS 147561, at *179.

Finally, to the extent that plaintiffs' fraud claims relate to swap transactions entered into before the manipulation period, those claims fail on the merits.  Id., 2015 WL 6243526, at *58, 2015 U.S. Dist. LEXIS 147561, at *246 ("If . . . a counterparty learned about manipulation after the inception of a contract, then there was no duty to inform plaintiffs later, because new information would not alter plaintiffs' commitment to pay and receive money based on published LIBOR." (emphasis in original)).  Therefore, the following fraud and/or negligent misrepresentation claims fail on the merits:

| Plaintiff | Defendant |
|---|---|
| City of Houston | JPMorgan Chase Bank, N.A. ("JPMCB"), Royal Bank of Canada ("RBC") |
| City of Richmond | JPMorgan Chase & Co. ("JPMC"), JPMCB |
| City of Riverside | Bank of America Corp. ("BAC"), Bank of America, N.A. ("BANA"), JPMC, JPMCB |
| County of Sacramento | BANA |
| County of San Diego | Citibank, N.A. |
| County of San Mateo | Citibank, N.A. |
| East Bay Municipal Utility District | BAC, BANA, Citibank, N.A., Citigroup Inc., JPMC, JPMCB |
| Regents of the University of California | BAC, BANA |
| San Diego Association of Governments ("SANDAG") | BAC, BANA |

B.   Issue 2

Several plaintiffs entered into swap agreements with entities not named as defendants that, after the financial crisis, became affiliates of certain defendants. Because "contract and unjust enrichment claims may only be alleged against a counterparty," id., 2015 WL 6243526, at *75, 2015 U.S. Dist. LEXIS 147561, at *291, these plaintiffs now request jurisdictional discovery to determine whether named defendants are successors to or controlled plaintiffs' counterparties.

A district court "has discretion to order further discovery on the jurisdictional issue, provided that plaintiffs make a threshold showing of jurisdiction." Strategem Dev. Corp. v. Heron Int'l N.V., 153 F.R.D. 535, 547 (S.D.N.Y. 1994). Because no plaintiff alleges sufficient facts to suggest that further discovery would show that defendants are successors to their counterparties or that their counterparties are defendants' agents, as described more fully herein, we deny plaintiffs' request for jurisdictional discovery and dismiss the claims.

C.   Issue 11

Defendants contend that plaintiffs have not made a sufficient showing of personal jurisdiction regarding aiding and abetting claims against foreign banks. Defendants are correct.

As noted supra at 3, false data fraud claims do not relate to the ISDA Master Agreements, and therefore this Court may not

5

exercise personal jurisdiction over those claims pursuant to that theory.  This reasoning applies with even greater force to aiding and abetting claims, where the defendants are not plaintiffs' counterparties with respect to the instrument at issue.

   D.  <u>Issue 12</u>

   Defendants argue that breach of contract claims should not be included in the chart, because while this Court has allowed breach of the implied covenant of good faith and fair dealing claims against counterparties to proceed, <u>see</u> <u>LIBOR III</u>, 27 F. Supp. 3d 447, 482 (S.D.N.Y. 2014); <u>see also</u> <u>LIBOR IV</u>, 2015 WL 6243526, at *75, 2015 U.S. Dist. LEXIS 147561, at *289, we have dismissed claims based on breach of express provisions, with the exception of Fannie Mae's unique claim.  <u>LIBOR IV</u>, 2015 WL 6243526, at *75, 2015 U.S. Dist. LEXIS 147561, at *290.

   With respect to breach of contract claims other than that of the Federal Home Loan Mortgage Corporation ("Freddie Mac"), which we address below, defendants are correct that <u>LIBOR IV</u> dismissed claims based on the breach of express terms, 2015 WL 6243526, at *75, 2015 U.S. Dist. LEXIS 147561, at *290, and plaintiffs other than Freddie Mac do not present any contrary argument.  <u>See</u> PJ Chart at 8.

E.   Issue 13

Finally, defendants correctly point out that LIBOR IV held that plaintiffs had properly pleaded intent to harm a counterparty where a government entity found, or a bank admitted, that an affiliate participated in manipulation.  2015 WL 6243526, at *43, *76, 2015 U.S. Dist. LEXIS 147561, at **205-06, *293.  Plaintiffs' conclusory allegations of participation in wrongdoing, see, e.g., Am. Compl. ¶ 199, Fed. Deposit Ins. Corp. v. Bank of Am. Corp., No. 14-cv-1757 (NRB), ECF No. 23 ("The IndyMac Contracting Defendants knowingly breached and defaulted on the IndyMac Master Agreements through their fraudulent and collusive conduct, their failure to disclose fraudulent and collusive conduct, their intentional misrepresentation and manipulation of [LIBOR], and their underpayments to IndyMac tied to the artificially depressed [LIBOR]."), are insufficient to survive a motion to dismiss.

## II.  Resolution of Specific Disputes

In this section, we resolve disputes that fall into one of the eight categories but whose application is not uniform.

A.   Amabile

In LIBOR IV, we allowed the Amabile plaintiffs to amend their complaint in order to add new claims of trader-based manipulation arising out of Deutsche Bank's government settlements, and provided Deutsche Bank the opportunity to

7

challenge each new claim.   As Deutsche Bank raised numerous personal jurisdiction objections to these claims, we resolve them now.   These claims fail where (1) an allegedly upwardly manipulated submission was in or tied with submissions in the bottom quartile or where an allegedly downwardly manipulated submission was in or tied with submissions in the top quartile, LIBOR IV, 2015 WL 6243526, at *40 n.73, 2015 U.S. Dist. LEXIS 147561, at **196-97 n.73; (2) plaintiffs have not alleged a plaintiff was harmed, LIBOR III, 27 F. Supp. 3d at 465; (3) the manipulation does not involve a U.S.-based employee, see LIBOR IV, 2015 WL 6243526, at *38, 2015 U.S. Dist. LEXIS 147561, at **189-90; (4) the manipulation is with respect to another benchmark, such as Euribor; (5) the claim is time-barred, id., 2015 WL 6243526, at *160, 2015 U.S. Dist. LEXIS 147561, at **496-98; and (6) none of the settlement agreements between Deutsche Bank and government regulators shows a request for an artificial submission on the relevant date.[2]

Applying these principles, most of the claims that Deutsche Bank has contended should be dismissed do in fact fail.   The

---

[2] While the Financial Conduct Authority's Final Notice does describe an allegedly artificially low submission on June 13, 2005, see Final Notice, Deutsche Bank AG, No. 150018 (FCA Apr. 23, 2015) ¶ 4.28, the use of that date is clearly in error: the request described occurred on April 1, 2005, and the LIBOR submissions attributed to June 12, 2005 and June 13, 2005 in fact are the LIBOR submissions for March 31, 2005 and April 1, 2005.  See "The LIBOR rate submissions by each bank, 2005 to 2008," The Guardian, available at http://www .theguardian.com/news/datablog/2012/jul/03/libor-rates-set-banks# data, linking to https://docs.google.com/ spreadsheet/ccc?key=0AonYZs4MzlZb dEtRNnA4SWxldjhTSHpyYVliQlp.

exception is plaintiffs' claim that Deutsche Bank submitted an artificially low 3M quote and an artificially high 1M quote on May 20, 2009.

Deutsche Bank contends that this claim fails because (1) the discussion on this day in the government settlements refers to other benchmarks; (2) plaintiffs fail to state whether they purchased 3M or 1M instruments; and (3) plaintiffs fail to allege harm with respect to the 1M submission, because the allegedly upwardly manipulated submission was excluded as part of the bottom quartile of submissions for that day. Deutsche Bank is correct that plaintiffs have failed to allege harm regarding the 1M submission, because they allege both that Deutsche Bank submitted an artificially inflated LIBOR quote and that that quote would have been excluded as part of the bottom quartile. However, plaintiffs' allegations regarding 3M survive.

First, the government order cited by Deutsche Bank for the proposition that this request relates to other benchmarks does not clearly support this assertion: while it includes clear references to Euroyen TIBOR, it also refers to a request to submit low "3m" quotes, Consent Order, Deutsche Bank AG (DFS Apr. 23, 2015) ¶ 33, without a modifier such as "JPY," which would indicate another benchmark. See, e.g., id. ¶ 20 (requesting low submission in "1m JPY Libor"). At this stage,

it is plausible that "3m" refers to USD LIBOR. Second, plaintiffs state that they were net purchasers on May 20, 2009, and there is no reason to think that this position does not apply equally to 3M-based instruments and 1M-based instruments alike.

Therefore, the following trader-based claims, which, aside from the May 20, 2009 claim, Deutsche Bank did not challenge, survive:

| Date | Direction and Tenor of Alleged Request | Quartile Position | Plaintiff Position | Plaintiff Harmed |
|------|----------------------------------------|-------------------|--------------------|------------------|
| 11/28/2005 | High 1M | Top Quartile | Seller | 303; Klusendorf |
| 3/20/2006 | High 3M | Top quartile | Seller | Louis Amabile |
| 4/11/2006 | High 3M | Top Quartile | Seller | Louis Amabile; Furlong; Pankau |
| 5/17/2006 | High 3M | Interquartile | Seller | Louis Amabile; Cahill; Restani; Pankau |
| 2/28/2007 | High | Top Quartile | Seller | Joseph Amabile; Haggerty; Furlong; Klusendorf |
| 5/20/2009 | Low 3M | Bottom Quartile | Buyer | Louis Amabile |

B.  <u>BATA</u>

BANA and JPMCB challenge the timeliness of BATA's fraud claims.  The statute of limitations for fraud in California is three years, California's discovery rule does not apply, and the claim is tolled from April 30, 2012, the date of the first amended <u>Baltimore</u> complaint.  All of BATA's disputed fraudulent omission claims are time-barred.  Fraud claims against both BANA and JPMCB accruing on or before April 28, 2009, three years prior to the filing of the first amended <u>Baltimore</u> complaint, are untimely, <u>LIBOR IV</u>, 2015 WL 6243526, at *161, 2015 U.S. Dist. LEXIS 147561, at **499-500, BATA entered into the relevant swaps with these entities before this date, and therefore, its fraudulent omission claims are time-barred.

C.  <u>City of Houston</u>

JPMC challenges City of Houston's fraud, negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment claims, contending that it is not City of Houston's counterparty.  None of the disputed claims survive.

City of Houston's claims derive from an interest rate swap it entered into with Bear Stearns Financial Products Inc. ("BSFP").  JPMCB concedes that it is the successor in interest to City of Houston's counterparty.  Nonetheless, City of Houston continues to assert, without a factual basis, that it is

11

entitled to jurisdictional discovery in order to "confirm" JPMCB's concession, PJ Chart at 22 n.4, and to determine the nature of the relationship between JPMC and JPMCB. City of Houston's bare allegation in its complaint that BSFP became a subsidiary of a JPMorgan entity is insufficient to entitle it to jurisdictional discovery. Therefore, City of Houston's claims against JPMC are dismissed.

D.   <u>City of Richmond</u>

JPMC and JPMCB challenge the viability of City of Richmond's breach of the implied covenant of good faith and fair dealing and unjust enrichment claims.

City of Richmond entered into an ISDA Master Agreement and swap with Bear Stearns Capital Markets Inc. ("BSCM") and the California Consolidated Complaint states merely that "Bear Stearns Capital Markets Inc. became a subsidiary of Defendant JPMorgan" in 2008. Direct Action Pls.' Consol. First Am. Compl. ("Cal. Consol. Compl.") ¶ 446, Oct. 8, 2014, ECF No. 684. City of Richmond now requests jurisdictional discovery to "confirm" JPMC's and JPMCB's claim regarding successorship and to determine the relationship between BSCM, JPMC, and JPMCB. PJ Chart at 29 n.6. Its allegations are insufficient to create a dispute of fact as to whether JPMC or JPMCB is a successor in interest to BSCM or that the successor in interest is the agent of JPMC or JPMCB, and therefore City of Richmond's request for

jurisdictional discovery is denied.  Thus, City of Richmond's breach of the implied covenant of good faith and fair dealing and unjust enrichment claims against JPMC and JPMCB fail.

E.   City of Riverside

BAC, JPMC, and JPMCB challenge City of Riverside's breach of the implied covenant and unjust enrichment claims.

City of Riverside's disputed claims against BAC, JPMC, and JPMCB all fail because City of Riverside does not allege entering into contracts with these entities.  Rather, it entered into ISDA Master Agreements and swaps with Merrill Lynch Capital Services, Inc. ("MLCS") and BSCM and alleges that these entities are subsidiaries of defendants.  These bare allegations are insufficient to hold defendants liable and to entitle City of Riverside to jurisdictional discovery.

F.   East Bay Municipal Utility District

BAC, BANA, Citibank, N.A., Citigroup Inc. and JPMC challenge East Bay Municipal Utility District's ("EBMUD") claims of breach of the implied covenant of good faith and fair dealing and unjust enrichment.

EBMUD's claims against BAC, Citibank, N.A., Citigroup Inc., and JPMC fail because EBMUD does not allege that it transacted with any of these defendants.  Rather, EBMUD entered into ISDA Master Agreements and swaps with MLCS, Salomon Brothers Holding Company Inc., and BSCM.  EBMUD alleges that Salomon Brothers

Holding Company Inc. is "a subsidiary of Defendant Citigroup," Cal. Consol. Compl. ¶ 424, and became Citigroup Financial Products, an entity that EBMUD has not named as a defendant in this case. EBMUD further alleges that "Citigroup Inc. was . . . aware of the interest rate swap portfolio of its subsidiary Citigroup Financial Products Inc." Nishimura Decl. ¶ 34, ECF No. 878. As these allegations represent the sum total of EBMUD's contentions regarding the relationship between and among Citigroup Financial Products, Citibank, N.A. and Citigroup Inc., EBMUD has not shown that it is entitled to jurisdictional discovery in order to determine whether Citigroup Financial Products is the successor to or acted as the agent of either of the named defendants. Further, EBMUD alleges that its swap with BSCM transferred to JPMCB in 2008, but does not allege any facts linking BSCM with JPMC, except that BSCM is the wholly-owned subsidiary of a wholly-owned subsidiary of JPMC. Id. ¶ 36. Therefore, EBMUD has not shown that it is entitled to discovery regarding the relationship between JPMC and BSCM.

However, EBMUD's breach of the implied covenant and unjust enrichment claims against BANA survive. The California Consolidated Complaint alleges that BANA is the successor to MLCS on EBMUD's swap, and ISDA Master Agreements provide personal jurisdiction over a counterparty in the plaintiff's home forum.

G.   <u>FDIC</u>

The FDIC brings suit on behalf of 38 failed banks as receiver.

Several banks challenge claims brought by FDIC on statute of limitations grounds.   As noted in <u>LIBOR IV</u>, by statute "[w]hen the FDIC takes over a bank . . . , federal law automatically extends the statute of limitations on any cause of action held by the bank." 2015 WL 6243526, at *120, 2015 U.S. Dist. LEXIS 147561, at *401.   The federal extender statute provides a three-year limitations period for tort and unjust enrichment claims and a six-year limitations period for contract claims.   <u>Id.</u>, 2015 WL 6243526, at *121, 2015 U.S. Dist. LEXIS 147561, at *406.

1.   <u>Issue 1</u>

Multiple defendants argue that fraud by omission claims brought on behalf of certain failed banks do not give rise to personal jurisdiction, because the alleged fraud occurred after the parties entered into the contract.   However, the FDIC alleges that these banks entered into swaps after the start of the alleged suppression period, <u>see, e.g.</u>, Am. Compl. ¶ 198, <u>Fed. Deposit Ins. Corp. v. Bank of Am. Corp.</u>, No. 14-cv-1757 (NRB), ECF No. 23 ("During the relevant period, IndyMac entered into pay-fixed swaps governed by the IndyMac Master Agreements."), and "a counterparty to an interest rate swap has

a duty to disclose what he knows of the distortion of an
interest rate," <u>LIBOR IV</u>, 2015 WL 6243526, at *57, 2015 U.S.
Dist. LEXIS 147561, at *244.  Therefore, subject to the further
rulings below, the following fraud by omission claims survive:

| Failed Bank | Defendant(s) |
|---|---|
| Amtrust | Royal Bank of Scotland, plc |
| IndyMac | Barclays Bank PLC, Credit Suisse International ("CSI"), Deutsche Bank AG, JPMorgan Dublin plc, JPMorgan Markets Limited, RBC, Royal Bank of Scotland, plc |
| Superior | CSI |
| UCB | Merrill Lynch International Bank ("MLIB") |
| Washington Mutual | MLIB, Barclays Bank PLC, CSI, RBC |
| Westernbank | CSI |

We address the remaining disputed claims brought by the
FDIC bank-by-bank.

> ## 2.  <u>IndyMac</u>

JPMorgan Dublin plc and JPMorgan Markets Limited dispute
IndyMac's fraud claims, CSI disputes IndyMac's unjust enrichment
and fraud claims, and RBC disputes IndyMac's breach of the
implied covenant of good faith and fair dealing, unjust
enrichment, and fraud claims.

JPMorgan Dublin plc and JPMorgan Markets Limited challenge
fraud claims and CSI challenges unjust enrichment and fraud
claims on timeliness grounds.  Because no class action complaint

named these defendants, the rule of American Pipe does not serve to toll any of these claims, and the three-year statute of limitations applies. These claims are timely to the extent they arise on or after March 14, 2011, three years before the FDIC filed its complaint. See LIBOR IV, 2015 WL 6243526, at *166, *168, *170, 2015 U.S. Dist. LEXIS 147561, at *515, *518, *522.

FDIC's fraud and unjust enrichment claims on behalf of IndyMac against RBC are timely to the extent they arise after April 28, 2009, because the limitations period is three years and the first amended complaint in Mayor and City Council of Baltimore v. Bank of America Corp., No. 11-cv-5450 (NRB) ("Baltimore") named RBC as a defendant. Therefore, the FDIC's claims are tolled from April 30, 2012, the date of the filing of the Baltimore first amended complaint. LIBOR IV, 2015 WL 6243526, at *166, *168, *170, 2015 U.S. Dist. LEXIS 147561, at *515, *518, *522. The breach of the implied covenant of good faith and fair dealing claim is not time-barred, because the extender statute provides for a statute of limitations of six years from the date of FDIC's appointment, rendering all such claims timely. Id., 2015 WL 6243526, at *121 (extender statute provides for statute of limitations of six years), *165 (FDIC complaint filed on March 14, 2014 and appointment date for IndyMac of July 11, 2008), 2015 U.S. Dist. LEXIS 147561, at *406, *511.

17

### 3. Superior

CSI disputes Superior's fraud claim, contending that Superior's claim is time-barred. Because the relevant appointment date for Superior is April 15, 2011, the statute of limitations begins to run as of that date, and the FDIC filed its complaint on March 14, 2014, all of Superior's fraud claims are timely.

### 4. Washington Mutual

CSI disputes WaMu's fraud and unjust enrichment claims, arguing that they are time-barred. RBC disputes WaMu's breach of the implied covenant of good faith and fair dealing, unjust enrichment, and fraud claims, on the ground that these claims are untimely.

As with the claims brought on behalf of IndyMac against CSI, FDIC's fraud and unjust enrichment claims on behalf of WaMu against CSI are time-barred to the extent those claims arise before March 14, 2011. See id., 2015 WL 6243526, at *166, *168, *170, 2015 U.S. Dist. LEXIS 147561, at *515, *518, *522.

Similarly, as with claims brought on behalf of IndyMac against RBC, FDIC's fraud and unjust enrichment claims on behalf of WaMu against RBC are timely to the extent they arise after April 28, 2009, three years before the filing of the first amended Baltimore complaint. Id., 2015 WL 6243526, at *166, *168, *170, 2015 U.S. Dist. LEXIS 147561, at *515, *518, *522.

18

The breach of the implied covenant of good faith and fair dealing claim is not time-barred, because the extender statute provides for a statute of limitations of six years, rendering all such claims timely.  Id., 2015 WL 6243526, at *121 (extender statute provides for statute of limitations of six years), *165 (FDIC complaint filed on March 14, 2014 and appointment date for WaMu of September 25, 2008), 2015 U.S. Dist. LEXIS 147561, at *406, **511-12.

      5.  Westernbank

FDIC's fraud and unjust enrichment claims on behalf of Westernbank against CSI are time-barred to the extent those claims arise before March 14, 2011, three years before the FDIC filed its complaint, as no class action complaint tolled these claims.  See id., 2015 WL 6243526, at *166, *168, *170, 2015 U.S. Dist. LEXIS 147561, at *515, *518, *522.

    H.  Federal Home Loan Mortgage Corporation

BAC disputes Freddie Mac's fraud claim, arguing that Freddie Mac and BAC did not transact.  BANA, Barclays, Citibank, N.A., Deutsche Bank AG, and RBS dispute Freddie Mac's breach of contract claim, contending that Freddie Mac pleaded only express breach claims, which LIBOR IV dismissed, and challenge its fraud claim, asserting that the parties transacted before the period of alleged suppression.  CSI disputes Freddie Mac's fraud claim

for the same reasons, and in addition asserts that it is time-barred.

The fraud claim against BAC fails. Freddie Mac entered into an ISDA Master Agreement and subsequent swaps with Nationsbank, N.A. and according to Freddie Mac, BANA, not BAC, is the successor in interest to Nationsbank, N.A. See [Second] Am. Compl. ("Freddie Mac Am. Compl.") ¶ 18, Fed. Home Loan Mortg. Corp. v. Bank of Am. Corp. ("Freddie Mac"), No. 13-cv-342 (E.D. Va.), transferred to No. 13-cv-3952 (NRB) (S.D.N.Y.). However, Freddie Mac's fraudulent omission claims against BANA, Barclays, Citibank, N.A., Deutsche Bank AG, and RBS survive, as defendants challenge them on the basis that Freddie Mac entered into the relevant agreements before LIBOR suppression allegedly began, but Freddie Mac alleges that it entered into swaps during the suppression period with these defendants. See Freddie Mac Am. Compl. ¶¶ 228 (Bank of America); 235 (Barclays); 242 (Citibank, N.A.); 256 (Deutsche Bank AG); 270 (RBS). CSI similarly entered swaps with Freddie Mac during the period of alleged suppression, see id. ¶ 249, but all claims arising before March 14, 2011 are time-barred. LIBOR IV, 2015 WL 6243526, at *170, 2015 U.S. Dist. LEXIS 147561, at *523.

Freddie Mac's breach of contract claim survives. Freddie Mac argues that, even though it pleaded only a breach of contract claim in its complaint, Virginia does not recognize a

free-standing breach of the implied covenant claim and that its
complaint sufficiently pleaded an implied covenant claim as part
of its breach of contract claim.    Defendants respond that
Freddie Mac's breach of contract claim references only express
provisions allegedly breached and therefore must be dismissed.

The Federal Rules of Civil Procedure "do not countenance
dismissal of a complaint for imperfect statement of the legal
theory supporting the claim asserted."    Johnson v. City of
Shelby, Miss., 135 S. Ct. 346, 346 (2014).    In LIBOR II, we held
that allowing the OTC plaintiffs to amend their complaint to
include a claim of breach of the implied covenant of good faith
and fair dealing would not be futile where the OTC plaintiffs
alleged that, in entering into swaps with defendants, "they
expected LIBOR to be set according to its definition," because
"[s]uch an expectation would have been integral to the 'bet'
that is one purpose of entering into a swap," and that
"defendants [allegedly] depressed the consideration plaintiffs
received pursuant to their contracts and undermined the
contractual bargain whereby plaintiffs agreed to pay a certain
fixed rate in exchange for receiving a rate that reflected
prevailing interest rates." 962 F. Supp. 2d 606, 632-33
(S.D.N.Y. 2013).    We further denied defendants' motion to
dismiss these claims, insofar as the OTC plaintiffs sought to

hold their counterparties liable. LIBOR III, 27 F. Supp. 3d 447, 482-83 (S.D.N.Y. 2014).

Here, while referencing particular terms in the ISDA agreements between plaintiffs and defendants, Freddie Mac's complaint also states that it relied on the integrity of LIBOR and that its counterparties manipulated LIBOR, causing Freddie Mac to receive depressed payments. See, e.g., Freddie Mac Am. Compl. ¶¶ 134, 229-30. Because Freddie Mac has alleged sufficient facts to survive a motion to dismiss on a breach of the implied covenant theory, this claim survives.

I.   Federal National Mortgage Association ("Fannie Mae")

Barclays and RBS challenge Fannie Mae's fraud claim and CSI disputes Fannie Mae's breach of the implied duty of good faith and fair dealing and fraud claims. Fraudulent omission claims against Barclays, CSI, and RBS based on swap transactions survive, because Fannie Mae alleges that it entered into swap contracts with these defendants during the period of alleged LIBOR suppression. See Am. Compl. ("Fannie Mae Am. Compl.") Exs. 25-B, 25-D, 25-G, Fed. Nat'l Mortg. Ass'n v. Barclays Bank plc ("Fannie Mae"), No. 13-cv-7720 (NRB) (S.D.N.Y.), ECF No. 41 (showing hundreds of derivative transactions with defendants during the period of alleged suppression). Given this pleading, defendants' argument that "[i]t is not clear from the Amended Complaint . . . that each counterparty defendant entered into

22

swap agreements during the relevant time period," PJ Chart at 3, is untenable.   Defendants further contend that the relevant contract for purposes of fraud by omission is an ISDA Master Agreement, and therefore LIBOR manipulation must have begun before the parties entered into that agreement in order to support a fraudulent omission case.   But "a counterparty to an interest rate swap has a duty to disclose what he knows of the distortion of an interest rate," LIBOR IV, 2015 WL 6243526, at *57, 2015 U.S. Dist. LEXIS 147561, at *244 (emphasis added), and we see no reason that such an obligation extends only to the contract governing the terms of future economic transactions, and not to the further agreements made pursuant to the ISDA Master Agreements.

   J.   Principal Financial Group, Inc. ("Principal Financial")

   The parties here dispute negligent misrepresentation claims while agreeing that similar fraud claims survive or fail.   Since it appears to us that these claims should rise and fall together, at this time we cannot tell, without further information from the parties as to why the parties agree that certain fraud claims fail while they dispute the viability of the negligent misrepresentation claims, whether negligent misrepresentation claims against the following parties survive: BANA, MLCS, Barclays Bank plc, Deutsche Bank AG, JPMCB, and RBC.

CSI, Chase Bank USA, N.A., and RBS challenge Principal Financial's fraud and negligent misrepresentation claims, and CSI and Chase Bank USA, N.A. challenge Principal Financial's unjust enrichment claim as to interest rate swaps.  These banks argue, with respect the fraud and negligent misrepresentation claims, that Principal Financial fails to adequately allege fraud by omission or inducement, because the alleged fraud occurred only after the parties entered into an ISDA Master Agreement and that the claims are time-barred.[3]  We agree that Principal Financial does not state in its complaint that it entered into swap agreements with CSI, Chase Bank USA, N.A., or RBS during the period of alleged suppression, see Am. Compl. ¶ 205, Principal Financial Group, Inc. v. Bank of America Corp. ("Principal Fin. Grp."), No. 13-cv-335 (S.D. Iowa), transferred to No. 13-cv-6014 (NRB) (S.D.N.Y.) (alleging only that "Plaintiffs executed numerous fixed-to-floating interest rate swaps with the Swap Counterparty Defendants"), and therefore its fraud and negligent misrepresentation claims must fail. Principal Financial's unjust enrichment claims against CSI and Chase Bank USA, N.A. are time-barred, as no class action tolls these claims against these defendants, the statute of limitations is three years, Principal Financial filed its

---

[3] CSI additionally contends that Principal Financial fails to allege the party with whom it contracted and fails to allege the dates on which the parties contracted.

complaint against CSI and Chase Bank USA, N.A. on October 6, 2014, and Principal Financial alleges that LIBOR manipulation lasted only until 2010. <u>See</u> Am. Compl. ¶ 2, <u>Principal Financial Group, Inc. v. Bank of America Corp.</u>, No. 13-cv-335 (S.D. Iowa), <u>transferred to</u> No. 13-cv-6014 (NRB) (S.D.N.Y.).

JPMorgan Dublin plc argues that Principal Financial's fraud, negligent misrepresentation, and unjust enrichment claims are all time-barred and that its negligent misrepresentation claim fails because Principal Financial does not allege that it entered into the relevant contracts prior to LIBOR suppression. The statute of limitations for fraud and negligent misrepresentation in Iowa is five years and the statute of limitations for unjust enrichment is three years. Because no putative class action complaint named JPMorgan Dublin plc as a defendant and class-action tolling does not apply, Principal Financial's fraud claims arising on or after October 4, 2009, five years before the filing of the amended complaint, are timely, while its negligent misrepresentation claim fails for the same reason as its similar claim against CSI and Chase Bank USA, N.A. Principal Financial's unjust enrichment claim is time-barred, as claims arising before October 4, 2011, three years before the filing of the amended complaint, are untimely, and Principal Financial alleges that LIBOR suppression lasted only through 2010.

K.   Principal Funds, Inc.

As with claims brought on behalf of Principal Financial, without further information from the parties as to why the parties agree that certain fraud claims fail while they dispute the viability of the negligent misrepresentation claims, we cannot determine whether negligent misrepresentation claims against the following parties survive: BANA, Barclays Bank PLC, and Citibank, N.A.

Barclays Bank PLC challenges the Principal Funds' breach of contract and covenant of good faith and fair dealing and unjust enrichment claims, contending that Principal Financial does not allege the dates on which the parties' swaps were in effect, and so does not plausibly allege that LIBOR manipulation harmed plaintiff.  However, Principal Funds states that it entered into an ISDA Master Agreement with Barclays and that it received a lower rate than it would have on its swap had the panel banks not suppressed LIBOR.  Such a pleading plausibly alleges that Principal Funds had a swap with Barclays in effect during the period of alleged manipulation, although the failure of Principal Funds to be more specific is disquieting.

Deutsche Bank AG, JPMCB, and RBS plc challenge Principal Funds' breach of the implied covenant and unjust enrichment claims on the ground that Principal Funds has not alleged that it contracted with a named defendant, and its fraud and

negligent misrepresentation claims on the ground that it does not allege that it entered the swap during the alleged LIBOR suppression period.  Principal Funds clearly alleges that it contracted with a named defendant: it alleges that it entered into ISDA Master Agreements with "Deutsche Bank," "JPMorgan," and "RBS," Am. Compl. ¶ 201, Principal Funds, Inc. v. Bank of America Corp., No. 13-cv-334 (S.D. Iowa), transferred to No. 13-cv-6013 (NRB) (S.D.N.Y.), and it defines those entities to include only named defendants.  Id. ¶¶ 24, 27.  However, given the dismissal in LIBOR IV of related entities, this conclusory statement may no longer be accurate.  Accordingly, these claims survive only for the present.  We agree that the fraud and negligent misrepresentation claims fail, as Principal Funds has not pleaded that it entered the relevant swaps during the period of alleged suppression.

 L.  Regents of the University of California ("Regents")

BAC and BANA challenge Regents' breach of the implied covenant of good faith and unjust enrichment claims.  These claims fail because Regents entered into the ISDA agreement and subsequent swap with MLCS, and like City of Riverside, pleads only that MLCS became a subsidiary of Bank of America, which was "aware of the interest rate swap portfolios of Merrill Lynch and its subsidiaries." Nishimura Decl. ¶ 11.  These allegations are insufficient to warrant jurisdictional discovery.

M.   San Diego Association of Governments ("SANDAG")

BAC challenges personal jurisdiction regarding SANDAG's breach of the implied covenant of good faith and fair dealing and unjust enrichment claims.  These claims fail, because SANDAG did not enter into any contracts with BAC and SANDAG has not pleaded or submitted material sufficient to entitle it to jurisdictional discovery regarding the relationship between BAC and MLCS.

Dated:  New York, New York
        September 12, 2016

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

**APPENDIX**

This Memorandum and Order applies to the following cases:

| CASE NAME | CASE NO. |
|---|---|
| In re Libor-Based Financial Instruments Antitrust Litigation | 11-md-2262 |
| City of Riverside et al. v. Bank of America Corp. et al. | 13-cv-0597 |
| County of San Mateo et al. v. Bank of America Corp. et al. | 13-cv-0625 |
| East Bay Municipal Utility District v. Bank of America Corp. et al. | 13-cv-0626 |
| City of Richmond et al. v. Bank of America Corp. et al. | 13-cv-0627 |
| County of San Diego v. Bank of America Corp. et al. | 13-cv-0667 |
| Amabile et al. v. Bank of America Corp. et al. | 13-cv-1700 |
| Federal Home Loan Mortgage Corp. v. Bank of America Corp. et al. | 13-cv-3952 |
| Salix Capital US Inc. et al. v. Banc of America Securities LLC et al. | 13-cv-4018 |
| Regents of the University of California v. Bank of America Corp. et al. | 13-cv-5186 |
| San Diego Association of Governments v. Bank of America Corp. et al. | 13-cv-5221 |

A-1

| | |
|---|---|
| County of Sacramento v. Bank of America Corp. et al. | 13-cv-5569 |
| City of Houston v. Bank of America Corp. et al. | 13-cv-5616 |
| Principal Funds, Inc. et al. v. Bank of America Corp. et al. | 13-cv-6013 |
| Principal Financial Group, Inc. et al. v. Bank of America Corp. et al. | 13-cv-6014 |
| City of Philadelphia v. Bank of America Corp. et al. | 13-cv-6020 |
| Federal National Mortgage Ass'n v. Barclays Bank plc et al. | 13-cv-7720 |
| Darby Financial Products et al. v. Barclays Bank plc et al. | 13-cv-8799 |
| Federal Deposit Insurance Co. et al. v. Bank of America Corp. et al. | 14-cv-1757 |
| Bay Area Toll Authority v. Bank of America Corp. et al. | 14-cv-3094 |