# DAVIS POLK & WARDWELL LLP

450 LEXINGTON AVENUE
NEW YORK, NY 10017
212 450 4000
FAX 212 701 5800

MENLO PARK
WASHINGTON, D.C.
SÃO PAULO
LONDON
PARIS
MADRID
TOKYO
BEIJING
HONG KONG

ARTHUR J. BURKE
212 450 4352

January 6, 2017

Re:    *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 11-MD-2262 (NRB)

<u>Via ECF and Hand Delivery</u>

The Honorable Naomi Reice Buchwald
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Dear Judge Buchwald:

      We submit this pre-motion letter on behalf of those Defendants against which antitrust claims remain pending in the above-referenced MDL proceeding pursuant to this Court's direction in *LIBOR VI*, 2016 WL 7378980, at *25 (S.D.N.Y. Dec. 20, 2016).[1]  This letter addresses grounds for dismissal of Plaintiffs' remaining antitrust claims not addressed in *LIBOR VI*, and seeks clarification with respect to the status of Exchange-Based Plaintiffs' and *Amabile* Plaintiffs' proposed trader-based manipulation antitrust claims.[2]

## I.   Suppression-Based Antitrust Claims

### A.   Plaintiffs' Antitrust Claims Based on Financial Products Purchased Prior to August 9, 2007 Fail for Lack of Antitrust Injury

      Basic principles of antitrust law and the *Gelboim* decision itself show that Plaintiffs cannot state antitrust claims based on transactions executed before the start of the alleged conspiracy to suppress USD LIBOR.  The prices that parties agreed to pay to purchase LIBOR-

---

[1] In joining this pre-motion letter on a limited basis, the dismissed Foreign Defendants (identified in footnote 22, *infra*) do not consent to personal jurisdiction, and expressly reserve the jurisdictional defenses and objections that they have previously asserted or may later assert in actions currently stayed by the Court.

[2] This Court recognized in *LIBOR VI* that Defendants "properly preserved their request to move for dismissal on other bases."  2016 WL 7378980, at *1.  For the avoidance of doubt, defendants not subject to live antitrust claims following *LIBOR VI* do not waive, and expressly preserve, any additional grounds for dismissal that were not addressed in *LIBOR VI*, including those set forth herein.

linked financial products before August 9, 2007 were negotiated before the start of the alleged conspiracy and thus before any related conduct could have had any conceivable impact on the market.[3]  Accordingly, the prices of such products were not "fixed" by the alleged conspiracy. Plaintiffs' antitrust claims based on transactions that occurred before August 9, 2007 should, therefore, be dismissed.[4]

As *Gelboim* acknowledges, there is a significant difference between an Article III injury and an antitrust injury.  *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 772 (2d Cir. 2016).  There, the Second Circuit noted that, while Plaintiffs could state an Article III injury merely by "pleading that they were harmed by receiving lower returns on LIBOR-denominated instruments as a result of defendants' manipulation of LIBOR," id. at 770, Plaintiffs can establish antitrust injury only by alleging that they paid "prices that no longer reflect[ed] ordinary market conditions."  *Id.* at 772; *see also id.* at 773 ("[A]ntitrust law is concerned with influences that corrupt market conditions.").  Specifically, the Court found that Plaintiffs pleaded an antitrust "injury in the form of higher prices" that were "based on the influence that [the alleged] conspiracy exert[ed] on the starting point for prices."  *Id.* at 775, 776.

There was, however, no alleged "warping of market factors affecting the prices for LIBOR-based financial instruments" through LIBOR suppression before August 9, 2007.  *Id.* at 776.  Thus, Plaintiffs cannot state antitrust claims based on instruments they purchased before that date.  Such claims are based only on allegations that Defendants deprived Plaintiffs of the contractual returns they expected to receive under the instruments' terms *after* negotiation and competition over those terms had ceased.  *See Orion Pictures Distrib. Corp. v. Syufy*, 829 F.2d 946, 949 (9th Cir. 1987) (dismissing antitrust claims arising from a movie theater owner's repudiation of a contract to exhibit a movie because the theater owner's "alleged monopolization did not affect the competition to license [the movie] at the time of bidding for the movie").  It is a well-established principle of antitrust law that "[w]hen the defendant's anticompetitive behavior occurs only after the business relationship between the plaintiff and defendant is contractually fixed, any injury that results from such behavior is not an antitrust injury, but merely the kind of injury that is due to breach of contract."  1 Callmann on Unfair Comp., Tr. & Mono. § 4:48 (4th ed.).

*Newman v. Universal Pictures*, 813 F.2d 1519 (9th Cir. 1987), is instructive.  There, actor Paul Newman and director George Roy Hill contracted with Universal Pictures to provide their services to two feature films in exchange for a percentage of the films' revenues.  *After* the parties entered into the contracts, Universal allegedly conspired with other movie studios to fix the percentage of film revenues paid to artists by classifying revenue from video cassette sales as "distribution" revenue rather than "production" revenue.  Because Newman and Hill's contracts

---

[3] *Cf. LIBOR V*, 2015 WL 6696407, at *91 (S.D.N.Y. Nov. 3, 2015) (dismissing claims brought by three mortgagor plaintiffs who alleged the margin component of their loans had been set artificially high, because "the mortgage terms for these three plaintiffs were fixed before August 9, 2007, the date when LIBOR suppression plausibly began").

[4] *See, e.g.*, City of Philadelphia Compl. Ex. A (ten out of eleven alleged swaps entered into prior to the onset of the alleged conspiracy in August 2007); BATA Compl. ¶¶ 252(a)-(h) (seven out of eight alleged swaps entered into prior to August 2007); Darby Compl. Ex. A (listing more than one hundred swap transactions entered into prior to August 2007).

entitled them only to production revenue, the alleged conspiracy reduced the film revenues they were entitled to under their contracts. The Ninth Circuit affirmed the dismissal of Newman's and Hill's price-fixing claims because "Appellants' fundamental problem is that Newman and Hill entered into the contracts . . . before the alleged conspiracy arose." *Id.* at 1522. As a result, "[t]he subsequent conspiracy could not have affected the competition for Newman's and Hill's services at the time the contracts were made." *Id.*

*UNR Industries, Inc. v. Continental Insurance Co.*, 607 F. Supp. 855 (N.D. Ill. 1984), is similarly on point. There, an insured plaintiff brought antitrust claims against various insurers alleging the insurers conspired to deprive the plaintiff of indemnification rights under preexisting insurance contracts. *Id.* at 858. The plaintiff argued that, even if it purchased the insurance at competitive prices, the insurers' subsequent conspiratorial agreement constituted "retroactive price-fixing" because it caused the plaintiff to "get[] back less value than he paid out." *Id.* at 859. The court rejected that theory, concluding that plaintiff was "not complaining of a lack of competition," but rather that the insurers "failed to do that which their contracts require." *Id.* at 859-60. Because the insurers' conduct toward plaintiff was "fixed by each defendant's contract," there was "no room for competition to play" and thus no antitrust injury. *Id.* at 860-61.

The same principle applies to Plaintiffs here who purchased financial instruments prior to August 9, 2007 and were supposedly damaged during the period of alleged LIBOR suppression. These Plaintiffs could not have paid artificially higher fixed prices for their LIBOR-linked products because they do not allege that LIBOR was manipulated when they negotiated the pricing terms for those products. As in *Newman* and *UNR*, they allege only that Defendants entered into a conspiracy *after* Plaintiffs purchased their products that caused Plaintiffs to receive less than they allegedly should have under their contracts. As a result, Plaintiffs who purchased LIBOR-linked products before August 9, 2007 cannot assert antitrust claims to attempt to recover their alleged losses. *See, e.g., Orion Pictures*, 829 F.2d at 949 ("Orion has suffered a breach of contract, not an antitrust injury.").[5]

---

[5] Additionally, several Direct Action Plaintiffs—Freddie Mac, the FDIC, and the *Principal* plaintiffs—fail to allege even the most basic requirement of antitrust injury as to their swap-based claims because they do not allege any specific swap transactions, when they were entered into, and when they were sold or exited. Under *LIBOR VI*, the only non-exchange-based antitrust claims that remain are those based on transactions with a Defendant. *See* 2016 WL 7378980, at *16. Thus, Plaintiffs must plead facts sufficient to determine that they suffered an antitrust injury from such a transaction. But nothing alleged in the above Direct Action Plaintiffs' complaints shows that they did. For example, as this Court recently noted in discussing the *Principal* plaintiffs' fraud and negligent misrepresentation claims, the *Principal* plaintiffs "plead[] the existence of ISDA Master Agreements with certain defendants entered into on certain dates, but no particular swap agreement is described in the complaint or attached as an exhibit." Mem. & Order, 2016 WL 7621354, at *2 (S.D.N.Y. Dec. 19, 2016) (citation omitted), MDL ECF No. 1673. These Plaintiffs' pleadings are thus "inadequate in the most elementary way." *Id.* Because of these "manifest deficiencies" in their pleadings, *LIBOR VI*, 2016 WL 7378980, at *15, these Plaintiffs have not adequately alleged antitrust injury.

### B. Plaintiffs' Antitrust Claims Against Affiliates of Panel Banks Fail Under this Court's Prior Rulings

Plaintiffs fail plausibly to allege the basic elements of a persistent suppression conspiracy against affiliates of panel banks (the "Affiliates").[6]  As this Court has repeatedly held and recently reaffirmed in the context of deciding personal jurisdiction motions, Plaintiffs "have not pleaded facts or submitted supporting material that suggests that any panel bank's United States-based affiliate played a role in that bank's alleged suppression of LIBOR." *LIBOR VI*, 2016 WL 73789800, at *10 (quoting Mem. & Order, 2016 WL 1733463, at *3 (S.D.N.Y. Apr. 29, 2016), MDL ECF No. 1396); *see also* Mem. & Order, 2016 WL 4773129, at *3 (S.D.N.Y. Sept. 12, 2016), MDL ECF No. 1557 (holding claims of breach of the implied covenant of good faith and fair dealing against affiliates of panel banks survive only "where a government entity found, or a bank admitted, that an affiliate participated in manipulation" and rejecting "conclusory allegations of participation in wrongdoing" (citing *LIBOR IV*, 2015 WL 6243526, at *43, *76 (S.D.N.Y. Oct. 20, 2015))).[7]  The consequences of this are fatal to Plaintiffs' antitrust claims against those affiliates under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  *See In re Aluminum Warehousing Antitrust Litig.*, 2015 WL 1344429, at *2 (S.D.N.Y. Mar. 23, 2015) ("*Twombly* makes clear that at the pleading stage in [an] antitrust case . . . each defendant is entitled to know how he is alleged to have conspired, with whom and for what purpose [and therefore m]ere generalizations as to any particular defendant—or even defendants as a group— are insufficient.  The fact that two separate legal entities may have a corporate affiliation does not alter this pleading requirement." (citation omitted)).

Plaintiffs "merely allege that defendants' affiliates 'participated in USD LIBOR suppression' and sold price-fixed LIBOR-based instruments in the United States." *LIBOR VI*, 2016 WL 73789800, at *10.  Such conclusory allegations are not enough to state a claim.  Without plausible allegations linking the Affiliates to the alleged conspiracy, Plaintiffs' persistent suppression-based antitrust claims against Affiliates should be dismissed.[8]

---

[6] The Affiliates moving for dismissal on this ground, and the actions in which they remain, are listed in Appendix A to this letter.

[7] *See also LIBOR VI*, 2016 WL 7378980, at *15 ("In their papers on this motion, defendants note the failure of plaintiffs to plead specifics about particular transactions.  [W]e likewise observe the manifest deficiencies in many of the pleadings despite multiple opportunities to amend or supplement them . . . [T]hese deficiencies may affect . . . the adequacy of the pleadings more broadly.").

[8] Moreover, as to the FDIC's antitrust claims, Defendants do not understand the FDIC's operative complaint to assert antitrust claims against Affiliates.  *Fed. Deposit Ins. Corp. v. Bank of Am. Corp.*, No. 14-cv-1757 (S.D.N.Y. Oct. 7, 2014), ECF No. 23 ("FDIC Am. Compl.").  The Appendix to the Court's opinion in *LIBOR VI* lists antitrust claims in the *FDIC* action that are pending against certain Affiliates, but in fact the FDIC's complaint asserts antitrust claims only against "Panel Bank Defendants and the BBA," FDIC Am. Compl. Count XXIII, XXIV, and it defines "Panel Bank Defendants" to include only the "16 banks [that] comprised the panel of banks for bbaLIBOR™ for U.S. dollar ("USD") interbank loans," not any of their corporate affiliates, *id.* ¶ 1.  Moreover, the FDIC asserts other claims, such as fraud claims, against "All Defendants," showing that it intended to limit its antitrust claims to only the narrower subset of panel bank Defendants and not to their Affiliates.  *Compare, e.g.*, *id.* Count XIII (common law fraud claims), *with id.* Count XXIII (Sherman Act claims).  Because the FDIC did not assert antitrust claims against Affiliates, Defendants respectfully request that the Court remove all Affiliates listed as

### C. Certain Plaintiffs' Antitrust Claims are Fully or Partially Time-Barred

Certain remaining antitrust claims under the Sherman Act and New York's Donnelly Act are either partially or fully time-barred, as described in Appendices B and C to this letter.[9] The Sherman Act and Donnelly Act are both subject to a four-year statute of limitations, 15 U.S.C. § 15(b); N.Y. Gen. Bus. Law § 340(5), that "accrues as soon as there is injury to competition." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 11 (2d Cir. 1996) (citing *Zenith Radio Corp. v. Hazeltine Research Inc.*, 401 U.S. 321, 338 (1971)); *Stolow v. Greg Manning Auctions Inc.*, 258 F. Supp. 2d 236, 252 (S.D.N.Y. 2003) (applying same accrual rule to Donnelly Act claims).

The *Principal* Plaintiffs' Sherman Act and Donnelly Act claims against Merrill Lynch, Pierce, Fenner & Smith, Inc. ("MLPFS"), JPMorgan Securities LLC ("JPMS") and RBS Securities, Inc. ("RBSSI") are fully time-barred. The first *Principal* complaints to name MLPFS, JPMS, and RBSSI as defendants were filed on October 6, 2014,[10] more than four years after alleged LIBOR suppression ended on May 31, 2010. Because MLPFS, JPMS, and RBSSI were not named as defendants in any putative class action, claims against them are not subject to *American Pipe* tolling, and no other tolling doctrine applies. *See LIBOR IV*, 2015 WL 6243526, at *149, 174 (S.D.N.Y. Oct. 20, 2015).

Similarly, the *Prudential* Plaintiffs' Sherman Act claims against MLPFS and HSBC Securities (USA) Inc. accruing before October 6, 2010 are time-barred because those two entities were named as defendants on October 6, 2014,[11] and Prudential's claims against HSBC Finance Corp., HSBC USA Inc., JPMS and RBSSI accruing before May 19, 2010 are time-barred, because those four entities were named as defendants on May 19, 2014.[12] Likewise, in the *Salix* action,[13] the antitrust claims against MLPFS, JPMS, Citigroup Global Markets Inc., Citigroup Global Markets Limited, Credit Suisse Securities (USA) LLC, and Deutsche Bank Securities Inc. are time-barred to the extent they are based on alleged injuries arising before May 20, 2009, four years before Salix's original complaint was filed on May 20, 2013.[14]

The Sherman Act claims asserted by the Federal Deposit Insurance Corporation ("FDIC") on behalf of Silverton Bank, N.A. against Bank of America, N.A., Citibank, N.A., and

---

"Remaining Defendants" in the *FDIC* action from the Appendix to *LIBOR VI* pursuant to Federal Rule of Civil Procedure 60(a).

[9] Defendants here apply this Court's statute of limitations and tolling rulings from *LIBOR IV*, but respectfully reserve the right to challenge those rulings on appeal.

[10] *Principal Fin. Grp., Inc. v. Bank of Am. Corp.*, No. 13-cv-6014 (S.D.N.Y. Oct. 6, 2014), ECF No. 57; *Principal Funds, Inc. v. Bank of Am. Corp.*, No. 13-cv-6013 (S.D.N.Y. Oct. 6, 2014), ECF No. 57.

[11] *Prudential Inv. Portfolios 2 v. Bank of Am. Corp.*, No. 14-cv-4189 (S.D.N.Y. Oct. 6, 2014), ECF No. 18.

[12] *Prudential Inv. Portfolios 2 v. Bank of Am. Corp.*, No. 14-cv-4189 (S.D.N.Y. May 19, 2014), ECF No. 1.

[13] *Salix Capital U.S. Inc. v. Banc of America Securities LLC*, No. 13-cv-4018 (S.D.N.Y.).

[14] The original *Salix* complaint named Banc of America Securities LLC as a defendant, which was merged into MLFPS. *See Salix Capital U.S. Inc. v. Banc of America Securities LLC,* Index No. 651823/2013 (N.Y. Sup. Ct. N.Y. Cty. May 20, 2013), ECF No. 2.

JPMorgan Chase Bank, N.A. are partially time-barred as well.[15] Under the "extender statute" applicable to claims brought by the FDIC on behalf of failed banks as conservator or receiver, claims of "intentional misconduct" such as the antitrust claims asserted here are classified as "tort" claims. 12 U.S.C. § 1821(d)(14). The Sherman Act claims are subject to a three-year statute of limitations, which accrues on the later of (i) the date of the FDIC's appointment as conservator or receiver, or (ii) the date the statute of limitations for the underlying cause of action accrues. *Id.*; *see Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*, No. 11-cv-6189 (DLC), 2014 WL 4276420, at *6 (S.D.N.Y. Aug. 28, 2014) (holding, for claims under the federal Securities Act by the FHFA under a similar extender statute, that "the limitations period is simply three years from accrual or appointment").

The FDIC was appointed as Silverton's receiver on May 1, 2009. Accordingly, absent tolling, all of Silverton's Sherman Act claims accrued more than three years before the FDIC's complaint was filed on March 14, 2014.[16] Under this Court's decision in *LIBOR IV*, the limitations period on Silverton's claims is subject to *American Pipe* tolling under the original *FTC Capital* complaint[17] from April 15, 2011 to April 30, 2012 (381 days). And because Silverton allegedly entered into a LIBOR-based transaction open between August 2007 and May 2010, with an affiliate of a Defendant named in the second amended *OTC* complaint,[18] that complaint tolls its claims from August 23, 2013 until March 14, 2014 (203 days). *See LIBOR IV*, 2015 WL 6243526, at *152. Applying the foregoing class-action tolling to the Sherman Act claims, Silverton's claims accruing before August 7, 2009 are time-barred.

## II.  Trader-Based Antitrust Claims

Defendants also seek clarification from the Court as to whether there exist any live antitrust claims premised on alleged trader-based conduct, which two sets of plaintiffs in the MDL—the Exchange-Based Plaintiffs and *Amabile* Plaintiffs—seek to assert. *See* Exchange-Based Pls.' [Corrected] Second Am. Consol. Class Action Compl. ("SAC"), (S.D.N.Y. Sept. 30, 2013), MDL ECF No. 438, ¶¶ 415-26, 542; *Amabile* Plaintiffs' Am. Compl., *Amabile v. Bank of Am. Corp.,* No. 13-cv-01700 (S.D.N.Y. Oct. 7, 2014), ECF No. 12, ¶¶ 385-396, 506.

In *LIBOR II*, this Court denied Exchange-Based Plaintiffs leave to amend their complaint to add antitrust allegations. *See* 962 F. Supp. 2d 606, 624–28 (S.D.N.Y. 2013). In their

---

[15] Only the FDIC's claims on behalf of a failed bank that allegedly transacted in a LIBOR-based instrument directly with a Defendant survive this Court's decision in *LIBOR VI*. *See* 2016 WL 7378980, at *16 ("[W]here a plaintiff's counterparty is reasonably ascertainable and is not a defendant bank, a plaintiff is not an efficient enforcer."). The analysis that follows is therefore limited to such claims.

Moreover, as discussed in footnote 8 *supra*, the FDIC's operative complaint does not assert any antitrust claims against Affiliates of panel banks, and accordingly Defendants do not undertake a statute of limitations analysis here with respect to any such claims. Were the FDIC to contend otherwise, however, Defendants reserve the right to argue that such claims would be time-barred as well.

[16] *Fed. Deposit Ins. Corp. v. Bank of Am. Corp.*, No. 14-cv-1757 (S.D.N.Y. Mar. 14, 2014), ECF No. 2.

[17] *FTC Capital GmbH v. Credit Suisse Grp. AG*, No. 11-cv-2613 (S.D.N.Y. Apr. 15, 2011), ECF No. 1.

[18] *Mayor & City Council of Baltimore v. Bank of Am. Corp.*, No. 11–cv–2262 (S.D.N.Y. Sept. 10, 2011), ECF No. 406.

subsequently filed SAC (MDL ECF No. 438)—which included, for the first time, an antitrust claim premised on alleged "suppress[ion] or inflat[ion]" of LIBOR during the August 2007 to May 2010 time period (*see* ¶¶ 541-45)—Plaintiffs acknowledged that they included antitrust claims in the SAC only to preserve them for the purposes of appeal. *See* SAC at 193 n.154 ("The Court dismissed the antitrust (fifth claim for relief herein) and common law claims (sixth claim for relief herein) by Order dated March 29, 2013, and denied leave to amend the antitrust (fifth claim for relief herein) and CEA claims (second claim for relief herein) by Order dated August 23, 2013. Plaintiffs include these claims in this amended complaint to preserve the issues for appeal."); *see also* Letter from C. Lovell & D. Kovel, MDL ECF Nos. 404, 408, 433, at 1 n.1 (noting that antitrust claims were not pleaded in SAC "to assert live claims").[19] The Exchange-Based Plaintiffs have never renewed their request for leave to add such a claim nor sought reconsideration of the relevant portion of *LIBOR II*.[20]

Moreover, in *LIBOR IV*, this Court rejected allegations that Defendants engaged in a "broad-based conspiracy to manipulate USD LIBOR for traders' benefit" and dismissed claims premised on an inter-bank trader-based conspiracy to manipulate LIBOR as to all Defendants other than "specific and limited theories" relating to Barclays. 2015 WL 6243526, at *50; *see also id.* at *43 (concluding that "there has been no exposure of a broad conspiracy among traders at different banks to fix USD LIBOR").[21] And as to the Foreign Defendants, the Court subsequently made clear that, in all events, "plaintiffs may not assert trader-based claims that involve no domestically based actors." Mem. & Order, 2016 WL 1558504, at *5 (S.D.N.Y. Apr. 15, 2016), MDL ECF No. 1380 (stating that this conclusion "flows from" the jurisdictional holdings in *LIBOR IV* and *LIBOR V*).

This Court then concluded *LIBOR VI* with the statement that "the antitrust claims that remain are set out in the accompanying appendix." *LIBOR VI*, 2016 WL 7378980, at *25.

---

[19] On April 15, 2016, this Court noted that "Plaintiffs [including the Exchange-Based Plaintiffs] have continued to assert claims that have previously been dismissed in order to preserve them for appeal" and held that "plaintiffs should not replead definitively dismissed claims where they have not received this Court's leave to amend those claims." Mem. & Order, 2016 WL 1558504, at *11, MDL ECF No. 1380. In their proposed Third Amended Complaint, which this Court has not authorized, Exchange-Based Plaintiffs, for the first time, seek to expand their antitrust claim to cover the January 2003 to August 2007 time period. *See* MDL ECF No. 1159-1 ¶¶ 722-26 (incorporating in fifth claim for relief redefined definition of "Class Period").

[20] Plaintiffs have also never alleged any trader-based conduct—unilateral or conspiratorial—by some Defendants. As to those Defendants against which Plaintiffs have alleged trader-based conduct, the Court has generally rejected Plaintiffs' allegations of even unilateral manipulation, allowing trader-based claims to proceed against only a few Defendants on certain limited dates. *See LIBOR III*, 27 F. Supp. 3d 447, 463 (S.D.N.Y. 2014) (holding Exchange-Based Plaintiffs' proposed claims of unilateral trader-based manipulation were "insufficiently particular to meet the pleading requirements of *Twombly* and *Iqbal*" as to all but two Defendants, and as to those Defendants authorizing Plaintiffs to plead only certain limited unilateral trader-based claims with respect to certain dates); Mem. & Order, 2016 WL 1558504, at *10 (S.D.N.Y. Apr. 15, 2016), MDL ECF No. 1380 (allowing Exchange-Based plaintiffs to plead certain limited unilateral trader-based claims against one additional Defendant on only two dates).

[21] *Cf. In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2014 WL 6488219, at *4 (S.D.N.Y. Nov. 18, 2014) (rejecting as speculative Exchange-Based Plaintiffs' request for leave to amend their complaint to assert an agreement between Rabobank and Lloyds to submit false USD LIBOR quotes); *LIBOR VI*, 2016 WL 7378980, at *6 n.8 (characterizing alleged trader-based manipulation by individual traders as "sporadic").

Consistent with its prior rulings and *LIBOR VI*'s personal jurisdiction analysis, the appendix does not identify any remaining antitrust claims, regardless of theory, against the dismissed Foreign Defendants in the Exchange-Based and *Amabile* actions.

In light of the above rulings, Defendants seek confirmation that the proposed trader-based antitrust claims have been dismissed or disallowed to preempt any later argument by the Exchange-Based and *Amabile* Plaintiffs that such claims remain pending or unaddressed. To the extent the Court determines the Exchange-Based Plaintiffs and *Amabile* Plaintiffs assert any remaining, live trader-based antitrust claims, those claims should be dismissed or disallowed in whole or in part for at least four independent reasons.

### A. Plaintiffs' Trader-Based Antitrust Claims Against Foreign Defendants Should Be Dismissed for Lack of Personal Jurisdiction

Consistent with the Court's prior rulings, any remaining trader-based antitrust claims as against Foreign Defendants[22] should be dismissed based on lack of personal jurisdiction. This Court previously held that Foreign Defendants are not "at home" (and therefore not subject to general jurisdiction) in New York. *LIBOR IV*, 2015 WL 6243526, at *26-27 (S.D.N.Y. Oct. 20, 2015). This Court also held that there is specific personal jurisdiction over trader-based claims only where "the LIBOR submission was determined or transmitted" and where "the person who requested the submitter to engage in manipulation" was located. *Id.* at *38; *see also LIBOR V*, 2015 WL 6696407, at *8 (S.D.N.Y. Nov. 3, 2015); Mem. & Order, 2016 WL 1558504, at *5-7 & n.4 (S.D.N.Y. Apr. 15, 2016). Plaintiffs fail to plead any basis—let alone make a *prima facie* showing—for specific personal jurisdiction as to trader-based antitrust claims against the Foreign Defendants. The doctrine of conspiracy jurisdiction (to the extent that doctrine is viable), which this Court addressed in *LIBOR IV* and *LIBOR VI*, does not rescue Plaintiffs' claims because Plaintiffs fail to, among other things, (i) plausibly allege a trader-based conspiracy (discussed *infra*), (ii) identify any overt acts in furtherance of a trader-based conspiracy that occurred in or were aimed at the United States, or (iii) plausibly allege that any purported U.S.-based co-conspirator acted at the direction or request of any Foreign Defendant.

---

[22] The personal jurisdiction arguments are made solely on behalf of Foreign Defendants. The following Foreign Defendants were named in the Exchange-Based or *Amabile* actions and join in this letter for the limited purpose of seeking the clarification referenced above and, to the extent the Court determines that trader-based antitrust claims remain against these Foreign Defendants, seeking leave to move to dismiss or disallow such claims: (i) Exchange-Based Action: The Bank of Tokyo-Mitsubishi UFJ, LTd. ("BTMU"); Credit Suisse Group AG; Deutsche Bank AG; DB Group Services (UK) Ltd.; HBOS plc; HSBC Holdings plc; HSBC Bank plc; Lloyds Banking Group plc; Lloyds Bank plc; The Norinchukin Bank; Portigon AG; Coöperatieve Rabobank U.A. (f/k/a Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.) ("Rabobank"); The Royal Bank of Scotland Group plc ("RBS Group"); Royal Bank of Canada; Société Générale; UBS AG; and Westdeutsche ImmobilienBank AG; and (ii) *Amabile* Action: Barclays Bank plc; BTMU; Credit Suisse Group AG; Deutsche Bank AG; HBOS plc; HSBC Holdings plc; HSBC Bank PLC; Lloyds Banking Group PLC; The Norinchukin Bank; Portigon AG; Rabobank; RBS Group; Royal Bank of Canada; and UBS AG.

### B. Plaintiffs Do Not Plead a Plausible Conspiracy Based on Alleged Trader Manipulation

Plaintiffs' remaining trader-based antitrust claims should be dismissed in their entirety (except as to certain "specific and limited theories" relating to Barclays, *LIBOR IV*, 2015 WL 6243526, at *50) because they do not plead a plausible Sherman Act Section 1 claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Neither the Exchange-Based Plaintiffs nor the *Amabile* Plaintiffs allege any, much less all, of the elements of a trader-based, antitrust conspiracy: the identities of the parties involved, when the alleged trader-based conspiracy began and over what time period it operated, how the parties allegedly agreed to manipulate USD LIBOR (*e.g.*, up or down) and for what purpose, or how the alleged trader-based conspiracy operated relative to the suppression conspiracy allegedly ongoing at the same time.

In addition, Plaintiffs fail to meet the trader-based pleading requirements that this Court has established because they have not alleged, *inter alia*: which tenor of LIBOR was manipulated, in which direction, on what day and by which banks, whether the manipulation affected the published rate, which instrument Plaintiff traded, whether the manipulation impacted the price of the Eurodollar futures that Plaintiff purchased, how the manipulation of the particular tenor affected Plaintiff's position, and whether Plaintiff suffered a net injury. *See*, *e.g.*, *LIBOR IV*, 2015 WL 6243526, at *40. Conclusory allegations that Defendants engaged in a conspiracy, without more, are plainly insufficient under well-settled law. *See Twombly*, 550 U.S. at 553-54; *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (conspiracy allegations are deficient "without any specification of any particular activities" (quoting district court)). Neither the Second Circuit's decision in *Gelboim*—which addressed only the plausibility of suppression claims based on an alleged reputation-based conspiracy—nor Plaintiffs' voluminous submissions provide any support for the Exchange-Based Plaintiffs' and *Amabile* Plaintiffs' trader-based antitrust claims.

### C. The Exchange-Based and *Amabile* Plaintiffs Are Not Efficient Enforcers of the Antitrust Laws

Plaintiffs are not efficient enforcers of the antitrust laws. In *LIBOR VI*, this Court narrowly circumscribed antitrust claims by purchasers of Eurodollar futures transactions. *See* 2016 WL 7378980, at *17, *23. Although addressed to antitrust claims based on a suppression theory, the Court's reasoning in *LIBOR VI* applies equally to Plaintiffs' proposed trader-based antitrust claims.

First, Plaintiffs' claims for damages based on alleged periodic manipulation of LIBOR are at least as speculative as their claims for damages from alleged persistent suppression of LIBOR. The Court already determined in *LIBOR VI* that Plaintiffs do not and cannot plead a sufficiently close relationship between USD LIBOR and Eurodollar futures trading prices. *Id*. at *21. Indeed, the Court held that the only plaintiffs that might conceivably assert a "non-speculative theory" of damages are those that held their futures contracts to settlement, which neither the *Amabile* Plaintiffs nor any Exchange-Based Plaintiff has alleged. *Id*. at *23; *see also* Letter from P. Gluckow, MDL ECF No. 1661, at 2-3. The Court's conclusion applies with even greater force to Plaintiffs' trader-based claims because the alleged impact of any trader-based manipulation on USD LIBOR is measured "by fractions of basis points." *LIBOR IV*, 2015 WL

6243526, at *40 n.72.  It would require even greater speculation to conclude that such small changes in LIBOR would have an immediate impact on the trading price of Eurodollar futures.

Second, Plaintiffs' conclusory allegations of "market control"—based on an assertion that panel banks and their affiliates were "large traders" of Eurodollar futures and options during the putative class period—are insufficient to satisfy the causation analysis with respect to trader-based claims.  *See LIBOR VI*, 2016 WL 7378980, at *17.  This Court has held—several times—that trader-based manipulation claims are distinct from those based on a persistent suppression theory because the alleged trader conduct was "episodic and varying in direction."  *See LIBOR II*, 962 F. Supp. 2d 606, 620 (S.D.N.Y. 2013); *see also LIBOR IV*, 2015 WL 6243526, at *40 n.72 (trader-based manipulation "tended to shade LIBOR by fractions of basis points" and "caus[ed] less injury [and] is more difficult to plead").  Consistent with this Court's prior rulings, Plaintiffs must plead, for each day on which they contend Defendants conspired to manipulate USD LIBOR to benefit the trading position of traders at one or more banks, which Defendants purportedly engaged in the alleged conspiracy and whether those Defendants, on that day, controlled the market for Eurodollar futures and options.  *See id.*  Plaintiffs make no such allegations.

### D.     Plaintiffs' Trader-Based Antitrust Claims Are Partially Time-Barred

Plaintiffs' proposed trader-based antitrust claims are partially time-barred by the applicable statute of limitations.  As discussed in Part I.C *supra*, antitrust claims are subject to a four-year statute of limitations, which begins to run "as soon as there is [alleged] injury to competition."  *Johnson*, 86 F.3d at 11.  Trader-based antitrust claims arising from an alleged injury suffered more than four years before Exchange-Based Plaintiffs first sought leave to assert such a claim—on May 23, 2013 at the earliest—are time-barred, and no tolling doctrine applies or otherwise saves such claims from dismissal.  Thus, any antitrust claim based on alleged trader-based conduct occurring before May 23, 2009 is time-barred.

                Respectfully yours,

                */s/ Arthur J. Burke*
                Arthur J. Burke

cc:  All parties via ECF