# SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP

SUITE 5100
1000 LOUISIANA STREET
HOUSTON, TEXAS 77002-5096
(713) 651-9366
FAX (713) 654-6666
WWW.SUSMANGODFREY.COM

_____

| SUITE 950 | SUITE 3800 | 32ND FLOOR |
| 1901 AVENUE OF THE STARS | 1201 THIRD AVENUE | 1301 AVENUE OF THE AMERICAS |
| LOS ANGELES, CALIFORNIA 90067-6029 | SEATTLE, WASHINGTON 98101-3000 | NEW YORK, NEW YORK 10019-6022 |
| (310) 789-3100 | (206) 516-3880 | (212) 336-8330 |

WILLIAM CHRISTOPHER CARMODY
DIRECT DIAL (212) 336-8334

E-MAIL BCarmody@susmangodfrey.com

April 17, 2017

VIA CM/ECF AND HAND DELIVERY

The Honorable Naomi Reice Buchwald
United States District Judge
500 Pearl Street
New York, New York 10007-1312

Re:   *In re LIBOR-Based Financial Instruments Antitrust Litig.*, Case No. 11-cv-2262 (NRB)

Dear Judge Buchwald:

We write on behalf of the OTC Plaintiffs to request that the Court file unsealed the OTC Plaintiffs' response to the defendants' motion to quash our deposition notices. The Court should file the response and its exhibits unsealed because they set out key evidence demonstrating the defendants' suppression of LIBOR and because the defendants cannot overcome the common law and First Amendment presumption of open access to the Federal Courts.

"The common law right of public access to judicial documents is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)). Further, "it is well established that the public and the press have a 'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'" *Id.* (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)).

The presumption of access applies to the OTC Plaintiffs' response to the defendants' motion for protection because it was filed to obtain relief from the Court. *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Trust Co.*, No. 14-CV-04394 (AJN) (BCM), 2016 WL 7188795, at *3 (S.D.N.Y. Dec. 7, 2016); *In re Omnicom Grp. Secs. Litig.*, No. , 2006 WL 3016311, at *4 (S.D.N.Y. Oct. 23, 2006) ("While adjudication on the ultimate merits of the case arguably triggers the highest degree of protection against sealing, this does not imply that motion papers

April 17, 2017
Page 2


addressed to a discovery dispute do not trigger the public-access presumption." (citations omitted)).  While not at its highest level because this does not involve a dispositive motion, the presumption of access is particularly important here because the OTC Plaintiffs' response discusses key documents that go to the merits of this case, because of the interests of putative absent class members in monitoring this litigation, and because of the large public interest in the defendants' manipulation of LIBOR.[1]  *Shane Grp. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) ("[I]n class actions—where by definition 'some members of the public are also parties to the [case]'—the standards for denying public access to the record 'should be applied . . . with particular strictness.'" (citation omitted) (alterations in original) (quoting *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001)); *Cendant*, 260 F.3d at 193 ("The right of public access is particularly compelling here, because many members of the 'public' are also plaintiffs in the class action.").

To overcome the common law right of access, the defendants must demonstrate that "countervailing factors" outweigh the presumption of public access.  *Lugosch*, 435 F.3d at 120.  "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'"  *Id.*  The defendants' burden to overcome the First Amendment right of access is even higher: "[D]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *Id.* (alteration in original) (quoting *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)).

The documents cited in the OTC Plaintiffs' response are directly relevant to central issues in this litigation—they include directives from executives at JPMorgan and UBS to suppress LIBOR submissions, instructions from executives at UBS to submit LIBORs in the middle of the pack, and admissions from LIBOR submitters at both JPMorgan and UBS that they were following those orders.  The defendants cannot carry their burden to justify concealing those documents.

First, the defendants cannot overcome the presumption of openness based on the mere fact that the documents the OTC Plaintiffs cite were marked "confidential" under the protective order; now that those documents have been filed with the Court, the common law and First Amendment right of access applies.  *Shane*, 825 F.3d at 305 ("[Protective orders in discovery] are often blanket in nature, and allow the parties to determine in the first instance whether particular materials fall within the order's protection. . . .  At the adjudication stage, however, very different considerations apply.  The line between these two stages, adjudicative and discovery, is

---

[1] In the last several months, two books have been published recounting the defendants' manipulation of LIBOR. David Enrich, *The Spider Network: The Wild Story of a Math Genius, a Gang of Backstabbing Bankers, and One of the Greatest Scams in Financial History* (Custom House Mar. 21, 2017); Liam Vaughn, *The Fix: How Bankers Lied, Cheated and Colluded to Rig the World's Most Important Number* (Wiley Jan. 24, 2017).  Just last week, the BBC aired a special program on LIBOR manipulation.  British Broadcasting Company, *The Big Bank Fix*, available at http://www.bbc.co.uk/programmes/ b08nfvpn.  Further, trial is set in the criminal prosecution of former Deutsche Bank traders Gavin Black and Matthew Connolly for January of next year.  *See* Minute Entry for Mar. 2, 2017, *United States v. Connolly*, No. 1:16-cr-00370-CM (S.D.N.Y.).

April 17, 2017
Page 3

crossed when the parties place material in the court record." (citation and internal quotation marks omitted)); *see also Baxter Int'l, Inc. v. Abbott Laboratories*, 297 F.3d 544, 546 (7th Cir. 2002) ("Secrecy is fine at the discovery stage, before the material enters the judicial record.  But those documents, usually a small subset of all discovery, that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." (citation omitted)).

Second, the defendants cannot carry their burden by arguing that the documents cited in the OTC Plaintiffs' response contain competitively sensitive business or financial information.  For that argument to succeed, the defendants must "make 'a particular and specific demonstration of fact' showing that continued public availability 'would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test.'"  *Gucci Am., Inc. v. Guess?, Inc.*, No. No. 09 Civ. 4373 (SAS) (JLC), 2010 WL 1416896, at *2 (S.D.N.Y. Apr. 8, 2010) (quoting *In re Parmalat Secs. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009)); *Lytle v. JPMorgan Chase*, 810 F. Supp. 2d 616, 629 (S.D.N.Y. 2011) (same); *King Pharmaceuticals, Inc. v. Eon Labs, Inc.*, No. No. 04-CV-5540 (DGT), 2010 WL 3924689, at *7 (E.D.N.Y. Sept. 28, 2010) (same).  The defendants cannot make that required showing here. The documents at issue discuss JPMorgan's and UBS's setting—and suppression—of LIBOR, not any proprietary financial data or business strategies.  There is simply no way filing these documents publicly—the most recent of which is eight years old—could cause JPMorgan or UBS a "specific" and "sufficiently serious" competitive disadvantage.  *Parmalat*, 258 F.R.D. at 256 ("[Bank of America] has not come forward with specific facts showing that disclosure of the specific fees that it charged to Parmalat for this series of transactions would tend to be damaging now, seven to fourteen years after the fact.").  Further, the portions of the defendants' expert report cited in the response are the expert's conclusions and do not disclose any of the defendants' transaction or trade data.[2]

Finally, the defendants cannot overcome the presumption of public access by arguing that sealing is necessary to protect privacy interests of the witnesses whose depositions the OTC Plaintiffs noticed.  "[M]ost of the cases in which courts have concluded that the privacy interests of individuals were sufficient to overcome the presumption of access involve illness or sensitive personal financial information."  *Lytle*, 810 F. Supp. 2d at 629; *accord Nycomed US, Inc. v. Glenmark Generics, Inc.*, No. 08-CV-5023 (CBA), 2010 WL 889799, at *8 (E.D.N.Y. Mar. 8, 2010) ("This case bears no resemblance to those in which the privacy interests of individuals were held sufficient to overcome the presumption of access. . . . The judicial documents at issue do not disclose medical or psychological information about the named individual, nor do they pertain to a minor child.  Nor does the instant case involve bank account numbers, social security numbers and information the disclosure of which could raise a personal safety issue." (citations, internal quotation marks, ellipses omitted)).  The documents at issue here are not analogous.

For these reasons, the Court should file the OTC Plaintiffs' response and exhibits unsealed.

---

[2] We take no position at this point on whether the defendants could meet their burden to seal such data.

April 17, 2017
Page 4


Sincerely,


*/s/ William Christopher Carmody*
William Christopher Carmody

cc:   All Counsel of Record (via CM/ECF)