# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262 |
| THIS DOCUMENT RELATES TO: THE OTC ACTION | Master File No. 1:11-md-2262-NRB |

## MEMORANDUM OF LAW IN SUPPORT OF OTC PLAINTIFFS' MOTION TO CERTIFY CASE AS CLASS ACTION AND APPOINT CLASS COUNSEL

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND FACTS ..................................................................................... 3

   A. Evidence common to the class will show that the Panel Banks collusively suppressed LIBOR during the Class Period ................................................. 3

      1. *The Panel Banks collusively suppressed LIBOR by using interdealer brokers as conduits to exchange and align submissions* ................................................. 5

      2. *The Panel Banks agreed to suppress LIBOR through direct communications* .............. 9

      3. *The Panel Banks carried out their agreement to suppress LIBOR through the FXMMC* ................................................................................................ 10

      4. *The Panel Banks concealed their suppression of LIBOR* .............................. 13

   B. Evidence common to the class will show that the Panel Banks' suppression of LIBOR impacted and caused damage to OTC Plaintiffs ................................. 14

ARGUMENT ...................................................................................................... 15

   A. STANDARD FOR CERTIFICATION ................................................... 15

   B. THE OTC CLASS SATISFIES RULE 23(A) ....................................... 16

      1. *The OTC class includes thousands of people who bought LIBOR-linked instruments.* 16

      2. *The OTC class representatives have claims typical of the class* ................. 16

      3. *OTC Plaintiffs' case raises common questions regarding liability and damages* ........ 17

      4. *The OTC class representatives and counsel adequately represent the class* ............... 18

   C. COMMON QUESTIONS OF COLLUSION, SUPPRESSION, IMPACT, AND DAMAGES PREDOMINATE ................................................................. 19

      1. *Class-wide evidence is available to prove the common questions of collusion, suppression, impact, and damages* ................................................................. 20

         a. Collusion ............................................................................................. 20

         b. Suppression ......................................................................................... 23

         c. Impact ................................................................................................. 27

         d. Damages .............................................................................................. 29

      2. *Class-wide evidence of state-law claims predominates* ............................. 31

   D. CLASS TREATMENT IS A SUPERIOR METHOD TO RESOLVE THE DISPUTES .. 32

   E. THE COURT CAN ASCERTAIN CLASS MEMBERS OBJECTIVELY ....................... 32

CONCLUSION ................................................................................................... 33

# TABLE OF AUTHORITIES

## Cases

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
No. 14-cv-7126 (JMF), 2017 WL 404500 (S.D.N.Y. Jan. 27, 2017) ...................................... 31

*Allen v. Dairy Farmers of Am., Inc.*,
279 F.R.D. 257 (D. Vt. 2011) .................................................................................................. 17

*Allen*,
2012 WL 5844871 ................................................................................................................... 26

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591 (1997)....................................................................................................... 2, 15, 21

*Amgen Inc. v. Connecticut Ret. Plans and Trust Funds*,
133 S. Ct. 1184 (2013)................................................................................................... passim

*Anderson News, L.L.C. v. Am. Media, Inc.*,
680 F.3d 162 (2d Cir. 2012) ................................................................................................... 21

*Atwood v. Intercept Pharm., Inc.*,
299 F.R.D. 414 (S.D.N.Y. 2014) ...................................................................................... 16, 18

*Augustin v. Jablonsky*,
461 F.3d 219 (2d Cir. 2006) ............................................................................................. 19, 20

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000) ..................................................................................................... 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................................. 21

*Benner v. Becton Dickinson & Co.*,
214 F.R.D. 157 (S.D.N.Y. 2003) ............................................................................................ 33

Bernheim Reb. ¶¶ 295-361. Even if absorption should be assumed to be complete – such that the
only damages would be damages from ............................................................................... 30, 31

*Bigelow v. RKO Radio Pictures*,
327 U.S. 251 (1946).................................................................................................................. 29

*Brecher v. Republic of Argentina*,
806 F.3d 22 (2d Cir. 2015) ..................................................................................................... 33

*Brown v. Kelly*,
609 F.3d 467 (2d Cir. 2010) ................................................................................................... 15

*Casper v. Song Jinan*,
    No. 12 Civ. 4202, 2012 WL 3865267 (S.D.N.Y. Sept. 5, 2012) ........................................ 16, 18

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*,
    504 F.3d 229 (2d Cir. 2007) .................................................................................................. 17

*Charron v. Pinnacle Grp. N.Y. LLC*,
    269 F.R.D. 221 (S.D.N.Y. 2010) ........................................................................................... 33

*Chhab v. Darden Rests., Inc.*,
    No. 11 Civ. 8345 (NRB), 2016 WL 3004511 (S.D.N.Y. May 20, 2016) ................................ 32

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) ........................................................................................................... 29

*Dial Corp. v. News Corp.*,
    314 F.R.D. 108 (S.D.N.Y. 2015) ............................................................................... 23, 25, 26

*Duarte v. Tri-State Physical Med. & Rehab., P.C.*,
    No. 11 Civ. 3765 (NRB), 2012 WL 2847741 (S.D.N.Y. July 11, 2012) .......................... 16, 20

*Eastman Kodak Co. v. S. Photo Materials Co.*,
    273 U.S. 359 (1927) ............................................................................................................... 29

*Ge Dandong v. Pinnacle Performance Ltd.*,
    No. 10-8086, 2013 WL 5658790 (S.D.N.Y. Oct. 17, 2013) ........................................ 2, 18, 32

*Gelboim v. Bank of America Corp.*,
    823 F.3d 759 (2d Cir. 2016) .................................................................................................. 23

*Gonqueh v. Leros Point to Point, Inc.*,
    No. 14-CV-5883 (GHW), 2015 WL 9256932 (S.D.N.Y. Sept. 2, 2015) ................................ 32

*Ill. Brick Co. v. Illinois*,
    431 U.S. 720 (1977) ............................................................................................................... 31

*In High-Tech Employee Antitrust Litig.*,
    985 F. Supp. 2d 1167 (E.D. Cal. 2013) ................................................................................. 24

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. 06-1175, 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) .......................................... 1, 18, 26

*In re Airline Ticket Comm'n Antitrust Litig.*,
    918 F. Supp. 283 (D. Minn. 1996) ........................................................................................ 31

*In re Amaranth Nat. Gas Commodities. Litig.*, 269 F.R.D. 366 (S.D.N.Y. 2010) ................. 25, 31

*In re Cardizem CD Antitrust Litig.*,
    200 F.R.D. 297 (E.D. Mich. 2001) ........................................................................................ 28

*In re Currency Conversion Fee Antitrust Litig.*,
224 F.R.D. 555 (S.D.N.Y. 2004) ................................................................ 23

*In re Currency Conversion Fee Antitrust Litig.*,
264 F.R.D. 100 (S.D.N.Y. 2010) ................................................................ 22

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
317 F.R.D. 675 (N.D. Ga. 2016) ................................................................ 31

*In re Electronic Books Antitrust Litig.*,
No., 11 MD 2293 (DLC), 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) ........................ passim

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
256 F.R.D. 82 (D. Conn. 2009) ........................................................ 23, 25, 27

*In re Flag Telecom Holdings, Ltd. Sec. Litig*,
574 F.3d 29 (2d Cir. 2009) ................................................................ 19

*In re IMAX Sec. Litig.*,
272 F.R.D. 138 (S.D.N.Y. 2010) ........................................................ 15, 17

*In re IMAX Secs. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ........................................................ 21, 23

*In re Lidoderm Antitrust Litig.*,
No. 14-md-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ................................ 28

*In re NASDAQ Market-Makers Antitrust Litig.*,
169 F.R.D. 493 (E.D.N.Y. 1996) ........................................................ 17, 21

*In re Nexium Antitrust Lit.*,
777 F. 3d 9 (1st Cir. 2015) ............................................................ 27, 28

*In re U.S. Foodservice Inc. Pricing Litig.*,
729 F.3d 108 (2d Cir. 2013) ........................................................ 20, 32

*In re Visa Check/Mastermoney Antitrust Litig.*,
192 F.R.D. 68 (E.D.N.Y. 2000) ................................................................ 28

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001) ................................................................ 20

*In re Vitamin C Antitrust Litig.*,
279 F.R.D. 90 (E.D.N.Y. 2012) ................................................................ 21

*Interstate Circuit v. United States*,
306 U.S. 208 (1939) ........................................................................ 23

iv

*Johnson v. Nextel Commc'ns Inc.*,
  780 F.3d 128 (2d Cir. 2015) .................................................................................. 17, 19, 20

*Keilholtz v. Lennox Hearth Prods. Inc.*,
  268 F.R.D. 330 (N.D. Cal. 2010).................................................................................. 18, 32

*Langan v. Johnson & Johnson Consumer Cos.*,
  No. 3:13-cv-1470 (JAM), 2017 WL 985640 (D. Conn. Mar. 13, 2017) ................................ 19

*LIBOR I*,
  935 F. Supp. 2d .......................................................................................................... 31

*LIBOR*,
  2011 WL 5980198 (S.D.N.Y. Nov. 29, 2011)...................................................................... 19

*LIBOR*,
  2016 WL 2851333 (S.D.N.Y. May 13, 2016) ............................................................. passim

*LIBOR, II*,
  962 F. Supp. 2d .......................................................................................................... 31

*LIBOR, III*,
  27 F. Supp. 3d 447 (S.D.N.Y. 2014) ........................................................................ 2, 32

*LIBOR, V*,
  2015 WL 6243526 n.21 (S.D.N.Y. Oct. 20, 2015) .................................................... 31

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) ........................................................................................ 17

*Masters v. Wilhelmina Model Agency, Inc.*,
  No. 02 Civ. 4911(HB), 2003 WL 145556 (S.D.N.Y. Jan. 17, 2003) ................................ 22

*Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*,
  709 F.3d 129 (2d Cir. 2013) ........................................................................................ 21

*Mazzanti v. Gen. Elec. Co.*,
  No. 3:13cv1799 (WWE), 2017 WL 923905 (D. Ct. Mar. 7, 2017)........................................ 33

*McLaughlin v. Am. Tobacco Co.*,
  522 F.3d 215 (2d Cir. 2008) ........................................................................................ 15

*Megason v. Starjem Rest. Corp.*,
  No. 12 Civ. 1299 (NRB), 2014 WL 113711 (S.D.N.Y. Jan. 13, 2014)................................ 16

*Minpeco, S.A. v. Conticommodity Servs., Inc.*,
  676 F. Supp. 486 (S.D.N.Y. 1987) .............................................................................. 31

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002) ...................................................... 23

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010) ....................................................... 20

*New York v. Hendrickson Bros., Inc.*,
  840 F.2d 1065 (2d Cir. 1988) ...................................................... 28

*Novella v. Westchester Cty.*,
  443 F. Supp. 2d 540 (S.D.N.Y. 2006) ........................................ 16

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015) ............................................... 3, 5, 30

*Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*,
  131 F.3d 874 (10th Cir. 1997) ..................................................... 28

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
  282 U.S. 555 (1931) .................................................................... 29

*Suchanek v. Sturm Foods, Inc.*,
  764 F.3d 750 (7th Cir. 2014) ....................................................... 17

*Sykes v. Mel S. Harris and Associates LLC*,
  780 F.3d 70 (2d Cir. 2015) .................................................... 20, 30

*Tyson Foods Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ...................................................... 19, 25, 27

*United States v. Anthem, Inc.*,
  No. CV 16-1493 (ABJ), 2017 WL 685563 n.42 (D.D.C. Feb. 21, 2017) ............................... 24

*United States v. Beaver*,
  515 F.3d 730 (7th Cir. 2008) ....................................................... 22

*United States v. Rea*,
  958 F.2d 1206 (2d Cir. 1992) ...................................................... 23

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ......................................................... 27, 30

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  395 U.S. 100 (1969) .................................................................... 29

## **Rules**

Fed. R. Civ. P. 23 ......................................................................... passim

## Other Authorities

7AA C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1778, at 123-24 (3d ed. 2005) .................................................................................................. 19

Joseph M. McLaughlin, *McLaughlin on Class Actions* § 5:23 .................................................... 26

W. Rubenstein, *Newberg on Class Actions* § 20.23 (5th ed. 2012) .............................................. 21

W. Rubenstein, *Newberg on Class Actions* § 20.52 (5th ed. 2012) ............................................... 2

W. Rubenstein, *Newberg on Class Actions* § 4:49 (5th ed. 2012) ................................................ 19

W. Rubenstein, *Newberg on Class Actions* § 4:50 (5th ed. 2012) ................................................ 25

## INTRODUCTION

OTC Plaintiffs allege three claims for relief based on Defendants' suppression of LIBOR: price-fixing in violation of the Sherman Act, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. The proof of each of these claims focuses on **common questions and evidence**, including evidence of the Panel Banks' conspiracy, suppression of the LIBOR benchmark, the impact of this suppression on payments due from the Panel Bank to the OTC Plaintiffs under their OTC instruments, and the proper measure of class-wide damages. As confirmed by the expert testimony of two of the Nation's leading economists, Nobel laureate Dr. Joseph Stiglitz[1] and Chair of Stanford University's Economics Department Dr. B. Douglas Bernheim,[2] proof common to the class is available to answer the each of the common issues of conspiracy, suppression, impact, and damages presented by this case. There is little doubt that Rule 23(b)(3)'s requirement that "questions of law or fact common to class members predominate over any questions affecting only individual members" is satisfied.

The primary focus of OTC Plaintiffs' case is the Panel Banks' conduct, not issues that are unique to individual class members. *E.g.*, *In re Air Cargo Shipping Servs. Antitrust Litig.,* No. 06-1175, 2014 WL 7882100, at *64 (E.D.N.Y. Oct. 15, 2014), *report and recommendation adopted,* 2015 WL 5093503 (E.D.N.Y. July 10, 2015) (finding proof of an antitrust conspiracy, impact, and damages to be predominating common questions).

As for the Sherman Act claim, the primary question will be whether the Panel Banks conspired to artificially suppress the LIBOR component of the LIBOR-based financial instruments they sold. That question will turn on proof that is common to the class, not what any

---

[1]     Ex 1 to Declaration of Michael Kelso in Support of OTC Plaintiffs' Motion for Class Certification (Expert Report of Dr. Joseph Stiglitz ("Stiglitz Report"), Feb. 2, 2017). Each reference to an "Ex" in this memorandum corresponds to an exhibit to the Kelso declaration.
[2]     Ex 2 (Expert Report of B. Douglas Bernheim, PhD ("Bernheim Rpt."), Feb. 2, 2017; Ex 3 (Rebuttal Expert Report of B. Douglas Bernheim, PhD ("Bernheim Reb."), May 9, 2017).

individual class member did or did not do. *E.g., Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (noting predominance "readily met" in "certain cases alleging . . . violations of the antitrust laws"); W. Rubenstein, *Newberg on Class Actions* § 20.52 (5th ed. 2012) ("[C]ourts in nearly every circuit have quoted an earlier edition of the Treatise's conclusion that, as a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common questions.").

As for the OTC Plaintiffs' state law claims, again the focus will be on the conduct of the Panel Banks, not the conduct of the OTC Plaintiffs. These claims are based on standardized written contracts that promised payments to the OTC Plaintiffs based on LIBOR; Defendants deprived the OTC Plaintiffs of the benefits due under the contracts by suppressing that rate. *E.g., Ge Dandong v. Pinnacle Performance Ltd.*, No. 10-8086, 2013 WL 5658790, at *12 (S.D.N.Y. Oct. 17, 2013) (holding that "common issues predominate with respect to plaintiffs' implied covenant claims" where plaintiffs alleged defendant bank used "unilateral control" over assets and "ratings arbitrage" to deprive plaintiffs of benefits under contract, and citing cases); *LIBOR*, 2016 WL 2851333, at *3 (S.D.N.Y. May 13, 2016) (citing *LIBOR III*, 27 F. Supp. 3d 447, 483 (S.D.N.Y. 2014) (ruling that OTC Plaintiffs may prove implied covenant claim "by focusing on the alleged manipulation of LIBOR . . . and do not need to inquire as to the state of mind of the individuals issuing any specific instrument")).

The issues of impact and damages will also be litigated based on evidence common to the class, as demonstrated by OTC Plaintiffs' experts and discussed further below. There is no doubt that the OTC Plaintiffs have put forward a common, class-wide approach to these issues, and that is what matters. *Amgen Inc. v. Connecticut Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1194-96 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the

certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."); Fed. R. Civ. P. 23, Advisory Committee's 2003 Note ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision."). Even if Defendants claim that individualized damages issues exist, the Second Circuit has made clear that the existence of such issues is not a bar to certification. *E.g.*, *LIBOR*, 2016 WL 2851333, at *4 ("[T]he Second Circuit has recently reiterated that 'it [is] well-established . . . that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification under Rule 23(b)(3).'") (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)).

The OTC Plaintiffs respectfully submit that they have satisfied their burden and request that the court certify the class under Rule 23(b)(3)[3] and appoint Hausfeld LLP and Susman Godfrey LLP as class counsel under Rule 23(g).

## BACKGROUND FACTS

A. <u>**Evidence common to the class will show that the Panel Banks collusively suppressed LIBOR during the Class Period**</u>

The evidence of the Panel Banks' conspiracy is common to the class —including emails, memoranda, and transactional data furnished by the Panel Banks[4]—and is directed to a common

---

[3]  The class that the OTC Plaintiffs seek to certify consists of all persons or entities residing in the United States that purchased, directly from a Panel Bank (or a Panel Bank's subsidiaries or affiliates), a LIBOR-Based Instrument that paid interest indexed to a U.S. dollar LIBOR rate set any time during the period August 2007 through August 2009 ("Class Period") regardless of when the LIBOR-Based Instrument was purchased. Excluded from the class are Panel Banks and their employees, affiliates, parents, and subsidiaries and any judicial officers and staff presiding over this action. "Panel Bank" means Bank of America, Bank of Tokyo Mitsubishi, Barclays Bank, Citibank, Credit Suisse, Deutsche Bank, HBOS, HSBC, JPMorgan, Lloyds, Norinchukin, Rabobank, Royal Bank of Canada, Royal Bank of Scotland, Societe Generale, UBS, and West LB (n/k/a Portigon). "LIBOR-Based Instrument" is defined in paragraph 14 of the Bernheim Report. Plaintiffs also seek to certify bank-specific Sub-Classes, as set forth in paragraph 15 of the Bernheim Report.

[4]  Because the material so often includes misspellings and other errors, this brief reproduces them as they appear in the text without using a notation (such as "[sic]") to identify the mistakes.

question of fact: Did the Panel Banks' conspire to suppress LIBOR during the Class Period?

The answer is "Yes," as the common evidence that will be presented at trial will show.



5   *See* Bernheim Rpt. ¶ 25 & nn.6-7.
6   Ex 4 (RBS_MDL_000664105).
7   Ex 5 (BAR-OTC-001408843).
8   Ex. 6 (JPM_MDL1_USD_00115156) (emphasis added).

Ex 9 Trial Tr., at 553:11–19, *United States v. Allen*, No. 1:14-cr-00272-JSR (S.D.N.Y. 2015) (testimony of

### 1. The Panel Banks collusively suppressed LIBOR by using interdealer brokers as conduits to exchange and align submissions

████████████████████████████████████████████████

███████████████████████████ ██████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ ██ ███

P. Robson) ("Q: And it seemed to you that all the BBA seemed to care about was that panel banks would submit rates that were close to each other's rates? A: Yes. Q: If a panel bank would submit a rate that was an outlier that was different than the rate submitted by the others, the British Bankers Association would call them and tell them to change their rate. Is that right? A: As far as I understood the process to work, yes.");

█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████

















███████████████████████████████████████████

**B.**     **Evidence common to the class will show that the Panel Banks' suppression of LIBOR impacted and caused damage to OTC Plaintiffs**

The LIBOR submissions by the Panel Banks were reported at artificially low levels, thereby suppressing LIBOR throughout the Class Period. ████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████

## ARGUMENT

### A.    STANDARD FOR CERTIFICATION

The movant bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met. *Amchem*, 521 U.S. at 614; *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010). Rule 23(a) permits a case to be litigated as a class action if the plaintiff demonstrates numerosity, commonality, typicality, and adequacy of the class plaintiffs. Further, to certify a class pursuant to Rule 23(b)(3), a plaintiff must establish (1) predominance—"that the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) superiority—"that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Although "courts may resolve contested factual issues where necessary to decide on class certification,'" *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 146 (S.D.N.Y. 2010) (quoting *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 228 (2d Cir. 2008)), the Supreme Court has made clear that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage," *Amgen*, 133 S. Ct. at 1194-95; *see id.* at 1195 ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). As this court has previously observed, "the certifying court should not make any factual findings or merits determinations

that are not necessary to the Rule 23 analysis," and "[t]he key inquiry at this stage is not a final resolution of liability but rather whether the constituent issues that bear on [defendant's] ultimate liability are provable in common." *Megason v. Starjem Rest. Corp.*, No. 12 Civ. 1299 (NRB), 2014 WL 113711, at *6 (S.D.N.Y. Jan. 13, 2014). Nor may a court assess the weight of evidence concerning a necessarily common merits question—such as the materiality element in a securities fraud case and the conspiracy element in an action under Section 1 of the Sherman Act —if failure of the necessarily common evidence "ends the case for the class and for all individuals alleged to compose the class." *Amgen*, 133 S. Ct. at 1199 (holding that court of appeals erred in requiring plaintiffs to prove materiality in order to obtain certification of securities fraud class action).

## B.   THE OTC CLASS SATISFIES RULE 23(a)

### 1.   *The OTC class includes thousands of people who bought LIBOR-linked instruments*

"In the Second Circuit, a class is presumed sufficiently numerous if it contains forty or more members but will be presumed insufficient if it contains twenty-one or fewer individuals." *Duarte v. Tri-State Physical Med. & Rehab., P.C.*, No. 11 Civ. 3765 (NRB), 2012 WL 2847741, at *8 (S.D.N.Y. July 11, 2012) (citing *Novella v. Westchester Cty.*, 443 F. Supp. 2d 540, 546 (S.D.N.Y. 2006)). In his opening report, Dr. Bernheim pointed to thousands of swaps contracts between just one bank, Citi, and members of the class. His rebuttal report notes thousands more. OTC Plaintiffs have amply satisfied the numerosity requirement of Rule 23(a).

### 2.   *The OTC class representatives have claims typical of the class*

"'The typicality threshold is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise.'" *Atwood v. Intercept Pharm., Inc.*, 299 F.R.D. 414, 416 (S.D.N.Y. 2014) (quoting *Casper v. Song Jinan*, No. 12 Civ. 4202, 2012 WL

3865267, at *2 (S.D.N.Y. Sept. 5, 2012)). Small differences do not defeat typicality. "Rather, a plaintiff fails to meet Rule 23(a)'s typicality requirement if its claims are 'subject to unique defenses which threaten to become the focus of the litigation.'" *IMAX*, 272 F.R.D. at 147 (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000)).

In this case, the class representatives and class members all assert claims that arise from the Panel Banks' unlawful suppression of LIBOR, and their injuries result from that wrongful conduct. OTC Plaintiffs have demonstrated typicality of the class members' claims.

### 3.    OTC Plaintiffs' case raises common questions regarding liability and damages

"'The commonality requirement is met if plaintiffs' grievances share a common question of law or fact.'" *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 245 (2d Cir. 2007) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (per curiam)). "'Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.'" *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137-38 (2d Cir. 2015) (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014)). It thus "is not the law" that "a common question must be common to every class member." *LIBOR VI*, 2016 WL 2851333, at *1 (citing *Johnson*, 780 F.3d at 137).

"Notwithstanding the complexities of a particular market, '[n]umerous courts have held that allegations concerning the existence, scope, and efficacy of an alleged antitrust conspiracy present important common questions sufficient to satisfy the commonality requirement of Rule 23(a)(2).'" *Allen v. Dairy Farmers of Am., Inc.*, 279 F.R.D. 257, 264-65 (D. Vt. 2011) (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 509 (E.D.N.Y. 1996)).

OTC Plaintiffs' claims present several common issues of law and fact. They include:

- Did the Panel Banks suppress LIBOR during the Class Period?

- Did Panel Banks conspire to suppress LIBOR during the Class Period?

- Did the suppression of LIBOR impact virtually all class members by resulting in at least one lower LIBOR payment to them by a Panel Bank during the Class Period?

- Did the Panel Banks' conduct violate section 1 of the Sherman Act?

- Did the Defendants' conduct deprive OTC Plaintiffs of the benefits of their transactions?

- What are the appropriate measures of class-wide harm for OTC Plaintiffs' claims?

These common questions amply meet Rule 23(a)'s commonality requirement. *E.g.*, *In re Air Cargo*, 2014 WL 7882100, at *30 (certifying antitrust claim with common issues of whether defendants conspired to fix prices, what effect that had on prices, whether conspiracy caused impact to plaintiffs, what constitutes proper measure of damages, and whether conspiracy violated antitrust laws); *Ge Dandong*, 2013 WL 5658790, at *12 (certifying implied covenant claim with common issues including whether defendants engaged in bad faith behavior); *Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 341 (N.D. Cal. 2010) (certifying unjust enrichment claim because "[c]ommon to all class members and provable on a class-wide basis is whether Defendants unjustly profited").

### 4. *The OTC class representatives and counsel adequately represent the class*

"'The adequacy requirement is satisfied where: (1) there is no conflict between the proposed lead plaintiff and the members of the class; (2) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) class counsel is qualified, experienced, and generally able to conduct the litigation.'" *Atwood*, 299 F.R.D. at 416-17 (quoting *Casper v. Song Jinan*, 2012 WL 3865267, at *2). "A conflict 'between named parties and the class they seek to represent' will be sufficient to defeat class certification only if

the conflict is 'fundamental.'" *Langan v. Johnson & Johnson Consumer Cos.*, No. 3:13-cv-1470 (JAM), 2017 WL 985640, at *12 (D. Conn. Mar. 13, 2017) (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig,* 574 F.3d 29, 35 (2d Cir. 2009)).

No "fundamental" conflict exists between the class representatives and members of the class. The class representatives hold claims potentially worth millions of dollars, assuring their vigorous advocacy. And the court has found that class counsel have the qualifications, experience, and ability to prosecute the claims. *LIBOR*, 2011 WL 5980198, at *3-*4 (S.D.N.Y. Nov. 29, 2011). OTC Plaintiffs have satisfied the adequacy of representation prerequisite.

## C.   COMMON QUESTIONS OF COLLUSION, SUPPRESSION, IMPACT, AND DAMAGES PREDOMINATE

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting W. Rubenstein, *Newberg on Class Actions* § 4:49, at 195-96 (5th ed. 2012)). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id*. (quoting 7AA C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1778, at 123-24 (3d ed. 2005)); *Johnson*, 780 F.3d at 138 ("Common issues—such as liability—may be certified, consistent with Rule 23, even where other issues—such as damages—do not lend themselves to classwide proof.") (citing *Augustin v. Jablonsky*, 461 F.3d 219, 227 (2d Cir. 2006)).

"The same principle holds true for individual defenses—though they 'may affect different class members differently,' their existence 'does not compel a finding that individual

issues predominate over common ones.'" *Johnson*, 780 F.3d at 138 (quoting *Augustin*, 461 F.3d at 225). "In short, the question for certifying a Rule 23(b)(3) class is whether 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof' and whether 'these particular issues are more substantial than the issues subject only to individualized proof.'" *Johnson*, 780 F.3d at 139 (quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013)).

Notably, to achieve certification, plaintiffs need not prove that there are **no** individual issues in the case. *Amgen*, 133 S.Ct. at 1196 ("Rule 23(b)(3), however, does not require a plaintiff seeking class certification to prove that each 'element of her claim is susceptible to classwide proof.'"). For example, "'[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues.'" *Sykes v. Mel S. Harris and Associates LLC*, 780 F.3d 70, 81 (2d Cir. 2015) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001)). "The predominance requirement of this provision is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Duarte*, 2012 WL 2847741, at *9 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010)). Here the principal issues of liability, impact, and damages present common questions, and OTC Plaintiffs will establish them with class-wide proof.

The OTC Plaintiffs amply satisfy the predominance test.

> ### 1. *Class-wide evidence is available to prove the common questions of collusion, suppression, impact, and damages*

>> #### a. <u>Collusion</u>

There is little doubt that the question whether the Panel Banks conspired with each other

presents a common question of fact that will be answered by common evidence. "As the Supreme Court has observed, the requirement of predominance is 'readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.'" *In re IMAX Secs. Litig.*, 283 F.R.D. 178, 187 (S.D.N.Y. 2012) (quoting *Amchem*, 521 U.S. at 625 ); *see also In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 109 (E.D.N.Y. 2012) (stating that in price-fixing conspiracy cases, "courts have frequently held that the predominance requirement is satisfied because the existence and effect of the conspiracy are the prime issues in the case and are common across the class") (citing cases); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. at 518 ("Courts repeatedly have held that the existence of a conspiracy is the predominant issue in price fixing cases, warranting certification of the class even where significant individual issues are present."); *Newberg on Class Actions* § 20:23 ("Price fixing cases are generally well-suited for class action adjudication.").

Whether Defendants violated Section 1 depends on whether their conduct "stems from independent decision or from an agreement, tacit or express." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007); *Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013). Proof of "a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement" makes out a Section 1 violation. *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 183 (2d Cir. 2012). OTC Plaintiffs will use class-wide evidence to establish the "conscious commitment to a common scheme" element of a Section 1 violation. *Id.* at 184. The proof will show that the "common scheme" involved—in the court's words—"an agreement to keep them [LIBOR rates] low," Ex 66 (Hrg., Mar. 5, 2013) at 75:23, for the purpose of falsely signaling the Panel Banks' individual and collective financial health.[62]

---

[62]     As the court noted, an agreement like that would mean that the Panel Banks "don't have to keep talking to each other. You know, they just agree to it once and, you know, it kind of applies for the next X number of years."

The common evidence will include the following:

- Expert testimony of Dr. Joseph Stiglitz regarding market features that facilitated agreement by the Panel Banks, Panel Banks' incentives for colluding, and the consistency of documentary evidence with collusion;

- Admissions by the Panel Banks that they did persistently suppress their LIBOR submissions during the Class Period;



Although defendants may dispute that the evidence shows they colluded,[63] the dispute

Ex 66 (Hrg., Mar. 5, 2013) at 24:24-25:1. The evidence will show that the Panel Banks not only did agree at the start of the Class Period to keep their LIBOR submissions low but that they also continued to communicate with each other about the levels of their LIBOR submissions and LIBOR itself through multiple channels. These included direct interbank communications, meetings of the FXMMC, and "run-throughs" with brokers.

[63]     As the court noted in *In re Currency Conversion Fee Antitrust Litig.*, "'[Section] 1 of the Sherman Antitrust Act does not outlaw only perfect conspiracies to restrain trade." *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 114 (S.D.N.Y. 2010) (quoting *United States v. Beaver*, 515 F.3d 730, 739 (7th Cir. 2008)). "Moreover," the court continued, "'[i]t is well settled . . . that the law does not require every defendant to participate in the conspiracy by identical means throughout the entire class period.' *Masters v. Wilhelmina Model Agency, Inc.*, No.

matters only because it highlights the common nature of the evidence and that class treatment will resolve "a genuine controversy." *IMAX*, 283 F.R.D. at 187 ("'Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'") (citing *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)). Because all class members' Sherman Act claim will succeed or fail on the basis of "common, classwide proof," the court may not assess its weight in the context of Rule 23. *Amgen*, 133 S. Ct. at 1199.

### b.    Suppression

OTC Plaintiffs have already uncovered significant **common** proof concerning the fact of suppression, from which a reasonable juror could conclude that the Panel Banks suppressed LIBOR during the Class Period. Although at class certification the movant need only "advance a workable methodology to demonstrate that antitrust injury **can be** proven on a class-wide basis," *Dial Corp. v. News Corp.*, 314 F.R.D. 108, 115 (S.D.N.Y. 2015) (citing *In re Electronic Books Antitrust Litig.* ("*E-Books*"), No. 11 MD 2293 (DLC), 2014 WL 1282293, at *14 (S.D.N.Y. Mar. 28, 2014); *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 565 (S.D.N.Y. 2004); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 100 (D. Conn. 2009), Dr. Bernheim's expert analysis goes beyond a threshold showing of workability to demonstrate **exactly how** LIBOR suppression can be shown class-wide. Dr. Bernheim further analyzed and refined the "economic evidence" that the Second Circuit found important to its decision in *Gelboim v. Bank of America Corp.*, 823 F.3d 759, 782 (2d Cir. 2016), using a

---

02 Civ. 4911(HB), 2003 WL 145556, at *5 (S.D.N.Y. Jan. 17, 2003); *see also Interstate Circuit v. United States*, 306 U.S. 208, 227 (1939) ('It is elementary that an unlawful conspiracy may be and often is formed without simultaneous action or agreement on the part of the conspirators.'); *United States v. Rea*, 958 F.2d 1206, 1214 (2d Cir. 1992) ('defendant need not have joined a conspiracy at its inception in order to incur liability for the unlawful acts of the conspiracy committed both before and after he or she became a member.')."

regression model to demonstrate that the spread during the Class Period between LIBOR (both composite LIBOR and individual bank LIBOR submissions) and the Eurodollar deposit rate published by leading money-market broker ICAP cannot be explained by non-suppressive factors. Bernheim Rpt. ¶¶ 51-101. █████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████

    Defendants' expert Dr. Robert D. Willig contests Dr. Bernheim's conclusions. Dr. Willig uses an alternate methodology to calculate but-for LIBOR, focusing not on the LIBOR-Eurodollar spread but instead on the relationship between LIBOR (composite and individual) and LIBOR Panel Bank borrowing costs, and concludes that LIBOR was not suppressed.[64]

    Dr. Bernheim's rebuttal report explains why even on its own terms Dr. Willig's analysis fails,[65] and why Dr. Willig's criticisms of Dr. Bernheim's analysis are without merit.[66] But at the



class certification stage, it is not the court's role to weigh the expert evidence to decide whether Dr. Bernheim or Dr. Willig is correct. As the Supreme Court emphasized in *Tyson Foods*, once the court deems class-wide evidence on a common question admissible, "its persuasiveness is, in general, a matter for the jury." *Tyson Foods*, 136 S. Ct. at 1049. Courts in this district have faithfully applied this principle; as the court held in *Dial Corp.*, an argument that "Plaintiffs' model does not prove what [plaintiffs] claim it proves," is a merits argument improper at class certification. *Dial Corp.*, 314 F.R.D. at 119. Here, "[i]n essence, the defendants are asking the court to determine which regression model is *most* accurate, which is ultimately a merits decision." *Id.* (quoting *In re EPDM Antitrust Litig.*, 256 F.R.D. at 100).

The critical point about the Bernheim-Willig LIBOR suppression debate is that it amply demonstrates the presence of numerous, complex, expert-driven common issues. Indeed, by arguing (incorrectly) that his own benchmark (borrowing costs) disproves LIBOR suppression, Dr. Willig *concedes* the jury's ability to resolve the issues on a class-wide basis. *In re Amaranth Nat. Gas Commodities. Litig.*, 269 F.R.D. 366, 385 (S.D.N.Y. 2010) ("[B]y arguing that plaintiffs' models, as corrected by defendants' expert show that [defendants] did not cause any [harm] during the Class Period, defendants impliedly concede that causation can be evaluated on a class-wide basis."). The fundamental LIBOR suppression question is obviously common—its answer will not vary by class member. *Tyson Foods*, 136 S. Ct. at 1045 ("An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" (alteration in original) (quoting 2 W. Rubenstein, *Newberg on Class Actions* § 4:50

████████████████

Bernheim Reb. ¶¶ 125-269.

(5th ed. 2012)).

LIBOR either was or was not suppressed, and it does not matter whether the plaintiff is Baltimore, Yale, or someone else. But the many sub-questions that go into answering this fundamental suppression are common as well. For example, a jury may decide that the relevant data set is the ICAP Eurodollar rate (as Dr. Bernheim argues) or bank borrowing costs (as Dr. Willig argues), a jury may decide that the LIBOR question asked about offer rates (as Dr. Bernheim argues) or the lowest expected actual transaction rate (as Dr. Willig argues), that the before-and-after periods Dr. Bernheim uses are useful benchmarks (as Dr. Bernheim argues) or flawed (as Dr. Willig argues), and so on. These are all common questions: their answers will not vary by class member, and it is difficult to see how these complex, expert-driven issues (particularly when combined with indisputably common questions such as the existence of collusion) would not predominate over any individual issues.[67]

Dr. Bernheim's regression model is sufficient to certify a class: courts routinely rely on economic analyses like Dr. Bernheim's in certifying price-fixing class actions. *E.g.*, *Dial Corp.*, 314 F.R.D. at 115-18; *In re Air Cargo*, 2014 WL 7882100, at *66; *E-Books*, 2014 WL 1282293, at *14; *Allen*, 2012 WL 5844871, at *11-12. Even if the jury were to reject Dr. Bernheim's model, it would still be proper for the court to certify the class based on this model now: the validity or invalidity of Dr. Bernheim's suppression analysis is a common question that can be

---

[67]    Dr. Willig claims that various analyses related to suppression require "individualized inquiry." Dr. Willig's use of "individualized," however, is inconsistent with Rule 23. For example, Dr. Willig claims that it requires "thousands of separate, individualized inquiries" to analyze "whether a particular bank made a low LIBOR submission for a particular tenor on a particular day." Willig Rpt. ¶ 16. This is not an "individualized" issue in a Rule 23 sense – though its answer may vary by Defendant or tenor or day, it is an indisputably common issue because it deals with the Defendants' conduct; it does not vary depending on the identity of the plaintiff. *See LIBOR*, 2016 WL 2851333, at *4 (stating that an "individual question" exists only if "the plaintiffs will need to present evidence that varies from class member to class member") (quoting Joseph M. McLaughlin, *McLaughlin on Class Actions* § 5:23 (13th ed.)) (emphasis in original); *In re Air Cargo*, 2014 WL 7882100, at *38 (stating that evidence is "indisputably 'common'" because it focuses on the allegedly unlawful actions of the defendants, not the actions of individual plaintiffs"); Bernheim Reb. ¶¶ 270-294 (explaining how Dr. Willig's claimed "individualized" inquiries do not in fact vary by class member).

decided "in one stroke" for all members of the class at once. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[T]he issue at class certification is not which expert is the most credible, or the most accurate modeler, but rather have the plaintiffs demonstrated that there is a way to prove a class-wide measure of [impact] through generalized proof." *EPDM*, 256 F.R.D. at 100. Dr. Bernheim's model clearly meets this standard.

### c. **Impact**



see *In re Nexium Antitrust Lit.*, 777 F. 3d 9, 25 (1st Cir. 2015) (without deciding whether a class can include "more than a de minimis number of uninjured parties," certifying class because "it has not been shown that the class here includes more than a de minimis number of uninjured parties"); *see also Tyson Foods*, 136 S. Ct. at 1045 (affirming certification despite presence of 212 uninjured members, representing 6.33 percent of class).

Defendants' expert Dr. Janusz Ordover has argued that any harm to class members from receiving suppressed LIBOR payments must be offset by benefits to class members from

absorption (the idea that other parts of a LIBOR-based transaction, like the fixed leg of a swap or the price of a bond, would have absorbed the effects of LIBOR suppression) and netting (the idea that pay-LIBOR transactions must be netted against receive-LIBOR transactions). Ex 69 (Expert Report of Janusz A. Ordover, Ph. D. ("Ordover Rpt."), Apr. 3, 2017) passim. & ¶ 6. To be clear, OTC Plaintiffs disagree that these doctrines are relevant to this case, as decades of price-fixing caselaw had made clear. *E.g., New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1079 (2d Cir. 1988) ("Antitrust treble-damage actions should not be complicated by a need to trace the effects of the overcharge with respect to such matters as prices, costs, and the potentially different behavior of all the pertinent variables in the absence of the overcharges."); *E-Books*, 2014 WL 1282293, at *17 (rejecting defendants' argument that plaintiffs must reconstruct the but-for world in order to demonstrate common injury) (citing cases). In any event, these are issues easily addressed by formulaic methods common to the class, discussed *infra*, and also they deal only with the amount of *damages*, not the existence of an *impact*. The *impact* is demonstrated by a single overcharge (here, a suppressed LIBOR payment), whether or not it is offset. As the First Circuit recently held:

> Paying an overcharge caused by the alleged anticompetitive conduct on a single purchase suffices to show—as a legal and factual matter—impact or fact of damage. . . . [D]efendants incorrectly assume that if a class member offsets an overcharge through later savings attributable to the same or related transaction, there is no injury. But antitrust injury occurs the moment the purchaser incurs an overcharge, whether or not that injury is later offset. . . . Here, if a class member is overcharged, there is an injury, even if that class member suffers no damages.

*In re Nexium*, 777 F.3d at 27 (internal quotation marks omitted). Other courts agree.[68] The

---

[68]    *See Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 883 (10th Cir. 1997) ("[I]njury occurs and is complete when the defendant sells at the illegally high price . . . ."); *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2017 WL 679367, at *21 (N.D. Cal. Feb. 21, 2017) (citing *Nexium*, 777 F.3d at 27 ); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 317 (E.D. Mich. 2001) ("Defendants' by-pass and offsetting benefits arguments relate to the quantum of damages; not the fact of injury."); *In re Visa Check/Mastermoney Antitrust Litig.*, 192 F.R.D. 68, 82 (E.D.N.Y. 2000) ("The fact of injury, which is required as an element of the plaintiff's claim, should not be confused with the extent of injury (as reflected by the amount of damages) . . . .");

offsets defendants' expert Dr. Ordover raises are relevant, if at all, to calculations of individual *damages*, they do not negate the *injury* demonstrated by Dr. Bernheim's analysis.

### d.  <u>Damages</u>

As the court suggested at a recent hearing, "you are not required on the class cert motion to prove any particular amount of damages." Ex 70 (Hrg., Dec. 16, 2015) at 13:8-9. Even at the merits stage, an antitrust damages model "need not be exact," *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013), and because an antitrust defendant's own conduct makes precise measurement difficult, "it will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference," *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931); *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946) (stating that "the jury may make a just and reasonable estimate of the damage based on relevant data"); *Eastman Kodak Co. v. S. Photo Materials Co.*, 273 U.S. 359, 379 (1927).



see also *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 n.9 (1969) ("Zenith's burden of proving the fact of damage under § 4 of the Clayton Act is satisfied by its proof of some damage flowing from the unlawful conspiracy; inquiry beyond this minimum point goes only to the amount and not the fact of damage.").

[REDACTED]

[REDACTED]

Any need to calculate damages individually would not defeat certification. "*Comcast* did not rewrite the standards governing individualized damages considerations: it is still 'clear that individualized monetary claims belong in Rule 23(b)(3).'" *Sykes*, 780 F.3d at 88 (quoting *Wal-Mart*, 131 S. Ct. at 2558). And "the Second Circuit has recently reiterated that 'it [is] well-established . . . that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification under Rule 23(b)(3).'" *LIBOR*, 2016 WL 2851333, at *4 (quoting *Roach*, 778 F.3d at 405) (bracket in original). "Any individual question of this sort will need to be balanced against the common issues plaintiffs are able to demonstrate at the class certification stage." *Id.* Dr. Ordover's absorption and netting arguments, outlined *supra*, at most are relevant to individual calculations of damages that the Second Circuit has held do not defeat certification. [REDACTED]

[REDACTED]

Netting is even simpler to do on a class-wide basis. The answer to the LIBOR

suppression question—whether Dr. Bernheim's approach, Dr. Willig's approach, or something in between—would drive any calculation of offsetting benefits from pay-LIBOR transactions (if such calculation is required) just as it drives the injury and damages from receive-LIBOR transactions; the same but-for LIBOR would be used for both. It is a simple calculation to do the mirror-image of receive-LIBOR damages to calculate pay-LIBOR offsets, Bernheim Reb. 362-80, enabling damages to be "determined objectively through mechanical calculation,'" *Amaranth*, 269 F.R.D. at 381.[69]

### 2. *Class-wide evidence of state-law claims predominates*

OTC Plaintiffs' claims of implied covenant of good faith and fair dealing and unjust enrichment also present common questions that predominate.[70] The evidence that establishes defendants' antitrust violation will likewise satisfy the elements of the state-law claims. All class members had LIBOR-based contracts with at least one defendant, defendants acted improperly by manipulating LIBOR, and they benefited themselves and injured class members by reducing LIBOR payments to them. As the court has ruled, OTC Plaintiffs may prove it "by focusing on

---

[69]    In *LIBOR VI*, the court stated that "plaintiffs may ultimately recover only to the extent of their net injury, given that plaintiffs may well have benefited from LIBOR suppression in the same transaction or in a different transaction." *LIBOR VI*, 2016 WL 7378980, at *18 (citing *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 676 F. Supp. 486, 489 (S.D.N.Y. 1987)). As noted in the text above, OTC Plaintiffs respectfully disagree with the legal conclusion; but nonetheless the conclusion applied to recovery (i.e., damages), not the element of antitrust impact. *See, e.g.*, *E-Books*, 2014 WL 1282293, at *17 (holding that "an antitrust defendant may not alter this well-settled measurement of damages by speculatively raising potential offsets, even when those offsets are directly related to the goods at issue"); *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 684 (N.D. Ga. 2016) ("As a result of the anti-competitive nature of price-fixing, courts have refused to allow defendants accused of such antitrust violations to assert claims that their unlawful conduct in some way benefitted the plaintiffs."); *In re Airline Ticket Comm'n Antitrust Litig.*, 918 F. Supp. 283, 286 (D. Minn. 1996) (stating that "mitigation and offset generally do not affect the ultimate measure of damages" in "a horizontal price-fixing case") (citing *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 745-46 (1977)); *see also Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-cv-7126 (JMF), 2017 WL 404500, at *1-2 (S.D.N.Y. Jan. 27, 2017) ("At most, . . . netting calls for offsetting transactions of the same type.") (citing *Minpeco*, 676 F. Supp. at 488-90, and *LIBOR V*, 2015 WL 6243526, at *30 n.21 (S.D.N.Y. Oct. 20, 2015))

[70]    "To state a claim for unjust enrichment, a plaintiff must allege that '(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *LIBOR II*, 962 F. Supp. 2d at 629 (quoting *LIBOR I*, 935 F. Supp. 2d at 737). The implied covenant claim alleges that the banks' contracts with class members included a "promise by defendants not to manipulate LIBOR to their benefit and plaintiffs' detriment." *Id*. at 633.

the alleged manipulation of LIBOR . . . and do not need to inquire as to the state of mind of the individuals issuing any specific instrument." *LIBOR*, 2016 WL 2851333, at *3 (citing *LIBOR III*, 27 F. Supp. 3d at 483); *see also, e.g., S. Foodservice*, 729 F.3d at 125 ("We agree with the district court that the question of breach with regard to plaintiffs' contract claims will focus predominantly on common evidence to determine whether, in fact, USF used controlled middlemen to inflate invoice prices and whether such a practice departs from prevailing commercial standards of fair dealing so as to constitute a breach."); *Ge Dandong v. Pinnacle Performance Ltd.*, No. 10-cv-8086, 2013 WL 5658790, at *12 (S.D.N.Y. Oct. 17, 2013) (holding "common issues predominate with respect to plaintiffs' implied covenant claims" where plaintiffs alleged defendant bank used "unilateral control" over assets and "ratings arbitrage" to deprive plaintiffs of benefits under contract, and citing cases).[71]

## D.   CLASS TREATMENT IS A SUPERIOR METHOD TO RESOLVE THE DISPUTES

Certification under Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy". Fed. R. Civ. P. 23(b)(3). A case satisfies the superiority test if "'the class device will achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of similar claims.'" *Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345 (NRB), 2016 WL 3004511, at *3 (S.D.N.Y. May 20, 2016) (quoting *Gonqueh v. Leros Point to Point, Inc.*, No. 14-CV-5883 (GHW), 2015 WL 9256932, at *3 (S.D.N.Y. Sept. 2, 2015)).

## E.   THE COURT CAN ASCERTAIN CLASS MEMBERS OBJECTIVELY

---

[71]      *See also Keilholtz,* 268 F.R.D. at 341, 343 (certifying unjust enrichment claim because "[c]ommon to all class members and provable on a class-wide basis is whether Defendants unjustly profited" and the common issues predominated).

"Rule 23 includes an implied requirement of ascertainability, 'the touchstone of [which] is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *LIBOR*, 2016 WL 2851333, at *2 (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015)). Dr. Bernheim has described how the court may objectively determine the identity of each class member. Bernheim Rpt. ¶¶ 44-50. The ascertainability requirement presents no barrier to certification.

## CONCLUSION

OTC Plaintiffs can meet their burden of proving the great majority of class claims as to all class members with common, class-wide proof. Issues of liability and damages—including Panel Banks' agreement to suppress LIBOR, their success in suppressing it, the impact of suppression on class members, and computation of LIBOR underpayments to class members—all favor a finding that common issues predominate. The possibility of a need for individual damages calculations during claims administration does not overcome the far greater weight of the common issues. The court should certify the case as a class action.[72]

Dated: May 9, 2017

By:

| /s/ Michael D. Hausfeld | /s/ William Christopher Carmody |
|---|---|
| By: | William Christopher Carmody (WC8478) |
| Michael D. Hausfeld | Arun Subramanian (AS2096) |
| Hilary Scherrer | Seth Ard (SA1817) |
| Nathaniel C. Giddings | Geng Chen (GC2733) |
| HAUSFELD LLP | SUSMAN GODFREY L.L.P. |
| 1700 St. NW, Suite 650 | 1301 Avenue of the Americas, 32nd Fl. |

---

[72] "A court may also certify a class with respect to a particular issue under Rule 23(c)(4) where certification will materially advance disposition of the litigation." *Mazzanti v. Gen. Elec. Co.*, No. 3:13cv1799 (WWE), 2017 WL 923905, at *3 (D. Ct. Mar. 7, 2017) (citing *Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 169 (S.D.N.Y. 2003)). "For a particular issue to be certified pursuant to Rule 23(c)(4), the requirements of Rules 23(a) and (b) must be satisfied only with respect to those issues." *Id.* (citing *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 239 (S.D.N.Y. 2010)). In the unlikely event the court declines to certify the case as a class action regarding all issues, OTC Plaintiffs respectfully request certification as to common questions regarding liability and damages.

Washington, D.C. 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email: mhausfeld@hausfeld.com
Email: hscherrer@hausfeld.com
Email: ngiddings@hausfeld.com

Gary I. Smith
HAUSFELD LLP
325 Chestnut Street
Suite 900
Philadelphia, PA 19106
267-702-2318 Direct
215-985-3270 Main
215-985-3271 Fax
GSmith@hausfeld.com

Counsel for Baltimore, Yale, New Britain,
TCEH, Jennie Stuart, and SEIU and Interim
Lead Counsel for the Proposed OTC
Plaintiff Class

New York, New York 10019
Telephone: 212-336-3330
Facsimile: 212-336-8340
bcarmody@susmangodfrey.com
asubramanian@susmangodfrey.com
sard@susmangodfrey.com
gchen@susmangodfrey.com

Marc M. Seltzer (CA State Bar No. 54534)
Glenn C. Bridgman (CA State Bar No.
270891)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
gbridgman@susmangodfrey.com

Drew D. Hansen (WA State Bar No.:
30467)
Matthew R. Berry (WA State Bar No.:
37364)
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
Email: dhansen@susmangodfrey.com
mberry@susmangodfrey.com

Barry Barnett (BB1984)
Karen A. Oshman (TX State Bar No.:
15335800)
Michael C. Kelso (TX State Bar No.:
24092617)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street
Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
bbarnett@susmangodfrey.com
koshman@susmangodfrey.com
mkelso@susmangodfrey.com

Counsel for Baltimore, Yale, New Britain,

_____              TCEH, Jennie Stuart, and SEIU and Interim
                                             Lead Counsel for the Proposed OTC
                                             Plaintiff Class