**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | Master File No. 11-md-2262 (NRB) |
| THIS DOCUMENT RELATES TO: EXCHANGE-BASED PLAINTIFF ACTION | |
| METZLER INVESTMENT GmbH, *et al.*<br><br>                    Plaintiffs,<br><br>          v.<br><br>CREDIT SUISSE GROUP AG, et al.,<br><br>                    Defendants. | No. 11-cv-2613 (NRB) |

**EXCHANGE-BASED PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO RABOBANK'S MOTION TO EXCLUDE THE PROPOSED <u>EXPERT OPINIONS OF ERIC J. MILLER</u>**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .......................................................................................................................... 5

    I.      Legal Standards ........................................................................................................ 5

    II.     Mr. Miller's Opinions Are Admissible .................................................................... 6

          A.     Mr. Miller Possesses Extensive Experience With Class Action
                 Notice and Administration, Including in Cases Involving
                 Exchange-Traded Commodity Futures ....................................................... 6

          B.     Several of Mr. Miller's Opinions Are Not Challenged............................. 7

          C.     Rabobank's Challenges Are Largely Premised on a Mistaken
                 Understanding of Rule 23 ........................................................................... 9

          D.     Mr. Miller's Methodology for Identifying Sources From Whom
                 Class Members Without Trading Records Contain Obtain Records
                 Is Reliable ................................................................................................. 12

          E.     Mr. Miller's Opinion that A.B. Data Will Be Able to Perform
                 Damages Calculations In Accordance with Future Court
                 Instructions Is Reliable ............................................................................. 17

CONCLUSION ..................................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Amaranth Natural Gas Commodities Litigation*,
   269 F.R.D. 366 (S.D.N.Y. 2010) .........................................................11

*Bacardi & Co. v. N.Y. Lighter Co.*,
   No. 97 Civ. 7140, 2000 WL 298915 (E.D.N.Y. Mar. 15, 2000) .............................6

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) .........................................................10

*Clarke v. LR Sys.*,
   219 F. Supp. 2d 323 (E.D.N.Y. 2002) ...................................................5

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993).............................................................. *passim*

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................12

*Kohen v. Pacific Inv. Mgmt. Co. LLC*,
   244 F.R.D. 469 (N.D. Ill. 2007).......................................................10

*In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR IV")*,
   No. 11 MDL 2262, 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) .........................17

*In re Lidoderm Antitrust Litig.*,
   No. 14 Md. 02521, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017)..........................10

*Lippe v. Bairnco Corp.*,
   99 F. App'x 274 (2d Cir. 2004) .......................................................12

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
   32 F. Supp. 3d 453 (S.D.N.Y. 2014).....................................................6

*Malletier v. Dooney & Bourke, Inc.*,
   525 F. Supp. 2d 558 (S.D.N.Y. 2007)....................................................5

*MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*,
   No. 09 Civ. 3255, 2012 WL 2568972 (S.D.N.Y. July 3, 2012) .............................5

*In re Natural Gas Commodities Litig.*,
   231 F.R.D. 171 (S.D.N.Y. 2005) ...............................................10, 11, 18

*Neale v. Volvo Cars of N. Am., LLC*,
 No. 10 Civ. 4407, 2017 WL 1217145 (D.N.J. Apr. 3, 2017) ....................................................3

*NYSE Specialists Sec. Litig.*,
 260 F.R.D. 55 (S.D.N.Y. 2009) ...........................................................................................6

*In re Petrobras Sec.*,
 No. 16 Civ. 1914, 2017 WL 2883874 (2d Cir. July 7, 2017) ...............................................3, 9

*Rowe Ent., Inc. v. William Morris Agency, Inc.*,
 98 Civ 8272 (RPP), 2003 WL 22124991 (S.D.N.Y. 2003) .................................................12

*In re Scotts EZ Seed Litig.*,
 304 F.R.D. 397 (S.D.N.Y. 2015) ..........................................................................................5

*Sonterra Capital Master Fund Ltd. v. UBS AG*,
 No. 15 Civ. 05844 (GBD) (S.D.N.Y.) ...................................................................................7

*In re Sumitomo Copper Litig.*,
 182 F.R.D. 85 (S.D.N.Y. 1998) ..........................................................................................11

*Town of Southampton v. Suffolk Cnty.*,
 367 F. App'x 234 (2d Cir. 2010) ..........................................................................................5

OTHER AUTHORITIES

Fed. R. Civ. P. 23 ............................................................................................ *passim*

Fed. R. Evid. 701 ...........................................................................................................6

Fed. R. Evid. 702 ..................................................................................................2, 4, 5, 6

Exchange-Based Plaintiffs ("Plaintiffs") respectfully submit this memorandum of law in opposition to Defendant Coöperatieve Rabobank U.A. ("Rabobank")'s Motion to Exclude the Proposed Expert Opinions of Eric J. Miller.  ECF No. 2054.

## PRELIMINARY STATEMENT

In its motion, Rabobank does not dispute Mr. Miller's credentials and experience in class action notice and claims administration or Mr. Miller's representation about how the notice and claims administration is typically performed in suits involving exchange-based commodity futures.  Instead, relying on an erroneous legal standard that is impossible to satisfy, Rabobank demands perfection in noticing and processing claims and then argues that, because perfection likely will not be obtained in this case (nor any other case), Mr. Miller's opinions should be excluded.  Rabobank's arguments are not a legitimate basis for excluding Mr. Miller's opinions.

\*          \*          \*

Plaintiffs filed the declaration of Eric J. Miller in support of their motion to certify their proposed class pursuant to Rule 23 of the Federal Rules of Civil Procedure, ECF No. 1890.  *See* Ex. 32 to ECF No. 1885 ("Miller Decl.") (Ex. 13).[1]  Mr. Miller's opinions primarily address (i) the process that may be used in this case for providing notice to potential class members; (ii) sources of trading records and other information that may be used to determine whether claimants have valid claims and to calculate claimants' damages; and (iii) claims administrator A.B. Data, Ltd.'s ("A.B. Data") ability to efficiently collect, analyze, and process information submitted by

---

[1] While originally designated a fact, and not an expert, declaration, after Rabobank complained to the Court that Mr. Miller's declaration should be treated as an expert declaration, Plaintiffs agreed to do so since—as explained herein—Mr. Miller is qualified as an expert and his statements meet all the requirements of the Federal Rules.  *See* ECF No. 1934 (Defendants' request that Mr. Miller's declaration be stricken as an undeclared expert report); ECF No. 1940 (Plaintiffs' letter explaining that Mr. Miller's declaration was intended as a factual submission, but offering to produce Mr. Miller for a deposition and follow all other formalities of Rule 26(a)(2)(B)).  That being said, as Mr. Miller's declaration was not originally intended as an expert declaration, it does not contain many of the formalities normally contained in an expert declaration.  This should not be held against Mr. Miller or his declaration.

claimants and to perform damages calculations (including potentially complex netting calculations) based on a future court-approved plan of allocation.[2]

Rabobank seeks to exclude Mr. Miller's opinions under Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Mr. Miller's opinions concern Plaintiffs' claims against every non-dismissed Defendant during the Class Period. Nevertheless, Rabobank's motion was not joined by any other Defendant and is directed solely at Plaintiffs' claims against Rabobank during Period 0.[3] Rabobank also leaves unchallenged Mr. Miller's opinions that: (1) A.B. Data is capable of efficiently reviewing and processing trading data submitted to it in this case (including data submitted in hard copy); (2) many class members can be identified and reached through targeted mailings; and (3) various print and electronic means can be used effectively to reach class members who have not been reached through targeted mailings.

Nevertheless, in seeking to partially exclude Mr. Miller's opinions, Rabobank improperly discounts Mr. Miller's extensive, decades-long experience as a class action notice and claims administrator, including with commodities, antitrust, and securities cases. Rabobank does this despite the fact that many of the cases that Mr. Miller and his employer, A.B. Data, have worked on involve classes with hundreds or thousands of class members and have required collecting, processing, and analyzing records of trades in financial instruments (including exchange-traded commodity futures) and performing complex damages calculations pursuant to court-approved plans of allocation. Indeed, in other class cases, courts have found expert opinions from

---

[2] All references to "Ex." are to exhibits to the Declaration of Thomas W. Elrod filed contemporaneously herewith. All references to "Miller Dep." are to the Transcript of Videotaped Deposition of Eric Miller, June 21, 2017 (Ex. 14). All references to "Rabobank Br." are to Rabobank's Memorandum of Law in Support of Its Motion to Exclude the Proposed Expert Opinions of Eric J. Miller, ECF No. 2054.

[3] Consequently, Mr. Miller's declaration as it concerns non-dismissed Defendants Bank of America Corporation; Bank of America, N.A; JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A.; and UBS AG is unchallenged.

experienced claims administrators concerning issues similar to those addressed here by Mr. Miller to be "reliable and helpful" in deciding class certification and have ruled that disputes concerning whether such opinions are "ultimately" correct involve "determination[s] that go[] to the weight that the [c]ourt may give [the] opinion, as opposed to the issue of whether [that] opinion is admissible." *Neale v. Volvo Cars of N. Am., LLC*, No. 10 Civ. 4407, 2017 WL 1217145, at *4 (D.N.J. Apr. 3, 2017) (denying defendant's motion to exclude an expert experienced in class action administration).

Moreover, the lion's share of Rabobank's attacks are premised on opinions that Mr. Miller does not offer and interpretations of Rule 23 that are erroneous. The Second Circuit, joining most other courts, has rejected "a freestanding administrative feasibility requirement" at class certification (whether called "ascertainability" or by another name), and made clear that Rule 23's implied ascertainability requirement concerns only whether a class definition has been objectively defined (about which Mr. Miller does not opine). *In re Petrobras Sec.*, No. 16 Civ. 1914, 2017 WL 2883874, at *8 (2d Cir. July 7, 2017). Despite this, Rabobank frames its motion in terms of ascertainability. *See* Rabobank Br. at 1, 3, 8, 10, 11 n.20, 12.

Due to this misapprehension of the standards governing class certification, Rabobank improperly challenges Mr. Miller's opinions on the ground that he is not able to ensure that every class member will ultimately be able to obtain records reflecting its trades during Period 0. In particular, Rabobank argues that Mr. Miller's opinions must be excluded because: (1) *some* class members will lack records of their trades in Eurodollar futures and options; (2) *some* of the class members who do not have such records will be unable to obtain them from some Futures Commission Merchants ("FCMs") that have gone out of business or have not preserved these records; and (3) those class members who do not have trading records in their possession and have

not been able to obtain them from FCMs *may* not be able to obtain them from the CME Group (which ran the relevant Eurodollar futures and options exchange, and cleared the trades during Period 0).  But Mr. Miller does not opine that every class member will ultimately be able to obtain its trading records.  To the contrary, Mr. Miller testified that, although there are multiple available sources of trading records, based on his experience administering hundreds of class actions (including numerous cases involving financial instruments), it is typical in such class cases that some portion of the class will lack the records necessary to substantiate their claims.  Even so, in these cases courts certified classes and approved the administration of claims.  Mr. Miller's testimony is especially useful here because it demonstrates that, under Rabobank's impossible standard for class certification, few class actions (and none involving securities or commodity futures) could ever be certified.

Rabobank's hasty, final challenge is to Mr. Miller's opinion, based on his extensive experience in cases involving commodities and financial products, that A.B Data will be able to perform complex damages calculations (including netting), if required by the court.  Mr. Miller has stated that a plan of allocation is necessary before he or A.B. Data can state with particularity what damages or netting formula will be applied here.  Miller Decl. ¶ 24; Miller Dep. 223:2-11.  Despite this, Rabobank faults Mr. Miller for lacking the clairvoyance necessary to anticipate how this Court will rule on multiple disputed issues concerning the calculation of damages.  Clairvoyance is not a requirement for a reliable expert opinion consistent with Rule 702 and *Daubert*.  In contrast, Mr. Miller's experience developing and implementing plans of allocation in complex, class action litigation, which routinely receive court approval, provides a reliable basis for his opinions offered in support of Plaintiffs' class certification motion.

In sum, Rabobank has failed to show that any portion of Mr. Miller's opinion should be excluded.

<strong><u>ARGUMENT</u></strong>

## I.      Legal Standards

In deciding a *Daubert* motion, "courts are reminded that the Federal Rules of Evidence favor the admissibility of expert testimony, and their role as gatekeeper is not intended to serve as a replacement for the adversary system." *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 562 (S.D.N.Y. 2007) (quoting *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993)). Rather, under Federal Rule of Evidence 702 ("Rule 702"), a district court's role is limited to "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. Indeed, so long as "an expert's conclusion is drawn from a reliable methodology . . . the correctness of that conclusion [is] an issue for the finder of fact." *Malletier*, 525 F. Supp. 2d at 562 (internal citation omitted).[4]

The "Second Circuit's standard for admissibility of expert testimony is especially broad." *Clarke v. LR Sys.*, 219 F. Supp. 2d 323, 332 (E.D.N.Y. 2002); *see also Town of Southampton v. Suffolk Cnty.*, 367 F. App'x 234, 235 (2d Cir. 2010). Indeed, in the Second Circuit, only "serious flaws" in an expert's reasoning or methodology will warrant exclusion. *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, No. 09 Civ. 3255, 2012 WL 2568972, at *16 (S.D.N.Y. July 3, 2012). "Although expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith, or to be in essence an apples and oranges comparison, other contentions that the assumptions are unfounded

---

[4] The Second Circuit "has not yet decided whether *Daubert* motions are appropriate at the class certification stage," where expert opinions are not presented to a jury. *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 472 n.8 (S.D.N.Y. 2015).

5

go to the weight, not the admissibility, of the testimony." *Bacardi & Co. v. N.Y. Lighter Co.*, No. 97 Civ. 7140, 2000 WL 298915, at *2 (E.D.N.Y. Mar. 15, 2000); *see also In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 32 F. Supp. 3d 453, 461 (S.D.N.Y. 2014) ("[T]rial courts must consider only the admissibility of expert evidence rather than its weight or credibility.").  Accordingly, the best remedy for attacking expert testimony is cross-examination and contrary evidence, not exclusion.  *See Daubert*, 509 U.S. at 596.  This standard reflects the accepted principle that rejection of expert testimony is "the exception rather than the rule."  Fed. R. Evid. 702, Advisory Committee Notes; *see also NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 65 (S.D.N.Y. 2009) (same).[5]

## II.       Mr. Miller's Opinions Are Admissible

### A.       Mr. Miller Possesses Extensive Experience With Class Action Notice and Administration, Including in Cases Involving Exchange-Traded Commodity Futures

Mr. Miller has extensive experience and expertise in class action administration.  Mr. Miller has worked in class action administration for more than 17 years, first at Rust Consulting, Inc. and then, for the past four-and-a-half years, at A.B. Data, where he is currently Vice President of Case Management.  Resume of Eric J. Miller (Ex. 15).  During that time, Mr. Miller has gained expertise in multiple areas of the notice and claims administration process, including legal notification, claims processing, plan of allocation implementation, and distribution of settlement funds.  *Id.*  At Rust and A.B. Data, Mr. Miller had administered or supervised the administration of class notice and claims distribution in hundreds of cases, including many of the largest and most

---

[5] Mr. Miller's opinions concerning how he and A.B. Data intend to administer claims in this case (a task that they have been retained to perform) would be admissible as lay testimony under Federal Rule of Evidence 701 to the extent that it is determined that they are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701(c).

complex securities, antitrust, and commodity future cases. *Id.*; *see also* Resume of A.B. Data (Ex. 16).

In fact, Mr. Miller is among the most experienced in his industry at notice and claims administration in cases concerning exchange-traded commodity futures. In addition to the present case, the commodity futures cases that Mr. Miller has worked on include: *Sonterra Capital Master Fund Ltd. v. UBS AG*, No. 15 Civ. 05844 (GBD) (S.D.N.Y.) and *Laydon v. Mizuho Bank, Ltd.*, No. 12 Civ. 03419(GBD) (S.D.N.Y.) ("Euroyen-Based Derivatives" Cases); *In Re: Crude Oil Commodity Futures Litigation*, No. 11 Civ. 03600 (KBF) (S.D.N.Y.); *In Re: Rough Rice Commodity Litigation*, No. 11 Civ. 00618 (N.D. Ill.); *In Re: Platinum & Palladium Commodities Litigation (Futures Action)*, No. 10 Civ. 03617-WHP (S.D.N.Y.); *In Re: Optiver Commodities Litigation*, No. 08 Civ. 06560 (LAP) (S.D.N.Y.); *In Re: Amaranth Natural Gas Commodities Litigation*, No. 07 Civ. 06377 (SAS) (S.D.N.Y.); and *Josef A. Kohen, et al. v. Pac. Invest. Mgmt. Co. LLC, et al. ("PIMCO")*, No. 05 Civ. 04681 (N.D. Ill.). Miller Decl. ¶ 3; see also (Exs. 17-24). These comprise many, if not most, of the Commodity Exchange Act ("CEA") class action settlements nationally over the last seventeen years. In each of these cases, notice plans were approved as adequate pursuant to Rule 23. Miller Decl. ¶ 3 n.2 (Exs. 25-32). Moreover, Mr. Miller's plans of administration and distribution have been reviewed and repeatedly approved by federal courts, including in CEA cases. (Exs. 24, 30-34).

### B. Several of Mr. Miller's Opinions Are Not Challenged

Despite seeking to exclude portions of Mr. Miller's declaration, Rabobank does not challenge several aspects of the opinions reflected in Mr. Miller's declaration or the facts on which those opinions are based.

*First*, Rabobank does not seek to exclude Mr. Miller's opinion that A.B. Data is capable of efficiently reviewing and processing trading data submitted to it in this case—including data

submitted in hard copy.  Mr. Miller's view, which Rabobank does not challenge, is based on the fact that, "[i]n prior cases involving exchange-traded futures and options on futures products," he and A.B. Data have "routinely and successfully processed large volumes of forms and trading records received in hard copy."  Miller Decl. ¶ 21.  Specifically, Rabobank does not dispute that A.B. data is capable of processing such records using a team with "specialized training associated with [exchange-traded futures and opinions on futures products] to make processing hard copy claims cost effective and expeditious."  *Id*.  Nor does Rabobank dispute that "A.B. Data's proprietary Claims Engine, created by expert software engineers in collaboration with the Claimant Services Department, offers an extremely flexible workflow engine that allows high-speed claims imaging and processing without compromising quality."  *Id*. ¶ 20.  A.B. Data's capabilities include "paper and electronic claims processing, with state of the art optical character recognition ('OCR') technology to convert claims and correspondence into electronically searchable databases."  *Id*. ¶ 19.

*Second*, Rabobank does not generally challenge Mr. Miller's opinion that, based on his experience, many class members can be identified through mailing information to "targeted lists of potential class members," and that doing so "minimizes the need to perform additional outreach to potential class members, thus reducing the cost of administering a settlement."  Miller Decl. ¶ 5. ███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████ .

*Third*, Rabobank does not attempt to exclude Mr. Miller's opinion that A.B. Data can "reach additional class members" through various print and electronic means, including through "ads in financial newspapers, financial magazines, and a news release," as well as "'banner' ads on financial websites and E-newsletters, . . . email 'blasts' to subscribers of financial newsletters" and a "case-specific website." *Id.* ¶¶ 12, 13.

### C.    Rabobank's Challenges Are Largely Premised on an Erroneous Understanding of Rule 23

Rabobank's attacks on Mr. Miller are not generally based on Mr. Miller's experience and qualifications, nor do they undermine the substance of Mr. Miller's opinions.  Instead, the thrust of Rabobank's brief is premised on its own misconceptions of the law governing class certification. Accordingly, Rabobank's challenges miss the mark.

The Second Circuit has made clear that "a freestanding administrative feasibility requirement is neither compelled by precedent nor consistent with Rule 23." *In re Petrobras Sec.*, No. 16 Civ. 1914, 2017 WL 2883874, at *8 (2d Cir. July 7, 2017); *see also id.* at *9 ("declin[ing] to adopt a heightened ascertainability theory that requires a showing of administrative feasibility at the class certification stage" and holding that "creating one would upset the careful balance of competing interests codified in the explicit requirements of Rule 23").  "The ascertainability doctrine that governs in this Circuit requires *only* that a class be defined using objective criteria that establish a membership with definite boundaries." *Id.* (emphasis added).  Although Plaintiffs'

proposed class plainly satisfies the requirement that the class be defined objectively, Mr. Miller's report does not purport to address this requirement.[6]

Despite this, in its *Daubert* brief, Rabobank (i) improperly and repeatedly refers to the availability of data necessary to "ascertain" class members—a term that Mr. Miller never uses in his declaration—and (ii) based on its apparent misconception of Rule 23, faults Mr. Miller for failing to show at the class certification stage that *every* class member will have trading data necessary to prove up its claims in this case.   Rabobank Br. at 1, 3, 8, 10, 11 n.20, 12.   Based on his extensive experience administering claims in securities and commodities cases in which trading records are used to substantiate class members' claims, Mr. Miller details various sources from which class members may (and typically are) able to obtain trading records.   But Mr. Miller does not claim that every class member will ultimately be able to obtain its trading records.   Nor does Rule 23 require him or Plaintiffs to do so.   *See In re Lidoderm Antitrust Litig.*, No. 14 Md. 02521, 2017 WL 679367, at *25 (N.D. Cal. Feb. 21, 2017) ("that consumers may not have documentation to support their claims of injury or damages does not mean a class of consumers cannot be certified"); *see also Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1129 (9th Cir. 2017) ("Justifying an administrative feasibility requirement as a means of ensuring perfect recovery at the expense of any recovery would undermine the very purpose of Rule 23(b)(3).").

Mr. Miller supports his opinions, in part, based on his experience with the claims administration process in prior class cases involving exchange-traded commodity futures,

---

[6] The distinction between the "heightened" ascertainability standard *rejected* by the Second Circuit and Rule 23(b)(3)(D)'s requirement that court's consider "the likely difficulties in managing a class action" is not academic. "Whereas ascertainability is an absolute standard, manageability is a component of the superiority analysis, which is explicitly comparative in nature: courts must ask whether 'a class action is *superior to other available methods* for fairly and efficiently adjudicating the controversy.'" *Id*. at *11 (quoting Fed. R. Civ. P. 23(b)(3) (emphasis added)). In challenging portions of Mr. Miller's declaration, Rabobank does not purport to argue that more trading data would be available—or that the available data could be analyzed more efficiently—if Plaintiffs' class action suit were instead brought in the form of individual actions.

including *In re Amaranth Natural Gas Commodities Litigation* and *PIMCO*.  In *In re Amaranth Natural Gas Commodities Litigation*, 269 F.R.D. 366, 381, 386 (S.D.N.Y. 2010), for instance, the court certified a class of commodity futures traders—concluding, among other things, that the proposed class was both ascertainable and manageable.[7]  This was despite the fact that, inevitably, some traders would be unable to obtain trading records to substantiate their trades.  *See Amaranth*, Aff. of Jason Rabe ¶ 23 and Ex. E (reflecting that, in addition to the claims that class members never submitted due to lack of documentation, certain submitted claims were rejected for lack of trading documentation) (Ex. 37); *see also PIMCO*, Aff. Eric J. Miller ¶¶ 9,12, 16 (noting that "certain Claims were missing information and/or documentation, in whole or in part, that was required to confirm the validity of such Claim and necessary to calculate the Adjusted Allowed Claim" and that certain claims were ultimately deemed ineligible) (Ex. 22).

Without offering much explanation, Rabobank implies that Mr. Miller's and A.B. Data's extensive experience administering distributions in the context of settlements is somehow inapplicable here because this case involves a disputed class certification motion.  Rabobank Br. at 1, 3, 8, 12.  Rabobank's argument is a red herring.  In *Amaranth* and other commodity futures cases, courts certified classes despite defendants' vigorous opposition.  *See, e.g.*, *Amaranth*, 269 F.R.D. at 366; *In re Natural Gas Commodities Litig.*, 231 F.R.D. 171 (S.D.N.Y. 2005); *In re Sumitomo Copper Litig.*, 182 F.R.D. 85 (S.D.N.Y. 1998).  The fact that those cases subsequently settled does not alter the fact that the courts there determined prior to settlement that the proposed classes were both ascertainable and manageable.  Nor does Rabobank provide any reasons why

---

[7] *See also Kohen v. Pacific Inv. Mgmt. Co. LLC*, 244 F.R.D. 469, 480-81 (N.D. Ill. 2007); *In re Natural Gas Commodities Litig.*, 231 F.R.D. 171, 184-85 (S.D.N.Y. 2005) (finding superiority where the class was likely to include thousands of members and the high cost of discovery and the application of expert methodologies would be prohibitively expensive "for individual plaintiffs to shoulder alone"); *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 97 (S.D.N.Y. 1998) (finding superiority where the class was likely to include at least 1,500 individuals, but many of whom may not have been damaged to a degree worthy of instituting an individual claim).

the data collection and analysis process would be materially different in a suit where claims are administered following a trial in which plaintiffs prevail instead of a settlement.   A claims administrator would use the same notice procedure, collect and analyze the same types of data from the same sources, and would perform the same damages calculations.   Moreover, the certification of a settlement class still requires that Rule 23(b)(3)'s requirements be satisfied.  *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004) ("Whether certified for settlement or litigation purposes, a class must meet each of the four requirements in Rule 23(a) and at least one of the three requirements in Rule 23(b).").

### D.    Mr. Miller's Methodology for Identifying Sources From Whom Class Members Without Trading Records Can Obtain Records Is Reliable

Rabobank first criticizes Mr. Miller for opining "that A.B. Data would gather the names and addresses of all 'Large Traders' that cleared trades in Eurodollar Futures or Options on Eurodollar Futures contracts . . . during the Class Period" and use this information to provide notice to large traders.  Miller Decl. ¶ 6; *see also* Rabobank Br. at 9-10.  Rabobank does not dispute that Mr. Miller has successfully used large trader lists in prior cases as one means for providing notice to class members.  Miller Dep. ¶ 43:21-23.  ██████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██ ██████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[8] ██████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████

2008 and 2010 were also likely large traders between 2005 and 2007.  Additionally, as Rabobank acknowledges, the CME has advised  Plaintiffs' counsel that additional Large Trader Reports covering Period 0 may have been "maintained  on historic regulatory systems" and that the "CME is making a good faith effort to put these historical regulatory systems back online to determine whether or not [these] documents exist."  (Ex. 38 (Letter from Khadija Waugh, CME Group, to Exchange-Based Pls.' Counsel (Jan. 8, 2016), at 2)); *see also* Rabobank Br. at 9.

Even in the event that the claims administrator is unable to send targeted mailings to *some* large traders during Period 0, Rabobank does not challenge Mr. Miller's opinion that these additional class members will receive notice through various print and electronic means, including "ads in financial newspapers, financial magazines, and a news release," as well as "'banner' ads on financial websites and E-newsletters, and email 'blasts' to subscribers of financial newsletters." Miller Decl. ¶ 12.  These notice methods are especially likely to be effective in cases like this one where the amount of money at issue is large and there is substantial media interest and exposure.

Rabobank also erroneously faults Mr. Miller for his opinion, based on his experience working on commodity futures cases, that Large Traders "typically account for the vast majority of volume of trading."  Miller Decl. ¶ 6; *see also* Rabobank Br. at 9-10.  But Mr. Miller's opinion is consistent with the CFTC's description of "large traders" as including individuals and entities that in aggregate represent "70 to 90 percent of the total open interest in any given market."[9] Additionally, it is unclear what Rabobank means when it states that, because Plaintiffs have not obtained customer trading records from their FCM subpoenas, "there is no reason to believe that Large Trader Reports for Period 0 would lead to information that would allow Mr. Miller to

---

[9] *See* "Explanatory Notes", *available at*:  http://www.cftc.gov/MarketReports/CommitmentsofTraders/Explanatory Notes/index.htm (last visited July 21, 2017).

ascertain putative class members." Rabobank Br. at 10.  The purpose of providing notice to large traders of Eurodollar futures and options is that many may be class members and, accordingly, are likely to have their own trading records.

*Second*, Rabobank challenges Mr. Miller's opinion that clearing FCMs can be notified, and pass notice on to their customers, as "entirely speculative," purportedly on the basis that some FCMs may no longer be in business or may not have preserved customer records going back to the beginning of the class period.  Rabobank Br. at 10.  ███████████████████

████████████████████████████████████████████████

███████████████████████████████ ███████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████ █

Moreover, Mr. Miller testified that even some bankrupt FCMs are able to provide customer records through their trustees or the purchasers of their clearing businesses or other assets.  *See* Miller Dep 164:13-164:16.  Rabobank points out, for instance, that MF Global, an FCM for trades in Eurodollar futures and options during the class period, went bankrupt during the class period. Rabobank Br. at 11.  ████████████████████████████████

████████████████████████████████████████████████

███████████████████

---

[10] Rabobank points out that one of seven named Plaintiffs in this case lacked any trading records from Period 0. Rabobank Br. at 12 n.21.  But this hardly sufficient evidence to negate the likelihood that many class members do have trading records from Period 0.

[11] As Rabobank is aware, the named Plaintiffs in this case relied on FCMs including JP Morgan Securities LLC; Credit Suisse AG; HSBC; UBS AG; Merrill Lynch (now Bank of America); Newedge USA, LLC (now Société Générale); and Fimat USA, LLC (now Société Générale).

Mr. Miller's testimony is consistent with counsel's experience in prior CEA manipulation class actions that, when FCMs consolidate, merge or are otherwise obtained by other FCMs, the successor FCM typically retains customer records of the FCMs they have acquired.  For example, in *In Re: Crude Oil Commodity Futures Litigation*, 11 Civ 3600 (KBF) (S.D.N.Y.), Société Générale provided a list of customers to the Court-appointed settlement administrator, A.B. Data, that covered not just their own customers but also customers of multiple additional FCMs that Société Générale had acquired.  *See In Re: Crude Oil Commodity Futures Litig.*, 11-cv-3600 (KBF), ECF No. 336, ¶8 (S.D.N.Y.) (Société Générale advised A.B. Data that it was the successor to SG Americas Securities, LLC; Newedge USA, LLC; Calyon Financial, Inc.; and Fimat USA, LLC and produced customer records for almost 10,000 different customers).



*Third*, Rabobank challenges Mr. Miller's opinion that the CME may have "records of the historical daily activity of all transactions for futures and options contracts traded through the

CME"—commonly called a "Street Book."  Miller Decl. ¶ 16; Rabobank Br. at 5-7.  Mr. Miller does not state that he intends to rely exclusively on the Street Book but notes that he may be able to use it to identify trading records for additional class members in instances where "potential class members may not have retained the records necessary to perfect a claim" and where "their previous FCM is no longer in business, or the class period reaches beyond record retention policies."  Miller Decl. ¶ 16.  Rabobank references portions of the sur-rebuttal report submitted by its expert, Dr. Christopher L. Culp, where Dr. Culp asserts that the CME, in its capacity as a central counterparty, did not maintain customer-level position data during the class period.  Rabobank Br. at 7 (citing Culp Sur-Rebuttal ¶¶ 94, 103) (Ex. 39).  Buried at the end of a footnote, however, Dr. Culp concedes that "[t]he Exchange side of the CME *does* collect certain information on the identities of traders," specifically including "the identity of a Globex operator or floor trader."  (Culp Sur-Rebuttal ¶ 67 n.86 (emphasis added) (Ex. 39)).[12]

Additionally, Rabobank misrepresents the reason why Plaintiffs have not already received trading data from the CME, intimating that this must show that the data either does not exist or is unavailable.  Rabobank Br. at 2. ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████ Letter from David R. Gelfand to Hon. Naomi R. Buchwald (ECF No. 1007) at 3 (emphasis added).  In

---

[12] ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████

response to Defendants' opposition, and this Court's instruction that Plaintiffs should reach agreement with Defendants on this matter, *In re LIBOR-Based Fin. Instruments Antitrust Litig. (LIBOR IV)*, No. 11 MDL 2262, 2015 WL 6243526, at*11 (S.D.N.Y. Oct. 20, 2015); Feb. 5, 2015 Hearing Tr. at 6-8, on September 9, 2015, Plaintiffs served on the CME a subpoena seeking, in relevant part: (1) the "The CME 'street book' for each day of the Relevant Period for CME Eurodollar Futures or Options Contracts" and (2) "Information necessary to identify relevant traders in the Eurodollar Contracts in the validated 'street book' data to be produced in this action." At Defendants' request, however, the CME was instructed not to produce street book data until "merits discovery has commenced" and not to produce information identifying relevant traders until "the Court enters final approval of the class action settlement and class members' claims are received." *Id*.

### E. Mr. Miller's Opinion that A.B. Data Will Be Able to Perform Damages Calculations In Accordance with Future Court Instructions Is Reliable

Rabobank's final challenge is to Mr. Miller's opinion that "A.B. Data will perform loss calculation in accord with the Court-approved Plan of Allocation," which he anticipates may require "net[ting] transactions that resulted in losses against transactions that resulted in gains." Miller Decl. ¶ 24; *see also* Rabobank Br. at 13-14.  Mr. Miller notes that "pairing and netting of transactions is standard in these types of cases and A.B. Data's team and software is fully capable of calculating whatever netting is required by a Plan of Allocation."  *Id*. ¶ 24.  Rabobank claims that Mr. Miller's representations that he would need to review a "plan of allocation" before stating precisely what formula will be used to "net" transactions in this case and calculate damages undermines his opinions.  Rabobank Br. at 13.  But, as Rabobank is well aware, Plaintiffs and Defendants disagree on several aspects of how (or even, if) netting should occur in this case, and this Court has not yet had occasion to resolve all of these disagreements.  Far from undermining

his status as an expert, Mr. Miller's opinion that he cannot state with specificity the particular netting formula to be used in this case until that is approved by the court, but that A.B. Data has the technical capacity (and experienced personnel) necessary to implement a court-approved plan of allocation involving complex netting formulae, serves to highlight his experience, prudence, and neutrality.  *See* Miller Decl. ¶ 26 (noting that AB Data is capable performing "large volumes of complex damage calculations" and routinely does in "cases of this kind"); *see also In re Nat. Gas Commodities Litig*., 231 F.R.D. 171, 185 (S.D.N.Y. 2005) (noting that "*any* class action based on a manipulation claim or a similar theory necessarily involves large databases and complex calculations for determining individual class member damages" and holding that this did not "render the class unmanageable" (emphasis added)).

Rabobank also mischaracterizes Mr. Miller's testimony to claim that his opinions stated in a single paragraph of his declaration (paragraph 27) concerning named Plaintiff Atlantic Trading are not his own.  Rabobank Br. at 13.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮  ▮  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮ ▮▮▮▮▮▮▮▮▮▮▮▮

[13] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

¶ 112 (Ex. 39) (noting that "Compass Lexecon's professional staff"—not Defendant's expert Dr. Culp—analyzed Atlantic Trading's trading data and "supervis[ed]" data entry performed by a third-party vendor).

## **CONCLUSION**

For these reasons, Rabobank's motion to exclude Mr. Miller's opinions should be denied in its entirety.



19

Dated: July 21, 2017

**KIRBY McINERNEY LLP**

By: _____

David E. Kovel
Karen Lerner
Thomas W. Elrod
Meghan J. Summers
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: (212) 371-6600
dkovel@kmllp.com
klerner@kmllp.com
telrod@kmllp.com
msummers@kmllp.com

**LOVELL STEWART HALEBIAN
JACOBSON LLP**

By: */s/ Christopher Lovell*
Christopher Lovell
Gary S. Jacobson
61 Broadway, Suite 501
New York, NY 10006
Telephone: (212) 608-1900
clovell@lshllp.com
gsjacobson@lshllp.com

*Interim Lead Counsel for the Proposed Class*