# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262<br>Master File No. 1:11-md-2262-NRB |
| THIS DOCUMENT RELATES TO: | **ORAL ARGUMENT REQUESTED** |
| THE BERKSHIRE BANK, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA CORPORATION; BANK OF AMERICA, N.A.; BANK OF TOKYO MITSUBISHI UFJ LTD.; BARCLAYS BANK PLC; BRITISH BANKERS' ASSOCIATION; BBA ENTERPRISES LTD.; BBA LIBOR LTD.; CITIGROUP, INC.; CITIBANK, N.A.; COÖPERATIEVE CENTRALE RAIFFEISENBOERENLEENBANK B.A.; CREDIT SUISSE GROUP AG; DEUTSCHE BANK AG; HSBC HOLDINGS PLC; HSBC BANK PLC; JPMORGAN CHASE & CO.; JPMORGAN CHASE BANK, NATIONAL ASSOCIATION; LLOYDS BANKING GROUP PLC; HBOS PLC; ROYAL BANK OF CANADA; THE NORINCHUKIN BANK; THE ROYAL BANK OF SCOTLAND GROUP PLC; UBS AG; WESTLB AG; and WESTDEUTSCHE IMMOBILIENBANK AG,<br><br>Defendants. | No. 12-CV-5273-NRB |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF ROBERT IVORY WEBB, Ph.D.

## TABLE OF CONTENTS

P<small>AGE</small>

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT ...................................................................................................................................... 1

I.      Prof. Webb Has Failed to Provide Any Damages Methodology that Meets the New York Law Requirements of *LIBOR V* ...................................................................................... 1

II.     Prof. Webb's Downstream Analysis Is Unreliable to Show Alleged Injury and Damages Because It Ignores Numerous Highly Significant Variables ......................................... 5

CONCLUSION ................................................................................................................................ 10

## TABLE OF AUTHORITIES

CASES

PAGE(S)

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
No. 11cv6201 (DLC), 2015 WL 539489 (S.D.N.Y. Feb. 10, 2015) ...................................... 6

*Freeland v. AT&T Corp.*,
238 F.R.D. 130 (S.D.N.Y. 2006) .................................................................................. 6

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ...................................................................................... 4

*In re Actiq Sales & Mktg. Practices Litig.*,
No. 07-4492, 2014 WL 3572932 (E.D. Pa. July 21, 2014) .................................................. 10

*In re Blood Reagents Antitrust Litig.*,
MDL No. 09-2081, 2015 WL 6123211 (E.D. Pa. Oct. 19, 2015) ......................................... 10

*In re Elec. Books Antitrust Litig.*,
No. 11 MD 2293(DLC), 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) ............................... 10

*In re Vivendi Universal Sec. Litig., S.A.*,
284 F.R.D. 144 (S.D.N.Y. 2012) .................................................................................. 4

*Laumann v. Nat'l Hockey League*,
117 F. Supp. 3d 299 (S.D.N.Y. 2015) ..................................................................... 8, 10

*LIBOR V*,
No. 11 MDL 2262 (NRB), 2015 WL 6696407 (S.D.N.Y. Nov. 3, 2015) ...................... 1, 2, 3

*LIBOR VI*,
No. 11 MDL 2262 (NRB), 2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016) ......................... 6, 7

*United States v. Morgan*,
53 F. Supp. 3d 732 (S.D.N.Y. 2014) ............................................................................ 9

*Weiner v. Snapple Beverage Corp.*,
No. 07 Civ. 8742 (DLC), 2010 WL 3119452 (S.D.N.Y. Aug. 3, 2010) ............................... 9

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008) ...................................................................................... 3

<u>STATUTES & RULES</u>

<u>PAGE(S)</u>

28 U.S.C. § 2072(b) ................................................................................................................ 4

Fed. R. Evid. 702 ................................................................................................................. 1

Defendants respectfully submit this reply memorandum of law in support of their motion (the "*Daubert* Motion"), ECF 2021, pursuant to Federal Rule of Evidence 702, to exclude the "downstream" testimony of Professor Robert Ivory Webb, Ph.D., submitted by plaintiff The Berkshire Bank ("Berkshire") on behalf of a putative class of lending institutions ("Plaintiffs").[1]

## PRELIMINARY STATEMENT

Defendants' *Daubert* Motion established that the downstream portions of Prof. Webb's report should be stricken for two significant reasons.  First, Prof. Webb ignored this Court's admonition that a proper damages methodology must provide for the specific alternative investment that each class member would have chosen in the but-for world.  Second, Prof. Webb overlooked several critical variables that are necessary to determine injury and damages, whether for an individual class member or in the aggregate.  Rather than arguing that Prof. Webb's methodology addresses either issue, Plaintiffs suggest that the analysis is good enough despite its undisputed limitations.  For the reasons set forth below and in Defendants' Moving Brief, Plaintiffs are wrong, and the Court should strike Prof. Webb's downstream analysis as inadmissible.

## ARGUMENT

I.  **Prof. Webb Has Failed to Provide Any Damages Methodology that Meets the New York Law Requirements of *LIBOR V***

In *LIBOR V*, this Court applied the rule under New York law that Plaintiffs must identify the "specific investment" they would have made in the but-for world in which they knew of the alleged fraud.  *LIBOR V*, 2015 WL 6696407, at *11 (S.D.N.Y. Nov. 3, 2015).  Plaintiffs do not

---

[1] Defendants' Joint Memorandum on "Downstream" Issues in Opposition to Lender Plaintiffs' Motion for Class Certification and in Support of Defendants' Motion to Exclude the Testimony of Robert Ivory Webb, Ph.D. is referred to as "Defendants' Moving Brief" or "Defs. Br."  ECF 2024.  The Berkshire Bank's Memorandum of Law in Opposition to Defendants' Motion to Exclude the Expert Opinions of Robert I. Webb is referred to as the "Opposition" or "Opp."  ECF 2109.  All Exhibits cited are exhibits to the Declaration of Paul S. Mishkin in Support of Defendants' Joint Memorandum on "Downstream" Issues in Opposition to Lender Plaintiffs' Motion for Class Certification and in Support of Defendants' Motion to Exclude the Testimony of Robert Ivory Webb Ph.D. ECF 2025.  Terms not otherwise defined have the meaning ascribed to them in Defendants' Moving Brief.

deny that Prof. Webb did not analyze what alternative investment(s) any class member would have made, much less that this can be shown for all class members using common evidence.[2]

Instead, Plaintiffs argue that calculating damages based on alternative investments is "exactly the same," Opp. at 14, because they claim that one simply compares the actual LIBOR rate to the alternative that would have been used in the but-for world. But that argument ignores Plaintiffs' failure to prove *which* alternative(s) each class member would have used. And Plaintiffs do not dispute that there are many possible alternatives, including using FRED or hedging through swaps as alleged by Berkshire, or using prime rates, or the many risk-free Treasury rates. Defs. Br. at 9-10. An expert's purported ability to apply one of those alternatives is useless if there is no proof that class members would have chosen that particular alternative. Prof. Webb's use of hindsight to pick an alternative that increased relative to LIBOR says nothing about whether class member lenders and their customers, faced with the tumult of the financial crisis, would have all made the same choice. Indeed, if a class member had responded to doubts about LIBOR by choosing a "risk-free interest rate" such as Treasuries, *LIBOR V*, 2015 WL 6696407, at *11, the lender may have been worse off, as risk-free rates declined relative to LIBOR. Defs. Br. at 11.

Plaintiffs also ignore Berkshire's allegation that one of its two potential alternatives was to

---

[2] Plaintiffs protest that this issue was not raised in Prof. Webb's depositions or in Defendants' expert reports. Opp. at 13. But because Prof. Webb ignored this issue—on which Plaintiffs bear the burden of proof—there was nothing to rebut.

hedge LIBOR through an interest rate swap.  SAC ¶ 12, ECF 1383.[3]  Even if one could somehow show that a class member would have hedged in the but-for world, Prof. Webb offers no common proof of damages to account for the specifics of the hedge purchased (*e.g.*, the notional amount, the timing and price of purchase, the timing and price of sale/maturity).

Plaintiffs offer three arguments to justify Prof. Webb's failure to link his damages model to the but-for alternatives class members actually would have used.  They first argue that *LIBOR V* was wrong, and they can use "but-for LIBOR" for claims under New York law.  Opp. at 14-15.  The time to seek reconsideration of *LIBOR V* passed long ago.  Even now, Plaintiffs' Opposition just presents the issue in a footnote and promises that the issue "will be discussed in greater detail," *id.* at 15 n.5, in a subsequent filing.  Procedural defaults aside, Plaintiffs offer no basis to reconsider *LIBOR V*.  None of their cited cases involves New York law (or even common law fraud) and none postdates *LIBOR V*.  The cases upon which this Court relied in *LIBOR V*, 2015 WL 6696407, at *10, remain the law of New York.

Plaintiffs next argue that many states do not follow the New York rule.  Opp. at 14.  But New York law governs the claims of Berkshire, which is based in New York.  If Prof. Webb's damages analysis is wrong for the sole class representative, his report cannot be salvaged on the ground that there might be some absent class member in another state for whom his damages model could be useful.  *See W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 n.5 (2d Cir. 2008) (injuries to "other, unidentified members of the class" do not suffice).

Plaintiffs' third argument is that a class member's alternative investment can be identified through a claims process.  Opp. at 15-16.  The rules do not allow that.  In the case relied upon by Plaintiffs, the question was whether a class member would have purchased the stock had it known

---

[3] The other alleged alternative was to loan at the FRED rate, but there is no evidence that Berkshire ever originated or purchased a loan that used that index.  Defs. Br. at 10.

certain facts. *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 430 (7th Cir. 2015). That is readily distinguishable from the present situation.

*First*, in *Glickenhaus*, plaintiffs could invoke the "strong" presumption of reliance in Rule 10b-5 actions. *Id*. at 429. That claims process was not used on an issue as to which plaintiffs bore the burden of proof. *See id*. ("There's no dispute that these prerequisites [for the presumption of reliance] were met."). Rather, it was used to ferret out class members who nonetheless did not rely on fraudulent information. Where class members "would likely have the burden," such a process is not appropriate. *See In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. 144, 152 (S.D.N.Y. 2012) (using a claims process for class members as to whom there was a presumption of reliance, but denying class certification for "participants in off-exchange transactions" for whom there was no such presumption). Here, there is no presumption that a class member would have chosen a particular alternative investment.

*Second*, the claims process in *Glickenhaus* sought a simple binary answer as to whether a class member would have purchased the stock. The question here is vastly more complex. ████

████████████████████████████████████████████████████████████████

██████████████████████████████ Defs. Br. at 10-11. A lender may have hundreds or thousands of loan instruments from the class period and would need to identify the alternative it would have used for each one, years after the loans were issued or purchased. Further unlike the situation in *Glickenhaus*, which asked solely about the class member's own conduct, the issue here requires a judgment regarding what would have been negotiated with each of a class member's many borrower-customers. Because the class action device cannot deprive Defendants of their right to fully litigate a class member's purported alternative investment, *see* 28 U.S.C. § 2072(b), Plaintiffs cannot evade Prof. Webb's complete failure on that issue by assuming that they

can prove injury and damages by sending a form to absent class members.

## II.    Prof. Webb's Downstream Analysis Is Unreliable to Show Alleged Injury and Damages Because It Ignores Numerous Highly Significant Variables

Plaintiffs do not dispute that Prof. Webb's analysis assumes that *nothing* would have changed in the but-for world in *any* putative class member's LIBOR-based loan transactions except for the value of LIBOR itself.  Plaintiffs merely make the meritless argument that they were under no obligation to account for any other variables that would have been impacted by a higher LIBOR in the but-for world, and that by employing a regression model using a "yardstick method," Prof. Webb's analysis is inherently sufficiently reliable to survive a *Daubert* challenge.  Opp. at 16-19.[4] These arguments fail.

As an initial matter, Plaintiffs conflate the "upstream" and "downstream" elements of Prof. Webb's analysis.  The "yardstick" regression analysis that Plaintiffs tout as the analytical bedrock of Prof. Webb's report relates only to *whether* and, if so, *by how much* LIBOR was suppressed on any given day—*i.e.*, "upstream" issues.[5]  But the focus of the *Daubert* Motion is Prof. Webb's *downstream* work—*i.e.*, his review of whether class members' LIBOR-based loans, and their businesses as a whole, were impacted by a lower LIBOR *assuming* LIBOR was suppressed.  Prof. Webb's "analysis" on that issue is not a regression model and employs no "yardstick"; it is nothing more than basic arithmetic applied using the simplistic assumption that nothing about LIBOR-based loans would have changed in the but-for world other than LIBOR itself.  Nothing that Plaintiffs say about Prof. Webb's regression analysis is relevant to the sufficiency of the downstream opinions that Defendants challenge under *Daubert*.

---

[4] ██████████████████████████████████████████████████████████████████████
████

[5] For all the reasons provided in Defendants' Joint Memorandum on "Upstream" Issues in Opposition to Plaintiffs' Motions for Class Certification, ECF 2030, Prof. Webb's upstream regression analysis is deeply flawed and provides no basis for concluding that alleged persistent suppression can be demonstrated using common evidence.

The question here is instead whether a simplistic substitution of but-for LIBOR into LIBOR-based loans—while accounting for no other difference in the but-for world—is a reliable methodology for determining injury and damages.  As explained in Defendants' Moving Brief, the answer is no because Prof. Webb ignores several significant variables—including the impact of a higher LIBOR on loan volume, loan default rates, spreads above LIBOR, the use of interest-rate floors, and the purchase price of LIBOR-based loans.  *See Fed. Hous. Fin. Agency v. Nomura Holding Am.*, 2015 WL 539489, at *5 (S.D.N.Y. Feb. 10, 2015) (expert reports that "fail to account for significant variables" are subject to exclusion).[6]  Indeed, this Court already rejected as contrary to "common economic experience" the notion that variables such as these could be ignored at the motion to dismiss stage.  *See LIBOR VI*, 2016 WL 7378980, at *18-19 & n.29 (S.D.N.Y. Dec. 20, 2016).  The failure to account for such variables is even more unjustifiable in an expert report supporting a class certification motion for which Plaintiffs bear the burden of proof.

Plaintiffs assert that the significance of the variables identified by Defendants, *see* Defs. Br. at Section I, is "speculative."  *See* Opp. at 17.  However, there is ample evidence that a reliable damages model must carefully consider these variables, including not only the unrebutted testimony of Defendants' experts—Janusz Ordover, the former Chief Economist at the DOJ's Antitrust Division, and Brian Kelley, who has over 35 years of lending industry experience—█████ ██████████████████████████.  Plaintiffs simply ignore this evidence.

For example, far from being "speculative," it is obvious that higher interest rates in the but-for world would reduce loan demand (and hence loan volume) and increase default rates.  *See, e.g.*, Kelley Rpt., Ex. 1 ¶ 125; Ordover Rpt., Ex. 2 ¶ 46. ███████████████████████████

---

[6] Even where an expert has conducted a regression analysis of the issue in question, the failure to account for significant variables requires exclusion of the analysis.  *Freeland v. AT&T Corp.*, 238 F.R.D. 130, 149 (S.D.N.Y. 2006), on which Plaintiffs rely, excluded a benchmark regression analysis on precisely that basis.  *Freeland* applies *a fortiori* here where Prof. Webb does not even attempt to support his downstream analysis with any statistical evidence.

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Webb Reb. Dep., Ex. 9 at 276:13-18; 278:16-279:6.  As a result, had LIBOR been higher as

Plaintiffs allege (at times by over a percentage point), many LIBOR-based loans that Prof. Webb

contends would have performed better in the but-for world in fact would either have defaulted or

never existed at all.  Yet Prof. Webb simply ignores these variables in his analysis.

Prof. Webb similarly fails to account for the impact that a higher LIBOR would have had

on loan spreads and interest rate floors despite substantial evidence in the record that both were

highly relevant variables.  ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████, Kelley Rpt.,

Ex. 1 at ¶¶ 108-10; Lukens Dep., Ex. 7 at 274:3-276:22.  Moreover, Defendants' experts analyzed

in detail the impact of alleged LIBOR suppression on these two variables.[8]  Plaintiffs and Prof.

Webb again simply ignore this evidence.

In the same vein, Prof. Webb fails to account for the fact that a higher LIBOR in the but-for

world would have increased the purchase price of LIBOR-based loans, even though (1) this Court

made that very point in the context of LIBOR-based bonds in *LIBOR VI*, 2016 WL 7378980, at

*19, and ████████████████████████████████████████

---

[7] ████████████████████████████████████████████████

[8] ████████████████████████████████████████████████



*See, e.g.*, Lukens Dep., Ex. 7 at 286:5-10

Ordover Rpt., Ex. 2 ¶¶ 41-44; Kelley Rpt., Ex. 1 ¶ 122.[9]

Not only does Prof. Webb fail to account for any of these variables with respect to putative class members' LIBOR-based loans, but he also fails to account for their impact on putative class members' LIBOR-based borrowings, hedges, and other transactions, all of which must be considered to determine whether a lender suffered a net injury. Defs. Br. at 15-17. Defendants have offered extensive, unrebutted evidence that many, if not most, lending institutions (including Berkshire specifically) entered into LIBOR-based transactions that had the effect of offsetting lending-side exposure to LIBOR, *see id.* at 15-17, the impact of which cannot be reliably assessed without consideration of the ignored variables discussed above.[10]

Contrary to Plaintiffs' argument, the effect of the ignored variables described above is not only to render Prof. Webb's *damages* calculation methodology fundamentally unreliable, Opp. at 17-18, which is alone sufficient to warrant exclusion, *see Laumann v. National Hockey League*, 117 F. Supp. 3d 299, 314-15 (S.D.N.Y. 2015), but also to prevent Prof. Webb from reliably determining whether particular class members were even *injured*. Prof. Webb has done nothing to exclude the probability that consideration of the variables discussed above would reduce purported

---

[9] Prof. Webb's discussion of discount rates thus simply highlights yet another variable that he fails to account for. *See* Defs. Br. at 15 n.17. Plaintiffs do not dispute this in their Opposition.

[10] Plaintiffs are incorrect that netting issues could somehow be addressed through the claims administration process. Opp. at 21. As discussed above in Section I, *supra*, a claims administration process cannot be used to address substantive issues or unravel complex, factual-intensive matters such as the extent of a lender's portfolio of offsetting transactions and how those transactions would have performed in a properly constructed but-for world factoring in the various variables that Prof. Webb omits from his analysis.

damages on numerous loans to *zero*, or at least would sufficiently reduce damages on those loans such that *net* damages would be zero after factoring in offsetting borrowings, hedges, or other transactions, thereby resulting in no injury.  An inability to determine reliably whether a purported class member was injured is plainly grounds for exclusion.  *See Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *7 (S.D.N.Y. Aug. 3, 2010) (excluding expert report as unreliable where it fails to provide methodology to show on a classwide basis that class members were injured).

Plaintiffs further attempt to minimize the fatal omissions discussed above by arguing that Defendants' experts have not identified "term[s] . . . that would have *definitely* been different" or quantify how a "class member's damages would have been impacted" as a result.  Opp. at 17 (emphasis added).  ██████████████████████████████

████████████████████████████████

████████████████████████  Kelley Rpt., Ex. 1 ¶¶ 108-10; *see also* Lukens Dep., Ex. 7 at 274:3-276:22.  Regardless, Plaintiffs improperly seek to shift the burden of proof onto Defendants (and to heighten that burden to one of "definiteness").  In determining the admissibility of expert testimony, "it is the proponent's burden, under *Daubert*, to establish admissibility, rather than the opponent's burden to establish inadmissibility."  *United States v. Morgan*, 53 F. Supp. 3d 732, 740 (S.D.N.Y. 2014) (citation and quotation marks omitted).  As Defendants stated in their Moving Brief, and Plaintiffs have not disputed, Defendants' experts are not responsible for determining

████████████████████████████████

████████████████████████  Defs. Br. at 13 n.14 (quoting Webb Reb. Rpt., Ex. 5 ¶ 101 and collecting cases).  Rather, the burden is on Plaintiffs to set forth a reliable model to show that all class members' injury can be proven through common evidence. Plaintiffs have not met that burden here, and Prof. Webb's report must be excluded as a result.

The principal case on which Plaintiffs rely, *In re Electronic Books Antitrust Litigation*, 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014), highlights the deficiencies in Prof. Webb's analysis. In that case, plaintiffs' expert "performed a sophisticated multivariate analysis" to "capture [e-book] pricing that would have prevailed in the but-for world," *id.* at *27, and the court found that defendants had "not identified any variable that [the expert] should have but did not include in his regression model," *id.* at *15. Here, as discussed, Prof. Webb's downstream analysis was far from a "sophisticated multivariate analysis," involved no regression, and omitted several key variables.[11]

Plaintiffs also fail to distinguish *Laumann*, cited in Defendants' Moving Brief. Defs. Br. at 18 (citing 117 F. Supp. 3d at 305-15).[12] In *Laumann*, the court excluded the plaintiffs' expert's opinion because, despite its sophistication, it failed to account for material variables necessary to determine the impact of the alleged misconduct in the but-for world. *Laumann,* 117 F. Supp. 3d at 315-16. Here, Prof. Webb's downstream analysis not only similarly fails to account for several material variables, but it lacks the sophistication of the model presented in *Laumann*. Plaintiffs' only response is to assert that Prof. Webb's *upstream* analysis passes *Laumann*'s test, which is irrelevant because Defendants' *Daubert* Motion challenges Plaintiffs' downstream analysis.

## CONCLUSION

For the foregoing reasons and those expressed in Defendants' Moving Brief, the downstream portions of Prof. Webb's expert reports should be excluded.

---

[11] The other cases Plaintiffs cite also do not support the notion that an expert can simply ignore relevant variables in the but-for world, as Prof. Webb did here. *See In re Blood Reagents Antitrust Litig.,* 2015 WL 6123211, at *15 (E.D. Pa. Oct. 19, 2015) (finding that, unlike in the instant case, the expert had "persuasively explained and analyzed" why the allegedly missing factors were immaterial); *In re Actiq Sales & Mktg. Practices Litig.*, 2014 WL 3572932, at *8 (E.D. Pa. July 21, 2014) (finding that criticisms of omitted variables in expert's methodology did not demonstrate flaws but instead reflected "erroneous assumption" that competing method was the "only appropriate" methodology).

[12] Plaintiffs incorrectly state that *Laumann* is the "single case on which Defendants rely." Opp. at 20. In fact, the *Daubert* section of Defendants' brief relied on eight cases, almost all of which Plaintiffs do not even attempt to distinguish. Defs. Br. at 17-19.

Dated:  August 4, 2017

Respectfully submitted,


/s/_Arthur J. Burke

Arthur J. Burke
Paul S. Mishkin
Adam G. Mehes
Patrick W. Blakemore
Peter J. Davis
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Fax: (212) 450-4800
arthur.burke@davispolk.com
paul.mishkin@davispolk.com
adam.mehes@davispolk.com
patrick.blakemore@davispolk.com
peter.davis@davispolk.com

*Attorneys for Defendants Bank of America
Corporation and Bank of America, N.A.*

/s/_Andrew A. Ruffino

Andrew A. Ruffino
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 841-1000
aruffino@cov.com

Alan M. Wiseman
Thomas A. Isaacson
Andrew D. Lazerow
Jamie A. Heine
Taylor M. Steffan
Benjamin L. Cavataro
850 Tenth Street, N.W.
Washington, D.C. 20001
Telephone: (202) 662-6000
awiseman@cov.com
tisaacson@cov.com
alazerow@cov.com
jheine@cov.com
tsteffan@cov.com
bcavataro@cov.com

/s/_Lev Dassin

Lev Dassin
Jonathan S. Kolodner
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
ldassin@cgsh.com
jkolodner@cgsh.com

*Attorneys for Defendants Citibank, N.A. and
Citigroup Inc.*

11

/s/_Thomas C. Rice                                       /s/_Peter Sullivan
Thomas C. Rice                                           Peter Sullivan
Paul C. Gluckow                                          Lawrence J. Zweifach
Alan C. Turner                                           Eric Stock
Omari L. Mason                                           Jefferson E. Bell
Alexander N. Li                                          Matthew Greenfield
SIMPSON THACHER & BARTLETT LLP                           GIBSON, DUNN & CRUTCHER LLP
425 Lexington Avenue                                     200 Park Avenue
New York, New York 10017                                 New York, New York 10166-0193
Telephone: (212) 455-2000                                Telephone: (212) 351-4000
Fax: (212) 455-2502                                      psullivan@gibsondunn.com
trice@stblaw.com                                         lzweifach@gibsondunn.com
pgluckow@stblaw.com                                      estock@gibsondunn.com
aturner@stblaw.com                                       jbell@gibsondunn.com
omason@stblaw.com                                        mgreenfield@gibsondunn.com
zanderli@stblaw.com

                                                         *Attorneys for Defendants UBS AG*
Abram J. Ellis
900 G Street NW
Washington, D.C.  20001
Telephone:  (202) 636-5500
Fax:  (202) 636-5502
aellis@stblaw.com
rbradley@stblaw.com

*Attorneys for Defendants JPMorgan Chase &*
*Co. and JPMorgan Chase Bank, N.A.*