**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | Master File No. 11-md-2262 (NRB) **ORAL ARGUMENT REQUESTED** |
| THIS DOCUMENT RELATES TO: | |
| METZLER INVESTMENT GmbH, et al., Plaintiffs, v. CREDIT SUISSE GROUP AG, et al. Defendants. | No. 11-cv-2613 (NRB) |

**EXCHANGE-BASED PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION AND ADDRESSING DEFENDANT RABOBANK'S TRADER-BASED ARGUMENTS**

## TABLE OF CONTENTS

ARGUMENT ............................................................................................................ 1

I.   THE PROPOSED TRADER CONDUCT CLASS IS ASCERTAINABLE .................. 1

    A.   Neither Ascertainability, Nor Any Other Aspect of Rule 23, Includes a Free-Standing Administrative Feasibility Requirement ................................................. 2

    B.   Plaintiffs Will Be Able to Successfully Administer the Proposed Class .............. 2

    C.   Plaintiffs Satisfy Rule 23's Superiority Requirement ........................................... 6

    D.   The Proposed Class Is Not an Improper Fail-Safe Class as to TBM Claims ....... 6

II.   PLAINTIFFS' PROPOSED TRADER CONDUCT SUBCLASSES SATISFY RULE 23(A)'S REQUIREMENTS ........................................................................................ 8

    A.   The Plaintiffs Have Standing ............................................................................... 9

    B.   Plaintiffs' Claims Are Typical of the Class ........................................................ 11

    C.   Plaintiffs, and their Counsel, Are Adequate Representatives of the Class ......... 12

    D.   Numerosity Is Satisfied with Respect to the TBM Claims ................................. 12

III.   PLAINTIFFS SATISFY RULE 23'S COMMONALITY AND PREDOMINANCE REQUIREMENTS ...................................................................................................... 13

    A.   Rabobank's Ability to Influence LIBOR and EDFs and Options Will Be Proven With Evidence that Is Common to the Class ...................................................... 14

    B.   Intent to Manipulate EDFs and Options Prices Will Be Proven Through Common Evidence ............................................................................................. 14

    C.   Plaintiffs Will Prove Artificiality of LIBOR Resulting from TBM Using Classwide Models and Other Common Evidence ............................................... 15

    D.   LIBOR Manipulation's Impact and Causation on EDF Prices Can Be Determined by Classwide Evidence ................................................................... 17

        1.   Plaintiffs Will Rely Predominantly on Evidence Common Across All TBM Days to Prove Rabobank Caused Artificial EDF Prices ............ 18

        2.   Plaintiffs Will Rely Predominantly on Classwide Evidence to Show That the Magnitude of TBM Was Sufficient to Impact EDF Prices ......... 18

i

3.   Intra-Day Factors Will Not Prevent Plaintiffs from Using Common
Evidence to Prove Rabobank Caused Artificial EDF Prices ..................... 20

4.   Plaintiffs' Expert's Causation Analysis and Willingness to Incorporate
New Evidence Is Sound .............................................................................. 22

5.   Plaintiffs Will Use a Common Methodology for Calculating
Class Member Damages ............................................................................. 23

CONCLUSION ........................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**          **Page**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
   No. 14 Civ. 7126 (JMF), 2017 WL 404500 (S.D.N.Y. Jan. 27, 2017)....................................5

*In re Amaranth Natural Gas Commodities Litig.*,
   269 F.R.D. 366 (S.D.N.Y. 2010) ..........................................................................*passim*

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)...............................................................................................................8

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
   568 U.S. 455 (2013)..........................................................................................................8, 17

*Apex Oil Co. v. DiMauro*,
   744 F. Supp. 53 (S.D.N.Y. 1990).......................................................................................5, 24

*Brecher v. Republic of Argentina*,
   806 F.3d 22 (2d Cir. 2015)......................................................................................................2

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ................................................................................................3

*Cargill, Inc. v. Hardin*,
   452 F.2d 1154 (8th Cir. 1971) ................................................................................................1

*C.F.T.C. v. Hunter*,
   No. 07 Civ. 6682 (BSJ), 2012 WL 297838 (S.D.N.Y. Jan. 31, 2012)..................................15

*In re Commodity Exch., Inc. Silver Futures & Options Trading Litig.*,
   560 F. App'x 657 (2d Cir. 2009) ...........................................................................................15

*In re DiPlacido*,
   C.F.T.C. No. 01-23, 2008 WL 4831204 (C.F.T.C. Nov. 5, 2008) ........................................15

*DiPlacido v. C.F.T.C.*,
   364 F. App'x 657 (2d Cir. 2009) ...........................................................................................15

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011)..............................................................................................................18

*Gray v. Cnty. of Riverside*,
   No. 13 Civ. 444, 2014 WL 5304915 (C.D. Cal. Sept. 2, 2014)..............................................7

*Fort Worth Empls.' Ret. Fund v. J.P. Morgan Chase & Co.*,
   301 F.R.D. 116 (S.D.N.Y. 2014) ............................................................................................7

*Hershey v. Energy Transfer Partners, L.P.*,
   610 F.3d 239 (5th Cir. 2010) ................................................................................................15

*In re IPO Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009)......................................................................................7

*Kendler v. Federated Dep't Stores,*
   88 F.R.D. 688 (S.D.N.Y. 1981) ............................................................................... 19

*Kohen v. Pac. Inv. Mgmt. Co. LLC ("PIMCO I"),*
   244 F.R.D. 469 (N.D. Ill. 2007)........................................................................... 9, 12

*Kohen v. Pac. Inv. Mgmt. Co. LLC ("PIMCO II"),*
   571 F.3d 672 (7th Cir. 2009) ......................................................................... *passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR I"),*
   935 F. Supp. 2d 666 (S.D.N.Y. 2013).................................................................. 5, 13

*In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR II"),*
   962 F. Supp. 2d 606 (S.D.N.Y. 2013)......................................................................13

*In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR III"),*
   27 F. Supp. 3d 447 (S.D.N.Y. 2014)........................................................... 10, 15, 23

*In re LIBOR-Based Fin. Instruments Antitrust Litig.,*
   No. 11 Md. 2262 (NRB), 2016 WL 2851333 (S.D.N.Y. May 13, 2016) ................ 7-8, 14, 23

*In re Lidoderm Antitrust Litig.,*
   No. 14 Md. 02521, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017).........................24

*Loeb Indus., Inc. v. Sumitomo Corp.,*
   306 F.3d 469 (7th Cir. 2002) ...................................................................................24

*In re M.F. Global Holdings Ltd. Inv. Litig.,*
   310 F.R.D. 230 (S.D.N.Y. 2015) ..............................................................................19

*Minpeco S.A. v. Conticommodity Servs., Inc.,*
   676 F. Supp. 486 (S.D.N.Y. 1987)...........................................................................24

*In re Molson Coors Brewing Co. Sec. Litig.,*
   233 F.R.D. 147 (D. Del. 2005) .................................................................................10

*Mullins v. Direct Digital, LLC,*
   795 F.3d 654 (7th Cir. 2015) .....................................................................................3

*Nat'l Super Spuds Inc. v. N.Y. Mercantile Exch.,*
   77 F.R.D. 361 (S.D.N.Y. 1977) ................................................................................13

*In re Natural Gas Commodities Litig.,*
   231 F.R.D. 171 (S.D.N.Y. 2005) .......................................................................*passim*

*In re Nexium Antitrust Litig.,*
   777 F.3d 9 (1st Cir. 2015)........................................................................................7-8

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.,*
   63 F. Supp. 3d 394 (D. Del. 2014) ...........................................................................10

*In re Petrobras Sec.,*
   862 F.3d 250, 2017 WL 2883874 (2d Cir. July 7, 2017)..............................1-2, 6-7

*Randall v. Loftsgaarden,*
   478 U.S. 647 (1986) ...............................................................................................5, 24

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015) ........................................................................... 23

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*,
  No. 14 Civ. 4394 (AJN), 2017 WL 1331288 (S.D.N.Y. Apr. 4, 2017) ................... 7

*Salsitz v. Peltz*,
  210 F.R.D. 95 (S.D.N.Y. 2002) ......................................................................... 8

*Schleicher v. Wendt*,
  618 F.3d 679 (7th Cir. 2010) ........................................................................... 25

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) ....................................................................... 22

*Sicav v. Wang*,
  No. 12 Civ. 6682 (PAE), 2015 WL 268855 (S.D.N.Y. Jan. 21, 2015) ................... 19

*S. Ferry No. 2 v. Killinger*,
  271 F.R.D. 653 (W.D. Wash. 2011) ............................................................... 10-11

*In re Sumitomo Copper Litig. ("Sumitomo I")*,
  182 F.R.D. 85 (S.D.N.Y. 1998) ................................................................. *passim*

*In re Sumitomo Copper Litig., ("Sumitomo II")*,
  194 F.R.D. 480 (S.D.N.Y. 2000) ....................................................................... 13

*Takeda v. Turbodyne Techs., Inc.*,
  67 F. Supp. 2d 1129 (C.D. Cal. 1999) ............................................................... 10

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ............................................................................... 16, 19

*In re Vivendi Universal, S.A.*,
  242 F.R.D. 76 (S.D.N.Y. 2007) ......................................................................... 10

*In re Vivendi Universal, S.A.*,
  284 F.R.D. 144 (S.D.N.Y. 2012) ....................................................................... 24

*In re Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ....................................................................................... 23

**Rules**

Fed. R. Civ. P. 23(b)(3) ..................................................................................... 6

**Other Authorities**

5 Moore's Federal Practice § 23.21 ....................................................................... 7

Newberg on Class Actions § 3:6 (5th ed.) ............................................................... 7

# TABLE OF DEFINED TERMS

## PARTIES

**Party** ....................................................................................**Definition/Description**

**A.B. Data**................................................. A.B. Data, Ltd.'s Class Action Administration Division

**Atlantic Trading**................................. Atlantic Trading USA LLC, an Exchange-Based Plaintiff and Class Representative

**Bank of America** .......................................... Bank of America Corporation and Bank of America Securities LLC

**Barclays**....................................................................... Barclays Bank PLC. and Barclays Capital

**Bradley Belden** ....................................a member of the putative class, and the single member of proposed Class Representative 303030 Trading, LLC

**Citibank** ...............................................................................................Citibank NA

**Class Representatives** .......................... 303030 Trading LLC, Atlantic Trading USA LLC, Gary Francis, FTC Futures Fund SICAV, FTC Futures Fund PCC Ltd., Nathaniel Haynes, and Metzler Investment GmbH

**Defendants** ......................................... Bank of America, Barclays, Citibank, Deutsche Bank, J.P. Morgan, Rabobank, and UBS

**Deutsche Bank**.................................................Deutsche Bank AG and Deutsche Bank Securities

**Exchange-Based Plaintiffs**................... 303030 Trading LLC, Atlantic Trading USA LLC, Gary Francis, FTC Futures Fund SICAV, FTC Futures Fund PCC Ltd., Nathaniel Haynes, and Metzler Investment GmbH

**J.P. Morgan** …...................................J.P. Morgan Chase & Co., J.P. Morgan Clearing Corp. and J.P. Morgan Futures, Inc.

**Plaintiffs** ...................................................................................Exchange-Based Plaintiffs

**Rabobank**................................... Coöperatieve Rabobank U.A. (formerly known as Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.).

**UBS**........................................................................... UBS AG and UBS Securities LLC

## DOCUMENTS

**Document** ..................................................................................................**Definition/Description**

**303030 Trading Dep.**......................Transcript of the Videotaped Deposition of 303030 Trading, LLC by Bradley Belden, dated June 1, 2017

**Amaranth, Aff. of Jason Rabe** ...... Affidavit of Jason Rabe Regarding (A) Processing of Claims Forms, (B) Calculation of Allowed Claims Pursuant to the Plan of Allocation, and (C) Proposed Plan for Distribution of Net Settlement Fund, *In re: Amaranth Natural Gas Commodities Litigation*, 587 F.Supp.2d 513 (S.D.N.Y. 2008) (No. 07 Civ. 6377), dated June 24, 2016, formerly attached as Exhibit 29 to the Elrod Daubert Decl.

**Beevers Report** ................................Expert Report of Craig S. Beevers, dated February 2, 2017, formerly attached as Exhibit A to the Kovel Decl.

**Culp Dep.** ..........................................Transcript of the Videotaped Deposition of Christopher L. Culp, dated April 28, 2017, formerly attached as Exhibit 39 to the Elrod Daubert Decl.

**Culp Report** ......................................Expert Report of Christopher L. Culp, dated April 3, 2017, formerly attached as Exhibit H to the Kovel Decl.

**Culp Sur-Rebuttal**..............................Sur-Rebuttal Expert Report of Christopher L. Culp, dated June 30, 2017, formerly attached as Exhibit I to the Kovel Decl.

**Elrod Daubert Decl.**............................ Omnibus Declaration of Thomas W. Elrod in Support of Exchange-Based Plaintiffs' Memoranda of Law in Opposition to Defendant Rabobank's Motion to Exclude Plaintiffs' Proposed Expert Opinions, filed July 21, 2017 [ECF No. 2121]

**Elrod Decl.** ....................................................Declaration of Thomas W. Elrod in Support of the Exchange-Based Plaintiffs' Motion for Class Certification, filed May 2, 2017 [ECF No. 1890]

**Francis Dep.**......................................... Transcript of the Videotaped Deposition of Gary Francis, dated May 19, 2017

**Haynes Dep.**...................................Transcript of the Videotaped Deposition of Nathaniel Haynes, dated May 31, 2017

**Hubbard Report** ........................................Expert Report of Glenn Hubbard, dated April 3, 2017, formerly attached as Exhibit D to the Kovel Decl.

**Kovel Decl.** ....................................Declaration of David E. Kovel in Support of Exchange-Based Plaintiffs' Motions to Exclude Defendant Rabobank's Proposed Expert Opinions, filed July 10, 2017 [ECF No. 2071]

**Majcen Dep.** .......................................... Transcript of the Videotaped Deposition of Rolf Majcen, dated June 6, 2017

**Miller Report** ..................................... Declaration of Eric J. Miller, dated May 2, 2017, formerly attached as Exhibit 32 to the Elrod Decl.

**Miller Dep.** .............................................Transcript of the Videotaped Deposition of Eric Miller, filed June 21, 2017, formerly attached as Exhibit 14 to the Elrod Daubert Decl.

**Miller Opp.** ................................Exchange-Based Plaintiffs' Memorandum of Law in Opposition to Rabobank's Motion to Exclude the Proposed Expert Opinions of Eric J. Miller, filed July 21, 2017 [ECF No. 2118]

**Netz Dep. I** ..........................................Transcript of the Videotaped Deposition of Janet S. Netz, dated March 28, 2017, formerly attached as Exhibit 3 to the Elrod Daubert Decl.

**Netz Dep. II** .....................................Transcript of the Videotaped Rebuttal Deposition of Janet S. Netz, dated June 15, 2017, formerly attached as Exhibit 4 to the Elrod Daubert Decl.

**Netz Report** ...........................................Expert Report of Janet S. Netz, dated February 2, 2017, formerly attached as Exhibit 1 to the Elrod Decl.

**Netz Rebuttal**...........................................Rebuttal Expert Report of Janet S. Netz, dated May 3, 2017, formerly attached as Exhibit 2 to the Elrod Daubert Decl.

**Neumann Dep.**................................ Transcript of the Videotaped Deposition of Dania Neumann, dated June 13, 2017

**Opening Br.** ..................................................Plaintiffs' Memorandum of Law in Support of Motion for Class Certification, filed May 2, 2017 [ECF No. 1891]

**PIMCO, Aff. of Eric J. Miller** ......... Affidavit of Eric J. Miller re: Processing of Proof of Claim and Release Forms; and Calculation of Allowed Claims, *Kohen v. Pacific Inv. Mgmt. Co. LLC*, 244 F.R.D. 469 (Ill E.D. 2007) (No. 05 C 4681), dated February 24, 2017, formerly attached as Exhibit 31 to the Elrod Daubert Decl.

**Rabobank Br.** ............................................. Rabobank's Memorandum of Law in Opposition to Exchange-Based Plaintiffs' Motion to Certify a Trader Conduct Class, filed June 30, 2017 [ECF No. 2023]

**Reply Decl.** ................................................. Declaration of Thomas W. Elrod Filed in Support of Exchange-Based Plaintiffs' Reply Memorandum of Law in Further Support of Motion for Class Certification and Addressing Defendant Rabobank's Trader-Based Arguments Filed contemporaneously herewith

**Seyhun Dep. I** ............................... Transcript of the Videotaped Deposition of H. Nejat Seyhun, dated March 29, 2017, formerly attached as Exhibit 11 to the Elrod Daubert Decl.

**Seyhun Dep. II** .............................. Transcript of the Videotaped Rebuttal Deposition of H. Nejat Seyhun, dated June 20, 2017, formerly attached as Exhibit 12 to the Elrod Daubert Decl.

**Seyhun Report** ................................. Expert Report of H. Nejat Seyhun, dated February 2, 2017, formerly attached as Exhibit G to the Kovel Decl.

**Seyhun Rebuttal** ................................. Rebuttal Expert Report of H. Nejat Seyhun, dated May 3, 2017, formerly attached as Exhibit 10 to the Elrod Daubert Decl.

**Seyhun Sur-Sur Rebuttal** ........................... Sur-Sur Rebuttal Expert Report of H. Nejat Seyhun, filed contemporaneously herewith

## OTHER TERMS

**Term** ................................................................................................**Definition/Description**

**CEA** ................................................................................................ Commodities Exchange Act

**CFTC** ........................................................................Commodities Futures Trading Commission

**Class** .......................................................... All persons, corporations and other legal entities (other than Defendants), their employees, affiliates, parents, subsidiaries, and co-conspirators) ("Eligible Persons") that transacted in Eurodollar futures and options on Eurodollar futures on the Chicago Mercantile Exchange between January 1, 2005 and May 17, 2010 (the "Class Period") and that were harmed or satisfy one or more of "A," "B," or "C" below.

- SUBPART A. [Efficient Enforcers who sold prior to August 7, 2007 and held until the final expiration of the Eurodollar futures contract after August 7, 2007 during Periods 1-3.] Eligible Persons that sold a Eurodollar futures contract, or bought a put option or sold a call option on Eurodollar futures before August 7, 2007 and purchased all or part of this short position back at the final expiration formula price of a Eurodollar futures contract expiring after August 7, 2007 and before May 17, 2010.
- SUBPART B. [Period 0.] Eligible Persons that (1) purchased Eurodollar futures contract(s) or call options on Eurodollar futures on the following dates: April 7, 2006, August 17, 2006, October 26, 2006, and December 22, 2006; or (2) sold Eurodollar futures contracts or purchased put options on Eurodollar futures on the following dates: September 29, 2005, November 28, 2005, June 30, 2006, September 1, 2006, November 29, 2006, February 28, 2007, March 1, 2007, July 30, 2007, and August 6, 2007; or (3) purchased or sold Eurodollar futures contracts (or options) and that were harmed between January 1, 2005 and August 6, 2007 inclusive.
- SUBPART C. [Period 3 CEA suppression and TBM claims] Eligible Persons that initiated a Eurodollar futures contract or options position on or after April 15, 2009 and on or before May 17, 2010 ("Period 3"), and who satisfy "1" or "2" below.
  - 1. Eligible Persons included in "C" are those that purchased or sold a Eurodollar futures or options contract to initiate a position during Period 3 and that were harmed.
  - 2. Eligible Persons included in "C" are also those that purchased a Eurodollar futures contract (including Eurodollar futures contracts the expiration for which was less than 365 calendar days after the date of such purchase) to initiate a long position during Period 3, and continued to hold all or part of such long position until liquidating the position after Period 3.

**Class Member**............................................................. Any Eligible Person belonging to the Class

**Class Period** .................................................................. January 1, 2005 through May 17, 2010

**EDF**............................................................................................................ .Eurodollar Futures

**FCM** ................................................................................................Futures Commission Merchant

x

**LIBOR**................................................................................London Interbank Offered Rate

**Period 0** ........................................................................January 1, 2005 through August 8, 2007

**Period 3** .............................................................................. April 15, 2009 through May 17, 2010

**TBM** ................................................................................. Trader-Based Manipulation

Exchange-Based Plaintiffs respectfully submit this memorandum of law and declaration in further support of their motion pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to certify this action as a class action for their claims under the Sherman Act, 15 U.S.C. § 1 *et seq.* and Commodity Exchange Act, 7 U.S.C. § 1 *et seq.* ("CEA").[1]

Rabobank's TBM of LIBOR, is typical of most CEA cases in which a commodity futures contract (such as an EDF contract) is manipulated for the profit (trading gain) of the manipulator. That Rabobank engaged in TBM by manipulating LIBOR is also unremarkable as it is the settlement price of EDFs. *See Cargill, Inc. v. Hardin*, 452 F.2d 1154, 1163 (8th Cir. 1971) ("The aim must be therefore to discover whether conduct has been intentionally engaged in which has resulted in a price which does not reflect basic forces of supply and demand."). For this reason, and the others stated herein, this case is no different from other CEA cases in this district that have certified classes. *See* n.25, *infra*. As in those cases, here Plaintiffs' claims concerning Rabobank's Period 0 and Period 3 manipulations of EDFs satisfy Rule 23's requirements.

<u>ARGUMENT</u>

**I.    THE PROPOSED TRADER CONDUCT CLASS IS ASCERTAINABLE**

Rabobank argues that Plaintiffs' proposed class should not be certified because it is not "ascertainable in an administratively feasible way." Rabobank Br. at 7. But this is precisely the standard for ascertainability recently rejected by the Second Circuit. *See In re Petrobras Sec.*, 862 F.3d 250, 2017 WL 2883874, at *9 (2d Cir. July 7, 2017). Rabobank also greatly exaggerates the obstacles to obtaining trading records.

---

[1] References to "Ex." are to the "Reply Decl."

### A. Neither Ascertainability, Nor Any Other Aspect of Rule 23, Includes a Free-Standing Administrative Feasibility Requirement

In its recent *Petrobras* decision, the Second Circuit joined a chorus of other appeals courts and "decline[d] to adopt a heightened ascertainability theory that requires a showing of administrative feasibility at the class certification stage." *Id.*[2] The Second Circuit explained that "creating" such a free-standing administrative manageability requirement "would upset the careful balance of competing interests codified in the explicit requirements of Rule 23." *Id.* Contrary to Rabobank's argument, *see* Rabobank Br. at 6, the "modest" ascertainability requirement that the *Petrobras* court recognized *does not* "concern itself with the plaintiffs' ability to offer *proof of membership* under a given class definition." *Petrobras,* 2017 WL 2883874, at *12 (emphasis added). Instead, "[t]he ascertainability doctrine . . . requires only that a class be defined using objective criteria that establish a membership with definite boundaries." *Id.* The Class here, which is defined using objective criteria, fulfills this requirement.

### B. Plaintiffs Will Be Able to Successfully Administer the Proposed Class

Rabobank argues that Plaintiffs' proposed Class cannot be certified because certain trading records might not be available. *See* Rabobank Br. at 7-13. No such showing is required by Rule 23. Even so, in essentially *every* securities and commodities case, some class members have been able to obtain trading records necessary to substantiate their claims, while others have not.[3] Courts

---

[2] Rabobank relies on *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) and lower court decisions that pre-date *Petrobras* and apply an incorrect ascertainability standard. Rabobank Br. at 7 n.3, 10, 13.

[3]

have not found this to pose a barrier to class certification on ascertainability or any other grounds.[4] In many commodities and securities cases, class members routinely provide records many years after the conduct on which the suit is based even after statutory record requirements have expired.[5] Rabobank offers no reason why this case is different.

Rabobank also overstates Class members' difficulties in locating and obtaining trading records. During the Class Period, it was common practice for FCMs to email clients daily and monthly trading statements, *see, e.g.*, Haynes Dep. 259:25-260:4, and many email systems indefinitely preserve emails until a user takes affirmative steps to delete them. In fact, several named Plaintiffs have complete trading records from the Class Period.

Moreover, Class members who are unable to locate trading statements should be able to obtain them from their FCMs. Many of the Defendants' affiliates are FCMs and may have, due to this litigation preserved client records of EDF and options trades. Defendants, including their subsidiaries (and predecessors thereto), comprised: (i) *8 out of the 10* largest FCMs; (ii) approximately *a quarter of all* CME FCMs during this period; and (iii) a *majority* of the FCMs

---

[4] *See also Mullins v. Direct Digital, LLC*, 795 F.3d 654, 664 (7th Cir. 2015) ("[A] district judge has discretion to (and we think normally should) wait and see how serious the problem may turn out to be after settlement or judgment, when much more may be known about available records, response rates, and other relevant factors."); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) ("Justifying an administrative feasibility requirement as a means of ensuring perfect recovery at the expense of any recovery would undermine the very purpose of Rule 23(b)(3).").

[5] *See, e.g.*, "Order Preliminarily Approving Proposed Settlement," *In re Optiver Commodities Litig.*, No. 08 Civ. 06560 (LAP) (S.D.N.Y. Jan. 7, 2015) [ECF No. 46] (describing class period between March 2, 2007 and March 26, 2007 and setting claim deadline of August 3, 2015); "Order Preliminarily Approving Proposed Settlement," *In re Platinum & Palladium Commodities Litig. (Futures Action)*, No. 10 Civ. 03617 (WHP) (S.D.N.Y. July 15, 2014) [ECF No. 212] & "Revised Scheduling Order" [ECF No. 225] (collectively, describing class period between June 1, 2006 and May 21, 2008 and setting claim deadline of April 29, 2015); "Amended Order Preliminarily Approving Final Settlement," *In re IMAX Corp. Sec. Litig.*, No. 06 Civ. 6128 (NRB) (S.D.N.Y. Mar. 28, 2012) [ECF No. 203] (describing class period between February 23, 2007 and July 20, 2007 and setting claim deadline of June 14, 2012); "Order Approving the Form and Manner of Notice," *Jaffe v. Household International, Inc.*, No. 02 Civ. 5893 (RAG) (N.D. Ill. Jan. 11, 2011) [ECF No. 1721] (describing settlement class period between August 23, 1997 and August 11, 2002 and setting claim deadline of May 24, 2011).

(and brokers) upon which the named Plaintiffs relied.[6] Nor does the fact that some FCMs are no longer in business necessarily preclude obtaining trading records. FCMs that are acquired by other companies are often able to produce pre-acquisition client records. *See, e.g.*, Decl. in Supp. of Mot. for Final Approval of Class Action Settlement at ¶ 8, *In re Crude Oil Commodity Futures Litig.*, No. 11 Civ. 3600 (KBF) (S.D.N.Y. Jan. 14, 2016) [ECF No. 336] [Ex. 13] (Société Générale advised A.B. Data that it was the successor to SG Americas Securities, LLC; Newedge USA, LLC; Calyon Financial, Inc.; and Fimat USA, LLC and produced customer records for almost 10,000 different customers). Even bankrupt FCMs may be able to produce records through their trustees. *See* Miller Dep. 164:17-165:6 (A.B. Data has successfully obtained trading records from MF Global's bankruptcy trustee).[7]

Rabobank further argues that there is no administratively feasible way to determine Class members' net trading positions, even though their own expert claims to have done so with respect to certain Plaintiffs. *Compare* Rabobank Br. at 11 & n.28, *with* Culp Dep. 28:33. First, this argument is premised on speculation that Class members' losses on their EDF trades on U.S. exchanges will be netted against profits earned from EDF trades on foreign exchanges, as well as profits earned from trading in other LIBOR-linked instruments. Such speculation is both premature and unfounded because the Court has not yet ordered a plan of allocation or otherwise resolved

---

[6] *See* Ex. 4 (CFTC FCM financial report as of July 31, 2007, as determined by the total amount of funds that an FCM is required to segregate on behalf of customers trading). The Defendant-affiliated FCMs that Plaintiffs used include: JP Morgan Securities LLC; Credit Suisse AG; HSBC; UBS AG; UBS Securities LLC; Merrill Lynch (now Bank of America); Newedge USA, LLC (now Société Générale); and Fimat USA, LLC (now Société Générale).

[7] In some commodities cases, plaintiffs have also been able to obtain exchange and/or clearing data from an exchange and use this information to supplement trading records during claims administration. *See, e.g.*, Miller Report at ¶ 16. Although Rabobank argues that Plaintiffs here will not be able to rely on *clearing* data because it was not collected at the customer level, *see* Rabobank Br. at 9, Rabobank's expert concedes that the CME collected customer-level *exchange* data during the Class Period, Culp Sur-Rebuttal at ¶ 67 n.86; *see also* Miller Opp. at 16 & n.12. In addition, Rabobank misleadingly suggests that the fact that the CME has not produced records responsive to Plaintiffs' subpoena indicates those records do not exist. As Rabobank is well aware, at Defendants' insistence, Plaintiffs' subpoena only requires that CME produce certain records during merits discovery and/or claims administration. *See* ECF No. 1001; ECF No. 1007 at 3; *see also* Miller Opp. at 16-17.

disputes over the appropriate netting formula. Moreover, Rabobank's assumed netting method is contrary to law. Plaintiffs' proposed Class definition is restricted to EDFs and options traded on the CME and, crucially, the CEA excludes non-domestic and over-the-counter transactions. *See In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR I")*, 935 F. Supp. 2d 666, 695-96, Slip Op. at 94-96 (S.D.N.Y. 2013) [ECF No. 286]; *cf. Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14 Civ. 7126 (JMF), 2017 WL 404500, at *1 (S.D.N.Y. Jan. 27, 2017) ("At most . . . netting calls for offsetting transactions of the same type."). Unless the formula allows Class members to recover for losses resulting from trades in other LIBOR-linked instruments, any profits earned from such trades should not be deducted from their damages. Holding otherwise would unjustly insulate wrongdoers from liability.[8] *Cf. Randall v. Loftsgaarden*, 478 U.S. 647, 664 (1986) ("[D]eterrent purpose is ill served by a too rigid insistence on limiting plaintiffs to recovery of their 'net economic loss.'"); *Apex Oil Co. v. DiMauro*, 744 F. Supp. 53, 55 (S.D.N.Y. 1990) (netting inappropriate where it would "unjustly enrich" the defendant, "shelter it from any appreciable liability," or "undermine the goal of deterrence").

Second, Rabobank exaggerates the prevalence within the Class of trading either other LIBOR-linked instruments or on foreign exchanges. None of the named Plaintiffs traded EDFs on a foreign exchange during the Class Period.[9] And EDFs were the only LIBOR-linked instrument that most named Plaintiffs traded.

---

[8] Because Rabobank's proposed netting formula could reduce Class members' CEA recovery, traders of EDFs with equivalent global net losses due to Defendants' manipulation of LIBOR would receive inequitable and inconsistent recoveries based solely on where their trades were executed. Netting across multiple LIBOR-linked instruments would lead to similarly unjust results.

[9]

Finally, Rabobank argues that the Class is not administratively feasible because of the large volume of trading records likely to be submitted during the claims process. *See* Rabobank Br. at 13-14. But experienced class action administrators regularly—and successfully—process and analyze voluminous trading records in commodities and securities litigation (including across products). *See In re Natural Gas Commodities Litig.*, 231 F.R.D. 171, 185 (S.D.N.Y. 2005); Miller Decl. at ¶ 26.[10]

### C.    Plaintiffs Satisfy Rule 23's Superiority Requirement

Rabobank does not dispute that a "class action is superior to other available methods for fairly and efficiently adjudicating this litigation." Fed. R. Civ. P. 23(b)(3). Yet, even if Rabobank's ascertainability arguments were re-framed in terms of superiority, they would fail. The superiority analysis required by Rule 23, of which manageability is a component, "is explicitly comparative in nature." *Petrobras*, 862 F.3d at *11. Rabobank does not purport to argue that, if the proposed Class's claims were brought as multiple individual actions that (i) more trading data would be available, or (ii) trading records would be processed, and damages calculated, more quickly. And the expense of litigating such a complex suit would be prohibitive for much of the Class.[11] Nor do Rabobank's administrative feasibility arguments defeat predominance, *see* Section III, *infra*.

### D.    The Proposed Class Is Not an Improper Fail-Safe Class as to TBM Claims

Rabobank characterizes the Class as impermissibly fail-safe because it includes in the

---

[10] Rabobank's experience in processing the records of named Plaintiff Atlantic Trading—an especially large trader—is not to the contrary. ███████████

[11] *Natural Gas*, 231 F.R.D. at 184-85 (class action superior where "class is likely to include thousands of members, and the high cost of the extensive discovery . . . and application of complex methodologies by experts, would be prohibitively costly for individual plaintiffs to shoulder alone.").

definition objective criteria followed by the term "that were harmed." Rabobank Br. at 21. But inclusion of the phrase "that were harmed" does not render the Class fail-safe because the qualifier here relates to an issue that can be resolved mechanically.[12] Indeed, the Second Circuit recently affirmed certification of a similarly defined class. *See Petrobras*, 2017 WL 2883874, at *2 (classes include "and were harmed thereby").[13] Here, as in *Petrobras*, the determination of whether a Class member was "harmed" rests on a mechanical determination of whether the Class member traded on a day of manipulation against the direction of that manipulation. *See* Netz Report at 47-48; Seyhun Rebuttal at ¶¶ 91-92. The use of the phrase "and were harmed" does not allow Class members to circumvent *res judicata* because "[f]or purposes of determining who can bring suit in the future, that phrase is simply superfluous because an investor who is not damaged would not have a viable claim." *In re IPO Sec. Litig.*, 671 F. Supp. 2d at 492.

It is perfectly appropriate, even at class certification, to include the phrase "that were harmed" in the class definition so that the mechanical identification of dates and class members can occur on a complete record.[14] It would be premature to disentangle injured Class members

---

[12] The fail-safe issue arises when class definitions "beg[] the ultimate question underlying the defendant's liability in the case," Newberg on Class Actions § 3:6 (5th ed.), such that the definition "shields the class members from adverse judgment," *Gray v. Cnty. of Riverside*, No. 13 Civ. 444, 2014 WL 5304915, at *13 (C.D. Cal. Sept. 2, 2014); *In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 n.18 (1st Cir. 2015) (same). The Second Circuit has yet to rule on the propriety of fail-safe class definitions and other Circuits are split.

[13] *See also Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, No. 14 Civ. 4394 (AJN), 2017 WL 1331288, at *11 (S.D.N.Y. Apr. 4, 2017) ("and were damaged thereby" appears regularly in class definitions); *Fort Worth Empls.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 143 (S.D.N.Y. 2014) ("'[A]nd were damaged thereby' appears regularly in class definitions even though the ultimate question of damages may not be settled until later in the litigation."); 5 Moore's Federal Practice § 23.21[3][a] ("A reference to damages or injuries caused by particular wrongful actions taken by the defendants will be sufficiently objective criterion for proper inclusion in a class definition."); *In re IPO Sec. Litig.*, 671 F. Supp. 2d 467, 493 (S.D.N.Y. 2009) (same).

[14] *See* Order Denying Rabobank's Mot. to Strike Class Allegations, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 2851333, at *2, Slip Op. at 4 (S.D.N.Y. May 13, 2016) [ECF No. 352] ("While Rabobank notes a number of factors that may need to be taken into account in order to determine whether an absent member of the putative class was injured by Rabobank's conduct, they have not shown that such issues could not be 'determined objectively through mechanical calculation,' . . . thus obviating the need for numerous 'mini-trials' as to every putative class member's holdings.") (quoting *Amaranth*, 269 F.R.D. at 381).

from uninjured ones at this time. *Kohen v. Pac. Inv. Mgmt. Co. LLC ("PIMCO II")*, 571 F.3d 672, 676 (7th Cir. 2009) ("[if] before certifying a class the district judge was required to determine which class members had suffered damages," that would "pu[t] the cart before the horse in a way that would vitiate the economies of class action procedure"); *id.* at 677 (certification not defeated by "possibility or . . . inevitability" that "a class will often include persons who have not been injured by the defendant's conduct; indeed this is almost inevitable because" at class certification "the facts bearing on their claims may be unknown").

Rabobank's goal is to limit the Class prematurely to presently-known TBM dates, before merits discovery. *See, e.g.*, Beevers Report at ¶¶ 14, 44, 134.[15] But if the Court has concerns with the inclusion of "and were harmed," then "reformation of the class definition . . . is the appropriate response." *LIBOR*, 2016 WL 2851333, at *2, Slip Op. at 4; *see also Amaranth*, 269 F.R.D. at 382; *Natural Gas*, 231 F.R.D. at 179 (excising the phrase, "who suffered losses by reason of defendants' manipulation," from class definition and limiting it by contracts and date). Indeed, the Court could excise the phrase "and were harmed," and once discovery is complete, Plaintiffs can amend the class definition to include the complete set of dates.

## II.    PLAINTIFFS' PROPOSED TRADER CONDUCT SUBCLASSES SATISFY RULE 23(A)'S REQUIREMENTS

Rabobank argues that Plaintiffs may not have an adversely impacted net position on *every* TBM day and therefore do not "possess the same interest" as Class members who were adversely impacted on *other* days. Rabobank Br. at 18-19.[16] From this false premise, Rabobank contends

---

[15] *See also Nexium*, 777 F.3d at 17 ("[C]lass certification ought not turn into a free-ranging merits inquiry through unnecessary demands for exact calculations of damages.") (citing *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013)) (internal marks omitted).

[16] Rabobank cites inapposite cases in support. *See* Rabobank Br. at 19 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997); *Salsitz v. Peltz*, 210 F.R.D. 95, 98-99 (S.D.N.Y. 2002). In *Salsitz*, the plaintiff was not an actual harmed seller in a Dutch auction. *Id.* at 98. Here, at least some the plaintiffs were harmed by Rabobank's conduct. *See* Section II.A, *infra*.

that Plaintiffs lack standing and are atypical and inadequate to assert claims for the other TBM days. *See id.* This argument has been rejected. In *In re Sumitomo Copper Litig. ("Sumitomo I")*, 182 F.R.D. 85 (S.D.N.Y. 1998), for example, defendants argued that, "due to the number of trading days in the proposed Class Period, the proposed class representatives, who traded on isolated dates during this time period, could only have been injured by a fraction of the conduct attributed to defendants, rendering their claims atypical." *Id.* at 94. The court rebuffed this argument because "every class member purchased or sold the same fungible [instruments] in the same centralized . . . market." *Id.* Where, as here, Rabobank engaged in a singular scheme utilizing the same method (false LIBOR) during the Class Period, the argument must also be rejected—just as it has been rejected "in cases with far more variation in fact among class members." *Id.* (collecting cases).[17]

## A. The Plaintiffs Have Standing

Plaintiffs have shown, and Rabobank has not rebutted, that at least some of the Plaintiffs traded in a manner harmed by the alleged TBM. *See* Reply Decl. Ex. 35 (annexing Plaintiffs' financial expert's mechanical calculation of the net trades or certain Plaintiffs on relevant TBM days). For Article III and CEA standing, Plaintiffs need not prove that an injury was suffered on every day of the Class Period or every TBM day. *Amaranth*, 269 F.R.D. at 379 (plaintiffs "are not required to *prove* injury-in-fact at the class certification stage"); *id.*, at 371 n.9 (fact that named plaintiffs "did not trade through entire class period" and "may have received a net benefit as a result of the alleged manipulation" does not defeat certification). Moreover, Rabobank's challenges to the accuracy of Plaintiffs' statements concerning their net positions on various TBM

---

[17] *See also Kohen v. Pac. Inv. Mgmt. Co. LLC ("PIMCO I")*, 244 F.R.D. 469, 479 (N.D. Ill. 2007) (despite argument that "a potential conflict of interest [exists] in proving various levels of artificiality on different dates throughout the class period, courts have rejected similar arguments when certifying classes"); *PIMCO II*, 571 F.3d at 679 ("hypothetical" issues as to whether class members traded during different parts of class period could be addressed through sub-classes "if and when they became real").

days are themselves inaccurate. *See* Rabobank Br. at 19.[18] Rabobank's arguments regarding September 1, 2006 are also misplaced.[19] Likewise, Metzler suffered net losses as a result of Rabobank's TBM on,[20] and its losses are adequate despite it being a German entity[21] that manages multiple funds.[22] Rabobank Br. at 20. Nor does Rabobank dispute that FTC traded extensively



[18]

[19] Rabobank does not dispute that the Court previously determined that Plaintiffs adequately alleged that Atlantic Trading was harmed by Rabobank's manipulation on September 1, 2006. *In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR III")*, 27 F. Supp. 3d 447, 464 n.9, Slip Op. at 23 n.9 (S.D.N.Y. 2014) [ECF No. 568].

[20] A table setting forth Metzler's daily net purchases and sales in EDFs on November 16, 2006 evidencing trader-based manipulation in accordance with the Court is set forth in Reply Decl. at Exs. 29-31.

[21] Rabobank's reliance on *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 103-05 (S.D.N.Y. 2007), *see* Rabobank Br. at 21 n.19, for the proposition that German investors should be excluded from class actions on *res judicata* grounds, is completely misplaced. *In re Vivendi* concerned ***absent*** class members. It is settled law that foreign investors are ***not*** inadequate class representatives merely because of speculative *res judicata* arguments. *See, e.g.*, *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151, 153 (D. Del. 2005) (observing that "many courts, including this one, have approved foreign investors as lead plaintiffs in cases such as this" and further noting the *res judicata* argument is a "red herring"). In the class action context, *res judicata* concerns, if any, relate to whether rulings will have preclusive effect on ***absent*** foreign class members, not to whether parties appearing before the court will be bound. *See OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 405-07 (D. Del. 2014) (rejecting speculative *res judicata* arguments raised against a non-U.S. plaintiff where it voluntarily before the court); *see also Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1139 (C.D. Cal. 1999) (same).

[22] Rabobank argues that Metzler's failure to produce trading records for its other funds renders it inadequate because Rabobank does not know the funds' aggregate net change in position on any given day. Rabobank Br. at 20. Rabobank, however, has been aware of this issue for at least several months, *see* ECF No. 2044, and waited until after the close of discovery to raise it. Rabobank is merely speculating that Metzler's other funds may have benefitted on the days the fund at issue suffered losses. In any event, any purported failure by Metzler to produce the other funds' trading records sooner does not render it inadequate. *See Sumitomo I*, 182 F.R.D. at 96. Since the filing of Rabobank's brief, Metzler has produced the trades for additional funds, and Defendants have filed a supplemental brief addressing those trades. *See* ECF No. 2163. Rabobank's reliance on *South Ferry LP No. 2 v. Killinger*, 271 F.R.D. 653 (W.D. Wash. 2011) for the proposition that Metzler "failed to prove its standing" is inapposite. Rabobank Br. at 20 n.18. In *South*

throughout the Class Period.[23] The facts support Plaintiffs' assertion that they (or at least one of them) suffered injury on each of the Rabobank TBM days. *See* Reply Decl. Exs. 18, 29, 32. This is all that is required at class certification. *PIMCO II*, 571 F.3d at 675 ("[O]ne named plaintiff with standing . . . is all that is necessary."). Plaintiffs are not required to prove their case now before merits discovery, by which point they will be able to determine net gains and losses accurately.

**B.      Plaintiffs' Claims Are Typical of the Class**

Rabobank's hypotheses do not go to typicality, which is satisfied when "each class member's claim arises from the same course of events[] and each class member makes similar legal arguments to prove defendant's liability." *Amaranth*, 269 F.R.D. at 376. "Rather than focusing on the precise nature of plaintiffs' injuries"—as Rabobank has done here—"the typicality requirement may be satisfied where "injuries derive from a unitary course of conduct by a single system." *Id*. (internal quotations omitted). Here, Plaintiffs' and the Class' claims involve the same legal theory and arise from the same events and conduct by Rabobank to artificially distort EDF prices by one means (false LIBOR submissions) and for the purpose (of benefitting its trading positions). *See id*. at 379 (typicality satisfied where plaintiffs and the class "transacted in the same contracts, in the same centralized market place," were "negatively impacted by the same common course of manipulative conduct" and "will make similar legal arguments regarding the elements of each claim").

---

*Ferry LP*, the relevant Metzler fund closed during the pendency of the litigation and the court found evidence of who had the right to bring the claims on behalf of the dissolved fund untimely. *See id*. at 658. Here, multiple of Metzler's funds that assigned their claims to Metzler remain open and there is no equivalent standing issue. Indeed, Rabobank's authority makes clear that Metzler has standing. *See id*. ("[T]he Supreme Court held that a valid assignment gives a plaintiff standing to pursue the assignor's claims, even if the assignee would not receive any pecuniary gain from pursuing the action and would not otherwise have standing." (citation omitted)). Rabobank's purported concern that certain of Metzler's trading records "do not reference the time zone" is resolved easily. Rabobank Br. at 12 n.9. Metzler's representative testified that the times were Frankfurt time. *See* Neumann Dep. 159:10-11.

[23] Rabobank incorrectly contends that FTC "acknowledged that the trading records it produced were incomplete." Rabobank Br. 8. ████████████████████████████████████

### C.       Plaintiffs, and their Counsel, Are Adequate Representatives of the Class

Rabobank's day-by-day attacks also fail to undermine adequacy, an inquiry focused on whether Plaintiffs' "interests are antagonistic to the interest of other members of the Class" and whether the "attorneys are qualified, experienced and able to conduct the litigation." *Amaranth*, 269 F.R.D. at 376. Rabobank identifies no antagonistic interests between Plaintiffs and the Class and has not suggested that the Court revisit its appointment of Interim Lead Counsel. Moreover, Rabobank's contention that named Plaintiffs may not have suffered a net loss on every day of the Class Period or every TBM day has been rejected in analogous cases. *See*, *e.g.*, *id.* at 380-81; *see also PIMCO I*, 244 F.R.D. at 475-76; *PIMCO II*, 571 F.3d at 675.

### D.       Numerosity Is Satisfied with Respect to the TBM Claims

Rabobank makes no effort to dispute the facts concerning numerosity. *See* Rabobank Br. at 20. Insofar as "numerosity can be presumed at a level of 40 members or more," *Amaranth*, 269 F.R.D. at 375-76, numerosity is satisfied. ██████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ Thus, it is a statistical certainty that at least 40 class members traded in Periods 0 and 3. *Id.* Courts have routinely found numerosity satisfied from a showing of the number of large traders during the class period. *See Amaranth*, 269 F.R.D. at 379 (existence of 1,000 large traders during class period that comprised a "small number" of the class made it "highly likely" that the class satisfied numerosity); *Natural Gas*, 231 F.R.D. at 179 (existence of 200 large traders supported finding of numerosity).[24]

---

[24] Rabobank does not present any facts from which this Court could make the illogical assumption that at least 40 persons or entities, out of the thousands who traded EDFs on a given day, did not have a net change in position adversely impacted by Rabobank's TBM.

## III.   PLAINTIFFS SATISFY RULE 23'S COMMONALITY AND PREDOMINANCE REQUIREMENTS

Plaintiffs' proposed TBM subclass plainly satisfies Rule 23's commonality and predominance requirements. *All* of the elements of Plaintiffs' CEA manipulation claims arising from TBM—ability, intent, artificiality, causation, and damages, *LIBOR I,* 935 F. Supp. 2d at 713, Slip Op. at 94-96—are common issues.[25] Plaintiffs' experts further propose a reliable methodology for determining artificiality, impact, and damages on a class-wide basis. Ignoring the numerous common legal and factual issues that span the TBM periods, Rabobank nevertheless points out that *some* facts might differ with respect to *some* of the impacted trading days. Rabobank Br. at 15. But "Rule 23(a)(2) simply requires that there be issues whose resolution will affect all *or a significant number* of the putative class members." *Id.* at 3-4 (internal citation omitted). And common evidence will predominately determine on which days Rabobank had the ability and intent to cause—and in fact caused—artificial prices in EDFs and options.[26] *See Amaranth*, 269 F.R.D. at 371 n.9. Taken as a whole, the numerous issues common across the entire TBM subclass predominate over the minor individual issues that may arise. *See* Opening Br. at 3.[27]

---

[25] In certifying the class in *Amaranth*, a case that involved TBM, Judge Scheindlin was persuaded by the reasoning of similar commodities manipulation cases such as *Sumitomo I* and *In re Sumitomo Copper Litigation ("Sumitomo II")*, 194 F.R.D. 480 (S.D.N.Y. 2000). Judge Scheindlin noted that the "Second Circuit expressly endorsed the rationale of *Sumitomo*" in denying defendants' petitions for leave to appeal the class certification decision. *Amaranth*, 269 F.R.D. at 371 & n. 6. Judge Scheindlin also found instructive the class certification decision in *In re Natural Gas Commodities Litigation*, 231 F.R.D. 171 (S.D.N.Y. 2005), *see Amaranth*, 269 F.R.D. at 371, as well as the decisions in *PIMCO I* and *PIMCO II*. Judge Scheindlin determined that the "theories underlying certification adapted in these cases," withstood the Second Circuit's preponderance of the evidence standard for class certification and "remain compelling." *Amaranth*, 269 F.R.D. at 372.

[26] Rabobank makes too much of this Court's conclusion that TBM was "day-to-day . . . episodic and varying in direction." Rabobank Br. at 15 (citing *In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR II")*, 962 F. Supp. 2d 606, 620, Slip Op. at 25-27 (S.D.N.Y. 2013) [ECF No. 389]). This ruling does not negate the fact that each instance of TBM was part of one uniform scheme by Rabobank that spans in Periods 0 and 3 that is amenable to class certification under Rule 23.

[27] If for any reason a single class for the entire-period Trader Conduct class is not certified, single-day subclasses would meet Rule 23(b)(3)'s requirements. The matter of subclasses can be considered in later stages of litigation if conflicts or manageability issues arise. *Sumitomo I*, 182 F.R.D. at 92 n.9 (citing *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 77 F.R.D. 361, 364 (S.D.N.Y. 1977) ("[I]f it should later appear that class status was improvidently

### A. Rabobank's Ability to Influence LIBOR and EDFs and Options Will Be Proven with Evidence that Is Common to the Class

There is no dispute that the question whether Rabobank was *able* to influence LIBOR on a given day will be answered using evidence that is common to every Class member who traded on that day. Indeed, Rabobank itself concedes that it had the ability to influence LIBOR.[28] Rabobank nonetheless suggests that "[p]roof that Rabobank had the ability to influence published LIBOR on one day does not establish that it could do so on another day." Rabobank Br. at 16. Yet much of the evidence used to show Rabobank's ability to manipulate LIBOR will be common to all TBM days throughout Class Period, including evidence concerning (i) the BBA submission process, (ii) Rabobank's use of false reports in the process, (iii) CME specifications for EDFs and options, and (iv) the relationship between LIBOR and the price of EDFs.

### B. Intent to Manipulate EDF and Option Prices Will Be Proven Through Common Evidence

There is likewise no dispute that the question whether Rabobank *intended* to influence LIBOR on a given day will be answered using evidence that is common to every Class member who traded on that day. As this Court previously explained, "[b]ecause plaintiffs may be able to make such a showing through common proof, intent does not present an inherently individual issue, much less one that necessarily predominates over common issues." *LIBOR*, 2016 WL

---

granted, the court will not hesitate 'alter or amend' its decision, pursuant to Rule 23(c), to eliminate the problem either by the creation of subclasses, the designation of specific issues only for class treatment, or, if necessary, the decertification of the class."). Each single-day subclass would consist of individuals with a net trading position adversely impacted by the artificiality present on one of the trading days that meets the Court's pleading requirements. Within each single-day subclass, directionality and magnitude of LIBOR artificiality would be the same subclass-wide, the impact of the artificiality on EDF prices would likely also be the same, as would the Defendants' liability. Numerosity for any one-day subclass is easily met, considering that the average daily open interest of EDFs and options is 9,466,816 for Period 0. Reply Decl. Ex. 36.

[28] ███████████████████████████████████████████

2851333, at *3, Slip Op. at 8-9. As with the CEA's ability prong, Rabobank argues that Plaintiffs must prove intent "separately, for each alleged instance of Trader Conduct." Rabobank Br. at 15. But Rabobank is wrong when it asserts that "[p]roving specific intent by one trader on one day proves nothing about the specific intent of *any* trader on another day." *Id.* at 15-16 (italics in original).[29] Intent is gleaned from the "totality of the circumstances." *In re DiPlacido*, C.F.T.C. No. 01-23, 2008 WL 4831204, at *27 (C.F.T.C. Nov. 5, 2008), *aff'd, DiPlacido v. C.F.T.C.*, 364 F. App'x. 657 (2d Cir. 2009). The fact that a Rabobank trader requested and received a false LIBOR submission on one day to benefit a trading position tends to prove intent associated with the conduct of Rabobank at other times.[30]

## C.   Plaintiffs Will Prove Artificiality of LIBOR Resulting from TBM Using Classwide Models and Other Common Evidence

Contrary to Rabobank's claims, "artificiality" and "causation" present common issues in cases like this one. *See, e.g.*, *Amaranth*, 269 F.R.D. at 383-84. █████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[29] According to Rabobank, this Court held that "conscious misbehavior or recklessness" satisfied the *pleading* standard for "specific intent," Rabobank Br. at 15 n.13 (citing *LIBOR III*, 27 F. Supp. 3d at 470, Slip Op. at 37-40), but at trial, the Class will be held to a different standard and will have to *prove* that "Defendants' 'purpose or conscious object' was to manipulate Eurodollar prices." *Id.* (citing *In re Commodity Exch., Inc. Silver Futures & Options Trading Litig.*, 560 F. App'x 84, 87 (2d Cir. 2014); *C.F.T.C. v. Hunter*, No. 07 Civ. 6682, 2012 WL 297838, at *1 (S.D.N.Y. Jan. 31, 2012); *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 249 (5th Cir. 2010)). Plaintiffs disagree that this Court set forth a different standard for pleading than exists for proof at trial. In any event, "purpose or conscious object" will also be proven with common evidence, as explained above.

[30] Rabobank argues that this Court's holding that the commodity underlying the EDF contract is a "hypothetical Eurodollar time deposit," not LIBOR, necessitates the conclusion that "evidence that traders specifically intended to move LIBOR is insufficient to prove intent." Rabobank Br. at 18. Rabobank's defense, however, is asserted as against the entire Class and once again proves that intent is a common issue.



In this case, as in other commodities manipulation cases, "all class members have a shared interest in compiling the historical data required to demonstrate price artificiality and have the same interest in proving price artificiality." *Natural Gas*, 231 F.R.D. at 183. To the extent Rabobank challenges the models as insufficient, its defense applies to the Class as a whole. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016) (defense that study was "unrepresentative or inaccurate" was "itself common to the claims made by all class members").[32]

---

**31** ████████████████████████████████████

[32] Rabobank argues that Plaintiffs' experts "contend" that "the probability that LIBOR had any effect on EDF trading prices varied from one contract to another." Rabobank Br. at 16-17 (citing Seyhun Dep. I 352:21-354:3; Netz Dep. I 208:10-22; Netz Dep. II 172:7-173:7). Rabobank also asserts that "Plaintiffs' experts' calculations of the alleged correlation between EDF prices and LIBOR also varied significantly by contract." Rabobank Br. at 17 (citing Seyhun Report, Table 10.2). This does not change the fact that the impact is measurable in a formulaic manner across the Class.

**D.     LIBOR Manipulation's Impact and Causation on EDF Prices Can Be Determined by Classwide Evidence**

Common issues of law and fact also predominate with respect to the impact of LIBOR manipulation on EDFs prices. Importantly, Plaintiffs' proof of causation will turn on "objective" facts, including (i) Rabobank's LIBOR submissions, (ii) the BBA's published LIBOR rates, and (iii) EDFs prices during the Class Period. *See Amgen*, 568 U.S. at 467 ("materiality" is a question based on objective facts, and therefore "common" to the class).

### 1. Plaintiffs Will Rely Predominantly on Evidence Common Across All TBM Days to Prove Rabobank Caused Artificial EDF Prices

As to causation, Rabobank suggests that, "[e]ven assuming some artificial EDF prices on some days, Plaintiffs still need to prove that Rabobank's conduct proximately caused the artificiality," and "'[p]roof that a bank caused an artificial price one day will not determine whether it did so on another day.'" Rabobank Br. at 17. █████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████

Moreover, courts previously have rejected Rabobank's argument that the determination of which days it engaged in TBM constitutes an individual inquiry. *See*, *e.g.*, *Sumitomo I*, 182 F.R.D. at 90-91 (plaintiffs need not establish, for purposes of class certification, that "the prices for each of the futures contracts . . . were artificial during all of the trading days involved"). At class certification, Plaintiffs are only required to establish a common methodology for proving that Rabobank made LIBOR false, the days on which it did so, and that the false LIBOR caused artificial EDF and options prices. Plaintiffs are not required to prove falsity or causation. *Cf. Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011).

### 2. Plaintiffs Will Rely Predominantly on Classwide Evidence to Show that the Magnitude of TBM Was Sufficient to Impact EDF Prices

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████



.[35] Rather than challenging the

application of these models, Rabobank argues that "individual contract-by-contract and trade-by-

trade inquiries are needed to determine whether any class members were injured"[36] because

"[m]ore than 40 different EDF contracts and more than 500 different options traded on the CME

at any given time during Period 0." Rabobank Br. at 16. Rabobank ignores that these were

standardized, uniform contracts that differed only in terms of maturity (futures and options) and

---

[33] *See Tyson Foods, Inc.*, 136 S.Ct. 1036 at 1047 ("When, as here, 'the concern about the proposed class is not that it exhibits some fatal dissimilarity, but rather a fatal similarity—[an alleged] failure of proof as to an element of the plaintiffs' cause of action—courts should engage that question as a matter of summary judgment, not class certification.") (citations omitted)); *In re MF Global Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 238 (S.D.N.Y. 2015) (in securities fraud actions, affirmative defenses are "subject to general proof" and "determinable on a class-wide basis").



[35] Under the guise of artificiality, Rabobank complains that "Plaintiffs' claims require trade-by-trade inquiries to determine which trades occurred at artificial prices." Rabobank Br. at 17. This, however, is a damages question addressed in Section II.D.5 *infra*.

[36] Rabobank relies upon inapposite cases for this proposition. *See* Rabobank Br. at 16 (citing *Sicav v. Wang*, No. 12 Civ. 6682, 2015 WL 268855, at *3 (S.D.N.Y. Jan. 21, 2015); *Kendler v. Federated Dep't Stores*, 88 F.R.D. 688, 693 (S.D.N.Y. 1981)). For example, *Sicav* was a securities fraud case where plaintiffs' injury depended upon the "mechanics by which shares of stock were priced" by the defendants. *Id.* at *3. The court refused to certify the class because, there, unlike here, a "trade-by-trade inquiry into whether or not there was persistent price inflation" was necessary. *Id.* In *Kendler*, the court refused to certify the class because the plaintiffs alleged "no single overall conspiracy" but rather "the existence of 16,000 mini-conspiracies," that were "unrelated" and therefore, no "generalized means" existed for proving the conspiracies. *Id.* at 693. This is clearly not the case here.

strike price (options).[37] Because of the uniform application of the models, Rabobank's complaint devolves into a common damages issue, which is insufficient to defeat class certification. *See* Section II.D.5, *infra*.

### 3. Intra-Day Factors Will Not Prevent Plaintiffs from Using Common Evidence to Prove Rabobank Caused Artificial EDF Prices

Rabobank argues that Dr. Seyhun's analysis does not account for intraday changes to the amount of LIBOR artificiality and its intraday impact on EDF prices and that this defeats predominance. *See* Rabobank Br. at 25-26. But as Dr. Seyhun has explained, because there is a single LIBOR fix and a single LIBOR artificiality per day, while EDF prices continually incorporate all fundamental information, there is nothing to be learned from intraday sampling of EDF data. *See* Seyhun Rebuttal at ¶¶ 135-38.[38]



---

[37] *See Natural Gas*, 231 F.R.D. at 183 (commonality and predominance satisfied notwithstanding that "class included investors in a diversity of positions;" the "date, size, or manner of purchase; the type of purchaser; [and] the presence of both purchasers and sellers").

[38] 



████████████████████████████████

**4.**     **Plaintiffs' Expert's Causation Analysis and Willingness to Incorporate New Evidence Is Sound**

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████. Moreover, there is no requirement that an expert's statistical models be finalized at class certification. *See Amaranth*, 269 F.R.D. at 385–86 (although "the statistical and econometric models proposed by plaintiffs are in some respects incomplete" plaintiffs are "not required to successfully employ their proposed methods at the class certification stage"). Rather, "[t]he point for Rule 23 purposes is to determine whether there is an acceptable class-wide . . . approach, not to actually calculate under that approach before liability is established." *In re Scotts*

_____

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████

*EZ Seed Litig.*, 304 F.R.D. 397, 414 (S.D.N.Y. 2015).[41]

### 5.    Plaintiffs Will Use a Common Methodology for Calculating Class Member Damages

Rabobank also suggests that the calculation of individual Class members' damages will defeat predominance. Rabobank Br. at 23-24. However, as the Court noted, the Second Circuit has recently reiterated that "it [is] well-established . . . that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification under Rule 23(b)(3)." *LIBOR*, 2016 WL 2851333, at *4, Slip Op. at 10 (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)).[42]

Even so, in commodities manipulation class actions, like this one, calculating damages is predominantly a common issue. Class members' damages (including netting) are determined mechanically using class member trading records submitted through a claims procedure. *See* Section II.A, *supra* (*see also* Ex. 35). For this reason, in prior commodities cases, courts have spurned attacks identical to those asserted here. In *Amaranth*, for example, Judge Scheindlin rejected defendants' argument that "determining whether *each* class member was economically injured, and thus, the amount of damages (if any) due to *each* individual will require an inquiry into a series of individualized issues." 269 F.R.D. at 385. Judge Scheindlin further noted that, even if determining injury and damages "will raise *some* questions of an individual nature, . . . this fact is insufficient to prevent class certification where questions of liability are common to all members

---

[41] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This is exactly what one would expect when Plaintiffs pled that TBM was based on traders' positions on the given manipulated days. *See LIBOR III*, 27 F. Supp. 3d at 464-65.

[42] Rabobank's argument that, "[b]ecause the individuals who allegedly made requests vary from day to day, . . . proof of jurisdiction also varies from day to day," Rabobank Br. at 18, overlooks that the Class has a unified desire to prove personal jurisdiction for the entire Class Period. Even assuming *arguendo* that some days did not involve conduct giving rise to personal jurisdiction, the mechanical function of eliminating those days would not defeat commonality.

of the class." *Id.* (emphasis added). Moreover, Rabobank's invocation of the standards set forth in *In re Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), to somehow vitiate the holdings in *Amaranth*, 269 F.R.D. 366, *Sumitomo I*, 182 F.R.D. 85, and *Natural Gas*, 231 F.R.D. 171, is ineffective, *see* Rabobank Br. at 28. Contrary to Rabobank's misleading characterization, *Amaranth* was decided under the same certification standard adopted by *Wal-Mart*, and required that plaintiffs prove each of the Rule 23 elements by a preponderance of the evidence. 269 F.R.D. at 371.

Nor would the purported need to consider Class members' hedging positions in LIBOR-based instruments beyond EDFs, *see* Rabobank Br. at 29 (which Plaintiffs' dispute is appropriate at this stage of litigation),[43] be a bar to certifying a single TBM subclass or multiple single-day TBM subclasses. To deny certification of a class based on the purported need to net out related assets would prevent the certification of classes in CEA cases involving the manipulation of commodities in which businesses, farmers, or oil refiners may hold assets priced in relation to futures or their underlying assets. If this Court required the netting of Class member's off-exchange hedging instruments, something the claims administrator says it can do,[44] it would have to also allow Class members to increase their damages by any off-exchange LIBOR instruments that decreased in value through the manipulation, or defendants "will be either unjustly enriched or sheltered from any 'appreciable liability.'" *Minpeco*, 676 F. Supp. at 490 (quoting *Loftsgaarden*,

---

[43] *See Apex*, 744 F. Supp. at 58 (holding, at summary judgment, that counterclaim must fail because, after netting, no net harm); *Minpeco, S.A. v. Conticommodity Services, Inc.*, 676 F. Supp. 486, 490-491 (S.D.N.Y. 1987) (deciding at summary judgment that plaintiff's damage calculations must include netting, but holding for trial issue of calculating exact netting figure); *see also In re Lidoderm Antitrust Litig.*, No. 14 Md. 02521, 2017 WL 679367, at *17-18 (N.D. Cal. Feb. 21, 2017) (reserving damage calculation disputes for trier of fact).

[44] *See* Miller Report ¶ 24; *see, e.g. In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. 144, 156-57 (S.D.N.Y. 2012) (applying netting to damages and having claims administrator "handle the ministerial tasks" of determining net losses using information provided on claim forms.). Here, netting gains and losses "is not speculative or complex, only time-consuming." *Loeb Indus., Inc. v. Sumitomo Corp*, 306 F.3d 469, 493 (7th Cir. 2002).

478 U.S. at 664).

Rabobank also argues that "netting" presents concerns that go to "standing, not merely damages" because the CEA requires a "net loss." Rabobank Br. at 17. But netting is solely a damages issue. Each Class member is not required to establish standing. *PIMCO II*, 571 F.3d at 676 ("[A]s long as one member of a certified class has a plausible claim to have suffered damages, the requirement of standing is satisfied."). And Rabobank's argument that damages and netting will be rendered difficult by the variety of instruments, purchases versus sales, and differences in dates is not one that defeats predominance.[45]

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion to certify their claims for class action treatment.

---

[45] *See, e.g.*, *Sumitomo I*, 182 F.R.D. at 90 ("To the extent that plaintiffs' individual damages may vary depending on the types of trades they were engaged in during the Class Period, that is a matter for determination during the damages phase of trial."); *Schleicher v. Wendt*, 618 F.3d 679, 681 (7th Cir. 2010) ("Timing of each person's transactions, in relationship to the timing of supposedly false statements, determines how much a given investor lost (or gained) as a result of the fraud. But these questions can be resolved mechanically. A computer can sort them out using a database of time and quantity information.").

Dated: August 4, 2017

**KIRBY McINERNEY LLP**

By: _____

David E. Kovel
Karen Lerner
Thomas W. Elrod
Meghan J. Summers
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: (212) 371-6600
dkovel@kmllp.com
klerner@kmllp.com
telrod@kmllp.com

**LOVELL STEWART HALEBIAN JACOBSON LLP**

By: */s/ Christopher Lovell*
Christopher Lovell
Gary S. Jacobson
61 Broadway, Suite 501
New York, NY 10006
Telephone: (212) 608-1900
clovell@lshllp.com
gsjacobson@lshllp.com

*Interim Lead Counsel for the Proposed Class*

26