**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | ECF Case<br>MDL No. 2262<br>Master File No. 1:11-md-2262-NRB |
| THIS DOCUMENT RELATES TO: | |
| METZLER INVESTMENT GMBH, *et al.*,<br><br>                    Plaintiffs,<br><br>                    v.<br><br>CREDIT SUISSE GROUP AG, *et al.*,<br><br>                    Defendants. | No. 11-cv-2613-NRB<br><br>ORAL ARGUMENT REQUESTED |

**RABOBANK'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO EXCLUDE THE PROPOSED EXPERT OPINIONS OF <u>CRAIG S. BEEVERS</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

TABLE OF DEFINED TERMS ................................................................................. iii

PRELIMINARY STATEMENT ................................................................................. 1

LEGAL STANDARD ................................................................................................. 1

ARGUMENT .............................................................................................................. 2

I.      PLAINTIFFS FAIL TO JUSTIFY THE ADMISSIBILITY OF MR. BEEVERS'
        OPINIONS REGARDING RABOBANK'S DATA PRODUCTION. ............................. 2

II.     PLAINTIFFS FAIL TO DEMONSTRATE THE RELIABILITY OF
        MR. BEEVERS' THREE-STEP PROCESS TO IDENTIFY TRADER
        CONDUCT. ............................................................................................................. 4

        A.      Plaintiffs Have Not Shown That Mr. Beevers' Proposal to Identify
                Supposedly "Anomalous Submissions" Is Reliable. .................................... 4

        B.      Plaintiffs Have Not Shown That Mr. Beevers' Proposal to "Interpret"
                Documentary Evidence Is Reliable or Would Assist the Factfinder. ................ 6

        C.      Plaintiffs Have Not Shown That Mr. Beevers' Proposal to Examine
                Individual Traders' Derivatives Positions is Reliable. .............................. 7

III.    PLAINTIFFS HAVE NOT SHOWN THAT MR. BEEVERS' MONTE CARLO
        ANALYSIS IS RELEVANT OR RELIABLE. ................................................................... 9

IV.     PLAINTIFFS FAIL TO SHOW THAT MR. BEEVERS' RECITATION OF
        PUBLIC DOCUMENTS IS ADMISSIBLE EXPERT TESTIMONY. ......................... 10

CONCLUSION ........................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002).............................................................................5, 6, 8

*Daubert v. Merrell Dow Pharm.*,
   509 U.S. 579 (1993) ........................................................................... *passim*

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997)...............................................................................................3, 5

*IBEW Local 90 Pension Fund v. Deutsche Bank AG*,
   2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013) ..........................................................2

*In re DVI, Inc. Sec. Litig.*,
   2013 WL 56083 (E.D. Pa. Jan. 4, 2013) .................................................................8

*In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR IV")*,
   2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) .........................................................9

*Laumann v. NHL*,
   117 F. Supp. 3d 299 (S.D.N.Y. 2015) ....................................................................5

*Lava Trading, Inc. v. Hartford Fire Ins. Co.*,
   2005 WL 4684238 (S.D.N.Y. Apr. 11, 2005).........................................................10

*Li v. Aponte*,
   2009 WL 1285928 (S.D.N.Y. May 5, 2009) ...........................................................8

*Scott v. Chipotle Mexican Grill, Inc.*,
   315 F.R.D. 33 (S.D.N.Y. 2016) ...............................................................................1

**Other Authorities**

Fed. R. Evid. 702 ................................................................................... *passim*

# TABLE OF DEFINED TERMS

**Beevers Dep.** .......................................Transcript of Videotaped Deposition of Craig S. Beevers,
dated June 7, 2017

**Beevers Report** ..................................Expert Report of Craig S. Beevers, dated February 2, 2017

**Beevers Rebuttal** ..................................Rebuttal Report of Craig S. Beevers, dated May 3, 2017

**CEA** ..................................................................................................Commodity Exchange Act

**LIBOR**.................................................................................................. U.S. Dollar LIBOR

**Lindholm Decl.** ............................................... Declaration of Robert L. Lindholm in Support of
Defendant Coöperatieve Rabobank U.A.'s Opposition
to Exchange-Based Plaintiffs' Motion to Certify a
Trader Conduct Class, dated June 30, 2017, ECF No. 2027

**Lindholm *Daubert* Decl.** ............................................ Omnibus Declaration of Robert Lindholm
in Support of Defendant Rabobank's Motion
to Exclude Plaintiffs' Proposed Expert Opinions,
dated July 7, 2017, ECF 2061

**Netz Dep. I** ............................................... Transcript of Videotaped Deposition of Janet S. Netz,
dated March 28, 2017

**Opening Brief** or **Mot.** .......................................... Rabobank's Memorandum of Law
in Support of Its Motion to Exclude the
Proposed Expert Opinions of Craig S. Beevers,
dated July 7, 2016, ECF No. 2060

**Opposition** or **Opp.** .........................................Exchange-Based Plaintiffs' Memorandum of Law
in Opposition to Rabobank's Motion to Exclude the
Proposed Expert Opinions of Craig S. Beevers,
dated July 21, 2017, ECF No. 2116

**Plaintiffs** ...........................................................................Exchange-Based Plaintiffs

**Pls.' Mem.** ......................................................... Plaintiffs' Memorandum of Law in Support of
Motion to Exclude the Opinions of Christopher Culp,
dated July 10, 2017, ECF No. 2116

**Period 0** ......................................................... January 1, 2005 through August 8, 2007

**Rabobank**.................................................................Defendant Coöperatieve Rabobank U.A.

**Seyhun Report**....................................................................... Expert Report of H. Nejat Seyhun,
dated February 2, 2017

**Trader Conduct**...........................................Allegations of episodic manipulation of U.S. Dollar
LIBOR submissions to benefit trading positions

## PRELIMINARY STATEMENT[1]

Plaintiffs have not met their burden of showing by a preponderance of the evidence that Mr. Beevers' opinions are admissible under Rule 702 and *Daubert*.  Plaintiffs' Opposition seeks to avoid, rather than address, the arguments for exclusion advanced in Rabobank's Opening Brief.  As to Mr. Beevers' opinion that Rabobank's data productions were "deficient," Plaintiffs fail to cite a single case where a court adjudicating a class certification motion admitted expert opinion regarding what documents a party *may* possess.  In addition, Plaintiffs gloss over Mr. Beevers' failure to propose a reliable method for identifying Trader Conduct by touting his qualifications—which were not a ground for exclusion raised in Rabobank's Opening Brief. Plaintiffs also fail to address the fact that Mr. Beevers' Monte Carlo analysis is irrelevant to Trader Conduct claims because it cannot identify which panel banks allegedly manipulated LIBOR submissions on which days.  Finally, Plaintiffs do not rebut Rabobank's argument (or the case law supporting it) that expert witnesses cannot merely summarize factual allegations.  They instead respond, without basis, that such testimony is "hardly impermissible."  This Court should exclude Mr. Beevers' proposed expert opinions in their entirety.

## LEGAL STANDARD

Plaintiffs' attempts to cast doubt on this Court's ability to perform a "full" *Daubert* analysis at the class certification stage fail.  *See* Opp. 4-5.  Courts in this District regularly conduct "full" *Daubert* analyses at the class certification stage.  *See, e.g.*, *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 55 (S.D.N.Y. 2016) (courts "often subject expert testimony to *Daubert's* rigorous standards insofar as that testimony is relevant to the Rule 23 class

---

[1]       Defined terms are set forth in the Table of Defined Terms (p. iii).  Exhibits (abbreviated "Ex.") are attached to the Lindholm *Daubert* Decl.  All quotations from deposition transcripts omit objections from Plaintiffs' counsel. Unless otherwise specified, all internal quotation marks and citations are omitted herein.

certification analysis"); *IBEW Local 90 Pension Fund v. Deutsche Bank AG*, 2013 WL 5815472, at *1-2 (S.D.N.Y. Oct. 29, 2013) (excluding expert testimony and denying motion for class certification). Indeed, Plaintiffs argue in support of their own *Daubert* motions that *Daubert* analyses are appropriate on class certification. *See, e.g.*, Pls.' Mem. 5 n.2 ("the Second Circuit and others—including the Supreme Court—have suggested that *Daubert* applies" at the class certification stage) (citing cases).

## ARGUMENT

### I.   PLAINTIFFS FAIL TO JUSTIFY THE ADMISSIBILITY OF MR. BEEVERS' OPINIONS REGARDING RABOBANK'S DATA PRODUCTION.

Plaintiffs contend that Mr. Beevers' opinions regarding supposed deficiencies in Rabobank's data productions are proper expert testimony because they relate to issues that "an ordinary juror, or the Court for that matter, would [not] know or have any familiarity with." Opp. 6-7. But whether Mr. Beevers' discovery opinions relate to complex or technical issues is irrelevant. Plaintiffs offer Mr. Beevers' opinions in connection with a motion for class certification, not a discovery motion. The factfinder does not need assistance in understanding the completeness of Rabobank's data production in connection with Plaintiffs' class certification motion. Whether a party received sufficient discovery is irrelevant under Rule 23.[2] *See* Mot. 5 & n.8. Plaintiffs fail to cite a single case to the contrary.[3]

Plaintiffs also seek to challenge Rabobank's argument—and Mr. Beevers' admission— that he lacks first-hand knowledge of the data Rabobank possesses, contending that he has such

---

[2]     For that reason, also unavailing is Plaintiffs' argument that Mr. Beevers' discovery-related opinions are proper because they purportedly relate to "common evidence" he needs to identify Trader Conduct. *See* Opp. 7-8.

[3]     The cases Plaintiffs cite to support their argument that courts sometimes admit expert testimony to assist the factfinder in understanding "complicated terms and concepts" are inapposite. *See* Opp. 7. In each, the expert testimony related to a central issue, whereas here, Mr. Beevers' opinion that Rabobank's data productions were "deficient" has no bearing on whether Plaintiffs have met their burden under Rule 23.

first-hand knowledge "based on known fact and personal experience."[4]  Opp. 9.  This

mischaracterizes Mr. Beevers' opinions.  Plaintiffs do not offer Mr. Beevers as a fact witness.

He never claimed direct, first-hand knowledge of what data Rabobank possesses.[5]



[6]

     Plaintiffs claim that "the accuracy of Mr. Beevers' opinion"—*i.e.*, whether Rabobank

actually has the data that Mr. Beevers opines it may possess—"is irrelevant under *Daubert*."

Opp. 9.  But as to the factual question of whether Rabobank has certain data, the accuracy of Mr.

Beevers' opinion is relevant because Rabobank does not in fact have that data.[7]  Mr. Beevers'

speculation to the contrary is both inaccurate ***and*** unreliable, and should be excluded.  *See Gen.*

*Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or [Rule 702] requires

---

[4]     Plaintiffs also argue that Rabobank "glosses over the fact that Mr. Beevers grounded his opinion . . . on the bank's own systems manuals and policies."  Opp. 2.  But neither of the two "systems manuals and policies" that Mr. Beevers cites in his reports (RABO_METZLER_0010738 and RABO_METZLER_0016687) suggests that Rabobank has the trader-level data Mr. Beevers claims to need.

[5]     ████████████████████████████████████████████

[6]     Plaintiffs attempt to downplay the significance of these admissions by arguing that this testimony "was in reference to documents and data that Rabobank might choose to collect or maintain over and above the baseline set of data."  Opp. 9 n.6.  This argument rings hollow.  ████████████████████████████████

[7]     Plaintiffs challenge Rabobank's statement that aside from the data it produced to Plaintiffs, it does not possess additional "trader-level" reports or documents Mr. Beevers claims to need.  *See* Opp. 9-10.  Plaintiffs contend that even if Rabobank does not have reports showing individual trading positions and exposure to LIBOR, it has "other documents" that could "be used to reconstruct" that trader-level data.  *See id.* 10.  But Rabobank has stated that aside from the data it produced to Plaintiffs, it does not have the trader-level reports or documents Mr. Beevers seeks, and this includes "other documents" that supposedly could be used "to reconstruct trader-level information."  *See* Mot. 5 (citing Lindholm Decl. ¶¶ 35-39).

a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").[8]

## II.    PLAINTIFFS FAIL TO DEMONSTRATE THE RELIABILITY OF MR. BEEVERS' THREE-STEP PROCESS TO IDENTIFY TRADER CONDUCT.

Plaintiffs contend that to demonstrate its lack of reliability, Rabobank "improperly breaks up Mr. Beevers' methodology [for identifying Trader Conduct] into three steps."  Opp. 12.  But Plaintiffs and Mr. Beevers themselves describe his proposed process for identifying Trader Conduct as a "three-step process."[9]  In any case, Rabobank does not "argu[e] that each step in isolation fails to identify trader-based manipulation, rather than assessing the methodology as a whole."  Opp. 12.  Rather, the three steps, individually and collectively, are so flawed as to render them unreliable and inadmissible.  *See* Mot. 7-13.  Whether construing Mr. Beevers' proposed methodology in three steps separately or "as a whole," Plaintiffs cannot justify it.[10]

### A.    Plaintiffs Have Not Shown That Mr. Beevers' Proposal to Identify Supposedly "Anomalous Submissions" Is Reliable.

Plaintiffs argue that Rabobank's criticisms of Mr. Beevers' criteria for identifying "anomalous submission" constitute an attack on the accuracy of his results rather than the reliability of his methodology.  *See* Opp. 14.  But Mr. Beevers' criteria for identifying "anomalous submissions" are inherently unreliable ███████████████████████

███████████████████████████████████████████████████████

---

[8]      Plaintiffs misconstrue the holding of *General Electric* by citing a portion of Justice Stevens' concurrence-in-part and dissent-in-part (but not identifying it as such) in which he criticizes the majority's holding.  *See* Opp. 9.

[9]      *See, e.g.,* ██████████████████████████████████████████████████████
██████████████████████████████ Opp. 15 (discussing "step two of Mr. Beevers' proposed three-step analysis").

[10]   ███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████

█████████████████████████████████████████ Plaintiffs' only response is to create an artificial distinction between "methodology" and "results."[11]  *Cf. Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) ("'conclusions and methodology are not entirely distinct from one another'") (quoting *Gen. Elec.*, 522 U.S. at 154); *Laumann v. NHL*, 117 F. Supp. 3d 299, 317-18 (S.D.N.Y. 2015) (results of expert's model demonstrated its unreliability where model's results were "seemingly nonsensical").  That Mr. Beevers' criteria generate highly unreliable results confirms the conclusion that the criteria themselves are arbitrary and unreliable.  *See* Mot. 8-10 (and cases cited therein).

Plaintiffs then offer several reasons why Mr. Beevers' results are not inaccurate.  Each fails. ████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████

---

[11]  The cases Plaintiffs cite in support of their argument that attacks on the correctness of experts' conclusions are improper are inapposite because here, **both** the "methodology" behind—and the "results" of—Mr. Beevers' "anomalous submission" criteria are arbitrary and unreliable.  *See* Opp. 14.

███ *Third*, Plaintiffs reference Deutsche Bank's regulatory settlements to argue that Trader Conduct occurred "as early as 2003," but provide no basis to assume that Trader Conduct occurred at **Rabobank** during the period 2000-2004.  Opp. 14.  *Finally*, Plaintiffs argue that "for the handful of days where collaborative [*sic*] evidence is available . . . the results of Mr. Beevers' methodology and those of Dr. Seyhun's methodology do not differ," but they provide no support or explanation for that vague and conclusory statement.  *Id.* 15.

Plaintiffs also attempt to rebut Rabobank's argument that Mr. Beevers' "anomalous submission" criteria was not adequately tested, arguing that "the mere fact that an expert's methodology is unsupported or untested by others is not a valid basis for exclusion."  Opp. 12.  But, as Plaintiffs concede, that is true only where the expert "otherwise reliably utilizes scientific methods"—which Mr. Beevers has not done.  *See id.* 13 (quoting *Amorgianos*, 303 F.3d at 266-67).  Moreover, Plaintiffs mischaracterize Rabobank's Opening Brief in two ways.  Rabobank did not argue that Mr. Beevers' "anomalous submission" criteria should be excluded **solely** because it is untested; rather, that is merely one of the many *Daubert* factors that weigh in favor of its exclusion.  Mot. 8-10.  Rabobank also did not argue that Mr. Beevers' "anomalous submission" criteria were untested only by **others**.  They were untested even by Mr. Beevers on time periods during which LIBOR submissions were not allegedly manipulated.  *Id.* 10.

### B. Plaintiffs Have Not Shown That Mr. Beevers' Proposal to "Interpret" Documentary Evidence Is Reliable or Would Assist the Factfinder.

Plaintiffs argue—without support—that the factfinder will not be able to review and interpret documents supposedly evidencing Trader Conduct.  *See* Opp. 15-16.  Indeed, they go so far as to characterize as "nonsensical" Rabobank's argument that Mr. Beevers' proposed review and interpretation of documents would not assist the factfinder.  *Id.* 16.  ████████

████████████████████████████████████████

6



### C.   Plaintiffs Have Not Shown That Mr. Beevers' Proposal to Examine Individual Traders' Derivatives Positions is Reliable.

Plaintiffs gloss over Mr. Beevers' failure to propose any reliable, objective standards for his proposed review of derivatives trading positions by touting his "decades of professional experience."  Opp. 17 (claiming Rabobank "attempts to divorce Mr. Beevers' opinion from the

---

[12] ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████

[13]     Rabobank is separately moving to exclude Dr. Netz's opinions under Rule 702 and *Daubert*.

[14]     Plaintiffs argue that "Rabobank conflates the issue of whether an expert's opinion will assist the trier of fact, with the issue of whether the steps used to reach that opinion are reliable."  Opp. 15.  Rabobank "conflates" nothing; its position is that Mr. Beevers' proposal to review and interpret documents is *both* unreliable and unhelpful to the factfinder.  *See* Mot. 10-11.

source of his expertise").  But Rabobank's Opening Brief argued that Mr. Beevers' opinion should be excluded because he failed to set forth a reliable methodology for examining derivatives positions, not because he is unqualified to do so.  Mot. 11-13.  To be admissible, the proffering party must show that an expert's opinion is reliable and based on scientific criteria.  *Amorgianos*, 303 F.3d at 266-67; *Li v. Aponte*, 2009 WL 1285928, at \*5 (S.D.N.Y. May 5, 2009).  Whatever his qualifications, Mr. Beevers' proposed method for examining derivatives trading data is vague, arbitrary, and unreliable, and for that reason should be excluded.

In the Opposition, Plaintiffs attempt to rectify Mr. Beevers' failure to propose any objective method for examining derivatives positions by inventing one for him.  Plaintiffs state that "Mr. Beevers proposes to perform statistical analysis"—so-called "significance testing"—to "detect those traders who systematically benefit from Rabobank's LIBOR submissions over time."  Opp. 17.  But such a proposal appears nowhere in Mr. Beevers' reports or deposition testimony.  The two paragraphs of the Beevers Rebuttal that Plaintiffs cite for the proposition that Mr. Beevers "plainly described" this "significance testing," *id.*, say merely that ███████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████          Beevers Rebuttal ¶¶ 42,
55.  These vague, barebones statements fail to articulate any reliable or objective standard for conducting the "significance testing" that Plaintiffs improperly introduce in the Opposition.  *See In re DVI, Inc. Sec. Litig.*, 2013 WL 56083, at \*8 (E.D. Pa. Jan. 4, 2013) (rejecting plaintiffs' attempt "to supplement the shortcomings in their expert's reports by argument in their briefs" because "prejudice to [defendant] would be obvious").

8

III.    **PLAINTIFFS HAVE NOT SHOWN THAT MR. BEEVERS' MONTE CARLO ANALYSIS IS RELEVANT OR RELIABLE.**

Plaintiffs contend that Mr. Beevers' proposed Monte Carlo analysis is "relevant to issues in the case, and will undoubtedly assist the trier of fact" for two reasons.  Opp. 19.  *First*, they argue that the analysis is relevant to Commodity Exchange Act ("CEA") aiding and abetting claims that Plaintiffs may assert.  *Id.*  But this Court authorized Plaintiffs to assert Trader Conduct-based aiding and abetting claims under the CEA only against Barclays (a settling Defendant).  *See LIBOR IV*, 2015 WL 6243526, at *49 (S.D.N.Y. Oct. 20, 2015).  No such claims remain against Rabobank.  Regardless, Plaintiffs do not contest—and thus concede—that Mr. Beevers' Monte Carlo analysis cannot demonstrate which panel bank(s) allegedly manipulated LIBOR submissions on which particular days.  *See* Mot. 14-15.  Accordingly, there is no way it could help Plaintiffs prove any alleged Trader Conduct-based aiding and abetting claims under the CEA.  *Second*, Plaintiffs argue that Mr. Beevers' Monte Carlo analysis "will serve to show Rabobank's anomalous submissions."  Opp. 19.  But they provide no explanation or support for that vague and conclusory statement.  Nowhere in Mr. Beevers' reports or deposition testimony does he suggest that his Monte Carlo analysis would support his identification of so-called "anomalous submissions."

Plaintiffs also attempt to refute Rabobank's argument that Mr. Beevers' Monte Carlo analysis is unreliable because it improperly assumes that LIBOR submissions should be distributed randomly each day.  They claim that Mr. Beevers "made no such assumption."  Opp. 20.  But he did, as he stated in his report.  *See* Mot. 15 n.22 ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

Finally, Plaintiffs argue that Mr. Beevers' Monte Carlo analysis must be admitted

because Monte Carlo simulations are used "entirely reliably every day within the securities industry to price and manage trillions of dollars of derivatives contracts." Opp. 21. Plaintiffs offer no support for that statement. Even if true, it does not mean that Mr. Beevers' Monte Carlo analysis is reliable as applied in this case. Just because a technique can be reliably applied in one context (*e.g.*, to price derivatives) does not mean it can be reliably used in another, totally different context (*e.g.*, to detect collusive manipulation of LIBOR submissions). *See Lava Trading, Inc. v. Hartford Fire Ins.*, 2005 WL 4684238, at *9 (S.D.N.Y. Apr. 11, 2005) (courts "must decide not only whether the methodology is reliable for some purposes, but whether it is reliable in light of the particular facts and circumstances of the particular case").

## IV.   PLAINTIFFS FAIL TO SHOW THAT MR. BEEVERS' RECITATION OF PUBLIC DOCUMENTS IS ADMISSIBLE EXPERT TESTIMONY.

Plaintiffs argue that Section VII of the Beevers Report—which they contend offers a "straightforward opinion that . . . it will be feasible to prepare a matrix" listing instances of Trader Conduct—is a proper subject of expert testimony. Opp. 21. But they fail to explain how such an opinion is admissible when its only basis is a summary of the contents of publicly-available documents.[15]   Plaintiffs instead offer only the unsupported assertion that it is "hardly impermissible" for an expert to offer such an opinion. *See* Mot. 16-17; Opp. 22. They do not and cannot refute the authorities Rabobank cited in its Opening Brief—which establish that expert opinions that merely repeat factual allegations should be excluded.

### CONCLUSION

The Court should exclude the opinions of Craig S. Beevers in their entirety.

---

[15]      Plaintiffs do not challenge—and thus concede—Rabobank's argument in the Opening Brief that the "analysis of Deutsche Bank's LIBOR submissions" in Section VII of the Beevers Report is irrelevant because Deutsche Bank has already settled with Plaintiffs. *See* Mot. 17 n.26; Opp. 22 ("it is true that the remainder of Section VII discusses relevant trial testimony and documentary evidence").

Dated:  August 4, 2017

Respectfully submitted,

*/s/ David R. Gelfand*

David R. Gelfand
Robert C. Hora
Mark D. Villaverde
MILBANK TWEED HADLEY & McCLOY LLP
28 Liberty Street
New York, NY 10005
Tel.:  (212) 530-5000
Fax:  (212) 530-5219
dgelfand@milbank.com
rhora@milbank.com
mvillaverde@milbank.com

*Attorneys for Defendant Coöperatieve*
*Rabobank U.A.*

11