# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262 (NRB) |
| THIS DOCUMENT RELATES TO: | |
| MAYOR AND CITY COUNCIL OF BALTIMORE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CREDIT SUISSE AG, et al., <br><br> Defendants. | No. 11-cv-5450 (NRB) |

## DECLARATION OF MARC M. SELTZER IN SUPPORT OF OTC PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH CITIBANK, N.A. AND CITIGROUP INC.

Pursuant to 28 U.S.C. § 1746, I, Marc M. Seltzer, declare:

1.       I am a partner in the law firm of Susman Godfrey L.L.P. My firm serves as interim co-lead counsel for the putative class of over-the-counter plaintiffs ("OTC Plaintiffs")[1] in the above-captioned litigation (the "OTC Action"). *See* ECF No. 66.

2.       I submit this declaration in support of OTC Plaintiffs' Motion for Preliminary Approval of Settlement with Citibank, N.A. and Citigroup Inc. (collectively, "Citibank"). I have been actively involved in prosecuting and resolving this action, am familiar with its proceedings, and have personal knowledge of the matters set forth herein, and if called upon and sworn as a witness, I could competently testify thereto.

3.       Because this declaration is submitted in support of a settlement, it is inadmissible in any subsequent proceedings, other than in connection with the Settlement. In the event the Settlement is not approved by the Court, this declaration and the statements contained herein are without prejudice to OTC Plaintiffs' position on the merits of the OTC Action.

4.       Attached hereto as Exhibit A is a true and correct copy of the Settlement Agreement between the OTC Plaintiffs and Citibank (together, the "Parties"). If approved, the proposed settlement, consisting of an agreement by Citibank to pay $130 million in cash and to provide significant cooperation to OTC Plaintiffs in pursuing their case against the non-settling defendants, will resolve this complex case against Citibank.

## I.       SUMMARY OF CLAIMS AND THE PROCEDURAL HISTORY OF THE LITIGATION

5.       The following is a summary of the nature of OTC Plaintiffs' claims, the principal events that have occurred in the litigation to date, and the terms of the Settlement.

---

[1] OTC Plaintiffs are Mayor and City Council of Baltimore; City of New Britain; Vistra Energy Corp.; Yale University; and Jennie Stuart Medical Center, Inc.

6. On April 15, 2011, the first complaint alleging an interbank conspiracy to artificially suppress U.S. Dollar LIBOR was filed in this Court. *See* Class Action Compl., *FTC Capital GMBH v. Credit Suisse Grp. AG*, No. 11-2613 (S.D.N.Y.).

7. OTC Plaintiff Mayor and City Council of Baltimore, represented by Susman Godfrey L.L.P. and Hausfeld LLP ("OTC Plaintiffs' Counsel"), filed its complaint shortly thereafter. *See* Class Action Compl., *Mayor and City Council of Baltimore v. Bank of America*, No. 11-5450 (S.D.N.Y. filed Aug. 5, 2011) (the "*Baltimore* Action").

8. On August 12, 2015, the Judicial Panel on Multidistrict Litigation ("JPML") centralized the various actions in this Court "for coordinated and consolidated pretrial proceedings." Transfer Order, ECF No. 1, No. 11-md-2262-NRB.

9. On November 29, 2011, the Court consolidated the various LIBOR class actions pending before the Court under Federal Rule of Civil Procedure 42(a) and appointed OTC Plaintiffs' Counsel as "interim class counsel for the putative class of over-the-counter plaintiffs." ECF No. 66.

10. On April 30, 2012, OTC Plaintiffs, on behalf of themselves and a putative Class, filed their Consolidated Amended Complaint ("CAC"). ECF No. 130.  This complaint built on OTC Plaintiffs' Counsel's extensive pre-research filing and included substantial additional information garnered from (a) counsel's work with industry and economic experts, (b) the Defendants' filings with the United States Securities and Exchange Commission ("SEC"), (c) court documents filed in other LIBOR proceedings in Canada, Singapore, and Japan, and (d) scholarly articles concerning the suppression of U.S. Dollar LIBOR during the Class Period. In relevant part, this complaint alleged that the Defendants, the banks that comprised the U.S. dollar LIBOR panel during the Class Period, "conspired to, and did, manipulate LIBOR by

misreporting the actual interest rates at which they expected they could borrow funds—*i.e.*, their true costs of borrowing—on a daily basis. By acting together and in concert to knowingly understate their true borrowing costs, Defendants caused LIBOR to be calculated or suppressed artificially low, reaping hundreds of millions, if not billions, of dollars in ill-gotten gains." CAC ¶ 6. OTC Plaintiffs alleged that this conduct constituted a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and unjust enrichment. *Id*. ¶¶ 220-30.

11.     On June 29, 2012, the Defendants moved to dismiss the OTC Plaintiffs' complaint. ECF No. 165.

12.     On March 29, 2013, the Court granted the Defendants' motion to dismiss the OTC Plaintiffs' antitrust claim. ECF No. 286 ("*LIBOR I*"). The Court reached this conclusion based on its belief that the OTC Plaintiffs had not adequately alleged antitrust injury because the LIBOR-setting process was designed to be cooperative rather than competitive. *Id*. at 31.

13.     On May 17, 2013, OTC Plaintiffs sought leave to amend the complaint to add additional allegations with respect to their antitrust injury, reassert their unjust enrichment claim, and assert a claim for breach of the implied covenant of good faith and fair dealing. ECF No. 333. On August 23, 2013, the Court denied OTC Plaintiffs' request to reassert their antitrust claim but granted their request to assert their state law claims. ECF No. 389 ("*LIBOR II*"). Consistent with this order, OTC Plaintiffs filed their Second Consolidated Amended Complaint on September 10, 2013. ECF No. 406.

14.     On November 26, 2013, the Defendants moved to dismiss the OTC Plaintiffs' unjust enrichment and breach of the implied covenant of good faith and fair dealing claims, ECF No. 507, and on June 23, 2014 the Court granted in part and denied in part this motion. ECF No. 568 ("*LIBOR III*"). Specifically, the Court permitted the OTC Plaintiffs to proceed on these

claims as to those Defendants with whom they "directly transacted." *Id*. On August 20, 2014, OTC Plaintiffs thereafter filed a Proposed Third Consolidated Amended Complaint, which added additional named plaintiffs that are in privity with one or more of the Defendants. ECF No. 627.

15.     Certain Defendants made additional motions to dismiss the Second Consolidated Amended Complaint and/or requested that the Court deny leave to file the Proposed Third Consolidated Amended Complaint., *see* ECF Nos. 958, 971, 977, and on November 3, 2015, the Court granted in part these motions. ECF No. 1234.   In January 2016, OTC Plaintiffs began receiving the millions of documents and audio tapes defendants had previously produced to regulators in investigations concerning alleged U.S. Dollar LIBOR misconduct, as well as voluminous transactional data.

16.     On March 9, 2016, OTC Plaintiffs sought preliminary approval of a settlement with Barclays Bank plc ("Barclays Settlement"). ECF Nos. 1335–38. The Court granted preliminary approval on December 21, 2016. ECF No. 1678. A final Fairness Hearing for the Barclays Settlement is scheduled for October 23, 2017.

17.     On May 23, 2016, the Second Circuit reversed the Court's ruling in *LIBOR I*, reinstated OTC Plaintiffs' antitrust claim, and remanded the case for further proceedings. *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759 (2d Cir. 2016). All remaining Defendants sought to dismiss OTC Plaintiffs' antitrust claim on antitrust standing grounds, and certain Defendants sought to dismiss OTC Plaintiffs' claim on personal jurisdiction grounds. The Court granted the motion to dismiss with respect to personal jurisdiction on December 20, 2016. ECF No. 1676 ("*LIBOR VI*"). OTC Plaintiffs' interlocutory appeal of *LIBOR VI*'s personal jurisdiction ruling as it pertains to OTC Plaintiffs is currently pending before the Second Circuit.

18.     On April 20, 2017, OTC Plaintiffs filed their Corrected Third Consolidated

Amended Complaint ("TCAC"). ECF No. 1857. The non-dismissed Defendants filed answers to the TCAC on June 7, 2017. ECF Nos. 1952, 1954–59.

19.     On May 9, 2017, OTC Plaintiffs moved for class certification of their antitrust and state law claims. ECF Nos. 1904-06. That motion has not yet been resolved.

## II.     THE SETTLEMENT WITH CITIBANK

### A.     Settlement Negotiations

20.     OTC Plaintiffs' settlement with Citibank is the second settlement in the litigation and represents a second significant step forward in the prosecution of the OTC Action. The settlement is the product of hard-fought, arm's-length negotiations by counsel highly experienced in complex antitrust matters.

21.     Settlement negotiations between Citibank's Counsel and OTC Plaintiffs' Counsel began in May 2015.  In September 2015, the parties agreed to retain the Honorable Layn Phillips, a former federal judge, as a mediator to facilitate settlement.  On December 1, 2015, the parties participated in a day-long in-person mediation session with Judge Phillips.  The mediation included negotiations concerning potential monetary and non-monetary terms for a settlement, but the parties were not able to reach an agreement. Citibank's counsel and OTC Plaintiffs' Counsel engaged in telephonic discussions and negotiations thereafter, including numerous communications facilitated by Judge Phillips.

22.     On July 27, 2017, the Parties reached agreement on all material terms, including the Settlement Fund of $130 million, and executed the Settlement Agreement.

23.     At all times, both sides vigorously negotiated their respective positions. OTC Plaintiffs' Counsel were well-informed of the facts and issues concerning liability and damages and the relative strengths and weaknesses of each side's litigation position.

### B.       Settlement Terms

24.      The cash portion of the Settlement consists of $130 million, which will comprise the Settlement Fund. The Settlement Fund is non-reversionary if there is final approval of the Settlement by the Court; no money will be returned to Citibank.

25.      The Settlement obligates Citibank to provide extensive cooperation.   The cooperation elements fall into three categories: attorney proffers, documents/data, and testimonial evidence.

26.      First, the attorney proffers cover, *inter alia*, (1) background knowledge on the U.S. Dollar LIBOR setting process and over-the-counter market for U.S. Dollar LIBOR-Based Instruments; (2) "[a] detailed account of facts known to Citibank that are relevant to the Released Claims or the allegations in OTC Plaintiffs' pleadings including but not limited to the alleged conduct, if any such facts exist, relating to the alleged collusion, manipulation and suppression of U.S. Dollar LIBOR by Citibank and other panel banks"; (3) a description of Citibank's internal compliance policies with respect to U.S. Dollar LIBOR; and (4) the identities, and in some cases, last known contact information, of individuals with knowledge of U.S. Dollar LIBOR-related conduct. Settlement ¶ 14(h)(ii).

27.      Second, Citibank has agreed to provide OTC Plaintiffs with data relevant to the OTC Action, including transactional information and documents produced to government regulators. *Id.* ¶ 14(h)(iv)–(v).

28.      Finally, Citibank has agreed to provide testimonial cooperation. As further specified in the Settlement Agreement, this cooperation will come in the form of interviews of current employees and good faith efforts to arrange interviews of former employees, *id.* ¶ 14(h)(vi), declarations and affidavits, *id.* ¶ 14(h)(vii), depositions, *id.* ¶ 14(h)(viii), and testimony at trial, *id.* ¶ 14(h)(ix).

29.     Citibank is obligated to provide this cooperation for the shorter of seven (7) years or the duration of the OTC Action. *Id.* ¶ 14(x).

30.     The fact that Citibank's cooperation comes at this stage of the case greatly enhances its value to the OTC Plaintiffs. Citibank's cooperation will permit OTC Plaintiffs' Counsel to obtain information not otherwise available at this stage of the litigation and may help drive settlement negotiations with other Defendants.


I certify under penalty of perjury under the laws of the United States of America that the forgoing is true and correct. Executed on August 7, 2017, in Los Angeles, CA.



*/s/ Marc M. Seltzer*
Marc M. Seltzer