# DAVIS POLK & WARDWELL LLP

450 LEXINGTON AVENUE
NEW YORK, NY 10017
212 450 4000
FAX 212 701 5800

NORTHERN CALIFORNIA
WASHINGTON, D.C.
SÃO PAULO
LONDON
PARIS
MADRID
TOKYO
BEIJING
HONG KONG

ARTHUR J. BURKE
212 450 4352

September 1, 2017

Re:   *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 11-MD-2262 (NRB);
      *Berkshire Bank v. Bank of America Corp., et al.*, 12-CV-5723 (NRB)

<u>Via ECF</u>

The Honorable Naomi Reice Buchwald
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Dear Judge Buchwald:

      We write on behalf of Defendants in the Lender Action[1] in response to Berkshire Bank's supplemental authority letter dated August 25, 2017, ECF No. 2240, regarding Judge Pauley's opinion in *Gross v. GFI Group, Inc.*, No. 14 Civ. 09438 (WHP) (S.D.N.Y. Aug. 23, 2017), ECF No. 103.

      *Gross* involved a putative class action lawsuit in which the class representative, Benjamin Gross, was the brother-in-law of co-lead counsel for the putative class, Jack Zwick, although Zwick had no formal fee arrangement with either Gross or the other lead class counsel. Judge Pauley noted that "numerous courts . . . have found that a named plaintiff is an inadequate class representative where there is a close personal relationship between a plaintiff and class counsel," and that "[t]his is especially true in cases . . . where attorneys' fees will greatly exceed the class representative's recovery." *Gross*, slip op. at 3-4 (quoting *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 96 (S.D.N.Y. 2010). In particular, Judge Pauley cited approvingly a recent opinion in which Judge Rakoff "denied certification because the class representative's 'longtime family attorney and cousin by marriage' had an agreement with class counsel to receive 5% of any attorneys' fees, even though he was not himself counsel to the class." *Gross*, slip op. at 4 (quoting *Gordon v. Sonar Capital Mgmt., LLC*, 92 F. Supp. 3d 193, 199 (S.D.N.Y. 2015)). According to Judge Pauley, the "touchstone for denial of class action status" in such cases "is that the plaintiff might have an interest in the legal fees that the attorney might ultimately seek." *Gross*, slip op. at 6

---

[1] Bank of America Corporation, Bank of America, N.A., Citibank, N.A., Citigroup Inc., J.P. Morgan Chase & Co., JPMorgan Chase Bank, N.A., and UBS AG.

(quoting *Fischer v. Int'l Tel. & Tel. Corp.*, 72 F.R.D. 170, 173 (E.D.N.Y. 1976)).[2] By contrast, Judge Pauley held that the facts of *Gross* presented only a "hypothetical" conflict because "the record reveals no arrangement among [co-lead counsel] Scott + Scott, Zwick, and Gross suggesting that Gross has an interest in any potential fee Zwick stands to earn." *Gross*, slip op. at 6.

*Gross* does not support Berkshire's motion for class certification and further confirms that Berkshire is an inadequate class representative because of the previously undisclosed fact that lead class counsel, Pomerantz, has agreed to give Mordchai Krausz, the son of Berkshire's CEO, Moses Krausz, 15% of any attorneys' fees awarded to Pomerantz in this litigation. This case stands in sharp contrast to the facts of *Gross* for several reasons.

*First*, the father-son relationship between Moses Krausz and Mordchai Krausz is a closer relationship, and thus presents a greater and more direct conflict of interest, than the relationship between brothers-in-law in *Gross*.

*Second*, Mordchai Krausz's role in this lawsuit differs materially from that of co-lead counsel Zwick in *Gross*. Unlike in *Gross*, Mordchai Krausz is not co-lead counsel for the class; indeed, Mr. Krausz has not even appeared in the litigation or performed substantial work on the case.[3] This is in stark contrast to the work of Jack Zwick, the allegedly conflicted counsel in *Gross*, who appeared in that case and was actively involved in the litigation.[4]

*Third*, despite his lack of meaningful work in the litigation, Mordchai Krausz is contractually entitled to receive 15% of any fees earned by class counsel in connection with this litigation. *See* Defs.' Opp. at 29-30. Thus, not only is this a case where "attorneys' fees will greatly exceed the class representative's recovery," *Gross*, slip op. at 4, but Mordchai Krausz's

---

[2] Courts have generally applied a broader standard than that articulated in *Gross* to analyze conflicts involving class representatives and class counsel. For example, this Court has stated that "a conflict . . . may exist if the class representative stands to benefit directly *or indirectly from the goodwill of class counsel created through the class action*." *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 155 (S.D.N.Y. 2010) (Buchwald, J.) (emphasis added) (quoting *Moore's Federal Practice* § 23.25[2][b][vi] (3d ed. 2000)); *see also, e.g.*, *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 95 (7th Cir. 1977) (finding the named plaintiff inadequate where his "possible recovery as plaintiff is dwarfed by attorney's fees which could be awarded to his brother as class counsel"); *London v. Wal-Mart Stores*, 340 F.3d 1246, 1255 (11th Cir. 2003) (finding the named plaintiff inadequate because his "personal and financial ties" to his counsel was "very close," and because his counsel's "recovery will vastly exceed what any of the class members will receive"). In any event, regardless of its precise articulation, the standard for a conflict is satisfied here for the reasons Defendants have previously explained. *See generally* Defendants' Joint Memorandum on "Downstream" Issues in Opposition to Lender Plaintiffs' Motion for Class Certification and in Support of Defendants' Motion to Exclude the Testimony of Robert Ivory Webb, Ph.D. ("Defs.' Opp."), ECF No. 2024, at 29-30.

[3] As Berkshire Bank's 30(b)(6) witness stated in response to friendly questioning from class counsel, the extent of Mordchai Krausz's work in this litigation has been to review the pleadings and provide comments. *See* Defs.' Opp. at 29-30; Defs.' Opp. Ex. 7 at 357:25-358:8.

[4] *See, e.g.*, Complaint at 28, *Gross v. GFI Group, Inc.*, No. 14 Civ. 0943 (S.D.N.Y. Nov. 26, 2014) (including Zwick's name in the signature block on the complaint); Joint Rule 26(f) Discovery Plan Report at 3, *Gross v. GFI Group, Inc.*, No. 14 Civ. 0943 (S.D.N.Y. June 12, 2015) (including Zwick's name in signature block on discovery plan); Letter Motion for Extension of Time at 2, *Gross v. GFI Group, Inc.*, No. 14 Civ. 0943 (S.D.N.Y. March 16, 2017) (letter from Zwick to the Court).

fee would be far out of proportion to his work on the case.  The evidence of favoritism here is thus far greater than was present in *Gross*.[5]

　　　Finally, the presence of a conflict here is further evidenced by the fact that Mordchai Krausz's role in the case was not disclosed to the Court or Defendants.  While Judge Pauley was "troubled by Gross's failure to reveal [his] relationship [with Zwick] earlier in the litigation despite several opportunities to do so," *Gross*, slip op. at 5-6, here it is not merely the *relationship* between Moses and Mordchai Krausz that was not revealed, but rather Mordchai Krausz's *existence* in the case and his direct financial interest in class counsel's fee award, which remained undisclosed for nearly five years until Defendants uncovered it through discovery.  *See* Defs.' Opp. at 29-30.  That lack of disclosure makes the relationship here even more suspect.

　　　　　　　　　　　　　　　　　　　Respectfully yours,

　　　　　　　　　　　　　　　　　　　/s/ Arthur J. Burke
　　　　　　　　　　　　　　　　　　　Arthur J. Burke

cc:  All parties via ECF

---

[5] Moreover, because no fee-sharing agreement existed in *Gross*, the Court retained far more discretion to allocate a fair and reasonable fee to Zwick.  *Gross*, slip op. at 6-7.  Although this Court would determine the total amount of attorneys' fees collected by lead counsel if Lender Plaintiffs were successful, Mordchai Krausz would remain contractually entitled to receive 15% of that amount.  *See* Defs.' Opp. at 30 nn.51 & 53.