**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262 |
| THIS DOCUMENT RELATES TO: | Master File No. 1:11-md-2262-NRB ECF Case |
| The OTC Action | Honorable Naomi R. Buchwald |

**MEMORANDUM OF LAW IN SUPPORT OF OTC PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT WITH BARCLAYS BANK PLC**

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. II

I.      INTRODUCTION ......................................................................................................... 1

II.     BACKGROUND ........................................................................................................... 2

    A.   PROCEDURAL HISTORY ............................................................................................. 2

    B.   CLASS NOTICE ........................................................................................................... 2

III.    ARGUMENT ................................................................................................................. 4

    A.   THE SETTLEMENT SHOULD BE FINALLY APPROVED. ................................................. 4

       1.   *The Settlement is Presumptively Fair, Reasonable, and Adequate* ................................ 5

       2.   *The Grinnell Factors Support Final Approval of the Settlement* .................................... 6

         a.   The Complexity, Expense, and Likely Duration of the Litigation (Factor 1)............. 7

         b.   The Reaction of the Class to the Settlement (Factor 2) ............................................. 8

         c.   The Stage of the Proceedings (Factor 3).................................................................... 9

         d.   The Risks of Establishing Liability and Damages (Factors 4 and 5)........................ 10

         e.   The Risks of Maintaining the Class Action through Trial (Factor 6) ...................... 11

         f.   The Ability of Defendants to Withstand a Greater Judgment (Factor 7)................. 11

         g.   The Reasonableness of the Settlement in Light of the Best Possible Recovery and
         the Attendant Risks of Litigation (Factors 8 and 9)........................................................ 11

    B.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ................................................. 13

    C.   THE COURT SHOULD APPOINT OTC PLAINTIFFS' COUNSEL AS COUNSEL FOR THE CLASS  14

    D.   NOTICE TO THE CLASS COMPORTED WITH RULE 23 AND DUE PROCESS ........................... 15

       1.   *Notice Was the Best Practicable Under the Circumstances*....................................... 15

       2.   *The Notice "Fairly Apprised" Potential Class Members of the Settlement and Their
       Options* ................................................................................................................................ 16

    E.   THE PLAN OF DISTRIBUTION SHOULD BE FINALLY APPROVED. ....................................... 18

IV.    CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*,
 271 F. App'x 41 (2d Cir. 2008) ............................................15

*In re "Agent Orange" Prod. Liab. Litig.*,
 597 F. Supp. 740 (E.D.N.Y. 1984) ........................................12

*Allen v. Dairy Farmers of Am., Inc.*,
 No. 5:09-CV-230, 2011 WL 1706778 (D. Vt. May 4, 2011) ...................5

*In re Am. Bank Note Holographics, Inc.*,
 127 F. Supp. 2d 418 (S.D.N.Y. 2001).....................................19

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
 293 F.R.D. 459 (S.D.N.Y. 2013) ...........................................4

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
 689 F.3d 229 (2d Cir. 2012)..............................................14

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997)......................................................14

*In re AOL Time Warner, Inc.*,
 No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...................9

*In re Austrian and German Bank Holocaust Litig.*,
 80 F. Supp. 2d 164 (S.D.N.Y. 2000)........................................5

*In re Bear Stearns Companies, Inc. Secs., Derivative, and ERISA Litig.*,
 909 F. Supp. 2d 259 (S.D.N.Y. 2012)......................................8

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
 258 F. Supp. 2d 254 (S.D.N.Y. 2003).......................................8

*Goldberger v. Integrated Res., Inc.*,
 209 F.3d 43 (2d Cir. 2000)................................................6

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*,
 No. 85 CIV. 3048 (JMW), 1987 WL 7030 (S.D.N.Y. Feb. 13, 1987) ...................10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
 MDL No. 1917, 2015 WL 9266493 (N.D. Cal. Dec. 17, 2015) ...................13

*Charron v. Pinnacle Grp. N.Y. LLC*,
 874 F. Supp. 2d 179 (S.D.N.Y. 2012), *aff'd sub nom.*, *Charron v. Wiener*, 731
 F.3d 241 (2d Cir. 2013)..................................................................................10

*In re Citigroup Inc. Sec. Litig.*,
 965 F. Supp. 2d 369 (S.D.N.Y. 2013)..............................................................7

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974)...............................................................6, 7, 11, 12

*Cohen v. J.P. Morgan Chase & Co.*,
 262 F.R.D. 153 (E.D.N.Y. 2009) ....................................................................14

*Comcast Corp. v. Behrend*,
 133 S. Ct. 1426 (2013)....................................................................................11

*In re Corrugated Container Antitrust Litig.*,
 659 F.2d 1322 (5th Cir. 1981) ........................................................................12

*In re Corrugated Container Antitrust Litig.*,
 No. MDL 310, 1981 WL 2093 (S.D. Tex. June 4, 1981) .............................12, 13

*In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2016 WL
 2731524, at *5 (S.D.N.Y. Apr. 26, 2016) ....................................................16, 18

*In re Currency Conversion Fee Antitrust Litig.*,
 263 F.R.D. 110 (S.D.N.Y. 2009) .....................................................................9

*D'Amato v. Deutsche Bank*,
 236 F.3d 78 (2d Cir. 2001)................................................................................5

*Eisen v. Carlisle & Jacquelin*,
 417 U.S. 156 (1974)........................................................................................15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
 No. 02-CV-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)...........5

*Frank v. Eastman Kodak Co.*,
 228 F.R.D. 174 (W.D.N.Y. 2005)....................................................................11

*Gelboim v. Bank of America Corp.*,
 823 F.3d 759 (2d Cir. 2016)..............................................................................9

*In re Glob. Crossing Sec. & ERISA Litig.*,
 225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................8, 10, 19

*In re High-Tech Employee Antitrust Litig.*,
 No. 11-CV-2509-LHK, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013)...................13

*In re IMAX Securities Litig.*,
  283 F.R.D. 178 (S.D.N.Y. June 20, 2012) ..............................................................6

*In re Ionosphere Clubs, Inc.*,
  156 B.R. 414 (S.D.N.Y. 1993)..............................................................................12

*Jermyn v. Best Buy Stores, L.P.*,
  No. 08 CIV. 00214 CM, 2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010) ..................15

*In Re: Libor-Based Financial Instruments Antitrust Litig.*,
  No. 17-1569 (2d Cir.)..............................................................................................9

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d at 643 ..........................................................................................13

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................................6

*Massiah v. MetroPlus Health Plan, Inc.*,
  No 11 CV 05669, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ..........................12

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ..............................................................7, 8, 10, 12

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972)...................................................................................12

*Park v. The Thomson Corp.*,
  No. 05 CIV. 2931 (WHP), 2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008)..............10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  986 F. Supp. 2d 207 (E.D.N.Y. 2013), *rev'd and vacated on other grounds*,
  827 F.3d 223 (2d Cir. 2016)...............................................................................7, 10

*In re Platinum and Palladium Commodities Litig.*,
  2014 WL 300655 ....................................................................................................19

*Precision Assocs. v. Panalpina World (Holding) Transp. Ltd.*,
  No. 08-CV-42 (JG) (VVP), 2013 WL 4525323 (E.D.N.Y. Aug. 27, 2013)...........13

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
  584 F. Supp. 2d 697 (M.D. Pa. 2008) ...................................................................11

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008).......................................................................5

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05...................................................................................................................6, 19

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
    257 F.3d 256 (2d Cir. 2001) ....................................................................................7

*In re Vitamin C Antitrust Litig.*,
    No. 06-MD-1738 BMC JO, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ................7, 15, 16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) .......................................................................... *passim*

*Weber v. Gov't Emps. Ins. Co.*,
    262 F.R.D. 431 (D.N.J. 2009) ................................................................................11

*Weseley v. Spear, Leeds & Kellogg*,
    711 F. Supp. 713 (E.D.N.Y. 1989) ..........................................................................7

**Rules**

Rule 23 .......................................................................................................... *passim*

Pursuant to Federal Rule of Civil Procedure 23(c), (e), and (g), OTC Plaintiffs, by and through their counsel, Susman Godfrey LLP and Hausfeld LLP (together, "Interim Co-Lead Counsel"), respectfully submit this Memorandum of Law in Support of their Motion for Final Approval of Settlement with Barclays Bank PLC, requesting final approval of the Settlement, final approval of the plan of distribution, final approval of the notice disseminated to class members, certification of the Settlement Class, appointment of Hausfeld LLP and Susman Godfrey LLP as Co-Lead Counsel for the Settlement Class, appointment of Kenneth Feinberg as Settlement Administrator, and appointment of Huntington National Bank as Escrow Agent.

## I.      INTRODUCTION

Subject to this Court's approval, OTC Plaintiffs, on behalf of the Settlement Class, have agreed to settle all claims against Barclays Bank PLC ("Barclays") in exchange for a cash payment of $120,000,000 and extensive cooperation from Barclays.

This is a very favorable result given the many inherent risks in litigation. Indeed, members of the Settlement Class – sophisticated investors – have resoundingly supported the Settlement.[1] There has not been a single objection, and no class member (beyond those that have filed direct action complaints in the MDL) has so far requested exclusion. The money that will be distributed to class members making claims will be substantial, and because OTC Plaintiffs' and Settlement Class members' claims against the non-settling defendants remain intact, they will have the ability to recover more of their losses in future settlements.[2]

For several reasons, and as demonstrated below, the relief requested in the motion is appropriate. First, the Settlement is an excellent result; is fair, reasonable and adequate under the

---

[1]        Unless otherwise defined herein, all capitalized terms have the meaning ascribed to them in the Settlement Agreement Between OTC Plaintiffs and Barclays Bank PLC, dated November 11, 2015 (the "Settlement").

[2]        For example, members of the Settlement Class also have the ability to claim funds from the preliminarily approved settlement with Citibank NA and Citigroup Inc. ("Citi"). *See* ECF No. 2247.

governing standards in this Circuit; and warrants final approval. <u>Second</u>, notice to potential members of the Settlement Class complied with Rule 23 and due process, such that it also warrants final approval. <u>Third</u>, the proposed Settlement Class meets all of the requirements of Rule 23 such that the Court should certify it for purposes of this Settlement. <u>Fourth</u>, Interim Co-Lead Counsel has diligently prosecuted this complex class action and should be appointed as Co-Lead Counsel for the Settlement Class. <u>Finally</u>, the Plan of Distribution, which distributes funds on a pro rata basis, is a fair, reasonable, and rational method for distributing the Net Settlement Fund to the Settlement Class and also warrants final approval.

## II.   BACKGROUND

### A.   Procedural History

On December 21, 2016, the Court granted preliminary approval to the Settlement and deferred certification of the Settlement Class and appointment of settlement class counsel.[3]

On June 6, 2017, the Court found that the proposed notice plan "constitute[d] the best notice practicable under the circumstances," appointed Rust to "supervise and administer Class Notice" and preliminarily approved the plan of distribution, which was based on "the modeling from Dr. Douglas Bernheim." ECF No. 1948 ¶¶ 1-2. The Court subsequently approved an amended notice plan and plan of distribution, which called for Rust to "send a post-card notice no later than September 8, 2017 to those Class Members to whom it sent direct notice." ECF No. 2243; *see also* ECF No. 2155 (order amending notice plan).

### B.   Class Notice

As described in greater detail below, notice was provided to potential members of the

---

[3]   The Court also deferred ruling on OTC Plaintiffs' request to appoint Citibank, N.A. as the Escrow Agent and Kenneth Feinberg as the Settlement Administrator. ECF No. 1678. Class Counsel and Barclays have agreed that Huntington National Bank will replace Citibank, N.A. as the proposed Escrow Agent and Class Counsel request that Huntington National Bank be so appointed. *See* Hausfeld Decl. Exs. 3-4.

Settlement Class in compliance with the approved notice plan and amended notice plan. This consists of notice in three ways: Direct Notice, Publication Notice, and Internet Notice.

**Direct Notice.** OTC Plaintiffs provided direct notice to every potential class member that could be identified through reasonable efforts. First, OTC Plaintiffs sent direct notice to 137,656 potential class members' addresses that were obtained from the business records of eight Defendants.[4] Rabe Decl. ¶ 6.[5]  Second, Credit Suisse AG and HSBC agreed to give direct notice to their own counterparties. *Id*. ¶ 7 n. 2.[6] Third, OTC Plaintiffs furnished direct notice to mailing lists comprising 24,123 institutional investors (including insurance companies, pension funds, hedge funds, and banks) and 66,946 state, city, and county government offices that are likely to be potential class members. *Id*. ¶ 6 n.1. Consistent with the Court's orders, direct notice was dispatched to potential Settlement Class members on July 24 and September 21, 2017, *id*. ¶¶ 11, 4-17, while a reminder notice was disseminated on September 8, 2017, *id.* ¶ 21.

**Publication Notice.** Between August 1 and September 7, 2017, OTC Plaintiffs transmitted Publication Notice in 4 national newspapers, 2 business magazines, and 9 trade magazines. Wheatman Decl. ¶¶ 15-20, Ex. 1.[7] These publications included *The Economist* (circulation: 717,978); *Bloomberg Businessweek* (circulation: 1,009,973); *Institutional Investor* (circulation: 91,298); *Pensions & Investments* (circulation: 50,139); *Financial Times* (circulation: 191,793); and *The Wall Street Journal* (circulation: 1,321,827). *Id*. In addition, on August 1, 2017, OTC Plaintiffs disseminated notice through a global press release distributed through Business Wire to

---

[4]     Barclays; Citi; JPMorgan Chase, RBC, Bank of America, Deutsche Bank, and UBS.

[5]     Attached as Exhibit 2 to the contemporaneously filed Hausfeld Declaration.

[6]     Every live Defendant in the OTC Action has cooperated with OTC Plaintiffs in sending notice to potential members of the Settlement Class. As to the dismissed Defendants, on February 3, 2017, OTC Plaintiffs informed the Court that several defendants dismissed for lack of personal jurisdiction refused to produce their counterparty addresses. ECF No. 1764. Plaintiffs asked for an order compelling defendants to produce that data, should the Court deem that necessary for notice of the Barclays Settlement. No such order was issued.

[7]     Attached as Exhibit 1 to the contemporaneously filed Hausfeld Declaration.

key financial and business media, with coverage of newspapers, television, radio, news agencies, analysts and business publications/editors throughout the world, using a variety of platforms and aggregators including AP Mobile, Yahoo! Finance and Viigo. *Id*. ¶ 26.

**Internet Notice.** Internet Notice provided potential Class Members with additional notice opportunities. The Internet Notice was allocated to maximize gross impressions[8] through various targeted websites (*e.g.*, LinkedIn, Traders Magazine Online News, and CFA Institute Financial NewsBrief). *Id*. ¶¶ 21-25, Ex. 2.

**Settlement Website.** On July 24, 2017, OTC Plaintiffs also established the Settlement Website − https://barclaysliborsettlement.com/ − to enable members of the Settlement Class to obtain all information about the Settlement and to file a claim electronically. Rabe Decl. ¶¶ 17-19.[9] As of September 21, 2017, the Settlement Website has had 113,600 unique visitors, who have downloaded the notice 1,491 times and submitted 225 claims. *Id*. ¶ 18.

This complied with all aspects of the approved and amended notice plans. Rabe Decl. ¶¶ 1-2, 6-21, Exs. A & B.; Wehatman Decl. ¶¶ 1-3, 9-29, Exs. A & B; ECF Nos. 1948, 2155, 2243,

## III.   ARGUMENT

### A.   The Settlement Should Be Finally Approved.

Rule 23(e) provides that the Court should grant final approval to a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, the Court should consider both the procedural and substantive fairness of the settlement. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005); *In re Am. Int'l Grp., Inc. Sec.*

---

[8]      Gross impressions are the total number of times a media outlet containing the Notice is seen. This figure does not represent the total number of unique viewers of the Notice, as some viewers/readers will see the Notice in more than one media outlet. Wheatman Decl. ¶ 22 n. 2.

[9]      All notices referred potential members of the Settlement Class to that website so that they could obtain information about the Settlement and to make a claim electronically. *See* Rabe Decl. Exs. A & B.

*Litig.*, 293 F.R.D. 459, 464 (S.D.N.Y. 2013). Public policy favors the settlement of disputed claims among private litigants, particularly in class actions. *See Wal-Mart*, 396 F.3d at 116-17; *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-CV-230, 2011 WL 1706778, at *2 (D. Vt. May 4, 2011).

### 1.   *The Settlement is Presumptively Fair, Reasonable, and Adequate*

Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000); *see also Wal-Mart*, 396 F.3d at 116. Indeed, in such circumstances, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. at 125; *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008). That is precisely the case here. The Settlement was reached after extended, frank, and contentious negotiations over the course of more than two years, including mediation sessions conducted under the guidance of three different mediators: the Honorable Daniel Weinstein, the Honorable Layn R. Phillips, and Kenneth Feinberg.[10] As the Court previously explained, "there is no dispute that the settlement is the result of years of arms-length negotiations between well-represented, sophisticated parties with the aid of distinguished mediators." ECF No. 1678 at 4; *see also  In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *14 (S.D.N.Y. Nov. 8, 2010) (noting that the "presumption in favor of the negotiated settlement in this case is strengthened by the fact that settlement was reached in an extended mediation"); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator's involvement . . . helps to ensure that the proceedings were free

---

[10]     For a more extended discussion of the procedural history of this case, including a summary of the claims, the settlement negotiations, and the terms of the settlement, the OTC Plaintiffs hereby incorporate by reference the Declaration of Michael D. Hausfeld, filed with the motion for preliminary approval. ECF No. 1338.

of collusion and undue pressure.").

Moreover, OTC Plaintiffs played an active role in the litigation and support the Settlement. Carmody & Haufeld Joint Decl. ¶ 6. These OTC Plaintiffs are highly sophisticated, such as Yale University and Baltimore. OTC Plaintiffs' involvement further supports the presumption of fairness. *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) (noting that a settlement reached "under the supervision and with the endorsement of a sophisticated institutional investor . . . is entitled to an even greater presumption of reasonableness.").

## 2. *The Grinnell Factors Support Final Approval of the Settlement*

The Settlement is also substantively fair, reasonable, and adequate. The Second Circuit has identified nine factors the courts should examine when considering whether to final approve a proposed class settlement (the "*Grinnell* factors"):

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). As demonstrated below, the Settlement amply satisfies the *Grinnell* factors.[11]

---

[11]     "[N]ot every factor must weigh in favor of settlement[;] rather [a] court should consider the totality of these factors in light of the particular circumstances." *In re IMAX Securities Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. June 20, 2012). And in reviewing a settlement, a court "should not attempt to approximate a litigated determination of the merits of the case lest the process of determining whether to approve a settlement simply substitute one complex, time consuming and expensive litigation for another." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010).

### a.  The Complexity, Expense, and Likely Duration of the Litigation (Factor 1)

Courts in this Circuit have frequently remarked that antitrust cases readily meet the first *Grinnell* factor. *See In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012) ("Federal antitrust cases are complicated, lengthy, and bitterly fought, as well as costly."); *see also Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001); *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989). This is because "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and the Court." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381-82 (S.D.N.Y. 2013).

This case fits comfortably in that rule. OTC Plaintiffs first brought this action more than six years ago, and since then, they have persevered through multiple rounds of motion to dismiss briefing and a contentious appeal to the Supreme Court and back; reviewed more than 1.1 million documents produced in discovery, as well as 6,384 audio files; fully briefed class certification, including development of a comprehensive expert model; and are currently briefing a pending appeal in the Second Circuit. Carmody & Hausfeld Joint Decl. ¶ 6. Although OTC Plaintiffs are resoundingly confident in their claims, there can be little doubt that, absent the Settlement, Barclays would have mounted a robust defense in future stages of the litigation, including trial. At each stage, the losing party would have likely sought to appeal, resulting in further expense and delay. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 212 n.13 (E.D.N.Y. 2013), *rev'd and vacated on other grounds*, 827 F.3d 223 (2d Cir. 2016) ("*Interchange*") ("In the *Wal-Mart* case, twenty months elapsed between the order certifying the class and the Second Circuit's divided opinion affirming that decision."); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) ("*NASDAQ III*") (estimating that

trial could consume over a year); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (citing the same considerations and finally approving a partial settlement).

In short, "[t]here can be no doubt that this class action would be enormously expensive to continue, [and] extraordinarily complex to try," *NASDAQ III*, 187 F.R.D. at 477, and the $120 million all-cash Settlement at this juncture results in an immediate and substantial recovery without the expense and delay of continued litigation, a trial, and likely appeals, as to Barclays. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[T]he passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"). OTC Plaintiffs respectfully submit that the Court should find that this factor weighs in favor of the proposed Settlement.

### b.    The Reaction of the Class to the Settlement (Factor 2)

As described above, potential members of the Settlement Class were provided direct, publication, and internet notice of the Settlement. Rabe Decl. ¶¶ 1-2, 6-21, Exs. A & B.; Wehatman Decl. ¶¶ 1-3, 9-29, Exs. 1 & 2. The various forms of notice explain, in clear and concise language, the legal options and monetary benefits available to class members under the Settlement, and were created with the help of a leading expert in the form and content of notice. Wheatman Decl. ¶¶ 4-8, 30-35. While the deadline set by the Court for members of the Settlement Class to object to the Settlement or exclude themselves from the Settlement Class has not yet passed, to date, no objections and, other than by opt-out plaintiffs who already filed complaints in this MDL, no requests for exclusion have been received to date. Rabe Decl. ¶¶ 22-23. This is a significant factor weighing in favor of final approval. *E.g.*, *In re Bear Stearns Companies, Inc. Secs., Derivative, and ERISA Litig.*, 909 F. Supp. 2d 259, 266-67 (S.D.N.Y. 2012); *Wal-Mart*, 296 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

### c.      The Stage of the Proceedings (Factor 3)

There can be little doubt that OTC Plaintiffs "have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). First, the parties have been litigating this action for more than six years and have received numerous lengthy rulings from the Court on the viability of their claims, *see* ECF Nos. 286, 389, 568, 1164, 123; have briefed and argued the viability of the antitrust claim in the Second Circuit and are now in the midst of briefing personal jurisdiction issues in the Second Circuit; *see Gelboim v. Bank of America Corp.*, 823 F.3d 759 (2d Cir. 2016); *In Re: Libor-Based Financial Instruments Antitrust Litig.*, No. 17-1569 (2d Cir.); have briefed an amicus filing to the Supreme Court on appellate jurisdiction in *Gelboim, see* Brief amici curiae of Mayor and City Council of Baltimore, *Gelboim v. Bank of America Corp.*, Nos. 13-3565, 13-3566 (S. Ct. Sept. 5, 2014); and have fully briefed a motion for class certification and submitted extensive supporting evidence that includes expert analysis quantifying the magnitude of alleged LIBOR suppression*, see* ECF Nos. 1904-06, 2030-34, 2190-91. Second, as discussed above OTC Plaintiffs have reviewed over a million documents and thousands of audio files. Prior to the Settlement, plaintiffs' counsel reviewed and briefed facts stemming from numerous public filings by regulators revealing in detail wrongdoing by Barclays and other defendants. The information gained through litigation and discovery has provided Interim Co-Lead Counsel with a comprehensive understanding of the relative strengths and weaknesses of OTC Plaintiffs' case and supports final approval of the Settlement. *See In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009) (noting the "extensive" experience of counsel in granting final approval of settlement).

### d.     The Risks of Establishing Liability and Damages
###        (Factors 4 and 5)

"In assessing the Settlement, the Court should balance the benefits afforded the Class,

including the *immediacy* and *certainty* of a recovery, against the continuing risks of litigation."

*Interchange*, 986 F. Supp. 2d at 224 (emphasis in original). In so doing, the Court need not

"adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess

the risk of litigation against the certainty of recovery under the proposed settlement." *In re Global*

*Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).

Interim Co-Lead Counsel recognized that they faced obstacles to proving liability and

establishing damages in this complex case. *See Park v. The Thomson Corp.*, No. 05 CIV. 2931

(WHP), 2008 WL 4684232, at *4 (S.D.N.Y. Oct. 22, 2008) ("The complexity of Plaintiff's claims

*ipso facto* creates uncertainty."); *NASDAQ III*, 187 F.R.D. at 475 (settlement approval warranted

"especially in a case of this complexity and magnitude"). Barclays has denied, and continues to

deny, any wrongdoing, and "[e]stablishing otherwise [would] require considerable additional pre-

trial effort and a lengthy trial." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 199

(S.D.N.Y. 2012), *aff'd sub nom.*, *Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013); *see also Park*,

2008 WL 4684232, at *4 ("Liability is never automatic.").

And even though OTC Plaintiffs believe they would be able to establish Barclays' liability

at trial, all antitrust cases involve risk. *See NASDAQ III*, 187 F.R.D. at 476 ("The history of

antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability,

but recovered no damages, or only negligible damages, at trial, or on appeal."); *Cardiology*

*Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 CIV. 3048 (JMW), 1987 WL 7030, at *3 (S.D.N.Y.

Feb. 13, 1987) ("There is a substantial risk that the plaintiff might not be able to establish liability

at all and, even assuming a favorable jury verdict, if the matter is fully litigated and appealed, any

recovery would be years away."). When compared to the certainty of the significant recovery achieved by the Settlement, these considerations militate against further litigation and support final approval of the Settlement.

### e.   The Risks of Maintaining the Class Action through Trial (Factor 6)

Interim Co-Lead Counsel have explained in detail why they believe the Court should certify a proposed litigation class under Fed. R. Civ. P. 23 (a) and 23(b)(3). *See* ECF Nos. 1904-06, 2190-91. But class certification can be reviewed and modified at any time before trial. That possibility also weighs in favor of final approval at this juncture. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory"); *see also Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013).

### f.   The Ability of Defendants to Withstand a Greater Judgment (Factor 7)

While large financial institutions ordinarily can "withstand a greater judgment,"[12] given the extent of the cooperation being provided by Barclays and the fact that the Settlement amount represents a significant cash payment by Barclays, this factor also supports final approval here. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("[T]he benefit of obtaining the cooperation . . . tends to offset the fact that they would be able to withstand a larger judgment.").

### g.   The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Factors 8 and 9)

The last two *Grinnell* factors "recognize[] the uncertainties of law and fact in any particular

---

[12]     "[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009).

case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). This is not a "mathematical equation yielding a particularized sum." *Massiah v. MetroPlus Health Plan, Inc.*, No 11 CV 05669, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012); *see also In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 431 (S.D.N.Y. 1993). Rather, the range of reasonableness "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman*, 464 F.2d at 693; *see also In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984); *NASDAQ III*, 187 F.R.D. at 478. As noted in one prominent antitrust case, the "essence of a settlement is compromise. A just result is often no more than an arbitrary point between competing notions of reasonableness." *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1325 (5th Cir. 1981); *see also Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

Here, the $120 million ice-breaker Settlement is an excellent result. Not only will the cash provide an immediate monetary benefit to Class Members, but the Settlement also preserves their right to recover the entire amount of damages against the Non-Settling Defendants based on joint and several liability (after an offset post-trebling for the settlement amounts). *See In re Corrugated Container Antitrust Litig.*, No. MDL 310, 1981 WL 2093, at *17 (S.D. Tex. June 4, 1981) (noting that partial settlements preserved plaintiffs' ability to seek the entire amount of damages from non-settling defendants weighed in favor of settling approval).

Barclays's obligation to provide information pursuant to the Settlement Agreement is likewise extremely valuable to OTC Plaintiffs and the Settlement Class even if financially

unquantifiable. As the court in *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2015 WL 9266493 (N.D. Cal. Dec. 17, 2015), recently held, the "'provision of such assistance is a substantial benefit to the classes and strongly militates toward approval of the Settlement Agreement.'" *Id*. at *6 (quoting *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 643); *see also Precision Assocs. v. Panalpina World (Holding) Transp. Ltd.*, No. 08-CV-42 (JG) (VVP), 2013 WL 4525323, at *9 (E.D.N.Y. Aug. 27, 2013); *IPO*, 226 F.R.D. at 197.

Finally, as the first settlement in the OTC Action, this Settlement has the potential to "'bring other defendants to the point of serious negotiations." *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) (noting "that this settlement has significant value as an 'ice-breaker' settlement—it is the first settlement in the litigation—and should increase the likelihood of future settlements."). This exerts significant pressure on the non-settling Defendants. *See In re High-Tech Employee Antitrust Litig.*, No. 11-CV-2509-LHK, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013). As the court in *In re Corrugated Container Antitrust Litigation*, explained: "[T]his strategy was designed to achieve a maximum aggregate recovery for the class and the fact that the later settlements were at considerably higher rates tends to show that the strategy was successful." 1981 WL 2093, at *23.

### B. The Court Should Certify the Settlement Class

In accordance with the Settlement, OTC Plaintiffs respectfully request that the Court certify the following Class for settlement purposes:

> All persons or entities (other than Defendants and their employees, affiliates, parents, and subsidiaries) that purchased in the United States, directly from a Defendant (or a Defendant's subsidiaries or affiliates), a U.S. Dollar LIBOR-Based Instrument and that owned the U.S. Dollar LIBOR-Based Instrument any time during the period August 2007 through May 2010 (the "Class Period").

Settlement ¶ 3(a).

13

Certification of a settlement class is appropriate where that class meets all of the requirements of Rule 23(a) as well as one of the requirements of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). When certification of a settlement class is sought, "courts must take a liberal rather than a restrictive approach." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009). Further, courts need not consider whether a trial will be manageable because the case will not be tried. *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 239 (2d Cir. 2012).

Class Counsel previously filed a motion to certify this Settlement Class. ECF No. 1337 at 12-22. This Court declined to rule on that motion as premature. ECF No. 1678. Because final approval requires certification of a settlement class, the issue is now ripe. For the reasons explained in the prior motion for approval of the Settlement Class, ECF No. 1337, the Settlement Class more than satisfies the requirements for certification of a settlement class.

### C.      The Court Should Appoint OTC Plaintiffs' Counsel as Counsel for the Class

Under Rule 23(g), a court that certifies a class must appoint class counsel, who is charged with fairly and adequately representing the interests of the class. *See* Fed. R. Civ. P. 23(g)(1). In determining class counsel, the Court must consider (1) the work undertaken by counsel in identifying or investigating the potential claims; (2) counsel's experience in handling class actions, other complex litigation, and similar claims; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A).

OTC Plaintiffs' Interim Co-Lead Counsel readily meet these requirements and should be appointed as counsel for the Settlement Class, for the reasons set forth in the prior briefing on this issue, which this Court deferred ruling on. ECF No. 1678.

### D.    Notice to the Class Comported with Rule 23 and Due Process

A notice program must satisfy both Rule 23(c)(2)(B) and Rule 23(e)(1). Rule 23(c)(2)(B) requires the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974). However, neither individual nor actual notice to every class member is required; instead, class counsel [need only] act[] reasonably in selecting means likely to inform the persons affected." *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 00214 CM, 2010 WL 5187746, at *3 (S.D.N.Y. Dec. 6, 2010) (citing *Weigner v. The City of New York*, 852 F.2d 646, 649 (2d Cir. 1988)); *see also In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008). As for Rule 23(e)(1), it requires that notice of a settlement be "reasonable" – *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceeding." *Wal-Mart*, 396 F.3d at 114. As explained below, the approved notice program satisfies both of these requirements and should be finally approved.

This Court approved the notice and amended notice plan. ECF Nos. 1948, 2155, 2243. The notice actually sent to potential claimants complied in all respects with the plan this Court already approved. Rabe Decl. ¶¶ 1-2, 6-21, Exs. A & B.; Wheatman Decl. ¶¶ 1-3, 9-29, Exs. A & B.

### 1.    Notice Was the Best Practicable Under the Circumstances

As described above, notice was provided to potential members of the Settlement Class in three ways: Direct Notice, Publication Notice, and Internet Notice. Courts routinely approve notice programs that combine multiple means of notice, such as this one. *See, e.g.*, *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *8 ("The notice was also distributed widely, through the internet, print publications, and targeted mailings. The Court concludes that the distribution of the

class notice was adequate."); *In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2016 WL 2731524, at *5 (S.D.N.Y. Apr. 26, 2016) ("Class Counsel mailed notice packets to each of 13,923 identified Class members. . . . . The Summary Notice was also published on January 11 in several important business publications. . . . The [claims administrator] launched a website for the Settlement which posted the Settlement agreements, notices, court documents, and other information relevant to the Settlement."); *see also* MANUAL FOR COMPLEX LITIGATION § 30.211, at 223. The Court should similarly conclude here.

> **2.     *The Notice "Fairly Apprised" Potential Class Members of the Settlement and Their Options***

The contents of a class action settlement notice must (1) "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" and (2) be written as to "be understood by the average class member." *Wal-Mart*, 396 F.3d at 114-15 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)). "There are no rigid rules to determine whether a settlement notice satisfies constitutional or Rule 23(e) requirements . . . ." *In re Vitamin C*, 2012 WL 5289514, at *8 (quotation omitted); however, courts typically consider (a) "whether there has been a succinct description of the substance of the action and the parties' positions"; (b) "whether the parties, class counsel, and class representatives have been identified"; (c) "whether the relief sought has been indicated"; (d) "whether the risks of being a class member, including the risk of being bound by the judgment have been explained"; (e) "whether the procedures and deadlines for opting out have been clearly explained"; and (f) "whether class members have been informed of their right to appear in the action through counsel." *Id.* (citing *In re Payment Interchange Fee & Merch. Discount Antitrust Litig.*, No. 05-MD-1720, 2008 WL 115104, at *15 (E.D.N.Y. Jan. 8, 2008)).

Dr. Wheatman, who assisted in the preparation of the notice and is a nationally recognized

16

expert in the form and content of class notice, has concluded that (a) the Direct Notice "effectively communicate[s] information about the Settlement," and (b) the Publication Notice "is designed to capture the Class Member's attention with clear, concise, plain language," and contains plain language text providing "important information regarding the subject of the litigation, the Class definition, and the legal rights available to Class Members," without omitting any "important or required information." Wheatman Decl. ¶¶ 4-8, 30-35. Thus, the contents of the various forms of notice "provided sufficient information for Class Members to understand the Settlement and their options." *Sykes*, 2016 WL 3030156, at *10.

More specifically, both the Direct Notice's substance and method of dissemination to potential members of the Settlement Class assure conveyance of the information required by Rule 23(c)(2)(B), including a plain language explanation of (a) the nature of the case, the claims and defenses, the class definition, the background of the Settlement, and how the settlement funds will be allocated upon final approval; (b) the right to opt out of the Settlement Class, to object to the Settlement, and to appear at the Final Approval Hearing − and the processes and deadlines for doing so; and (c) the binding effect of judgment on those who do not exclude themselves from the Settlement Class. Wheatman Decl. ¶¶ 4-8, 30-35; Rabe Decl. Exs. A & B.

In addition, the Direct Notice contains other information, such as Interim Co-Lead Counsel's intent to request attorneys' fees, expense reimbursement, and service awards. The direct notice also prominently features contact information for the Claims Administrator and Interim Co-Lead Counsel, which Class Members can utilize to obtain further information, if desired. The Direct Notice also provides recipients with information on how to submit a Claim Form in order to be potentially eligible to receive a distribution from the settlement fund. *Id.*

17

**E.      The Plan of Distribution Should be Finally Approved.**

The relevant standards for final approval of a plan of distribution were summarized recently by Judge Cote:

> A district court has broad supervisory powers with respect to the allocation of settlement funds. The plan of allocation must meet the standards by which the settlement is scrutinized — namely, it must be fair and adequate. A plan need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel. A principal goal of a plan of distribution must be the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund. In the case of a large class action the apportionment of a settlement can never be tailored to the rights of each plaintiff with mathematical precision. The challenge of precisely apportioning damages to victims is often magnified in antitrust cases, as damage issues in antitrust cases are rarely susceptible of the kind of concrete, detailed proof of injury which is available in other contexts.

*In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *9 (internal citations and quotations omitted). The Amended Plan of Distribution satisfies these requirements.

The Amended Plan of Distribution, preliminarily approved by the Court on August 28, 2017, ECF No. 2243, calculates, for each Class Member's instrument(s), the claimant's "overall notional stake" as the sum of the "suppressed daily underpayments."[13] The suppressed daily underpayments for each instrument are calculated as follows:

> For each day during the class period when the Claimant had the right to be paid or to receive interest based upon the U.S. Dollar LIBOR rate, the suppressed daily underpayment equals: the dollar amount of the LIBOR-based payment that was due to the Claimant that day (using historical reported LIBOR rates and payment frequency) multiplied by the magnitude of suppression applicable for that day and then divided by the historical reported LIBOR rate for that day.

Hausfeld Decl. ¶ 11.

The Amended Plan of Distribution proposes a pro rata distribution that is similar in structure to the plans of distribution that have been approved to apportion settlement proceeds in

---

[13]      Plaintiffs retained Dr. Bernheim to create a model that estimates the "suppressed daily underpayments" for each day and each tenor during the class period.

other financial instrument contexts. *See*, *e.g.*, *In re Credit Default Swaps*, 2016 WL 2731524, at *4 ("The Plan determines the amount to be paid on each Class member's claim through three main steps: (1) identifying qualifying Covered Transactions; (2) estimating the amount of bid/ask spread inflation resulting from the Dealer Defendants' alleged conduct with respect to each Covered Transaction; and (3) calculating each claimant's recovery based on its *pro rata* share of the available Settlement Funds in relation to the recoveries to which all claimants who have submitted a valid claim are entitled."); *Veeco*, 2007 WL 4115809, at *14 ("Each valid claim will then be calculated so that each authorized claimant will receive, on a proportionate basis, the share of the net settlement fund that the claimant's recognized loss bears to the total recognized loss of all authorized claimants."); *Global Crossing*, 225 F.R.D. at 462 ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach."); *In re Platinum and Palladium Commodities Litig.*, 2014 WL 300655, at *3 (allocations based on artificiality on each trading day).

In addition, Interim Co-Lead Counsel believe that the Amended Plan of Distribution provides a fair and reasonable method to equitably allocate the Net Settlement Fund among members of the Settlement Class who suffered losses as a result of the conduct alleged in this litigation, and their opinion is entitled to "considerable weight" by the Court. *See In re Am. Bank Note Holographics, Inc*., 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001) ("As with other aspects of the settlement, the opinion of experienced and informed counsel is entitled to considerable weight.").

Additionally, although unnecessary, Interim Co-Lead Counsel engaged independent allocation counsel, which met at arm's length and endorsed pro rata distribution of the settlement fund. Hausfeld Decl. ¶ 12.

Because the Amended Plan of Distribution represents a fair and equitable method for allocating the settlement funds among Settlement Class Members who submit valid claims, it

merits final approval from the Court.

## IV.    CONCLUSION

For the foregoing reasons, OTC Plaintiffs respectfully request the Court:

(a) grant final approval to the Barclays Settlement,

(b) certify the Settlement Class;

(c) grant final approval to the plan of distribution;

(d) grant final approval of the class notice;

(e) appoint Susman Godfrey and Hausfeld as counsel for the Settlement Class;

(f) appoint Kenneth Fienberg as the Settlement Administrator; and

(g) appoint Huntington National Bank as the Escrow Agent.

Dated: September 22, 2017

/s/ Michael D. Hausfeld
Michael D. Hausfeld
Hilary Scherrer
Nathaniel C. Giddings
HAUSFELD LLP
1700 Street NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Email: mhausfeld@hausfeldllp.com
Email: hscherrer@hausfeldllp.com
Email: ngiddings@hausfeldllp.com

Scott Martin
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Telephone: 646-357-1100
Email: smartin@hausfeldllp.com

Gary I. Smith, Jr.
HAUSFELD LLP
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Telephone: 215-985-3270

/s/ William Christopher Carmody
William Christopher Carmody
Arun Subramanian
Seth Ard
Geng Chen
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: 212-336-3330
Email: bcarmody@susmangodfrey.com
Email: asubramanian@susmangodfrey.com
Email: sard@susmangodfrey.com
Email: gchen@susmangodfrey.com

Marc M. Seltzer
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars
Los Angeles, California 90067-6029
Telephone: 310-789-3100
Email: mseltzer@susmangodfrey.com
Email: gbridgman@susmangodfrey.com

Barry Barnett
Michael C. Kelso

gsmith@hausfeld.com

SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: 713-651-9366
Email: bbamett@susmangodfrey.com
Email: mkelso@susmangodfrey.com

*Interim Co-Lead Counsel for the Over-the-Counter Class*