**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262 |
| THIS DOCUMENT RELATES TO: | Master File No. 1:11-md-2262-NRB ECF Case |
| The OTC Action | Honorable Naomi R. Buchwald |

**MEMORANDUM OF LAW IN SUPPORT OF OTC PLAINTIFFS'**
**MOTION FOR FINAL APPROVAL OF SETTLEMENT**
**WITH CITIBANK, N.A. AND CITIGROUP INC.**

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................... 1

II.  BACKGROUND .......................................................................................................... 2

  A.  PROCEDURAL HISTORY ............................................................................................ 2

  B.  CLASS NOTICE ........................................................................................................ 2

III. ARGUMENT ................................................................................................................ 4

  A.  THE SETTLEMENT SHOULD BE FINALLY APPROVED. ................................................. 4

    1.   The Settlement is Presumptively Fair, Reasonable, and Adequate ................................ 4

    2.   The Grinnell Factors Support Final Approval of the Settlement .................................... 6

      a.   The Complexity, Expense, and Likely Duration of the Litigation (Factor 1) ............ 6

      b.   The Reaction of the Class to the Settlement (Factor 2) ............................................ 8

      c.   The Stage of the Proceedings (Factor 3) .................................................................. 8

      d.   The Risks of Establishing Liability and Damages (Factors 4 and 5) ........................ 9

      e.   The Risks of Maintaining the Class Action through Trial (Factor 6) ...................... 10

      f.   The Ability of Defendants to Withstand a Greater Judgment (Factor 7) ................. 11

      g.   The Reasonableness of the Settlement in Light of the Best Possible Recovery and
           the Attendant Risks of Litigation (Factors 8 and 9) .......................................... 11

  B.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ....................................... 13

  C.  THE COURT SHOULD APPOINT OTC PLAINTIFFS' COUNSEL AS COUNSEL FOR THE CLASS  15

  D.  NOTICE TO THE CLASS COMPORTED WITH RULE 23 AND DUE PROCESS ................. 15

    1.   Notice Was the Best Practicable Under the Circumstances ........................................ 16

    2.   The Notice "Fairly Apprised" Potential Class Members of the Settlement and Their
         Options ............................................................................................................... 16

  E.  THE PLAN OF DISTRIBUTION SHOULD BE FINALLY APPROVED. ............................. 18

IV.  CONCLUSION ........................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*,
   271 F. App'x 41 (2d Cir. 2008) .........................................................15

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984) ....................................................11

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   No. 06-1775 (E.D.N.Y.)......................................................................14

*Allen v. Dairy Farmers of Am., Inc.*,
   No. 5:09-CV-230, 2011 WL 1706778 (D. Vt. May 4, 2011) ...................4

*In re Am. Bank Note Holographics, Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)..................................................20

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   293 F.R.D. 459 (S.D.N.Y. 2013) ...........................................................4

*In re American Int'l Group, Inc. Secs. Litig.*,
   689 F.3d 229 (2d Cir. 2012)................................................................13

*In re AOL Time Warner, Inc.*,
   No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ..................................8

*In re Austrian and German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)......................................................5

*In re Bear Stearns Companies, Inc. Secs., Derivative, and ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012).....................................................8

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003).....................................................7

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*,
   No. 85 CIV. 3048 (JMW), 1987 WL 7030 (S.D.N.Y. Feb. 13, 1987) ...................................10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   MDL No. 1917, 2015 WL 9266493 (N.D. Cal. Dec. 17, 2015) ...............................12

*Charron v. Pinnacle Grp. N.Y. LLC*,
   874 F. Supp. 2d 179 (S.D.N.Y. 2012)..................................................10

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013) .................................................................6

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ...................................................................6, 11, 12

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013) ........................................................................................10

*In re Corrugated Container Antitrust Litig.*,
  659 F.2d 1322 (5th Cir. 1981) ...........................................................................11

*In re Corrugated Container Antitrust Litig.*,
  No. MDL 310, 1981 WL 2093 (S.D. Tex. June 4, 1981) ................................12, 13

*In re Credit Default Swaps Antitrust Litig.*,
  No. 13MD2476 (DLC), 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016)..............16, 18, 19

*In re Currency Conversion Fee Antitrust Litig.*,
  263 F.R.D. 110 (S.D.N.Y. 2009) .........................................................................9

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)...................................................................................5

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  No. M-02-1486- PJH, 2013 U.S. Dist. LEXIS 188116 (N.D. Cal. Jan. 8, 2013) ..............13

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)..............................................................................................15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-CV-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)..............5

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005).........................................................................10

*Gelboim v. Bank of America Corp.*,
  823 F.3d 759 (2d Cir. 2016)...............................................................................8, 9

*Gelboim v. Bank of America Corp.*,
  Nos. 13-3565, 13-3566 (S. Ct. Sept. 5, 2014)....................................................9

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................7, 9, 19

*In re High-Tech Employee Antitrust Litig.*,
  No. 11-CV-2509-LHK, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013)................13

*In re IMAX Securities Litig.*,
    283 F.R.D. 178 (S.D.N.Y. June 20, 2012) ............................................................6

*In re Insurance Brokerage Antitrust Litig.*,
    579 F.3d 241 (3d Cir. 2009) ..............................................................................13

*In re Ionosphere Clubs, Inc.*,
    156 B.R. 414 (S.D.N.Y. 1993) ............................................................................11

*Jermyn v. Best Buy Stores, L.P.*,
    No. 08 CIV. 00214 CM, 2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010) ....................15

*In re Linerboard Antitrust Litig.*,
    292 F. Supp. 2d 631 (E.D. Pa. 2003) ................................................................12

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ..........................................................................6

*Massiah v. MetroPlus Health Plan, Inc.*,
    No 11 CV 05669, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ...........................11

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .............................................................7, 9, 10, 11

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ..............................................................................11

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. ...........................................................................................................5

*Park v. The Thomson Corp.*,
    No. 05 CIV. 2931 (WHP), 2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008) ...........9, 10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    986 F. Supp. 2d 207 (E.D.N.Y. 2013) .................................................................7, 9

*In re Platinum and Palladium Commodities Litig.*,
    2014 WL 300655 ...............................................................................................19

*Precision Assocs. v. Panalpina World (Holding) Transp. Ltd.*,
    No. 08-CV-42 (JG) (VVP), 2013 WL 4525323 (E.D.N.Y. Aug. 27, 2013) ............12

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
    584 F. Supp. 2d 697 (M.D. Pa. 2008) ...............................................................11

*In re Processed Egg Prods. Antitrust Litig.*,
    No. 08-md-2002, 2016 WL 3584632 (E.D. Pa. Jun. 30, 2016) ............................13

*Ramirez v. DeCoster*,
    142 F. Supp. 2d 104 (D. Me. 2001) .......................................................................13

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008).......................................................................5

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) .........................5, 19

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
    257 F.3d 256 (2d Cir. 2001)........................................................................................6

*In re Vitamin C Antitrust Litig.*,
    No. 06-MD-1738 BMC JO, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) .................6, 16, 17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)............................................................................... *passim*

*Weber v. Gov't Emps. Ins. Co.*,
    262 F.R.D. 431 (D.N.J. 2009)...................................................................................11

*Weseley v. Spear, Leeds & Kellogg*,
    711 F. Supp. 713 (E.D.N.Y. 1989) ..............................................................................6

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ passim

Pursuant to Federal Rule of Civil Procedure 23(c), (e), and (g), OTC Plaintiffs, by and through their counsel, Susman Godfrey LLP and Hausfeld LLP (together, "Interim Co-Lead Counsel"), respectfully submit this Memorandum of Law in Support of their Motion for Final Approval of Settlement with Citibank N.A. and Citigroup Inc., requesting final approval of the Settlement, final approval of the plan of distribution, final approval of the notice disseminated to class members, certification of the Settlement Class, and appointment of Hausfeld LLP and Susman Godfrey LLP as Co-Lead Counsel for the Settlement Class.

## I.    INTRODUCTION

Subject to this Court's approval, OTC Plaintiffs, on behalf of the Settlement Class, have agreed to settle all claims against Citibank N.A. and Citigroup Inc. (collectively, "Citi") in exchange for a cash payment of $130,000,000 and extensive cooperation from Citi.

This is a very favorable result given the many inherent risks in litigation. Indeed, members of the Settlement Class – sophisticated investors – have resoundingly supported the Settlement.[1] There has not been a single objection, and no class member has so far requested exclusion. The money that will be distributed to class members making claims will be substantial, and because OTC Plaintiffs' and Settlement Class members' claims against the non-settling defendants remain intact, they will have the ability to recover more of their losses in future settlements.[2]

For several reasons, and as demonstrated below, the relief requested in the motion is appropriate. First, the Settlement is an excellent result; is fair, reasonable and adequate under the governing standards in this Circuit; and warrants final approval. Second, notice to potential members of the Settlement Class complied with Rule 23 and due process, such that it also warrants

---

[1]      Unless otherwise defined herein, all capitalized terms have the meaning ascribed to them in the Settlement Agreement Between OTC Plaintiffs Citibank N.A. and Citigroup Inc., dated July 27, 2017 (the "Settlement").

[2]      Members of the Settlement Class also have the ability to claim funds from the previously approved settlement with Barclays, and would have the right to share in proceeds from future settlements or any recoveries at trial.

final approval. <u>Third</u>, the proposed Settlement Class meets all of the requirements of Rule 23 such that the Court should certify it for purposes of this Settlement. <u>Fourth</u>, Interim Co-Lead Counsel has diligently prosecuted this complex class action and should be appointed as Co-Lead Counsel for the Settlement Class. <u>Finally</u>, the Plan of Distribution, which distributes funds on a pro rata basis, is a fair, reasonable, and rational method for distributing the Net Settlement Fund to the Settlement Class and also warrants final approval.

## II.    BACKGROUND

### A.    Procedural History

On August 31, 2017, the Court granted preliminary approval to the Settlement and granted OTC Plaintiffs' request to appoint Kenneth Feinberg as the Settlement Administrator, Rust Consulting, Inc. as the Claims Administrator, and Huntington National Bank as the Escrow Agent. ECF No. 2247.   On September 26, 2017, the Court found that the proposed notice plan "constitute[d] the best notice practicable under the circumstances," and preliminarily approved the plan of distribution. ECF No. 2290. The Court subsequently approved edits to the Long Form Notice.  ECF No. 2232.

### B.    Class Notice

As described in greater detail below, notice was provided to potential members of the Settlement Class in compliance with the approved notice plan and amended notice plan. This consists of notice in three ways: Direct Notice, Publication Notice, and Internet Notice.

**Direct Notice.** OTC Plaintiffs provided direct notice to every potential class member that could be identified through reasonable efforts. First, OTC Plaintiffs sent direct notice to 3,167 potential Citi counterparty addresses and 43,479 potential class members' addresses that were

obtained from the business records of other Defendants.[3] Rabe Decl. ¶ 7 & n.1.  Second, Credit

Suisse AG and HSBC agreed to give direct notice to their own counterparties. *Id*. ¶ 7 n.2.[4] Third,

OTC Plaintiffs furnished direct notice to mailing lists comprising 24,123 institutional investors

(including insurance companies, pension funds, hedge funds, and banks) and 66,946 state, city,

and county government offices that are likely to be potential class members. *Id*. ¶ 7 n.1. Consistent

with the Court's orders, direct notice was dispatched to potential Settlement Class members on

November 14, 2017. *Id*. ¶¶ 11.

**Publication Notice.** Between October 30, 2017 and November 13, 2017 , OTC Plaintiffs

transmitted Publication Notice in 4 national newspapers, 2 business magazines, and 9 trade

magazines. Wheatman Decl. ¶¶ 18-23, Ex. 1. These publications included *The Economist*;

*Bloomberg Businessweek*; *Institutional Investor*; *Pensions & Investments*; *Financial Times*; and

*The Wall Street Journal*. *Id*. In addition, on August 1, 2017, OTC Plaintiffs disseminated notice

through a global press release distributed through Business Wire to key financial and business

media, with coverage of newspapers, television, radio, news agencies, analysts and business

publications/editors throughout the world, using a variety of platforms and aggregators including

AP Mobile, Yahoo! Finance and Viigo. *Id*. ¶ 30.

**Internet Notice.** Internet Notice provided potential Class Members with additional notice

opportunities. The Internet Notice was allocated to maximize gross impressions[5] through various

targeted websites (*e.g.*, LinkedIn, Traders Magazine Online News, and CFA Institute Financial

---

[3]       Barclays; Citi; JPMorgan Chase, RBC, Bank of America, Deutsche Bank, and UBS.

[4]       Every live Defendant in the OTC Action has cooperated with OTC Plaintiffs in sending notice to potential members of the Settlement Class. As to the dismissed Defendants, on February 3, 2017, OTC Plaintiffs informed the Court that several defendants dismissed for lack of personal jurisdiction refused to produce their counterparty addresses. ECF No. 1764. Plaintiffs asked for an order compelling defendants to produce that data, should the Court deem that necessary for notice of the Barclays Settlement. No such order was issued.

[5]       Gross impressions are the total number of times a media outlet containing the Notice is seen. This figure does not represent the total number of unique viewers of the Notice, as some viewers/readers will see the Notice in more than one media outlet. Wheatman Decl. ¶ 25 n. 2.

NewsBrief). *Id.* ¶¶ 24-27, Ex. 3.

**Settlement Website.** On November 14, 2017, OTC Plaintiffs also established the Settlement Website − https://USDollarLiborSettlement.com/mainpage/Citibank/Home.aspx − to enable members of the Settlement Class to obtain all information about the Settlement and to file a claim electronically. Rabe Decl. ¶¶ 16-18.[6] As of December 14, 2017, the Settlement Website has had 56,601 unique visitors, who have downloaded the notice 177 times and submitted 47 claims. *Id.* ¶ 17.

This complied with all aspects of the approved notice plans. Rabe Decl. ¶¶ 1-2, 6-21, Exs. A & B; Wheatman Decl. ¶¶ 1-3, 12-37, Exs. 1-4.

## III.   ARGUMENT

### A.   The Settlement Should Be Finally Approved.

Rule 23(e) provides that the Court should grant final approval to a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, the Court should consider both the procedural and substantive fairness of the settlement. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 464 (S.D.N.Y. 2013). Public policy favors the settlement of disputed claims among private litigants, particularly in class actions. *See Wal-Mart*, 396 F.3d at 116-17; *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-CV-230, 2011 WL 1706778, at *2 (D. Vt. May 4, 2011). Recently, in the Yen LIBOR case,

### 1.   *The Settlement is Presumptively Fair, Reasonable, and Adequate*

Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of

---

[6]      All notices referred potential members of the Settlement Class to that website so that they could obtain information about the Settlement and to make a claim electronically. *See* Rabe Decl. Exs. A & B.

fairness." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000); *see also Wal-Mart*, 396 F.3d at 116. Indeed, in such circumstances, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. at 125; *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008). That is precisely the case here. The Settlement was reached after extended, frank, and contentious negotiations over the course of more than two years, including a mediation session and negotiations conducted under the guidance of the Honorable Layn R. Phillips.[7]  The involvement of a a mediator strengthens the presumption of fairness.  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *14 (S.D.N.Y. Nov. 8, 2010) (noting that the "presumption in favor of the negotiated settlement in this case is strengthened by the fact that settlement was reached in an extended mediation"); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator's involvement . . . helps to ensure that the proceedings were free of collusion and undue pressure.").

Moreover, OTC Plaintiffs played an active role in the litigation and support the Settlement. These OTC Plaintiffs are highly sophisticated, such as Yale University and Baltimore. OTC Plaintiffs' involvement further supports the presumption of fairness. *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) (noting that a settlement reached "under the supervision and with the endorsement of a sophisticated institutional investor . . . is entitled to an even greater presumption of reasonableness.").

---

[7]    For a more extended discussion of the procedural history of this case, including a summary of the claims, the settlement negotiations, and the terms of the settlement, the OTC Plaintiffs hereby incorporate by reference the Declaration of Marc. M. Seltzer, filed with the motion for preliminary approval. ECF No. 2197.

## 2. The Grinnell Factors Support Final Approval of the Settlement

The Settlement is also substantively fair, reasonable, and adequate. The Second Circuit has identified nine factors the courts should examine when considering whether to final approve a proposed class settlement (the "*Grinnell* factors"):

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). As demonstrated below, the Settlement amply satisfies the *Grinnell* factors.[8]

### a. The Complexity, Expense, and Likely Duration of the Litigation (Factor 1)

Courts in this Circuit have frequently remarked that antitrust cases readily meet the first *Grinnell* factor. *See In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012) ("Federal antitrust cases are complicated, lengthy, and bitterly fought, as well as costly."); *see also Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001); *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989). This is because "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and the Court." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381-82 (S.D.N.Y. 2013).

---

[8]     "[N]ot every factor must weigh in favor of settlement[;] rather [a] court should consider the totality of these factors in light of the particular circumstances." *In re IMAX Securities Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. June 20, 2012). And in reviewing a settlement, a court "should not attempt to approximate a litigated determination of the merits of the case lest the process of determining whether to approve a settlement simply substitute one complex, time consuming and expensive litigation for another." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010).

6

This case fits comfortably in that rule. OTC Plaintiffs first brought this action more than six years ago, and since then, they have persevered through multiple rounds of motion to dismiss briefing and a contentious appeal to the Supreme Court and back; reviewed more than 1.1 million documents produced in discovery and over 6,000 audio files; fully briefed class certification, including development of a comprehensive expert model; and are currently briefing a pending appeal in the Second Circuit. Although OTC Plaintiffs are resoundingly confident in their claims, there can be little doubt that, absent the Settlement, Citi would have mounted a robust defense in future stages of the litigation, including trial. At each stage, the losing party would have likely sought to appeal, resulting in further expense and delay. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 212 n.13 (E.D.N.Y. 2013), *rev'd and vacated on other grounds*, 827 F.3d 223 (2d Cir. 2016) ("*Interchange*") ("In the *Wal-Mart* case, twenty months elapsed between the order certifying the class and the Second Circuit's divided opinion affirming that decision."); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) ("*NASDAQ III*") (estimating that trial could consume over a year); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (citing the same considerations and finally approving a partial settlement).

In short, "[t]here can be no doubt that this class action would be enormously expensive to continue, [and] extraordinarily complex to try," *NASDAQ III*, 187 F.R.D. at 477, and the $130 million all-cash Settlement at this juncture results in an immediate and substantial recovery without the expense and delay of continued litigation, a trial, and likely appeals, as to Citi. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[T]he passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"). OTC Plaintiffs respectfully

submit that the Court should find that this factor weighs in favor of the proposed Settlement.

**b.      The Reaction of the Class to the Settlement (Factor 2)**

As described above, potential members of the Settlement Class were provided direct, publication, and internet notice of the Settlement. Rabe Decl. ¶¶ 1-2, 6-21, Exs. A & B; Wheatman Decl. ¶¶ 1-3, 12-37, Exs. 1-4. The various forms of notice explain, in clear and concise language, the legal options and monetary benefits available to class members under the Settlement, and were created with the help of a leading expert in the form and content of notice. Wheatman Decl. ¶¶ 4-6, 32-37. While the deadline set by the Court for members of the Settlement Class to object to the Settlement or exclude themselves from the Settlement Class has not yet passed, to date, no objections and no requests for exclusion have been received to date. Rabe Decl. ¶¶ 20-21. This is a significant factor weighing in favor of final approval. *E.g.*, *In re Bear Stearns Companies, Inc. Secs., Derivative, and ERISA Litig.*, 909 F. Supp. 2d 259, 266-67 (S.D.N.Y. 2012); *Wal-Mart*, 296 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

**c.      The Stage of the Proceedings (Factor 3)**

There can be little doubt that OTC Plaintiffs "have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). First, the parties have been litigating this action for more than six years and have received numerous lengthy rulings from the Court on the viability of their claims, *see* ECF Nos. 286, 389, 568, 1164, 123; have briefed and argued the viability of the antitrust claim in the Second Circuit and are now in the midst of briefing personal jurisdiction issues in the Second Circuit; *see Gelboim v. Bank of America Corp.*, 823 F.3d 759 (2d Cir. 2016); *In Re: Libor-Based Financial Instruments Antitrust Litig.*, No. 17-1569 (2d Cir.); have briefed an amicus filing to the Supreme Court on

appellate jurisdiction in *Gelboim*, *see* Brief amici curiae of Mayor and City Council of Baltimore, *Gelboim v. Bank of America Corp.*, Nos. 13-3565, 13-3566 (S. Ct. Sept. 5, 2014); and have fully briefed a motion for class certification and submitted extensive supporting evidence that includes expert analysis quantifying the magnitude of alleged LIBOR suppression*, see* ECF Nos. 1904-06, 2030-34, 2190-91. Second, as discussed above OTC Plaintiffs have reviewed over a million documents and thousands of audio files. Prior to the Settlement, Interim Co-Lead Counsel reviewed and briefed facts stemming from numerous public filings by regulators revealing in detail wrongdoing by Citi and other defendants. The information gained through litigation and discovery has provided Interim Co-Lead Counsel with a comprehensive understanding of the relative strengths and weaknesses of OTC Plaintiffs' case and supports final approval of the Settlement. *See In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009) (noting the "extensive" experience of counsel in granting final approval of settlement).

### d. The Risks of Establishing Liability and Damages (Factors 4 and 5)

"In assessing the Settlement, the Court should balance the benefits afforded the Class, including the *immediacy* and *certainty* of a recovery, against the continuing risks of litigation." *Interchange*, 986 F. Supp. 2d at 224 (emphasis in original). In so doing, the Court need not "adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risk of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).

Interim Co-Lead Counsel recognized that they faced obstacles to proving liability and establishing damages in this complex case. *See Park v. The Thomson Corp.*, No. 05 CIV. 2931 (WHP), 2008 WL 4684232, at *4 (S.D.N.Y. Oct. 22, 2008) ("The complexity of Plaintiff's claims *ipso facto* creates uncertainty."); *NASDAQ III*, 187 F.R.D. at 475 (settlement approval warranted

"especially in a case of this complexity and magnitude"). Citi has denied, and continues to deny, any wrongdoing, and "[e]stablishing otherwise [would] require considerable additional pre-trial effort and a lengthy trial." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 199 (S.D.N.Y. 2012), *aff'd sub nom.*, *Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013); *see also Park*, 2008 WL 4684232, at *4 ("Liability is never automatic.").

And even though OTC Plaintiffs believe they would be able to establish Citi's liability at trial, all antitrust cases involve risk. *See NASDAQ III*, 187 F.R.D. at 476 ("The history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal."); *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 CIV. 3048 (JMW), 1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987) ("There is a substantial risk that the plaintiff might not be able to establish liability at all and, even assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away."). When compared to the certainty of the significant recovery achieved by the Settlement, these considerations militate against further litigation and support final approval of the Settlement.

### e. The Risks of Maintaining the Class Action through Trial (Factor 6)

Interim Co-Lead Counsel have explained in detail why they believe the Court should certify a proposed litigation class under Fed. R. Civ. P. 23 (a) and 23(b)(3). *See* ECF Nos. 1904-06, 2190-91. But class certification can be reviewed and modified at any time before trial. That possibility also weighs in favor of final approval at this juncture. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory"); *see also Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013).

### f. The Ability of Defendants to Withstand a Greater Judgment (Factor 7)

While large financial institutions ordinarily can "withstand a greater judgment,"[9] given the extent of the cooperation being provided by Citi and the fact that the Settlement amount represents a significant cash payment by Citi, this factor also supports final approval here. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("[T]he benefit of obtaining the cooperation . . . tends to offset the fact that they would be able to withstand a larger judgment.").

### g. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Factors 8 and 9)

The last two *Grinnell* factors "recognize[] the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). This is not a "mathematical equation yielding a particularized sum." *Massiah v. MetroPlus Health Plan, Inc.*, No 11 CV 05669, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012); *see also In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 431 (S.D.N.Y. 1993). Rather, the range of reasonableness "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman*, 464 F.2d at 693; *see also In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984); *NASDAQ III*, 187 F.R.D. at 478. As noted in one prominent antitrust case, the "essence of a settlement is compromise. A just result is often no more than an arbitrary point between competing notions of reasonableness." *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322,

---

[9]     "[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009).

1325 (5th Cir. 1981); *see also Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

Here, the $130 million Settlement is an excellent result. Not only will the cash provide an immediate monetary benefit to Class Members, but the Settlement also preserves their right to recover the entire amount of damages against the Non-Settling Defendants based on joint and several liability (after an offset post-trebling for the settlement amounts). *See In re Corrugated Container Antitrust Litig.*, No. MDL 310, 1981 WL 2093, at *17 (S.D. Tex. June 4, 1981) (noting that partial settlements preserved plaintiffs' ability to seek the entire amount of damages from non-settling defendants weighed in favor of settling approval).

Citi's obligation to provide information pursuant to the Settlement Agreement is likewise extremely valuable to OTC Plaintiffs and the Settlement Class even if financially unquantifiable. As the court in *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2015 WL 9266493 (N.D. Cal. Dec. 17, 2015), recently held, the "'provision of such assistance is a substantial benefit to the classes and strongly militates toward approval of the Settlement Agreement.'" *Id.* at *6 (quoting *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 643); *see also Precision Assocs. v. Panalpina World (Holding) Transp. Ltd.*, No. 08-CV-42 (JG) (VVP), 2013 WL 4525323, at *9 (E.D.N.Y. Aug. 27, 2013); *IPO*, 226 F.R.D. at 197.

Finally, as the second settlement in the OTC Action, this Settlement has the potential to "'bring other defendants to the point of serious negotiations." *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) (noting "that this settlement has significant value as an 'ice-breaker' settlement—it is the first settlement in the litigation—and should increase the likelihood of future settlements."). This exerts significant pressure on the non-settling Defendants.

*See In re High-Tech Employee Antitrust Litig.*, No. 11-CV-2509-LHK, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013). As the court in *In re Corrugated Container Antitrust Litigation*, explained: "[T]his strategy was designed to achieve a maximum aggregate recovery for the class and the fact that the later settlements were at considerably higher rates tends to show that the strategy was successful." 1981 WL 2093, at *23.

### B.     The Court Should Certify the Settlement Class

In accordance with the Settlement, OTC Plaintiffs respectfully request that the Court certify the following class (the "Citi Settlement Class") for settlement purposes:

> All persons or entities (other than Defendants and their employees, affiliates, parents, and subsidiaries) that purchased in the United States, directly from a Defendant (or a Defendant's subsidiaries or affiliates), a U.S. Dollar LIBOR-Based Instrument and that owned the U.S. Dollar LIBOR-Based Instrument any time during the period August 2007 through May 2010 (the "Class Period").

Settlement ¶ 3(a).[10]  OTC Plaintiffs previously filed a motion to certify the Barclays Settlement Class, ECF No. 1337 at 12-22, and for the reasons set for therein, the Citi Settlement Class more than satisfies the requirements for certification of a settlement class.[11]

In response to questions raised by the Court at the Barclays final approval hearing, OTC

---

[10]     This is the same settlement class used in the Barclays settlement, which is currently pending final approval.
[11]     OTC Plaintiffs have also submitted extensive briefing and expert reports in support of their motion to certify a litigation class. ECF Nos. 1905, 2190. It should be noted, however, that "the predominance inquiry will sometimes be easier to satisfy in the settlement context." This is because "concerns about whether individual issues would create 'intractable management problems' at trial drop out of the predominance analysis because 'the proposal is that there be no trial.'" *In re American Int'l Group, Inc. Secs. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). For this reason, it is common for a settlement classes to be certified even after certification of a litigation class has been denied. *See, e.g., In re Insurance Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009) (certifying settlement class); *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2016 WL 3584632, at *8-12 (E.D. Pa. Jun. 30, 2016) (finding that the court's previous decision not to certify a subclass of certain purchasers is not dispositive for the court's determination as to whether to certify a settlement class including such purchasers); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486- PJH, 2013 U.S. Dist. LEXIS 188116, at *213 n.112 (N.D. Cal. Jan. 8, 2013) (courts considering certification of a settlement class can find that common issues predominate without "grappl[ing] with . . . whether or how the fact of damage, or 'antitrust impact,' could be proved on a classwide basis"); *Ramirez v. DeCoster*, 142 F. Supp. 2d 104, 111 (D. Me. 2001) (certifying settlement class after declining to certify litigation class).

Plaintiffs note that certification of a settlement class is not dispositive of whether a litigation class should be certified.  The proposed order submitted herewith explicitly provides that certification of the Settlement Class "is without prejudice to, or waiver of the rights of, any defendant to contest certification of any other class" and "shall have no effect on the Court's ruling on any motion to certify any class," and "no party may cite or refer to the Court's approval of the class as persuasive or binding authority with respect to any motion to certify any such class." [Proposed] Order at ¶7.  Similar language was included in final orders approving settlements and certifying settlement classes in the Yen LIBOR case.  *See Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd. el al.*, No. 12-cv-3419 (GBD) (S.D.N.Y. Nov. 10, 2016) (ECF No. 720).

Conversely, the fact that Citi opposed class certification does not preclude certification of a settlement class.  It is common for courts to certify settlement classes while certification of a litigation class is being contested in ongoing litigation.  For example, while a decision regarding certification of a litigation class was pending in *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-1775 (E.D.N.Y.), Judge Gleeson certified settlement classes as to defendants Singapore Airlines Limited and Singapore Airlines Cargo PTE Ltd. ("Singapore"), Cathay Pacific Airways Limited ("Cathay Pacific"), and Korean Air Lines Co., Ltd. ("Korean"), which had all opposed certification of a litigation class.  *See* ECF Nos. 1842 (April 23, 2013 letter notifying court of filing of joint sur-reply in opposition to class certification, joined by, *inter alia*, Singapore, Cathay Pacific, and Korean); 1972 (January 29, 2014 order certifying Korean settlement class); 1980 at n.8 (January 29, 2014 order certifying Singapore settlement class); 1992 (March 4, 2014 order certifying Cathay Pacific settlement class).

Accordingly, OTC Plaintiffs have satisfied the requirements for certification of a settlement class.

14

### C.      The Court Should Appoint OTC Plaintiffs' Counsel as Counsel for the Class

Under Rule 23(g), a court that certifies a class must appoint class counsel, who is charged with fairly and adequately representing the interests of the class. *See* Fed. R. Civ. P. 23(g)(1). In determining class counsel, the Court must consider (1) the work undertaken by counsel in identifying or investigating the potential claims; (2) counsel's experience in handling class actions, other complex litigation, and similar claims; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A).

OTC Plaintiffs' Interim Co-Lead Counsel readily meet these requirements and should be appointed as counsel for the Settlement Class, for the reasons set forth in the prior briefing on this issue. ECF No. 1678.

### D.      Notice to the Class Comported with Rule 23 and Due Process

A notice program must satisfy both Rule 23(c)(2)(B) and Rule 23(e)(1). Rule 23(c)(2)(B) requires the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974). However, neither individual nor actual notice to every class member is required; instead, class counsel [need only] act[] reasonably in selecting means likely to inform the persons affected." *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 00214 CM, 2010 WL 5187746, at *3 (S.D.N.Y. Dec. 6, 2010) (citing *Weigner v. The City of New York*, 852 F.2d 646, 649 (2d Cir. 1988)); *see also In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008). As for Rule 23(e)(1), it requires that notice of a settlement be "reasonable" – *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceeding." *Wal-Mart*, 396 F.3d at 114. As explained below, the approved notice program satisfies both of these requirements and

15

should be finally approved.

This Court approved the notice plan. ECF No. 2290. The notice actually sent to potential claimants complied in all respects with the plan this Court already approved.  Rabe Decl. ¶¶ 1-2, 6-21, Exs. A & B; Wheatman Decl. ¶¶ 1-3, 12-37, Exs. 1-4.

### 1.    *Notice Was the Best Practicable Under the Circumstances*

As described above, notice was provided to potential members of the Settlement Class in three ways: Direct Notice, Publication Notice, and Internet Notice. Courts routinely approve notice programs that combine multiple means of notice, such as this one. *See, e.g.*, *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *8 ("The notice was also distributed widely, through the internet, print publications, and targeted mailings. The Court concludes that the distribution of the class notice was adequate."); *In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2016 WL 2731524, at *5 (S.D.N.Y. Apr. 26, 2016) ("Class Counsel mailed notice packets to each of 13,923 identified Class members. . . . . The Summary Notice was also published on January 11 in several important business publications. . . . The [claims administrator] launched a website for the Settlement which posted the Settlement agreements, notices, court documents, and other information relevant to the Settlement."); *see also* MANUAL FOR COMPLEX LITIGATION § 30.211, at 223. The Court should similarly conclude here.

### 2.    *The Notice "Fairly Apprised" Potential Class Members of the Settlement and Their Options*

The contents of a class action settlement notice must (1) "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" and (2) be written as to "be understood by the average class member." *Wal-Mart*, 396 F.3d at 114-15 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)). "There are no rigid rules to determine whether a settlement notice satisfies

16

constitutional or Rule 23(e) requirements . . . ." *In re Vitamin C*, 2012 WL 5289514, at *8 (quotation omitted); however, courts typically consider (a) "whether there has been a succinct description of the substance of the action and the parties' positions"; (b) "whether the parties, class counsel, and class representatives have been identified"; (c) "whether the relief sought has been indicated"; (d) "whether the risks of being a class member, including the risk of being bound by the judgment have been explained"; (e) "whether the procedures and deadlines for opting out have been clearly explained"; and (f) "whether class members have been informed of their right to appear in the action through counsel." *Id.* (citing *In re Payment Interchange Fee & Merch. Discount Antitrust Litig.*, No. 05-MD-1720, 2008 WL 115104, at *15 (E.D.N.Y. Jan. 8, 2008)).

Dr. Wheatman, who assisted in the preparation of the notice and is a nationally recognized expert in the form and content of class notice, has concluded that (a) the Direct Notice "effectively communicate[s] information about the Settlement," and (b) the Publication Notice "is designed to capture the Class Member's attention with clear, concise, plain language," and contains plain language text providing "important information regarding the subject of the litigation, the Class definition, and the legal rights available to Class Members," without omitting any "important or required information." Wheatman Decl. ¶¶ 4-6, 32-37. Thus, the contents of the various forms of notice "provided sufficient information for Class Members to understand the Settlement and their options." *Sykes*, 2016 WL 3030156, at *10.

More specifically, both the Direct Notice's substance and method of dissemination to potential members of the Settlement Class assure conveyance of the information required by Rule 23(c)(2)(B), including a plain language explanation of (a) the nature of the case, the claims and defenses, the class definition, the background of the Settlement, and how the settlement funds will be allocated upon final approval; (b) the right to opt out of the Settlement Class, to object to the

17

Settlement, and to appear at the Final Approval Hearing − and the processes and deadlines for doing so; and (c) the binding effect of judgment on those who do not exclude themselves from the Settlement Class. Wheatman Decl. ¶¶ 4-6, 32-37; Rabe Decl. Exs. A & B.

In addition, the Direct Notice contains other information, such as Interim Co-Lead Counsel's intent to request attorneys' fees, expense reimbursement, and service awards. The direct notice also prominently features contact information for the Claims Administrator and Interim Co-Lead Counsel, which Class Members can utilize to obtain further information, if desired. The Direct Notice also provides recipients with information on how to submit a Claim Form in order to be potentially eligible to receive a distribution from the settlement fund. *Id.*

### E. The Plan of Distribution Should be Finally Approved.

The relevant standards for final approval of a plan of distribution were summarized recently by Judge Cote:

> A district court has broad supervisory powers with respect to the allocation of settlement funds. The plan of allocation must meet the standards by which the settlement is scrutinized — namely, it must be fair and adequate. A plan need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel. A principal goal of a plan of distribution must be the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund. In the case of a large class action the apportionment of a settlement can never be tailored to the rights of each plaintiff with mathematical precision. The challenge of precisely apportioning damages to victims is often magnified in antitrust cases, as damage issues in antitrust cases are rarely susceptible of the kind of concrete, detailed proof of injury which is available in other contexts.

*In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *9 (internal citations and quotations omitted). The Plan of Distribution, which is the same plan of distribution proposed for the Barclays settlement, satisfies these requirements.

The Plan of Distribution was preliminarily approved by the Court on August 28, 2017, ECF No. 2290, calculates, for each Class Member's instrument(s), the claimant's "overall notional

stake" as the sum of the "suppressed daily underpayments."[12] The suppressed daily underpayments

for each instrument are calculated as follows:

> For each day during the class period when the Claimant had the right to be paid or
> to receive interest based upon the U.S. Dollar LIBOR rate, the suppressed daily
> underpayment equals: the dollar amount of the LIBOR-based payment that was due
> to the Claimant that day (using historical reported LIBOR rates and payment
> frequency) multiplied by the magnitude of suppression applicable for that day and
> then divided by the historical reported LIBOR rate for that day.

Hausfeld Decl. ¶ 13. The Plan of Distribution proposes a pro rata distribution that is similar in

structure to the plans of distribution that have been approved to apportion settlement proceeds in

other financial instrument contexts. *See*, *e.g.*, *In re Credit Default Swaps*, 2016 WL 2731524, at

*4 ("The Plan determines the amount to be paid on each Class member's claim through three main

steps: (1) identifying qualifying Covered Transactions; (2) estimating the amount of bid/ask spread

inflation resulting from the Dealer Defendants' alleged conduct with respect to each Covered

Transaction; and (3) calculating each claimant's recovery based on its *pro rata* share of the

available Settlement Funds in relation to the recoveries to which all claimants who have submitted

a valid claim are entitled."); *Veeco*, 2007 WL 4115809, at *14 ("Each valid claim will then be

calculated so that each authorized claimant will receive, on a proportionate basis, the share of the

net settlement fund that the claimant's recognized loss bears to the total recognized loss of all

authorized claimants."); *Global Crossing*, 225 F.R.D. at 462 ("Pro-rata distribution of settlement

funds based on investment loss is clearly a reasonable approach."); *In re Platinum and Palladium

Commodities Litig.*, 2014 WL 3500655, at *3 (S.D.N.Y. Jul. 15, 2014) (allocations based on

artificiality on each trading day).

     In addition, Interim Co-Lead Counsel believe that the Plan of Distribution provides a fair

---

[12]    Plaintiffs retained Dr. Bernheim to create a model that estimates the "suppressed daily underpayments" for each day and each tenor during the class period.

and reasonable method to equitably allocate the Net Settlement Fund among members of the Settlement Class who suffered losses as a result of the conduct alleged in this litigation, and their opinion is entitled to "considerable weight" by the Court. *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001) ("As with other aspects of the settlement, the opinion of experienced and informed counsel is entitled to considerable weight.").

Additionally, although unnecessary, Interim Co-Lead Counsel engaged independent allocation counsel, which met at arm's length and endorsed pro rata distribution of the settlement fund. Hausfeld Decl. ¶ 14.

Because the Amended Plan of Distribution represents a fair and equitable method for allocating the settlement funds among Settlement Class Members who submit valid claims, it merits final approval from the Court.

## IV.   CONCLUSION

For the foregoing reasons, OTC Plaintiffs respectfully request the Court grant final approval to the Citi Settlement, certify the Settlement Class; grant final approval to the plan of distribution; find that notice to the Settlement Class comports with due process; and appoint Susman Godfrey and Hausfeld as counsel for the Settlement Class.


Dated: December 15, 2017

| | |
|---|---|
| */s/ Michael D. Hausfeld* | */s/ William Christopher Carmody* |
| Michael D. Hausfeld | William Christopher Carmody |
| Hilary Scherrer | Arun Subramanian |
| Nathaniel C. Giddings | Seth Ard |
| HAUSFELD LLP | Geng Chen |
| 1700 Street NW, Suite 650 | SUSMAN GODFREY L.L.P. |
| Washington, DC 20006 | 1301 Avenue of the Americas, 32nd Floor |
| Telephone: 202-540-7200 | New York, New York 10019 |
| Email: mhausfeld@hausfeldllp.com | Telephone: 212-336-3330 |
| Email: hscherrer@hausfeldllp.com | Email: bcarmody@susmangodfrey.com |

Email: ngiddings@hausfeldllp.com

Scott Martin
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Telephone: 646-357-1100
Email: smartin@hausfeldllp.com

Gary I. Smith, Jr.
HAUSFELD LLP
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Telephone: 215-985-3270
gsmith@hausfeld.com

Email: asubramanian@susmangodfrey.com
Email: sard@susmangodfrey.com
Email: gchen@susmangodfrey.com

Marc M. Seltzer
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars
Los Angeles, California 90067-6029
Telephone: 310-789-3100
Email: mseltzer@susmangodfrey.com
Email: gbridgman@susmangodfrey.com

Barry Barnett
Michael C. Kelso
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: 713-651-9366
Email: bbarnett@susmangodfrey.com
Email: mkelso@susmangodfrey.com

*Interim Co-Lead Counsel for the Over-the-Counter Class*