SUSMAN GODFREY L.L.P.
A REGISTERED LIMITED LIABILITY PARTNERSHIP
32ND FLOOR
1301 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6022
(212) 336-8330
FAX (212) 336-8340
WWW.SUSMANGODFREY.COM

_____

| SUITE 5100 | SUITE 950 | SUITE 3800 |
| 1000 LOUISIANA STREET | 1901 AVENUE OF THE STARS | 1201 THIRD AVENUE |
| HOUSTON, TEXAS 77002-5096 | LOS ANGELES, CALIFORNIA 90067-6029 | SEATTLE, WASHINGTON 98101-3000 |
| (713) 651-9366 | (310) 789-3100 | (206) 516-3880 |

WILLIAM CHRISTOPHER CARMODY
DIRECT DIAL (212) 336-8334

E-MAIL BCarmody@susmangodfrey.com

January 25, 2018

VIA ECF AND HAND DELIVERY

The Honorable Naomi Reice Buchwald
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York  10007-1312

Re:   In re LIBOR-based Financial Instruments Antitrust Litigation, Case No. 11-md-2262

Dear Judge Buchwald:

We write to follow up in connection with issues of state law raised at the hearing on January 18 regarding OTC Plaintiffs' Motion to Certify Case as Class Action and Appoint Class Counsel (Dkt. 1904).

First, contrary to the defendants' assertions at the class certification hearing (Hr'g Tr. 47:10-13), a*ll* of the ISDA Master Agreements[1] between the named plaintiffs and defendants that govern the LIBOR-Based Instruments at issue include choice of law clauses specifying New York law as the substantive law to apply.[2]  Also

---

[1] For simplicity, OTC Plaintiffs use this term to mean both an ISDA Master Agreement and the schedule to the ISDA Master Agreement.

[2] These agreements are provided as Exhibits B – M of the accompanying Declaration of Geng Chen ("Chen Decl."), filed concurrently herewith, which also includes a summary table of the relevant contractual language.

January 25, 2018
Page 2

contrary to the defendants' assertions (Hr'g Tr. 47:14-19), the New York choice of law clauses do not require the Court to engage in a choice of law analysis under New York law.  As the New York Court of Appeals held in *IRB-Brasil Resseguros, S.A. v. Inepar Investments, S.A.*, 982 N.E.2d 609 (N.Y. 2012), parties are not required "to expressly exclude New York conflict-of-laws principles in their choice-of-law provision in order to avail themselves of New York substantive law."  *Id.* at 612 (concluding that "the difference between the language of the choice-of-law provision in the Agreement [which included "without regard to conflict of laws principles"] and the Guarantee [which did not] to be inconsequential as a matter of law").  Thus, the New York choice of law provisions mean precisely what they say—New York law governs.

Second, in response to the Court's question as to whether "there [is] any evidence in the record as to how frequently the parties to ISDA agreements designated New York law" (Hr'g Tr. 46:10-12),[3] the defendants are the only parties in this litigation that possess all of the agreements at issue, and their failure to submit evidence supporting their speculative assertions concerning the multiplicity of governing law clauses is a failure of proof as to that argument. *See Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at *6 (S.D.N.Y. Sept. 5, 2017) (rejecting challenge to commonality based on releases allegedly signed by some class members but not others in part because "*Defendants* do not adduce any evidence as to how many other class members, if any, signed the releases or whether the releases' language vary such that they require individualized determinations" (emphasis added)), *leave to appeal denied*, 2017 WL 6506349 (2d Cir. Dec. 19, 2017); *see also Eastwood v. S. Farm Bureau Cas. Ins. Co.*, 291 F.R.D. 273, 284 (W.D. Ark. 2013) (adopting recommendation to certify class under Rule 23(a) and (b)(3) despite defendant's argument that certain class members may have entered into agreements that preclude their claims because "Plaintiff is helpless to defend against this argument, as only [Defendant] is in the position to submit proof of these hypothetical agreements.").

Third, to the extent that the Court remains concerned about individual issues as to governing law related to OTC Plaintiffs' state law claims, we reiterate our request that the Court, as an alternative to the state law subclasses proposed (*see* Dkt. 2190 at 25 n.60), certify New York law defendant-specific subclasses on OTC Plaintiffs' implied covenant and unjust enrichment claims.  The following

---

[3] The transcript of the January 18, 2018 hearing is provided as Exhibit A to the accompanying Declaration of Geng Chen.

January 25, 2018
Page 3

modified class definition for the state law subclasses only can be used (addition in **bold** compared to Dkt. 1904):

> All persons or entities residing in the United States that purchased, directly from a Panel Bank (or a Panel Bank's subsidiaries or affiliates), a LIBOR-Based Instrument that paid interest indexed to a U.S. dollar LIBOR rate set any time during the period August 2007 through August 2009 ("Class Period") regardless of when the LIBOR-Based Instrument was purchased**, and that contained a contractual clause specifying that the contract is to be construed in accordance with the laws of the State of New York**. Excluded from the class are panel banks and their employees, affiliates, parents, and subsidiaries and any judicial officers and staff presiding over this action. "Panel Bank" means Bank of America, Bank of Tokyo Mitsubishi, Barclays Bank, Citibank, Credit Suisse, Deutsche Bank, HBOS, HSBC, JPMorgan, Lloyds, Norinchukin, Rabobank, Royal Bank of Canada, Royal Bank of Scotland, Societe Generale, UBS, and West LB (n/k/a Portigon).

Courts regularly certify classes whose definitions reference specific contractual language or provisions concerning choice of law. *See, e.g.*, *Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 162 (S.D.N.Y. 2017) (certifying "[a] Rule 23(b)(3) damages class comprising all persons residing in New York who were sent a letter by Defendants attempting to collect interest in excess of 25% per annum regarding debts incurred for personal, family, or household purposes, whose cardholder agreements: (i) purport to be governed by the law of a state that, like Delaware's, provides for no usury cap; or (ii) select no law other than New York.").

We thank the Court for its continued consideration and attention to this matter.

Respectfully submitted,


*/s/ William Christopher Carmody*
William Christopher Carmody