**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | |
| | No. 1:11-md-2262-NRB |
| THIS DOCUMENT RELATES TO: | |
| The OTC Action | |

**OTC PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH**
**<u>DEUTSCHE BANK AKTIENGESELLSCHAFT</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     PROCEDURAL HISTORY .............................................................................. 2

III.    SETTLEMENT NEGOTIATIONS AND SETTLEMENT TERMS .................. 3

IV.     PRELIMINARY APPROVAL OF SETTLEMENT IS APPROPRIATE ........... 6

        A.      Standard for Preliminary Approval ................................................... 6

        B.      The Settlement Is Entitled to a Presumption of Fairness .................. 7

        C.      The Settlement is Substantively Fair ................................................ 9

                1.      The Complexity, Expense, and Likely Duration of the Litigation. ............... 10

                2.      The Reaction of the Class to the Settlement ................................. 11

                3.      The Stage of the Proceedings ...................................................... 11

                4.      The Risks of Establishing Liability and Damages ........................ 13

                5.      The Risks of Maintaining the Class Action Through Trial ............. 14

                6.      The Ability of Defendants to Withstand a Greater Judgment ........ 15

                7.      The Reasonableness of the Settlement in Light of the Best Possible
                        Recovery and the Attendant Risks of Litigation ........................... 16

V.      CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ........ 18

        A.      Rule 23(a) Requirements ................................................................ 18

                1.      Rule 23(a)(1) – Numerosity ........................................................ 18

                2.      Rule 23(a)(2) – Commonality ...................................................... 19

                3.      Rule 23(a)(3) – Typicality .......................................................... 19

                4.      Rule 23(a)(4) – Adequacy ........................................................... 20

        B.      Rule 23(b)(3) Requirements ........................................................... 21

                1.      Predominance .............................................................................. 21

                2.      Superiority ................................................................................... 22

        C.      Certification of a Settlement Class is Not Dispositive of Certification of a
                Litigation Class .............................................................................. 23

        D.      Hausfeld LLP and Susman Godfrey L.L.P. Should Be Appointed
                Settlement Class Counsel ............................................................... 24

VI.     OTC PLAINTIFFS WILL FILE A SEPARATE MOTION FOR APPROVAL
        OF A NOTICE PLAN AND PLAN OF DISTRIBUTION ............................ 24

VII.    CONCLUSION ............................................................................................. 25

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Cargo Shipping Services Antitrust Litigation*,
No. 06-1775 (E.D.N.Y.)...............................................................................24

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..........................................................................18, 22, 23

*In re AOL Time Warner, Inc.*,
No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .....................11, 12, 17

*Atwood v. Intercept Pharm., Inc.*,
299 F.R.D. 414 (S.D.N.Y. 2014) ..................................................................19, 20

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000).....................................................................8

*Authors Guild v. Google, Inc.*,
No. 05 CIV. 8136 (DC), 2009 WL 4434586 (S.D.N.Y. Dec. 1, 2009) ....................................9

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)...................................................................16

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
No. 07 CIV. 2207 JGK, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010)...................................14

*Capsolas v. Pasta Res. Inc.*,
No. 10-CV-5595 RLE, 2012 WL 1656920 (S.D.N.Y. May 9, 2012).....................................8

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*,
No. 85 CIV. 3048 (JMW), 1987 WL 7030 (S.D.N.Y. Feb. 13, 1987) ...................................14

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*,
504 F.3d 229, 245 (2d Cir. 2007).......................................................................19

*In re Chambers Dev. Sec. Litig.*,
912 F. Supp. 822 (W.D. Pa. 1995)........................................................................6

*Charron v. Pinnacle Grp. N.Y. LLC*,
874 F. Supp. 2d 179 (S.D.N.Y. 2012)...................................................................14

*Chhab v. Darden Rests., Inc.*,
No. 11 Civ. 8345 (NRB), 2016 WL 3004511 (S.D.N.Y. May 20, 2016)...............................23

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) ....................................................................8, 15

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ............................................................... *passim*

*Cohen v. J.P. Morgan Chase & Co.*,
   262 F.R.D. 153 (E.D.N.Y. 2009) .............................................................18

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) ..................................................................18

*In re Corrugated Container Antitrust Litig.*,
   No. MDL 310, 1981 WL 2093 (S.D. Tex. June 4, 1981) ......................................17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ..............................8

*Fleisher v. Phoenix Life Ins. Co.*,
   No. 11-CV-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ..................................7

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
   No. 1:13-CV-07789-LGS, 2015 WL 9952596 (S.D.N.Y. Dec. 15, 2015) ..............................25

*Friedman v. Guthy-Renker, LLC*,
   No. 2:14-cv-06009-ODW(AGRx), 2016 WL 5402170 (C.D. Cal. Sept. 26,
   2016) ...............................................................................6, 19

*Ge Dandong v. Pinnacle Performance Ltd.*,
   No. 10 CIV. 8086 JMF, 2013 WL 5658790 (S.D.N.Y. Oct. 17, 2013) ...........................21, 22

*In re HealthSouth Corp. Sec. Litig.*,
   334 F. App'x 248 (11th Cir. 2009) ............................................................6

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ..................................13

*In re IMAX Sec. Litig.*,
   272 F.R.D. 138 (S.D.N.Y. 2010) .............................................................20

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................. *passim*

*In re Initial Publ. Offering Sec. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. 2009) .............................................................18

*In re Initial Public Offering Secs. Litigation*,
   226 F.R.D. 186 (S.D.N.Y. 2005) ............................................................7

iii

*Langan v. Johnson & Johnson Consumer Cos.*,
No. 3:13-cv-1470 (JAM), 2017 WL 985640 (D. Conn. Mar. 13, 2017) .........................20, 21

*Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd. el al.*,
No. 12-cv-3419 (GBD) (S.D.N.Y. Nov. 10, 2016)................................................................23

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11 CIV. 2613 NRB, 2014 WL 6851096 (S.D.N.Y. Dec. 2, 2014) ................................7, 9

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11 CV 5450 (NRB), 2011 WL 5980198 (S.D.N.Y. Nov. 29, 2011)................................20

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11 CV 5450 (NRB), 2016 WL 7625708 (S.D.N.Y. Dec. 21, 2016) ..................................1

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11 VC 5450 5450, 2016 WL 2851333 (S.D.N.Y. May 13, 2016) ...................................19

*In re Master Key Antitrust Litig.*,
70 F.R.D. 23 (D. Conn. 1975).............................................................................................22

*McReynolds v. Richards-Cantave*,
588 F.3d 790 (2d Cir. 2009)................................................................................................6

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ..........................................................10, 11, 14, 16

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
169 F.R.D. 493, 518 S.D.N.Y. 1996....................................................................................22

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) ..............................................................................2, 6, 7

*In re Packaged Ice Antitrust Litig.*,
No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)........................................17

*In re PaineWebber Ltd. Partnerships Litigation*,
171 F.R.D. 104 (S.D.N.Y. 1997) ...........................................................................................7

*Park v. The Thomson Corp.*,
No. 05 CIV. 2931 (WHP), 2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008).........................13, 14

*Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*,
No. 08-CV-42 JG VVP, 2013 WL 4525323 (E.D.N.Y. Aug. 27, 2013) .................................25

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
584 F. Supp. 2d 697 (M.D. Pa. 2008) ..................................................................................15

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ........................................................................9

*Rapoport-Hecht v. Seventh Generation, Inc.*,
   No. 14-CV-9087 (KMK), 2017 WL 5508915 (S.D.N.Y. Apr. 28, 2017) .............................22

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
   237 F.R.D. 26 (E.D.N.Y. 2006) ........................................................................11

*In re Stock Exchs. Options Trading Antitrust Litig.*,
   No. 99 CIV 0962(RCC), 2005 WL 1635158 (S.D.N.Y. July 8, 2005) ...................................6

*Sullivan v. DB Invests., Inc.*,
   667 F.3d 273 (3d Cir. 2011) (en banc) (Scirica, J., concurring) ...............................22

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. ........................................................................................10

*Tyson Foods Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ..............................................................................21

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
   257 F.3d 256 (2d Cir. 2001) .........................................................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ..................................................................7, 10, 16

*In re Warfarin Sodium Antitrust Litig.*,
   212 F.R.D. 231 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004) .............................6

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) ...................................................................13

**Rules**

Fed. R. Civ. P. 23 ........................................................................... passim

## I.     INTRODUCTION

OTC Plaintiffs[1] respectfully submit this memorandum in support of their motion for preliminary approval of a settlement ("Settlement" or "Settlement Agreement") reached on behalf of themselves and the putative Class, and defendant Deutsche Bank Aktiengesellschaft, also known as Deutsche Bank AG ("Deutsche Bank") (together with OTC Plaintiffs, the "Parties") in the above-captioned litigation (the "OTC Action").[2] If approved, the proposed Settlement, consisting of a $240 million payment and an agreement to provide significant cooperation to OTC Plaintiffs, will resolve this complex case against Deutsche Bank and bring the total settlement amount in the OTC Action to $490 million.

The Deutsche Bank Settlement was reached after extended, frank, and hard-fought negotiations, including a mediation and further negotiations conducted under the guidance of the Honorable Layn R. Phillips. It also contains terms and cooperation provisions that are substantially similar to those in the settlements reached between OTC Plaintiffs and Barclays Bank plc ("Barclays") and between OTC Plaintiffs, Citibank, N.A. and Citigroup Inc. (collectively, "Citi"), which this Court preliminarily approved on December 21, 2016 and August 31, 2017, respectively. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 CV 5450 (NRB), 2016 WL 7625708, at *2 (S.D.N.Y. Dec. 21, 2016) ("Barclays Order"); ECF No. 2247 ("Citi Order").

At the preliminary approval stage, the Court need only determine if, on its face, the proposed settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard" or, put another way, the Court is to make sure that the

---

[1] OTC Plaintiffs are Mayor and City Council of Baltimore, City of New Britain, Vistra Energy Corp., Yale University, Jennie Stuart Medical Center, Inc., and Bucks County Water & Sewer Authority.

[2] Unless otherwise defined herein, all capitalized terms have the meaning ascribed to them in the Settlement Agreement.

settlement is within the range of possible approval.  *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ II*"). As demonstrated below, the proposed Settlement with Deutsche Bank, like the Barclays and Citi Settlements, is an excellent result for the Class; is fair, reasonable and adequate under the governing standards in this Circuit; and warrants preliminary approval under Rule 23(e).

## II.    PROCEDURAL HISTORY[3]

OTC Plaintiffs commenced this litigation in 2011, alleging that the sixteen banks that comprised the U.S. Dollar LIBOR panel unlawfully conspired to suppress LIBOR.[4]  Since then, OTC Plaintiffs have defended various iterations of the OTC Complaint, which have included antitrust, unjust enrichment, and breach of the implied covenant of good faith and fair dealing claims, from eight Rule 12(b) motions to dismiss and from two motions in opposition to the OTC Plaintiffs' motions for leave to amend the complaint. These motions have involved complex and sometimes novel legal arguments regarding the plausibility of the alleged conspiracy; pleading requirements for a conspiracy and the sufficiency of Plaintiffs' allegations; standing under the antitrust laws; standing and pleading requirements for contractual and quasi-contractual claims; personal jurisdiction for state law and federal antitrust claims; and the application of tolling doctrines to the statute of limitations.

OTC Plaintiffs' primary claim—their antitrust claim—was previously dismissed as to all Defendants, reinstated by the Second Circuit, and dismissed again as to many Defendants, including Deutsche Bank, on personal jurisdiction grounds; another appeal is before the Second

---

[3] For a more extended discussion of the procedural history of this case, including a summary of the claims and the settlement negotiations, OTC Plaintiffs hereby incorporate by reference the Declaration of Hilary K. Scherrer ("Scherrer Decl."), filed concurrently herewith.

[4]  All references to LIBOR refer to U.S. Dollar LIBOR.

Circuit.  Thus, only claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing are currently pending against Deutsche Bank.

OTC Plaintiffs' motion for class certification, which includes more than sixty pages of briefing, more than sixty pages of attorney declarations, nearly 400 pages of expert reports, and 149 exhibits is fully briefed and pending before the Court.  In advance of this settlement, OTC Plaintiffs engaged in extensive class certification discovery, including the review and analysis nearly 1.1 million documents, totaling nearly 5 million pages. OTC Plaintiffs also listened to and analyzed more than 6,000 of the 129,404 audio files, totaling nearly 1,000 hours of recorded conversation, produced by the Defendants.

OTC Plaintiffs have entered into settlements with two other Defendants.  A $120 million settlement with Barclays was reached in November 2015, and a $130 million settlement with Citi was reached in July 2017. As part of those settlements, both Barclays and Citi have provided cooperation to OTC Plaintiffs in pursuit of their claims against the non-settling Defendants.

## III.    SETTLEMENT NEGOTIATIONS AND SETTLEMENT TERMS

Deutsche Bank's Counsel and OTC Plaintiffs' Counsel first discussed the possibility of settlement in August 2016 and again on other occasions over the course of the next year. Scherrer Decl. ¶ 32.  Those discussions were helpful, but did not resolve the matter.  *Id*. In September 2017, the parties agreed to retain the Honorable Layn Phillips, a former federal judge, as a mediator to facilitate settlement. *Id*. On November 17, 2017, the Parties participated in a day-long in-person mediation session with Judge Phillips, preceded by extensive briefing detailing the merits of both sides' positions.  *Id*. ¶ 33. The mediation included negotiations concerning potential monetary terms and relevant information for non-monetary terms for a settlement, but the parties were not able to reach an agreement. *Id*. Deutsche Bank's Counsel and OTC Plaintiffs' Counsel engaged in telephonic discussions and negotiations thereafter, including communications facilitated by Judge

Phillips. *Id*.

On December 21, 2017, Judge Phillips made a mediator's recommendation for a settlement amount of $240 million, which OTC Plaintiffs and Deutsche Bank both accepted.  Scherrer Decl. ¶ 34. Over the next month and a half, the Parties engaged in negotiations regarding the non-monetary terms of a settlement. *Id*. Final agreement was reached and the Settlement Agreement was executed on February 6, 2018. *Id*. At all times, both sides vigorously negotiated their respective positions. *Id*. ¶ 35. OTC Plaintiffs' Counsel were well-informed of the facts and issues concerning liability and damages and the relative strengths and weaknesses of each side's litigation position. *Id*.

The Deutsche Bank Settlement is on behalf of a Class defined as:

> All persons or entities (other than Defendants and their employees, affiliates, parents, and subsidiaries) that purchased in the United States, directly from a Defendant (or a Defendant's subsidiaries or affiliates), a U.S. Dollar LIBOR-Based Instrument and that owned the U.S. Dollar LIBOR-Based Instrument any time during the period August 2007 through May 2010 (the "Class Period").

Settlement ¶ 3(a).[5]  The $240 million Settlement Fund is non-reversionary: if the Court gives final approval of the Settlement, no money will be returned to Deutsche Bank. The Settlement also obligates Deutsche Bank to provide extensive cooperation. *Id*. ¶ 14. The cooperation elements fall into three categories: attorney proffers, documents/data, and testamentary evidence. *Id*.

The attorney proffers cover, *inter alia*, (1) background knowledge on the U.S. Dollar LIBOR setting process at Deutsche Bank; (2) "[a] detailed account of facts known to Deutsche Bank that are relevant to the Released Claims or the allegations in OTC Plaintiffs' pleadings, including but not limited to the alleged conduct, if any such facts exist, relating to the alleged collusion, manipulation and suppression of U.S. Dollar LIBOR by Deutsche Bank and other panel

---

[5]  The Settlement Agreement is Exhibit A to the Scherrer Declaration.

banks"; (3) a description of Deutsche Bank's internal compliance policies with respect to U.S. Dollar LIBOR; and (4) the identities of individuals with knowledge of U.S. Dollar LIBOR-related conduct. Settlement ¶ 14(h)(ii).

Deutsche Bank has also agreed to provide OTC Plaintiffs with data relevant to the OTC Action, including transactional information and documents produced to government regulators. *Id.* ¶ 14(h)(iv)–(v).   Finally, Deutsche Bank has agreed to provide testamentary cooperation. As further specified in the Settlement Agreement, this cooperation will come in the form of interviews of current employees and good faith efforts to arrange interviews of former employees, *id.* ¶ 14(h)(vi), declarations and affidavits, *id.* ¶ 14(h)(vii), depositions, *id.* ¶ 14(h)(viii), and testimony at trial, *id.* ¶ 14(h)(ix).

In exchange for Deutsche Bank's consideration, the Released Parties (as defined in the Settlement Agreement) shall be released of any and all manner of claims arising from or relating in any way to any conduct alleged or that could have been alleged in and arising from the factual predicate of the OTC Action with certain specified exclusions, including claims related to transactions in the Exchange-Based Plaintiffs' Action, the Bondholder Action, and the Green Pond Action.  Settlement ¶ 2(hh).  Also excluded from the release are claims based on U.S. Dollar LIBOR linked instruments that were not issued by a Defendant (or its subsidiaries or affiliates) or which were not directly purchased from a Defendant (or its subsidiaries or affiliates). *Id.*  The full text of the release provisions is set forth in the Settlement Agreement. *See* Settlement ¶¶ 2(hh), 2(rr).

Finally, the Settlement Agreement permits Deutsche Bank to rescind the agreement based upon a confidential Supplemental Agreement between the Parties.[6]  Settlement ¶ 13(d);

---

[6]  The Supplemental Agreement is Exhibit B to the Scherrer Declaration. The Parties agreed to file the Supplemental Agreement under seal, *see* Settlement ¶ 13(d). The Court previously granted OTC Plaintiffs' request to file under seal

Supplemental Agreement.

## IV.    PRELIMINARY APPROVAL OF SETTLEMENT IS APPROPRIATE

### A.    Standard for Preliminary Approval

"Preliminary approval is generally the first step in a two-step process before a class-action settlement is approved." *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 CIV 0962(RCC), 2005 WL 1635158, at *4 (S.D.N.Y. July 8, 2005). "In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice," and "[o]nce preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *NASDAQ II*, 176 F.R.D. at 102. "Because of the two-step process, a grant of preliminary approval is 'at most a determination that there is what might be termed "probable cause" to submit the proposal to class members and hold a full-scale hearing as to its fairness.'" Barclays Order, 2016 WL 7625708, at *2 (quoting *In re Traffic Exec. Ass'n E. R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980)).

In determining whether to grant preliminary approval to a settlement, the courts consider both the "negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness." *McReynolds v. Richards-Cantave*, 588

---

a similar Supplemental Agreement related to the Citi Settlement.  *See* ECF No. 2223. Doing so is consistent with the practice followed in other cases. *See, e.g.*, *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009) ("The threshold number of opt outs required to trigger the blow provision is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out."); *Friedman v. Guthy-Renker, LLC*, No. 2:14-cv-06009, 2016 WL 5402170, at *3 (C.D. Cal. Sept. 26, 2016); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 253 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004); *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 837 (W.D. Pa. 1995); *see also* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2003 amendment ("Further inquiry into the agreements identified by the parties should not become the occasion for discovery by the parties or objectors."); Manual for Complex Litigation (Fourth) § 21.631 ("Opt-out agreements, in which a defendant conditions its agreement on a limit on the number or value of opt outs, may warrant confidential treatment. Knowledge of the specific number of opt outs that will vitiate a settlement might encourage third parties to solicit class members to opt out. A common practice is to receive information about such agreements *in camera*.").

F.3d 790, 803–04 (2d Cir. 2009). Factors include whether the settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval," *NASDAQ II*, 176 F.R.D. at 102, provides "intangible benefits, including cooperation against non-settling defendants," *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 CIV. 2613 NRB, 2014 WL 6851096, at *2 (S.D.N.Y. Dec. 2, 2014), and grants the plaintiffs repose in the face of complex, uncertain litigation, *In re Initial Public Offering Securities Litigation*, 226 F.R.D. 186, 198 (S.D.N.Y. 2005). *See also* Barclays Order, 2016 WL 7625708, at *2.

While "[t]he decision to grant or deny such approval lies squarely within the discretion of the trial court," *In re PaineWebber Ltd. Partnerships Litigation*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997), courts in this District recognize that "there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions," *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *4 (S.D.N.Y. Sept. 9, 2015) (quoting *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995)); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'" (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998))).

As explained below, the Settlement is both substantively and procedurally fair such that it warrants preliminary approval.

### B.    The Settlement Is Entitled to a Presumption of Fairness

Where, as here, the proposed settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement

enjoys a "presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000); *see also In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) ("This presumption arises because if the negotiation process is fair 'the forces of self-interest and vigorous advocacy will of their own accord produce the best possible result for all sides.'" (quoting *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381 (S.D.N.Y. 2013))). "Further, 'great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.'" *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (Buchwald, J.) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. at 125)).

Both of these aspects are present here. First, this Court has previously concluded that OTC Plaintiffs' Counsel has the requisite skills and experience in class actions to lead this litigation on behalf of the putative Class. *See* ECF No. 66. And it is beyond dispute that Deutsche Bank is represented by reputable and highly experienced counsel. Second, the settlement negotiations between OTC Plaintiffs and Deutsche Bank were vigorous, and involved an accomplished and engaged mediator. Scherrer Decl. ¶¶ 31-35. The use of a mediator "strengthen[s]" the presumption that the compromise is fair and reasonable. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *14 (S.D.N.Y. Nov. 8, 2010); *see also Capsolas v. Pasta Res. Inc.*, No. 10-CV-5595 RLE, 2012 WL 1656920, at *1 (S.D.N.Y. May 9, 2012) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."). That the mediator is a retired judge "further buttresse[s]" the "presumption of correctness." *See In re IMAX Sec. Litig.*, 283 F.R.D. at 189 (citing *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008)). In short, the Settlement is entitled to a "presumption of fairness, adequacy, and reasonableness." *See In re Citigroup Inc. Bond Litig.*, 296 F.R.D. at 155.

8

### C.       The Settlement is Substantively Fair

While it is unnecessary to undertake "a full fairness analysis" at the preliminary approval

stage, *Authors Guild v. Google, Inc.*, No. 05 CIV. 8136 (DC), 2009 WL 4434586, at \*1 (S.D.N.Y.

Dec. 1, 2009), some courts have looked to the nine factors announced in *City of Detroit v. Grinnell

Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated

Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000), at the preliminary approval stage (the "*Grinnell*

factors"), *see, e.g.*, *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. at 210. The *Grinnell*

factors are as follows:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of
> the class to the settlement, (3) the stage of the proceedings and the amount of
> discovery completed, (4) the risks of establishing liability, (5) the risks of
> establishing damages, (6) the risks of maintaining the class action through the trial,
> (7) the ability of the defendants to withstand a greater judgment, (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery, and (9)
> the range of reasonableness of the settlement fund to a possible recovery in light of
> all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.

As explained below, each of the applicable *Grinnell* factors weighs in favor of this Court

granting preliminary approval to the Settlement. *See* Barclays Order, 2016 WL 7625708, at \*2

("The settlement is a significant recovery for OTC plaintiffs and includes the intangible benefit of

cooperation against the non-settling defendants. The OTC plaintiffs also have obtained the

certainty of a settlement in the face of a factually complex case with genuine legal uncertainties.

Therefore, enough factors are present to permit the OTC plaintiffs to proceed to a full-scale fairness

hearing." (citation omitted)); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2014

WL 6851096, at \*2 ("In this instance, we grant the motion for preliminary approval, as there are

enough factors to suggest that the Proposed Settlement is viable. First, the Proposed Settlement is

the result of arm's-length negotiations . . . . Second, it is reasonable to expect that the Exchange-

Based Plaintiffs will benefit considerably from Barclays's cooperation in producing evidence to use against the many non-settling defendants . . . . Third, to win an award without settling, the . . . Plaintiffs must prove a factually complex case with genuine legal uncertainties.").

### 1.    The Complexity, Expense, and Likely Duration of the Litigation.

OTC Plaintiffs can think of no other case that better embodies the challenges faced by plaintiffs in antitrust litigation. *See Wal-Mart Stores*, 396 F.3d at 118 ("Federal antitrust cases are complicated, lengthy, and bitterly fought."); *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual complexities of antitrust cases").  The OTC Action was initially filed over six years ago, has survived multiple rounds of motions to dismiss on complex issues of standing and jurisdiction, and had over a year of class certification discovery. OTC Plaintiffs' primary claim—their antitrust claim—was previously dismissed as to all defendants, reinstated by the Second Circuit, and dismissed again as to many defendants, including Deutsche Bank, on personal jurisdiction grounds; another appeal is pending before the Second Circuit.

Meanwhile, briefing on OTC Plaintiffs' motion for class certification has been extensive, and whichever side loses that motion will likely pursue a Rule 23(f) petition. Assuming OTC Plaintiffs win the motion for class certification, they still face the monumental task of trudging through what is likely to be a highly contentious merits discovery process, including additional expert discovery, summary judgment briefing, and at the end of this process, a weeks if not months long trial, from which the losing party will almost certainly appeal. *See, e.g.*, *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. at 577 ("The costs and duration of . . . conducting merits . . . discovery, conducting expert discovery, litigating a motion for summary judgment, preparing for trial, conducting the trial itself, filing post-trial motions, and pursuing any appeals would vastly exceed the substantial time and money already spent."); *In re NASDAQ Market-Makers Antitrust Litig.*,

187 F.R.D. 465, 477 (S.D.N.Y. 1998) ("*NASDAQ III*") (estimating that trial in a complex antitrust class action "could consume over a year").

In short, while OTC Plaintiffs' Counsel and the defendants have already expended significant resources litigating this case, "[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result." *NASDAQ III*, 187 F.R.D. at 477. The first *Grinnell* factor supports preliminary approval.

### 2.      The Reaction of the Class to the Settlement

Because notice has yet to be provided to potential members of the Class, courts generally do not consider this *Grinnell* factor at the preliminary approval stage. *See, e.g.*, *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006) ("Clearly, some of the[] [*Grinnell*] factors, particularly the reaction of the class to the settlement, are impossible to weigh prior to notice and a hearing."). In any event, prior settlements with Barclays and Citibank for lower monetary awards were met with almost universal approval by the class.  In addition, all of the named OTC Plaintiffs approve of this settlement, and should any objections be received prior to the Fairness Hearing, OTC Plaintiffs' Counsel will address those concerns in the final approval papers.

### 3.      The Stage of the Proceedings

"The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). Discovery need not be fully complete, or even under way, before a settlement can be approved. *See In re IMAX Sec. Litig.*, 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken

yet by the parties."). "[I]t is enough for the Parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10.

Numerous facts demonstrate that this *Grinnell* factor supports preliminary approval. First, the parties have been litigating this action for over six years and have received at least seven lengthy rulings from the Court on the viability of their claims. *See* ECF Nos. 286; 389; 568; 1164; 1234; 1380; 1676; *see also In re IMAX Sec. Litig.*, 283 F.R.D. at 190 (noting that the case had "been pending for almost six years"). Second, the parties have briefed and argued the viability of the antitrust claim on numerous occasions both in the Second Circuit and before this Court, with a second appeal to the Second Circuit currently being briefed. Third, OTC Plaintiffs obtained from Deutsche Bank and other defendants millions of documents and audio files previously provided to regulators as well as voluminous transaction data.  Fourth, the parties have fully briefed and argued OTC Plaintiffs' motion for class certification, which involves complex issues of both fact and law. This process has included extensive written submissions and deposition testimony from experts on both sides of the case.  Fifth, OTC Plaintiffs have undertaken extensive legal analysis of the OTC Plaintiffs' claims and the reasonable value of the case. Sixth, OTC Plaintiffs' Counsel has engaged consulting experts to better understand the LIBOR market and the magnitude of harm inflicted on the Class. Seventh, OTC Plaintiffs' Counsel have learned additional facts through cooperation from Barclays and Citi as a result of settlements with those defendants. Eighth, OTC Plaintiffs' Counsel and Deutsche Bank's Counsel conducted mediator-assisted settlement negotiations over the course of more than two months; these negotiations, which were extremely hard-fought, were accompanied by an honest and frank discussion on the relative strengths and weaknesses of the parties' claims and defenses. Scherrer Decl. ¶¶ 31-35. The information gained through these

12

various means have provided OTC Plaintiffs' Counsel with a comprehensive understanding of the relative strengths and weaknesses of their case that has enabled OTC Plaintiffs' Counsel to negotiate a settlement believed to be an excellent result for the Class. *Id.* ¶ 35. The Court should therefore conclude that this third *Grinnell* factor supports preliminary approval of the Settlement.

### 4.      The Risks of Establishing Liability and Damages

"In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at \*8 (S.D.N.Y. Dec. 19, 2014). In this case, OTC Plaintiffs face significant risks in continuing to litigate this case, which are amplified by the complexity of the LIBOR market and the fact that defendants are global financial institutions with significant litigation resources.

This litigation presents the Court, the parties, and eventually, a jury, with the task of understanding extremely complex derivative instruments in an opaque, unregulated market. This risk will only be amplified as the case proceeds to discovery and substantive motions. And should the case proceed to trial, "[t]he complexity of Plaintiff's claims *ipso facto* creates uncertainty . . . . A trial on these issues would likely be confusing to a jury." *Park v. The Thomson Corp.*, No. 05 CIV. 2931 (WHP), 2008 WL 4684232, at \*4 (S.D.N.Y. Oct. 22, 2008); *see* 31 No. 7 Futures & Derivatives L. Rep. 1 ("Derivative instruments, in most cases, are highly complex and difficult to understand for even highly sophisticated and intelligent investors."). This makes proving liability and damages, both of which would have required the assistance of experts, all the more risky.[7]

Additional risk is created by the fact that Deutsche Bank and the non-settling defendants

---

[7] It is a foregone conclusion that this case will require a "battle of the experts." "In this 'battle of experts,' it is difficult to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad of non-actionable factors . . . ." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744–45 (S.D.N.Y. 1985).

have significant litigation resources and are represented by some of the best law firms in the United States. Absent settlement, Deutsche Bank was most certainly prepared to vigorously contest its liability and damages. "Establishing otherwise [would] require considerable additional pre-trial effort and a lengthy trial, the outcome of which is uncertain." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 199 (S.D.N.Y. 2012), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013). Put simply, "liability is never automatic." *Park*, 2008 WL 4684232, at *4. And assuming OTC Plaintiffs will be able to establish Deutsche Bank's liability at trial, "[t]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *NASDAQ III*, 187 F.R.D. at 476. In sum, "[t]here is a substantial risk that the plaintiff might not be able to establish liability at all and, even assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away." *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 CIV. 3048 (JMW), 1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987). The fourth *Grinnell* factor weighs in favor of the Settlement.

### 5. The Risks of Maintaining the Class Action Through Trial

Although OTC Plaintiffs believe that their proposed litigation class will be certified, the defendants have vigorously contested their motion for class certification, and OTC Plaintiffs recognize that there is no guarantee that a litigation class will be certified. Assuming the litigation class is certified, the Court could nonetheless review and modify that grant of certification at any point prior to trial, such that the risk of maintaining the class through trial would never be 100% certain. *See Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 CIV. 2207 JGK, 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010) ("There is no assurance of obtaining class certification through trial, because a court can re-evaluate the appropriateness of certification at anytime during the proceedings."); *see also In re IMAX Sec. Litig.*, 283 F.R.D. at 191 (noting that "if insurmountable

management problems were to develop at any point, class certification can be revisited at any time" (quoting *NASDAQ III*, 187 F.R.D. at 476)). This being the case, the fifth *Grinnell* factor weighs in favor of preliminary approval.

### 6.    The Ability of Defendants to Withstand a Greater Judgment

While Deutsche Bank could withstand a greater judgement than the amount of compensation provided for in the Settlement, this alone is not sufficient for the Court to decline preliminary approval of the Settlement. *In re IMAX Sec. Litig.*, 283 F.R.D. at 191 ("[T]his factor, standing alone, is not sufficient to preclude a finding of substantive fairness where the other factors weigh heavily in favor of approving a settlement."). In any event, a $240 million settlement is significant and, given the extent of the cooperation promised by Deutsche Bank beyond the cash payment, OTC Plaintiffs submit that application of the *Grinnell* factors weighs so strongly in favor of preliminary approval that consideration of this factor alone does not militate against granting preliminary approval of the settlement. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("Moreover, the benefit of obtaining the cooperation of the Settling Defendant[] tends to offset the fact that [it] would be able to withstand a larger judgment."); *see also* Barclays Order, 2016 WL 7625708, at *2 (noting with approval "the intangible benefit of cooperation against the non-settling defendants" in granting preliminary approval of the Barclays Settlement);   *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. at 157 (approving settlement with Citigroup Inc., one of the settling defendants, though "Citigroup could likely withstand a greater judgment"); *In re IMAX Sec. Litig.*, 283 F.R.D. at 191 ("But a defendant is not required to 'empty its coffers' before a settlement can be found adequate." (quoting *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 CIV. 5173 (RPP), 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008))).

15

**7.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation**

The last two *Grinnell* factors "recognize[] the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart Stores*, 396 F.3d at 119 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). In applying these factors, "[t]he adequacy of the amount achieved in settlement may not be judged in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re IMAX Sec. Litig.*, 283 F.R.D. at 191 (quoting *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011)); *see also NASDAQ III*, 187 F.R.D. at 478 ("Ultimately, the exact amount of damages need not be adjudicated for purposes of settlement approval."). Consequently, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2; *see also In re IMAX Sec. Litig.*, 283 F.R.D. at 191 ("[T]he Second Circuit 'has held that a settlement can be approved even though the benefits amount to a small percentage of the recovery sought.'" (quoting *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989))).

Continuing this litigation against Deutsche Bank would, as outlined above, necessitate the expenditure of countless hours and dollars over several more years with no guarantee that OTC Plaintiffs would ever be able to certify a class, establish liability, and prove damages; all of which would be required for OTC Plaintiffs to recover anything at trial. These risks are arguably dispositive for these *Grinnell* factors. *See In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012) ("[T]he propriety of a given settlement amount is a function of both (1) the size of the amount relative to the best possible recovery; and (2) the

16

likelihood of non-recovery (or reduced recovery).").

In comparison to the antecedent risks of continuing litigation against Deutsche Bank, this third settlement provides OTC Plaintiffs and the Class both significant cash compensation ($240 million) and immediate and substantial cooperation. Settlement ¶ 14. That OTC Plaintiffs and the Class will receive compensation now rather than years from now, if at all, weighs strongly in favor of preliminary approval. *See AOL Time Warner*, 2006 WL 903236, at *13 ("[T]he benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery."). And as to the cooperation, though this is not quantifiable in "dollars and cents," the value of Deutsche Bank's cooperation to the Class is arguably invaluable: as further specified in the Settlement Agreement, it will provide OTC Plaintiffs with, among other things, attorney proffers, documents, witness interviews, data, and market knowledge that will assist OTC Plaintiffs in their continued litigation against the non-settling defendants. *See* Barclays Order, 2016 WL 7625708, at *2 (noting "the intangible benefit of cooperation against the non-settling defendants"); *see also In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *10 (E.D. Mich. Feb. 22, 2011) (noting that cooperation "has already been beneficial to the OTC Plaintiffs in their continued prosecution of their claims against the non-settling Defendants"). As such, the cooperation provisions of the Settlement strongly weigh in favor of preliminary approval. *See In re Corrugated Container Antitrust Litig.*, No. MDL 310, 1981 WL 2093, at *16 (S.D. Tex. June 4, 1981), *aff'd*, 659 F.2d 1322 (5th Cir. 1981) ("The cooperation clauses constituted a substantial benefit to the class.").

In sum, each of the relevant *Grinnell* factors weighs in favor of this Court granting preliminary approval to the Settlement.[8]

---

[8] OTC Plaintiffs also request that the Court appoint Kenneth Feinberg as Settlement Administrator, Rust Consulting, Inc. as Claims Administrator, and Huntington Bank as Escrow Agent. *See* Settlement ¶ 2(n), 2(kk), 5(a)(vi)-(vii). The

## V.     CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

In accordance with the Settlement, OTC Plaintiffs respectfully request that the Court certify the following class (the "Deutsche Bank Settlement Class") for settlement purposes:

> All persons or entities (other than Defendants and their employees, affiliates, parents, and subsidiaries) that purchased in the United States, directly from a Defendant (or a Defendant's subsidiaries or affiliates), a U.S. Dollar LIBOR-Based Instrument and that owned the U.S. Dollar LIBOR-Based Instrument any time during the period August 2007 through May 2010 (the "Class Period").

Settlement ¶ 3(a).

Certification of a settlement class is appropriate where that class meets all of the requirements of Rule 23(a) as well as one of the requirements of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). When certification of a settlement class is sought, "courts must take a liberal rather than a restrictive approach." *Cohen v. J.P. Morgan Chase & Co*., 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009). For the reasons set forth below, the proposed Deutsche Bank Settlement Class more than satisfies the requirements for certification of a settlement class.[9]

### A.     Rule 23(a) Requirements

#### 1.     Rule 23(a)(1) – Numerosity

Numerosity is presumed in this Circuit where a class consists of forty (40) or more members. *See generally Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *In re Initial Publ. Offering Sec. Litig.*, 260 F.R.D. 81, 90-91 (S.D.N.Y. 2009). OTC Plaintiffs' Counsel estimate that there are thousands of members of the Class. Accordingly, the numerosity requirement is easily met here.

---

requested appointments are the same as those approved by the Court for the Barclays and Citi Settlements. *See* ECF Nos. 1948, 2247.

[9]  OTC Plaintiffs filed extensive briefing and expert reports in support of their motion to certify the litigation class, which they incorporate by reference. ECF Nos. 1905, 2190.

### 2.      Rule 23(a)(2) – Commonality

"'The commonality requirement is met if plaintiffs' grievances share a common question of law or fact.'" *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 245 (2d Cir. 2007) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (per curiam)). "'Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.'" *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137-38 (2d Cir. 2015) (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014)). It thus "is not the law" that "a common question must be common to every class member." *In re LIBOR-Based Fin. Instruments Antitrust Litig.,* No. 11 VC 5450 5450, 2016 WL 2851333, at *1 (S.D.N.Y. May 13, 2016) (citing *Johnson*, 780 F.3d at 137).

OTC Plaintiffs' claims present numerous common issues of law and fact, including: whether the panel banks suppressed LIBOR during the Class Period; whether panel banks conspired to suppress LIBOR; whether the panel banks' conduct violates the Sherman Act; whether the panel banks' conduct breached the implied covenant of good faith and fair dealing; whether the panel banks were unjustly enriched by their conduct; and the appropriate measure of damages for the harm sustained by OTC Plaintiffs and members of the class. Accordingly, the commonality requirement is satisfied.

### 3.      Rule 23(a)(3) – Typicality

"'The typicality threshold is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise.'" *Atwood v. Intercept Pharm., Inc.*, 299 F.R.D. 414, 416 (S.D.N.Y. 2014) (quoting *Casper v. Song Jinan*, No. 12 Civ. 4202 (NRB), 2012 WL 3865267, at *2 (S.D.N.Y. Sept. 6, 2012)). Small differences do not defeat typicality. "Rather, a plaintiff fails to meet Rule 23(a)'s typicality requirement if its claims are 'subject to unique

defenses which threaten to become the focus of the litigation.'" *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 147 (S.D.N.Y. 2010) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000)). In this case, the class representatives and class members all assert claims that arise from the panel banks' alleged unlawful suppression of LIBOR, and their injuries result from that conduct. Thus, the typicality requirement is satisfied.

### 4.    Rule 23(a)(4) – Adequacy

"'The adequacy requirement is satisfied where: (1) there is no conflict between the proposed lead plaintiff and the members of the class; (2) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) class counsel is qualified, experienced, and generally able to conduct the litigation.'" *Atwood*, 299 F.R.D. at 416-17 (quoting *Casper v. Song Jinan*, 2012 WL 3865267, at *2). "A conflict 'between named parties and the class they seek to represent' will be sufficient to defeat class certification only if the conflict is 'fundamental.'" *Langan v. Johnson & Johnson Consumer Cos.*, No. 3:13-cv-1470 (JAM), 2017 WL 985640, at *12 (D. Conn. Mar. 13, 2017) (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig,* 574 F.3d 29, 35 (2d Cir. 2009)).

No "fundamental" conflict exists between the class representatives and members of the class. The class representatives hold claims potentially worth millions of dollars, assuring their vigorous advocacy. And the Court has found that OTC Plaintiffs' Counsel have the qualifications, experience, and ability to prosecute the claims. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 CV 5450 (NRB), 2011 WL 5980198, at *3-4 (S.D.N.Y. Nov. 29, 2011). OTC Plaintiffs have satisfied the adequacy of representation prerequisite.

### B.      Rule 23(b)(3) Requirements

#### 1.      Predominance

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting W. Rubenstein, *Newberg on Class Actions* § 4:49, at 195-96 (5th ed. 2012)). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* (quoting 7AA C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1778, at 123-24 (3d ed. 2005)); *Johnson*, 780 F.3d at 138 ("Common issues— such as liability— may be certified, consistent with Rule 23, even where other issues—such as damages—do not lend themselves to classwide proof.") (citing *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006)).

"In short, the question for certifying a Rule 23(b)(3) class is whether 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof' and whether 'these particular issues are more substantial than the issues subject only to individualized proof.'" *Johnson*, 780 F.3d at 139 (quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013)).

Among other issues, whether Deutsche Bank suppressed LIBOR is a predominant common issue. This is a predominant issue for the unjust enrichment and breach of the implied covenant of good faith and fair dealing claims.  The case *Ge Dandong v. Pinnacle Performance Ltd.*, No. 10 CIV. 8086 JMF, 2013 WL 5658790 (S.D.N.Y. Oct. 17, 2013), is on point. In that case, the

plaintiffs, a group of Singapore-based investors, sued Morgan Stanley & Co. and several of its affiliates for the sale of derivative financial products (so-called "Credit Linked Notes") in which the documents provided to the plaintiffs at the time of sale "failed to reveal the true nature of the financial arrangement." *Id*. at \*2. In particular, the plaintiffs alleged that these offering documents "were materially false and misleading in various ways . . . ." *Id*. Judge Jesse M. Furman found these allegations to be sufficient to satisfy the predominance requirement: "[L]iability for an implied covenant claim does not require reliance on any sort of misrepresentation. Accordingly, common issues predominate with respect to Plaintiffs' implied covenant claims as well." *Id*. at \*12 (citations omitted). The same is true for the unjust enrichment claim. *See, e.g., Rapoport-Hecht v. Seventh Generation, Inc.*, No. 14-CV-9087 (KMK), 2017 WL 5508915, at \*3 (S.D.N.Y. Apr. 28, 2017) (certifying settlement class for unjust enrichment claim).[10]

## 2. Superiority

Rule 23(b)(3) identifies four factors to be considered in determining whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy":

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of

---

[10] Although OTC Plaintiffs' antitrust claim is currently dismissed, to the extent it is revived, questions regarding the existence of the alleged conspiracy as well as the manner in which OTC Plaintiffs and the Class were harmed similarly predominate over any individualized issues. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 518 S.D.N.Y. 1996) ("Since a single conspiracy is alleged, the relevant proof of this will not vary among class members, and clearly presents a common question fundamental to all class members."); *In re Master Key Antitrust Litig.*, 70 F.R.D. 23, 26 (D. Conn. 1975) (characterizing question of the existence of a conspiracy as "the central and common element of these cases"); *Sullivan v. DB Invests., Inc.*, 667 F.3d 273, 338 (3d Cir. 2011) (en banc) (Scirica, J., concurring) ("Issues of predominance and fairness do not undermine this settlement. All plaintiffs here claim injury that by reason of defendants' conduct . . . has caused a common and measurable form of economic damage . . . . All claims arise out of the same course of defendants' conduct; all share a common nucleus of operative fact, supplying the necessary cohesion. Class members' interests are aligned . . . . [S]hared issues of fact or law outweigh issues not common to the class and individual issues do not predominate.").

> concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).  Importantly, courts considering motions to certify settlement classes need not consider the forth factor.  *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial.").

Here, certification of a settlement class will achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of similar claims.'" *Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345 (NRB), 2016 WL 3004511, at *3 (S.D.N.Y. May 20, 2016) (quoting *Gongueh v. Leros Point to Point, Inc.*, No. 1:14-CV-5883 (GHW), 2015 WL 9256932, at *3 (S.D.N.Y. Sept. 2, 2015)).  Accordingly, the superiority requirement is satisfied.

### C.    Certification of a Settlement Class is Not Dispositive of Certification of a Litigation Class

In response to questions raised by the Court at the Barclays final approval hearing, OTC Plaintiffs note that certification of a settlement class is not dispositive of whether a litigation class should be certified.  The proposed order submitted herewith explicitly provides that certification of the Settlement Class "is without prejudice to, or waiver of the rights of, any defendant to contest certification of any other class" and "shall have no effect on the Court's ruling on any motion to certify any class," and "no party may cite or refer to the Court's approval of the class as persuasive or binding authority with respect to any motion to certify any such class." [Proposed] Order at ¶ 4.[11]  Conversely, the fact that Deutsche Bank opposed class certification of a litigation class does

---

[11]  Similar language was included in orders approving settlements and certifying settlement classes in the Yen LIBOR case.  *See Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd. el al.*, No. 12-cv-3419 (GBD) (S.D.N.Y. Nov. 10, 2016) (ECF No. 720).

not preclude certification of a settlement class. It is common for courts to certify settlement classes while certification of a litigation class is being contested in ongoing litigation.[12]

Accordingly, OTC Plaintiffs have satisfied the requirements for certification of a settlement class.

### D. Hausfeld LLP and Susman Godfrey L.L.P. Should Be Appointed Settlement Class Counsel

Under Rule 23(g), a court that certifies a class must appoint class counsel, who is charged with fairly and adequately representing the interests of the class. *See* Fed. R. Civ. P. 23(g)(1). In determining class counsel, the Court must consider (1) the work undertaken by counsel in identifying or investigating the potential claims; (2) counsel's experience in handling class actions, other complex litigation, and similar claims; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A). OTC Plaintiffs' Interim Co-Lead Counsel readily meet these requirements and should be appointed as counsel for the Settlement Class, for the reasons set forth in the prior briefing on this issue. ECF Nos. 1678, 2388.

## VI. OTC PLAINTIFFS WILL FILE A SEPARATE MOTION FOR APPROVAL OF A NOTICE PLAN AND PLAN OF DISTRIBUTION

OTC Plaintiffs are committed to the Net Settlement Fund being distributed in a reasonable and equitable fashion to members of the Class. As with the Barclays Settlement, OTC Plaintiffs respectfully propose to file a separate Motion for Approval of the Notice Program and Plan of

---

[12] For example, while a decision regarding certification of a litigation class was pending in *In re Air Cargo Shipping Services Antitrust Litigation*, No. 06-1775 (E.D.N.Y.), Judge Gleeson certified settlement classes as to defendants Singapore Airlines Limited and Singapore Airlines Cargo PTE Ltd. ("Singapore"), Cathay Pacific Airways Limited ("Cathay Pacific"), and Korean Air Lines Co., Ltd. ("Korean"), which had all opposed certification of a litigation class. *See* ECF Nos. 1842 (April 23, 2013 letter notifying court of filing of joint sur-reply in opposition to class certification, joined by, *inter alia*, Singapore, Cathay Pacific, and Korean); 1972 (January 29, 2014 order certifying Korean settlement class); 1980 at n.8 (January 29, 2014 order certifying Singapore settlement class); 1992 (March 4, 2014 order certifying Cathay Pacific settlement class).

Distribution within 60 days. This Court previously approved such a course of action with respect to the Barclays Settlement, *see* Barclays Order, 2016 WL 7625708, at *3, and other courts have permitted this course of action in similarly complex cases, *see, e.g.*, *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 1:13-CV-07789-LGS, 2015 WL 9952596, at *3 (S.D.N.Y. Dec. 15, 2015); *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-42 JG VVP, 2013 WL 4525323, at *5 (E.D.N.Y. Aug. 27, 2013).

## VII.    CONCLUSION

For the foregoing reasons, OTC Plaintiffs respectfully request the Court grant their motion for preliminary approval of the Settlement, certify the Settlement Class, appoint Hausfeld LLP and Susman Godfrey L.L.P. as Settlement Class Counsel, and approve Kenneth Feinberg as Settlement Administrator, Rust Consulting, Inc. as Claims Administrator, and Huntington Bank as Escrow Agent.

Dated: February 27, 2018                        Respectfully submitted,


By:  */s/ Michael D. Hausfeld*                        By: */s/ William Christopher Carmody*

Michael D. Hausfeld                                    William Christopher Carmody (WC8478)
Hilary Scherrer                                        Arun Subramanian (AS2096)
Nathaniel C. Giddings                                  Seth Ard (SA1817)
HAUSFELD LLP                                           Geng Chen (GC2733)
1700 St. NW, Suite 650                                 SUSMAN GODFREY L.L.P.
Washington, D.C. 20006                                 1301 Avenue of the Americas, 32nd Floor
Telephone: (202) 540-7200                              New York, NY 10019
Facsimile: (202) 540-7201                              Telephone: (212) 336-3330
mhausfeld@hausfeldllp.com                              Facsimile: (212) 336-8340
hscherrer@hausfeldllp.com                              bcarmody@susmangodfrey.com
ngiddings@hausfeldllp.com                              asubramanian@susmangodfrey.com
                                                       sard@susmangodfrey.com
Scott A. Martin                                        gchen@susmangodfrey.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor                        Marc M. Seltzer
New York, NY 10004                                     Glenn C.  Bridgman
Telephone: (646) 357-1195                              SUSMAN GODFREY L.L.P.

25

Facsimile: (212) 202-5322
smartin@hausfeld.com

Gary I. Smith
HAUSFELD LLP
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Telephone: (267) 702-2318
Facsimile: (215) 985-3271
gsmith@hausfeld.com

1901 Avenue of the Stars
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
gbridgman@susmangodfrey.com

Matthew Berry
Drew D. Hansen
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
mberry@susmangodfrey.com
dhansen@susmangodfrey.com

Barry C. Barnett (BB1984)
Karen Oshman
Michael Kelso
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
bbamett@susmangodfrey.com
koshman@susmangodfrey.com
mkelso@susmangodfrey.com

*Interim Co-Lead Class Counsel for the OTC Plaintiffs*