KIRBY McINERNEY LLP

825 Third Avenue
New York, NY 10022
212.371.6600
Fax. 212.751.2540
WWW.KMLLP.COM
Of counsel
  Roger W. Kirby
  Alice McInerney

April 11, 2018

**VIA ECF**
Honorable Naomi Reice Buchwald
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:    *In re LIBOR-Based Financial Instruments Antitrust Litig.*,
         No. 11 Civ. 2613 (NRB), Master File No. 1:11-md-2262-NRB

Dear Judge Buchwald:

We are interim co-lead counsel for the Exchange-Based Plaintiffs and the proposed Class ("Plaintiffs") in the above-referenced action, and respectfully submit this letter in accordance with Rule 2.B of Your Honor's Individual Practices. This Court previously dismissed Plaintiffs' Period 1 and Period 2[1] Commodity Exchange Act ("CEA") claims as time-barred under the CEA's two-year statute of limitations, rejecting Plaintiffs' arguments that these claims were timely under both the discovery rule and due to Defendants' fraudulent concealment. *See In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR I")*, 935 F. Supp. 2d 666, 697–713 (S.D.N.Y. 2013), *vacated and remanded sub nom. Gelboim v. Bank of Am. Corp.*, 823 F.3d 759 (2d Cir. 2016); *LIBOR III*, 27 F. Supp. 3d at 471-77. Nevertheless, in a precedential decision, the Second Circuit recently ruled, in *Charles Schwab Corp. v. Bank of America Corp.* ("*Schwab*"), 883 F.3d 68, 96-98 (2d Cir. 2018), that the timeliness of claims asserted by another party in the *LIBOR* MDL, and evaluated under the same discovery rule standard as Plaintiffs' CEA claims, was adequately pleaded. Accordingly, Plaintiffs respectfully request a pre-motion conference to seek leave to file a motion to reconsider the Court's statute of limitations rulings in *LIBOR I* and *LIBOR III*. Alternatively, Plaintiffs respectfully request that the Court certify its orders relating to statute of limitations under the CEA for interlocutory appellate review pursuant to 28 U.S.C. § 1292(b).

Reconsideration is relevant at this time because Plaintiffs are seeking to certify a settlement class and this Court's statute of limitations opinion bears on the settlements both in terms of how the proceeds will be allocated and the potential for intra-class conflicts that the Court has raised as points of concern. *See* Oct. 27, 2014 Hearing Tr. at 15:2-11; Nov. 1, 2017 Hearing Tr. at 6:11-16.

---

[1] This Court has defined Period 1 as August 2007 to May 29, 2008 and Period 2 as May 30, 2008 to April 14, 2009. *See In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR III")*, 27 F. Supp. 3d 447, 471 (S.D.N.Y. 2014).

Hon. Naomi Reice Buchwald
April 11, 2018
Page 2

## I.      The Second Circuit's Limitations Rulings in *Schwab v. Bank of America Corp.*

In a precedential opinion, in *Schwab v. Bank of America Corp.*, 883 F.3d at 96-98, the Second Circuit reversed this Court's dismissal on limitations grounds of plaintiff Schwab's California law unjust enrichment claims for LIBOR suppression.  In the same opinion, the Second Circuit also rejected defendants' argument in support of affirming the dismissal of Schwab's Securities Exchange Act claims, that those claims were time barred.  *Id*. at 94-95.[2]

In vacating the dismissal of the unjust enrichment claims, the Second Circuit held that, under California law, the limitations period "begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing." *Id*. at 97 (quoting *Jolly v. Eli Lilly & Co*., 44 Cal. 3d 1103, 1110 (1988)).  Applying this standard, the Second Circuit held that, "even if Schwab were aware of news articles that raised the possibility that LIBOR had been at artificial levels since August 2007," dismissal on limitations would be inappropriate under Rule 12(b)(6)'s plausibility standard. *Schwab*, 883 F.3d at 98 (internal quotation marks and citation omitted).  This is because "[t]he BBA responded to the negative press reporting by assuring investors and journalists that its own investigation had confirmed the accuracy of LIBOR." *Id*.  Given the BBA's repeated reassurances of LIBOR's accuracy, the Second Circuit concluded that "[i]t is plausible that Schwab reasonably relied on those assurances, thus delaying the start of the limitations period." *Id*.  In support, the court cited its prior summary decision in *BPP Ill., LLC v. Royal Bank of Scotland Grp. PLC ("BPP II")*, which it characterized as "considering the same press reports at issue here, and reversing [the] district court for 'act[ing] too hastily' in dismissing LIBOR-manipulation claims as time-barred." *Id*. (quoting *BPP II*, 603 F. App'x 57, 59 (2d Cir. 2015) (second brackets in original)).[3]

Additionally, the Second Circuit in *Schwab* rejected the defendants' alternative basis for affirming the dismissal of the Securities Exchange Act claims—holding that these claims were not time barred.  *Schwab*, 883 F.3d at 94-95.  In doing so, the Second Circuit explained that under the Securities Exchange Act's "discovery" standard, which is triggered when a potential plaintiff has sufficient information to adequately plead a claim under Rule 12(b)(6), even UBS's March 15, 2011 public disclosure that it had received subpoenas concerning an investigation into LIBOR manipulation did not as a matter of law begin the running of the limitations period. *Id*.  In doing so, the Second Circuit recognized that UBS's 2011 SEC filing—notably, not the 2008 articles at

---

[2] In *Schwab*, the Second Circuit also addressed other issues, including the sufficiency of Schwab's personal jurisdiction allegations.  *See, e.g.*, *id*. at 81-90 (addressing personal jurisdiction).  The Second Circuit's rulings on these other issues, and their application to this litigation, are beyond the scope of this letter.

[3] The Second Circuit also vacated the dismissal of Schwab's unjust enrichment claims as time-barred on the independent ground that "California courts have rejected the argument that press reporting that might make a reasonable person suspect wrongdoing is sufficient where there is no evidence that the plaintiff was aware of the reporting in question." *Schwab*, 883 F.3d at 98.  Under Supreme Court and Second Circuit law, both holdings are precedential and, accordingly, binding on lower courts. *See, e.g.*, *Mass. v. United States*, 333 U.S. 611, 623 (1948) (where a case is "decided on either of two independent grounds . . . the adjudication is effective for both"); *Pyett v. Pa. Bldg. Co*., 498 F.3d 88, 92–93 (2d Cir. 2007) (second of two bases for affirming decision "was an alternative holding, not *dicta*" even though the first basis was "sufficient to decide this case") (internal quotation marks and citation omitted).

Hon. Naomi Reice Buchwald
April 11, 2018
Page 3

issue here—*might* have triggered inquiry notice. *Id*. Nevertheless, the court held that "[i]t is too soon to identify, from the face of the complaint and taking all inferences in Schwab's favor, the precise moment at which the two-year limitations period began to run." *Id*.

## II.    *Schwab* **Is Diametrically Opposed to this Court's CEA Limitations Rulings**

The Second Circuit's *Schwab* decision *cannot* be squared with this Court's dismissal of Plaintiffs' Period 1 and 2 CEA claims on limitations grounds and, accordingly, strongly warrants reconsideration.

Crucially, the discovery rule standards that this Court applied to Schwab's California law claims and to Plaintiffs' CEA claims, are identical in all relevant respects. In *LIBOR I* and *IV*, this Court held that an "intermediate inquiry notice" standard applies to the CEA's discovery rule, which in Plaintiffs' case would cause the limitations period to begin to run once Plaintiffs were on inquiry notice of their injury. *See LIBOR I*, 935 F. Supp. 2d at 698 (holding that, if no inquiry is made, limitations period runs from when the "circumstances would have suggested to a person of ordinary intelligence the probability that he had been defrauded"); *In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR IV")*, No. 11 MDL 2262 (NRB), 2015 WL 4634541, at *116 (S.D.N.Y. Aug. 4, 2015), *amended sub nom. In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2015 WL 13122396 (S.D.N.Y. Oct. 19, 2015) (characterizing this as an "intermediate inquiry notice rule"). In *Schwab*, the Second Circuit recognized that substantially the same standard applies to claims under California law, such as those at issue in *Schwab*. *See Schwab*, 883 F.3d at 97 (limitations period for California law claims "begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing" (internal quotation marks and citation omitted)).[4]

Moreover, the Second Circuit's rulings in *Schwab* that "even if Schwab were aware of news articles that raised the possibility that LIBOR had been at artificial levels since August 2007," dismissal on limitations would be inappropriate because: (i) "[t]he BBA responded to the negative press reporting by assuring investors and journalists that its own investigation had confirmed the accuracy of LIBOR", and (ii) "[i]t is plausible that Schwab reasonably relied on those assurances, thus delaying the start of the limitations period" are consistent with Plaintiffs' discovery rule allegations—and impossible to reconcile with this Court's limitations rulings. *Schwab*, 883 F.3d at 98 (internal quotation marks and citation omitted). For instance, Plaintiffs allege that the BBA "declared in August 2008 that LIBOR had not been manipulated, thus providing further (incorrect) assurance to Plaintiffs and the public that the concerns expressed by some market participants were unfounded." [Corrected] Fourth Am. Consolidated Class Action Compl. [ECF No. 2363], ¶ 461. Plaintiffs also allege that, "[i]n nearly every article during 2008 in which the integrity of LIBOR was questioned, a BBA spokesperson was quoted stating the benchmark was valid and reliable."

---

[4] In fact, a more *lenient* discovery rule standard applies to CEA claims than to California law claims. In *LIBOR IV*, this Court held that a "strong inquiry notice" standard, in which "the limitations period does not wait for either the actual plaintiff or a hypothetical reasonable plaintiff to conduct an investigation," applies to California tort claims (and an even stricter standard applies to California contract and unjust enrichment claims). 2015 WL 4634541, at *117. And, in *Schwab*, the Second Circuit ruled that the same discovery rule standard that applies to California tort claims applies equally to California unjust enrichment claims. 883 F.3d at 96-97.

Hon. Naomi Reice Buchwald
April 11, 2018
Page 4

*Id.* ¶ 464.  Providing specific examples, Plaintiffs further plead that "[i]n addition to working through the BBA, Defendants engaged in a general media strategy that diffused the speculation that had arisen concerning LIBOR – and further concealed their conduct."  *Id.* ¶ 465; *see also id.* ¶ 462-63, 466-72.

*Schwab*'s holding that investors "reasonably relied" on the BBA's assurances as alleged in Plaintiffs' complaint, directly contradicts this Court's holding that "plaintiffs could not have reasonably relied on the reassurances of defendants and the BBA" because "[a] person of ordinary intelligence would have understood that defendants each had a strong incentive to portray themselves as truthful and that the BBA had a strong incentive to maintain market confidence in LIBOR's integrity." *LIBOR I*, 935 F. Supp. 2d at 705; *see also LIBOR IV*, 2015 WL 4634541, at *105-08.[5]

### III.    *Schwab* **Warrants Reconsideration Under Federal Rule of Civil Procedure 54(b)**

Plaintiffs seek reconsideration of this Court's CEA limitations rulings "[u]nder Fed. R. Civ. P. 54(b) as well as the inherent power of the court to reconsider a prior decision at any time before the entry of final judgment."  *Shervington v. Vill. of Piermont*, 732 F. Supp. 2d 423, 425 (S.D.N.Y. 2010); *see also* Fed. R. Civ. P. 54(b) ("any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities").[6]

As in this case, "reconsideration is justified where there is an intervening change of controlling law" or when necessary to correct an error or prevent injustice.  *Liberty Mut. Fire Ins. Co. v. J&S Supply Corp.*, No. 13 Civ. 4784 (VSB), 2017 WL 4351523, at *1 (S.D.N.Y. Sept. 29, 2017); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (Reconsideration may be granted where the "moving party can point to controlling decisions . . . that might reasonably be expected to alter the conclusion reached by the court.").  Reconsideration is particularly prudent when "there is a strong likelihood that the district court's decision would

---

[5] Nor is there any basis, legal or otherwise, for distinguishing the effect of the BBA's and Defendants' dissipatory statements on Plaintiffs and Schwab.  In considering the objective reasonableness of Schwab's reliance on the BBA's statements, the Second Circuit did not consider Schwab's sophistication, the types of instruments it traded, or how it should be categorized as an investor (an analysis that would have required the court to reach beyond the pleadings, regardless).  Even were a court to engage in such an analysis, it is hard to conceive of a more sophisticated trader than Schwab, which is one of the world's largest brokerages, with more than $3 trillion in client assets and 17,600 employees.  The Charles Schwab Corporation, Form 10-K, at 1, (Feb. 22, 2018), available at https://aboutschwab.com/images/uploads/inline/schw_annual_report_2017.pdf.

[6] *See also Shervington*, 732 F. Supp. 2d at 425 ("The Court has "discretion to consider a motion for reargument notwithstanding the movant's failure to comply with Local Rule [6.3]'s requirements." (quoting *Church of Scientology Int'l v. Time Warner, Inc.*, No. 92 Civ. 3024 (PKL), 1997 WL 538912, at *4 (S.D.N.Y. Aug. 27, 1997)); Local Rule 6.3 (providing that when "otherwise provided by the Court or by statute or rule" a motion for reconsideration need not be served within 14 days of Court's determination of the original motion); *Adams v. Ellis*, No. 09 Civ. 1329 (PKC), 2012 WL 4762044, at *6 (S.D.N.Y. Oct. 5, 2012), *aff'd*, 536 F. App'x 144 (2d Cir. 2013) (noting that, under Rule 54(b), "rulings of a district court remain subject to revision at any time before entry of final judgment" (internal quotation marks omitted)).

4

Hon. Naomi Reice Buchwald
April 11, 2018
Page 5

ultimately be reversed on appeal." *Ng v. HSBC Mortg. Corp.*, No. 07 Civ. 5434, 2014 WL 4699648, at *3 (E.D.N.Y. Sept. 22, 2014). "In that situation, reconsideration saves the parties' (and the Circuit's) time by avoiding a second, unnecessary battle in the Court of Appeals." *Id.*

For instance, in *New Jersey Carpenters Health Fund v. DLJ Mortg. Capital, Inc*., No. 08 Civ. 5653 (PAC), 2013 WL 357615 (S.D.N.Y. Jan. 23, 2013), another judge in this district granted, in part, reconsideration under Rule 54(b) following the Second Circuit's decision in *NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co. ("NECA")*, 693 F.3d 145 (2d Cir. 2012). The district court had previously dismissed claims relating to several offerings of mortgage-back certificates on the grounds that a lead plaintiff has standing only to bring such claims arising from trust offerings that the plaintiff purchased. Nevertheless, despite the passage of two-and-a-half years between its original dismissal decision and the Second Circuit's *NECA* decision, the Court recognized "that *NECA* constitutes a change in controlling law that requires the Court to reanalyze its prior decisions." *N.J. Carpenters*, 2013 WL 357615, at *4.

The case for granting reconsideration here is even stronger than in *New Jersey Carpenters*. Whereas the Second Circuit's *NECA* decision arose out of an entirely separate case from *New Jersey Carpenters*, the Second Circuit's *Schwab* decision resulted from an appeal from a decision rendered in the same MDL as Plaintiffs' case. Accordingly, not only is *Schwab* legally controlling, but in rendering its decision, the Second Circuit had occasion to consider the application of the law to substantially the same factual allegations as those pleaded by Plaintiffs. Moreover, this Court now has the benefit of not one, but *two* separate decisions confirming that Plaintiffs' claims should not have been dismissed on timeliness grounds. *See Schwab*, 883 F.3d at 96-98; *BPP II*, 603 F. App'x at 59.

Finally, the reasons that Defendants previously offered in opposing reconsideration of this Court's limitations rulings following the *BPP II* summary order no longer hold water following *Schwab*. Defendants argued that this Court should disregard *BPP II* because it "has no precedential effect and accordingly is not 'controlling law'." Defs.' Oct. 23, 2015 Letter [ECF 1223]. Unlike the *BPP II* summary order, however, the Second Circuit's *Schwab* decision is precedential and controlling. Similarly, Defendants' previous suggestion that the Second Circuit's analysis in *BPP II* was limited to Pennsylvania law is also no longer tenable. Defs.' Oct. 23, 2015 Letter [ECF 1223]. The Second Circuit has now applied similar logic to reverse this Court's decisions dismissing claims on limitations grounds under multiple legal regimes, including Pennsylvania and California law and the federal Securities Exchange Act. *See Schwab*, 883 F.3d at 94-95, 96-98; *BPP II*, 603 F. App'x at 59. There is no principled reason for declining to apply the Second Circuit's analysis to Plaintiffs' CEA claims, which this Court has repeatedly acknowledged has the same discovery rule standard as the one applied to the California law claims by the Second Circuit.

\*     \*     \*

In short, Plaintiffs' request for a pre-motion conference to seek leave to file a motion to reconsider, in light of the Second Circuit's *Schwab* decision, the Court's statute of limitations rulings in *LIBOR I* and *LIBOR III* should be granted.

Hon. Naomi Reice Buchwald
April 11, 2018
Page 6


Respectfully submitted,


_____/s/ Christopher Lovell_____                    _____/s/ David E. Kovel_____
Christopher Lovell                                               David E. Kovel
LOVELL STEWART HALEBIAN                         KIRBY McINERNEY LLP
61 Broadway, Suite 501                                      825 Third Avenue, 16th floor
New York, New York 10006                              New York, New York 10022
Telephone: (212) 608-1900                               Telephone: (212) 371-6600
Email: clovell@lshllp.com                                Email: dkovel@kmllp.com


*Interim Co-Lead Counsel for Exchange-Based Plaintiffs and the Proposed Class*


cc:      All Counsel of Record (by Electronic Filing)