

Jason A. Zweig
Partner
**HAGENS BERMAN SOBOL SHAPIRO LLP**
555 FIFTH AVENUE, SUITE 1700
NEW YORK, NY  10017
www.hbsslaw.com
**Direct (708) 628-4958**
jasonz@hbsslaw.com

May 1, 2018

**BY ECF**

Honorable Naomi Reice Buchwald, U.S.D.J.
United States District Court
for the Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

   Re: ***In re: LIBOR-Based Financial Instruments***
     ***Antitrust Litig.,***
     **Civil Action No. 11-md-2262 (NRB)**

     ***33-35 Green Pond Associates, LLC v.***
     ***Bank of America Corp., et al.,***
     **Civil Action No. 12-cv-5822 (NRB)**

     ***Courtyard at Amwell II, LLC, et al. v.***
     ***Bank of America Corp., et al.,***
     **Civil Action No. 12-cv-6693 (NRB)**

Dear Judge Buchwald:

  My firm, along with others, represents plaintiffs 33-35 Green Pond Road Associates, LLC and Courtyard at Amwell II, LLC, Greenwich Commons II, LLC, Jill Court Associates II, LLC, Maidencreek Ventures II LP, Raritan Commons, LLC, and Lawrence W. Gardner (collectively, the *Green Pond Plaintiffs*) in the above-referenced cases. We write to respond to the Defendants' April 30, 2018 letter[1] requesting, among other things, that the Court set various dates in the Green Pond Plaintiffs' cases. The Green Pond Plaintiffs oppose the Defendants' request.

  The Green Pond Plaintiffs assert a single Federal antitrust claim arising out of Defendants' alleged conspiratorial conduct with respect to LIBOR. The Green Pond Plaintiffs (and proposed class) purchased *the same* financial instruments at issue in the OTC plaintiffs' case. But, unlike the OTC plaintiffs who purchased their instruments directly from the Defendants, the Green Pond

---

[1] ECF No. 2498. All docket references are to docket entries in 11-MD-2262.

SEATTLE   BOSTON   CHICAGO   COLORADO SPRINGS   LOS ANGELES   NEW YORK   PHOENIX   SAN DIEGO   SAN FRANCISCO   WASHINGTON, D.C.

010327-11 1029748 V1

Letter to the Honorable Naomi Reice Buchwald
May 1, 2018
Page 2

Plaintiffs purchased their instruments directly from a defined set of 25 *non-Defendant* banks (their identities are not relevant here).

  The Green Pond and Courtyard at Amwell cases were filed on July 30, 2012 and September 4, 2012 respectively. Both actions contain nearly identical claims on behalf of identical classes. And both actions were stayed by the Court's August 4, 2012 order,[2] which stayed all actions until the resolution of the initial motions to dismiss in the actions of the OTC plaintiffs, the Bondholder plaintiffs and the Exchange-Based plaintiffs. In connection with those motions to dismiss, the Court dismissed all antitrust claims, among others.[3] Following *LIBOR I* (and the related *Gelboim* appeal to the United States Supreme Court), the Court granted the Green Pond Plaintiffs' request that its single antitrust claim be dismissed so that they may join in the ultimate appeal by those whose antitrust claims were dismissed by *LIBOR I*.[4]

  Following the Second Circuit's May 2016 decision in *Gelboim et al. v. Bank of America Corp., et al.*,[5] the Green Pond Plaintiffs, having been remanded by the Second Circuit along with the Bondholder plaintiffs and others, sought to proceed with their cases on the same schedule as the other cases pending before the Court. Defendants opposed this effort. In June 2016, the Green Pond Plaintiffs sought Defendants' consent to the Green Pond Plaintiffs' anticipated application to the Court seeking to allow their cases to proceed including, permitting the same activities Defendants now claim are necessary (amended pleadings, motions to dismiss etc.). The Defendants took the position that the Green Pond Plaintiffs' cases should remain stayed pending the resolution of the forthcoming efficient enforcer motions, stating that "[efficient enforcer rulings] will likely have a significant impact on both the scope of the remaining claims and efficient case management of the MDL as a whole going forward. Attempting to schedule such matters before the court has ruled on the remanded issues will only result in duplication of effort because once the court does rule, the court and all parties will undoubtedly need to reevaluate and reschedule in light of those rulings."[6]

  Notwithstanding the Defendants' position, on June 16, 2016, the Green Pond Plaintiffs requested that the Court permit their cases to move forward so that they could file an amended

---

[2]  ECF No. 205. *See also* ECF No. 2372 recognizing the stay in the Green Pond Plaintiffs' cases.

[3]  *In re LIBOR-Based Fin. Instruments Antitrust Litig. (LIBOR I)*, 935 F. Supp. 2d 666 (S.D.N.Y. 2013).

[4]  ECF No. 1008.

[5]  823 F.3d 759 (2d Cir. 2016).

[6]  June 15, 2016 email from Robert F. Wise, Jr. to Green Pond Plaintiffs' Counsel. ECF No. 1459-3.

Letter to the Honorable Naomi Reice Buchwald
May 1, 2018
Page 3

complaint and the Court could set a briefing schedule on any motions to dismiss directed towards the amended pleadings.[7] In the June 16 letter, the Green Pond Plaintiffs specifically noted:

> If the Green Pond Plaintiffs' cases were to remain stayed, they would be forced to remain on the sidelines, a spot they have occupied for the last four years. Although the Green Pond Plaintiffs believe the defendants' efficient enforcer motions will fail, the fact remains that it is possible that defendants will prevail in this Court. Losing plaintiffs will appeal and such appeals will take at least one to two years. If appellants/plaintiffs ultimately are successful, the cases will come back to this Court. All the while the Green Pond Plaintiffs will have been stayed since 2012, while, other parties have been able to pursue their claims, take discovery, and reach settlements. Thus, any further stay of the Green Pond Plaintiffs' cases would be prejudicial.

On June 21, 2016, the Court, among other things, denied the Green Pond Plaintiffs' application, ruling that "the Court would anticipate that its decision on [the forthcoming efficient enforcer motions] will at a minimum provide a helpful framework for the resolution of the additional proposed motions and perhaps even speak to the viability *vel non* of some of the stayed cases."[8] The Court then decided the efficient enforcer motions, a ruling embodied in *LIBOR VI*.[9] In *LIBOR VI*, with respect to the efficient enforcer issue, the Court "was persuaded to draw a line between plaintiffs who transacted directly with the defendants and those who did not."[10] Ultimately, the Court held that "where a plaintiff's counterparty is reasonably ascertainable and is not a defendant bank, a plaintiff is not an efficient enforcer."[11] On that basis, the Court then dismissed the claims of those who purchased their LIBOR-linked instrument from a non-Defendant bank, including the Bondholder plaintiffs and the Schwab plaintiffs.[12] The Bondholder plaintiffs and Schwab (and others) appealed *LIBOR VI*,[13] and briefing on that appeal will be completed shortly, or has already been completed.[14]

More recently, in November 2017, the Green Pond Plaintiffs moved for limited relief of the stay to serve non-party preservation subpoenas on non-Defendant banks relevant to the Green

---

[7] ECF No. 1459.

[8] ECF No. 1463 at p. 2.

[9] 2016 WL 7378980 (Dec. 20, 2016 S.D.N.Y.).

[10] *Id.* at * 16.

[11] *Id.*

[12] *Id.*

[13] The caption of the appeal is *In re LIBOR-Based Financial Instruments Antitrust Litig.*, 17-1569 (2d Cir.).

[14] It is the Green Pond Plaintiffs' understanding that all primary briefing in the appeal has been submitted and that the Appellants have sought permission to file a sur-sur reply, and are awaiting the Second Circuit to rule on that application.

Letter to the Honorable Naomi Reice Buchwald
May 1, 2018
Page 4

Pond Plaintiffs' cases. The Green Pond Plaintiffs sought Defendants consent with respect to the their anticipated application to lift the stay solely for this limited purpose. The Defendants responded: "Defendants take no position on your request to modify the stay for the limited purpose you note in your email but note that none of Green Pond's or Courtyard at Amwell's claims survive the Court's decision in *LIBOR VI* and therefore neither Green Pond nor Courtyard at Amwell has standing to seek discovery at this stage."[15] On November 29, 2017, the Green Pond Plaintiffs moved the Court for this limited relief, and on December 14, 2017, the Court granted the Green Pond Plaintiffs' request. At that time, the Court noted that it discerns "no meaningful difference between the Green Pond Plaintiffs' antitrust claims and the Bondholder plaintiffs' antitrust claims, which were dismissed on efficient-enforcer grounds."[16] The Court further held that "nothing in this order should be interpreted as a retreat from our conclusion in *LIBOR IV* that plaintiffs who did not transact directly with defendants are not efficient enforcers of the antitrust laws and therefore lack standing."[17]

Since the Green Pond Plaintiffs didn't purchase their LIBOR instruments directly from the Defendants, they, like the Bondholder plaintiffs, fall "on the other side of the line" the Court drew in *LIBOR VI*. Indeed, as noted above, the Court sees no "meaningful difference" between the claims of the Bondholder plaintiffs and Green Pond Plaintiffs. As a result, it would be a waste of resources to force the Green Pond Plaintiffs' cases to proceed before a decision in the current Second Circuit appeal. The central question to be decided on the appeal – whether those who purchased LIBOR instruments from non-defendant banks can be efficient enforcers of the antitrust laws – is also at the heart of the Green Pond Plaintiffs' cases. The Green Pond Plaintiffs want to proceed with their cases. But, given that the Green Pond Cases were stayed pending the resolution of the Defendants' efficient enforcer motions, it makes no sense to now course correct and move the Green Pond Plaintiffs' cases full-steam ahead, especially with the ultimate resolution of the Defendants' efficient enforcer motions close at hand.

The Defendants' chief concern motivating their request to unstay the Green Pond Plaintiffs' cases is discovery coordination. But, these concerns seem particularly empty with respect to the Green Pond cases. As noted above, Defendants (and the Court) don't believe the Green Pond Plaintiffs' cases are viable, so, discovery should be of no concern. And, if the Green Pond Plaintiffs' cases are permitted to proceed later, it is extremely likely that they would be interested in the identical discovery that the OTC (and other) plaintiffs would seek from the Defendants mitigating, or even eliminating, duplicative discovery concerns. Defendants are simply using the current posture

---

[15] October 26, 2017 email from Adam Mehes to Green Pond Plaintiffs' counsel (not attached).

[16] ECF No. 2372, n. 2. For the avoidance of doubt, the Green Pond Plaintiffs believe there are differences between themselves and the Bondholder plaintiffs. But, it cannot be said whether those differences are "meaningful" until it is known how the Second Circuit will rule in the current appeal.

[17] *Id.* at p. 3.

Letter to the Honorable Naomi Reice Buchwald
May 1, 2018
Page 5

of the Green Pond Plaintiffs' cases as a pretext to delay the OTC and other plaintiffs' discovery efforts.

  Therefore, the Green Pond Plaintiffs respectfully request that their cases remain stayed, pending the resolution of the current *Gelboim* appeal in the Second Circuit.

  We thank this Court for its kind and continued attention to this matter.

           Respectfully submitted,

              s/

           Jason A. Zweig

JAZ:jz

cc: All counsel by ECF