# SUSMAN GODFREY L.L.P.
A REGISTERED LIMITED LIABILITY PARTNERSHIP
32ND FLOOR
1301 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6023
(212) 336-8330
FAX (212) 336-8340
WWW.SUSMANGODFREY.COM

_____

| SUITE 5100 | SUITE 1400 | SUITE 3800 |
| 1000 LOUISIANA STREET | 1900 AVENUE OF THE STARS | 1201 THIRD AVENUE |
| HOUSTON, TEXAS 77002-5096 | LOS ANGELES, CALIFORNIA 90067-6029 | SEATTLE, WASHINGTON 98101-3000 |
| (713) 651-9366 | (310) 789-3100 | (206) 516-3880 |

WILLIAM CHRISTOPHER CARMODY
DIRECT DIAL (212) 336-8334

E-MAIL BCARMODY@SUSMANGODFREY.COM

May 25, 2018

VIA ECF AND HAND DELIVERY

The Honorable Naomi Reice Buchwald
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

Re:   *In re LIBOR-Based Financial Instruments Antitrust Litigation*, Case No. 11-md-2262

Dear Judge Buchwald:

We write on behalf of the OTC, Direct-Action, and Lender Plaintiffs (collectively, the "Plaintiffs") per the Court's order dated May 7, 2018, inviting "further submission on the subject of discovery consistent with" the Court's order.  ECF 2507.

The Plaintiffs propose the following topics for "limited discovery" that Plaintiffs believe "could be conducted without prejudice to any party or named defendant."  *Id*.  All of these topics request discrete categories of documents that are relevant to causes of action against defendants that have survived previous motions to dismiss.  Further, each Plaintiffs' group at this point proposes these topics only as against those defendants as to which that Plaintiffs' group has claims that have survived previous challenge and as against which no jurisdictional issue exists.[1]

a. ***Privilege Logs***.—The scope of limited discovery should include documents withheld from Defendants' productions to regulators (and thus to Plaintiffs) based on a claim of privilege.  Defendants will not suffer prejudice by producing privilege logs, as there is no situation in which they would have to log the same withheld document more than once or

---

[1] Those defendants are as follows.  OTC: JPMorgan (antitrust), Bank of America (antitrust), and UBS (state-law, non-class claims).  Lender Plaintiffs: JPMorgan (fraud and civil conspiracy), Bank of America (fraud and civil conspiracy), and UBS (fraud and civil conspiracy).  For at least some of the Direct-Action Plaintiffs, those defendants include: Bank of America, Barclays, Citigroup, Credit Suisse, Deutsche Bank, HSBC, JPMorgan, Portigon, RBC, RBS, and UBS.

May 25, 2018
Page 2

    b. ***Relevant Internal Bank Policies***.—The scope of limited discovery should include Defendants' policies on: (i) document retention and destruction; (ii) audio recording of employees; and (iii) compliance relating to LIBOR and antitrust and competition laws and regulations. These policies are a discrete set of documents that will only have to be produced once and will have to be produced regardless of the outcome of the anticipated motions to dismiss.[3]

    c. ***Organizational Charts***.—The scope of limited discovery should include organizational charts for Defendants' business units responsible for submitting LIBOR, for trading USD cash in London, the bank's treasury and asset and liability management functions, and trading USD LIBOR-based financial instruments in London and the United States. These organizational charts are a discrete set of documents that, like internal policies, will not change based on the outcome of the anticipated motions to dismiss.[4]

    d. ***BBA Meeting Minutes & Recordings***.—The scope of limited discovery should include meeting and conferring on any minutes or recordings of BBA LIBOR Steering Committee, FXMMC, and FXMMC subcommittee meetings not included within Defendants' productions. These minutes and recordings are a discrete set of documents that are relevant to (at the very least) the OTC Plaintiffs' federal antitrust claims and these documents would not have to be searched for or produced again based on the outcome of the anticipated motions to dismiss.[5]

have to reproduce the same privilege log depending on the outcome of anticipated motions to dismiss.[2]

In addition, Direct Action Plaintiffs ("DAPs") seek (1) regulatory productions (Barclays and Portigon), (2) document requests from regulators and non-privileged correspondence relating to those requests so that DAPs can understand what the "regulatory productions" include (and what they do not include), (3) transactional data regarding Defendants' borrowing costs and sales/purchase of LIBOR-Based instruments, such as interest-rate swaps, to the extent not already provided, (4) any related formal responses to document requests, interrogatories, requests for admission, or deposition notices that the defendants have already produced to the class

---

[2] Defendant UBS has agreed to produce a privilege log it prepared for regulators. JPMorgan and Bank of America have refused to prepare a privilege log for documents withheld from their regulatory productions (and thus from OTC Plaintiffs) on a claim of privilege.

[3] Both Defendants JPMorgan and UBS have agreed such documents are within the scope of "limited discovery" if they can be found without using an email search (and there is no basis to believe company policies would not be easily searched for and produced). Defendant Bank of America, on the other hand, refuses to produce its company policies on document retention and destruction and audio recording employees.

[4] Defendants JPMorgan, Bank of America, and UBS have agreed organizational charts are within the scope of "limited discovery" so long as such organization charts can be found without an email search.

[5] Plaintiffs' understanding is that Defendants JPMorgan, Bank of America, and UBS have agreed such documents are within the scope of "limited discovery" to the extent they are found in discrete locations or folders but will not agree to conduct an email search for such documents.

May 25, 2018
Page 3

plaintiffs, and (5) non-privileged transcripts, notes, or memoranda of witness interviews with authorities regarding USD LIBOR manipulation, such as "302" memos drafted by FBI agents summarizing government interviews of percipient witnesses. DAPs and the relevant defendants have been conferring to resolve and/or narrow any disputes over these requests. Those discussions are ongoing and DAPs believe that the parties will resolve many, or all, issues without Court intervention. DAPs propose to bring any unresolved issues to the Court's attention if, and when, those disputes are ripe.

Additionally, the Plaintiffs propose that the parties negotiate an initial set of search terms and that the defendants produce documents in response to those search terms. Negotiation of an initial set of search terms will materially move forward the process of electronic discovery in cases that will not be subject to motions to dismiss. The time periods relevant to the actions not subject to the motions to dismiss overlap with those in the actions that are stayed as do the core topics for electronic discovery, namely the Plaintiffs' allegations that Defendants colluded to suppress USD LIBOR.

The defendants claim that any document production that would require them to run searches beyond those done for their regulatory productions would be prejudicial but that argument does not hold up. *First*, it is standard practice in complex, multi-party cases for parties to run additional searches for electronic documents after initial searches are completed and the resulting documents are produced. In fact, Defendants here agreed to a schedule adopting exactly that approach in the *Credit Default Swaps* case in this Court. Ex. A. *Second*, there is no material burden associated with running a subset of search terms now and an additional subset later as compared to running all of those terms in one search. Indeed, Defendant Bank of America implicitly admits that point. Bank of America has agreed to run the same search terms it ran for regulators for documents from 2009 but has refused to negotiate with OTC Plaintiffs about additional search terms. If running additional search terms later were in fact prejudicial or burdensome, Bank of America would be insisting now on negotiating any additional search terms the OTC Plaintiffs want it to run, not attempting to put off such negotiations until after the limited discovery period.

The Plaintiffs have attempted to meet and confer with Defendants about the scope of limited discovery but, as described in Plaintiffs' letter dated May 18, Defendants have largely refused to engage as a group, instead insisting on defendant-by-defendant meet and confers. Plaintiffs asked for Defendants availability the same day and the day after to meet and confer defendant-by-defendant, and set up meet and confers with all of the live defendants in the OTC Action the next day. In those meet and confers, Defendants took inconsistent positions from each other on the scope of "limited discovery," and the Plaintiffs have described Defendants' varying positions above where appropriate.

May 25, 2018
Page 4


Respectfully Submitted,

*/s/ William Christopher Carmody*

William Christopher Carmody