# DAVIS POLK & WARDWELL LLP

450 LEXINGTON AVENUE
NEW YORK, NY 10017
212 450 4000
FAX 212 701 5800

NORTHERN CALIFORNIA
WASHINGTON, D.C.
SÃO PAULO
LONDON
PARIS
MADRID
TOKYO
BEIJING
HONG KONG

ARTHUR J. BURKE
212 450 4352

June 7, 2018

Re:     *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 11-MD-2262 (NRB)

<u>Via ECF</u>

The Honorable Naomi Reice Buchwald
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Dear Judge Buchwald:

    We submit this letter in response to the OTC, Lender, and Direct Action Plaintiffs' May 25, 2018 submission regarding discovery (ECF No. 2528) ("Plaintiffs' Letter"), on behalf of the defendants named in that submission ("Defendants").[1]

    As discussed in Defendants' May 22, 2018 letter to the Court (ECF No. 2525), certain Defendants (the "Group 1 Defendants")[2] are either in the midst of, or have only recently begun,[3]

---

[1] Although Plaintiffs' Letter states that "each Plaintiffs' group at this point proposes these topics only as against those defendants as to which that Plaintiffs' group has claims that have survived previous challenge and as against which no jurisdictional issue exists," they go on to refer to groups of affiliated entities collectively (*e.g.*, HSBC) and without differentiation. To be clear, only those entities as to which surviving claims remain pending join in this letter. And by joining this letter, no Defendant consents to personal jurisdiction or venue in any action, including any action where (i) that defense has been asserted, (ii) a Defendant has not had an opportunity to assert that defense, including in the stayed cases, or (iii) the Court dismissed a claim against Defendants before a personal jurisdiction defense became available. Defendants also expressly reserve all jurisdictional defenses available to them, including jurisdictional objections to discovery.

[2] The Group 1 Defendants are Bank of America Corporation; Bank of America, N.A. Bear Stearns Capital Markets, Inc.; Citibank N.A.; Citigroup Financial Products, Inc.; Citigroup Global Markets Limited; Citigroup Global Markets, Inc.; Citigroup Inc.; Credit Suisse International; Deutsche Bank AG; Deutsche Bank Securities Inc.; HSBC Bank USA, N.A.; HSBC Finance Corp.; HSBC USA Inc.; J.P. Morgan Bank Dublin PLC; J.P. Morgan Chase & Co.; J.P. Morgan Chase Bank, N.A.; J.P. Morgan Markets Ltd.; Merrill Lynch & Co.; Merrill Lynch Capital Services, Inc.; Merrill Lynch International Bank, Ltd.; Merrill Lynch, Pierce, Fenner & Smith, Inc.; RBS Securities, Inc.; Royal Bank of Scotland Group plc; The Royal Bank of Scotland plc; and UBS AG.

[3] Notwithstanding Defendants' willingness to meet and confer with Plaintiffs concerning discovery pursuant to the Court's recent directive, Plaintiffs' Letter overstates the extent to which such discussions have

a meet-and-confer process with Plaintiffs concerning the scope of the "limited discovery" authorized by this Court at this stage of the litigation. Accordingly, it is unnecessary and premature for the Court to address whether certain aspects of Plaintiffs' discovery proposal are appropriate in light of these ongoing discussions, as Plaintiffs themselves acknowledge. (*See* Plaintiffs' Letter at 2-3.)

As to the following items, however, the Group 1 Defendants[4] appear to have reached an impasse with Plaintiffs, and the Group 1 Defendants request a ruling that these items are outside the scope of discovery permissible at this time: (1) negotiation of additional search terms for Defendants' documents beyond Defendants' regulatory productions and production of documents based on those new search terms; (2) creation and production of privilege logs for Defendants' regulatory productions; and (3) production by Bank of America and JPMorgan of their historic document retention and destruction policies and their policies regarding audio recordings of employee communications, which amount to "discovery about discovery" that is tangentially related to this litigation. These items do not constitute "limited discovery" of the type contemplated by the Court's prior order (i.e., discovery that would be "unlikely to result in substantial duplication of effort if the parties to, or the legal issues remaining in, a given action were to change as a result of intervening developments" (May 7 Order at 2)), or are otherwise inappropriate, as discussed below.

Plaintiffs' Letter also purports to seek immediate discovery from three additional defendants that were not within the scope of Plaintiffs' prior discovery requests: the Barclays, Portigon, and RBC Defendants (the "Group 2 Defendants"). Plaintiffs, however, have not met and conferred with the Group 2 Defendants prior to naming them in their latest submission to the Court,[5] and therefore seek to compel discovery from the Group 2 Defendants that Plaintiffs have never even raised, let alone meaningfully discussed, with these Defendants. Because Plaintiffs have failed to engage the Group 2 Defendants on these issues, any request for the Court to order a discovery plan as to the Group 2 Defendants is both premature and improper.

---

advanced. The letter states, for example, that "DAPs and the relevant defendants have been conferring" concerning the five DAP requests set forth in the letter, when in fact those requests were emailed to certain Group 1 Defendants (including, *e.g.*, RBS, Citi, and Deutsche Bank) mere hours before Plaintiffs' Letter was filed.

[4] It is unclear whether Plaintiffs seek these materials from all or only some Group 1 Defendants, as these topics have not been the subject of separate conferences between the Direct Action Plaintiffs and certain Group 1 Defendants. Nevertheless, given that Plaintiffs' letter to the Court appears to seek this information, the Group 1 Defendants collectively submit this response.

[5] Indeed, Plaintiffs' Letter creates unnecessary confusion by lumping Defendants together without differentiating between those Defendants with which certain Plaintiffs have actively met and conferred and those with which they have not. For example, the *only* discovery request that has been communicated to the Barclays Defendants to date is from certain Direct Action Plaintiffs and is a single ambiguous request for "regulatory productions and transactional data." The Direct Action Plaintiffs have never communicated to the Barclays Defendants any of the other requests for discovery set forth in Plaintiffs' Letter, and to the extent those requests are directed at the Barclays Defendants now, they have been improperly raised with the Court for the very first time prior to *any* meet and confer.

Hon. Naomi Reice Buchwald 3 June 7, 2018

I.   **Plaintiffs' Request for Additional Search Terms**

Plaintiffs improperly and prematurely request that the Group 1 Defendants embark on expansive and immediate merits discovery by negotiating the scope of additional search terms for emails and possibly other electronic documents beyond those included in the Group 1 Defendants' regulatory productions and producing documents in response to those search terms to some unspecified set of Plaintiffs. (Plaintiffs' Letter at 3.)[6] This request should be rejected.

As an initial matter, Plaintiffs' proposal ignores the already expansive document and email searches that the Group 1 Defendants performed for the regulatory productions that Plaintiffs previously received. Plaintiffs have not identified anything in the millions of documents that the Group 1 Defendants have collectively produced in this litigation that would suggest additional search terms are necessary, or any respect in which the search terms Group 1 Defendants used for their regulatory productions were deficient. For example, the review performed in connection with Bank of America's regulatory production was not limited by *any* search term restrictions for emails among various custodians, including the individuals responsible for Bank of America's U.S. Dollar LIBOR submissions, and relied on expansive search terms such as "LIBOR" applied to communications of dozens of other custodians that were not involved in the LIBOR submissions process. Plaintiffs have not articulated any basis for requesting even broader searches than these.

Regardless, Plaintiffs' proposal would result in precisely the duplication of effort and prejudice that this Court's May 7 Order required the parties to avoid. As Plaintiffs do not dispute, all of the Defendants are dismissed from at least some of the live actions in this consolidated multi-district litigation on personal jurisdiction grounds, and this Court has not yet determined which Plaintiffs may assert claims (and which claims may be asserted) against which Defendants. Thus, any agreement regarding additional search terms at this stage would be reached among only a subset of the parties to this litigation (and as to a subset of claims), and would not be binding on other plaintiffs whose claims could be modified or reinstated at a later time. Reaching a compromise with only a subset of plaintiffs now would prejudice the Group 1 Defendants because other plaintiffs may resurface later and demand additional documents or other concessions. Meanwhile, those late-arriving plaintiffs would benefit from any compromises that the Group 1 Defendants reached with the current group of plaintiffs engaged in negotiations with the Group 1 Defendants.[7]

---

[6] This purported discovery request was never communicated to the Group 2 Defendants prior to the filing of Plaintiffs' Letter.

[7] Plaintiffs contend that Bank of America's agreement to provide documents from 2009 for the same search terms and custodians it used in its regulatory productions somehow implies that the Group 1 Defendants would not be prejudiced by negotiating the production of documents based on additional search terms at this stage. But Bank of America's agreement to extend its regulatory productions to 2009 is completely consistent with the Group 1 Defendants' overall position articulated above, as it simply reflects the fact that all Plaintiffs' claims extend temporally beyond the date range of Bank of America's regulatory productions, and therefore Bank of America will inevitably need to produce documents from 2009 in this litigation, regardless of which Plaintiffs have claims against Bank of America. As discussed above, however, like other Group 1 Defendants, Bank of America would be substantially prejudiced by Plaintiffs' proposal to engage in contentious negotiations and compromises regarding

Davis Polk & Wardwell LLP

As a case in point, the Group 1 Defendants previously reached a compromise with OTC and Exchange plaintiffs after extensive discussions regarding production of certain categories of communications with regulators, but Direct Action Plaintiffs subsequently indicated that they may not accept a similar compromise and may instead seek a broader set of such communications.[8] Given the multitude of Plaintiffs and their counsel, and the divergence of their claims and circumstances, similar differences are highly likely to arise in the future and require renegotiation of discovery agreements if initial negotiation concerning search terms is required to occur now. This concern is further heightened by the fact that liaison counsel for the Direct Action Plaintiffs has been unable to specify on behalf of which Direct Action Plaintiffs they have authority to speak in the meet and confers with Group 1 Defendants to date, despite multiple requests from Group 1 Defendants for clarification on that issue. Tellingly, footnote 1 of Plaintiffs' Letter cryptically refers to only "at least some of the Direct-Action Plaintiffs." (ECF No. 2528.) It would be particularly prejudicial to the Group 1 Defendants to enter into negotiations and agreements regarding search terms with a so-called representative of "Direct Action Plaintiffs" only to discover later that this representative does not actually represent *all* Direct Action Plaintiffs that have claims against that Defendant.

Plaintiffs' reliance on the Joint Initial Report in *In re Credit Default Swaps Antitrust Litigation* ("*CDS*"), No. 13-md-2476, ECF No. 2528-1, is misplaced. Unlike this case, *CDS* involved a single class action complaint and did not present a circumstance in which only a patchwork of plaintiffs and claims survived against each defendant, with plaintiffs intending to file motions to reinstate some or all of their claims. As a result, the discovery plan in *CDS* did not present the same risk of prejudice presented by Plaintiffs' discovery proposal here. Moreover, even given the far more straightforward procedural posture in *CDS*, the parties agreed to begin discovery only *after* the Court resolved the defendants' dispositive motions to determine which plaintiffs and claims survived. *See* Joint Initial Report at 1. Thus, far from supporting Plaintiffs' proposal here, the Joint Initial Report in *CDS* in fact supports *Defendants'* position.

## II. Plaintiffs' Requests for Privilege Logs and Discovery on Discovery

Regarding Plaintiffs' other proposed topics for "limited discovery," these raise different issues for different Group 1 Defendants—and in some cases were raised for the first time in emails Plaintiffs sent the same day as Plaintiffs' May 25, 2018 letter to the Court—and Plaintiffs and Group 1 Defendants are continuing to discuss them. However, two of Plaintiffs' requests outside the scope of permissible limited discovery are ripe for resolution as to the Group 1 Defendants now[9]:

---

additional search terms with only a subset of Plaintiffs, only to then have to potentially revisit those negotiations later if additional Plaintiffs or claims are revived.

[8] The DAPs seek "document requests from regulators and non-privileged correspondence relating to those requests" as well as "non-privileged transcripts, notes, or memoranda of witness interviews with authorities." (ECF No. 2528 at 2-3.)

[9] Once again, none of these purported discovery requests was communicated to the Group 2 Defendants prior to the filing of Plaintiffs' Letter.

- **Privilege Logs for Defendants' Regulatory Productions**. Plaintiffs seek partial privilege logs from each Group 1 Defendant covering their regulatory productions. But it would be highly burdensome for those Defendants who did not provide privilege logs to regulators to now seek to create them based on document searches and productions conducted about a decade ago. Indeed, this Court previously acknowledged that Defendants' position on the merits of this issue "ha[s] force." (ECF No. 1813.) Moreover, although certain Defendants have agreed to evaluate the feasibility of producing *pre-existing* regulatory privilege logs at this stage, the production of privilege logs now would be premature given the potential of additional productions. Rather than produce privilege logs seriatim and try to conform privilege calls across multiple logs, if such logs are to be required, it would be more efficient for Group 1 Defendants to produce consolidated privilege logs at a reasonable time near the completion of document discovery. *See* S.D.N.Y. R. 26.2 ("Efficient means of providing information regarding claims of privilege are encouraged, and parties are encouraged to agree upon measures that further this end."). Accordingly, it is premature for Group 1 Defendants to create and produce privilege logs at this stage, regardless of the privilege logs' scope. *See Ross v. Abercrombie & Fitch Co.*, 2009 WL 779328, at *2 (S.D. Ohio Mar. 19, 2009) (indicating that it was premature to address purported deficiencies in a privilege log produced to a regulator until the civil litigation document production and privilege log were complete because "it would not be a wise expenditure of judicial resources to make rulings on the basis of the prior log").

- **Discovery on Discovery**. Plaintiffs request that Bank of America and JPMorgan produce their document retention and destruction policies, as well as their policies regarding audio recordings of employee communications.[10] But Plaintiffs do not explain why these policies are relevant or proportional to the needs of their case given that they do not point to any gaps in Bank of America's or JPMorgan's expansive production that raise a question of document or audio retention. Plaintiffs "must provide an 'adequate factual basis' to justify" such discovery "collateral to the relevant issues," and they have not provided any basis, let alone an adequate one, for doing so here. *See Winfield v. City of N.Y.*, No. 15-cv-5236 (LTS) (KHP), 2018 WL 840085, at *3 (S.D.N.Y. Feb. 12, 2018) (explaining that parties face a greater burden in seeking "discovery on discovery" because "of the danger of extending the already costly and time-consuming discovery process *ad infinitum*" (quoting *Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15-cv-0293 (LTS) (JCF), 2016 WL 3906712, at *7 (S.D.N.Y. July 14, 2016))). Moreover, this request covers policies that are historical in nature. Although these documents should not be discoverable regardless of the burden involved, the burden associated with searching and collecting for historical

---

[10] To the extent that Plaintiffs' letter of May 25 might be read to suggest that JPMorgan agreed to produce these documents, that is not accurate. Rather, JPMorgan told Plaintiffs that it did not object to this request on the grounds that it would involve search terms and custodial searches. JPMorgan at all times preserved the right to object on other grounds.

documents further weighs in favor of a finding that production of these documents is not proportional to the needs of the case.

Defendants respectfully request that the Court reject Plaintiffs' discovery proposals above as outside the scope of the "limited discovery" contemplated by the Court's May 7 Order. Defendants will continue to meet and confer with Plaintiffs regarding the other discovery topics raised in their letter.

Respectfully yours,

/s/ Arthur J. Burke
Arthur J. Burke

cc: Counsel for all parties via ECF