## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262<br>Master File No. 1:11-md-2262-NRB |
| THIS DOCUMENT RELATES TO: | **ORAL ARGUMENT REQUESTED** |

| | |
|---|---|
| THE CHARLES SCHWAB CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, et al.,<br><br>Defendants. | No. 13-cv-7005-NRB |

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR DORAL BANK,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>Defendants. | No. 18-cv-1540-NRB |

**JOINT MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF THE *SCHWAB* AND *DORAL* COMPLAINTS FOR FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

RELEVANT BACKGROUND ................................................................. 4

    A.       SCHWAB ACTION ................................................................. 4

    B.       DORAL ACTION ................................................................. 5

ARGUMENT ................................................................................................ 6

    I.       SCHWAB'S CLAIMS SHOULD BE DISMISSED IN PART. ........................... 6

        A.       Schwab's Exchange Act Claims Should Be Dismissed................................ 6

        B.       Schwab's Unjust Enrichment Claims Should Be Limited To Floating-Rate Notes Issued By Defendants.................................................. 13

        C.       Schwab's Tortious Interference Claims Should Be Dismissed In Their Entirety................................................................ 17

        D.       Schwab's Addition Of New Defendants And "Direct Sellers" Is Improper.................................................................. 19

    II.       DORAL'S CLAIMS SHOULD BE DISMISSED IN PART. .............................. 22

        A.       Doral's Fraud, Tortious Interference, Negligent Misrepresentation, And Related Claims Are Wholly Or Partially Time-Barred.......................... 22

        B.       The Court Should Dismiss Doral's Fraud And Negligent Misrepresentation Claims Based On Allegedly False Statements About LIBOR, Doral's Negligent Misrepresentation Claims Based On Allegedly False LIBOR Submissions, And Doral's Fraud By Omission Claims Against Non-Counterparties.................................... 27

        C.       The Court Should Dismiss Doral's Donnelly Act Claim Because It Is Preempted By Federal Antitrust Law. .......................................... 28

        D.       Doral's Antitrust Claims Based On Transactions With Non-Panel Banks Should Be Dismissed Under The Efficient Enforcer Doctrine............. 30

        E.       Doral's Antitrust Claims Based On A Theory Of Conspiracy To Boycott Should Be Dismissed For Lack Of Proximate Cause. .................... 32

        F.       Doral's Tortious Interference With Contract And Related Claims Should Be Dismissed In Part. .......................................................... 32

        G.       Doral's Tortious Interference With Prospective Economic Advantage And Related Claims Should Be Dismissed For Failure To State A Claim.............................................................. 33

H.     Doral's Implied Covenant Claim Against Credit Suisse International
Fails Under The Court's Prior Rulings. ........................................................ 33

CONCLUSION ............................................................................................................. 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdell v. City of New York*,
   No. 05-CV-8453(KMK)(JCF), 2006 WL 2620927 (S.D.N.Y. Sept. 12, 2006) .................... 21

*Acuna v. HDR Architecture, Inc.*,
   No. CIV. 12-1340 JAG, 2013 WL 3288400 (D.P.R. June 28, 2013) .................................... 24

*Alpha Biomedical & Diagnostic Corp. v. Philips Med. Sys. Netherland BV*,
   828 F. Supp. 2d 425 (D.P.R. 2011)............................................................................................ 33

*Arturet-Velez v. R.J. Reynolds Tobacco Co.*,
   429 F.3d 10 (1st Cir. 2005)........................................................................................... 24, 25

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................... 11

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ............................................................................................. 13

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)................................................................................................ 10

*Barrow v. Wethersfeld Police Dep't.*,
   66 F.3d 466 (2d Cir. 1996)................................................................................................ 21

*Charles Schwab Corp. v. Bank of America Corp.*,
   883 F.3d 68 (2d Cir. 2018)........................................................................................ passim

*City of Los Angeles v. Wells Fargo & Co.*,
   22 F. Supp. 3d 1047 (C.D. Cal. 2014) .............................................................................. 14

*Cornwell v. Robinson*,
   23 F.3d 694 (2d Cir. 1994)................................................................................................ 20

*Cruz v. City of New York*,
   No. 02-cv-8672 (LAP), 2007 WL 1223225 (S.D.N.Y. Apr. 25, 2007) .............................. 21

*Dinsmore v. Squadron, Ellenoff, Plesent, Shenfeld & Sorkin*,
   135 F.3d 837 (2d Cir. 1998)................................................................................................ 7

*Dura Pharms, Inc. v. Broudo*,
   544 U.S. 336 (2005)............................................................................................................ 9

*Fed. Dep. Ins. Corp. v. Henderson*,
61 F.3d 421 (5th Cir. 1995) ................................................. 23

*Fed. Deposit Ins. Corp. v. First Horizon Asset Sec., Inc.*,
821 F.3d 372 (2d Cir. 2016) ................................................. 22

*First Nationwide Sav. v. Perry*,
11 Cal. App. 4th 1657 (1992) .............................................. 14

*Flovac, Inc. v. Airvac, Inc.*,
817 F.3d 849 (1st Cir. 2016) ................................................ 24

*Halliburton Co. v. Erica P. John Fund, Inc.*,
134 S. Ct. 2398 (2014) ......................................................... 6

*H-Quotient, Inc. v. Knight Trading Grp., Inc.*,
No. 03 CIV. 5889 (DAB), 2005 WL 323750 (S.D.N.Y. Feb. 9, 2005) ................................. 30

*Hunter v. Deutsche Lufthansa AG*,
No. 09 CV 3166 (NJD)(JMA), 2013 WL 752193 (E.D.N.Y. Feb. 27, 2013) ....................... 21

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977) ............................................................ 31

*In re Cannavest Corp. Sec. Litig.*,
No. 14 Civ. 2900 (PGG), 2018 WL 1633847 (S.D.N.Y. Mar. 31, 2018) ............................ 10

*In re Citigroup Inc. Bond Litig.*,
723 F. Supp. 2d 568 (S.D.N.Y. 2010) .................................. 7

*In re ForceField Energy Inc. Secs. Litig.*,
No. 15-cv-3020 (NRB), 2017 WL 1319802 (S.D.N.Y. Mar. 29, 2017) ............................. 10

*In re LIBOR-Based Fin. Instruments Antitrust Litig.* (*LIBOR I*),
935 F. Supp. 2d 666 (S.D.N.Y. 2013) ........................... 4, 25

*In re LIBOR-Based Fin. Instruments Antitrust Litig.* (*LIBOR III*),
27 F. Supp. 3d 447 (S.D.N.Y. 2014) .................................. 16

*In re LIBOR-Based Fin. Instruments Antitrust Litig.* (*LIBOR IV*),
No. 11-md-2262 (NRB), 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ........................ passim

*In re LIBOR-Based Fin. Instruments Antitrust Litig.* (*LIBOR V*),
No. 11-md-2262 (NRB), 2015 WL 6696407 (S.D.N.Y. Nov. 3, 2015) ................................. 25

*In re LIBOR-Based Fin. Instruments Antitrust Litig.* (*LIBOR VI*),
No. 11-md-2262 (NRB), 2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016) ........................ passim

*In re LIBOR-Based Fin. Instruments Antitrust Litig.* (*LIBOR VII*),
   299 F. Supp. 3d 430 (S.D.N.Y. 2018)..................................................................... 8

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11-md-2262 (NRB), 2016 WL 4773129 (S.D.N.Y. Sept. 12, 2016) ............... 28

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11-md-2262 (NRB), 2017 WL 532465 (S.D.N.Y. Feb. 2, 2017) ..................... 31

*In re MBIA, Inc., Secs. Litig.*,
   700 F. Supp. 2d 566 (S.D.N.Y. 2010).................................................................. 10

*In re ShengdaTech, Inc. Sec. Litig.*,
   No. 11-cv-1918 (LGS), 2014 WL 3928606 (S.D.N.Y. Aug. 12, 2014) ................. 10

*J.A.O. Acquisition Corp. v. Stavitsky*,
   863 N.E.2d 585 (N.Y. 2007).................................................................................. 28

*Janus Capital Grp. v. First Derivatives Traders*,
   131 S. Ct. 2296 (2011) ........................................................................................... 9

*Klein v. ATP Flight Sch., LLP*,
   No. 14-CV-1522 (JFB)(GRB), 2014 WL 3013294 (S.D.N.Y. July 3, 2014) ......... 23

*Lyles v. Sangadeo-Patel*,
   225 Cal. App. 4th 759 (2014) ................................................................................ 13

*Marine Bank v. Weaver*,
   455 U.S. 551 (1982)............................................................................................... 12

*Maritz Inc. v. Carlson Mktg. Grp., Inc.*,
   No. C 07-05585 JSW, 2009 WL 3561521 (N.D. Cal. Oct. 30, 2009) ................... 17

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
   795 F.3d 1124 (9th Cir. 2015) ............................................................................... 18

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)................................................................................... 9

*Nunez* v. *Horn*,
   336 F. Supp. 447 (D.P.R. 1970)............................................................................. 24

*Ramos Lozada* v. *Orientalist Rattan Furniture Inc.*,
   No.,, No. RE-88-67, 1992 WL 755597 (P.R. June 15, 1992)................................. 23

*Robb Evans & Assocs. LLC v. Sun Am. Life Ins.*,
   No. 10 Civ. 5999 (GBD), 2012 WL 488257 (S.D.N.Y. Feb. 14, 2012).................. 23

*Schoolcraft v. City of New York*,
   81 F. Supp. 3d 295 (S.D.N.Y. 2015)......................................................................... 20

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
   33 F. Supp. 3d 401 (S.D.N.Y. 2014).......................................................................... 10

*Strada v. City of New York*,
   No. 11-CV-5735 (MKB), 2014 WL 3490306 (E.D.N.Y. July 11, 2014) ...................... 21

*Two Queens, Inc. v. Scoza*,
   745 N.Y.S.2d 517 (1st Dep't 2002) ......................................................................... 28

*Uzyel v. Kadisha*,
   188 Cal. App. 4th 866 (2010) .................................................................................. 14

*Viacom Int'l Inc. v. Time Inc.*,
   785 F. Supp. 371 (S.D.N.Y. 1992) ........................................................................... 31

*W Holding Co. v. AIG Ins. Co.*,
   No. 11 Civ. 2271(GAG), 2014 WL 3699383 (D.P.R. July 24, 2014) ........................ 23

*Wolf v. Banco Nacional de Mexico, S.A.*,
   739 F.2d 1458 (9th Cir. 1984) ................................................................................. 12

*Worldhomecenter.com, Inc. v. Thermasol, Ltd.*,
   No. 05 Civ. 3298 (DRH)(ETB), 2006 WL 1896344 (E.D.N.Y. July 10,
   2006) ...................................................................................................................... 28

**Statutes and Rules**

12 U.S.C. § 1821 ............................................................................................................... 30

15 U.S.C. § 78c ................................................................................................................. 13

15 U.S.C. § 78j ............................................................................................................ passim

15 U.S.C. § 78t ............................................................................................................ passim

17 C.F.R. § 240.10b-5 ....................................................................................................... 12

28 U.S.C. § 1658 .............................................................................................................. 22

Cal. Civ. Proc. § 338 ......................................................................................................... 22

Fed. R. Civ. Pro. 12....................................................................................................... 1, 35

Fed. R. Civ. Pro. 15............................................................................................... 19, 20, 23

Fed. R. Civ. Pro. 8 .............................................................................................................. 8

N.Y. Gen. Bus. Law § 340 .................................................................................................................. 32

P.R. Laws Ann. tit. 31, § 5298 ........................................................................................................... 27

Defendants[1] respectfully submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), for partial dismissal of (1) the Second Amended Complaint ("SAC") (MDL ECF 2578) filed by the Schwab Plaintiffs[2] following the Second Circuit's remand in *Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68 (2d Cir. 2018), and (2) the Complaint filed by the Federal Deposit Insurance Corporation (the "FDIC") as Receiver for Doral Bank ("Doral").[3]

## PRELIMINARY STATEMENT

This motion seeks partial dismissal of claims asserted by Schwab in its latest complaint on remand from the Second Circuit's decision in *Schwab* and claims asserted by the FDIC in its February 2018 complaint on behalf of Doral Bank. Both Schwab and the FDIC assert a host of claims that should be dismissed based on prior rulings of the Court and the Second Circuit.

Schwab's amended complaint—its sixth in seven years—exceeds the Second Circuit's limited mandate in *Schwab*. The Second Circuit found Schwab should be granted leave to amend its complaint only (1) to "clarify the status of [certain] grouped entities (Citibank, HSBC, JPMorgan Chase, and Bank of America)" for purposes of its personal jurisdiction allegations, *id.* at 90, (2) to "add allegations in support of its agency and conspiracy theories of jurisdiction", *id.*,

---

[1] Each Defendant joins this motion to the extent (and only to the extent) that such Defendant is currently named in an action that is the subject of this motion. By joining this motion, no Defendant consents to personal jurisdiction or venue in any action. Defendants also expressly reserve all jurisdictional defenses available to them, including jurisdictional objections to discovery. Certain Defendants are concurrently moving to dismiss the above-captioned actions for lack of personal jurisdiction.

[2] The Charles Schwab Corp.; Charles Schwab Bank, N.A.; Charles Schwab & Co., Inc.; The Charles Schwab Family of Funds, on behalf of Schwab Money Market Fund, Schwab Value Advantage Money Fund, Schwab Retirement Advantage Money Fund, Schwab Investor Money Fund, Schwab Cash Reserves, Schwab Advisor Cash Reserves; Charles Schwab Worldwide Funds plc, on behalf of Schwab U.S. Dollar Liquid Assets Fund; and Schwab Investments, on behalf of Schwab Short-Term Bond Market Fund, Schwab Total Bond Market Fund, Schwab YieldPlus Fund (the "Bond Funds").

[3] No. 18-cv-1540-NRB (S.D.N.Y.) (ECF 1). On June 15, 2018, the FDIC also moved for leave to amend to add Doral to the FDIC's Proposed Second Amended Complaint ("FDIC PSAC"). MDL ECF 2565. Accordingly, Defendants both move to dismiss the claims on behalf of Doral as set forth herein and oppose leave to add such claims to the FDIC's PSAC on grounds of futility.

and (3) to "clarify its loss causation theory" for claims based upon floating-rate notes under the Securities Exchange Act of 1934, *id.* at 95.[4]  As the Court made clear, *Schwab* "offers no occasion to add or alter unrelated allegations that a plaintiff wishes had been better pleaded in the first instance."  Order dated Apr. 11, 2018 (MDL ECF 2490) at 2.  Yet rather than follow this unambiguous direction, Schwab proffers a series of new factual allegations, claims, and legal contentions, including claims against new Defendants, entirely unmoored from *Schwab*'s mandate.

This gambit is not only improper; it is unavailing, because Schwab's amendments do not overcome the fatal flaws identified by the Court and the Second Circuit.  *First*, Schwab's primary violator claims under the Exchange Act should be dismissed for failure to plausibly allege loss causation and, to the extent premised on transactions in instruments that are not "securities" (such as certificates of deposit), for failure to fall within the ambit of the Exchange Act.  And Schwab's control person claims under the Exchange Act should be dismissed for failure to allege that the purported control persons were culpable participants in the alleged primary violations.  *Second*, Schwab's unjust enrichment claims based on transactions in fixed-rate instruments should be dismissed in their entirety, and Schwab's unjust enrichment claims based on floating-rate instruments should be limited to notes issued by Defendants, consistent with the Court's prior rulings.  *Third*, Schwab's tortious interference with contract claims—improperly alleged for the first time in the SAC—should be dismissed because they are time-barred and outside the scope of the Second Circuit's narrow remand, and also because Schwab fails to plausibly allege (as *LIBOR IV* requires) that the Defendants against which these claims are asserted were aware of Schwab's transactions with their affiliates, or that these Defendants

---

[4] Unless otherwise indicated, all quotations omit internal quotation marks, ellipses, brackets, and citations.

sought to interfere with their affiliates' contracts.  *Finally*, the Court should reject Schwab's belated and improper attempt to add new Defendants and convert existing Defendants into "direct sellers."

The FDIC's claims on behalf of Doral fare no better, and should also be limited consistent with the Court's prior rulings and on other grounds.  *First*, Doral's negligent misrepresentation claim is fully time-barred, and Doral's fraud, tortious interference, implied covenant, and unjust enrichment claims are partially time-barred because Doral was on inquiry notice of its claims by May 29, 2008.  *Second*, Doral's negligent misrepresentation and fraud claims should be dismissed as to non-counterparties and to the extent premised on theories already rejected by the Court.  *Third*, Doral's Donnelly Act claim should be dismissed in its entirety as preempted by federal antitrust law.  *Fourth*, Doral's federal and state law antitrust claims based on transactions with non-panel banks should be dismissed under the efficient enforcer doctrine.  *Fifth*, Doral's antitrust claims based on a "boycott" theory should be dismissed for lack of proximate cause, consistent with the Court's prior rulings.  *Sixth*, Doral's claims for tortious interference with contract (and related aiding and abetting and conspiracy claims) should be dismissed to the extent asserted against any Defendant other than a panel bank in its capacity as an affiliate of a bond issuer.  *Seventh*, Doral's claims for tortious interference with prospective economic advantage (and related aiding and abetting and conspiracy claims) should be dismissed because Doral has not alleged that it lost any customers as a result of the alleged suppression of LIBOR (as required by *LIBOR IV*).  *Finally*, Doral's implied covenant claim against Credit Suisse International should be dismissed because Doral fails to allege that Credit Suisse International participated in the alleged wrongdoing.

## RELEVANT BACKGROUND

**A.    SCHWAB ACTION**

Schwab filed three separate actions in August 2011 alleging that Defendants manipulated LIBOR.[5]  After those complaints were dismissed in their entirety, *see In re LIBOR-Based Fin. Instruments Antitrust Litig.* (*LIBOR I*), 935 F. Supp. 2d 666 (S.D.N.Y. 2013), Schwab filed the instant action in California state court, alleging the same state law claims as well as, for the first time, federal securities claims.  This case was removed to federal court and transferred to this Court, where Defendants moved to dismiss Schwab's amended complaint.

In October 2015, the Court issued a comprehensive decision, *LIBOR IV*, addressing Defendants' motions to dismiss Schwab's claims along with numerous other individual actions. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.* (*LIBOR IV*), No. 11-md-2262 (NRB), 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015).  As a result of the Court's merits and personal jurisdiction rulings, Schwab's claims were dismissed in their entirety.[6]  Schwab noticed an appeal in April 2016.

In February 2018, the Second Circuit issued its decision in *Schwab*.  As relevant here, *Schwab* affirmed the Court's dismissal of Schwab's common law fraud claims based upon fixed-rate instruments, holding that the alleged causal link between LIBOR and prices of the fixed-rate instruments was "extended" and that "California law does not provide for such boundless liability."  *Schwab*, 883 F.3d at 91-92.  The Second Circuit also affirmed the Court's dismissal of Schwab's Exchange Act claims based upon fixed-rate instruments, holding that any alleged

---

[5] *Schwab Short-Term Bond Market Fund, et al. v. Bank of Am. Corp., et al.*, No. 11-cv-6409-NRB (S.D.N.Y.); *Charles Schwab Bank, N.A., et al. v. Bank of Am. Corp., et al.*, No. 11-cv-6411-NRB (S.D.N.Y.); *Schwab Money Market Fund, et al. v. Bank of Am. Corp., et al.*, No. 11-cv-6412-NRB (S.D.N.Y.).

[6] Schwab's personal jurisdiction allegations and amendments are addressed in Defendants' Joint Memorandum Of Law In Support Of Defendants' Motion to Dismiss For Lack Of Personal Jurisdiction And Venue And In Opposition To Plaintiffs' Motions For Leave To Amend On Personal Jurisdiction And Venue Grounds (dated July 13, 2018).

misstatements "were not made in connection with Schwab's purchase of fixed-rate instruments, which did not reference or relate to Defendants' LIBOR submissions in any way." *Id.* at 96.  It also affirmed the Court's dismissal of Schwab's Exchange Act claims based upon floating-rate purchases made *before* the alleged suppression period, holding that receipt of an interest payment by itself did not qualify as a "purchase or sale of a security." *Id.* at 93.  However, the court vacated the dismissal of Schwab's Exchange Act claims based upon floating-rate purchases made *during* the alleged suppression period.  The court agreed that Schwab failed to plausibly allege loss causation as to these instruments, but suggested that Schwab "might have" been harmed if Schwab held a "mispriced instrument to maturity" and received "reduced cash flow [ ] from interest payments that were depressed," or if Schwab sold a LIBOR-based instrument at a loss "after LIBOR manipulation was revealed." *Id.*  The court therefore remanded the case and permitted Schwab to "add allegations" concerning loss causation. *Id.*

Schwab filed the SAC on June 15, 2018.  Like Schwab's previous amended complaint, the SAC asserts claims under (1) section 10(b) and (2) section 20(a) of the Exchange Act, and for (3) common law fraud, (4) aiding and abetting fraud, (5) breach of the implied covenant of good faith and fair dealing, and (6) unjust enrichment.  Schwab also asserts a new claim for tortious interference with contract, and adds as defendants Bank of Scotland plc, Credit Suisse AG, Lloyds Bank plc, and The Royal Bank of Scotland plc.

## B.   DORAL ACTION

On February 20, 2018, the FDIC filed an action on behalf of Doral, a failed Puerto Rican bank.  The FDIC purports to assert claims in its capacity as receiver for Doral, and alleges that it was appointed receiver on February 27, 2015.

The Doral Complaint is substantially similar to the operative Amended Complaint filed by the FDIC on behalf of 38 other failed banks in 2014.[7]  On behalf of Doral, the FDIC alleges that Defendants colluded to suppress LIBOR between August 2007 and at least October 2011, and that, as a result, Doral suffered losses on its "loan portfolio and derivative holdings."  Doral Compl. ¶¶ 4, 191.  The FDIC asserts claims against certain panel banks and affiliates, as well as the BBA,[8] as applicable, for (1) breach of the implied covenant of good faith and fair dealing, (2) unjust enrichment, (3) fraud, (4) aiding and abetting fraud, (5) civil conspiracy to commit fraud, (6) negligent misrepresentation, (7) tortious interference with contract, (8) aiding and abetting tortious interference with contract, (9) civil conspiracy to commit tortious interference with contract, (10) tortious interference with prospective economic advantage, (11) aiding and abetting tortious interference with prospective economic advantage, (12) civil conspiracy to commit tortious interference with prospective economic advantage, (13) violations of the Sherman Act, and (14) violations of the Donnelly Act.

## ARGUMENT

## I.  SCHWAB'S CLAIMS SHOULD BE DISMISSED IN PART.

### A.  Schwab's Exchange Act Claims Should Be Dismissed.

#### 1.  Schwab Has Still Failed to Adequately Plead Loss Causation.

In remanding Schwab's Exchange Act claims for failure to plead loss causation,[9] the Second Circuit held that it was unclear how Schwab claimed to have been injured by the alleged

---

[7] Am. Compl., *Fed. Dep. Ins. Corp. as Receiver for Amcore Bank, N.A., et al. v. Bank of Am. Corp., et al.*, No. 14-cv-1757-NRB (S.D.N.Y.) (ECF 22).

[8] As used herein, the BBA collectively refers to British Bankers' Association, BBA Enterprises Ltd., and BBA Trent Ltd. (f/k/a/ BBA LIBOR Ltd.).

[9] To state a section 10(b) claim, Schwab must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2407 (2014); *see also* 15 U.S.C. § 78j(b).  To the extent Schwab attempts to allege claims for conspiracy to violate section 10(b) of the Securities Exchange Act, *see* SAC ¶¶ 213-17, any such

suppression, and permitted Schwab to "add allegations" supporting its loss causation theory (or

theories).  *Schwab*, 883 F.3d at 93.  Despite a second bite at the apple, Schwab still fails to meet

its burden.  This failure is dispositive of both its section 10(b) and section 20(a) claims.

Schwab alleges that it held unspecified instruments to maturity and that "each time a

coupon payment was made, [it] received less than it would have received absent Defendants'

suppression of LIBOR."  SAC ¶ 194.  These limited conclusory allegations are materially the

same as what Schwab argued before the Second Circuit and alleged in its prior complaint, which

the Second Circuit found to be insufficient.[10]  Further, while Schwab alleges it was "*most

common*" for Schwab "to hold securities to maturity," *id.* ¶ 134 (emphasis added), it does not

allege that the *LIBOR-based securities at issue* were held to maturity, and thus the SAC fails to

allege the securities, if any, on which Schwab purportedly suffered a loss.  *Schwab*, 883 F.3d at

93.  Because the SAC does not even attempt to identify which transactions allegedly give rise to

Exchange Act claims, the SAC "fails to meet even the lessened pleading requirements of Rule 8,

because it does not put the defendant[s] on notice as to the claim plaintiffs seek to raise," *In re

Citigroup Inc. Bond Litig.*, 723 F. Supp. 2d 568, 585 (S.D.N.Y. 2010), and the Exchange Act

claims should be dismissed.

---

claims must be dismissed.  *See Dinsmore v. Squadron, Ellenoff, Plesent, Shenfeld & Sorkin*, 135 F.3d 837, 841 (2d Cir. 1998) (no cause of action for conspiracy to violate section 10(b) of the Exchange Act).

[10] *See Schwab*, 883 F.3d at 93 (holding that Schwab's allegations that it purchased LIBOR-based instruments that "bore artificially low rates of return" and "suffered damages" thereby do not suffice to plead a "causal link between the loss and the alleged fraud"); Reply Br. for Pls.-Appellees, No. 16-1189 (2d Cir.) at 27 ("[B]ecause LIBOR was artificially suppressed, the *overall* return to Schwab from purchasing a LIBOR-based bond—which is a function of the purchase price *and* interest rate for any given borrower—was artificially suppressed as well."); Am. Compl., *The Charles Schwab Corp., et al. v. Bank of Am. Corp., et al.*, No. 13-cv-7005-NRB (MDL ECF 672) ("AC") ¶ 11 ("Defendants' manipulation depressed returns on numerous types of financial instruments, including notes Defendants issued to raise capital during the Relevant Period."); *compare also* SAC ¶ 476 (alleging that "Plaintiffs purchased or otherwise acquired the subject notes during the Relevant Period that bore artificially returns [sic]"), *with* AC ¶ 375 (alleging that "Plaintiffs purchased or otherwise acquired LIBOR-based financial instruments during the Relevant Period that bore artificially low rates of return").

Moreover, the Schwab Bond Funds' allegations are inconsistent with the Court's repeated instruction that "some degree of netting" will be required to show damages.[11]  *In re LIBOR-Based Fin. Instruments Antitrust Litig.* (*LIBOR VII*), 299 F. Supp. 3d 430, 591 (S.D.N.Y. 2018); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.* (*LIBOR VI*), No. 11-md-2262 (NRB), 2016 WL 7378980, at *18 (S.D.N.Y. Dec. 20, 2016) ("[W]e agree that plaintiffs may ultimately recover only to the extent of their net injury, given that plaintiffs may well have benefited from LIBOR suppression in the same transaction or in a different transaction."). Schwab alleges that "[t]he Bond Funds almost always *received* payments based on LIBOR, as opposed to *making* payments based on LIBOR," SAC ¶ 147, but does not describe the relative amounts of LIBOR-based payments received and made.  This silence is conspicuous particularly in comparison to the netting allegations of the Schwab Money Funds and the Schwab Treasury Entities.[12]  *See id.* ¶ 141 ("None of the Money Funds issue debt or enter into transactions in which they make payments based on LIBOR."); *id.* ¶ 158 ("Mr. Goldman attested that during the Relevant Period the Treasury Entities were either never parties to transactions in which they made payments based on LIBOR, or if they were, the amounts were immaterial.").  Unlike those entities, the Schwab Bond Funds acknowledge that they entered into offsetting LIBOR-based transactions and do not plead that the "amounts" of the LIBOR-based payments they made on

---

[11] To justify its failure to plead net loss as to the Schwab Bond Funds, Schwab quotes the Second Circuit's suggestion that "[i]f Schwab held a mispriced instrument to maturity, for instance, it might have incurred damages based on the reduced cash flow received from interest payments that were depressed because of Defendants' manipulation of LIBOR."  *Schwab*, 883 F.3d at 93; *see also* SAC ¶ 193.  The Second Circuit's suggestion that Schwab "might" have been injured based on the "cash flow" it received on its instruments is fully consistent with the Court's recognition that a plaintiff may recover on "reduced payments on LIBOR-based instruments," *LIBOR VII*, 299 F. Supp. 3d at 593—but only if the plaintiff was injured on a net basis, *id.* at 591.  The Second Circuit's ruling in *Schwab* did not consider, much less reject, the Court's instruction that a plaintiff can recover only on its net loss.

[12] The "Schwab Money Funds" are Schwab Money Market Fund, Schwab Value Advantage Money Fund, Schwab Retirement Advantage Money Fund, Schwab Investor Money Fund, Schwab Cash Reserves, Schwab Advisor Cash Reserves, and Schwab U.S. Dollar Liquid Assets Fund, *see* SAC ¶ 22, and the "Schwab Treasury Entities" are The Charles Schwab Corporation and Charles Schwab Bank, N.A., *see id.* ¶ 22.

those transactions were "immaterial."  Because the Schwab Bond Funds do not plead net loss, they cannot show "a causal connection between the material misrepresentation [or omission] and the loss."  *Dura Pharms, Inc. v. Broudo*, 544 U.S. 336, 342 (2005).

### 2.   Schwab Has Not Adequately Pleaded Section 20(a) Claims.

Schwab asserts section 20(a) control person claims against certain corporate affiliates[13] of entities that issued floating-rate notes allegedly purchased by Schwab and against panel bank Barclays Bank plc.  SAC ¶¶ 480-84.  The section 20(a) claims are based on alleged primary violations of section 10(b), and Schwab advances three similar theories of control person liability:  (1) the parent companies are liable for their panel bank subsidiaries' alleged false LIBOR submissions to the BBA, *id.* ¶ 196; (2) the parent companies are liable for their panel bank subsidiaries' alleged failure to disclose that LIBOR was suppressed in the prospectuses or other offering materials for the floating-rate notes issued by the panel banks, *id.* ¶ 197; and (3) Barclays Bank plc is liable for non-defendant Barclays Capital Inc.'s ("BCI") failure to disclose that LIBOR was suppressed "in soliciting and selling floating-rate notes to Schwab," *id.* ¶ 198.[14]

---

[13] Specifically, Schwab asserts claims against parent companies Bank of America Corp., Citigroup Inc., Credit Suisse Group AG, HSBC Holdings plc, JPMorgan Chase & Co., Lloyds Banking Group plc, and The Royal Bank of Scotland Group plc.

[14] Schwab's section 20(a) claim against Barclays Bank should be dismissed for the independent reason that Schwab has not alleged a primary violation against non-defendant BCI under section 10(b).  Schwab's section 10(b) claims are based upon (i) the panel banks' allegedly false LIBOR submission to the BBA and (ii) alleged omissions made by the panel banks and parent companies in issuing floating rate notes purchased by Schwab.  SAC ¶¶ 183-87.  But BCI was not a panel bank, *see id.* ¶¶ 33-34, and thus did not make or have any authority over Barclay Bank's LIBOR submissions, *see Janus Capital Grp. v. First Derivatives Traders*, 131 S. Ct. 2296, 2302 (2011) ("For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."), and Schwab has not alleged that it purchased any floating rate notes issued by BCI, *see* SAC ¶¶ 161, 163, 165, 167, 169-70, 172, 173.  Indeed, while Schwab conclusorily alleges that BCI, in "soliciting and selling floating-rate notes," somehow failed to disclose that "LIBOR was suppressed," *id.* ¶¶ 190-98, Schwab has not identified *any* specific misstatement or omission by BCI that could give rise to a claim under section 10(b), let alone identified when or where the alleged misstatement was made, by whom, and with regard to what security.  *See, e.g.*, *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (under Rule 9(b), a plaintiff must, among other things, "identify the speaker," and "state where and when the statements were made").  Similarly, Schwab's section 20(a) claim fails against HSBC Holdings plc for the independent reason that Schwab does not allege that it purchased floating rate notes issued by its panel bank subsidiary, HSBC Bank plc.

Schwab's failure to adequately plead loss causation and state a section 10(b) claim also requires dismissal of its section 20(a) claims. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) (dismissing control person claims for failure to allege a primary violation). But even if Schwab's allegations were sufficient to state a primary violation of section 10(b) (and they are not), Schwab still fails to plausibly allege control person claims under section 20(a). To state a claim under section 20(a), Schwab must allege "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *Id.*; *see also* 15 U.S.C. § 78t(a).

Schwab has not plausibly alleged culpable participation on the part of any of the section 20(a) defendants. "[T]o withstand a motion to dismiss, a § 20(a) claim must allege, at a minimum, particularized facts of the controlling person's conscious misbehavior or recklessness."[15] *In re MBIA, Inc., Secs. Litig.*, 700 F. Supp. 2d 566, 598 (S.D.N.Y. 2010). This requires that the plaintiff plead "facts demonstrating that the controlling person knew or should have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct." *In re Cannavest Corp. Sec. Litig.*, No. 14 Civ. 2900 (PGG), 2018 WL 1633847, at *20 (S.D.N.Y. Mar. 31, 2018). Schwab has come nowhere close to meeting its

---

*See* SAC App'x A; ¶¶ 62, 63, 117. Although Schwab claims to have purchased floating rate notes from nonparty HSBC Finance Corp., *see* SAC ¶ 66, that entity was not a panel bank, *id.* ¶ 117.

[15] Although some courts have suggested that a plaintiff need not plead culpable participation, "this Court has consistently sided with most judges in the District and found that a plaintiff must plead culpable participation with scienter." *In re ForceField Energy Inc. Secs. Litig.*, No. 15-cv-3020 (NRB), 2017 WL 1319802, at *16 (S.D.N.Y. Mar. 29, 2017) (Buchwald, J.); *see also In re ShengdaTech, Inc. Sec. Litig.*, No. 11-cv-1918 (LGS), 2014 WL 3928606, at *10 (S.D.N.Y. Aug. 12, 2014) (Schofield, J.) ("Most courts in this district have held that, as an element of control person liability under § 20(a), culpable participation is a scienter requirement for which a plaintiff must allege some level of culpable participation at least approximating recklessness in the section 10(b) context in order to survive a motion to dismiss."); *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 437-39 (S.D.N.Y. 2014) (Ramos, J.) (dismissing Section 20(a) claims for failure to plead culpable participation with particularity).

burden.  Schwab's sole allegation of culpable participation by the section 20(a) defendants is the wholly conclusory allegation that they were "culpable participant[s]."  SAC ¶ 482.  Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Schwab makes no non-conclusory allegations directly addressing any of the section 20(a) defendants' supposed participation or involvement in the alleged fraud,[16] and the Court has repeatedly rejected attempts to assert claims against affiliates absent explicit allegations concerning their role in the alleged suppression.  *See, e.g.*, *LIBOR VI*, 2016 WL 7378980, at *10 (stating that plaintiffs "have not pleaded facts or submitted supporting material that suggests that any panel bank's United States-based affiliate played a role in that bank's alleged persistent suppression of LIBOR").  Schwab's failure to plausibly allege culpable participation against the section 20(a) defendants requires dismissal of the section 20(a) claims.

3.   Schwab Cannot Assert Section 10(b) Claims Based On Instruments That Are Not "Securities."

Even if Schwab adequately pleaded loss causation (it has not), its section 10(b) claims must be limited to instruments that fall within the Exchange Act's definition of a "security."  *See* 15 U.S.C. § 78c(a)(10).  Although the SAC includes an appendix listing the transactions as to which Schwab asserts Exchange Act claims (Appendix A), the appendix fails to provide necessary details to determine whether the instruments are "securities," and, in fact, suggests that some of the instruments are not.  For example, the appendix lists several "time certificates" that

---

[16] The only relevant allegation that Schwab makes against any of the section 20(a) defendants is that Barclays Bank plc allegedly "collaborated" with BCI.  SAC ¶ 198.  But it is black letter law that there is no cause of action for conspiracy to violate section 10(b) or Rule 10b–5.  *See supra*, note 9.  Further, as noted *supra*, Schwab does not adequately allege any primary section 10(b) claims against non-defendant BCI.  And even if it did, Schwab's bare allegation that Barclays Bank plc "collaborated" with BCI—without any description of the nature of the supposed collaboration—would be insufficient to allege with particularity that Barclays Bank plc was aware of any alleged misrepresentation or omission made by BCI in connection with a sale of a security.

appear to be certificates of deposit.  *See, e.g.*, SAC App'x A at 90 (transactions FL944-946); *see also* SAC ¶¶ 134, 154 (alleging that various Schwab entities transacted in certificates of deposit, including "certificates of deposit issued by . . . some of the Defendant banks").  If so, these transactions do not involve securities within the ambit of the Exchange Act, and Schwab's Exchange Act claims related to these instruments should be dismissed.[17]  *See Marine Bank v. Weaver*, 455 U.S. 551, 559-60 (1982) (holding that a certificate of deposit is "not a security" because it is "unnecessary to subject issuers of bank certificates of deposit to liability under the antifraud provisions of the federal securities laws since the holders of bank certificates of deposit are abundantly protected under the federal banking laws"); *see also Wolf v. Banco Nacional de Mexico, S.A.*, 739 F.2d 1458, 1463 (9th Cir. 1984) (where a "bank is sufficiently well regulated that there is virtually no risk that insolvency will prevent it from repaying the holder of one of its certificates of deposit in full, the certificate is not a security for purposes of the federal securities laws").  Similarly, Schwab's Exchange Act claims based on instruments that were insured by the FDIC should be dismissed.  Although simply labeled in the appendix as "bank notes," at least a handful of the instruments on which Schwab asserts Exchange Act claims were FDIC-insured floating-rate notes.  *See, e.g.*, SAC App'x A at 3 (transactions FLA20-22), 17 (transactions FL167-68), 38 (transactions FL373-74), 59 (transactions FL578-80).  Like the certificates of deposit in *Weaver*, these FDIC-insured notes were already subject to regulation such that their holders were "abundantly protected under the federal banking laws."  *Weaver*, 455 U.S. at 559-60.  Thus, these instruments are not "securities" within the ambit of the Exchange Act.  Accordingly, to the extent Schwab's section 10(b) claims are based on instruments that are not

---

[17] Nor do Schwab's transactions in floating-rate notes with maturities of less than nine months.  *See* 15 U.S.C. § 78c(a)(10) (excluding from the definition of a "security" any note "which has a maturity at the time of issuance of not exceeding nine months").

12

"securities," including, but not limited to, certificates of deposit and FDIC-insured bank notes, Schwab's claims based on such transactions should be dismissed.

**B.      Schwab's Unjust Enrichment Claims Should Be Limited To Floating-Rate Notes Issued By Defendants.**

Schwab now asserts unjust enrichment claims against two categories of panel banks and parent companies: (1) those that issued <u>fixed-rate notes</u> purchased by Schwab; and (2) those that issued <u>floating-rate notes</u> purchased by Schwab.  To plead its claims under California law,[18] Schwab must plausibly allege "receipt of a benefit and unjust enrichment of the benefit at the expense of another."  *Lyles v. Sangadeo-Patel*, 225 Cal. App. 4th 759, 769 (2014).  Schwab has not met its burden of doing so under either theory of unjust enrichment.[19]

**1.      Schwab's Unjust Enrichment Claims Based on Fixed-Rate Instruments Should Be Dismissed.**

Schwab's fixed-rate unjust enrichment claims are simply a repackaging of the fixed-rate common law fraud and Exchange Act claims rejected by the Court and the Second Circuit.  *See Schwab*, F.3d at 91-92, 96.  Schwab bases its fixed-rate unjust enrichment claims on the notion that it "determined whether to purchase those fixed-rate notes based on . . . the difference, or 'spread,' between the offered rates and LIBOR," and that, as a result of alleged LIBOR suppression, Schwab overpaid on its fixed-rate note instruments.  SAC ¶ 208.  This theory was insufficient to state a fraud or Exchange Act claim, and it fares even worse on an unjust

---

[18] Consistent with the parties' approach in connection with the prior motion to dismiss, Defendants address Schwab's state law claims under the substantive law of California for purposes of the currently pending motions to dismiss only.  *See* Joint Conflicts Spreadsheet (MDL ECF 1097-2) at 17.  Defendants expressly reserve the right to assert at a later time, including at later stages of these proceedings with respect to any claims surviving the current motion to dismiss, that some or all of Schwab's claims are governed by laws other than California law.

[19] Under California law, there is no independent cause of action for unjust enrichment.  *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  Rather, unjust enrichment is a "theory underlying a claim," and a court considering unjust enrichment allegations may "construe the cause of action as a quasi-contract claim seeking restitution."  *Id.*

enrichment theory.  Not only is Schwab unable to show that it was *harmed* by the alleged LIBOR suppression on its fixed-rate notes—for "[w]hen Schwab purchased fixed-rate instruments, it received exactly what it expected," *Schwab*, 883 F.3d at 96—but it also cannot show that the relevant Defendants *benefited*.

In California, a plaintiff asserting unjust enrichment must "establish a causal connection between the wrongful conduct and the profits to be disgorged."  *Uzyel v. Kadisha*, 188 Cal. App. 4th 866, 892 (2010).  Simply put, an unjust enrichment claim requires that the defendant be unjustly enriched.  *See First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1662 (1992) ("A person is enriched if the person receives a benefit at another's expense.").  Because "fixed-rate instruments . . . [do] not reference or relate to Defendants' LIBOR submissions in any way," *Schwab*, 883 F.3d at 96, Defendants *cannot* be enriched on fixed-rate instruments by allegedly suppressing their LIBOR submissions.  This undisputed fact dooms Schwab's claims related to fixed-rate instruments (which constitute the vast majority of its alleged transactions).

In fact, Schwab does not even attempt to allege that Defendants benefited on fixed-rate notes by allegedly suppressing LIBOR.[20]  Instead, Schwab alleges only that Defendants "could offer less interest" on the *floating-rate* notes that they issued.  SAC ¶ 208.  Even assuming that were true, that says nothing about whether (or how) Defendants were enriched on *fixed-rate notes* as a result of alleged LIBOR suppression.  Nor does Schwab explain why it would be unjust for Defendants to retain any supposed benefits earned on fixed-rate transactions when Schwab received "exactly what it expected."  *Schwab*, 883 F.3d at 96; *see also City of Los*

---

[20] That is unsurprising, given that Schwab's fixed-rate claims are based on Schwab's independent decision to use LIBOR as a reference point, not Defendants' conduct or the flow of funds to Defendants on fixed-rate notes.  *See, e.g.*, Br. for Plaintiffs-Appellants, No. 16-1189 (2d Cir. Oct. 14, 2016) at 43-44 ("Schwab asserts the straightforward claim that *it individually relied* on defendants' materially false LIBOR submissions, and the resulting false LIBOR rate, when it made its own decisions about buying fixed-rate instruments." (emphasis added)).

*Angeles v. Wells Fargo & Co.*, 22 F. Supp. 3d 1047, 1061 (C.D. Cal. 2014) ("The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is *unjust* for the person to retain it.").

Unable to defend its fixed-rate claims on the merits, Schwab suggests that Defendants have somehow conceded that Schwab may assert unjust enrichment claims based on fixed-rate notes. *See* SAC ¶ 208 n.207 ("Defendants have never—in their two prior motions to dismiss Schwab's unjust enrichment claims—asserted any distinction between floating-rate notes and fixed-rate notes with respect to these claims."). However, Schwab fails to mention that its prior complaint did not state that Schwab sought to recover for fixed-rate transactions under an unjust enrichment theory.[21] And Defendants have consistently taken the position that Schwab cannot assert any claims—regardless of form—for its transactions in fixed-rate instruments.[22]

Because Schwab does not and cannot allege that Defendants unjustly received any benefit in connection with their issuance of fixed-rate instruments by allegedly suppressing LIBOR, Schwab's unjust enrichment claims based on fixed-rate instruments should be dismissed.

> 2. Schwab's Unjust Enrichment Claims Based on Floating-Rate Instruments Should Be Limited to Notes Issued By Defendants.

Schwab also asserts an unjust enrichment claim based on floating-rate instruments. SAC ¶¶ 206-07, 514-21. But unlike its other claims—including its unjust enrichment claim based on fixed-rate notes, *see id.* ¶ 209—Schwab does not specify that the floating-rate instruments had to have been issued by Defendants. Consequently, as drafted, Schwab's unjust enrichment claim seeks to recover from Defendants based on notes issued by *any* entity, regardless of Defendants'

---

[21] *See* AC ¶¶ 358-65.

[22] *See, e.g.*, Mem. of Law in Supp. of Defs.' Mot. to Dismiss the Fraud and Related Claims in the Direct Actions (MDL ECF 756) at 25, 40; Defs.' Reply Mem. of Law in Further Support of their Mot. to Dismiss the Fraud and Related Claims in the Direct Actions (MDL ECF 926) at 10.

role (or lack thereof) in the transaction.[23]  To the extent Schwab asserts claims against a Defendant based on floating rate notes it purchased that were <u>not</u> issued by that Defendant, those claims should be dismissed.[24]

In *LIBOR IV*, the Court made clear that an unjust enrichment claim may be asserted only against a counterparty.  2015 WL 6243526, at *75 ("We adhere to our conclusion in *LIBOR III* that contract and unjust enrichment claims may only be alleged against a counterparty."); *see also id.* at *84 (explaining that a bond is a "contract between plaintiff and plaintiff's obligor, typically a corporate issuer," and holding that an "obligor is liable for unjust enrichment if the obligor itself or an affiliated panel bank manipulated LIBOR").[25]  This makes sense because Defendants were not enriched (much less unjustly enriched) on transactions in which they played no role. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.* (*LIBOR III*), 27 F. Supp. 3d 447, 479 (S.D.N.Y. 2014) ("[I]t makes little sense to conclude that a particular defendant bank somehow improperly obtained profits intended for a certain plaintiff when those two parties never transacted or otherwise maintained a business relationship at all.").  Schwab's unjust enrichment claims must therefore be limited to floating-rate notes issued by Defendants.

---

[23] For example, Schwab's "Floating-Rate Category #7" encompasses transactions in which third parties issued notes that Schwab purchased from non-defendant subsidiaries or affiliates, or third parties. *See, e.g.*, SAC ¶ 173 (describing note issued by Abbey National Treasury Services plc and sold by Lehman Brothers, Inc.).

[24] This includes such claims to the extent they are based on investments in asset-backed securities and related products. *See* Joint Mem. Of Law In Supp. Of Defs.' Opp. to Mots. for Leave to Amend (dated July 13, 2018) at Part III.

[25] Schwab appears to acknowledge as much. *See, e.g.*, SAC ¶ 180 n.202 (stating that *LIBOR IV* upheld unjust enrichment claims against a plaintiff's "*obligors/issuers*" (emphasis added)); ¶ 206 (alleging that LIBOR suppression allowed Defendants "to pay lower returns on floating-rate notes than they would have paid absent suppression"); ¶ 207 (alleging that "Defendants were unjustly enriched at Schwab's expense, as Schwab received lower returns on floating-rate instruments that it held or purchased during the Relevant Period than it would have received absent suppression"); ¶ 516 (alleging that "Defendants have knowingly received and retained wrongful benefits and funds from Plaintiffs").  Moreover, Schwab even acknowledges that its claims based on fixed-rate instruments are based on the alleged benefits to the *issuing* entities: "Because LIBOR was artificially suppressed, the *very banks that suppressed it could offer less interest in return for the use of Schwab's money*." *Id.* ¶ 208 (emphasis added).

#### C.      Schwab's Tortious Interference Claims Should Be Dismissed In Their Entirety.

Schwab's original and first amended complaint alleged a claim for interference with prospective economic advantage.[26]  The Court dismissed those claims in *LIBOR IV*.  2015 WL 6243526, at *83.  Schwab now asserts, for the first time,[27] a claim for tortious interference with *contract* against certain panel bank defendants (BTMU, Citi, HSBC, JPMorgan, and RBS), alleging that they were aware of their respective affiliates' floating-rate note issuances, and that their respective affiliates breached the implied covenant of good faith and fair dealing by assisting in the panel banks' alleged suppression.  SAC ¶¶ 210-12, 509-13.  These claims should be dismissed.

*First*, Schwab's tortious interference claim is time-barred.  In California, the statute of limitations on a tortious interference with contract claim is two years.  *Maritz Inc. v. Carlson Mktg. Grp., Inc.*, No. C 07-05585 JSW, 2009 WL 3561521, at *2 (N.D. Cal. Oct. 30, 2009) (citing Cal. Code Civ. P. § 339).  Schwab filed its first set of complaints in 2011, so no discovery rule could save the claim.  Nor can Schwab argue that its newly-asserted claim relates back to the first complaint filed in this action in 2013.  *Cf. LIBOR IV*, 2015 WL 6243526, at *159 (declining to "somehow 'relate back' to [Schwab's] 2011 complaints").  Federal Rule of Civil Procedure 15(c)(1)(B) permits an amendment to a complaint to relate back to the original pleading if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," but as the Court explained in *LIBOR IV*, tortious interference with contract claims rest on a unique factual predicate "in that a viable

---

[26] *See* Compl., *The Charles Schwab Corp., et al. v. Bank of Am. Corp., et al.*, No. 13-cv-7005-NRB (ECF 1-1) ¶¶ 344-48; AC ¶¶ 334-39.

[27] Schwab is thus wrong to suggest that the Court upheld its tortious interference claim in *LIBOR IV*.  SAC ¶ 180.

tortious interference claim alleges that a *panel bank* entity intended to disrupt a specific

contract." 2015 WL 6243526, at *148. This factual predicate—which is distinct from Schwab's

prior theory of tortious interference with *prospective* economic advantage—was never previously

asserted and therefore cannot relate back under Rule 15.

*Second*, Schwab's tortious interference claim fails on the merits. Under California law,

Schwab must allege "(1) a valid contract between [Schwab] and a third party; (2) defendant's

knowledge of the contract; (3) defendant's intentional acts designed to induce breach or

disruption of the contract; (4) actual breach or disruption; and (5) resulting damage."

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1133 (9th

Cir. 2015). In *LIBOR IV*, the Court permitted tortious interference with contract claims to

proceed where the plaintiff plausibly alleged that the defendant "(1) knew of a specific contract

and knew to a substantial certainty that its conduct would induce a breach, or (2) specifically

intended to induce a breach of a category of contracts." *LIBOR IV*, 2015 WL 6243526, at *82.

Schwab has not adequately pleaded the elements of a tortious interference claim. Simply

put, Schwab has not made *any* plausible allegations that the panel banks knew of their affiliates'

transactions with Schwab or that the panel banks sought to induce breach of the contracts.

Schwab makes only two conclusory allegations: (1) the panel banks were "aware" of their

affiliates' bond issuances, SAC ¶ 211; and (2) the panel banks knew "that interference or

disruption of Plaintiffs' relationships with issuers of LIBOR-based financial instruments were

certain or substantially certain," *id.* ¶ 513. Rather than plead actual facts describing the panel

banks' knowledge, Schwab relies entirely on the Court's statement in *LIBOR IV* that it was

"plausible that corporate affiliates are aware of each other's financing arrangements." *Id.* ¶ 180

n.203 (quoting *LIBOR IV*, 2015 WL 6243526, at *84). But the Court's observation that a

tortious interference claim may lie on the "*theory* that a defendant panel bank knew of an affiliate's specific bond issuance," *LIBOR IV*, 2015 WL 6243526, at *84 (emphasis added), does not relieve Schwab of its burden to plead that these panel banks knew of the specific issuances at issue.  Because Schwab has not alleged any facts suggesting that the panel banks were aware of their affiliates' transactions, or acted with the purpose of interfering with their affiliates' contracts (indeed, Schwab alleges that the purpose of the suppression was to project financial soundness), Schwab's tortious interference claims should be dismissed.

### D.    Schwab's Addition Of New Defendants And "Direct Sellers" Is Improper.

For the first time, Schwab now advances claims against Bank of Scotland plc, Credit Suisse AG ("CSAG"), Lloyds Bank plc, and The Royal Bank of Scotland plc ("RBS plc").  *See* SAC ¶¶ 48, 82, 104.  As Schwab itself states: "In its previous complaints in this action, filed in April 2013 and October 2014, Schwab named Lloyds Banking Group and HBOS as defendants, but did not name Lloyds Bank or Bank of Scotland."  *Id.* ¶ 84 n.91; *see also id.* ¶ 48 n.48 (same as to CSAG); ¶ 104 n.120 (same as to RBS plc).  Nothing in *Schwab* or this Court's order authorizes such amendments, and they should not be permitted for that reason.[28]

In any event, all claims against these new Defendants are time-barred, and thus the amendments are futile, because Schwab has been on notice of its claims against those entities for far more than three years.[29]  Further, "[c]lass-action tolling does not apply to [Schwab's] claims

---

[28] Similarly, Schwab should not be permitted to add allegations that it transacted directly with Defendants as to which it has never before alleged such transactions.  Schwab previously identified certain Defendants as its direct counterparties and others as indirect counterparties.  Adopting this framework, *Schwab* identified certain Defendants as "direct sellers" and others as "indirect sellers."  Schwab now belatedly seeks—presumably based on its own trading records available to it since before it filed its initial complaint—to convert certain "indirect sellers" into "direct sellers."  *See, e.g.*, SAC ¶ 161 (identifying Bank of America, N.A., Royal Bank of Canada, and RBS plc as having conducted "direct transactions" with Schwab).  These are "allegations that a plaintiff wishes had been better pleaded in the first instance," and should not be permitted.  Order dated Apr. 11, 2018 (MDL ECF 2490) at 2.

[29] The Exchange Act has a two-year limitations period.  *See* 28 U.S.C. § 1658(b).  Schwab's California common-law claims have three-year limitations periods.  *See* Cal. Civ. Proc. § 338.

because no bondholder class action was pending before plaintiffs filed their original complaints."

*LIBOR IV*, 2015 WL 6243526, at *177.[30]

Schwab justifies its late-breaking inclusion of those defendants on the basis of an

unspecified "mistake."  SAC ¶ 84 n.91 (citing Fed. R. Civ. P. 15(c)(1)).  In carefully crafted

footnotes, Schwab attempts to leave the impression that it did not learn that the new Defendants

were LIBOR panel banks until November 2014, when employee declarations said so.  *See id.* ¶

48 n.46 (CSAG), ¶ 84 n.91 (Lloyds), ¶ 104 n.112 (RBS plc).  But that is flatly untrue.  For

example, at the latest, Schwab (along with the rest of the world) was made aware that Lloyds

Bank plc and Bank of Scotland were LIBOR panel banks on July 28, 2014, when Lloyds entered

into publicly-filed settlements with the CFTC, DOJ, and U.K. Financial Conduct Authority that

expressly identified those entities as such.[31]  Schwab's October 2014 complaint relied upon and

repeatedly cited those settlement documents.  *See* AC ¶ 3(x) & n.6 (citing the CFTC, DOJ, and

FCA settlements); *id.* ¶¶ 202-13.  Indeed, Schwab's prior pleading *expressly alleged* that Lloyds

TSB Bank plc [Lloyds Bank plc's former name] was a "member[] of the BBA USD LIBOR

panel."  *Id.* ¶ 47.  "[I]n light of [Schwab's] obvious knowledge and the detailed nature of [its

2014] pleading," there is simply no mistake within the meaning of Rule 15.  *Schoolcraft v. City

of New York*, 81 F. Supp. 3d 295, 301 (S.D.N.Y. 2015) (citing *Cornwell v. Robinson*, 23 F.3d

---

[30] Even if class-action tolling were available, Bank of Scotland plc, CSAG, Lloyds Bank plc, and RBS plc were not included in any relevant class-action complaints.  *See LIBOR IV*, 2015 WL 6243526, at *166, *173-74, *177-78.

[31] *See* Lloyds CFTC Order at 2 n.2 (explaining that Lloyds TSB Bank plc (Lloyds Bank's former name), HBOS Treasury Services plc, and Bank of Scotland plc served as panel banks); Lloyds DOJ SOF at A-4 (same); Lloyds FCA Final Notice at 3.1, 4.26 ("Bank of Scotland plc was a LIBOR Panel Bank from September 2007 (when it took over submissions from the HBOS plc subsidiary HBOS Treasury Services plc) until it ceased to be a LIBOR Panel Bank on 6 February 2009, following the merger of the Firms on 19 January 2009.").  The CFTC and FCA settlements were posted on the respective authorities' webpages on July 28, 2014, and the DOJ settlements were publicly filed in the District of Connecticut.  Likewise, RBS plc's public settlements with government regulators in February 2013 made clear that it was on the LIBOR panel.  *See* RBS FSA Final Notice ¶ 37.

694, 705 (2d Cir. 1994)); *see also Abdell v. City of New York*, No. 05-CV-8453(KMK)(JCF),

2006 WL 2620927, at *5 (S.D.N.Y. Sept. 12, 2006).

Even if Schwab knew that these Defendants were LIBOR panel banks in November

2014, they still cannot rely on the relation back doctrine.  "Where a plaintiff fails to timely sue a

potentially liable party despite incriminating disclosures made within the statute of limitations,

the Court cannot find that a mistake was made for relation back purposes."  *Abdell*, 2006 WL

2620927, at *7.[32]  Schwab admits that it has known the identities of these Defendants since

November 2014, *see* SAC ¶¶ 48 n.48, 84 n.91, 104 n.120, and yet has done nothing in the more

than three years to indicate that it intended to assert claims against them.  Nor has Schwab

provided any explanation for that delay.  In contrast, two other plaintiffs—who like Schwab

purportedly learned that these Defendants were the panel banks after being confronted with the

same declarations that Schwab admits it was aware of in November 2014 in connection with

motions to dismiss their complaints—took immediate steps to assert claims against these

Defendants.  *See* Order dated Dec. 23, 2014 (MDL ECF 928) (approving request to substitute

previously unnamed panel banks, including CSAG, for the named holding companies).  Schwab

knowingly declined to sue these Defendants until June 2018; as a result, its claims against them

are time-barred.

---

[32] *See also Cruz v. City of New York*, No. 02-cv-8672 (LAP), 2007 WL 1223225, at *3 (S.D.N.Y. Apr. 25, 2007)
("This information was provided to Plaintiffs over a year before the statute of limitations was to expire on August 1,
2005. Plaintiffs' failure to amend the Complaint in a timely fashion renders the doctrine of 'relation back'
unavailable."); *Barrow v. Wethersfield Police Dep't.*, 66 F.3d 466, 470 (2d Cir. 1996) ("[T]he failure to identify
individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a
mistake"); *Strada v. City of New York*, No. 11-CV-5735 (MKB), 2014 WL 3490306, at *9 (E.D.N.Y. July 11, 2014)
(finding no mistake where plaintiff "knew of all of the proposed defendants over a month before the statute of
limitations expired"); *Hunter v. Deutsche Lufthansa AG*, No. 09 CV 3166 (NJD)(JMA), 2013 WL 752193, at *6
(E.D.N.Y. Feb. 27, 2013) (noting that if "potential liability was brought to plaintiff's attention within the limitations
period, his failure to timely amend his complaint cannot be considered a mistake").

## II.     DORAL'S CLAIMS SHOULD BE DISMISSED IN PART.

### A.     Doral's Fraud, Tortious Interference, Negligent Misrepresentation, And Related Claims Are Wholly Or Partially Time-Barred.

The FDIC's claims on behalf of Doral should be dismissed as untimely in whole or in part.  Specifically, Doral's claim for negligent misrepresentation is fully time-barred, while its claims for fraud, tortious interference, and related aiding and abetting and conspiracy claims accruing on or before February 26, 2009 are time-barred.

### 1.     The FDIC Extender Statute and the Applicable Statute of Limitations.

The FDIC alleges that it was appointed receiver for Doral on February 27, 2015. Accordingly, the FDIC Extender Statute, established by the Financial Institutions Reform, Recovery and Enforcement Act of 1989, potentially implicates the timeliness of Doral's claims. 12 U.S.C. § 1821(d)(14).  Under the Extender Statute, the statute of limitations for tort claims brought by the FDIC as receiver is "the longer of (I) the 3-year period beginning on the date the claim accrues; or (II) the period applicable under State law." *Id.* § 1821(d)(14)(A)(ii).  This statute of limitations period runs from the later of (1) the date on which the claim accrues, or (2) the date on which the FDIC was appointed receiver.  *Id.* § 1821(d)(14)(B).  As a general matter, these provisions "will operate literally to extend the time to file a claim that is not yet time-barred." *Fed. Dep. Ins. Corp. v. First Horizon Asset Sec., Inc.*, 821 F.3d 372, 378 n.4 (2d Cir. 2016); *see also LIBOR IV*, 2015 WL 6243526, at *166-70 (applying Extender Statute to the FDIC's claims on behalf of other failed banks).

Additionally, the Extender Statute contains a provision that revives a limited category of claims that otherwise would have expired before the FDIC's appointment as receiver.  Where the applicable state's statute of limitations for certain tort claims "has expired not more than 5 years before the appointment" of the FDIC as receiver, the FDIC may bring an action for such claim

"without regard to the expiration of the statute of limitation applicable under State law."  12

U.S.C § 1821(d)(14)(C)(i).  The tort claims that receive the benefit of the revival provision are

"claim[s] arising from fraud, intentional misconduct resulting in unjust enrichment, or intentional

misconduct resulting in substantial loss to the institution."  *Id.*  As the Court held in *LIBOR IV*,

"[t]his provision does not revive any expired claims for negligent misrepresentation, because

negligent misrepresentation is neither fraud nor intentional misconduct."  *LIBOR IV*, 2015 WL

6243526, at *121 (citing *Fed. Dep. Ins. Corp. v. Henderson*, 61 F.3d 421, 424–25 (5th Cir.

1995); *W Holding Co. v. AIG Ins. Co.*, No. 11 Civ. 2271(GAG), 2014 WL 3699383, at *4

(D.P.R. July 24, 2014)).

> 2.   <u>A One-Year Limitations Period Applies to Doral's Fraud, Tortious
> Interference, Negligent Misrepresentation, Implied Covenant, Unjust
> Enrichment, and Related Claims, and Doral Was on Inquiry Notice by
> May 29, 2008.</u>

To apply the Extender Statute's framework to Doral's claims, the Court must first

determine the applicable limitations period under state law.  Because Doral was a Puerto Rican

bank, New York's borrowing statute applies, and the "Court must apply the shorter limitation

period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where

the cause of action accrued."  *Robb Evans & Assocs. LLC v. Sun Am. Life Ins.*, No. 10 Civ. 5999

(GBD), 2012 WL 488257, at *2 (S.D.N.Y. Feb. 14, 2012).[33]  Puerto Rico's statute of limitations

for tort claims—including fraud, tortious interference, negligent misrepresentation, implied

covenant, and unjust enrichment[34]—is one year, which is shorter than New York's statute of

---

[33] When addressing state law claims in federal question cases, courts in the Second Circuit apply New York choice of law rules "where no significant federal policy, calling for the imposition of a federal conflicts rule, exists."  *See Klein v. ATP Flight Sch., LLP*, No. 14-CV-1522 (JFB)(GRB), 2014 WL 3013294, at *5 n.3 (S.D.N.Y. July 3, 2014).

[34] Under Puerto Rican law, breach of implied covenant and unjust enrichment claims are subject to the one-year statute of limitations applicable to tort claims where, as here, the damages arise from a violation of the "general duty not to injure another" and not from the breach of the contract itself.  *Ramos Lozada* v. *Orientalist Rattan Furniture Inc.*, No., No. RE-88-67, 1992 WL 755597, at *6, *12-14 (P.R. June 15, 1992); *see also Nunez* v. *Horn*, 336 F.

limitations. *See, e.g.*, *Flovac, Inc. v. Airvac, Inc.*, 817 F.3d 849, 856 (1st Cir. 2016). This one-year limitations period also applies to Doral's civil conspiracy and aiding and abetting claims because these claims are "[a]ctions to demand civil liability . . . for obligations arising from . . . fault." P.R. Laws Ann. tit. 31, § 5298; *Arturet-Velez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10, 12 (1st Cir. 2005).

Under Puerto Rican law, the statute of limitations for Doral's state law claims runs from the time "the claimant is on notice of her claim—that is, notice of the injury, plus notice of the person who caused it." *Arturet-Velez*, 429 F.3d at 14; *see also Flovac*, 814 F.3d at 856. A plaintiff is on notice of his injury when there are "some outward or physical signs through which the aggrieved party may become aware and realize that he has suffered an injurious aftereffect, which when known becomes a damage *even if at the time its full scope and extent cannot be weighed*." *Acuna v. HDR Architecture, Inc.*, No. CIV. 12-1340 JAG, 2013 WL 3288400, at *2 (D.P.R. June 28, 2013) (emphasis in original). And a plaintiff is on "notice of the person" who caused the injury even if he does not "know the exact name of the tortfeasor or the precise intracorporate relationships that determine the name of the appropriate defendant." *Id.* at *3. Moreover, notice under Puerto Rico's statute of limitations "does not require actual knowledge; it is enough that the would-be plaintiff had notice that would have led a reasonable person to

---

Supp. 447, 449 (D.P.R. 1970) (holding that the "damages arise out of the commission of a tort" where "the damage was caused through fault or negligence although it arose by reason of contract"). Here, Doral's alleged injuries, which are identical to the injuries alleged by the FDIC and previously considered by the Court in *LIBOR IV*, do not arise from the breach of the contract itself, but rather from the alleged manipulation of LIBOR, which was allegedly incorporated into Doral's contracts. *See LIBOR IV*, 2015 WL 6243526, at *71 ("We adhere to our prior rulings in sustaining most claims against *counterparties* for unjust enrichment and breach of the implied covenant of good faith and fair dealing (hereinafter the 'implied covenant'), and in dismissing claims for breaches of express contractual terms."); *see also id.* at *170 (stating that plaintiffs' unjust enrichment claims are subject to New York's statute of limitations applicable to torts). Even if Puerto Rico's one-year statute of limitations did not apply, under New York's borrowing statute, Doral's implied covenant claims would be subject to New York's six year statute of limitations and partially time-barred. *Id.* at *73, *165. Because the FDIC was appointed as receiver on February 27, 2015, any implied covenant claims accruing more than six years before that date (*i.e.*, before February 27, 2009) would have expired before the Extender Statute could have been applied to such claims.

investigate and so uncover the needed information." *Arturet-Velez*, 429 F.3d at 14; *see also In re LIBOR-Based Fin. Instruments Antitrust Litig. (LIBOR V)*, No. 11-md-2262 (NRB), 2015 WL 6696407, at *12 (S.D.N.Y. Nov. 3, 2015).

Applying Puerto Rico's accrual rule in *LIBOR V*, the Court held that the Government Development Bank of Puerto Rico ("GDB") was on inquiry notice of its claims by May 29, 2008.  2015 WL 6696407, at *12.[35]  The Court's ruling that GDB was on inquiry notice by May 29, 2008 applies equally to Doral.  Doral was undoubtedly a sophisticated financial institution. At the time of its closing, it held $5.9 billion in total assets.[36]  Moreover, Doral maintained both a "portfolio" of LIBOR-based loans and "derivative holdings" tied to LIBOR.  Doral Compl. ¶ 4. Doral therefore had "every reason to follow news about LIBOR," and was or should have been on notice of the allegations underlying its tort claims when they were published on the front page of the Wall Street Journal in May 2008.  *See LIBOR V*, 2015 WL 6696407, at *12; *see also* Order dated Feb. 2, 2017 (MDL ECF 1761) at 9 (holding that plaintiffs were on inquiry notice of their conspiracy claims as of May 29, 2008); *LIBOR I*, 935 F. Supp. 2d at 700-05.[37]  Indeed, Doral relies on a number of these public reports in its complaint.  *See, e.g.,* FDIC PSAC ¶ 200 (quoting April 16, 2008 Wall Street Journal article "questioning the reliability of bbaLIBOR");

---

[35] The Court "assume[d] without deciding" that Puerto Rico applies a "weak inquiry notice rule" under which "the limitations period does not commence until a reasonable inquiry would have discovered the fraud."  *Id.*  The Court did not decide whether Puerto Rico applies a stronger form of inquiry notice, as GDB's claims were time-barred even under a weak inquiry notice rule.

[36] FDIC, Press Release, "Banco Popular De Puerto Rico, Hato Rey, Puerto Rico, Assumes all of the Deposits of Doral Bank, San Juan, Puerto Rico" (Feb. 27, 2015), https://www.fdic.gov/news/news/press/2015/pr15024.html.

[37] The Second Circuit's ruling in *Schwab* as to California's statute of limitations, 883 F.3d at 97-98, has no bearing on when a bank such as Doral would have been on notice of LIBOR suppression under Puerto Rico's accrual rule because, as the Court has held, *Schwab*'s statute of limitations analysis was "dependent on [a] unique facet of California law."  Order dated Apr. 24, 2018 (MDL ECF 2496) at 3-4.  As the Court recently reiterated in its denial of Lender Plaintiffs' motion for reconsideration, "Puerto Rico is not California, and indeed, some jurisdictions do not appear to recognize a 'defendant reassurance' exception to the applicable discovery rule."  Order dated July 2, 2018 (MDL ECF 2607) at 3.  Like GDB, here Doral "offer[s] no argument that Puerto Rico law would likely (let alone clearly) recognize such an exception in a context like that of this case."  *Id.* at 3-4.

*id.* ¶ 220 (quoting May 29, 2008 Wall Street Journal article "questioning USDA bbaLIBOR submission"). As a result, Doral, like GDB, was on inquiry notice no later than May 29, 2008.

> 3. <u>Doral's Negligent Misrepresentation Claim Is Time-Barred Because the Statute of Limitations Expired Before FDIC Became Receiver.</u>

As the Court held in *LIBOR IV*, to assess whether Doral's negligent misrepresentation claim is timely, the Court asks "whether the claim was still timely on the [FDIC's] appointment date under state law." 2015 WL 6243526, at *166. It was not. Doral alleges misconduct occurring from August 2007 through October 2011. FDIC PSAC ¶ 485. Because no misconduct is alleged to have occurred after October 2011 and because Doral was already on inquiry notice as of May 29, 2008, *see supra*, Doral's negligent misrepresentation claim accrued by October 2011. Accordingly, Puerto Rico's one-year statute of limitations expired on Doral's negligent misrepresentation claim by October 2012 at the latest, which is well before the FDIC's appointment in 2015.[38] Moreover, the Extender Statute's revival provision cannot save Doral's expired negligent misrepresentation claim because it is not grounded in fraud or other alleged intentional misconduct. *LIBOR IV*, 2015 WL 6243526, at *121. Accordingly, Doral's negligent misrepresentation claim is fully time-barred.

> 4. <u>Doral's Intentional Tort Claims Are Partially Time-Barred.</u>

Insofar as Doral's tortious interference, aiding and abetting tortious interference, conspiracy to commit tortious interference, fraud, conspiracy to commit fraud, and aiding and abetting fraud claims are subject to the Extender Statute's five-year revival provision, such claims are revived to the extent that the limitations period expired within five years of February

---

[38] Doral's negligent misrepresentation claim also expired before the FDIC's appointment, even under the FDIC's incorrect view that Doral was not on inquiry notice until June 2012. FDIC PSAC ¶ 307 (alleging that Doral "could not have discovered the fraud and collusion described in this Complaint until June 2012, at the earliest"). Even under this incorrect inquiry notice date, the one-year statute of limitations would have expired by June 2013, which is well before the February 27, 2015 appointment date.

27, 2015, the date that the FDIC was appointed as receiver.  *See* 12 U.S.C. § 1821(d)(14)(C).

Therefore, Doral's intentional misconduct claims based on conduct on or before February 26,

2009 are time-barred because the one-year limitations period on those claims expired by

February 26, 2010, which is more than five years before the FDIC's alleged appointment.

> **B.   The Court Should Dismiss Doral's Fraud And Negligent Misrepresentation Claims Based On Allegedly False Statements About LIBOR, Doral's Negligent Misrepresentation Claims Based On Allegedly False LIBOR Submissions, And Doral's Fraud By Omission Claims Against Non-Counterparties.**

Doral's negligent misrepresentation and fraud (and related aiding and abetting and civil

conspiracy) claims should be limited consistent with the Court's prior rulings.[39]  In *LIBOR IV*,

the Court dismissed fraud and negligent misrepresentation claims based on allegedly false

statements about LIBOR.  *See* 2015 WL 6243526, at *53-54, *57, *59-61 (dismissing fraud

claims for, among other things, failure to plead misrepresentations or reliance with particularity);

*id.* at *69 (dismissing negligent misrepresentation claims for "redundancy with contract claims,

lack of a pleaded misrepresentation, lack of reliance, and absence of duty").  Doral's similar

claims against the panel banks and the BBA for alleged misrepresentations regarding the quality

of LIBOR, *see, e.g.*, FDIC PSAC ¶¶ 456-66, 490-500, should be dismissed for the same reasons.

In addition, Doral asserts negligent misrepresentation claims against the panel banks for

their allegedly false LIBOR submissions.  *Id.* ¶¶ 485-89.  Under New York law, however, a

claim for negligent misrepresentation requires "the existence of a special or privity-like

relationship imposing a duty on the defendant to impart correct information to the plaintiff."

*J.A.O. Acquisition Corp. v. Stavitsky*, 863 N.E.2d 585, 587 (N.Y. 2007).  Doral's negligent

---

[39] Defendants address claims brought by the FDIC on behalf of Doral under the substantive law of New York for purposes of the currently pending motions to dismiss only.  Defendants expressly reserve the right to assert at a later time, including at later stages of these proceedings with respect to any claims surviving the current motions to dismiss, that some or all of FDIC's claims as to Doral are governed by laws other than New York law.

misrepresentation claims, therefore, may only be asserted against those Defendants with which Doral had such a relationship, and may not be asserted against non-counterparty Defendants.

Similarly, Doral's fraud claims (and related aiding and abetting and conspiracy claims) should be further limited in accordance with the counterparty requirements articulated by the Court in *LIBOR IV*.  Doral asserts fraudulent misrepresentation claims against the panel banks and BBA, *see* FDIC PSAC ¶¶ 456-66, but does not allege to have transacted with all such Defendants.  Under the Court's prior rulings, Doral's fraud claims should be dismissed against non-counterparty Defendants.  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262 (NRB), 2016 WL 4773129, at *9-10 (S.D.N.Y. Sept. 12, 2016) ("Sept. 12, 2016 Order") (holding plaintiffs' fraud and negligent misrepresentation claims fail because plaintiffs did not allege that they "entered into swap agreements with [defendants] during the period of alleged suppression").

### C.    The Court Should Dismiss Doral's Donnelly Act Claim Because It Is Preempted By Federal Antitrust Law.

New York's antitrust statute, the Donnelly Act, provides that "contracts, or agreements for monopoly or in restraint of trade are illegal and void for those monopolies in the conduct of any business, trade or commerce or in the furnishing of any service *in this state*." *Worldhomecenter.com, Inc. v. Thermasol, Ltd.*, No. 05 Civ. 3298 (DRH)(ETB), 2006 WL 1896344, at *4 (E.D.N.Y. July 10, 2006) (quoting N.Y. Gen. Bus. Law § 340(1) (emphasis added)).  Courts have therefore uniformly recognized that, "[w]here the conduct complained of principally affects interstate commerce, with little or no impact on local or intrastate commerce, it is clear that Federal antitrust laws operate to preempt the field and oust state courts of jurisdiction." *Two Queens, Inc. v. Scoza*, 745 N.Y.S.2d 517, 519 (1st Dep't 2002).  Doral's Donnelly Act claim is duplicative of its Sherman Act claim, which principally concerns interstate

28

commerce, and does not allege any particular impact on local or intrastate commerce.  As a result, Doral's Donnelly Act claim is preempted by federal law and must be dismissed.

Doral is a Puerto Rican bank, FDIC PSAC ¶ 15(h), and does not allege that it suffered any injury in an intrastate transaction in New York.  Instead, to support a connection between Doral's antitrust claims and New York, Doral relies on allegations that Defendants "published" LIBOR to licensed vendors in New York; discussed LIBOR with the Federal Reserve Bank of New York; and "sought to project financial strength to investors in New York."  *Id.* ¶¶ 10, 11.  As an initial matter, the Court has already held that Defendants did not publish LIBOR or project financial strength through alleged LIBOR manipulation in New York because the alleged conspiracy took place in London.  *See, e.g.*, *LIBOR VI*, 2016 WL 7378980, at *9 ("Plaintiffs have failed to show that overt acts in furtherance of the reputation-driven antitrust conspiracy occurred in or were aimed at the United States.").  Moreover, these allegations—publication of LIBOR, alleged projections of "financial strength," and discussions with federal regulators—do not suggest a specific impact on New York commerce, as opposed to the interstate (or international) financial system as a whole.  *See id.*  Indeed, many of Doral's allegations emphasize that Defendants' alleged conduct principally affected *interstate* commerce.  *See, e.g.*, FDIC PSAC ¶ 285 (alleging that regulators found that "USD bbaLIBOR™ was a commodity in interstate commerce").  If LIBOR is the "world's most important number," as Doral alleges, *id.* ¶ 525, that is because of its predominantly interstate and international financial impact.

Doral also relies on allegations that certain Defendants "solicited business," "owned property," and "traded USD interest-rate derivatives" in New York.  *Id.* ¶ 10.  But courts have found similar allegations insufficient to sustain a Donnelly Act claim.  In *H-Quotient*, for example, the court held that an alleged conspiracy involving organizations with "principal places

of business in New York" and a "New York based company" "primarily affected interstate

commerce." *H-Quotient, Inc. v. Knight Trading Grp., Inc.*, No. 03 CIV. 5889 (DAB),

2005 WL 323750, at *5 (S.D.N.Y. Feb. 9, 2005).  There, the conspiracy was "directed at an

electronic, over-the-counter securities exchange . . . authorized to do business in New York."  *Id.*

Nevertheless, the court held that the Donnelly Act claim was preempted because defendants "did

not limit [their] business to any particular state."  *Id.*[40]  For the same reasons, Doral's Donnelly

Act claim is preempted by federal antitrust law.

### D.   Doral's Antitrust Claims Based On Transactions With Non-Panel Banks Should Be Dismissed Under The Efficient Enforcer Doctrine.

The FDIC's Sherman Act and Donnelly Act claims on behalf of Doral based on

transactions that Doral entered into with non-panel banks fail for the independent reason that the

FDIC is not an efficient enforcer as to those transactions.  The Court held in *LIBOR VI* that a

plaintiff (including the FDIC, specifically) cannot assert antitrust claims based on transactions

with persons that were not part of the alleged conspiracy because, as to those transactions, the

"independent decision" by the plaintiff and a non-defendant to set pricing terms for the

transaction "breaks the chain of causation between defendants' actions and a plaintiff's injury."

2016 WL 7378980, at *16.  Accordingly, the FDIC is not an efficient enforcer of the antitrust

laws with respect to transactions Doral entered into with non-defendant third parties.

---

[40] Doral's allegations that certain Defendants incorporated New York choice of law and choice of forum clauses into their instruments, FDIC PSAC ¶¶ 10(c), are also insufficient to show that Defendants' alleged conduct predominantly affected New York commerce rather than interstate commerce.  *See Conergy AG v. MEMC Electronic Materials, Inc.*, 651 F. Supp. 2d 51, 61 (S.D.N.Y. 2009).  In *Conergy*, the court held that, even though the defendants there were alleged to have entered into similar choice of law and choice of forum clauses, the plaintiff's Donnelly Act claim failed because "[t]he Complaint is devoid of any specific factual allegations demonstrating that the Agreement's restrictive provisions and defendants' alleged misconduct in coercing Conergy to enter the Agreement affected intrastate commerce."  *Id.*  The same is true here, where any impact of alleged LIBOR manipulation on Doral would have occurred in Puerto Rico, where Doral is located, not New York.

For the reasons discussed in the OTC Defendants' motion for partial judgment on the pleadings,[41] filed simultaneously herewith, this same conclusion holds for transactions that Doral entered into with panel bank affiliates and subsidiaries (both where a panel bank affiliate or subsidiary was Doral's counterparty and where the panel bank affiliate or subsidiary was not Doral's counterparty but paid LIBOR-based interest on the transaction).[42]   The Court has made clear that panel bank affiliates and subsidiaries were not plausibly participants in the alleged persistent suppression conspiracy.   *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262 (NRB), 2017 WL 532465, at *2 (S.D.N.Y. Feb. 2, 2017).   Accordingly, panel bank affiliates and subsidiaries are similarly situated to any non-defendant third party whose "independent decision" to incorporate LIBOR into a transaction "breaks the chain of causation." *LIBOR VI*, 2016 WL 7378980, at *16.   Moreover, for similar reasons, Doral is barred from bringing antitrust claims based on transactions where it purchased LIBOR-based instruments from a panel bank's affiliate or subsidiary on which a panel bank paid LIBOR-based interest (to the extent any such transaction exists) because it is barred by the indirect purchaser rule of *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736 (1977).

---

[41] *See* Mem. of Law In Supp. of Defs.' Mot. for Partial J. on the Pleadings (dated July 13, 2018).

[42] The FDIC's antitrust claims on behalf of other failed banks, and all other Direct Action Plaintiffs' antitrust claims, that are based on transactions with affiliates or subsidiaries of panel banks also fail for the same reasons.   However, in light of the current procedural posture in those actions—Plaintiffs' filing of motions for leave to amend, before Defendants' filing of answers—Defendants do not move to dismiss those claims at this time.   Subject to the Court's decisions on the present round of motions, Defendants intend to file letter-motions for judgment on the pleadings in other Direct Actions on the same grounds following the filing of any amended complaints and after Defendants' filing of answers in the Direct Actions.   *See Viacom Int'l Inc. v. Time Inc.*, 785 F. Supp. 371, 375 n.11 (S.D.N.Y. 1992) ("[T]he Rule 12(c) motion for judgment on the pleadings may be interposed after the answer is filed, as a vehicle for raising defenses enumerated in Rule 12(b) that have not been raised in the pleadings or by preliminary motion and that are expressly preserved by Rule 12(h).").

## E.     Doral's Antitrust Claims Based On A Theory Of Conspiracy To Boycott Should Be Dismissed For Lack Of Proximate Cause.

The Court has repeatedly rejected the FDIC's "boycott" theory of antitrust liability that Defendants allegedly colluded to exclude competing interest rate benchmarks from the "market" for interest rate benchmarks, and the same reasoning applies to the FDIC's nearly identical claims on behalf of Doral.  *See* Doral Compl. ¶¶ 353-54.  In *LIBOR IV*, the Court held that even if a conspiracy under this theory existed, it "was two steps removed from plaintiffs' injuries" and therefore failed for lack of proximate cause.  2015 WL 6243526, at *90.  And the Court subsequently rejected arguments by the FDIC and other plaintiffs that this "alternative theory was revived by the Second Circuit's decision in *Gelboim*."  Order dated Feb. 16, 2017 (MDL ECF 1774) at 2; *see also LIBOR VI*, 2016 WL 7378980, at *2 n.3.  Because Doral's antitrust claims based on this alternative boycott theory are no different than those previously rejected by the Court, they should be dismissed in accordance with the Court's prior rulings.[43]

## F.     Doral's Tortious Interference With Contract And Related Claims Should Be Dismissed In Part.

Doral's claims for tortious interference with contract and related aiding and abetting and conspiracy claims should be dismissed based on the Court's previous ruling in *LIBOR IV*.  Doral asserts its claim for tortious interference with contract against "[e]ach Panel Bank Defendant and the BBA."  FDIC PSAC ¶ 507.  But the Court previously dismissed tortious interference with contract claims based on certain types of transactions, allowing only the following two categories of claims to survive: (1) claims connected with trader-based manipulation as pleaded against

---

[43] With respect to the BBA, all of Doral's antitrust claims fail to state a claim because, as explained in Defendants' Joint Memorandum Of Law In Support Of Defendants' Motion To Dismiss For Lack Of Personal Jurisdiction And Venue And In Opposition To Plaintiffs' Motions For Leave To Amend On Personal Jurisdiction And Venue Grounds (dated July 13, 2018), the FDIC has not plausibly alleged that the BBA participated in any conspiracy to persistently suppress LIBOR.

panel bank affiliates of swap counterparties; and (2) claims against panel banks for interference

with adjustable-rate bonds issued by corporate affiliates, where the Defendant "knew of an

affiliate's specific bond issuance."  *LIBOR IV*, 2015 WL 6243526, at *84.  Doral's tortious

interference claims based on other categories of transactions, therefore, should be dismissed.[44]

### G.    Doral's Tortious Interference With Prospective Economic Advantage And Related Claims Should Be Dismissed For Failure To State A Claim.

Doral's claims for tortious interference with prospective economic advantage and related

aiding and abetting and conspiracy claims should be dismissed based on *LIBOR IV*.  There, the

Court held that "claims of tortious interference with business relations, prospective business

advantage, [and] prospective contracts" fail because "the gist of these torts is that a plaintiff loses

a customer through a defendant's wrongful conduct."  *Id.* at *83.  Because "[n]o plaintiff lost a

customer or contractor as a result of defendants' manipulation of LIBOR," Doral does not have a

claim for tortious interference for prospective economic advantage.  *Id.*; *accord Alpha

Biomedical & Diagnostic Corp. v. Philips Med. Sys. Netherland BV*, 828 F. Supp. 2d 425, 430

(D.P.R. 2011) (stating that "the Supreme Court of Puerto Rico has specified that if what is

affected is a 'mere expectancy or a profitable financial relationship,' an action for tortious

interference cannot lie").

### H.    Doral's Implied Covenant Claim Against Credit Suisse International Fails Under The Court's Prior Rulings.

Doral's claim against non-panel bank Credit Suisse International ("CSI") for breach of

the implied covenant should be dismissed based on the Court's previous rulings.  In *LIBOR IV*,

---

[44] As to the BBA, all of Doral's tortious interference claims fail to state a claim, including aiding and abetting tortious interference and civil conspiracy to commit tortious interference.  The Court previously dismissed the FDIC's tortious interference claims against the BBA because the FDIC failed to plausibly allege that the BBA was aware of plaintiffs' specific contracts or specifically intended to cause a breach of any such contracts.  *LIBOR IV*, 2015 WL 6243526, at *85.

the Court reiterated that "a non-panelist counterparty cannot be liable for breaching the implied covenant unless the counterparty itself participated in manipulating LIBOR." *LIBOR IV*, 2015 WL 6243526, at *73.  Here, Doral's allegations, which largely mirror those of the other FDIC Plaintiffs, offer nothing more than "conclusory allegations of participation of wrongdoing [that] are insufficient to survive a motion to dismiss." Sept. 12, 2016 Order, 2016 WL 4773129, at *3 (resolving a range of disputes regarding the adequacy of Plaintiffs' counterparty claims).  Doral's implied covenant claim against non-panel bank CSI should therefore be dismissed.

## CONCLUSION

For all the foregoing reasons, the Court should (1) dismiss Schwab's Exchange Act and tortious interference claims in their entirety, and limit Schwab's unjust enrichment claims to floating-rate notes issued by certain Defendants, and (2) dismiss Doral's Donnelly Act, negligent misrepresentation, tortious interference with prospective economic advantage, and "boycott" antitrust claims in their entirety, (3) dismiss Doral's fraud and tortious interference with contract claims accruing on or before February 26, 2009 as time-barred, (4) dismiss Doral's fraud by omission claims against non-counterparties, (5) dismiss Doral's implied covenant, fraud, and tortious interference with contract claims to the extent they exceed the scope permitted by *LIBOR IV*, and (6) limit Doral's antitrust claims to transactions with panel banks.

Dated:  New York, New York
        July 13, 2018

                                        Respectfully submitted,


/s/  Arthur J. Burke                        /s/  Paul C. Gluckow
Arthur J. Burke                             Mary Beth Forshaw
Paul S. Mishkin                             Paul C. Gluckow
Adam G. Mehes                               Alan C. Turner
Patrick W. Blakemore                        Sarah E. Phillips
Peter J. Davis                              Francis J. Acott
DAVIS POLK & WARDWELL LLP                   SIMPSON THACHER & BARTLETT LLP
450 Lexington Avenue                        425 Lexington Avenue
New York, New York 10017                    New York, New York 10017
Telephone: (212) 450-4000                   Telephone: (212) 455-2000
Fax: (212) 450-4800                         Fax: (212) 455-2502
arthur.burke@davispolk.com                  mforshaw@stblaw.com
paul.mishkin@davispolk.com                  pgluckow@stblaw.com
adam.mehes@davispolk.com                    aturner@stblaw.com
patrick.blakemore@davispolk.com             sarah.phillips@stblaw.com
peter.davis@davispolk.com                   francis.acott@stblaw.com

*Attorneys for Defendants Bank of America    Abram J. Ellis
Corporation and Bank of America, N.A.*       900 G Street NW
                                             Washington, D.C.  20001
                                             Telephone:  (202) 636-5500
                                             Fax:  (202) 636-5502
                                             aellis@stblaw.com

                                             *Attorneys for Defendants JPMorgan Chase &
                                             Co. and JPMorgan Chase Bank, N.A.*

/s/_Daryl A. Libow                    
Daryl A. Libow
Christopher M. Viapiano
Elizabeth A. Cassady
SULLIVAN & CROMWELL LLP
1700 New Avenue, N.W., Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7500
Fax: (202) 956-6973
libowd@sullcrom.com
viapianoc@sullcrom.com
cassadye@sullcrom.com

*Attorneys for Defendant The Bank of*
*Tokyo-Mitsubishi UFJ, Ltd. (n/k/a MUFG*
*Bank, Ltd.)*

/s/  Herbert S. Washer                
Herbert S. Washer
Elai Katz
Joel Kurtzberg
Jason Hall
Lauren Perlgut
Adam Mintz
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
Telephone: (212) 701-3000
hwasher@cahill.com
ekatz@cahill.com
jkurtzberg@cahill.com
jhall@cahill.com
lperlgut@cahill.com
amintz@cahill.com

*Attorneys for Defendants Credit Suisse AG,*
*Credit Suisse Group AG, and Credit Suisse*
*International*

/s/  David H. Braff                   
David H. Braff
Yvonne S. Quinn
Jeffrey T. Scott
Matthew J. Porpora
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
braffd@sullcrom.com
quinny@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com

/s/  Jonathan D. Schiller            
Jonathan D. Schiller
Leigh M. Nathanson
Amos Friedland
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-2300
jschiller@bsfllp.com
lnathanson@bsfllp.com
afriedland@bsfllp.com

Michael Brille
5301 Wisconsin Avenue NW
Washington, D.C. 20015
Telephone: (202) 237-2727
mbrille@bsfllp.com

*Attorneys for Defendant Barclays Bank PLC*

/s/ Andrew A. Ruffino
Andrew A. Ruffino
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 841-1000
aruffino@cov.com

Alan M. Wiseman
Thomas A. Isaacson
Andrew D. Lazerow
Jamie A. Heine
Benjamin L. Cavataro
850 Tenth Street, N.W.
Washington, D.C. 20001
Telephone: (202) 662-6000
awiseman@cov.com
tisaacson@cov.com
alazerow@cov.com
jheine@cov.com
bcavataro@cov.com

/s/ Lev Dassin
Lev Dassin
Jonathan S. Kolodner
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
ldassin@cgsh.com
jkolodner@cgsh.com

*Attorneys for Defendants Citibank, N.A. and Citigroup Inc.*

/s/ Moses Silverman
Moses Silverman
Aidan Synnott
Hallie S. Goldblatt
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Fax: (212) 757-3990
msilverman@paulweiss.com
asynnott@paulweiss.com
hgoldblatt@paulweiss.com

*Attorneys for Defendant Deutsche Bank AG*

/s/ David R. Gelfand
David R. Gelfand
Robert C. Hora
Mark D. Villaverde
MILBANK TWEED HADLEY & McCLOY
LLP
28 Liberty Street
New York, New York 10005
Telephone: (212) 530-5000
dgelfand@milbank.com
rhora@milbank.com
mvillaverde@milbank.com

*Attorneys for Defendant Coöperatieve Rabobank U.A. (f/k/a Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.)*

/s/_Gregory T. Casamento
Gregory T. Casamento
LOCKE LORD LLP
3 World Financial Center
New York, New York 10281
Telephone: (212) 812-8325
Fax: (212) 812-8385
gcasamento@lockelord.com

Roger B. Cowie
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: (214) 740-8614
Fax: (214) 740-8800
rcowie@lockelord.com

J. Matthew Goodin
Julia C. Webb
111 South Wacker Drive, Suite 4100
Chicago, Illinois 60606
Telephone: (312) 443-0700
jmgoodin@lockelord.com
jwebb@lockelord.com

*Attorneys for Defendants HSBC Holdings
plc and HSBC Bank plc*

/s/_Alan M. Unger
Alan M. Unger
Andrew W. Stern
Tom A. Paskowitz
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Fax: (212) 839-5599
aunger@sidley.com
astern@sidley.com
tpaskowitz@sidley.com

*Attorneys for Defendant The Norinchukin
Bank*

/s/_Marc J. Gottridge
Marc J. Gottridge
Lisa J. Fried
Benjamin A. Fleming
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Fax: (212) 918-3100
marc.gottridge@hoganlovells.com
lisa.fried@hoganlovells.com
benjamin.fleming@hoganlovells.com

*Attorneys for Defendants Lloyds Banking
Group plc, Lloyds Bank plc (f/k/a Lloyds TSB
Bank plc), HBOS plc and Bank of Scotland
plc*

/s/_Christopher M. Paparella
Christopher M. Paparella
Ethan E. Litwin
Marc A. Weinstein
Morgan J. Feder
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Fax: (212) 422-4726
Chris.Paparella@hugheshubbard.com
Ethan.Litwin@hugheshubbard.com
Marc.Weinstein@hugheshubbard.com
Morgan.Feder@hugheshubbard.com

*Attorneys for Defendants Portigon AG
(f/k/a WestLB AG) and Westdeutsche
ImmobilienBank AG*

/s/ Arthur W. Hahn
Arthur W. Hahn
Christian T. Kemnitz
Brian J. Poronsky
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661
Telephone: (312) 902-5200
arthur.hahn@kattenlaw.com
christian.kemnitz@kattenlaw.com
brian.poronsky@kattenlaw.com

*Attorneys for Defendant Royal Bank of Canada*


/s/ Steven Wolowitz
Steven Wolowitz
Henninger S. Bullock
Andrew J. Calica
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Fax: (212) 262-1910
swolowitz@mayerbrown.com
hbullock@mayerbrown.com
acalica@mayerbrown.com

*Attorneys for Defendant Société Générale*

/s/ Fraser L. Hunter, Jr.
Fraser L. Hunter, Jr.
David S. Lesser
Jamie S. Dycus
WILMER CUTLER PICKERING
HALE AND DORR LLP
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Fax: (212) 230-8888
fraser.hunter@wilmerhale.com
david.lesser@wilmerhale.com
jamie.dycus@wilmerhale.com

*Attorneys for Defendants The Royal Bank of Scotland Group plc and The Royal Bank of Scotland plc*


/s/ Mark A. Kirsch
Mark A. Kirsch
Eric J. Stock
Jefferson E. Bell
Matthew Greenfield
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
mkirsch@gibsondunn.com
estock@gibsondunn.com
jbell@gibsondunn.com
mgreenfield@gibsondunn.com

*Attorneys for Defendant UBS AG*

/s/_Richard D. Owens
Richard D. Owens
Jeff G. Hammel
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1200
richard.owens@lw.com
jeff.hammel@lw.com

*Attorneys for Defendants British Bankers'
Association, BBA Enterprises Ltd., and BBA
Trent Ltd. (f/k/a BBA LIBOR Ltd.)*