# DAVIS POLK & WARDWELL LLP

### 450 LEXINGTON AVENUE
### NEW YORK, NY 10017

212 450 4000
FAX 212 701 5800

NORTHERN CALIFORNIA
WASHINGTON, D.C.
SÃO PAULO
LONDON
PARIS
MADRID
TOKYO
BEIJING
HONG KONG

ARTHUR J. BURKE
212 450 4352

July 13, 2018

Re:     *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 11-md-2262 (NRB)

<u>Via ECF</u>

The Honorable Naomi Reice Buchwald
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Dear Judge Buchwald:

This letter is submitted on behalf of all Defendants in the above-referenced matter that join:

> i.     Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Venue and in Opposition to Plaintiffs' Motions for Leave to Amend on Personal Jurisdiction and Venue Grounds (the "Personal Jurisdiction Brief");
>
> ii.    Defendants' Joint Motion for Partial Dismissal of the Schwab and Doral Complaints for Failure to State a Claim (the "Merits Dismissal Brief");
>
> iii.   Defendants' Opposition to Plaintiffs' Motions for Leave to Amend (the "Merits Opposition Brief"); and/or
>
> iv.    Defendants' Motion for Partial Judgment on the Pleadings (the "Judgment on the Pleadings Brief").

Pursuant to Rule 2.E.1 of Your Honor's individual practices, this letter outlines the arguments that Defendants advance in each of those four briefs.[1]

---

[1] Each Defendant joins these arguments to the extent (and only to the extent) that such Defendant is currently named in an action that is the subject of a particular motion. By joining any particular motion, no Defendant consents to personal jurisdiction or venue in any action. Defendants also expressly reserve all jurisdictional defenses available to them, including jurisdictional objections to discovery.

## I.    Personal Jurisdiction

In the Personal Jurisdiction Brief, Defendants move to dismiss and oppose leave to amend the Challenged Claims (*see* Personal Jurisdiction Brief, Appendices 2-4) because Plaintiffs (*see* Personal Jurisdiction Brief nn.2-3) have failed to establish jurisdiction and venue over any of them.  In a series of rulings dating back to 2015, this Court has repeatedly held that, because of the foreign nature of the alleged misconduct, the Court cannot exercise specific jurisdiction over any claim premised solely on the alleged persistent suppression of LIBOR (the "Non-Counterparty Claims") and, instead, can exercise jurisdiction only with respect to certain claims arising from specific transactions and, even then, only in limited circumstances (the "Counterparty Claims").  The Second Circuit's decision, *Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68 (2d Cir. 2018) ("*Schwab*"), which largely affirmed those rulings and remanded only to allow the Schwab Plaintiffs an opportunity to address certain defects in their allegations, changes none of this.  Despite clear guidance from this Court and the Second Circuit, Plaintiffs have still failed to establish jurisdiction over the Challenged Claims.

As to Plaintiffs' Non-Counterparty Claims, the law of the case is that jurisdiction can be established only in the locations where Defendants' LIBOR submissions were determined or transmitted.  Relying on *Schwab* and supposedly "new" allegations, Plaintiffs argue, as they have in the past, that the jurisdictionally relevant acts are broader than that and include Defendants' trading activities in the United States.  Plaintiffs' argument again fails because the "new" allegations are essentially the same allegations this Court has considered and rejected in the past and nothing in *Schwab* can save them.  Nor are Plaintiffs able to allege that any Defendant determined or transmitted LIBOR in any of the relevant forums.  As to the challenged Counterparty Claims, Plaintiffs have failed to satisfy the strict requirements for jurisdiction set forth by this Court and the Second Circuit, including that the Defendant must have been the obligor as to the relevant transaction and the Plaintiffs must have sued in the location where the Defendant engaged in a "course of dealing" with the Plaintiff, where a bond was issued, or where designated by a forum selection clause.

Plaintiffs' attempts to establish jurisdiction through purported allegations of conspiracy and agency fail.  In both instances, Plaintiffs fail to allege the requisite direction and control required to impute the alleged in-forum contacts of an alleged co-conspirator or affiliate to a Defendant that is not otherwise amenable to jurisdiction in the forum.  Moreover, Plaintiffs' theory of conspiracy jurisdiction fails because Plaintiffs' conspiracy jurisdiction allegations are deficient under the relevant rules and statutes that confer jurisdiction, including because Plaintiffs fail to plausibly allege that the purported conspiracy had any presence in the relevant forums.  Nor can the Schwab Plaintiffs establish pendent jurisdiction, and Plaintiffs' other arguments for jurisdiction similarly fail.  As to the Challenged Claims, Plaintiffs' claims should be dismissed for lack of personal jurisdiction and venue and their motions to amend should be denied, as their proposed amendments addressing personal jurisdiction and venue are futile.

## II.    Dismissal of Schwab and Doral Complaints

In the Merits Dismissal Brief, Defendants move for partial dismissal of claims asserted by Schwab and by the FDIC on behalf of Doral Bank ("Doral").  Under the Court's prior rulings,

and those of the Second Circuit, several of Schwab's and Doral's claims should be dismissed for failure to state a claim.

 *First*, Schwab's Exchange Act claims should be dismissed in their entirety because Schwab still fails to plausibly allege the element of loss causation, despite being given a second chance by the Second Circuit.  Moreover, Schwab's amendments reveal that many of the instruments on which it asserts Exchange Act claims are not "securities" and, therefore, are not within the ambit of the Exchange Act.  And Schwab's section 20(a) control person claims should be dismissed both because there is no primary violation of the Exchange Act and because, in any event, Schwab fails to allege that the relevant Defendants were culpable participants in the purported primary violations.  *Second*, Schwab's unjust enrichment claims based on transactions in fixed-rate instruments should be dismissed because Schwab has not alleged that Defendants received a benefit on such transactions.  Similarly, Schwab's unjust enrichment claims based on floating-rate notes should be limited to notes issued by Defendants (and not other entities, including third parties), consistent with the Court's decision in *LIBOR IV.  See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262 (NRB), 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015).  *Third*, Schwab's newly added tortious interference with contract claims should be dismissed as time-barred and outside the scope of the Second Circuit's limited remand.  In any event, Schwab's tortious interference claims fail because Schwab has not plausibly alleged that the relevant Defendants were aware of Schwab's transactions with their affiliates or that these Defendants sought to interfere with their affiliates' contracts.  *Finally*, the Court should dismiss Schwab's claims against newly added Defendants Bank of Scotland plc, Credit Suisse AG, Lloyds Bank plc, and The Royal Bank of Scotland plc as untimely, and reject Schwab's improper attempts to convert existing "indirect seller" Defendants into "direct sellers."

 The FDIC's claims on behalf of Doral should also be dismissed in part.  *First*, because Doral was on inquiry notice of its claims by May 29, 2008, Doral's negligent misrepresentation claim is fully time-barred, and Doral's fraud, tortious interference, implied covenant, and unjust enrichment claims are partially time-barred.  *Second*, under this Court's prior orders holding that plaintiffs failed to adequately plead certain theories of fraud and negligent misrepresentation, Doral's fraud and negligent misrepresentation claims based on alleged false statements about LIBOR, as well as Doral's negligent misrepresentation claims based on allegedly false LIBOR submissions, should be dismissed.  *Third*, Doral's Donnelly Act claim is preempted by federal antitrust law and therefore should be dismissed.  *Fourth*, Doral's federal and state law antitrust claims based on transactions with non-panel banks should be dismissed under this Court's efficient enforcer ruling in *LIBOR VI.  See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262 (NRB), 2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016).  *Fifth*, consistent with the Court's prior rulings, Doral's antitrust claims based on a "boycott" theory should be dismissed for lack of proximate cause.  *Sixth*, Doral's claims for tortious interference with contract should be limited to claims against a panel bank in its capacity as an affiliate of a bond issuer.  *Seventh*, Doral's claims for tortious interference with prospective economic advantage should be dismissed because Doral has not alleged that it lost any customers as a result of the alleged suppression of LIBOR.  *Finally*, Doral's implied covenant claim against Credit Suisse International ("CSI") should be dismissed because Doral fails to allege that CSI participated in the alleged wrongdoing.

### III.  Opposition to Plaintiffs' Motions for Leave to Amend

In the Merits Opposition Brief, Defendants demonstrate that the motions for leave to amend should be denied on several, independent grounds.  The motions contravene the Court's clear instruction to propose only those amendments prompted by *Schwab*—namely, allegations relating to personal jurisdiction.  The proposed complaints also assert claims that have been previously dismissed against all or some Defendants, and are not revived by *Schwab*.  The Court has previously held that Plaintiffs should not replead such claims where, as here, they have not received the Court's leave to do so.

Plaintiffs further seek to assert claims based on suppression that allegedly occurred after May 2010—an untimely bid for reconsideration that also fails on futility grounds.  The Court previously concluded that the allegations on which Plaintiffs rely to seek to expand the conduct period—Société Générale's (SG's) LIBOR submissions—neither provide "any previously unknown facts of relevance" nor "alter the factual and legal bases underlying this Court's prior decisions."  (Sept. 26, 2017 Order, MDL ECF No. 2289.)  The Court also denied Plaintiffs' application to defer their deadline to move for reconsideration of unspecified prior rulings. Plaintiffs elected not to seek reconsideration and are now precluded from attempting to re-litigate those same rulings through their proposed amendments.  Moreover, SG's recent settlements with U.S. authorities offer no support for Plaintiffs' contentions that persistent suppression or an inter-bank conspiracy to suppress occurred after May 2010.  Freddie Mac's proposed claims for this expanded time period are fully time-barred in any event.  Further, to the extent Plaintiffs' proposed claims are premised on swap transactions, Plaintiffs fail to allege any such transactions during the expanded time period.

Plaintiffs' new allegations relating to asset-backed securities are futile because Plaintiffs asserting these claims lack standing to do so.  Freddie Mac belatedly attempts to add Barclays Capital Inc. ("BCI") as a defendant in its action, but the proposed fraud and tortious interference claims against BCI are time-barred.  Finally, Lender Plaintiffs' motion to amend should be denied as untimely and futile consistent with the Court's July 2, 2018 Order.  (MDL ECF No. 2607.)

### IV.  Partial Judgment on the Pleadings in the OTC Action

As explained in detail in the Judgment on the Pleadings Brief, OTC Plaintiffs do not have antitrust standing to bring antitrust claims based on transactions with, or on which interest is paid by, subsidiaries or affiliates of a U.S. Dollar LIBOR panel bank ("Panel Bank").

First, this Court has held that Panel Bank affiliates and subsidiaries were not plausibly participants in the alleged persistent suppression conspiracy.  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2017 WL 532465, at *2 (S.D.N.Y. Feb. 2, 2017).  Accordingly, Panel Bank affiliates and subsidiaries are similarly situated to any non-defendant third party whose "independent decision" to incorporate LIBOR into a transaction "breaks the chain of causation."  *LIBOR VI,* 2016 WL 7378980, at *16.  OTC Plaintiffs, therefore, are not efficient enforcers of transactions that they entered into with affiliates and subsidiaries of Panel Banks.

For similar reasons, OTC Plaintiffs are not efficient enforcers of instruments purchased from Panel Banks on which only Panel Bank affiliates and subsidiaries paid LIBOR-based interest.  This Court has repeatedly distinguished between entities that *issued* LIBOR-based securities and entities that were "merely involved in the sale of LIBOR-related securities."  *LIBOR IV*, 2015 WL 6243526, at *75.  This distinction holds in the efficient enforcer context because the OTC Complaint makes no allegations that, where a Panel Bank merely sold a LIBOR-based instrument but did not pay the LIBOR-based interest, the Panel Bank played any role in incorporating LIBOR as a term in the instrument.  Accordingly, the independent decision by the Panel Bank affiliate or subsidiary to incorporate LIBOR into the transaction "breaks the chain of causation." *LIBOR VI*, 2016 WL 7378980, at *16.

Moreover, OTC Plaintiffs are barred from bringing antitrust claims based on transactions where they purchased LIBOR-based instruments from a Panel Bank's affiliate or subsidiary on which a Panel Bank paid LIBOR-based interest because they are indirect purchasers under *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736 (1977).  Under *Illinois Brick*, only "direct purchasers" have standing to bring antitrust claims, and the narrow exceptions to the *Illinois Brick* rule do not apply.

Respectfully yours,

/s/ Arthur J. Burke
Arthur J. Burke

cc:  All parties via ECF

Davis Polk & Wardwell LLP