# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262<br>Master File No. 1:11-md-2262-NRB |
| THIS DOCUMENT RELATES TO: | **ORAL ARGUMENT REQUESTED** |

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORP. as Receiver for AMCORE BANK, N.A., *et al.*,<br><br>        Plaintiff,<br><br>   v.<br><br>BANK OF AMERICA CORP., *et al.*,<br><br>        Defendants. | No. 14-cv-1757 |
| FEDERAL DEPOSIT INSURANCE CORP. as Receiver for DORAL BANK,<br><br>        Plaintiff,<br><br>   v.<br><br>BANK OF AMERICA CORP., *et al.*,<br><br>        Defendants. | No. 18-cv-1540 |
| THE FEDERAL HOME LOAN MORTGAGE CORP.,<br><br>        Plaintiff,<br><br>   v.<br><br>BANK OF AMERICA CORP., *et al.*,<br><br>        Defendants. | No. 13-cv-3952 |
| PRINCIPAL FINANCIAL GROUP, INC., *et al.*,<br><br>        Plaintiffs,<br><br>   v.<br><br>BANK OF AMERICA CORP., *et al.*,<br><br>        Defendants. | No. 13-cv-6014 |

PRINCIPAL FUNDS, INC., *et al.*,

                                    Plaintiffs,

            v.                                                                    No. 13-cv-6013

BANK OF AMERICA CORP., *et al.*,

                                    Defendants.

NATIONAL CREDIT UNION
ADMINISTRATION BOARD,

                                    Plaintiff,

            v.                                                                    No. 13-cv-7394

Credit Suisse Group AG, *et al.*,

                                    Defendants.

THE BERKSHIRE BANK, GOVERNMENT
DEVELOPMENT BANK FOR PUERTO RICO,
and DIRECTORS FINANCIAL GROUP,

                                    Plaintiffs,

            v.                                                                    No. 12-cv-5723

BANK OF AMERICA CORP., *et al.*,

                                    Defendants.

**JOINT MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTIONS FOR LEAVE TO AMEND**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 3

I.     FFP PLAINTIFFS AND NCUA'S PROPOSED AMENDMENTS EXCEED THE SCOPE PERMITTED UNDER THE COURT'S APRIL 11, 2018 ORDER ................... 3

II.    MOVING PLAINTIFFS IMPROPERLY INCLUDE PREVIOUSLY DISMISSED CLAIMS IN THEIR PROPOSED AMENDED COMPLAINTS .............. 6

III.   FFP PLAINTIFFS' ATTEMPT TO ADD CLAIMS FOR THE NEW CONDUCT PERIOD FAILS ......................................................................................... 8

     A.     FFP Plaintiffs' Motions to Amend Are An Untimely Bid For Reconsideration ................................................................................................... 8

     B.     FFP Plaintiffs' Proposed Allegations For The New Conduct Period Are Futile .................................................................................................... 9

           1.     FFP Plaintiffs' Proposed Allegations Do Not Support Expansion Of The Period Of Alleged Suppression ..................................... 9

           2.     Freddie Mac's Proposed Claims For The New Conduct Period Are Time-Barred .............................................................................. 11

           3.     FFP Plaintiffs' Claims Arising From Swap Transactions Fail Under This Court's Prior Rulings ........................................... 13

IV.   FFP PLAINTIFFS AND NCUA'S PROPOSED AMENDMENTS REGARDING ASSET-BACKED SECURITIES ARE FUTILE ......................................... 14

V.    FREDDIE MAC'S NEWLY-ASSERTED FRAUD AND TORTIOUS INTERFERENCE CLAIMS AGAINST BCI ARE BOTH IMPROPER AND TIME-BARRED .................................................................................................... 16

VI.   LENDER PLAINTIFFS' MOTION FOR LEAVE TO AMEND SHOULD BE DENIED AS FUTILE ......................................................................................... 18

CONCLUSION ....................................................................................................................... 19

**TABLE OF AUTHORITIES**

<strong>Page(s)</strong>

**Cases**

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
  684 F.3d 36 (2d Cir. June 4, 2012) ....................................................................9

*Bowen v. U.S. Postal Serv.*,
  459 U.S. 212 (1983) ..........................................................................................15

*Charles Schwab Corp. v. Bank of America Corp.*,
  883 F.3d 68 (2d Cir. 2018).................................................................... *passim*

*Deutsche Bank Nat'l Trust Co.* v. *Quicken Loans Inc.*,
  810 F.3d 861 (2d Cir. 2015)...............................................................................15

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  April 11, 2018 Order, MDL ECF No. 2490.....................................................3, 6, 7

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  April 24, 2018 Order, MDL ECF No. 2496.....................................................8, 12

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  May 7, 2018 Order, MDL ECF No. 2507 .......................................................6, 7

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2016 WL 1301175 (S.D.N.Y. Mar. 31, 2016) ................................................5, 16

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2016 WL 1558504 (S.D.N.Y. April 15, 2016) ...............................................7, 11

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2016 WL 4773129 (S.D.N.Y. Sept. 12, 2016)................................................4, 13

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016) ............................................ *passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2016 WL 7621354 (S.D.N.Y. Dec. 19, 2016) ...........................................4, 13, 14

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2017 WL 532465 (S.D.N.Y. Feb. 2, 2017)................................................4, 12, 16

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2018 WL 3222518 (S.D.N.Y. July 2, 2018) ..............................................8, 12, 18

## TABLE OF AUTHORITIES
(continued)

Page(s)

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    27 F. Supp. 3d 447 (S.D.N.Y. 2014) ..................................................................11

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    299 F. Supp. 3d 430 (S.D.N.Y. Feb. 28, 2018) ................................................11

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    962 F. Supp. 2d 606 (S.D.N.Y. Aug. 23, 2013) ..................................................3

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    February 16, 2017 Order, MDL ECF No. 1774 ....................................................7

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    No. 11-MD-2262 (NRB), 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ......................*passim*

*P. Stolz Family P'ship L.P. v. Daum*,
    355 F.3d 92 (2d Cir. 2004) ....................................................................7

*In re Platinum & Palladium Commodities Litig.*,
    828 F. Supp. 2d 588 (S.D.N.Y. 2011) ............................................................10

*Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*,
    894 F. Supp. 2d 288 (S.D.N.Y. 2012) ..............................................................9

*Schoolcraft v. City of New York*,
    81 F. Supp. 3d 295 (S.D.N.Y. 2015) ..............................................................17

*Velez v. Feinstein*,
    87 A.D.2d 309 (1st Dep't 1989) ..................................................................15

*Walnut Place LLC v. Countrywide Home Loans, Inc.*,
    No. 650497/11, 2012 WL 1138863 (Sup. Ct. N.Y. Cty. Mar. 28, 2012), *aff'd*,
    96 A.D.3d 684 ....................................................................................15

*Wingspan Records, Inc. v. Simone*,
    2014 WL 2116191 (S.D.N.Y. May 16, 2014) ....................................................17

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971) ..............................................................................16

**Statutes**

15 U.S.C. § 15b ........................................................................................12, 16

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Other Authorities**

Deferred Prosecution Agreement, *United States of America against Société
Générale S.A.*, No. 18-cr-253 (E.D.N.Y. June 5, 2018), *available at*
https://www.justice.gov/criminal-fraud/file/1072451/download, A-41 .................................10

Fed. R. Civ. P. 12 .............................................................................................................................1

Fed. R. Civ. P. 15 .................................................................................................................3, 17, 18

Order, *In the Matter of Société Générale S.A.*, Commodity Futures Trading
Commission, CFTC No. 18-14 (June 4, 2018), *available at*
https://www.cftc.gov/sites/default/files/2018-
06/enfsocietegeneralesaorder060418.pdf..................................................................................10

Restatement (Second) of Trusts § 282(2) (1959).........................................................................15

Defendants[1] respectfully submit this joint memorandum of law in opposition to Moving Plaintiffs'[2] motions for leave to amend.[3]

## PRELIMINARY STATEMENT

Moving Plaintiffs' motions for leave to amend should be denied in their entirety for the reasons discussed below.

*First*, many of Moving Plaintiffs' proposed amendments are not prompted by the Second Circuit's decision in *Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68 (2d Cir. 2018) ("*Schwab*"), and, therefore, exceed the scope of amendments permitted by the Court.

---

[1] For ease of reference, this memorandum uses the term "Defendants" to describe collectively entities named in one or more of the proposed amended complaints in the above-captioned actions, including former defendants that have been dismissed.  Each Defendant joins this memorandum to the extent (and only to the extent) that such Defendant is named in a proposed amended complaint in the above-captioned actions.  By joining this memorandum, no Defendant consents to personal jurisdiction or venue in any action.  Defendants also expressly reserve all jurisdictional defenses available to them.  To the extent the Court grants Moving Plaintiffs' motions for leave to amend in whole or in part, Defendants reserve the right to move to dismiss any live claims pursuant to Federal Rule of Civil Procedure 12 at the appropriate time.

[2] The Moving Plaintiffs and the relevant motions are:  *Federal Deposit Insurance Corporation as Receiver for Amcore Bank, N.A., et al., v. Bank of America Corporation, et al.* ("FDIC-R"), No. 14-cv-01757 (ECF No. 251); *Federal Deposit Insurance Corporation as Receiver for Doral Bank v. Bank of America Corporation, et al.*, No. 18-cv-01540 (ECF No. 52); *Principal Financial Group, Inc., et al. v. Bank of America Corporation, et al.* ("Principal Financial"), No. 13-cv-06014  (ECF No. 254); *Principal Funds, Inc., et al. v. Bank of America Corporation, et al.* ("Principal Funds," and together with Principal Financial, the "Principal Plaintiffs"), No. 13-cv-06013 (ECF No. 246); *The Federal Home Loan Mortgage Corporation v. Bank of America Corporation, et al.* ("Freddie Mac"), No. 13-cv-03952 (ECF No. 293); *National Credit Union Administration Board v. Credit Suisse Group AG, et al.* ("NCUA"), No. 13-cv-07394 (ECF No. 244); and *The Berkshire Bank, Government Development Bank for Puerto Rico and Directors Financial Group v. Bank of America Corporation, et al.* ("Lender Plaintiffs"), No. 12-cv-5723 (ECF No. 327).  FDIC-R, Freddie Mac, and the Principal Plaintiffs are collectively referred to herein as the "FFP Plaintiffs."   With respect to the arguments challenging Lender Plaintiffs' motion for leave to amend, only Defendants Bank of America Corporation, Bank of America, N.A., JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., and UBS AG join this portion of the opposition.  Moreover, certain Plaintiffs also filed amended complaints in protective actions, which have since been stayed by this Court and, therefore, are not addressed here.  MDL ECF Nos. 2588, 2596.

[3] Certain Defendants also oppose motions for leave to amend on personal jurisdiction and venue grounds, as discussed in Defendants' Joint Memorandum of Law in Support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Venue and in Opposition to Plaintiffs' Motions for Leave to Amend on Personal Jurisdiction and Venue Grounds ("Defs. PJ Br.").  In addition, Defendants oppose FDIC-R's motion to amend for the reasons stated in Defendants' Joint Memorandum of Law in Support of Defendants' Motion for Partial Dismissal of the *Schwab* and *Doral* Complaints for Failure to State a Claim.  The applicable arguments set forth in those memoranda are fully incorporated by reference.

*Second*, in contravention of this Court's prior rulings, each Moving Plaintiff includes in its proposed amended complaint claims that have previously been dismissed by the Court, as to all or some Defendants.  Those claims were not potentially revived by *Schwab*.

*Third*, FFP Plaintiffs' attempt to assert claims for an expanded time period should be rejected, both as an untimely bid for reconsideration and on futility grounds.  The Court previously concluded that allegations concerning Société Générale's ("SG's") USD LIBOR submissions—which FFP Plaintiffs contend justify expansion of the period of alleged persistent suppression—neither provide "any previously unknown facts of relevance" nor "alter the factual and legal bases underlying this Court's prior decisions."  September 26, 2017 Order, MDL ECF No. 2289 ("September 26, 2017 Order").  The Court's reasoning applies with equal force to the proposed amendments.

*Fourth*, FFP Plaintiffs and NCUA's proposed amendments regarding asset-backed securities should be rejected as futile because FFP Plaintiffs and NCUA fail to adequately plead that they have standing to assert such claims.

*Fifth*, all of Freddie Mac's newly-proposed fraud and tortious interference claims against newly-added Defendant Barclays Capital Inc. ("BCI") are in no way prompted by *Schwab* and are in any event time-barred.

*Sixth*, Lender Plaintiffs' motion to amend should be denied in its entirety on both timeliness and futility grounds, pursuant to the Court's prior rulings.

**ARGUMENT**

**I.   FFP PLAINTIFFS AND NCUA'S PROPOSED AMENDMENTS EXCEED THE SCOPE PERMITTED UNDER THE COURT'S APRIL 11, 2018 ORDER**

When it permitted FFP Plaintiffs to seek leave to amend,[4] this Court made clear that "the scope of any amendment shall be limited to those prompted by the Second Circuit's decision in *Schwab*." April 11, 2018 Order, MDL ECF No. 2490 ("April 11, 2018 Order"), at 2.  The Court warned that "[t]he issuance of intervening authority offers no occasion to add or alter unrelated allegations that a plaintiff wishes had been better pleaded in the first instance." *Id.*  NCUA, which, like FFP Plaintiffs, had previously been subject to a motion to dismiss, does not and cannot offer any reason why it is exempt from this limitation.

As to FFP Plaintiffs and NCUA, *Schwab* "prompt[s]" proposed amendments, if any, relating only to personal jurisdiction.  *See* April 11, 2018 Order at 2.  Specifically, the Second Circuit directed the Schwab plaintiffs to amend to "clarify the status of [certain] grouped entities . . . and add allegations in support of its agency and conspiracy theories of jurisdiction." *Schwab*, 883 F.3d at 90.[5]  Thus, the only amendments that FFP Plaintiffs and NCUA may propose are those related to agency- or conspiracy-based theories of personal jurisdiction.

Ignoring this Court's direction, FFP Plaintiffs and NCUA seek leave to add allegations that either stray far from those limited personal jurisdiction-related issues, have nothing to do with *Schwab*, or both.  As just a few examples:

- FFP Plaintiffs attempt to resurrect their alternative (and previously dismissed) "boycott" theory of antitrust liability and conspiracy.  *See, e.g.*, Principal Funds

---

[4] Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend shall be granted where the moving party shows that "justice so requires."  Under this standard, courts have "discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 619 (S.D.N.Y. Aug. 23, 2013).

[5] The Second Circuit also permitted Schwab to "clarify its loss causation theory" for Exchange Act claims based upon floating-rate instruments, 883 F.3d at 95, but FFP Plaintiffs and NCUA do not assert Exchange Act claims.

Proposed Second Amended Complaint, MDL ECF No. 2554-1 ("Principal Funds PSAC"), ¶ 104; *see also id.* ¶ 287 ("Defendants agreed that Panel Bank Defendants would not incorporate interest-rate benchmarks other than USD Libor into any benchmark-based products.").

- FFP Plaintiffs improperly attempt to bolster their failed theories of fraudulent concealment and implausible allegations as to when the alleged misconduct reasonably could have been discovered.  *See, e.g.*, Principal Funds PSAC ¶¶ 240-43, 245-50; Freddie Mac Proposed Third Amended Complaint, MDL ECF No. 2567-1 ("Freddie Mac PTAC"), ¶¶ 402-19; FDIC-R Proposed Second Amended Complaint, MDL ECF No. 2568-1-2 ("FDIC-R PSAC"), ¶¶ 308-16.[6]

- FFP Plaintiffs and NCUA seek to add key factual details regarding their trades.[7]  *See, e.g.*, Principal Funds PSAC ¶ 224; *id.* at Ex. 24; Principal Financial Proposed Second

---

[6] For the reasons discussed *infra*, *Schwab* provides no occasion for FFP Plaintiffs to seek reconsideration of this Court's prior rulings on the timeliness of claims.

[7] For example, Principal Financial has waited nearly two years to attempt to address its failure to provide specifics about its own transactions.  In September 2016, this Court dismissed Principal Financial's claims against Credit Suisse International ("CSI") and The Royal Bank of Scotland plc ("RBS") for failing to allege swap agreements during the alleged suppression period, which Principal Financial had alleged to be August 2007 through May 2010 (*see* Principal Financial Am. Compl., No. 13-cv-06014 (ECF No. 57) ¶ 2).  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 4773129, at *9 (S.D.N.Y. Sept. 12, 2016).  Principal Financial sought reconsideration.  In December 2016, this Court ruled that even though its pleading was "inadequate in the most elementary way," Principal Financial would be allowed "one last opportunity" to plead its fraud and negligent misrepresentations claims against CSI and RBS "with the required specificity."  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 7621354, at *2-*3 (S.D.N.Y. Dec. 19, 2016) ("December 19, 2016 Order").  Principal Financial again tried to add a broad range of allegations.  The Court struck the proposed amendments as inconsistent with its December 19, 2016 Order, but provided Principal Financial one more opportunity to add specific allegations about its own transactions.  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2017 WL 532465 (S.D.N.Y. Feb. 2, 2017) ("February 2, 2017 Order").  On February 10, 2017, Principal Financial declined, declaring it would "*not* seek leave to amend."  MDL ECF No. 1772 (emphasis added).  But now—contrary to that representation, and without any explanation for waiting almost two years to do so—Principal Financial includes proposed amendments providing specific dates about its alleged swaps with CSI and RBS.  *See* Principal Financial PSAC Ex. 22.

Principal Funds also alleges for the first time claims based on Royal Bank of Canada's ("RBC") status as a counterparty to a swap.  *See* Principal Funds PSAC ¶¶ 337, 369.  Such an amendment is not only outside the scope permitted by the Court, it is also futile because Principal Funds fails to allege the existence of any ISDA or swap transaction with RBC, *see id.* ¶¶ 13, 222.

Amended Complaint, MDL ECF No. 2547-1 ("Principal Financial PSAC"), ¶ 226; *id.* at Ex. 24; Freddie Mac Memorandum in Support of Motion for Leave to File Proposed Third Amended Complaint, MDL ECF No. 2567 ("Freddie Mac Br."), at 5-7; NCUA Memorandum of Law in Support of Motion for Leave to Amend Complaint, MDL ECF No. 2544, at 3.  Among other things, Principal Plaintiffs allege for the first time swap transactions during the suppression period in an improper attempt to resurrect previously dismissed claims.  All of these transactions could have been pleaded years ago.

- Freddie Mac seeks to add allegations concerning "Dealer Scorecards" to buttress the assertion that Freddie Mac relied on certain Defendants' supposed misstatements and omissions.  *See* Freddie Mac PTAC ¶¶ 12-15.

- Freddie Mac attempts to belatedly name BCI as a defendant for the first time.[8]  *See id.* at ¶ 43.

- As discussed further *infra*, FFP Plaintiffs even attempt to expand the alleged suppression period from May 2010 to October 2011 (the "New Conduct Period").

---

Similarly improper are Freddie Mac's proposed allegations relating to a course of dealing between itself and certain Defendants.  In *LIBOR IV*, this Court dismissed Freddie Mac's claims for lack of personal jurisdiction.  Freddie Mac sought reconsideration.  That motion was denied in large part, but the Court granted reconsideration as to certain claims where Freddie Mac had plausibly alleged "a course of dealing" with Defendants in Virginia.  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 1301175, at *4 (S.D.N.Y. Mar. 31, 2016) ("March 31, 2016 Order").  Now, well over two years later, and again with no explanation, Freddie Mac has sought leave to amend to add similar allegations against *other* Defendants.  These proposed amendments are futile.  *See* Defs. PJ Br. at Part II.B.

Moreover, to the extent that FDIC-R's proposed amended complaint seeks to add fraud claims against the BBA relating to allegedly false LIBOR submissions, *see* FDIC-R PSAC ¶¶ 451-55 (purporting to assert such claims against the "Panel Bank Defendants and BBA"), such amendment is wholly outside the scope permitted by this Court.

[8] As explained in Section V, the addition of BCI is also untimely.  To the extent the Court permits Freddie Mac to amend its complaint to assert any claims against BCI, BCI reserves its right to file a motion to dismiss those claims on the merits.

*See, e.g.*, FDIC-R PSAC ¶ 1; Freddie Mac PTAC ¶ 7; Freddie Mac Br. at 24-25;

Principal Financial PSAC ¶ 2; Principal Funds PSAC ¶ 2.

These amendments, among others, simply "add or alter unrelated allegations that a plaintiff wishes had been better pleaded in the first instance."  April 11, 2018 Order at 2. Because FFP Plaintiffs have disregarded this Court's instruction to limit their proposed amendments to "those prompted by the Second Circuit's decision in *Schwab*," *id.*, their motions for leave to amend should be denied in their entirety.

## II. MOVING PLAINTIFFS IMPROPERLY INCLUDE PREVIOUSLY DISMISSED CLAIMS IN THEIR PROPOSED AMENDED COMPLAINTS

In establishing the briefing schedule for the current proposed amendments, the Court expressly aimed to resolve the existing "lack of clarity as to the . . . viable claims."  May 7, 2018 Order, MDL ECF No. 2507 ("May 7, 2018 Order"), at 1.  Each Moving Plaintiff's proposed amended complaint threatens instead to muddle the litigation landscape by re-asserting claims that the Court previously dismissed against all or some Defendants.  As just a few examples:

- FDIC-R once again asserts claims for tortious interference with prospective economic advantage, breach of contract, and negligent misrepresentation, even though this Court dismissed such claims in *LIBOR IV*.[9]

- As noted above, FFP Plaintiffs attempt to revive their alternative "boycott" theory of antitrust liability, *see, e.g.*, FDIC-R PSAC ¶ 549, Freddie Mac PTAC ¶ 65, Principal Funds PSAC ¶ 287, Principal Financial PSAC ¶ 288, notwithstanding this Court's prior Order denying their motion for reconsideration "of the Court's dismissal in *LIBOR IV* of the antitrust and civil conspiracy claims relating to this alternative

---

[9] *See In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR IV*"), No. 11-MD-2262 (NRB), 2015 WL 6243526, at *83 (S.D.N.Y. Oct. 20, 2015) (dismissing "claims of tortious interference with business relations, prospective business advantage, prospective contracts, and so forth"); *id*. at *75 (dismissing breach of contract claims); *id*. at *69, *168 (dismissing negligent misrepresentation claims).

theory."  February 16, 2017 Order, MDL ECF No. 1774 ("February 16, 2017 Order"), at 1-7.

- NCUA re-asserts a tortious interference with prospective economic advantage claim and seeks to expand its antitrust claim by adding allegations concerning the credit unions' transactions with non-Defendants, *see, e.g.*, NCUA Proposed Second Amended Complaint, MDL ECF No. 2545-1-16 ("NCUA PSAC"), ¶¶ 234, 236, but any such claims would be dismissed on efficient-enforcer grounds under *LIBOR VI*.[10]

Including these claims runs afoul of the Court's April 15, 2016 Order that "plaintiffs should not replead definitively dismissed claims where they have not received this Court's leave to amend those claims."  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 1558504, at *11 (S.D.N.Y. April 15, 2016) ("April 15, 2016 Order") (emphasis omitted).[11]  It also runs afoul of the Court's April 11, 2018 and May 7, 2018 Orders because they are not amendments "prompted by" *Schwab*.[12]  Accordingly, to the extent Moving Plaintiffs include previously dismissed claims, their motions to amend should be denied.

---

[10] *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, ("*LIBOR VI*"), 2016 WL 7378980, at *16 (S.D.N.Y. Dec. 20, 2016) ("[W]here a plaintiff's counterparty is reasonably ascertainable and is not a defendant bank, a plaintiff is not an efficient enforcer.").

[11] None of these proposed amended complaints states that the dismissed claims are repleaded for preservation of appeal.  In any event, such a justification would be futile; this Court has already ruled that repleading for preservation purposes is unnecessary and indeed impermissible.  *See* April 15, 2016 Order, 2016 WL 1558504, at *11 ("[W]hen a court has not granted leave to amend a claim, plaintiffs need not replead that claim in order to preserve it for appeal." (citing *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 96 (2d Cir. 2004))).

[12] Regardless of whether some of Plaintiffs' proposed amendments address the limited jurisdictional issues contemplated by *Schwab*, Plaintiffs cannot rely on personal jurisdiction amendments to revive claims dismissed on the merits.  For such claims, personal jurisdiction is moot because "personal jurisdiction cannot be premised on a dismissed theory."  February 16, 2017 Order at 6.

## III.   FFP PLAINTIFFS' ATTEMPT TO ADD CLAIMS FOR THE NEW CONDUCT PERIOD FAILS

### A.   FFP Plaintiffs' Motions to Amend Are An Untimely Bid For Reconsideration

On September 14, 2017, the Direct Action Plaintiffs ("DAPs")—including FFP Plaintiffs—asked this Court to defer their deadline to move for reconsideration of unspecified prior rulings until after the Second Circuit ruled in the *LIBOR IV* and *LIBOR VI* appeals.  As the purported justification for their request, DAPs cited the August 2017 indictment of two former SG employees for alleged USD LIBOR suppression conduct.  *See* Letter, MDL ECF No. 2263 ("September 14, 2017 Letter"); Indictment, MDL ECF No. 2263-1, Ex. A (the "Indictment").  In particular, DAPs contended that the Indictment "reveals previously unknown facts," including "active suppression of USD LIBOR from May 2010 to October 2011," and that the Indictment "support[s] reconsideration of certain aspects of this Court's prior rulings."  September 14, 2017 Letter at 1.  The Court denied DAPs' application.  *See* September 26, 2017 Order.  In doing so, the Court stated that the Indictment "does not contain any previously unknown facts of relevance" and "does [not] alter the factual and legal bases underlying this Court's prior decisions."  *Id.*

In the nine months since the September 26, 2017 Order, FFP Plaintiffs have never moved for reconsideration and they offer no explanation for failing to do so.  For this reason alone, FFP Plaintiffs' attempt to assert claims based on the New Conduct Period should be denied.  *See, e.g.*, April 24, 2018 Order, MDL ECF No. 2496 ("April 24, 2018 Order"), at 2 (Exchange-Based Plaintiffs' almost seven-week delay in filing motion for reconsideration after *Schwab* alone warranted denial); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2018 WL 3222518, at *1 (S.D.N.Y. July 2, 2018) ("July 2, 2018 Order") (sixteen-week delay in filing motion for reconsideration after *Schwab* warranted denial).

Moreover, FFP Plaintiffs should not be permitted to sidestep the September 26, 2017 Order through their proposed amendments—which are in no sense "prompted" by *Schwab*.[13] FFP Plaintiffs' gambit should be seen for what it is—a strategic attempt to circumvent the more onerous standard for reconsideration by re-litigating the Court's prior rulings through proposed amendments.[14]

**B.  FFP Plaintiffs' Proposed Allegations For The New Conduct Period Are Futile**

FFP Plaintiffs' attempt to allege claims for the New Conduct Period also fails on futility grounds.

**1.  FFP Plaintiffs' Proposed Allegations Do Not Support Expansion Of The Period Of Alleged Suppression**

FFP Plaintiffs' allegations are principally drawn from the Indictment,[15] even though the Court has already concluded that the Indictment "does not contain any previously unknown facts of relevance" that could support a new claim.  September 26, 2017 Order.  FFP Plaintiffs' attempted reliance on SG's recent settlements with certain U.S. authorities[16] concerning the same subject matter fares no better.  The September 26, 2017 Order applies with equal force to such allegations; FFP Plaintiffs do not even attempt to argue otherwise.  SG's settlements—like the Indictment and each of the prior bank regulatory settlements—contain no admissions, findings,

---

[13] FFP Plaintiffs' request to participate in this round of proposed amendments made no mention of an expanded suppression period.  *See* March 27, 2018 Letter, MDL ECF No. 2471.

[14] "[T]he standard for granting [a motion for reconsideration] is strict."  *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. June 4, 2012), as amended (July 13, 2012).  Even assuming, *arguendo* and contrary to the September 26, 2017 Order, that the allegations in the Indictment constituted "new evidence," "[f]or new evidence to justify reconsideration, the evidence must be of such importance that it probably would have changed the outcome of the prior ruling."  *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*, 894 F. Supp. 2d 288, 341 (S.D.N.Y. 2012), as amended (Sept. 19, 2012) (internal quotation marks and citations omitted).

[15] *See, e.g.*, FDIC-R PSAC ¶ 267 (identifying the Indictment as a basis for extending the alleged suppression period into 2011); Freddie Mac Br. at 24 (identifying Indictment as source of new allegations following the Court's December 19, 2016 ruling on Defendants' motion to dismiss Freddie Mac's claims); Principal Plaintiffs Memorandum in Support of Motion for Leave to Amend, MDL ECF No. 2575, at 8.

[16] *See, e.g.*, FDIC-R PSAC ¶¶ 258-59; Freddie Mac PTAC ¶¶ 352-53, 394-96.

9

conclusions, or allegations that there was an inter-bank persistent suppression conspiracy at any time.[17]  Indeed, those settlements do not support any allegation of persistent suppression during the New Conduct Period.  *See, e.g.*, SG DPA A-41 ¶ 17 (SG's conduct occurred "during several periods of time between May 2010 and October 2011").

FFP Plaintiffs' attempts to suggest otherwise are meritless.  FDIC-R and Freddie Mac's conjecture that SG's submissions "necessarily involved advance coordination with other" panel bank defendants (FDIC-R PSAC ¶ 306; Freddie Mac PTAC ¶ 395) finds no support in the settlements.  *See* SG CFTC Order at 30 ("Back-up U.S. Dollar LIBOR Submitter:  [ . . . ] it's compared with the estimated Libor, the second point it's against our competitors[ . . . ] we try to be the sixth bank **[ . . . ] we do statistics every day and we check where we are on the quotation compared with the highest** and, you know, it's the first in quote it's the sixth bank . . . ." (emphases altered)).[18]  Similarly, FDIC-R's allegation that SG's internal documents purportedly "show" that "all Panel Bank Defendants manipulated their submissions" is unaccompanied by citation or attribution.  FDIC-R PSAC ¶ 306.[19]  Freddie Mac's allegation that "[t]he other Bank Defendants systematically suppressed their USD bbaLIBOR™ contributions"

---

[17]  *See* Order, *In the Matter of Société Générale S.A.*, Commodity Futures Trading Commission, CFTC No. 18-14 (June 4, 2018), *available at* https://www.cftc.gov/sites/default/files/2018-06/enfsocietegeneralesaorder060418.pdf ("SG CFTC Order"), at 7-8, 13; Deferred Prosecution Agreement, *United States of America against Société Générale S.A.*, No. 18-cr-253 (E.D.N.Y. June 5, 2018), *available at* https://www.justice.gov/criminal-fraud/file/1072451/download ("SG DPA"), at A-40, ¶ 14, A-41, ¶ 17.  Moreover, the factual allegations in the SG CFTC Order cannot be used to establish the adequacy of FFP Plaintiffs' proposed amendments.  *See In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 593-94 (S.D.N.Y. 2011).

[18]  Although its pleading is ambiguous, to the extent that FDIC-R is insinuating that SG's former CFO's communications with "three unidentified people" were with those employed at other panel banks (FDIC-R PSAC ¶ 306), such an allegation is contradicted by the regulatory settlements on which Plaintiffs rely.  *See* SG CFTC Order at 18, 19; SG DPA at A-43-44 ¶ 22 (suggesting that the former CFO's communications were with investors).

[19]  Freddie Mac makes an apparent reference to a September 13, 2011 internal SG communication presumably from the SG CFTC Order at 31-32.  *See* Freddie Mac PTAC ¶ 352 (alleging that such communication stated that "all our competitors" were suppressing USD LIBOR).  But, as this Court has concluded when addressing similar statements by other defendants, such a comment "offers nothing more than market color."  *LIBOR VI*, 2016 WL 7378980, at *10 n.17.

through October 2011 is similarly bereft of support.  Freddie Mac PTAC ¶ 353.  The Court should not credit any of these conclusory allegations.[20]

Finally, Freddie Mac's allegation that the Panel Bank Defendants each purportedly submitted USD LIBOR rates below the Eurodollar rate (Eurodollar bid rate) during the New Conduct Period does not support the proposed extension.  *See* Freddie Mac PTAC ¶ 349. Freddie Mac has long had this information, and its contention that the Indictment helps to explain this "data" (Freddie Mac Br. at 24) is foreclosed by the Court's September 26, 2017 Order.

2.      Freddie Mac's Proposed Claims For The New Conduct Period Are Time-Barred[21]

Freddie Mac's proposed claims for the New Conduct Period are fully time-barred.  The Court has held that "the clock began to run on [Freddie Mac's fraud claims on] August 5, 2009, at the latest."  *LIBOR IV*, 2015 WL 6243526, at *170.  Moreover, because no misconduct is alleged to have occurred after October 2011 and because Freddie Mac was on inquiry notice well prior to that date, Freddie Mac's claims for the New Conduct Period accrued by October 2011, at the latest.  *American Pipe* does not toll Freddie Mac's proposed federal law claims for the New Conduct Period because the class period for any relevant class-action complaint ended in May 2010.  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 485-86 (S.D.N.Y. 2014).  Thus, no class action tolling applies, and even if it did, the Court has held that

---

[20] FFP Plaintiffs further attempt to support allegations of a persistent suppression conspiracy by referring to regulatory investigations concerning EURIBOR.  *See, e.g.*, Freddie Mac PTAC ¶ 351.  The Court, however, has repeatedly held that allegations concerning conduct in other benchmarks are irrelevant to the analysis of USD LIBOR.  *See LIBOR IV*, 2015 WL 6243526, at *42, *45; *LIBOR VI*, 2016 WL 7378980, at *10 n.18; April 15, 2016 Order, 2016 WL 1558504, at *11; *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 583-84 (S.D.N.Y. Feb. 28, 2018).

[21] In the event the Court permits FDIC-R and Principal Plaintiffs leave to amend to add claims for the New Conduct Period, Defendants reserve the right to move to dismiss such claims on the grounds that they are time-barred in whole or in part.

there is no such tolling for state law claims in Virginia. *LIBOR IV*, 2015 WL 6243526, at *170. Accordingly, because Freddie Mac did not seek to assert claims for the New Conduct Period until June 2018, or refer to alleged suppression during the New Conduct Period until DAPs filed the September 14, 2017 Letter, all of Freddie Mac's proposed claims concerning the New Conduct Period are time-barred.[22]

Any argument by Freddie Mac that the applicable limitations period did not begin to run until some later date would fail. In its proposed amended complaint, Freddie Mac alleges that it could not have been on notice of its fraud claims until Barclays' regulatory settlements in June 2012, but that assertion has been rejected by the Court, *see* February 2, 2017 Order, 2017 WL 532465, at *4, and, in any event, Freddie Mac's proposed claims for the New Conduct Period would still be time-barred.

Moreover, and contrary to Freddie Mac's contention, *Schwab*'s holdings regarding the accrual of claims under California's inquiry notice rule does not revive Freddie Mac's dismissed Virginia law fraud claims. Freddie Mac Br. at 5. The Second Circuit's analysis was "dependent on [a] unique facet of California law"—*i.e.*, California's particular inquiry notice rule based on news articles—and has no application to Freddie Mac's Virginia law claims. April 24, 2018 Order, at 4.[23]

---

[22] Freddie Mac's fraud claims are governed by Virginia's two-year limitations period, which runs from no later than August 5, 2009, the date by which the Court has held a reasonably diligent plaintiff in Freddie Mac's position would have discovered facts sufficient to state a claim. *See LIBOR IV*, 2015 WL 6243526, at *126, *170. No discovery rule applies to Freddie Mac's contract and tortious interference claims, which are subject to a five-year limitations period. *Id.* at *170. Sherman Act claims have a four year limitations period. *See* 15 U.S.C. § 15b. The Court has held that the fraudulent concealment doctrine does not apply. *See* February 2, 2017 Order, 2017 WL 532465, at *4.

[23] Indeed, the Court has previously rejected attempts by other plaintiffs to misapply *Schwab*'s California-law holdings to their claims. *See* April 24, 2018 Order at 3-4 ("Nothing in *Schwab*'s analysis . . . controls the analysis of [Exchange-Based Plaintiffs'] CEA claims."); July 2, 2018 Order, 2018 WL 3222518, at *1-*2 (denying Lender Plaintiffs' motion for reconsideration of this Court's Puerto Rico inquiry notice holding in light of *Schwab*'s California inquiry notice decision and noting that "Puerto Rico is not California").

Freddie Mac's proposed claims for the New Conduct Period also do not relate back to the filing of its original complaint on March 14, 2013.   Freddie Mac characterizes the alleged conduct as "[r]enewed efforts to suppress [LIBOR]," suggesting that it views claims for the New Conduct Period as distinct.   *See, e.g.*, Freddie Mac PTAC ¶¶ 346-53; *see also* December 19, 2016 Order, 2016 WL 7621354, at *1 (Freddie Mac previously conceded that Defendants did not actively suppress LIBOR after May 2010).

3.   <u>FFP Plaintiffs' Claims Arising From Swap Transactions Fail Under This Court's Prior Rulings</u>

FFP Plaintiffs do not allege that they entered into any ISDA Master Agreements or swaps with many of the Defendants at all or during the New Conduct Period.[24]   Under the Court's prior rulings, FFP Plaintiffs' unjust enrichment, fraud-by-omission or inducement, and negligent misrepresentation claims for that period are plainly futile as to these non-counterparty Defendants.   *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 4773129, at *9-*10 (holding that plaintiffs' fraud-by-omission or inducement and negligent misrepresentation claims fail because plaintiffs "do[] not state in its complaint that it entered into swap agreements

---

[24] Freddie Mac does not allege that it entered into any ISDA Master Agreements, or engaged in swap transactions with, SG, HSBC Bank plc, Coöperatieve Rabobank U.A., Lloyds Banking Group plc, Lloyds Bank plc, HBOS plc, RBC, Bank of Scotland plc, Bank of America Corp., Citigroup Inc., JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., Credit Suisse AG, BCI, The Royal Bank of Scotland Group plc, The Bank of Tokyo-Mitsubishi UFJ, Ltd, or The Norinchukin Bank.

FDIC-R does not allege that any of the failed banks entered into any ISDA Master Agreements, or engaged in swap transactions with, SG, HSBC Bank plc, Coöperatieve Rabobank U.A., Lloyds Banking Group plc, Lloyds Bank plc, HBOS plc, Bank of Scotland plc, Bank of America Corp., JPMorgan Chase & Co., Credit Suisse AG, The Norinchukin Bank, or The Bank of Tokyo-Mitsubishi UFJ, Ltd.

Principal Plaintiffs do not allege that they entered into any ISDA Master Agreements, or engaged in swap transactions with, Coöperatieve Rabobank U.A., Lloyds Banking Group plc, Lloyds Bank plc, HBOS plc, Bank of Scotland plc, Bank of America Corp., Merrill Lynch, Pierce, Fenner & Smith, Inc., Citigroup Inc., Citigroup Global Markets Inc., JPMorgan Chase & Co., J.P. Morgan Securities LLC, The Royal Bank of Scotland Group plc, or Credit Suisse AG and Credit Suisse Group AG.   Principal Funds does not allege an ISDA Master Agreement or any specific transactions with RBS Securities Inc.   Moreover, while Principal Plaintiffs conclusorily—and incoherently—allege that they "entered into at least one interest rate swap agreement with [BCI] for which Barclays Bank plc was the floating rate payor," they do not allege that BCI ever entered into any ISDA Master Agreement with Principal Plaintiffs.   *See* Principal Financial PSAC ¶ 34; Principal Funds PSAC ¶ 33.   And Principal Funds now defines RBC as a Counterparty Defendant, *see* Principal Funds PSAC ¶¶ 337, 369, but fails to allege that they entered into any ISDA or swap with RBC, *see id.* ¶¶ 13, 222, and accompanying table.

with [defendants] during the period of alleged suppression"); *LIBOR IV*, 2015 WL 6243526, at *75.

Although Freddie Mac and FDIC-R previously alleged that they entered into ISDA Master Agreements with certain Defendants,[25] neither has included in its proposed amendments any allegation regarding any particular swap purportedly entered into during the New Conduct Period to which any of these Defendants was a counterparty. These Plaintiffs merely allege that, "[d]uring the relevant period," they entered into swaps that were governed by the respective ISDA Master Agreements. *See, e.g.*, FDIC-R PSAC ¶¶ 340, 360; Freddie Mac PTAC ¶¶ 488, 495. Those generalized allegations, however, are insufficient to demonstrate whether transactions occurred during the New Conduct Period.[26] The Court, moreover, has repeatedly put Plaintiffs "on notice that pleading is required to be specific." *See, e.g.*, December 19, 2016 Order, 2016 WL 7621354, at *2. Plaintiffs' failure to allege any transactions during the New Conduct Period supports denial of their amendments, and Plaintiffs should not be allowed yet another opportunity to attempt to adequately plead their claims with the required specificity. *Id.* at *3.

## IV.   FFP PLAINTIFFS AND NCUA'S PROPOSED AMENDMENTS REGARDING ASSET-BACKED SECURITIES ARE FUTILE

For the first time, FFP Plaintiffs and NCUA have sought to advance claims relating to asset-backed securities.[27] The relevant asset-backed securities were deposited into trusts administered by independent trustees, and these Plaintiffs allege that they merely held certificates evidencing their claim to disbursements as beneficiaries of these trusts. As this Court

---

[25] *See* FDIC-R PSAC ¶¶ 317-441; Freddie Mac PTAC ¶¶ 484-539.

[26] These allegations are also inadequate because Plaintiffs engage in group pleading. *See* Defs. PJ Br. at Part III.

[27] *See, e.g.*, Freddie Mac PTAC ¶¶ 56, 85, 94, 122, 140, 177; FDIC-R PSAC ¶¶ 68, 89; Principal Financial PSAC ¶¶ 31, 46, 230-39; Principal Funds PSAC ¶¶ 30, 45, 229-38; NCUA PSAC ¶¶ 43, 235, 236, 239, 240, 243, 244, 247-50.

has correctly observed, "the trust (rather than plaintiffs as beneficiaries) may be the proper party to maintain claims against the trust's counterparties." *LIBOR IV*, 2015 WL 4634541, at *77. FFP Plaintiffs and NCUA have not pleaded that they have standing to assert claims on behalf of the trusts that held the asset-backed securities.

> To bring suit on behalf of a trust,
>
> the beneficiary must show why he has the right to exercise the power, which the law and the trust agreement in the first instance confide in the trustees, to bring a suit on behalf of the trust.  This will normally require either a showing of a demand on the trustees to bring the suit, and of a refusal so unjustifiable as to constitute an abuse of the trustee's discretion, or a showing that suit should be brought and that because of the trustees' conflict of interest, or some other reason, it is futile to make such a demand.

*Velez v. Feinstein*, 87 A.D.2d 309, 315 (1st Dep't 1989); *see also Bowen v. U.S. Postal Serv.*, 459 U.S. 212, 243 (1983) ("a trust beneficiary may sue to enforce a contract entered into on his behalf by the trustee if, but only if, the trustee 'improperly refuses or neglects to bring an action against the third person'" (quoting Restatement (Second) of Trusts § 282(2) (1959)).

Here, FFP Plaintiffs and NCUA have failed to even identify the relevant trustees, let alone "set forth 'with particularity' [their] efforts to secure the initiation of the action by the trustees, or the reasons for not making such effort." *Velez*, 87 A.D.2d at 316.  Nor have FFP Plaintiffs or NCUA addressed how their claims can comply with the "no action" clauses commonly found in mortgage-backed securities' pooling services agreements that prevent individual certificate holders, as opposed to the trustee, from suing the defendants for breach of representations and warranties.  *See, e.g.*, *Walnut Place LLC* v. *Countrywide Home Loans, Inc.*, No. 650497/11, 2012 WL 1138863 (Sup. Ct. N.Y. Cty. Mar. 28, 2012), *aff'd*, 96 A.D.3d 684 (1st Dep't); *Deutsche Bank Nat'l Trust Co.* v. *Quicken Loans Inc.*, 810 F.3d 861, 868 n.8 (2d Cir.

2015).  Accordingly, FFP Plaintiffs and NCUA's proposed amendments regarding asset-backed securities should be rejected as futile.[28]

## V.   FREDDIE MAC'S NEWLY-ASSERTED FRAUD AND TORTIOUS INTERFERENCE CLAIMS AGAINST BCI ARE BOTH IMPROPER AND TIME-BARRED

Freddie Mac improperly attempts to add BCI as a defendant to its action for the first time. But even if the Court were to accept Freddie Mac's incorrect and previously rejected contention that Freddie Mac was not on notice of its claims until Barclays' regulatory settlements were disclosed in June 2012 (Freddie Mac PTAC ¶¶ 401-02), Freddie Mac's proposed fraud and tortious interference claims against BCI are untimely because those claims are subject to limitations periods of two and five years, respectively.  Freddie Mac chose not to assert those claims against BCI until it filed its proposed amendments on June 15, 2018, almost six years later.[29]

Further, this Court's prior rulings make clear that Freddie Mac cannot salvage its untimely claims against BCI by relying on *American Pipe* tolling or the relation back doctrine. BCI was not named as a defendant in prior class actions alleging state law causes of action so as to put BCI on notice of such claims, *see LIBOR IV*, 2015 WL 6243526, at *149, and in any event

---

[28] Freddie Mac does not allege that it entered into any transactions in asset-backed securities, including mortgage-backed securities, directly with SG, Coöperatieve Rabobank U.A., JPMorgan Chase & Co., Citibank, N.A., Citigroup Inc., Lloyds Banking Group plc, Lloyds Bank plc or Bank of Scotland plc, The Norinchukin Bank, The Royal Bank of Scotland Group plc, RBS, Barclays Bank PLC, The Bank of Tokyo-Mitsubishi UFJ, Ltd, Credit Suisse AG or CSI.  To the extent that Freddie Mac's briefing suggests otherwise, either no such allegations appear in its proposed amended complaint, or Freddie Mac fails entirely to allege "in detail . . . the identity of the MBS seller and swap counterparty, the number of MBS and swap transactions, and the sales/transaction amounts."  *E.g.*, *compare* Freddie Mac Br. at 7, 8 & n.4, *with* Freddie Mac PTAC ¶¶ 78-84, 149-53.  *See also* March 31, 2016 Order, 2016 WL 1301175, at *3-*4.

[29] To the extent Freddie Mac asserts federal antitrust claims against BCI, those claims fail under this Court's prior ruling dismissing antitrust claims asserted against non-panel bank affiliates, including BCI.  *See* February 2, 2017 Order, 2017 WL 532465, at *2.  In any event, any antitrust claims asserted against BCI would be time-barred under the four-year federal antitrust claims limitations period, which begins to run from the date of injury.  *See* 15 U.S.C. § 15b; *Zenith Radio Corp.* v. *Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971).  As noted above, while Freddie Mac wrongly asserts that Defendants' conduct continued from October 2011 (Freddie Mac PTAC ¶¶ 346-53) and that Plaintiffs could not reasonably have known of the alleged misconduct until June 2012 (*id.* at ¶¶ 401-02), Freddie Mac did not assert any claims against BCI until June 15, 2018, more than four years later.

this Court has already determined that *American Pipe*-style tolling does not apply to state law claims in Virginia, *id.* at *170.[30]   Similarly, Freddie Mac's proposed claims against BCI do not relate back to the date of Freddie Mac's prior complaints because Freddie Mac cannot show that BCI "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."   Fed. R. Civ. P. 15(c)(1)(C)(ii).   No "mistake" occurred here.   Barclays' June 2012 regulatory settlements explicitly referred to BCI, and Freddie Mac's original complaint relied extensively on those settlements (*see* Compl., *Fed. Home Loan Mortg. Corp. v. Bank of Am.*, No. 13-cv-3952 (ECF No. 1), at ¶¶ 44-46, 54-55, 74, 83, 94).   Freddie Mac nonetheless made the strategic decision not to name BCI as a defendant, either in its original complaint or in any of its prior amended complaints.   *See Schoolcraft v. City of New York*, 81 F. Supp. 3d 295, 301 (S.D.N.Y. 2015).   Because BCI had every reason to believe that Freddie Mac intentionally elected not to name it as a defendant (because, for example, Freddie Mac could not allege any relevant trades where BCI was a counterparty), relation back does not apply.   *See Wingspan Records, Inc. v. Simone*, 2014 WL 2116191, at *6-*7 (S.D.N.Y. May 16, 2014).[31]

---

[30] *American Pipe* tolling similarly cannot save any federal antitrust claim Freddie Mac may assert against BCI.   The only potentially relevant prior class action to name BCI as a defendant was the *Amwell* action, *see* Compl., *Courtyard at Amwell II, LLC, et al.* v. *Bank of America Corp., et al.*, No. 12-cv-6693 (ECF No. 1), which was filed in September 2012, and asserted a single antitrust claim.   But the class definition in that action is expressly limited to parties that transacted with certain non-defendant financial institutions. *Id.* ¶ 43.   Thus, even if the *Amwell* action tolls the limitations period on certain indirect purchaser claims, those claims are not actionable under *LIBOR VI*, which dismissed antitrust claims based on transactions with non-defendants for lack of antitrust standing.   *See* 2016 WL 7378980, at *15-16.

[31] Indeed, this Court already ruled on this point in *LIBOR IV*, when it rejected Principal Plaintiffs' attempt to relate back claims as to BCI.   2015 WL 6243526, at *156-57.   The Court held that, because Principal Plaintiffs' original complaints—like Freddie Mac's complaint—alleged only suppression-related claims targeted at "Panel Bank Defendants" and did not allege specific transactions where bank affiliates like BCI served as counterparties, there was no reason for BCI to believe it would have been named as a defendant but for a mistake. *Id.* at *156-57.   The Court should reject Freddie Mac's attempt to belatedly name BCI as a defendant for the same reasons.

## VI.    LENDER PLAINTIFFS' MOTION FOR LEAVE TO AMEND SHOULD BE DENIED AS FUTILE

Lender Plaintiffs' motion for leave to amend their complaint should be denied as untimely and futile based on the reasoning set forth in the Court's July 2, 2018 Order denying Lender Plaintiffs' request for reconsideration.   2018 WL 3222518.   Lender Plaintiffs concurrently filed the motion to amend and a pre-motion letter regarding a request to move for reconsideration because of alleged uncertainty regarding which was the "more appropriate procedural avenue."  June 15, 2018 Letter, MDL ECF No. 2555, at 1 n.1.  Both motions make the same arguments and seek the same relief—the reinstatement of Government Development Bank of Puerto Rico's claims.  As this Court has already denied Lender Plaintiffs' request for reconsideration on both timeliness and merits grounds (July 2, 2018 Order, 2018 WL 3222518), Lender Plaintiffs' motion for leave to amend their complaint should similarly be denied as both untimely and futile.[32]

---

[32] Lender Plaintiffs' motion is styled as a "Motion to Amend [*LIBOR V*] and for Leave to Amend the Second Amended Complaint," but their Notice of Motion cites only Rule 15(a) and the body of their brief never mentions the request to amend *LIBOR V*.  *See* No. 12-cv-5723 (ECF Nos. 327, 331).  To the extent Lender Plaintiffs' motion to amend the Court's decision in *LIBOR V* is not altogether waived, it is foreclosed by the Court's July 2, 2018 Order.  2018 WL 3222518.

## CONCLUSION

For these reasons, Moving Plaintiffs' Motions for Leave to Amend should be denied in their entirety.

Dated: New York, New York
       July 13, 2018

Respectfully submitted,

/s/ Arthur J. Burke
Arthur J. Burke
Paul S. Mishkin
Adam G. Mehes
Patrick W. Blakemore
Peter J. Davis
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Fax: (212) 450-4800
arthur.burke@davispolk.com
paul.mishkin@davispolk.com
adam.mehes@davispolk.com
patrick.blakemore@davispolk.com
peter.davis@davispolk.com

*Attorneys for Defendants Bank of America Corporation and Bank of America, N.A.*

/s/ Paul C. Gluckow
Mary Beth Forshaw
Paul C. Gluckow
Alan C. Turner
Sarah E. Phillips
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Fax: (212) 455-2502
mforshaw@stblaw.com
pgluckow@stblaw.com
aturner@stblaw.com
sarah.phillips@stblaw.com

Abram J. Ellis
900 G Street NW
Washington, D.C. 20001
Telephone: (202) 636-5500
Fax: (202) 636-5502
aellis@stblaw.com

*Attorneys for Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., Chase Bank USA, N.A., J.P. Morgan Securities LLC (f/k/a J.P. Morgan Securities Inc.), J.P. Morgan Markets Ltd. (f/k/a Bear Stearns International Ltd.), J.P. Morgan Dublin plc (f/k/a J.P. Morgan Bank Dublin plc f/k/a Bear Stearns Bank plc), and Bear Stearns Capital Markets, Inc.*

/s/ Daryl A. Libow
Daryl A. Libow
Christopher M. Viapiano
Elizabeth A. Cassady
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7500
Fax: (202) 956-6973
libowd@sullcrom.com
viapianoc@sullcrom.com
cassadye@sullcrom.com

*Attorneys for Defendant The Bank of
Tokyo-Mitsubishi UFJ, Ltd. (n/k/a MUFG
Bank, Ltd.)*

/s/ Herbert S. Washer
Herbert S. Washer
Elai Katz
Joel Kurtzberg
Jason Hall
Lauren Perlgut
Adam Mintz
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
Telephone: (212) 701-3000
hwasher@cahill.com
ekatz@cahill.com
jkurtzberg@cahill.com
jhall@cahill.com
lperlgut@cahill.com
amintz@cahill.com

*Attorneys for Defendants Credit Suisse AG,
Credit Suisse Group AG, Credit Suisse
International, and Credit Suisse Securities
(USA) LLC*

/s/ David H. Braff
David H. Braff
Yvonne S. Quinn
Jeffrey T. Scott
Matthew J. Porpora
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
braffd@sullcrom.com
quinny@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com

/s/ Jonathan D. Schiller
Jonathan D. Schiller
Leigh M. Nathanson
Amos Friedland
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-2300
jschiller@bsfllp.com
lnathanson@bsfllp.com
afriedland@bsfllp.com

Michael Brille
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, D.C. 20015
Telephone: (202) 237-2727
mbrille@bsfllp.com

*Attorneys for Defendants Barclays Bank PLC
and Barclays Capital Inc.*

/s/ Andrew A. Ruffino
Andrew A. Ruffino
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 841-1000
aruffino@cov.com

Alan M. Wiseman
Thomas A. Isaacson
Andrew D. Lazerow
Jamie A. Heine
Benjamin L. Cavataro
COVINGTON & BURLING LLP
850 Tenth Street, N.W.
Washington, D.C. 20001
Telephone: (202) 662-6000
awiseman@cov.com
tisaacson@cov.com
alazerow@cov.com
jheine@cov.com
bcavataro@cov.com

/s/ Lev Dassin
Lev Dassin
Jonathan S. Kolodner
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
ldassin@cgsh.com
jkolodner@cgsh.com

*Attorneys for Defendants Citibank, N.A.,
Citigroup Inc., Citigroup Financial
Products, Inc., Citigroup Global Markets Inc.,
Citigroup, and Citi Swapco Inc.*

/s/ Moses Silverman
Moses Silverman
Aidan Synnott
Hallie S. Goldblatt
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Fax: (212) 757-3990
msilverman@paulweiss.com
asynnott@paulweiss.com
hgoldblatt@paulweiss.com

*Attorneys for Defendants Deutsche Bank AG
and Deutsche Bank Securities, Inc.*

/s/ David R. Gelfand
David R. Gelfand
Robert C. Hora
Mark D. Villaverde
MILBANK TWEED HADLEY &
McCLOY LLP
28 Liberty Street
New York, New York 10005
Telephone: (212) 530-5000
dgelfand@milbank.com
rhora@milbank.com
mvillaverde@milbank.com

*Attorneys for Defendant Coöperatieve
Rabobank U.A. (f/k/a Coöperatieve
Centrale Raiffeisen-Boerenleenbank B.A.)*

/s/_Gregory T. Casamento
Gregory T. Casamento
LOCKE LORD LLP
3 World Financial Center
New York, New York 10281
Telephone: (212) 812-8325
Fax: (212) 812-8385
gcasamento@lockelord.com

Roger B. Cowie
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: (214) 740-8614
Fax: (214) 740-8800
rcowie@lockelord.com

J. Matthew Goodin
Julia C. Webb
LOCKE LORD LLP
111 South Wacker Drive, Suite 4100
Chicago, Illinois 60606
Telephone: (312) 443-0700
jmgoodin@lockelord.com
jwebb@lockelord.com

*Attorneys for Defendants HSBC Holdings plc, HSBC Bank plc, The Hongkong and Shanghai Banking Corporation Ltd., and HSBC Bank USA, N.A.*

/s/_Marc J. Gottridge
Marc J. Gottridge
Lisa J. Fried
Benjamin A. Fleming
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Fax: (212) 918-3100
marc.gottridge@hoganlovells.com
lisa.fried@hoganlovells.com
benjamin.fleming@hoganlovells.com

*Attorneys for Defendants Lloyds Banking Group plc, Lloyds Bank plc (f/k/a Lloyds TSB Bank plc), HBOS plc and Bank of Scotland plc*

/s/_Christopher M. Paparella
Christopher M. Paparella
Ethan E. Litwin
Marc A. Weinstein
Morgan J. Feder
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Fax: (212) 422-4726
Chris.Paparella@hugheshubbard.com
Ethan.Litwin@hugheshubbard.com
Marc.Weinstein@hugheshubbard.com
Morgan.Feder@hugheshubbard.com

*Attorneys for Defendants Portigon AG (f/k/a WestLB AG) and Westdeutsche ImmobilienBank AG*

/s/_Alan M. Unger
Alan M. Unger
Andrew W. Stern
Tom A. Paskowitz
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Fax: (212) 839-5599
aunger@sidley.com
astern@sidley.com
tpaskowitz@sidley.com

*Attorneys for Defendant The Norinchukin Bank*


/s/_Fraser L. Hunter, Jr.
Fraser L. Hunter, Jr.
David S. Lesser
Jamie S. Dycus
WILMER CUTLER PICKERING
HALE AND DORR LLP
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Fax: (212) 230-8888
fraser.hunter@wilmerhale.com
david.lesser@wilmerhale.com
jamie.dycus@wilmerhale.com

*Attorneys for Defendants The Royal Bank of Scotland Group plc and The Royal Bank of Scotland plc*


/s/_Arthur W. Hahn
Arthur W. Hahn
Christian T. Kemnitz
Brian J. Poronsky
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661
Telephone: (312) 902-5200
arthur.hahn@kattenlaw.com
christian.kemnitz@kattenlaw.com
brian.poronsky@kattenlaw.com

*Attorneys for Defendant Royal Bank of Canada*


/s/_Robert G. Houck
Robert G. Houck
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 878-8000
Fax: (212) 878-8375
robert.houck@cliffordchance.com

*Attorneys for Defendants The Royal Bank of Scotland Group plc, and The Royal Bank of Scotland plc, and RBS Securities Inc.*[*]

---

[*] Wilmer Cutler Pickering Hale and Dorr LLP is counsel for these defendants except as to plaintiffs Principal Funds, Inc.; Principal Capital Interest Only I, LLC; Principal Commercial Funding, LLC; Principal Commercial Funding II, LLC; Principal Financial Group, Inc.; Principal Financial Services, Inc.; Principal Life Insurance Company; Principal Real Estate Investors, LLC; and Principal Variable Contracts Funds, Inc.; Clifford Chance US LLP is counsel for these defendants except as to Plaintiff the Federal Home Loan Mortgage Corporation.

/s/_Steven Wolowitz

Steven Wolowitz
Henninger S. Bullock
Andrew J. Calica
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Fax: (212) 262-1910
swolowitz@mayerbrown.com
hbullock@mayerbrown.com
acalica@mayerbrown.com

*Attorneys for Defendant Société Générale*

/s/_Richard D. Owens

Richard D. Owens
Jeff G. Hammel
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1200
richard.owens@lw.com
jeff.hammel@lw.com

*Attorneys for Defendants British Bankers'*
*Association, BBA Enterprises Ltd., and BBA*
*Trent Ltd. (f/k/a BBA LIBOR Ltd.)*

/s/_Mark A. Kirsch

Mark A. Kirsch
Eric J. Stock
Jefferson E. Bell
Matthew Greenfield
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
mkirsch@gibsondunn.com
estock@gibsondunn.com
jbell@gibsondunn.com
mgreenfield@gibsondunn.com

*Attorneys for Defendant UBS AG*

24

729309928