**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262 Master File No. 1:11-md-2262-NRB |
| THIS DOCUMENT RELATES TO: | **ORAL ARGUMENT REQUESTED** |

---

FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR
AMCORE BANK, N.A., *et al.*,

                Plaintiff,

        v.

BANK OF AMERICA CORPORATION, *et al.*,

                Defendants.

No. 14-cv-01757

---

FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR
DORAL BANK,

                Plaintiff,

        v.

BANK OF AMERICA, N.A., *et al.*,

                Defendants.

No. 18-cv-01540

---

PRINCIPAL FINANCIAL GROUP, INC., *et al.*,

                Plaintiffs,

        v.

BANK OF AMERICA CORPORATION, *et al.*,

                Defendants.

No. 13-cv-6014

---

PRINCIPAL FUNDS, INC., *et al.*,

                Plaintiffs,

        v.

BANK OF AMERICA CORPORATION, *et al.*,

                Defendants.

No. 13-cv-6013

| | |
|---|---|
| THE FEDERAL HOME LOAN MORTGAGE CORPORATION,<br><br>                              Plaintiff,<br>              v.<br>BANK OF AMERICA CORPORATION, *et al.*,<br>                              Defendants. | No. 13-cv-03952 |
| THE CHARLES SCHWAB CORPORATION, *et al.*,<br><br>                              Plaintiffs,<br>              v.<br>BANK OF AMERICA CORPORATION, *et al.*,<br>                              Defendants. | No. 13-cv-7005 |
| NATIONAL CREDIT UNION ADMINISTRATION BOARD,<br>                              Plaintiff,<br>              v.<br>CREDIT SUISSE GROUP AG, *et al.*,<br>                              Defendants. | No. 13-cv-7394 |

**JOINT MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND VENUE AND IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR LEAVE TO AMEND ON PERSONAL JURISDICTION AND VENUE GROUNDS**

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ....................................................................................................................... 4

    A.    Relevant Prior Jurisdictional Rulings ................................................................. 5

        1.    LIBOR IV & V ....................................................................................... 5

        2.    LIBOR VI ............................................................................................... 8

        3.    Schwab.................................................................................................... 9

    B.    Plaintiffs' Amended and Proposed Amended Complaints........................................ 11

        1.    Schwab Second Amended Complaint............................................................... 11

        2.    FFP Plaintiffs ........................................................................................ 12

        3.    NCUA ................................................................................................... 13

    C.    Defendants.................................................................................................. 14

    D.    Plaintiffs' Jurisdictional Allegations ........................................................... 15

ARGUMENT ........................................................................................................................... 16

I.    PLAINTIFFS FAIL TO ESTABLISH JURISDICTION OVER THE NON-
COUNTERPARTY CLAIMS ...................................................................................... 17

    A.    Allegations Concerning Defendants' LIBOR Marketing and Trading Activities Fail to
Establish Jurisdiction over Non-Counterparty Claims .................................................. 18

    B.    Plaintiffs Fail to Allege Suit-Related Conduct in or Expressly Aimed at the United
States ........................................................................................................ 21

        1.    Plaintiffs' Allegations That Defendants Transmitted LIBOR Rates to Thomson
Reuters or Through Bloomberg Terminals Fail to Establish Jurisdiction ........... 22

        2.    Plaintiffs' Marketing Allegations Fail to Establish Jurisdiction......................... 22

        3.    Plaintiffs Still Fail to Allege that Defendants' LIBOR Submissions Were Directed
or Submitted from the U.S. ...................................................................... 24

i

II.   PLAINTIFFS' JURISDICTIONAL ALLEGATIONS AS TO COUNTERPARTY CLAIMS
DO NOT SATISFY THE PRIOR RULINGS IN THIS LITIGATION .............................. 26

    A.   Certain Counterparty Claims Fail to Satisfy the Obligor Requirements ..................... 27

    B.   Certain Counterparty Claims Based on LIBOR-Linked Financial Products Fail
Because Plaintiffs Do Not Allege a Course of Dealing with Defendants .................. 29

    C.   Certain Counterparty Claims Based on Bond Transactions Fail ................................ 30

    D.   Certain Counterparty Claims Based on Swap Transactions with Defendants Fail ...... 31

    E.   Certain Counterparty Claims Based on Forum Selection Clauses Fail ....................... 31

III.  PLAINTIFFS' GROUP PLEADING, AGENCY, AND CONSPIRACY ALLEGATIONS
FAIL TO ESTABLISH JURISDICTION OVER DEFENDANTS ..................................... 33

    A.   Schwab Confirms that Plaintiffs' Group Pleading Allegations Cannot Establish
Jurisdiction over Defendants ......................................................................... 34

    B.   Plaintiffs' Allegations of an Agency Relationship Between Defendants and Their
Affiliates Fail to Confer Jurisdiction ................................................................ 34

    C.   Plaintiffs' Conspiracy Allegations Are Insufficient to Confer Jurisdiction over
Defendants ................................................................................................. 38

IV.   THE SCHWAB PLAINTIFFS FAIL TO ESTABLISH PENDENT JURISDICTION ........ 43

V.    PLAINTIFFS FAIL TO ALLEGE JURISDICTION AND VENUE UNDER THE
CLAYTON ACT AS TO THE VENUE DEFENDANTS .................................................. 44

VI.   SCHWAB'S THEORY OF NATIONWIDE GENERAL JURISDICTION FAILS TO
COMPORT WITH DUE PROCESS AND OTHERWISE LACKS STATUTORY
AUTHORIZATION ...................................................................................................... 45

VII.  CONSIDERATIONS OF FAIR PLAY, SUBSTANTIAL JUSTICE, AND
INTERNATIONAL COMITY SUPPORT DISMISSAL ................................................... 47

CONCLUSION ................................................................................................................. 48

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7 W. 57th St. Realty Co., LLC* v. *Citigroup, Inc.*,
 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ................................................................42n

*Aeroflex Wichita, Inc.* v. *Filardo*,
 275 P.3d 869 (Kan. 2012) ................................................................42n

*Agrashell, Inc.* v. *Bernard Sirotta Co.*,
 344 F.2d 583 (2d Cir. 1965) ................................................................33n

*In re Aluminum Warehousing Antitrust Litig.*,
 2015 WL 6472656 (S.D.N.Y. Oct. 23, 2015) ................................................................17

*In re Aluminum Warehousing Antitrust Litig.*,
 90 F. Supp. 3d 219 (S.D.N.Y. 2015) ................................................................35, 42n

*Asahi Metal Indus. Co.* v. *Super. Ct.*,
 480 U.S. 102 (1987) ................................................................47

*Bankers Life & Cas. Co.* v. *Holland*,
 346 U.S. 379 (1953) ................................................................45

*Beach* v. *Citigroup Alternative Investments LLC*,
 2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) ................................................................32

*Bertha Bldg. Corp.* v. *Nat'l Theatres Corp.*,
 248 F.2d 833 (2d Cir. 1957) ................................................................45

*Bristol-Myers Squibb Co.* v. *Super. Ct. of Cal., San Francisco Cnty.*,
 137 S. Ct. 1773 (2017) ................................................................28n

*Brown* v. *Kerkhoff*,
 504 F. Supp. 2d 464 (S.D. Iowa 2007) ................................................................42n

*Brown* v. *Lockheed Martin Corp.*,
 814 F.3d 619 (2d Cir. 2016) ................................................................48n

*Charles Schwab Corp.* v. *Bank of America Corp.*,
 883 F.3d 68 (2d Cir. 2018) ................................................................ *passim*

*In re Crude Oil Commodity Litig.*,
 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ................................................................26n

iii

*Daimler AG* v. *Bauman*,
    571 U.S. 117 (2014) ................................................................................. *passim*

*Daniel* v. *Am. Bd. of Emergency Med.*,
    428 F.3d 408 (2d Cir. 2005) ........................................................... 44-45

*Dinsmore* v. *Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*,
    135 F.3d 837 (2d Cir. 1998) ................................................................ 39n

*Donoghue* v. *Dicut, Inc.*,
    2002 WL 1728539 (S.D.N.Y. July 24, 2002) ................................... 46n

*E. Fin. Corp.* v. *JSC Alchevsk Iron & Steel Works*,
    2009 WL 764458 (S.D.N.Y. Mar. 23, 2009) ........................................ 29

*Elbit Sys., Ltd.* v. *Credit Suisse Grp.*,
    917 F. Supp. 2d 217 (S.D.N.Y. 2013) ..................................................... 37

*Expoconsul Int'l, Inc.* v. *A/E Sys., Inc.*,
    711 F. Supp. 730 (S.D.N.Y. 1989) .......................................................... 44

*Gates* v. *Wilkinson*,
    2003 WL 21297296 (S.D.N.Y. June 4, 2003) ....................................... 45

*Gelboim* v. *Bank of America Corp.*,
    823 F.3d 759 (2d Cir. 2016) ............................................... 8-9, 39n

*Gerstle* v. *Nat'l Credit Adjusters, LLC*,
    76 F. Supp. 3d 503 (S.D.N.Y. 2015) ...................................................... 38

*Gmurzynska* v. *Hutton*,
    257 F. Supp. 2d 621 (S.D.N.Y. 2003) ................................................... 48

*Gucci America, Inc.* v. *Weixing Li*,
    768 F.3d 122 (2d Cir. 2014) ........................................................... 5n, 47

*Helicopteros Nacionales de Colombia, S.A.* v. *Hall*,
    466 U.S. 408 (1984) .................................................................................... 41

*Indep. Printers Worldwide, Inc.* v. *Cole*,
    2015 WL 4705507 (E.D. Va. Aug. 6, 2015) ....................................... 43n

*Ingenito* v. *Riri USA, Inc.*,
    89 F. Supp. 3d 462 (E.D.N.Y. 2015) ..................................................... 35

*IUE AFL–CIO Pension Fund* v. *Herrmann*,
    9 F.3d 1049 (2d Cir. 1993) ...................................................................... 43

iv

*Jazini* v. *Nissan Motor Co.*,
    148 F.3d 181 (2d Cir. 1998)............................................................................ 35-37

*Keeton* v. *Hustler Magazine, Inc.*,
    465 U.S. 770 (1984).........................................................................16, 29n, 34

*Kingsepp* v. *Wesleyan Univ.*,
    763 F. Supp. 22 (S.D.N.Y. 1991) .............................................................45n

*Koninklijke Philips Elecs.* v. *Digital Works, Inc.*,
    358 F. Supp. 2d 328 (S.D.N.Y. 2005)......................................................33

*Laydon* v. *Mizuho Bank, Ltd.*,
    2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) .........................................48n

*Leasco Data Processing Equip. Corp.* v. *Maxwell*,
    468 F.2d 1326 (2d Cir. 1972).......................................... 40-41, 41n, 46n

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    2015 WL 6696407 (S.D.N.Y. Nov. 3, 2015) ................................. *passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    2016 WL 1301175 (S.D.N.Y. Mar. 31, 2016) .........................7, 28, 30

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    2016 WL 1558504 (S.D.N.Y. Apr. 15, 2016).......................................7n

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    2016 WL 1733463 (S.D.N.Y. Apr. 29, 2016).....................6, 7n, 19, 22

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    2016 WL 4773129 (S.D.N.Y. Sept. 12, 2016)..............................7n, 18n

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016) ............................... *passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    962 F. Supp. 2d 606 (S.D.N.Y. 2013).................................................17

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ............................... *passim*

*Mariash* v. *Morrill*,
    496 F.2d 1138 (2d Cir. 1974).................................................................46n

*Marvel Characters, Inc.* v. *Kirby*,
    726 F.3d 119 (2d Cir. 2013)....................................................................42n

*Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996) ............................................................................... 47-48

*Murphy* v. *Am. Gen. Life Ins. Co.*,
    2015 WL 4379834 (C.D. Cal. July 15, 2015) ......................................................42n

*In re N. Sea Brent Crude Oil Futures Litig.*,
    2017 WL 2535731 (S.D.N.Y. June 8, 2017) ........................................................41

*Phoenix Glob. Ventures, Inc.* v. *Phoenix Hotel Assocs., Ltd.*,
    2004 WL 2360033 (S.D.N.Y. Oct. 19, 2004) .....................................................32n

*Pincione* v. *D'Alfonso*,
    506 F. App'x 22 (2d Cir. 2012) ..........................................................................45

*Remmes* v. *Int'l Flavors & Fragrances, Inc, a New York co.*,
    389 F. Supp. 2d 1080 (N.D. Iowa 2005) ............................................................42n

*Sioux Pharm, Inc.* v. *Summit Nutritionals Int'l, Inc.*,
    859 N.W.2d 182 (Iowa 2015) .............................................................................42n

*Somo Japan Ins. Co. of Am.* v. *Norfolk S. Ry. Co.*,
    762 F.3d 165 (2d Cir. 2014) ...............................................................................27n

*Spiegel* v. *Schulmann*,
    604 F.3d 72 (2d Cir. 2010) .................................................................................17

*Spratley* v. *FCA US LLC*,
    2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) ...................................................43n

*Stutts* v. *De Dietrich Grp.*,
    465 F. Supp. 2d 156 (E.D.N.Y. 2006) ................................................................37

*In re Terrorist Attacks on Sept. 11, 2001*,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005) ................................................................42n

*Tulsa Cancer Inst., PLLC* v. *Genentech Inc.*,
    2016 WL 141859 (N.D. Okla. Jan. 12, 2016) ...............................................43n, 44

*Tymoshenko* v. *Firtash*,
    2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) ....................................................42n

*Union of Needletrades, Indus. and Textile Employees* v. *United States Immigration and*
    *Naturalization Service*,
    336 F.3d 200 (2d Cir. 2003) ...............................................................................41n

*United States* v. *Watchmakers of Switz. Info. Ctr.*,
    133 F. Supp. 40 (S.D.N.Y. 1955) .......................................................................45n

*Unspam Techs., Inc.* v. *Chernuk*,
    716 F.3d 322 (4th Cir. 2013) ........................................................................41n

*USA Recycling, Inc.* v. *Town of Babylon*,
    66 F.3d 1272 (2d Cir. 1995).........................................................................41n

*Wachovia Bank, N.A.* v. *Schmidt*,
    546 U.S. 303 (2006).....................................................................................15n

*Walden* v. *Fiore*,
    571 U.S. 277 (2014)................................................................................ *passim*

*Waldman* v. *Palestine Liberation Org.*,
    935 F.3d 317 (2d Cir. 2016).............................................................. 5n, 18-19

*Wilder* v. *News Corp.*,
    2015 WL 5853763 (S.D.N.Y. Oct. 7, 2015) ..................................................38

*World Skating Fed'n* v. *Int'l Skating Union*,
    357 F. Supp. 2d 661 (S.D.N.Y. 2005) .........................................................45n

*Yen* v. *Buchholz*,
    2010 WL 1758623 (N.D. Cal. Apr. 30, 2010) ...........................................42n

**Regulations**

12 C.F.R. 223.52(a)(4)................................................................................35n

**Rules**

Federal Rule of Civil Procedure 4(k)(1)(c)...............................................42n

Federal Rule of Civil Procedure 4(k)(2) ...................................................42n

**Statutes**

15 U.S.C. § 22...........................................................................42, 44, 45n

Following the Second Circuit's decision in *Charles Schwab Corp.* v. *Bank of America Corp.*, 883 F.3d 68 (2d Cir. 2018) ("*Schwab*"), Defendants[1] respectfully submit this joint memorandum of law in support of their motion to dismiss[2] the Challenged Claims (*see* Appendices 2-4) for lack of personal jurisdiction and venue pursuant to Federal Rule of Civil Procedure 12(b)(2) and (b)(3) and in opposition to the Moving Plaintiffs'[3] motions for leave to amend, as their proposed amendments addressing personal jurisdiction and venue are futile.

## PRELIMINARY STATEMENT

This Court has long recognized that LIBOR was at all relevant times administered by a U.K. trade association based upon submissions that were "determined or transmitted" from locations outside the United States.  Because of the foreign nature of the alleged misconduct, in a series of rulings dating back to 2015, this Court has repeatedly held that it could not exercise spe-

---

[1] For ease of reference, this memorandum uses the term "Defendants" to describe collectively entities named in one or more of the above-captioned actions, including former defendants that have been dismissed from all non-stayed actions.  Appendix 1 lists each action that is the subject of Defendants' motion to dismiss or in which Defendants oppose leave to amend and the Defendants that challenge jurisdiction in each.  Unless specified otherwise, internal citations and quotation marks are omitted and all docket numbers refer to No. 11-md-2262 (S.D.N.Y.).

[2] The motion to dismiss is directed at the Schwab Plaintiffs' Second Amended Complaint (Dkt. 2578) (the "Schwab SAC") and *Federal Deposit Insurance Corporation as Receiver for Doral Bank* v. *Bank of America Corporation, et al.*, No. 18-cv-01540 (Dkt. 1) ("Doral").   Certain Plaintiffs also filed amended complaints in protective actions, which have since been stayed by this Court and are therefore not addressed here.  *E.g.*, Dkt. 2588, 2596.

[3] The Moving Plaintiffs and the relevant motions are: *Federal Deposit Insurance Corporation as Receiver for Amcore Bank, N.A., et al.,* v. *Bank of America Corporation, et al.* ("FDIC"), No. 14-cv-01757 (Dkt. 251) (MDL Dkt. 2562); *Federal Deposit Insurance Corporation as Receiver for Doral Bank* v. *Bank of America, N.A., et al.*, No. 18-cv-01540 (Dkt. 52) (MDL Dkt. 2562); *Principal Financial Group, Inc., et al.* v. *Bank of America Corporation, et al.* ("Principal Financial"), No. 13-cv-06014  (Dkt. 254) (MDL Dkt. 2546); *Principal Funds, Inc., et al.* v. *Bank of America Corporation, et al.* ("Principal Funds," and together with Principal Financial, the "Principal Plaintiffs"), No. 13-cv-06013 (Dkt. 246) (MDL Dkt. 2551); *The Federal Home Loan Mortgage Corporation* v. *Bank of America Corporation, et al.* ("Freddie Mac"), No. 13-cv-03952 (Dkt. 293) (MDL Dkt. 2563) (together the "FFP" Plaintiffs); *National Credit Union Administration Board* v. *Credit Suisse Group AG, et al.* ("NCUA"), No. 13-cv-07394 (Dkt. 244) (MDL Dkt. 2544).  Unless otherwise specified, references herein to "Plaintiffs" include the Schwab Plaintiffs, Doral, and Moving Plaintiffs.  Each Defendant joins this memorandum to the extent (and only to the extent) that such Defendant is named in the Schwab Plaintiffs' Second Amended Complaint, in Doral's Complaint, or in one or more of the Moving Plaintiffs' proposed amended complaints, and only insofar as this memorandum moves to dismiss or opposes leave to amend in such actions on personal jurisdiction or venue grounds.  Although the Lender Plaintiffs violated this Court's prior instruction (Dkt. 1380) and named Defendants who had previously been dismissed in Lender Plaintiffs' proposed amended complaint (Dkt. 2572), Defendants do not understand the Lender Plaintiffs' proposed amendment as an attempt to reassert jurisdiction against the previously-dismissed Defendants.  The previously-dismissed Defendants expressly reserve all defenses, including as to jurisdiction and venue.

1

cific jurisdiction over any claim premised solely on the alleged persistent suppression of LIBOR. These rulings have also made clear that the Court can exercise personal jurisdiction only with respect to certain claims arising from direct dealings between Plaintiffs and certain Defendants or arising from transactions in Defendant-issued instruments (and, even then, only in limited circumstances). *Schwab*, which largely affirmed these rulings and remanded to allow the Schwab Plaintiffs an opportunity to address certain defects in their allegations, changes none of these principles and counsels in favor of dismissal once again. The Second Circuit and this Court have provided clear guidance about what is necessary for Plaintiffs to establish jurisdiction, and Plaintiffs have failed to meet their burden.

This Court and the Second Circuit in *Schwab* have analyzed jurisdiction on a claim-by-claim and defendant-by-defendant basis and have distinguished what is necessary to establish specific jurisdiction for claims based solely on Defendants' allegedly manipulative submissions — such as Plaintiffs' persistent suppression-based antitrust or Exchange Act claims (the "Non-Counterparty Claims") — from claims based on Defendants' direct dealings with Plaintiffs, such as Plaintiffs' fraudulent omission and implied covenant claims (the "Counterparty Claims"). *See Schwab*, 883 F.3d at 83-84. Under these prior rulings, Non-Counterparty Claims are subject to specific jurisdiction only in the locations where the relevant Defendants' LIBOR submissions were "determined or transmitted" (not where Defendants transacted in LIBOR-based instruments). Counterparty Claims are subject to jurisdiction in the locations where the relevant Defendant engaged in a "course of dealing" with a Plaintiff, where a bond was issued, or where designated in a forum selection clause.

Plaintiffs' post-*Schwab* attempts to establish personal jurisdiction fall short of what this Court's prior decisions and *Schwab* require of them. Plaintiffs still fail to establish specific ju-

risdiction over *any* of the Non-Counterparty Claims.  Plaintiffs maintain that *Schwab* allows them to again argue, as they have unsuccessfully in the past, that Defendants' marketing and trading activities in LIBOR-based instruments in the United States were somehow substantially connected to the alleged overseas manipulation of LIBOR.  But the "new" allegations on which Plaintiffs purport to rely are nothing more than a repackaging of allegations that this Court has previously considered and rejected as insufficient to establish jurisdiction over any Defendant.  Nothing in *Schwab* saves these allegations.

Plaintiffs' attempt to expand the basis for jurisdiction over additional Counterparty Claims also fails.  Plaintiffs base these claims largely on alleged specific transactions in the United States.  As such, personal jurisdiction may only be established against the obligor of the particular instrument and, even then, only in certain jurisdictions.  Plaintiffs contend, based on their reading of *Schwab*, that there is jurisdiction over parties *other* than an obligor and in jurisdictions that lack a substantial connection to these transactions.  But neither *Schwab* nor Plaintiffs' allegations provides any basis to establish jurisdiction over such claims.

Plaintiffs' efforts to allege jurisdiction based on the activities of Defendants' affiliates and alleged co-conspirators also fail.  Plaintiffs come nowhere close to meeting the standards for either of these jurisdictional theories.  Throughout their pleadings, Plaintiffs continue to impermissibly refer to parent and affiliate entities as single, grouped entities, making it impossible to assess each Defendant's contacts individually.  Plaintiffs also persist, despite *Schwab's* clear guidance to the contrary, in their attempts to impute transactions with certain Defendants' subsidiaries or affiliates to those Defendants, based only on conclusory allegations of agency.  Plaintiffs' attempts to establish conspiracy jurisdiction are equally deficient.  Plaintiffs do not plausibly allege acts in furtherance of the alleged LIBOR manipulation in the relevant forums, and,

3

ignoring decades of Second Circuit precedent, do not even attempt to plead that Defendants exercised the requisite direction and control over their alleged co-conspirators' suit-related conduct necessary to exercise jurisdiction and satisfy due process.

Plaintiffs' remaining arguments are meritless. The Schwab Plaintiffs have failed to demonstrate that this Court should exercise pendent personal jurisdiction over their state-law claims against unrelated parties. Plaintiffs do not sufficiently plead that the Venue Defendants[4] are subject to venue under the Clayton Act, and therefore cannot use that statute to establish jurisdiction over the Venue Defendants. The Schwab Plaintiffs' theory of nationwide general jurisdiction over certain Defendants should be rejected for the same reasons this Court has previously rejected that theory: it fails to comport with due process. Finally, Plaintiffs' theories of jurisdiction, even if they were sufficiently pled, would not comport with fair play, substantial justice, or international comity. Plaintiffs have failed to adequately address *Schwab* and have yet again failed to establish jurisdiction over the Challenged Claims.

## BACKGROUND

This Court and the Second Circuit have addressed the limits of personal jurisdiction in this multi-district litigation in a series of rulings dating back to 2015. Purportedly responding to the jurisdictional issues raised by the Second Circuit in *Schwab*, which largely affirmed this Court's prior jurisdictional rulings, Plaintiffs in six actions submitted amended and proposed amended complaints, and a seventh Plaintiff previously filed a new complaint. *See supra* nn.2-3. This Court's prior rulings largely resolve the "new" jurisdictional allegations in each action now before this Court.

---

[4] The Venue Defendants are identified in Appendix 4, which also identifies the claims that Venue Defendants challenge on venue grounds.

### A.      Relevant Prior Jurisdictional Rulings

#### 1.      *LIBOR IV & V*

After a series of Supreme Court and Second Circuit decisions[5] that together fundamental-ly narrowed the availability of personal jurisdiction, this Court addressed the question of person-al jurisdiction in *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ("*LIBOR IV*").   There, the Court considered and rejected the majority of the jurisdictional theories advanced by the so-called "Direct Action Plaintiffs" on a wide range of federal and state law claims.

Analyzing jurisdiction on a claim-by-claim and defendant-by-defendant basis, this Court addressed two broad categories of Plaintiffs' claims.[6]   The first consisted of claims based solely on Defendants' alleged manipulation of the LIBOR submission process (the Non-Counterparty Claims).  *Id.* at *19-20.  The Court rejected Plaintiffs' primary argument that jurisdiction could be established over these claims based on allegations that "defendants marketed LIBOR and LIBOR-based financial products within the United States."  *Id.* at *29-30.   The Court explained that allegations of "LIBOR 'marketing' activities which reached a given forum" cannot serve as a jurisdictional basis for claims based on "the defendant's manipulation of LIBOR," or for claims brought by "plaintiffs who allege that they were defrauded by a panel bank without hav-ing any relationship with that bank."  *Id.* at *30.   Instead, as to these claims, the Court upheld jurisdiction only "in the forum containing the office from which a defendant determined, or

---

[5] Among these decisions are:  *Daimler AG* v. *Bauman*, 571 U.S. 117 (2014); *Walden* v. *Fiore*, 571 U.S. 277 (2014); *Gucci America, Inc.* v. *Weixing Li*, 768 F.3d 122 (2d Cir. 2014); and *Waldman* v. *Palestine Liberation Org.*, 935 F.3d 317 (2d Cir. 2016).

[6] For purposes of assessing specific personal jurisdiction over certain CEA claims, this Court has held that a national contacts approach governs.  *LIBOR IV*, 2015 WL 6243526, at *23.  Defendants respectfully disagree with that ruling and preserve for appeal their argument that the relevant contacts are those that existed with the state and not the na-tion, *see* Dkt. 745 at Part II.B, but assume for purposes of this motion that this Court will apply its prior ruling to certain Plaintiffs' federal antitrust and Securities Exchange Act claims.

transmitted, a false LIBOR submission."[7]  *Id.* at *32.  Relying on uncontroverted declarations from each panel bank that each had determined and transmitted their LIBOR submissions from outside the United States, the Court subsequently confirmed that Plaintiffs had failed to establish "that the LIBOR determination and submission process occurred any place other than outside the United States."  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 1733463, at *3 (S.D.N.Y. Apr. 29, 2016) ("Apr. 29, 2016 Order").

The second category of claims consisted of those based on Plaintiffs' transactions with certain obligor Defendants or on instruments issued by them (the Counterparty Claims).  *LIBOR IV*, 2015 WL 6243526, at *31.  The Court held that these claims could survive against only those Defendants that were obligors on LIBOR-based instruments and not against those who served as underwriters, broker-dealers, or in other roles for such transactions.  *Id.*  The Court further distinguished the obligor Defendants that were counterparties to swaps from those that issued bonds or other securities.  As to swaps, the Court ruled "that, as a general matter, the swap agreements support personal jurisdiction in the plaintiffs' home forums over claims . . . concerning the contractual relationship that they embody."  *Id.* at *31.  But the Court declined to extend this reasoning to "broadly-traded securities such as bonds and MBS," because these products "may arrive in the hands of plaintiffs and other investors anywhere in the world by the investors' own trades — not at the direction of the issuers."  *Id.*  For these products, the Court held that jurisdiction existed in the forum "where the bond was issued (i.e., where the bond was placed with an underwriter or agent for sale or marketing), but not necessarily where a plaintiff suffered injury because a bond, once issued, may be traded anywhere in the world without action by the issuer."  *Id.* at

---

[7] In the case of alleged trader-based conduct not at issue in the Schwab Plaintiffs', Doral's, or Moving Plaintiffs' actions, the Court held that jurisdiction would also lie in the location from which a request for a manipulated LIBOR submission was made.  *Id.* at *32.  None of the pleadings at issue here alleges trader-based misconduct as a basis for liability.

*37.  The Court also upheld jurisdiction where permitted by a forum selection clause, but only if the claim "relate[d] to the particular contractual relationship" governed by the contract containing the clause.[8]  *Id.* at *34.

Following *LIBOR IV*, certain Plaintiffs, including Freddie Mac, sought reconsideration, and there remained several disputes among the parties as to the status of various claims.  These were resolved in a series of subsequent rulings.  In largely denying Freddie Mac's motion for reconsideration, the Court recognized that certain Counterparty Claims based on mortgage loan transactions with certain Defendants could be subject to jurisdiction in Virginia, where Freddie Mac resided, because Freddie Mac had alleged that those Defendants had engaged in a continued course of mortgage loan-related dealings with Freddie Mac in Virginia.  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 1301175, at *4 (S.D.N.Y. Mar. 31, 2016) ("Mar. 31, 2016 Order").  Other interim rulings elaborating on *LIBOR IV* followed.[9]

Soon after *LIBOR IV*, this Court issued *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2015 WL 6696407 (S.D.N.Y. Nov. 3, 2015) ("*LIBOR V*"), which applied *LIBOR IV*'s jurisdictional rulings to the claims of the putative class action plaintiffs.  *Id.* at *8-9.  The Court also held in *LIBOR V* that allegations that a defendant "controlled [an affiliate] to a considerable degree" were insufficient to plead an agency relationship for purposes of jurisdiction.  *Id.* at *21.

---

[8] The Court considered and rejected Plaintiffs' theory of conspiracy jurisdiction because Plaintiffs "failed to plausibly allege a conspiracy to manipulate USD LIBOR for traders' benefit or to suppress LIBOR."  *Id.* at *29.  Similarly, having determined that the Schwab Plaintiffs failed to state claims under the Securities Exchange Act of 1934 (the "Exchange Act") and that certain Plaintiffs failed to plausibly allege an antitrust conspiracy to fix the market for benchmark rates, the Court did not address the question of personal jurisdiction as to those claims.  *Id.* at *70, 89-90.

[9] *See, e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 1558504, at *2 (S.D.N.Y. Apr. 15, 2016) (addressing, among other things, "[a]llegations that [a panel bank and its affiliates] operated as 'one bank'" and finding that such allegations "are insufficient to properly plead" agency); Apr. 29, 2016 Order, 2016 WL 1733463, at *1-3 (denying jurisdictional discovery and accepting Defendants' declarations, subject to certain clarifications, that the LIBOR submission and determination process occurred overseas); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 4773129, at *1-3 (S.D.N.Y. Sept. 12, 2016) ("Sept. 12, 2016 Order") (resolving a range of disputes regarding the adequacy of Plaintiffs' Counterparty Claims).

Rather, plaintiffs must plausibly allege that the affiliate was an agent as to the "specific activities that allegedly violated [the relevant laws]." *Id.*[10]

### 2.   LIBOR VI

Following *Gelboim* v. *Bank of America Corp.*, 823 F.3d 759 (2d Cir. 2016) ("*Gelboim*"), which revived certain previously-dismissed antitrust claims, the parties briefed personal jurisdiction issues relating to those claims.  In connection with that briefing, Plaintiffs made voluminous factual submissions based on Plaintiffs' review of millions of pages of discovery, various regulatory settlements, and transcripts from various LIBOR-related criminal proceedings in the U.S. and U.K.[11]

Relying on *Gelboim's* reference to the alleged conspiracy having been motivated by "increased profits," Plaintiffs renewed their argument that U.S.-based marketing and trading activities were suit-related and, therefore, could serve as a basis for establishing specific jurisdiction over Non-Counterparty Claims, such as antitrust claims.  In the alternative, Plaintiffs argued that the extensive discovery they had received demonstrated that at least a few Defendants had determined or transmitted their LIBOR submissions from the United States, and that, as a result, all Defendants should be subject to jurisdiction on a theory of conspiracy jurisdiction.

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016) ("*LIBOR VI*") rejected each of those arguments.  The Court held that the only well-pled object of the alleged conspiracy was "the projection of financial soundness," and that, despite Plaintiffs' extensive factual submissions, Plaintiffs had "failed to establish that any defend-

---

[10] The Court held that Plaintiffs plausibly alleged that a Credit Suisse subsidiary was its parent's agent with respect to the subsidiary's corporate bond issuance.  *Id.* at *22.  No Plaintiffs make similar agency allegations here.

[11] *See* Joint Decl. of David E. Kovel & Michael D. Hausfeld in Supp. of Pls.' Coordinated Opp'n to Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction and Exs. (Dkt. 1510); Pls.' Suppl. Statement of Additional Jurisdictional Facts (Dkt. 1517); Joint Reply Mem. of Law in Further Supp. of Defs.' Mot. to Dismiss All Antitrust Claims for Lack of Personal Jurisdiction Appendix, 1; Jurisdictional Allegations App. to Oct. 26, 2016 Letter from Joel Kurtzberg to Judge Buchwald (Dkt. 1626-3).

ant committed an act in furtherance of the conspiracy in or directed at the United States." *Id.* at *3. The Court specifically held that "sales of LIBOR-based products are not meaningful in a jurisdictional analysis because they were not within the scope of the conspiratorial agreement; and the scope of the agreement cannot be broadened retroactively by the fact that the conspirators took steps after the conspiracy which incidentally had [a particular] effect." *Id.* at *8. As a result, the Court held that it could not exercise conspiracy jurisdiction or exercise jurisdiction over antitrust claims against any non-domestic Defendants.[12] *Id.* at *3.

*LIBOR VI* also rejected the FFP Plaintiffs' attempt to amend to include an alternative antitrust theory that had been previously dismissed in *LIBOR IV*. For a second time, the Court declined to consider the viability of this theory, holding that "*Gelboim* did not revive an alternative theory of antitrust violation . . . that defendants fixed the market for benchmark rates."[13] *LIBOR VI*, 2016 WL 7378980, at *2 n.3.

### 3.   Schwab

In *LIBOR IV*, this Court dismissed all claims in the Schwab Plaintiffs' 2013 action, No. 13-cv-7005,[14] consisting of various Exchange Act and state law claims, for lack of personal jurisdiction and on the merits. The Schwab Plaintiffs appealed. In February 2018, the Second Circuit largely affirmed this Court's prior jurisdictional rulings. The Second Circuit upheld this Court's claim-by-claim and defendant-by-defendant jurisdictional approach. *Schwab*, 883 F.3d

---

[12] This decision is currently on appeal. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 17-1569 (2d Cir. filed May 12, 2017).

[13] In a subsequent order denying the FFP Plaintiffs' requests for reconsideration of this Court's prior rulings with respect to their alternative theory, the Court confirmed that as "the alternative theory was dismissed by this Court and neither before nor addressed by the Second Circuit, it remains dismissed." Feb. 16, 2017 Order (Dkt. 1774).

[14] Separate from the Schwab Plaintiffs' 2013 action, the Schwab Plaintiffs also maintain claims in the following actions, which are currently on appeal: *Schwab Short-Term Bond Market Fund, et al.* v. *Bank of America Corp., et al.*, 1:11-cv-06409-NRB, *Charles Schwab Bank, N.A., et al.* v. *Bank of America Corp., et al.* 1:11-cv-06411-NRB, *Schwab Money Market Fund, et al.* v. *Bank of America Corp., et al.*, 1:11-cv-06412-NRB.

at 79, 83.   It separately analyzed three groups of defendants: (i) "Direct Seller Defendants," which themselves allegedly entered into transactions directly with plaintiffs in California; (ii) "Indirect Seller Defendants," whose affiliates allegedly entered into transactions with plaintiffs in California; and (iii) "Non-Seller Defendants," which were not alleged to have traded with plaintiffs at all — either  directly or through an affiliate.   *Id*. at 82-87.

Accepting this Court's distinction between Non-Counterparty and Counterparty Claims, the Second Circuit separately addressed the Schwab Plaintiffs' claims "premised solely on Defendants' false LIBOR submissions in London" from their claims "relating to *omissions* by Defendants in the course of selling . . . financial products sold to Schwab in California."   *Id*. at 83. As to the Non-Counterparty Claims, the Second Circuit held that the Schwab Plaintiffs had failed to establish jurisdiction over any Defendant.   *Id.* at 83-84.   As to the Counterparty Claims, it held that the Schwab Plaintiffs had failed to allege jurisdiction as to the Indirect Seller Defendants and the Non-Seller Defendants.   As to the Indirect Seller Defendants, it explained that the Schwab Plaintiffs' "sparse allegations of agency [were] too conclusory to make a *prima facie* showing of personal jurisdiction" and, as to the Non-Seller Defendants, the Schwab Plaintiffs failed to allege that they undertook California-directed sales as part of a conspiracy such that they would be subject to jurisdiction.   *Id.* at 85-87.   After considering an expanded record — including declarations that were not before this Court when it decided *LIBOR IV*, alleging solicitation by some defendants and non-parties — the Second Circuit held that, with respect to two Direct Seller Defendants (Deutsche Bank and UBS), plaintiffs had adequately alleged facts to support jurisdiction but only with respect to the claims directly arising from alleged fraudulent omissions in connection with the sale of financial products to the Schwab Plaintiffs (i.e., the Counterparty Claims).   *Id.* at 83-87.   The Second Circuit also granted the Schwab Plaintiffs leave to

amend on the question of personal jurisdiction, limited however to: (i) "clarify[ing] the status of the grouped entities (Citibank, HSBC, JPMorgan Chase, and Bank of America)"; (ii) "add[ing] allegations in support of [their] agency and conspiracy theories of jurisdiction;" and (iii) giving this Court an opportunity to "consider . . . whether it is appropriate to exercise pendent personal jurisdiction." *Id.* at 90.

**B.    Plaintiffs' Amended and Proposed Amended Complaints**

On remand, this Court allowed additional Direct Action Plaintiffs to file proposed amended complaints to address the issues *Schwab* identified. However, it rejected a request by certain Plaintiffs to amend their complaints without formally seeking leave to do so, explaining that "the burden falls on the [plaintiffs] to demonstrate why leave to amend is warranted," and that "the scope of any amendment shall be limited to those prompted by the Second Circuit's decision in *Schwab*." Apr. 11, 2018 Order (Dkt. 2490). The Court cautioned that "[t]he issuance of intervening authority offers no occasion to add or alter unrelated allegations that a plaintiff wishes had been better pleaded in the first instance." *Id.* Amended complaints or proposed amended complaints in seven actions are currently before this Court.

*1.    Schwab Second Amended Complaint*

The Schwab Plaintiffs' Second Amended Complaint includes state common law and federal securities claims premised on two separate sets of allegations: (1) that Defendants in their action made false LIBOR submissions to the BBA (i.e., Non-Counterparty Claims), *e.g.*, Schwab SAC ¶ 185, and (2) that those Defendants failed to adequately disclose in offering materials (on which Schwab allegedly relied) that LIBOR was artificially suppressed (i.e., Counterparty Claims), *e.g.*, Schwab SAC ¶¶ 186, 224. The Schwab Plaintiffs premise specific jurisdiction on the basis that certain Defendants, either themselves or through affiliates, marketed and sold

LIBOR instruments to the Schwab Plaintiffs in California.[15]   *E.g.*, Schwab SAC ¶¶ 187, 252. The Schwab Plaintiffs also claim that (i) the Court can exercise jurisdiction over all Defendants in their action based on allegations of conspiracy, *see* Schwab SAC ¶¶ 253-264; (ii) the Court can exercise pendent jurisdiction over the Schwab Plaintiffs' state law claims, *see* Schwab SAC ¶¶ 238-240; and (iii) certain Defendants with a principal place of business anywhere in the United States are subject to general jurisdiction in California based on a nationwide contacts analysis, *see* Schwab SAC ¶¶ 219-22.   In contravention of this Court's rulings, the Second Amended Complaint includes amendments that exceed those authorized by the Second Circuit and are instead "allegations that a plaintiff wishes had been better pleaded in the first instance."  Apr. 11, 2018 Order (Dkt. 2490).

### 2.   *FFP Plaintiffs*

The FFP Plaintiffs filed motions for leave to amend their respective pleadings on similar grounds.  The FFP Plaintiffs' claims largely fit into three categories: (i) federal and state antitrust claims; (ii) breach of contract claims; and (iii) state common law fraud claims based on the same theories of fraud asserted by the Schwab Plaintiffs.  As to each of the FFP Plaintiffs, the Court has already addressed (and disposed of) the bulk of these claims, including their antitrust claims and their fraud claims that do not depend on a contractual relationship.[16]

The proposed amendments purport to add two categories of jurisdictional allegations in response to *Schwab*: (i) additional details regarding the relationships between certain panel bank

---

[15] The Schwab Plaintiffs' *only* basis for asserting personal jurisdiction over Defendants BTMU, Lloyds (as defined in n.20 *infra*), Norinchukin, Portigon, and Westdeutsche ImmobilienBank is their conspiracy jurisdiction theory.  As to certain Defendants in the other actions subject to this motion who are not named as Defendants in the Schwab SAC (e.g., Société Générale and the BBA), Plaintiffs do not allege any Counterparty Claims, and therefore the only possible basis for jurisdiction is conspiracy jurisdiction.

[16] One exception is the claims brought by FDIC on behalf of Doral, which filed its first complaint in 2018.  Defendants have not yet had the opportunity to move to dismiss Doral's claims.  Because the Doral claims mirror those in the original FDIC complaint, however, this Court's prior rulings should apply with equal force.

Defendants and their subsidiaries or affiliates[17] and (ii) supposed in-forum overt acts in further-ance of a conspiracy.[18]  Like the Schwab Plaintiffs, each FFP Plaintiff contravenes this Court's rulings by seeking to amend its complaint in ways that go beyond the issues as to which the Sec-ond Circuit in *Schwab* and this Court granted leave to amend.  For example, each seeks to amend its complaint not just to allege supposed overt acts in furtherance of conspiracy jurisdiction, as contemplated by *Schwab*, but also to add allegations that the Court rejected as insufficient to support jurisdiction over antitrust claims in *LIBOR VI*.  (Freddie Mot. for Leave, at Part V).  In addition, these proposed "new" allegations include assertions supporting the same boycott theory that these Plaintiffs offered — and this Court rejected — in *LIBOR IV* and again in *LIBOR VI*.[19] Freddie Mac and Principal Plaintiffs also improperly seek to use *Schwab* as a basis for amending their complaints to include additional data regarding their alleged direct and indirect transactions with certain Defendants — data that was always in Plaintiffs' possession and could have been included in their prior pleadings, but was not.  (Freddie Mot. for Leave, at Part IV.A).

  *3. NCUA*

  The National Credit Union Administration, which filed suit in Kansas on behalf of five failed credit unions based in Kansas, California, Texas, Illinois, and Connecticut, also moved for leave to amend its complaint, which had previously been the subject of briefing in *LIBOR IV* and *VI*.  NCUA asserts breach of contract claims against certain Defendants that were swap counter-parties of certain of the credit unions and asserts tortious interference, unjust enrichment, and federal and state antitrust claims premised on persistent suppression against all Defendants in

---

[17] Freddie Mot. for Leave, at 1, 4; FDIC Mot. for Leave, at 2, 6; Principal Financial Mot. for Leave, at 8; Principal Funds Mot. for Leave, at 9.

[18] Freddie Mot. for Leave, at 1; FDIC Mot. for Leave, at 2, 4-5; Principal Financial Mot. for Leave, at 7-8; Principal Funds Mot. for Leave, at 8-9.

[19] *Compare* FDIC PSAC ¶ 213, Freddie PTAC ¶ 310, Principal Financial PSAC ¶ 288, *and* Principal Funds PSAC ¶ 287, *with LIBOR IV*, 2015 WL 6243526, at *48, *and LIBOR VI*, 2016 WL 7378980, at *2 n.3.

13

their action.  NCUA did not include in its proposed amendments new allegations concerning any of the three issues the Second Circuit held that the Schwab Plaintiffs should be granted an opportunity to address.  Instead, NCUA seeks leave to amend its complaint to include additional details regarding specific LIBOR-based transactions (transactional details that were always in NCUA's possession and could have been pled earlier, but were not), and to add allegations about certain Defendants' supposed contacts with Kansas.  (NCUA Mot. for Leave, at 1.)

### C.     Defendants

Defendants move to dismiss the Schwab SAC and Doral Complaint for lack of personal jurisdiction and venue and oppose the Moving Plaintiffs' motions for leave to amend on the ground that the proposed amendments directed at personal jurisdiction and venue are futile.  The Defendants over which Plaintiffs fail to establish jurisdiction include foreign financial institutions headquartered and organized under the laws of a foreign country — Canada, various countries in Europe, Hong Kong, and Japan.[20]  They also include financial institutions headquartered and incorporated in various states in the United States.[21]  Certain Defendants[22] are national banks

---

[20] These Defendants are: Barclays Bank plc, Coöperatieve Rabobank U.A. (f/k/a Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.), Credit Suisse Group AG, Credit Suisse International, Credit Suisse AG, Deutsche Bank AG, HSBC Holdings plc, HSBC Bank plc, The Hongkong and Shanghai Banking Corporation Ltd., J.P. Morgan Markets Ltd. (f/k/a Bear Stearns International Ltd.), J.P. Morgan Dublin plc (f/k/a JPMorgan Bank Dublin plc f/k/a Bear Stearns Bank plc), Lloyds Banking Group plc ("LBG"), Lloyds Bank plc (f/k/a Lloyds TSB Bank plc), HBOS plc, Bank of Scotland plc ("BoS") (together with LBG, Lloyds Bank, and HBOS, "Lloyds"), Merrill Lynch International Bank Ltd., The Norinchukin Bank, Portigon AG (f/k/a WestLB AG), Royal Bank of Canada, The Royal Bank of Scotland Group plc, The Royal Bank of Scotland plc, The Bank of Tokyo-Mitsubishi UFJ, Ltd. (n/k/a MUFG Bank, Ltd.), Société Générale, UBS AG and Westdeutsche ImmobilienBank AG.

[21] These Defendants are: Bank of America Corporation, Banc of America Securities LLC (n/k/a Merrill Lynch, Pierce, Fenner & Smith, Inc.), Merrill Lynch & Co. Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., and Merrill Lynch Capital Services, Inc., Barclays Capital Inc., Citigroup, Inc., Citigroup Global Markets, Citigroup Financial Products, Citi Swapco, Credit Suisse Securities (USA) LLC (f/k/a First Boston International), Deutsche Bank Securities, Inc., JPMorgan Chase & Co., J.P. Morgan Securities LLC (f/k/a J.P. Morgan Securities Inc.), Bear Stearns Capital Markets, Inc., RBS Securities Inc., and UBS Securities LLC.

[22] These Defendants are: Bank of America, N.A., Citibank, N.A., HSBC Bank USA, N.A., JPMorgan Chase Bank, N.A., and Chase Bank, USA, N.A.

incorporated under the laws of the United States.[23]   Finally, Defendants include the British

Bankers' Association, an English unincorporated association organized under English law, and

its affiliates BBA Enterprises Ltd. and BBA LIBOR Ltd.[24] (collectively the "BBA").  Defendants

move against or oppose leave to amend as to the Challenged Claims, which are set forth in Ap-

pendices 2-4.[25]

### D.    Plaintiffs' Jurisdictional Allegations

Plaintiffs' amended and proposed amended complaints all allege that Defendants con-

spired to persistently suppress LIBOR.[26]   Although the specific allegations vary from complaint

to complaint, Plaintiffs generally allege that each false submission to the BBA constituted a false

or misleading statement,[27] and that in the course of transacting with Plaintiffs (to the extent De-

fendants did so), Defendants failed to disclose that LIBOR was artificially suppressed.[28]   Certain

Plaintiffs also seek to amend their complaints to include allegations related to their alternative

"boycott" theory.[29]

In support of these claims, Plaintiffs rely almost exclusively on allegations that they made

before *Schwab* was decided, and that this Court has already rejected.  These include allegations

---

[23] Although national banks are incorporated under the laws of the United States, they are not incorporated in every state, and the same *Daimler* analysis should apply.  *Cf. Wachovia Bank, N.A.* v. *Schmidt*, 546 U.S. 303, 307, 317 (2006) (a national bank is not a citizen of every state in which it has a branch office but rather "a citizen of the State in which its main office, as set forth in its articles of association, is located").

[24] On or about September 23, 2014, BBA LIBOR Ltd. changed its name to BBA Trent Ltd.

[25] To the extent that this Court grants the Moving Plaintiffs' requests for leave to amend in whole or in part, Defend-ants reserve the right to move to dismiss any live claims pursuant to Federal Rule of Civil Procedure 12 at the ap-propriate time.

[26] *E.g.*, FDIC PSAC ¶ 1; Freddie PTAC ¶¶ 280-353; Principal Financial PSAC ¶ 4; Principal Funds PSAC ¶ 4; Schwab SAC at ¶ 5; NCUA PSAC ¶ 1.

[27] *E.g.*, FDIC PSAC ¶ 185; Freddie PTAC ¶ 367; Principal Financial PSAC ¶ 60; Principal Funds PSAC ¶ 59; Schwab SAC at ¶ 185; NCUA PSAC ¶ 2.

[28] *E.g.*, FDIC PSAC ¶ 323; Freddie PTAC ¶ 559; Principal Financial PSAC ¶ 239; Principal Funds PSAC ¶ 238; Schwab SAC at ¶ 186; NCUA PSAC ¶¶ 293, 310.

[29] *E.g.*, FDIC PSAC at ¶ 251; Freddie PTAC ¶ 434; Principal Financial PSAC ¶ 9; Principal Funds PSAC ¶ 9.

that (i) Defendants' LIBOR submissions were transmitted into the forum through Thomson Reuters, Bloomberg terminals, or other services that reported LIBOR in the United States;[30] (ii) Defendants marketed the accuracy of LIBOR in the United States;[31] (iii) certain Defendants solicited business from Plaintiffs and other counterparties within the relevant forum;[32] and (iv) certain Defendants' LIBOR submissions were directed from within the relevant forum.[33]

## ARGUMENT

"Once a defendant has challenged personal jurisdiction, the plaintiff bears the burden of establishing it." *LIBOR IV*, 2015 WL 6243526, at *21. The inquiry is defendant-specific, *see Keeton* v. *Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984), and focuses on the contacts "that the defendant *himself* creates with the forum State." *Walden*, 571 U.S. at 284. A plaintiff must additionally "establish the court's jurisdiction with respect to each claim asserted." *Schwab*, 883 F.3d at 83. Where, as here, actions brought outside of New York have been transferred here for pretrial multidistrict litigation proceedings, the Court should determine whether "a state court of general jurisdiction, in the state in which the action was filed, could constitutionally exercise personal jurisdiction under the precedents of the Supreme Court and the Second Circuit." *LIBOR IV*, 2015 WL 6243526, at *22.

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must "make out a *prima facie* showing that personal jurisdiction exists." *LIBOR IV*, 2015 WL 6243526, at

---

[30] *See* Freddie PTAC ¶¶ 64, 237, 239; Schwab SAC ¶¶ 2, 263, 270; FDIC PSAC ¶¶ 34, 140, 142; Principal Financial PSAC ¶ 44; Principal Funds PSAC ¶ 43; NCUA PSAC ¶ 51.

[31] *See* Freddie PTAC ¶ 303; Schwab PSAC ¶ 269; FDIC PSAC ¶ 35; Principal Financial PSAC ¶ 22; Principal Funds PSAC ¶ 21; NCUA PSAC ¶¶ 206-07.

[32] *See* Freddie PTAC ¶¶ 23, 30, 33, 45, 47, 64, 68, 70, 80, 87, 89, 99, 101, 116, 118, 129, 131, 146, 152, 158, 167, 169, 182, 192; Schwab PSAC ¶¶ 28, 37, 43, 52, 57, 73, 99, 109, 116, 122, 132-33, 137, 145, 152, 190; FDIC PSAC ¶¶ 10, 21, 34; Principal Financial PSAC ¶ 22; Principal Funds PSAC ¶ 21.

[33] *See* Freddie PTAC ¶¶ 59, 67, 77, 83, 113; FDIC PSAC ¶¶ 190, 194-95; Principal Financial PSAC ¶¶ 35-36, 40, 43, 60, 67, 69; Principal Funds PSAC ¶¶ 34-35, 39, 42, 59, 66, 68.

*21.  "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *Schwab*, 883 F.3d at 81-82.  While a court should "construe the pleadings and affidavits in the light most favorable to plaintiffs," a court need not "draw argumentative inferences in the plaintiff's favor," nor "accept as true a legal conclusion couched as a factual allegation."  *LIBOR IV*, 2015 WL 6243526, at *21.  A court may additionally "look beyond the pleadings to affidavits and supporting materials submitted by the parties."  *In re Aluminum Warehousing Antitrust Litig.*, 2015 WL 6472656, at *2 (S.D.N.Y. Oct. 23, 2015).

Moving Plaintiffs also request leave to amend.  Courts have "discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 619 (S.D.N.Y. 2013) ("*LIBOR II*").  Where a proposed amendment could not itself survive a motion to dismiss for lack of personal jurisdiction, leave to amend would be futile and should be denied.  *Spiegel* v. *Schulmann*, 604 F.3d 72, 78 (2d Cir. 2010).

# I.   PLAINTIFFS FAIL TO ESTABLISH JURISDICTION OVER THE NON-COUNTERPARTY CLAIMS

This Court's prior personal jurisdiction rulings, as clarified and largely affirmed by the Second Circuit in *Schwab*, easily dispose of all Non-Counterparty Claims.  *See* Appendix 2.[34] Plaintiffs argue that, even though each of these claims arises from the overseas LIBOR submission process, their new allegations demonstrate that certain Defendants' U.S.-based marketing

---

[34] Appendix 2 identifies the Non-Counterparty Claims that Defendants are moving to dismiss or as to which Defendants oppose leave to amend.  In identifying the actions and claims as to which they are moving to dismiss or opposing leave to amend on personal jurisdiction and venue grounds, *see* Appendices 1 to 4, Defendants have sought to account for this Court's prior rulings upholding plaintiffs' allegations of personal jurisdiction and venue in certain circumstances, but respectfully reserve their rights to challenge jurisdiction at later stages of the litigation and on appeal at an appropriate time.

17

and trading activities in LIBOR-based instruments confer jurisdiction in the United States.[35]  But the allegations Plaintiffs rely on are materially indistinguishable from those this Court previously addressed and unequivocally rejected, and nothing in *Schwab* compels a different result now. Jurisdiction exists over Non-Counterparty Claims only in "the forum containing the office from which a defendant determined, or transmitted, a false LIBOR submission"[36] and not, as Plaintiffs maintain, in the location where Defendants purportedly marketed and sold LIBOR-based transactions.  *LIBOR IV*, 2015 WL 6243526, at *29-32.  The reason for that is obvious:  For Non-Counterparty Claims, the marketing and sale of LIBOR-based products in the United States are not "suit-related conduct," *Schwab*, 883 F.3d at 83-84; in other words, they are not conduct that could have subjected any defendant to liability.  *See Waldman*, 935 F.3d at 343.  In the alternative, Plaintiffs argue that their new allegations demonstrate that alleged LIBOR manipulation occurred in the United States.  But, almost two years ago, the Court stated that it was "[a]bsolutely done" considering allegations of the type Plaintiffs previously submitted, Oct. 27, 2016 Hr'g Tr. at 17:15 (Dkt. 1642).  The additional allegations Plaintiffs rely on are essentially the same as those this Court previously found deficient.  Plaintiffs fail to establish jurisdiction over any Defendant as to any Non-Counterparty Claim.

### A.    Allegations Concerning Defendants' LIBOR Marketing and Trading Activities Fail to Establish Jurisdiction over Non-Counterparty Claims

Plaintiffs again argue that they can establish jurisdiction over Defendants on their Non-Counterparty Claims based on certain Defendants' marketing and trading activities in the United

---

[35] *See, e.g.*, FDIC PSAC ¶ 10; Freddie PTAC ¶ 23; Principal Financial PSAC ¶ 11; Principal Funds PSAC ¶ 11; Schwab SAC ¶¶ 224-25.

[36] To the extent Plaintiffs contend that the Court can exercise jurisdiction over Non-Counterparty Claims based on forum selection clauses, the Court has already considered and rejected this position.  *See* Sept. 12, 2016 Order, 2016 WL 4773129, at *2 ("Specifically, the forum selection clauses in the ISDA Master Agreements do not support the exercise of personal jurisdiction for false data fraud claims, which do not 'depend upon the existence of a contractual relationship between the parties.'") (quoting *LIBOR IV*, 2015 WL 6243526, at *34).

States on either a purposeful availment theory or so-called "effects" theory.  This Court has considered and rejected the very same argument on several occasions, holding that for such claims jurisdiction can be established only in "the forum containing the office from which a defendant determined, or transmitted, a false LIBOR submission," *LIBOR IV*, 2015 WL 6243526, at *32, and not based on the location of defendants' marketing and trading activities.  *See* Apr. 29, 2016 Order, 2016 WL 1733463, at *3 ("[T]he fact of significant activity . . . in this country, combined with some evidence of LIBOR manipulation in London, provides no indication that the LIBOR determination and submission process occurred any place other than outside the United States."); *see also LIBOR VI*, 2016 WL 7378980, at *10 (holding that "marketing activities are jurisdictionally irrelevant in the persistent suppression conspiracy").  None of Plaintiffs' allegations, each of which is identical to or materially similar to those previously submitted to this Court (*see infra* Part I.B), provides any basis for this Court to revisit those rulings.[37]

Indeed, the Second Circuit in *Schwab* affirmed this Court's rulings as to Non-Counterparty Claims.  Applying *Waldman's* element-driven analysis, *see Waldman*, 935 F.3d at 343, the *Schwab* Court held that the relevance of marketing and trading allegations for purposes of establishing jurisdiction turns on whether the claim (i) is "premised solely on Defendants' false LIBOR submissions in London" or rather (ii) "relat[es] to omissions by Defendants in the course of selling . . . financial products sold to [plaintiff in the forum]."  883 F.3d at 83-84.

---

[37] The Principal Plaintiffs also add allegations that misrepresent the findings of certain "[a]cademic researchers" to argue that "Defendants manipulated Libor specifically to profit from their holdings of Libor-related products." Principal Financial PSAC ¶ 103; Principal Funds PSAC ¶ 102 (citing Priyank Gandhi et al., *Financial market misconduct and public enforcement: The case of Libor manipulation* at 4 (Feb 10, 2012) ("Gandhi Article")).  Contrary to the Principal Plaintiffs' allegations, the Gandhi Article specifically distinguished between alleged suppression conduct and trader conduct, and only found incentives "supportive of banks misreporting their Libor submissions to profit from their holdings of Libor-related conduct" in the context of multi-directional trader conduct.  (Gandhi Article at 2-4.)  The Gandhi Article states that "the evidence for the signaling hypothesis" — i.e., the allegation that banks were "underreporting their borrowing costs to appear less risky" — was "statistically insignificant," and the article found "no association between banks's [sic] incentives for signaling and subsequent submissions."  (*Id.* at 2, 4.).

*Schwab* held that, for claims "premised solely on Defendants' false LIBOR submissions in London" (i.e., Non-Counterparty Claims), allegations that defendants marketed and sold billions of dollars of LIBOR-based financial instruments to plaintiffs in the forum could not establish jurisdiction on either a purposeful availment or causal effects theory. *Id.* at 83. As to purposeful availment, the Court rejected those allegations as a basis for jurisdiction because "the California transactions did not cause Defendants' false LIBOR submissions to the BBA in London, nor did the transactions in some other way give rise to claims seeking to hold Defendants liable for those submissions." *Id.* at 84. That conclusion was bolstered by the fact that "Schwab assert[ed] its false submission claims against all Defendants, including those that did not sell any products to Schwab." *Id.*

For similar reasons, the Second Circuit rejected the Schwab Plaintiffs' effort to establish jurisdiction based on such marketing and trading activities through the so-called "effects" test. The Court explained that this test requires allegations that defendants "expressly aimed" their conduct at the relevant forum, not merely that it was foreseeable that effects would be felt there. *Id.* at 87. The Schwab Plaintiffs' marketing and trading allegations, it held, demonstrated no more than foreseeability, and not that Defendants aimed their conduct there. *Id.* at 88. That was not sufficient.

*Schwab*'s reasoning with respect to claims premised solely on Defendants' allegedly false LIBOR submissions applies with equal force to *all* of Plaintiffs' Non-Counterparty Claims.[38] Although this Court did not previously reach the question of whether it had specific jurisdiction

---

[38] This is true even when the relevant forum is the United States, not just California, because Plaintiffs fail to allege anything suggesting that the purpose of the alleged persistent suppression conspiracy was to manipulate the U.S. market for LIBOR-based transactions. *See also Schwab*, 883 F.3d at 87 ("financial self-interest is not the same as furthering a conspiracy through California-directed sales, and nowhere in the Schwab Plaintiffs' complaint are there allegations that Defendants undertook such sales as part of the alleged conspiracy").

20

over the Schwab Plaintiffs' Exchange Act claims, *LIBOR IV*, 2015 WL 6243526, at \*70, or Plaintiffs' antitrust boycott claims, *id.*, at \*90, *Schwab*'s and this Court's reasoning apply fully to them as well.[39]   Both claims plainly incorporate Non-Counterparty Claims.   The Schwab Plaintiffs' Exchange Act claims and their state law fraud claims are based on nearly identical theories of liability based on Defendants' allegedly false LIBOR submissions.   Because Plaintiffs failed to allege jurisdiction over their Non-Counterparty state law fraud claims, they also fail to allege jurisdiction over the analogous Exchange Act claims.[40]   Plaintiffs similarly fail to establish jurisdiction over claims of an alleged conspiracy to boycott other benchmarks from coming to market because they fail to allege a sufficient causal connection between Plaintiffs' claims, the forum, and Defendants' supposed conduct.   *LIBOR IV*, 2015 WL 6243526, at \*90; *see also* Feb. 16, 2017 Order at 3-4, 6-7 (Dkt. 1774).

### B.   Plaintiffs Fail to Allege Suit-Related Conduct in or Expressly Aimed at the United States

In an attempt to satisfy the standards set forth in *Schwab*, Plaintiffs have largely repackaged the same allegations they relied on in their briefing leading to *LIBOR VI.*   As was true then, these allegations fail to meaningfully contradict Defendants' declarations[41] or otherwise demonstrate "that the LIBOR determination and submission process occurred any place other than out-

---

[39] Those claims also fail on the merits.   *See* Merits Mot. to Dismiss Br. at Part I.A, II.E; Merits Opp. Br. at Part II.

[40] This Court's prior rulings as to Counterparty Claims also apply with equal force to the Schwab Plaintiffs' Counterparty Exchange Act claims, just as this Court's prior rulings as to Non-Counterparty Claims apply to the Schwab Plaintiffs' Non-Counterparty Exchange Act Claims.   Schwab SAC ¶¶ 468-79.   As to Schwab Plaintiffs' Exchange Act Counterparty Claims, to the extent the Schwab Plaintiffs allege suit-related contacts, they fail to plausibly allege any suit-related contacts in any forum in the United States other than California.   Accordingly, while these claims would be subject to a nationwide-contacts analysis under this Court's prior rulings, *see supra* n.6, jurisdiction is still lacking.   And even if they did identify contacts in another U.S.-based forum, it would be unreasonable to subject Defendants to jurisdiction in California based on such attenuated contacts.   *See infra* Part VII.

[41] *See* the accompanying Declaration of J. Kurtzberg ("Kurtzberg Decl.") Exs. 1-2 (attaching declarations previously submitted in connection with prior briefing).

side the United States."  Apr. 29, 2016 Order, 2016 WL 1733463, at *3; *see also LIBOR VI*, 2016 WL 7378980, at *10 (same).

> 1. *Plaintiffs' Allegations That Defendants Transmitted LIBOR Rates to Thomson Reuters or Through Bloomberg Terminals Fail to Establish Jurisdiction*

Plaintiffs claim that their receipt of Defendants' LIBOR submissions through electronic means shows that the alleged conspiracy occurred in or was directed at the United States.[42]  But this Court has previously rejected identical allegations about the calculation of LIBOR by Thomson Reuters on behalf of the BBA, holding that just because "Thomson Reuters[] was headquartered in New York does not logically imply that the BBA or Thomson Reuters calculated LIBOR in New York."  *LIBOR IV*, 2015 WL 6243526, at *38 n.68.  It similarly rejected as insufficient allegations that LIBOR was transmitted to the U.S. through Bloomberg terminals.  *Id.* at *29-30.

Plaintiffs again seek to rely on previously-rejected allegations that Defendants transmitted their LIBOR submissions to Thomson Reuters in New York.[43]  Even if Plaintiffs plausibly alleged that panel bank Defendants sent their submissions to Thomson Reuters in New York (and they do not), this Court has already held that this purported contact alone would not establish jurisdiction.  *LIBOR VI*, 2016 WL 7378980, at *10.  Nothing in Plaintiffs' submissions requires the Court to revisit those rulings.

> 2. *Plaintiffs' Marketing Allegations Fail to Establish Jurisdiction*

Plaintiffs' amended and proposed amended complaints add allegations that Plaintiffs claim show that each panel bank Defendant affirmatively solicited Plaintiffs' business in the rel-

---

[42] *See e.g.* Freddie Mot. for Leave, at 17; FDIC Mot. for Leave, at 4-5; Principal Financial Mot. for Leave, at 7; Principal Funds Mot. for Leave, at 8; Schwab SAC ¶ 263.

[43] Principal Financial PSAC ¶ 44; Principal Funds PSAC ¶ 43.

evant forums.[44]  This Court previously considered similar allegations and found them insuffi-

cient.  *LIBOR IV*, 2015 WL 6243526, at *31.  In doing so, the Court reasoned that Plaintiffs had

failed to allege a causal relationship between any marketing activities and Defendants' allegedly

false LIBOR submissions, as confirmed by the fact that Plaintiffs' claims were asserted against

all panel banks regardless of whether the Plaintiff had had direct dealings with a panel bank.

*LIBOR IV*, 2015 WL 62435426, at *30 (plaintiffs who "allege that they were defrauded by a

panel bank without having any relationship with that bank would have relied on LIBOR regard-

less of whether any particular defendant dealt in LIBOR-based products or communicated infor-

mation about LIBOR into the plaintiffs' state").  The Second Circuit adopted this reasoning in

*Schwab*.  883 F.3d at 83.

Plaintiffs also claim that, through their amendments, they have established personal juris-

diction based on supposed representations to the U.S. market regarding the accuracy of LIBOR.[45]

To support this theory, Plaintiffs rely on allegations concerning the BBA and the Foreign Ex-

change & Money Market Committee ("FXMMC").[46]  But these too are merely repackaged alle-

gations that the Court has previously rejected as "jurisdictionally irrelevant" to persistent sup-

pression and fraud claims, which do not depend on a contractual relationship.  *LIBOR VI*, 2016

WL 7378980, at *10; *see also LIBOR IV*, 2015 WL 6243526, at *30.

To the extent Plaintiffs point to any new allegations, none (whether considered individu-

ally or *in toto* with their other allegations) confers jurisdiction.  For example, Freddie Mac argues

that allegations regarding its communications with certain Defendants — including those De-

---

[44] Freddie Mot. for Leave, at 6; FDIC Mot. for Leave, at 4 n.14, 5.

[45] *See, e.g.*, Freddie Mot. for Leave, at 19-20; FDIC Mot. for Leave, at 5; Principal Financial Mot. for Leave, at 7; Principal Funds Mot. for Leave, at 8.

[46] *See, e.g.*, Freddie Mot. for Leave, at 13-15; Principal Financial Mot. for Leave, at 8; Principal Funds Mot. for Leave, at 9.

fendants' alleged transmission of LIBOR and certain Defendants' discussions about a "Dealer Scorecard" — support jurisdiction over those Defendants.[47]   But such allegations (all of which could have been alleged earlier, but were not), like the ones this Court previously considered, relate to Defendants' ordinary business activities and cannot confer jurisdiction because Plaintiffs fail to plausibly allege any connection, let alone the requisite causal connection, between these activities and the alleged overseas manipulation of LIBOR.   In other words, Plaintiffs fail to allege that such alleged communications caused false LIBOR submissions to be made in London, or that they in some way gave rise to claims seeking to hold the Defendants liable for those submissions.   *See Schwab*, 883 F.3d at 84.   Under this Court's prior rulings and the Second Circuit's ruling in *Schwab*, Plaintiffs fail to plausibly allege that these marketing and trading allegations are suit-related and, therefore, they cannot confer jurisdiction.   *See LIBOR IV*, 2015 WL 6243526, at *30.

### 3.   *Plaintiffs Still Fail to Allege that Defendants' LIBOR Submissions Were Directed or Submitted from the U.S.*

Plaintiffs once again contend that Defendants' LIBOR submissions were made in or directed from the United States.   But Plaintiffs rely largely on the same insufficient allegations they put before the Court in briefing leading to *LIBOR IV*, *V*, and *VI*.   For example, Plaintiffs again seek to rely on allegations of alleged trader-based misconduct to support non-trader-based claims.   *See, e.g.*, Freddie PTAC ¶¶ 264, 377-78, 386.   This Court has repeatedly held that trader-conduct allegations cannot support jurisdiction over persistent suppression claims.   *See, e.g.*, *LIBOR IV*, 2015 WL 6243526, at *38.

Freddie Mac argues that, supposedly based on documents produced to it after *LIBOR VI*, Citibank executives in the United States allegedly directed Citibank's LIBOR submitters to sup-

---

[47] *See, e.g.*, Freddie PTAC ¶¶ 12-14, 31, 46, 69, 87-89, 100, 117, 130, 151, 168, 191.

press its contributions, and that the submitters complied with those directives.  Freddie Mot. for

Leave, at 21-22.  But each example Freddie Mac points to is based on documents this Court con-

sidered — and rejected as insufficient — in connection with *LIBOR VI*.[48]  The same is true of

Plaintiffs' other allegations.[49]

The FFP Plaintiffs also include allegations from the indictment of two former Société

Générale ("SG") employees, but this Court has already held that the indictment "does not contain

any new facts of relevance.  Nor does it alter the factual and legal defenses underlying the

Court's prior decision." [50]  Sept. 26, 2017 Order (Dkt. 2289).  Nothing in SG's recent settlements

with U.S. regulators, on which FDIC and Freddie Mac also seek to rely, alters these conclusions.

These settlements confirm that SG's LIBOR submitters were all in Paris, where SG's submis-

sions were determined, and that all submissions were transmitted to Thomson Reuters from Lon-

---

[48] *Compare* Freddie Mot. for Leave, at 21 (citing Freddie PTAC ¶¶ 277, 279, 292, 316, 338), *with* Defs' *LIBOR VI* Jurisdictional Allegations Appendix at rows 19, 16, 78, 84, 20, 89, 20.

[49] *Compare also* FDIC PSAC ¶¶ 168-70 (alleging that UBS's Global Head of Liquidity and Funding located in Connecticut stated in an email to "err on the low side" and that this message reached UBS's submitter), 173 (alleging that a Deutsche Bank New York-based regional manager made a trader-based request), 179-80 (alleging that Citibank employee emailed Citibank's London-based LIBOR submitter to "try to hold line" on submissions around the same time the London-based LIBOR submitter encouraged Barclays to further lower its submissions), 190, 239 (alleging that unspecified Citibank employee wrote that Citibank submitter was prohibited from making the highest submission), and Principal Financial PSAC ¶ 144, Principal Funds PSAC ¶ 143, and Freddie PTAC ¶¶ 274-75, *with* Defs.' *LIBOR VI* Jurisdictional Allegations Appendix at rows 29, 144, 16, 16, 84, 20.

[50] Similarly, this Court has already ruled that the fact that a Barclays executive, Jerry del Missier, allegedly participated in a phone call from New York in which he relayed a purported instruction from Barclays' former CEO, Robert Diamond, to suppress LIBOR, was not "jurisdictionally relevant."  *LIBOR VI*, 2016 WL 7378980, at *10 and *10 n.17.  Several Plaintiffs reintroduce this deficient allegation, now coupled with the equally irrelevant assertion that Mr. Diamond spoke to Mr. del Missier while in New York.  FDIC PSAC ¶ 242; Freddie PTAC ¶ 340; Principal Financial PSAC ¶ 32; Principal Funds PSAC ¶ 31.  But Mr. Diamond's supposed physical location during a single telephone call is nothing more than a "random, fortuitous or attenuated contact[]" insufficient to support personal jurisdiction.  *LIBOR IV*, 2015 WL 6243526 at *27 (quoting *Walden*, 571 U.S. at 286)).  Moreover, Plaintiffs' source for this "new" allegation is Parliamentary proceedings from July 2012.  (*See* Principal Financial PSAC ¶ 32 n.5; Principal Funds ¶ 31 n.4.)  Because this allegation could have been included in any of the Plaintiffs' prior pleadings, it is a prime example of Plaintiffs impermissibly altering a prior allegation they "wish[] had been better pleaded in the first instance."  Apr. 11, 2018 Order (Dkt. 2490).

don.[51]   Additionally, as with prior bank settlements, there is no admission, finding, or conclusion in the SG settlements of an inter-bank conspiracy to persistently suppress LIBOR.

Plaintiffs still have not plausibly alleged that any Defendant "determined or transmitted" its LIBOR submissions from within the United States.

## II.   PLAINTIFFS' JURISDICTIONAL ALLEGATIONS AS TO COUNTERPARTY CLAIMS DO NOT SATISFY THE PRIOR RULINGS IN THIS LITIGATION

This Court's prior rulings established, and *Schwab* largely affirmed, that jurisdiction over Counterparty Claims lies only in limited circumstances.   These claims generally can be asserted only against direct counterparties for LIBOR-linked financial products such as "swap counter-parties and bond obligors" of allegedly manipulated instruments (the "Obligor Requirements"). *LIBOR IV*, 2015 WL 6243526, at *37.   As to Defendants who are LIBOR-linked financial prod-uct obligors, the relevant jurisdiction is where the Defendant, either directly or through an agent, sold the product to the plaintiff following a course of solicitation in the forum.   *Id.* at *31; *Schwab*, 883 F.3d at 78.   As to Defendants who are bond obligors, the relevant jurisdiction is "where the bond was issued, by the Defendant."   *LIBOR IV*, 2015 WL 6243526, at *37.   As to Defendants who are "swap counterparties," the relevant jurisdiction is "where a plaintiff was lo-cated when it entered into the swap agreement."   *Id.* at *37.   In the alternative, personal jurisdic-

---

[51] Order, *In the Matter of Société Générale S.A.*, Commodity Futures Trading Commission (June 4, 2018) ("SG CFTC Order"), at 7; Deferred Prosecution Agreement, *United States of America against Société Générale S.A.*, No. 18-cr-253 (E.D.N.Y. June 5, 2018), *available at* https://www.justice.gov/criminal-fraud/file/1072451/download ("SG DPA"), at A-40, ¶ 14.   FDIC and Freddie Mac speculate that "[SG's] Head of Treasury for the Americas, whose identity was not disclosed, was aware of and, on information and belief, participated in the directions to sup-press USD [LIBOR]."   FDIC PSAC ¶ 306; Freddie PTAC ¶ 395.   FDIC and Freddie Mac presumably rely on a Sep-tember 21, 2011 statement by the Head of Treasury for the Americas cited in SG's regulatory settlements, in which he states that he "think[s] our levels are too low."   SG CFTC Order at 37.   Nothing in that statement — or in the charges asserted against SG in the regulatory settlements — suggests, much less renders plausible, U.S.-based "par-ticipat[ion] in the directions to suppress USD [LIBOR]."   Thus, the Court should not credit the allegation.   *See, e.g.*, *In re Crude Oil Commodity Litig.*, 2007 WL 1946553, at *7 (S.D.N.Y. June 28, 2007) (Buchwald, J.) ("[T]he ability to plead on information and belief should not be read as free license to base claims of fraud on speculation and con-clusory allegations; rather, the complaint must adduce specific facts supporting a *strong inference* of fraud.").

tion is also proper "where permitted by a forum selection clause" insofar as the Counterparty Claim arises from that contract.  *LIBOR IV*, 2015 WL 6243526, at *37.

Plaintiffs attempt to assert jurisdiction over Counterparty Claims that fall well outside these clearly defined limits.  Appendix 3.[52]  Because Plaintiffs' additional allegations fail to provide a basis for revisiting or expanding the scope of jurisdiction over such claims under *Schwab* and because Plaintiffs' group pleading, agency, and conspiracy allegations do not save them, *see infra* Part III, these claims cannot survive.[53]

### A.    Certain Counterparty Claims Fail to Satisfy the Obligor Requirements

Plaintiffs fail to satisfy the Obligor Requirements as to the Counterparty Claims set forth in Appendix 3 and therefore cannot establish jurisdiction over these claims.[54]  Plaintiffs fail to adequately allege that the Defendant is the Obligor, that the transaction is linked to LIBOR, or

---

[52] Appendix 3 identifies the Counterparty Claims that Defendants are moving to dismiss or as to which Defendants oppose leave to amend, in whole or in part, in each action addressed herein.  To the extent the Court would find it helpful, after resolution of the pending motions Defendants can work with Plaintiffs to provide a chart similar to the chart the parties submitted after *LIBOR IV*.

[53] As an initial matter, Plaintiffs cannot ground personal jurisdiction on Counterparty Claims that are pled for the first time now, belatedly and contrary to *Schwab*'s clear instructions.  *See Somo Japan Ins. Co. of Am.* v. *Norfolk S. Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014) ("[W]here the mandate limits issues open for consideration on remand, the district court ordinarily may not deviate from the specific dictates or spirit of the mandate[.]").  For example, although the Second Circuit authorized the Schwab Plaintiffs to clarify certain jurisdictional allegations, nothing in *Schwab* suggests that any plaintiff should be permitted to add entirely new defendants or identify new "direct sellers" in an attempt to establish jurisdiction.  Yet Plaintiffs have attempted to do just that.  Plaintiffs have added four new defendants, Bank of Scotland plc, Credit Suisse AG, Lloyds Bank plc, and The Royal Bank of Scotland plc and attempted to establish jurisdiction, including based on their supposed transactions.  Similarly, having previously alleged only indirect transactions with Bank of America N.A., The Royal Bank of Scotland Group plc, and Royal Bank of Canada, identified in *Schwab* as "indirect sellers," Schwab Plaintiffs now seek to add those entities as new "direct seller" defendants—apparently based on their own trading data, which presumably has been available to them since before they filed their initial complaint.  *See, e.g.*, Schwab SAC ¶¶ 187, 252.  Nothing in *Schwab* authorizes those belated amendments and the Court should disregard them.  *See* Merits Mot. to Dismiss Br. at Part I.D; Merits Opp Br. at Part I.

[54] Plaintiffs also assert jurisdiction over certain non-obligor Defendants.  *See, e.g.*, Principal Financial PSAC ¶¶ 230-39, Ex. 24 (asserting jurisdiction over certain defendants in their capacity as underwriters of bonds).  This Court has already ruled that it does not need to reach the question of jurisdiction as to these claims because they fail on the merits.  *LIBOR IV*, 2015 WL 6243526, at *37 n.65.  There is no reason to revisit that ruling (*see* Merits Mot. to Dismiss Br. at Part I.B.2, II.F), but even if the Court were to reach this issue, Plaintiffs still fail to establish jurisdiction as to Defendants because there is no connection between Plaintiffs' claims and the contacts of non-obligor Defendants.

that payments were made during the period of alleged manipulation. *Schwab* confirmed these requirements by upholding jurisdiction as to Counterparty Claims against defendants "clearly identified as having made direct sales" of "LIBOR-based instruments to Schwab" that were made "during the alleged LIBOR suppression period." *Schwab*, 883 F.3d at 78, 83.

For example, the Principal Plaintiffs allege purchases of asset-backed securities[55] and certain variable-rate bonds, *see* Principal Financial PSAC Ex. 24, but only allege generally that "[m]any of the purchases were made directly from Defendants and their affiliated broker dealers" and provide no specifics as to when the bonds were purchased or held. Principal Financial PSAC ¶ 233. Similarly, Freddie Mac alleges that it purchased billions of dollars of single- and multi-family home loans from certain Defendants (or their affiliates), without even specifying whether these loans incorporated LIBOR. *See* Freddie PTAC ¶¶ 30, 45, 68, 87, 99, 116, 129, 181, 190. By failing to plausibly allege each of these elements, Plaintiffs have failed to establish any connection (let alone the requisite causal connection) between the transaction, the defendant, and Plaintiffs' claim,[56] and the claims should be dismissed for lack of jurisdiction. *See, e.g.*, Mar. 31, 2016 Order, 2016 WL 1301175, at *4 (rejecting personal jurisdiction over Counterparty Claims related to bond transactions, where plaintiff Freddie Mac provided "no description as to what role any defendant played in any sale," "no description of any MBS transactions," and no "suggestion of which defendants in fact sold these products to Freddie Mac."). Similarly, FDIC's allegations largely lack the specificity required to demonstrate that their alleged swap

---

[55] Insofar as Plaintiffs assert claims based on investments in asset-backed securities, those claims fail to satisfy the Obligor Requirement because Defendants are the issuers of these securities. Merits Opp. Br. at Part IV.

[56] *LIBOR IV*, 2015 WL 6243526, at *28 (noting that the Second Circuit requires, at a minimum, a "'but for' connection between the defendant's forum-directed activities and the claim"); *see also Walden* v. *Fiore*, 571 U.S. at 284 ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."); *Bristol-Myers Squibb Co.* v. *Super. Ct. of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1781-82 (2017) (non-defendant's contacts with California unrelated to the claims at issue could not support exercise of specific jurisdiction).

transactions occurred during the relevant time period.[57]   The Counterparty Claims fail to the extent they do not satisfy the Obligor Requirements.

## B.   Certain Counterparty Claims Based on LIBOR-Linked Financial Products Fail Because Plaintiffs Do Not Allege a Course of Dealing with Defendants

Plaintiffs also fail to establish jurisdiction over the Counterparty Claims by failing to adequately allege that Defendants engaged in a course of dealing with a Plaintiff in the forum where a Plaintiff sued.   It is well-established that "an individual's contract with an out-of-state party does not, by itself, automatically establish sufficient minimum contacts in the other party's home forum."   *LIBOR IV*, 2015 WL 6243526, at *31 (quoting *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 478 (1985)).   Jurisdiction cannot be established based on contracts that were "one-off events as to which the plaintiffs' location is fortuitous," and, instead, Plaintiffs must allege that Defendants engaged in "a course of dealing with plaintiffs in their home jurisdictions over time."   *Id.*; *see also E. Fin. Corp.* v. *JSC Alchevsk Iron & Steel Works*, 2009 WL 764458, at *7 (S.D.N.Y. Mar. 23, 2009) ("[S]ingle or occasional acts related to the forum are insufficient to establish jurisdiction when their nature and quality and the circumstances of their commission create only an attenuated affiliation with the forum.").   *Schwab* is not to the contrary.[58]   Con-

---

[57] FDIC's allegations that certain failed banks had relevant swap transactions "during the relevant period" fail to satisfy the Obligor Requirement (and on the merits) as to each Defendant it allegedly transacted with.   Rather than specifying that it entered into these swaps with each of these Defendants during the relevant time period (or, in the case of contract-based claims, that relevant swaps reset during that period), FDIC largely engages in group pleading claiming that certain failed banks entered into swaps during the relevant time period with certain Defendants.   *See, e.g.*, FDIC PSAC ¶ 419.   After *Schwab*, such allegations are "insufficiently individualized" as it is impossible to determine from FDIC's allegations whether they transacted with Defendants under each of the ISDA Master Agreements during the relevant period.   *Schwab*, 883 F.3d at 84.   *Schwab* made clear that Plaintiffs must provide sufficient allegations to assess "each defendant's contacts . . . individually."   *Keeton*, 465 U.S. at 781 n.13.   After years of litigation and an opportunity to amend, FDIC has failed to provide any swap-specific information from which this Court can make that assessment.

[58] *Schwab* addressed only whether there was jurisdiction over Counterparty Claims through a "course of solicitation" in the forum.   Nothing in *Schwab* disturbs this Court's prior ruling that, absent such allegations, bonds are generally subject to jurisdiction only in the locations where they were "issued" because these products "may arrive in the hands of plaintiffs and other investors anywhere in the world by the investors' own trades — not at the direction of the issuers."   *LIBOR IV*, 2015 WL 6243526, at *31.

29

sistent with this Court's prior rulings, the Second Circuit found that jurisdiction was appropriate over "direct sellers" in California where the Schwab Plaintiffs had "clearly identified" defendants' "solicitation of Schwab in California and their actual sales of LIBOR-based instruments to Schwab in that forum."  883 F.3d at 82-83; Mar. 31, 2016 Order, 2016 WL 1301175, at *4.

As to the challenged Counterparty Claims, Plaintiffs either make no allegations regarding Defendants' solicitation or course of dealing with Plaintiffs in the relevant forum or rely merely on generic and conclusory allegations of solicitation by Defendants or their affiliates.  Absent plausible allegations of "a course of dealing" with Defendants in the relevant jurisdiction, Plaintiffs cannot establish jurisdiction on that basis.

## C.    Certain Counterparty Claims Based on Bond Transactions Fail

Plaintiffs also fail to allege jurisdiction over certain Counterparty Claims based on bond transactions.  This Court in *LIBOR IV* determined that jurisdiction over such claims could be established in the jurisdiction "where the bond was issued."[59]  *LIBOR IV*, 2015 WL 6243526, at *37.  Plaintiffs fail to satisfy that requirement as to any Defendant.  The place of issuance is "where the bond was placed with an underwriter or agent for sale or marketing."[60]  *Id.*  Notwithstanding the Court's clear rule on pleading jurisdiction as to bond issuances, Plaintiffs rely on conclusory allegations that the bonds were "issued" in the forum, and do not allege even generally, let alone with specificity any facts supporting that legal conclusion.  For example, the Schwab

---

[59] Plaintiffs most commonly allege direct transactions with certain Defendants involving LIBOR-linked bonds, but to the extent they seek to establish personal jurisdiction with respect to transactions in other securitized products, the jurisdictional analysis is the same.  *See LIBOR IV*, 2015 WL 6243526, at *31.  The same goes for Schwab's new unjust enrichment claims against "Fixed-Rate Issuer Defendants," with the further gloss that Schwab does not allege that the issuance of fixed-rate instruments itself has *any* jurisdictional significance.  These claims also fail on the merits.  *See* Merits Mot. to Dismiss Br. at Part I.B.

[60] This Court further clarified this requirement in a May 2016 conference call, stating that the "location" of a bond issuance is where the underwriter or agent was located: "The location of the underwriter is the office where the deal was actually done.  That would include the relevant office of any other member of the syndicate.  The same is true if there actually were agents involved.  The locations do not include all the branch offices of any of these entities."  May 19, 2016 Tr. at 3:10-15.

Plaintiffs allege only that they purchased floating-rate notes "issued by . . . Defendants within the United States."  Schwab SAC ¶ 226.  In the vast majority of instances, Plaintiffs offer only general allegations about their transactions and, where they do provide specificity, they identify only the issuer of the bond, but not the underwriter or agent that sold the bond.  *See, e.g.*, Freddie Mac PTAC ¶¶ 30, 45, 68, 87, 99, 116, 129, 167, 190; Principal Financial PSAC Ex. 24.  Even for transactions where the underwriter or agent is identified, Plaintiffs do not even attempt to identify, as they must, the "office where the deal was actually done."  May 19, 2016 Tr. at 3:10-15; *see, e.g.*, Schwab SAC at ¶¶ 244-52; Principal Financial PSAC Ex. 24.  Plaintiffs fail to establish jurisdiction based on the place of issuance.

### D.   Certain Counterparty Claims Based on Swap Transactions with Defendants Fail

Plaintiffs also fail to allege jurisdiction over Counterparty Claims based on swap transactions.  In *LIBOR IV*, this Court held that swap transactions, because they are linked to ISDA Agreements, embodied "a course of dealing with plaintiffs in their home jurisdictions over time," and therefore "counterparty defendants could readily have foreseen being haled into the courts of the plaintiffs' home forums for claims relating to those contracts."  2015 WL 6243526, at *31 n.51 (jurisdiction lacking in Kansas over swap transactions entered into with plaintiffs outside of Kansas).  Nothing in *Schwab* — in which swap transactions were not alleged — changes this Court's prior rulings as to when and where swap transactions confer jurisdiction.  As to the Challenged Claims, Plaintiffs fail to allege that they filed suit in the forum where the swap transactions were entered into.  These claims cannot survive.

### E.   Certain Counterparty Claims Based on Forum Selection Clauses Fail

Two groups of Plaintiffs, FDIC and the Principal Plaintiffs, also assert jurisdiction through forum selection clauses over certain swap-based claims, but these attempts largely fail.

The Principal Plaintiffs allege that "Plaintiffs' ISDA Master Agreements with Defendants contain identical contractual submissions to personal jurisdiction in the Southern District of New York."  Principal Funds PSAC ¶ 13; Principal Financial PSAC ¶ 13.  Even if they had adequately pled that these contracts contain such provisions and the swaps at issue relate to those agreements (and they have not), because the Principal Plaintiffs have brought their lawsuits in Iowa — their New York complaints are not the subject of the instant motion (Dkt. 2588) — these alleged clauses do not confer jurisdiction over their claims.[61]

Similarly, as to FDIC, in addition to failing to allege that the transactions occurred during the relevant period, many of the forum selection clauses fail to confer jurisdiction.  For example, United Commercial Bank's ISDA Master Agreement with the Hongkong and Shanghai Banking Corporation Ltd. provides that it "will be governed by and construed in accordance with English law" and that the parties consent to the jurisdiction of the English courts for resolving disputes. FDIC PTAC, Ex. 59.  Alternatively, as to certain Defendants, FDIC relies on language that states that the parties only "submit[] to the jurisdiction of the Courts of the State of New York."[62]  This is insufficient as a basis for jurisdiction in a New York *federal* court.  *See, e.g.*, *Beach* v. *Citigroup Alternative Investments LLC*, 2014 WL 904650, at *8 (S.D.N.Y. Mar. 7, 2014) ("This Court agrees with the majority view.  The word 'of' denotes the source of a court's authority and is more than its mere location.  The courts 'of' a state are courts whose authority derive from that state's power.  Federal district courts may be *in* [a state], but they are not *of* [that state].").[63]

---

[61] *See LIBOR IV*, 2015 WL 6243526, at *35 ("[A]s to the cases filed outside of New York and transferred here for pre-trial proceedings, a defendant's contractual consent to the jurisdiction of New York courts is irrelevant."); *see also id.* at *31 n.51.

[62] *See, e.g.*, FDIC PTAC, Ex. 83, at 9 (Doral-Credit Suisse Master Agreement).

[63] *See also Phoenix Glob. Ventures, Inc.* v. *Phoenix Hotel Assocs., Ltd.*, 2004 WL 2360033, at *6 (S.D.N.Y. Oct. 19, 2004), *aff'd sub nom. Phoenix Glob. Ventures, LLC* v. *Phoenix Hotel Assocs., Ltd.*, 422 F.3d 72 (2d Cir. 2005) ("The language, '[a]ny proceeding shall be initiated in the courts of the State of New York,' clearly establishes exclusive jurisdiction in New York state courts.").

Similarly, FDIC cannot establish jurisdiction based on contracts that contain only a New York *choice of law* provision, but are otherwise silent as to *jurisdiction*.[64]  Choice of law provisions do not amount to consent to jurisdiction.  *See Koninklijke Philips Elecs.* v. *Digital Works, Inc.*, 358 F. Supp. 2d 328, 333 (S.D.N.Y. 2005).[65]

## III.   PLAINTIFFS' GROUP PLEADING, AGENCY, AND CONSPIRACY ALLEGATIONS FAIL TO ESTABLISH JURISDICTION OVER DEFENDANTS

Personal jurisdiction is a defendant-specific inquiry and must be based on those "contacts that the defendant *himself* creates with the forum State . . . . [A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 284-86.  In *Schwab*, the Second Circuit required that, as to Counterparty Claims, jurisdiction can be found only where plaintiffs "clearly identif[y]" those defendants with which they directly transacted.  883 F.3d at 83.  Despite this, Plaintiffs attempt to establish jurisdiction over certain Defendants by impermissibly referring to them and their subsidiaries or affiliates as a single corporate entity.  Alternatively, Plaintiffs argue that the Court should impute the transactions undertaken by affiliates based on conclusory allegations of agency relationships between these affiliates and the affiliated Defendants who did not transact with Plaintiffs.  Neither gambit should succeed.  Nor can Plaintiffs rely on conspiracy allegations to confer jurisdiction over either the Counterparty or Non-Counterparty claims, as, among other things, Plaintiffs have not alleged an act in furtherance of a LIBOR manipulation conspiracy in the forum or the requisite agency relationships between the alleged co-conspirators.[66]

---

[64] *See, e.g.*, FDIC PTAC Ex. 68, at 29 (WaMu-Credit Suisse Master Agreement).

[65] *See also Agrashell, Inc.* v. *Bernard Sirotta Co.*, 344 F.2d 583, 588 (2d Cir. 1965) ("The choice of law provision cannot be construed as a voluntary submission by [defendant] to the personal jurisdiction of the New York courts in the absence of any express contractual understanding to that effect").

[66] To the extent that the Court previously dismissed Plaintiffs' claims on the merits or Plaintiffs' claims are subject to dismissal on the merits, Plaintiffs' jurisdictional theories could not save such claims in any event because inde-

33

### A.   *Schwab* Confirms that Plaintiffs' Group Pleading Allegations Cannot Establish Jurisdiction over Defendants

*Schwab* made clear that plaintiffs cannot treat affiliated entities as a single defendant to establish jurisdiction:  "Because Schwab refers to only the grouped entities throughout its complaint, it is impossible to determine whether both Defendants in each pairing sold directly to Schwab and, if not, whether the Defendant that did not make direct sales should be considered an indirect seller or non-seller (or whether it belongs in this lawsuit at all)."  883 F.3d at 84.  But Plaintiffs' pleadings in many cases continue to collapse distinct corporate entities into one, treating Defendants and their affiliates as a single corporate entity.[67]  Plaintiffs impermissibly allege that these grouped entities engaged in suit-related conduct in the relevant forum and that they entered into transactions with these non-specific group entities in the relevant forums.[68]  This makes it impossible for the Court to assess "each defendant's contacts . . . individually," as due process requires.  *Keeton*, 465 U.S. at 781 n.13.  This Court should not credit non-specific allegations made against a single grouped entity as the basis for jurisdiction over Defendants in that group.

### B.   Plaintiffs' Allegations of an Agency Relationship Between Defendants and Their Affiliates Fail to Confer Jurisdiction

Plaintiffs argue that "certain subsidiaries and affiliates" of Defendants "operated as [their] agents or alter egos," and their in-forum transactions and conduct can thus serve as a basis for jurisdiction over the affiliated Defendants.  *See, e.g.*, Principal Financial Mot. for Leave, at 8;

---

pendent bases for dismissal of such claims would remain.  As this Court has confirmed, "personal jurisdiction cannot be premised on a dismissed theory."  Feb. 16, 2017 Order at 6 (Dkt. 1774).

[67] *See, e.g.*, NCUA PSAC ¶¶ 21, 24-25, 31-33, 35, 37 ("Barclays Bank plc and Barclays Capital Inc. are referenced together in this Complaint as 'Barclays.'"); Principal Funds PSAC ¶¶ 28, 35, 39, 47, 52, 55, 60, 67, 73 ("Bank of America Corporation; Bank of America, N.A.; Merrill Lynch, Pierce, Fenner & Smith, Inc.; Merrill Lynch & Co., Inc. and Banc of America Securities LLC are referenced collectively in this Complaint as 'Bank of America.'").

[68] *See, e.g.*, NCUA PSAC ¶¶ 44 ("[T]ransaction confirmations between Defendants Bank of America, Credit Suisse, HSBC, and JPMorgan, on the one hand, and Members United, Southwest, or WesCorp on the other expressly set forth a U.S. Central account number from which payment for the transaction would be made.").

Freddie Mot. for Leave, at 7-11; FDIC Mot. for Leave, at 6.  But none of Plaintiffs' allegations sufficiently establishes an agency relationship between any Defendant and its affiliates.[69]

Plaintiffs cannot impute their transactions with a subsidiary to its parent corporation based on conclusory allegations of an agency relationship between the two entities.  Plaintiffs argue that "[a] formal agency relationship is not required" and that they do not need to "pierce the corporate veil."  *E.g.*, Freddie Mot. for Leave, at 7-8.[70]  But Plaintiffs' reliance on *Ingenito* v. *Riri USA, Inc.*, 89 F. Supp. 3d 462 (E.D.N.Y. 2015), for these propositions is misplaced.  *Ingenito* confirms that Plaintiffs must establish that the subsidiary's "activities were for the benefit of and with the knowledge and consent of the [parent] defendant, and that the [parent] defendant exercised some control over the subsidiary in the matter that is the subject of the lawsuit."  *Id.* at 476; *see also LIBOR V*, 2015 WL 6696407, at *21 (to plead agency, plaintiffs must plausibly allege control over the "specific activities that allegedly violated [the relevant] law[s]").  Courts have repeatedly held that generalized agency allegations are not enough to establish jurisdiction.  *See Jazini* v. *Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) ("To establish that a subsidiary is an agent of the parent, the plaintiff must show that the subsidiary does all the business which [the parent corporation] could were it here by its own officials.") (alteration in original); *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227, 234-35 (S.D.N.Y. 2015)

---

[69] Plaintiffs do not seriously contend that Defendants' subsidiaries and affiliates ignored the corporate form and acted as alter egos.  Any such allegation would be beyond the scope of permissible amendment under *Schwab* and, in any event, implausible given the extensive financial regulatory framework.  *See, e.g.*, 12 C.F.R. 223.52(a)(4) (Regulation W, Subpart F) (any transaction in which an affiliate acts as a "broker or receives a fee for its services to the member bank" must be on "market terms").

[70] Freddie Mac alleges for the first time that certain non-Defendant subsidiaries or affiliates of Defendants sold single family loans to Freddie Mac during the relevant period, *see, e.g.*, Freddie PTAC ¶¶ 45 n.21, 68, 81, 87, 99, 116, 167, 181, 190, but does not appear to argue that personal jurisdiction can be asserted over these Defendants because of these "indirect sales."  *See* Freddie Mot. for Leave, at 7-8 (claiming that personal jurisdiction may be asserted over a panel bank that "indirectly" sells *securities* through a subsidiary or affiliate).  To the extent that Freddie Mac is attempting to make such an argument, it should be rejected.  Freddie Mac says nothing about the relationship between Defendants and their respective affiliates who allegedly sold Freddie Mac single family loans, and thus the allegations in the PTAC are insufficient to establish an agency relationship, as explained above.

("*Daimler* has foreclosed the establishment of jurisdiction [through agency] based only on generalized facts[.]").  *Schwab* confirmed this, finding that plaintiffs' "bare allegation[s]" of an agency relationship, including "sparse" claims that certain Defendants "controlled or otherwise directed or materially participated in the operations" of their U.S.-based affiliates and "reaped proceeds or other financial benefits" from the instruments they sold, could not confer jurisdiction.  883 F.3d at 86.

Plaintiffs do not satisfy the requirements for pleading agency.  Instead, they continue to substitute "legal conclusion[s] couched as a factual allegation" for the "factual specificity necessary to confer jurisdiction."  *Jazini*, 148 F.3d at 185.  Plaintiffs repeatedly rely on boilerplate and unsupported statements that affiliates "operated solely at the behest and under the direction of," "for the benefit of," and "subject to extensive control by" Defendants.[71]  *See, e.g.*, Principal Financial PSAC at ¶¶ 28, 38, 47, 56, 65.  These conclusory statements are the same mere "restatement[s], with slight changes, of the legal standard" that courts, including this one, have repeatedly rejected.  *Jazini*, 148 F.3d at 184; *LIBOR V*, 2015 WL 6696407, at *21 ("General allegations of corporate ownership, combined marketing, shared board membership, and so forth are insufficient to establish a principal-agent relationship between corporate entities.").

The few specific facts alleged by Plaintiffs are insufficient to show that any Defendant exercised the requisite level of control over their U.S. affiliates.  For example, Plaintiffs allege that employees of both a parent and affiliate were issued parent email addresses, *see, e.g.*, Principal Financial PSAC ¶ 70, that parents and affiliates shared logos or websites, *see, e.g.*, Schwab SAC ¶¶ 51, 56, 59, 65; Freddie PTAC ¶ 76, and that parents and affiliates shared common man-

---

[71] The same is true of the FFP Plaintiffs' conclusory allegations that the BBA acted as an "agent" of the panel bank Defendants.  *See, e.g.*, FDIC Mot. for Leave, at 4-5; FDIC PSAC ¶ 105; Freddie PTAC ¶ 203; Principal Financial PSAC ¶ 77.  The FFP Plaintiffs offer no specific allegations of fact supporting these bare assertions.

agement or "global policy directives," *see, e.g.*, Schwab SAC ¶¶ 42, 59; Principal Funds PSAC ¶¶ 46, 70. These allegations at most support the undisputed contention that these entities were all part of the same corporate family. *See Jazini*, 148 F.3d at 185 (allegations of some overlap between directors and officers were insufficient); *Stutts* v. *De Dietrich Grp.*, 465 F. Supp. 2d 156, 167-68 (E.D.N.Y. 2006) (allegations that defendant "direct[ed] the selection and assignment of its subsidiaries' executive personnel, and exercise[d] control over the marketing and operational policies of its subsidiaries" were insufficient). As this Court has previously made clear, such allegations fail to establish jurisdiction because they lack the requisite specificity. *LIBOR V*, 2015 WL 6696407, at *21 (similar allegations that parent "controlled [affiliate] to a considerable degree and . . . could conceivably have acted as [parent's] agent for some purposes" insufficient to establish an agency relationship as to the transactions at issue) (citing *Elbit Sys., Ltd.* v. *Credit Suisse Grp.*, 917 F. Supp. 2d 217, 225-26 (S.D.N.Y. 2013)). For example, in *Elbit*, plaintiffs offered specific allegations regarding the brokers who actually serviced their accounts, including that the parent company "intervened in the aftermath of [the brokers'] misconduct[,] directed [the affiliate's] response," and "'was directly responsible' for aspects of [the affiliate's] compliance program . . . ." 917 F. Supp. 2d at 226. Here, Plaintiffs offer no such detailed factual allegations.[72]

---

[72] In addition, although Freddie Mac contends that its PTAC "alleges, on a defendant-by-defendant basis MBS sales and swap transactions in detail, including the identity of the MBS seller and swap counterparty, the number of MBS and swap transactions, and the sales/transaction amounts," *see* Freddie Mot. for Leave, at 8 n.4, this is not the case. Instead, the PTAC contains conclusory allegations that certain Defendants "knew of," "directed," and/or "benefited" from purported and unspecified MBS sales by their U.S. affiliates. *See, e.g.*, Freddie PTAC ¶¶ 30, 40, 45, 60, 68, 87, 99, 116, 125, 129, 153, 167, 190. This is plainly insufficient under the Court's prior rulings. *See* Mar. 31, 2016 Order, at 3 (explaining that the Court previously upheld on the merits claims related to MBS only against the issuer, and not against other bond counterparties such as the underwriters, brokers, and dealers); *id.* at 4 (opining that Freddie Mac's complaint provides no indication as to whether its MBS claims can survive on the merits because it lacks any description as to what role any defendant played in any sale).

Similarly deficient are Plaintiffs' allegations concerning an agency relationship between certain bond issuers and their affiliates.  Plaintiffs cannot rely on generic descriptions of agency relationships and, instead, must plead each relationship with specificity.  *See Gerstle* v. *Nat'l Credit Adjusters, LLC*, 76 F. Supp. 3d 503, 510 (S.D.N.Y. 2015) ("This lack of specificity is highlighted by, for example, the use of the same boilerplate description for the actions of [the three defendants].").  Plaintiffs in some cases make no allegations at all about these relationships, seeking to establish jurisdiction over bond issuers without any facts about the agent that sold the bond.  *See, e.g.*, Principal Financial PSAC ¶¶ 230-39.  In other instances, Plaintiffs identify the parent bank as the issuer and the affiliate as the broker-dealer or underwriter, but plead no specifics about the parent's involvement in the particular transaction.  *See, e.g.*, Schwab SAC ¶¶ 244-52.  Plaintiffs do not specify, for example, whether the affiliate was the exclusive agent on the bond issuance or just one of many underwriters, broker-dealers, managers, and other parties involved.

None of these allegations plausibly establishes that Defendants "exert[ed] pervasive control" over their affiliates as to the transactions at issue.  *Wilder* v. *News Corp.*, 2015 WL 5853763, at *6 (S.D.N.Y. Oct. 7, 2015); *LIBOR V*, 2015 WL 6696407, at *21 (plaintiffs must plead that the parent "directed the specific activities that allegedly violated [the] law").  Because Plaintiffs fail to establish an agency relationship between the Defendants and their affiliates, the affiliates' contacts cannot be imputed to Defendants for purposes of establishing jurisdiction.

### C.    Plaintiffs' Conspiracy Allegations Are Insufficient to Confer Jurisdiction over Defendants

Plaintiffs also claim that their amendments satisfy the requirements of conspiracy jurisdiction set forth in *Schwab*.  *See, e.g.*, Principal Financial Mot. for Leave, at 7; Freddie Mot. for Leave, Part V.  To establish conspiracy jurisdiction Plaintiffs must, at a minimum, allege "that

38

(1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." *Schwab*, 883 F.3d at 87. Plaintiffs fail to establish jurisdiction over any claim in this manner.

First, Plaintiffs proffer no authority for the proposition that conspiracy jurisdiction can lie over claims that are not conspiracy-based — the majority of the claims now at issue.[73] Jurisdiction is established on a claim-by-claim basis. *See Schwab*, 883 F.3d at 83. Plaintiffs have not even begun to explain how conspiracy jurisdiction would potentially work in circumstances where the underlying cause of action has no relation to collective action at all, much less to a plausibly alleged suppression conspiracy. As to these claims, Plaintiffs cannot even meet the first requirement of conspiracy jurisdiction.[74]

Second, Plaintiffs fail to plead any act, in any relevant forum, that was in furtherance of the alleged reputation-based persistent suppression conspiracy that the Second Circuit found was plausibly alleged, as would be required to subject the in-forum conspirator to specific jurisdiction. It is the law of this Circuit (and of the case) that "only acts taken pursuant to [the] conspir-

---

[73] These include all Exchange Act claims (including Non-Counterparty Claims), because there is no cause of action for conspiracy to violate Section 10(b) of that Act. *See Dinsmore* v. *Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 135 F.3d 837, 841 (2d Cir. 1998). It also includes all Counterparty Claims and claims for fraudulent omission, breach of implied covenant of good faith and fair dealing, tortious interference with contract, and unjust enrichment.

[74] With respect to the BBA in particular, Plaintiffs do not even plausibly allege that the BBA was a member of the alleged conspiracy to suppress LIBOR. The FFP Plaintiffs do not dispute in their moving papers, *see* Freddie Mot. for Leave, at 12, that *Gelboim* found a plausibly alleged "inter-bank conspiracy" to suppress LIBOR and did not hold that the BBA was a member of that conspiracy. *Gelboim*, 823 F.3d at 782. Nor can the FFP Plaintiffs shoe-horn the BBA into the alleged LIBOR suppression conspiracy by pointing to alleged false assurances of the accuracy of LIBOR. Freddie Mot. for Leave, at 12-16. Nowhere in the FFP Plaintiffs' proposed amended complaints do they plausibly allege that the BBA stood to gain, either reputationally or financially, from artificially suppressed LIBOR submissions. *Cf. LIBOR VI*, 2016 WL 7378980, at *2 n.5 ("[A] conspiracy requires an agreement to achieve a particular goal, *which cannot be assumed*.") (emphasis added). To the extent that the FFP Plaintiffs address any motivations of the BBA at all, they only allege that the BBA had an incentive to maintain LIBOR as a dominant benchmark, *see, e.g.*, FDIC PSAC ¶¶ 549, 552; Freddie PTAC ¶ 433; Principal Financial PSAC ¶¶ 9, 105 — a theory that has now been thrice rejected by this Court. *See LIBOR IV*, 2015 WL 6243526, at *90; *LIBOR VI*, 2016 WL 7378980, at *2 n.3; Feb. 16, 2017 Order (Dkt. 1774).

acy are jurisdictionally relevant." *LIBOR VI*, 2016 WL 7378980, at *3; *Schwab*, 883 F.3d at 87 (requiring plaintiffs to plead that "a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state"). But Plaintiffs have not alleged any "overt acts in furtherance" of the suppression conspiracy in the relevant forums. *See supra* Part I. The Schwab Second Amended Complaint, for example, seeks to assert conspiracy jurisdiction over Defendants based on the same allegations of transactions in the relevant forum, Schwab SAC ¶¶ 257-62, that this Court rejected in *LIBOR VI* as outside the scope of the plausibly alleged conspiratorial agreement, and thus "not meaningful in a jurisdictional analysis." *See LIBOR VI*, 2016 WL 7378980, at *8. *Schwab* did nothing to disturb this well-considered conclusion. *See Schwab*, 883 F.3d at 89 (requiring the Schwab Plaintiffs to "add allegations making it *plausible* that sales in California were in furtherance of Defendants' [alleged] conspiracy.") (emphasis added). Nor is it sufficient to simply allege that one aim of the purported conspiracy was to "generat[e] undue revenue." *E.g.* Schwab SAC ¶ 255. As *Schwab* made clear, this does not meet the requirements for conspiracy jurisdiction because, "financial self-interest is not the same as furthering a conspiracy through California-directed sales . . . ." *Schwab*, 883 F.3d at 87.

Third, even if Plaintiffs could overcome each of these hurdles, for their assertion of conspiracy jurisdiction to satisfy due process, Plaintiffs must adequately plead that each of the Defendants exercised direction and control over their alleged co-conspirators' in-forum, suit-related acts. The Second Circuit has long required that, for a co-conspirator's conduct to be imputed to a defendant for jurisdictional purposes, plaintiffs must allege that, consistent with traditional agency principles, the defendant directed and controlled the agent's in-forum tortious conduct, knew of those contacts, and benefited from them. *See Leasco Data Processing Equip. Corp.* v.

40

*Maxwell*, 468 F.2d 1326, 1341 n.11, 1343 (2d Cir. 1972), *abrogated on other grounds by Morrison* v. *Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010).[75]

Without the direction and control inherent in a traditional agency relationship, an alleged co-conspirator's actions in the forum are the mere "unilateral activity of . . . a third person," which are insufficient to confer personal jurisdiction over the foreign defendant. *Helicopteros Nacionales de Colombia, S.A.* v. *Hall*, 466 U.S. 408, 417 (1984). To comport with the Supreme Court's decision in *Walden*, plaintiffs must allege that each Defendant, either personally or through an agent under its control, engaged in substantial suit-related conduct in the forum. *Walden*, 571 U.S. at 284 (holding that it is the "contacts that the defendant *himself* creates with the forum State" that matter); *see also LIBOR IV*, 2015 WL 6243526, at *29 ("The underlying rationale for exercising personal jurisdiction on the basis of conspiracy is that, because co-conspirators are deemed to be each other's agents, the contacts that one co-conspirator made with a forum while acting in furtherance of the conspiracy may be attributed for jurisdictional purposes to the other co-conspirators."); *In re N. Sea Brent Crude Oil Futures Litig.*, 2017 WL 2535731, at *9 (S.D.N.Y. June 8, 2017) ("[A]n agency relationship is required to uphold jurisdiction based on a conspiracy theory.").[76] Plaintiffs simply ignore this requirement in their briefs

---

[75] *Schwab* is not to the contrary. Because it found that the Schwab Plaintiffs had not even alleged acts in furtherance of the conspiracy in the forum, the Second Circuit in *Schwab* had no occasion to determine whether plaintiffs satisfied this requirement. *See Schwab*, 883 F.3d at 87. There is no suggestion in *Schwab* that the Court rejected these agency principles. *Id.* Indeed, doing so would have required the Court to overrule decades of Second Circuit precedent, including *Leasco* (which the Court cited favorably elsewhere in its opinion), which is generally prohibited. *See Union of Needletrades, Indus. and Textile Employees* v. *United States Immigration and Naturalization Service*, 336 F.3d 200, 210 (2d Cir. 2003) ("[A]s a general rule, one panel of this Court cannot overrule a prior decision of another panel."); *USA Recycling, Inc.* v. *Town of Babylon*, 66 F.3d 1272, 1294 (2d Cir. 1995) (refusing to overrule "longstanding precedents . . . absent clear indication" from a higher court that a decision was meant to do so).

[76] The Fourth Circuit case *Schwab* cited, *Unspam Techs., Inc.* v. *Chernuk*, 716 F.3d 322 (4th Cir. 2013), pre-dated *Walden*. Moreover, because the *Unspam* court (like the other circuit court decisions on which it relied) did not identify any plausibly alleged conspiracy, the court had no occasion to address due process limits on the imputation of co-conspirators' actions. *Id.* at 330.

and pleadings.  *See, e.g.*, Schwab SAC ¶ 254, Freddie Mot. for Leave, at 11.  Plaintiffs have failed to establish conspiracy jurisdiction.

Finally, in addition to complying with constitutional due process, there must be a valid statutory basis for exercising personal jurisdiction.[77]  Section 12 of the Clayton Act, on which many Plaintiffs rely, permits the exercise of personal jurisdiction over a defendant only when the venue provision of Section 12 is satisfied as to that defendant.  Because Plaintiffs have failed to plausibly plead venue as to the Venue Defendants listed in Appendix 4, *see infra* Part V, Section 12 does not authorize personal jurisdiction over those Defendants, whether via conspiracy jurisdiction or otherwise.[78]  As to Plaintiffs' state law antitrust and fraud claims, the only asserted statutory bases for personal jurisdiction are state long-arm statutes.  But the states in the relevant jurisdictions either do not recognize conspiracy jurisdiction at all or otherwise impose requirements not satisfied here.[79]  Because Plaintiffs disregard (and fail to satisfy) these requirements, they cannot establish conspiracy jurisdiction under any of the relevant states' long-arm statutes.

---

[77] *See Marvel Characters, Inc.* v. *Kirby*, 726 F.3d 119, 128 (2d Cir. 2013); *see also In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d at 227 (reasoning that conspiracy jurisdiction does not provide a standalone basis for jurisdiction subject only to due process constraints).

[78] Indeed, Federal Rule of Civil Procedure 4(k)(1)(c) provides for personal jurisdiction "when authorized by federal statute."  Federal Rule of Civil Procedure 4(k)(2) does not assist Plaintiffs either, as courts have declined to import conspiracy jurisdiction into that Rule.  *See, e.g., In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d at 227; *Tymoshenko* v. *Firtash*, 2013 WL 1234943, at *4-5 (S.D.N.Y. Mar. 27, 2013).  Plaintiffs moreover fail to meet the Rule's threshold requirement that they certify that Defendants are not subject to jurisdiction in any particular state. *See, e.g., 7 W. 57th St. Realty Co., LLC* v. *Citigroup, Inc.*, 2015 WL 1514539, at *13 (S.D.N.Y. Mar. 31, 2015).

[79] *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 804-06 (S.D.N.Y. 2005) (holding that, in New York, Plaintiffs must allege that, among other things, a defendant exercised direction or control over the co-conspirator to impute the co-conspirator's contacts); *Remmes* v. *Int'l Flavors & Fragrances, Inc, a New York co.*, 389 F. Supp. 2d 1080, 1093-95 (N.D. Iowa 2005) (holding that to the extent Iowa allows for conspiracy jurisdiction, a plaintiff must allege "(1) the existence of a conspiracy; (2) the nonresident's participation in or agreement to join the conspiracy; and (3) an overt act taken in furtherance of the conspiracy within the forum's boundaries"); *Yen* v. *Buchholz*, 2010 WL 1758623, at *5 (N.D. Cal. Apr. 30, 2010) ("California courts have rejected the conspiracy theory of personal jurisdiction . . . ."); *Murphy* v. *Am. Gen. Life Ins. Co.*, 2015 WL 4379834, at *9 (C.D. Cal. July 15, 2015) (same); *Sioux Pharm, Inc.* v. *Summit Nutritionals Int'l, Inc.*, 859 N.W.2d 182, 195 n.4 (Iowa 2015) (recognizing the split in authority in Iowa as to whether its long-arm statute recognizes conspiracy jurisdiction and citing *Brown* v. *Kerkhoff*, 504 F. Supp. 2d 464, 518 (S.D. Iowa 2007) (rejecting conspiracy jurisdiction under Iowa law), and *Remmes*, 389 F. Supp. 2d at 1093-95 (finding conspiracy jurisdiction under Iowa law)); *Aeroflex Wichita, Inc.* v. *Filardo*, 275 P.3d 869, 882 (Kan. 2012) ("From a jurisdictional standpoint, if one conspirator commits acts in

## IV.   THE SCHWAB PLAINTIFFS FAIL TO ESTABLISH PENDENT JURISDICTION

The Schwab Plaintiffs argue that this Court should exercise pendent personal jurisdiction over state law claims, because it can exercise jurisdiction over federal Exchange Act claims.[80] "The doctrine of pendent personal jurisdiction provides that where a federal statute authorizes nationwide service of process, and the federal and state-law claims derive from a common nucleus of operative fact, the district court may assert personal jurisdiction over the parties to the related state-law claims even if personal jurisdiction is not otherwise available."   *Schwab*, 883 F.3d at 88.   The doctrine plainly does not apply to Defendants against which the Schwab Plaintiffs' Exchange Act claims are deficient, either for merits or jurisdictional reasons or both.[81]   And so the doctrine fails to save the Schwab Plaintiffs' state law claims for three reasons.

*First*, the Schwab Plaintiffs fail to state any Exchange Act claims and, therefore, those claims cannot serve as a basis for pendent jurisdiction over their state law claims.   Merits Mot. to Dismiss Br. Part I.A.   *Second*, the doctrine of pendent jurisdiction can serve as a basis for establishing personal jurisdiction only over state law claims premised on the same "common nucleus of operative fact."   *IUE AFL–CIO Pension Fund* v. *Herrmann*, 9 F.3d 1049, 1056-57 (2d Cir. 1993).   That is simply not so to the extent the Schwab Plaintiffs attempt to establish pendent ju-

---

Kansas in furtherance of a conspiracy and that conspirator falls under the long-arm statute, jurisdiction can be obtained as to all conspirators."); *Indep. Printers Worldwide, Inc.* v. *Cole*, 2015 WL 4705507, at *8 (E.D. Va. Aug. 6, 2015) (holding that to assert conspiracy jurisdiction over a foreign defendant, the plaintiff must allege that the "co-conspirator who is subject to personal jurisdiction in the forum commit[ted] overt acts in furtherance of the conspiracy" in the forum).

[80] No other Plaintiffs appear to have relied on the doctrine of pendent jurisdiction.   To the extent that they do, these arguments apply with equal force to them.

[81] As jurisdiction requires "contacts that the 'defendant *himself*' creates with the forum, pendent jurisdiction, at best, may serve as a basis for jurisdiction only where the Schwab Plaintiffs' Exchange Act claims survive against a specific Defendant.   *See Tulsa Cancer Inst., PLLC* v. *Genentech Inc.*, 2016 WL 141859, at *4 (N.D. Okla. Jan. 12, 2016) ("The doctrine of pendent personal jurisdiction does not negate Plaintiffs' obligation to establish jurisdiction based on the relationship between Defendant, the forum, and each Plaintiff's claims."); *Spratley* v. *FCA US LLC*, 2017 WL 4023348, at *7-8 (N.D.N.Y. Sept. 12, 2017) (rejecting attempt by out-of-state plaintiffs to rely on pendent personal jurisdiction where the court could exercise specific jurisdiction over separate plaintiffs in that action); *see also Walden* v. *Fiore*, 571 U.S. at 284-85.

risdiction over state law Non-Counterparty Claims, which are premised on submissions outside the United States, based on their Counterparty-based Exchange Act claims arising from alleged sales to the Schwab Plaintiffs in California.  Schwab SAC ¶¶ 238-40.  Indeed, an assertion of pendent jurisdiction as to these claims not only fails to satisfy the "common nucleus" require-ment, but also violates due process, which requires Plaintiffs to "establish jurisdiction based on the relationship between Defendant, the forum, and each Plaintiff's claims." *Tulsa Cancer Inst., PLLC*, 2016 WL 141859, at *4.[82]  *Third*, pendent jurisdiction is discretionary, and the Court should again exercise that discretion to reject any attempt by Plaintiffs "to exercise personal ju-risdiction over pendent or otherwise 'supplemental' claims unrelated to defendants' contacts with the forum state." *LIBOR IV*, 2015 WL 6243526, at *23 n.40.

## V. PLAINTIFFS FAIL TO ALLEGE JURISDICTION AND VENUE UNDER THE CLAYTON ACT AS TO THE VENUE DEFENDANTS

Because Plaintiffs fail to plausibly plead venue as to the Venue Defendants identified in Appendix 4, they cannot assert personal jurisdiction over these Defendants through the Clayton Act's nationwide service provision, 15 U.S.C. § 22.[83]  *See Daniel* v. *Am. Bd. of Emergency Med.*, 428 F.3d 408, 423-25 (2d Cir. 2005).  Under 15 U.S.C. § 22, for venue to be proper anywhere other than the forum where a defendant is an "inhabitant" — for a corporation, its place of incor-poration, *see, e.g.*, *Expoconsul Int'l, Inc.* v. *A/E Sys., Inc.*, 711 F. Supp. 730, 732-33 (S.D.N.Y.

---

[82] For the same reason, to the extent the Schwab Plaintiffs attempt to establish pendent jurisdiction over state law Counterparty Claims that are premised on transactions other than those that underlie their Counterparty-based Ex-change Act claims, such an assertion fails to satisfy the "common nucleus" requirement and violates due process. And even if Plaintiffs were able to sufficiently plead personal jurisdiction over an Exchange Act claim with respect to a particular transaction or instrument, that would not provide a basis for personal jurisdiction over Exchange Act claims with respect to *other* transactions or instruments, because Plaintiffs must plead personal jurisdiction on a claim-by-claim basis.

[83] This section incorporates by reference the venue-related arguments that Defendants advanced in connection with the prior *LIBOR VI* briefing, including in the Joint Memorandum of Law in Support of Defendants' Motion to Dis-miss All Antitrust Claims for Lack of Personal Jurisdiction (Dkt. 1483), the Joint Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 1545), and Appendix 2 to the Joint Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss All Antitrust Claims for Lack of Personal Jurisdiction (Dkt. 1545-2).

1989) — the defendant must "be found or transact[] business" in the forum.  For purposes of

venue, the phrase "transacts business" refers to "business of any substantial character," which

requires "some amount of business continuity and certainly more than a few isolated and periph-

eral contacts."[84]  *Gates* v. *Wilkinson*, 2003 WL 21297296, at *1 (S.D.N.Y. June 4, 2003); *see*

*also Pincione* v. *D'Alfonso*, 506 F. App'x 22, 24 (2d Cir. 2012).  Under Supreme Court and Sec-

ond Circuit law, venue cannot be established vicariously.  *Bankers Life & Cas. Co.* v. *Holland*,

346 U.S. 379, 384 (1953) (rejecting the "frivolous albeit ingenious" argument of vicarious con-

spiracy venue); *accord Bertha Bldg. Corp.* v. *Nat'l Theatres Corp.*, 248 F.2d 833, 836 (2d Cir.

1957).  Nor can venue be established based on contacts with any district but the specific district

in which plaintiffs brought suit.  *Daniel*, 428 F.3d at 430.  Because Plaintiffs fail to allege that

Venue Defendants are either "found" or "transact[] business in" in the relevant districts,[85] Plain-

tiffs fail to establish personal jurisdiction over Venue Defendants.[86]

## VI.    SCHWAB'S THEORY OF NATIONWIDE GENERAL JURISDICTION FAILS TO COMPORT WITH DUE PROCESS AND OTHERWISE LACKS STATUTORY AUTHORIZATION

Even though *Schwab* did not address this issue or grant the Schwab Plaintiffs leave to

amend to address it, the Schwab Plaintiffs now assert that a defendant domiciled in one state is

subject to general personal jurisdiction "in any judicial district within the U.S." under the na-

tionwide service of process provision of the Exchange Act.  Schwab SAC ¶¶ 220-22, 235.  This

---

[84] To "be found" in a district "requires something more than 'transact[ing] business'" there.  *United States* v. *Watchmakers of Switz. Info. Ctr.*, 133 F. Supp. 40, 42 (S.D.N.Y. 1955).  Venue Defendants do not transact business in the relevant districts, and thus are not found in the relevant districts either.

[85] *See* Kurtzberg Decl. Exs. 1-2.

[86] In any event, Section 12 of the Clayton Act, by its express terms, applies only to "a corporation."  15 U.S.C. § 22. The British Bankers' Association is not "a corporation"; it is an unincorporated association.  Accordingly, the Clayton Act cannot confer personal jurisdiction over the British Bankers' Association.  *World Skating Fed'n* v. *Int'l Skating Union*, 357 F. Supp. 2d 661, 664 (S.D.N.Y. 2005); *Kingsepp* v. *Wesleyan Univ.*, 763 F. Supp. 22, 25 (S.D.N.Y. 1991).

Court has already rejected the concept of nationwide general jurisdiction in the context of the Sherman Act, finding that Plaintiffs' theory improperly conflates the analysis for general jurisdiction with the analysis for specific jurisdiction.  Feb. 2, 2017 Order at 2-3 (Dkt. 1761).  The Schwab Plaintiffs do not point to anything in the Exchange Act that requires a different result. Nor could they; the theory violates due process and, in any event, lacks statutory support.

*Daimler* relegated general jurisdiction to "a less dominant place in the contemporary scheme."  *Daimler*, 571 U.S. at 133.  After *Daimler*, a corporation can be subject to general jurisdiction, consistent with due process, only where it is "at home" — which, absent exceptional circumstances, is either "a forum where it is incorporated or has its principal place of business." *Id.* at 137.  Otherwise, the plaintiff must establish specific jurisdiction.  The Schwab Plaintiffs do not explain how subjecting a defendant domiciled in one state to the all-purpose jurisdiction of every forum in the United States comports with *Daimler* or due process.  Indeed, they do not cite *any* post-*Daimler* authority in support of their position, and the cases they do cite all address specific jurisdiction, not general jurisdiction.[87]  Instead, against this clear weight of authority, the Schwab Plaintiffs only rely on general language in the Exchange Act that allows for jurisdiction where a defendant is found or conducts business.[88]  Such general language does not expressly authorize, let alone provide any support for, the Schwab Plaintiffs' theory of nationwide general

---

[87] *See, e.g.*, *Leasco Data Processing Equip. Corp.*, 468 F.2d at 1340 (examining the "various bases for the exercise of judicial jurisdiction," including doing business in the state, doing an act in the state, and causing an effect in the state by an act done elsewhere); *Donoghue* v. *Dicut, Inc.*, 2002 WL 1728539, at *1 (S.D.N.Y. July 24, 2002) (in assessing due process, "a minimum contacts inquiry must be made to determine if the defendant had sufficient contact with the forum to merit jurisdiction"); *Mariash* v. *Morrill*, 496 F.2d 1138, 1143 (2d Cir. 1974) (determining if "the 'minimal contacts,' required to justify the federal government's exercise of power over [the defendants], are present").

[88] Schwab AC ¶ 221 ("Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.") (quoting 15 U.S.C. § 78aa).

46

jurisdiction. The Supreme Court has "declined to stretch general jurisdiction beyond" the state-based territorial "limits traditionally recognized." *Daimler*, 571 U.S. at 132. This Court should continue to do the same.

## VII.   CONSIDERATIONS OF FAIR PLAY, SUBSTANTIAL JUSTICE, AND INTERNATIONAL COMITY SUPPORT DISMISSAL

Even if Plaintiffs made a *prima facie* showing of jurisdiction as to the Challenged Claims (and they have not), the Court would still be required to consider whether exercising jurisdiction "would comport with fair play and substantial justice." *Gucci*, 768 F.3d at 137. As part of this determination, courts look to: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *LIBOR IV*, 2015 WL 6243526, at *28 (citing *Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)). The Supreme Court has additionally emphasized that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. Co.* v. *Super. Ct.*, 480 U.S. 102, 115 (1987); *see also Daimler*, 571 U.S. at 141-42.

Finding jurisdiction on these facts would not comport with fair play and substantial justice for several reasons. *First*, it would be unreasonable for this Court to exercise jurisdiction over Defendants as to claims arising out of an alleged conspiracy that this Court has already concluded was carried out entirely outside of the United States.[89] *Second*, it would be similarly unreasonable for the Court, as Schwab Plaintiffs argue it should now do, to premise jurisdiction

---

[89] Considerations of fair play and substantial justice render the exercise of personal jurisdiction over the BBA — an English entity that does not have any branches, offices, subsidiaries, affiliates, or operations outside the United Kingdom — particularly unreasonable. *See* Decl. of S. Scutt (Dkt. 762) ¶¶ 7-11.

47

over their Counterparty-based Exchange Act claims based on direct dealings with certain De-
fendants through a nationwide contacts analysis. These claims are based on direct dealings that
occurred entirely in California, and, as courts in this district have recognized, where there is a
"weak showing of minimum contacts" with a forum, there must be a "stronger showing of rea-
sonableness" to exercise jurisdiction. *Gmurzynska* v. *Hutton*, 257 F. Supp. 2d 621, 628
(S.D.N.Y. 2003). Subjecting Defendants to jurisdiction on a nationwide contacts analysis based
on these geographically-isolated transactions would not "merely be inconvenient," but "would
violate our basic sense of fair play and substantial justice — and deprive the defendants of the
due process guaranteed by the Constitution." *Metro Life Ins. Co.*, 84 F.3d at 575. *Finally*, exer-
cising conspiracy jurisdiction over Defendants without first requiring Plaintiffs to satisfy tradi-
tional agency principles would be unreasonable and threaten international comity. Absent this
requirement, Defendants could be subject to jurisdiction in a forum where they had no suit-
related contacts, based on alleged activities that took place entirely abroad.[90]

## CONCLUSION

The Challenged Claims asserted by the Schwab Plaintiffs and Doral should be dismissed
for lack of personal jurisdiction and venue and the Moving Plaintiffs' requests for leave to
amend should be denied as futile on personal jurisdiction and venue grounds.

---

[90] *See Brown* v. *Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016) ("[C]onstitutional due process principles
generally restrict the power of a state to endow its courts with personal jurisdiction over foreign corporate parties . . .
with regard to matters not arising within the state."); *see also Laydon* v. *Mizuho Bank, Ltd.*, 2015 WL 1515358, at
*6 (S.D.N.Y. Mar. 31, 2015) ("personal jurisdiction . . . would not comport with notions of fair play and substantial
justice" in Euroyen TIBOR conspiracy case where foreign defendants' TIBOR submitters were located outside the
United States).

Dated:  New York, New York
         July 13, 2018

RESPECTFULLY SUBMITTED,


| | |
|---|---|
| */s/* Arthur J. Burke | */s/*   Daryl A. Libow |
| Arthur J. Burke | Daryl A. Libow |
| Paul S. Mishkin | Christopher M. Viapiano |
| Adam G. Mehes | Elizabeth A. Cassady |
| DAVIS POLK & WARDWELL LLP | SULLIVAN & CROMWELL LLP |
| 450 Lexington Avenue | 1700 New York Avenue, N.W., Suite 700 |
| New York, New York 10017 | Washington, D.C. 20006 |
| Telephone: (212) 450-4000 | Telephone: (202) 956-7500 |
| Fax: (212) 450-4800 | Fax: (202) 956-6973 |
| arthur.burke@davispolk.com | libowd@sullcrom.com |
| paul.mishkin@davispolk.com | viapianoc@sullcrom.com |
| adam.mehes@davispolk.com | cassadye@sullcrom.com |
| | |
| *Attorneys for Defendants Bank of America* | *Attorneys for Defendant The Bank of* |
| *Corporation, Bank of America, N.A., Banc of* | *Tokyo-Mitsubishi UFJ, Ltd. (n/k/a MUFG* |
| *America Securities LLC (n/k/a Merrill Lynch,* | *Bank, Ltd.)* |
| *Pierce, Fenner & Smith, Inc.), Merrill Lynch &* | |
| *Co., Inc., Merrill Lynch International Bank* | |
| *Ltd., Merrill Lynch, Pierce, Fenner & Smith,* | |
| *Inc., and Merrill Lynch Capital Services, Inc.* | |

/s/   David H. Braff
David H. Braff
Yvonne S. Quinn
Jeffrey T. Scott
Matthew J. Porpora
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
braffd@sullcrom.com
quinny@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com


/s/  Jonathan D. Schiller
Jonathan D. Schiller
Leigh M. Nathanson
Amos Friedland
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-2300
jschiller@bsfllp.com
lnathanson@bsfllp.com
afriedland@bsfllp.com

Michael Brille
5301 Wisconsin Avenue NW
Washington, D.C. 20015
Telephone: (202) 237-2727
mbrille@bsfllp.com

*Attorneys for Defendants Barclays Bank PLC,
and Barclays Capital Inc.*

/s/    Andrew A. Ruffino
Andrew A. Ruffino
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 841-1000
aruffino@cov.com

Alan M. Wiseman
Thomas A. Isaacson
Andrew D. Lazerow
Jamie A. Heine
Benjamin L. Cavataro
850 Tenth Street, N.W.
Washington, D.C. 20001
Telephone: (202) 662-6000
awiseman@cov.com
tisaacson@cov.com
alazerow@cov.com
jheine@cov.com
bcavataro@cov.com


/s/    Lev Dassin
Lev Dassin
Jonathan S. Kolodner
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
ldassin@cgsh.com
jkolodner@cgsh.com

*Attorneys for Defendants Citibank, N.A.,
Citigroup Inc., Citigroup Financial
Products, Inc., Citigroup Global Markets Inc.,
Citigroup, and Citi Swapco Inc.*

/s/  David R. Gelfand
David R. Gelfand
Robert C. Hora
Mark Villaverde
Jonathan Ohring
MILBANK TWEED HADLEY & McCLOY
LLP
28 Liberty Street
New York, New York 10005
Telephone: (212) 530-5000
dgelfand@milbank.com
rhora@milbank.com
mvillaverde@milbank.com
johring@milbank.com

*Attorneys for Defendant Coöperatieve Ra-*
*bobank U.A. (f/k/a Coöperatieve*
*Centrale Raiffeisen-Boerenleenbank B.A.)*


/s/      Moses Silverman
Moses Silverman
Aidan Synnott
Hallie S. Goldblatt
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Fax: (212) 757-3990
msilverman@paulweiss.com
asynnott@paulweiss.com
hgoldblatt@paulweiss.com

*Attorneys for Defendants Deutsche Bank AG*
*and Deutsche Bank Securities Inc.*

/s/  Joel Kurtzberg
Herbert S. Washer
Elai Katz
Joel Kurtzberg
Jason Hall
Lauren Perlgut
Adam Mintz
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
Telephone: (212) 701-3000
hwasher@cahill.com
ekatz@cahill.com
jkurtzberg@cahill.com
jhall@cahill.com
lperlgut@cahill.com
amintz@cahill.com

*Attorneys for Defendant Credit Suisse*
*Group AG, Credit Suisse International,*
*(f/k/a Credit Suisse First Boston International)*
*Credit Suisse AG, and Credit Suisse Securities*
*(USA) LLC*

51

/s/  Gregory T. Casamento
Gregory T. Casamento
LOCKE LORD LLP
3 World Financial Center
New York, New York 10281
Telephone: (212) 812-8325
Fax: (212) 812-8385
gcasamento@lockelord.com

Roger B. Cowie
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: (214) 740-8614
Fax: (214) 740-8800
rcowie@lockelord.com

J. Matthew Goodin
Julia C. Webb
111 South Wacker Drive, Suite 4100
Chicago, Illinois 60606
Telephone: (312) 443-0700
jmgoodin@lockelord.com
jwebb@lockelord.com

*Attorneys for Defendants HSBC Holdings
plc, HSBC Bank plc, The Hongkong and
Shanghai Banking Corporation Ltd.,
and HSBC Bank USA, N.A.*

/s/   Paul C. Gluckow
Mary Beth Forshaw
Paul C. Gluckow
Alan C. Turner
Alexander N. Li
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Fax: (212) 455-2502
mforshaw@stblaw.com
pgluckow@stblaw.com
aturner@stblaw.com
zanderli@stblaw.com

Abram J. Ellis
900 G Street NW
Washington, D.C.  20001
Telephone:  (202) 636-5500
Fax:  (202) 636-5502
aellis@stblaw.com

*Attorneys for Defendants JPMorgan Chase &
Co., JPMorgan Chase Bank, N.A., J.P. Mor-
gan Securities LLC (f/k/a J.P. Morgan Securi-
ties Inc.), J.P. Morgan Markets Limited (f/k/a
Bear, Stearns International Limited), J.P.
Morgan Dublin plc (f/k/a JPMorgan Bank
Dublin plc f/k/a Bear Stearns Bank plc), Chase
Bank USA, N.A., and Bear Stearns Capital
Markets, Inc.*

/s/  Marc J. Gottridge
Marc J. Gottridge
Lisa J. Fried
Benjamin A. Fleming
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Fax: (212) 918-3100
marc.gottridge@hoganlovells.com
lisa.fried@hoganlovells.com
benjamin.fleming@hoganlovells.com

*Attorneys for Defendants Lloyds Banking
Group plc, Lloyds Bank plc (f/k/a Lloyds TSB
Bank plc) and HBOS plc*

/s/ Christopher M. Paparella
Christopher M. Paparella
Robert B. Bell
Marc A. Weinstein
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Fax: (212) 422-4726
Chris.Paparella@hugheshubbard.com
Robert.Bell@hugheshubbard.com
Marc.Weinstein@hugheshubbard.com

*Attorneys for Defendants Portigon AG
(f/k/a WestLB AG) and Westdeutsche
ImmobilienBank AG*

/s/   Alan M. Unger
Alan M. Unger
Andrew W. Stern
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Fax: (212) 839-5599
aunger@sidley.com
astern@sidley.com

*Attorneys for Defendant The Norinchukin Bank*

/s/  Richard D. Owens
Richard D. Owens
Jeff G. Hammel
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1200
richard.owens@lw.com
jeff.hammel@lw.com

*Attorneys for Defendants British Bankers'
Association, BBA Enterprises Ltd., and BBA
Trent Ltd. (f/k/a LIBOR Ltd.)*

/s/   Arthur W. Hahn
Arthur W. Hahn
Christian T. Kemnitz
Brian J. Poronsky
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661
Telephone: (312) 902-5200
arthur.hahn@kattenlaw.com
christian.kemnitz@kattenlaw.com
brian.poronsky@kattenlaw.com

*Attorneys for Defendant Royal Bank of Canada*

/s/ Fraser L. Hunter, Jr.
Fraser L. Hunter, Jr.
David S. Lesser
Jamie S. Dycus
WILMER CUTLER PICKERING
HALE AND DORR LLP
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Fax: (212) 230-8888
fraser.hunter@wilmerhale.com
david.lesser@wilmerhale.com
jamie.dycus@wilmerhale.com

/s/   Robert G. Houck
Robert G. Houck
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 878-8000
Fax: (212) 878-8375
robert.houck@cliffordchance.com

*Attorneys for Defendants The Royal Bank of Scotland Group plc, and The Royal Bank of Scotland plc, and RBS Securities Inc.*[91]

/s/   Steven Wolowitz
Steven Wolowitz
Henninger S. Bullock
Andrew J. Calica
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Fax: (212) 262-1910
swolowitz@mayerbrown.com
hbullock@mayerbrown.com
acalica@mayerbrown.com

*Attorneys for Defendant Société Générale*

---

[91] Wilmer Cutler Pickering Hale and Dorr LLP is counsel for these defendants except as to plaintiffs Principal Funds, Inc.; Principal Capital Interest Only I, LLC; Principal Commercial Funding, LLC; Principal Commercial Funding II, LLC; Principal Financial Group, Inc.; Principal Financial Services, Inc.; Principal Life Insurance Company; Principal Real Estate Investors, LLC; and Principal Variable Contracts Funds, Inc.; Clifford Chance US LLP is counsel for these defendants except as to Plaintiff the Federal Home Loan Mortgage Corporation.

*/s/*    Eric J. Stock
Mark A. Kirsch
Eric J. Stock
Jefferson E. Bell
Matthew Greenfield
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
mrkirsch@gibsondunn.com
estock@gibsondunn.com
jbell@gibsondunn.com
mgreenfield@gibsondunn.com

*Attorneys for Defendant UBS AG and UBS
Securities LLC*