# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: | **MDL No. 2262**<br>**Master File No. 1:11-md-02262-NRB**<br><br>**ECF CASE** |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR AMCORE BANK, N.A., *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A, *et al.*,<br><br>Defendants. | **Case No. 1:14-cv-01757-NRB** |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR DORAL BANK,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A, *et al.*,<br><br>Defendants. | **Case No. 1:18-cv-01540-NRB** |
| THE FEDERAL HOME LOAN MORTGAGE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, *et al.*,<br><br>Defendants. | **Case No. 1:13-cv-03952-NRB** |
| PRINCIPAL FINANCIAL GROUP, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, *et al.*,<br><br>Defendants. | **Case No. 1:13-cv-6013-NRB** |

| | |
|---|---|
| PRINCIPAL FUNDS, INC., *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>BANK OF AMERICA CORPORATION, *et al.*,<br><br>        Defendants. | **Case No. 1:13-cv-6014-NRB** |
| THE BERKSHIRE BANK, *et al.*,<br>Individually and On Behalf of All Others<br>Similarly Situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>BANK OF AMERICA CORPORATION, *et al.*,<br><br>        Defendants. | **Case No. 12-cv-5723-NRB** |
| NATIONAL CREDIT UNION<br>ADMINISTRATION BOARD,<br>AS LIQUIDATING AGENT OF U.S.<br>CENTRAL FEDERAL CREDIT UNION, *et al.*,<br><br>        Plaintiff,<br><br>    v.<br><br>BANK OF AMERICA CORPORATION, *et al.*,<br><br>        Defendants. | **Case No. 13-cv-7394-NRB** |

**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTIONS FOR LEAVE TO AMEND COMPLAINTS**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ..................................................................................................... 1

II.     PLAINTIFFS EASILY MEET THE STANDARDS SET FORTH IN
        RULE 15, WHICH REQUIRES THAT COURTS "FREELY GIVE"
        LEAVE TO AMEND ................................................................................................. 2

III.    THE PROPOSED AMENDMENTS ARE MORE THAN SUFFICIENT TO
        WITHSTAND A MOTION TO DISMISS ................................................................ 4

        A.      The Proposed Amendments State Claims For Relief Against Direct
                And Indirect Sellers Of LIBOR-Based Instruments ................................... 5

        B.      Proposed Amendments To Allege Facts Regarding Defendants'
                False Assurances Are Viable ...................................................................... 8

        C.      Plaintiffs' Proposed Amendments Are Timely Offered, Post-*Schwab* ......... 10

                1.      Freddie Mac's Fraud Claims Are Timely ...................................... 10

                2.      Principal Plaintiffs' Fraud Claims Are Timely .............................. 11

                3.      Doral Bank's Tort Claims Are Timely ........................................... 11

        D.      Principal Plaintiffs' Amendments Comport With *Schwab* And Are
                Timely Offered ............................................................................................. 12

        E.      The Proposed Amendments Plausibly Allege That The Unlawful
                Conduct Continued Through October 2011 ................................................ 13

        F.      Doral's Counterparty, Fraud, And Antitrust Claims Are Viable ............... 17

                1.      Federal Law Does Not Preempt Doral's Donnelly Act Claims ...... 18

                2.      Doral, Like The Other Closed Banks, Is An Efficient Enforcer
                        Of The Antitrust Laws .................................................................... 19

        G.      The Lender Plaintiffs' Motion For Leave To Amend Should Be Granted ...... 22

        H.      NCUA's Proposed Amendments Are Appropriate ...................................... 23

IV.     CONCLUSION ......................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Cases**                                                               **Page(s)**

*7 W. 57th Realty Co., LLC v. Citigroup, Inc.*,
2018 WL 1415209 (S.D.N.Y. Mar. 20, 2018) ...................................................9, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................17

*Blagman v. Apple, Inc.*,
2014 WL 2106489 (S.D.N.Y. May 19, 2014) .......................................................13

*Block v. First Blood Assocs.*,
988 F.2d 344 (2d Cir. 1993).............................................................................3, 13

*BNP Paribas Mortgage Corp. v. Bank of Am., N.A.*,
778 F. Supp. 2d. 375 (S.D.N.Y. 2011)...................................................................7

*BPP Illinois, LLC v. Royal Bank of Scotland Grp., PLC*,
603 F. App'x 57 (2d Cir. 2015) .......................................................................9, 10

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018)...................................................................... *passim*

*In re Commodity Exch. Inc.*,
213 F. Supp. 3d 631 (S.D.N.Y. 2016)...................................................................20

*Concord Assocs., L.P. v. Entm't Props. Trust*,
817 F.3d 46 (2d Cir. 2016).................................................................................16

*Conergy AG v. MEMC Elec. Materials, Inc.*,
651 F. Supp. 2d 51 (S.D.N.Y. 2009)....................................................................18

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)...........................................................................................17

*Danaher Corp. v. Travelers Indem. Co.*,
2013 WL 150027 (S.D.N.Y. Jan. 10, 2013) .........................................................15

*In re Digital Music Antitrust Litig.*,
812 F. Supp. 2d 390 (S.D.N.Y. 2011)...................................................................18

*DNAML PTY, Ltd. v. Apple Inc.*,
25 F. Supp. 3d 422 (S.D.N.Y. 2014)....................................................................20

*Elliott v. City of Hartford*,
  649 F. App'x 31 (2d Cir. 2016) ...................................................................4

*Evans v. Trinity Indus., Inc.*,
  137 F. Supp. 3d 877 (E.D. Va. 2015) .........................................................11

*Fed. Hous. Fin. Agency v. Nomura Holding Am. Inc.*,
  68 F. Supp. 3d 439 (S.D.N.Y. 2014)...........................................................6

*Foman v. Davis*,
  371 U.S. 178 (1962)....................................................................................3

*Garcia Colon v. Garcia Rinaldi*,
  340 F. Supp. 2d 113 (D.P.R. 2004)............................................................22

*Gelboim v. Bank of Am. Corp.*,
  823 F.3d 759 (2d Cir. 2016).................................................................*passim*

*Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*,
  998 F.2d 391 (7th Cir. 1993) .....................................................................20

*Grismore v. Garber*,
  2006 WL 469986 (Iowa Ct. App. Mar. 1, 2006) ......................................11

*H–Quotient, Inc. v. Knight Trading Grp.*,
  2005 WL 323750 (S.D.N.Y. Feb. 9, 2005)................................................18

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977)...............................................................................21, 22

*Laumann v. Nat'l Hockey League*,
  907 F. Supp. 2d 465 (S.D.N.Y. 2012).......................................................22

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014)...................................................................................20

*In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR IV")*,
  2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015)......................................*passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2016 WL 1558504 (S.D.N.Y. April 15, 2016) .............................................4

*In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR VT")*,
  2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016) .....................................*passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2017 WL 532465 (S.D.N.Y. Feb. 2, 2017)............................................12, 19

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*,
   797 F.3d 160 (2d Cir. 2015)................................................................2, 3

*Maurás v. Banco Popular De Puerto Rico, Inc.*,
   2017 WL 5158677 (D.P.R. Nov. 7, 2017) ..............................................22

*Meridian Int'l Bank Ltd. v. Gov't of the Republic of Liberia*,
   23 F. Supp. 2d 439 (S.D.N.Y. 1998)......................................................11

*In re Mushroom Direct Purchaser Antitrust Litig.*,
   2016 WL 8459462 (E.D. Pa. Dec. 13, 2016)..........................................22

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   169 F.R.D. 493 (S.D.N.Y. 1996) ...........................................................22

*Nat'l Credit Union Admin. Bd. v. Credit Suisse Sec. (USA) LLC*,
   939 F. Supp. 2d 1113 (D. Kan. 2013) ......................................................6

*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*,
   2014 WL 241739 (S.D.N.Y. Jan. 22, 2014) .............................................6

*Pasternack v. Shrader*,
   863 F.3d 162 (2d Cir. 2017)..................................................................24

*Phillips v. Wells Fargo Bank, N.A.*,
   2018 WL 1946925 (E.D. Va. Apr. 25, 2018) ........................................10

*Royal Printing Co. v. Kimberly-Clark Corp.*,
   621 F.2d 323 (9th Cir. 1980) ................................................................22

*Salahuddin v. Cuomo*,
   861 F.2d 40 (2d Cir. 1988)....................................................................17

*Shams v. Hassan*,
   905 N.W.2d 158 (Iowa 2017) ...............................................................11

*State Teachers Ret. Bd. v. Fluor Corp.*,
   654 F.2d 843 (2d Cir. 1981)....................................................................3

*Telematics Int'l, Inc. v. NEMLC Leasing Corp.*,
   967 F.2d 703 (1st Cir. 1992)..................................................................20

*Two Queens, Inc. v. Scoza*,
   745 N.Y.S.2d 517 (N.Y. App. Div. 2002) ............................................18

*Velez v. Feinstein*,
   87 A.D.2d 309 (1st Dep't 1982) ..............................................................7

*Vitullo v. Mancini*,
    684 F. Supp. 2d 747 (E.D. Va. 2010) ...................................................................16

*Williams v. Citigroup, Inc.*,
    659 F.3d 208 (2d Cir. 2011) (per curiam).............................................................2

*WorldHomeCenter.com, Inc. v. PLC Lighting, Inc.*,
    851 F. Supp. 2d 494 (S.D.N.Y. 2011).................................................................18

**Statutes**

12 U.S.C. § 1821(d)(14) ..........................................................................................11

Iowa Code § 614.1(4) ..............................................................................................11

N.Y. McKinney's General Business Law §§ 340–347...........................................16, 18

Sherman Act, § 1 et seq. ...........................................................................................18

**Other Authorities**

Federal Rule of Civil Procedure 8 .......................................................................16, 17

Federal Rule of Civil Procedure 12 .........................................................................1, 4

Federal Rule of Civil Procedure 15 ................................................................. *passim*

Restatement (Second) of Trusts § 282(2) (1959).........................................................7

# I.   INTRODUCTION[1]

Ignoring the standards governing leave to amend, Defendants' Opposition ("Opposition") instead relies on a patchwork of inapposite, pre-*Schwab* rulings issued by this Court in contexts having no bearing on the motions at hand.  Similarly, Defendants' contention that Plaintiffs'[2] proposed amendments are "futile" disregards the holdings in *Schwab* and prior rulings of this Court, as well as the detailed, substantive allegations set out in the proposed amended complaints. The amendments allege viable claims against all Defendants for unlawful conduct that extends through October 2011, including (1) claims against Defendant direct and indirect sellers of LIBOR-based instruments for fraud-by-omission, unjust enrichment, and breach of implied covenant ("Counterparty Claims") and (2) claims against all Defendants for fraud and antitrust for persistent suppression ("Suppression Claims").

---

[1] This Reply addresses Defendants' arguments that the proposed amendments fail to state claims for relief under Federal Rule of Civil Procedure 12(b)(6).  Under separate cover, Plaintiffs address personal jurisdiction issues.

[2] The following movants are referred to herein as the "FFP Plaintiffs":  Federal Deposit Insurance Corporation as Receiver for 39 Closed Banks ("FDIC-R"); Principal Financial Group, Inc., Principal Financial Services, Inc., and Principal Life Insurance Company ("Principal Financial") and Principal Funds, Inc. ("Principal Funds") (collectively, "Principal Plaintiffs"); and The Federal Home Loan Mortgage Corporation ("Freddie Mac").  *See* Mem. Supp. Mot. Pls.' Federal Deposit Insurance Corporation as Receiver for 38 Closed Banks and Federal Deposit Insurance Corporation as Receiver for Doral Bank for Leave to File Proposed Second Amended Compl., ECF No. 2565 ("FDIC-R Mem."); Mem. Supp. Mot. Pls.' Principal Financial Group, Inc. et al, ECF Nos. 2547, 2549 ("Principal Pls. Mem."); Mem. Supp. Mot. Pl. The Federal Home Loan Mortgage Corp. for Leave to File Proposed Third Amended Compl., ECF No. 2566 ("FM Mem.").

"NCUA" refers to movant National Credit Union Administration Board.  *See* Mem. Supp. Mot. NCUA for Leave to file Proposed Second Amend Compl., ECF No. 2545.

The "Lender Plaintiffs" are movants The Berkshire Bank, Government Development Bank for Puerto Rico and Directors Financial Group.  *See* Mem. Law in Supp. of Gov't Dev't Bank of P.R.'s Mot. to Amend the Court's Nov. 3, 2014 Order and for Leave to Amend the Second Am. Consolidated Compl., ECF No. 2572 ("Lender Pls. Mem.").

The FFP Plaintiffs, NCUA, and the Lender Plaintiffs are collectively referred to herein as "Plaintiffs."

As discussed in their moving papers and further below, Plaintiffs' proposed amendments easily meet the standards set by Federal Rule of Civil Procedure 15(a)(2) and the law of this Circuit.[3]  Plaintiffs' motions to amend should be granted in their entirety.

## II.  PLAINTIFFS EASILY MEET THE STANDARDS SET FORTH IN RULE 15, WHICH REQUIRES THAT COURTS "FREELY GIVE" LEAVE TO AMEND

Federal Rule of Civil Procedure 15(a)(2) and the law in this Circuit provide that leave to amend shall be "freely given."  District courts should apply a "permissive standard" with respect to requests for leave to amend complaints because the "strong preference" in this Circuit is to "resolv[e] disputes on their merits.'"  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (quoting *Williams v. Citigroup, Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (per curiam)) (reversing denial of leave to amend as premature and stating that courts should "hew to the liberal standard set forth in Rule 15").

Plaintiffs' proposed amendments readily satisfy Rule 15.  They are timely, brought in good faith, and would result in no prejudice to Defendants.  The Second Circuit in *Schwab* invited amendments of the type Plaintiffs propose.  *See, e.g.*, FM Mem. at 4-5; FDIC-R Mem. at 1, 4-6; Principal Pls. Mem. at 1, 8; Lender Pls. Mem. at 8-11; *see also Schwab*, 883 F.3d at 90 n.8 (contemplating leave to amend claims that were dismissed on the merits).  The proposed amendments add specific, substantive allegations that state viable Counterparty and Suppression Claims for losses suffered through October 2011, and they are consistent with this Court's prior rulings.

---

[3] FM Mem. at 2-4.  Both FDIC-R and the Principal Plaintiffs, to the extent overlap exists, have joined in Freddie Mac's memorandum in support of its motion for leave to amend.  *See* FDIC-R Mem. at 1; Principal Pls. Mem. at 1.

Defendants essentially ignore Rule 15.[4]  They do not even try to argue that Plaintiffs acted in bad faith, or that the timing of the amendments would cause Defendants any – let alone undue – prejudice.  Nor could they.  Plaintiffs' cases are still in their early stages.  No Defendant has filed an answer to Plaintiffs' complaints.  And the parties are just now beginning discussions regarding merits discovery (most Plaintiffs were precluded from receiving many of the documents produced to class plaintiffs in connection with the class certification process).

Moreover, Plaintiffs did not (as Defendants incorrectly argue) delay in seeking leave to amend their complaints.  In any event, alleged delay would not be enough, without more, to deny Plaintiffs' motions.  *See Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (absent a showing of bad faith or undue prejudice "'[m]ere delay . . . does not provide a basis for a district court to deny the right to amend'" (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981))); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (delay must be "undue"); *Loreley*, 797 F.3d at 190.[5]

Finally, as set forth in more detail below, Defendants' suggestion that the proposed amendments would be futile overreads this Court's prior rulings and is otherwise baseless.  For example, the Court never ruled that amendments to support persistent suppression allegations through October 2011 would be futile.  *See infra* Section III.E.  The proposed amendments also

---

[4] Defendants' Opposition makes only one reference to Rule 15, in a footnote, and fails to address the Rule 15 standards at all, much less in the context of Plaintiffs' proposed amendments.  *See* Joint Mem. of Law in Supp. of Defs.' Opp'n to Pls.' Mots. for Leave to Amend at 3 n.4, ECF No. 2625 ("Opp.").

[5] Like the case here, *Loreley* involved a long, multi-pronged complaint in a complex commercial case.  797 F.3d at 191.  The defendants sought to dismiss the complaint and in a pre-motion conference, the district court offered plaintiffs a choice:  agree to cure deficiencies not yet fully briefed or forfeit the opportunity to replead.  *Id.*  Plaintiffs sought a ruling, the district court dismissed and denied leave to amend based on its prior order.  *Id.*  The Second Circuit reversed because the district court "exceeded the bounds of its discretion" by failing to address futility.  *Id.* at 189-91.  The Second Circuit explained that, in complex cases, pleading defects may be "easily missed or misperceived without full briefing and judicial resolution" or the allegations might be "borderline, and hence subject to reasonable dispute."  *Id.* at 191.  "Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."  *Id.* at 190.

include important facts that were publicly unavailable before June 2018 that, in the context of the proposed amended complaints, plausibly state Suppression Claims through the entire alleged time period.  Plaintiffs' proposed amendments are thus well within the scope of the amendments that Rule 15 permits.

## III.   THE PROPOSED AMENDMENTS ARE MORE THAN SUFFICIENT TO WITHSTAND A MOTION TO DISMISS

Following *Schwab*, the proposed amendments clearly establish (1) Counterparty Claims against Defendant direct and indirect sellers of LIBOR-based instruments and (2) Suppression Claims against all Defendants.  *See, e.g.*, FM Mem. at 2-23 (discussing how the proposed amendments state claims that would survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)).  Defendants' assertion that Plaintiffs' proposed amendments are outside the scope of *Schwab* is erroneous.  Additionally, one of the goals of the proposed amendments was to synthesize the facts into a single pleading for judicial economy and potential appellate review. *E.g.*, FM Mem. at 25; *cf.* Orders (May 19, 2015), ECF Nos. 1137 and 1138 (granting Plaintiffs' requests for the Court to consider new facts that came to light, after Plaintiffs filed their complaints, as a result of settlement agreements between Deutsche Bank AG and the U.S. Department of Justice, among others).  Plaintiffs believe these amendments provide clarity and are necessary. FM Mem. at 25.[6]

---

[6] Plaintiffs must protect their arguments for appeals, which will likely ripen in the Fourth, Eighth, and Tenth Circuits on remand.  In the Second Circuit, one recent ruling held that all claims alleged in an original complaint that are not re-stated in an amended complaint were waived "irrespective of whether the amended pleading is permitted by the [district] court."  *Elliott v. City of Hartford*, 649 F. App'x 31, 32 (2d Cir. 2016).  *Elliott* was issued one month after this Court instructed certain class action plaintiffs in another context not to "replead definitively dismissed claims where they have not received this Court's leave to amend those claims."  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2016 WL 1558504, at *11 (S.D.N.Y. April 15, 2016).  To avoid any claim by Defendants that Plaintiffs have not adequately restated (and thus preserved) their claims in full, Plaintiffs have realleged all necessary facts in their proposed amended complaints.

### A.    The Proposed Amendments State Claims For Relief Against Direct And Indirect Sellers Of LIBOR-Based Instruments

The proposed amendments provide additional details of transactions with direct and indirect seller Defendants on which viable Counterparty Claims are based.[7]  This Court has already upheld the viability of Counterparty Claims against direct seller Defendants.  *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR IV*"), No. 11 MDL 2262 NRB, 2015 WL 6243526, at *71 (S.D.N.Y. Oct. 20, 2015).  *Schwab* recognized that Counterparty Claims may also be properly asserted against an indirect seller Defendant when that Defendant used a subsidiary/affiliate as an agent to solicit and sell LIBOR-based instruments to Plaintiffs.  883 F.3d at 86-87, 90 n.8. Defendants' arguments to the contrary are misguided and late.

First, Defendants' argument that claims for "asset-backed securities" are new, Opp. at 14, is factually incorrect.[8]  Plaintiffs have always pursued claims for losses suffered from the acquisition and holding of LIBOR-based mortgage-backed securities ("MBS"), which are a type of asset-backed security.[9]  To the extent the proposed amendments refer to other "asset-backed securities," they do so to (1) show the extent of Defendants' contacts and larger course of dealing with Plaintiffs, FM Mem. at 6-7 – which is relevant to personal jurisdiction, *see LIBOR IV*, 2015 WL 6243526, at *28 (courts apply a sliding scale based on the totality of the defendant's contacts with the forum) – or (2) explain a defendant's operating structure, *see, e.g.*, Freddie Mac's

---

[7] *See, e.g.*, FM Mem. at 5-11 (discussing allegations of Defendants' direct and indirect sales of LIBOR-based instruments to Freddie Mac); Principal Financial Proposed Second Am. Compl. ¶¶ 11, 230-39, ECF No. 2547-01 ("PFin PSAC"); Principal Funds Proposed Second Am. Compl. ¶¶ 11, 228-37, ECF No. 2554-01 ("PFunds PSAC"); Decl. Eddie Vonnahme in Supp. of Principal Pls.' Opp. to Defs.' Motions to Dismiss ¶¶ 3, 6, 9-11, 17-18, 23-25, 27-29, 33-34, 37-38, 45-46, 48-49, 53-55, 60-61, 71-72, 77, 83, 85-86, 88-89, 93, 97, 101-02, 107-09, 113-14, 116-17, 120-21, ECF No. 1503; NCUA's Proposed Am. Compl. ¶¶ 230-47 & Apps. A-R, ECF No. 2581.

[8] *E.g.*, Freddie Mac's Second Am. Compl. ¶¶ 134, 186, 223, 286-87, 296-97, 301 No. 13-cv-03952, ECF No. 60 ("FM SAC"); FDIC-R First Am. Compl. ¶¶ 400, 420, 438, No. 14-cv-01757, ECF No. 22 ("FDIC-R FAC"); Principal Financial's First Am. Compl. ¶¶ 214-23, 1:13-cv-06014, ECF No. 57 ("PFin FAC"); Principal Funds' First Am. Compl. ¶¶ 212-21, 1:13-cv-06013, ECF No. 57 ("PFunds FAC").

[9] *See supra* note 8.

Proposed Third Am. Compl. ¶ 122, ECF No. 2566-01 ("FM PTAC") ("HSBC Group's derivatives and asset-backed securities businesses, including the sale of MBS to and execution of swap transactions with Freddie Mac, fell within the Global Banking & Markets segment.").

Second, Defendants repeat the same meritless argument they made in 2016 that trustees (rather than Plaintiffs themselves) "may be the proper party" to maintain claims for losses arising from Plaintiffs' purchase and holding of MBS.[10]   But this Court already held that holders of LIBOR-based financial instruments, including MBS, suffered injuries proximately caused by Defendants' wrongdoing.  *LIBOR IV*, 2015 WL 6243526, at *62.  As Plaintiffs explained in their briefing leading up to *LIBOR VI*[11], a trustee's standing to sue for breach of contract has no bearing on the ultimate victim's standing to sue for fraud and antitrust violations.  *See* Direct Action Pls.' Joint Mem. of Law in Opp. to Defs.' Joint Mot. To Dismiss All Antitrust Claims Based on the Efficient Enforcer Doctrine at 8-9 (Aug. 5, 2016), ECF No. 1516.  Plaintiffs' pursuit of these claims is no different than an MBS purchaser's pursuit of federal securities law claims against MBS counterparties, which plaintiffs are routinely allowed.[12]  The cases cited by Defendants are factually and legally inapposite, involving employee disputes with their unions, not fraud with respect to financial instruments that are directly tied to the plaintiffs.  Indeed, Defendants show

---

[10] *Compare* Opp. at 15, *with* Joint Mem. of Law in Supp. of Defs.' Mot. to Dismiss All Antitrust Claims Based on the Efficient Enforcer Doctrine at 37-38 (July 6, 2016), ECF No. 1481 ("EE Mem.").

[11] *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR VI*"), No. 11 MDL 2262 NRB, 2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016)

[12] *E.g.*, *Fed. Hous. Fin. Agency v. Nomura Holding Am. Inc.*, 68 F. Supp. 3d 439 (S.D.N.Y. 2014), *aff'd sub nom. Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85 (2d Cir. 2017); *Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13 Civ. 6705 (DLC), 2014 WL 241739, at *15-17 (S.D.N.Y. Jan. 22, 2014); *Nat'l Credit Union Admin. Bd. v. Credit Suisse Sec. (USA) LLC*, 939 F. Supp. 2d 1113, 1132 (D. Kan. 2013).

only that trust beneficiaries "may" sue to enforce a contract, Opp. at 15, not that trustees are the only proper plaintiffs to bring fraud claims against defendants.[13]

Third, the proposed amendments themselves rebut Defendants' conclusory assertion that Freddie Mac's claims do not provide the detail needed to state viable fraud claims for losses on MBS transactions.  Opp. at 16 n.28.  Freddie Mac's allegations provide, in as much detail as comparable claims based on the purchases of home loans that this Court found sufficient, the who, what, where, and when of these MBS transactions and further explain how the counterparty Defendants specifically targeted Freddie Mac.  FM Mem. at 5-11.[14]  The proposed amendments further demonstrate how Defendants utilized their wholly owned subsidiaries or affiliates as agents in these transactions.  *Id*.

Finally, Defendants argue in a footnote that Freddie Mac offers "no explanation" for its decision to seek leave to allege more facts regarding its MBS transactions now rather than two years ago.  Opp. at n.7.  This is wholly untrue.  As Freddie Mac specifically explained in its memorandum in support of its motion for leave to amend, it would have been futile to seek leave prior to *Schwab* because this Court had dismissed Freddie Mac's fraud and antitrust claims in their entirety on separate grounds.  FM Mem. at 4-5; *see also Schwab*, 883 F.3d at 90 (noting that Schwab plaintiffs did not act unreasonably in declining to seek leave to propose amendments that

---

[13] Defendants quote *Velez v. Feinstein*, 87 A.D.2d 309 (1st Dep't 1982), which stands for the unremarkable proposition that a beneficiary seeking to sue on behalf of a trust must establish standing.  But Deutsche Bank advanced, and lost, a similar argument based on *Velez* in *BNP Paribas Mortgage Corp. v. Bank of America, N.A.*, 778 F. Supp. 2d. 375 (S.D.N.Y. 2011).  In *BNP Paribas*, Deutsche Bank sought to sue as a beneficiary and argued that it had met the standing requirements set forth in *Velez*.  778 F. Supp. 2d. at 409.  The district court rejected the argument because Deutsche Bank was "suing for [its] own losses" and the "the analogy to derivative claims, in which a party may pursue a claim belonging to someone else" did not apply.  *Id*.  Restatement (Second) of Trusts § 282(2) (1959), cited by Defendants, says the same thing.  Nothing in *Velez* or the Restatement suggests that victims of fraud cannot pursue claims against the sellers of MBS for losses the victims suffered because of the seller's fraud.

[14] The Defendant counterparties to these transactions are aware of their details.

would not remedy the defects the district court perceived as an independent basis for dismissal at the time).  As discussed below, the *Schwab* decision revives Freddie Mac's fraud claims.

> **B.**     **Proposed Amendments To Allege Facts Regarding Defendants' False Assurances Are Viable**

The Second Circuit's holding that the Schwab plaintiffs reasonably could have relied on the British Bankers' Association (the "BBA")'s false assurances that LIBOR was not being manipulated supports the inclusion of amendments alleging additional false assurances.  *See* FM Mem. at 4.  The proposed amendments include: (1) additional instances in which the BBA (which cannot claim the benefit of this Court's prior limitations rulings),[15] acting on behalf of the Panel Banks, represented that LIBOR submissions were "fully compliant" with the LIBOR rules and that the Panel Bank Defendants were "confident" that their submissions were "truly reflective" of their perceived borrowing costs; (2) statements by the Foreign Exchange and Money Market Committee ("FXMMC") on behalf of, at least, its thirteen members that it "believes that current submissions are accurate"; (3) statements by certain Defendants, including JPMorgan, Citibank, Deutsche Bank, HBOS, and WestLB, that they submitted honest contributions;  (4) numerous allegations citing contemporaneous independent sources expressing the view that LIBOR's dislocations were the result of extraordinary market events, not intentional fraud or collusion – including the Bank for International Settlements (March 2008), the New York Fed (May 2008), the Austrian Minister of Finance (May 2008), Ph.D. economists using statistical analyses in a journal of banking and finance (August 2008), and the International Monetary Fund (October 2008); and (5) *ex post* statements by the former Governor of the Bank of England, former Deputy Governor of the United Kingdom Financial Stability Board, members of the United Kingdom Treasury Department,

---

[15] *LIBOR IV*, 2015 WL 6243526, at *135 ("It is not, however, clear when a reasonable plaintiff would have discovered the alleged complicity of non-panel-bank entities (bank affiliates and the BBA) in LIBOR manipulation, so we cannot hold that a reasonable investigation would have concluded as to non-panel-bank entities on any particular date.").

former head of the United Kingdom Financial Services Authority, former Chairman of the U.S. Federal Reserve, and the investment firm BlackRock that there was no reasonable way – at the time – to distinguish lawful "dislocations" from unlawful conduct.[16]   These allegations go far beyond those that the Second Circuit considered sufficient to defeat motions to dismiss in *Schwab* and *BPP Illinois, LLC v. Royal Bank of Scotland Group, PLC*, 603 F. App'x 57 (2d Cir. 2015).

Defendants' contention that the Second Circuit's limitations ruling in *Schwab* was entirely dependent on a "unique facet of California law" is unfounded.  Opp. at 12.  The Second Circuit held that ***even if*** California law were no different than other jurisdictions, Schwab could plausibly have relied on the BBA's false assurances.  *Schwab*, 883 F.3d at 98.  Moreover, the Second Circuit expressly reversed *LIBOR IV*'s holding that "a person of ordinary intelligence would have understood the banks' and the BBA's strong incentives to deny manipulating LIBOR" and "should have regarded such assurances cautiously, if at all, and should not have forgone a reasonable investigation of public data on the basis of such self-serving statements."  *LIBOR IV*, 2015 WL 6243526, at *115.   The Second Circuit also cited its prior decision in *BPP*, decided under Pennsylvania law, for the proposition that a statute of limitations dismissal at the pleading stage was premature.  *See id.*; *BPP*, 603 Fed. App'x at 59; FM Mem. at 4, 19-20.

Judge Gardephe, the only district court judge in the Second Circuit to consider this issue post-*Schwab*, agrees.  In *7 W. 57th Realty Co., LLC v. Citigroup, Inc.*, No. 13 Civ. 981 (PGG), 2018 WL 1415209, at *15 (S.D.N.Y. Mar. 20, 2018), the plaintiff alleged that "'the BBA engaged in affirmative acts that lulled any speculation that LIBOR had been or was being manipulated'" and that between April 2008 and May 29, 2008, the BBA and Defendant banks made repeated

---

[16] *See* FM PTAC ¶¶ 132, 312, 317, 326, 328, 402-19, 554; FDIC-R Proposed Second Am. Compl. ¶¶ 308-16, ECF No. 2567-01 ("FDIC-R PSAC"); PFin PSAC ¶¶ 240-51, 261-70; PFunds PSAC ¶¶ 239-49, 260-68.

public statements denying any wrongdoing and reassuring investors that "'LIBOR had not been manipulated.'" *Id.* (citations omitted).  Addressing the statute of limitations issue for plaintiff's claims brought under the Racketeer Influenced and Corruption Organizations ("RICO") Act, Judge Gardephe found that "[t]he Second Circuit's [*Schwab*] analysis strongly suggests that, even if the news articles published on or about May 29, 2008 are sufficient to place a plaintiff on inquiry notice, the statute of limitations would be tolled under the doctrine of fraudulent concealment where a plaintiff plausibly alleges that it relied on the BBA's assurances that LIBOR was accurate." *7 W. 57th Realty Co., LLC*, 2018 WL 1415209 at *15.  RICO is an "intermediate inquiry notice" statute, holding plaintiffs to a stricter standard than Plaintiffs should be held for their fraud claims. *LIBOR IV*, 2015 WL 6243526, at *127.

Ignoring *Schwab*, *BPP*, and *7 W. 57th*, Defendants instead cite to this Court's application of *Schwab* in two subsequent opinions.  *See* Opp. at 12 n.23.  In the first case, this Court held that Commodity Exchange Act ("CEA") claims are not subject to the discovery rule, and therefore, *Schwab* afforded no basis on which to vacate the Court's prior dismissal of CEA claims.  *See* Order at 3-4 (Apr. 24, 2018), ECF No. 2496.  In the second, the Court held that the lender plaintiffs' claims would be time-barred under Puerto Rico's one-year statute even if the limitations period did not begin running until March 15, 2011.  Order at 4 (July 2, 2018), ECF No. 2607 ("July 2, 2018 Order").  Neither ruling applies because both were decided under different circumstances and laws that are not at issue here.

## C.   **Plaintiffs' Proposed Amendments Are Timely Offered, Post-*Schwab***

### 1.   **Freddie Mac's Fraud Claims Are Timely**

As discussed in Freddie Mac's memorandum in support of its motion for leave to amend, Freddie Mac's fraud claims are timely because the discovery rules for California and Pennsylvania are stricter than the Virginia statute.  *See* FM Mem. at 4-5; *see also Phillips v. Wells Fargo Bank,*

*N.A.*, No. 3:17–cv–00519–JAG, 2018 WL 1946925, at *3 (E.D. Va. Apr. 25, 2018) (denying motion to dismiss on statute of limitations grounds where "discovery" and "a more complete evidentiary record" were needed to determine when plaintiffs should have discovered the fraud). Freddie Mac filed its lawsuit within two years of March 15, 2011.  Thus, under *Schwab*, Freddie Mac's claims are timely.

### 2.    Principal Plaintiffs' Fraud Claims Are Timely

The discovery rules for California and Pennsylvania are far stricter than the Iowa rule.  *See Shams v. Hassan*, 905 N.W.2d 158, 163-64 (Iowa 2017) ("Whether or not plaintiff's failure to discover her cause of action was due to failure on her part to use due diligence, or to the fact that defendant so concealed the wrong as that plaintiff was unable to discover it by the exercise of due diligence, is . . . a question of fact for the jury.").  Principal Plaintiffs filed well within Iowa's five-year statute of limitations for fraud.  Iowa Code § 614.1(4).[17]

### 3.    Doral Bank's Tort Claims Are Timely

Doral Bank's ("Doral") tort claims are timely because the FDIC Extender Statute (12 U.S.C. § 1821(d)(14) (2012)) gives the FDIC-R three years after its appointment as receiver to file and "revives" certain claims that expired less than five years before appointment.  *LIBOR IV*, 2015 WL 6243526, at *120-21.  Here, the FDIC-R was appointed receiver for Doral on February 27, 2015.  FDIC-R PSAC ¶ 15.h.  It filed suit less than three years later, on February 20, 2018.  Its fraud claims accrued less than five years beforehand – even using Defendants' incorrect inquiry notice date of April 25, 2008.  Using that (erroneous) notice date, Doral's tort claims would not

---

[17] As Defendants state in a footnote, this Court also wrote in its July 2, 2018 Order that it was not convinced Puerto Rico would recognize a "defendant reassurance" exception to the discovery rule.  July 2, 2018 Order at 3.  As Judge Gardephe found, however, the Second Circuit's decision rested on a broader foundation.  In addition, Iowa, New York, and Virginia all recognize the doctrine of fraudulent concealment.  *See, e.g.*, *Grismore v. Garber*, No. 04-1801, 2006 WL 469986, at *3 (Iowa Ct. App. Mar. 1, 2006); *Meridian Int'l Bank Ltd. v. Gov't of the Republic of Liberia*, 23 F. Supp. 2d 439, 447 (S.D.N.Y. 1998); *Evans v. Trinity Indus., Inc.*, 137 F. Supp. 3d 877, 882 (E.D. Va. 2015).

have accrued under Puerto Rico's one-year statute until April 2009 at the earliest and the statute would not have run until one year later, in April 2010 – less than five years before February 2010. *LIBOR IV*, 2015 WL 6243526, at *135, 166-68 (finding Puerto Rico is a weak inquiry notice jurisdiction for Eurobank, R-G Premier, and Westernbank and a sophisticated investor could have taken up to a year to discover its claims).  In addition, as set forth below, Doral was not on inquiry notice of its pre-May 2010 tort claims until 2011.  It was not on notice of its post-May 2010 claims until the 2017 Société Générale ("SocGen") regulatory disclosures.  *See infra* Part III.D.

## D.  Principal Plaintiffs' Amendments Comport With *Schwab* And Are Timely Offered

Defendants' only argument for denying Principal Plaintiffs' amendments establishing the specific details of swap transactions is directly precluded both by *Schwab* itself, and by clear-cut precedent rejecting identical arguments of undue delay.  Specifically, Defendants note that Principal Plaintiffs previously declined to amend within the strictly limited scope of the Court's February 2, 2017 Order, ECF No. 1760.  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2017 WL 532465 (S.D.N.Y. Feb. 2, 2017) ("Feb. 2, 2017 Order"); Letter from Principal Financial (Feb. 10, 2017), ECF No. 1772.  That position ignores that *Schwab* clarified what conduct is relevant to personal jurisdiction, and the extent to which it is relevant. *Schwab* held that the "solicitation and sale of financial instruments" to plaintiffs are "sufficient" to confer personal jurisdiction.  *Schwab*, 883 F.3d at 83 (citation and internal quotation marks omitted).  Principal Plaintiffs' amendments clearly relate to that holding.  That Principal Plaintiffs' detailed allegations of swap transactions are highly relevant post-*Schwab* is confirmed by Defendants' own Opposition – after discounting Principal Plaintiffs' detailed swap allegations, they proceed to argue that Principal Plaintiffs' amendments are futile for want of exactly such

allegations.  *See* Opp. at 13.  Principal Plaintiffs thus has a good-faith basis for believing their current amendments will prove effective in advancing its claims.

Defendants' position boils down to its ineffective argument that Principal Plaintiffs could have amended earlier.  *See* Opp. at 4 n.7, 5 ("Principal Financial has waited nearly two years to attempt to address its failure to provide specifics about its own transactions," and the transactions "could have been pleaded years ago.").  Defendants do not purport that they are prejudiced in any way by Principal Plaintiffs' amendments, nor do Defendants argue that Principal Plaintiffs acted in bad faith.  The Second Circuit is clear that mere delay is not an adequate reason to deny leave to amend.  *See Block*, 988 F.2d at 350; *see also Blagman v. Apple, Inc.*, No. 12 Civ. 5453(ALC) (JCF), 2014 WL 2106489, at *3 (S.D.N.Y. May 19, 2014).  Defendants thus cannot prevail.

### E.  The Proposed Amendments Plausibly Allege That The Unlawful Conduct Continued Through October 2011

As explained in Freddie Mac's memorandum, Freddie Mac (and the other FFP Plaintiffs) propose to add allegations based on an indictment publicly disclosed in August 2017 (which the FFP Plaintiffs raised with the Court at that time) and regulatory findings and admissions that were revealed in June 2018.  The proposed amendments allege that SocGen and the other Panel Bank Defendants actively suppressed LIBOR through October 2011.  *See* FM Mem. at 24-25; *see also* FDIC-R Mem. at 3-4; Principal Pls. Mem. at 6.  The new facts disclosed by the 2018 regulatory documents, many of which were not cited in the 2017 Indictment, are compelling.  *See, e.g.*, FM PTAC ¶¶ 346-53.  These include contemporaneous, internal admissions from SocGen executives that LIBOR was a "total charade," that "all [its] competitors" were suppressing LIBOR, and that SocGen was falsely assuring unidentified people that LIBOR was accurate, positioning itself as the sixth highest contributor, playing "dumb" with regulators, indemnifying employees for persistent suppression, and joking about "specious LIBOR submissions."  *Id.* at ¶¶ 394-96; *see*

13

*also* U.S. Commodity Futures Trading Commission ("CFTC") Order, *In re Société Générale S.A.* at 18, 31-32, No. 18-14 (C.F.T.C. June 4, 2018). The proposed amendments place these facts in context with economic evidence to further support FFP Plaintiffs' allegations that LIBOR suppression occurred through October 2011. *See, e.g.*, FM Mem. at 24-25.

The proposed amendments contain facts like those this Court previously found sufficient to state viable "data fraud" and aiding and abetting claims through May 2010. *See LIBOR IV*, 2015 WL 6243526, at *49, 50. There, as here, the majority of Panel Bank Defendants did not admit to artificial suppression. *See, e.g.*, *id.* at *43-44 (acknowledging admissions by two Defendants as part of their settlement agreements with the CFTC). There, as here, economic evidence showed that the Panel Bank Defendants contributed rates that were below a plausible proxy of "but-for LIBOR." *Compare id.* at *7 & n.9 (denying SocGen's motion to dismiss for failure to plausibly allege that SocGen participated in persistent suppression, in part because Plaintiffs alleged SocGen's LIBOR submissions were as much as 60 basis points below a "plausible" proxy for "true LIBOR"), *with* FM PTAC ¶¶ 359-362. And there, as here, credit default data showed that the Panel Bank Defendants faced the same questions about their financial soundness and shared an incentive to artificially suppress their LIBOR contributions. *Compare LIBOR IV*, 2015 WL 6243526, at *45-47, *with* FM PTAC ¶¶ 260, n.227, 304, 430. The proposed amendments contain allegations that also are like those the Second Circuit deemed sufficient to state a viable conspiracy claim, including a common (reputational) motive to conspire, admission that all Panel Bank Defendants were suppressing LIBOR, and advance knowledge of LIBOR submissions. *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 781-82 (2d Cir. 2016).[18] These allegations

---

[18] *See, e.g.*, FM PTAC ¶¶ 269-74, 277-85, 287-90, 292-95, 300-05, 322, 325, 332-33, 343-53, 377-78, 387-96; FDIC-R PSAC ¶¶ 175-77, 179-87, 189-92, 194-98, 203-08, 219, 226, 233-34, 240, 243-50, 252-59, 261, 291, 297, 299-306; PFin PSAC ¶¶ 36, 138-66, 169, 214-18, 220, 248-49, 274-76; PFunds PSAC ¶¶ 35, 135-65, 168, 213-17, 219, 247-48, 273-75. Each of those acts in the United States is jurisdictionally relevant.

are sufficient to plausibly allege that the Panel Bank Defendants actively suppressed LIBOR through October 2011. *Gelboim*, 823 F.3d at 781-82.

Defendants advance four flawed arguments against these amendments. First, Defendants erroneously claim that this Court forever foreclosed new allegations when it ruled in September 2017 that the SocGen executives Indictment failed to disclose facts sufficient to justify reconsideration.[19] That is neither true nor is it relevant because, as shown above, the June 2018 regulatory admissions disclosed new information beyond the Indictment.

Second, Defendants impermissibly argue that the Court should accept their version of the facts even though Plaintiffs, not Defendants, receive the benefit of all factual inferences. Plaintiffs must only establish a plausible claim for relief. *Gelboim,* 823 F.3d at 781 ("plausibility is a standard lower than probability")

Third, in conflict with their argument that this Court already dismissed allegations of LIBOR suppression through October 2011, Defendants claim Plaintiffs "did not seek to assert those claims until June 2018." Opp. at 11-13.[20] That is wrong because FFP Plaintiffs have always alleged that the conduct lasted "at least" through May 2010 but without discovery could not know

---

[19] In September, Plaintiffs asked for permission to forego filing a reconsideration motion until after the Second Circuit decided *Schwab*. *See* Letter from James R. Martin (Sept. 14, 2017), ECF No. 2263. This Court ruled that the indictment alone did not contain any "previously unknown facts of relevance." Order at 1 (Sept. 26, 2017), ECF No. 2289. Plaintiffs thus did not move for reconsideration earlier because this Court expressly instructed them not to do so. Further, contrary to Defendants' accusation that FFP Plaintiffs were engaged in procedural gamesmanship, Opp. at 9, the standard for obtaining leave to amend is less "onerous" than moving for reconsideration. *Danaher Corp. v. Travelers Indem. Co.*, No. 10 Civ. 0121, 2013 WL 150027, at *1 (S.D.N.Y. Jan. 10, 2013) (motion to amend).

[20] Defendants' claim that the FFP Plaintiffs failed to allege relevant transactions during the May 2010-October 2011 is just as illogical. As the Court found in *LIBOR VI*, "Plaintiffs who entered into swaps before the suppression period may recover for suppressed payments relative to but-for LIBOR. And plaintiffs who entered into swaps during the suppression period may recover for any super-suppressed payments, netted against any less-suppressed payments." *Id.* at *20. Even if, *arguendo*, the FFP Plaintiffs did not negotiate a single swap between May 2010 and October 2011, the FFP Plaintiffs have alleged they held LIBOR-based swaps that were affected by ongoing LIBOR suppression during the entire suppression period. *See, e.g.*, FM PTAC ¶¶ 10, 22, 30, 45, 68, 87, 99, 116, 122, 167, 190, 195; FDIC-R PSAC ¶¶ 322, 331, 340, 360, 368, 376, 384, 398, 419, 431, 438; PFin PSAC ¶¶ 3, 28, 228-29; PFunds PSAC ¶¶ 27, 226-27.

the precise date that the conduct ended.[21]  Moreover, even if these allegations could be construed as "new," they would still be timely because they arise out of "the conduct, transaction, or occurrence set out" in the original complaint and therefore relate back to the original pleading. Fed. R. Civ. Proc. 15(c)(1); *Vitullo v. Mancini*, 684 F. Supp. 2d 747, 754 (E.D. Va. 2010) (so long as "there is a factual nexus between the amendments and the prior pleading," and the defendant had sufficient notice of the claims "such that he will not suffer prejudice if the amendments are found to relate back," relation back should be allowed).  In cases where, as here, discovery has not yet begun, defendants are not prejudiced by plaintiffs adding an additional theory when that theory relates to facts already pleaded.  *Id.*[22]

Finally, contrary to Defendants' arguments, the FFP Plaintiffs' LIBOR-based transactions through October 2011 were pleaded with the specificity needed to comply with Federal Rule of Civil Procedure 8.  *See Concord Assocs., L.P. v. Entm't Props. Trust*, 817 F.3d 46, 52 (2d Cir. 2016) ("[T]here is no heightened pleading standard in antitrust cases, and the facts alleged are subject to Federal Rule of Civil Procedure 8(a)'s general requirement of a 'short plain statement' of facts supporting a plausible claim.").  Plaintiffs must only give defendants "fair notice of the

---

[21] *See, e.g.*, FM SAC ¶¶ 7, 128, 161, 282, 287; FDIC-R FAC ¶¶ 122, 288, 293, 297, 322, 327, 331, 376.  In a dismissal ruling stemming from *LIBOR IV*, this Court wrote that Freddie Mac "appears to concede" that active suppression did not occur through October 2011.  Order at 3 (Dec. 19, 2016), ECF No. 1673.  Freddie Mac did not intend to create the appearance of any such concession.  It alleged that "'Defendants engaged in this fraudulent and collusive conduct on a daily basis from August 2007 through at least May 2010, and the effects of Defendants' conduct continued through at least 2011.'"  *Id.* (emphasis added) (quoting FM SAC ¶¶ 7-8).  Freddie Mac stated in 2016 that only Defendants knew when they ceased their unlawful conduct but based on public disclosures at least certain panel banks engaged in misconduct into 2011.  *See* Letter from Freddie Mac and Principal Plaintiffs at 2 & n.4 (Oct. 10, 2016), ECF No. 1585. Similarly, FFP Plaintiffs' argument that Defendants "renewed" their efforts to suppress LIBOR means only that – as the economic evidence shows – Defendants ratcheted up their ongoing suppression in response to questions about their respective financial conditions.  *See, e.g.*, FM PTAC ¶¶ 359-60; FDIC-R PSAC ¶¶ 267-68.

[22] Defendants focus solely on Freddie Mac's Proposed Third Amended Complaint with respect to their suppression period arguments, offering only a footnote, with no argument, regarding the FDIC-R and the Principal Plaintiffs. Accordingly, FDIC-R and Principal Plaintiffs understand that Defendants have not made this argument against them, and that Defendants concede that such Suppression Claims were pleaded adequately.  *Compare* PFin PSAC ¶¶ 261-70, *with* PFin FAC ¶¶ 139-47.  Principal Plaintiffs likewise filed their original complaints within Iowa's five-year statute of limitations for fraud and within the statute for federal antitrust claims.  The FDIC-R filed within the four year-statute for fraud and Donnelly Act claims.

claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1988); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (Rule 8 "does not require 'detailed factual allegations,'" but only enough "factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  Plaintiffs' proposed amendments do so.  Not only that, but Defendants have in their possession the details of every swap transaction into which they entered with the FFP Plaintiffs during the relevant conduct period.[23]

### F.   <u>Doral's Counterparty, Fraud, And Antitrust Claims Are Viable</u>

Defendants agreed not to oppose the incorporation of the Doral Complaint into the FDIC-R's Proposed Second Amended Complaint on the conditions that (1) the FDIC-R would dismiss the Doral Complaint and (2) Defendants could reserve their right to contest the merits of the Doral claims.  Nevertheless, Defendants chose to raise their Doral arguments in a motion to dismiss the Doral Complaint and incorporate those arguments by reference into their Opposition.[24]  The FDIC-R addresses those arguments here.

---

[23] Defendants' argument that swap claims against certain Defendants fail because FFP Plaintiffs do not allege that they entered into any swap transactions with those Defendants, Opp. at 13 n.24, is not accurate.  The FFP Plaintiffs alleged swap claims only against direct and indirect sellers which are viable.  *See supra* Section III.A.  Further, the assertion that Principal Plaintiffs have not alleged direct swap transactions with certain Defendants is irrelevant because consistent with *Schwab*, Principal Plaintiffs have alleged that other parties, acting as agents, entered into ISDA Master Agreements and engaged in swap transactions on behalf of the identified Defendants.  *See Schwab*, 883 F.3d at 84 ("It is well established that a defendant can 'purposefully avail itself of a forum by directing its agents or distributors to take action there.'" (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014))).  The agency allegations make clear that, for example, Barclays Capital, Inc. ("BCI") entered a swap on behalf of Barclays Bank plc ("Barclays"), and pursuant to which Barclays did make payments.  These allegations also demonstrate that BCI was empowered to act as an agent of the Panel Bank in entering swap transactions.  Freddie Mac withdraws its request for leave to add BCI as a Defendant.

[24] Joint Mem. of Law in Supp. of Defs.' Mot. for Partial Dismissal of the *Schwab* and *Doral* Compls. for Failure to State a Claim at 28 (July 13, 2018), ECF No. 2623 ("Doral Mem.").

### 1.      Federal Law Does Not Preempt Doral's Donnelly Act Claims

Like the other Closed Banks, Doral alleged both Donnelly Act and Sherman Act claims.[25]
In 2016, this Court upheld the Closed Banks' Donnelly Act claims.  *LIBOR VI*, 2016 WL 7378980,
at *24-25.  Defendants nevertheless now seek to dismiss Doral's Donnelly Act claim by arguing
that federal law preempts the Donnelly Act.  Defendants' (new) argument lacks merit.

To prevail on their preemption argument, Defendants "must overcome the presumption
against finding preemption of state law in areas – such as antitrust – traditionally regulated by the
states."  *WorldHomeCenter.com, Inc. v. PLC Lighting, Inc.*, 851 F. Supp. 2d 494, 500-01
(S.D.N.Y. 2011).  Federal antitrust law preempts Donnelly Act claims "only where 'the conduct
complained of principally affects interstate commerce, with **little or no impact on local or
intrastate commerce**.'"  *Id.* (emphasis added) (quoting *H–Quotient, Inc. v. Knight Trading Grp*.,
No. 03 Civ. 5889 (DAB), 2005 WL 323750, at *4 (S.D.N.Y. Feb. 9, 2005)).

At this stage of the proceedings, Defendants rarely overcome the presumption against
preemption.  For example, in *WorldHomeCenter*, the court declined to find preemption on a motion
to dismiss even though the allegations relating to intrastate commerce were "admittedly sparse."
*Id.* at 501.  In *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 416 (S.D.N.Y. 2011), the
court denied preemption where purchases were made in New York, defendants were headquartered
and/or incorporated in New York, and defendants clearly conducted significant business in New
York.  The court distinguished the same authorities on which Defendants rely (*Conergy AG v.
MEMC Elec. Materials, Inc*., 651 F. Supp. 2d 51 (S.D.N.Y. 2009), and *Two Queens, Inc. v. Scoza*,
745 N.Y.S.2d 517 (N.Y. App. Div. 2002)) because, despite their "broad, categorical language,"
they involved "situations where the defendants had only tangential connections to New York."  *Id.*

---

[25] N.Y. McKinney's General Business Law §§ 340–347; Sherman Act, § 1 et seq., as amended, 15 U.S.C.A. § 1 *et seq.*

Here, the Doral Complaint is replete with (presumptively true) allegations that show sufficient impact on local or intrastate commerce.  All Defendants (1) maintained offices, or headquarters, in New York; (2) engaged in intrastate trading of LIBOR-based instruments in New York; (3) transmitted their individual LIBOR submissions to the Wall Street Journal and investors in New York to project financial soundness; (4) sent agents to New York to engage in a "charm offensive" with New York investors, journalists, and regulators; and (5) designated New York as their forum of choice in standardized LIBOR-based financial contracts.[26]

Taken together, these numerous allegations defeat Defendants' attempt to prevail on their preemption argument.

### 2.     Doral, Like The Other Closed Banks, Is An Efficient Enforcer Of The Antitrust Laws

In briefing before and after *LIBOR VI*, Defendants sought dismissal of the Closed Banks' antitrust claims because, they argued, the Closed Banks are not "efficient enforcers" of the antitrust laws.[27]  This Court rejected Defendants' argument and denied their motion.  *LIBOR VI*, 2016 WL 7378980, at *1.  Defendants now raise the argument again, this time through Doral.  The Court should again reject it.

The efficient enforcer factors are: (1) the directness or indirectness of the asserted injury, which requires evaluation of the chain of causation linking plaintiff's asserted injury and defendants' antitrust violation; (2) the existence of more direct victims; (3) the extent to which

---

[26] *E.g.*, FDIC-R PSAC ¶¶ 8, 10; *see also, e.g.*, *id.* ¶ 11 (Defendants sought to project financial strength to investors in New York); ¶ 12 (Defendants performed acts in furtherance of conspiracy in New York), ¶ 13 (Defendants' voluntary contacts with New York were a but-for cause of Doral's injuries).  In addition, some of Defendants' executives directed and oversaw LIBOR suppression from offices in New York.  *Id.* ¶¶ 27, 34, 38, 44, 59.  The BBA earned licensing fees from New York residents.  *Id.* ¶¶ 31, 574.

[27] EE Mem. at 36-38.  Defendants sought dismissal a second time through a request for clarification.  Domestic Defs.' Letter Response to Direct Action Pls.' Request for Leave to Move for Clarification of *LIBOR VI* (Jan. 17, 2017), ECF No. 1730; Direct Action Pls.' Reply Letter regarding Request to Move for Clarification of *LIBOR VI* (Jan. 18, 2017), ECF No. 1731 (FDIC-R response that decision relating to Bondholders did not apply to the Closed Banks).  The Court did not dismiss the FDIC-R's antitrust claims.  *See* Feb. 2, 2017 Order, 2017 WL 532465, at *2.

plaintiff's damages claim is "highly speculative;" and (4) the importance of avoiding the risk of duplicate recoveries or the danger of complex apportionment of damages. *LIBOR VI*, 2016 WL 7378980, at *15. The FDIC-R demonstrated in its 2016 opposition to Defendants' motion to dismiss that each factor weighs heavily in favor of the FDIC-R. So too here.

Regarding the first (and most important) factor, the Court held that LIBOR suppression proximately caused the Closed Banks' injuries for losses on adjustable-rate loans. *LIBOR IV*, 2015 WL 6243526, at *62-64. That holding is dispositive of the causation factor. *See Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 395 (7th Cir. 1993) (antitrust standing serves the same function as the common law proximate cause requirement); *In re Commodity Exch. Inc.*, 213 F. Supp. 3d 631, 654 (S.D.N.Y. 2016) (directness prong is essentially a proximate cause analysis); *DNAML PTY, Ltd. v. Apple Inc.*, 25 F. Supp. 3d 422, 430 (S.D.N.Y. 2014) (directness is "essentially a proximate cause analysis" and the last two prongs do not provide an independent basis to deny standing (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134-35 (2014))).

Regarding the second factor, there are no more direct victims for losses than the Closed Banks. In addition, the FDIC-R has a statutory mission to bring private actions to protect depositors and creditors of failed banks. *Telematics Int'l, Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703, 705 (1st Cir. 1992). In that respect, the FDIC-R is clearly an efficient enforcer. *See Gelboim*, 823 F.3d at 780 (The ultimate question is "whether the putative plaintiff is a proper party to perform the office of a private attorney general and thereby vindicate the public interest in antitrust enforcement." (internal quotation marks omitted)). The third and fourth factors also favor Doral. This Court has already held that the Closed Banks' damages are not speculative. *LIBOR IV*, 2015 WL 6243526, at *62-64, 68; *see also* Order at 8-10 (Apr. 15, 2016), ECF No. 1380 (endorsing two

potential damage methodologies as non-speculative).   And Defendants have not demonstrated problems of apportionment.

Further, Doral (like the other Closed Banks) alleges the facts the Second Circuit in *dicta* considered critical.   Doral alleges discrete relevant markets (for USD interest-rate derivatives, floating rate U.S. Dollar ("USD") loans in the United States, and floating rate MBS in the United States) that are not "overly broad in scope" (as opposed to a "worldwide market for money"). *Compare* FDIC-R PSAC ¶¶ 570-72, 587-90, 595-96, 600-03, *with Gelboim*, 823 F.3d at 778-79. Doral also alleges that Defendants controlled more than a small percentage of the ultimate identified market.  *Id.*  Granting standing to Doral would not expose Defendants to potentially ruinous liability because Doral is just one bank and its losses are plainly a small fraction of Defendants' multibillion-dollar assets.

Despite these issues having already been decided in the FDIC-R's favor as to the original 38 Closed Banks, Defendants' argument to the contrary begins and ends with the incorrect premise that the Court's dismissal of the Bondholders' antitrust claims[28] is now dispositive on the FDIC-R's antitrust claims.   *See* Doral Mem. at 30.  The Bondholders are not the FDIC-R.  This Court dismissed the Bondholders' antitrust claims based on its finding that the Bondholders could not show proximate cause.  *LIBOR VI*, 2016 WL 7378980, at *15-16.  That is not the case for the FDIC-R, which has made that very showing.

Defendants also argue that the efficient enforcer requirement or *Illinois Brick*[29] indirect purchaser doctrine bars antitrust claims for transactions between Doral and Defendants' affiliates or subsidiaries.  *See* Doral Mem. at 31.  The Court should reject that argument for at least two

---

[28] The "Bondholders" are the *Gelboim* plaintiffs who allege that the Defendants' "conspiracy reduced the returns on debt securities in which they held an interest."  *Gelboim*, 823 F.3d at 767.

[29] *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

reasons.  First, Doral has alleged its agency contentions with particularity.  Second, the *Illinois Brick* doctrine does not apply to Defendants' subsidiaries and affiliates.  *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 326 (9th Cir. 1980); *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2016 WL 8459462, at *4 (E.D. Pa. Dec. 13, 2016); *Laumann v. Nat'l Hockey League*, 907 F. Supp. 2d 465, 480-83 (S.D.N.Y. 2012); *see also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 505-06 (S.D.N.Y. 1996) (*Illinois Brick* did not bar suits by securities purchasers who bought from non-Defendant brokers because brokers "did not function as a distinct economic entity in the chain of purchase or sale.").

### G.    The Lender Plaintiffs' Motion For Leave To Amend Should Be Granted

Defendants argue that Lender Plaintiffs' motion to amend should be denied for the same reasons as stated in the Court's denial of Lender Plaintiffs' motion for reconsideration (July 2, 2018 Order). Defendants are wrong. First, Lender Plaintiffs' motion to amend is not untimely as it was filed by the date set by the Court (and agreed to by Defendants) for motions to amend based on the decision in *Schwab*.  *See* Order (May 7, 2018), ECF No. 2507 and Memo Endorsement (May 14, 2018), ECF No. 2513. Second, Puerto Rico recognizes a "defendant reassurance" exception to the discovery rule.  *See Maurás v. Banco Popular De Puerto Rico, Inc.*, No. 16-2864 (BJM), 2017 WL 5158677, at *7 (D.P.R. Nov. 7, 2017) (recognizing that reassurance by a defendant tolls the statute of limitations under the doctrine of fraudulent concealment: "Although Álvarez had 'storm warnings' of the defendants' fraud before 2009, such as when he noticed that his account value was decreasing, García's fraudulent reassurances that such a decrease was normal could have prevented Álvarez from realizing that his money had been stolen."); *Garcia Colon v. Garcia Rinaldi*, 340 F. Supp. 2d 113, 122 n.5 (D.P.R. 2004) (denying summary judgment: "alleged reassurances constituted proper grounds to hold that plaintiffs could not have been held responsible of having the required knowledge for the statute of limitations to begin to run.").  Third, if there

existed sufficient information for a reasonable investor to investigate whether it had been injured by the panel banks by March 15, 2011 then the Government Development Bank of Puerto Rico ("GDB") would be on inquiry notice as of March 15, 2012. *LIBOR IV*, 2015 WL 6243526, at *135. ("In states with "weak inquiry notice" rules, the limitations period commenced when a reasonable plaintiff would have discovered the breach or tort. We have not previously considered how long a reasonable investigation would have taken, because we have not previously applied a "weak inquiry notice" rule. We believe that it would have taken one year, at the very most, for a sophisticated investor to discover that he had been injured by the panel banks' LIBOR suppression."). That means the one-year statute of limitations supplied by Puerto Rico law would have expired on March 15, 2013. The amended class action complaint identifying GDB as a plaintiff was filed on November 21, 2012. GDB's claims are timely.

## H.   NCUA's Proposed Amendments Are Appropriate

Defendants contend, Opp. at 3, that NCUA is not permitted to amend its compliant to add detailed allegations regarding the transactions underlying its antitrust claims, since the Court's Order (Apr. 11, 2018), ECF No. 2490 ("Apr. 11 Order"), permits only amendments "related to agency- or conspiracy-based theories of personal jurisdiction." This glosses over the procedural history leading to the Apr. 11 Order. In response to a series of letters from the parties, the Court issued an order on May 7, 2018 directing the parties to propose a synchronized schedule for amending complaints and briefing both motions to dismiss and motions for leave to amend. Order (May 7, 2018), ECF No. 2507 ("May 7 Order"). In that order, the Court made clear that complaints amended "under *Schwab*" as well as amendments "under Rule 15(a)(1)" would be "amended as of right," while other amendments could be sought through "motions for leave to amend." *Id*. at 3.

Thus, under the plain text of the May 7 Order, amendments via motion for leave are not limited to amendments prompted by *Schwab*.[30]

Defendants also oppose NCUA's proposed amendments detailing the specific LIBOR-based transactions giving rise to its antitrust claims by contending, Opp. at 15, that NCUA has "not pleaded that [it has] standing to assert claims on behalf of the trusts that held the asset-backed securities." This misses the mark entirely. NCUA's proposed amendments listing the LIBOR-based asset-backed securities purchased by the Credit Unions relate only to NCUA's antitrust claims – not to its state law claims. *See* NCUA Proposed Second Am. Compl. ¶¶ 235-236, 239-240, 243-244, 247-251, 254, ECF No. 2545-01 ("NCUA PSAC"). The Second Circuit has expressly held that NCUA and other similarly situated plaintiffs have standing to assert antitrust claims against Defendants based on LIBOR-based asset-backed securities since "the anticompetitive effect of the Banks' alleged conspiracy would be that consumers get less for their money." *Gelboim*, 823 F.3d at 774; *see also id*. at 767 (appellants included "bondholders who allege that the conspiracy reduced the returns on debt securities in which they held an interest").

Finally, Defendants do not specifically oppose NCUA's request to add allegations relating to certain Defendants' contacts with Kansas. *See* NCUA PSAC at ¶¶ 43-44. In particular, Defendants make no argument that these specific personal jurisdiction allegations would be futile, have been unduly delayed or brought in bad faith, or would be unduly prejudicial. Nor do

---

[30] Indeed, the Court eschewed any preemptive limits on the subject matter of amendments via motion for leave, observing that "the precise scope of amendments that plaintiffs will make **remains unknown**." May 7 Order at 2 (emphasis added). Furthermore, it is inconsistent with Rule 15(a)(2) to impose a categorical limitation on the manner in which a plaintiff can *seek* leave to amend a complaint. That is because "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a ***showing*** by the nonmovant of prejudice or bad faith," *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (emphasis added). Defendants have not shown and the Court has never found that *all* proposed amendments beyond those "prompted by *Schwab*" would be futile, unduly prejudicial, or sought in bad faith, nor would such a finding have been warranted.

Defendants move to dismiss any of NCUA's claims.[31]   Although Defendants imply that "this Court's prior rulings" regarding "when and where swap transactions confer jurisdiction" already addressed the sufficiency of the personal jurisdiction allegations NCUA now seeks to add, that is not so.  Defs.' PJ Opp. at 31.  As NCUA explained in its opening brief, NCUA PSAC at 2, it seeks to add these personal jurisdiction allegations precisely because the Court previously declined to rule upon them due to their absence at that time from NCUA's complaint.  *See LIBOR IV*, 2015 WL 6243526 at *31 n.51.

## IV.   CONCLUSION

For the reasons stated above and in Plaintiffs' opening Memorandum, Plaintiffs' motions for leave to amend their complaints should be granted.

---

[31] Defendants clearly state that their motion to dismiss applies only to "the Schwab SAC and Doral Complaint."  Joint Mem. Law Supp. of Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction and Venue and in Opp. to Pls.' Mots. for Leave to Amend Personal Jurisdiction and Venue Grounds at 14, ECF No. 2627 ("Defs.' PJ Opp."); *accord id.* at 1 n.2.  Thus, Defendants do not move to dismiss any of NCUA's claims.  To the extent that Defendants' inclusion of one NCUA claim in Defs.' PJ Opp., App'x. 4, ECF No. 2627-04 implies that Defendants renew their challenge to venue as to that single claim, NCUA opposes that challenge on the same grounds on which it opposed the same challenge previously.  *See* Pls.' Joint Mem. Law Opp. to Defs.' Mot. Dismiss All Antitrust Claims for Lack of Personal Jurisdiction at 32-34, ECF No. 1524-00.

Dated:  August 9, 2018

**ZELLE LLP**

By:  */s/ James R. Martin*
James R. Martin
Jennifer D. Hackett
1775 Pennsylvania Avenue, NW
Suite 375
Washington, DC  20006
jmartin@zelle.com
jhackett@zelle.com
Tel: 202-899-4100
Fax: 612-336-9100

*Attorneys for Plaintiffs Federal Deposit
Insurance Corporation, as Receiver for
Amcore Bank, N.A., et al. and as Receiver
for Doral Bank*

Respectfully submitted,

**ZELLE LLP**

By:  */s/ James R. Martin*
James R. Martin
Jennifer D. Hackett
1775 Pennsylvania Avenue, NW
Suite 375
Washington, DC  20006
jmartin@zelle.com
jhackett@zelle.com
Tel: 202-899-4100
Fax: 612-336-9100
             and
Richard J. Leveridge
ADAMS HOLCOMB LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
leveridge@adamsholcomb.com
Tel: 202-580-8817

*Attorneys for Plaintiff The Federal Home Loan
Mortgage Corporation*

**ROBINS KAPLAN LLP**

By:  */s/ Stacey P. Slaughter*
K. Craig Wildfang
Thomas J. Undlin
Stacey P. Slaughter
Geoffrey H. Kozen
kcwildfang@robinskaplan.com
tundlin@robinskaplan.com
sslaughter@robinskaplan.com
gkozen@robinskaplan.com
800 LaSalle Avenue, Suite 2800
Minneapolis, MN  55402
Tel: 612-349-8500
Fax: 612-339-4181

*Attorneys for Plaintiffs
Principal Financial Group, Inc., et al. and
Principal Funds, Inc., et al.*

26

**POMERANTZ LLP**

By */s/ Jeremy A. Lieberman*
Marc I. Gross
Jeremy A. Lieberman
Michael J. Wernke
Veronica V. Montenegro
600 Third Avenue
New York, NY  20016
Tel:  (212)-661-1100
Fax:  (212)-661-8665
mgross@pomlaw.com
jalieberman@pomlaw.com
mjwernke@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Joshua B. Silverman
Louis C. Ludwig
Ten South LaSalle Street, Suite 3505
Chicago, IL  60603
Tel:  (312) 377-1181
Fax:  (312) 377-1184
pdahlstrom@pomlaw.com
jbsilverman@pomlaw.com
lcludwig@pomlaw.com

*Counsel for Lender Plaintiffs*

**KELLOGG, HANSEN, TODD, FIGEL &
     FREDERICK, P.L.L.C.**

By:  */s/ David C. Frederick*
David C. Frederick
Gregory G. Rapawy
Andrew C. Shen
1615 M Street, N.W., Suite 400
Washington, DC 20036
Tel: (202) 326-7900
Fax: (202) 326-7999

George A.  Zelcs
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1950
Chicago, Illinois 60601
Phone: (312) 641-9760
Fax: (312) 641-9751

Stephen M. Tillery
Robert L. King
Diane E. Moore
KOREIN TILLERY LLC
505 North Seventh Street, Suite 3600

St. Louis, Missouri 63101-1625
Phone: (314) 241-4844
Fax: (314) 241-3525


Norman E. Siegel (D. Kan. # 70354)
Rachel E. Schwartz (Kan.# 21782)
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
siegel@stuevesiegel.com
schwartz@stuevesiegel.com


Of Counsel:
Michael J. McKenna, General Counsel
NATIONAL CREDIT UNION
ADMINISTRATION
1775 Duke Street
Alexandria, Virginia 22314

*Attorneys for Plaintiff National Credit Union Administration Board,*
*As Liquidating Agent of U.S. Central Federal Credit Union, et al.*