# POMERANTZ LLP

Attorneys at Law

**Jeremy A. Lieberman**
jalieberman@pomlaw.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/27/19

600 Third Avenue
New York, New York 10016
T: 212.661.1100  F: 212.661.8665

August 16, 2019

*ENDORSEMENT*

**VIA ECF & HAND DELIVERY**

Honorable Naomi Reice Buchwald
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street – Courtroom 21A
New York, NY 10007-1312

*Plaintiffs may file the motion for preliminary approval of a settlement without the necessity of a conference.*

*Naomi Reice Buchwald, USDJ*
*8/27/19*

Re: *In re LIBOR-Based Financial Instruments Antitrust Litig.*, No.11-MD-2262 (NRB);
*The Berkshire Bank v. Bank of America, et al.*, No. 12-cv-5723-NRB

Dear Judge Buchwald:

In accordance with Section 2.B. of Your Honor's Individual Practices, we write as interim class counsel for the Lender Action to request a pre-motion conference regarding Lender Plaintiffs' motion pursuant to Fed.R.Civ.P. 23(e) for preliminary approval of a settlement (the "Settlement"), including conditional certification of a settlement class (the "Lender Class"), and appointment of Pomerantz LLP as Lender Class counsel. The Settlement is with Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively, "JPMorgan") and Bank of America Corporation and Bank of America, N.A. (collectively, "BOA," and together with JPMorgan, the "Settling Defendants").

### Settlement Approval is Warranted

If approved, the Settlement will create an aggregate fund totaling $3,000,000 for the benefit of Lender Class Members. *See* Declaration of Jeremy A. Lieberman ("Lieberman Decl.") ¶ 44, attached hereto. The Settlement resulted from arm's length negotiations; offer an excellent result for the Lender Class; are fair, reasonable, and adequate under the governing standards; and warrant approval.

In determining whether to grant preliminary approval to a settlement, the Court should consider both the "negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009). As this Court has recognized, "[p]reliminary approval is not tantamount to a finding that [a proposed] settlement is fair and reasonable. . . . Instead, at this stage, we need only decide whether the terms of the Proposed Settlement are at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." ECF No. 681 at p. 5 (internal quotation marks and citation omitted).

Honorable Naomi Reice Buchwald
In re LIBOR-Based Financial Instruments Antitrust Litigation
11-MD-2262 (NRB)
August 16, 2019
Page | 2

Because the Settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," it enjoys a "presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000). *See* Lieberman Decl. ¶¶ 39-45. "'[G]reat weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. P'ships. Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997).

The "*Grinnell* factors" for final approval of a class settlement[1] relevant to preliminary approval further support approval. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). First, it is well recognized that claims involving collusion and price manipulation among industry participants are "complicated, lengthy, and bitterly fought, as well as costly" *In re Vitamin C Antitrust Litig.*, No. 06 MDL. 1738, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012) (discussing federal antitrust cases) (citations and internal quotes omitted); and this case, commenced in mid-2012, is no exception. The complexity and the hard-fought battles in this Action involving fraud and civil conspiracy to manipulate LIBOR is reflected in the numerous fully briefed motions and opinions in the case since the original complaint was filed on July 25, 2012. *See* Lieberman Decl. ¶¶ 7-38. In the absence of the Settlement, the litigation of this complex case against Settling Defendants would likely consume many more years of the Court's resources. *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("[t]he potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class") (citation omitted).

The third *Grinnell* factor likewise supports preliminary approval here. Since initiating this litigation in July 2012, Lender Plaintiffs' Counsel has gained a substantial understanding of the case. Plaintiffs have actively litigated their claims for approximately seven years. Lieberman Decl. ¶ 43. Plaintiffs have responded to motions to dismiss and other motions. *E.g., id.* at ¶¶ 7-38. In addition, Lender Plaintiffs' Counsel have reviewed millions of pages of documents in connection with class certification discovery, worked extensively with industry experts, and worked with economists to analyze transactional data. *Id.* ¶ 43. The information gained through the hard-fought litigation has provided Lender Plaintiffs' Counsel with a comprehensive understanding of the relative strengths and weaknesses of Lender Plaintiffs' claims and to negotiate a settlement which provide excellent relief for the Lender Class. Thus, the stage of the proceedings supports preliminary approval of the proposed Settlement.

The fourth, fifth and sixth *Grinnell* factors – which address the risks of establishing liability, damages and maintaining the class through trial – all support preliminary approval here. The risks of establishing liability and damages are significant and are amplified by the

---

[1] (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. It is premature to consider factor two, the Lender Class's reaction to the Settlement, since no notice has yet been disseminated. *Grinnell*, 495 F.2d at 463.

Case 1:11-md-02262-NRB   Document 2962   Filed 08/16/19   Page 3 of 7
Case 1:11-md-02262-NRB   Document 2966   Filed 08/27/19   Page 3 of 7

Honorable Naomi Reice Buchwald
In re LIBOR-Based Financial Instruments Antitrust Litigation
11-MD-2262 (NRB)
August 16, 2019
Page | 3

complexity of the LIBOR market. Furthermore, Defendants are wealthy global financial institutions that are represented by some of the best law firms in the United States and can afford to litigate this case indefinitely. Even if liability were established, Plaintiffs would face the difficulties and complexities inherent in proving damages to the jury, which would be hotly contested and would inevitably involve a "battle of the experts." Thus, there is a substantial risk that a jury might accept one or more of Defendants' damage arguments, or award far less than the total settlement amount, or nothing at all. Moreover, on February 28, 2018, the Court denied Plaintiffs' motion for class certification (ECF No. 715), and the Second Circuit denied Plaintiffs' petition for interlocutory appeal pursuant to Fed. R. Civ. P. 23(f). Thus, the inherent "uncertainty of maintaining a class through trial" weighs in favor of settlement. *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 665 (S.D.N.Y. 2015).

Regarding the seventh *Grinnell* factor, while Settling Defendants clearly are major banks that could withstand a greater judgment than their respective Settlement amounts, "the defendant's ability to pay is much less important than the other factors, especially where the other *Grinnell* factors weigh heavily in favor of settlement approval." *In re Sinus Buster Prods. Consumer Litig.*, 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014).

The last two *Grinnell* factors "recognize the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 119 (2d Cir. 2005). In applying these factors, "[d]ollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984). To recover, Lender Plaintiffs must first establish liability and prove damages. They then must prevail on an appeal of the Court's denial of class certification, while succeeding in upholding the favorable judgment on subsequent appeal. The eighth and ninth factors thus support preliminary approval.

Thus, under all applicable standards, the Court should grant preliminary approval of the Settlement.[2]

### Certification of the Lender Class is Appropriate

Plaintiffs request certification of the following "Lender Class" for settlement purposes:

> All lending institutions headquartered in the United States, including its fifty (50) states and United States territories, that originated loans, held loans, held interests in loans, owned loans, owned interests in loans, purchased loans, purchased interests in loans, sold loans, or sold interests in loans with interest rates based

---

[2] Following the submission of competitive bids from different alternative potential providers, Lender Plaintiffs' Counsel retained JND Legal Administration as the Claims Administrator and Huntington Bank to serve as Escrow Agent. JND has a successful track record of performing class-action settlement services in a highly professional, efficient, and cost-effective fashion. Lieberman Decl. ¶¶ 46-47. This Court approved these appointments as to the prior settlements. Lender Plaintiffs seek the Court's approval of these appointments for this Settlement as well.

Honorable Naomi Reice Buchwald
In re LIBOR-Based Financial Instruments Antitrust Litigation
11-MD-2262 (NRB)
August 16, 2019
Page | 4

upon U.S. Dollar LIBOR ("U.S. Dollar LIBOR-Based Loans"), which rates adjusted at any time between August 1, 2007 and May 31, 2010 (the "Class Period").

Certification of the Lender Class is appropriate because it meets all of the requirements of Fed.R.Civ.P. 23(a), as well as one of the requirements of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). When considering certification of a settlement class, "courts must take a liberal rather than a restrictive approach." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009).

As the Court previously found, Rule 23(a)(1-3) requirements of numerosity, commonality and typicality are all satisfied here. ECF No. 715 at 256-60. The Court adhered to these conclusions when approving the previous settlements in the Lender Action. ECF No. 2635, at 3. Lender Plaintiffs will fairly and adequately protect the interests of the class, since they do not have interests that are antagonistic to those of the Class, and they have selected counsel who are qualified, experienced, and generally able to conduct the litigation. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). While the Court found in denying class certification that Berkshire was not an adequate class representative because of a potential conflict of interest that could create an appearance of impropriety (*see* ECF No. 715 at 269), the other proposed settlement class representative, GDB, has no potential conflict of interest. The board of directors of GDB (as well as the board of directors of Berkshire) approved the settlement. As this Court held in approving the previous settlements, the adequacy of representation requirement was met because "any concerns regarding Berkshire Bank's inadequacy are addressed by the participation of an additional named plaintiff, the Government Development Bank for Puerto Rico (GDB), in the settlement process." ECF No. 2635, at 3.

The Lender Class also satisfies the requirements of Rule 23(b)(3) that (i) common issues predominate over individual issues, and (ii) a class action is the superior method of adjudicating this controversy. In this settlement context, a finding of predominance is easier, as long as other requirements of Rule 23 are met because settlement eliminates manageability problems related to trial. *See Am. Int'l Grp. Secs. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012). The judicial economy at issue for a settlement class is obtained through the effectuation of the settlement itself, rather than through a trial of the class' claims. *See Amchem*, 521 U.S. at 620. The superiority prong requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The superiority requirement is applied in a more lenient fashion in the settlement context because the Court "need not inquire whether the case, if tired, would present intractable management problems." *Amchem*, 521 U.S. at 620; *Am. Int'l Group*, 689 F.3d at 239, 240.

While the Court previously found, in denying class certification, that individual issues related to reliance, statutes of limitations, damages and variations in state law would predominate the common issues, and a class action was not superior because of "manageability problems" it held in certifying the prior settlement classes that "manageability concerns do not stand in the way of certifying a settlement class," the "individual issues of reliance and variations in state law

Case 1:11-md-02262-NRB   Document 2962   Filed 08/16/19   Page 5 of 7
Case 1:11-md-02262-NRB   Document 2966   Filed 08/27/19   Page 5 of 7
Honorable Naomi Reice Buchwald
In re LIBOR-Based Financial Instruments Antitrust Litigation
11-MD-2262 (NRB)
August 16, 2019
Page | 5

weigh less heavily against predominance... and can be manageably addressed through the plan of distribution." ECF No. 2635, at 4-5.

### Lender Plaintiffs' Counsel Should be Appointed Class Counsel

Lender Plaintiffs' Counsel readily meet the standards of Rule 23(g). For approximately seven years, they have actively litigated the claims in this action and have committed substantial resources necessary to effectively and efficiently litigate the case. Lieberman Decl. ¶ 7-38. Moreover, they have significant experience litigating class actions and were appointed by this Court as interim class counsel in the Lender Action (ECF No. 692) and as counsel for the settlement class in the prior settlements. ECF No. 2687, at 1. Accordingly, the Court should now appoint the undersigned to be counsel for the Lender Class.

### The Proposed Notice Plan Should Be Approved

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Long v. HSBC USA Inc.*, No. 14 CIV. 6233 HBP, 2015 WL 5444651, at *10 (S.D.N.Y. Sept. 11, 2015). However, neither individual nor actual notice to each class member is a required; rather, "class counsel [need only] act[] reasonably in selecting means likely to inform the persons affected." *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 00214 CM, 2010 WL 5187746, at *3 (S.D.N.Y. Dec. 6, 2010) (citing *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988)).

Here, Plaintiffs, in consultation with Claims Administrator JND Legal Administration ("JND" or "Claims Administrator"), propose a thorough, multi-pronged Notice Program designed to provide reasonable and practicable notice to Settlement Class Members. *See* Declaration of Jennifer M. Keough ("Keough Decl."), ¶¶ 4-12. First, copies of the Court approved individual Notice and proof of claim form will be sent to all entities on a list of at least 280,000 entities that held loans, which consist of U.S. banks, savings institutions, credit unions, personal credit institutions, trusts and asset-backed securities entities. *Id.*, ¶ 5. Second, the proposed Summary Notice will be published once in the *IBD Weekly*, *The Wall Street Journal* and *Barron's*, and the summary notice publication program will target investment related websites: Yahoo! Finance, Investors.com, Barrons.com, Marketwatch.com and WSJ.com, as well as placements through the Targeted Digital Audience Network. There will also be a press release issued on PR Newswire. *Id.*. Third, Plaintiffs propose to establish a settlement website, which will be designed to enable Lender Class Members to obtain complete information on the Settlements and the procedures to file a claim, as well as to view and download copies of relevant documents. *See id.*, ¶¶ 6-8. Plaintiffs will also establish a toll-free number to a dedicated call center, where potential Lender Class Members will be able to clarify issues and get answers to questions they may have, or simply obtain additional information about the Settlements. *See id.*, ¶ 9. This Court previously approved the same notice program as to the prior settlements. ECF No. 2687, at 2-3. Courts routinely approve notice programs, like this one, that combine direct notice and publication notice. *See, e.g., Sykes v. Mel S. Harris & Assocs., LLC*, No. 09 Civ. 8486 (DC), 2015 U.S. Dist. LEXIS 170179, ** 19-20 (S.D.N.Y. Nov. 16, 2015)

Honorable Naomi Reice Buchwald
In re LIBOR-Based Financial Instruments Antitrust Litigation
11-MD-2262 (NRB)
August 16, 2019
Page | 6

The proposed Notice, Summary Notice and proof of claim form also comply with Rule 23(c)(2)(B) and comport with due process because they (i) "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" and (ii) are written so as to "be understood by the average class member." *Wal-Mart Stores, Inc. v. Visa USA., Inc.,* 396 F.3d 96, 114-15 (2d Cir. 2005) (citation omitted). *See* Keough Decl., ¶¶ 10-12.

### The Plan of Distribution Should Be Approved

A plan of distribution "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Credit Default Swaps Antitrust Litig.,* No. 13MD2476 (DLC), 2016 WL 2731524, at *9 (S.D.N.Y. Apr. 26, 2016) (citation omitted). Here, the issue is not whether the proposed Plan of Distribution should be finally approved. Rather, on this motion for preliminary approval of the Plan of Distribution, the only question is whether the proposed Plan of Distribution is sufficiently reasonable to be *sent* to Lender Class Members, for their review and comment, prior to the final approval hearing. *See, e.g., Sykes v. Mel. S. Harris & Assocs., LLC,* No. 09 Civ. 8486 (DC), 2016 U.S. Dist. LEXIS 74566 *20 (S.D.N.Y. May 24, 2016).

Plaintiffs have retained experts to develop a model of the "but-for" world, that is an estimate of what LIBOR would have been, in each relevant tenor, and for each day during the Class Period, absent its suppression as alleged in this case. Plaintiffs propose to distribute the Net Settlement Fund to eligible Lender Class Members *pro rata*. *See* Lieberman Decl., ¶ 6. Courts routinely approve *pro-rata* distributions similar to that proposed here. *See, e.g., Xuechen Yang v. Focus Media Holding Ltd.,* No. 11-civ-9051 (CM) (GWG), 2014 U.S. Dist. LEXIS 126738, *28 (S.D.N.Y. Sept. 4, 2014) ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach." (citation omitted)). Lender Plaintiffs' Counsel recommend the proposed Plan of Distribution as being in the best interests of the Settlement Class. Lieberman Decl., ¶ 6. *See, e.g., In re EVCI Career Colleges Holding Corp. Sec. Litig.,* No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *32 (S.D.N.Y. July 27,2007) ("in determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel"). This Court approved this same Plan of Distribution in ruling on the previous settlements. ECF No. 2687, at 3. This proposal has more than a rational basis. If any Lender Class Member disagrees, they will have the opportunity to set forth the basis of their concerns in advance of the final approval hearing, when the fairness and adequacy of the Plan of Distribution will be evaluated.

The motion papers we anticipate filing, should the Court grant permission to do so, are attached hereto.

Respectfully submitted,

**POMERANTZ LLP**

By: *s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Michael J. Wernke

Honorable Naomi Reice Buchwald
In re LIBOR-Based Financial Instruments Antitrust Litigation
11-MD-2262 (NRB)
August 16, 2019
Page | 7

>600 Third Avenue
>New York, NY 10016
>Tel: (212) 661-1100
>Fax: (212) 661-8665
>Email: jalieberman@pmlaw.com
>         mjwernke@pomlaw.com
>
>*Interim Lead Counsel for the Lender Class*

cc: All Counsel of Record (via ECF)