## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ) | |
| IN RE LIBOR-BASED FINANCIAL ) | MDL No. 2262 |
| INSTRUMENTS ANTITRUST LITIGATION ) | |
| ) | |
| ) | |
| THIS DOCUMENT RELATES TO: ) | Master File No. 1:11-md-02262-NRB |
| Case No. 12-CV-1025 (NRB) ) | ECF Case |
| ) | |

### MEMORANDUM IN SUPPORT OF BONDHOLDER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS WITH BARCLAYS BANK PLC, UBS AG, HSBC BANK PLC, CITIBANK, N.A., CITIGROUP INC., JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., AND THE ROYAL BANK OF SCOTLAND GROUP PLC

Karen L. Morris (Bar No. 1939701)
Patrick F. Morris
MORRIS AND MORRIS LLC
   COUNSELORS AT LAW
4023 Kennett Pike, # 254
Wilmington, DE  19807
Tele: (302) 426-0400
Email: *kmorris@morrisandmorrislaw.com*
   *pmorris@morrisandmorrislaw.com*

David H. Weinstein
Robert S. Kitchenoff
WEINSTEIN KITCHENOFF & ASHER LLC
150 Monument Road, Suite 107
Bala Cynwyd, PA  19004
Tele: (215) 545-7200
Email: *weinstein@wka-law.com*
   *kitchenoff@wka-law.com*

*Attorneys for Plaintiffs*
*Ellen Gelboim and Linda Zacher*

**TABLE OF CONTENTS**

I.      INTRODUCTION........................................................................................................1

II.    BACKGROUND ........................................................................................................3

      A.    Procedural History................................................................................3

      B.    Notice to the Settlement Classes ........................................................3

III.   ARGUMENT .............................................................................................................6

      A.    The Settlements Should Be Finally Approved .....................................6

           1.  The Settlements Are Presumptively Fair, Reasonable, and Adequate ........6
           2.  The Settlements Are Fair and Reasonable under Relevant
               *Grinnel* Factors.......................................................................7
               a)  The Complexity, Expense, and Likely Duration of the Litigation ........8
               b)  The Reaction of the Class to the Settlements ...........................................10
               c)  The Stage of the Proceedings ........................................................10
               d)  The Risks of Establishing Liability and Damages.................................12
               e)  The Risks of Maintaining the Class Action Through Trial ................13
               f)  The Ability of Defendants to Withstand a Greater Judgment..............14
               g)  The Reasonableness of the Settlements in Light of the Best
                   Possible Recovery and the Attendant Risks of Litigation....................14

      B.    Certification of the Settlement Classes ...............................................16

      C.    Appointment of Bondholder Settlement Class Counsel ....................19

      D.    Notice to the Settlement Classes Comported with Rule 23 and Due Process.20

           1.  Notice Was the Best Practicable Under the Circumstances.......................21
           2.  The Notice "Fairly Apprised" Potential Class Members of the
               Settlements and their Options..........................................................21

      E.    The Plan of Allocation Should be Finally Approved ........................24

IV.   CONCLUSION………………………………………………………………26

## <u>TABLE OF AUTHORITIES</u>

*Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-CV-230, 2011 WL 1706778
(D. Vt. May 4, 2011)..................................................................................................6

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)..................................................19

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 CIV. 3048 (JMW),
1987 U.S. Dist. WL 7030 (S.D.N.Y. Feb. 13, 1987).........................................13

*Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179 (S.D.N.Y. 2012) ...............12

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)..................................8, 15

*Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153 (E.D.N.Y. 2009)........................19

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ................................................7

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)......................................................20

*Fleisher v. Phoenix Life Ins. Co*., No. 11 Civ 8405 (CM), 2015 WL 10847814
(S.D.N.Y. Sept. 9, 2015)......................................................................................14

*Frank v. Eastman Kodak Co*., 228 F.R.D. 174 (W.D.N.Y. 2005)..................................14

*Gelboim v. Bank of America Corp.*, 573 U.S. 945 (Mem. 2014).....................................9

*Gelboim v. Bank of America Corp.*, 574 U. S. 405 (2015) ..............................................9

*Gelboim, v. Bank of America*, 823 F.3d 759 (2d Cir. 2016)............................................9

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x 41
(2d Cir. 2008) ......................................................................................................20

*In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740 (E.D.N.Y. 1984) ..............15

*In re Am. Bank Note Holographics, Inc*., 127 F. Supp. 2d 418 (S.D.N.Y. 2001).........25

*In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459 (S.D.N.Y. 2013)..........................6

*In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236
(S.D.N.Y. Apr. 6, 2006).......................................................................................10

*In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000)........6, 10

*In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.*, 909 F. Supp. 2d 259

(S.D.N.Y. 2012) ...................................................................................................10

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ..................................................15

*In re Corrugated Container Antitrust Litigation*, 659 F.2d 1322 (5th Cir. 1981) ........................15

*In re Credit Default Swaps Antitrust Litig.*, No. 13 MD 2476 (DLC), 2016 WL 2731524
(S.D.N.Y. Apr. 26, 2016) ...................................................................21, 24

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED),
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ...............................................7

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ................... 10, 25

*In re IMAX Sec. Litig.*, 283 F.R.D. 178 (S.D.N.Y. 2012) .........................................8, 15

*In re LIBOR-Based Fin. Instr. Antitrust Litig.*, 935 F. Supp. 2d 666 (S.D.N.Y. 2013) ................8

*In re LIBOR-Based Fin. Instr. Antitrust Litig.*, 962 F. Supp. 2d 606 (S.D.N.Y. 2013) ................8

*In re LIBOR-Based Fin. Instr. Antitrust Litig.*, No. 13–3565 (L), 2013 WL 9557843
(2d Cir. Oct. 3, 2013) ................................................................................9

*In re: LIBOR-Based Fin. Instr. Antitrust Litig.*, 11 MDL 2262 (NRB), 2016 WL 7378980
(S.D.N.Y. Dec. 20, 2016) ........................................................................9

*In re: LIBOR-Based Fin. Instru. Antitrust Litig.*, 299 F.Supp.3d 430
(S.D.N.Y. 2018) ....................................................................................14

*In re Marsh ERISA Litig.*, 265 F.R.D. 128 (S.D.N.Y. 2010) ........................................8

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465
(S.D.N.Y. 1998) ...................................................................9, 10, 12, 13, 15

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997)...............................6

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
986 F. Supp. 2d 207, 212 (E.D.N.Y. 2013)...............................................9, 12

*In re Platinum and Palladium Commodities Litig.*, No. 10 CV 3617, 2014 WL 3500655
(S.D.N.Y. Jul. 15, 2014) ...........................................................................25

*In re Sinus Buster Prods. Consumer Litig.*, No. 12-CV-2429 (ADS) (AKT),
2014 U.S. Dist. WL 5819921 (E.D.N.Y. Nov. 10, 2014).................................14

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008)..................................................6

*In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2012 WL 5289514
    (E.D.N.Y. Oct. 23, 2012)..............................................................................8, 21, 22

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985) .....................................13

*Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 00214 CM, 2010 WL 5187746,
    (S.D.N.Y. Dec. 6, 2010)...............................................................................................20

*Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650 (S.D.N.Y. 2015) ........................................14

*Park v. The Thomson Corp.*, No. 05 Civ. 2931, 2008 WL 4684232
    (S.D.N.Y. Oct. 22, 2008) ............................................................................................12

*Sykes v. Harris*, 09 CIV. 8486 (DC), 2016 WL 3030156 (S.D.N.Y. May 24, 2016). ..................23

*In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM),
    2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)................................................................24

*Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256 (2d Cir. 2001)............................8

*Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713 (E.D.N.Y. 1989)......................................8

*Wal Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005)...................6, 10, 14, 20, 21

## <u>PUBLICATIONS AND FEDERAL RULES OF CIVIL PROCEDURE</u>

Manual for Complex Litigation, Fourth, § 21.311 (Fed. Jud. Center 2004)..................................21

NEWBERG ON CLASS ACTIONS § 11:53 (4th ed. 2002).........................................................21

Rule 23 (c)(1)(C).........................................................................................................................13

Rule 23(c)(2)(B).....................................................................................................................20, 23

Rule 23(e)(1)...............................................................................................................................20

Rule 23(e)(2)................................................................................................................................6

Rule 23(g) ..................................................................................................................................19

Plaintiffs Ellen Gelboim and Linda Zacher ("Bondholder Plaintiffs"), by their attorneys, Morris and Morris LLC Counselors At Law ("Morris and Morris") and Weinstein Kitchenoff & Asher LLC ("Weinstein Kitchenoff" and together "Bondholder Settlement Class Counsel" or "Class Counsel"), respectfully move this Court for: (i) final approval of settlements with Barclays Bank plc, UBS AG, HSBC Bank plc, Citibank, N.A., Citigroup Inc., JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., Bank of America Corporation, Bank of America, N.A., and the Royal Bank of Scotland Group plc (collectively, the "Settlements");[1] (ii) certification of the settlement classes (the "Settlement Classes" defined below); (iii) approval of the notice as provided to members of the Settlement Classes; (iv) final approval of the Plan of Allocation; and (v) confirmation of the appointment of Morris and Morris and Weinstein Kitchenoff as Bondholder Settlement Class Counsel.

## I.      INTRODUCTION

Subject to this Court's approval, Bondholder Plaintiffs, on behalf of the Settlement Classes, have agreed to settle claims against Barclays Bank plc ("Barclays"), UBS AG ("UBS"), HSBC Bank plc ("HSBC"),[2] Citibank, N.A. and Citigroup Inc. (collectively "Citi"), JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively "JPM"), Bank of America Corporation and Bank of America, N.A. (collectively "BOA"), and The Royal Bank of Scotland Group plc ("RBS")[3] (all together, the "Settling Defendants") in exchange for cash payments

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning ascribed to them in the Settlement Agreements with the Settling Defendants.

[2] Pursuant to the Settlement Agreement between Bondholder Plaintiffs and HSBC Bank plc, claims against HSBC Holdings plc will, upon final approval, also be released.

[3] Pursuant to the Settlement Agreement between Bondholder Plaintiffs and The Royal Bank of Scotland Group plc, claims against The Royal Bank of Scotland plc (now known as NatWest Markets Plc) will, upon final approval, also be released.

totaling $68,625,000[4] and cooperation from each Settling Defendant.

This is a favorable result given the risks inherent in litigation generally, and the procedural history and present status of this litigation. While the deadline for the filing of Requests for Exclusions and Objections to the Settlements is November 17, 2020, as of this filing, the Claims Administrator has received [one] requests for exclusion, and [zero] objections against any of the Settlements.

Bondholder Plaintiffs' motion should be granted because:

1.     The Settlements are an excellent result for the Settlement Classes, and are fair, reasonable, and adequate under the settlement approval standards in this Circuit.

2.     Notice to members of the Settlement Classes complied fully with the Notice Plan approved by this Court, which met all of the requirements of Rule 23 and due process.

3.     Pursuant to the terms of the underlying Settlement Agreements, the Final Judgment and Order should expressly certify the proposed Settlement Classes, which the Court previously certified as meeting all of the requirements of Rule 23 (*see* ECF No. 2048, 2769, 3081).

4.     Class Counsel's appointment as Bondholder Settlement Class Counsel, pursuant to this Court's prior Orders, should be confirmed.  Morris and Morris and Weinstein Kitchenoff are well qualified and have diligently prosecuted this  complex class action.

5.     The Plan of Allocation warrants final approval because it distributes funds on a *pro rata* basis and is a fair and reasonable method for distributing the settlement funds to the Settlement Classes.

---

[4] Separately, payments made by each of the Settling Defendants are as follows:  Barclays - $7,100,000; UBS - $17,900,000; HSBC - $11,100,000; Citi - $7,025,000; JPM - $6,250,000; BOA - $6,250,000; and RBS - $13,000,000

## II.    BACKGROUND

### A.    Procedural History

The Court has entered three Memorandum and Orders preliminarily approving Bondholder settlements with Barclays, UBS and HSBC on July 5, 2017 (ECF No. 2048), Citi on December 15, 2018 (ECF No. 2769) and JPM/BOA and RBS on May 5, 2020 (ECF No. 3081), respectively.  In each of these Orders, the Court certified the settlement classes, appointed Morris and Morris and Weinstein Kitchenoff as Bondholder Settlement Class Counsel, appointed Ellen Gelboim and Linda Zacher to serve as class representatives for the Bondholder Settlement Classes, and approved Garden City Group LLC ("GCG") (and later Epiq[5]) as the Claims Administrator and Wilmington Saving Fund Society FSB as Escrow Agent.

On June 16, 2020, the Court approved the proposed notice program for the Settlements, preliminarily approved the Plan of Allocation and approved the substitution of the Huntington Bank as Escrow Agent.  ECF No. 3102.

### B.    Notice to the Settlement Classes

As described in greater detail below, notice was provided to potential members of the Settlement Classes in compliance with the approved notice plan. This entailed providing notice pursuant to three methods: direct notice, publication notice, and Internet notice. Additionally, Class Counsel directed Epiq to establish a website dedicated to the Settlements (the "Website") and a toll-free telephone line to an informational call center (the "Toll-Free Information Line") to provide further information to potential members of the Settlement Classes and to facilitate the filings of proof of claim forms. Class Counsel have supervised the work of Epiq to ensure that direct notice is distributed as broadly as practicable, and to encourage the filing of claims.

---

[5] On or about June 18, 2018, GCG was acquired by Epiq.

**Direct Notice.** At the direction of Class Counsel, Epiq provided copies of the Claims Packet, consisting of the Court approved individual notice and proof of claim form (*see* ECF Nos. 3101-12 and 3101-15, respectively), to every potential member of the Settlement Classes that could be identified through reasonable efforts. Consistent with the Court's Order, Epiq mailed a copy of the Claim Packet to each of the 1,243 nominee addresses in Epiq's proprietary nominee database. Instructions provided with the Claim Packet directed nominees to identify individuals and institutions for whom they purchased and/or held U.S. Dollar LIBOR-Based Debt Securities during the Settlement Class Period, and, either (a) request from Epiq additional copies of the Claim Packet for each such beneficial owner, and then send a copy of the Claim Packet to all such beneficial owners promptly upon receipt from Epiq, or (b) provide to Epiq the names and addresses of such beneficial owners for Epiq to mail the Claim Packet to directly.  To date, Epiq has mailed a total of 19,845 Claims Notice Packets, including 5,232 directly to potential Settlement Class Members and 13,270 to Nominee Holders to be forwarded to their clients.  As is customary in administrations like this, certain Nominee Holders, such as custodian banks, disseminate the Claim Packet to their clients through their own internal mechanisms rather than requesting copies from Epiq.  Based on Epiq's experience, a substantial number of notices will be distributed in this manner. Declaration of Cameron R. Azari Regarding Implementation of Notice Plan ("Azari Decl."), ¶ 16. In addition, as detailed in the Azari Declaration, Epiq undertook substantial outreach efforts, including providing notice to, among others, large-scale holders of U.S. Dollar LIBOR-Based Debt Securities, including to major asset managers, mutual funds, public pension funds, insurance companies and other entities.  *Id.*, ¶¶ 17-19.

**Publication Notice.** On July 13, 2020, Class Counsel directed Epiq to publish the Court-

approved summary notice in the form of print publication tear sheets in *The Wall Street Journal*, *Investor's Business Daily* and *The Bond Buyer*. *Id.*, ¶ 21, and Attachment. 2. Additionally, Internet banner advertisements ran from July 13, 2020 through August 12, 2020 on several prominent investment-related websites, including *Yahoo! Finance*, *Investors.com*, WSJ.*com*, *Marketwatch.com*, *Barrons.com* and *Investors.com. Id.*, ¶ 24, Attachment 3. Finally, a press release was distributed on July 13, 2020 over PR Newswire. *Id*., 25 and Attachment 4.

**The Website.** The Website, www.BondholdersLIBOR Settlements.com, which is specific to the Bondholder Settlements, was operational as of July 13, 2020. The Website address was prominently displayed in both the notice and publication notice.  The Website provides information to potential members of the Settlement Classes, including key dates, important case documents and answers to frequently asked questions. *Id.* at ¶ 26. Via the Website, Settlement Class members may file claims electronically or, if they prefer, to download the Proof of Claim Form to file a paper claim. *Id.*.[6] As of October 23, 2020, the Website has had 15,518 visitors and over 21,498 website pages presented.  Additionally, the notice was downloaded 281 times and the proof of claim form was downloaded 718 times. *Id.*

**Toll-Free Information Line.** At Class Counsel's direction, the dedicated Toll-Free Information Line for the Bondholder Action, 1-888-205-5804, was operational as of July 13, 2020, allowing potential members of the Settlement Classes to call at no cost in order to obtain additional information and have questions regarding the Settlements answered. *Id.*, ¶ 27. The telephone number was displayed in the Notice and Publication Notice as well as on the Website.

---

[6] All forms of notices referred potential members of the Settlement Classes to the Website so that they could obtain information about the Settlements and to file a claim electronically.

The Toll-Free Information Line is available 24 hours a day, seven days a week, with live operators available during business hours. *Id.*

These components complied fully with all aspects of the notice plan approved by the Court. *Id.* at ¶¶ 13, 16, 32.

## III.   ARGUMENT

### A.   The Settlements Should Be Finally Approved.

Rule 23(e) provides that the Court should grant final approval to a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, the Court should consider both the procedural and substantive fairness of the settlement. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) ("*Wal-Mart*"); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 464 (S.D.N.Y. 2013). Public policy favors the settlement of disputed claims among private litigants, particularly in class actions. *See Wal-Mart*, 396 F.3d at 116-17; *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-CV-230, 2011 WL 1706778, at *2 (D. Vt. May 4, 2011).

### 1.   The Settlements Are Presumptively Fair, Reasonable, and Adequate.

Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000); *see also Wal-Mart*, 396 F.3d at 116. Under such circumstances, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997); *see also In re Telik, Inc. Sec. Litig*., 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008).

This Court previously found that Morris and Morris and Weinstein Kitchenoff have the requisite qualifications and experience in class actions to lead this litigation on behalf of the proposed Bondholder Class by appointing them Bondholder Plaintiff Interim Co-Leads. *See* ECF No. 197-1. Negotiations in connection with the Settlements extended over multiple years. Over this period, Class Counsel were well-informed of all material facts, and the settlement negotiations were non-collusive. *See* Declaration of Karen L. Morris and Robert S. Kitchenoff in support of Final Approval of the Settlements ("Morris-Kitchenoff Decl."), ¶¶ 24-25.

The Settlements were the product of a thorough, arm's length process, and as such, each enjoys a presumption of fairness. Each was reached after extended, frank, and contentious negotiations over an extended period of time, including mediation sessions and negotiations conducted under the guidance of the Honorable Layn R. Phillips, a former federal judge.[7] The involvement of a mediator strengthens the presumption of fairness. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *14 (S.D.N.Y. Nov. 8, 2010) (noting that the "presumption in favor of the negotiated settlement in this case is strengthened by the fact that settlement was reached in an extended mediation"); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator's involvement . . . helps to ensure that the proceedings were free of collusion and undue pressure.").

---

[7] For more extended discussions of the procedural history of this case, including a summary of the claims, the settlement negotiations, and the terms of each of the Settlements, Bondholder Plaintiffs hereby incorporate by reference the Declarations of Karen L. Morris and Robert S. Kitchenoff, filed with the motions for preliminary approval. ECF Nos. 1947-2, 2764-3 and 3059-3.

##### 2. The Settlements Are Fair and Reasonable under Relevant *Grinnell* Factors

The Settlements are also substantively fair, reasonable, and adequate. The Second Circuit has identified nine factors courts should examine when considering whether to grant final approval to a proposed class settlement (the "*Grinnell* factors"):

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("*Grinnell*").

"[N]ot every factor must weigh in favor of settlement[;] rather [a] court should consider the totality of these factors in light of the particular circumstances." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (internal citation and quotation omitted). In addition, when reviewing a settlement, a court "should not attempt to approximate a litigated determination of the merits of the case lest the process of determining whether to approve a settlement simply substitute one complex, time consuming and expensive litigation for another." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) (internal citation and quotation omitted).

As demonstrated herein, the Settlements amply satisfy the *Grinnell* factors.

###### a) The Complexity, Expense, and Likely Duration of the Litigation

"[F]ederal antitrust cases are complicated, lengthy, and bitterly fought, as well as costly." *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012) (citations omitted). *See, e.g., Virgin Atl. Airways Ltd. v. British Airways PLC*,

257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual complexities of antitrust cases"); *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989) (antitrust class actions "are notoriously complex, protracted, and bitterly fought").

The Bondholder Action is no exception. It was commenced on February 9, 2012. Since that time it was dismissed, *In re LIBOR-Based Fin. Instr. Antitrust Litig.*, 935 F. Supp. 2d 666 (S.D.N.Y. 2013) (*LIBOR I*); leave to amend was denied, *In re LIBOR-Based Fin. Instr. Antitrust Litig.*, 962 F. Supp. 2d 606 (S.D.N.Y. 2013) (*LIBOR II*); Bondholder Plaintiffs' appeal was dismissed *sua sponte* by the Second Circuit, *In re LIBOR-Based Fin. Instr. Antitrust Litig.*, No. 13–3565 (L), 2013 WL 9557843 (2d Cir. Oct. 3, 2013); the U.S. Supreme Court granted a writ of certiorari, *Gelboim v. Bank of America Corp.*, 573 U.S. 945 (Mem. 2014) and unanimously reversed and remanded the matter, *Gelboim v. Bank of America Corp.*, 574 U. S. 405 (2015); and the Second Circuit reversed and remanded the matter on the merits. *Gelboim*, *v. Bank of America*, 823 F.3d 759 (2d Cir. 2016). On remand, the Bondholder Action was dismissed again. *In re: LIBOR-Based Fin. Instr. Antitrust Litig.*, 11 MDL 2262 (NRB), 2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016) (*LIBOR VI*). Bondholder Plaintiffs timely appealed the dismissal to the Second Circuit. Oral argument on the second appeal was held on May 24, 2019, and the parties are presently awaiting decision. *Gelboim v. Credit Suisse A.G.,* Docket No. 17-1989 (2d Cir.). After more than eight years of intensive litigation, defendants have yet to answer Bondholder Plaintiffs' First Amended Complaint, and full discovery[8] has not occurred.

---

[8] After their return to this Court in May 2016, Bondholder Plaintiffs were permitted access to, and undertook a review and analysis of defendants' regulatory productions and audio files, as well as certain other documents produced by defendants and some third parties. Detailed examination of these documents formed a significant part of the basis of the mediation process leading to these proposed Settlements.

Should Bondholder Plaintiffs succeed on appeal, the case will continue to be vigorously contested. Bondholder Plaintiffs expect to face a lengthy and contentious discovery process, motion for class certification (with a Rule 23(f) appeal attempt), and dispositive motions, potentially followed by a lengthy trial, and a protracted appeal. *See, e.g.*, *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) ("*NASDAQ*") (estimating that trial could consume over a year); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 212 (E.D.N.Y. 2013) ("The losing parties would likely appeal any adverse jury verdicts, thereby extending the duration of litigation."). In short, "[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result." *NASDAQ*, 187 F.R.D. at 477. The first *Grinnell* factor supports final approval.

### b)      The Reaction of the Class to the Settlements

As described above, potential members of the Settlement Classes were provided direct and publication notice of the Settlements. Azari Decl., ¶¶ 11-12. The forms of notice explain, in clear and concise language, the legal options and monetary benefits available to members of the Settlement Classes under the Settlements. *Id.*, ¶¶ 8-10. To date, the Claims Administrator has received one request for exclusion, and no objections against any of the Settlements. *Id.*, ¶ 30; Morris-Kitchenoff Decl., ¶ 34. This is a significant factor weighing in favor of final approval. *E.g.*, *In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.*, 909 F. Supp. 2d 259, 266-67 (S.D.N.Y. 2012); *Wal-Mart*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (internal citation and quotation omitted).

c)        **The Stage of the Proceedings**

The stage of the proceedings is germane to determine "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). The lack of formal discovery does not preclude approval of a settlement. *Id*.; *In re Global Crossing Sec. & ERISA Litig*., 225 F.R.D. 436, 458 (S.D.N.Y. 2004). It is enough if the parties sufficiently investigated the facts to allow the Court to make an intelligent appraisal of the settlement. *In re Austrian and German Bank Holocaust Litig.*, 80 F.Supp.2d at 176.

This *Grinnell* factor supports final approval in this instance. Over the past eight years, Bondholder Plaintiffs have investigated, drafted complaints, and briefed and argued the viability of their antitrust claim in this Court and in the Second Circuit. In doing so, Bondholder Plaintiffs and their counsel have been guided by rulings in at least seven lengthy decisions on the viability of various claims that the Court has rendered in this multidistrict proceeding. Throughout this time, Class Counsel have undertaken extensive legal and factual analysis of the Bondholder Class members' claims and the reasonable value of the case.  This process has included close monitoring of criminal trials and review and analysis of trial transcripts, both in this country and in England. Morris-Kitchenoff Decl., ¶ 25. In addition, Class Counsel have engaged and actively coordinated with consulting legal, economic and industry experts to enhance their understanding of the functioning of the LIBOR market, the role of market participants, and the magnitude of harm inflicted on the Class and to refine legal theories. *Id*. Class Counsel have had access to the documentary and audio file regulatory productions and certain other documents produced in the *LIBOR* MDL and have had cooperation from the Settling Defendants pursuant to

11

the Settlements. *Id*. The information gained through these various means has provided Class Counsel with a comprehensive understanding of the relative strengths and weaknesses of their case, which has enabled them to negotiate the Settlements. *Id*., ¶ 24. Based upon this work, Class Counsel believe the Settlements are an excellent result for the Settlement Classes. *Id*., ¶ 35. The stage of the litigation supports final approval of the Settlements.

### d) The Risks of Establishing Liability and Damages

"In assessing the Settlements, the Court should balance the benefits afforded the Class, including the *immediacy* and *certainty* of a recovery, against the continuing risks of litigation." *Payment Card Interchange Fee*, 986 F. Supp. 2d at 224. As the foregoing discussion reflects, the risk of establishing liability and damages is substantial, and is amplified by the complexity of the LIBOR market. "The complexity of Plaintiff's claims *ipso facto* creates uncertainty . . . . A trial on these issues would likely be confusing to a jury." *Park v. The Thomson Corp.*, No. 05 Civ. 2931, 2008 WL 4684232, at *4 (S.D.N.Y. Oct. 22, 2008); *NASDAQ*, 187 F.R.D. at 475 (noting difficulty and uncertainty of proving liability to a jury, "especially in a case of this complexity and magnitude"). Furthermore, the defendants are wealthy global financial institutions that are represented by some of the best law firms in the United States and can afford to litigate this case indefinitely. Had Settling Defendants not agreed to settle, they were prepared, and had the wherewithal, to vigorously contest liability. "Establishing otherwise [would] require considerable additional pre-trial effort and a lengthy trial, the outcome of which is uncertain." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 199 (S.D.N.Y. 2012), *aff'd sub nom.*, *Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013).

Even if liability were established, Bondholder Plaintiffs would face the difficulties and complexities inherent in proving damages to the jury. Bondholder Plaintiffs' theory of damages would be hotly contested at trial, and there is no doubt that, at trial, the issue would inevitably

involve a "battle of the experts." *NASDAQ*, 187 F.R.D. at 476. "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985). Thus, there is a substantial risk that a jury might accept one or more of Defendants' damage arguments, or award far less than the total settlement amount, or nothing at all.

In sum, "[t]here is a substantial risk that the plaintiff might not be able to establish liability at all and, even assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away." *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 CIV. 3048 (JMW), 1987 U.S. Dist. WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987). Accordingly, the risks of establishing liability and damages weigh in favor of final approval.

> e)        **The Risks of Maintaining the Class Action Through Trial**

Although Bondholder Plaintiffs believe that the Bondholder Class meets the criteria for class certification, they also understand that Defendants will vigorously contest class certification and that there is no guarantee that a litigation class will be certified. Even if a litigation class is certified, the Court could nonetheless review and modify that certification at any point prior to trial, such that the probability of maintaining the class through trial would never be 100% certain. Fed. R. Civ. P. 23 (c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment"); *In re: LIBOR-Based Fin. Instru. Antitrust Litig.*, 299 F.Supp.3d 430, 607 n. 189 (S.D.N.Y. 2018) ("*LIBOR VII*") (same). *See also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might [not] be . . .

certified is not illusory . . .”). Thus, the risks associated with class certification weigh in favor of approving the Settlements. *See Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 665 (S.D.N.Y. 2015).

**f)      The Ability of Defendants to Withstand a Greater Judgment**

There can be little doubt that the Settling Defendants could each withstand a greater judgment than their respective settlement amounts. Measured against the other *Grinnell* factors, “[t]he mere fact that a defendant ‘is able to pay more than it offers in settlement does not, standing alone, indicate the settlement is unreasonable or inadequate.” *Fleisher v. Phoenix Life Inc. Co.*, No. 11 Civ 8405 (CM), 2015 WL 10847814, at *9 (S.D.N.Y. Sept. 9, 2015) (quoting *Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, at 460 (S.D.N.Y. 2004)); *see also In re Sinus Buster Prods. Consumer Litig.*, No. 12-CV-2429 (ADS) (AKT), 2014 U.S. Dist. WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) (“Courts have recognized that the defendant’s ability to pay is much less important than the other factors, especially when the other *Grinnell* factors weigh heavily in favor of settlement approval.”) (quoting *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010).

**g)      The Reasonableness of the Settlements in Light of the Best Possible Recovery and the Attendant Risks of Litigation**

The last two *Grinnell* factors “recognize[ ] the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . .” *Wal-Mart*, 396 F.3d at 119 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). In applying these factors, “[d]ollar amounts [of class action settlements] are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs’ case.” *In re “Agent Orange” Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984).

"[T]he exact amount of damages need not be adjudicated for purposes of settlement approval." *NASDAQ*, 187 F.R.D. at 478. Rather, "the essence of a settlement is compromise. A just result is often no more than an arbitrary point between competing notions of reasonableness." *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1322, 1325 (5th Cir. 1981). Consequently, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2; *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 191 (S.D.N.Y. 2012) ("[T]he Second Circuit 'has held that a settlement can be approved even though the benefits amount to a small percentage of the recovery sought.'" (quoting *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989)).

Continuing to litigate against the Settling Defendants would likely last many years with the potential of no recovery for the Bondholder Class, and require the expenditure of significant resources of the Court and the investment of hundreds if not thousands of hours of time and large sums of money. In order to recover, Bondholder Plaintiffs must establish liability, get a class certified and notified, and prove damages. These risks are arguably dispositive for these *Grinnell* factors. *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012) ("[T]he propriety of a given settlement amount is a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery (or reduced recovery)."). "[I]f the Class were to be decertified at trial, or if class certification were to be reversed on appeal, the class members . . . would recover nothing at all." *NASDAQ*, 187 F.R.D. at 477.

In comparison to the risks of continuing litigation against the Settling Defendants, the Settlements provide Bondholder Plaintiffs and the Settlement Classes both significant cash

compensation and continuing cooperation. Morris-Kitchenoff Decl., ¶¶ 26-27. The certainty

of a recovery now, compared to an uncertain recovery, if at all, years from now, weighs heavily

in favor of final approval.

Given the substantial recovery in light of the considerable risks here, collectively the

relevant *Grinnell* factors weigh strongly in favor of this Court granting final approval to the

Settlements.

**B.      Certification of the Settlement Classes**

The Court previously certified settlement classes in the Memorandum and Orders

preliminarily approving the Settlements (*see* ECF Nos. 2048, 2769 and 3081).  Pursuant to the

terms of the Settlement Agreements (*see*, for example, ¶ 3.7(i) of each Settlement Agreement),

Bondholder Plaintiffs respectfully request that in the Final Judgment and Order the Court

expressly certify the following Settlement Classes for settlement purposes only:[9]

a.   The settlement class for Barclays is defined as follows:

> all persons or entities (other than a Defendant and its employees, affiliates,
> parents, and subsidiaries) that owned (including beneficially in "street name")
> U.S. Dollar LIBOR-Based Debt Securities during the Class Period.
>
> "U.S. Dollar LIBOR-Based Debt Securities" means any U.S. dollar-
> denominated debt security (a) that was assigned a unique identification
> number by the CUSIP system; (b) on which interest was payable at any time
> during the Class Period; and (c) where that interest was payable at a rate based
> upon U.S. Dollar LIBOR ("USD LIBOR"). U.S. Dollar LIBOR-Based Debt
> Securities include, but are not limited to, any such bonds, corporate bonds,
> municipal bonds, government bonds, asset backed securities, residential
> mortgage backed securities, commercial mortgage backed securities,
> collateralized debt obligations and collateralized loan obligations. Excluded
> from the definition of U.S. Dollar LIBOR-Based Debt Securities are any such
> securities that were issued by any Defendant or its subsidiaries or affiliates as

---

[9] The Settling Defendants consent to certification of the Settlement Classes solely for the
purposes of the Settlements and without prejudice to any position the Settling Defendants may
take with respect to class certification in any other action and reserve all rights should the
Settlements not receive this Court's final approval.

obligor.

b.  The settlement class for UBS is defined as follows:

The "Settlement Class" shall be composed of all persons and entities (other than defendants in the Bondholder Action and their affiliated persons and entities) who owned (including beneficially or in "street name") any debt security that was assigned a unique identification number by the CUSIP system, on which interest was payable at any time between August 1, 2007, and May 31, 2010, and where that interest was payable at a rate expressly tied to the U.S. Dollar LIBOR rate ("LIBOR-Based Debt Security"); provided, however that any such securities that were issued by any defendant, including its subsidiaries and affiliates, as obligor, are excluded from the definition of LIBOR-Based Debt Security. The term LIBOR-Based Debt Security includes specifically without limitation government bonds, municipal bonds, corporate bonds, notes, debentures, certificates of deposit ("CDs"), collateralized securities, collateralized debt obligations, collateralized loan obligations, asset-based securities ("ABS"), and mortgage-backed securities ("MBS"). Excluded from the Settlement Class are Defendants; Released Parties; co-conspirators; the officers, directors, or employees of any Defendant, Released Party, or co-conspirator; any entity in which any Defendant, Released Party, or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant, Released Party, or co-conspirator and any person acting on their behalf. Also excluded from the Settlement Class are any judicial officers presiding over this action and the members of their immediate families and judicial staffs, respectively.

c.  The settlement class for HSBC is defined as follows:

all persons or entities (other than a Defendant and its employees, affiliates, parents, and subsidiaries) that owned (including beneficially in "street name") U.S. Dollar LIBOR-Based Debt Securities during the Class Period.

"U.S. Dollar LIBOR-Based Debt Securities" means any U.S. dollar-denominated debt security (a) that was assigned a unique identification number by the CUSIP system; (b) on which interest was payable at any time during the Class Period; and (c) where that interest was payable at a rate expressly linked to U.S. Dollar LIBOR ("USD LIBOR"). U.S. Dollar LIBOR-Based Debt Securities include, but are not limited to, any such bonds, corporate bonds, municipal bonds, government bonds, asset backed securities, residential mortgage backed securities, commercial mortgage backed securities, collateralized debt obligations and collateralized loan obligations. Excluded from the definition of U.S. Dollar LIBOR-Based Debt Securities are any such securities that were issued by any Defendant or its subsidiaries or affiliates as obligor.

d.  The settlement class for Citi is defined as follows:

all persons and entities (other than defendants in the Bondholder Action and their affiliated persons and entities) who owned (including beneficially or in "street name") any USD LIBOR-Based Debt Security (defined below); provided, however, that any such securities that were issued by any Defendant, including its subsidiaries and affiliates, as obligor, are excluded from the definition of LIBOR-Based Debt Security.

"U.S. Dollar LIBOR-Based Debt Security" means any U.S. dollar-denominated debt security (a) that was assigned a unique identification number by the CUSIP system; (b) on which interest was payable at any time during the Class Period; and (c) where that interest was payable at a rate expressly tied to U.S. Dollar LIBOR ("USD LIBOR"). Excluded from the definition of U.S. Dollar LIBOR-Based Debt Securities are any such securities that were issued by any Defendant or its subsidiaries or affiliates as obligor.

e.  The settlement class for JPM and BOA is defined as follows:

all persons and entities (other than Defendants in the Action and their affiliated persons and entities) who owned (including beneficially or in "street name") any USD LIBOR-Based Debt Security; provided, however, that any such securities that were issued by any Defendant, including its subsidiaries and affiliates, as obligor, are excluded from the definition of USD LIBOR-Based Debt Security.  Solely for purposes of the Settlement, the parties agree that Investment Vehicles are not excluded from the Settlement Class solely because they are, or are managed by, affiliates or subsidiaries of the Defendants.

"U.S. Dollar LIBOR-Based Debt Security" means any U.S. dollar-denominated debt security that was assigned a unique identification number by the CUSIP system, on which interest was payable at any time during the Class Period; and where that interest was payable at a rate expressly tied to U.S. Dollar LIBOR ("USD LIBOR").  Excluded from the definition of U.S. Dollar LIBOR-Based Debt Securities are any such securities that were issued by any Defendant or its subsidiaries or affiliates as obligor.

f.  The settlement class for RBS is defined as follows:

All persons and entities (other than defendants in the Bondholder Action and their affiliated persons and entities) who owned (including beneficially or in "street name") any debt security that was assigned a unique identification number by the CUSIP system, on which interest was payable at any time between August 1, 2007, and May 31, 2010, and where that interest was payable at a rate expressly tied to the U.S. Dollar LIBOR rate ("LIBOR-Based Debt Security"); provided, however that any such securities that were issued

by any Defendant, including its subsidiaries and affiliates, as obligor, are excluded from the definition of USD LIBOR-Based Debt Security.

"U.S. Dollar LIBOR-Based Debt Security" means any debt security that was assigned a unique identification number by the CUSIP system, on which interest was payable at any time during the Class Period; and where that interest was payable at a rate expressly tied to U.S. Dollar LIBOR ("USD LIBOR"). Excluded from the definition of U.S. Dollar LIBOR-Based Debt Securities are any such securities that were issued by any Defendant or its subsidiaries or affiliates as obligor.

The settlement classes for Barclays, UBS, HSBC, Citi, JPM, BOA and RBS are collectively referred to as the "Settlement Classes".

Certification of a settlement class is proper where the proposed settlement class satisfies the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). When considering certification of a settlement class, "courts must take a liberal rather than restrictive approach." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009). For the reasons set forth in Bondholder Plaintiffs' prior motions for preliminary approval of the Settlement Classes, (ECF Nos. 1947-1, 2764-1, 3059-1) and the Court's Orders granting preliminary approval of the Settlements (ECF Nos. 2048, 2769, 3081), the proposed Settlement Classes satisfy the requirements for certification and should be certified for settlement classes.

### C.     Appointment of Bondholder Settlement Class Counsel

As noted above, the Court appointed Morris and Morris and Weinstein Kitchenoff as Bondholder Settlement Class Counsel, *see* ECF No. 2048, 2769 and 3081. Underpinning these Orders, in their briefing in support of preliminary approval of the Settlements, Class Counsel detailed their compliance with the prerequisites of Fed. R. Civ. P. 23(g), *see* ECF Nos. 1947-1, pp. 21-22, 2764-2, pp 21-22 and 3059-2, pp. 22-23. From the inception of the litigation to the present, Class Counsel have vigorously represented the best interests of the proposed Bondholder

Classes. Bondholder Plaintiffs respectfully request that in the Final Judgment and Order, the Court confirm its appointment of Morris and Morris and Weinstein Kitchenoff as Bondholder Settlement Class Counsel.

### D. Notice to the Settlement Classes Comported with Rule 23 and Due Process

A notice program must satisfy both Rule 23(c)(2)(B) and Rule 23(e)(1). Rule 23(c)(2)(B) requires the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974). However, neither individual nor actual notice to every class member is required; instead, "class counsel [need only] act[] reasonably in selecting means likely to inform the persons affected." *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 00214 CM, 2010 WL 5187746, at *3 (S.D.N.Y. Dec. 6, 2010) (citing *Weigner v. The City of New York*, 852 F.2d 646, 649 (2d Cir. 1988)); *see also In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008). As for Rule 23(e)(1), it requires that notice of a settlement be "reasonable" – *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceeding." *Wal-Mart*, 396 F.3d at 114 (internal citation and quotation omitted). As explained below, the implementation of the approved notice program has satisfied both of these requirements and should be finally approved.

This Court approved the notice program. ECF No. 3102. The notice sent to potential claimants complied in all respects with the notice plans this Court already approved. Azari Decl., ¶¶ 13, 16, 32.

20

### 1.      Notice Was the Best Practicable Under the Circumstances.

As described above, notice was provided to potential members of the Settlement Classes in three ways: direct notice, publication notice and Internet notice. These three methods are the principal means of notice recommended to the district courts by the Federal Judicial Center. Manual for Complex Litigation, Fourth, § 21.311 at 287-88 (Fed. Jud. Center 2004). Courts routinely approve notice programs that combine multiple means of notice, such as this one. *See* ECF Nos. 2655; 2579; 2777. *See also*, *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *8 ("The notice was also distributed widely, through the internet, print publications, and targeted mailings. The Court concludes that the distribution of the class notice was adequate."); *In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2016 WL 2731524, at *5 (S.D.N.Y. Apr. 26, 2016) ("Class Counsel mailed notice packets to each of 13,923 identified Class members. . . . The Summary Notice was also published on January 11 in several important business publications. . . The [claims administrator] launched a website for the Settlement which posted the Settlement agreements, notices, court documents, and other information relevant to the Settlement."). The Court should similarly conclude here that notice to members of the Settlement Classes was the best practicable under the circumstances.

### 2.      The Notice "Fairly Apprised" Potential Class Members of the Settlements and their Options

The contents of a class action settlement notice must (1) "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" and (2) be written as to "be understood by the average class member." *Wal-Mart*, 396 F.3d at 114-15 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982), NEWBERG ON CLASS ACTIONS § 11:53, at 167 (4th ed. 2002)). "There are no rigid rules to determine whether a settlement notice satisfies constitutional or Rule 23(e)

21

requirements . . . ." *In re Vitamin C*, 2012 WL 5289514, at *8 (internal quotation omitted); however, courts typically consider (a) "whether there has been a succinct description of the substance of the action and the parties' positions"; (b) "whether the parties, class counsel, and class representatives have been identified"; (c) "whether the relief sought has been indicated"; (d) "whether the risks of being a class member, including the risk of being bound by the judgment have been explained"; (e) "whether the procedures and deadlines for opting out have been clearly explained"; and (f) "whether class members have been informed of their right to appear in the action through counsel." *Id.* (citing *In re Payment Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2008 WL 115104, at *15 (E.D.N.Y. Jan. 8, 2008)).

Cameron Azari is the Director of Legal Notice for Hilsoft Notifications. Hilsoft is a business unit of Epiq, the Claims Administrator in the Bondholder Action. Mr. Azari has concluded that the written notice was drafted using clear, simple, and straightforward language, and was presented in a format that is easy to follow and understand. *See* Azari Decl., ¶ 8. The notice was designed using a question and answer format that provides a simple step-by-step explanation of critical issues related to the litigation and the proposed Settlements, the relevant information about the subject of the litigation, the definitions of the Settlement Classes, and the rights available to members of the Settlement Classes. *See id.*, ¶¶ 8-10. Mr. Azari further concluded that the publication notice was drafted in a way that is easy to read and understand, to provide potential members of the Settlement Classes with basic information about the Bondholder Action and the proposed Settlements, and to explain how to obtain additional information, including copies of the claim packet (which included the notice and proof of claim form). *See id.*, ¶ 8. The publication notice directed potential members of the Settlement Classes to the Website, where the full notice and other important documents related to the Settlements

are available, and to the dedicated toll-free phone number where they could ask questions of the Claims Administrator. *See id.*, ¶ 26. Thus, the contents of the various forms of notice "provided sufficient information for Class Members to understand the Settlement[s] and their options." *Sykes v. Harris*, 09 CIV. 8486 (DC), 2016 WL 3030156, at *10 (S.D.N.Y. May 24, 2016).

More specifically, both the notice's substance and method of dissemination to potential members of the Settlement Classes assure conveyance of the information required by Rule 23(c)(2)(B), including a plain language explanation of (a) the nature of the case, the claims and defenses, the class definition, the background of the Settlements, and how the settlement funds will be allocated upon final approval; (b) the right to opt out of the Settlement Classes, to object to the Settlements, to appear at the Fairness Hearing, and the processes and deadlines for doing so; and (c) the binding effect of judgment on those who do not exclude themselves from the Settlement Classes. Azari Decl., ¶¶ 8-10.

In addition, the notice contains other information, such as Class Counsel's intent to request attorneys' fees, expense reimbursement, and service awards, as well as the right of the Settlement Classes to comment upon or object to such requests. The notice also prominently features the contact information for the Claims Administrator and Class Counsel, all of which members of the Settlement Classes can utilize to obtain further information, if desired. The notice also provides recipients with information on how to submit a proof of claim form in order to be potentially eligible to receive a distribution from the settlement funds. *Id.*, ¶ 10.

Finally, the establishment of the Website and the Toll-Free Information Line provide added tools by which potential members of the Settlement Classes can obtain more information regarding the Settlements, including key dates, access to important case documents, answers to their questions and a proof of claim form and instructions on how to file their claim

electronically. *Id.*, ¶¶ 26-27.

> **E.     The Plan of Allocation Should be Finally Approved.**

The relevant standards for final approval of a plan of allocation were summarized

recently by Judge Cote:

> A district court has broad supervisory powers with respect to the allocation of
> settlement funds. The plan of allocation must meet the standards by which the
> settlement is scrutinized — namely, it must be fair and adequate. A plan need only
> have a reasonable, rational basis, particularly if recommended by experienced and
> competent class counsel. A principal goal of a plan of distribution must be the
> equitable and timely distribution of a settlement fund without burdening the process
> in a way that will unduly waste the fund. In the case of a large class action the
> apportionment of a settlement can never be tailored to the rights of each plaintiff
> with mathematical precision. The challenge of precisely apportioning damages to
> victims is often magnified in antitrust cases, as damage issues in antitrust cases are
> rarely susceptible of the kind of concrete, detailed proof of injury which is available
> in other contexts.

*In re Credit Default Swaps*, 2016 WL 2731524, at *9 (internal citations and quotations omitted).

The Plan of Allocation was preliminarily approved by the Court on June 16, 2020, ECF

No. 3102. The Plan of Allocation proposes a *pro rata* distribution that is similar in structure to

the plans of distribution that have been approved to apportion settlement proceeds in other

financial instrument contexts. *See, e.g.*, *In re Credit Default Swaps*, 2016 WL 2731524, at *4

("The Plan determines the amount to be paid on each Class member's claim through three main

steps: (1) identifying qualifying Covered Transactions; (2) estimating the amount of bid/ask

spread inflation resulting from the Dealer Defendants' alleged conduct with respect to each

Covered Transaction; and (3) calculating each claimant's recovery based on its *pro rata* share of

the available Settlement Funds in relation to the recoveries to which all claimants who have

submitted a valid claim are entitled."); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL

01695 (CM), 2007 WL 4115809, at *14 (S.D.N.Y. Nov. 7, 2007) ("Each valid claim will then be

calculated so that each authorized claimant will receive, on a proportionate basis, the share of the

net settlement fund that the claimant's recognized loss bears to the total recognized loss of all authorized claimants."); *Global Crossing*, 225 F.R.D. at 462 ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach."); *In re Platinum and Palladium Commodities Litig.*, No. 10 CV 3617, 2014 WL 3500655, at *3 (S.D.N.Y. Jul. 15, 2014) (allocations based on artificiality on each trading day). The Plan of Allocation is also materially identical to the plans of distribution approved by this Court for other settlements in the LIBOR MDL (*see, e.g.*, ECF No. 2655 (OTC settlements with Barclays and Citi), ECF No. 2746 (OTC settlements with Deutsche Bank and HSBC), and ECF No. 2777 (Lenders settlements with Barclays, Citi and HSBC)).

In addition, Class Counsel believe that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Funds among members of the Settlement Classes who suffered losses as a result of the conduct alleged in this litigation, *see* Morris-Kitchenoff Decl., ¶¶ 30-32, and their opinion is entitled to "considerable weight" by the Court. *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001) ("As with other aspects of the settlement, the opinion of experienced and informed counsel is entitled to considerable weight.").

Because the Plan of Allocation represents a fair and equitable method for allocating the settlement funds among members of the Settlement Classes who submit valid claims, it merits final approval from the Court.

## IV.    CONCLUSION

For the foregoing reasons, Bondholder Plaintiffs respectfully request the Court grant final approval of the Settlements, grant final approval of the Plan of Allocation, find that the notice to members of the Settlement Classes comports with the requirements of Rule 23 and due process, and enter the proposed Final Judgment and Order.


Dated: November 2, 2020                                Respectfully submitted,


*/s Karen L. Morris*                                           */s Robert S. Kitchenoff*
Karen L. Morris (Bar No. 1939701)              David H. Weinstein
Patrick F. Morris                                               Robert S. Kitchenoff
MORRIS AND MORRIS LLC                      WEINSTEIN KITCHENOFF & ASHER LLC
     COUNSELORS AT LAW                        150 Monument Road, Suite 107
4023 Kennett Pike, #254                              Bala Cynwyd, PA  19004
Wilmington, DE  19807                               Tel.: (215) 545-7200
Tel.: (302) 426-0400                                     Email:  weinstein@wka-law.com
Email: kmorris@morrisandmorrislaw.com                kitchenoff@wka-law.com
         pmorris@morrisandmorrislaw.com


*Attorneys for Plaintiffs*
*Ellen Gelboim and Linda Zacher*

Of Counsel:
Thomas C. Goldstein
Eric F. Citron
Goldstein & Russell, P.C.
7475 Wisconsin Avenue, Suite 850
Bethesda, MD 20814
(202) 362-0636

26