UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | ) ) ) ) MDL No. 2262 |
| THIS DOCUMENT RELATES TO: Case No. 12-CV-1025 (NRB) | ) ) ) Master File No. 1:11-md-2262-NRB ) ECF Case ) |

**DECLARATION OF KAREN L. MORRIS AND ROBERT S. KITCHENOFF IN SUPPORT OF BONDHOLDER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS WITH BARCLAYS BANK PLC, UBS AG, HSBC BANK PLC, CITIBANK, N.A., CITIGROUP INC., JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., AND THE ROYAL BANK OF SCOTLAND GROUP PLC**

Pursuant to 28 U.S.C. § 1746, Karen L. Morris and Robert S. Kitchenoff declare:

1. Karen L. Morris is a partner in the law firm of Morris and Morris LLC Counselors At Law ("Morris and Morris"). Robert S. Kitchenoff is a member of the law firm of Weinstein Kitchenoff & Asher LLC ("Weinstein Kitchenoff").

2. Morris and Morris and Weinstein Kitchenoff (collectively "Class Counsel") serve as the attorneys for Ellen Gelboim and Linda Zacher ("Bondholder Plaintiffs") and as Court-appointed Class Counsel for the Bondholder Settlement Classes, certified by the Court for settlement purposes only in the above-captioned action (*see* ECF Nos. 2048, 2769, 3081[1]).

3. Class Counsel submit this declaration in support of Bondholder Plaintiffs' Motion for Final Approval of Settlements with Barclays Bank plc, UBS AG, HSBC Bank plc, Citibank,

---

[1] References to "ECF No." herein refer to documents in the docket of the MDL Action, 11-md-2262-NRB.

N.A., Citigroup Inc., JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., Bank of America Corporation, Bank of America, N.A., and the Royal Bank of Scotland Group plc (the "Settlements").

4.     This declaration is submitted in support of settlements with multiple defendants. As such it is inadmissible in any subsequent proceedings, other than in connection with the Settlements. In the event the Settlements are not approved by the Court, this declaration and the statements contained herein are without prejudice to Bondholder Plaintiffs' position on the merits of the Bondholder Action.

I.     **THE SETTLEMENTS**

5.     The proposed Settlements totaled $68,625,000 in the aggregate.[2] The Settlement Agreements also provide cooperation to Bondholder Plaintiffs in pursuing their case against the non-settling defendants. If finally approved, the proposed Settlements will resolve this complex antitrust litigation against Barclays Bank plc ("Barclays"), UBS AG ("UBS"), HSBC Bank plc ("HSBC")[3], Citibank and N.A., Citigroup Inc. (together "Citi"), JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (together, "JPM"), Bank of America Corporation and Bank of America, N.A. (together "BOA"), and the Royal Bank of Scotland Group plc ("RBS")[4] (collectively, the "Settling Defendants").

6.     The Settlements represent a significant step forward in the prosecution of the Bondholder Action.

---

[2] Separately each of the Settling Defendants is paying as follows:  Barclays - $7,100,000; UBS - $17,900,000; HSBC - $11,100,000; Citi - $7,025,000; JPM - $6,250,000; BOA - $6,250,000; and RBS - $13,000,000.
[3] Claims against defendant HSBC Holding plc, if finally approved by the Court, will also be released pursuant to the HSBC Settlement.
[4] Claims against The Royal Bank of Scotland plc (now known as NatWest Markets Plc), if finally approved by the Court, will also be released pursuant to the RBS Settlement.

### A. The Barclays Settlement

7. Counsel for the Settlement Classes and counsel for Barclays began discussions regarding potential settlement of the claims alleged against Barclays in the Bondholder Action in early January 2016. Over a four month period, the parties had multiple telephone conferences and in-person meetings, and Counsel for the Settlement Classes presented Barclays with a proposed term sheet, detailing both monetary and non-monetary cooperation provisions, which provided the framework for future negotiations between the parties.

8. Following extensive negotiations, the parties executed a final term sheet on September 27, 2016, reflecting agreement on material terms, including a settlement amount of $7.1 million, the scope of the release of claims, and non-monetary cooperation to be provided by Barclays. Thereafter, the parties negotiated the terms of the Settlement Agreement, which was executed on November 15, 2016.

### B. The UBS Settlement

9. Contemporaneous with the initiation of settlement discussions with Barclays, in early January 2016, Counsel for the Settlement Classes and counsel for UBS also began discussions of a potential settlement of the claims against UBS alleged in the Bondholder Action. Settlement negotiations took place over a five-month period and were conducted under the auspices of the Honorable Layn R. Phillips, a former federal judge, as mediator.

10. The parties undertook multiple discussions and met in person with the mediator. As a result of these efforts, the parties executed a final term sheet on May 19, 2016, reflecting agreement on material terms, including a settlement amount of $17.9 million, the scope of the release of claims, and the extent of non-monetary cooperation to be provided by UBS. Thereafter,

the parties negotiated the terms of the Settlement Agreement, which was executed on July 12, 2016.

### C.     The HSBC Settlement

11.     Counsel for the Settlement Classes and counsel for HSBC began settlement discussions around June 2016 and agreed to use Judge Phillips as mediator. Settlement negotiations, including discussions and in person meetings, continued over a nine-month period.

12.     On March 15, 2017, the parties finalized negotiations and executed the Settlement Agreement which provided for a monetary payment of $11.1 million dollars, the release of claims and non-monetary cooperation.

13.     The Court granted preliminary approval of the Barclays, UBS and HSBC settlements by Memorandum and Order dated July 5, 2017 (ECF No. 2048).

### D.     The Citi Settlement

14.     Counsel for the Settlement Classes and counsel for Citi began discussions regarding potential settlement of the claims against Citi alleged in the Bondholder Action in July 2017 and agreed to use Judge Phillips as mediator. These negotiations extended over a five-month period, and culminated in the parties executing a final term sheet on December 21, 2017, reflecting agreement on the material terms of the settlement, including a cash payment of $7,025,000, the scope of the release of claims, and the categories for non-monetary cooperation to be provided by Citi.

15.     The parties thereafter negotiated the terms of the Settlement Agreement, which was executed on January 10, 2018.

16.     The Court granted preliminary approval of the Citi settlement by Memorandum and Order dated December 5, 2018 (ECF No. 2769).

### E. The BOA/JPM Settlement

17. Counsel for the Settlement Classes and counsel for BOA and JPM began discussions regarding potential settlement of the claims against JPM and BOA alleged in the Bondholder Action in January 2018. The parties undertook negotiations under the auspices of Judge Phillips as mediator to facilitate the settlement process.

18. Following over a year of negotiations, the parties executed a term sheet on May 1, 2019, reflecting agreement on the material terms of the settlement, including the aggregate cash payment of $12,500,000, the scope of the release of claims, and the categories for non-monetary cooperation to be provided by BOA and JPM.

19. The parties thereafter negotiated the complete terms of the Settlement Agreement, which was executed on November 12, 2019.

### F. The RBS Settlement

20. Counsel for the Settlement Classes and counsel for RBS began discussions regarding potential settlement of the claim against RBS alleged in the Bondholder Action in May 2019. The parties undertook these discussions under the auspices of Judge Phillips. Following six months of negotiations, the parties executed a term sheet on October 4, 2019, reflecting agreement on the material terms of the settlement, including a cash payment of $13 million, the scope of the release of claims, and the categories for non-monetary cooperation to be provided by RBS.

21. Thereafter, the parties negotiated the complete terms of the Settlement Agreement, which was executed on March 25, 2020.

22. The Court granted preliminary approval of the BOA/JPM and RBS settlements by Order dated April 8, 2020 (ECF No. 3081).

23. The Court granted approval of the notice program in connection with the above settlements and granted preliminary approval of the proposed plan of allocation by Order date June 16, 2020 (ECF No. 3102).

* * *

24. The Settlements are each the product of hard-fought, arm's-length negotiations by counsel highly experienced in complex antitrust matters and, as detailed above, included negotiations under the oversight and with the assistance of Judge Phillips as mediator. At all times in the negotiations with each of the Settling Defendants, each side vigorously negotiated its respective position. Class Counsel were well-informed of the facts and issues concerning liability and damages and the relative strengths and weaknesses of each side's litigation position.

25. Underpinning the settlement negotiations, Class Counsel have, *inter alia*, engaged and actively coordinated with consulting legal, economic and industry experts to enhance their understanding of the functioning of the LIBOR market, the role of market participants and the magnitude of harm inflicted on the Class, and to refine legal theories. We have reviewed and analyzed tens of thousands of pages of Defendants' communications and internal documentation and other documents produced in the litigation. These productions included emails, Bloomberg chats, transcripts of telephone calls, and other communications within and among the defendant banks and with non-party institutions, as well as audio files and transactional data of the defendant banks' borrowing and lending activities during the Class Period. In addition, Bondholder Counsel reviewed and analyzed transcripts of criminal trials related to LIBOR manipulation in the U.S. and England.

26. The cash portion of the Settlements consists of: (i) $7,100,000 paid by Barclays; (ii) $17,900,000 paid by UBS; (iii) $11,100,000 paid by HSBC; (iv) $7,025,000 paid by Citi; (v)

$6,250,000 paid by JPM; (vi) $6,250,000 paid by BOA; and (vii) $13,000,000 paid by RBS. The settlement amounts paid by each of the Settling Defendants are non-reversionary; if the Court grants final approval of each Settlement then no money will be returned to the any of the Settling Defendants.

27. The Settlements also obligate each of the Settling Defendants to provide cooperation in support of the litigation of the Bondholder Action against the non-settling defendants. The cooperation components differ among the Settling Defendants, but generally relate to, among other things, document and data production, attorney proffers, obligations to respond to inquiries from Bondholder Plaintiffs' Counsel and depositions of defendant employees. *See* Barclays Settlement Agreement, ¶ 13.1-13.14; UBS Settlement Agreement, ¶ 14.1-14.7; HSBC Settlement Agreement, ¶ 13.1-13.14; Citi Settlement Agreement, ¶ 13.1-13.11; BOA/JPM Settlement Agreement, ¶ 13.1-13.7; and RBS Settlement Agreement, ¶ 13.1-13.7.

28. Under the terms of the Settlement Agreements up to $3.825 million collectively of the Settlement Funds on a nonrefundable basis may be used to support notice and administration, including data acquisition and work with consulting experts and the claims administrator in connection with the development of a plan of allocation and the provision of notice and claims review.[5] The acquisition of the Bloomberg and other data totaled $757,830, of which $382,830 was paid from the Settlement Funds. Further disbursements from the Settlement Funds include $459,614.88 paid to Epiq for data management and analysis in support of the development of the

---

[5] Subject to certain conditions the maximum sums per Settling Defendant are: UBS – $500,000, with an additional $325,000 expressly for data acquisition (Settlement Agreement, ¶ 8.3 (ECF No. 1947-5); Barclays – $500,000 (Settlement Agreement, 7.3 (ECF No. 1947-3); HSBC – $500,000 (Settlement Agreement, ¶ 7.3 (ECF No. 1947-6)); Citi – $500,000 (Settlement Agreement, ¶ 7.3 (ECF No. 2764-4)); BOA/JPM –$1,000,000 (Settlement Agreement, ¶ 7.4 (ECF No. 3059-4)); and RBS – $500,000 (Settlement Agreement, ¶ 7.4 (ECF No. 3059-5)).

plan of allocation; $223,399.01 paid to consulting experts for data analysis, development of the plan of allocation and work on the but-for analysis; and $240,896.47 paid to Epiq in connection with implementation of the notice plan and claims administration to date. Since the initial settlements in 2016, the Settlement Funds have earned a total of $1,286,378.26 in interest. The aggregate net settlement amount, minus all expenses paid from the Settlement Funds to date, taxes paid, plus interest earned, totals $68,381,600.29 as of October 30, 2020.

## II.     THE PLAN OF ALLOCATION

29.     Class Counsel developed the Plan of Allocation based on suppression modeling prepared by Dr. Fernando Alvarez, the William C. Norby Professor in Economics at the University of Chicago.

30.     The proposed Plan of Allocation provides a *pro rata* distribution to members of the Settlement Classes in proportion to their *pro rata share* of the net settlement funds.  The proposed Plan of Allocation, previously filed with the Court on June 16, 2020, ECF No. 3101-7, sets forth how each Authorized Claimants' *pro rata share* will be calculated

31.     Class Counsel believe the proposed Plan of Allocation to be fair and reasonable.

32.     Class Counsel have determined that the fairest and most efficient manner of distributing funds to members of the Settlement Classes is the method used in the proposed Plan of Allocation.

## III.    THE PROVISION OF NOTICE

33.     The Direct Notice sent to potential members of the Settlement Classes informed recipients that any member of the Settlement Classes who wishes to (i) object to part or all of the proposed Settlements, the Plan of Allocation, the award of attorneys' fees and reimbursement of expenses or the payment of service awards to the named plaintiffs or (ii) be excluded from any of the Settlements can do so by mailing a written statement to the Court, Bondholder Plaintiffs' Counsel and

relevant Settling Defendants' Counsel, and that such mailing must be postmarked on or before November 17, 2020.

## IV.  OBJECTIONS AND EXCLUSIONS TO DATE

34. As of this filing, Class Counsel have received no objections. One exclusion request has been received to date.

\* \* \*

35. We believe the Settlements are fair, reasonable and adequate, and reflect an excellent result for the Settlement Classes, and respectfully request that the Court grant Bondholder Plaintiffs' application for final approval of the Settlements.

We each declare under penalty of perjury that the forgoing is true and correct.

Executed on November 2, 2020

                                                                                    /s Karen L. Morris
                                                                                    Karen L. Morris

                                                                                  /s Robert S. Kitchenoff
                                                                                  Robert S. Kitchenoff