**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262 (NRB) |
| | Honorable Naomi Reice Buchwald |
| THIS DOCUMENT RELATES TO: | |
| MAYOR AND CITY COUNCIL OF BALTIMORE, et al., | No. 11-cv-5450 (NRB) |
| Plaintiffs, | |
| v. | |
| CREDIT SUISSE AG, et al., | |
| Defendants. | |

**DECLARATION OF AMY L. LAKE IN SUPPORT OF OTC PLAINTIFFS' MOTION TO AUTHORIZE DISTRIBUTION OF THE BARCLAYS, CITIBANK, DEUTSCHE BANK, AND HSBC NET SETTLEMENT FUNDS TO CLAIMANTS AND REIMBURSEMENT OF CLAIMS ADMINISTRATION EXPENSES**

AMY L. LAKE declares and states as follows:

1.     I am a Director of Client Services at Rust Consulting, Inc. ("Rust").  Rust was appointed by the Court to serve as the Claims Administrator for the OTC Plaintiffs' settlement with Barclays Bank plc (the "Barclays Settlement") pursuant to ¶ 1 of the Order Approving OTC Plaintiffs' Notice Program and Preliminary Approval of Plan of Distribution (the "Barclays Preliminary Approval Order").  *See* Dkt. 1948.[1] Rust was also appointed to serve as the Claims Administrator for the OTC Plaintiffs' settlement with Citibank N.A. and Citigroup, Inc. (the "Citi

_____

[1] All docket citations refer to MDL No. 2262.

Settlement") pursuant to ¶ 5 of the Order Preliminarily Approving Settlement (the "Citi Preliminary Approval Order"), *see* Dkt. 2247, the OTC Plaintiffs' settlement with Deutsche Bank Aktiengesellschaft ("Deutsche Bank Settlement") pursuant to ¶ 5 of the Order Preliminarily Approving Settlement Between OTC Plaintiffs and Deutsche Bank Aktiengesellschaft, *see* Dkt. 2481, and OTC Plaintiffs' settlement with HSBC Bank plc ("HSBC Settlement") pursuant to ¶ 5 of the Order Preliminarily Approving Settlement Between OTC Plaintiffs and HSBC Bank plc, *see* Dkt. 2480.   I have the responsibility for overseeing all aspects of the notice and claims administration services performed by Rust with respect to the Barclays Settlement, Citi Settlement, Deutsche Bank Settlement, and HSBC Settlement (together, the "Settlements"). I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.      I submit this declaration in order to provide the Court and the parties to the above-captioned litigation with information regarding the processing of Proof of Claim forms and our preparation for distribution.  I am over 21 years of age and am not a party to this action.  I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

**INTRODUCTION**

3.      Claims administration for the Settlements is now complete, and we are prepared for distribution to Authorized Claimants whose claims are not *de minimis*.[2]

---

[2] "Authorized Claimants" as defined in the court- approved plans of distribution are members of the Class who timely submit valid Proofs of Claim and whose Proofs of Claim included transactions that resulted in damages that were not *de minimis*. *See* Dkts. 2239-1, 2243, 2253-1, 2290, 2517-1, 2579.

4.     The claims administration services provided by Rust in connection with the Settlements included providing notice to and communicating with potential members of the Settlement Classes, as described in our previously filed declarations. Rust was also engaged by certain defendants to provide direct notice to their counterparties with respect to the Citi, Deutsche Bank, and HSBC Settlements. Rust has continued to support potential Class Members and Claimants through the following services:

a)     The receipt and processing of 7,327 Proof of Claim forms, representing 11,439,495 financial transactions, and 1,106 responses to deficiency and ineligibility notifications as described below;

b)     Reviewing and responding to emails from potential Class Members to info@usdollarliborsettlement.com with approximately 8,520 emails sent by potential Class Members;

c)     Reviewing and responding to mailed correspondence with 1,726 items received and processed;

d)     The handling of 4,947 calls to the case-dedicated toll-free telephone number (1-888-568-7640) to date; and

e)     Hosting and maintaining the settlement website (USDollarLiborSettlement.com) which has received 288,893 visits to date.

### CLAIMS PROCESSING

5.     Rust was appointed to review and process Proof of Claim forms in the Settlements and to distribute the Settlement Amounts to Authorized Claimants in the Settlements.  Rust created

a claim process in which potential Claimants could submit Proof of Claim forms to create a Claim to the Settlements either electronically or in paper.

6.     The claim process began with the processing of Proof of Claim forms for the OTC Plaintiffs' Settlement with Barclays and was expanded to include Proof of Claim forms for the OTC Plaintiffs' Settlements with Citibank, Deutsche Bank, and HSBC.

## PROCEDURES FOLLOWED FOR REVIEWING AND PROCESSING CLAIMS

7.     In preparation for the processing of Proof of Claim forms, Rust created a secure, segregated database for the Settlements within Rust's computer systems (the "Claims Database"); prepared processing procedures utilizing best-practices for claims processing; trained staff in the specifics of the project; and developed various computer programs and load processes for the capture and analysis of Claims data.  Rust prepared the online claim submission screens for the Settlement Website, as well as filing instructions and procedures for assisting Claimants with the submission of their Claims.  Rust also established a team to review and respond to inquiries from Claimants concerning the submission of their Claims.

8.     Rust prepared a list of codes to be used in the Claims Database (known as "Message Codes") to track claims processing outcomes. Each Message Code represents a specific condition that applies to some or all of a Claim.  For example, some Message Codes are applied at the Claim level, meaning the condition pertains to every transaction within a Claimant's Claim, while some Message Codes are applied at the transactional level (*e.g.*, an individual interest rate swap submitted as part of a Claimant's Claim) to indicate a condition that is specific to the transaction in question.

9.     Pursuant to the Settlement Agreements and Preliminary Approval Orders, Class Members were initially required to submit Proof of Claim forms to the Claims Administrator

postmarked or submitted electronically no later than December 21, 2017 for the OTC Plaintiffs' Settlement with Barclays, no later than March 29, 2018 for the OTC Plaintiffs' Settlement with Citibank, and no later than December 20, 2018 for the OTC Plaintiffs' Settlements with Deutsche Bank and HSBC.

10.    All data submitted with Claims relating to U.S. Dollar LIBOR-Based Instruments were entered into the Claims Database.  Claims for each of the individual OTC Plaintiffs' Settlements with Barclays, Citibank, Deutsche Bank and HSBC were processed within the same Claims Database.

11.    Rust has received and processed 7,327 Proof of Claim forms containing 11,439,495 transactions from potential Class Members.  Each Proof of Claim form may contain multiple claims for individual beneficial account owners, when submitted by institutional filers.  The 7,327 Proof of Claim forms resulted in a total of 41,067 distinct Claims.

12.    A total of 29,474 Claims containing 10,511,214 transactions pertain to the OTC Plaintiffs' Settlement with Barclays, 26,927 Claims containing 7,401,721 transactions pertain to the OTC Plaintiffs Settlement with Citibank, 24,943 Claims containing 7,329,302 transactions pertain to the OTC Plaintiffs Settlements with Deutsche Bank, and 24,941 Claims containing 7,330,474 transactions pertain to the OTC Plaintiffs Settlements with HSBC.  There is a substantial amount of overlap between the transactions in each settlement.

13.    The 7,327 total Proof of Claim forms received and processed include 4,971 "hard copy" Proof of Claim forms and 2,356 Proof of Claim forms submitted electronically through the Settlement Website.  Claimants were able to provide the transaction detail for their Claims in the hard copy and website submissions, however, due to the volume of the transactions, some Claimants submitted electronic copies of their transactional data to supplement their Proof of

Claim form submission.  Rust provided Claimants with a template to use for such submissions, which was also available on the Settlement Website.  We refer to these as e-filed transaction data submissions.  Approximately 1,699 such e-filed transaction data submissions were received and processed.

14.    Rust used the following procedure to process all hard-copy Claims received at US Dollar Libor Settlement, P.O. Box 2602, Faribault, MN 55021-9602:

a)    envelopes received at the P.O. Box address were opened and sorted into actual Proof of Claim forms submitted by potential Class Members and correspondence such as requests for Notice and Proof of Claim forms;

b)    an electronic and imaged copy of each Proof of Claim form received in hard copy was captured in our Claims Database;

c)    Proof of Claim forms were reviewed, along with any documentation or electronic transaction detail data submitted to ascertain whether the Claimant had, in fact, purchased, acquired, or held U.S. Dollar LIBOR Instruments during the Class Period.

15.    A greater quantity of e-filed transaction data submissions than anticipated was received for the Settlements.  Each e-filed transaction data submission was evaluated to determine whether it was in a usable format.  A substantial number of the submissions were not in the format requested by the e-filed transaction data template provided to Claimants and available on the Settlement Website.  For each of these submissions, Rust analyzed the transactional data, created custom specifications for the normalization and loading of the file, and loaded the transaction detail data to the Claimant's record.  This was a time-consuming process as Rust received 1,699 e-filed transactional data files representing 11,084,750 individual transactional records.

16.    Proof of Claim forms submitted through the Settlement Website were loaded into the Claims Database and assigned a unique Claim number.

17.    Many Claimants supplemented their Proof of Claim form submission with copies of amortization schedules or other documentation.  Rust completed a review of all documentation submitted with Proof of Claim form submissions or as supplemental filings were received to ensure relevant schedules were captured.  This data capture and review process was time consuming, as each schedule had to be reviewed to determine what information was required for completion of the Claim, and documents were in a variety of formats.

18.    Approximately 94% of Claims were submitted by institutional filers such as fund managers or trustees, or law firms.  In addition, Rust identified 13 commercial third party filing services ("Third-Party Filers") submitting Claims on behalf of multiple end-claimants.  A total of 12,225 Claims, representing 8,573,658 transactions, were submitted by these Third-Party Filers. Rust required authorizations signed by the Claimants in order for the Third-Party Filers to act on behalf of the Claimants and worked with Class Counsel to confirm the validity of those authorizations.  As Proof of Claim forms were processed, Rust evaluated the authorization received for each Claim identified as having been submitted by a Third-Party Filer.  In addition, Rust followed the requirements set out in the Court's April 11, 2018 Order addressing authorizations for Claims submitted by MCAG.[3]

---

[3] After the Supplemental Declaration of Jason Rabe Regarding the Claims Submitted by Managed Care Advisory Group to Share in OTC Settlements, dated July 24, 2018, two additional Claimants confirmed MCAG's authority to act on their behalf.  These confirmations were reviewed with Class Counsel and both Rust and Class Counsel found them to be acceptable.

19.    Once the Claims information had been captured from all sources, Rust submitted Claims data to Bates White[4] for validation of the Claims.  Bates White returned validated Claim information back to Rust which was applied to the Claims.

20.    From July through November 2019, Rust emailed and mailed notifications to all Claimants with information about their Claims, including any determinations that Claims or individual transactions within Claims were deficient or ineligible based on the information provided to date. The purpose of the notification, per 11(c)(iv) of the Settlement Agreement, was to provide information on how to make corrections or request reconsideration of the deficiency or ineligibility determination, as well as to ensure each Claimant had an opportunity to review the data captured for their Claim for accuracy and completeness.  The notifications stated in clear and conspicuous language that failure to appropriately respond to the notification with a curative or supplemental submission would result in rejection of the claim or transactions in question.

21.    A Settlement Validation website was established to assist Claimants with reviewing and responding to the notifications and included:

a)    A Guide/Instructions page and downloadable .pdf of same, which included instructions on how to access the processed Claim information and the deadlines and instructions for responding to deficiency or ineligibility determinations. A copy of the Guide/Instructions is attached as Exhibit A.

b)    A Message Code Legend page and downloadable .pdf of same, which included a list of Message Codes applied to Claims during validation, and a description of their meaning.  A copy of the Message Code Legend is attached as Exhibit B.

---

[4] Bates White has partnered with Rust to complete the validation and calculation of Claims.

8

c)      A Forms page, which included downloadable copies of attestations Claimants could use when providing responses to deficiency conditions within their Claims.  A copy of the Forms page is attached as Exhibit C.

d)      A summary of each Claim, accessible by entering the Claimant ID assigned to the Claimant along with the zip code associated with the Claim.  This summary provided quantities of transactions processed for the Claim, and a summary of the Message Codes applied to the Claim.

e)      Transactional data captured for the Claim, accessed the same way as the Claim summary information.  This transactional data file was in a format easily opened in Excel format, reflected all transactional data in the Claims Database for the Claim with deficient and ineligible message codes applicable to each transaction, and included columns for the Claimant to update when providing a responsive file to correct deficiencies or provide information about deficient or ineligible transactions.

f)      An upload feature, allowing Claimants to upload responsive information to Rust for processing.

22.   Rust processed responses to the July through November 2019 Claim notifications received through December 20, 2019.   Approximately 1,106 responses were received and processed.  Responses included completed attestation forms, documentation such as amortization schedules, updated or new transactional data, and written explanations.  Each response was reviewed and updates were made to the Claims Database, as appropriate based on the response. Questions from Claimants about how to respond to correct their Claim were received through email and the toll-free line and, as needed, were escalated to Class Counsel to determine appropriate responses.

23.     Rust transmitted to Bates White updated Claim information associated with each Claim for which a response had been received and processed, for re-validation.  Bates White provided Rust with final validation information for each Claim, which Rust loaded to the Claims Database.

24.     Claimants whose Claims have been determined after the deficiency and ineligibility process described above where still deficient or ineligible were rejected (in whole or in part, as the case may be) and were sent notification of such rejection with instructions for how to contest the rejection if they wish to do so.  Claimants had the ability to review the rejected transactions and reasons for rejection and provide any response to the notification through the Settlement Validation website.

25.     Following review of Claimants' responses to the deficiency and eligibility determinations to the July through November 2019 Claim notifications, the Claims Administrator sent an additional notification to all Claimants between December 2020 and January 2021. Information was made available to Claimants through the Settlement Validation website, including Claim summary and transactional data files.  The transactional data included error codes and columns for the Claimant to update when providing a responsive file to correct errors or provide additional information.   The Settlement Validation website contained the Guide and Instructions, attestation forms and an Error Code Legend, as well as the ability for Claimants to upload their responsive files.

26.     After the processing and validation of responses to rejection notifications was completed, 75% of Claims were found to have at least one rejected transaction.  A total of 4,347,505 transactions were marked as deleted (i.e., withdrawn) by Claimants in their responses to the deficiency and ineligibility notifications.

## CLAIMS RECOMMENDED FOR REJECTION

27.    A total of 13,277 Claims or 75% contain one or more rejected transactions and a total of 5,828,123 transactions or 82% of the total transactions not deleted by claimants were rejected.[5]  A total of 9,370 Claims or 53% were entirely rejected, either because they have no qualifying transactions or because of an error code impacting the entire Claim.

28.    Rust received a total of 1,493 notices in which the Claimant (or, with respect to institutional filers, either the Claimant or the individual beneficial account owner) voluntarily notified the Claims Administrator in writing of their desire to withdraw their previously filed claim.

29.    It is typical in class action settlement claims administration processes that some claims are accepted after the official claims submission deadlines; however, while it is common to accept some belated claims, the process cannot be perpetual and there must be a final cut-off date after which no additional Claims may be accepted for processing.  In consultation with Class Counsel, Rust recommended October 1, 2019 as a cutoff for the processing of new Proof of Claim form submissions, which Rust and Class Counsel agreed appropriately balanced the interests in allowing as many valid Claimants as possible to participate in the settlements while not unduly burdening the settlement fund or distribution process. Rust received no Proofs of Claim after

---

[5] Many of the rejected transactions were submitted by Third Party Filers. One Third Party Filer submitted a total of 6,864,006 transactions, of which 4,155,302 were deemed rejected. A second Third Party Filer submitted a total of 762,483 transactions, of which 267,432 were deemed rejected.

October 1, 2019. Rust and Class Counsel respectfully requests that this Court order that no Claim submitted after October 1, 2019 be accepted for any reason.[6]

### CLAIMS FILED ON BEHALF OF EXCLUDED PARTIES

30.    All Claims were carefully reviewed to confirm that they had not been submitted by or on behalf of any of the excluded parties, including, among others, all persons and/or entities that submitted a timely and valid request for exclusion from the Settlement Classes accepted by the Court ("Opt-Outs"), and the Defendants or their subsidiaries or affiliates.

31.    With respect to Opt-Outs, Rust reviewed all of the Claims to identify any Claim that was filed by or on behalf of a person or entity that submitted a valid and timely request for exclusion from the Settlement Class(es) accepted by the Court.  Two Claims were identified as being filed by Opt-Outs and the Claimants were informed in the notification process described in ¶ 21 and 25 above that their Claims would be rejected. To date, no Claimants identified as Opt-Outs have responded to the rejection of their Claim.

### DISPUTED CLAIMS

32.    Rust was informed by the Claimant identified as Claimant ID numbers 5000260 and 5000261 that the claimant contests Rust's determinations as to Claims 261 and 262, submitted on behalf of the claimant and on behalf of an estate for which the claimant acts as a trustee.   Rust had informed the claimant that these two claims were rejected because the claimed transactions were mortgages for which the claimant, as the borrower, did not receive interest linked to U.S. Dollar LIBOR. In response, the claimant contested these determinations by citing the Crime

---

[6] The proposed distribution can be easily recalculated to conform to the Court's order if the Court would prefer an earlier cutoff date for the processing and honoring of belated (but otherwise valid) Claims; however, extending the cutoff beyond October 1, 2019 would cause numerous processes to have to be repeated and would delay distribution as well as substantially increase administration costs that would be borne by the Settlement Classes.

Victims Right Act, 18 U.S.C. § 3771, but did not provide any information that would change the determination that the claimant's transactions are not eligible for distribution from the Settlements. After Rust reiterated the reason for the rejection of these claims by email, the claimant informed our office that this explanation was not satisfactory. This correspondence between the claimant and Rust, with identifying information redacted, is attached as Exhibit D.

### CLAIMS RECOMMENDED FOR ACCEPTANCE, INCLUDING LATE SUBMITTED CLAIMS

33.   Rust has been informed by Class Counsel of the amounts available for distribution from each of the Settlements (that is, the amount remaining after deducting fees and costs, and with the addition of interest earned while in escrow). Each Authorized Claimant will receive a *pro rata* share from based upon the calculation of the Authorized Claimant's overall notional stake and the ratio of the total overall notional stake of all Authorized Claimants, as calculated by Bates White.

34.   Among the 41,067 Claims received to date, 8,338 Claims—including late Claims received through October 1, 2019—are fully or partially valid.  The breakdown of fully or partially valid Claims by Settlement is as follows:

|  | Barclays | Citi | Deutsche Bank | HSBC |
|---|---|---|---|---|
| Claims Received by Claim Submission Deadline | 7,169 | 6,470 | 5,904 | 5,905 |
| Claims Submitted After Claim Submission Deadline but prior to October 1, 2019 | 268 | 245 | 223 | 224 |
| Total Claims | 7,437 | 6,715 | 6,127 | 6,129 |

35.   The total number of Authorized Claimants submitting timely and valid Claims, including Claimants that are anticipated to not meet the *de minimis* distribution threshold of $10.00, is 1,967.

36.   I respectfully submit that the number of late claims here (*i.e.*, those received after the settlement claims submission deadlines but before the proposed cutoff date of October 1, 2019) is not unusual, on a percentage basis, of the number typically seen in antitrust class actions.  Rust knows of no delay that would occur in the processing or distribution of the available settlement funds from the acceptance of these Claims and recommends that they be treated as timely.

## QUALITY ASSURANCE PROCEDURES

37.   Quality Assurance ("QA") review is an important part of Rust's procedures in administering all settlements. Throughout the processing of Claims and responses to notifications, Rust's QA was ongoing and included:

a)   ensuring accurate data capture of information on Claimants and transactional data from Proof of Claim forms and other submitted documentation, such as amortization schedules;

b)   ensuring e-filed transaction data submissions were processed and loaded to the Claims Database;

c)   confirming each Claim was applied to all applicable Settlements for which the Claimant submitted a Proof of Claim form;

d)   ensuring Claims data uploaded through the validation website was loaded to the Claims Database;

e)      confirming appropriate authorization documentation was received where required;

f)      confirming each Claim containing one or more deficient or ineligible conditions was sent a notification outlining such condition(s);

g)      ensuring the processes to send data to and receive data from Bates White were complete and all Claims were accounted for; and

h)      reviewing all settlement documents to ensure that the claims administration process was in compliance with the Settlement Agreement, Plan of Distribution, and all Court orders.

38.    Further, in addition to the steps described in ¶ 37 above, throughout the entire claims administration process, a series of programmatic reports and audits were continuously generated and reviewed to check the consistency of the data submitted and processed.

### *PRO RATA* DISTRIBUTION OF THE DISTRIBUTION AMOUNTS AMONG AUTHORIZED CLAIMANTS

39.    Rust will identify and send notifications to those Authorized Claimants whose payment amount is less than or equal to $10, pursuant to the Court-approved Plan of Distribution, which states that "In order to avoid paying claims in situations where the cost of processing the claim exceeds the payment made, your Claim is not eligible for compensation under the court-Approved Plan of Distribution because the total payment to you would be $10 or less."

40.    Rust will prepare payments and payments for the distribution to all other Authorized Claimants whose *pro rata* share of results in a distribution of more than $10, and mail the checks by prepaid first class mail.

41.    For Claims submitted by Third Party Filers for which a distribution is to be made to the Authorized Claimant, the check will be made payable to the Authorized Claimant and mailed to the address on the Proof of Claim form, or the address updated by the Authorized Claimant since the submission of such Proof of Claim form.  Wire transfers may be used in place of checks for some claims submitted by Third Party Filers.

42.    Rust expects that not all checks distributed to Authorized Claimants will be cashed promptly.  In order to encourage Authorized Claimants to promptly cash their distribution checks and to avoid or reduce future expenses relating to unpaid distributions, all the distribution checks will bear a notation that the check will be void after 90 days.

## RUST'S FEES AND EXPENSES

43.    Rust respectfully requests payment of administration costs incurred in providing direct notice to certain defendants' counterparties and administering the Settlements in the amount of $1,488,702.62 for the Barclays Settlement, $1,267,350.95 for the Citi Settlement, $406,159.58 for the Deutsche Bank Settlement, and $406,159.58 for the HSBC Settlement.  Included within this total, is an estimate of the costs that will necessarily be incurred to complete the distribution of checks and respond to Claimants.

## CONCLUSION

44.    For the foregoing reasons, it is respectfully requested that this Court approve Rust's determinations accepting and rejecting Claims in the Settlements as set forth herein, authorize the distribution of checks to Authorized Claimants, and approve Rust's fees and expenses.


I declare under penalty of perjury that the foregoing statements are true and correct.

Executed this 7ᵗʰ day of July , 2021 in Minneapolis, Minnesota.

Amy L Lake
_____
Amy L. Lake