# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | ) ) ) ) )  MDL No. 2262 ) ) Master File No. 1:11-md-2262-NRB |
| THIS DOCUMENT RELATES TO: | ) ) |
| THE BERKSHIRE BANK, et al., | ) ECF Case ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| BANK OF AMERICA CORPORATION, et al. | ) Civil Action No. 12-CV-5723-NRB ) |
| Defendants. | ) ) ) |

**LENDER PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO (1) PRELIMINARILY APPROVE SETTLEMENTS WITH CREDIT SUISSE GROUP AG AND MUFG BANK, LTD. F/K/A THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., (2) CONDITIONALLY CERTIFY SETTLEMENT CLASS, (3) APPOINT SETTLEMENT CLASS COUNSEL (4) APPROVAL OF NOTICE PROGRAM AND (5) PRELIMINARY APPROVAL OF PLAN OF DISTRIBUTION**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................................ 1

II.     SUMMARY OF THE LITIGATION AND SETTLEMENT ........................................... 1

III.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ........................... 1

        A.      The Standard For Preliminary Approval ...................................................... 1

        B.      The Settlements Are Presumed To Be Fair ................................................... 3

        C.      The Settlements Are Fair and Reasonable Under Relevant *Grinnell* Factors ........ 3

                1.      The Complexity, Expense, and Likely Duration of the Litigation ............. 4

                2.      The Reaction of the Class to the Settlement ................................. 5

                3.      The Stage of the Proceedings ................................................. 5

                4.      The Risks of Establishing Liability and Damages ...................... 6

                5.      The Risks of Maintaining the Class Action through Trial ......................... 7

                6.      The Ability of Settling Defendants to Withstand a Greater Judgment ....... 8

                7.      The Reasonableness of the Settlement in Light of the Best Possible
                        Recovery and the Attendant Risks of Litigation ......................................... 8

IV.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED ............................................. 10

        A.      Rule 23(a) Requirements ............................................................................. 11

                1.      Rule 23(a)(1)-(3) – Numerosity, Commonality, and Typicality .............. 11

                2.      Rule 23(a)(4) -- Adequacy ......................................................... 11

        B.      Rule 23(b)(3) Requirements ........................................................................ 12

                1.      Predominance and Superiority ................................................. 12

                2.      Plaintiffs' Counsel Should Be Appointed Counsel for the Lender Class . 14

V.      THE PROPOSED NOTICE PLAN SHOULD BE APPROVED ..................................... 15

        A.      Plaintiffs' Proposed Notice Program Is the Best Practicable Under the
                Circumstances ............................................................................................. 15

B.     The Individual Notice, the Summary Notice, and the Proof of Claim Form Comply with Rule 23(c)(2)(B) and Comport with Due Process .......................... 19

VI.    THE PLAN OF DISTRIBUTION SHOULD BE APPROVED ...................................... 22

VII.   PROPOSED TIMETABLE ............................................................................. 24

VIII.  CONCLUSION ..................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) .............................................................................10, 11, 13, 14

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   568 U.S. 455 (2013) ........................................................................................12, 13

*Ang v. Bimbo Bakeries USA, Inc.*,
   2020 U.S. Dist. LEXIS 74775 (N.D. Cal. Apr. 28, 2020) ......................................19

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   222 F.3d 52 (2d Cir. 2000) ...................................................................................11

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
   No. 07 Civ. 2207 (JGK), 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ...................5

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*,
   No. 85 CIV. 3048 (JMW), 1987 U.S. Dist. WL 7030 (S.D.N.Y. Feb. 13, 1987).....7

*Charron v. Pinnacle Grp. N.Y. LLC*,
   874 F. Supp. 2d 179 (S.D.N.Y. 2012) .....................................................................7

*Charron v. Wiener*,
   731 F.3d 241 (2d Cir. 2013) .....................................................................................7

*City of Detroit v. Grinnell Corp*,
   495 F.2d 448 (2d Cir. 1974) ...................................................................... *passim*

*Cohen v. J.P. Morgan Chase & Co.*,
   262 F.R.D. 153 (E.D.N.Y. 2009) ...........................................................................10

*Czuchaj v. Conair Corp.*,
   2016 U.S. Dist. LEXIS 183669 (S.D. Cal. May 13, 2016) ...................................18

*Fleisher v. Phoenix Life Ins. Co.*,
   No. 11-cv-8405 (CM), 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept. 9,
   2015) .......................................................................................................................8

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) .......................................................................................4

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...............................................................................13

*Hilsley v. Ocean Spray Cranberries, Inc.*,
   2019 U.S. Dist. LEXIS 18477 (S.D. Cal. Feb. 5, 2019) ........................................19

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*,
   271 F. App'x 41 (2d Cir. 2008) ...........................................................................15

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984) .........................................................................9

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   689 F.3d 229 (2d Cir. 2012)............................................................................13, 14

*In re AOL Time Warner, Inc.*,
   No. 02 Civ. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr 6, 2006) ..............................5, 6, 9

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)........................................................................3

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012)........................................................................9

*In re CertainTeed Corp. Roofing Shingle Prods. Liability Litig.*,
   269 F.R.D. 468 (E.D. Pa. 2010)..............................................................................22

*In re Chambers Dev. Sec. Litig.*,
   912 F. Supp. 822 (W.D. Pa. 1995)............................................................................9

*In re Credit Default Swaps Antitrust Litig.*,
   No. 13MD2476 (DLC), 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016)..................................22

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July
   27,2007) .......................................................................................................23

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .............................................................................2

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
   142 F.R.D. 588 (S.D.N.Y. 1992) ...........................................................................24

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) (Buchwald, J).......................................................2, 24

*In re IPO Sec. Litig.*,
   226 F.R.D. 186 (S.D.N.Y. 2005) ...........................................................................10

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  Nos. 11 MDL 2262 (NRB), 2014 U.S. Dist. WL 6851096 (S.D.N.Y. Dec. 2,
  2014) ............................................................................................................................2

*In re Libor-Based Financial*,
  No. 18-718, ECF No. 64 (2d Cir. filed July 10, 2018) ...........................................7

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...................................................................15

*In re Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) ................................................................................9

*In re NASDAQ Market-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) .......................................................................2, 13

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) .....................................................................6, 7, 9

*In re PaineWebber Ltd. P'ships. Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ..............................................................................3

*In re Sinus Buster Prods. Consumer Litig.*,
  No. 12-CV-2429 (ADS) (AKT), 2014 U.S. Dist. WL 5819921 (E.D.N.Y. Nov.
  10, 2014) ...................................................................................................................8

*In re Stock Exchs. Options Trading Antitrust Litig.*,
  No. 99 Civ. 0962 (RCC), 2005 WL 1635158 (S.D.N.Y. July 8, 2005).....................1

*In re Sumitomo Copper Litig.*,
  74 F. Supp. 2d 393 (S.D.N.Y. 1999)........................................................................4

*In re Top Tankers, Inc. Sec. Litig.*,
  No. 06 CIV. 13761 (CM), 2008 U.S. Dist. WL 2944620 (S.D.N.Y. July 31,
  2008) .........................................................................................................................6

*In re Vitamin C Antitrust Litig.*,
  No. 06 MDL. 1738, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012)...........................4

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985)...........................................................................7

*Jermyn v. Best Buy Stores, L.P.*,
  No. 08 CIV. 00214 CM, 2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010) ..............15, 18

*Kaufman v. American Express Travel Related Servs.*
  Co., 264 F.R.D. (N.D. Ill. 2009) ............................................................................18

*Long v. HSBC USA Inc.*,
No. 14 CIV. 6233 HBP, 2015 WL 5444651 (S.D.N.Y. Sept. 11, 2015) ...............................15

*Maywalt v. Parker & Parsley Petroleum Co.*,
67 F.3d 1072 (2d Cir. 1995)..........................................................................................8

*McReynolds v. Richards-Cantave*,
588 F.3d 790 (2d Cir. 2009)..........................................................................................2

*Menkes v. Stolt-Nielsen S.A.*,
270 F.R.D. 80 (D. Conn. 2010)......................................................................................2

*Mirfasihi v. Fleet Mortg. Corp.*,
356 F.3d 781 (7th Cir. 2004) .......................................................................................18

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972).........................................................................................8

*Park v. The Thomson Corp.*,
No. 05 Civ. 2931, 2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008) ..............................................6

*Precision Products v. Panalpina World Transp., Ltd.*,
08-cv-42 (JG) (VVP) 2013 U.S. Dist. LEXIS 121795 (E.D.N.Y. Aug. 27,
2013) ................................................................................................................23

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
237 F.R.D. 26 (E.D.N.Y. 2006) ......................................................................................5

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015)....................................................................................12, 13

*Schneider v. Chipotle Mexican Grill, Inc.*,
2020 U.S. Dist. LEXIS 16365 (N.D. Cal. Jan. 31, 2020) .....................................................17, 18

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003)................................................................................4

*Sykes v. Mel. S. Harris & Assocs., LLC*,
No. 09 Civ. 8486 (DC), 2016 U.S. Dist. LEXIS 74566 (S.D.N.Y. May 24,
2016) ................................................................................................................22

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
257 F.3d 256 (2d Cir. 2001)..........................................................................................4

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005).................................................................................2, 5, 9, 19

*Weinberger v. Kendrick*,
   698 F.2d (2d Cir. 1982)................................................................................................19

*Xuechen Yang v. Focus Media Holding Ltd.*,
   No. 11-civ-9051 (CM) (GWG), 2014 U.S. Dist. LEXIS 126738 (S.D.N.Y.
   Sept. 4, 2014) ......................................................................................................23

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................... *passim*

## I.  INTRODUCTION

Plaintiffs The Berkshire Bank ("Berkshire") and The Government Development Bank of Puerto Rico ("GDB" and together with Berkshire, the "Lender Plaintiffs" or "Plaintiffs") for themselves and on behalf of the settlement class described below, respectfully submit this memorandum in support of their motion for preliminary approval of the proposed settlements in the above-captioned litigation (the "Lender Action") with Credit Suisse Group AG ("Credit Suisse") and MUFG Bank, Ltd. f/k/a The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("MUFG," together with Credit Suisse, the "Settling Defendants").[1] Pursuant to the Settlements, Credit Suisse has agreed to pay $380,000 and MUFG  has agreed to pay $380,000.  The Settlements, which were negotiated at arm's length by experienced counsel, are reasonable and appropriate, and are deserving of preliminary approval by the Court.

## II.  SUMMARY OF THE LITIGATION AND SETTLEMENT

Plaintiffs refer the Court to the accompanying Lieberman Declaration concerning the history of the litigation, the claims asserted, and the negotiations of the settlement.

## III.  THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.  The Standard For Preliminary Approval

"Preliminary approval is generally the first step in a two-step process before a class action settlement is approved." *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 Civ. 0962 (RCC), 2005 WL 1635158, at *4 (S.D.N.Y. July 8, 2005). "In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice" and "[o]nce preliminary approval is bestowed, the second step of the process ensues: notice is given to the class

---

[1] Unless otherwise defined herein, all capitalized terms used herein have the meanings set forth and defined in the Settlement Agreements.  True and correct copies of the Settlement Agreements are attached as Exhibit 1 (Credit Suisse) and Exhibit 2 (MUFG) to the accompanying Declaration of Jeremy A. Lieberman ("Lieberman Decl.").

members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *NASDAQ I*, 176 F.R.D. at 102.

In determining whether to grant preliminary approval to a settlement, the court should consider both the "negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009). Preliminary approval "is appropriate where [the settlement] is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies . . . , and where the settlement appears to fall within the range of possible approval." *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010). As this Court has recognized, "[p]reliminary approval is not tantamount to a finding that [a proposed] settlement is fair and reasonable. . . . Instead, at this stage, we need only decide whether the terms of the Proposed Settlement are at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, Nos. 11 MDL 2262 (NRB), 2014 U.S. Dist. WL 6851096, at *2 (S.D.N.Y. Dec. 2, 2014) (internal quotation marks and citation omitted). Moreover, "not every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (internal quotation marks and citation omitted). Further, in reviewing proposed settlement, courts should recognize the "strong judicial policy in favor of settlements." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012) (Buchwald, J) (citation omitted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005).

The Settlements meet this standard and satisfies factors identified by this Court (*see LIBOR*, 2014 WL 6851096, at *2), and should therefore be preliminarily approved.

**B.   The Settlements Are Presumed To Be Fair**

A proposed settlement that is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigations" enjoys a "presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000). In such circumstances, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. P'ships. Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997).

This Court previously found that Plaintiffs' Counsel has the requisite qualifications and experience in class actions to lead this litigation on behalf of the proposed Lender Class by appointing Plaintiffs' Counsel interim class counsel (ECF No. 692) and appointing Plaintiffs' Counsel as counsel for the settlement class for prior settlements. *See, e.g.* ECF No. 2687. Additionally, Plaintiffs' Counsel was well-informed of all material facts, and the negotiations were non-collusive. *See* Lieberman Decl. ¶¶ 44-50. The Settlements were reached through arm's length negotiation over an extended period of time, which included multiple efforts and negotiations. *Id*. The terms of the Settlements were negotiated through meetings and discussions over the course of several months. *Id*. During this period of time, there were numerous telephone calls, emails and other communications regarding the settlement terms. In short, the Settlements were the product of a thorough, arm's length process, and as such, enjoy a presumption of fairness.

**C.   The Settlements Are Fair and Reasonable Under Relevant *Grinnell* Factors**

The Settlements return substantial cash payments and non-cash benefits that improve the return to Lender Class Members in addition to the $31,425,000 recovered through previous

settlements. In addition, as set forth below, the *Grinnell* factors strongly merit preliminary approval of the Settlement.[2]

### 1.   The Complexity, Expense, and Likely Duration of the Litigation

It is well recognized that claims involving collusion and price manipulation among industry participants are "complicated, lengthy, and bitterly fought, as well as costly." *In re Vitamin C Antitrust Litig.*, No. 06 MDL. 1738, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012) (discussing federal antitrust cases) (citations and internal quotes omitted); *see also In re Sumitomo Copper Litig.,* 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) ("[G]enerally, price manipulation cases are notoriously risky and are more difficult and risky than securities fraud cases[.]"); *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual complexities of antitrust cases").  Lender Plaintiffs' action is no exception. The complexity and the hard-fought battles in this Action involving fraud and civil conspiracy to manipulate LIBOR is reflected in the numerous fully briefed motions and opinions in the case since the original complaint was filed on July 25, 2012. *See* Lieberman Decl. ¶¶ 7-43. This case provides, as the Court has recognized in preliminarily approving a partial settlement by the Exchange-Based plaintiffs, a stark example of complex and protracted litigation. *See LIBOR*, 2014 WL 6851096, at *2 (plaintiffs "must prove a factually complex case with genuine legal uncertainties").

In the absence of the Settlements, the litigation of this complex case would likely consume many more years of the Court's resources. *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,

---

[2] The "*Grinnell* factors" are used in this circuit to evaluate whether a proposed class action settlement is substantively fair, reasonable and adequate *for purposes of final approval* include: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *City of Detroit v. Grinnell Corp*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000).

258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("[t]he potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class") (citation omitted). The Settlements allow Plaintiffs to avoid the significant expense of continued and protracted litigation against the Settling Defendants. Even if Plaintiffs succeeded at every stage through summary judgment, they would then face the uncertainty of a jury trial, which would almost certainly be followed by lengthy and expensive appeals. *Fleisher v. Phoenix Life Ins. Co.*, No. 11 Civ. 8405 (CM), No. 11-cv-8405 (CM), 2015 U.S. Dist. LEXIS 121574, *32 (S.D.N.Y. Sept. 9, 2015) (citing *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 65 (S.D.N.Y. 1993)). Thus, the first *Grinnell* factor favors preliminary approval of the proposed Settlement.

### 2. The Reaction of the Class to the Settlement

It is premature to consider the Class's reaction to the Settlement, since notice has not yet been disseminated. *See Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006). Each of the Lender Plaintiffs approves the Settlements. Should any objections from Settlement Class members be received prior to the fairness hearing, Lender Plaintiffs' Counsel will timely address those concerns in connection with the final approval process.

### 3. The Stage of the Proceedings

The third *Grinnell* factor, which looks to the "stage of the proceedings and the amount of discovery completed," *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 117 (2d Cir. 2005), focuses on whether the plaintiffs "obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal." *Bellifemine v. Sanofi-Aventis U.S. LLC,* No. 07 Civ. 2207 (JGK), 2010 WL 3119374, at *3 (S.D.N.Y. Aug. 6, 2010). The lack of formal discovery does not preclude approval of a settlement. *In re AOL Time Warner, Inc.*, No. 02 Civ. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr 6, 2006). Rather, it is

enough for the Parties to have "engaged in sufficient investigation of the facts to enable the Court to 'intelligently make…an appraisal' of the Settlement." *Id.*

Here, the depth of understanding about Plaintiffs' claims lends strong support to preliminary approval. Since initiating this litigation in July 2012, Lender Plaintiffs' Counsel has gained a substantial understanding of the case. Plaintiffs have actively litigated their claims for over nine years. Lieberman Decl. ¶¶ 7-43. Plaintiffs have responded to motions to dismiss and other dispositive motions, in addition to developing theories of liability unique to the class. *E.g., id.* Lender Plaintiffs' Counsel have reviewed millions of pages of documents, worked extensively with industry experts, and worked with economists to analyze transactional data. *Id.* ¶ 51. The information gained through the hard-fought litigation has provided Lender Plaintiffs' Counsel with a comprehensive understanding of the relative strengths and weaknesses of Lender Plaintiffs' claims and to negotiate a settlement which provide excellent relief for the class. Thus, this factor supports preliminary approval of the proposed Settlement.

### 4. The Risks of Establishing Liability and Damages

"In assessing the Settlement, the Court should balance the benefits afforded the Class, including the *immediacy* and *certainty* of a recovery, against the continuing risks of litigation." *In re Top Tankers, Inc. Sec. Litig.*, No. 06 CIV. 13761 (CM), 2008 U.S. Dist. WL 2944620, at *4 (S.D.N.Y. July 31, 2008) (emphasis in original). In this case, the risks of establishing liability and damages are significant and are amplified by the complexity of the LIBOR market. "The complexity of Plaintiff's claims *ipso facto* creates uncertainty . . . . A trial on these issues would likely be confusing to a jury." *Park v. The Thomson Corp.*, No. 05 Civ. 2931, 2008 WL 4684232, at *4 (S.D.N.Y. Oct. 22, 2008); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998) ("*NASDAQ II*") (noting difficulty and uncertainty of proving liability to a jury, "especially in a case of this complexity and magnitude"). Furthermore, Defendants are

wealthy global financial institutions that are represented by some of the best law firms in the United States and can afford to litigate this case indefinitely. Had Settling Defendants not agreed to settle, they were prepared, and had the wherewithal, to vigorously contest liability. "Establishing otherwise [would] require considerable additional pre-trial effort and a lengthy trial, the outcome of which is uncertain." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 199 (S.D.N.Y. 2012), *aff'd sub nom.*, *Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013).

Even if liability were established, Plaintiffs would face the difficulties and complexities inherent in proving damages to the jury. Plaintiffs' theory of damages would be hotly contested at trial, and there is no doubt that, at trial, the issue would inevitably involve a "battle of the experts." *NASDAQ II*, 187 F.R.D. at 476. "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985). Thus, there is a substantial risk that a jury might accept one or more of Defendants' damage arguments, or award far less than the total settlement amount, or nothing at all.

In sum, "[t]here is a substantial risk that the plaintiff might not be able to establish liability at all and, even assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away." *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 CIV. 3048 (JMW), 1987 U.S. Dist. WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987). Accordingly, this factor weighs in favor of preliminary approval.

### 5.    The Risks of Maintaining the Class Action through Trial

On February 28, 2018, the Court denied Berkshire's motion for class certification (ECF No. 715) and on July 10, 2018, the Second Circuit denied Berkshire's petition for interlocutory appeal pursuant to Fed. R. Civ. P. 23(f). *In re Libor-Based Financial,* No. 18-718, ECF No. 64

(2d Cir. filed July 10, 2018). As a result, the only remaining avenue for reversal of the denial of class certification is an appeal taken after the entry of final judgment on the merits. Thus, the risks associated with class certification weigh in favor of approving the Settlement.

### 6.   The Ability of Settling Defendants to Withstand a Greater Judgment

While it is likely that Settling Defendants could withstand a greater judgment than the settlement amounts this fact should not weigh against granting preliminary approval. Measured against the other *Grinnell* factors, "[t]he mere fact that a defendant 'is able to pay more than it offers in settlement does not, standing alone, indicate the settlement is unreasonable or inadequate." *Fleisher v. Phoenix Life Ins. Co.*, 2015 U.S. Dist. LEXIS 121574, *33 (quoting *Global Crossing*, 225 F.R.D. at 460); *see also In re Sinus Buster Prods. Consumer Litig.*, No. 12-CV-2429 (ADS) (AKT), 2014 U.S. Dist. WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) ("Courts have recognized that the defendant's ability to pay is much less important than the other factors, especially where the other *Grinnell* factors weigh heavily in favor of settlement approval.") (citation omitted).

### 7.   The Reasonableness of the Settlement in Light of the Best Possible   Recovery and the Attendant Risks of Litigation

Fundamental to a determination of whether a settlement is fair, reasonable, and adequate "'is the need to compare the terms of the compromise with the *likely* rewards of litigation.'" *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) (emphasis added and citation omitted). The determination of a reasonable settlement is not susceptible to a simple mathematical equation yielding a particular sum. Rather, "in any case there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). In applying these

factors, "[d]ollar amounts [of class action settlements] are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984).

Continuing to litigate against the Settling Defendants would be time-consuming and expensive, and would involve complex legal and factual issues and vigorously contested motion practice, including summary judgment with no certainty of success. *See Wal-Mart*, 396 F.3d at 122. This is particularly true given that this Court has denied class certification. Thus, unless Plaintiffs are successful in appealing the Court's denial of class certification after the entry of final judgment on the merits, settlements are likely the only way that Lender Class Members will achieve any recovery through the Lender Action. Continued litigation would also involve extensive expert testimony with regard to damages. *See NASDAQ II,* 187 F.R.D. at 476. Additionally, even after trial is concluded, there could potentially be one or more lengthy appeals. *See In re Michael Milken & Assocs.*, 150 F.R.D. at 65. Given this uncertainty, "[a] very large bird in the hand of this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995). The risks of these remaining stages of a successful case are arguably dispositive for these *Grinnell* factors. *See In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012) ("[T]he propriety of a given settlement amount is a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery (or reduced recovery).").

The certainty of a recovery now, compared to an uncertain recovery, if at all, years from now, weighs heavily in favor of preliminary approval. *See AOL Time Warner*, 2006 WL 903236,

at *13 ("[T]he benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery."). In comparison to the risks of continuing litigation, the Settlements provide Plaintiffs and the Class substantial benefits, including significant cash compensation, in an aggregate amount of $760,000, reflecting the payment of $380,000 from Credit Suisse, and $380,000 from MUFG. The Settlements likewise offers cooperation, which will assist Plaintiffs in their continued litigation against the Non-Settling Defendants. Agreement ¶14. *See, e.g., In re IPO Sec. Litig.*, 226 F.R.D. 186, 198-99 (S.D.N.Y. 2005) (approving settlement largely on the basis of intangible benefits, including cooperating against non-settling defendants). Plaintiffs have also negotiated for and obtained another benefit here: there shall be no reversion to the Settling Defendants of unclaimed funds. *See* Agreement at ¶ 11(j).

## IV.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

In accordance with the Settlement Agreements, Plaintiffs respectfully request that the Court certify the following class for settlement purposes:

> All lending institutions headquartered in the United States, including its fifty (50) states and United States territories, that originated loans, held loans, held interests in loans, owned loans, owned interests in loans, purchased loans, purchased interests in loans, sold loans, or sold interests in loans with interest rates based upon U.S. Dollar LIBOR, which rates adjusted at any time between August 1, 2007 and May 31, 2010 (the "Class Period").

Certification of a settlement class is proper where the proposed settlement class satisfies the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). When considering certification of a settlement class, "courts must take a liberal rather than restrictive approach." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009). As this Court previously held, in certifying the settlement class for the prior settlements (ECF No. 2635, at 5), the proposed settlement class satisfies the requirements for certification and should be certified for the reasons explained below.

### A.  Rule 23(a) Requirements

The Supreme Court has explained the Rule 23(a) factors as follows:

Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical . . . of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").

*Amchem*, 521 U.S. at 613. The proposed settlement Class meets each of these requirements.

### 1.  Rule 23(a)(1)-(3) – Numerosity, Commonality, and Typicality

This Court previously found that the Lender Class satisfied the requirements of numerosity, commonality, and typicality. ECF No. 715, at 256-260. The Court adhered to these conclusions when approving the previous settlements in the Lender Action. ECF No. 2635, at 3.

### 2.  Rule 23(a)(4) -- Adequacy

The Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class" is met. The focus of a court's inquiry is "whether: 1) plaintiff's interests are antagonistic to other class members; and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) (citation omitted).

Here, both requirements are satisfied. All members of the Class have claims arising from the same alleged course of conduct and the same legal theories as Plaintiffs. Second, Plaintiffs have demonstrated their effective representation of the interests of the Class by selecting qualified counsel. Plaintiffs' Counsel is highly qualified and, as reflected herein, has vigorously pursued this litigation on behalf of the Plaintiffs and the putative Class. *See also* Lieberman Decl. ¶¶ 7-43, Ex. 3 (Firm Resume).

While the Court found in denying class certification that Berkshire was not an adequate class representative because of a potential conflict of interest that could create an appearance of impropriety (*see* ECF No. 715 at 269), the other proposed settlement class representative, GDB, has no potential conflict of interest. The board of directors of GDB (as well as the board of directors of Berkshire) approved the settlements. GDB is an adequate class representative and its participation also alleviates the Court's concerns about the "appearance of impropriety" with Berkshire. ECF No. 715 at 269 ("We do not suggest that [Berkshire's] representation would in fact be inadequate") (brackets in original).

In approving previous settlements in the Lender Action, the Court found that the adequacy of representation requirement was met because "any concerns regarding Berkshire Bank's inadequacy are addressed by the participation of an additional named plaintiff, the Government Development Bank for Puerto Rico (GDB), in the settlement process." ECF No. 2635, at 3.

## B.  Rule 23(b)(3) Requirements

The Settlement Class, as with the previous settlements, also satisfies the requirements of Rule 23(b)(3) that (i) common issues predominate over individual issues, and (ii) a class action is the superior method of adjudicating this controversy. Fed. R. Civ. P. 23(b)(3).

### 1.  Predominance and Superiority

Rule 23(b)(3)'s predominance requirement tests whether "a proposed class is sufficiently cohesive to warrant adjudication by representation." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013) (citation omitted). Predominance is satisfied where the questions that are capable of proof by generalized evidence "are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (citation omitted). Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Trust*

*Funds*, 568 U.S. at 469.  "What the rule does require is that common questions '*predominate* over any questions affecting only individual [class] members.'" *Id.* (emphasis and brackets in original) (quoting Fed. R. Civ. P. 23(b)(3)).   Where liability can be proved class-wide, it is "'well-established' Second Circuit precedent that 'the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification' under Rule 23(b)(3).'" *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (citation omitted)

In the settlement context, "the predominance inquiry will sometimes be easier to satisfy" because settlement eliminates manageability problems related to trial. *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012). The judicial economy at issue for a settlement class is obtained through the effectuation of the settlement itself, rather than through a trial of the class' claims. *See Amchem*, 521 U.S. at 620. For a settlement class, "certification pursuant to Rule 23(b)(3) . . . is appropriate 'whenever the actual interests of the parties can be served best by settling their differences in a single action.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting 7A Wright, Miller & Kane, *Federal Practice and Procedure,* §1777 (2d ed.1986)). Specifically, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.*; *see also In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996) (stating that predominance test standard is met "unless it is clear that individual issues will overwhelm the common questions and render the class action valueless").

The superiority prong requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The superiority requirement is applied in a more lenient fashion in the settlement context because the Court "need

not inquire whether the case, if tired, would present intractable management problems." *Amchem*, 521 U.S. at 620; *Am. Int'l Group*, 689 F.3d at 239, 240.

While the Court previously found, in denying class certification, that individual issues related to reliance, statutes of limitations, damages and variations in state law would predominate the common issues, and a class action was not superior because of "manageability problems" it held in certifying the prior settlement classes that "manageability concerns do not stand in the way of certifying a settlement class," the "individual issues of reliance and variations in state law weigh less heavily against predominance… and can be manageably addressed through the plan of distribution." ECF No. 2635, at 4-5.

### 2. Plaintiffs' Counsel Should Be Appointed Counsel for the Lender Class

Pursuant to Rule 23(g), a court that certifies a class must appoint class counsel, who is charged with fairly and adequately representing the interests of the class. *See* Fed. R. Civ. P. 23(g)(1). In determining class counsel, the Court must consider: (i) the work undertaken by counsel in identifying or investigating the potential claims; (ii) counsel's experience in handling class actions, other complex litigation, and similar claims; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. *Id.*

The Court has previously acknowledged the qualifications of proposed class counsel – Pomerantz LLP – when it appointed the firm as Interim Lead Counsel for the Lender class (ECF No. 692) and appointed the firm counsel for the settlement class in the prior settlements. ECF No. 2687, at 1. Plaintiffs' Counsel has actively litigated the claims in this Action, has committed massive time, resources, and skills to the representation of Plaintiffs, and at all times has acted in the best interests of the proposed Lender Class. Plaintiffs, accordingly, respectfully request that the Court preliminarily appoint Pomerantz LLP as class counsel for the Lender Class.

## V.   THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

### A.  Plaintiffs' Proposed Notice Program Is the Best Practicable Under the Circumstances

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Long v. HSBC USA Inc.*, No. 14 CIV. 6233 HBP, 2015 WL 5444651, at \*10 (S.D.N.Y. Sept. 11, 2015). However, neither individual nor actual notice to each class member is a required; rather, "class counsel [need only] act[] reasonably in selecting means likely to inform the persons affected." *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 00214 CM, 2010 WL 5187746, at \*3 (S.D.N.Y. Dec. 6, 2010) (citing *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988)); *In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008) ("It is clear that for due process to be satisfied, not every class member need receive actual notice[.]"). In evaluating the reasonableness of a proposed notice program, the "Court has virtually complete discretion." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 345 (E.D.N.Y. 2010).  "If the names and addresses of class members cannot be determined by reasonable efforts, notice by publication is sufficient to satisfy the requirements of the due process clause and Rule 23." *Jermyn*, 2010 WL 5187746, at \*3.

Here, Plaintiffs, in consultation with Claims Administrator JND Legal Administration ("JND" or "Claims Administrator"), propose a Notice Program designed to provide reasonable and practicable notice to Lender Class Members. *See* Declaration of Jennifer M. Keough ("Keough Decl."), ¶¶ 4-13.

First, the proposed individual Notice will be mailed (or emailed) to all entities that previously submitted valid proof of claim forms in connection with previous settlements or requested exclusion from previous settlements. *Id*. ¶ 5

Second, the proposed Summary Notice will be published once in *IBD Weekly* and *The Wall Street Journal*. *Id.*

Third, there will be a press release issued on PR Newswire. *Id.*

Fourth, the Summary Notice and press release will refer potential Lender Class Members to the previously established Lenders Website at www.LendersLIBORSettlements.com, which will contain the Notice and be designed to enable them to obtain complete information on the Settlement and the procedures to file a claim, as well as to view and download copies of relevant documents. *See id.* ¶¶ 6-9. Plaintiffs will also establish a toll-free number to a dedicated call center, where potential Lender Class Members will be able to clarify issues and get answers to questions they may have, or simply obtain additional information about the Settlement. *See id.* ¶ 9.

The notice program constitutes the "best notice that is practicable under the circumstances" as it provides for another round of publication of the Summary Notice and also provides "individual notice to all members who can be identified through reasonable effort" – those Settlement Class Members that previously submitted claims or requested exclusion. The Court approved a similar notice program for Lender Plaintiffs' most recent previous settlement. ECF No. 3218.

In connection with settlements with six other defendants (totaling $35 million) Plaintiffs, in consultation with the Claims Administrator, twice before conducted an extensive, multi-pronged notice program that provided widespread individual notice to potential Settlement Class Members. In each instance, copies of the Court approved individual notice and proof of claim form was sent to all entities on a list of over 250,000 entities, consisting of U.S. banks, savings institutions, credit unions, personal credit institutions, trusts and asset-backed securities entities. A summary notice was also published once in the *IBD Weekly*, *The Wall Street Journal* and *Barron's*, and the

summary notice publication program also targeted investment related websites: Yahoo! Finance, Investors.com, Barrons.com, Marketwatch.com and WSJ.com, as well as placements through the Targeted Digital Audience Network. There was also a press release issued on PR Newswire.

Mailing the individual Notice and Proof of Claim Form once again to the more than 250,000 entities that twice previously received notice of the other settlements would not be reasonable under the circumstances. First, the list is over-inclusive, consisting of all types of financial institutions that may or may not have held loans, which may or may not be tied to LIBOR, and which may or may not have adjusted during the Class Period. Second, the cost of mailing the Notice and Proof of Claim Form to all these entities would be approximately $200,000, which is 26% of the combined Settlement Funds of $760,000. Third, mailing another notice to these entities will not reach any new Settlement Class Members and is unlikely to result in any claims (or requests for exclusions or objections) from entities that did not previously submit claims (or requests for exclusion or objections).[3] Any Settlement Class Member that would want to participate in the current Settlement (or object or request exclusion) almost certainly submitted a claim (or objection or request for exclusion) for one of the previous (much larger) settlements. To ensure that individual notice is sent to "all members who can be identified through reasonable effort," the Claims Administrator will send the Notice to each entity that previously submitted a claim or request for exclusion. Moreover, a claim for this Settlement will be generated for all entities that previously submitted valid claims, unless they request exclusion from this Settlement. In short, sending individual notice to the 250,000 entities would not be reasonable under the circumstance. "Direct notice is inappropriate when it is overly broad or overly inclusive." *Schneider v. Chipotle Mexican Grill, Inc.*, 2020 U.S. Dist. LEXIS 16365, at *29 (N.D. Cal. Jan.

---

[3] There were no objections to any of the previous settlements.

31, 2020). *See Czuchaj v. Conair Corp*., 2016 U.S. Dist. LEXIS 183669, at *3 (S.D. Cal. May 13, 2016) ("'When the court certifies a nationwide class of persons whose addresses are unknown, notice by publication is reasonable.'") (citation omitted). Individual notice **will be** provided to every Settlement Class Member that can be identified from the prior settlements. In addition, the Summary Notice will be published in two nationally circulated publications, a press release will be issued over PR Newswire, and the Notice and other documents will be available on the Settlement Website. Courts have approved similar notice campaigns when effecting individual notice would require dissemination to an overly broad universe. *See, e.g., Mirfasihi v. Fleet Mortg. Corp*., 356 F.3d 781, 787 (7th Cir. 2004) (finding publication in a national newspaper and maintaining a settlement website sufficient notice where individual notice "was impossible here because Fleet has no record of those customers whose financial information it gave the telemarketers but who did not buy anything from the latter. (Those who did buy, the members of the telemarketing class, received individual notice.)"); *Jermyn*, 2010 WL 5187746, at *3 ("If the names and addresses of class members cannot be determined by reasonable efforts, notice by publication is sufficient to satisfy the requirements of the due process clause and Rule 23."); *Kaufman v. American Express Travel Related Servs*. Co., 264 F.R.D. 438, 446 (N.D. Ill. 2009) (finding notice via publication in a national newspaper and creation of a website sufficient where "individual notice to each Class member may well be impracticable or impossible, given that Gift Cards are likely given from the purchaser (about whom American Express might have data) to the end user"); *Schneider*, 2020 U.S. Dist. LEXIS 16365, at *30 (N.D. Cal. Jan. 31, 2020) (finding notice through a digital media campaign and publication in a national paper sufficient where no list of identifiable class members exists and "direct notice to 550,000 online purchasers would be improper under Rule 23, as those online purchasers are defined by a characteristic that on its face

does not establish membership in the certified (or settlement) class"); *Hilsley v. Ocean Spray Cranberries, Inc.*, 2019 U.S. Dist. LEXIS 18477, at *10 (S.D. Cal. Feb. 5, 2019) ("In light of the fact that there is no direct notice to class members by name and address, publication notice through the print publication and through the internet, Facebook ads and a banner on Ocean Spray's website, will satisfy due process and Rule 23."); *Ang v. Bimbo Bakeries USA, Inc.*, 2020 U.S. Dist. LEXIS 74775, at *19 (N.D. Cal. Apr. 28, 2020) ("The Court notes that the notice plan does not provide direct notice to consumers. However, the Court understands from the parties that direct notice would be infeasible under the circumstances given the volume of products at issue in this settlement."). The Court approved a similar notice program for Lender Plaintiffs' most recent previous settlement. ECF No. 3218.

### B. The Individual Notice, the Summary Notice, and the Proof of Claim Form Comply with Rule 23(c)(2)(B) and Comport with Due Process

A class-action settlement notice must (i) "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" and (ii) be written so as to "be understood by the average class member." *Wal-Mart Stores, Inc. v. Visa USA., Inc.,* 396 F.3d 96, 114-15 (2d Cir. 2005) (quoting *Weinberger v. Kendrick,* 698 F.2d 61, 70 (2d Cir. 1982)); *see also Vitamin C Antitrust Litig.*, 2012 U.S. Dist. LEXIS 152275, at *26 (E.D.N.Y. Oct. 23, 2012) ("There are no rigid rules to determine whether a settlement notice satisfies constitutional or Rule 23(e) requirements[.]") (quotation omitted)). Factors that courts typically consider include whether (i) there is "a succinct description of the substance of the action and the parties' positions"; (ii) "the parties, class counsel, and class representatives have been identified"; (iii) "the relief sought has been indicated"; (iv) "the risks of being a class member, including the risk of being bound by the judgment have been explained"; (v) "the procedures and deadlines for opting out have been clearly explained"; and (vi) "class

members have been informed of their right to appear in the action through counsel." *Vitamin C Antitrust Litig.*, 2012 U.S. Dist. LEXIS 152275, at \*26-\*27 (citing *In re Payment Interchange Fee & Merch. Discount Antitrust Litig.,* No. 05-MD-1720, 2008 U.S. Dist. LEXIS 1369 (E.D.N.Y. Jan. 8, 2008)).

The proposed Notice explains, in clear and concise language, the legal options and monetary benefits available to Lender Class Members under the Settlement. The Notice was drafted in coordination with JND, the Claims Administrator, which has substantial experience and expertise related to the form and content of notice and in implementing and managing the claims process in class action litigation such as the Lender Action. *See* Keough Decl., ¶¶ 10-13.

As discussed above, the Notice will be mailed directly to Lender Class Members that previously submitted valid claims, and the Summary Notice will be published in multiple nationally circulated publications, and through a press release. In JND's professional opinion, the Notice "is drafted using clear, simple, and straightforward language, and is presented in an easy to follow and understand format." Keough Decl., ¶ 10. JND designed the Notice Program "to reach the greatest practicable number of potential Lender Class Members and ensure that they will be exposed to, see, review and understand the Notice." *Id*. The Notice was drafted using a question and answer format that provides a simple step-by-step explanation of critical issues related to the litigation and the proposed Settlement, and sets out relevant information about the subject of the litigation, the Lender Class definition and the rights available to Lender Class Members. *Id*.

The proposed Summary Notice was likewise "drafted to be easy to read and understand, and provide potential Lender Class Members with basic information about the Lender Action and the proposed Settlement, and explain how to obtain additional information, including copies of the Notice and Proof of Claim Form." *Id*., ¶ 11, Ex. 3. The proposed Summary Notice directs Lender

Class Members to the Lender Website, where the full Notice and other documents related to the Settlement are available. These documents will include, for example, the Settlement Agreement, the operative Lender Second Amended Class Action Complaint, the Notice, the Plan of Distribution, and the Proof of Claim Form. *See Id.*

The Notice contains similar, but more comprehensive information than the Summary Notice. Specifically, the Notice describes in plain, easily understood language: (i) the nature of the Lender Action; (ii) the fraud and civil conspiracy claim pleaded; (iii) the scope of the releases set forth in each of the two separate Settlement Agreement; (iv) the definition of the Lender Class; (v) the monetary benefits available to the Lender Class Members, including the Plan of Distribution, Plaintiffs' Counsel's intention to move for an award of fees and expenses, and the maximum size of those awards (as well as the timing of that motion); (vi) the deadline and procedure for submitting a claim (and the necessity to submit a claim to receive benefits under the Settlement); (vii) the deadlines and procedures for excluding oneself from the Lender Class, objecting to the Settlement, and attending the fairness hearing; (viii) that Lender Class Members may, but need not, appear through their own counsel at the fairness hearing; (ix) the binding effect of the Judgments under Rule 23(c); and (x) the identity of Plaintiffs' Counsel. *See* Keough Decl., Ex. 1. The proposed Notice satisfies Federal Rule of Civil Procedure 23(c)(2)(B).[4]

The Proof of Claim Form itself is simple to understand and to submit. This simplicity should reasonably increase claims rates, while eliciting sufficient information for JND, in conjunction with Lender Plaintiffs' Counsel and their consulting experts, to assess Lender Class

---

[4] *See* Fed. R. Civ. P. 23(c)(2)(B) (requiring that the notice state in clear and concise language: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c).").

Members' claims and evaluate any potentially fraudulent or errant submissions. *See* Keough Decl.,

¶ 13, Ex. 2. The Proof of Claim Form has been designed to permit submission either electronically

or in paper, at the Lender Class Members' election. *See id.* This is sufficient. *See, e.g., In re*

*CertainTeed Corp. Roofing Shingle Prods. Liability Litig.*, 269 F.R.D. 468, 482-84 (E.D. Pa.

2010).

## VI.    THE PLAN OF DISTRIBUTION SHOULD BE APPROVED

Judge Cote recently set forth the standards for *final* approval of a plan of distribution:

A district court "has broad supervisory powers with respect to the ... allocation of
settlement funds." *In re Holocaust Victim Assets Litig.,* 424 F.3d 132, 146 (2d Cir.
2005) (citation omitted). The plan of allocation must "meet the standards by which the
settlement [is] scrutinized — namely, it must be fair and adequate." *Hart v. RCI Hosp.
Holdings, Inc.,* No. 09cv3043 (PAE), 2015 WL 5577713, at *12 (S.D.N.Y. Sept. 22,
2015) (quoting *In re WorldCom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319, 344 (S.D.N.Y.
2005)). A plan "need only have a reasonable, rational basis, particularly if
recommended by experienced and competent class counsel." *Id.* (quoting *In re
WorldCom, Inc.,* 388 F. Supp. 2d at 344). A principal goal of a plan of distribution must
be the equitable and timely distribution of a settlement fund without burdening the
process in a way that will unduly waste the fund.

"[I]n the case of a large class action the apportionment of a settlement can never be
tailored to the rights of each plaintiff with mathematical precision." *In re PaineWebber
Ltd. P'ships Litig.,* 171 F.R.D. 104, 133 (S.D.N.Y.), *aff'd In re PaineWebber Inc. Ltd.
P'ships Litig.,* 117 F.3d 721 (2d Cir. 1997). The challenge of precisely apportioning
damages to victims is often magnified in antitrust cases, as "damage issues in [antitrust]
cases are rarely susceptible of the kind of concrete, detailed proof of injury which is
available in other contexts." *J. Truett Payne Co., Inc. v. Chrysler Motors Corp.,* 451
U.S. 557, 565 (1981) (citation omitted); *see also In re Elec. Books Antitrust Litig.,* No.
11md2293 (DLC), 2014 WL 1282293, at *16 (S.D.N.Y. Mar. 28, 2014).

*In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2016 WL 2731524, at *9

(S.D.N.Y. Apr. 26, 2016). Here, the issue is not whether the proposed Plan of Distribution should

be finally approved. Rather, on this motion for preliminary approval of the Plan of Distribution,

the only question is whether the proposed Plan of Distribution is sufficiently reasonable to be *sent*

to Lender Class Members, for their review and comment, prior to the final approval hearing. *See,*

*e.g.*, *Sykes v. Mel. S. Harris & Assocs., LLC*, No. 09 Civ. 8486 (DC), 2016 U.S. Dist. LEXIS 74566

*20 (S.D.N.Y. May 24, 2016) (Court "found preliminarily that the Settlement, as reflected in the Settlement Agreements and Lead Plaintiffs' Allocation Plan, was sufficiently fair, reasonable and adequate to warrant providing notice to the Classes and scheduling a fairness hearing."). It clearly is.

Plaintiffs have retained Dr. Robert Webb and Fideres Partners LLP to develop a model of the "but-for" world, that is an estimate of what LIBOR would have been, in each relevant tenor, and for each day during the Class Period, absent its suppression as alleged in this case. There is a clear rational basis for this proposal. *E.g.*, *Precision Products v. Panalpina World Transp., Ltd.*, 08-cv-42 (JG) (VVP) 2013 U.S. Dist. LEXIS 121795, at *57-*58 (E.D.N.Y. Aug. 27, 2013).

Plaintiffs propose to distribute the Net Settlement Fund to eligible Lender Class Members *pro rata*. *See* Lieberman Decl., ¶ 7; Ex. 4. Courts routinely approve similar *pro-rata* distributions. *See*, *e.g.*, *Xuechen Yang v. Focus Media Holding Ltd.,* No. 11-civ-9051 (CM) (GWG), 2014 U.S. Dist. LEXIS 126738, *28 (S.D.N.Y. Sept. 4, 2014) ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach." (citation omitted)). Lender Plaintiffs' Counsel recommend the proposed Plan of Distribution as being in the best interests of the Lender Class. Lieberman Decl., ¶ 7. *See, e.g.*, *In re EVCI Career Colleges Holding Corp. Sec. Litig.,* No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *32 (S.D.N.Y. July 27,2007) ("in determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel").

The Plan proposes to distribute settlement monies in accordance with Plaintiffs' contentions that produced the Settlement, subject to reasonable legal risk adjustments based upon this Court's prior rulings (*i.e.* statute of limitations applicable to each state) and other strengths and weaknesses of the settled claims. Plans of distribution that reasonably seek to allocate the settlement funds based on the varying strengths and weaknesses of the claims and amounts of

impact, have long been found to be fair and reasonable. *See In re IMAX.*, 283 F.R.D. at 192 (citing *In re Lloyd's Am. Trust Fund Litig.,* No. 96 Civ. 1262(RWS), 2002 WL 31663577, at \*18 (S.D.N.Y. Nov. 26, 2002) ("[c]lass action settlement benefits may be allocated by counsel in any reasonable or rational manner because allocation formulas reflect the comparative strengths and values of different categories of the claim"); *see also In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 595-96 (S.D.N.Y. 1992) (plan of allocation that distributes greater part of settlement proceeds to those most injured is reasonable).

This Court approved this same Plan of Distribution in ruling on the previous settlements. *E.g.,* ECF No. 2687, at 3. This proposal has more than a rational basis. If any Lender Class Member disagrees, they will have the opportunity to set forth the basis of their concerns in advance of the final approval hearing, when the fairness and adequacy of the Plan of Distribution will be evaluated.

## VII.   PROPOSED TIMETABLE

The proposed order submitted with the Motion calls for the setting of certain dates and deadlines. Lender Plaintiffs' Counsel respectfully propose the following procedural schedule:

| | |
|---|---|
| Individual Notice mailed to potential Lender Class Members (Preliminary Approval Order, ¶ 13) | 21 calendar days after entry of the Preliminary Approval Order |
| Summary Notice published (Preliminary Approval Order, ¶ 20) | 28 calendar days after entry of the Preliminary Approval Order |
| Deadline for papers in support of Settlement, Attorneys' Fees and Expense Award (Preliminary Approval Order, ¶ 29) | 35 calendar days prior to the Fairness Hearing |
| Deadline to submit Proofs of Claims (Preliminary Approval Order, ¶ 22) | 35 calendar days prior to Fairness Hearing, and at least 88 calendar days after entry of the Preliminary Approval Order |
| Opt-Out Deadline (Preliminary Approval Order, ¶ 24) | 21 calendar days prior to Fairness Hearing |
| Objection Deadline (Preliminary Approval Order, ¶ 26) | 21 calendar days prior to the Fairness Hearing |

| Deadline for Plaintiffs to file response to objections and other reply papers in support of Settlement (Preliminary Approval Order, ¶ 30) | 14 calendar days before the Fairness Hearing |
|---|---|
| Fairness Hearing (Preliminary Approval Order, ¶ 6) | To be determined by the Court, approximately 123 calendar days after entry of the Preliminarily Approval Order |

## VIII.    CONCLUSION

For the foregoing reasons, the Court should grant the Motion.


Dated: January 14, 2022
New York, New York


**POMERANTZ LLP**
*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Michael J. Wernke
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
          mjwernke@pomlaw.com


**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com


*Interim Lead Counsel for the Lender Class*