IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | 1:11-md-02262-NRB |
| THIS DOCUMENT RELATES TO: | |
| *Bay Area Toll Auth. v. Bank of Am. Corp., et al.*, No. 14-cv-03094;<br><br>*Berkshire Bank v. Lloyds Banking Group plc, et al.*, No. 20-cv-1987;<br><br>*Fed. Deposit Ins. Corp. as Receiver for 38 Closed Banks v. Bank of Am. Corp.*, No. 14-cv-01757 | MEMORANDUM RE EFFECT OF APPEALS ON *LIBOR VIII* WITH RESPECT TO THE BBA<br><br>(REDACTED) |

## I.    INTRODUCTION.

In its Order dated July 1, 2022, this Court directed three sets of plaintiffs[1] to address the following question: "whether either of the recent decisions of the Second Circuit impact, in any way, this Court's rulings in LIBOR VIII[2] with respect to the BBA."[3]  ECF No. 3424.  As shown more fully below, the appellate decisions reversed *LIBOR VIII*'s finding that plaintiffs failed to allege facts sufficient to show the BBA was a member of the plausibly pled conspiracy and that the BBA's acts in furtherance of the conspiracy were jurisdictionally relevant.

---

[1] The plaintiff groups are a putative class of lenders ("Lender Plaintiffs"), the Bay Area Toll Authority ("BATA") and the Federal Deposit Insurance Corporation as Receiver for 20 Closed Banks ("FDIC-R").  The Court authorized each plaintiff group to file submissions of no more than ten pages each.  ECF No. 3424.  For the Court's convenience, the plaintiff groups have coordinated to file this submission.  Plaintiffs have limited this response to the "singular issue" presented in the question asked by the Court.  *Id.*

[2] *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2019 WL 1331830, at *15 (S.D.N.Y. Mar. 25, 2019).

[3] The BBA consists of three entities, the British Bankers' Association, and two corporations it created, BBA LIBOR Ltd., and BBA Enterprises Ltd.  *See Berkshire Bank v. Lloyds Banking Grp. plc*, 2022 WL 569819, at *1 (2d Cir. Feb. 25, 2022) (summary order) ("*Berkshire*").

In each appeal, the Second Circuit reversed the dismissal of the BBA because plaintiffs alleged facts sufficient to establish personal jurisdiction over all defendants, including the BBA, under a "conspiracy theory." *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 125 (2d Cir. 2021) ("*Schwab II*"); *Berkshire*, 2022 WL569819, at *3. Specifically, as to the BBA, the Second Circuit considered the allegations of the BBA's participation in the alleged conspiracy and overt acts in furtherance of the alleged conspiracy in the relevant forum. The Second Circuit concluded that these allegations were sufficient to establish personal jurisdiction over the BBA. *Berkshire*, at *3.

*LIBOR VIII* was among the orders appealed in *Berkshire* and the BBA specifically cited it, arguing that "the District Court correctly found in *LIBOR VIII* that the BBA was not plausibly alleged to have participated in the alleged LIBOR suppression conspiracy." Brief for Defendants-Appellees at 34 n.12, *Berkshire Bank v. Lloyds Banking Group plc, et al.,* 20-1987-cv (2nd Cir. Dec. 22, 2020) (Exhibit 1). The Second Circuit disagreed, finding that "'[b]y joining the conspiracy with the knowledge that overt acts in furtherance of the conspiracy had taken place in New York,'" all of the defendants in *Berkshire* were subject to personal jurisdiction pursuant to New York's long-arm statute. *Berkshire*, 2022 WL569819, at *4. *Berkshire* found certain communications and actions by the BBA were plausible overt acts, citing with approval allegations that "████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████" *Id.* at *3 (citing pages 22-27 of the Brief for Plaintiffs-Appellants); Brief for Plaintiffs-Appellants at 23, *Berkshire Bank v. Lloyds Banking Group plc, et al.,* 20-1987-cv (2nd Cir. Oct. 2, 2020) (Exhibit 2).

*Schwab II* is indisputably binding.  Although decided by summary order, *Berkshire* is equally binding in favor of all three plaintiff groups because they all alleged the same facts and theories of conspiracy with regard to the BBA.  Where, as here, "the Second Circuit has spoken directly to the issue," courts in this Circuit are "required to follow that decision" unless and until it is overruled in a precedential opinion by the Second Circuit, or a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit.  *See United States v. Smith*, 489 F. Supp. 3d 167, 172-73 (S.D.N.Y. 2015) (citations omitted).  As a result, the appeals reversed *LIBOR VIII*'s rulings with regard to the BBA.

## II.    RELEVANT HISTORY.

### A.    This Court's prior relevant rulings.

This Court has addressed motions to dismiss brought by the BBA on several occasions.  In *LIBOR IV*, No. 11 MDL 2262 NRB, 2015 WL6243526 (S.D.N.Y. Oct. 20, 2015), this Court granted the BBA's motions to dismiss for lack of personal jurisdiction.  In *LIBOR V*, No. 11 MDL 2262 (NRB), 2015 WL 6696407 (S.D.N.Y. Nov. 3, 2015), this Court applied *LIBOR IV* to the Lender Plaintiffs.  In *LIBOR VI*, No. 11 MDL 2262 (NRB), 2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016), this Court granted renewed motions to dismiss antitrust, fraud, and conspiracy claims for lack of personal jurisdiction because plaintiffs failed to allege facts sufficient to show any overt acts in furtherance of the plausibly pled conspiracy in the United States.  *Id.* at *3-4, *9.

In *LIBOR VIII*, this Court addressed motions for leave to amend filed by six different plaintiffs, including the FDIC-R and the Lender Plaintiffs, following the Second Circuit's issuance of *Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68 (2d Cir. 2018) ("*Schwab I*").  *Id.* at *5.  With regard to the BBA, *LIBOR VIII* held that Plaintiffs failed to allege facts sufficient to "cast the BBA as a member of the plausibly pled conspiracy" because "the BBA is not a financial institution whose main concern is to project financial soundness."  *Id.* at *15.  Thus, *LIBOR VIII*

held, "any act of assurance that the BBA allegedly took did not further the alleged conspiracy." *Id.*

      **B.**     ***Schwab II* reversed the dismissal of the BBA for federal antitrust claims because plaintiffs plausibly alleged the elements of conspiracy-based personal jurisdiction.**

*Schwab II* was an appeal from *LIBOR VI*'s jurisdictional and antitrust standing rulings. BATA was among the Plaintiffs-Appellants and the BBA was among the Defendants-Appellees. *Schwab II*, 22 F.4th at 110.  The Second Circuit restated the test for the conspiracy theory of personal jurisdiction as follows: a "plaintiff must allege that (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." *Id.* at 122.  The Second Circuit held that plaintiffs (including BATA) stated a *prima facie* case of personal jurisdiction, under the conspiracy theory of jurisdiction, against each Defendant. The opinion is unambiguous:

> The alleged conspiracy involved the manipulation of U.S.-Dollar LIBOR with co-conspirators who were based in the United States. With this backdrop, the alleged overt acts taken by co-conspirators in the United States to advance the conspiracy should certainly have been anticipated by Defendants, ***and that is enough to make out a prima facie case that each Defendant has the requisite minimum contacts with the nation***.

*Id.* at 125 (emphasis added); *see also id.* at 109 (defining "Defendants" as "the sixteen panel banks involved in setting LIBOR, about two dozen affiliated banking institutions, . . . and the British Bankers' Association ('BBA'), as well as affiliated organizations working with the BBA to set LIBOR").  *Schwab II* is dispositive on the question of whether BATA has pleaded conspiracy jurisdiction over the BBA.  The Second Circuit reversed and remanded for proceedings consistent with the *Schwab II* opinion.  The appellate court did not make any exceptions for the BBA nor limit conspiracy jurisdiction to only financial institution defendants.

C.     *Berkshire* reversed *LIBOR VIII* and held that the BBA's acts in furtherance
of the plausibly alleged conspiracy were jurisdictionally relevant.

The rulings in *LIBOR IV, V*, and *VI* resulted in dismissal of the BBA and other foreign

defendants for lack of personal jurisdiction.  The Lender Plaintiffs settled with the non-dismissed

domestic defendants, and on May 26, 2020, this Court entered a final judgment of dismissal as to

those defendants only.  ECF No. 3097.  The Lender Plaintiffs appealed as of right from orders

dismissing the BBA, the Final Judgment of Dismissal, and "all orders subsumed within the

foregoing to the extent adverse" to the Lender Plaintiffs.  ECF No. 3109.  The parties included

*LIBOR VIII* in the Special Appendix, which is reserved for the "orders, opinions, and judgments

being appealed."  2d Cir. Loc. R. 32.1(c).  *See* Special Appendix Table of Contents, *Berkshire*

*Bank v. Lloyds Banking Group plc, et al.,* 20-1987-cv (2nd Cir. Oct. 2, 2020) (Exhibit 3).

1.     The BBA's participation in the conspiracy was argued at length in the
briefing.

The BBA's participation in the conspiracy was squarely at issue in *Berkshire* because the

Lender Plaintiffs contended that the BBA's acts in New York, ████████████████████

were overt acts in furtherance of the conspiracy and therefore sufficient to establish personal

jurisdiction over all foreign defendants.  Ex. 2 at 7-8, 23, 29 (also citing allegations that ██████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████); Plaintiffs-Appellants'

Reply Brief at 7, *Berkshire Bank v. Lloyds Banking Group plc, et al.,* 20-1987-cv (2nd Cir. Jan.

26, 2021) (citing allegations that ██████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████) (Exhibit 4).

In its briefing, the BBA sought to distinguish itself from the panel banks and asked the Second Circuit to affirm the dismissal orders on the ground that the Lender Plaintiffs failed to plausibly allege that it participated in the conspiracy.  Ex. 1 at 16, 25 n.7, 34 n.12, 60 n.26.  The other foreign defendants argued that, for the same reason, the BBA's actions in New York were insufficient to qualify as overt acts.  *Id.* at 44 n.18.  The BBA invoked *LIBOR VIII* in arguing that the Second Circuit should affirm its dismissal:

> With respect to the BBA, Plaintiffs have not plausibly alleged that the BBA participated in the alleged conspiracy.  In *Gelboim II*,[4] this Court ruled that plaintiffs there had plausibly alleged an inter-bank conspiracy to suppress LIBOR.  The BBA is not a bank, and Plaintiffs do not allege that the BBA otherwise shared the conspiratorial motives they attribute to the Panel Banks.  Consistent with this Court's ruling and common sense, ***the District Court correctly found in LIBOR VIII that the BBA was not plausibly alleged to have participated in the alleged LIBOR suppression conspiracy***.  *Id.* at 34 n.12 (emphasis added) (citations omitted).

In the argument above, the BBA cited directly to *LIBOR VIII*'s holding that plaintiffs failed to allege that the BBA was a member of the plausibly pled conspiracy.  *Id.*

After deciding *Schwab II*, the Second Circuit invited letter briefs on the applicability to that decision on the issues presented in *Berkshire*.  In the letter briefing, the Lender Plaintiffs argued that *Schwab II* conclusively foreclosed the BBA's argument that Plaintiffs failed to plausibly allege its membership in the conspiracy.  Letter from Jeremy Lieberman dated Jan. 19, 2022 (Exhibit 5) at 5.  The Lender Plaintiffs pointed out that there were ample allegations which, taken as true, show that the BBA engaged in "purposeful behavior aimed at furthering the goals of the conspiracy."  *Id.* (citing *United States v. Diaz*, 176 F.3d 52, 97 (2d Cir. 1999)).  The Lender Plaintiffs argued that "[o]nce a conspiracy is shown to exist, the evidence sufficient to link another

---

[4] "*Gelboim II*" refers to *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759 (2d Cir. 2016).

defendant to it need not be overwhelming." *Id.* (citing *United States v. Amato*, 15 F.3d 230, 235 (2d Cir. 1994)). Nor do conspirators need to share the same objective, the Lender Plaintiffs argued, noting that "bookkeepers, accountants, and enforcers may all further the objective of a narcotics conspiracy without having a financial stake in distributing the drugs." *Id.* (citing *United States v. Ulbricht*, 31 F. Supp. 3d 540, 561 (S.D.N.Y. 2014)). The Lender Plaintiffs cited to *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2019 WL 1003111, at *2 (N.D. Ill. Feb. 28, 2019), where a district court denied motions to dismiss a company that provided data to conspiring sellers of meat because "[i]t is at least plausible (if not likely) that a person who facilitates a conspiracy knows about the conspiracy and engages in the facilitation knowing of its consequences." *Id.*

> **2.** **The Second Circuit found that the Lender Plaintiffs sufficiently alleged that the BBA participated in the conspiracy and committed overt acts in furtherance of the conspiracy in New York.**

In an opinion that applied and extended *Schwab II*, *Berkshire* reversed the dismissal orders against the foreign panel bank defendants and the BBA. In ruling, the Second Circuit first noted that the scope of the alleged conspiracy included foreign panel bank defendants and "a United Kingdom-based trade association and its subsidiaries." *Berkshire*, 2022 WL 569819, at *1. The court of appeals restated the test for conspiracy jurisdiction and found that it had already determined in prior opinions that plaintiffs in this MDL plausibly alleged all of the necessary elements to meet that test. *Id.* at *2-3.

In addition to the overt acts that were deemed dispositive in *Schwab II*, *Berkshire* found that the Lender Plaintiffs' pleadings and supporting evidence were "replete" with additional alleged communications and actions "that appear to involve purported conspiracy participants located in New York who took steps there to advance the conspiracy." *Id.* at *3. In support of this determination, the court cited pages 22-27 of the Lender Plaintiffs' Opening Brief. *Id.* Page 23 of that brief, states: ████████████████████████████████████████████████



,"⁵

Berkshire held that these and other allegations "establish plausible allegations of overt acts

**taken by co-conspirators** in New York in furtherance of the conspiracy" and were "sufficient to

vest the district court with personal jurisdiction over each Defendant-Appellee."  *Id.* (emphasis

added); *see also id.* at *4 ("'**By joining the conspiracy** with the knowledge that overt acts in

furtherance of the conspiracy had taken place in New York,' Defendants-Appellees purposely

availed themselves of the privilege of conducting activities within [New York].") (emphasis

added)).  The Second Circuit closed by finding that Defendants' remaining arguments, to the extent

not already addressed in the body of *Berkshire*, were "without merit."  *Id.* at *5.  The court reversed

and remanded for proceedings consistent with its order.⁶

---

⁵ Citations to "SA" are to the Sealed Appendix filed in *Berkshire*.  The cited pages, SA 116-119 and 122 ¶ 20, are excerpts from the Plaintiffs' Supplemental Statement of Additional Jurisdictional Facts filed in opposition to motions to dismiss in the briefing that led to *LIBOR VI*.  *See* ECF No. 1517.  Attached as Exhibit 6 are the relevant excerpts from the Sealed Appendix.

⁶ Defendants subsequently petitioned the United States Supreme Court for a writ of certiorari with respect to both *Schwab II* and *Berkshire*.  The writ was denied in the *Schwab II* action.  The Supreme Court asked the Lender Plaintiffs for a response to the petition for writ of cert in the *Berkshire* action.  That response is pending.

III.     **THE APPELLATE OPINIONS REVERSED *LIBOR VIII* WITH RESPECT TO THE BBA.**

A.      ***Berkshire* is binding in favor of the Lender Plaintiffs and against the BBA.**

As shown above, the Lender Plaintiffs appealed *LIBOR VIII*, the BBA relied on the reasoning in *LIBOR VIII* to seek dismissal, and the Second Circuit rejected the BBA's arguments. Section II.C, *supra*.  Pursuant to the Second Circuit's remand order, the BBA is a "live" defendant in the Lender Plaintiffs' action and *Berkshire* forecloses the BBA from disputing that the Lender Plaintiffs have alleged facts sufficient to show the BBA was a member of the conspiracy and that the BBA committed overt acts in New York in furtherance of the conspiracy.

The BBA contends that this Court may disregard *Berkshire*'s findings because *LIBOR VIII* was "not among this Court's rulings the Lender Plaintiffs identified in their Notice of Appeal." June 10, 2022 Letter from Richard Owens to the Court, ECF No. 3410 ("June 10 Owens Letter") at 3.  But, as shown above, that is demonstrably wrong.  *See* Section II.C, *supra*.  *LIBOR VIII* was subsumed in the final judgment, was included in the Special Appendix because it was one of the orders subject to appeal, and the BBA relied on it as a basis for affirming the dismissal orders.  *Id.*

Regardless, even if one assumed *arguendo* a counterfactual scenario in which *LIBOR VIII* was not among the orders from which the Lender Plaintiffs appealed (it was), the Second Circuit's determination that the Lender Plaintiffs have plausibly alleged facts showing that the BBA participated in the conspiracy and committed overt acts in New York would be dispositive.  The BBA chose to argue the issue as a basis for affirmance.  The Second Circuit nevertheless reversed. In these circumstances, *Berkshire* is unequivocal and binding.  *See Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 396 n.2 (2d Cir. 2018) ("[w]e are free to affirm on any ground that finds support in the record, even if it was not the ground upon which the trial court relied") (alteration in original) (citation and internal quotation marks omitted).  The Second Circuit reversed *LIBOR*

*VIII*'s finding that plaintiffs failed to plausibly allege facts sufficient to show that the BBA was a member of the conspiracy and that its acts of false assurance were not jurisdictionally relevant.

*Gelboim II* is also instructive.  There, Defendants sought affirmance on the alternative ground that appellants did not adequately allege a conspiracy even though the district court's opinion on appeal, *LIBOR I*, expressed no view on the issue.  *Id.* at 780-81.  The Second Circuit noted that this Court subsequently addressed the question of conspiracy in *LIBOR IV* and chose to address the question.  *Id.*  The Second Circuit rejected Defendants' argument, thus reversing *LIBOR IV* in that respect.  *Id.* at 782.

**B.     *Berkshire* should be applied in favor of the FDIC-R**

There is no credible basis to distinguish the facts alleged by the FDIC-R from the facts alleged by the Lender Plaintiffs.  Like the Lender Plaintiffs, the FDIC-R alleges state law fraud and conspiracy claims on behalf of a group of banks.  *Fed. Deposit Ins. Corp. v. Bank of Am. Corp.*, No. 14–cv–1757 (NRB), ECF No. 23.  The FDIC-R alleges the same conspiracy and the same facts showing the BBA's participation in the conspiracy.  Compare *id.* at ¶¶ 12-13, 64, 67-72,[7] 78, 85, 89, 93-95, 98, 103-06, 108-09, 132, with *Berkshire Bank v. Lloyds Banking Group plc, et al.*, No. 11-md-2262, ECF No. 1383, at ¶¶ 27-28, 55-57, 71, 75, 295, 296, 313.

The BBA contends that this Court may reject *Berkshire* as applied to the FDIC-R because *Berkshire* was a summary order and therefore not "precedential."  June 10 Owens Letter at 2.  But a district court is not "at liberty to disregard [or] contradict a Second Circuit ruling squarely on point merely because it was rendered in a summary order.'"  *Abrue v. United States*, No. 16cv5052,

[7] ████████████████████████████████████████████████████

2020 WL 4570338, at *4 (S.D.N.Y. Aug. 7, 2020) (citing 2d Cir. R. 32.1.1(a) and quoting *United States v. Tejeda*, 824 F. Supp. 2d 473, 475 (S.D.N.Y. 2010)).   "Denying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases."  *United States v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010); *see also United States v. Wood*, 854 Fed. Appx. 415, 418 (2d Cir. 2021) (same, applying summary order because "it is particularly apposite").  To the contrary, where the Second Circuit has "spoken directly to the issue," courts in this Circuit are "required to follow that decision" unless it is overruled in a precedential opinion. *United States v. Smith,* 122 F. Supp. 3d at 179; *cf. Monsanto v. United States*, 348 F.3d 345, 351 (2d Cir. 2003) ("[W]e-like the district court-are required to follow ... a binding precedent of our court.... unless and until that case is reconsidered by our court sitting in banc (or its equivalent) or is rejected by a later Supreme Court decision.").

Here, the Second Circuit has spoken directly to the issue.  *Berkshire* addressed *LIBOR VIII* and the other orders that formed the basis of the dismissal of the BBA from the FDIC-R action. *Berkshire* must be applied in favor of the FDIC-R just as it must be applied in favor of the Lender Plaintiffs.

### C.   *Schwab II governs BATA's claims against the BBA, and in any event, Berkshire likewise should apply to BATA.*

As BATA was an appellant in *Schwab II*, the Second Circuit's decision regarding personal jurisdiction is binding in favor of BATA and against the BBA. The BBA's assertion that the Court's determination in *LIBOR VIII* regarding the BBA's participation in the alleged conspiracy "was not disturbed by *Schwab II*" (June 10 Owens Letter at 3) is demonstrably incorrect.  *See* Section II, *supra*.  For the same reasons, *Schwab II* should be treated as binding in favor of the Lender Plaintiffs and FDIC-R.

Confronted with *Schwab II*'s unequivocal holding regarding conspiracy-based jurisdiction, the BBA attempts to evade it on the grounds that the BBA was not an appellee in *Schwab I* (in which the Second Circuit articulated the standard for alleging a conspiracy theory of jurisdiction) and the court of appeals in *Schwab II* "declined to address on the merits whether plaintiffs had plausibly alleged . . . whether a conspiracy existed and whether any specific defendant participated in the conspiracy."  Feb. 16, 2022 Letter from Richard Owens to the Court, ECF No. 3369 ("Feb. 16 Owens Letter") at 2.

The Second Circuit in *Schwab II* did not simply "decline[] to address" the existence of a conspiracy and all Defendants' participation in it; rather, the court of appeals explained that because "Defendants"—including the BBA—"state[d] for the first time in their sur-reply that Plaintiffs failed to satisfy the first two *Schwab* [*I*] factors," Defendants "forfeited" that argument. 22 F.4th at 123 n.8.[8]  The BBA should not be permitted to raise arguments on remand that it forfeited on appeal.  The "mandate rule," as directed by the Second Circuit, "compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court."  *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001)

---

[8] The BBA further contends the Second Circuit "expressly declined to reach the question of whether the BBA's alleged in-forum acts were in furtherance of the alleged conspiracy and thus could have satisfied the third element of conspiracy jurisdiction." Feb. 16 Owens Letter at 2 (citing *Schwab II*, 22 F.4th at 123 n.9). The BBA mischaracterizes the Second Circuit's reasoning.  The court of appeals, after reviewing communications among panel bank members supporting plaintiffs' conspiracy allegations, explained, "[i]f true, these communications would establish overt acts taken by co-conspirator Banks in the United States in furtherance of the suppression conspiracy, vesting the district court with personal jurisdiction over *each Defendant*," 22 F.4th at 123 (emphasis added)—which, as noted above, expressly included the BBA.  "In light of this conclusion," the court "d[id[ not address whether other alleged acts, including that the BBA sent a representative to the United States to assure investors that LIBOR was sound and that LIBOR submissions were transmitted to Thomson Reuters in New York, also amount to overt conspiratorial acts in the forum."  *Id.*  The Second Circuit thus held plaintiffs sufficiently alleged conspiracy jurisdiction against the BBA and the other Defendants *regardless of the BBA's alleged in-forum conduct*.  That is consistent with the Second Circuit's overarching determination that establishing conspiracy jurisdiction as to a particular defendant does not require that defendant to have engaged in conspiratorial acts within the relevant forum.  *See Schwab II*, 22 F.4th at 122 ("In *Schwab* [*I*], we held that a defendant can . . . avail itself of a forum *through certain actions taken by a co-conspirator in the forum*.") (emphasis added).  Moreover, as shown above, in *Berkshire* the Second Circuit addressed the question, finding that the BBA's in-forum acts were sufficiently alleged as overt acts by a co-conspirator in furtherance of the conspiracy.  See Section II.C.2., *supra*.

(emphasis and internal citation omitted).  Further, "where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand unless the mandate can reasonably be understood as permitting it to do so." *Id.*

The BBA unquestionably could have argued in its initial brief in *Schwab II* that plaintiffs failed to plausibly allege a conspiracy or the BBA's participation in it.  It chose not to do so.  The Second Circuit in *Schwab II* determined that the BBA (and the other Defendants) failed to timely raise the very arguments the BBA now attempts to assert before this Court, and thus held "Defendants [expressly defined to include the BBA] had the relevant minimum contacts with the United States to satisfy due process."  22 F.4th at 125.  The mandate thus cannot "reasonably be understood as permitting" this Court to revisit that issue.  *See Ben Zvi*, 242 F.3d at 95.  Indeed, had the Second Circuit intended to allow for further determination on remand regarding the plausibility of plaintiffs' allegations as to the BBA's, or any other Defendant's, participation in the conspiracy, the court of appeals presumably would have *vacated* this Court's jurisdictional ruling in *LIBOR VI*, rather than *reversing* it.  *See Schwab II*, 22 F.4th at 125 ("we **REVERSE** the judgment in part, and **REMAND** for further proceedings").  This Court should decline the BBA's improper invitation to contravene the Second Circuit's mandate.

Finally, as shown, even if the Court were to allow the BBA to revive arguments it forfeited, *Berkshire* conclusively establishes that BATA has alleged facts sufficient to plead the BBA's membership in the conspiracy.

## IV.    CONCLUSION

The Second Circuit considered and rejected *LIBOR VIII*'s finding that plaintiffs failed to plausibly allege that the BBA was a member of the plausibly pled conspiracy and that the BBA's

acts in furtherance of the conspiracy were jurisdictionally irrelevant. Those decisions are binding.

*LIBOR VIII* is no longer good law with respect to the BBA.


Dated: July 25, 2022

Respectfully submitted,

**POMERANTZ LLP**
*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Michael J. Wernke
Veronica V. Montenegro
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
mjwernke@pomlaw.com
vmontenegro@pomlaw.com

Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com
*Counsel for Plaintiffs The Berkshire Bank and The Government Development Bank of Puerto Rico*

**ZELLE LLP**
*/s/ James R Martin*
James R. Martin
Jennifer Duncan Hackett
1775 Pennsylvania Avenue NW, Suite 375
Washington, DC 20006
Telephone: (202) 899-4101
Email: jmartin@zellelaw.com
jhackett@zellelaw.com
*Attorneys for the FDIC-R for 20 Closed Banks*

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
*/s/ Michael J. Miarmi*
Steven E. Fineman
Michael J. Miarmi
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel.: (212) 355-9500
Fax: (212) 355-9592
Email: sfineman@lchb.com
mmiarmi@lchb.com

Richard M. Heimann
Eric B. Fastiff
Brendan P. Glackin
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel.: (415) 956-1000
Fax: (415) 956-1008
Email: rheimann@lchb.com
efastiff@lchb.com
bglackin@lchb.com

Andrew R. Kaufman
222 2nd Avenue South, Suite 1640
Nashville, TN 37201-2379
Tel.: (615) 313-9000
Fax: (615) 313-9965

akaufman@lchb.com
*Attorneys for Plaintiff Bay Area Toll Authority*