```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
IN RE LIBOR-BASED FINANCIAL INSTRUMENTS
ANTITRUST LITIGATION
----------------------------------------X
THIS DOCUMENT RELATES TO:

BAY AREA TOLL AUTHORITY

                    Plaintiff,

          - against -
                                              MEMORANDUM AND ORDER
BANK OF AMERICA CORPORATION, et al.
                                               11 MDL 2262 (NRB)
                    Defendants.                14 Civ. 3094 (NRB)
----------------------------------------X     12 Civ. 5723 (NRB)
THE BERKSHIRE BANK, et al.,                   14 Civ. 1757 (NRB)

                    Plaintiffs,

          - against -

BANK OF AMERICA CORPORATION, et al.,

                    Defendants.
----------------------------------------X
FEDERAL DEPOSIT INSURANCE CORPORATION
as Receiver for Amcore Bank, N.A.,
et al.,

                    Plaintiff,

          - against -

BANK OF AMERICA CORPORATION, et al.,

                    Defendants.
----------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Following the issuance of two opinions by the Second Circuit in this MDL, Schwab Short-Term Bond Market Fund v. Lloyds Banking

1

Group PLC, 22 F.4th 103 (2d Cir. Dec. 30, 2021) ("Schwab II") and Berkshire Bank v. Lloyds Banking Group plc, et al., 20-1987-cv, 2022 WL 569819 (2d Cir. Feb. 25, 2022) (summary order) ("Berkshire"), this Court received several letters.  The British Bankers' Association, BBA Enterprises Ltd., and BBA LIBOR Ltd. (collectively, the "BBA") sought leave to file renewed motions to dismiss amended complaints of the Bay Area Toll Authority ("BATA") and the Berkshire Bank and Government Development Bank for Puerto Rico ("Lender Plaintiffs").  See ECF 3369, 3410.[1]  The Federal Deposit Insurance Corporation as Receiver for 20 Closed Banks ("FDIC") sought reconsideration of the Court's dismissal of its claims against the BBA.  See ECF 3389.  Underlying each of these potential motions was a common issue, namely, whether either of the recent decisions of the Second Circuit impact, in any way, this Court's rulings in In re LIBOR-Based Financial Instruments Antitrust Litig., No. 11 MDL 2262 (NRB), 2019 WL 1331830, at *15 (S.D.N.Y. Mar. 25, 2019) ("LIBOR VIII"), with respect to the BBA.  Accordingly, we directed the BATA, Lender Plaintiffs, and FDIC (collectively, "plaintiffs") and the BBA to brief that single issue, with the plaintiffs submitting their briefs first.  See ECF No. 3424.

---

[1] Unless otherwise noted, all ECF citations refer to the MDL, 11-md-2262 (NRB).

On August 1, 2022, plaintiffs filed a joint brief. See Pl. Br., ECF 3450. The BBA filed a response on August 15, 2022. See Def. Br., ECF 3459. Plaintiffs filed a reply on August 17, 2022, see Pl. Reply, ECF 3464, and the BBA filed a sur-reply on August 23, 2022, see Def. Sur-Reply, ECF 3471-1.

In their submissions, plaintiffs assert that Schwab II and Berkshire "reversed LIBOR VIII's finding that plaintiffs failed to allege facts sufficient to show the BBA was a member of the plausibly pled conspiracy and that the BBA's acts in furtherance of the conspiracy were jurisdictionally relevant." Pl. Br. at 1. Plaintiffs' position is without foundation and is analytically flawed.

To rely on conspiracy jurisdiction to assert personal jurisdiction, a plaintiff must establish that: "(1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." Charles Schwab Corp. v. Bank of America Corp., 883 F.3d 68 (2d Cir. 2018) ("Schwab I") (adopting the three-factor test for alleging a conspiracy theory of personal jurisdiction set forth in Unspam Technologies, Inc. v. Chernuk, 716 F.3d 322, 329 (4th Cir. 2013)).[2]

---

[2] This Court had previously dismissed the BBA, which is based in the United Kingdom, on traditional personal jurisdiction grounds. See In re LIBOR Based Fin. Instruments Antitrust Litig., 2015 WL 6243526, at *20, *29, *38 (S.D.N.Y.

3

Plaintiffs slide over the first and second requirements for reliance on conspiracy jurisdiction, focusing instead on acts that the BBA allegedly took in the United States. See Pl. Br. at 2, 5-8. Significantly, however, the only conspiracy that has been held to be adequately pled is the 16-bank antitrust conspiracy upheld in Gelboim v. Bank of Am. Corp., 823 F.3d 759, 782 (2d Cir. 2016) ("Gelboim"). There, the Second Circuit held that the plaintiffs-appellants "plausibly alleged the existence of an inter-bank conspiracy" through "allegations [that] evince[d] a common motive to conspire—increased profits and the projection of financial soundness—as well as a high number of interfirm communications." Id. at 781-82. However, the Second Circuit cautioned that the "decision is of narrow scope," recognizing that "further [factual] development" may undermine its conclusions:

> [C]ommon sense dictates that the Banks operated not just as borrowers but also as lenders in transactions that referenced LIBOR. Banks do not stockpile money, any more than bakers stockpile yeast. It seems strange that this or that bank (or any bank) would conspire to gain, as a borrower, profits that would be offset by a parity of losses it would suffer as a lender. On the other hand, the record is undeveloped and it is not even established

---

Oct. 20, 2015) ("LIBOR IV") (holding allegations that the BBA made false representations about the quality of LIBOR in the United States to induce continued reliance on LIBOR (labeled by plaintiffs as the "charm offensive") were insufficient for personal jurisdiction purposes, but potentially relevant to plaintiffs' statute of limitations argument); see also In re LIBOR-Based Fin. Instruments Antitrust Litig., 2016 WL 7378980, at *12 (S.D.N.Y. Dec. 20, 2016) ("LIBOR VI"); In re LIBOR Based Fin. Instruments Antitrust Litig., 2015 WL 6696407, at *9 (S.D.N.Y. Nov. 3, 2015)("LIBOR V"), 2015 WL 6696407 (S.D.N.Y. Nov. 3, 2015). These holdings have not been reversed. To assert personal jurisdiction over the BBA, plaintiffs must therefore be able to successfully rely on conspiracy jurisdiction.

4

      that the Banks used LIBOR in setting rates for lending transactions. Nevertheless, the potential of a wash requires further development and can only be properly analyzed at later stages of the litigation.

Id. at 782-83.

In any event, the BBA was indisputably not a member of the "inter-bank conspiracy" upheld in Gelboim. Id. at 782. As described by the Circuit, the members of the pled conspiracy were the 16 panel banks that "determined LIBOR each business day based, in part, on the Banks' individual submissions." Id. at 764. Indeed, it could not be otherwise: not only was the BBA not a panel bank, the BBA was not even a named defendant in the Gelboim complaint. See No. 12-cv-1025 (NRB), ECF 12.

Following Gelboim and Schwab I, this Court considered motions for leave to amend filed by six different plaintiffs. See LIBOR VIII, 2019 WL 1331830, at *5. One motion sought to expand the conspiracy to include the BBA as a co-conspirator with the 16 panel banks. Id. at *15. That motion was, however, rejected in LIBOR VIII on the merits, not simply on personal jurisdiction grounds:

      As a threshold matter, we reject FFP plaintiffs' attempt to cast the BBA as a member of the plausibly pled conspiracy and thereby reject their efforts to rely on the BBA's acts in the United States for jurisdictional purposes. Even FFP plaintiffs point out that the BBA's incentive was "to portray LIBOR as a reliable benchmark, to appease its constituent members and to profit from the licensing of LIBOR," Pls.' Joint PJ Br., at 21. Thus, the BBA is not a financial institution whose main concern is to project financial soundness, and any act of

> assurance that the BBA allegedly took did not further the alleged conspiracy.

Id. at *15.

Indeed, administering the USD LIBOR benchmark in London is a small part of the BBA's many day-to-day functions, which primarily include "lobbying on behalf of the U.K. banking industry on policy matters and providing training and commercial services to its more than 150 member institutions." Def. Br. at 3. The BBA's motives do not align with those of the 16 panel banks included in the antitrust conspiracy upheld in Gelboim. 823 F.3d at 781-82. Therefore, the BBA did not share the object of the conspiracy with the 16 panel banks (regardless of any debate concerning the object). See Gelboim, 823 F.3d 759, 782 (finding "the Banks" had "a common motive to conspire—increased profits and the projection of financial soundness").

Remarkably, despite the fact that no appeal from LIBOR VIII was ever filed, plaintiffs contend that Schwab II and Berkshire reversed this Court's holding in LIBOR VIII, consistent with Gelboim, that the adequately pled conspiracy did not include the BBA. See Pl. Br. at 1. Indeed, Schwab II was an appeal from LIBOR VI, which was taken by the BATA and other plaintiffs before LIBOR VIII was even decided. See ECF 2142. And Berkshire arose from the Lender Plaintiffs' appeal of jurisdictional and statute of limitations rulings in LIBOR IV; LIBOR V; LIBOR VI; the Court's

February 2, 2017 Memorandum and Order; and the Court's May 26, 2020 Final Judgment and Order of Dismissal with Prejudice.  See ECF 3109.

To avoid the obvious consequences of their failure to appeal, plaintiffs now argue that, although the Lender Plaintiffs did not include LIBOR VIII in its Berkshire notice of appeal, LIBOR VIII was nevertheless considered by the Second Circuit in Berkshire. See Pl. Reply at 2-4.  According to plaintiffs, a December 1, 2021 amendment to Federal Rule of Appellate Procedure 3—which became effective 18 months after the Lender Plaintiffs filed their notice of appeal—made it unnecessary for the Lender Plaintiffs to designate LIBOR VIII in its notice of appeal for it to be encompassed in Berkshire.  See id. at 2.  Following the amendment, however, the Lender Plaintiffs never asked the Second Circuit to retroactively apply the amendment to broaden the scope of the Berkshire appeal.  See Def. Sur-reply at 2-3.  Even after the Second Circuit issued an order on December 13, 2021 inviting letter briefs on the applicability of Schwab II to the issues presented in Berkshire, the Lender Plaintiffs did not mention the amendment. See ECF 3450-5.[3]  As the BBA correctly observes, the "Lender

---

[3] In their January 19, 2021 letter to the Circuit, the Lender Plaintiffs briefly attempted to rebut a footnote in the BBA's appellate brief, which states that the Court found in LIBOR VIII that the BBA is not a member of the inter-bank conspiracy upheld in Gelboim.  See ECF 3450-1 at 34 n.12; ECF 3450-5 at 5.  In doing so, however, the Lender Plaintiffs do not cite to or even mention this Court's holding in LIBOR VIII—let alone ask the Circuit to consider LIBOR VIII in the scope of its appeal.  See ECF 3450-5 at 5.

7

Plaintiffs remained entirely silent about the amendments from the inception of their appeal through its conclusion—and indeed until now." See Def. Sur-reply at 3. Of greatest significance, the Second Circuit clearly did not understand LIBOR VIII to be subject to the Berkshire appeal. Consistent with the notice of appeal, the Second Circuit in Berkshire listed the "series of district court decisions" that the plaintiffs-appellants challenged on appeal. See Berkshire, 2022 WL 569819, at *1. (citing LIBOR VI; LIBOR V; LIBOR VI; and the Court's February 2, 2017 Memorandum and Order). That list does not include LIBOR VIII. See id.

Moreover, a reading of the two Second Circuit opinions provides no support for plaintiffs' position. Schwab II does not mention the BBA, except for an introductory description of it as a named defendant and a footnote stating that it "do[es] not address" whether acts allegedly taken by the BBA in the United States "amount to overt conspiratorial acts in the forum." 22 F.4th at 109, 112, 123 n.9. Similarly, there are no references to the BBA in Berkshire.

Unable to establish that any language in the Circuit's recent opinions reversed this Court's ruling that the BBA was not a member of the Gelboim conspiracy, plaintiffs reference their own, and not the Circuit's, discussion of alleged acts by the BBA in furtherance of an unestablished conspiracy. See e.g., Pl. Br. at 5-8. For example, Plaintiffs highlight the Second Circuit's citation in

8

Berkshire to a six-page section of their appellate brief, which describes, in part, alleged overt acts taken by BBA staff in New York.  See id. at 7-8.  However, directly after that citation, the Second Circuit includes a footnote, not mentioned by plaintiffs, which states that it "need not analyze whether every purported act or communication proffered by Plaintiffs-Appellants 'amount[s] to overt conspiratorial acts in the forum' because the ones detailed [in Schwab II] sufficiently allege overt acts in New York." Berkshire, 2022 WL 569819, at *3 n.2 (citing Schwab II, 22 F.4th at 123 n.9).  In that same footnote, the Second Circuit cites to the footnote in Schwab II, where it stated that it does not need to address whether the BBA's alleged acts were in furtherance of the conspiracy.  Id.  Contrary to the plaintiffs' argument, the Second Circuit's citation to the plaintiffs' appellate brief cannot be construed as evidence that the Second Circuit considered at all the alleged acts taken by the BBA, let alone reversed this Court's ruling in LIBOR VIII.

Even assuming arguendo that the Second Circuit did consider acts allegedly taken by the BBA in the United States, the Second Circuit did not consider or discuss the first two prongs of conspiracy jurisdiction in either Schwab II or Berkshire.  See Schwab II, 22 F.4th at 122–23 ("Only Schwab [I]'s third prong is at issue here."); Berkshire, 2022 WL 569819, at *2 ("As in Schwab II, the parties here contest the third element of the due process

9

analysis for conspiracy-based personal jurisdiction."). Indeed, in Schwab II, the Second Circuit specifically declined to consider whether the first two factors of the test for conspiracy jurisdiction were established as defendants had "forfeited" those arguments by "stat[ing] [them] for the first time in their sur-reply." 22 F.4th at 123 n.8.[4] Meanwhile, Berkshire merely states that "[i]n prior appeals arising from the LIBOR MDL, this Court recognized that there were plausible allegations that a conspiracy existed and that defendants participated in it" and cites to Gelboim as shorthand for the adequately pled "inter-bank conspiracy." Berkshire, 2022 WL 569819, at *2. As noted, the Gelboim conspiracy is limited to the 16 panel banks and does not include the BBA. Any focus on whether the third prong of conspiracy jurisdiction has been met, when the first two prongs have not been addressed, is without significance.

For the foregoing reasons, the Court finds that the Second Circuit's recent decisions in Schwab II and Berkshire leave undisturbed this Court's ruling in LIBOR VIII with respect to the BBA.

---

[4] Plaintiffs' argument that the "mandate rule" prohibits the Court from considering these "forfeited" arguments on remand is meritless. See Pl. Br. at 12. The "mandate rule" only applies to issues decided by the appellate court. See e.g., New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co., 352 F.3d 599, 606 (2d Cir. 2003) ("[T]he law of the case does not extend to issues an appellate court did not address."). Moreover, it is undisputed that LIBOR VIII was not appealed in Schwab II or even argued in the underlying briefing. See Pl. Br. at 4; Def. Br. at 20.

10

**SO ORDERED.**

Dated:    New York, New York
          November 18, 2022

                                        _____
                                        NAOMI REICE BUCHWALD
                                        UNITED STATES DISTRICT JUDGE