GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Jefferson E. Bell
Direct: +1 212.351.2395
Fax: +1 212.351.5295
JBell@gibsondunn.com

March 2, 2023

The Honorable Naomi Reice Buchwald
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262 (NRB)

Dear Judge Buchwald:

We represent UBS AG and write on behalf of Defendants in *Metzler Investment GmbH v. Credit Suisse AG*, No. 11-cv-2613 (S.D.N.Y.), in response to the letter of Exchange-Based Plaintiffs ("EBPs"), Dkt. 3638 ("Ltr."), seeking leave to move to certify a class for their Sherman Act claim. The request should be denied, or alternatively, deferred until a later stage in the case.

***First*, EBPs' request is too little, too late.** EBPs' sole ground for seeking a "do-over" is *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103 (2d Cir. 2021) ("*Schwab II*"). That mandate was issued on January 20, 2022. The parties negotiated for months thereafter and filed a joint schedule on June 9, 2022, but EBPs inexplicably failed to participate in that process. Dkt. 3408. In a March 16, 2022, letter, Defendants explained that EBPs are not entitled to relitigate class certification, and if they disagreed, EBPs should "promptly" submit an application. Dkt. 3380. The Court "agree[d]." Dkt. 3386.[1] Yet EBPs sat idly for nearly *one year*[2] and offer <u>no</u> excuse for their delay. EBPs do not and cannot show "good cause" for their belated proposal to redo expert discovery and class certification. Fed. R. Civ. P. 16(b)(4); *Emamian v. Rockefeller Univ.*, 823 F. App'x 40, 43 (2d Cir. 2020) ("discovery schedule . . . may be modified only for 'good cause,' which 'depends on the diligence of the moving party'" (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000))).

***Second*, Defendants would be prejudiced by rushed class discovery.** The scheduling order limited further class certification briefing to the Over-the-Counter ("OTC") class and added it to the upstream schedule based on an extensive meet-and-confer process. Dkt. 3425. EBPs undertook no such discussions, and their letter is silent on when and how discovery could be completed. Three of defendants' prior experts (Christopher Culp, Janusz Ordover, and Robert Willig) are now deceased, and retaining new experts now would be costly and time-consuming. Defendants should not be forced to scramble on a truncated timetable because of EBPs' delay.

***Third*, EBPs present no grounds to justify new briefing (let alone new expert reports).** EBPs make no showing that a "do-over" is necessary given that they have already had

---

[1]   *See* Apr. 4, 2022, Letter from the Hon. Naomi Reice Buchwald to Counsel at 2 ("I should inform you that I agree with the position of defendants on the individual issues listed in Part III of the letter.").

[2]   EBPs themselves concede that nearly *nine months* ago, in June 2022, they "advised the Court of their intention to confer with Defendants on class certification issues and to subsequently provide an update." Ltr. at 1 n.2.

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

a full and fair opportunity to present their antitrust arguments.[3]  In their earlier briefing, EBPs relied on the ***exact same*** unreliable methodologies for their antitrust class.  *See* Dkt. 1891 at 14-16.  This Court devoted "a semester," Jan. 18, 2018 Hr'g Tr. at 4:16 (Dkt. 2425), to analyzing the prior class certification submissions with exceptional detail and care before rejecting EBPs' expert methodologies as unreliable and inadmissible.  *LIBOR VII*, 299 F. Supp. 3d 430, 473-510, 552-55 (S.D.N.Y. 2018).  The lack of reliable expert methodologies is fatal because EBPs need a means to prove suppression and injury and to estimate damages on a class-wide basis.

Recognizing this, EBPs now seek leave to present "a new testifying expert," promising to use this Court's "prior order" as a "roadmap" to "address the issues identified with their previous testifying expert's LIBOR suppression models."  Ltr. at 3.  But *LIBOR VII* was not a mere "advisory opinion informing" EBPs of "deficiencies" so they can cure them.  *LIBOR II*, 962 F. Supp. 2d 606, 626 (S.D.N.Y. 2013).  EBPs were required to exercise "diligen[ce] in establishing their compliance with class certification requirements the first time around."  *LIBOR VII*, 299 F. Supp. 3d at 603 & n.186 (internal citation omitted).  The last time EBPs tried to supplement the record with belated expert analysis, the Court noted that "[t]he issues in this case have been addressed in depth and with candor for years, and the consequent burdens on all parties in the context of the class certification motions could not have been clearer."  Dkt. 2255.  Neither *Schwab II* nor any other intervening development can serve as a basis for new expert reports because nothing undermines the Court's prior conclusions on EBPs' failure of proof, as explained for each element below.  *LIBOR III*, 27 F. Supp. 3d 447, 473 (S.D.N.Y. 2014).[4]

*Predominance*.  The Court found that individualized questions of netting, injury, and damages predominated for EBPs' CEA suppression claims—particularly "given the extensive difficulties plaintiffs have experienced in obtaining trading records and the netting requirements that will be imposed."  *LIBOR VII*, 299 F. Supp. 3d at 534-44, 555; *id.* at 544 (subpoenas to 89 futures commission merchants surfaced *zero* trading records).  The same concern applies to the proposed antitrust class of Exchange purchasers.  *See id*. at 591-92 (netting required for antitrust claims).  Indeed, these issues are even *more* intractable for EBPs' antitrust claim, as illustrated by the inability of EBPs' "expert" class action administrator to correctly calculate Atlantic Trading's net position in a single contract on a single trading day.  *LIBOR VII*, 299 F. Supp. 3d at 510; Culp Sur-Reb. Rpt. ¶¶ 71-76; Elrod Decl. ¶ 4.  To this day, EBPs still have not proven Atlantic Trading's *net* position.

---

[3]  EBPs' antirust claims were live against Bank of America and JPMorgan Chase when the prior class certification expert reports and briefing were submitted.  The antitrust class EBPs now propose is identical to subpart A of the class definition on which EBPs previously moved (just with a different date cutoff).  The Court did not address subpart A in its written opinion because the domestic banks and EBPs settled on the eve of oral argument.  *See LIBOR VII*, 299 F. Supp. 3d at 473 (citing Jan. 18, 2018 Hr'g Tr. 24:10–25:21, Dkt. 2425).

[4]  *See Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009); 3 Newberg & Rubenstein on Class Actions § 7:35 (6th ed. 2022) ("Most courts apply a stringent 'law of the case' approach to motions to reconsider initial class certification decisions."); *see also Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (identifying intervening changes in law, new evidence, and clear error or manifest injustice as grounds for reconsideration); *In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*, 2012 WL 4435292, at *1 (S.D.N.Y. Sept. 26, 2012) (denying plaintiff's request for "a new opportunity to engage in a battle of the experts" by "reopening a question that has been exhaustively litigated").

*Typicality and Adequacy*. Plaintiff Atlantic Trading was not "previously found typical and adequate" for *antitrust* claims, as EBPs imply. Ltr. at 3. To the contrary, the Court previously ordered EBPs to identify the named plaintiffs that were members of the proposed antitrust class because EBPs' papers failed to demonstrate this. *See* Dkt. 2400. And while the Court did not need to address the issue at the time, EBPs' responsive submission failed to demonstrate that Atlantic Trading established a ***net*** short position "before the suppression period started" and held it "to settlement during the suppression period," as required. *LIBOR VI*, 2016 WL 7378980, at *23 (S.D.N.Y. Dec. 20, 2016); *LIBOR VII*, 299 F. Supp. 3d at 543 ("netting across EDF trades will be required, at minimum"). Establishing this would require reliable expert analysis, which EBPs did not submit.[5]

*Superiority*. The Court's conclusion that EBPs failed to establish "superiority" for CEA suppression claims applies with full force to their antitrust claims. *See LIBOR VII,* 299 F. Supp. 3d at 555. The lack of trading records, and EBPs' inability to calculate net positions, are fatal. If EBPs cannot calculate the net position for even *one* named plaintiff, doing this for a potential class would be administratively infeasible and unmanageable.

***Fourth,*** **if the Court is inclined to entertain EBPs' request, Defendants submit that the request should be deferred until the downstream phase.** The upstream summary judgment motions, or efficient enforcer issues, may dispose of EBPs' antitrust claims entirely. EBPs cite the Court's 2016 efficient enforcer ruling, Ltr. at 3, but the Second Circuit has since clarified that, in the interest-rate benchmark context, plaintiffs who traded futures contracts on an exchange are not efficient enforcers. *Laydon v. Coöperatieve Rabobank U.A.*, 55 F.4th 86, 98 (2d Cir. 2022). While antitrust claims by exchange plaintiffs might be viable where the defendants "engaged in collusive trading" on the exchange and their collusion was motivated by a desire "to profit from futures contracts transactions," *In re Platinum & Palladium Antitrust Litig.*, No. 20-1458, 2023 WL 2229364, at *9 (2d Cir. Feb. 27, 2023), EBPs do not allege that defendants engaged in "collusive trading" on the CME and the only plausibly alleged motivation for the conspiracy is reputation-based, *see LIBOR VI*, 2016 WL 7378980, at *4-7. Sound case management and efficiency considerations support resolving the viability of EBPs' antitrust claims before revisiting certification.

Respectfully submitted,
/s/ *Jefferson E. Bell*
Jefferson E. Bell

---

[5] *See LIBOR VII*, 299 F. Supp. 3d at 510 (excluding EBPs' "expert" on Atlantic Trading's position). EBPs submitted a counsel declaration noting that Atlantic Trading opened synthetic short positions using various options at certain specific strike prices prior to the suppression period, and still held options *at those specific strike prices* when the December 2007 contract settled. Elrod Decl. (Dkt. 2405). But that does nothing to show that Atlantic Trading had a *net* short position in the December 2007 contract immediately prior to the suppression period, nor that it remained so thereafter until settlement (let alone that it had net short position across all contract months). Even assuming Atlantic Trading made no other options trades at the specific strike prices listed in EBPs' counsel declaration, Atlantic Trading could have had an offsetting long futures position—including through short put options or long call options at other strike prices—which could have reversed its net position in the December 2007 contract (to say nothing of its positions in other contract months). Calculating Atlantic Trading's net position requires nuanced expert calculations that EBPs did not submit. *See* Culp Rpt. ¶¶ 245-255 (describing netting process); *see also id*. ¶ 405 (calculation to convert options into future equivalents for netting); Culp Sur-Rebuttal ¶¶ 105-112 (listing flaws in EBPs' netting); Elrod Decl. ¶ 5 n.3 (acknowledging EBPs' expert mistakes on netting).