```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
IN RE LIBOR-BASED FINANCIAL INSTRUMENTS
ANTITRUST LITIGATION
----------------------------------------X
THIS DOCUMENT RELATES TO:

FTC CAPITAL GMBH, et al.                       MEMORANDUM AND ORDER

                       Plaintiffs,              11 MDL 2262 (NRB)
                                                11 Civ. 2613 (NRB)
                - against -

CREDIT SUISSE GROUP AG, et al.

                       Defendants.
----------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Four years, 11 months, and 27 days after the Court denied the Exchange-Based plaintiffs' ("EBPs") motion for class certification in an opinion totaling 366 pages, of which 201 pages were dedicated to EBPs' motion and seven related Daubert motions, EBPs ask the Court for leave to file a wholly new and different class action motion. See ECF Nos. 3638,[1] 2452 at 37-238, In re LIBOR-Based Fin. Instruments Antitrust Litig., 299 F. Supp. 3d 430 (S.D.N.Y. 2018) ("LIBOR VII"), appeal dismissed, No. 18-728 (2d Cir. 2018). EBPs' application is premised on a different class, a different theory, and a different expert. See ECF No. 3638. EBPs' attempt to justify what must be an unprecedented application is two-fold: first, that the restoration of antitrust claims against certain foreign bank

---

[1] Unless otherwise noted, all ECF citations refer to the MDL, 11-md-2262 (NRB).

1

defendants (previously dismissed on personal jurisdiction grounds) 14 months earlier gives EBPs a proverbial second bite at the apple; and second, without the benefit of any on-point citation, that Rule 23(c)(1)(c) contemplates an application of this sort. See id.; ECF No. 3640; Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC, 22 F.4th 103, 125 (2d Cir. 2021) ("Schwab II"). To place EBPs' proposed motion in context, a review of EBPs' participation in this MDL, beginning over 12 years ago, see No. 11 Civ. 2613 (NRB), ECF No. 1, is necessary.

Of specific relevance to the proposed motion, it is noteworthy that LIBOR VII, the decision that resolved EBPs' class certification motion, addressed EBPs' Corrected Fourth Amended Complaint. See ECF No. 2363; 299 F. Supp. 3d at 472. Further, the class certification motions addressed in LIBOR VII (including EBPs' motion) were filed following the entry of a scheduling order setting deadlines spanning 20 months providing that those motions were to be filed only after both fact and expert discovery. See ECF No. 1327. EBPs took advantage of this schedule, engaging three sophisticated experts, see ECF No. 1891 at 1 n.2; obtaining an opinion from a class administrator on how to identify members of the putative class, see LIBOR VII, 299 F. Supp. 3d at 508; and ultimately filing a motion supported by 260 exhibits, spanning thousands of pages, see ECF Nos. 1890-91.

On the eve of the January 18, 2018 oral argument on the class certification motions, EBPs decided to resolve by settlement their antitrust claims against Bank of America and JPMorgan (which had been the subject of their class action briefing and expert reports), making their total settlement amount more than $180 million.  See ECF Nos. 2307-1 at 2; 2425 at 24:10-25:21; 2728-3 at 1; 3638 at 2.  As a result of that decision, LIBOR VII only addressed EBPs' remaining Commodities Exchange Act ("CEA") claims against Rabobank and UBS.  See LIBOR VII, 299 F. Supp. 3d at 472-73.

As noted earlier, LIBOR VII devoted 201 of its 366 pages to EBPs' motion for class certification.  See ECF No. 2452 at 37-238.  The Court briefly summarizes its findings because they demonstrate that the denial of EBPs' motion for class certification was wholly unrelated to the absence of antitrust claims.  To state it otherwise, even if EBPs' had not chosen to settle their remaining antitrust claims on the eve of oral argument, their motion would still have been denied.

To begin, the Court granted, in whole or in part, all of defendant Rabobank's Daubert motions to exclude the opinions of EBPs' experts and denied all of EBPs' Daubert motions to exclude the opinions of defendants' experts.  See LIBOR VII, 299 F. Supp. 3d at 471-580.  With respect to EBPs' proffered expert opinions, the Court concluded that: (i) Dr. Seyhun failed to reliably support his conclusion that "classwide methods are available to determine

3

the existence and extent of LIBOR manipulation and to determine the impact of that manipulation on EDF prices," see id. at 488; (ii) Dr. Netz failed to show that "LIBOR caused changes in EDF prices" and that her opinions on calculating damages were unreliable, see id. at 494, 496 (emphasis added); (iii) Mr. Beevers' "methodology for identifying trader-based manipulation is not reliable," see id. at 508; and (iv) Mr. Miller's suggestion that "the Chicago Mercantile Exchange (CME) maintains a 'street book' of transaction data that could be used to fill gaps in data from other sources" was plainly incorrect, see id. at 508-09.  In sum, regardless of the legal theory, EBPs failed to establish that LIBOR was distorted in a way that affected Eurodollar futures prices and damaged EBPs.

Furthermore, for EBPs' proposed trader-based class, the Court concluded that EBPs failed to meet the typicality and adequacy requirements of Rule 23(a) and the predominance and superiority requirements of Rule 23(b)(3).  See id. at 548.  Similarly, for EBPs' proposed suppression class, the Court held Rule 23(b)(3)'s predominance and superiority requirements had not been satisfied. See id. at 556.

Following the Court's decision, EBPs filed a Rule 23(f) petition for leave to appeal the Court's decision, which the Second Circuit dismissed on November 6, 2018.  See ECF No. 2747 at 2. EDPs also requested reconsideration of the Court's holdings

4

addressing the CEA's statute of limitations in LIBOR I, 935 F. Supp. 2d 666, 711-13 (S.D.N.Y. 2013), and LIBOR III, 27 F. Supp. 3d 447, 471-77 (S.D.N.Y. 2014), which this Court denied on April 24, 2018.  See ECF No. 2496.  Since then, EBPs' participation in this MDL has been exceedingly limited.  See e.g., ECF No. 3639 at 1 (noting EBPs did not participate in negotiating the current operative scheduling order with the other parties).  Indeed, over the past five years, EBPs' only substantive involvement in the MDL has been moving for final approval of their settlements.  See ECF Nos. 3175-80.  And, with respect to those settlements, it is noteworthy that EBPs' revised motion for preliminary approval of their earliest settlements was not filed until October 11, 2017—more than three years after EBPs informed the Court of their first settlement with Barclays—due, in significant part, to EBPs' inability to identify a methodology to calculate damages for the plan of allocation.  See ECF Nos. 2307, 2400, 2633, 2853.  As of today's date, EBPs have still not distributed the settlement funds, perhaps for similar reasons.  See ECF No. 3653.

This is the context in which EBPs claim that Rule 23(c)(1)(c) permits them to start again on a quest for class certification by adopting the approach of the OTC plaintiffs[2] (which has been in

---

[2] The Court notes that the current scheduling order contemplates the OTC plaintiffs moving to certify the OTC class with respect to foreign defendants and the OTC defendants moving for decertification of the OTC class with respect to Bank of America and JPMorgan.  See ECF No. 3425 at 6-7.

plain sight for years) and engaging a new expert. See ECF Nos. 3638 at 3; 3640 at 1. Simply put, EBPs' reading of Rule 23 as authorizing their course of action is unsupported and unsupportable. See ECF No. 3640 at 1 (citing Fed. R. Civ. P. 23(c)(1)(C)). While Rule 23(c)(1)(c) does give courts "ample discretion to consider (or to decline to consider) a revised class certification motion after an initial denial," In re Initial Pub. Offering Sec. Litig., 483 F.3d 70, 73 (2d Cir. 2007) (emphasis added), a court "may not disturb its prior findings absent some significant intervening event or a showing of compelling reasons to reexamine the question," such as "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Mazzei v. Money Store, 308 F.R.D. 92, 106 (S.D.N.Y. 2015) (internal citations omitted), aff'd, 829 F.3d 260 (2d Cir. 2016); see also Zdanok v. Glidden Co., Durkee Famous Foods Div., 327 F.2d 944, 953 (2d Cir. 1964) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.")

Here, EBPs are not asking the Court to reconsider its ruling in light of "evidentiary development of the case" that was lacking at the time they filed their initial motion. Mazzei v. Money Store, 829 F.3d 260, 266 (2d Cir. 2016); cf. Chen-Oster v. Goldman, Sachs & Co., No. 10 Civ. 6950 (ATR) (WL), 2022 WL 3586460, at *3

6

(S.D.N.Y. Aug. 22, 2022) ("[T]he court must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts.") (internal citations omitted). Nor have there been intervening changes of controlling law that improve EBPs' likelihood of succeeding on their claims. As demonstrated supra, the absence of antitrust claims was irrelevant to this Court's numerous reasons for denying EBPs' initial motion for class certification. To the contrary, recent Second Circuit rulings have likely only created new challenges. See e.g., Laydon v. Cooperatieve Rabobank U.A., 55 F.4th 86, 92 (2d Cir. 2022) (affirming the district court's ruling that the CEA claims arising from certain futures contracts tied to Yen-LIBOR and Euroyen TIBOR were impermissibly extraterritorial); United States v. Connolly, 24 F. 4th 821, 836, 843 (2d Cir. 2022) (concluding that the Government failed to prove that the trader-influenced LIBOR submissions were false on the Government's theory that "there was only one true interest rate that [each bank] could submit").

Accordingly, EBPs' reading of Rule 23 would create a zombie-like form of litigation, where despite extensive briefing, extensive decisions undisturbed on appeal, and the passage of many years, there is no finality and litigants may simply begin anew. Apart from the substantial delay that would inevitably result, EBPs' proposal does not consider the very real prejudice to

7

defendants, who would similarly have to begin anew, including having to engage new experts, given three of their previous experts are now deceased.  See ECF No. 3639 at 1.

For the foregoing reasons, EBPs' application is denied in its entirety.  The Clerk of Court is respectfully instructed to terminate the motion pending at ECF No. 3638.

**SO ORDERED.**

Dated:    New York, New York
          April 24, 2023

                                        NAOMI REICE BUCHWALD
                                        UNITED STATES DISTRICT JUDGE