**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | |
|---|---|
| THIS DOCUMENT RELATES TO: | No. 1:11-md-2262-NRB |
| The OTC Action | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**OTC PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**
**WITH DEFENDANTS MUFG BANK, LTD., THE NORINCHUKIN BANK, AND**
**SOCIÉTÉ GÉNÉRALE**

# TABLE OF CONTENTS

Page

I.    Introduction...........................................................................................................1

II.   Procedural History ...............................................................................................2

III.  Settlement Negotiations and Settlement Terms....................................................3

IV.   The Proposed Settlement Warrants Preliminary Approval....................................5

    A.    The Settlement Is Procedurally Fair Under Rule 23(e)(2)(A)–(B)..........................6

        1.    Adequacy of Representation ........................................................................7

        2.    Presence of Arm's-Length Negotiations.....................................................8

    B.    The Settlement Is Substantively Fair Under Rule 23(e)(2)(C)–(D)........................9

        1.    Costs, Risks, and Delay of Trial and Appeal .............................................10

        2.    Effectiveness of the Proposed Method of Distributing Relief.................13

        3.    The Terms of Any Proposed Award of Attorney's Fees ...........................15

        4.    Any Agreement Identifiable Under Rule 23(e)(3)....................................16

        5.    Equitable Treatment of Class Members.....................................................16

        6.    The Proposed Settlement Satisfies Other Relevant Factors......................17

            (a)    The Stage of the Proceedings..........................................................17

            (b)    The Ability of Defendants MUFG, Norinchukin, and
                 SocGen to Withstand a Greater Judgment .....................................18

            (c)    The Range of Reasonableness of the Settlement in
                 Light of the Best Possible Recovery and the Attendant
                 Risks of Litigation..........................................................................19

    C.    Rule 23(e)(2) Conclusion.....................................................................................20

V.    Certification of the Settlement Class Is Appropriate ..........................................20

    A.    The Settlement Class Meets the Rule 23(a) Requirements...................................21

        1.    Rule 23(a)(1) – Numerosity ......................................................................21

|   | 2. | Rule 23(a)(2) – Commonality | 21 |
|   | 3. | Rule 23(a)(3) – Typicality | 22 |
|   | 4. | Rule 23(a)(4) – Adequacy | 22 |
| B. | | The Settlement Class Meets the Rule 23(b)(3) Requirements | 23 |
|   | 1. | Predominance | 23 |
|   | 2. | Superiority | 24 |
|   | 3. | Hausfeld LLP and Susman Godfrey L.L.P. Should Be Appointed Settlement Class Counsel | 24 |
| VI. | | OTC Plaintiffs Will File a Separate Motion for Approval of a Notice Plan and Appointment of a Settlement Administrator | 25 |
| VII. | | Conclusion | 25 |

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..........................................................................................21, 24

*Anwar v. Fairfield Greenwich Ltd.*,
2012 WL 1981505 (S.D.N.Y. June 1, 2012) ...........................................................15

*In re AOL Time Warner, Inc.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).........................................................17, 20

*Atwood v. Intercept Pharm., Inc.*,
299 F.R.D. 414 (S.D.N.Y. 2014) .........................................................................22, 23

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)......................................................................19

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ...........................................................11

*Capsolas v. Pasta Res. Inc.*,
2012 WL 1656920 (S.D.N.Y. May 9, 2012) ..............................................................9

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*,
1987 WL 7030 (S.D.N.Y. Feb. 13, 1987)..................................................................12

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*,
504 F.3d 229 (2d Cir. 2007).....................................................................................21

*Charron v. Pinnacle Grp. N.Y. LLC*,
874 F. Supp. 2d 179 (S.D.N.Y. 2012).......................................................................12

*Chhab v. Darden Rests., Inc.*,
2016 WL 3004511 (S.D.N.Y. May 20, 2016) ..........................................................24

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .............................................................6

*In re Citigroup Inc. Bond Litig.*,
296 F.R.D. 147 (S.D.N.Y. 2013) ...........................................................................8, 19

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)............................................................................ *passim*

*Cohen v. J.P. Morgan Chase & Co.*,
  262 F.R.D. 153 (E.D.N.Y. 2009) ...................................................................21

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) ...........................................................................21

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. 2007) ..............................................................14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ....................................................9

*Fleisher v. Phoenix Life Ins. Co.*,
  2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)..............................................6, 10

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
  2015 WL 9952596 (S.D.N.Y. Dec. 15, 2015) .................................................25

*In re Global Crossing Secs. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................7

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)..................................................... *passim*

*In re High-Tech Emp. Antitrust Litig.*,
  2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) .................................................16

*In re IMAX Sec. Litig.*,
  272 F.R.D. 138 (S.D.N.Y. 2010) ...................................................................22

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ........................................................... *passim*

*In re Initial Publ. Offering Sec. Litig.*,
  260 F.R.D. 81 (S.D.N.Y. 2009) .....................................................................21

*Ivax Corp. v. Aztec Peroxides, LLC*,
  No. 02-cv-00593, ECF No. 78 (D.D.C. Aug. 24, 2005) .......................................16

*Johnson v. Nextel Commc'ns Inc.*,
  780 F.3d 128 (2d Cir. 2015)...............................................................22, 23, 24

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2011 WL 5980198 (S.D.N.Y. Nov. 29, 2011)............................................7, 8, 23

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2016 WL 2851333 (S.D.N.Y. May 13, 2016) ..................................................22

iv

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   2016 WL 7625708, (Dec. 21, 2016) ................................................................20, 25

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   299 F. Supp. 3d 430 (S.D.N.Y. 2018) ..............................................................21, 24

*McReynolds v. Richards–Cantave*,
   588 F.3d 790 (2d Cir. 2009) ....................................................................................7

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015) ................................................................15, 17

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) .......................................................15

*In re NASDAQ Market–Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y.1998) ........................................................................12, 19

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   169 F.R.D. 493 (S.D.N.Y. 1996) ............................................................................24

*In re Neurontin Antitrust Litig.*,
   No. 02-cv-2731, ECF No. 105 (D.N.J. Aug 6, 2014) ............................................16

*Park v. The Thomson Corp.*,
   2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008) ....................................................11, 12

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) .............................................................................9, 10

*Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*,
   2013 WL 4525323 (E.D.N.Y. Aug. 27, 2013) .......................................................25

*Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*,
   2015 WL 6964973 (E.D.N.Y. Nov. 10, 2015) .......................................................14

*Puddu v. 6D Glob. Techs., Inc.*,
   2021 WL 1910656 (S.D.N.Y. May 12, 2021) .......................................................7, 15

*Schwab Short-Term Bond Market Fund v. Lloyds Banking Group PLC*,
   22 F.4th 103 (2d Cir. 2021) ..................................................................................3, 11

*In re Titanium Dioxide Antitrust Litig.*,
   2013 WL 6577029 (D. Md. Dec. 13, 2013) ...........................................................16

*Tyson Foods Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ............................................................................................23

*In re Urethane Antitrust Litig.*,
    No. 04-md-1616, ECF No. 3276 (D. Kan. July 29, 2016) ..................................................15

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
    257 F.3d 256 (2d Cir. 2001) ..........................................................................................10

*In re Vitamin C Antitrust Litig.*,
    2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ...............................................................10

*In re Vitamin C Antitrust Litig.*,
    279 F.R.D. 90 (E.D.N.Y. 2012) ....................................................................................23

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ..............................................................................6, 10, 19

*In re Warner Chilcott Ltd. Sec. Litig.*,
    2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) .............................................................10

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ..............................................................................12

*Yang v. Focus Media Holding Ltd.*,
    2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ..............................................................14

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ *passim*

**Other Authorities**

No. 7 Futures & Derivatives L. Rep. 1 .........................................................................11

## I.      INTRODUCTION

The Court should grant preliminary approval of the OTC Plaintiffs'[1] settlement ("Settlement" or "Settlement Agreement") with Defendants MUFG Bank, Ltd. ("MUFG"), The Norinchukin Bank ("Norinchukin"), and Société Générale ("SocGen") (together with OTC Plaintiffs, the "Parties") in this case (the "OTC Action").[2] If approved, the proposed Settlement will resolve this complex case against MUFG, Norinchukin, and SocGen and result in a $90 million payment to the class and cooperation in pursuing claims against the remaining non-settling defendants, and bring the total settlement amount achieved in the OTC Action to $680 million. The Court should also grant preliminary approval of a proposed Plan of Distribution.[3]

The Settlement was reached after extended, frank, and hard-fought negotiations, including negotiations conducted under the guidance of the Honorable Layn R. Phillips. The releases and other material terms in the Settlement are either identical to or substantially similar to those in the settlements reached between OTC Plaintiffs and Barclays Bank plc ("Barclays") (final approval August 1, 2018), between OTC Plaintiffs, Citibank, N.A. and Citigroup Inc. (collectively, "Citi") (final approval August 1, 2018), between OTC Plaintiffs and Deutsche Bank AG ("Deutsche Bank") (final approval October 25, 2018), and between OTC Plaintiffs and HSBC Bank plc ("HSBC") (final approval October 25, 2018). *See* ECF Nos. 2655, 2746. The proposed Plan of Distribution has a reasonable, rational basis and is materially identical to those preliminarily approved in prior settlements. *See* ECF Nos. TK.

---

[1] OTC Plaintiffs are Mayor and City Council of Baltimore, City of New Britain, Vistra Energy Corp., Yale University, and Jennie Stuart Medical Center, Inc.

[2] Unless otherwise defined herein, all capitalized terms have the meaning ascribed to them in the Settlement Agreement. The Settlement Agreement is attached as Exhibit A to the Declaration of Seth Ard ("Ard Declaration" or "Ard Decl."),filed concurrently herewith.

[3] The proposed Plan of Distribution of settlement funds in connection with the Settlement is attached as Exhibit B to the Ard Declaration.

On preliminary approval, the question is whether the court "will likely be able to: (i) approve the proposed settlement under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (citation omitted). The proposed Settlement with MUFG, Norinchukin, and SocGen passes both tests.

## II. PROCEDURAL HISTORY[4]

OTC Plaintiffs commenced this litigation in 2011, alleging that the sixteen banks that comprised the U.S. Dollar LIBOR panel unlawfully conspired to suppress LIBOR.[5] Since then, OTC Plaintiffs have defended various iterations of the OTC Complaint—which have included antitrust, unjust enrichment, and breach of the implied covenant of good faith and fair dealing claims—from eight Rule 12(b) motions to dismiss and from two motions in opposition to the OTC Plaintiffs' motions for leave to amend the complaint. These motions have involved complex and sometimes novel legal arguments regarding the plausibility of the alleged conspiracy; pleading requirements for a conspiracy and the sufficiency of Plaintiffs' allegations thereunder; standing under the antitrust laws; standing and pleading requirements for contractual and quasi-contractual claims; personal jurisdiction for state law and federal antitrust claims; and the application of tolling doctrines to the statute of limitations.

OTC Plaintiffs' primary claim—their antitrust claim—was previously dismissed as to all Defendants, reinstated by the Second Circuit, and dismissed again as to many Defendants, including MUFG, Norinchukin, and SocGen, on personal jurisdiction grounds. On December 30, 2021, the Second Circuit reinstated OTC Plaintiffs' antitrust claims against, *inter alia*, Defendants

---

[4] For a more extended discussion of the procedural history of this case, including a summary of the claims and the settlement negotiations, *see* Ard Decl. ¶¶ 8-47.

[5] All references to LIBOR refer to U.S. Dollar LIBOR.

MUFG, Norinchukin, and SocGen, and remanded the case for further proceedings. *See Schwab Short-Term Bond Market Fund v. Lloyds Banking Group PLC*, 22 F.4th 103 (2d Cir. 2021).

In advance of the Settlement, OTC Plaintiffs engaged in extensive class certification and expert discovery, including the analysis of 4.8 million documents produced in discovery, which in turn led to the eyes on review of over 3 million documents. OTC Plaintiffs also listened to and analyzed more than 100,000 audio files, totaling over 140,000 hours of recorded conversation, produced by the Defendants. The parties also conducted twelve depositions of expert witnesses and seven OTC Plaintiff class representatives.

OTC Plaintiffs have entered into settlements with four other Defendants totaling $590 million: a $120 million settlement with Barclays was reached in November 2015; a $130 million settlement with Citi in July 2017; a $240 million settlement with Deutsche Bank in February 2018; and a $100 million settlement with HSBC in February 2018. As part of those settlements, Barclays, Citi, Deutsche Bank, and HSBC agreed to provide cooperation to OTC Plaintiffs in pursuit of their claims against the non-settling Defendants.

## III.   SETTLEMENT NEGOTIATIONS AND SETTLEMENT TERMS

Counsel for MUFG, Norinchukin, and SocGen and OTC Plaintiffs' Counsel first discussed the possibility of settlement in mid-February 2023. Ard Decl. ¶ 49. The Honorable Layn Phillips, a former federal judge, was engaged as a mediator to facilitate settlement. *Id.* Counsel for MUFG, Norinchukin, and SocGen and OTC Plaintiffs' Counsel engaged in telephonic discussions and negotiations thereafter, including communications facilitated by Judge Phillips. *Id.*

On March 10, 2023, with the assistance of Judge Phillips, the Parties reached an agreement in principle to settle. Ard Decl. ¶ 50. Over the next several weeks, the Parties engaged in

3

negotiations regarding the final Settlement Agreement, which was executed on May 12, 2023.[6] *Id.*

At all times, both sides vigorously negotiated their respective positions. *Id.* ¶ 51. OTC Plaintiffs'

Counsel were well-informed of the facts and issues concerning liability and damages and the

relative strengths and weaknesses of each side's litigation position. *Id.*

> The Settlement is on behalf of a Settlement Class defined as:

> All persons or entities (other than Defendants and their employees, affiliates,
> parents, and subsidiaries) that purchased in the United States, directly from a
> Defendant (or a Defendant's subsidiaries or affiliates), a U.S. Dollar LIBOR-Based
> Instrument and that owned the U.S. Dollar LIBOR-Based Instrument any time
> during the period August 2007 through May 2010 (the "Class Period").[7]

Settlement Agreement ¶ 3(a).

The $90 million Settlement Fund is non-reversionary; if the Court gives final approval of

the Settlement, no money will be returned to MUFG, Norinchukin, and SocGen. *Id.* ¶¶ 10(b), 11(j).

The Settlement also obligates MUFG, Norinchukin, and SocGen to provide cooperation to OTC

Plaintiffs in their ongoing litigation of the OTC Action. *Id.* ¶ 15. The cooperation elements fall

into two categories: documents and testimonial evidence. *Id.* As further specified in the Settlement

Agreement, this cooperation will come in the form of participation in depositions taken in other

---

[6] The Settlement Agreement is Exhibit A to the Ard Declaration.

[7] Specifically excluded from the Class are Defendants; Released Parties; co-conspirators; the officers, directors, or employees of any Defendant, Released Party, or co-conspirator; any entity in which any Defendant, Released Party, or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant, Released Party, or co-conspirator and any person acting on their behalf. Settlement Agreement ¶ 3(b). Also excluded from the Class are any judicial officers presiding over this action and the members of his/her immediate families and judicial staff, and any juror assigned to the OTC Action. *Id.* And for purposes of this Settlement Class definition, U.S. Dollar LIBOR-Based Instrument means an instrument that includes any term, provision, obligation or right to be paid by or to receive interest from a Defendant (or its subsidiaries or affiliates) based upon the U.S. Dollar LIBOR rate, including but not limited to asset swaps, bonds/floating rate notes, collateralized debt obligations, credit default swaps, forward rate agreements, inflation swaps, interest rate swaps, total return swaps, options or floating rate notes. *Id.* ¶ 2(uu). For the avoidance of doubt, U.S. Dollar LIBOR-Based Instrument does not include instruments for which a Defendant (or a Defendant's subsidiaries or affiliates) does not pay interest based upon any U.S. Dollar LIBOR rate, such as corporate or municipal bonds issued by non-Defendants. *Id.* Nor does it include instruments that include only a term, provision, or obligation requiring the purchaser to pay interest based upon the U.S. Dollar LIBOR rate, such as business, home, student or car loans, or credit cards. *Id.*

actions pending in the U.S. Dollar LIBOR MDL and the provision of witnesses to testify at trial pursuant to a validly issued notice or subpoena. *Id.* ¶ 15(g)(vi). In addition to the documents already produced to OTC Plaintiffs, the Settling Defendants shall also produce any documents subsequently produced to other parties in the U.S. Dollar LIBOR MDL and shall assist OTC Plaintiffs in authenticating documents that the Settling Defendants produced in the OTC Action. *Id.* ¶¶ 15(g)(iii), 15(g)(v). Finally, Settling Defendants shall respond to reasonable requests for additional relevant information about OTC Plaintiffs' claims in the OTC Action. *Id.* ¶ 15(g)(vii).

In exchange for MUFG, Norinchukin, and SocGen's consideration, the Released Parties (as defined in the Settlement Agreement) shall be released of any and all manner of claims arising from or relating in any way to any conduct alleged or that could have been alleged in and arising from the factual predicate of the OTC Action with certain specified exclusions, including claims related to transactions in the Exchange-Based Plaintiffs' Action and the Bondholder Action. Settlement Agreement ¶¶ 2(gg). Also excluded from the release are claims based on U.S. Dollar LIBOR linked instruments that were not issued by a Defendant (or its subsidiaries or affiliates) or which were not directly purchased from a Defendant (or its subsidiaries or affiliates). *Id.* The full text of the release provisions is set forth in the Settlement Agreement. *See id.* ¶¶ 2(gg), 2(ss).

Finally, the Settlement Agreement permits MUFG, Norinchukin, and SocGen to terminate the agreement based upon a confidential Supplemental Agreement between the Parties. *See* Settlement Agreement ¶ 14(a)(i).

## IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

There are two steps to approval: preliminary and final approval. *See* Fed. R. Civ. P. 23(e). At preliminary approval, the Court must assess whether the proposed settlement "is fair, reasonable, and adequate" under the four factors enumerated by Rule 23(e)(2): (A) "the class representatives and class counsel have adequately represented the class;" (B) "the proposal was

negotiated at arm's length;" (C) "the relief provided for the class is adequate," after accounting for (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," (iii) "the terms of any proposed award of attorney's fees, including timing of payment," and (iv) "any agreement required to be identified under Rule 23(e)(3);" and (D) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). The first two factors focus on "procedural fairness," while the latter two factors (and associated subfactors) focus on "substantive fairness." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *9-10 (S.D.N.Y. Oct. 16, 2019).

While "the Court's role in reviewing the proposed settlement 'is demanding because the adversariness of litigation is often lost after the agreement to settle,'" *In re GSE Bonds*, 414 F. Supp. 3d at 692 (citation omitted), courts in this Circuit recognize that "there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions." *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *4 (S.D.N.Y. Sept. 9, 2015) (citation omitted). Indeed, the Second Circuit is "mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (cleaned up) (citations omitted). "Absent 'fraud or collusion,' [courts] 'should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'" *Christine Asia*, 2019 WL 5257534, at *8 (citation omitted). As explained below, the Settlement is both substantively and procedurally fair such that it warrants preliminary approval.

## A.    The Settlement Is Procedurally Fair Under Rule 23(e)(2)(A)–(B)

The Court must first consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)–(B).

### 1. Adequacy of Representation

In assessing adequacy of representation under Rule 23(e)(2)(A), the court focuses on whether "'(1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *In re GSE Bonds*, 414 F. Supp. 3d at 692 (citation omitted). Where an experienced class counsel has negotiated an arm's length agreement after "meaningful discovery," a "presumption of fairness, reasonableness, and adequacy" attaches. *McReynolds v. Richards–Cantave,* 588 F.3d 790, 803 (2d Cir. 2009) (citation omitted). That presumption also applies "when a settlement is reached with the assistance of a mediator." *Puddu v. 6D Glob. Techs., Inc.*, 2021 WL 1910656, at *4 (S.D.N.Y. May 12, 2021). Here, the presumption of fairness, reasonableness, and adequacy applies.

Plaintiffs' interests are aligned with the remainder of the Settlement Class: each suffered the same injury (monetary losses resulting from receiving interest payments at an interest rate based on LIBOR) and have the same interest in maximizing recovery from MUFG, Norinchukin, and SocGen. *See In re GSE Bonds*, 414 F. Supp. 3d at 692 ("[Pl]aintiffs' interests are aligned with other class members' interests because they suffered the same injuries . . . . Because of these injuries, plaintiffs have an 'interest in vigorously pursuing the claims of the class.' (citation omitted)); *In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) ("There is no conflict between the class representatives and the other class members. All share the common goal of maximizing recovery."); *see also* Section V.A.4, *infra*.

OTC Plaintiffs' Counsel are highly qualified, experienced, and well-informed on the strengths and weakness of the case. This Court has previously concluded that OTC Plaintiffs' Counsel has the requisite skills and experience in class actions to lead this litigation on behalf of the Settlement Class. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2011 WL 5980198, at *3-4 (S.D.N.Y. Nov. 29, 2011). OTC Plaintiffs' Counsel's view as to the fairness of the

settlement is well informed: over eleven years of litigation, they have reviewed and analyzed over 3 million documents, listened to and analyzed more than 100,000 audio files totaling over 140,000 hours of recorded conversations, and worked closely with renowned economic experts. Ard Decl. ¶ 46. They have briefed numerous motions before the Court and the Second Circuit, including their class certification motion, which was supported by more than sixty pages of briefing, more than sixty pages of attorney declarations, hundreds of pages of expert reports, and 149 exhibits. Ard Decl. ¶¶ 13-17, 25, 33, 41-42, 46. Rule 23(e)(2)(A) weighs in favor of preliminary approval.

### 2. Presence of Arm's-Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness. Where the proposed settlement "is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, 'the Settlement will enjoy a presumption of fairness.'" *In re GSE Bonds*, 414 F. Supp. 3d at 693 (citation omitted); *see also In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) ("This presumption arises because if the negotiation process is fair 'the forces of self-interest and vigorous advocacy will of their own accord produce the best possible result for all sides.'" (citation omitted)). "[G]reat weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.'" *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (Buchwald, J.) (citation omitted).

The proposed settlement was negotiated at arm's-length by sophisticated counsel. OTC Plaintiffs' Counsel has the requisite skills and experience in class actions to lead this litigation on behalf of the putative Settlement Class, and has experience in negotiating arm's-length settlements in complex class litigation. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2011 WL 5980198, at *3-4; Ard Decl. ¶ 48. And MUFG, Norinchukin, and SocGen are likewise represented by reputable and highly experienced counsel. The settlement negotiations between OTC Plaintiffs and MUFG, Norinchukin, and SocGen were vigorous, and involved an

accomplished and engaged mediator—the Honorable Layn Phillips. Ard Decl. ¶¶ 49-51. The use of a mediator "strengthen[s]" the presumption that the compromise is fair and reasonable. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *14 (S.D.N.Y. Nov. 8, 2010); *see also Capsolas v. Pasta Res. Inc.*, 2012 WL 1656920, at *1 (S.D.N.Y. May 9, 2012) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."). That the mediator is a retired judge "further buttresse[s]" the "presumption of correctness." *See In re IMAX Sec. Litig.*, 283 F.R.D. at 189 (citing *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008)). These facts demonstrate that the Settlement was negotiated at arm's length by capable counsel. Rule 23(e)(2)(B) weighs in favor of preliminary approval.

## B.    The Settlement Is Substantively Fair Under Rule 23(e)(2)(C)–(D)

Next, the Court must assess substantive fairness. Rule 23(e)(2)(C) enumerates four factors to be considered: (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," (iii) "the terms of any proposed award of attorney's fees, including timing of payment," and (iv) "any agreement required to be identified under Rule 23(e)(3)."

Before Rule 23(e)(2)(C)'s four-factor framework was codified in December 2018, courts in this Circuit employed the nine-factor framework of *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).[8] The 2018 amendments to Rule 23 were intended to "add to, rather than displace, the *Grinnell* factors," and there is "significant overlap" under the two frameworks. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29

---

[8] The *Grinnell* factors are as follows: "(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463.

(E.D.N.Y. 2019) (citing 2018 Advisory Notes to Fed. R. Civ. P. 23, Subdiv. (e)(2)). Thus, this brief addresses both sets of factors, noting where they overlap.[9]

### 1.    Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) requires courts to consider "the costs, risks, and delay of trial and appeal." This inquiry overlaps with *Grinnell* factors one (the "complexity, expense, and likely duration of the litigation") and factors four, five, and six (the risks of establishing liability and damages and maintaining the class). *See In re GSE Bonds*, 414 F. Supp. 3d at 693-94; *In re Payment Card*, 330 F.R.D. at 36-40. In assessing these risks, the Court need not "decide the merits of the case," "resolve unsettled legal questions," or "foresee with absolute certainty the outcome of the case." *Phoenix*, 2015 WL 10847814, at *8 (cleaned up) (citation omitted). "'Rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Id.* (quoting *In re Global Crossing*, 225 F.R.D. at 459).

This litigation is highly complex. OTC Plaintiffs can think of no other case that better embodies the challenges faced by plaintiffs in antitrust litigation. Numerous federal courts have recognized that "[f]ederal antitrust cases are complicated, lengthy, and bitterly fought," *Wal-Mart*, 396 F.3d at 118, "as well as costly." *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012); *see also Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual complexities of antitrust cases"). The OTC Action was initially filed over eleven years ago and has had to survive multiple rounds of motions to dismiss on complex issues of standing and jurisdiction. OTC Plaintiffs' primary claim—their antitrust claim—was previously dismissed as to all Defendants, reinstated by the Second Circuit, and

---

[9] The Court need not consider the second *Grinnell* factor—the "reaction of the class" —at this time. *See, e.g., In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is premature.").

dismissed again as to many Defendants, including MUFG, Norinchukin, and SocGen, on personal jurisdiction grounds. In December 2021, the Second Circuit ruled on the personal jurisdiction issue and reinstated OTC Plaintiffs' antitrust claims against MUFG, Norinchukin, SocGen, and other non-settling Defendants. *See Schwab Short-Term Bond Market Fund*, 22 F.4th 103.

OTC Plaintiffs likely would not have obtained recovery at trial for years. OTC Plaintiffs face the weighty task of maneuvering through a highly contentious discovery process on the alleged suppression of LIBOR and conspiracy to suppress LIBOR. *See* ECF No. 3425 at 1. OTC Plaintiffs plan to move for class certification against MUFG, Norinchukin, and SocGen, which will require extensive briefing, and the party losing that motion would likely pursue a Rule 23(f) petition. *See Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010) ("There is no assurance of obtaining class certification through trial, because a court can re-evaluate the appropriateness of certification at anytime during the proceedings."); *see also In re IMAX Sec. Litig.*, 283 F.R.D. at 191 (noting that "'if insurmountable management problems were to develop at any point, class certification can be revisited at any time'" (citation omitted)).

MUFG, Norinchukin, and SocGen have already and will continue to vigorously dispute liability. Summary judgment and class certification are scheduled to move forward concurrently in the OTC Action at substantial expense to the parties. *See* ECF No. 3425 at 6-7. At the end of this process, OTC Plaintiffs face significant risks in trying this case, which are amplified by the complexity of the LIBOR market. This litigation presents the Court, the parties, and eventually, a jury, with the task of understanding extremely complex derivative instruments in an opaque market. Should the case proceed to trial, "[t]he complexity of Plaintiff's claims *ipso facto* creates uncertainty. . . . A trial on these issues would likely be confusing to a jury." *Park v. The Thomson Corp.*, 2008 WL 4684232, at *4 (S.D.N.Y. Oct. 22, 2008); *see* 31 No. 7 Futures & Derivatives L.

Rep. 1 ("Derivative instruments, in most cases, are highly complex and difficult to understand for even highly sophisticated and intelligent investors."). This makes proving liability and damages, both of which require the assistance of experts, all the more risky.[10]

Additional risk is created by the fact that MUFG, Norinchukin, and SocGen have significant litigation resources. Absent settlement, MUFG, Norinchukin, and SocGen were most certainly prepared to vigorously contest their liability and damages. "Establishing otherwise [would] require considerable additional pre-trial effort and a lengthy trial, the outcome of which is uncertain." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 199 (S.D.N.Y. 2012), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013). Put simply, "[l]iability is never automatic." *Park*, 2008 WL 4684232, at *4. And assuming OTC Plaintiffs would be able to establish liability at trial, "[t]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *In re NASDAQ Market–Makers Antitrust Litig.* ("*NASDAQ III*"), 187 F.R.D. 465, 476 (S.D.N.Y.1998). In sum, "[t]here is a substantial risk that the plaintiff might not be able to establish liability at all and, even assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away." *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, 1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987).

While OTC Plaintiffs' Counsel and the defendants have already expended significant resources litigating this case, "[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result." *NASDAQ III*, 187 F.R.D. at 477. These many risks and delays weigh in favor of approval.

---

[10] It is a foregone conclusion that this case will require a "battle of the experts." "In this 'battle of experts,' it is difficult to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad of non-actionable factors . . . ." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744–45 (S.D.N.Y. 1985).

### 2.    Effectiveness of the Proposed Method of Distributing Relief

Rule 23(e)(2)(C)(ii) requires that the "proposed method of distributing relief" be "effective." While a distribution plan satisfying the Rule "'must be fair and adequate,' it 'need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'" *In re GSE Bonds*, 414 F. Supp. 3d at 694 (citation omitted). Here, OTC Plaintiffs' Counsel, which has extensive experience in class action settlements, prepared the Plan of Distribution working in consultation with industry and economic consultants.[11] OTC Plaintiffs retained Dr. Bernheim and Bates White to create a model of the but-for world, that is, an estimate of what LIBOR would have been, in each tenor, and for each period during the Class Period, absent its suppression by the US Dollar LIBOR Panel Banks. Dr. Bernheim's report was served in support of OTC Plaintiffs' successful motion for class certification of their antitrust claims.

The Plan of Distribution for the Settlement is materially identical to (i) the Amended Plan of Distribution for the Barclays Settlement, ECF No. 2239-1 (preliminarily approved on August 28, 2017, ECF No. 2243); (ii) the Plan of Distribution for the Citi Settlement, ECF No. 2253-1 (preliminarily approved on September 26, 2017, ECF No. 2290); and (iii) the Plan of Distribution for the Deutsche Bank and HSBC Settlements, ECF No. 2517-1 (preliminarily approved on June 21, 2018, ECF No. 2579). For each qualifying LIBOR instrument(s), the Plan of Distribution calculates the claimant's "overall notional stake" as the sum of the "suppressed daily underpayments" for the instrument, based on the modeling developed by Dr. Bernheim. The suppressed daily underpayments for each instrument are calculated as follows:

> For each day during the Class Period when the Authorized Claimant had the right to be paid or to receive interest based upon the U.S. Dollar LIBOR rate, the suppressed daily underpayment equals: the dollar amount of the LIBOR-based payment that was due to the Authorized Claimant that day (using historical reported

---

[11] The Plan of Distribution is Exhibit B to the Ard Declaration.

> LIBOR rates and payment frequency) multiplied by the magnitude of suppression applicable for that day and then divided by the historical reported LIBOR rate for that day.

Ard Decl. ¶ 54; Ex. B ¶ 6. There is a clear rational basis for this proposal, as evidenced by the Court approving materially identical plans. *See e.g.*, *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, 2015 WL 6964973, at *7 (E.D.N.Y. Nov. 10, 2015) (finding plan of allocation "is both fair and reasonable" where the plan was "the same as the one [the court] approved" previously and there was "no reason to reach a different result").

OTC Plaintiffs propose to distribute the Net Settlement Funds to the settlement class members *pro rata*, in proportion to their notional stakes for each Settlement, based on the foregoing Plan of Distribution. Ard Decl. ¶ 55; Ex. B. Courts routinely approve *pro rata* distributions of this sort. *See, e.g.*, *In re GSE* Bonds, 414 F. Supp. 3d at 694-95 (proposed distribution method effective where "the claimant's pro rata share of the settlement would be obtained by dividing the individual transaction claim amount by the total of all transaction claim amount"); *Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *10 (S.D.N.Y. Sept. 4, 2014) ("'Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach.'" (citation omitted)).

This proposal has more than a rational basis. OTC Plaintiffs' Counsel recommends the proposed Plan of Distribution as being in the best interests of the Settlement Class. *See* Ard Decl. ¶ 56; *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *11 (S.D.N.Y. 2007) ("In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel."). If any member of the Settlement Class disagrees, she will have a chance to explain why in advance of the Final Approval hearing, when the fairness and adequacy of the Plan of Distribution will be evaluated. This factor also weighs in favor of approval.

### 3.    The Terms of Any Proposed Award of Attorney's Fees

The Court also considers "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Sufficiently in advance of the final approval hearing to enable class members and opportunity to object, counsel for OTC Plaintiffs will apply for an award of attorneys' fees not to exceed 33-1/3% of the Settlement Fund and reimbursement of litigation expenses. Settlement Agreement ¶ 9. OTC Plaintiffs' counsel will not receive any funds until the Court has granted their fee request. *Id.* The Parties have agreed that the Settlement is not conditioned on the Court's approval of a fees and expense requests. *Id.* ¶¶ 9, 13(b).

Awards of this magnitude have been deemed reasonable in comparable class actions. *See Puddu*, 2021 WL 1910656, at *6 (finding that "33.3% is within the range of fee awards typically awarded" and collecting cases); *In re GSE Bonds*, 414 F. Supp. 3d at 695 ("Courts in this District have approved fees as high as 33.5% from comparable class settlement funds, finding that they are 'well within the applicable range of reasonable percentage fund awards.' (citation omitted)); *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) ("[I]n numerous common fund cases, fees have been awarded that represent one-third of the settlement fund."); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) ("Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit"). Class Counsel's fee request therefore does not weigh against preliminary approval and will be briefed more fulsomely prior to the final approval stage.

OTC Plaintiffs also plan to seek incentive awards not to exceed $100,000 for each named Plaintiff. "Courts consistently approve awards in class action lawsuits to compensate named plaintiffs for the services they provide and burdens they endure during litigation." *Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012). And incentive awards of $100,000 or greater are routinely awarded. *See, e.g.*, *In re Urethane Antitrust Litig.*, No. 04-md-

1616, ECF No. 3276, ¶ 5 (D. Kan. July 29, 2016) (granting service awards of $150,000 to $200,000 to class representatives); *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5158730, at *17-18 (N.D. Cal. Sept. 2, 2015) (awarding between $100,000 to $140,000 to each of five class representatives); *In re Neurontin Antitrust Litig.*, No. 02-cv-2731, ECF No. 105 ¶ 31 (D.N.J. Aug. 6, 2014) (granting service awards of $100,000 to each class representative); *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (awarding $125,000 to lead class representative); *Ivax Corp. v. Aztec Peroxides, LLC*, No. 02-cv-00593, ECF No. 78 at 2 (D.D.C. Aug. 24, 2005) (granting service awards of $100,000 to each class representative in an antitrust price-fixing class action).

### 4.   Any Agreement Identifiable Under Rule 23(e)(3)

Rule 23(e)(2)(C)(iv) and 23(e)(3) require that any agreement "made in connection with the proposal" be identified. OTC Plaintiffs and MUFG, Norinchukin, and SocGen have entered into one such agreement, under which MUFG, Norinchukin, and SocGen may terminate the Settlement Agreement within five (5) Business Days following receipt of a list of all person opting out of the Settlement Class. Settlement Agreement ¶ 14(a)(i). If OTC Plaintiffs elect to challenge Settling Defendants' termination, then the Mediator shall determine whether termination is appropriate pursuant to the agreement. *Id.* This factor is neutral and does not undermine preliminary approval.

MUFG, Norinchukin, and SocGen have entered into a confidential agreement among themselves regarding the amount of the Settlement Amount for which MUFG, Norinchukin, and SocGen shall each be responsible. Settlement Agreement ¶ 14(a)(ii).

### 5.   Equitable Treatment of Class Members

Rule 23(e)(2)(D) requires the Court to assess whether "the proposal treats class members equitably relative to each other." Here, the proposed plan of allocation equitably treats class members by distributing damages on a *pro rata* basis using each Class Members' share of the total

16

damages, following the plans of distribution previously approved by the Court. *See supra* Section IV.B.2. Courts have repeatedly approved *pro rata* allocation plans in class action litigation. *See, e.g.*, *In re GSE Bonds*, 414 F. Supp. 3d at 698-99 ("[C]laimants will be treated equitably by receiving a *pro rata* share of the recovery based on the estimated price impact of defendants' conduct . . . ."); *Meredith Corp. v. SESAC*, LLC, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (*pro rata* plan of allocation "has an obvious rational basis, appears to treat the class members equitably, faced no objections from class members, and has the benefit of simplicity").

### 6. The Proposed Settlement Satisfies Other Relevant Factors

#### (a) The Stage of the Proceedings

Courts also consider the third *Grinnell* factor, "the stage of the proceedings and the amount of discovery completed." *Grinnell*, 495 F.2d at 463. "The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). Discovery need not be fully complete before a settlement can be approved. *See In re IMAX Sec. Litig.*, 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties."). It is enough for the parties to have "engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the Settlement." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10 (citation omitted).

Numerous facts demonstrate that this *Grinnell* factor supports preliminary approval. First, the parties have been litigating this action for over eleven years and have received at least eight lengthy rulings from the Court on the viability of their claims. *See* ECF Nos. 286; 389; 568; 1164; 1234; 1676; 2452; 2837; *see also In re IMAX Sec. Litig.*, 283 F.R.D. at 190 (noting that the case

17

had "been pending for almost six years"). Second, the parties have briefed and argued the viability of the antitrust claim on numerous occasions both in the Second Circuit and before this Court. Third, OTC Plaintiffs obtained from MUFG, Norinchukin, SocGen and other Defendants millions of documents and audio files previously provided to regulators as well as voluminous transaction data. Fourth, the OTC Plaintiffs have undertaken extensive legal analysis of the OTC Plaintiffs' claims and the reasonable value of the case. Fifth, OTC Plaintiffs' Counsel engaged consulting experts to better understand the LIBOR market and the magnitude of harm inflicted on the Settlement Class. Sixth, OTC Plaintiffs' Counsel learned additional facts through cooperation from the earlier settling defendants. Seventh, the Parties conducted mediator-assisted settlement negotiations over the course of several weeks; these negotiations, which were extremely hard-fought, were accompanied by an honest and frank discussion on the relative strengths and weaknesses of the parties' claims and defenses. Ard Decl. ¶¶ 48–51. The information gained through these various means have provided OTC Plaintiffs' Counsel with a comprehensive understanding of the relative strengths and weaknesses of the case that has enabled them to negotiate a settlement believed to be an excellent result for the Settlement Class. *Id.* ¶ 51. The Court should thus conclude this third *Grinnell* factor supports preliminary approval.

### (b) The Ability of Defendants MUFG, Norinchukin, and SocGen to Withstand a Greater Judgment

Courts also weigh the seventh *Grinnell* factor, "the ability of the defendants to withstand a greater judgment." *Grinnell Corp.*, 495 F.2d at 463; *see also In re GSE Bonds*, 414 F. Supp. 3d at 696. Here, even if MUFG, Norinchukin, and SocGen could withstand a greater judgment, this does not undermine the fairness of the Settlement. *In re IMAX Sec. Litig.*, 283 F.R.D. at 191 ("[T]his factor, standing alone, is not sufficient to preclude a finding of substantive fairness where the other factors weigh heavily in favor of approving a settlement."). In any event, a $90 million settlement

18

is significant and application of the other relevant factors weighs so strongly in favor of preliminary approval that consideration of this factor alone does not militate against granting preliminary approval. *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. at 157 (approving settlement with Citigroup Inc., one of the settling defendants, though "Citigroup could likely withstand a greater judgment"); *In re IMAX Sec. Litig.*, 283 F.R.D. at 191 ("But a defendant is not required to 'empty its coffers' before a settlement can be found adequate." (citation omitted)).

### (c) The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The last two *Grinnell* factors "'recognize[] the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Wal-Mart Stores*, 396 F.3d at 119 (citation omitted). In applying these factors, "'[t]he adequacy of the amount achieved in settlement may not be judged in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *In re IMAX Sec. Litig.*, 283 F.R.D. at 191 (citation omitted); *see also NASDAQ III*, 187 F.R.D. at 478 ("Ultimately, the exact amount of damages need not be adjudicated for purposes of settlement approval."). Consequently, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2; *see also In re IMAX Sec. Litig.*, 283 F.R.D. at 191 ("[T]he Second Circuit 'has held that a settlement can be approved even though the benefits amount to a small percentage of the recovery sought.'" (citation omitted)).

Continuing this litigation against MUFG, Norinchukin, and SocGen would, as outlined above, necessitate the expenditure of countless hours and dollars over several more years with no guarantee that OTC Plaintiffs would ultimately prevail at trial or following probable appellate review. These risks are arguably dispositive for these *Grinnell* factors. *See In re Bear Stearns Cos.,*

*Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012) ("[T]he propriety of a given settlement amount is a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery (or reduced recovery).").

In comparison to the antecedent risks of continuing litigation against MUFG, Norinchukin, and SocGen, this fifth settlement provides OTC Plaintiffs and the Settlement Class both significant cash compensation ($90 million) and cooperation. Settlement Agreement ¶¶ 10(b), 15. That OTC Plaintiffs and the Settlement Class will receive compensation now rather than years from now, if at all, weighs strongly in favor of preliminary approval. *See In re AOL Time Warner*, 2006 WL 903236, at *13 ("[T]he benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery . . . ."). As to the cooperation discussed above, *see supra* Section III, though this is not quantifiable in "dollars and cents," the value of MUFG, Norinchukin, and SocGen's cooperation to the Settlement Class is arguably invaluable. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("Barclays Order"), 2016 WL 7625708, at *2 (Dec. 21, 2016) (noting "the intangible benefit of cooperation against the non-settling defendants").

### C.  Rule 23(e)(2) Conclusion

In sum, the relevant factors under Rule 23(e)(2) and *Grinnell* strongly support approval. This Court should find that it is likely to approve the Settlement under Rule 23(e)(2) and permit the issuance of notice of the settlement.

## V.  CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

This Court must also determine whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). In accordance with the Settlement, OTC Plaintiffs respectfully request that the Court certify the following class (the "Settlement Class" or "OTC Class") for settlement purposes:

All persons or entities (other than Defendants and their employees, affiliates,

parents, and subsidiaries) that purchased in the United States, directly from a Defendant (or a Defendant's subsidiaries or affiliates), a U.S. Dollar LIBOR-Based Instrument and that owned the U.S. Dollar LIBOR-Based Instrument any time during the period August 2007 through May 2010 (the "Class Period").

Settlement Agreement ¶ 3(a).

Certification of a settlement class is appropriate where that class meets all of the requirements of Rule 23(a) as well as one of the requirements of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). When certification of a settlement class is sought, "'courts must take a liberal rather than a restrictive approach.'" *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157–58 (E.D.N.Y. 2009) (citation omitted). This Court certified a litigation class with respect to OTC Plaintiffs' antitrust claims, which demonstrates that the relaxed standard applicable in the context of settlement class certification is easily satisfied. *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR VII*"), 299 F. Supp. 3d 430, 584–607 (S.D.N.Y. 2018). For the reasons stated in the Court's certification opinion and set forth below, the proposed Settlement Class more than satisfies the requirements for certification of a settlement class

### A. The Settlement Class Meets the Rule 23(a) Requirements

#### 1. Rule 23(a)(1) – Numerosity

Numerosity is presumed in the Second Circuit where a class consists of forty (40) or more members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *In re Initial Publ. Offering Sec. Litig.*, 260 F.R.D. 81, 90 (S.D.N.Y. 2009). Here, there are thousands of members of the Settlement Class. Accordingly, the numerosity requirement is easily met here.

#### 2. Rule 23(a)(2) – Commonality

"'The commonality requirement is met if plaintiffs' grievances share a common question of law or fact.'" *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 245 (2d Cir. 2007) (citation omitted). "'Where the same conduct or

21

practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.'" *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137–38 (2d Cir. 2015) (citation omitted). It thus "is not the law" that "a common question must be common to *every* class member." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 2851333, at *1 (S.D.N.Y. May 13, 2016) (citing *Johnson*, 780 F.3d at 137) (emphasis in original). OTC Plaintiffs' claims present numerous common issues of law and fact, including whether the panel banks suppressed LIBOR during the Class Period; whether panel banks conspired to suppress LIBOR; whether the panel banks' conduct violates the Sherman Act; and the appropriate measure of damages for the harm sustained by OTC Plaintiffs and members of the class. Accordingly, the commonality requirement is satisfied.

### 3.      Rule 23(a)(3) – Typicality

"'The typicality threshold is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise.'" *Atwood v. Intercept Pharm., Inc.*, 299 F.R.D. 414, 416 (S.D.N.Y. 2014) (Buchwald, J.) (citation omitted). Small differences do not defeat typicality. "Rather, a plaintiff fails to meet Rule 23(a)'s typicality requirement if its claims are 'subject to unique defenses which threaten to become the focus of the litigation.'" *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 147 (S.D.N.Y. 2010) (Buchwald, J.) (citation omitted). In this case, the class representatives and class members all assert claims that arise from the panel banks' alleged unlawful suppression of LIBOR, and their injuries result from that conduct. Thus, the typicality requirement is satisfied.

### 4.      Rule 23(a)(4) – Adequacy

"'The adequacy requirement is satisfied where: (1) there is no conflict between the proposed lead plaintiff and the members of the class; (2) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) class counsel is qualified,

experienced, and generally able to conduct the litigation.'" *Atwood*, 299 F.R.D. at 416–17 (citation omitted). "[A] conflict of interest will not destroy adequacy under Rule 23 unless the conflict is 'fundamental' and concrete." *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 102 (E.D.N.Y. 2012) (citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001) (overruled on other grounds by *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006))). No "fundamental" conflict exists between the class representatives and members of the class. The class representatives hold claims potentially worth millions of dollars, assuring their vigorous advocacy. And the Court has found that OTC Plaintiffs' Counsel have the qualifications, experience, and ability to prosecute the claims. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2011 WL 5980198, at *3–4. OTC Plaintiffs have satisfied the adequacy of representation prerequisite.

### B.    The Settlement Class Meets the Rule 23(b)(3) Requirements

#### 1.    Predominance

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* (citation omitted); *Johnson*, 780 F.3d at 138 ("Common issues—such as liability—may be certified, consistent with Rule 23, even where other issues—such as damages—do not lend themselves to classwide proof." (citation omitted)). "[T]he question for certifying a Rule 23(b)(3) class is whether 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through

generalized proof' and whether 'these particular issues are more substantial than the issues subject only to individualized proof.'" *Johnson*, 780 F.3d at 139 (citation omitted).

The Court previously found "common questions predominate as to OTC plaintiffs' antitrust claims." *LIBOR VII*, 299 F. Supp. 3d at 591-95; *see also Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 518 (S.D.N.Y. 1996) ("Since a single conspiracy is alleged, the relevant proof of this will not vary among class members, and clearly presents a common question fundamental to all class members."). Accordingly, the predominance requirement is satisfied.

### 2.      Superiority

Rule 23(b)(3) identifies four factors to be considered in determining whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy":

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed R. Civ. P. 23(b)(3). Importantly, courts considering motions to certify settlement classes need not consider the fourth factor. *See Amchem*, 521 U.S. at 620. Here, certification of a settlement class "will achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of similar claims." *Chhab v. Darden Rests., Inc.*, 2016 WL 3004511, at *3 (S.D.N.Y. May 20, 2016). Accordingly, the superiority requirement is satisfied.

### 3.      Hausfeld LLP and Susman Godfrey L.L.P. Should Be Appointed Settlement Class Counsel

Under Rule 23(g), a court that certifies a class must appoint class counsel, who is charged

with fairly and adequately representing the interests of the class. *See* Fed. R. Civ. P. 23(g)(1). In determining class counsel, the Court must consider (1) the work undertaken by counsel in identifying or investigating the potential claims; (2) counsel's experience in handling class actions, other complex litigation, and similar claims; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A). OTC Plaintiffs' Counsel readily meet these requirements and should be appointed as counsel for the Settlement Class, for the reasons set forth in the prior briefing and declarations on this issue describing counsel's efforts. *See, e.g.*, ECF Nos. 1337, 1338, 2351, 2388, 2706.

## VI. OTC PLAINTIFFS WILL FILE A SEPARATE MOTION FOR APPROVAL OF A NOTICE PLAN AND APPOINTMENT OF A SETTLEMENT ADMINISTRATOR

OTC Plaintiffs are committed to the Net Settlement Fund being distributed in a reasonable and equitable fashion to members of the Settlement Class. As with the Barclays, Citi, Deutsche Bank, and HSBC Settlements, OTC Plaintiffs respectfully propose to file a separate Motion for Approval of the Notice Program and Appointment of a Settlement Administrator in the near future. This Court previously approved a similar course of action with respect to the Barclays, Citi, Deutsche Bank, and HSBC Settlements. *See* Barclays Order, 2016 WL 7625708, at *3; ECF No. 2247 ¶ 3; ECF No. 2480 ¶ 3; ECF No. 2481 ¶ 3. Other courts have permitted this course of action in similarly complex cases. *See, e.g.*, *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2015 WL 9952596, at *3 (S.D.N.Y. Dec. 15, 2015); *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, 2013 WL 4525323, at *5 (E.D.N.Y. Aug. 27, 2013).

## VII. CONCLUSION

OTC Plaintiffs respectfully request the Court grant their motion for preliminary approval of the Settlement, certify the Settlement Class, appoint Hausfeld LLP and Susman Godfrey L.L.P. as Settlement Class Counsel, and preliminarily approve the proposed Plan of Distribution.

Dated: May 19, 2023

By: /s/ Michael D. Hausfeld

Michael D. Hausfeld
Hilary Scherrer
Nathaniel C. Giddings
HAUSFELD LLP
1700 St. NW, Suite 650
Washington, D.C. 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
mhausfeld@hausfeldllp.com
hscherrer@hausfeldllp.com
ngiddings@hausfeldllp.com

Gary I. Smith
HAUSFELD LLP
600 Montgomery Street
Suite 3200
San Francisco, CA 94111
Telephone: 415-633-1908
Facsimile: 415-633-4980
GSmith@hausfeld.com

*Counsel for Baltimore, Yale, New Britain, Vistra, and Jennie Stuart, and Co-Lead Counsel for the OTC Class*

/s/ William Christopher Carmody

William Christopher Carmody (WC8478)
Seth Ard (SA1817)
Geng Chen (GC2733)
Amy B. Gregory (5663299)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Fl.
New York, New York 10019
Telephone: 212-336-3330
Facsimile: 212-336-8340
bcarmody@susmangodfrey.com
sard@susmangodfrey.com
gchen@susmangodfrey.com
agregory@susmangodfrey.com

Marc M. Seltzer (CA State Bar No. 54534)
Glenn C. Bridgman (CA State Bar No. 270891)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
gbridgman@susmangodfrey.com

Drew D. Hansen (WA State Bar No.: 30467)
Matthew R. Berry (WA State Bar No.: 37364)
SUSMAN GODFREY LLP
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
Email: dhansen@susmangodfrey.com
mberry@susmangodfrey.com

Barry C. Barnett (BB1984)
Karen A. Oshman (TX State Bar No.: 15335800)
Michael C. Kelso (TX State Bar No.: 24092617)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street
Suite 5100
Houston, TX 77002-5096

26

Telephone: (713) 651-9366
Facsimile: (713) 654-6666
bbarnett@susmangodfrey.com
koshman@susmangodfrey.com
mkelso@susmangodfrey.com

*Counsel for Baltimore, Yale, New Britain, Vistra, and Jennie Stuart, and Co-Lead Counsel for the OTC Class*

27