# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | Master File No. 11-md-2262 (NRB) |
| THIS DOCUMENT RELATES TO: | |
| METZLER INVESTMENT GmbH, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CREDIT SUISSE GROUP AG, et al. <br><br> Defendants. | No. 11 Civ. 2613 |

**EXCHANGE-BASED PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER APPROVING THE DISTRIBUTION OF THE BANK OF AMERICA, BARCLAYS BANK PLC, CITI, DEUTSCHE BANK, HSBC BANK PLC, JPMORGAN, AND SOCIÉTÉ GÉNÉRALE NET SETTLEMENT FUNDS AND FOR REIMBURSEMENT OF <u>CLAIMS ADMINISTRATION EXPENSES</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

I.     INTRODUCTION ........................................................................................................... 1

II.    RELEVANT BACKGROUND ....................................................................................... 2

      A.    Overview of the Settlements ................................................................................ 2

      B.    Overview of the Claims Administration ............................................................. 3

III.   ARGUMENT ................................................................................................................... 5

      A.    The Court Should Authorize Distribution of the Net Settlement Funds to Authorized Claimants ......................................................................................... 5

            1.    Timely and Valid Claims ........................................................................ 6

            2.    Untimely But Otherwise Eligible Claims ............................................... 6

      B.    The Court Should Accept the Claims Administrator's Recommendations to Reject the Ineligible Claims ................................................................................. 7

      C.    The Court Should Authorize Distribution of the Net Settlement Funds Including a Holdback Provision .......................................................................... 8

      D.    Payment of Notice and Administrative Expenses and Amount of the Net Settlement Funds ................................................................................................ 10

      E.    The Release of Claims ....................................................................................... 10

IV.   CONCLUSION .............................................................................................................. 11

## TABLE OF AUTHORITIES

**Cases**

*Alaska Elec. Pension Fund v. Bank of Am., Corp.*,
  No. 14 Civ. 7126, 2020 WL 916853 (S.D.N.Y. Feb. 26, 2020) .......................................... 8, 9

*Blank v. Jacobs*,
  No. 03 Civ. 2111, 2013 WL 1310503 (E.D.N.Y. Mar. 27, 2013) ........................................... 8

*In re Citigroup Inc. Secs. Litig.*,
  No. 09 Md. 2070, 2014 WL 2445714 (S.D.N.Y. May 30, 2014) ............................................ 7

*In re Goldome Secs. Litig.*,
  No. 88 Civ. 4765, 1991 WL 113263 (S.D.N.Y. June 20, 1991) .............................................. 8

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  No. 11 Md. 2262, 2020 WL 1059489 (S.D.N.Y. Mar. 2, 2020) .............................................. 2

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  No. 11 Md. 2262, 2020 WL 6891417 (S.D.N.Y. Nov. 24, 2020) ........................................... 3

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
  246 F.3d 315 (3d Cir. 2001) .................................................................................................... 7

*In re ValueVision Int'l Inc. Sec. Litig.*,
  No. 94 Civ. 2838, 1997 WL 786457 (E.D. Pa. Dec. 1, 1997) .................................................. 7

*Zients v. LaMorte*,
  459 F.2d 628 (2d Cir. 1972) ................................................................................................ 6, 7

**I.     INTRODUCTION**

Exchange-Based Plaintiffs[1] respectfully submit this memorandum of law in support of their Motion for Entry of an Order Approving the Distribution of the Bank of America, Barclays Bank Plc, Citi, Deutsche Bank, HSBC Bank Plc, JPMorgan, and Société Générale Net Settlement Funds and for Reimbursement of Claims Administration Expenses.

The court-appointed Claims Administrator, A.B. Data, Ltd. ("A.B. Data" or "Claims Administrator"), has advised Kirby McInerney LLP and Lovell Stewart Halebian Jacobson LLP (collectively, "Class Counsel") that it has now completed all analyses and accounting procedures in connection with the submitted claims and has finalized its determination of which claims are authorized and which are ineligible. *See* Declaration of Steve Straub dated September 6, 2023, ("A.B. Data Declaration"), filed contemporaneously herewith.

All that remains to complete the Settlement process is to distribute the Net Settlement Funds to the Authorized Claimants. Class Counsel therefore respectfully requests that the Court authorize, *inter alia*, the distribution of the Net Settlement Funds to Authorized Claimants, as identified in Exhibits A and B to the A.B. Data Declaration. Notably, as of today, A.B. Data and Class Counsel are unaware of any claimant who disputes or intends to challenge A.B. Data's recommended claims determination. A.B. Data Decl. ¶ 31.[2]

---

[1] "Exchange-Based Plaintiffs" or "Plaintiffs" are Metzler Asset Management GmbH (f/k/a Metzler Investment GmbH), FTC Futures Fund SICAV, FTC Futures Fund PCC Ltd., Atlantic Trading USA, LLC, 303030 Trading LLC, Gary Francis, and Nathanial Haynes.  All references to "ECF No." herein refer to documents in the docket of the MDL Action, No. 11 MDL 2262 (NRB) (S.D.N.Y.) unless otherwise specified.

[2] Pursuant to the Settlements, the Settling Defendants have no interest in the relief sought by this motion. *See, e.g.,* Citi Settlement Agreement ¶ 8(B) ("The Releasees and their counsel shall have no responsibility for, interest in, or liability whatsoever with respect to the investment or distribution of the Settlement Fund . . .").

## II.     RELEVANT BACKGROUND

### A.     Overview of the Settlements

The Settlements, consisting of $187,000,000 in payments as well as agreements by Settling Defendants to provide certain non-monetary cooperation to Plaintiffs, constituted the largest "futures and options on futures only" class action settlement of claims under the Commodity Exchange Act, and provide compensation to Authorized Claimants.[3]

Pursuant to the Settlement Agreements, the Net Settlement Funds will be distributed to Authorized Claimants in accordance with the Court-approved Plan of Distribution after, *inter alia*, the outstanding fees and expenses of claims administration and any tax liabilities are satisfied. *See, e.g.*, Citi Settlement Agreement ¶ 10.

On March 2, 2020, the Court granted preliminary approval to the Settlements between Exchange-Based Plaintiffs and Settling Defendants BOA, Barclays, Citi, Deutsche Bank, HSBC, JPMorgan, and SG, preliminarily approved Plaintiffs' Notice Program for the settlements with Settling Defendants, and appointed Lovell Steward Halebian Jacobson LLP and Kirby McInerney LLP as Settlement Class Counsel. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Md. 2262, 2020 WL 1059489, at *4 (S.D.N.Y. Mar. 2, 2020) [ECF. 3038] ("Preliminary Approval Order"). The Court's March 2, 2020, order further granted Plaintiffs' request to appoint A.B. Data, Ltd. as the Settlement Administrator, Signature Bank as the Escrow Agent for the Citi Settlement, and Citibank, N.A. as the Escrow Agent for the BOA, Barclays, HSBC, Deutsche Bank, JPMorgan, and SG Settlements. *See id*., at *4, *8.

---

[3] The aggregate Settlements created a $187 million Settlement Fund from: BOA with $15 million; Barclays with $19.975 million; Citi with $33.4 million; Deutsche Bank with $80 million; HSBC with $18.5 million; JPMorgan with $15 million; and SG with $5.125 million.

On September 17, 2020, the Court granted Final Approval to the Settlements. *See* Barclays Settlement (ECF No. 3175); Citi Settlement (ECF No. 3177); Deutsche Bank Settlement (ECF No. 3176); HSBC Settlement (ECF No. 3179); JPMorgan/BOA Settlement (ECF No. 3178); SG Settlement (ECF No. 3180).

On November 24, 2020, the Court entered an order awarding (i) $45,346,605.29 in attorney's fees, (ii) $5,613,578.86 in reimbursement of litigation costs and expenses, and (iii) $25,000 service awards for each of the six named plaintiffs (or $150,000 in total). *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Md. 2262, 2020 WL 6891417, at *5 (S.D.N.Y. Nov. 24, 2020) [ECF No. 3239] ("Final Approval Order").

As of September 1, 2023, the balance of the Settlement Fund, including accrued interest, is $140,873,104.89. *See* ¶ 4 to the Declaration of David E. Kovel dated September 7, 2023 (the "Kovel Declaration"), filed contemporaneously herewith. Through September 1, 2023, the Net Settlement Funds have earned over $7,180,000 in interest and continues to accrue daily interest. *Id.* ¶¶ 4-5.

**B.      Overview of the Claims Administration**

Pursuant to the Stipulations, the Court's Preliminary Approval Order, and the Court-approved Notice, all Class Members wishing to be eligible to participate in the Settlements were required to submit Proof of Claim Forms, postmarked on or before December 1, 2020.

As detailed in the accompanying A.B. Data Declaration, A.B. Data received a total of 4,116 Proof of Claim Forms in connection with this Action. A.B. Data Decl. ¶¶ 10-16. A.B. Data received 50 hard-copy paper claims, 216 claims via the online portal established on the Settlement Website, and a total of 3,850 claims were filed electronically. *Id.* A.B. Data has prepared detailed ledgers of: (i) all valid and timely claims by Authorized Claimants (*id.*, Ex. A); (ii) claims that were submitted after the filing deadline of December 1, 2020 but are otherwise valid ("Late

3

Claims") (*id.*, Ex. B); and (iii) claims that were rejected or deemed ineligible (*id.*, Ex. C). If approved, this distribution will provide eligible Claimants with their *pro rata* recovery calculated according to the Court-approved Plan of Distribution across the Net Settlement Funds. *Id.* ¶ 47(a).

A.B. Data made substantial efforts to contact Claimants that had submitted ineligible or deficient claims (such as lacking the required information or documentation to substantiate the Claimant's transactions during the Settlement Class Period) and instruct them on how to cure any such deficiencies. A.B. Data Decl. ¶ 20. A.B. Data mailed (or e-mailed, in the case of electronic claims) rejection notices to Claimants, describing the defect(s) with the claim and stating what, if anything, was necessary to cure the claim. *Id.* ¶¶ 27-29; A.B. Data Decl. Ex. D (sample rejection notice). The rejection notices also informed the Claimant that failure to cure the deficiencies may lead to rejection of his, her, or its claim. A.B. Data Decl. ¶ 27(b).

A.B. Data also performed additional various targeted audits of large claims, unusually large individual claims, questionable claims, and certain bulk filer claims. *Id.* ¶¶ 32-38. Each Claimant selected for audit was advised that failing to timely respond and provide the requested trade confirmation data within a specified time period would result in the Claim being rejected in its entirety. *Id.* ¶ 34; A.B. Data Decl. Ex. E (sample audit letter).

After completion of the deficiency and audit processes, A.B. Data sent final disposition letters which documented whether the Claim or certain transactions were rejected and the reason for the rejection. The letters also included the Recognized Net Loss and Recognized Net Volume calculation (if applicable) for each Claimant if the Claim was accepted. *Id.* ¶ 41; A.B. Data Decl. Ex. F (sample final disposition letter). The letters gave Claimants the opportunity to request additional review of their Claim, contest the determination, or provide additional documentation. *Id.* ¶ 42.

4

Of the 4,116 claims received, A.B. Data determined that 1,613 claims were ineligible to participate in the Settlement because the claims: (i) did not indicate any eligible transactions during the Settlement Class Period or did not calculate to any Recognized Net Loss; (ii) were duplicative, withdrawn, or replaced claims; and (iii) had uncured deficiencies, including insufficient information and/or documentation to support the claim. *Id*. ¶¶ 21-24. In each case, as applicable, these Claimants received a rejection letter and/or an opportunity to cure the claim. *Id*. ¶¶ 26-31.

To date, A.B. Data is unaware of any Claimant that presently disagrees with A.B. Data's administrative determinations and no Claimant has requested Court review of A.B. Data's determinations. *Id.* ¶ 31.

### III. ARGUMENT

#### A. The Court Should Authorize Distribution of the Net Settlement Funds to Authorized Claimants

As set forth in the A.B. Data Declaration, there were 4,116 claims submitted in connection with the claims process consisting of over 224 million transactions. A.B. Data Decl. ¶¶ 8, 17-18. A.B. Data processed each of these claims to determine their eligibility under the Court-approved Plan of Distribution. *Id.* ¶ 19. Each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Funds under the Plan of Distribution. *See* ECF Nos. 3175, 3176, 3177, 3178, 3179, and 3180. Specifically, the Plan provides for distribution of 75% of the Net Settlement Funds on the basis of *pro rata* "Recognized Net Loss" and 25% on the basis of *pro rata* "Recognized Volume," subject to a guaranteed minimum payment of $20. *Id.* In sum, A.B. Data determined that there were 2,503 eligible claims, include both (i) timely claims and (ii) untimely but otherwise eligible claims. A.B. Data Decl. ¶¶ 17-18. A.B. Data calculated that the 2,503 eligible claims, including both timely and late (*see* below) had a total Recognized Net Loss of $12,965,285,235.12

and a Recognized Volume of 1,607,402,283.13 under the Plan of Distribution. A.B. Data Decl. ¶¶ 17-18.

### 1. Timely and Valid Claims

There were 2,405 Authorized Claimants who submitted timely and valid claims postmarked on or before the Court-approved claims filing deadline of December 1, 2020. *Id.* at ¶ 17; A.B. Data Decl. Ex. A. A.B. Data calculated that timely and valid claims had a total Recognized Net Loss of $12,774,959,196.09 and a Recognized Volume of 1,554,798,539.81 under the Plan of Distribution. Class Counsel respectfully request that the Court approve the 2,405 Timely Authorized Claimants listed in Exhibit A of the A.B. Data Declaration. *Id.*

### 2. Untimely But Otherwise Eligible Claims

A.B. Data received Proof of Claim Forms after the December 1, 2020 submission deadline through July 1, 2023, and adjustments and corrections to existing claims through August 16, 2023. *Id.* ¶¶ 45-46. A.B. Data processed all Late Claims and has determined that the total number of Authorized Claimants submitting valid Late Claims is 98. *Id.* ¶ 18; A.B. Data Decl. Ex. B. A.B. Data calculated that untimely but otherwise eligible claims had a total Recognized Net Loss of $190,326,039.03 and a Recognized Volume of 52,603,743.33 under the Plan of Distribution.

Until the Net Settlement Funds are actually distributed, this Court retains broad and inherent equitable powers to include claims that were submitted late. *See Zients v. LaMorte*, 459 F.2d 628, 630-31 (2d Cir. 1972) ("[u]ntil the fund created by the settlement is actually distributed, the court retains its traditional equity powers."). In addition, the Settlement Agreements contemplate that under certain circumstances, the Court may extend the deadline for Class Members to submit Claims to be potentially eligible to participate in the Settlements. *See*, *e.g.*, Citi Settlement Agreement [ECF No. 2307-4] ¶ 10(ii) ("Except as otherwise ordered by the Court, each

Class Member who fails to submit a Proof of Claim and Release within such period as may be ordered by the Court, *or otherwise allowed*, . . .") (emphasis added).[4]

Accordingly, Class Counsel respectfully request that the Court approve A.B. Data's administrative recommendations to accept the 98 Late Claims listed in Exhibit B of the A.B. Data Declaration.

In order to facilitate the efficient and proportional distribution of the Net Settlement Fund, however, there must be a final cut-off after which no other claims may be accepted. Class Counsel respectfully requests that the distribution order provide that no claim received after July 1, 2023, may be accepted for any reason whatsoever and no further adjustments or corrections to Claims submitted after August 16, 2023, may be accepted. A.B. Data Decl. ¶ 46.

### B. The Court Should Accept the Claims Administrator's Recommendations to Reject the Ineligible Claims

A.B. Data rejected a total of 1,613 claims. A.B. Data mailed (or e-mailed, in the case of electronic claims) each of these Claimants a rejection letter. A.B. Data Decl. ¶¶ 26-31, 41, 42; *see, e.g.*, A.B. Data Decl. Exs. D and F. The reasons for rejections included: (i) claims did not involve transactions or calculate to a Recognized Net Loss during the Settlement Class Period; (ii) claims were duplicate, withdrawn, or replaced claims; and (iii) claims were deficient and were never cured. *Id.*[5]

---

[4] Courts have the equitable power to include late-filed claims as part of a settlement distribution even where the parties agreed to a claims deadline pursuant to the terms of a settlement agreement. *See, e.g., Zients*, 459 F.2d at 630-31 ("[W]here, as here, all the equities are on the side of the claimants, the fund has not been distributed and the administration of the fund would be insignificantly hampered by allowing these few late claims, appellants should be permitted to participate in the fund."); *In re ValueVision Int'l Inc. Sec. Litig.*, No. 94 Civ. 2838, 1997 WL 786457, at *1 (E.D. Pa. Dec. 1, 1997) (allowing claims submitted after claims deadline because there was no delay in claims administration process); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 321 (3d Cir. 2001) (court allowed a late claim where all class members were asserting claims on a "finite pool of assets.").

[5] *In re Citigroup Inc. Secs. Litig.*, No. 09 Md 2070, 2014 WL 2445714, at *2-3 (S.D.N.Y. May 30, 2014) (upholding claims administrator's rejection of claims where claimants did not hold shares during the necessary time period and

Accordingly, Class Counsel respectfully requests that the Court reject these ineligible claims listed in Exhibit C of the A.B. Data Declaration.

### C. The Court Should Authorize Distribution of the Net Settlement Funds Including a Holdback Provision

As more fully described in the A.B. Data Declaration ¶ 47, the Claims Administrator will conduct an Initial Distribution to Authorized Claimants pursuant to the Court-approved Plan of Distribution. The Plan of Distribution provides for distribution of 75% of the Net Settlement Funds on the basis of *pro rata* "Recognized Net Loss" and 25% on the basis of *pro rata* "Recognized Volume," subject to a guaranteed minimum payment of $20. Specifically, as proposed, Authorized Claimants whose Recognized Net Loss calculates to greater than $0.00 and $19.99 or less shall receive a minimum payment of $20.00 (the "Minimum Payment") from these Settlements in the Initial Distribution and will not be eligible to receive any further distribution from the Net Settlement Funds. The total amount of this Minimum Payment comprises approximately 0.0081% of the Net Settlement Funds, or $11,200.00, and will reallocate just 0.0060% of the Net Settlement Funds towards paying these Claimants. *Id*. ¶ 47 (a)(2).

After excluding Authorized Claimants who will receive the Minimum Payment, any Authorized Claimant whose Distribution Amount recalculates to $20.00 or more and less than $10,000.00 will receive their full *pro rata* Distribution Amount in the Initial Distribution and will not be eligible to receive any further distribution from the Net Settlement Funds.

---

therefore "suffered no loss"); *In re Goldome Secs. Litig.*, No. 88 Civ. 4765, 1991 WL 113263, at *1, *3 (S.D.N.Y. June 20, 1991) accepting claims administrator's rejection of claims where the claimant "failed to correct a deficiency in the documents provided to the claims administrator after being given notice"); *Alaska Elec. Pension Fund v. Bank of Am., Corp.*, No. 14-Civ-7126, 2020 WL 916853, at *4 (S.D.N.Y. Feb. 26, 2020), *aff'd sub nom. Alaska Elec. Pension Fund v. Fortinbras Asset Mgmt. GmbH*, 835 F. App'x 647 (2d Cir. 2021) (accepting claims administrator's decision to reject claim where claimant was unable to provide documentation proving that submitted transactions actually occurred); *Blank v. Jacobs*, No. 03 Civ. 2111, 2013 WL 1310503, at *5 (E.D.N.Y. Mar. 27, 2013) (accepting claims administrator's "decision to reject any claims not properly documented unless any of those claimants has been able to cure the deficiencies").

Class Counsel respectfully requests that the Court authorize that 90% of the remaining balance of the Net Settlement Funds be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $10,000.00 or more, with the remaining 10% of the Net Settlement Funds held in reserve (the "Reserve"). The Reserve will be used to pay for expenses incurred in connection with administering the Settlements, estimated taxes, the costs of preparing appropriate tax returns, any escrow and administrative fees, and any contingencies that may arise after the Initial Distribution. *See Alaska Elec.*, 2020 WL 916853, at *2 (approving payment of claim subject to a holdback).

Assuming the Reserve is not depleted, following consultation with Class Counsel, in a reasonable amount of time after the Initial Distribution, A.B. Data will conduct a Second Distribution to Authorized Claimants whose (i) *pro rata* Distribution Amount in the Initial Distribution calculated to $10,000.00 or more, (ii) who cashed their first distribution check, and (iii) who would receive at least $10.00 from such distribution based on their *pro rata* share of the remaining funds.

If there is any balance remaining in the Net Settlement Funds after a reasonable period after the Second Distribution, following consultation with Class Counsel, the Claims Administrator shall, if cost-effective, conduct additional distributions until it is determined that further re-distribution is not cost-effective. A.B. Data Decl. ¶ 47(d). If further re-distribution of the funds remaining in the Net Settlement Funds is not cost-effective, the remaining balance of the Net Settlement Funds shall be donated distributed to a nonsectarian, not-for-profit 501(c)(3) organization(s) recommended by Class Counsel and approved by the Court.

**D.     Payment of Notice and Administrative Expenses and Amount of the Net Settlement Funds**

Pursuant to orders granting preliminary approval of the Settlements the Court approved fees and expenses for the notice and administration of the Settlements totaling $2,250,000.[6]

To date, Class Counsel has paid $1,475,945.58 in Notice and Administration Expenses from the Settlement Funds. Such payments cover administration services including, *inter alia*: (i) handling incoming and returned mail; (ii) responding to Class Member inquiries regarding the claims process (including maintaining a call center and responding to questions); (iii) updating and maintaining the online claims portal and settlement website; (iv) developing a proprietary calculation module to calculate each Authorized Claimant's share of the Net Settlement Funds pursuant to the Court-approved Plan of Distribution; (v) analyzing Claimant transaction data to determine eligible claims; (vi) processing claims; (vii) distributing deficiency and final disposition letters; and (viii) processing responses to deficiency and final disposition letters.

A.B. Data estimates the cost of its future work in distributing the Net Settlement Funds to be $44,945.93. *See* A.B. Data Decl. ¶ 48, Ex. G (estimate to conduct distributions). Therefore, Class Counsel requests that A.B. Data be paid $44,945.93 from the Settlement Funds.[7]

**E.     The Release of Claims**

In order to allow the full and final distribution of the Net Settlement Funds, it is respectfully requested that the Court bar any further claims against the Net Settlement Funds beyond the amount allocated to Authorized Claimants, and to provide that all Persons involved in the review,

---

[6] *See* Barclays Settlement Agreement at ¶ 10 (ECF No. 680-3), Citi Settlement Agreement ¶ 9(B) (ECF No. 2307-4); Deutsche Bank Settlement ¶ 9(B) (ECF No. 2307-5); HSBC Settlement Agreement ¶ 9(B) (ECF No. 2307-6); JPMorgan/BOA Settlement Agreement ¶ 9(B) (ECF No. 2728-5); SG Settlement Agreement ¶ 9(B) (ECF No. 3023-4).

[7] If the estimate of fees and expenses to conduct the distributions is greater than the actual cost to conduct the distributions, the excess will be returned to the Net Settlement Funds.

verification, calculation, tabulation, or any other aspect of the processing of the Proof of Claim Forms submitted herein, or otherwise involved in the administration or taxation of the Settlement Funds or Net Settlement Funds, be released and discharged from any and all claims arising out of such involvement, provided, however, that the Court's distribution order shall not release any claim by Exchange-Based Plaintiffs against the Claims Administrator with respect to distributions, if any, if later discovered to have been made not substantially in accordance with the Stipulation, the Plan of Allocation, or any order of the Court.

## IV. CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that this Court issue the accompanying proposed Order Authorizing Distribution of Net Settlement Funds granting the relief sought herein.

Dated: September 7, 2023
New York, New York

**KIRBY McINERNEY LLP**

By: */s/ David E. Kovel*
David E. Kovel
Thomas W. Elrod
Anthony E. Maneiro
250 Park Avenue, Suite 820
New York, New York 10177
Telephone: (212) 371-6600
dkovel@kmllp.com
telrod@kmllp.com
amaneiro@kmllp.com

**LOVELL STEWART HALEBIAN JACOBSON LLP**

By: */s/ Christopher Lovell*
Christopher Lovell
Jody R. Krisiloff
Christopher M. McGrath
500 Fifth Avenue, Suite 2440
New York, NY 10110
Telephone: (212) 608-1900
clovell@lshllp.com

jkrisiloff@lshllp.com
cmcgrath@lshllp.com

*Counsel for the Exchange-Based Plaintiffs and the Settlement Classes*

12