# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 1:11-md-02262 (NRB) |
| THIS DOCUMENT RELATES TO:<br><br>OTC ACTION<br>DIRECT ACTION PLAINTIFFS | Hon. Naomi Reice Buchwald<br><br>**UNREDACTED VERSION<br>FILED UNDER SEAL** |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. DENNIS CARLTON

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................. 1
II. ARGUMENT ........................................................................................................................ 2
III. CONCLUSION .................................................................................................................... 5

I.      INTRODUCTION

Although the "Second Circuit has endorsed a 'particularly broad standard for the admissibility of expert testimony,' wherein 'the rejection of expert testimony is the exception rather than the rule,'" this "liberal standard" nonetheless has its limits. *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1175, 2014 WL 7882100, at *7 (E.D.N.Y. Oct. 15, 2014) (internal citations and quotations omitted), *R&R adopted,* 2015 WL 5093503 (E.D.N.Y. July 10, 2015). Plaintiffs[1] move to exclude certain opinions offered by JPMorgan's[2] proffered expert economist, Dr. Dennis Carlton,[3] that exceed the boundaries of proper expert testimony.

Specifically, Dr. Carlton ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ These opinions are unnecessary, beyond Dr. Carlton's expertise as an economist, and invade the province of the trier of fact to apply the law to the facts. *DiBella v. Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005) (affirming exclusion of expert who "inappropriately drew a legal conclusion by opining that [the plaintiff's] actions amounted to extortion"); *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("These cases establish that although an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts.").

In the context of antitrust conspiracy cases, these principles mean that while "[e]conomists often explain whether conduct is indicative of collusion," they may *not* opine as to "whether a conspiracy existed or anticompetitive conduct actually occurred." *U.S. Info. Sys., Inc. v. Int'l Bhd. Of Elec. Workers Loc. Union No. 3, AFL-CIO*, 313 F. Supp. 2d 214, 239–41 (S.D.N.Y. 2004)

---

[1] OTC Plaintiffs, the Federal Deposit Insurance Corporation as Receiver for 20 Closed Banks, Principal Financial Group, Inc., Principal Financial Services, Inc., Principal Life Insurance Company, Principal Funds, Inc., and Principal Variable Contracts Funds, Inc.

[2] JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively, "JPMorgan" or "JPM").

[3] Dr. Carton submitted three reports on behalf of JP Morgan on upstream issues. Ex. 1 (Expert Report of Dennis W. Carlton (Apr. 19, 2024) ("DC1")); Ex. 2 (Expert Rebuttal Report of Dennis W. Carlton (June 18, 2024) ("DC2")); Ex. 3 (Expert Reply Report of Dennis W. Carlton (Aug. 16, 2024) ("DC3")).

1

("Those determinations are the province of the trier of fact.") (collecting cases). Dr. Carlton's opinion ███████████████████████████████████████████████████████████████████████████████████████████████ Ex. 4 (Carlton (Second) Dep. at 32:24–33:1) ███████████████████████████████████████████████████████████████████████ ███████.

Plaintiffs readily acknowledge that the exclusion of expert testimony is "draconian" and the preferred option to exclusion is almost always to instead resort to vigorous cross examination, the presentation of contrary evidence, and careful instruction on the burden of proof. *Air Cargo*, 2014 WL 7882100, at *17. Dr. Carlton's conspiracy opinions cannot be remedied through these tools. Federal courts universally recognize that while economists may opine as to whether market structures, competitive incentives, and observed behaviors are *consistent* with collusion, they may not offer the opinion that collusion *in fact* did, or did not, occur. Dr. Carlton's opinion that ███ ███████████████████████████████████████

## II. ARGUMENT

Federal courts agree that while economists may offer opinions that market structures, competitive incentives, and firms' observed behavior is *consistent* with collusive behavior, they may not go so far as to offer an opinion as to "whether a conspiracy existed or anticompetitive conduct actually occurred." *U.S. Info.*, 313 F. Supp. 2d at 239–41;[4] *In re Urethane Antitrust Litig.*, No. 4-1616, 2012 WL 6681783, at *3 (D. Kan. Dec. 21, 2012) (under *Daubert* and Fed. R. Evid. 702 and 704, an economist may opine as to whether "particular events, assuming they occurred, are consistent with a conspiracy," but may not "opine on the ultimate issue of whether a conspiracy

---

[4] The rule is grounded on the prohibitions on offering opinions that usurp the trier of fact's role, reach an ultimate legal conclusion, or constitute "embedded" legal opinions. *U.S. Info*, 313 F. Supp. 2d at 239–41.

2

existed"), *aff'd,* 768 F.3d 1245 (10th Cir. 2014).[5]

Plaintiffs do not seek to exclude the lion's share of Dr. Carlton's opinions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ those opinions (while wrong) merely opine, in a similar vein to the opinions of Plaintiffs' expert economists, Drs. Cragg and Marx, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[6]

Dr. Carlton goes too far when he tells the trier of fact what result to reach on the collusion question. *U.S. Info.*, 313 F. Supp. 2d at 239–41; *Urethane*, 2012 WL 6681783, at *3; *see also* n.5, *supra* (collecting cases). Dr. Carlton violates this bedrock principle in all three of his written reports. *E.g.*, Ex. 1 (DC1 ¶ 17) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮;[7] Ex. 2 (DC2 ¶ 7) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[5] *See also, e.g.*, *B & R Supermarket, Inc. v. Visa, Inc.*, No. 17-cv-2738, 2024 WL 4252031, at *14 (E.D.N.Y. Sept. 20, 2024) (courts "permit[] experts to 'explain whether conduct is indicative of collusion'" but do not allow testimony on "whether a conspiracy in fact existed"); *In re Processed Egg Prod. Antitrust Litig.*, 81 F. Supp. 3d 412, 425 (E.D. Pa. 2015) (economists may testify that certain market characteristics are conducive to efficacious collusion but "will not be permitted to testify as to the ultimate issue of whether Defendants engaged in an illegal conspiracy"); *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 1855980, at *4–5 (D. Md. May 1, 2013) (economists may opine that certain conduct is "consistent with collusion and inconsistent with competition" but "may not express an opinion . . . regarding the existence of an illegal conspiracy") (internal quotation omitted); *In re Polypropylene Carpet Antitrust Litig.*, 93 F. Supp. 2d 1348, 1355 & n.2 (N.D. Ga. 2000) (economist was permitted to opine that evidence "was consistent with a finding that Defendants engaged in a conspiracy to fix prices" but may "not offer [an economist] for expressing opinions on the existence of a conspiracy to fix prices, testimony that in any case the Court would find inadmissible").

[6] *See, e.g.*, Ex. 1 (DC1 ¶ 42) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); Ex. 3 (DC3 ¶ 2) ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[7] Dr. Carlton's "understanding" about the evidence in his opening report ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 5 (Carlton (First) Dep. at 86:15-20) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3

██████████████; Ex. 3 (DC3 ¶ 2) ████████████████████

████████████████████████████████████████).

And during Dr. Carlton's second deposition in this action on September 12, 2024, Dr. Carlton ████████████████████████████████████

████████████████████████████████████

████████████████████████ Ex. 4 (Carlton (Second) Dep. at 32:24-33:1) ████████

████████████████████████████████; *id.* at 104:11-105:2 ████████████████████████████████████████

████████████████████████████████████

████████████████████████████████[8]

Indeed, even when Plaintiffs' counsel offered Dr. Carlton ████████████

████████████████████████ Dr. Carlton ████████████████

████████████████████████████████████

████████████████████████████████ Ex. 4 (Carlton (Second) Dep. at 85:6-19) ("████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████ (emphasis added).

Dr. Carlton's proffered testimony on this score impermissibly invades the province of the trier of fact and is beyond Dr. Carlton's expertise. *Bilzerian*, 926 F.2d at 1294; *U.S. Info.*, 313 F. Supp. 2d at 239–41; *Urethane*, 2012 WL 6681783, at *3; *see also* n.5, *supra* (collecting cases).

---

[8] *See also, e.g.*, Ex. 4 (Carlton (Second) Dep. at 48:25-49:11) ████████████████
████████████████████████████████████████
████████████████████████ (emphasis added).

4

While a jury might be assisted by economic expert testimony to understand the economic import of certain market facts, competitive incentives, and firm characteristics and behavior on the ultimate question of conspiracy, the jury must apply the law to the facts without an economist simply telling them what result to reach on that ultimate question.

### III. CONCLUSION

For the foregoing reasons, Dr. Carlton's opinions ███████████████████████ ██████████████████████████████ should be excluded.

October 4, 2024

Respectfully submitted,

| | |
|---|---|
| */s/ Gary I. Smith, Jr.* | */s/ William Christopher Carmody* |
| Michael D. Hausfeld | William Christopher Carmody |
| Hilary Scherrer | Seth Ard |
| Nathaniel C. Giddings | Geng Chen |
| HAUSFELD LLP | Daniel D. Duhaime |
| 888 16th Street NW, Suite 300 | SUSMAN GODFREY L.L.P. |
| Washington, D.C. 20006 | One Manhattan West, 50th Floor |
| Telephone: (202) 540-7200 | New York, NY 10001 |
| Facsimile: (202) 540-7201 | Telephone: (212) 336-8330 |
| mhausfeld@hausfeld.com | Facsimile: (212) 336-8340 |
| hscherrer@hausfeld.com | bcarmody@susmangodfrey.com |
| ngiddings@hausfeld.com | sard@susmangodfrey.com |
| | gchen@susmangodfrey.com |
| | dduhaime@susmangodfrey.com |
| Gary I. Smith, Jr. | |
| HAUSFELD LLP | Marc M. Seltzer |
| 600 Montgomery Street, Suite 3200 | SUSMAN GODFREY L.L.P. |
| San Francisco, CA 94111 | 1901 Avenue of the Stars, Suite 1400 |
| Telephone: (415) 633-1908 | Los Angeles, CA 90067 |
| Facsimile: (415) 633-4980 | Telephone: (310) 789-3100 |
| gsmith@hausfeld.com | Facsimile: (310) 789-3150 |
| | mseltzer@susmangodfrey.com |
| *Counsel for OTC Plaintiffs* | |
| | Drew D. Hansen |
| | SUSMAN GODFREY L.L.P. |
| | 401 Union Street, Suite 3000 |
| | Seattle, WA 98101 |

Telephone: (206) 516-3880
Facsimile: (206) 516-3883
dhansen@susmangodfrey.com

*Counsel for OTC Plaintiffs*

| | |
|---|---|
| */s/ James R. Martin*<br>James R. Martin<br>Jennifer D. Hackett<br>ZELLE LLP<br>1775 Pennsylvania Avenue, NW<br>Suite 375<br>Washington, DC 20006<br>Telephone: (202) 846-6435<br>Facsimile: (612) 336-9100<br>jmartin@zellelaw.com<br>jhackett@zellelaw.com<br><br>*Attorneys for Plaintiff The Federal Deposit Insurance Corporation as Receiver for 20 Closed Banks*<br><br>*Liaison Counsel for Direct Action Plaintiffs* | */s/ Stacey P. Slaughter*<br>K. Craig Wildfang<br>Thomas J. Undlin<br>Stacey P. Slaughter<br>Geoffrey Kozen<br>Robins Kaplan LLP<br>2800 LaSalle Plaza<br>800 LaSalle Avenue South<br>Minneapolis, MN 55402–2015<br>Telephone: (612) 349–8500<br>KCWildfang@RobinsKaplan.com<br>TUndlin@RobinsKaplan.com<br>SSlaughter@RobinsKaplan.com<br>GKozen@RobinsKaplan.com<br><br>*Attorneys for Principal Financial Group, Inc.; Principal Financial Services, Inc.; Principal Life Insurance Company; Principal Funds, Inc.; PFI Bond & Mortgage Securities Fund; PFI Bond Market Index Fund; PFI Core Plus Bond I Fund; PFI Diversified Real Asset Fund; PFI Equity Income Fund; PFI Global Diversified Income Fund; PFI Government & High Quality Bond Fund; PFI High Yield Fund; PFI High Yield Fund I; PFI Income Fund; PFI Inflation Protection Fund; PFI Money Market Fund; PFI Preferred Securities Fund; PFI Short-Term Income Fund; Principal Variable Contracts Funds, Inc.; PVC Asset Allocation Account; PVC Balanced Account; PVC Bond & Mortgage Securities Account; PVC Equity Income Account; PVC Government & High Quality Bond Account; PVC Income Account; PVC Money Market Account; PVC Short-Term Income Account* |

## CERTIFICATE OF SERVICE

      I hereby certify that on October 4, 2024, I caused the foregoing document to be served on liaison counsel for Defendants via email.

Dated: October 4, 2024

                                                                                         /s/ Daniel D. Duhaime
                                                                                          Daniel D. Duhaime